# Exhibit E

A-34

Multi-Page™

1

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

- - -

McKESSON INFORMATION SOLUTIONS    :    CIVIL ACTION
LLC,                               :
                                  :
        Plaintiff            :
                                  :
        vs.                   :
                                  :
THE TRIZETTO GROUP, INC.,          :
                                  :
        Defendant           :    NO. 04-1258 (SLR)

- - -

Wilmington, Delaware
Tuesday, April 12, 2005
4:30 o'clock, p.m.
***Discovery Conference

- - -

BEFORE: HONORABLE SUE L. ROBINSON, Chief Judge

- - -

APPEARANCES:

        SKADDEN, ARPS, SLATE, MEAGHER & FLOM
        BY: MICHAEL A. BARLOW, ESQ.

              -and-

        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
        BY: DAVID W. HANSEN, ESQ.
            (Palo Alto, California)

               Counsel for Plaintiff

                               Valerie J. Gunning
                               Official Court Reporter

A-35

Multi-Page™

**Page 2**

1  APPEARANCES (Continued):
2      MORRIS, NICHOLS, ARSHT & TUNNELL
3      BY:  JACK B. BLUMENFELD, ESQ.
4          -and-
5      GIBSON, DUNN & CRUTCHER LLP
6      BY:  JEFFREY THOMAS, ESQ.
7          (Irvine, California)
8          Counsel for Defendant
9
10          - - -

**Page 3**

2        PROCEEDINGS

4      (Proceedings commenced in the courtroom,
5  beginning at 4:30 p m )

7      THE COURT: Good afternoon.
8      MR. BARLOW: Good afternoon, your Honor.
9      My name is Mike Barlow from Skadden Arps, on
10 behalf of plaintiff, McKesson Information Solutions.
11     I'd like to introduce my colleague, Mr. David
12 Hansen. He's going to be making the presentation on behalf
13 of plaintiff today.
14     THE COURT: All right. Fine. Thank you very
15 much.
16     MR. BLUMENFELD: Your Honor, Jack Blumenfeld for
17 Trizetto, along with Jeff Thomas, from Gibson, Dunn &
18 Crutcher in California.
19     THE COURT: All right. Good afternoon.
20     MR. THOMAS: Good afternoon.
21     THE COURT: Mr. Hansen?
22     MR. HANSEN: Good afternoon, your Honor.
23     Would it help to expedite matters to give you the
24 one-minute version of our case?
25     THE COURT: If you feel like that would be

**Page 4**

1  helpful, I will let you do that, certainly.
2      MR. HANSEN: Okay. We represent the plaintiff in
3  the case, McKesson Information Solutions, which is a
4  subsidiary of McKesson Corporation. The patent basically
5  relates to what's called clinical editing and auditing,
6  which, in a nutshell, would be software that is designed in
7  connection with medical claims processing to root out
8  possibly what is called unbundling.
9      An example of unbundling would be where a doctor
10 performs some form of thoracic surgery and there is a
11 specific medical claim code that would be used to identify
12 the appropriate reimbursement costs for that. If the doctor
13 or someone in the hospital included a surgery type of code,
14 and also included separate codes for the incision and for
15 stitching things back up, the software essentially would
16 determine that the cutting and sewing back up should be
17 included as part of the overall surgery claim code and would
18 determine that those additional two costs should not be
19 reimbursed.
20     The patent was obtained a number of years ago and
21 has achieved significant success. We have a number of
22 licenses under the patent, and up until 2000, the
23 defendant, Trizetto, was a distributor of McKesson's Solution
24 for this unbundling and bundling type of system.
25     In 2000, Trizetto purchased a company named

