UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

McKESSON INFORMATION SOLUTIONS
LLC,

        Plaintiff,

                              Case No. 04-1258-SLR

v.

                              Honorable Sue L. Robinson

THE TRIZETTO GROUP, INC.

        Defendant.
_____/

Donna Hill
Skadden, Arps, Slate, Meagher & Flom LLP
Attorneys for Plaintiff
525 University Avenue, Ste. 1100
Palo Alto, CA  94301
(650) 470-4500

Thomas J. Allingham, II
Michael A. Barlow
Skadden, Arps, Slate, Meagher & Flom LLP
Attorneys for Plaintiff
One Rodney Square
P.O. Box 636
Wilmington, DE 19899
(302) 651-3000

Joseph A. Fink (P13428)
Kathleen A. Lang (P34695)
Scott R. Knapp (P61041)
Dickinson Wright PLLC
Attorneys for Non-Party Blue Cross Blue
    Shield of Michigan
215 S. Washington Square, Ste. 200
Lansing, MI 48933
(517) 371-1730

Jack B. Blumenfeld
Rodger Dallery Smith, II
Morris, Nichols, Arsht & Tunnell
Attorneys for Defendant
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200

_____/

**BRIEF IN SUPPORT OF NON-PARTY BLUE CROSS BLUE SHIELD OF MICHIGAN'S
MOTION FOR PROTECTIVE ORDER**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ………………………………………………….… ii

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ……..…..... iv

SUMMARY OF ARGUMENT ………………………………………………......…v

I.      BACKGROUND ...............................................................................................1

II.     ARGUMENT......................................................................................................2

        A.      General Limitations On Discovery From Non-Parties ..............................2

        B.      BCBSM's Motion For Protective Order Should Be Granted Based
                On The Limitations Imposed By The Federal Rules Of Civil
                Procedure And This Court's Prior Assessments Of The McKesson
                Non-Party Subpoenas ...............................................................................4

                1.      McKesson's Discovery Requests Are Unduly Burdensome
                        And Production Would Cause Substantial Expense To
                        BCBSM, A Non-Party To This Action...........................................4

                2.      McKesson Has Failed To Take Reasonable Steps To Avoid
                        Imposing Undue Burden Or Expense Upon BCBSM ...................7

                3.      McKesson's Discovery Requests Concern Irrelevant
                        Subject Matter..............................................................................11

                4.      The Documents Requested Are Cumulative Or Duplicative,
                        And Obtainable From Another Source .........................................13

                5.      Certain Documents Requested By McKesson Are
                        Confidential And/Or Privileged....................................................14

III.    CONCLUSION..................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Burka v. New York City Transit Authority*, 110 F.R.D. 660 (S.D.N.Y. 1986) ....................4

*Cinema Amusements, Inc. v. Loew's, Inc.*, 85 F. Supp. 319 (D. Del. 1949) ........................3

*Glenmede Trust Co. v. Thompson*, 56 F.3d 476 (3d Cir. 1995)............................................3

*In re Candor Diamond Corp.*, 26 B.R. 847 (Bankr. S.D.N.Y. 1983)..................................4

*Koch v. Koch Industries, Inc.*, 203 F.3d 1202 (10th Cir.), *cert. denied*, 531 U.S.
     926 (2000)......................................................................................................................6

*Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525 (D. Del.
     2002)................................................................................................................................3

*Novartis Pharm. Corp. v. Eon Labs Mfg., Inc.*, 206 F.R.D. 392 (D. Del. 2002)..............11

*Slater Steel, Inc. v. Vac-Air Alloys Corp.*, 107 F.R.D. 246 (W.D.N.Y. 1985) ...................4

*Stuart v. General Motors Corp.*, 217 F.3d 621 (8th Cir. 2000) ...........................................6

*United States v. Bibby*, 752 F.2d 1116 (6th Cir. 1985)........................................................6

*United States v. Reno*, 522 F.2d 572 (10th Cir. 1975) .........................................................6

**Statutes**

Mich. Comp. Laws § 550.1102(1) ........................................................................................5

