5,253,164

| 49 | 50 |
|---|---|

Limit ACODE payment

L1      If ACODE appears with another code in the range of
        (and including) <u>BCODE to CCODE</u>,
                limit the payment of ACODE to DCODE.

EP      If ACODE appears with another code in the range of
        (and including) <u>BCODE to CCODE</u>, and in POS is ECODE,
                then exclude ACODE and keep BCODE to CCODE.

EA      If ACODE appears with BCODE and if AGE is between
        <u>CCODE to DCODE</u>,
                then exclude ACODE and keep BCODE.
        <u>Query for More Info because of Multiple Codes</u>

QM      If ACODE appears with another code in the range of
        <u>BCODE to DCODE</u>, there is a question about this
        combination of codes.

QS      If ACODE appears with another code in the range of
        <u>BCODE to CCODE</u>, then there is a question about ACODE.

QB      If ACODE appears with another code in the range of
        <u>BCODE to CCODE</u>, then there is a question about the
        code in the BCODE to CCODE range.

        IN ALL THE ABOVE CASES, IF THERE IS A SPECIFIC MESSAGE
APPLIED TO THE RULE FOR WHICH CERTAIN CHANGES OCCUR, THEN THE
MESSAGE NUMBER RESIDES IN ECODE, AND THE CORRESPONDING MESSAGE
IS IN MESSAGE.dbf.


PART II.

<u>Rules applied to each code individually</u>: Contained in
BYITSELF.dbf

RULE            DESCRIPTION

Q1      If CODE survives rules applied to multiple codes or
        CODE is only one submitted on the claim,
                then <u>always</u> request more information ("by
                report") as specified in MESSAGE.

Q2      If CODE survives rules applied to multiple codes or
        CODE is only one submitted on the form and more than
        one of the following fields have entries that match
        the claim: DOLLARLIM, CODELIM, POS, ANESTHESIA, BEGAGE
        to ENDAGE, DX,
                then request more information as specified in
                MESSAGE.

Q3      If CODE survives rules applied to multiple codes or
        CODE is only one submitted on the form and the charge
        on the claim is greater than DOLLALIM,
                then request more information as specified in
                MESSAGE.

BEST AVAILABLE COPY

5,253,164

51                                            52

Q4      If CODE survives rules applied to multiple codes or
        CODE is only one submitted on the form and the charge
        on the claim is greater than the fee screen for
        CODELIM,
                then request more information as specified in
                MESSAGE.

Q5      If CODE survives rules applied to multiple codes or
        CODE is only one submitted on the form and the place
        of service is POS,
                then request more information as specified in
                MESSAGE.
        In addition, if CODELIM = 0 and the place of service
        is POS,
                replace the code in question with CODELIM and
                the reason is flagged by MESSAGETYPE.

Q6      If CODE survives rules applied to multiple codes or
        CODE is only one submitted on the form and there is no
        evidence of anesthetic as specified in ANESTHESIA,
                then request more information as specified in
                MESSAGE.

Q7      If CODE survives rules applied to multiple codes or
        CODE is only one submitted on the form and the
        patient's age is between BEGAGE and ENDAGE,
                then request more information as specified in
                MESSAGE.

Q8      If CODE survives rules applied to multiple codes or
        CODE is only one submitted on the form and the
        diagnosis is DX,
                then request more information as specified in
                MESSAGE.
        In addition, if CODELIM = 0 and the DX, or ICD9CODE
        (or provider) is true,
                then replace the code in question with
                CODELIM, and the reason is flagged by
                MESSAGETYPE.

Q9      If CODE survives the rules applied to multiple codes
        or CODE is only one submitted on the form,
                then replace ACODE with CODELIM, and the
                reason is flagged by MESSAGETYPE.


                        APPENDIX C

ALLCODE:
    Allcode is the file which contains every code, as well as
information which pertains to certain codes code.

    CODE = presented code (all codes represented)

    TITLE4 = description of code from CPT-4 tape

    RVU = rvu of code (relative value unit)

    AST = indicate if a global procedure (all inclusive)

5,253,164    BEST AVAILABLE COPY

53    54

SUPERSED:

    CODE = presented code which is to be superseded

    SUPERCODE = the code(s) which supersedes "CODE"


INTERACT:

    ACODE = contains CPT-4 codes                    all rules

    RULE = E1, E2, R1-RN, CM, CS, CB, L1

    BCODE, CODE = contains CPT-4 codes              all rules

    DCODE = cpt4 code                               R1, R3 +

    DCODE = dollar amount                           L1

    ECODE = cpt4 code                               R4 -

    ECODE = messagetype                             all rules
                                                    except R4
                                                    and above

    ENTRYDATE = holds date rule was entered

    INTERVIEW = holds date rule was developed


BYITSELF:

    CODE = code which presents a problem when presented
           either by itself or with other codes

    ENTRYDATE = holds date rule was entered

    INTERVIEW = holds date rule was developed

    RULE = Q1, Q2,....,Q9

    SINGLE = currently indicates, if true, that the code
             needs to be either the sole surviving code, or
             the only code on the claim, in order for the
             rule (in RULE) to be fired.  This field is
             currently under revision to become broader in
             scope, ie if the coe is the only surviving
             code do rule A, or if the code is with other
             codes, do rule B.

    MESAGETYPE = internally assigned 'code' which will
                 match a type in MESSAGE.dbf, which
                 contains English language messages for the
                 CodeReview user.

    DOLLARLIM = $ limit which if exceeded leads user to
                more information, else accept code        Q3

    POS = place of service                                Q5

    ANESTHESIA = contains a type of anesthesia (general)  Q6

    BEGAGE = start of an age range inappropriate for the
             procedure                                    Q7

    ENDAGE = end of the age range inappropriate for the
             procedure                                    Q7

    DX = diagnosis(es) inappropriate for the procedure    Q8

    ICD9CODE = ICD-9-CM diagnosis code inappropiate for
               the procedure                              Q8

    CODELIM = code which the charge for CODE will be
              compared to (greater than, less than)       Q4

5,253,164    BEST AVAILABLE COPY

55                                                          56

CODELIM = code which will replace code if

    1) if the POS is inappropriate                 Q5

    2) if the DX or ICD9CODE is inappropriate   Q8

    3) in all circumstances for 3?               Q9


MESSAGE:

    TYPE = assign code name for message

    ORIGIN = indicates multiple, single or both

    OP = ask for op report?

    PATH = ask for pathology report?

    OFF = ask for office records?

    HOS = ask for hospital progress notes?

    OTHER = ask for another claim?

    REVIEWER = is the type of reviewer the asked-for
         information should be sent to and reviewed
         by (ie nurse, supervisor, physician etc)

    TOLOOKFOR = specified items that the reviewer should
         look for upon receiving the asked-for
         information

    ENTRYDATE = holds date rule was entered

    INTERVIEW = holds date rule was developed


```
CLOSE DATABASES
set bell off                APPENDIX D
SET TALK OFF
SET ECHO OFF
SET CONFIRM ON
SET EXACT OFF
set scoreboard off
set deleted on
set status off


PUBLIC CLIPPER
SELECT 1
USE CONFIG
session = session_no-1
failed = .f.
note = .f.
xclaim_no = ' '
get_date = .t.
one_date = .t.
temp_date=('  /  /  ')
IF COLOR
    company = company
    COLORM = COLMAIN
    COLORH = COLHELP
    col_look = col_look
    col_say = col_say
    SET COLOR TO &COLORM
    color = .t.
else
    color = .f.
ENDIF
select 1
use
clear
```

5,253,164

57                                58

BEST AVAILABLE COPY

```
*  SELECT 3                            && opened and closed in entry.prg
*  USE SUPERSED INDEX SUPERSED
*  SELECT 4                            && multiple.prg, action
*  USE INTERACT INDEX INTERACT
** SELECT 5
** USE BYITSELF INDEX BYITSELF         && rules.prg
** SELECT 6
** USE MESSAGE INDEX MESSAGE           && rules.prg
*" select 10                           && recomm.prg
** use  new
*  memory variables

header = ' '
helpline = ' '
e_col = 12
c_col = 21
d_col = 33
m_col = 71
s_col = e_col -5
l_col = s_col -6
g_col = 8
if clipper
helpline1 = ;
  -Modify Code    Esc-Exit'
enter + '<Enter> '+chr(17)+chr(196)+chr(217)
helpline2 = ;
  'F1-Help                   '+ enter + 'Recommendations            Esc-Exit '
                          Enter .          provided
helpline3 = ;
                    <Ente -claim number in space pro- .ed>
header2=company + space(13)+'INDEX LOOKUP SCREEN' + space(16) + dtoc(date()).
helpline5 = ;
  - Make Selection.                      Esc-Return'
helpline6 = ;
  - Make Selection               Esc-Choose New Text'
else
helpline1 = ;
 'CHOICE: [ ]  P - Process    A - Add     M - Modify Code  R - Restart   Q - Quit'

helpline3 =;
 'CHOICE: [ ]    X - Explain Recommendations    N - New Session    Q - Quit'
helpline4 = ;
 'CHOICE: [ ]                N - New Session                   Q - Quit'
endif
helpline2 = ;
                CodeReview is processing input codes ... please stand by
header1=company + space(10)+'CodeReview' + space(9) + '(C) Copyright HPR Inc. 1988'
'*header3=company + space(18)+'CodeReview'+space(9) + 'Claim #: '+xclaim_no
helpline7 = ;
                        ESC - Exit Help

choice = 'P'
do while .t.
    select 1
    use config
    session=session+1
    replace session_no with session
    close databases
    code_count = 0
    code_cnt = 0
    SELECT 1
    USE ALLCODE INDEX ALLCODE
    SELECT 2
    USE PROCESS
    clear
    if clipper
        select 8
        use cptindx index cptindx
        select 9
        use tempcpt index tempcpt
    endif
    DO ENTRY
    if choice = 'R'
        loop
    else
        if choice = 'Q'
            close databases
```

BEST AVAILABLE COPY

5,253,164

59                                          60

```
        return
     endif
 endif
 if one_date .or. .not. get_date
    select process
    temp_date=code_date
    if code_count > 1
       DO MULTIPLE.prg        && exclude, replacement, QM rules
    endif
    DO RULES.PRG
 else
    select process
    go top
    temp_date=code_date
    set filter to endstatus $ 'AP' .and. code_date=temp_date
    go top
    count to code count
                   .. eof( ) ...
          go top
          do while .not. eo..) .and. code_date=temp_date
             if code_count > 1
                DO MULTIPLE.prg        && exclude, replacement, QM rules
             endif
             DO RULES.PRG
             select process
             set filter to code_date=temp_date
             go bott
             set filter to
             skip
             if eof()
                exit
             endif
             temp_date=code_date
             set filter to endstatus $ 'AP' .and. code_date=temp_date
             go top
             count to code_count
                go top
          enddo
       endif
       do recomm
       if clipper
          loop
       else
          if choice = 'N'
             loop
          endif
       endif
       exit
 enddo
 CLOSE DATABASES



 * ENTRY.PRG
 ** PAINT SCREEN

 select 3
 use supersed index supersed
 SET PROCEDURE TO PROCS1
 header= header1
 sup_date=ctod('  /  /  ')
 IF CLIPPER
    do setkey with .t.
 endif
 esc = .f.
 store space(5) to code1,code2,code3,code4,code5,code6,code7,code8
 help_field = 1
 dnkey = .f.
 uokey = .f.
 mode = 0
 see = .f.
 store ' ' to scrn1,scrn2,scrn3
 xcode_date = ctod('  /  /  ')
 get_date = .t.
 set date american
```

BEST AVAILABLE COPY

5,253,164

61                                                    62

```
@ 1,1 get header
**@ 23,1 get helpline9
**clear gets
**@ 6,6 say.'Enter claim number: '
**xclaim_no = space(10)
**@ 6,30 get xclaim_no
**read
**clear gets

**clear
**header8=company + space(18)+'CodeReview'+space(8) + 'Claim #: '+xclaim_no
**@1,1 get header8

@ 3,s_col say 'INPUT CODE'
@ 4,s_col to 4,s_col + 8
@ 3,c_col say 'DATE'
@ 4,c_col to 4,c_col + 3
@ 3,d_col SAY 'DESCRIPTION'
@ 4,d_col to 4,d_col + 10
@ 3,m_col-1 say 'CHARGE'
@ 4,m_col-1 to 4,m_col + 6
helpline = helpline9
@ 23,1 get helpline
clear gets


select process
set safety off
zap
set safety on

** MEMORY VARIABLES
choice = 'P'
help_on = .f.
LIN = '_'
row = 6
counter = 1
done = .f.
get_charge = .t.
add = t


SELECT PROCESS
append blank
replace begstatus with 'P',endstatus with 'P', session_no with session
do while .not. done
      store .f. to upkey,dnkey
      @ row;s_col say str(counter,2) + '.'
      DO GETCODE
      SELECT PROCESS
      if clipper
          if upkey
              row = row - 1
              counter = counter - 1
              skip - 1
              loop
          endif
      endif
      if .not. done .and. counter < 8
          counter = counter + 1
          save_rec = recno()
          go bott
          if recno() = save_rec
              append blank
              replace begstatus with 'P',endstatus with 'P', session_no ;
                  with session
          else
              go save_rec
              skip.
          endif
      endif
      row = counter + 5
enddo
do while .t.
   if clipper
       exit
   endif
   SELECT PROCESS
   choice = 'P'.
```

BEST AVAILABLE COPY

5,253,164

63                                                                              64

```
SET CONFIRM OFF
@ 23,10 get choice picture '!'
read
SET CONFIRM ON
if .not. (trim(choice) $ 'AHPRQ' .or. (val(choice) > 0 ;
                                      .and. val(choice) <= counter))

      ?? chr(7)
      loop
else
   mod_rec = val(choice)
   do case
      case choice = 'A' .or. val(choice) = counter
         IF COUNTER < 8
            done = .f.
            SELECT PROCESS
            append blank
            replace begstatus with 'P',endstatus with 'P'
            row = counter + 5
            @ row,s_col say str(counter,2) + '.'
            do getcode
            if .not. done      && code was added
               counter = counter + 1 && increment for next time around
            endif
         ENDIF

      case mod_rec > 0 .and. mod_rec < 10
         go mod_rec
         row = mod_rec + 5
                         getcode
         do getcode

      case choice = 'P'
         exit

      case choice = 'RQ'
         exit

      case choice = 'H'
         do help
   endcase
if choice $ 'RQ'
   return
endif
choice = 'P'
endif
enddo
if .not. esc
   helpline = helpline2
   @ 23,1 get helpline
   clear gets
   select process
   go bott
   if code = 0
      delete
      pack
   endif
   count to code_count
   set safety off
   select process
   set filter to endstatus = 'S'
   go top
   do while .not. eof()
      xreplace = replacedby
      sup_date=code_date
      append blank
      replace session_no with session,outcome with choice,code with;
              xreplace,begstatus with 'S',code_date with sup_date, ;
              endstatus with 'A'
      skip
   enddo
   set filter to
   set date ansi
   index on dtoc(code_date) + str(code,5) to process
   set filter to endstatus $ 'AP'
   count to code_count
   go top
   do while .not. eof()
      tem_date=code_date
```

5,253,164

BEST AVAILABLE COPY

65                                    66

```
         skip
         if code_date <> tem_date
            one_date = .f.
            exit
         endif
      enddo
      select 2
      use process index process
      select 3
      use
endif
IF CLIPPER
      do setkey with .f.
endif

return


* PROCS.PRG

PROCEDURE GETCODE
*
      tries = 1
      DO WHILE .T.
         SELECT PROCESS
         if code = 0
            xcode = space(5)
         else
            xcode = str(code,5)
         endif
         @ row,s_col get xcode picture '99999'
         help_field = 1
         read
         IF ESC
            return
         ENDIF
         if xcode = space(5)
            @ row,s_col say space(11)
            if upkey
               exit
            endif
            done = .t.
            if counter = 1 .and. clipper
               choice = 'Q'
            else
               choice = 'P'
            endif
            RETURN
         endif
         IF CLIPPER .and. help_on
            LOOP
         ENDIF
         replace code with val(xcode)
         SELECT ALLCODE
         set exact on
         SEEK PROCESS->code
         set exact off
         if .not. eof()
            SELECT SUPERSED
            SEEK PROCESS->code
            if .not. eof()
               select process
               replace endstatus with 'S',replacedby with ;
                   supersed->supercode
            else
               SELECT PROCESS
               if begstatus = 'P' .and. endstatus $ 'IS'
                  replace endstatus with 'P',replacedby with 0
               endif
            endif
            @ row,s_col say PROCESS->code picture '99999'
            @ row,d_col say allcode->titlek
         else
            if tries = 1
               ?? chr(7)
               mess = 'INVALID CODE !!'
               @ row,d_col say substr(mess + space(18),1,28)
               tries = 2
               loop
```

