IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC,<br><br>                  Plaintiff,<br><br>                  v.<br><br>THE TRIZETTO GROUP, INC.<br><br>                  Defendant. | C.A. No. 04-1258-SLR |

**TRIZETTO'S RESPONSE TO MCKESSON'S OBJECTIONS
REGARDING ITS RECENT PRIOR ART DISCLOSURES**

On September 13, 2005, TriZetto served its (i) Third Supplemental Initial Disclosures; and (ii) Fourth Supplemental Response to Plaintiff's Interrogatory No. 6. These supplementations disclosed prior art references and third-party witnesses relevant to TriZetto's defenses in this case. McKesson has objected to these supplementations as untimely. At the discovery conference on September 22, 2005, McKesson requested that TriZetto be precluded from using any of the new information contained in these supplementations. The Court has allowed TriZetto to file this statement to clarify that virtually all of the supplemental references and witnesses included in the September 13, 2005 supplementations had already been disclosed to McKesson earlier in this litigation. There is no basis for excluding the supplemental references and witnesses. Accordingly, the Court should allow the supplementations to stand.

    **I.**      **BACKGROUND**

          **A.**      **TriZetto's Initial Disclosures**

TriZetto's Third Supplemental Initial Disclosures, served on September 13, 2005, identified ten additional third party witnesses or potential witnesses with information concerning various prior art systems. Prior to this, TriZetto served First and Second Supplemental Initial

Disclosures on March 18, 2005 and April 21, 2005, respectively. By contrast, McKesson has only supplemented its Initial Disclosures once, on May 13, 2005.

### B. TriZetto's Responses to Interrogatory No. 6

On December 21, 2004, McKesson propounded its First Set of Interrogatories. Interrogatory No. 6 asked broadly:

> State in complete detail each and every basis for your assertion that the claims of the '164 patent are invalid under 35 U.S.C. § 102 or 103. Your response should, without limitation: identify each prior art reference you contend anticipates any claim of the '164 patent under 35 U.S.C. § 102 and each prior art reference or combination of references you contend renders any claim of the '164 patent obvious, under 35 U.S.C. § 103; state in complete detail, by means of a claim chart, where TriZetto contends each limitation of any allegedly invalid claim of the '164 patent is disclosed by each reference or combination of references; and state in complete detail the basis for TriZetto's assertions that one of ordinary skill in the art at the time of the '164 patent's invention would have been motivated to combine or modify any prior art reference or combination of references TriZetto contends is invalidating under 35 U.S.C. § 103.

On January 20, 2005, TriZetto served its initial Response to McKesson's First Set of Interrogatories. After conducting extensive discovery and investigation, TriZetto served its First Supplemental Response to McKesson's Interrogatory No. 6 on May 5, 2005, providing a list of prior art references. On June 20, 2005, TriZetto served its Second Supplemental Response to McKesson's Interrogatory No. 6, providing a list of prior art references as well as an element-by-element chart mapping the prior art references to each element of the asserted claims of the '164 patent. After meeting and conferring with opposing counsel and this Court, TriZetto served its Third Supplemental Response to McKesson's Interrogatory No. 6 on July 27, 2005. In that Third Supplemental Response, TriZetto identified nineteen prior art references that render the '164 patent invalid as either anticipated or obvious under 35 U.S.C. §§ 102 and 103. TriZetto also identified additional prior art references that TriZetto was still in the process of examining to determine their applicability. TriZetto expressly reserved the right to assert these references if and when it determined that one or more of these references were applicable.

### C. The August 2, 2005 Discovery Conference

At the August 2, 2005 discovery conference, counsel for McKesson asked why TriZetto had identified more than the nineteen references charted in its July 27, 2005 Supplemental Response to Interrogatory No. 6. TriZetto noted that it planned to rely on the nineteen identified references, but that it was still investigating the remaining references and would supplement its responses if any of those references proved to anticipate or render obvious the claims of the '164 patent:

> The Court: The remaining references listed are relevant prior art and that if, during the course of the completion of discovery, these may be mentioned – and I take it you're also leaving the door open that if, because of something an expert witness says or some evidence that comes forward in the future, you might, in fact, include one of the remaining 100 whatever to your list of 19, at which point you would then chart the prior art reference?
>
> Mr. Sitzman: Absolutely.

