IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC,<br><br>   Plaintiff,<br><br>   v.<br><br>THE TRIZETTO GROUP, INC.<br><br>   Defendant. | **FILED UNDER SEAL**<br><br>CIVIL ACTION NO. 04-1258-SLR |

### McKESSON'S MEMORANDUM IN OPPOSITION TO TRIZETTO'S RESPONSE REGARDING TRIZETTO'S RECENT PRIOR ART DISCLOSURES AND WITNESSES PREVIOUSLY PRECLUDED BY THE COURT

Plaintiff, McKesson Information Solutions LLC ("McKesson"), respectfully submits this opposition to Defendant The TriZetto Group Inc.'s ("TriZetto") Response to McKesson's Objections Regarding Its Recent Prior Art Disclosures.

### PRELIMINARY STATEMENT

TriZetto seeks reconsideration of the Court's September 22, 2005 ruling precluding TriZetto from relying upon 15 alleged prior uses identified for the first time on September 13, 2005 – three days before the close of fact discovery.

The Court permitted the present briefing to address a single, narrow issue, explaining to TriZetto in no uncertain terms that: "If you want to give me the documents that say *demonstrate that McKesson was on specific notice that you were going to rely on these prior uses* . . . I will try to take a look at it. Otherwise you are precluded." D.I. 116 at 74 (emphasis added). As the Court made clear, "*it does not matter whether the art is known to them. What matters is if you have said we're going to rely on this prior art* and therefore you need to take discovery on this prior art. If you cannot demonstrate that, then you will be precluded . . . ." *Id.* (emphasis added). Despite the Court's clear delineation of the basis upon which it might reconsider its preclusion ruling,

TriZetto fails to even assert, much less demonstrate, that it provided such specific notice that it would rely on any prior use defenses. Instead, TriZetto argues exactly what the Court explained does not matter – that McKesson was generally aware that some of the prior uses were referenced somewhere within the parties' productions and discovery responses – and points to no statement of any sort that it intended to rely upon any prior use defense until three days before the close of fact discovery. In short, TriZetto has not even attempted to address the very showing the Court required and offers no basis for revisiting its ruling.

The Court's ruling properly held TriZetto to its representation at the August 2, 2005 discovery conference that it had identified the 19 pieces of prior art on which it would "present evidence to the jury . . . in connection with *any* anticipation or obviousness defenses." D.I. 80 at 13. Despite this representation, TriZetto unveiled fifteen new alleged prior uses, eleven new prior art witnesses, and eight new publications three days before the close of fact discovery and well after McKesson had scheduled its allotted depositions. TriZetto offered no explanation when it added the new evidence, which notably included TriZetto's own systems, Trizetto's own trial consultants, and alleged prior uses **REDACTED**. In view of this and the manifest evidentiary prejudice to McKesson, the Court correctly concluded "[t]here is just no excuse for waiting until September 13 to identify all of this new prior art." D.I. 116 at 60.

Indeed, the Court only authorized the present briefing after TriZetto advanced a number of demonstrably false arguments that it has now abandoned at the September 22, 2005 hearing. Notably absent from TriZetto's brief are its arguments that: (1) the prior uses were discovered during the inventors' depositions (none were mentioned in any of these depositions) D.I. 116 at 27; (2) all the prior uses were disclosed in TriZetto's previously identified prior art (TriZetto's brief concedes a number were never mentioned in any identified prior art) D.I. 116 at 72; and (3) McKesson had served no interrogatory on prior uses (TriZetto specifically included prior uses in its response to McKesson's interrogatory on *all prior art* grounds served in December 2004). *Id.*

2

Finally, TriZetto's attempt to raise issues beyond the prior uses, such as its late-identified witnesses and publications, is equally flawed and again flouts the Court's instructions at the September 22, 2005 hearing. As the Court unambiguously explained in permitting TriZetto to address the limited issue regarding specific notice of its untimely prior use defenses: ***Now this is just the prior uses.*** I don't want to hear anything about the prior art publication. You have blown that as far as I'm concerned. All right. I'm done." D.I. 116 at 75.

## ARGUMENT

### I. TRIZETTO DOES NOT ATTEMPT TO DEMONSTRATE THE "SPECIFIC NOTICE" REQUIRED BY THE COURT FOR ANY OF ITS PRIOR USE DEFENSES

TriZetto's brief remarkably ignores the sole issue upon which the Court permitted briefing and fails to even mention, let alone demonstrate, the showing the Court required for it to reconsider its September 22 ruling that TriZetto was precluded from relying upon the 15 new alleged prior uses. *See* D.I. 116 at 60 ("[t]here is just no excuse for waiting until September 13 to identify all of this new prior art").[1] That ruling was correct and TriZetto offers nothing new to warrant revisiting it.