**Page 5**

1  Erisco that had its own bundling/unbundling software and
2  ceased its distributor relationship with McKesson. After
3  that there were discussions about licensing the patent with
4  Trizetto and those discussions did not lead to a license and
5  so now we have the lawsuit.
6      We have submitted a letter yesterday.
7      THE COURT: Six-page single-spaced. A typical
8  Skadden Aprs --
9      MR. HANSEN: Unfortunately, in a nutshell, the
10 problem is that McKesson has just recently changed counsel.
11 Mr. Thomas has not been involved in the case from the
12 beginning and was only recently substituted in.
13     The bottom line is the reason that there are so
14 many disputes is because, essentially, as you see in our
15 first paragraph, that discovery has been stonewalled. Up
16 until mid-March, we have obtained no documents, essentially
17 no documents. In great part what we did receive is
18 public documents and essentially a return under Trizetto
19 Bates-stamping of documents that we had produced at
20 Trizetto. And we did not even get anything relating to the
21 accused products until mid-March.
22     So --
23     THE COURT: All right. Well, I would suggest
24 that you pick your most important issue and we will start
25 with that and resolve it and we'll go through as many

A-36

Multi-Page™

Page 18

1  all the documents should be produced by that date because
2  then there are all sorts of disputes and we can't get
3  anything resolved by then.
4      So it should be a rolling production and
5  production should be ended by that date. But, certainly, if
6  you all are hanging around, waiting to produce anything until
7  that date --
8      MR. THOMAS: Absolutely not. We have already
9  produced 45,000 pages of documents. Another set of documents
10  is currently being reviewed by counsel to be produced soon
11  and that will be followed in a rolling manner. That's our
12  intention.
13      THE COURT: All right. So as far as I know, as
14  far as the record would show, there's no particular problem
15  with those documents and that your client is diligent in
16  searching for relevant documents.
17      MR. THOMAS: On the acquisition of Erisco, yes,
18  your Honor, that's true.
19      THE COURT: All right. The customer information
20  kind of goes to the customer subpoena issue that I have from
21  Mr. Thomas' side.
22      So, Mr. Hansen, why don't you fill me in on your
23  version of the dilemma and then I will find out Mr. Thomas'
24  version of the dilemma.
25      MR. HANSEN: The dilemma as to Trizetto, again,

Page 19

1  we have not gotten any documents or we've gotten one license
2  and very few documents.
3      On the subpoena part, I guess the objection is
4  that we're subpoenaing -- we are subpoenaing customers who
5  have -- who are -- the core of our damages case that has lost
6  customers based on the infringement of the patent.
7      The notion that all of these documents -- it
8  doesn't say all of the documents. That a lot of them can be
9  gotten from Trizetto, we structured the schedule of the
10  subpoena to obtain a lot of information that can't be
11  obtained from Trizetto. For example, the customers'
12  decision-making process in determining to purchase the
13  infringing Erisco product rather than going with the McKesson
14  product.
15      So there's a lot of information that we can only
16  get from the customers.
17      We will, of course, work with the customers, to
18  the extent that Trizetto is not representing them, we'll work
19  with whatever counsel they have to limit the burden of the
20  subpoenas and obtain only those documents that we actually
21  need. It's standard, as you know.
22      THE COURT: All right. It's standard, I
23  suppose. I have not heard of -- maybe I just have not been
24  made aware of --
25      MR. HANSEN: I can go through the categories and

Page 20

1  subpoenas of interest, but they're directed principally to
2  the customers' consideration of the various products and, you
3  know, why they chose one over the other, and also there's
4  damages-related documents requested from them as well.
5      MR. THOMAS: Your Honor, may I speak to that?
6      THE COURT: Yes.
7      MR. THOMAS: We are very concerned about this.
8  We now have at least a couple dozen, I think maybe we're
9  getting close to 30 subpoenas that have been issued, most of
10  which are to our best customers. And they asked for things
11  like all communications with Trizetto, all Trizetto marketing
12  materials they have received, all of which is available from
13  us and the customers need not be bothered with that.
14      They asked for all analysis by the customer of
15  Trizetto products.
16      Now, if what they're really interested in is very
17  focused, that is, if the customer has done a comparison of
18  the Trizetto versus McKesson product or if there are
19  documents that show that the customer selected Trizetto over
20  McKesson for some particular reason, if we were that focused,
21  then maybe it would be do-able, but these are broad subpoenas
22  sent to our closest business partners that we think are
23  inappropriate.
24      THE COURT: It sounds like they're awfully far
25  reaching and burdensome for third parties, so, Mr. Hansen, do