**Other Authorities**

10 Fed. Proc., L. Ed. § 26:176 (2005) ..................................................................................4

10A Fed. Proc., L. Ed. § 26:445 (2005) ...............................................................................5

**Rules**

Fed. R. Civ. P. 26(b)(1) ..................................................................................................11, 14

Fed. R. Civ. P. 26(b)(2) .........................................................................................................3

Fed. R. Civ. P. 26(b)(2)(i)....................................................................................................14

Fed. R. Civ. P. 26(c) ..........................................................................................................2, 3

Fed. R. Civ. P. 26(c)(1) .................................................................................................3

Fed. R. Civ. P. 45(c) .....................................................................................................14

Fed. R. Civ. P. 45(c)(1) ...........................................................................................7, 11

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

Pursuant to Fed. R. Civ. P. 26(c), non-party Blue Cross Blue Shield of Michigan ("BCBSM") brings the present Motion seeking a protective order from discovery sought via subpoena by Plaintiff McKesson Information Solutions LLC ("McKesson").

BCBSM's Motion for Protective Order and Brief in Support represent the initial stage of this dispute in this Court.

## SUMMARY OF ARGUMENT

Plaintiff McKesson has served non-party BCBSM with a subpoena demanding overbroad, unduly burdensome, and largely irrelevant discovery.  Such discovery requests are impermissible under the Federal Rules of Civil Procedure.  Accordingly, pursuant to Fed. R. Civ. P. 26(c), BCBSM brings this Motion for Protective Order asking this Court to order that such discovery "not be had" in order to protect BCBSM from, inter alia, undue burden and expense.

In addition to clashing with numerous, express limitations on discovery in the Federal Rules of Civil Procedure, McKesson's subpoena to BCBSM disregards this Court's prior assessment of the McKesson non-party subpoenas.  Moreover and most strikingly, McKesson's repeated promises to this Court to take  "a very sharp knife" to such subpoenas and to accept "the documents that are readily available" and "easy to produce" so as to "eliminate any burden" on the subpoenaed non-parties, has gone wholly ignored as to BCBSM.

## I.    BACKGROUND

On or about April 22, 2005, Plaintiff McKesson Information Solutions LLC ("McKesson") issued a "Subpoena in a Civil Case" (the "Subpoena")[1] commanding Blue Cross Blue Shield of Michigan ("BCBSM"), a non-party to this action, to produce and permit inspection and copying of documents (which are extremely voluminous and not centrally located) on May 11, 2005 in Detroit, Michigan.  In subsequent conversations between counsel, BCBSM made clear to McKesson that the documents requested by the Subpoena would be prohibitively costly and unduly burdensome to produce.  (Affidavit of Scott R. Knapp, ¶3; Exhibit C.)  In an attempt to reach a compromise, BCBSM offered to produce all related documents it has gathered and produced with regard to a currently pending national class action litigation that involves certain similar issues.[2]  (*Id.* at ¶¶ 3, 4.)  Despite accepting a like offer from other similarly-situated non-parties it subpoenaed (e.g., other Blue Cross entities), McKesson declined BCBSM's offer.  (*Id.* at ¶¶ 5, 6.)

Having sought but having been denied by counsel for McKesson a reasonable resolution to McKesson's discovery requests, BCBSM was forced on May 10, 2005 to formally serve Rule 45 objections to the Subpoena.  *See* Non-Party Blue Cross Blue

---

[1]    The Subpoena is attached as Exhibit A to the accompanying Motion for Protective Order (hereinafter "Motion").  All other exhibits cited herein are attachments to the Motion as well, and are located in the "Appendix" to the Motion.

[2]    Because the documents have already been digitally scanned into a "Summation" database, BCBSM could search, review and produce such documents without undue burden.  (Affidavit of Scott R. Knapp, ¶ 4; Exhibit C.)

Shield of Michigan's Objections To Subpoena Served By McKesson Information Solutions, LLC; Exhibit D.