5,253,164

BEST AVAILABLE COPY

67                                             68

```
                    else
                         @ row,c_col say PROCESS->code picture '99999'
                         @ row,c_col say 'Invalid code will be ignored'
                         SELECT PROCESS
                         replace
                         ≈ ≈ set endstatus with 'I'
                         endif
                    endif
             SELECT PROCESS
             if get_date .and. .not. upkey .and. .not. dnkey .and. .not. done
                @ row,c_col get xcode_date
                help_field = 2
                read
                if esc
                     return
                endif
                if year(xcode_date) = 0 .and. counter = 1
                     get_date = .f.
                     @ row,c_col say space(8)
                     @ 3,c_col say space(5)
                     @ 4,c_col say space(5)
                else
                     @ row,c_col say dtoc(xcode_date)
                endif
                     replace code_date with xcode_date
             endif
             if counter = 1
                @ row,m_col-1 say '↑'
========       CHECK FOR DUPES
             else
                save_recno = recno()
                ycode_date = code_date
                go top
                locate for code=val(xcode) .and. recno()< save_recno ;
                         .and. code_date = ycode_date && .and. endstatus <> 'L'
                if .not. eof()
                     go save_recno
                     replace endstatus with 'L'
                else
                     go save_recno
                endif
             endif
             if get_charge .and. code <> 0 .and. .not. upkey .and..not. dnkey;
                         .and. .not. done
                @ row,m_col get claim_amt picture '99999'
                help_field = 3
                read
                if esc
                     return
                endif
                @ row,m_col say claim_amt picture '99999'
             endif
             if counter = 1
                if claim_amt = 0
                     get_charge = .f.
                     @ row,m_col - 2 say space(8)
                     @ 3,m_col-1 say space(7)
                     @ 4,m_col-1 say space(7)
                endif
             endif
             exit
          enddo
       RETURN

       PROCEDURE HELP
       *
       RETURN
       do setkey with .f.
       IF CLIPPER
          SAVE SCREEN
          HELP_ON = .T.
       ENDIF
       save_help = helpline
       helpline = helpline7
       @ 23,1 get helpline
       clear gets
       SELECT PROCESS
```

BEST AVAILABLE COPY

5,253,164

69                                                                                70

```
store SPACE(6) to help1,help2,help3,help4
if color
    SET COLOR TO &COLORH
endif
*@ 16,5 CLEAR TO 21,73
*@ 16,5 to 21,73  double
help_on = .t.
do case
    case help_field = 1
        mess = 'Enter the CPT-4 code as it appears on the claim form. ';
        + 'If you are unsure of the code, press <F2> to do a lookup by the ';
        + 'Index of the CPT-4 Manual'

        do format1 with mess,14,15,63
    case help_field = 2
        mess = 'Enter the date as it appears on the claim form. This is ';
        + 'optional'

        do format1 with mess,14,15,63

    case help_field = 3
        mess = 'Enter the dollar amount of the claim '
        do format1 with mess,14,15,63

    case choice = 'H'
help1 = '        "P" -- Process; all codes have been correctly input'
help2 = '        "A" -- Add another code'
help3 = '        "@" -- Enter line number to edit code already input'
help4 = '        "Q" -- Quit session'
    case code = 0
help1 = '            CPT-4 CODE ENTRY -- HELP SCREEN'
help3 = '    This is the help module for entry of a CPT-4 code '
help4 = '    In this case, the code has not yet been input'

    case begstatus = 'P' .and. endstatus = 'P'
help1 = '            CPT-4 CODE -- SUCCESSFUL ENTRY'
help2 = '        CPT-4 code has been successfully entered'
help4 = '        Both begstatus and endstatus are "P"'

    case endstatus = 'I'
help1 = '                INVALID CODE'
help2 = 'The CPT-4 code which has been entered is invalid.  The code'
help3 = 'may be either corrected or left as is.  Processing will continue'
help4 = 'and the program will simply ignore the any invalid codes'

    case begstatus = 'S' .and. endstatus = 'A'
help1 = '                SUPERSEDED CODE'
help2 = ' The code which was entered has been superseded by another'
help3 = ' code following rules in the September, 1987 "Manual of '
help4 = ' CPT-4 Codes"'

endcase

@ 17,8 say help1
@ 18,8 say help2
@ 19,8 say help3
@ 20,8 say help4
if color
    SET COLOR TO &COLORM
endif
help_on = .f.
IF CLIPPER
    do while inkey() <> 27
    enddo
    RESTORE SCREEN
    do setkey with .t.
ELSE
    @ 16,5 clear to 21,73
    helpline = save_help
    @ 23,1 get helpline
    clear gets
ENDIF
return


PROCEDURE SETKEY
*
```

BEST AVAILABLE COPY

5,253,164

71                                      72

```
parameter setflag
if setflag
     set key -4 to HIT_KEY
     set key -1 to HIT_KEY
     set key 5 to  upkey
     set key 27 to HIT_KEY
     set key 24 to dnkey
else
     set key -9 to       && F10
     set key -8 to
     set key -7 to       && F8
     set key -6 to
     set key -5 to
     set key -4 to       && F5
     set key -3 to
     set key -2 to
     set key -1 to       && F2
     set key 1 to        && home
     set key 3 to        && pagedn
     set key 4 to        && right
     set key 5 to        && upkey
     set key 6 to        && end
     set key 18 to       && pageup
     set key 19 to       && left
     set key 24 to       && downkey
     set key 27 to       && escape
endif
return


PROCEDURE HIT_KEY
*
parameter pn,p1,rv
DO CASE
        CASE LASTKEY() = 27
             CLEAR GETS
             DONE = .T.
             SELECT PROSPECT
             GO BOTT
             IF RECNO() = 1 .OR. EOF()
                      CHOICE = 'Q'
             ELSE
                      CHOICE = 'R'
             ENDIF
             ESC = .T.
             RETURN

        CASE LASTKEY() = -1
                          with .f.
             do setkey with .f.
             DO LOOKUP.prg
             do setkey with .t.

        CASE LASTKEY() = -4
             CLEAR GETS
             DONE = .T.
             CHOICE = 'P'
ENDCASE
RETURN

procedure upkey
*
if counter > 1
     keyboard chr(13)
     UPKEY = .T.
ENDIF
return

procedure dnkey
*
save_rec = recno()
go bott
if recno() > save_rec
        keyboard chr(13)
endif
dnkey = .t.
go save_rec
return
```

BEST AVAILABLE COPY

5,253,164

73                                    74

```
SET PROCEDURE TO action
select 4
use interact index interact

TEMP = 0
NUMCODE = 0
TTRIGGER = 0
NEW = 0
store .t. to again
k = 1

do while again

**   DO samecode
**   if code_cnt > 1
        DO exclude                  && Checks exclusion rules
      select process
**        set filter to endstatus $ 'AP' .and. code_date=temp_date
        go top
        code_cnt = 0
        count to code_cnt    && for endstatus $ 'AP' .and. code_date=temp_date
        if code_cnt > 1
          DO replace                          && Checks replacement rules
          count to code_cnt    && for endstatus $ 'AP' .and. code_date=temp_date
          if code_cnt > 1
            do rls                            && checks ri rules
          else
**            store .f. to again
            exit
          endif
        else
**          store .f. to again
          exit
        endif
**    else
**      store .f. to again
**      exit
**    endif
     enddo

     select process
     code_cnt = 0
     count to code_cnt for endstatus $ 'AP' .and. code_date=temp_date
     if code_cnt > 1
       DO query
     endif
     release all
     select interact
     use

RETURN

*** ACTION.PRG

*** 3/20/88 MODIFICATIONS

***   --PROCESS FILTER NOT TURNED OFF AT END OF EXCLUDE, SINCE SAME FILTER
***     IS USED IN KEEP
***   --INTERACT IS NOW INDEXED ON SUBSTR(ACODE,5) + RULE.  INSTEAD OF SETTING
***     FILTER, SEEK IS DONE TO ARRIVE AT APPROPRIATE RULE.
***   --RULE "K" CHANGED TO "E1"; RULE "E" CHANGED TO "E2"; THESE CHANGES MADE
***     IN INTERACT
***   --MEMORY VARIABLES NOT USED IN PROCESSING


PROCEDURE exclude

* --- checks rules for exclusion and makes appropriate changes
*
*
  select process
  set filter to endstatus $ 'AP' .and. code_date=temp_date
  GO TOP
  do while .nct. eof() .and. code_date=temp_date
     NUMCODE = 0
     TEMP = CODE
```

BEST AVAILABLE COPY

5,253,164

75                                                                          76

```
PROC_REC = RECNO()
SELECT INTERACT
SEEK str(TEMP,5) + 'E'
IF .NOT. FOUND()
   SELECT PROCESS
   GO PROC_REC
   SKIP
   LOOP
ENDIF
EXCL_REC = RECNO()

select process
go top
do while .not. eof() .and. code_date=temp_date
   if code = temp
      skip
      loop
   endif
   SELECT INTERACT                              && replacements
   GO EXCL_REC
   DO WHILE ACODE=TEMP .AND. substr(rule,1,1) = 'E' .and. .NOT. EOF()
      IF BCODE <= process->code .AND. process->code <= CCODE
         IF rule = 'E2'
            SELECT PROCESS
            REPLACE ENDSTATUS WITH "E", TRIGGER WITH TEMP, RULE WITH "E2"
            if interact->ecode<>0
               replace type with interact->ecode
            endif
            EXIT
         ELSE
            IF rule = 'E1'
               SELECT PROCESS
               temp_code = ccode
               temp_rec = recno()
               GO PROC_REC
               REPLACE ENDSTATUS WITH "E",TRIGGER WITH temp_code,RULE WITH "E1"
               if interact->ecode<>0
                  replace type with interact->ecode
               endif
               go temp    temp_rec
               EXIT
            ENDIF
         ENDIF
      ENDIF
      select interact
      SKIP
   ENDDO
   select process
   skip
ENDDO                                           && Loop 2
SELECT PROCESS
GO PROC_REC                                     && Moving to next code for evaluation
SKIP
enddo
SELECT INTERACT
**SELECT PROCESS
**SET FILTER TO
RETURN


PROCEDURE replace

* ---- checks replacement rules for eligible codes and makes proper replacements
*

   select interact
   select process
   go top

   DO WHILE .NOT. EOF() .and. code_date=temp_date
      NUMCODE = 0
      TEMP = CODE
      PROC_REC = RECNO()
      SELECT INTERACT
      SEEK str(TEMP,6) + 'R2'
      IF eof()
         SELECT PROCESS
```

BEST AVAILABLE COPY

5,253,164

77                                        78

```
      GO PROC_REC
      skip
      loop
   ENDIF
   REP_REC = RECNO()

   SELECT PROCESS
   30 TOP
   DO WHILE .not. eof() .and. code_date=temp_date
      SELECT INTERACT
      GO REP REC
      DO WHILE ACODE=TEMP .AND. rule = 'R2' .and. .NOT. EOF()
         IF ECODE = process->code
            NEW = CCODE
            SELECT PROCESS
            REPLACE ENDSTATUS WITH "R", TRIGGER WITH TEMP;
               REPLACEDBY WITH NEW, RULE WITH "R2", type with interact->code
            temp_rec = recno()
            temp_code = code
            ses_no = session_no
            GO PROC_REC
            REPLACE ENDSTATUS WITH "R", TRIGGER WITH temp_code;
               REPLACEDBY WITH NEW, RULE WITH "R2", type with interact->code
            rep_date=code_date
            append blank
            REPLACE SESSION_NO WITH ses_no, CODE WITH NEW;    WITH        code
               REGSTATUS/W "R "R", ENDSTATUS WITH "A", rep_date with rep_date
               STORE .F. TO AGAIN     GAIN TO AGAIN
            go temp_rec
            EXIT
         ENDIF
         select interact
         SKIP
      ENDDO
      select process
      skip
   ENDDO
   SELECT PROCESS
   GO PROC_REC
   SKIP
ENDDO
if .not. again
   store .t. to again
else
   store .f. to again
endif
select process
return


PROCEDURE query

*---- checks codes for QM,QS,QB rules and makes appropriate changes
*
*

**select interact
**set filter to rule ='QM'      && looking only at codes which have multiple
                                && code queries
select process
go top

do while .not. eof() .and. code_date=temp_date        && in process
   temp = code
   proc_rec = recno()
   select interact
   seek str(temp,5) + 'Q'
   if eof()
      select process
      go proc_rec
      skip
      loop
   endif
   quer_rec = recno()
   select process
   go top
   do while .not. eof() .and. code_date=temp_date       && in process
```

BEST AVAILABLE COPY

5,253,164

79                                              80

```
      if code = temp
         skip
         loop
      endif
      done=.t.
      select interact
      go quer_rec
      do while acode = temp .and. substr(rule,1,1) = 'Q' .and. .not. eof()
         if process->code >= bcode .and. process->code <= ccode
            do case
               case rule='QN'
                  replace process->endstatus with 'N', process->trigger with temp, ;
                     process->rule with rule, process->type with ecode
                              process
                  temp2 = proc ss->code
                  select proc..s
                  go proc_rec
                  replace endstatus with 'N', trigger with temp2, ;
                     rule with interact->rule, type with interact->ecode
                  done=.t.

               case rule='QS'
                  temp2=process->code
                  select process
                  go proc_rec
                  replace endstatus with 'Q', trigger with temp2, ;
                     rule with interact->rule, type with interact->ecode
                  done=.t.

               case rule='QB'
                  replace process->endstatus with 'Q', process->trigger with temp, ;
                     process->rule with rule, process->type with ecode
                  done=.t.

            endcase
            if done
               exit
            endif
         endif
         select interact
         skip
      enddo
      if done
         exit
      endif
      select process
      skip
   enddo
   select process
   go proc_rec
   skip
enddo
***select process
***select interact
return


PROCEDURE r1s

*----  Checks surviving codes for R1 rules and makes proper replacement
*
*

select interact
**set filter to rule = 'R1'

select process
go top

do while .not. eof() .and. code_date=temp_date      && in process
   temp=code
   proc_rec = recno()
   select interact
   go top
   seek str(temp,5) + 'R1'
```

BEST AVAILABLE COPY

5,253,164

81                                    82

```
if eof()
   select process
   go proc_rec
   skip
   loop
endif
R1_rec = recno()
select process
go top
select interact
go R1_rec
do while acode=temp .and. .not. eof() .and. rule='R1'     && in interact
   select process
   if code=temp
      skip
      select interact
      loop
   endif
   if interact->bcode<=code .and. code<=interact->ccode
      go proc_rec
      replace endstatus with '1', trigger with code;
      replacedby with interact->dcode, type with interact->ecode
      tem_date=code_date
      append blank
      replace code with interact->dcode, begstatus with '1';
      endstatus with 'A', code_date with tem_date, type with interact->ecode
      store .f. to again
      exit
   endif
   select interact
   skip
enddo
select process
count to code_cnt for endstatus $ 'AP' .and. code_date=temp_date
go top
if code_cnt <= 1
   exit
endif
go proc_rec
skip
enddo
return

PROCEDURE samecode
*
*
*  eliminates a code if it appears twice, and should not be accepted twice
*
select process
set filter to endstatus $ 'AP' .and. code_date=temp_date
go top
firstvcode
do while .not. eof() .and. code_date=temp_date
   xcode=code
   proc_rec=recno()
   skip
   do while .not. eof() .and. code_date=temp_date
      if code=xcode
         replace endstatus with 'L', trigger with xcode
         exit
      else
         skip
         loop
      endif
   enddo
   go proc_rec
   skip
   if code=first
      exit
   endif
enddo
select process
go top
code_cnt=0
count to code_cnt for endstatus $ 'AP' .and. code_date=temp_date
return

PROCEDURE limit_pay
```