D.I. 80 at 13.

At the August 2 conference, counsel for McKesson also requested that TriZetto identify the motivation to combine the nineteen references. The Court noted that if the motivation to combine was within the documents, it should be identified, but if not, it was an appropriate subject for expert reports, to be prepared during expert discovery. Id. at 24. TriZetto agreed to conduct further investigation and provide the motivation to combine references as could be identified within the documents. On August 10, 2005, TriZetto sent a letter to McKesson with a chart disclosing the language in the prior art references that showed a motivation to combine the references.

### D. TriZetto's Fourth Supplemental Response to Interrogatory No. 6

After additional investigation and discovery, TriZetto served its Fourth Supplemental Response to Interrogatory No. 6 on September 13, 2005, identifying eight additional invalidating references, five of which had previously been disclosed in the list of prior art references that TriZetto had provided on July 27, 2005. TriZetto added these references to the list of

3

invalidating references and provided an updated element-by-element claim chart mapping the references to the asserted claims. The Fourth Supplemental Response also reproduced the chart disclosing language supporting a motivation to combine references that had been produced to McKesson on August 10, 2005. In addition, the Fourth Supplemental Response contained a list of fifteen prior art systems, most of which were disclosed in the prior art references themselves or other produced documents. Finally, the Fourth Supplemental Response included two paragraphs outlining the facts concerning HPR's offers to sell the patented technology. These facts were derived from McKesson's document production.

## II. THE NEW INFORMATION IN THE SUPPLEMENTATIONS SHOULD NOT BE EXCLUDED

### A. Virtually All Of The Prior Art References And Systems Were Previously Disclosed

As stated above in Section I.D. *supra*, of the eight additional invalidating references identified in TriZetto's Fourth Supplemental Response to Interrogatory No. 6, five were previously disclosed on the list of prior art references that was included in TriZetto's Third Supplemental Response, served on July 27, 2005. TriZetto uncovered the remaining three prior art references as relevant and invalidating prior art during TriZetto's ongoing investigation. The motivations to combine had previously been disclosed in a letter of August 10, 2005, pursuant to an order from the court following the August 2, 2005 discovery conference.

TriZetto's Fourth Supplemental Response to Interrogatory No. 6 also included a list of fifteen prior art systems, most of which were disclosed in the prior art references themselves or in other produced documents, as demonstrated in the chart below:

| **Prior Art System** | **Previous Disclosure** |
| --- | --- |
| **AccuCode (HCIA/Solucient)** | **Described in McKesson's document production, MCK 023297-MCK 023326.** |
| **Clinical Data Editor (Health Systems International)** | **Disclosed in Second Supplemental Response to Interrogatory No. 6 (June 20, 2005)**<br><br>50. Stachura CT, *Software reference guide: DRG assignment,* J Am Med Rec Assoc, January 1987, Vol. 58, (1), pp. 33-40. |