Indeed, the Court only permitted this briefing after TriZetto confused the record by misrepresenting that the prior uses were never requested in an interrogatory and were all previously

---

[1]   MR. RANDALL: Your Honor, I just have a couple points of clarification. 1 is with respect to the prior art issue, does your order regarding the new prior art references also include the 15 new prior public use issues?

THE COURT: Yes. Yes.

MR. RANDALL: And the second issue is that, with respect to the witnesses that they designated, . . . but it's not your order allowing them to designate them as experts is not a – giving them freedom and liberty to then get their own prior art system that you've precluded into trial; correct?

THE COURT: No. No. It just means those witnesses can testify as experts, not that they can testify about prior art that I have precluded from being admitted at trial.

D.I. 116 at 65-66.

3

disclosed. However, the Court could not have been more clear in explaining the showing TriZetto was required to make:

> If you want to give me the documents that say *demonstrate that McKesson was on specific notice that you were going to rely on these prior uses* and that they're the ones who waived the opportunity to do the discovery, then, again, I will try to take a look at it. Otherwise you are precluded.
>
> . . . .
>
> *[I]t does not matter whether the prior art is known to them. What matters is if you have said we're going to rely on this prior art* and therefore you're on notice that you need to take discovery on this prior art. *If you cannot demonstrate that, then you will be precluded* and you're going to pay the costs of this . . . .

D.I. 116 at 74 (emphasis added).

Despite the Court's unambiguous instructions, TriZetto's brief never asserts that McKesson was on specific notice that TriZetto would rely on the alleged prior uses. TriZetto points to no such disclosure before its September 13 interrogatory response because none exists – not even a letter or e-mail indicating that TriZetto was in the process of investigating such a defense. As TriZetto concedes, the response it served three days before the close of fact discovery was the first time it gave any indication it would rely upon these defenses. This lack of notice was the very reason the Court precluded the prior uses at the September 22 hearing.

Rather than attempt to demonstrate the specific notice the Court indicated was necessary, TriZetto's brief is limited to argument the Court unambiguously explained was insufficient: "it does not matter whether the prior art is known to [McKesson]. What matters is if you have said we're going to rely on this prior art." D.I. 116 at 74.[2] As TriZetto now concedes, it never said any such thing prior to September 13. Instead, TriZetto argues that McKesson should have unilaterally

---

[2] The Court's instruction is particularly applicable here given TriZetto's initial identification of hundreds of references, the vast majority of which it later confirmed it would not be asserting. Indeed, TriZetto forced McKesson to repeatedly seek the Court's intervention before it would narrow this list. Given TriZetto's strategy of inundating McKesson with a host of references upon which TriZetto knew it would not rely until forced by the Court to narrow its list, it would have been entirely unreasonable and virtually impossible for McKesson to take discovery of the hundreds of systems mentioned in the references TriZetto provided.

divined that TriZetto would eventually assert these 15 prior uses – despite TriZetto's contrary representations – because some of these systems were referenced among hundreds of others in publications included in the parties' document productions and interrogatory responses. TriZetto's argument borders on the incredible.

For example, TriZetto contends that McKesson should have foreseen the following prior use defenses were inevitable even before TriZetto first mentioned them on September 13:

- Four systems that TriZetto concedes were never identified as prior art in any interrogatory response and that are not mentioned as prior art anywhere in either party's document production (BCBS New Jersey, ClinicaLogic for ClaimFacts (Erisco), MedChec, and Medical Policy);

- A system TriZetto never identified in any interrogatory response and for which TriZetto produced no documents but that was referenced in passing in *four documents* within McKesson's entire production (AccuCode);

- A system marketed by a TriZetto subsidiary and identified by TriZetto only as a current alternative to McKesson's products – not prior art – in response to an interrogatory unrelated to TriZetto's invalidity defenses (DisCorp Software); and

- Five products included within a table of 31 different products – but not the other 26 listed products – in a "Software Reference Guide" with only a single paragraph description and system requirements for each product (Clinical Data Editor, CODEFINDER/DRGFINDER, Codemaster PLUS, Computer Systems, Inc., and QCGROUPER). Declaration of Michael A. Barlow, Exhibit 1. (hereinafter "Barlow Dec. Exhibit _")

Requiring a patentee to frame its strategy and budget based on such scant "disclosures" is manifestly unjust and contrary to the rules of discovery. Moreover, even if the prior uses were prominently described in publications identified as prior art, TriZetto's argument remains self-defeating. If, as TriZetto suggests, these systems were so well known to the parties that McKesson should have guessed that TriZetto would eventually assert them as prior uses in time to take the necessary discovery, there is no excuse for TriZetto's failure to: (1) identify them before September 13; and (2) mention them on August 2 when it represented to McKesson and the Court that it had identified the 19 items of prior art it would rely upon "in connection with *any* anticipation or obviousness defenses." D.I. 80 at 13.