Page 21

1  you want to convince me that they are not?
2      MR. HANSEN: Okay. Would you like to see a copy
3  of the schedule?
4      THE COURT: Yes.
5      (Mr. Hansen handed documents to the Court.)
6      THE COURT: Thank you.
7      MR. HANSEN: The actual requests, there are
8  definitions.
9      If you look on Page 1, for example, your Honor,
10  just to give you an idea of what we're looking for in terms
11  of the infringing products, Definition 6, clinical editing or
12  auditing. It's a functional definition. It's not things
13  that infringe our patent.
14      So this is, in terms of the actual direct
15  infringing product, this is the definition that we've used
16  both in the request to Trizetto and in connection with
17  customer requests.
18      The document requests themselves start in the
19  middle of Page 2, under Document Requests. Brochures,
20  presentations, all of which is limited to Facets or clinical
21  editing or auditing components of Facets.
22      I mean, we have not gone after every Trizetto
23  product. What we're looking for at this point based on the
24  knowledge that we have are the Facets and any other clinical
25  editing because we may not know about something, as we

A-37

Multi-Page ™

Page 22

1  discussed previously.
2        So all of these, if you look down through them,
3  the next one is the same. Communications relating to
4  clinical editing component of Facets. These are documents
5  they're going to discuss. Their product is better than ours
6  or here's why you shouldn't use the McKesson product or
7  things of that nature.
8        THE COURT: It's obviously broader than that.
9        MR. HANSEN: It is broader.
10       THE COURT: It's not as focused.
11       MR. HANSEN: I mean, if there are specific
12  objections as to the document requests, as we would with
13  anyone else, we'll work in good faith to negotiate a
14  reasonable scope.
15       THE COURT: Well, let's go on because you've got
16  a lot of other things yet to go, so I won't even focus on
17  that.
18       MR. HANSEN: In terms of requests? They're all
19  limited to comparisons. I mean, one, two and three are very
20  much alike. Four is talking about our product. Five, the
21  use of our product. Six is the comparison of our product and
22  their product.
23       Analysis of our product. Whether to purchase —
24  seven is whether to purchase their product. I'm sorry.
25  Eight is whether to purchase their product versus our

Page 23

1  product.
2        Nine, we have the Erisco merger. We're looking
3  for documents in connection with the Erisco merger to talk
4  about the significance of the auditing products.
5        IMS is the parent company of Erisco. The last
6  one is just directed to the patent in suit.
7        THE COURT: And what is the relevance of all of
8  this?
9        MR. HANSEN: Pardon me?
10       THE COURT: What is the relevance of all of
11  this?
12       MR. HANSEN: This goes to damages. It goes to
13  both infringement and to damages, both to the extent that
14  there may have been issues raised with respect to these
15  customers as to whether or not the Erisco product infringe
16  McKesson's product, so the discussions relating to that would
17  be relevant.
18       THE COURT: How is that relevant to
19  infringement? It either infringes or not. What people say
20  doesn't matter.
21       MR. HANSEN: If it's being said by Trizetto, it
22  could be an admission, your Honor.
23       THE COURT: Well —
24       MR. HANSEN: I —
25       THE COURT: I'm fairly confident Trizetto isn't