Facing an impending motion to compel from McKesson, BCBSM's Motion for Protective Order is brought in an effort to protect BCBSM from the unreasonably burdensome, expensive, and time-consuming task of trying to comply with McKesson's overwhelmingly broad discovery requests. The requests would result in the production of thousands of irrelevant documents at a substantial cost and burden to BCBSM — a non-party to this action.

Accordingly, BCBSM asks this Court to issue a protective order prohibiting that discovery. Such a protective order is appropriate under Fed. R. Civ. P. 26(c), which permits this Court to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including "that the disclosure or discovery not be had." Moreover, such relief is consistent with this Court's previous assessments regarding the unduly burdensome nature of McKesson's non-party discovery requests and McKesson's representations to this Court that McKesson would substantially limit the scope of its requested discovery—representations which have been disregarded as to the BCBSM Subpoena.

## II.    <u>ARGUMENT</u>

### A.    General Limitations On Discovery From Non-Parties

The Federal Rules of Civil Procedure contain numerous, express limitations on a party's ability to pursue discovery. Specifically, the right to take discovery is limited by

Fed. R. Civ. P. 26(b)(2) and 26(c).  Rule 26(b)(2) provides,  inter alia, that discovery methods shall be limited by the Court if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Pursuant to Rule 26(c), this Court may grant a protective order restricting discovery if it finds that "justice requires [the court] to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Rule 26(c) further provides that the Court may order, inter alia, that discovery "not be had." Fed. R. Civ. P. 26(c)(1).

"[A] nonparty may seek from the court protection from discovery via the overlapping and interrelated provisions of both Rules 26 and 45." *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002).[3]  A motion to quash a subpoena under Rule 45 and a motion for a protective order under Rule 26 are, in essence, the same motion.  *Id.*  Regardless of the form of the motion, however, "a nonparty having no stake in the litigation retains a greater expectation of privacy, and restrictions on discovery may be broader where a nonparty is the target of discovery in

---

[3]    A motion for a protective order may be made in the court in which the action is pending.  Fed. R. Civ. P. 26(c); *Cinema Amusements, Inc. v. Loew's, Inc.*, 85 F. Supp. 319 (D. Del. 1949).  A party seeking a protective order must demonstrate that "good cause" exists and the granting of such order is in the court's discretion. *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995).

order to protect such third party from unnecessary harassment, inconvenience, expense, or disclosure of confidential information."  10 Fed. Proc., L. Ed. § 26:176 (2005) (*citing Burka v. New York City Transit Authority*, 110 F.R.D. 660 (S.D.N.Y. 1986); *Slater Steel, Inc. v. Vac-Air Alloys Corp.*, 107 F.R.D. 246 (W.D.N.Y. 1985); *In re Candor Diamond Corp.*, 26 B.R. 847 (Bankr. S.D.N.Y. 1983)).

**B.     BCBSM's Motion For Protective Order Should Be Granted Based On The Limitations Imposed By The Federal Rules Of Civil Procedure And This Court's Prior Assessments Of The McKesson Non-Party Subpoenas**

**1.     McKesson's Discovery Requests Are Unduly Burdensome And Production Would Cause Substantial Expense To BCBSM, A Non-Party To This Action**

The gathering and production of the extremely voluminous, non-centrally located documents requested by McKesson would be prohibitively costly and unduly burdensome to BCBSM.

Even attempting to determine whether and to what extent  BCBSM has the information requested—much less actually producing such information—is unduly burdensome and expensive.  The documents, if they exist, will be located in parts or portions, and in various and different locations in the files of different persons officed in different corporate locations.   BCBSM has literally spent over $100,000,000.00 in computer and claims systems  evaluations and upgrades over the last five years, and dozens and dozens of BCBSM employees located in six different offices have worked on