BEST AVAILABLE COPY

5,253,164

83                                              84

```
* --- checks rules for payment limit due to code combination
*
*
    select 10
    use interact index interact
    select process
    set filter to endstatus $ 'AP' .and. code_date=temp_date
    GO TOP
    do while .not. eof() .and. code_date=temp_date
        NUMCODE = 0
        TEMP = CODE
        PROC_REC = RECNO()
        SELECT INTERACT
        SEEK str(TEMP,5) + 'L'
        IF .NOT. FOUND()
            SELECT PROCESS
            GO PROC_REC
            SKIP
            LOOP
        ENDIF
        lim_rec = RECNO()

        select process
        go top
        do while .not. eof() .and. code_date=temp_date     && in process
            if code = temp
                skip
                loop
            endif
            SELECT interact
            GO lim_rec
            DO WHILE acode=temp .AND. rule = 'L1' .and. .NOT. EOF()
                IF BCODE <= process->code .AND. process->code <= CCODE
                    SELECT PROCESS
                    temp1=code
                    temp_rec= recno()
                    go proc_rec
                    REPLACE ENDSTATUS WITH "U", TRIGGER WITH TEMP1, RULE WITH "L1" ;
                        pay with interact->dcode
                    go temp_rec
                    EXIT
                ENDIF
                select interact
                SKIP
            ENDDO                                    && in interact
            select process
            skip
        ENDDO                                        && Loop 2, in process
        SELECT PROCESS
        GO PROC_REC                                  && Moving to next code for evaluation
        SKIP
    enddo
    SELECT INTERACT
    use

**SET FILTER TO
RETURN

* RULES.PRG

select 5
use byitself index byitself

set procedure to prompts
need_clear = .f.
new_pos = 200
cur_row = 0
leftover = 0
code_text = ' '
cmess = ' '
prompt_ans = ' '
prompt_row = 16
                                                && check this with multiple codes !!
select process
set filter to endstatus $ 'AP' .and. code_date=temp_date .and. begstatus <> 'R'
count to code_cnt for endstatus $ 'AP' .and. code_date=temp_date .and. ;
    begstatus <> 'R'
go top
```

BEST AVAILABLE COPY

5,253,164

85                                                        86

```
IF CLIPPER
    SAVE SCREEN to rule_scrn
ENDIF

DO WHILE .NOT. EOF() .and. code_date=temp_date
    xcode = code
    xreview = ' '
    xsource = ' '
    failed = .f.
    note = .f.
    select byitself
    seek xcode
    if eof()
        SELECT PROCESS
        SKIP
        LOOP
    endif
    IF SINGLE
        IF CODE_CNT > 1
            select process
            skip
            LOOP
        ENDIF
    ENDIF
    rulecheck = byitself->rule
    do case
        case rulecheck = 'Q1'
            select process
            replace endstatus with 'Q', rule with 'Q1',type with ;
                byitself->messagetype

**      case rule = 'Q2'

        case rulecheck = 'Q3'
            dlim = '$'+ltrim(str(dollarlim,8))
            dline1 = substr('Under '+ dlim + space(25),1,28)
            dline2 = substr(dlim + ' or more' + space(25),1,29)
            dline3 = 'No charge is listed for ' + str(xcode,5)
            do ctext with xcode
            if need_clear
                do bott_clr
            endif
            do dollars
                                        Q.n2=
***             if prompt_an  = '1' ....

        case rulecheck = 'Q4'
            do ctext with xcode
            xmess = cmess
            do ctext with BYITSELF->codelim
            if need_clear
                do bott_clr
            endif
            do codelim

        case rulecheck = 'Q5'
            if process->begstatus = 'P'
                do ctext with xcode
            else
                cmess = 'the claim'
            endif
            if need_clear
                do bott_clr
            endif
            do pos

        case rulecheck = 'Q6'
            do ctext with xcode
            if need_clear
                do bott_clr
            endif
            do anesth

        case rulecheck = 'Q7'
            if need_clear
                do bott_clr
            endif
            do age
```

BEST AVAILABLE COPY

5,253,164

```
case rulecheck = 'Q8'
   if need_clear
       do bott_clr
   endif
   do diagnosis

case rulecheck = "Q9"
   if need_clear
      do bott_clr
   endif
   select process
   replace endstatus with 'D', rule with 'Q9', type with byitself->mesagetype ;
       replacedby with byitself->codelim
   append blank
   replace code with byitself->codelim, begstatus with 'D', endstatus with 'A';
       type with byitself->mesagetype

   endcase
   SELECT PROCESS
   SKIP
ENDDO
**select process
**set filter to

select byitself
use
if need_clear
    do bott_clr
endif
release rule_scrn
select process
count to code_count
if code_count > 1
    set procedure to action
    do lfmit_pay
    set procedure to
endif
return
*** prompts.prg
*
* POS_BOX
* POS
* DOLLARS
* AGE
* ANESTH


PROCEDURE POS_BOX
PARAMETERS BOX_ROW,BOX_COL
xpos = ' '

@ box_row+1,box_col+1 clear to box_row + 6, box_col + 52
@ box_row,box_col to box_row + 7, box_col + 53
@ box_row-1,box_col + 17 to box_row + 1, box_col + 36
@ box_row,  box_col + 18 say ' PLACE OF SERVICE '
if clipper
    @ box_row + 2, box_col + 4 prompt dline1
    @ box_row + 3, box_col + 4 prompt dline2
    @ box_row + 4, box_col + 4 prompt dline3
    @ box_row + 5, box_col + 4 prompt dline4
    @ box_row + 6, box_col + 4 prompt dline5
else
    @ box_row + 2, box_col + 3 say '1. ' + dline1
    @ box_row + 3, box_col + 3 say '2. ' + dline2
    @ box_row + 4, box_col + 3 say '3. ' + dline3
    @ box_row + 5, box_col + 3 say '4. ' + dline4
    @ box_row + 6, box_col + 3 say '5. ' + dline5
endif
RETURN

PROCEDURE DIA_BOX
PARAMETERS BOX_ROW,BOX_COL
xpos = ' '

@ box_row+1,box_col clear to box_row + 6, box_col + 53
@ box_row,box_col+1 to box_row + 7, box_col + 54
@ box_row-1,box_col + 18 to box_row + 1, box_col + 37
@ box_row,box_col + 17 say ' DIAGNOSIS/PROVIDER '
```

BEST AVAILABLE COPY

89                              5,253,164                              90

```
if clipper
    @ box_row + 2, box_col + 4 prompt dline1
    @ box_row + 3, box_col + 4 prompt dline2
    @ box_row + 4, box_col + 4 prompt dline3
    @ box_row + 5, box_col + 4 prompt dline4
else
    @ box_row + 2, box_col + 3 say '1. ' + dline1
    @ box_row + 3, box_col + 3 say '2. ' + dline2
    @ box_row + 4, box_col + 3 say '3. ' + dline3
    @ box_row + 5, box_col + 3 say '4. ' + dline4
endif
RETURN

PROCEDURE REC_BOX
PARAMETERS row_beg,col_beg,col_end
string = trim(message->tolookfor)
str_size = len(string)
max_size = col_end-(col_beg+6)-1
box2 = int((max_size-30)/2)
rows = int(str_size/(max_size-6))+1
** The "max" function forces top of box to row 1 if box is off screen
IF ROW_BEG < 0
     row_beg = max(2,(ROW_BEG + (-1)) - ROWS - 6)
ENDIF
cur_row = row_beg + 5

@ row_beg,col_beg-2 clear to row_beg + rows+4, col_end-1
@ row_beg-1,col_beg-3 to row_beg + rows+5,col_end
@ row_beg-2,col_beg+box2+5 to row_beg, col_beg +box2+34
@ row_beg-1,col_beg+box2+6 say ' CodeReview Recommendation '

    do while str_size > max_size
        counter = 0
        do while .t.
            if substr(string,max_size-counter+1,i) = ' '
                exit
            else
                counter = counter + 1
            endif
        enddo
        @ cur_row,col_beg+6 say substr(string,1,max_size - counter)
        cur_row = cur_row + 1
        str_size = str_size - max_size + counter - 1
        string = substr(string,max_size - counter + 2,str_size)
    enddo

    @ cur_row,col_beg+6 say string
    @ row_beg + 1, col_beg say dline1
    @ row_beg + 2, col_beg say dline2
    @ row_beg + 3, col_beg say dline3
    @ row_beg + 4, col_beg say dline4
    @ row_beg + 5, col_beg say dline5
RETURN

PROCEDURE DOL_BOX
PARAMETERS BOX_ROW,BOX_COL
xpos = ' '
@ box_row+1,box_col+1 clear to box_row + 4, box_col + 35
@ box_row,box_col to box_row + 5, box_col + 36
@ box_row-1,box_col + 10 to box_row + 1, box_col + 26
@ box_row,  box_col + 11 say ' CODE CHARGE '
if clipper
    @ box_row + 2, box_col + 4 prompt dline1
    @ box_row + 3, box_col + 4 prompt dline2
    @ box_row + 4, box_col + 4 prompt dline3
else
    @ box_row + 2, box_col + 3 say '1. ' + dline1
    @ box_row + 3, box_col + 3 say '2. ' + dline2
    @ box_row + 4, box_col + 3 say '3. ' + dline3
endif
RETURN

PROCEDURE CL_BOX
PARAMETERS BOX_ROW,BOX_COL
xpos = ' '
@ box_row+1,box_col+1 clear to box_row + 4, box_col + 72
@ box_row,box_col to box_row + 5, box_col + 73
```

5,253,164

BEST AVAILABLE COPY

91                                                                    92

```
@ box_row-1,box_col + 25 to box_row + 1, box_col + 47
@ box_row,  box_col + 28 say '  CHARGE COMPARISON '
if clipper
      @ box_row + 2, box_col + 3 prompt '1. ' + dline1
      @ box_row + 3, box_col + 3 prompt '2. '+ dline2
      @ box_row + 4, box_col + 3 prompt '3. '+ dline3
else
      @ box_row + 2, box_col + 3 say '1. ' + dline1
      @ box_row + 3, box_col + 3 say '2. ' + dline2
      @ box_row + 4, box_col + 3 say '3. ' + dline3
endif
return


PROCEDURE DIAGNOSIS
*

do helpline
mode = 0
need_clear = .t.
prompt_row=18
prompt_col=10
promptline = 'Which of the following information appears on the claim?'
do format2.prg with promptline,prompt_row-5,prompt_col,70
dline1 = (byitself->dx)+space(24)
dline2 = 'ICD9 code(s):  '+(byitself->ICD9code)+spaces(9)
dline3 = 'Provider = podiatrist, DRM, or foot doctor/group'
dline4 = 'None of the above'
do dia_box with prompt_row-2,14
do while .t.
    if clipper
        menu to mode
        prompt_ans = str(mode,1)
    else
        prompt_ans = ' '
        @ cur_row,(prompt_col+leftover+2) get prompt_ans picture '9'
        read
        if .not. prompt_ans $ '1234'
            mess = 'ENTER 1,2,3,or 4'
            DO MESSAGE.PRG
            loop
        endif
    endif
    exit
enddo
if prompt_ans $ '123'
    failed = .t.
    select process
    replace endstatus with 'D',rule with 'Q8',type with byitself->messagetype ;
        replacedby with byitself->codclim
    tem_date=code_date
    append blank
    replace code with byitself->codelim,begstatus with 'D',endstatus with 'A';
        type with byitself->messagetype, code_date with tem_date
    set filter to endstatus $ 'AP' .and. code_date=temp_date
    go top
endif
return


PROCEDURE POS
*

do helpline
mode = 0
need_clear = .t.
prompt_row = 18
prompt_col = 6
promptline =  'Enter the place of service for ' + cmess + ': '
do format2.prg with promptline,prompt_row - 5,prompt_col,70
dline1 = 'Inpatient Hospital'
dline2 = 'Outpatient Hosp./Emergency Dept./Surg. Center '
dline3 = 'Office'
dline4 = 'Place of service other than those listed above'
dline5 = 'Place or service is not provided on the claim '
do pos_box with prompt_row -2,14
do while .t.
    if clipper
        menu to mode
        prompt_ans = str(mode,1)
    else
        prompt_ans = ' '
```

5,253,164

BEST AVAILABLE COPY

93                                                          94

```
@ cur_row,(prompt_col+leftover+2) get prompt_ans picture '9'
read
if .not. prompt_ans $ '12345'
    mess = 'ENTER 1,2,3,4 or 5'
    DO MESSAGE.PRG
    loop
endif
endif
exit
enddo
select process
do case
    case prompt_ans = '1'
        replace POS with 'INP'
    case prompt_ans = '2'
        replace POS with 'OUT'
    case prompt_ans = '3'
        replace POS with 'OFF'
    case prompt_ans = '4'
        replace POS with 'OTH'
    case prompt_ans = '5'
        replace POS with 'NUL'
endcase

do case
    case byitself->pos = 'OFF'
        if prompt_ans $ '345'
            failed = .t.
        endif

    case byitself->pos = 'INP'
        if prompt_ans $ '145'
            failed = .t.
        endif

    case byitself->pos = 'OUT'
        if prompt_ans $ '245'
            failed = .t.
        endif

    case byitself->pos = 'NIP'
        if prompt_ans $ '2345'
            failed = .t.
        endif
endcase
if failed
    if byitself->codelim = 0
        select process
        replace endstatus with 'Q',rule with 'Q5',type with ;
            byitself->messagetype
    else
        select process
        replace endstatus with 'O',rule with 'Q5',replacedby with ;
            byitself->codelim,type with byitself->messagetype
        tem_date=code_date
        append,blank
        replace code with byitself->codelim,begstatus with 'O',endstatus ;
            with 'A',type with byitself->messagetype, code_date with tem_date
        set filter to endstatus $ 'AP' .and. code_date=temp_date
    endif
endif
return

PROCEDURE COLLARS
*
do helpline
mode = 0
need_clear = .t.
prompt_row = 18
prompt_col = 8
promptline = 'Enter the appropriate Code Charge as it appears on the claim ';
    + 'for the procedure ' + cmess + ': '
do format2.prg with promptline,prompt_row - 5,prompt_col,70
do dol_box with prompt_row,21
do while .t.
    if clipper
        menu to mode
        prompt_ans = str(mode,1)
```

BEST AVAILABLE COPY

5,253,164

95                                                                96

```
        else
            prompt_ans = ' '
            @ cur_row,(prompt_col+leftover+2) get prompt_ans picture '9'
            read
            If .not. prompt_ans $ '123'
                mess = 'ENTER 1,2,OR 3'
                DO MESSAGE.PRG
                loop
            endif
        endif
        exit
enddo
if prompt_ans $ '23'
    failed = .t.
    select process
    replace endstatus with 'Q',rule with 'Q3',type with byitself->messagetype
endif
return

PROCEDURE CODELIM
*
do helpline
mode = 0
need_clear = .t.
prompt_row = 16
prompt_col = 8
promptline = 'Please compare the charge on the claim for procedure ';
            + xmess + ' with the payment limit for procedure ';
            + cmess + ': '
dline1 = 'Charge for '+str(xcode,5) + ' is GREATER THAN payment limit ';
         + 'for ' + str(byitself->codelim,5) + space(8)

dline2 = 'Charge for '+str(xcode,5) + ' is LESS THAN OR EQUAL TO payment ';
         +'limit for ' + str(byitself->codelim,5)

dline3 = 'No charge is listed on the claim for ' + str(xcode,5) +space(20)
do format2.prg with promptline,prompt_row - 5,prompt_col,70
do cl_box with prompt_row,4
do while .t.
    if clipper
        menu to mode
        prompt_ans = str(mode,1)
    else
        prompt_ans = ' '
        @ cur_row,(prompt_col+leftover+2) get prompt_ans picture '9'
        read
        If .not. prompt_ans $ '123'
            mess = 'ENTER 1,2,OR 3'
            DO MESSAGE.PRG
            loop
        endif
    endif
    exit
enddo
if prompt_ans $ '13'
    failed = .t.
    select process
    replace endstatus with 'Q',rule with 'Q4',type with byitself->messagetype
endif
return

PROCEDURE AGE
*
age = ' '
if new_age = 200
    do helpline
    need_clear = .t.
    prompt_row = 18
    prompt_col = 10
    @ prompt_row,8 say ;
      "Enter the patient's date of birth or age, whichever is easier: "
    @ prompt_row + 2,15 say 'Date of Birth'
    @ prompt_row + 2,40 say 'Age'
    set date american
    do while .t.
        age = ' '
        dob = ctod('  /  /  ')
        @ prompt_row + 2,28 get dob
        read
```