4

| Prior Art System | Previous Disclosure |
|---|---|
|  | 54.  Nathanson M, *Medical records. Experts: more research needed to set value of code programs*, Modern Healthcare, June 21, 1985, Vol. 15 (13), pp. 98, 102.<br><br>**Disclosed in Third Supplemental Response to Interrogatory No. 6 (July 27, 2005)**<br><br>106.  Dorenfest SI, *Computers can figure out DRGs, if you can figure out computer market*, Modern Healthcare, February 15, 1984, Vol. 14 (3), pp. 130, 134, 136.<br><br>132.  Carter, K., *End of PIP will prompt hospitals to try software to speed billing*, Modern Healthcare, February 13, 1987, Vol. 17 (4), pp. 62, 64, 68. |
| **Clinical Review System a/k/a Chart 'N Coder (Ernst & Young)** | **Disclosed in Second Supplemental Response to Interrogatory No. 6 (June 20, 2005) and Third Supplemental Response to Interrogatory No. 6 (July 27, 2005)**<br><br>53.  Huertas-Cortocarrero D, Ruiz PP, Marmol JP, *Concurrent clinical review: using microcomputer-based DRG-software,* Health Policy 1988, Vol. 9 (2), pp. 211-7<br><br>54.  Nathanson M, *Medical records. Experts: more research needed to set value of code programs*, Modern Healthcare, June 21, 1985, Vol. 15 (13), pp. 98, 102. |
| **CODEFINDER/ DRGFINDER or Clinical Claims Editor (Code 3 Health Information Systems/3M)** | **Disclosed in Second Supplemental Response to Interrogatory No. 6 (June 20, 2005)**<br><br>50. Stachura CT, *Software reference guide: DRG assignment,* J Am Med Rec Assoc, January 1987, Vol. 58, (1), pp. 33-40<br><br>54.  Nathanson M, *Medical records. Experts: more research needed to set value of code programs*, Modern Healthcare, June 21, 1985, Vol. 15 (13), pp. 98, 102.<br><br>**Disclosed in Third Supplemental Response to Interrogatory No. 6 (July 27, 2005)**<br><br>106.  Dorenfest SI, *Computers can figure out DRGs, if you can figure out computer market*, Modern Healthcare, February 15, 1984, Vol. 14 (3), pp. 130, 134, 136. |
| **Codemaster PLUS (Care Communications)** | **Disclosed in Second Supplemental Response to Interrogatory No. 6 (June 20, 2005) and Third Supplemental Response to Interrogatory No. 6 (July 27, 2005)**<br><br>50. Stachura CT, *Software reference guide: DRG assignment,* J Am Med Rec Assoc, January 1987, Vol. 58, (1), pp. 33-40. |
| **Discorp Software (Novalis)** | **Disclosed in Response to Second Set of Interrogatories, served August 16, 2005** |
| **ExClaim (Policy Management Systems Corporation)** | **Disclosed in Supplemental Response to Interrogatory No. 6 (May 5, 2005); Second Supplemental Response to Interrogatory No. 6 (June 20, 2005); and Third Supplemental Response to Interrogatory No. 6 (July 27, 2005)**<br><br>12. Snyeder, C., *From research to reality: the leading edge of expert systems,* Insurance Software Review, Vol. 12, No. 3, Autumn 1987, 22-4, 26-7, 30 |
| **Interactive DRG Grouper (Radle** | **Disclosed in Second Supplemental Response to Interrogatory No. 6 (June 20, 2005) and Third Supplemental Response to Interrogatory No. 6 (July 27, 2005)** |

| Prior Art System | Previous Disclosure |
|---|---|
| Computer Systems, Inc.) | 50. Stachura CT, *Software reference guide: DRG assignment,* J Am Med Rec Assoc, January 1987, Vol. 58, (1), pp. 33-40. |
| MedClaim | **Disclosed in Supplemental Response to Interrogatory No. 6 (May 5, 2005); Second Supplemental Response to Interrogatory No. 6 (June 20, 2005); and Third Supplemental Response to Interrogatory No. 6 (July 27, 2005)**<br><br>8. Weitzel, J.R., et al., *A Company / University Joint Venture to build a knowledge-based system,* MIS Quarterly, Vol. 12, No. 1, March 1988, 23-34<br><br>18. Weitzel, J.R. and Kerschberg, L. "Developing Knowledge-Based Systems: Reorganizing the System Development Life Cycle," working paper, University of South Carolina, Columbia, SC and George Mason University, Fairfax, VA (December 1986). Final Publication, April 1989 in Communications of the ACM, Vol. 32, No. 4.<br><br>**Disclosed in Second Supplemental Response to Interrogatory No. 6 (June 20, 2005) and Third Supplemental Response to Interrogatory No. 6 (July 27, 2005)**<br><br>88. Hao Kuo, *MEDCLAIM: An Expert Support System for Medical Claims Review*, Thesis Submitted in Department of Computer Science, University of South Carolina (1986). |
| QGROUPER (Quality Data Systems) | **Disclosed in Second Supplemental Response to Interrogatory No. 6 (June 20, 2005) and Third Supplemental Response to Interrogatory No. 6 (July 27, 2005)**<br><br>50. Stachura CT, *Software reference guide: DRG assignment,* J Am Med Rec Assoc, January 1987, Vol. 58, (1), pp. 33-40. |
| Wilmer Information Systems | **Disclosed in Second Supplemental Response to Interrogatory No. 6 (June 20, 2005) and Third Supplemental Response to Interrogatory No. 6 (July 27, 2005)**<br><br>73. Miller KM, Wisnicki HJ, Buchman JP. Riley MJ, Repka MX, Taylor HR, Guyton DL, *The Wilmer Information System. A classification and retrieval system for information on diagnosis and therapy in ophthalmology,* Ophthalmology, March 1988, Vol. 95 (3), pp. 403-9. |