TriZetto's argument would turn the discovery process on its head. The '164 patent at issue here is presumed valid as a matter of law and TriZetto bears the burden to overcome that presumption with clear and convincing evidence. It is therefore incumbent upon TriZetto to timely set forth the specific bases for the invalidity defenses it intends to assert at trial. TriZetto now, however, seeks a rule requiring a patentee to engage in all discovery necessary to vet any potential prior use defenses mentioned anywhere in either party's production regardless of whether an accused infringer has identified any such defense.

Such an approach is flatly inconsistent with litigants' discovery obligations and is acutely inappropriate here, where TriZetto's actions throughout discovery indicated it had elected *not* to rely on a prior use defense – let alone 15. In December 2004, McKesson served a standard interrogatory requesting that TriZetto set forth the basis for any prior art invalidity contentions. In its first substantive response on May 5, 2005, TriZetto identified a list of prior art publications and a list of two prior uses. Barlow Dec. Exhibit 2 at 9-10. In a subsequent supplemental response on June 20, 2005, TriZetto incorporated its prior responses "except for the lists of prior art references from the May 5, 2005 supplemental response, which are superseded by the list of prior art references in this response." Barlow Dec. Exhibit 2 at 11-24. TriZetto's new list of prior art included no prior uses, only printed publications. TriZetto supplemented its response again on July 27, 2005, again superseding the prior art listed in its prior responses and again identifying no prior uses. It was at this point, having identified and apparently withdrawn any prior use defense, that TriZetto represented to McKesson and the Court that its latest response identified the 19 items on which it would "present evidence to the jury . . . in connection with *any* anticipation or obviousness defenses." D.I. 80 at 13 (emphasis added). As in its responses, TriZetto made no mention of any prior use at the September 22 hearing and nor did it mention the "ongoing investigation" it now contends led to its untimely disclosure of the 15 prior uses. D.I. 106 at 4.

Thus, TriZetto had every opportunity to provide "specific notice" that it was intending to rely upon these defenses, it simply elected not to do so until it was assured that McKesson would

6

have no opportunity for discovery. TriZetto's brief openly concedes this controlling point and confirms the Court's preclusion of this evidence was correct and need not be revisited.

### II. MCKESSON'S PREJUDICE AND TRIZETTO'S DISREGARD FOR THE COURT'S SCHEDULING ORDER PROVIDE AMPLE GROUNDS FOR THE COURT'S DECISION TO PRECLUDE THE UNTIMELY PRIOR ART EVIDENCE

The Court's preclusion of TriZetto's untimely disclosed evidence was appropriate under the facts and law and was the only means to prevent substantial prejudice to McKesson from TriZetto's failure to comply with the Court's orders and its own representations. TriZetto ignores the trial courts' wide discretion in making rulings on the admissibility of evidence. *See, e.g., Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 109-10 (3d Cir. 1999); *Fuentes v. Reilly*, 590 F.2d 509, 511 (3d Cir. 1979). Rule 37(b)(2) of the Federal Rules of Civil Procedures authorizes the district court to sanction a party's failure to comply with a discovery order by "prohibiting that party from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(B). Similarly, "Rule 16 gives the district court the authority to set management deadlines and to impose sanctions for their violation." *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998). Contrary to TriZetto's suggestion, the Court's ruling was neither an abuse of discretion nor inconsistent with the Third Circuit's decisions in *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977), *overruled on other grounds by Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985), and *Quinn v. Consolidated Freightways Corp.*, 283 F.3d 572, 577-78 (3d Cir. 2002).[3]

---

[3] As another Third Circuit court has recognized, the indulgence afforded the individual parties in *Meyers* and *Quinn* is generally unnecessary in a patent case:

> *Meyers* and *Quinn*, involved individual plaintiffs, making civil rights claims. Courts are appropriately and necessarily indulgent to individual plaintiffs in cases such as *Meyers* and *Quinn* – but need not be so indulgent in patent cases ... involving two large business entities, with expertise in their respective fields, and with highly competent counsel representing them.