Page 24

1  going to be saying we infringe.
2        MR. HANSEN: They also may be saying why they
3  don't infringe. It's not uncommon to give customers
4  that may have produced their noninfringement opinion to
5  customers.
6        THE COURT: Right. I understand that you all
7  like to have a shotgun approach to these things, but I'm
8  looking at it from a third party's point of view and how
9  burdensome this is versus the marginal relevance this might
10  have
11       Now, you've already served all of these things;
12  right? And these customers are all over the country?
13       MR. HANSEN: I believe they are all over the
14  country. These are also customers of McKesson as well, your
15  Honor, or former customers of McKesson.
16       THE COURT: Well, so the question is since
17  they have been served, and what is the due date on all
18  of these? I mean, have they objected? Has there been an
19  uproar? I mean, I, frankly, can't imagine being a customer
20  and having one of the folks I buy things from burdening
21  me with something like this. I do not think I would be
22  real happy.
23       And what do you intend to do if they don't
24  respond?
25       MR. HANSEN: We will do the good-faith

Page 25

1  negotiations in terms of trying to reach agreement with them
2  in terms of the response, and, if necessary and appropriate,
3  move to compel.
4        THE COURT: Well, I will tell you, it's not the
5  way I think litigation should be handled.
6        I think these are overbroad.
7        MR. HANSEN: Okay.
8        THE COURT: I don't know whether I have the
9  jurisdiction, because they have not been issued out of my
10  Court, have they?
11       MR. HANSEN: I don't know all the details. There
12  may have been some in Delaware. I'm not sure of that. I
13  don't believe so.
14       THE COURT: Well, unless the customer complains,
15  I'm not sure that the defendant has standing.
16       If a customer complains and I have jurisdiction,
17  I will cut this down, but —
18       MR. HANSEN: We'll take a sharp knife to this,
19  your Honor, and cut it back.
20       THE COURT: I —
21       MR. HANSEN: The principal focus of the subpoenas
22  is to collect information relative to damages. So we will
23  take a knife to these and cut them back down.
24       THE COURT: All right.
25       MR. HANSEN: And communicate that to everybody

A-38

Multi-Page™

Page 26

1  who we have served the subpoenas to, to let them know we're
2  actually narrowing the requests.
3      THE COURT: All right. There's the Trizetto
4  financial information.
5      Is this one of those things that Trizetto just
6  hasn't gotten around to producing yet even though document
7  production deadline is a month away?
8      MR. THOMAS: Yes, your Honor. We will gather
9  all of the relevant financial documents and get those
10  produced.
11      THE COURT: All right. document production is
12  due to be ending when?
13      MR. HANSEN: Mid-May.
14      THE COURT: All right.
15      MR. THOMAS: Under the current schedule, your
16  Honor.
17      THE COURT: All right. Well, we are going to
18  schedule another --
19      MR. HANSEN: May 13th.
20      THE COURT: -- discovery conference after the
21  document production deadline so that if, in fact, all of
22  these, we're going to get this information out timely, hasn't
23  actually happened, we can do something about it.
24      All I can do now, Mr. Thomas, is take your word
25  for it, that your client has been aware of this and has been

Page 27

1  working diligently, and it just takes someone like you to get
2  it out of them and produced appropriately.
3      MR. THOMAS: That's fine, your Honor. I would
4  like to note, however, this is a two-way street. We have
5  not received all of the documents from McKesson. I have
6  spoken with counsel for McKesson last week and he said
7  they're still gathering documents from the client. They're
8  still reviewing them and there are substantial documents yet
9  to be produced.
10      THE COURT: I understand.
11      MR. THOMAS: Both sides have a fair amount of
12  document production work to be done.
13      THE COURT: All right. And we will talk about
14  that.
15      All right. The next category is documents
16  relating to the integration of McKesson's clinical editing/
17  auditing product into Facets.
18      MR. HANSEN: Certain of the customers have -- I
19  mean, is this the same thing? I think this is just a matter
20  that it hasn't been produced yet.
21      MR. THOMAS: I think have some been produced.
22  We're talking here somewhere, as I understand it, between
23  one and four customers who had this interface put into
24  place by both companies, so their software works together.
25  So I think both companies have this information and I don't