4

portions and parts of such projects.  However, there is no central or limited number of repositories for all such information, nor is there a common file that can be searched. Each contributing employee maintains his/her own files and, thus, documents are spread throughout BCBSM's employees' hard copy and electronic active and/or storage files. Thus, dozens upon dozens of individual employees will need to be identified, contacted, interviewed, and have their files reviewed to determine if potentially responsive documents exist and, if so, where they are located.  Such documents must then be reviewed for responsiveness, confidentiality, and privilege disclosure protection.  There are likely to be hundreds of thousands of documents concerning BCBSM's claims systems upgrades that will need to be reviewed.  BCBSM estimates that it will take hundreds of thousands of dollars to attempt to comply with the Subpoena.[4]  (Affidavit of Michael T. Zajac, ¶¶ 2-9, 11; Exhibit B.)[5]

Federal courts do not tolerate unduly burdensome discovery requests.  Rather, such requests are properly restrained via protective order.  *See*, *e.g.*, *Stuart v. General*

---

[4]    In addition, this cost estimate does not account for the immeasurable lost opportunity costs due to BCBSM expending hundreds of personnel hours on a project that has nothing to do with BCBSM or its interests.  (Affidavit of Michael T. Zajac, ¶¶ 9-10; Exhibit B.)  BCBSM is a Michigan non-profit healthcare corporation governed by a regulatory scheme enacted to ensure "reasonable access to, and reasonable cost and quality of, health care services." Mich. Comp. Laws § 550.1102(1).  Incurring unwarranted costs in order to comply with a discovery subpoena in a patent dispute between two for-profit software companies, a dispute to which this non-profit health insurer is not a party and has no interest, hampers BCBSM's ability to fulfill its statutory charge.

[5]    Further, McKesson has repeatedly stated that it wants BCBSM to produce "the report" wherein BCBSM allegedly compared the parties' products.  No such "report" exists.  (Affidavit of Michael T. Zajac, ¶ 6; Exhibit B.)  Accordingly, it cannot be produced or demanded.  *See, e.g.,* 10A Fed. Proc., L. Ed. §26:445 (2005) ("Rule 45 does not explicitly authorize the court to require a deponent to provide materials that do not currently exist").

*Motors Corp.*, 217 F.3d 621, 637 (8th Cir. 2000) (motion to compel was properly denied where discovery requests were burdensome and irrelevant); *Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1238 (10th Cir.), *cert. denied*, 531 U.S. 926 (2000) (district court acted properly in limiting discovery where burden and expense of posited discovery outweighed likely benefit); *United States v. Bibby*, 752 F.2d 1116, 1125 (6th Cir. 1985) (no abuse of discretion where trial court quashed excessively burdensome subpoena).

The determination as to whether responding to a subpoena would constitute an undue burden or expense depends upon the particular facts of each case. *See United States v. Reno*, 522 F.2d 572 (10th Cir. 1975). Not only do the facts as evidenced by the attached affidavits establish that the Subpoena imposes an undue burden and expense on BCBSM, this Court has already concluded as much. At an April 12, 2005 hearing concerning the scope of McKesson's non-party subpoenas, this Court stated:

> It sounds like they're awfully far reaching and burdensome for third parties . . . .
>
> * * * *
>
> I understand that you all like to have a shotgun approach to these things, but I'm looking at it from a third party's point of view and how burdensome this is versus the marginal relevance this might have . . . .
>
> * * * *
>
> Well, so the question is since they have been served, and what is the due date on all of these? I mean, have they objected? Has there been an uproar? I mean, I, frankly, can't imagine being a customer and having one of these folks I buy things from burdening me with something like this. I do not think I would be real happy. . . .
>
> * * * *

> Well, I will tell you, it's not the way I think litigation
> should be handled.  I think these are overbroad.
>
> * * * *
>
> If a customer complains and I have jurisdiction, I will cut
> this down . . . .

(4/12/05 Tr, pp. 20-21, 24, 25.)[6]  These assessments were reiterated at the April 28, 2005

hearing, again concerning McKesson's non-party subpoenas, where the Court referred to

the subpoena language as "incredibly overbroad and burdensome."  (4/28/05 Tr, p. 7.)[7]

Simply put, compliance with the Subpoena would be unduly burdensome and

expensive to BCBSM, a non-party to this action.  This Court should protect BCBSM

from McKesson's improper and abusive discovery requests, and issue a protective order

providing that such discovery may "not be had."