BEST AVAILABLE COPY

5,253,164

97                                                                                      98

```
if dob = ctod(' /  / ')
         @ prompt_row + 2,29 say space(8)
         @ prompt_row + 2,44 get age
         read
         if age = ' '
              @ prompt_row + 2,44 say space(3)
              loop
         endif
    endif
    exit
enddo
if age <> ' '
    new_age = val(age)
else
    new_age = int((date()-dob)/365)
endif
endif
if new_age >= byitself->begage .and. new_age <= byitself->endage
    failed = .t.
    select process
    replace endstatus with 'Q',rule with 'Q7',type with byitself->mesagetype
endif
set date ansi
return

PROCEDURE ANESTH
*
do helpline
need_clear = .t.
prompt_row = 16
prompt_col = 8
promptline = 'For the procedure ' + cmess + ',is there a claim (from a ';
          + 'surgeon, an anesthesiologist, or a facility) that documents ';
          + 'the use of regional or general anesthesia ? (Y/N) '
do format2.prg with promptline,prompt_row,prompt_col,72
do while .t.
    prompt_ans = ' '
    @ cur_row,(prompt_col+leftover+2) get prompt_ans picture '!'
    read
    if .not. prompt_ans $ 'YN'
         ?? chr(7)
         loop
    endif
    exit
enddo
if prompt_ans = 'N'
    failed = .t.
    select process
    replace endstatus with 'Q',rule with 'Q6',type with byitself->mesagetype
endif
return

procedure ctext
*
parameter zcode
select allcode
seek zcode
cmess = str(zcode,5) + ' (' + trim(title4) + ')'
return

procedure review
*
parameter abbrev
do case
    case abbrev = 'RN'
         xreview = 'a nurse or surgical technician'
    case abbrev = 'MD'
         xreview = 'a physician'
    case abbrev = 'SP'
         xreview = 'a supervisor'
    case abbrev = 'AD'
         xreview = 'an adjuster'
    case abbrev = 'CL'
         store .t. to note
endcase
return

procedure source
*
```

BEST AVAILABLE COPY

5,253,164

.99                                          100

```
* NOTE: message.dbf is selected
do case
    case op
        xsource = 'the operative report reviewed'
    case path
        xsource = 'the pathology report reviewed'
    case off
        xsource = 'the office records reviewed'
    case hos
        xsource = 'the hospital progress report reviewed'
    case other
        xsource = 'other related claim(s) reviewed'
    otherwise
        xsource = 'the claim reviewed'
endcase
return

procedure helpline
*
@ 1,1 get header
helpline = space(78)
@ 23,1 get helpline
clear gets
return

procedure bott_clr
*
If CLIPPER
    RESTORE SCREEN from rule_scrn
else
    @ 16,1 clear to 22,78
ENDIF
need_clear = .f.
return

*****recomm.prg
******CREATE NEW.DBF
select 6
use message index message
select process
set index to
SET FILTER TO ENOSTATUS $ 'PAQMU'            && ACCEPTED CODES ONLY
SET RELATION TO REPLACEDBY INTO ALLCODE      && TO GET JITLE4
GO TOP
REPLACE ALL RVU WITH ALLCODE->RVU
xcount = 0
count to xcount
SET SAFETY OFF
if xcount > 1
    SORT TO NEW ON RVU/D
else
    copy to new
endif                    && SORT IN RVU ORDER (DESCENDING ORDER)
SET SAFETY ON
SET FILTER TO
SET RELATION TO
GO TOP

** ENTRY.PRG
SET PROCEDURE TO lines
****RELEASE ALL
***SET UP SCREEN

SELECT 10
use new
** MEMORY VARIABLES

inv_mess= 'INVALID:  This invalid code has been ignored by CodeReview.'
sup_mess= 'SUPERSEDED:  This code has been replaced by an updated CPT-4 code.'
acc_mess= 'ACCEPTED:  This code has been accepted with no change.'
rep_mess= 'REPLACED:  In combination, these codes justify replacement by '
exc_mess= 'EXCLUDED:  This code is a part of '
o_mess  = 'QUESTIONABLE:  Press <F7> for further information.'
query_mess= 'QUESTIONABLE:  This combination is unlikely. Press <F7> for further ';
    + space(5) + chr(178) + space(21)+ 'information.'
lab_mess= 'EXCLUDED:  This procedure is incidental to the accepted code(s).'
o_mess  = 'REPLACED:  This code has been replaced by the code below. Press <F7>';
+space(5) + chr(178) + space (21)+ 'for further information.'
r_mess = 'REPLACED:  This code has been replaced by the code below.'
```

BEST AVAILABLE COPY

5,253,164

101                                102

```
lys_mess='EXCLUDED: This procedure is incidental to the accepted code(s), but';
+space (23)+ 'if the diagnosis is infertility/sterility, accept it.'
app_mess='EXCLUDED: When performed with another abdominal procedure,         ';
+'                              appendectomy is virtually always incidental.'
an_mess='EXCLUDED:  84450 is inappropriate to use for local anesthesia.'
l_mess= 'EXCLUDED: because this code can not be accepted twice.'
lim_mess='LIMIT PAYMENT: of this code to $ '

store 0 to clear_rec1,clear_rec2,clear_rec3,clear_rec4,clear_rec5,clear_rec6,;
          clear_rec7,clear_rec8
store 0 to clear_row1,clear_row2,clear_row3,clear_row4,clear_row5,clear_row6,;
          clear_row7,clear_row8
clear_cnt = 0
choice = 'E'
repeat = .f.
moreinfo = .f.
store ' ' to rec_scrn1
store ' ' to rec_scrn2
help_on = .f.
row = 9
counter = 1
done = .f.
new2 = ' '
add = .t.
box = .f.
helpline = helpline3
SELECT PROCESS
go top
if claim_amt > 0.
    say_amt = .t.
==    say_amt = .f.
else
    say_amt = .f.
endif
set filter to begstatus = 'P'
SET RELATION TO CODE INTO ALLCODE
go top.
counter = 1
row = counter + 5
set relation to
select new
set relation to code into allcode
go row
mess_row = 14
outrow = 17
counter = 1
do while .not. eof() .and. code <> 0
    if endstatus $ 'QM'
        @outrow,s_col+4 say '??'
    endif
    set date american
    @ outrow,s_col say str(counter,2) + '. '
    @ outrow,e_col SAY STR(code,5)
    @ outrow,d_col say allcode->title4
    if code_date <> ctod('  /  /  ')
        @ outrow,c_col say code_date
    endif
    if say_amt
        if counter = 1 .and. allcode->pay<>' BR  '
            @ outrow,m_col-1 say '$'
        endif
        @ outrow,m_col say allcode->pay
    endif
    counter = counter + 1
    outrow = outrow + 1
    skip
enddo
select new
set relation to
go top
select process
go top
row = 6
outrow = 17
first_time = .t.
@ 14,s_col say 'RECOMMENDATION'
@ 15,s_col to 15,s_col + 13
@ 23,1 get helpline
```

BEST AVAILABLE COPY

5,253,164

103                                         104

```
clear gets
IF CLIPPER
    save screen to rec_scrn1
ENDIF
select process
set filter to begstatus $ 'P'
go top

do while .t.
    clear_cnt = 0
    @ 23,1 get helpline
    clear gets
    if clipper
        if repeat
            moreinfo = .f.
            first_time = .t.
            repeat = .f.
            restore screen from rec_scrn1
        endif
        temp = ' '
        keyboard chr(12)
        do while .t.
            keyboard chr(12)
            @ 23,78 get temp
            read
            do case
            case lastkey() = 27
                done = .t.
                exit

            case lastkey() = 13
                if moreinfo
                    restore screen from rec_scrn2
                    moreinfo = .f.
                    set key -6 to moreinfo
                endif
                EXIT

            endcase
        enddo
        keyboard chr(12)
    else
        choice = 'X'
        do while .t.
            SET CONFIRM OFF
            @ 23,10 get choice picture 'I'
            read
            SET CONFIRM ON
            if .not. choice $ 'XNQ'
                ?? chr(7)
                loop
            else
                exit
            endif
        enddo
        if choice $ 'NQ'
            done = .t.
        endif
    endif
    if done
        exit
    endif
******

@ 15,s_col to 15,s_col + 13

    @ 14,s_col say ' '
    @ 15,s_col say ' '
    select process
    if .not. first_time
        @ row,s_col + 6 clear to outrow,s_col - r    && moved from below
        @ mess row,6 clear to mess row+1,78          && moved from below
        @ row,s_col say str(row-5,2) + ' . ' + str(code,5)
        select new
        @ outrow,s_col say str(recno(),2) + ' . ' + str(code,5)
                                NO
        if endstatus $ 'P
            @outrow,s_co. 4 say '??'
            if '.' $ new2
```

BEST AVAILABLE COPY

5,253,164

105                                              106

```
            outrow = new2_row
            @ outrow,s_col-4 say '??'        && for clearing arrows
            @ new2_row,s_col say new2
            'new2 = ' '
         endif
      endif
      @ row,s_col - 8 clear to outrow,s_col - 1
      @ mess_row,6 clear to mess_row+1,78
      select process
      save_place = recno()
      counter = 1
      K = '1'
      do while clear_rec&K <> 0
         go top
         @ clear_row&K,s_col say str(clear_row&K-5,2)+'.  '+str(code,5)
         clear_rec&K = 0
         counter = counter + 1
         K = str(counter,1)
      enddo
      go save_place
      skip
      if eof()
         repeat = .t.
         row = 6
         go top
         loop
      else
         row = row + 1
      endif
      do while skipover
         skip
         if eof()
            repeat = .t.
            row = 6
            go top
         else
            row = row + 1
         endif
      enddo
      if repeat
         loop
      endif
   else
      first_time = .f.
      if xcount = 1
         repeat = .t.
         loop
      endif
   endif
   temp1 = str(row-5,2) + '.  ' + str(code,5)
   do case
      case endstatus = 'I'
         @ row,s_col get temp1
         do first_in with row
         if row+1 = mess_row -1
            @ row+1,1_col say chr(179)
         else
            @ row+1,1_col to mess_row-1,1_col
         endif
         do mid_out with mess_row
         @ mess_row,g_col say inv_mess

      case begstatus = 'P' .and. endstatus $ 'PU'
         SELECT NEW
         locate for c...p = PROCESS->code
         outrow = 17 + recno() - 1
         temp2 = str(recno(),2) + '.  ' + str(code,5)
         @ row,s_col get temp1
         clear gets
         do first_in with row
         @ row+1,1_col to outrow-1,1_col
         do last_out with outrow
         @ outrow,s_col get temp2
         clear gets
         if endstatus = 'P'
            @ mess_row,g_col say acc_mess
         else
            if endstatus = 'U'
               @ mess_row,g_col-2 say lim_mess + ltrim(str(pay,4))+ ;
               ', since it appears with '+ str(trigger,5) + '.'
```

5,253,164

BEST AVAILABLE COPY

107                                             108

```
      endif
      endif

case begstatus = 'P' .and. endstatus $ '1SUD'
      SELECT NEW
      locate for code = PROCESS->replacedby
      xtype = type
      outrow = 17 + recno() - 1
      temp2 = str(recno(),2) + '. ' + str(code,5)
      @ row,s_col get temp1
      clear gets
      do first_in with row
      @ row+1,1_col to outrow-1,1_col
      do last_out with outrow
      @ outrow,s_col get temp2
      clear gets
      do case

          case endstatus='S' .or. (endstatus='A' .and. begstatus = 'S')
              mess = sup_mess
              @ mess_row,g_col say mess


          case (endstatus='1' .or. (endstatus='A' .and. begstatus='1')) ;
              .and. xtype = 0
              mess = r_mess
              @ mess_row,g_col say mess


          case (endstatus='1' .or. (endstatus='A' .and. begstatus='1')) ;
              .and. xtype<>0
              select message
              seek xtype
              @ mess_row,g_col say 'REPLACED: '+ TRIM(tolookfor)
              @ row+1,1_col to outrow-1,1_col

          otherwise
              do moreinfo

      endcase

case begstatus = 'P' .and. endstatus = 'R'
      SELECT NEW
      locate for code = PROCESS->replacedby
      outrow = 17 + recno() - 1
      temp2 = str(recno(),2) + '. ' + str(code,5)
      @ row,s_col get temp1
      if process->type <> 0
          box = .t.
          xtype = process->type
      endif
      clear gets
      do first_in with row
      SELECT PROCESS
      cur_rec = recno()
      cur_row = row
      match = replacedby
      skip
      cur_row = row + 1
      do while .not. eof()
          if replacedby = match
              temp3=str(cur_row-5,2) + '. ' + str(code,5)
              clear_cnt = clear_cnt + 1
              X = str(clear_cnt,1)
              clear_row&X = cur_row
              clear_rec&X = recno()
              @ cur_row,s_col get temp3
              replace skipover with .t.
              clear gets
              do mid_in with cur_row
          else
              @ cur_row,1_col say chr(179)
          endif
          skip
          cur_row = cur_row + 1
      enddo
      go cur_rec
      if box
          do moreinfo
          @ cur_row,1_col to outrow-1,1_col
```

BEST AVAILABLE COPY

109                                                    110

```
        else
            @ mess_row,g_col say.rep_mess + str(replacedby,5)+'.'
            @ cur_row,l_col to outrow-1,l_col
        endif
        do last_out with outrow
        @ outrow,s_col get temp2
        if box
            do moreinfo
        endif
        box = .f.
        clear gets

    case begstatus = 'P' .and. endstatus = 'E'
        @ row,s_col get temp1
        do first_in with row
        if row+1 = mess_row -1
            @ row+1,l_col say chr(179)
        else
            @ row+1,l_col to mess_row-1,l_col
        endif
        do mid_out with mess_row
        do case
            case code=44850 .or. code=44855
                @ mess_row,g_col say app_mess

            otherwise
                save_spot = recno()
                xtrigger = trigger
                if type <> 0
                    box = .t.
                endif
                xtype = type
                go top
                locate for code = xtrigger
                do case
                    case
                    -c * @ endstatus = 'E'
                        xtrigger = trigger
                    case endstatus = 'R'
                        xtrigger = replacedby
                endcase
                go save_spot
                if box .and. xtype <> 49001
                    select message
                    seek xtype
                    @ mess_row,g_col say 'EXCLUDED: '+ TRIM(tolookfor)
                else
                    if xtype = 49001
                        select message
                        seek xtype
                        @ mess_row,g_col say 'EXCLUDED:  ' +trim(tolookfor) ;
                        + '  ' +str(xtrigger,5)+'.'
                    else
                        @ mess_row,g_col say exc_mess+str(xtrigger,5)+'.'
                    endif
                endif
                box = .f.
        endcase
    case begstatus = 'P' .and. endstatus = 'N'
        match = trigger
        SELECT.NEW
        locate for (code=PROCESS->code) .or. code = match
        outrow = 17 + recno() - 1
        temp2 = str(recno(),2) + '.  ' + str(code,5)
        @ row, s_col get temp1
        do first_in with row
        SELECT PROCESS
        cur_rec = recno()
        cur_row = row
        match = trigger
        skip
        cur_row =.row + 1
        do while .not. eof()
            if code = match
                temp3 = str(cur_row-5,2) + '.  ' + str(code,5)
                clear_cnt = clear_cnt + 1
                K = str(clear_cnt,1)
```

94

5,253,164

BEST AVAILABLE COPY

**111**

**112**

```
       clear_row&K = cur_row
       clear_rec&K = recno()
       @ cur_row,s_col get temp3
       replace skipover with .t.
       clear gets
       do mid_in with cur_row
     else
       @ cur_row,l_col say chr(179)
     endif
     skip
     cur_row = cur_row + 1
 enddo
 @ cur_row,l_col to outrow-1,l_col
 go cur_rec
 do ques_hi with outrow
 @ outrow,s_col get temp2
 cur_row = outrow + 1
 clear gets
 select new
 sav_newrec = recno()
 skip
 do while .not. eof()
     if code = match .or. code = process->code
       new2 = str(recno(),2) + '.  ' + str(code,5)
         new2 = new
       new2   w = cur_row
       @ cur_row,s_col get new2
       clear gets
       do ques_out with cur_row
       exit   && limited to 2 codes
     else
       @ cur_row,l_col say chr(179)   && only if > 2 codes
     endif
     skip
     cur_row = cur_row + 1
   enddo
   go sav_newrec
   @ mess_row,g_col say qusry_mess
   do moreinfo

  case begstatus = 'P' .and. endstatus = 'Q'
      SELECT NEW
      locate for code = PROCESS->code
      outrow = 17 + recno() - 1
      temp2 = str(recno(),2) + '.  ' + str(code,5)
      @ row,s_col get temp1
      clear gets
      do first_in with row
      @ row+1,l_col to cutrow-1,l_col
      do ques_out with outrow
      @ outrow,s_col get temp2
      clear gets
      @ mess_row,g_col say q_mess
      do moreinfo

  case begstatus='P' .and. endstatus='L'
      @ row,s_col get temp1
      do first_in with row
      if row+1 = mess_row -1
        @ row+1,l_col say chr(179)
      else
        @ row+1,l_col to mess_row-1,l_col
      endif
      do mid_out with mess_row
      @ mess_row,g_col say l_mess

   endcase
ENDDO
select 2   && process
use process
**set filter to
**go top
**select 9                        && Adding records to HISTROY.dbf
**use history                     && to keep a log file
**append from process             && commented out, no need for demo
**select 9
**use
**select new
```