### B.   Many Of The Witnesses Were Already Known To McKesson

The witnesses disclosed by TriZetto in its Third Supplemental Initial Disclosures, served September 13, 2005, were known by McKesson *and should actually have been disclosed by McKesson*, in response to interrogatories 9 and 10, which sought the identification of prior art known to McKesson or the inventors, and people knowledgeable about that art. (Exhibit A). TriZetto's supplemental disclosures were simply making a record of people and information learned through discovery from McKesson. For example, TriZetto disclosed Dr. Samuel Fager

6

as a possible third party witness. TriZetto obtained Dr. Fager's name after reviewing the documents produced by McKesson. According to documents produced by McKesson (including MCK 119762-119764), Dr. Fager knew about the prior uses or sale of the patented invention to third parties. In fact, Dr. Fager was listed in the witness lists from the *GMIS v. HPR* litigation, the last time the '164 patent was asserted in litigation. *See, e.g.*, MCK 116486-MCK 116490.

Similarly, McKesson has produced documents and literature reflecting its research into the development of ClinicaLogic, the clinical editing component of TriZetto's ClaimFacts product, including the role played by PACE Healthcare Management and its president, Dr. Philip Hawley. *See* MCK 020649, MCK 031189, and MCK 031235.

Larry Kerschberg was the author of prior art that was debated by the original patentee (HPR) with the PTO, and so McKesson has the best information regarding that art, and yet it did not disclose that information in its discovery responses. (Moreover, Mr. Kerschberg was disclosed as the author of various prior art references in TriZetto's Supplemental Response to Interrogatory No. 6 (served May 5, 2005), TriZetto's Second Supplemental Response to Interrogatory No. 6 (served June 20, 2005), and TriZetto's Third Supplemental Response to Interrogatory No. 6 (served July 27, 2005).) Likewise, Steve Graham was the creator of other prior art raised by the examiner during the prosecution of the '164 Patent. Thus, Dr. Kerschberg and Mr. Graham, and their respective prior art systems (MedClaim and Healthstar) should have been disclosed by McKesson, in response to interrogatories 9 and 10 (Exhibit A).

### C.  There Is No Legal Basis For Excluding TriZetto's Additional Prior Art References and Witnesses

The Third Circuit has recognized that the exclusion of evidence due to delayed disclosure is an extreme measure that is ordinarily limited to circumstances involving willful deception or flagrant disregard of a court order. *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977), *overruled on other grounds by Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985). The Third Circuit considers five factors when determining whether such evidence should be excluded:

> (1) the prejudice or surprise to a party against whom the evidence is offered; (2) ability of the injured party to cure the prejudice; (3) likelihood of disruption of trial; (4) bad faith or willfulness involved in not complying with the disclosure rules; and (5) importance of the evidence to the proffering party.

*See In re Mercedes-Benz Antitrust Litig.*, 225 F.R.D. 498, 506 (D.N.J. 2005); *see also Quinn v. Consol Freightways Corp.*, 283 F.3d 572, 577 (3d Cir. 2002) .