*AstraZeneca AB v. Mutual Pharm. Co.*, 278 F. Supp. 2d 491, 508-09 (E.D. Pa. 2003) (precluding untimely evidence with no trial date was set), *aff'd*, 384 F.3d 1333 (Fed. Cir. 2004).

7

TriZetto has engaged in a continuing pattern of disregard for the Court's scheduling order that can only be described as flagrant. TriZetto has long been aware that document discovery was to close on May 13, 2005 and fact discovery was to close on September 16, 2005. It was aware of those deadlines on August 2, when it represented to McKesson and the Court that it had identified the 19 pieces of prior art upon which it intended to rely for *any* prior art defense. It was further aware of those deadlines on September 13, when it more than doubled the volume of prior art it intended to use three days before the close of fact discovery. TriZetto's conclusory references to an "ongoing investigation" – which remain unsupported by any declaration – do not justify unveiling a host of prior art defenses at the close of discovery, particularly given its prior knowledge of the evidence it waited to disclose. D.I. 106 at 4.

For example, TriZetto offers no explanation why it was unable to identify the MedClaim system as a potential prior use until September 13,

**REDACTED**

TriZetto also offers no explanation for its delay in disclosing the alleged prior use of Discorp Software, a product marketed by a company *owned by TriZetto* for six years. Most tellingly, TriZetto identified ClinicaLogic – the primary infringing component of the very TriZetto products at issue in this case – as a potential prior use for the first time on September 13 despite never before suggesting it was prior art, a fact notably omitted from its brief.[4] TriZetto's unexplained decision to wait until the close of fact discovery to identify systems it owns

---

[4] **REDACTED**

**REDACTED** is, at best, a flagrant disregard of the discovery process and this Court's scheduling order.

The prejudice to McKesson from allowing the precluded prior uses to be admitted at trial is manifest and incurable. Even TriZetto has conceded the significant additional discovery a prior use defense necessitates: "THE COURT: ... So there is a true difference in the kind of discovery you take for prior uses than for prior art references? MR. SITZMAN: Absolutely, your Honor." D.I. 116 at 72. The evidentiary prejudice to McKesson resulting from TriZetto's identification of 15 prior uses at a time when McKesson could not engage in such discovery is undeniable. Indeed, the court excluded prior use evidence and witnesses identified in the last week of discovery under nearly identical circumstances in *Texas Instruments, Inc. v. Hyundai Electronics Industries Co.*, 50 F. Supp. 2d 619 (E.D. Tex. 1999).[5] *See id.* at 622-30. As the *Texas Instruments* court explained, "late in the discovery process, it became apparent that Hyundai was, in fact, planning on relying upon 'prior public use' as part of its invalidity defense – a more fact-intensive route to invalidity." *Id.* at 624. The court later noted that "[t]he net result of Hyundai's last-minute ambush with the [late disclosed prior art] has been the simultaneous deprivation of critical discovery *and* valuable trial preparation time – both of which, quite obviously, are extremely valuable to any party to such complex litigation." *Id.* at 629.

TriZetto's suggestion that this prejudice may be remedied by deposing the prior use witnesses it has handpicked as experts is unfounded.[6] To fully vet a prior use, as opposed to a

---

[5] The Fifth Circuit's standard controlling *Texas Instruments* is nearly identical to that articulated by the Third Circuit in *Meyers* and *Quinn*. *See Texas Instruments*, 50 F. Supp. 2d at 622; *United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998); *accord Meyers*, 559 F.2d at 904-05; *Quinn*, 283 F.3d at 576-77.

[6] TriZetto's request that its experts be able to testify regarding the precluded prior uses is equally flawed. Under TriZetto's logic, any defendant could hire percipient witnesses as experts and blindside a patentee with a prior use known to the expert but never disclosed during discovery. Permitting an expert to backdoor testimony into trial about evidence a patentee has had no opportunity to investigate during discovery is manifestly unfair and entirely inconsistent with a party's discovery obligations under the Federal Rules of Civil Procedure.

9

printed publication, requires document discovery and depositions of multiple sources with knowledge of the alleged prior use – discovery TriZetto has unilaterally denied McKesson through its delay. Indeed, TriZetto's argument that McKesson "has not taken or attempted to take any discovery regarding any of the prior art previously disclosed," Triz. Br. at 8, is a direct result of TriZetto's failure to provide any, much less specific, notice of any prior use defenses before the close of fact discovery and highlights the prejudice caused by TriZetto's delay.