Page 28

1  think there's any controversy about what ought to be
2  produced.
3      THE COURT: All right. All right. And the
4  affirmative defenses?
5      MR. HANSEN: Again, if it's producing documents,
6  that's fine.
7      MR. THOMAS: Certainly any documents that
8  we believe support our affirmative defenses will be
9  produced.
10      THE COURT: All right. Now, with respect to the
11  protective order -- well, before we get to the protective
12  order, and, certainly, McKesson's motion is on my list, but
13  I've got lots of motions on my list, so the squeaky wheel
14  gets the grease. You certainly brought it to my attention
15  and I will try to get to it.
16      MR. HANSEN: Thank you.
17      THE COURT: All right. We will get to the draft
18  protection order. But, Mr. Thomas, do you have any other
19  issues in terms of, besides the protective order and the
20  document production status?
21      MR. THOMAS: Yes, your Honor. There are
22  McKesson's answers to our interrogatories.
23      THE COURT: Okay. Well, we've kind of talked
24  about the Trizetto products that allegedly infringe. I think
25  we're past that.

Page 29

1      MR. THOMAS: No, I understand, your Honor. These
2  are different interrogatories. We didn't give you a
3  six-page, single-spaced letter, so it's not all spelled out.
4      THE COURT: All right.
5      MR. THOMAS: But we have a number of
6  interrogatories that we've been trying to get answered, prior
7  counsel has been trying to get answered for quite some time,
8  including such basic things as to whether they allege that
9  the invention was conceived or reduced to practice prior to
10  the date on which the patent application was filed, when they
11  first became aware or believed that there was an Ensco or
12  Trizetto product out there that was infringing, what products
13  they have sold that they believe embody the invention in the
14  patent. Some very basic interrogatories on key issues in
15  patent cases that they have not responded to.
16      THE COURT: All right. Mr. Hansen?
17      MR. HANSEN: As to the -- what's the -- the first
18  is conception, reduction to practice?
19      MR. THOMAS: Yes.
20      MR. HANSEN: We are going to answer that.
21      THE COURT: Okay.
22      MR. HANSEN: We did get a seven-page,
23  single-spaced letter last night, and based on that, I've
24  discussed it today.
25      I don't think -- now that they're going to give

A-39

# Exhibit F

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MCKESSON INFORMATION,           )
SOLUTIONS, LLC,                 )
                                )
          Plaintiff,            )
                                )
v.                              )     Civil Action No.
                                )     04-1258-SLR
THE TRIZETTO GROUP, INC.,       )
                                )
          Defendant.            )


        Teleconference before The Honorable Sue L.
Robinson in the United States District Court, 844 N. King
Street, Wilmington, Delaware, beginning at 2:30 p.m. on
Thursday, April 28, 2005, before Vincent J. Bailey,
Registered Professional Reporter and Notary Public.

------------------------------------------------------

WILCOX & FETZER
1330 King Street - Wilmington, Delaware 19801
(302) 655-0477



WILCOX & FETZER LTD.
Registered Professional Reporters

ORIGINAL

2

1      THE COURT:  I have a court reporter here

2   who is filling in for Valerie whose father passed away.

3   So I would appreciate it if, for a change, you'd all

4   remember to identify yourself each time you spoke, so

5   that our record is clear.

6          We are gathered here together to talk about

7   these subpoenas issued to third parties and I certainly

8   understand where defendants, what their position is, but

9   if someone from, counsel for defendants would care to say

10  anything further, I'm happy to hear it.  Then I'll hear

11  from plaintiffs' counsel or vice versa.

12         MR. BLUMENFELD:  This is Jack Blumenfeld.

13  I'm with Jeff Thomas.  I think Jeff is going so speak.

14         THE COURT:  All right.

15         MR. THOMAS:  This is Jeff Thomas.  Our

16  point is fairly straight forward, I think.  The

17  representation from Mr. Hanson when we were in court was

18  that they were going to take a sharp knife to the

19  subpoenas, cut them back significantly, and communicate

20  to everyone who received them that the scope of documents

21  was being significantly reduced.