### 2.    McKesson Has Failed To Take Reasonable Steps To Avoid Imposing Undue Burden Or Expense Upon BCBSM

"A party or an attorney responsible for the issuance and service of a subpoena

shall take reasonable steps to avoid imposing undue burden or expense on a person

subject to that subpoena."  Fed. R. Civ. P. 45(c)(1).  Moreover, in the face of this Court's

directives regarding the unnecessarily overbroad and burdensome scope of McKesson's

non-party discovery requests, McKesson made the following representations to this Court

during the April 12, 2005 hearing:

---

[6]    A copy of the 4/12/05 hearing transcript is attached to the Motion as Exhibit E.

[7]    A copy of the 4/28/05 hearing transcript is attached to the Motion as Exhibit F.

MR. HANSEN [McKesson counsel]:  We will, of course, work with the customers, to the extent that Trizetto is not representing them, we'll work with whatever counsel they have to limit the burden of the subpoenas and obtain only those documents that we actually need.

* * * *

We'll take a very sharp knife to this, your Honor, and cut it back.

* * * *

The principled focus of the subpoenas is to collect information relative to damages.  So we will take a knife to these and cut them back down.

THE COURT: All right.

MR. HANSEN:  **And communicate that to everybody who we have served the subpoenas to, to let them now we're actually narrowing the requests.**

(4/12/05 Tr, pp 19, 25-26 (emphasis added); Exhibit E.)

Ten days after that hearing, on April 22, 2005, McKesson's counsel executed the Subpoena demanding documents from BCBSM.  (Subpoena; Exhibit A.)  It is apparent from the face of the BCBSM Subpoena and the subpoenas at issue in the April 12, 2005 hearing, that McKesson did not take "a very sharp knife" to the BCBSM Subpoena as promised.  *Compare* Subpoena; Exhibit A, *with* Subpoena to Great Lakes Health Plan, Inc.; Exhibit G.  Indeed, it is clear that, in substance, virtually *nothing* was "cut" from the subpoenas discussed at the April 12, 2005 hearing.

During the April 28, 2005 teleconference with this Court, the parties again discussed the non-party subpoenas being issued and served by McKesson:

MR. THOMAS [TriZetto counsel]:    The representation
from Mr. Hanson when we were in court was that
they were going to take a sharp knife to the
subpoenas, cut them back significantly, and
communicate to everyone who received them that
the scope of documents was being significantly
reduced.

That has not happened at all.  There's been no sharp
knife.  There hasn't even been a blunt instrument.
There's been virtually no narrowing whatsoever of
the request.  They continue to pressure all of our
significant customers to produce these documents in
short order.  A number of the customers are very
unhappy because of the extreme burden of
responding to these documents.  They essentially
want every document related to the software the
customers are using or software the customers have
ever considered using, whether it be TriZetto,
McKesson or third party software.

And, as I understand it, their position now is, after
having made this representation to the Court they
are asking that the Court stay out of it, so that this
can be handled one by one in various districts
around the country.  And we think that's going to be
a great burden for the customers.  This is going to
result in a lot of delay and a lot of unnecessary
procedure and expense, including for third parties.

* * * *

MR. RANDALL [McKesson counsel]:  . . . . We have been
working directly with customers.  We have notified
all the customers, both in writing and those who we
have contact information on orally, that we are
willing to do two things:  **One, cut back on the
breadth of the request; and, two, work with each
individual company to eliminate any undue
burden**.  .  .  .  There's only been three motions to
quash filed, two of which were filed by one counsel
representing two companies and we have worked
with her.  She said she wants to continue to work
with us.  In fact, at least in her situation, she has
already collected and produced a lot of documents

in another case that are responsive to our subpoena. And what she offered was, can I provide to you the documents I've already collected and produced in another case, can you look through those and see what is responsive and then hopefully that will satisfy you. If there are follow-ups, we will talk about it.