5,253,164

BEST AVAILABLE COPY

113          114

```
**use
return

PROCEDURE MOREINFO
*
set key -6 to
set procedure to
**clear gets
moreinfo = .t.
xreview = ' '
cmess = ' '
xsource = ' '
save screen to rec_scrn2------
select process
xcode = code
do case
    case endstatus = 'Q'

        select message
        seek process->type
        xreviewer = reviewer
        note = .f.

        do review with xreviewer
        if note
            mess = trim(message->tolookfor)
            set color to &colorh
            do format1.prg with mess,-15,24,78
            set color to &colorm
        else
            do source
            string = ' '
            store 0 to cur_row, col_beg, col_end, row_beg
            dline1 = 'Before accepting code '+str(xcode,5)+':'
            dline2 = ' '
            dline3 = 'HAVE: '+xsource
            dline4 = '  BY: '+xreview
            dline5 = ' WHY: '
            set color to &colorh
            do rec_box with -17,24,78
            set color to &colorm
        endif
        store .f. to note
        set procedure to lines

    case endstatus = 'M'
        select message
        seek process->type
        xreviewer = reviewer
        note = .f.
        do review with xreviewer
        if note
            mess = trim(message->tolookfor)
            set color to &colorh
            do format1.prg with mess,-15,24,78
            set color to &colorm
        else
            do source
            string = ' '
            store 0 to cur_row, col_beg, col_end, row_beg
            dline1 = 'Before accepting these codes'
            dline2 = ' '
            dline3 = 'HAVE: '+xsource
            dline4 = '  BY: '+xreview
            dline5 = ' WHY: '
            set color to &colorh
            do rec_box with -17,24,78
            set color to &colorm
        endif
        store .f. to note
        set procedure to lines

    case begstatus $ 'RDOE' .or. endstatus $ 'RDOE'
        select message
        seek process->type
        mess = trim(message->tolookfor)
        set color to &colorh
        do format1.prg with mess,-15,24,78
        set color to &colorm
```

BEST AVAILABLE COPY

5,253,164

115                                                    116

```
      store .t. to note
      set procedure to llar l.no
   endcase

   return

   * MESSAGE.PRG
   *
   rmess ='<Enter> '+chr(17)+chr(198)+chr(217)+' to continue '
   rmess= substr(space(17) + rmess + space(40),1,62)
   @ 23,1 say space(78)
   @ 23,9 get rmess
   clear gets
   ?? chr(1)
   do while inkey() <> 13
   enddo
   @ 23,1 say space(78)
   @ 23,1 get helpline
   clear gets
   return
   * format2.prg
   parameters string,row_beg,col_beg,col_end

   cur_row = row_beg + 1
   string = trim(string)
   str_size = len(string)
   MAX_SIZE = COL_END - COL_BEG - 1
   box2 = int((max_size - 30)/2)
   rows = int(str_size / (max_size-8)) + 1
   do while str_size > max_size
       counter = 0
       do while .t.
           if substr(string,max_size-counter+1,1) = ' '
               exit
           else
               counter = counter + 1
           endif
       enddo
       @ cur_row,col_beg say substr(string,1,max_size - counter)
       cur_row = cur_row + 1
       str_size = str_size - max_size + counter - 1
       string = substr(string,max_size - counter + 2,str_size)
   enddo
   @ cur_row,col_beg say string
   leftover = len(string)
   return
   * format1.prg
   parameters string,row_beg,col_beg,col_end
   title = ' CodeReview Recommendation '
   string = trim(string)
   str_size = len(string)
   MAX_SIZE = COL_END - COL_BEG - 1
   rows = int(str_size / (max_size-8)) + 1
   box2 = int(max_size - 30)/2)
   ** The "max" function forces top of box to row 1 if box is off screen
   IF ROW_BEG < 0
       row_beg = max(1,(ROW_BEG * (-1)) - ROWS)
   ENDIF
   cur_row = row_beg + 1
   @ row_beg,col_beg-2 clear to row_beg + rows,col_end-1
   @ row_beg-1,col_beg-3 to row_beg + rows + 1, col_end
   @ row_beg-2,col_beg+box2 to row_beg,col_beg+box2+28
   @ row_beg-1,col_beg+box2+1 say title
   do while str_size > max_size
       counter = 0
       do while .t.
           if substr(string,max_size-counter+1,1) = ' '
               exit
           else
               counter = counter + 1
           endif
       enddo
       @ cur_row,col_beg say substr(string,1,max_size - counter)
       cur_row = cur_row + 1
       str_size = str_size - max_size + counter - 1
       string = substr(string,max_size - counter + 2,str_size)
   enddo
   @ cur_row,col_beg say string
   return
```

5,253,164

117

What is claimed is:

1. In a computer system having means for operating on a predetermined database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when input with other selected ones of the medical service codes, a method for processing input claims containing at least one medical service code; comprising the steps of:

receiving at least one claim;

determining whether any medical service code contained in the at least one claim is not present in the predetermined database; and

informing a user that a medical service code is not contained in the predetermined database.

2. In a computer system having means for operating on a predetermined database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when input with other selected ones of the medical service codes, a method for processing input claims containing at least one medical service code, comprising the steps of:

receiving at least one claim;

ascertaining whether the at least one claim contains a plurality of medical service codes;

determining whether one of the medical service codes in the at least one claim is mutually exclusive due to non-medical criteria with any other medical service code in the at least one claim;

authorizing medical service codes which are not mutually exclusive due to non-medical criteria with any other medical service codes contained in the at least one claim in response to the determining step; and

rejecting medical service codes which are mutually exclusive due to non-medical criteria with any other medical service codes contained in the at least one claim in response to the determining step.

3. A computer system including a central processing unit and associated memory for processing input claims containing at least one medical service code, comprising:

a predetermined database stored in the associated memory, the database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when received with other selected ones of the medical service codes;

means for receiving at least one claim;

means for ascertaining whether the at least one claim contains a plurality of medical service codes;

means for determining whether one of the medical service codes in the plurality of medical service codes is valid or invalid by interacting with the database and the set of relationships contained in the database;

means for authorizing medical service codes which are valid in response to the means for determining; and

means for rejecting medical service codes which are invalid in response to the means for determining.

4. The apparatus of claim 3, further comprising means for revising the at least one claim to delete invalid medical service codes.

118

5. The apparatus of claim 4, further comprising means for informing a user why the at least one claim was revised.

6. The apparatus of claim 3, wherein the database containing medical service codes includes medical service codes described by CPT codes.

7. The apparatus of claim 3, wherein the database containing medical service codes includes medical service codes described by CRVS codes.

8. The apparatus of claim 3, further comprising means for requesting further information from a user regarding the at least one claim.

9. The apparatus of claim 3, wherein the relationships among the medical service codes include medically determined relationships.

10. A computer system including a central processing unit and associated memory for processing input claims containing at least one medical service code, comprising:

a predetermined database stored in the associated memory, the database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when received with other selected ones of the medical service codes;

means for receiving at least one claim;

means for ascertaining whether the at least one claim contains a plurality of medical service codes;

means for determining whether one of the medical service codes in the at least one claim is included in any other medical service code in the at least one claim;

means for authorizing medical service codes which are not contained in any other medical service code; and

means for rejecting medical service codes which are contained in any other medical service code.

11. The apparatus of claim 10, further comprising means for revising the at least one claim to not include a rejected medical service code.

12. A computer system including a central processing unit and associated memory for processing input claims containing at least one medical service code, comprising:

a predetermined database stored in the associated memory, the database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when received with other selected ones of the medical service codes;

means for receiving at least one claim;

means for ascertaining whether the at least one claim contains a plurality of medical service codes;

means for determining whether one of the medical service codes in the at least one claim is medically exclusive with any other medical service code in the at least one claim;

means for authorizing medical service codes which are not medically exclusive with any other medical service codes contained in the at least one claim in response to the means for determining; and

means for rejecting medical service codes which are medically exclusive with any other medical service codes contained in the at least one claim in response to the determining step.

5,253,164

119

13. A computer system including a central processing unit and associated memory for processing input claims containing at least one medical service code, comprising:

   a predetermined database stored in the associated memory, the database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when received with other selected ones of the medical service codes;

   means for receiving at least one claim;

   means for determining whether any medical service code contained in the at least one claim is not present in the predetermined database; and

   means for informing a user that a medical service code is not contained in the predetermined database.

14. A computer system including a central processing unit and associated memory for processing input claims containing at least one medical service code, comprising:

   a predetermined database stored in the associated memory, the database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when received with other selected ones of the medical service codes;

   means for receiving at least one claim;

   means for ascertaining whether the at least one claim contains a plurality of medical service codes;

   means for determining whether one of the medical service codes in the at least one claim is mutually exclusive due to non-medical criteria with any other medical service code in the at least one claim;

   means for authorizing medical service codes which are not mutually exclusive due to non-medical criteria with any other medical service codes contained in the at least one claim in response to the means for determining; and

   means for rejecting medical service codes which are mutually exclusive due to non-medical criteria with any other medical service codes contained in the at least one claim in response to the means for determining.

120

15. A computer system including a central processing unit and associated memory for processing input claims containing at least one medical service code, comprising:

   a predetermined database stored in the associated memory, the database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when received with other selected ones of the medical service codes;

   means for receiving at least one claim;

   means for ascertaining whether the at least one claim contains a plurality of medical service codes;

   means for determining whether one of the medical service codes in the plurality of medical service codes is valid or invalid by interacting with the database and the set of relationships contained in the database;

   means for authorizing the at least one claim in response to the means for determining; and

   means for rejecting the at least one claim in response to the means for determining.

16. In a computer system having means for operating on a predetermined database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when input with other selected ones of the medical services codes, a method for processing input claims containing at least one medical service code, comprising the steps of:

   receiving at least one claim;

   ascertaining whether the at least one claim contains a plurality of medical service codes;

   determining whether one of the medical service codes in the plurality of medical service codes is valid or invalid by interacting with the database and the set of relationships contained in the database;

   authorizing the at least one claim in response to the determining step; and

   rejecting the at least one claim in response to the determining step.

*  *  *  *  *

**Exhibit B**

# An Access-oriented Negotiated Fee Schedule

*The Caterpillar Experience*

RICHARD H. EGDAHL, M.D. and ROBERT D. HERTENSTEIN, M.D.

From the Department of Surgery and Health Policy Institute, Boston University Medical Center, Boston, Massachusetts, and Caterpillar Corporation, Peoria, Illinois

This paper describes the system used by Caterpillar Corporation (CAT) in Peoria, Illinois, to reimburse surgeons. The CAT system assures access for Caterpillar employees and their families to a selection of qualified surgeons, while achieving cost savings through improvements in processing of surgical claims and negotiation of selected fees. CPT-4 codes are recoded for greater accuracy, when indicated, surgical services that have been incorrectly unbundled are rebundled, and the appropriateness of surgical assistant charges is reviewed. A "degree of difficulty" relative value scale (DODRVS) of surgical services is periodically revised as technology changes. The DODRVS multiplied by a regional factor, determined by local market research, establishes the fee that CAT will pay the surgeon. Balance billing is permitted if the patient (1) is informed in advance by the surgeon that the fee will be higher than CAT will pay, and (2) knows that the service can be obtained from other local surgeons who will accept the CAT fee. The goal of the CAT method of surgeon reimbursement is to gain physician support for an access-oriented, market-driven negotiated fee schedule. Compared with a resource-based relative value scale (RBRVS) methodology, the CAT system is not formula-driven and depends on physician acceptance.

F OR MORE THAN 25 years, physicians have benefited from a generous fee-for-service system of payment. However, between 1965 and 1985, national expenditures for physicians' services have increased almost tenfold, from $8.5 billion in 1965 to $82.8 billion in 1985.[1] As a result, several possible physician payment reforms are being considered. Prospective payment by diagnostic-related groups (DRGs), put in place to control Medicare hospital expenditures, is a fact of life for hospitals. Medicare and Medicaid are now pushing for changes in the way they pay physicians. Managed care programs are negotiating discounts from all types of health care providers.

Reform activity can be identified on many fronts: (1) Congress has frozen Medicare fees, effective June 1984 through January 1987. Congress' intent is now to shift the burden of effectively constraining the growth of Medicare Part B costs to providers rather than Medicare beneficiaries. (2) The Physician Payment Review Commission, created by Congress, has issued a recent major report, outlining ways that physicians could be reimbursed under Medicare in the future.[2] (3) In fall 1985, the Health Care Financing Administration (HCFA) contracted with Harvard University to conduct a 30-month study of resource-based relative value scales (RBRVS) for physician services.[3] This system is being developed under the direction of William Hsiao, Ph.D., Harvard School of Public Health. The American Medical Association is a subcontractor on the study for HCFA. The study is scheduled to be completed in July 1988. (4) The Massachusetts Rate Setting Commission is revising its Medicaid fee schedule, based on the RBRVS, for planned application in mid-1987. (5) The Massachusetts Insurance Commissioner asked Blue Shield to consider reforms in physician payment, with an emphasis on developing an RBRVS, as a condition of his approving a Blue Shield rate increase in 1987. (6) Congressional hearings on physician fee schedules continue, and congressionally sponsored studies of physician fees have recently been published.[4,5]

Within the administration in Washington, proponents of physician fee reform are calling for an expanded use of capitation in the long term, or some form of physician DRGs.[6] But these changes are not imminent. During the next several years, fee payment modifications will be based on fee-for-service recalculations. If the revised physician fee schedules achieve acceptable levels

Presented at the 107th Annual Meeting of The American Surgical Association, Palm Beach, Florida, April 21–23, 1987.

Reprint requests: Richard H. Egdahl, M.D., Boston University Medical Center, 720 Harrison Avenue (1107), Boston, MA 02118.

Submitted for publication: April 24, 1987.

EGDAHL AND HERTENSTEIN

Ann. Surg. • September 1987

TABLE 1. *Medicare Prevailing Fees ($, 1984)\**

| State | CABG | Appendectomy | Cataract |
|---|---|---|---|
| New York | 6000 | 1134 | 1547 |
| Michigan | 3100 | 399 | 825 |
| Rhode Island | 2587 | 516 | 928 |

\* The charges indicated are for specialists and for the large urban areas within the states listed.

From the U.S. Department of Health and Human Services, Health Care Financing Administration. Medicare Directory of Prevailing Charges 1984. Washington DC: U.S. Government Printing Office, 1984.

of patient access and physician support, they will be part of the blueprint for future health care delivery in both private and public arenas.

## Background

Medicare's "customary, prevailing, and reasonable" (CPR) payment system is, by general consensus, unsatisfactory in today's competitive market in health services. There are many problems associated with CPR. It tends to be inflationary and slow to respond to alternatives in technology and changes in both availability of physicians and need for services. Some charges appear excessive to most observers, even taking into account geographic cost-of-living variations and other variables. For example, under Medicare, the cost of a triple vessel CABG (coronary artery bypass graft) in New York in 1984 was $5500. The cost of this same procedure in Michigan was $3100 and $2587 in Rhode Island (Table 1).

Similar variations are found in fees from the private sector. For example, unexplained fee variations exist in managed health care models such as independent practice associations (IPAs). Hip replacement at three different IPAs in the eastern part of the country ranged from $2808 to $4274 (see Table 2).

Noting these wide discrepancies, the federal government and a number of large private purchasers of health services have turned their attention to the ways physicians are compensated for the care they provide. Fundamental changes in the methodology of physician reimbursement are being discussed. Serious consideration

TABLE 2. *Fee Variations in 3 IPAs, 1986 Fees ($)\**

| Operation | Plan #1 | Plan #2 | Plan #3 |
|---|---|---|---|
| Appendectomy | 645 | 950 | 1111 |
| Cholecystectomy | 1055 | 1465 | 1710 |
| Cataract removal | 1280 | 1650 | 1980 |
| Hip replacement | 2808 | 3666 | 4274 |
| CABG (3-vessel) | 4690 | 6123 | 7139 |

\* Plan names withheld because fees were given in confidence to Health Policy Institute by IPA executives.

is being given to systems that would pay physicians by capitation or by including the physician payment with the hospital DRG payment. However, both options represent a radical departure from the current system and are viewed as politically unrealistic, at least in the short term.