There is no willful deception or flagrant disregard of a court order here. TriZetto has diligently disclosed relevant prior art in this litigation as quickly as feasible, given its ongoing investigation during the discovery period. Furthermore, McKesson has not been prejudiced by TriZetto's September 13, 2005 supplementations. The prior art references are documents that speak for themselves and require no additional discovery, other than the commentary to be offered by experts for TriZetto and McKesson. To date, McKesson has not taken or attempted to take any discovery regarding any of the prior art previously disclosed. The expert discovery phase is just beginning. McKesson will have ample opportunity to depose TriZetto's experts in order to uncover relevant information concerning the prior art. *See, e.g., Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A.*, 2004 U.S. Dist. LEXIS 17737 at *14-15 (S.D. Iowa September 2, 2004), (finding no undue delay and no prejudice to plaintiff from the disclosure of a prior art article, because neither party had deposed the experts and plaintiff had sufficient time to respond to the newly asserted prior art in rebuttal expert reports); *see also Cytyc Corp. v. Tripath Imaging, Inc.*, 2005 U.S. Dist. Lexis 12777 (D. Mass. June 21, 2005) (finding no prejudice in supplementation of interrogatory response on last day of fact discovery where expert discovery was ongoing).

### III.   TRIZETTO'S EXPERTS SHOULD NOT BE PRECLUDED

Expert testimony is appropriate to assist the Court with the following factual issues concerning prior art: (1) the scope and content of the prior art; (2) differences between the prior art and the claims at issue; (3) the level of ordinary skill in the pertinent art; and (4) evaluation of any relevant secondary considerations. *Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 411 F.3d 1332, 1337 (Fed. Cir. 2005) (*citing Graham v. John Deere Co. of Kansas City*, 383

8

U.S. 1, 17 (1966)). Experts have their own familiarity with prior art and prior art systems and testify as to the state of the art and the level of skill of the ordinary person in the art during the relevant time period. TriZetto should not be precluded from introducing prior art known to its experts and relevant to describing the state of the art and the level of skill of the ordinary person in the art. TriZetto will provide expert reports on a timely basis, consistent with the Court's Scheduling Order, and McKesson will be able to depose the experts on their expert reports. As long as the experts rely only on the prior art itself, McKesson will have a full opportunity to understand that art and examine the experts with regard to it.

### IV.    CONCLUSION

For all the foregoing reasons, TriZetto's Third Supplemental Initial Disclosures and Fourth Supplemental Response to Plaintiff's Interrogatory No. 6 were supplemented seasonably and should be allowed to stand.

MORRIS, NICHOLS, ARSHT & TUNNELL

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)
Rodger D. Smith, II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
  Attorneys for Defendant
  The TriZetto Group, Inc.

OF COUNSEL:

Jeffrey T. Thomas
Michael A. Sitzman
GIBSON, DUNN & CRUTCHER LLP
Jamboree Center
4 Park Plaza
Irvine, CA  92614-8557
(949) 451-3800

September 30, 2005

CERTIFICATE OF SERVICE

I, Jack B. Blumenfeld, hereby certify that on September 30, 2005 I electronically filed TriZetto's Response to McKesson's Objections Regarding Its Recent Prior Art Disclosures with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

>Thomas J. Allingham, II
>Skadden, Arps, Slate, Meagher & Flom LLP

I also certify that copies were caused to be served on September 30, 2005 upon the following in the manner indicated:

>BY HAND
>
>Thomas J. Allingham, II
>Skadden, Arps, Slate, Meagher & Flom LLP
>One Rodney Square
>P.O. Box 636
>Wilmington, DE  19899
>
>BY FEDERAL EXPRESS
>
>Jeffrey G. Randall
>Skadden, Arps, Slate, Meagher & Flom LLP
>525 University Avenue
>Suite 1100
>Palo Alto, CA  94301]

/s/      Jack B. Blumenfeld (#1014)
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com