Moreover, even permitting the necessary discovery would materially prejudice McKesson through further expense and delay. *See, e.g., Trilogy Communications, Inc. v. Times Fiber Communications, Inc.*, 109 F.3d 739, 745 (Fed. Cir. 1997) ("When scheduling orders are violated, an opposing party is often prejudiced by the ensuing delay and resultant expense."). McKesson framed its litigation strategy and budget based on TriZetto's representations that it had identified its prior art defenses. Allowing TriZetto to add its new defenses now that McKesson has expended significant resources executing a discovery plan based on TriZetto's own representations and the Court's schedule would impose unjustifiable costs on McKesson. Even if TriZetto were to pay for all such discovery, McKesson would still be prejudiced by the risk of further delay. McKesson brought this action and has diligently prosecuted it since filing. Engaging in the necessary discovery would jeopardize the case's schedule and reward TriZetto's dilatory conduct. As this Court recognized in *Stambler v. RSA Security, Inc.*, 212 F.R.D. 470 (D. Del. 2003), in precluding late-disclosed fact witnesses:

> Defendants have attempted to cure the prejudice by offering to allow plaintiff to depose the witnesses. This solution creates more problems that it solves. These witnesses are located throughout the United States. The nine "new" witnesses disclosed are located in at least six different states. The prejudice will only be increased if plaintiff is forced to depose these fact witness[es] less than six weeks before trial.
>
> . . . .
>
> Furthermore, allowing these witnesses to testify would disrupt the orderly and efficient resolution of this case. . . . Defendants offer to allow depositions of these witness[es] to cure this prejudice. However, re-opening the fact record through depositions at this late stage would impede the court's ability to manage its docket.

*Id.* at 472. In view of the unavoidable prejudice to McKesson from admitting the untimely prior uses and TriZetto's blatant, unjustified delay in presenting them until the close of fact discovery, the Court's preclusion ruling was necessary and entirely within its discretion.

Finally, McKesson objects to TriZetto's argument on issues beyond the prior uses, as the Court made clear that it was requesting briefing on a single issue: "By 9/30, September 30. By October 7, you can respond. Now that's just to the prior uses. I don't want to hear anything about the prior art publication. You have blown that as far as I'm concerned." D.I. 116 at 75. While McKesson deems TriZetto's extraneous arguments as all the more inappropriate given that they are piggybacked on a brief that makes no attempt to address the showing the Court did request, McKesson notes that these arguments are subject to the same infirmities as TriZetto's prior uses. By way of example, TriZetto argues that it only learned of Dr. Philip M. Hawley from McKesson's production, when in fact Dr. Hawley was president of the company that initially developed the database at the core of TriZetto's accused products. Additionally, TriZetto identified Dr. Kerschberg, whom it has retained as a consultant, for the first time on September 13 despite the fact that **REDACTED**. Finally, TriZetto inexplicably was unable to identify Donald DeMers until the close of discovery despite his founding and serving as president of DisCorp Software, a company TriZetto has owned since 1999.

## CONCLUSION

For the foregoing reasons, McKesson respectfully requests that the Court deny TriZetto's request to reconsider its ruling precluding TriZetto's reliance on the tardily disclosed prior art evidence and witnesses identified in TriZetto's Fourth Supplemental Response to McKesson's Interrogatory No. 6 and Third Supplemental Initial Disclosures and enter the Proposed Order submitted herewith.

Dated: October 7, 2005

By: /s/ *signature*
Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff McKesson
   Information Solutions LLC

OF COUNSEL:
Jeffery G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500

## CERTIFICATE OF SERVICE

I, Michael A. Barlow, hereby certify that on October 7, 2005, I electronically filed McKesson's Memorandum in Opposition to TriZetto's Response Regarding TriZetto's Recent Prior Art Disclosures and Witnesses Previously Precluded by the Court with the Clerk of Court using CM/ECF, which will send notification of such filing to those designated below, and that I served the following persons in the manner listed:

**VIA CM/ECF**
Rodger D. Smith, II, Esq.
MORRIS NICHOLS ARSHT
 & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899

**HAND DELIVERY**
Jack B. Blumenfeld, Esq.
MORRIS NICHOLS ARSHT
 & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899

**VIA CM/ECF**
Thomas Preston, Esq.
Blank Rome LLP
Chase Manhattan Centre, Suite 800
1201 Market St.
Wilmington, DE  19801

/s/ Michael A. Barlow
Michael A. Barlow (ID No. 3928)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000
mbarlow@skadden.com