22         That has not happened at all.  There's been

23  no sharp knife.  There hasn't even been a blunt

24  instrument.  There's been virtually no narrowing

**W&F**
**WILCOX & FETZER LTD.**
Registered Professional Reporters

A-42

3

1  whatsoever of the requests.  They continue to pressure

2  all of our significant customers to produce these

3  documents in short order.  A number of the customers are

4  very unhappy because of the extreme burden of responding

5  to these documents.  They essentially want every document

6  related to the software the customers are using or

7  software the customers have ever considered using,

8  whether it be TriZetto, McKesson or third party software.

9           And, as I understand it, their position now

10 is, after having made this representation to the Court,

11 they are asking that the Court stay out of it, so that

12 this can be handled one by one in various districts

13 around the country.  And we think that's going to be a

14 great burden for the customers.  This is going to result

15 in a lot of delay and a lot of unnecessary procedure and

16 expense, including for third parties.

17           THE COURT:  Thank you.  Let's hear from

18 plaintiff's counsel.

19           MR. ALLINGHAM:  This is Tom Allingham.  I

20 think David Hanson is going to handle argument.

21           MR. RANDALL:  This is Jeff Randall and I

22 will handle some of it.  Mr. Hanson I think will jump in

23 and announce when he does.

24           Your Honor, about two-thirds of the

A-43

4

1   subpoenas that we have already served, we either have
2   resolved or are very close to resolving. We have been
3   working directly with the customers. We have notified
4   all the customers, both in writing and those who we have
5   contact information on orally, that we are willing to do
6   two things: One, cut back on the breadth of the request;
7   and, two, work with each individual company to eliminate
8   any undue burden. And that really is company specific.
9   So we've worked with each one of these customers of
10  TriZetto and said, look, if you have a file on TriZetto
11  documents that are responsive and easy for you to collect
12  and produce, why don't you do that, we will take a look
13  at them. It may satisfy any obligation to respond to the
14  subpoena.
15          Alternatively, if we look at them, say
16  there's a couple follow-up questions we have or can you
17  check this person's file or this person's file, we will
18  do that. And that is working. Two-thirds of the
19  subpoenas we have served nearly have been resolved or
20  will be resolved in that fashion quickly.
21          There's only been three motions to quash
22  filed, two of which were filed by one counsel
23  representing two companies and we have worked with her.
24  She said she wants to continue to work with us. In fact,

5

1    at least in her situation, she has already collected and

2    produced a lot of documents in another case that are

3    responsive to our subpoena.  And what she offered was,

4    can I provide to you the documents I've already collected

5    and produced in another case, can you look through those

6    and see what is responsive and then hopefully that will

7    satisfy you.  If there are follow-ups, we will talk about

8    it.

9              We have said fine.  The only issue

10   remaining with her is whether TriZetto was going to

11   object to the production.

12             Now, tellingly, they obviously authorized

13   the production of those documents in another case.  There

14   shouldn't be any objection or delay to their approval of

15   production of those documents in our case.  We have

16   already agreed to a protective order.  We agreed to their

17   protective order.  We submitted it to you this morning.

18             So, really, I hear these complaints that

19   the subpoenas are overbroad, the customers aren't happy,

20   et cetera.  We are dealing with each and every one of

21   them successfully.  There's really, there isn't a need

22   for this intervention.  There really isn't.  And if there

23   is and it comes to that point, I'll be surprised.

24             But we have been incredibly cooperative and



**WILCOX & FETZER LTD.**
Registered Professional Reporters

A-45

6

1   I think in rapid fashion have been able to resolve all

2   these disputes.  And we have done that because we have

3   cooperated.  We have talked to each customer individually

4   and we have said what is it that we can do to eliminate

5   any burden, give us the documents that are readily

6   available.  Some of them have the files and said they are

7   right here, we don't want to dig for them, they said.

8           I think TriZetto's counsel said we want

9   every document.  We don't want every document.  That's

10  ridiculous.  What we want are those documents that can be

11  reasonably located with a reasonably diligent search.  We

12  will look through them.  For the most part, that's going

13  to satisfy us.  If there's a couple follow-ups, fine.