We have said fine. . . . [W]e have been incredibly cooperative . . . **We have talked to each customer individually and we have said what is it that we can do to eliminate any burden, give us the documents that are readily available. . . . What we want are those documents that can be reasonably located with a reasonably diligent search.** We will look through them. For the most part, that's going to satisfy us.

\* \* \* \*

**We are simply saying, give us the documents that you don't have any, you know, undue burden collecting and producing and, for the most part, that will satisfy us.** We don't want to keep pushing them and say, gee, you didn't produce any on this request. I think we want to say, **give us what is easy to produce without any undue burden. Do your best, which is all that's required of them. Then we are satisfied.**

(4/28/05 Tr, pp 2-3, 4-6, 10-11 (emphases added); Exhibit F.)

First, as discussed <u>ante</u>, although McKesson promised at the April 12, 2005 hearing to take the subpoenas and "cut them back down," the language in BCBSM's Subpoena issued on April 22, 2005 does not appear to have been cut back one iota. Second, notwithstanding McKesson's representations to this Court on April 28, 2005, that it was willing to accept from non-parties documents "already collected and produced . . . in another case that are responsive to our subpoena," such an offer from BCBSM was rejected by McKesson. (Affidavit of Scott R. Knapp, ¶3-6; Exhibit C.) Moreover,

10

McKesson has refused to accept "the documents that are readily available" and "easy to produce," so as to "eliminate any burden" to BCBSM.  In sum, as to BCBSM, McKesson has neither "take[n] reasonable steps to avoid imposing undue burden or expense," Fed. R. Civ. P. 45(c)(1), nor taken a sharp knife to the Subpoena in order "eliminate any burden" to BCBSM.  Rather, McKesson has been unwilling to meaningfully curb the extremely burdensome and costly effect of complying with the Subpoena served on BCBSM.  Accordingly, BCBSM has been left with no other choice but to seek protection from this Court.

### 3.    McKesson's Discovery Requests Concern Irrelevant Subject Matter

The documents requested are not relevant to the instant litigation, and are not reasonably calculated to lead to the discovery of admissible evidence.  Discovery requests pertaining to irrelevant matters are not permitted.  Fed. R. Civ. P. 26(b)(1); *Novartis Pharm. Corp. v. Eon Labs Mfg., Inc.*, 206 F.R.D. 392 (D. Del. 2002).

McKesson has demanded many documents that are irrelevant to the patent infringement case before the Court.  The document requests are self-evident on this issue. *See* Subpoena; Exhibit A.  For example, McKesson requests BCBSM to produce "[a]ll brochures, presentations, information packages, fact sheets, white papers, or other marketing or sales documents relating to Facets . . . ."  (Subpoena, Document Request No. 1; Exhibit A.)  This document request unquestionably envelops irrelevant subject matter, and is without regard to the patent infringement dispute between the parties.

As yet another example, McKesson demands all documents relating to any comparisons <u>performed by BCBSM</u> between the parties' products, as well as all documents relating to the process or analysis BCBSM went through in deciding whether or not to purchase Facets. (Subpoena, Document Request Nos. 5, 7; Exhibit B.) What BCBSM has concluded about the differences or similarities and advantages or disadvantages of the parties' products is simply irrelevant. The defendant TriZetto Group, Inc. has either infringed upon McKesson's patent or it has not. This Court has already suggested as much:

> MR. HANSEN [McKesson counsel]: In terms of requests? They're all limited to comparisons. I mean, one, one, two and three are very much alike. Four is talking about our product. Five, the use of our product. Six is the comparison of our product and their product.
>
> Analysis of our product. Whether to purchase—seven is whether to purchase their product. I'm sorry. Eight is whether to purchase their product versus our product.
>
> Nine, we have the Erisco merger. We're looking for documents in connection with the Erisco merger to talk about the significance of the auditing products.
>
> IMS is the parent company of Erisco. The last one is just directed to the patent in [this] suit.
>
> THE COURT: And what is the relevance of all of this?
>
> * * * *
>
> MR. HANSEN: This goes to damages. It goes to infringement and to damages, both to the extent that there may have been issues raised with respect to these customers as to whether or not the Erisco product infringe McKesson's product, so the discussions relating to that would be relevant.