Several interim remedies are being devised, however. One approach adjusts a few fees that are grossly out of line. Invoking "inherent reasonableness" authority, HCFA uses this approach to reduce payments for "overpriced" procedures. Although corrections have been made for a few services such as cataract removal and installation of pacemakers, most physician payments currently are based on historic trends.

Another approach used by HCFA to control "runaway" costs involves a recalculation of the Medicare Economic Index (MEI), an inflation index for increases in physician office expenses that result from inflation.[7] HCFA estimates that this downward modification in the MEI will save Medicare an increasing amount of money.

Another approach, more far-reaching in concept than the interim measures described previously, but less radical than capitation and physician DRGs, was tried by the Boston University Health Policy Institute (BUHPI) in the fall of 1984.[8] BUHPI compiled a group of 12 Massachusetts surgeons in a pilot effort to develop a complexity-severity index (C/S index) of surgical services, based on professional judgment, that could provide the basis for a relative value scale.

Building this kind of index, although intuitively appealing, proved time consuming and cumbersome. It also raised questions of antitrust. The Federal Trade Commission has barred professional groups from developing relative values guides on the grounds that such guides ". . . established by competitors in a commercial context, probably would constitute illegal price fixing because the dissemination of information and agreement on establishment of price structures usually lead to price uniformity and stabilization."[9]

In this pilot study, BUHPI identified a private corporation that had captured the essence of the C/S index and developed a practical way to convert it to a physician payment management system. The approach of Caterpillar Corporation (CAT), based in Peoria, Illinois, has resulted in the evolution of "degree of difficulty" relative value scales (DODRVS) and regional multipliers that appear to accomplish a pragmatic fee schedule reform. Access to physicians is achieved for CAT employees and their families, and local physician acceptance of the overall CAT process is maximized. Since CAT is not a dominant payer in any geographic area and is not a provider, the potential for antitrust challenges is minimal.

Table index nu and CAT gional su two proc target in rative pr

*The Cat*

CAT is machine 54,000 e CAT hea as well a hospitali prescript health pl

In 198 negotiate surgical payment wide ran local surg sistent wi review ap ticular fe

*Establ* commun of CAT i surgical s a limited tives of t director makes th meets wi a "physic that phys a mutual the situat wide vari often ins claims; (3 various so ered for p need for s

Actual tient and then soli corrected. billing pr ious proc CAT M.D

*Use of* combined

Table 3 shows the close correlation between the C/S index numbers, arrived at through the BUHPI study, and CAT's DODRVS, reached by consultation with regional surgeons. This striking correlation between the two processes suggested to the BUHPI that CAT was on target in its surgical fee activities, and led to the collaborative project described in this paper.

### The Caterpillar Method

CAT is an international manufacturer of earthmoving machinery and equipment, employing an estimated 54,000 employees in 15 domestic and 13 foreign plants. CAT health benefits cover employees and dependents, as well as 21,000 retirees. The benefit package includes hospitalization, physicians' services, laboratory, x-ray, prescription drugs, and dental and eye care. The CAT health plan is self-insured and self-administered.

In 1983, CAT implemented for its U.S. employees a negotiated fee schedule approach to physician fees for surgical and invasive procedures. The CAT physician payment system emphasizes (1) employee access to a wide range of qualified surgeons, (2) fees negotiated with local surgeons that are considered reasonable and consistent with local market forces, and (3) billing practices review applied consistently to all incoming claims. Particular features of this approach are described below.

*Establish a fair fee cap.* With input from respected community physicians in locations with a large number of CAT employees, CAT establishes a fair fee cap for surgical services. The CAT method involves convening a limited number of meetings with selected representatives of the surgical community and the CAT medical director for group insurance (CAT M.D.). Where it makes the most efficient use of time, the CAT M.D. meets with individual specialty groups. Operating under a "physician friendly" philosophy and the assumption that physician education and involvement help achieve a mutually agreeable solution, the CAT M.D. describes the situation from CAT's point of view; (1) there are wide variations in fees and billing practices; (2) there is often insufficient documentation to properly process claims; (3) a way is needed to compare the difficulty of various services so their "relative value" can be considered for payment decisions; and (4) a reassessment of the need for surgical assistants is needed.

Actual claims received are used as examples (with patient and provider identities protected). The CAT M.D. then solicits provider input on how problems can be corrected. General consensus is gained on reasonable billing practices and relative degree of difficulty of various procedures, based on recommendations by the CAT M.D. and discussions with physician groups.

*Use of geographic multipliers.* CAT's DODRVS is combined with a regional dollar multiplier to calculate

**Table 3.** *BUHPI C/S Index Compared with CAT DODRVS*

| | C/S Index | DODRVS |
|---|---|---|
| Thoracentesis | 3 | 3.4 |
| Appendectomy | 24 | 26.4 |
| Cholecystectomy (with common bile duct exploration) | 48 | 47.7 |
| Total thyroid lobectomy | 40 | 41.8 |
| Modified radical mastectomy | 45 | 47.7 |
| Colectomy, partial | 55 | 54.5 |
| Pancreatoduodenectomy | 100 | 100.0 |

the actual dollar payment limit. The regional multiplier is based on market research by the CAT M.D. Where there are unusual market conditions for certain specialties, CAT may adjust the multiplier up or down for some services rather than changing the entire region's multiplier. This system allows CAT to take into account the local health care market, legitimate variations in provider billing and medical practices, and variations in the cost of living.

*Continual audit and recoding of physician bills.* CAT claims processors subject each incoming physician bill to a coding analysis of CPT-4 codes as a first step, and recode claims where irregularities are found. Obvious simple coding errors are corrected first. Individuals with clinical knowledge and judgment then compare the provider's description of services with submitted codes; operative reports are requested for most surgical claims and follow-up calls to provider offices for clarifying information are common. Once the claim reviewer is satisfied that enough information is available to code the bill consistent with CAT procedures, recoding is finalized, and the correct codes are compared with established regional fee schedules. Reviewers with clinical experience consult the CAT M.D. as needed, assuring that a high level of understanding of the surgical experience is applied in the review process.

Tables 4–7 illustrate some features of the CAT process. They are representative of some claims received by CAT.

In Table 4, the appropriate payment is $1000 for code 38100. The patient was hospitalized for an elective splenectomy. The CAT reviewer would disallow codes and

**Table 4.** *Bundling of "Unbundled" Bill*

| Procedure | CPT Code | Charge |
|---|---|---|
| Splenectomy | 38100 | $1000 |
| Laparotomy | 49000 | 600 |
| Appendectomy | 44950 | 600 |
| Preoperative check (in hospital) | 90215 | 125 |
| Suture removal | 90270 | 100 |
| Total charge | | $2425 |
| Amount paid | | $1000 |

EGDAHL AND HERTENSTEIN    Ann. Surg. • September 1987    Vol. 206 • No. 3

TABLE 5. *Excessive Fee Reduced, Assistant Surgeon Claim Denied.*
*as Not Medically Necessary*

| Procedure | CPT Code | Charge |
|---|---|---|
| Excision biopsy, breast (R) | 19120 | $1500 |
| Excision biopsy, breast (L) | 19120-50 | 1500 |
| Charge | | $3000 |
| Assistant surgeon fee (R) | 19120-80 | $1200 |
| Assistant surgeon fee (L) | 19120-50-80 | 1200 |
| Charge | | $2400 |
| Total charge | | $5400 |
| Amount paid | | $ 750 |

TABLE 7. *Fee Adjustment*

| Procedure | CPT Code | Charge |
|---|---|---|
| Coronary artery bypass graft, 3 vessel | 33512 | $8000 |
| Total charge | | $8000 |
| Amount paid | | $5000 |

these cases, reasonable

*Study of Sa*

CAT's in significant s reducing fe full. The BU the CAT p surgical fee and third-p the potenti BUHPI ha claims for s several larg their claims efit plans en and custom was represe recoding an caps, were a ing if the sa exceeded th

Hard cop claims were about chang carriers befo variables of coordination

The total over $140,0 claims and p adjusted 35 payment fro would have a if CAT's pro istrator's fe tional saving bills and two tiated fee sc ted an incon procedure th used, the pay able level. I coded" to th priate fee; th tions in favo

The CAT been develop large Americ tailed knowk and bundling

charges for all except the splenectomy: a charge for laparotomy and incidental appendectomy is warranted only if done as a separate procedure and preoperative check and postoperative care are conventionally part of the global surgery fee. A charge of $1000 for the splenectomy is in line with the regional fee schedule and is the amount ultimately approved.

In Table 5, the appropriate payment is $750 to the primary surgeon for code 19121 (excision biopsy, breast, bilateral). Under most conditions, one surgeon can perform a breat biopsy. The operative report indicates no unusual circumstances. The assistant surgeon is not reimbursed, and the patient is informed of CAT's review decision.

In Table 6, the appropriate regional payment is $60 for code 17100. The procedure was actually a simple wart removal. The operative report describes a 0.25-inch plantar wart on one foot. Excision combined with use of the laser constitutes excessive treatment for this common condition. Wart removal is most accurately coded as 17100 ("destruction by any method of benign skin lesion").

CAT knows that four local experienced, board-certified cardiac surgeons will carry out a three-vessel coronary artery bypass for $5000, assuring that access can be achieved for that fee (Table 7).

Tables 4–7 demonstrate that complete and knowledgeable recoding of claims requires familiarity with both the content of various surgical procedures and the details of coding surgical services.

*Physician negotiations.* Individual physician negotiations are carried out for selected claims. After establish-

ing an overall fee schedule with local physician representatives, CAT continues its negotiations on a selected claim-by-claim basis. If the amount charged for corrected codes significantly exceeds the regional fee cap, CAT contacts the billing physician, giving information on the corrected codes and the amount allowed. The CAT M.D. makes many of these calls. Usually the provider is willing to accept CAT's recoding and reduced fee. Discussions of claims with physicians have revealed that providers enter practice largely ignorant of common billing practices. Most admit they do not know what various procedures are worth. At best they occasionally may ask other providers what they charge. Those who use an RVS have access only to a wide variety of unstandardized sources. Some are advised to start charging high rates to get a high fee profile. Often, physician offices served by an office clerk coding claims who is not trained in medical terms or coding, whereas other physicians rely on central billing services that promise to "maximize reimbursement," often with "creative" upcoding or unbundling of services.

*Employee communication.* CAT has a program of employee communication that defines the employees' responsibilities and options when payment is less than the fee charged by a surgeon. A letter of explanation is automatically generated to the employee when there has been a payment reduction. It states that if the employee has discussed the fee with the physician before the procedure, the employee is responsible for the amount in excess of CAT's fee cap. Also, employees are told when their provider has agreed to accept CAT's reimbursement as payment in full.

*Patient held harmless.* If a physician bills an employee for the amount that exceeds the fee cap, the employee is instructed to contact CAT, and a CAT provider relations specialist discusses the situation with the physician. Patients are not required to pay the physicians' balance bill above the CAT payment (that is, they are "held harmless") if the physicians have not informed the patients of the higher-than-cap fee before the procedure. CAT intervenes on the patient's behalf when the physician refuses to lower his/her fee to the established cap. On average, of about 20,000 physician claims received per year, CAT has less than a dozen instances in which providers insist on trying to obtain reimbursement above the CAT fee through claims court. In over 95% of

TABLE 6. *Recoding of Unnecessary Procedure, Excessive Fee Reduced*

| Provider Description | CPT Code | Charge |
|---|---|---|
| Excision, benign lesion, foot and use of CO$_2$ laser | 11421 | $450 |
| Total charge | | $450 |
| Amount paid | | $ 60 |

these cases, the judge has agreed that CAT's payment is reasonable for the services, based on local surgeon input.

## Study of Savings with CAT Method

CAT's internal calculations indicate that it achieves significant savings with its surgeon bill review process by reducing fees that otherwise would have been paid in full. The BUHPI is conducting an external evaluation of the CAT process for managing surgeon fees. Standard surgical fee processing by large insurance companies and third-party administrators is being compared with the potential cost savings of the CAT process. The BUHPI has obtained samples of consecutively filed claims for surgical services that have been processed for several large self-insured corporations that administer their claims through major insurance carriers. The benefit plans establish payment caps at a percentile of usual and customary fees, and the carriers' auditing of codes was representative of current industry standards. CAT's recoding and bundling procedures, as well as payment caps, were applied to these claims, with the goal of finding if the savings from payment reduction significantly exceeded those achieved by these carriers.

Hard copies of the providers' originally submitted claims were processed by CAT staff without information about changes from charges that had been made by the carriers before these claims had been paid. Confounding variables of payment due to copayments, deductibles, or coordination of benefits were eliminated.

The total charges included in the sample claims were over $140,000. The carriers adjusted 13 to 15% of their claims and paid 4.3 to 35% less than total charges. CAT adjusted 35 to 40% of these same claims and reduced payment from charges by 22 to 43%. Therefore, CAT would have achieved an additional savings of 8 to 17.7% if CAT's procedures and the lower of CAT or the administrator's fee schedule were used. One third of the additional savings came from coding changes in the original bills and two thirds by the application of the CAT negotiated fee schedule. In some instances providers submitted an incorrect code that significantly *undervalued* the procedure that was done. If the provider's code had been used, the payment would have been cut to an unreasonable level. In these instances, the CAT reviewer "up-coded" to the correct code and allowed the more appropriate fee; the savings potential includes these corrections in favor of billing surgeons.

## Discussion

The CAT system for managing surgeons' fees has been developed by a progressive benefit department in a large American corporation. The system depends on detailed knowledge of surgical practice so that recoding and bundling of procedures categorized by CPT-4 codes

can be accurately carried out. It requires contact with local surgeons in regions with a high concentration of employees so that market forces can be taken into account in determining an appropriate level of local fees.

An access-oriented negotiated fee schedule can have many permutations. In areas with a surgeon surplus, a corporation may be able to negotiate lower fees with surgeons than those previously paid. In areas with few surgeons, fees lower than customary are more likely to create patient access problems should the surgeons resist reductions negotiated elsewhere. Still, modified versions of CAT's approach would be similar to processes already used by the government in establishing "inherent reasonableness" for cataract extraction and pacemaker installation fees.

The key concern about any new surgeon payment approach should be the ability to attract a good representation of local surgeons who will accept it. Ensuring employees' access to qualified surgeons is the paramount goal. All other considerations, even inherent reasonableness of lower fees because of technological advantages or cost containment, should remain secondary.

Based on the BUHPI's analysis, the CAT process is a workable and market-tested solution to the need to balance access and cost management. It is suitable for large corporations such as CAT with both self-funded and self-administered health benefits. It can also be used (after eligibility is certified and benefits are coordinated) by claims processing systems. Accurate implementation of the CAT process requires (1) hard copies of the CPT-4 codes submitted by the surgeon and availability of the operative notes, to reconcile discrepancies between CPT-4 codes and the surgical service, and (2) access-oriented negotiated fee schedules obtained by applying a geographic multiplier to an RVS, such as CAT's DODRVS.

State and federal governments can modify the CAT process for Medicaid and Medicare, with the same goals that motivate the private sector: access and cost management. Regional fee schedules could be established with national DODRVS values and regional multipliers based on market forces. Balance billing is optional, using the CAT model. However, its effectiveness as a cost management approach is strengthened with its "hold harmless" provision. In the CAT system, if a patient knows a surgeon is charging a fee higher than the negotiated fee, the patient is responsible for the balance. If no discussion has occurred, the patient is held harmless for bills in excess of the fee cap.

If adequate access is to be preserved without the need for balance billing, payments must be established so that a majority of qualified surgeons in each region will accept the negotiated fee as payment in full. If this acceptance is not achieved, then access problems will arise, as

TABLE 8. Comparison of "Resource-based Relative Value Scale" (RBRVS) and "Access-oriented Negotiated Fee Schedule" (AONFS) for Physician Reimbursement*

|  | RBRVS (Hsiao) | AONFS (CAT) |
| --- | --- | --- |
| Goal | A "comparable worth" reform for physicians, a group with high incomes relative to most other occupations. | Patient access to local physicians at a negotiated price. |
| Methodology | Complex formula determines RBRVS; time is a major determinant. | Revision of fees is based on negotiations, M.D. fee acceptance patterns (market forces, not payment of charges). |
| Application | Two basic problems: (1) RBRVS is not a fee, and knowledge is needed of regional situations to use multiplier. (2) when applied in Massachusetts, shown to need extensive modification to get support of, and access to, local surgeons. | In routine use. CAT knows that well-qualified local physicians will accept the AONFS. |

* AONF = DODRVS × regional multiplier.

occurred in 1986 for the Massachusetts Medicaid program. That program was forced to increase significantly its fees for normal deliveries. As stated in the Boston Globe, ". . . responding to a crisis in access to obstetrical care in many areas of the state, the panel hiked the all-inclusive fee for pregnancy care and childbirth from $508 to as much as $1,200."[10] This is a good example of the futility of a fee schedule that does not build on knowledge of physicians' availability at different fee levels in each region. The Massachusetts Medicaid program had a previous experience with attempting to introduce a fee schedule based on a "resource-based" formula.