14          But all these companies typically have one

15  of two individuals responsible for the TriZetto account

16  and naturally we would say, why don't you look in their

17  office for responsive documents or we will assist you and

18  we will collect them.  And for the most part, that's

19  going to satisfy our requests.

20          THE COURT:  All right.  Mr. Hanson, I think

21  the problem, as usually, is one of communication, because

22  certainly the impression I had when we were in court was

23  that when you said you would take a look and a sharp

24  knife or whatever the language was that you used, I



A-46

7

1   thought you literally meant that. And you did not tell
2   me on the record that what you meant by that was that you
3   were going to leave the language alone, which is
4   incredibly overbroad and burdensome, and simply wait for
5   third parties to reach you and work it out individually.
6           So I can't do anything but accept your
7   representations that you are doing this on an individual
8   basis. But if you had explained better what you meant by
9   that when we were in court, you are right, we wouldn't be
10  here discussing this again.
11          Mr. Thomas, I am satisfied at this point,
12  because I have no reason to disbelieve Mr. Hanson, that
13  they are doing what they said, just in a different way
14  than I had anticipated or that you had anticipated.
15          Is there anything else that you think we
16  need to address?
17          MR. THOMAS: Just a couple of things.
18  First of all, Skadden has been following the practice of
19  not copying us on anything that goes out. For example,
20  when they send out letters to the customers purporting to
21  modify the subpoenas, although they don't really modify
22  them, we are not copied on those. They don't provide us
23  with documents that apparently they are receiving from
24  third parties.



**WILCOX & FETZER LTD.**
Registered Professional Reporters

8

1           So the first request I would have is that

2    we have an order in this case that if there's going to be

3    written communication with subpoena recipients about the

4    production of documents or when documents are received,

5    that we be notified and copied on anything that's going

6    on in writing with regard to this issue.

7           MR. RANDALL:  Two things:  With respect to

8    the documents that will be produced to us, they will be

9    immediately produced to TriZetto as well.  We have no

10   problem with that.

11         The one issue we do have is that when we

12   are working out and negotiating with third parties to

13   reduce the burden and get whatever logjam broke up and

14   get the documents produced to us, I have to be very

15   candid here, I don't want any inference from TriZetto and

16   so far we've had that.  We asked for weeks TriZetto to

17   give us the contact information of their customers and to

18   do exactly what counsel is asking you to do, which is

19   please copy us on correspondence with your customer,

20   please tell us what you are telling them, please tell us

21   who we can contact to eliminate any burden, and they

22   refuse.  Now they are saying they want us to do the same

23   thing.

24         I think the best way to get this done is



**WILCOX & FETZER LTD.**

Registered Professional Reporters

A-48

9

1   for us to deal directly with them.  Counsel here is not

2   representing any of those third parties.  And so in large

3   part what we are doing is dealing directly with outside

4   counsel for these third parties or inside counsel, but

5   it's working.  That's the main thing.  It's working.

6   Nearly two-thirds of the subpoenas are resolved or will

7   be soon.

8               So I don't think that's necessary.

9   Frankly, I think that's going to obstruct and impede the

10  process.

11              MR. THOMAS:  The rules clearly require that

12  we be given notice of subpoenas that are issued to third

13  parties.  If subsequent written communication goes out to

14  those third parties, modifying in some way the scope or

15  return date of those subpoenas, or other agreements that

16  are reached with third parties about what's to be

17  produced, we are entitled to be copied on them, that

18  information.

19              THE COURT:  I don't like the word

20  "entitled," Mr. Thomas.

21              It seems to me, Mr. Randall, I can

22  understand why you don't want TriZetto interfering with

23  your negotiations, but when you supply these documents

24  you've got to inform TriZetto in some fashion which parts

**W&F**
**WILCOX & FETZER LTD.**
Registered Professional Reporters

A-49