THE COURT:  **How is that relevant to infringement?  It either infringes or not.  What people say doesn't matter.**

(4/12/05 Tr, pp. 22-23 (emphasis added); Exhibit E.)

Compounding the burden, McKesson also demands production of "[a]ll documents relating to any comparison communicated to or performed by [BCBSM] comparing (a) Facets [with] any other product, system, or service that is capable of, or includes a component capable of, performing clinical editing or auditing," regardless whether such "other product" has anything to do with McKesson's products or this lawsuit.  (Subpoena, Document Request No. 5; Exhibit A.)  The irrelevancy of such a request is obvious on its face.

4.    **The Documents Requested Are Cumulative Or Duplicative, And Obtainable From Another Source**

The documents sought are unreasonably cumulative or duplicative and/or obtainable from some other source that is more convenient than, or less burdensome, or less expensive to the non-party BCBSM.  Without question, many of the documents requested are documents obtainable by McKesson through its discovery with the actual defendant in this case.  *See*, *e.g.*, Subpoena, Document Request Nos. 2, 3, 4, 8, 9, 10 ("All documents relating to any communications with TriZetto relating to . . . .").  TriZetto has already confirmed that fact.  *See* 4/12/05 Tr, p 20; Exhibit E ("[a]nd [McKesson] asked for things like all communications with Trizetto, all Trizetto marketing materials they have received, all of which is available from us and the customers need not be bothered

13

with that").  Burdening a non-party for documents, most if not all of which will be either cumulative, duplicative, and/or obtainable from another source, is impermissible.  *See* Fed. R. Civ. P. 26(b)(2)(i).

5. **Certain Documents Requested By McKesson Are Confidential And/Or Privileged**

Certain of the requested documents are undoubtedly protected from disclosure under the attorney-client privilege and/or the work product doctrine, and/or contain confidential business information, non-public proprietary information and/or financial information relating to BCBSM's business, technical or financial affairs.  (Affidavit of Michael T. Zajac, ¶ 7; Exhibit B.)  Privileged and confidential information **must** be protected from disclosure by an unwilling non-party.  Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 45(c).  While BCBSM understands that there exists a protective order in this case, BCBSM would nonetheless be required to review literally hundreds of thousands of documents in order to assess the level of confidentiality and/or the applicable privilege.

## III.  CONCLUSION

The extraordinary burden and expense on non-party BCBSM of complying with the proposed discovery outweighs any potential benefit to McKesson.  McKesson's discovery requests are impermissible under the Federal Rules of Civil Procedure and relevant federal case law.  This Court has already concluded that McKesson's non-party discovery requests are overbroad, unduly burdensome, and largely irrelevant.  Moreover,

14

as to BCBSM, McKesson's promise to this Court to "take a very sharp knife" to such discovery requests and be "incredibly cooperative" so as to "eliminate any burden" on BCBSM, has been given only lip service.

For these reasons, BCBSM respectfully requests that this Honorable Court grant its Motion for Protective Order and enter an order providing that discovery as to BCBSM, including the document requests that are the subject of the April 22, 2005 Subpoena, "shall not be had," and/or providing other and further relief as is just and equitable. In addition, BCBSM requests that it be awarded its costs, including a reasonable attorney fee, incurred in seeking this protective order.

Respectfully Submitted,

DICKINSON WRIGHT PLLC


　　　　　　　　/s/

By: _____
　　Joseph A. Fink (P13428)
　　Kathleen A. Lang (P34695)
　　Scott R. Knapp (P61041)
Attorneys for Non-Party Blue Cross
　　Blue Shield of Michigan
215 S. Washington Square, Suite 200
Lansing, MI 48933-1816
(517) 371-1730


Dated: May 25, 2005

LANSING 19276-96 358305v8

15