In July 1983, the Boston Globe described a new strategy that was suggested by the Massachusetts Rate Setting Commission for the Medicaid program and workers compensation.[11] Based on the 1979 study by Drs. Hsiao and Stason from the Harvard School of Public Health,[12] the Rate Setting Commission proposed that the fees for 21 common surgical procedures should be cut by amounts ranging from 4% to 59%. At the same time, physicians seeing patients in their office were to get 71% more for initial visits. These proposed changes were the estimated relative resource requirements of different physician services, with a strong focus on the time involved. The formulas were established in the Hsiao/Stason analysis of physician practices.

These changes were adopted in September 1983, but on August 23, 1984, the Rate Setting Commission raised the fees that the state Medicaid program paid to doctors for surgical procedures. As stated in the Boston Globe, "no prior hearing was held or public notice given before the August reversal because the Commission subsequently said physician resignations from Medicaid had reached the level of a public health emergency. Most striking of these defections were obstetricians/gynecologists."[13] This experience suggests that fees ultimately paid by Medicaid were primarily driven by the need to get access to Medicaid patients to physicians, and not by a formula for "resource costs."

The American Society of Internal Medicine and the American Medical Association have supported an elaborate study of the Hsiao methodology commissioned by HCFA, and there is much speculation about the possible use of an RBRVS for the determination of Medicare fees when it becomes available in the summer of 1988. The investigators of the BUHPI originally believed that the consensus process to determine a C/S index could be developed as the basis for fee reform that would be acceptable and perceived as fair by physicians. However, the consensus approach is laborious, and much time would have been necessary to interrelate all specialties and resolve potential conflicts. It was then that the BUHPI began to study the CAT system, and found that it involved a process with appropriate goals, methodology, and application for cost management and market acceptance.

Table 8 outlines the basic differences between a "resource based" RVS and an access-oriented negotiated fee schedule, as used by CAT. A basic goal of the RBRVS is to "reform" physician reimbursement in the direction of more equity between procedure-oriented specialists and generalists. However, as the evidence suggests, this goal will be in conflict with realities of the marketplace and will result in paying fees that are either unnecessarily high or too low to get ready access for insurees to local physicians.

The methodology of the RBRVS is based on a formula unrelated to local market forces, whereas the access-oriented negotiated fee schedule used by CAT builds on negotiations and local fee acceptance patterns to gain access. The CAT system's ability to adjust for regional differences in the market is the essential difference in the two approaches. The CAT system is in routine use and will continue to be modified by changes in local physician manpower and other factors such as increases in malpractice premiums. We suggest that an access-oriented negotiated fee schedule such as the CAT system deserves consideration as the preferred method of fee reform.

## References

1. Waldo DR, Levit KR, Lazenby H. National health expenditures, 1985. Health Care Financing Review 1986; 8:14.
2. Physician Payment Review Commission. Medicare Physician Payment: an Agenda for Reform. Annual Report to Congress. Washington DC: U.S. Government Printing Office, March 1, 1987.
3. Knox RA. Study on Equalizing Medicare Bills Begins. The Boston Globe, September 13, 1985; 4.
4. Congress of the United States. Physician Reimbursement Under Medicare: Options for Change. Washington DC: Congressional Budget Office, April 1986.
5. Congress of the United States. Payment for Physician Services: Strategies for Medicare. Washington DC: Office of Technology Assessment, February 1986.
6. Jencks SF, Dobson A. Strategies for reforming medicare's physician payments: physician diagnosis-related groups and other approaches. N Engl J Med 1985; 312:1492-1499.
7. Dutton BL, McMenamin P. The medicare economic index: its background and beginnings. Health Care Financing Review September 1981; 3:137-139.
8. Egdahl RH, Manuel B. A consensus process to determine the relative complexity-severity of frequently performed surgical services. Surg Gynecol Obstet 1985; 160:403-406.
9. Pollard MR. Anti-trust and Physician Payment. Reforming Physician Payment 1984. Institute of Medicine: Report of a Conference. Washington DC: National Academy Press, 1984: 75-86.
10. Knox RA. Proposal Would Raise Medicaid Fees. The Boston Globe, April 17, 1986; 27.
11. Knox RA. Medicaid Fee Shifts Adopted. The Boston Globe, September 16, 1983; 17.
12. Hsiao WC, Stason WB. Toward developing a relative value scale for medical and surgical services. Health Care Financing Review, Fall 1979; 1:23-38.
13. Knox RA. State Shifts on Medicaid Fee Cuts. The Boston Globe, September 27, 1984; 1.

## Discussion

DR. W. GERALD AUSTEN (Boston, Massachusetts): I congratulate Drs. Egdahl and Hertenstein on an excellent and stimulating paper. They have worked long and hard on physician payment reform, and they recognized early the importance of physician acceptance in any proposed reform. Thus, a major element of the current proposal includes the active participation of the physicians.

Three and a half years ago, the Regents of the American College of Surgeons created a Committee on Physician Reimbursement of which I have been Chairman. This committee, with much input from the surgical specialty societies, has developed recommendations for the reform of the Medicare physician payment program, and these recommendations were approved by the Regents in October 1986.

The aim of the College, like the approach presented today, is to identify ways to achieve a more rational payment system with cost savings and at the same time ensuring adequate access to quality care.

The ACS approach has a number of similarities to the program presented this morning, the ACS proposal includes the creation of a Medicare relative value scale based on physician charge data and with modifiers based on geographic differences in practice costs, the definition of payment units with emphasis on a global fee and the creation of definitions and guidelines to determine when an assistant at surgery for Medicare payment purposes is necessary.

I have one question for the authors. The Caterpillar Corporation has approximately 50,000 employees in 15 domestic plants; and it also has a very persuasive, sensible medical director. How would you expand your proposal from one company to a national program?

Finally, I would like to add that it is crucial that surgery be involved as much as possible in the current debate on physician reimbursement reform, and we need to be able to present sensible and fair approaches backed by solid data. The next year and a half is probably going to be crucial.

I would urge Drs. Egdahl and Hertenstein to continue to gather information and to make every effort to present their data and recommendations to the appropriate congressional committees and to the Administration.

DR. OLIVER H. BEAHRS (Rochester, Minnesota): Drs. Egdahl and Hertenstein have done us a favor by developing and reporting a modification of the CPR fee for service information for surgical services. I appreciate the opportunity to have read the manuscript.

Their program, which is a negotiated access RVS, is in contrast to the Harvard-AMA resource based RVS, and is being developed under contract from HCFA. This RVS is of concern because of the inordinate weight given to time as a factor and the methodology being used.

There is great anticipation regarding this study in Washington and some are thinking of it as the only game in town.

The Physician Payment Review Commission (PhysPRC) established by Congress in 1986 made its first report to Congress on March 1, 1987. The Commission supports a fee scale based on a national RVS with appropriate regional multipliers to determine fees. The basis for the RVS has not been determined, but hopefully it might be based somewhat on historic charges and not the strictly resourced criteria of the based parameters used in the Harvard Study.

The use of the CPT-4 Code has come under criticism: first a dictionary of 2000 codes, and now 7000 and now multipliers 48,000. It was established primarily for medical record keeping not to establish fee for services. This practice has led to excessively high fees in at least 10% of cases because of unbundling or upcoding.

I would be interested in the author's suggestions how the CPT-4 codes might be collapsed or bundled and what policy could be established to prevent these abuses.

A long-term program for physician payment is probably several years away and may be a fee scale hopefully; but there is administrative and congressional support for capitation or voucher arrangement, possibly DRGs. Congress is looking for a near-term solution to its budget problem for 1988.

The budget mark-up will be in the next few weeks and the recommendations to meet the cut almost certain in physician reimbursement will be in place by September.

The reduction in reimbursement might be another freeze, a shaving downward of the medical economic index, selecting the high-cost outliers such as coronary artery bypass, hip reconstruction, and/or TUR for across-the-board decreases as was done in cataract surgery in 1986 and 1987, or selective decrease in the high rollers or by addressing the reduction by using the inherent reasonable rule that is already in legislation.

My second question to Dr. Egdahl and Dr. Hertenstein is: what are your recommendations in the next month or two to meet the 1988 budget limits?

DR. MARTIN ALLGÖWER (Basel, Switzerland): I appreciate the invitation to look "with a Swiss eye" at the presentation of Dr. Egdahl.

In Switzerland it is said that the surgeon goes through two stages. At the beginning of his career, collecting a fee, he gets red in the face. Later on his face reddens when he does not get paid!

The Swiss economic system is a rather complex mixture of free enterprise and institutions run almost exclusively by public bodies. We consider many of the things you do not as public responsibilities. These include post and telephone services, railway services, schooling and university formation, and most hospitals are run by local government agencies. The health care system is furthermore complicated by the fact that insurance conditions for accidents are very different from

EGDAHL AND HERTENSTEIN

Ann. Surg. • September 1987

Vol. 206 • No. 3

those for diseases. It is obvious that this difficult distinction keeps our lawyers busy!

Basically, surgeons are mostly employed on a geographical full-time basis in a state hospital. Those state hospitals, however, have private, semiprivate, and general wards. This, I believe, is a rather favorable arrangement, combining a salaried position for the administrative obligations as well as for the care of the general patient with a fee-for-service system for the private patients. Now, comparing this with the cap system, we find great similarities because the Union of Swiss Surgical Societies, including all specialties, has set up a range of fees that may be reasonably asked from a patient or from the insurance, i.e., the third party paying. Those ranges, just to give you an idea, would range from 400 to 1000 francs for an appendectomy, for a gallbladder from 1000 to 2000 francs, and for major operations such as a total gastrectomy, a Whipple, an acetabular repair or a resection of an abdominal aneurysm, from 3000 to 6000 Swiss francs. That is about the maximum fee we are allowed to ask or, at least, that the Union will support, if it is contested in court. You may divide the figures by 2 to arrive at dollar values, because that is about the realistic comparison in terms of buying power.

It is a fairly democratic self-regulating peer-controlled system. What we dislike in Switzerland is the "big brother" state watching us and telling us what to do.

We have one advantage over you. The contingency system is unacceptable and the one party who loses "the battle" usually has to pay the other's legal expenses. That often prevents people from going to court, although there has been a definite increase in liability claims in recent years.

Overall our system results in an average income of some 300,000 to 400,000 francs for a Swiss surgeon. Out of that he pays some 50% in taxes. Our rather democratic system is similar to what Dr. Egdahl has just presented. It is based on a fee for service "common sense scale," the majority of surgeons working in a geographical full-time scheme.

DR. WILLIAM R. DRUCKER (Rochester, New York): I appreciate the opportunity I had to review this paper. Dr. Egdahl has given us a clear presentation of an industry-sponsored plan that attempts to gain physician compliance with a method of reducing costs of medical care through reduction in fees.

It is a very clear example that in addition to government today, our health care system is being strongly influenced by industry.

I have a couple of editorial comments and then a couple of questions. The major factor in the rise in health care costs is not physician fees. This is simply illustrated by a look at the average fees of physicians across the country, somewhere in the range of $50,000–$150,000. I realize that others make considerably more, but each physician can be estimated to cost the health care system something in the order of three quarters of a million dollars per year by the exercise of his physician rights in doing his job of taking care of patients. Therefore, the major target that needs to be addressed is physician behavior, not physician fees. Nevertheless, fees are perceived as a problem that is going to be addressed whether we like it or not.

I wonder whether this paper is simply the expression of a last gasp hope that current physician fees and the fee for service system will continue. I sincerely hope this is not its purpose and I believe Dr. Egdahl agrees based on the way he has presented the paper. My reading from the paper is that Dr. Egdahl is presenting a plan that is asking clearly for physicians to get together and plan to help solve the problem of fees rather than having it done for us by external agencies; that means industry and government.

My questions are these. They are straightforward, I believe, and can be answered simply. What will happen in the case of an emergency when one of the patients in the system under the cap must have an emergency operation and they seek a doctor who does not agree with the system: would this be settled in claims court?

What about quality? Does the system depend on the physician participants to ensure quality or do they have other ways to ensure that their employees are obtaining the quality of care that they would under the current system of fee selection.

How about comparison with other systems? Has there been enough experience to date to show that this system is gaining popularity? Is

there any way to compare this system with others in terms of two factors: physician acceptance to work in the system, and employee acceptance of this system for their health insurance?

Then there is a question of cost. This is a very complex system. It seems very costly if one reads carefully. What is the cost? Is there any estimate of what the cost would be of setting up and maintaining this system that requires close scrutiny of all bills that come in; a very complex system of monitoring these bills? Is the billing method unique to C.A.T. or can other insurance systems do this too? Is this system for sale? Do other insurance companies look at claims this carefully?

DR. BENSON B. ROE (San Francisco, California): Dr. Egdahl is to be thanked for bringing to our attention a sensible proposal to address a serious threat to the fee-for-service system. I believe we finally are all aware of this threat, and I am delighted that we are prepared to gather our forces to get behind something positive.

About 8 years ago I became aware of the enormity of the abuses in the current system that were taking place, perhaps not by the respectable members of our profession but by an alarming number of those who did the kind of unbundling and some of the things that he showed you. I published an article that was intended to stir us to take some initiative in this problem rather than hoping it would go away. I hope it is not too late.

It is equally important that we get behind some system that establishes fiscal integrity so that we do not jeopardize the precious and unique privilege that we have of self-governance. This privilege is threatened by the behavior of some of our colleagues who have abused the system and brought this problem to our attention.

In addition to the proposals that Dr. Egdahl has made, I believe we should place emphasis on the magnitude of responsibility to cover not only accessory procedures but complications. No one can tell me whether my complication was part of the patient's underlying disease or could possibly be one from some flaw in my technique or management. We should accept as a part of our primary responsibility the full scope of managing a patient from start to finish without throwing in extra for everything that can be imagined. If we had done that, we would have reduced our total cost to the public by at least 20%.

DR. JAMES R. JUDE (Miami, Florida): I rise because I am confronted by patients who are faced with billing problems after hospital discharge. One of the problems is the unbundling that Dr. Egdahl has brought up.

Ten years ago on an Ethics Committee of our local medical society we, out of hand, tossed unbundling out as a completely immoral approach to any type of billing. I did not believe it even could possibly exist any more, but there is more of a problem than just the bundling together of the surgical fee. The problem is much greater than that. We always keep our office open to speak to any patients about any problems, and it is very common for them to present with bills of what really amounts to an unbundling of the bills of other physicians who were involved in their treatment.

Most commonly this has applied to anesthesiology, which frequently approaches 50% of the surgical fee. It is not, however, only the anesthesiologists, it is also the internist, the radiologists, the pathologists, and possibly the cardiologists who are reading electrocardiograms. Patients receive an enormous number of bills from physicians, and so it is a total physician unbundling and not just a surgical fee unbundling that is occurring.

Some way or other we have to approach the problem whereby there will be some type of bundling together of all physician fees as a package.

As our President presented yesterday in his Presidential Address, many treatments that we do are not all surgical anymore, but rather a blending over into medicine, and medicine is delivering surgery and surgery is delivering medicine. Therefore, we should give a great consideration to the total care and the total charge.

Dr. Egdahl, what if anything have you considered about these other fees in respect to a global cap or other industry approaches to the total cost of care in surgery?

DR. JONATH[...] to this paper [...] most people h[...] reduction in t[...]

There is one[...] liability insura[...] when you hav[...] sent, and this[...] will pay, you h[...]

I raise the q[...] malpractice in[...] the fee. No do[...] access to one's[...] it would have[...] physician start[...] liability costs[...] amount that a[...] work in the mi[...]

Perhaps the[...] appear and sh[...] I can think of[...] true cost of lia[...] insurance $125[...]

I rose to rais[...] was any precede[...] is any way this[...] system with an[...]

DR. RICHAR[...] tion about the[...] now exists to a[...] major national[...] bureaucracy, w[...] Caterpillar doe[...] tions and an en[...] tainly be divide[...] do not know w[...] management an[...] ture which wou[...]

Dr. Beabrs ra[...] asks what we ca[...] I believe we can[...] matching up th[...] codes, and have[...] seem inappropr[...] with the goal of[...] the other hand,[...] simple errors ba[...] the technicalities[...] the operative no[...] determine if the[...] is to expand the[...] has been limited[...] items that appea[...] upward.

Vol. 206 • No. 3 AN ACCESS-ORIENTED NEGOTIATED FE ULE

357

DR. JONATHAN E. RHOADS (Philadelphia, Pennsylvania): I listened to this paper with a great deal of interest. I would emphasize that if most people have a 50% overhead, that a 15% reduction in fee is a 30% reduction in take-home remuneration. That is well to keep in mind.

There is one aspect of the overhead that has gotten bigger and that is liability insurance. This in a way is the loose cannon on the deck, and when you have a fee schedule set, whether by government or by consent, and this expense is assumed to be something that the physician will pay, you have an unpredictable situation.

I raise the question and ask the authors if there is any precedent for malpractice insurance being billed on a per case basis or a percentage of the fee. No doubt this would require the insurance company to have access to one's tax returns and so forth to be sure that it was honest, but it would have certain great advantages. It would permit the young physician starting out to start out on his own, pay his share of the liability costs, but not be expected to pay immediately the same amount that a person would be paying who is doing 10 times as much work in the middle of his career.

Perhaps the far greater advantage in my belief is that this could appear and should appear as a separate item on the bill.

I can think of no way that would educate more of the public as to the true cost of liability insurance than to have a bill (operation $300, insurance $425, or whatever it might come to).

I rose to raise this issue and to ask the authors if they knew if there was any precedent for such a plan and to ask whether they believe there is any way this could be tried out before we get tied into a fee schedule system with an unpredictable cost for liability insurance.

DR. RICHARD H. EGDAHL (Closing discussion): Dr. Austen's question about the possibility of expanding the Caterpillar program as it now exists to a national level is an important one. The problem is that major national programs such as Medicare necessarily involve a large bureaucracy, whereas a private, self-administered company such as Caterpillar does not require the same degree of routinization of operations and an easily replicable methodology. The country could certainly be divided into 6–12 regions, each consisting of several states. I do not know whether appropriate flexibility could be built into the management and technical components of the administrative structure which would be part of a national program.

Dr. Beahrs raises questions about the future use of CPT-4 codes and asks what we can do in the short range to control outlier Medicare fees. I believe we can use CPT-4 as long as we understand the basis for matching up the procedures that actually were carried out with the codes, and have some way to ratchet downward those charges that seem inappropriate. Certainly there are a few groups selling systems with the goal of achieving code creep, which is basically dishonest. On the other hand, the majority of codes that are incorrect represent simple errors based on the difficulty of each doctor's office knowing all the technicalities of coding. We can stick with CPT-4, but must match the operative note with the CPT-4 code, using physician judgment to determine if the code is appropriate. The short-term answer for HCFA is to expand the principle of inherent reasonableness, which thus far has been limited to a few surgical conditions. Another 20–30 big-ticket items that appear to be out of line could be revised downward or upward.

Dr. Martin Allgöwer from Basel talked about the Swiss system and the apparent success of physician-sickness fund negotiations. This type of negotiation, with the government playing a catalytic role, might have relevance to the U.S. system in the private sector. However, Medicare will probably demand a closer involvement in the process than exists in Switzerland, since the government is paying the bill directly.

Dr. Drucker asked a key question about what happens in emergencies under the Caterpillar system. Usually Caterpillar pays charges in emergencies, but also has a strategy involving clearance for appropriateness of treatment in emergencies, when there is time. If gross overcharges are billed, even for emergency situations, and local surgeons support that the charges are unreasonable, then payment of those charges can be challenged.

Dr. Roe discussed his analysis of fees, and raised the question about possible antitrust issues if physicians are in the position of commenting on the appropriateness of their fees. Industry does not want to see private medicine nationalized, but could turn on us if we do not cooperate in developing a rational method of physician reimbursement. The key to not raising antitrust issues is for surgeons to act as individual consultants to payers who determine those fees, such as large industry.

Dr. Jude asked about how to get our internist colleagues involved in the process of fee negotiations. We found in our complexity/severity work with the Massachusetts Chapter of the American College of Surgeons that we could relatively easily get consensus on the "relative value" or "complexity/severity" of surgical services among that group. We then talked to internists and achieved some preliminary agreements; for example, an "intermediate acute myocardial infarction," from the time a patient comes into the emergency room, is taken into the critical care unit, and discharged, appeared to be similar in complexity/severity to an uncomplicated cholecystectomy, from initial diagnosis through discharge from the hospital after surgery. Reimbursement for some general medical conditions can be converted into a global fee, but for many medical conditions it is a more difficult process than for surgical cases.

Finally, Dr. Rhoads talked about malpractice problems associated with surgery. I return to the principal goal of Caterpillar and its fee process, which is access for their employees and their families to a significant number of high-quality local surgeons. Overall, malpractice problems will probably get worse before they get better. A solution will flow from severe access problems in different parts of the country, and a realization by both legislators and the public that the ordinary rigors of surgical practice are being compounded manyfold by additional financial and psychological pressures from the omnipresent danger of malpractice suits. We suggest that the Caterpillar process of negotiating access-oriented maximal fees with local surgical groups represents a reasonable compromise between paying charges, on the one hand, and accepting a formula-driven fee schedule not negotiated with some local physicians with access as a goal, on the other hand.

Increases in malpractice premiums will result in increased surgical fees, or the public will not have available the surgeons that they want in the variety of practice sites and numbers of specialties that are desired. We have only a modest amount of time before HCFA and the Congress will take some kind of action on fees, as they have on hospital reimbursement under Medicare. Industry can be our strongest ally in achieving a workable system of access-oriented negotiated fees.

ficulty for the modern surgeon to maintain primary responsibility for his or her patients within the critical care environment. He points out that the number of surgical patients in intensive care units exceeds the number of medical patients; however, less than 25% of available critical care fellowships are directed by a surgeon. He further notes that a large number of surgical patients are treated in the intensive care unit, where no surgeons are present in any leadership capacity. The absence of the surgeon in the intensive care unit appears to reflect a waning commitment in this area. Dr. Demling's article comments further on the certification process and concludes that it will strongly influence medical control of the critically ill patient. At the present time, 350 surgeons have applied for and taken the American Board of Surgery examination required for recognition of added qualification in surgical critical care. Over 3000 internists applied for the first certification examination offered by the American Board of Medicine. Ironically, with most intensive care unit patients being surgical and most individuals applying for certification in critical care being internists, one is reluctantly led to the conclusion that at least some of the internists will be assuming responsibility for the surgical intensive care unit population.

The statement of the authors and Dr. Weigel's previous comments reflect the determination of surgeons to remain active in the care of their patients in this important "Essential of Surgery."

GEORGE F. SHELDON, M.D.
Chapel Hill, North Carolina

## References

1. Machiedo GW, Blackwood JM, Rush BF. Practice of Critical Care Medicine in Academic Surgical Centers. J Surg Res 1981; 30: 223–228.
2. Demling RH. Bulletin of the American College of Surgeons, 1988; 73:59–60.

February 26, 1988

Dear Editor:

This letter is a response to the article entitled "An Access-oriented Negotiated Fee Schedule: The Caterpillar Experience" by Richard H. Egdahl, M.D. and Robert D. Hertenstein, M.D., published in the September 1987 issue of Annals of Surgery. The relative value scale payment system imposed by Caterpillar in the Peoria area was apparently developed by Drs. Egdahl, Hertenstein, and others as a competing system with the Harvard University relative value scale presently being developed. It appears that the Caterpillar Preferred Provider Organization is being misrepresented in this article as a real example of the effective operation of this Degree of Difficulty Relative Value Scale (DODRVS). The fact is the DODRVS was never formally negotiated with a majority of the surgeons or physicians in Peoria, and runs contrary to the local preference for individual fee-for-service remuneration.

The plan described in this article is a unilateral plan developed by a major industrial corporation to control medical care costs and physicians' fee structures in Peoria as well as in the Company's extensive national arena. In discussing this issue with most of the surgeons in Peoria, several discrepancies between the article and reality surfaced.

Although the plan may exist at the current time, it is a unilaterally imposed fee structure that has not been universally endorsed by the general surgeons, other specialists, primary care physicians, or the Peoria Area Physicians Association, which represents the majority of physicians in the Peoria area. The

assertion that this Caterpillar plan was negotiated is extremely misleading. In fact, only a few surgeons were shown fee schedules and profiles by Caterpillar representatives. These surgeons later recognized that they had not had an opportunity to study fee schedules in depth at all, nor had they compared a complete list of proposed surgical CPT codes against their own fees. The fee schedule was then proposed to other surgeons—usually individually or in small groups of two or three surgeons who practiced together as partners—in the following manner: since Physician A accepted this plan, it would be appropriate for Physician B to accept it, as well. This technique was successful in gaining for Caterpillar, Inc. a quiet initial acquiescence of the local surgical community to the Caterpillar fee schedule proposal.

The actual numbers assigned to the DODRVSs, the multipliers, and the bundling technique used by Caterpillar were arbitrary and incompletely discussed with the local surgical community. In fact, one of the largest surgical groups in Peoria was never approached by Caterpillar at all concerning this plan before its implementation. In addition, it appears that, depending on the economic situation of various plants around the country and the initial hesitancy of some surgeons in Peoria to work with the Caterpillar plan, the company adjusted its multipliers to pay some surgeons more than others for the same procedures. This article also was the first notification to Peoria surgeons regarding the fact that Caterpillar rebundles 30–40% of charged surgical fees to lower the overall amount of the bill the company must pay. When Peoria physicians challenged Caterpillar's claim that 30–40% of the surgical bills submitted were improper, the company refused to let these bills be reviewed by a local physician committee. In addition, presumably as an enforcement technique, the company would send a letter to the physician and the patient whenever a charge was more than that approved by Caterpillar's own fee schedule. This letter informed the physician and the patient that the charged fee was too high and that the company would "hold harmless" the patient in any fee dispute with the physician. The company would also pay for any legal expenses for the employee/patient if the physician were to pursue collection via legal proceedings. To the best of our knowledge, Caterpillar has never won such a court case in Peoria, but this technique has been intimidating to many practitioners who cannot afford the time required to pursue these kinds of claims disputes through the court system.

We are informing the Annals of Surgery and its readers that this article presented only one side of the Caterpillar story and certainly not the reality of the Peoria situation. Surgeons in Peoria, as well as all other physicians, are concerned about the cost of medical care. Peoria-area physicians have been extremely conscientious about utilization review and medical care costs and, by Caterpillar's own admission, our fees are well below those of similar communities in the Midwest. In addition, Peoria-area physicians, as a whole, voluntarily froze fees for at least 3 years during Caterpillar's economic problems in the early 1980s. We are more than willing to work with Caterpillar, Inc. to negotiate mutually agreeable working relationships for the delivery of quality health care services. We believe joint and mutual cooperation will be beneficial to everyone involved. The "Access-oriented Negotiated Fee Schedule" as described by Drs. Egdahl and Hertenstein was not a product of such mutual negotiated effort and has not "played well in Peoria."

JAMES W. BAUER, M.D.
THOMAS G. CASSIDY, M.D.
JAMES R. DEBORD, M.D.
ROBERT D. HART, M.D.
RICHARD H. LEE, M.D.

LETTERS TO THE EDITOR

Ann. Surg. • November 1988

Vol. 208 •

JAMES E. MAHER, M.D.
CHARLES E. MONTGOMERY, M.D.
GWYNNE K. NEUFELD, M.D.
ROBERT J. RIVAN, M.D.
CARL W. SODERSTROM, M.D.
THOMAS A. WEBSTER, M.D.
Peoria, Illinois

April 13, 1988

Dear Editor:

We appreciate the chance to set the record straight and comment on the letter of Dr. James E. Maher and associates regarding our paper, "An Access-oriented Negotiated Fee Schedule: The Caterpillar Experience." The many misleading statements in the letter from the Peoria Area Physicians Association (PAPA) will be discussed. Especially unfortunate is the tone of the letter, which reveals a lack of understanding about the direction of changes in surgical reimbursement. Firstly, we will clarify the Peoria situation:

1) The Caterpillar (CAT) fee payment method described in our article refers only to surgical fees and has been in use for several years. It was not developed to compete with the resource-based RVS of Harvard, which is currently being developed. It antedates Caterpillar's participating provider program, as well as PAPA.

2) The CAT method of paying surgical fees is working, as shown by satisfied CAT employees and their families who have been treated by local surgeons.

3) CAT's methods of paying surgical fees were not formally negotiated with Peoria surgeons as a group, a procedure which could be challenged on anti-trust grounds. If a locally dominant group of physicians decides to fix fees, that is clearly a violation of anti-trust law. If a large but not dominant purchaser such as CAT negotiates fees with individual surgeons, there is little potential for anti-trust violation.

4) The letter states that the CAT method of paying surgical fees runs contrary to local preference. Yet if local preference is for the status quo, this position is unacceptable as future reimbursement policy to payers.

5) The CAT method is based on surgical fees that are acceptable to a majority of local surgeons.

6) CAT adjusts a multiplier, and therefore also adjusts fees, in different areas to get access. If there is a surplus of surgeons, there may be lower fees; if there is a shortage, fees could be higher.

7) CAT, working with the Boston University Health Policy Institute, has reconfirmed in three other corporations the finding that 35–40% of adjustments are appropriate in surgical claims.

8) Very few cases are challenged by surgeons in court. Of those that have been challenged, which amount to approximately a dozen per year, almost all of them have been won by CAT, with the support of local surgeon experts stating that the Caterpillar fee was reasonable. CAT has won two cases in Peoria during the past 3 months.

9) The reality of the Peoria situation is that Caterpillar Inc., as a responsible large local business, has developed a way to pay surgical fees that is market-oriented, with the twin goals of achieving high-quality surgical coverage for CAT employees and their families at a reasonable cost. Only two of the physicians who signed the letter from PAPA are surgeons, and they represent the viewpoints of only a fraction of Peoria's surgeons.

Large payers, such as government and industry, are not going to continue paying surgical fees on the basis of past precedent, because of the large unexplainable regional and specialty variations in the amounts of those fees. Fee schedules will be developed, based on one of two fundamentally different and probably incompatible approaches. One such approach has the major goal of gaining access to a majority of local high-quality surgeons, with the secondary goal of not paying more for those services than market forces require (access-oriented negotiated fee schedule). The other approach has the major goal of income redistribution from surgeons and other physicians who perform procedures to other physicians whose clinical activities do not involve procedures (resource-based relative value scale). An updated summary of contrasts between these two approaches is given in Table 1.

The basic question is not whether a change will occur in the methods of paying surgical fees by large purchasers, but rather what form that change will take. We believe that adaptation of the access-oriented negotiated fee schedule that has been used in Peoria, and many other parts of the country where CAT has a concentration of employees, is preferable to a resource-based relative value scale, which is fundamentally a formulaic, time-oriented research study, the application of which will either result in overpayment for services that could be obtained for less, or will underpay and therefore create access problems when there is a shortage of surgeons who will accept the designated payment. Thanks for the opportunity to set the record straight.

RICHARD H. EGDAHL, M.D.
Boston, Massachusetts
ROBERT D. HERTENSTEIN, M.D.
Peoria, Illinois

TABLE 1. *Essential Features of Two Contrastive Methods for Reimbursing Surgical Fees*

|  | Resource-Based Relative Value Scale | Access-Oriented Negotiated Fee Schedule |
|---|---|---|
| Goals | *Redistribution of income* from physicians who do procedures to those who don't, based on "resource costs" required to provide services. Not related to reality of marketplace. | *Access* to a wide range of quality surgeons and *cost containment* by payment of market-oriented fees. |
| Methodology | *Complex formula* determines RBRVS; time is a major determinant. Not clear how will be translated into a fee. | *Negotiate fees* for some of the most frequently performed services in regions as basis for creating fee schedule. |
| Application | *Continual changes* will be needed in many fees at regional levels to get access; some fees will be more, and some less, than needed for access. | *In routine use.* CAT's patients are given care by well-qualified local surgeons who will accept the negotiated fee. |

Dear E

We r
tofibros
in the .
suggest
us and
and exp
Care
thologis
to the c
fraction
of the s
additio
Perh
Mohs s
resectio
We h
matofit
Mohs n
free ma
gery of
techniq

Dear Ec

Than
letter to
article,
Mohs i
to be al
We t
The firs
margin
manner
sections
standar
vertical
8–10 m
"critical
to look
from an
then the
the sect
of the "l
It is pr
microsc
serially,
tissue so
ration a
microsc
a relativ
In th
hand, th
tened or
microto
is taken
vides tru
margin
may hav
but thes