IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC, | ) ) ) | |
| Plaintiff, | ) ) | **FILED UNDER SEAL** |
| v. | ) ) ) | CIVIL ACTION NO. 04-1258-SLR |
| THE TRIZETTO GROUP, INC. | ) ) | |
| Defendant. | ) ) | |

**TRANSMITTAL DECLARATION OF MICHAEL A. BARLOW
IN SUPPORT OF McKESSON'S MEMORANDUM IN OPPOSITION TO TRIZETTO'S
RESPONSE REGARDING TRIZETTO'S RECENT PRIOR ART DISCLOSURES AND
WITNESSES PREVIOUSLY PRECLUDED BY THE COURT**

Michael A. Barlow hereby deposes and says:

1.　　I am associated with Skadden, Arps, Slate, Meagher & Flom LLP,

counsel for the plaintiff in this action. I submit this declaration in support of McKesson's

Memorandum in Opposition to TriZetto's Response Regarding TriZetto's Recent Prior Art

Disclosures And Witnesses Previously Precluded by the Court.

2.　　Attached hereto are true and correct copies of the following documents

referenced in McKesson's Memorandum in Opposition to TriZetto's Response Regarding

TriZetto's Recent Prior Art Disclosures And Witnesses Previously Precluded by the Court:

| Exhibit | Description |
|---|---|
| 1 | "*Software Reference Guide: DRG Assignment*" - Article from *AMRA Journal*, January 1987 |

| Exhibit | Description |
|---------|-------------|
| 2 | The TriZetto Group, Inc.'s Second Supplemental Response to Plaintiff's Interrogatory No. 6, dated 6/20/05 |
| 3 | REDACTED<br>[TRZ837277 - TRZ837279] |
| 4 | REDACTED<br>[TRZ837796 - TRZ837797] |
| 5 | REDACTED<br>[TRZ837794] |

I declare under penalty of perjury, that the forgoing is true and correct. Executed on October 7, 2005, Wilmington, Delaware.

Michael A. Barlow (I.D. #3928)

# EXHIBIT 1

# AMRA JOURNAL

**AMERICAN MEDICAL RECORD ASSOCIATION**          AMERICA'S HEALTH INFORMATION LEADERS

JANUARY 1987                                                                58|1

0333646 99 01/12/87
University of CA
The Library Div Serials
Acquisition Div Serials
259 Medical Sciences Bldg
San Francisco CA 94143-0840



*The Current Litigation Crisis and Tort Reform*

*The Crisis in Education*

*Guest Editorial—Acute Burnout and the Medical Record Practitioner*

*Software Reference Guide: DRG Assignment*

*Self-Assessment Update*

*MedInfo Report*

*ICD-9-CM Coding Competency: A Position Statement*

*1987 Catalog of AMRA Publications*

LIBRARY
U.C. SAN FRANCISCO

JAN 23 1987

JOURNAL OF AMRA/JANUARY 1987

# CONTENTS



JANUARY 1986  58|1

ABOUT THE COVER
The Current Litigation Crisis and Tort Reform. Story on page 19. Photography by Lou Russo. Model exclusive talent of Mary Boncher Model Agency.

## FEATURES

**19**  The Current Litigation Crisis and Tort Reform
By Nancy E. Morgan, RRA

**25**  The Crisis in Education
By Frances L. Horvath, MD

**33**  Software Reference Guide: DRG Assignment
By Cheryl Tabatabai Stachura, RRA

**45**  1987 AMRA Catalog

## DEPARTMENTS

**7**  ICD-9-CM Coding Competency

**9**  Counterpoint
Alphabetical Listing of articles on page 23

**16**  President's Message

**17**  Guest Editorial

**24**  Spotlight

**29**  Legislative Currents

**30**  Of Professional Interest

**31**  Publications of Interest

**32**  Keep Current with FORE

**41**  Products and Systems Applications

**42**  Internationally Speaking

**54**  Classified Advertising

**59**  State Presidents' Addresses

**60**  Information for Authors

The Journal of the American Medical Record Association (ISSN 0273-9976) is published monthly by the American Medical Record Association, 875 North Michigan Avenue, Chicago, IL 60611. Subscription Rates: The subscription is: $7.00 per year for Active, Inactive and Associate members, and $3.50 per year for Students. Subscriptions for non-members are $40.00 per year. Single copy prices are $3.50 and issues over one year old are $4.50. Change of Address-Postmaster, send address changes to Membership, AMRA, 875 North Michigan Ave., Suite 1850, Chicago, IL 60611. Notification of address change must be made at least six weeks in advance, including old and new address, (with zip code). Second class postage paid in Chicago, IL. Copyright 1987 American Medical Record Association. Postmaster: if Journal is undeliverable for any reason, please return to Publications, AMRA, 875 North Michigan Ave., Suite 1850, Chicago, IL 60611.

AMERICAN MEDICAL RECORD ASSOCIATION

# JOURNAL

Serving the Medical and Health Record Fields

Case 1:04-cv-01258-SLR     Document 123     Filed 10/07/2005     Page 6 of 51

# Software Reference Guide: DRG Assignment

BY CHERYL TABATABAI STACHURA, RRA

Notice: This material may be protected by copyright law (Title 17 U.S. Code).

This is the fifth article in a multi-part software reference guide series which began in the September 1986 issue of *JAMRA*. The focus of this month's article is software for DRG assignment. Like all articles in the series, this one is intended to assist medical record professionals as they seek ways to enhance the efficiency and effectiveness of the medical record services they provide.

The primary purpose of the software reference guide series is to provide a service to AMRA members by identifying existing software for medical record applications, briefly describing the software, and supplying information about the vendor. In compiling this series, every effort has been made to obtain comprehensive information about software available in each application category. Nevertheless, the software listings in the series should not be regarded as all-inclusive. Readers should also note that the information about each software package listed has been provided by the vendor. No attempt has been made by AMRA to evaluate the software or to verify information supplied by vendors. Moreover, the inclusion of a software package in the series is not meant to imply an endorsement by AMRA, nor is the omission of any software package meant to suggest a negative judgment about the software. It remains the responsibility of the reader to obtain more detailed information about packages of interest.

## DRG Assignment Application

With the advent of the DRG classification scheme as a basis for hospital reimbursement, the completeness, accuracy, and timeliness of patient care data has become critical to the financial survival of hospitals. And in most hospitals, computerization of the DRG assignment process has been essential for successful implementation of the DRG system.

DRGs can, of course, be assigned manually, but automation of this function offers the advantages of greater speed, ease and accuracy, plus the potential for developing an extensive data base for case-mix analysis. For these reasons, computerization of DRG assignment has been almost universal.

The number of DRG grouper software packages that have entered the marketplace has grown rapidly. Stand-alone groupers and those integrated with abstracting, coding, and/or case-mix analysis systems are available with a variety of features and in a variety of configurations. Because of their important role in the collection of patient data and the assignment of DRGs, medical record professionals should familiarize themselves with DRG grouper software packages currently on the market and with the advantages and disadvantages of each. ∎

Cheryl Tabatabai Stachura, RRA, is a Chicago-based freelance writer and editor. She formerly was the Editor of *JAMRA*.

3

JOURNAL OF AMRA/JANUARY 1987

# DRG ASSIGNMENT SOFTWARE

| Name of Package and Vendor | Description of Package | System Requirements |
|---|---|---|
| **Concurrent DRG Monitoring System**<br><br>AMI/Professional Hospital Services (PHS)<br>12960 Coral Tree Place<br>Los Angeles, California 90066<br><br>(213) 821-2323 | The Concurrent DRG Monitoring System automatically assigns a DRG at pre-admission or admission and subsequently monitors the patient's condition throughout the hospital stay. If DRG-significant data regarding the case are entered, the system automatically calculates and displays the new DRG. Hospital-specific flags can be used to mark specific DRGs, cases for focused review, and cases approaching outlier status. Hospital-specific treatment profiles allow monitoring of utilization of services based on standard treatment protocols by DRG, by DRG and principal diagnosis, or by DRG and principal procedure. The system provides an optimizer modeling function which displays all possible DRGs and reimbursement rates and which indicates which codes are complication/ comorbidity codes. Reports available include daily case review lists, PPS case logs and summary reports, DRG/payment discrepancy reports, and case-mix treatment profile reports. Physician attestation statements can be generated. The system is integrated with medical record abstracting and patient accounting systems.<br><br>**Package Price:** N/A\*<br>**Date of First Installation:** 1983<br>**Number of Installations to Date:** 150 | **Hardware:** Data General<br><br>**Operating System:** AOS/VS<br><br>**Language:** COBOL<br><br>**Memory Needs:** Varies |
| **Patient Data Quality Manager (PDQM)**<br><br>Applied Medical Data, Inc.<br>Tower Plaza, Suite 13D<br>555 East Williams Street<br>Ann Arbor, Michigan 48104<br><br>(313) 663-6006 | PDQM contains a DRG grouper and is designed to provide complete and accurate information for coding and grouping purposes. The system promotes coding accuracy by detecting selection errors, determining the potential for more specific codes, prompting for additional clinical data, and presenting legitimate reporting options. As many as 600 edit checks per case are conducted to ensure that codes conform to coding principles, UHDDS definitions, Medicare edit checks, and clinical concepts. DRG assignments can be made at any stage during the data correction process. Worksheets can be generated to help coders work with physicians to determine complete and comprehensive documentation for each case. Reports available include data quality profiles and logistics support reports which track reportable data elements for each case to ensure completeness of documentation.<br><br>**Package Price:** Based on number of discharges<br>**Date of First Installation:** 8/1984<br>**Number of Installations to Date:** 11 | **Hardware:** IBM PC<br><br>**Operating System:** DOS 3.1<br><br>**Language:** N/A<br><br>**Memory Needs:** 640K |
| **Medical Information Management System, Level 1**<br><br>AR/MEDIQUEST<br>6105 West St. Joseph<br>Lansing, Michigan 48917<br><br>(517) 323-0900 | AR/MEDIQUEST's Medical Information System, Level 1, contains a DRG grouper which allows DRG monitoring and DRG projection while the patient is inhouse, as well as final DRG assignment after the patient is discharged. Demographic data may be entered directly into the system or entered via an interface with the admitting system. Detailed reports are available on DRGs, lengths of stay, and financial information.<br><br>**Package Price:** $3,000<br>**Date of First Installation:** 1982<br>**Number of Installations to Date:** 31 | **Hardware:** IBM 5340, 5360, 5362, 5364, IBM PC, and compatibles<br><br>**Operating System:** SSP<br><br>**Language:** RPG II<br><br>**Memory Needs:** 256K |
| **EncoderPlus**<br><br>BaronData<br>1700 Marina Boulevard<br>Post Office Box 2193<br>San Leandro, California 94577<br><br>(415) 352-8101 | BaronData's EncoderPlus package includes an ICD-9-CM encoder, a DRG grouper with optimizer, and a code editor.<br><br>**Package Price:** N/A<br>**Date of First Installation:** N/A<br>**Number of Installations to Date:** N/A | **Hardware:** Convergent Technology MiniFrame and MightyFrame, IBM PC and compatibles<br><br>**Operating System:** CTIX (UNIX), MS DOS, PC DOS<br><br>**Language:** C<br><br>**Memory Needs:** 3MB, 512K |

34

\* N/A = Information not provided for publication.

JOURNAL OF AMRA/JANUARY 1987

# DRG ASSIGNMENT SOFTWARE

| Name of Package and Vendor | Description of Package | System Requirements |
|---|---|---|
| **BHIS/HMS Medical Records Statistics Module—Prospective Payment System**<br><br>Burroughs Health Care Services 2101-E Rexford Road, Suite 203 Charlotte, North Carolina 28211<br><br>(704) 366-4847 | The Burroughs Prospective Payment System contains a DRG grouper which automatically assigns DRGs and assists in the day-to-day monitoring of patient costs. The grouper assigns a DRG when the patient is admitted as soon as demographic data, diagnostic and procedural data, and ICD-9-CM codes are available. Review and recalculation of the DRG assignment can be conducted during the patient's stay. Final DRG assignment is made when the patient is discharged. Utilization, charge, and cost data are available on a daily basis for concurrent monitoring. Medicare bills are automatically prepared and printed on standard UB-82 forms. A number of reports can be generated, including DRG monitoring summaries by service, patient, or attending physician. DRG outlier monitoring summaries and utilization reports by nursing station and by patient are also available.<br><br>**Package Price: $7,420—$8,120**<br>**Date of First Installation: 4/1980**<br>**Number of Installations to Date: 41** | **Hardware:** Burroughs B1000, B5000-B7000, A series mainframes<br><br>**Operating System:** Burroughs Master Control Program (MCP)<br><br>**Language:** COBOL<br><br>**Memory Needs:** Varies |
| **Codemaster PLUS**<br><br>Care Communications 200 East Ontario, Suite 708 Chicago, Illinois 60611<br><br>(312) 943-0463 | Codemaster PLUS provides an automated ICD-9-CM encoder, a code editor, a DRG grouper, and a DRG optimizer. The system assigns DRGs and alerts users to various appropriate options (pathways) for increasing the amount of reimbursement. Codemaster PLUS automatically displays alternative principal diagnoses to help assure optimal reimbursement and shuffles diagnoses and procedures to achieve the most beneficial sequencing. Management reports, physician attestation forms, and reports on physician documentation problems can be generated.<br><br>**Package Price: $10,500 plus maintenance**<br>**Date of First Installation: N/A**<br>**Number of Installations to Date: N/A** | **Hardware:** IBM PC, AT, XT, and compatibles, IBM S/38, 4300 series, and Sierra series<br><br>**Operating System:** DOS 2.0 or greater<br><br>**Language:** C<br><br>**Memory Needs:** 640K |
| **DRGFINDER, DRGFLEX, DRG MANAGEMENT**<br><br>Code 3 Health Information Systems/3M 860 East 4500 South, Suite 100 Salt Lake City, Utah 84107-3050<br><br>(801) 263-3973 | These three modules assign DRGs, calculate reimbursement, and generate a variety of reports. DRGFINDER highlights diagnostic conditions that affect reimbursement, prompts the user to search the patient's record for possible complications and comorbidities, resequences diagnoses to result in the highest paying DRG assignment when appropriate, and assigns the final DRG. A Medicare code editor is included and space for hospital-defined text is provided. The system also calculates estimated reimbursement based on hospital-specific reimbursement parameters. Implementation of DRGFINDER requires installation of Code 3/3M's CODEFINDER encoding package. When interfaced with DRGFINDER, the DRGFLEX and DRG MANAGEMENT modules create data bases which can be used to generate reports on DRG-related information.<br><br>**Package Price: N/A**<br>**Date of First Installation: N/A**<br>**Number of Installations to Date: 550** | **Hardware:** Data General, IBM PC<br><br>**Operating System:** AOS, AOS/VS<br><br>**Language:** N/A<br><br>**Memory Needs:** N/A |
| **Microgrouper**<br><br>Commons Management Group 10420 Little Patuxent Parkway Columbia, Maryland 21044<br><br>(301) 977-9292 | Microgrouper is a stand-alone microcomputer package which assigns DRGs and is enhanced by a Medicare code editor. The package is periodically updated according to HCFA changes at minimal cost to the user.<br><br>**Package Price: $1,995**<br>**Date of First Installation: 1983**<br>**Number of Installations to Date: 100+** | **Hardware:** Kaypro, IBM PC, XT, AT, NCR, DIGITAL<br><br>**Operating System:** MS DOS, CP/M<br><br>**Language:** N/A<br><br>**Memory Needs:** 64K |

URNAL OF AMRA/IANUARY 1987

# DRG ASSIGNMENT SOFTWARE

| ıme of Package and Vendor | Description of Package | System Requirements | Name |
|---|---|---|---|
| **RG-SCAN, Micro DRG-SCAN**<br><br>ommonwealth Clinical Systems<br>550 State Farm Boulevard<br>harlottesville, Virginia 22901<br><br>(04) 977-1867 | DRG-SCAN is a stand-alone DRG grouper which provides for the entry of the patient's name, medical record number, age, sex, disposition, diagnoses (five), and procedures (three). Once this information is entered, the DRG is calculated. Data elements can be revised at any time before or after the initial DRG has been assigned. Micro DRG-SCAN is a microcomputer-based version of DRG-SCAN which allows the entry of five additional diagnoses and three additional procedures for each patient.<br><br>Package Price: $2,000-$8,000 per year (DRG-SCAN), $12,000 (Micro DRG SCAN)<br>Date of First Installation: 2/1984<br>Number of Installations to Date: 38 | Hardware: DEC PDP 11/70, IBM PC, XT, DEC Rainbow<br><br>Operating System: RSTS/E, CP/M, MS DOS<br><br>Language: BASIC<br><br>Memory Needs: 128K | Clinic:<br><br>Healtl<br>100 Bi<br>New F<br><br>(203) : |
| **The Medical Record File**<br><br>C-Systems, Inc.<br>1602 South Parker Road,<br>Suite 312<br>Denver, Colorado 80231<br><br>(303) 750-7417 | A DRG grouper is included in C-Systems, Inc.'s Medical Record File. This system also contains a coding/abstracting module, a standard reporting module, and an ad hoc reporting module. Implementation of the Medical Record File requires installation of C-Systems, Inc.'s master patient index package.<br><br>Package Price: N/A<br>Date of First Installation: 3/1981<br>Number of Installations to Date: 2 | Hardware: Any system supporting RM/COBOL Version 2.0 or higher or Convergent Technology COBOL compiler<br>Operating System: CP/M, MP/M, MS DOS, XENIX, UNIX, NOVELL Networks, CTOS<br>Language: RM/COBOL 2.0<br>Memory Needs: 64K | Clinic<br><br>Hone<br>6465<br>St. Lc<br><br>(612) |
| **DRG Grouper-Editor**<br><br>Ernst & Whinney<br>150 South Wacker<br>Chicago, Illinois 60606<br><br>(312) 368-1800 | Ernst & Whinney's DRG Grouper-Editor edits clinical data, assigns DRGs, and presents appropriate alternative DRG assignments. The DRG Grouper-Editor can be implemented as a stand-alone system. It can also be purchased as part of integrated packages which provide encoding capabilities (Chart'N Coder) or abstracting capabilities (Clinical Review System).<br><br>Package Price: $12,000 (including ICD-9-CM encoder)<br>Date of First Installation: 4/1984<br>Number of Installations to Date: 89 | Hardware: IBM PC, XT, AT, and compatibles<br><br>Operating System: PC DOS 2.0 or higher<br><br>Language: N/A<br><br>Memory Needs: 256K | VER:<br><br>ıame<br>1825<br>Suite<br>San I<br><br>(415) |
| **Analyzer of Resource Consumption Hospitalwide (ARCH)**<br><br>Health Data Network<br>Post Office Box 4478<br>Louisville, Kentucky 40204<br><br>(505) 585-1391 | ARCH is an integrated DRG grouper/case-mix analysis package which automatically assigns DRGs for optimum reimbursement and, using a clinical-financial database, tracks consumption of hospital resources. Reports on resource utilization are available in detail or in summary form.<br><br>Package Price: N/A<br>Date of First Installation: 1983<br>Number of Installations to Date: 5 | Hardware: Honeywell<br><br>Operating System: GCOS<br><br>Language: COBOL<br><br>Memory Needs: N/A | MEI<br>CON<br><br>IHC<br>36 S<br>Salt<br><br>(801 |
| **MICRO-DRG**<br><br>Health Micro Data Systems<br>583 D'Onofrio Drive, Suite 100<br>Madison, Wisconsin 53719<br><br>(608) 833-4637 | MICRO-DRG allows the user to enter up to eight ICD-9-CM codes for each patient. The user is then prompted to provide additional information to help identify alternative DRG options. MICRO-DRG subsequently analyzes the DRG and calculates full reimbursement outcome based on principal diagnosis and DRG. Details for outlier amounts, LOS, and cost also are calculated and printed when applicable. A variety of standard reports are available. In addition to DRG assignment, MICRO-DRG includes a case-mix tracking subsystem and can be integrated with a third-party logging system or with Health Micro Data Systems, Inc.'s medical record abstracting system.<br><br>Package Price: $2,900<br>Date of First Installation: N/A<br>Number of Installations to Date: N/A | Hardware: IBM PC<br><br>Operating System: DOS 2.0 or higher<br><br>Language: METAFILE<br><br>Memory Needs: 640K | DR(<br><br>Info<br>236<br>Ora<br><br>(80(<br>(20: |

JOURNAL OF AMRA/JANUARY 1987

# DRG ASSIGNMENT SOFTWARE

| Name of Package and Vendor | Description of Package | System Requirements |
|---|---|---|
| **Clinical Data Editor (CDE)**<br><br>Health Systems International<br>100 Broadway<br>New Haven, Connecticut 06511<br><br>(203) 562-2101 | HSI's Clinical Data Editor evaluates the consistency of clinical information, assigns DRGs, computes lengths of stay, and calculates expected reimbursement. The system contains over 40 major categories of edits and prompts data entry personnel to provide correct and consistent data in order to ensure accurate DRG assignment and appropriate optimal reimbursement. Physician attestation statements can be printed. The Clinical Data Editor is available as part of an integrated package which also includes HSI/CODER, an ICD-9-CM encoder.<br><br>**Package Price:** $4,900 for 3 years<br>**Date of First Installation:** 9/1983<br>**Number of Installations to Date:** 1,500 | **Hardware:** IBM PC, XT, AT, IBM 370, 30xx, 4300<br><br>**Operating System:** PC DOS, CICS<br><br>**Language:** N/A<br><br>**Memory Needs:** 256K-512K |
| **Clinical Data Editor**<br><br>Honeywell Information Systems<br>6465 Wayzata Boulevard<br>St. Louis Park, Minnesota 55426<br><br>(612) 541-4400 | The Clinical Data Editor system evaluates the consistency of coded data via more than 25 code edits and assigns DRGs based on edited data. The system also calculates lengths of stay, outlier thresholds, and payments. Physician attestation statements can be printed. The Clinical Data Editor can be implemented as a stand alone module or as part of TRACTS, Honeywell Information Systems, Inc.'s integrated medical record management system.<br><br>**Package Price:** N/A<br>**Date of First Installation:** N/A<br>**Number of Installations to Date:** N/A | **Hardware:** PC<br><br>**Operating System:** XENIX<br><br>**Language:** N/A<br><br>**Memory Needs:** Varies |
| **VERRAS DRG Grouper**<br><br>Iameter, Inc.<br>1825 South Grant Street,<br>Suite 740<br>San Mateo, California 94402<br><br>(415) 349-9100 | The VERRAS system includes a DRG grouper which can be implemented on a stand-alone basis or integrated with other VERRAS modules. Other modules available include an encoder, a clinical code editor, a physician DRG differential worksheet (prompts physicians in the documentation of clinical data), a utilization review report generator, and a physician summmary sheet (physician attestation summary). The VERRAS system is designed to involve the treating physician directly in concurrent review, DRG assignment, and analysis of resource consumption.<br><br>**Package Price:** N/A<br>**Date of First Installation:** 3/1984<br>**Number of Installations to Date:** N/A | **Hardware:** IBM PC, AT, XT, and compatibles, DEC VAX minicomputers<br><br>**Operating System:** PC DOS, VMS<br><br>**Language:** dBase III, C, Datatrieve<br><br>**Memory Needs:** 512K |
| **MED/38 DRG/ CASEMIX/ CONCURRENT REVIEW**<br><br>IHC Affiliated Services, Inc.<br>36 South State Street<br>Salt Lake City, Utah 84111<br><br>(801) 533-8282 | The DRG/CASE MIX/CONCURRENT REVIEW module is one of many applications available in the MED/38 information system for hospitals. This module assigns DRGs and MDCs and generates a wide variety of data analysis reports, including margin analysis reports. It must be implemented with IHC's medical record module and can also be integrated with a third-party encoder.<br><br>**Package Price:** $35,000<br>**Date of First Installation:** 1984<br>**Number of Installations to Date:** 46 | **Hardware:** IBM S/38<br><br>**Operating System:** IBM S/38 Control Program Facility<br><br>**Language:** RPG III<br><br>**Memory Needs:** Varies |
| **DRG STRATEGIST**<br><br>Information Strategies, Inc.<br>236 Boston Post Road<br>Orange, Connecticut 06477<br><br>(800) 321-0088<br>(203) 795-6016 in Connecticut | The DRG STRATEGIST is a comprehensive, interactive DRG management system which provides a full range of on-line capabilities designed to assign working and final DRGs, help maximize allowable DRG payments, monitor utilization, and produce timely case-mix and financial reports. Special features include more than 100 clinical data edits and reimbursement alert messages, Medicare code edits, reimbursement modeling, billing code selection and reorganization, and 12 financial/management reports.<br><br>**Package Price:** Under $10,000<br>**Date of First Installation:** 1984<br>**Number of Installations to Date:** N/A | **Hardware:** IBM PC, XT, AT, and compatibles<br><br>**Operating System:** PC DOS<br><br>**Language:** COBOL, C<br><br>**Memory Needs:** 256K |

JOURNAL OF AMRA/JANUARY 1987

# DRG ASSIGNMENT SOFTWARE

| Name of Package and Vendor | Description of Package | System Requirements |
|---|---|---|
| **MRMS DGR Grouper**<br><br>Information Systems of Florida Medical Records Software Division<br>9550 Regency Square Boulevard, Suite 1240<br>Jacksonville, Florida 32211<br><br>(904) 724-2277 | The MRMS DRG Grouper provides for interactive DRG assignment, reimbursement calculation, and determination of outlier components. The grouper can also be used to capture data for processing by other Information Systems of Florida modules. Implementation of the MRMS DRG Grouper requires installation of Information Systems of Florida's base system.<br><br>**Package Price:** N/A<br>**Date of First Installation:** 11/1984<br>**Number of Installations to Date:** 15 | **Hardware:** IBM PC, XT, AT, and compatibles<br><br>**Operating System:** MS DOS, PC DOS<br><br>**Language:** COBOL<br><br>**Memory Needs:** 512K |
| **DRG Case Mix Reporting System**<br><br>JS/Data<br>Travenol Healthcare Information Services<br>2348 Post Road<br>Warwick, Rhode Island 02886<br><br>(800) 992-0146 | JS/Data's DRG Case Mix Reporting System automatically assigns DRGs, provides case-mix information, and monitors physician performance. The system contains a code editor and a DRG analyzer which highlights highest reimbursement possibilities. Physician attestation forms can be generated, and a variety of reports are available, including an outlier warning report, comparisons of cost versus reimbursement, and reports on resource utilization by department. The system can be interfaced with JS/Data's patient accounting system and medical records management system and with a third-party abstracting system. | **Hardware:** IBM 5360, 5362<br><br>**Operating System:** IBM System Support Programs<br><br>**Language:** RPG II<br><br>**Memory Needs:** N/A |
| **MedRecs DRG Grouper**<br><br>McDonnell Douglas Health Information Systems Company<br>Post D-7, Building 280, Level 2<br>Hazelwood, Missouri 63042<br><br>(314) 234-0331 | **Package Price:** $15,000<br>**Date of First Installation:** 10/1983<br>**Number of Installations to Date:** 110<br><br>The MedRecs DRG Grouper automatically assigns DRGs based on data entered by the user. The system can be implemented on a stand-alone basis or as part of MedRecs, an integrated medical record information system which also contains MPI, chart tracking, chart completion, and abstracting applications.<br><br>**Package Price:** N/A<br>**Date of First Installation:** 5/1984<br>**Number of Installations to Date:** 143 | **Hardware:** IBM PC, XT, AT<br><br>**Operating System:** DOS<br><br>**Language:** RM COBOL 2.0 but will upgrade to 8x COBOL in an LAN environment<br><br>**Memory Needs:** 256K |
| **IHS**<br><br>McDonnell Douglas Health Information Systems Company<br>Department N504, Building 280<br>Hazelwood, Missouri 63042<br><br>(800) 325-1551 | A DRG grouper is included as part of the abstracting module in IHS, an integrated system which combines clinical and financial applications. A working DRG can be determined at any time during a patient's stay, and a final DRG is assigned after the patient is discharged and the discharge abstract is completed.<br><br>**Package Price:** N/A<br>**Date of First Installation:** N/A<br>**Number of Installations to Date:** N/A | **Hardware:** IBM 4300 series and larger, Tandem, DEC<br><br>**Operating System:** VM, Guardian, VMS<br><br>**Language:** MD/FORTH<br><br>**Memory Needs:** Varies |
| **DRG/Grouper System**<br><br>Medical Engineering, Inc.<br>3955 Fowler Street<br>Fort Myers, Florida 33901<br><br>(813) 939-5211 | Medical Engineering, Inc.'s DRG/Grouper System, which includes DRG assignment and case-mix analysis functions, can be implemented as a stand-alone module or integrated with Medical Engineering, Inc.'s financial management system. The DRG/Grouper System assigns DRGs, calculates and projects outlier payments, provides information for evaluating the profitability of services and the cost efficiency of departments, and generates comparative data on physician performance. A variety of user-defined reports are available.<br><br>**Package Price:** $10,750<br>**Date of First Installation:** 9/1984<br>**Number of Installations to Date:** 2 | **Hardware:** IBM S/36, S/38<br><br>**Operating System:** SSP, CPE<br><br>**Language:** RPG II, RPG III<br><br>**Memory Needs:** 400 MB, 565K |

JOURNAL OF AMRA/JANUARY 1987

# DRG ASSIGNMENT SOFTWARE

| Name of Package and Vendor | Description of Package | System Requirements |
|---|---|---|
| **Case Mix Management Option**<br><br>MEDITECH (Medical Information Technology, Inc.)<br>MEDITECH Circle<br>Westwood, Massachusetts 02090<br><br>(617) 329-5300 | MEDITECH's Case Mix Management Option has a DRG grouper feature for automatically assigning DRGs. Separate admission, intermediate, and final DRGs can be assigned. This module also enables users to review patient costs concurrently, review reimbursement and length of stay data, collect case-mix statistics for case-mix analysis, and create customized DRG, case-mix analysis, and concurrent review reports. In addition, patient abstracts can be generated based on information from previous admissions and DRG assignment data. The Case Mix Management Option with DRG grouper is an optional feature of MEDITECH's Admissions and Medical Records Modules.<br><br>**Package Price:** N/A<br>**Date of First Installation:** N/A<br>**Number of Installations to Date:** N/A | **Hardware:** DEC PDP II series or VAX, Data General<br><br>**Operating System:** MIIS/MAGIC<br><br>**Language:** MIIS<br><br>**Memory Needs:** N/A |
| **CHARMS DRG Reanalyzer, DRG Optimizer, DRG Grouper**<br><br>Meta Software, Inc.<br>363 Seventh Avenue<br>New York, New York 10001<br><br>(212) 695-5870 | These DRG modules operate together either as part of an abstracting module or as part of a concurrent review module in Meta Software, Inc.'s CHARMS package (Chart Abstracting and Review Management System). The DRG Reanalyzer module alerts the user to possible complications and comorbidities which might result in a different DRG assignment and increased reimbursement. The DRG Optimizer module presents appropriate higher-paying DRG assignments for comparison with documentation in the patient's chart. The DRG Grouper module assigns DRGs and presents alternative DRG assignments for comparison.<br><br>**Package Price:** N/A<br>**Date of First Installation:** 5/1984<br>**Number of Installations to Date:** 9 | **Hardware:** IBM 370, 43xx, 30xx<br><br>**Operating System:** VSE, MVS<br><br>**Language:** COBOL, Command Level CICS, PCS<br><br>**Memory Needs:** N/A |
| **On-Line DRG Assignment**<br><br>Network, Inc.<br>Eight Emory Avenue<br>Randolph, New Jersey 07869<br><br>(201) 328-0355 | This stand-alone DRG grouper includes a data quality control function and automatically resequences secondary diagnoses to assure appropriate optimal reimbursement. In addition to DRG assignment, optimal length of stay and length of stay outlier status can be calculated, and DRG worksheets and physician attestation forms can be printed. The system enables concurrent quality assurance monitoring and generates a variety of reports.<br><br>**Package Price:** $10,000<br>**Date of First Installation:** 1983<br>**Number of Installations to Date:** 8 | **Hardware:** Any type<br><br>**Operating System:** Any type<br><br>**Language:** COBOL<br><br>**Memory Needs:** 512K |
| **QGROUPER**<br><br>Quality Data Systems, Inc.<br>Post Office Box 220<br>Old Lyme, Connecticut 06371<br><br>(203) 434-9275 | QGROUPER determines MDCs and DRGs on an interactive or batch-mode basis. When used in an interactive mode, diagnosis parameters affecting DRG assignment can be changed and a new DRG can be calculated immediately. In the batch mode, QGROUPER will calculate DRG assignment for all records in a file containing information about groups of patients. Cost and length-of-stay outliers are highlighted in both the on-line and batch environments. Standard reports are available.<br><br>**Package Price:** $7,000<br>**Date of First Installation:** 1983<br>**Number of Installations to Date:** 3 | **Hardware:** IBM S/38<br><br>**Operating System:** IBM Control Program Facility<br><br>**Language:** RPG III<br><br>**Memory Needs:** Minimum S/38 configuration |

# DRG ASSIGNMENT SOFTWARE

| Name of Package and Vendor | Description of Package | System Requirements |
|---|---|---|
| **Interactive DRG Grouper**<br><br>Radle Computer Systems, Inc.<br>5751 Darrow Road<br>Hudson, Ohio 44236<br><br>(216) 656-1048 | The Interactive DRG Grouper determines DRG assignment based on patient data. Up to five diagnostic codes and five procedural codes may be entered for each patient. DRG assignment may be computed on the basis of the principal diagnosis or several DRG assignments may be calculated using each entered diagnosis as the principal diagnosis. Alternative DRG assignment possibilities can then be compared before a final DRG is assigned. The Interactive DRG Grouper can be implemented as a stand-alone module or as part of a complete hospital information system.<br><br>**Package Price: $2,000**<br>**Date of First Installation: 2/1984**<br>**Number of Installations to Date: 3** | **Hardware:** IBM PC, AT, and compatibles<br><br>**Operating System:** MS DOS, PC DOS<br><br>**Language:** dBase III compiled to DOS executable code<br><br>**Memory Needs:** 512K |
| **MCIS DRG GROUPER**<br><br>SysteMed, Inc.<br>5415 Jackwood<br>San Antonio, Texas 78238<br><br>(512) 681-8182 | A DRG assignment feature is included in SysteMed, Inc.'s fully integrated Medical Center Information System (MCIS). DRG assignment is not a separate, selectable feature of the system; rather, DRGs are automatically calculated as part of other data gathering and processing functions, such as medical record abstracting.<br><br>**Package Price: N/A**<br>**Date of First Installation: 1984**<br>**Number of Installations to Date: N/A** | **Hardware:** Tandem<br><br>**Operating System:** Tandem<br><br>**Language:** COBOL<br><br>**Memory Needs:** Varies |
| **DRG™**<br><br>Servi-Share of Iowa<br>600 Fifth Avenue<br>Des Moines, Iowa 50309<br><br>(515) 283-9334 | The DRG grouper functions as an adjunct to HSDS, a medical record abstracting service. Hospitals which use HSDS can implement the DRG grouper for on-site DRG assignment. Physician practice profiles, rate and charge indices, and a variety of data summaries and graphs can be generated.<br><br>**Package Price: $100 per month**<br>**Date of First Installation: 6/1983**<br>**Number of Installations to Date: 71** | **Hardware:** IBM PC, XT, AT, and compatibles, 300/1200 Baud Hayes Smart Modem<br><br>**Operating System:** DOS 1.0 or greater<br><br>**Language:** FORTH<br><br>**Memory Needs:** 256K |
| **DRG Assignment System/Grouper**<br><br>Wausau Health Systems<br>333 Pine Ridge Road<br>Wausau, Wisconsin 54401<br><br>(715) 847-2236 | Wausau Health Systems' DRG Assignment System/Grouper automatically assigns DRGs.<br><br>**Package Price: $5,000**<br>**Date of First Installation: 1984**<br>**Number of Installations to Date: 2** | **Hardware:** NCR<br><br>**Operating System:** VRX<br><br>**Language:** NEAT/3<br><br>**Memory Needs:** 64K |

## Videotapes from FORE

Four new videotapes have been added to the FORE Resource Center's collection. They are:

*Off the Record*. Emphasizes the privileged confidential nature of patient information. Points out that with proper handling, processing and securing the patient's privacy can be assured. Color, 12 minutes, 3/4-inch Umatic and 1/2-inch VHS, produced by Carlocke/Langden, Inc.

*Well, Shut My Mouth*. "Loose talk" about the patient, a staff member or a hospital occurrence is a breach of confidentiality. Think before you speak is the message. Color, 12 minutes, 3/4-inch Umatic, produced by Carlocke/Langden, Inc.

*Performance Appraisal*. Guidelines presented for the appraisal interview stress the employee's participation in the evaluation and goal setting process. Color, 19 minutes, 3/4-inch Umatic produced by Barr Films.

*Management: Emphasize Your Strengths*. The management staff is encouraged to identify their strengths, to utilize them, but not to let their strengths hinder development in weaker areas. Color, 22 minutes, 1/2-inch VHS, produced by Barr Films.

Viewing a videotape is worth one CE credit hour. For information on CE credits, consult the "Continuing Education Program Handbook on Maintenance of Certification."

Mail prepaid orders to FORE Resource Center, PO Box 97349, Chicago, Illinois 60690. Each videotape is $8; specify the format for each videotape you want to borrow. Make check or money order payable to the FORE Resource Center. All costs include postage and handling in the US via UPS. Notification of anticipated booking date will be sent after receipt of order. Due to demand, specific booking dates cannot be guaranteed.

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MCKESSON INFORMATION SOLUTIONS
LLC,

                Plaintiff,

        v.

THE TRIZETTO GROUP, INC.

                Defendant.

Civil Action No. 04-01258-SLR

## THE TRIZETTO GROUP, INC.'S SECOND SUPPLEMENTAL RESPONSE TO PLAINTIFF'S INTERROGATORY NO. 6

Pursuant to Rule 33 of the Federal Rules of Civil Procedure and the Court's Order of May 19, 2005 and modified at the June 15, 2005 Discovery Conference, defendant The TriZetto Group, Inc. ("TriZetto") hereby provides the following supplemental responses and objections to plaintiff McKesson Information Solutions, LLC's ("McKesson") Interrogatory No. 6, which were propounded in McKesson's First Set of Interrogatories (the "Interrogatories").

## GENERAL OBJECTIONS

1.      TriZetto has not concluded its investigation of the facts relating to this case, formal discovery, or preparation for trial. For that reason, TriZetto's responses to the Interrogatories may be incomplete. Moreover, there is a possibility that upon further investigation, certain details set forth in the responses may be altered or amended. These responses represent TriZetto's reasonable efforts to provide the information requested based upon documents or information in its possession, custody, or control, and based upon its current knowledge. TriZetto reserves its right to produce evidence of any subsequently discovered facts

and documents, and to alter or amend its factual and legal contentions as additional facts are ascertained, analyses are made, and legal research is completed.

2.    TriZetto objects to McKesson's definition of the term "TriZetto" on the grounds that such definition is overbroad, unduly burdensome, vague, ambiguous, and causes the Interrogatories to seek information that is not relevant to the claims, defenses or subject matter of this litigation.  As such, TriZetto will interpret "TriZetto" to include The TriZetto Group, Inc. and its present or former officers, directors and employees.

3.    TriZetto further objects to McKesson's "Definitions" to the extent that they attempt to place burdens upon TriZetto beyond those required by Rule 33 of the Federal Rules of Civil Procedure.  TriZetto will not comply with any "Definitions" that attempt to impose obligations upon TriZetto not required by Rule 33.

4.    TriZetto objects to the Interrogatories to the extent that they request information protected from disclosure by any privilege, including the attorney-client privilege or the work product doctrine.  TriZetto and its counsel hereby assert such privileges.

5.    TriZetto objects to each Interrogatory to the extent it seeks information not in TriZetto's possession, custody, or control on the grounds that it is unduly burdensome and oppressive.

6.    To the extent that any Interrogatory calls for information already in the possession of McKesson or its counsel, TriZetto objects on the grounds that the Interrogatory is unnecessary, unduly burdensome and oppressive, and constitutes annoyance, harassment, and oppression of TriZetto.

7.    TriZetto objects to these Interrogatories to the extent that they seek information concerning any party or third party which is subject to the right of privacy of that party as

2

guaranteed by the United States Constitution, any applicable state constitution, or any combination of the foregoing.

8. TriZetto will make reasonable efforts to respond to each Interrogatory, to the extent that no objection is made, as TriZetto understands and interprets the Interrogatory. If McKesson subsequently asserts an interpretation of any Interrogatory that differs from that of TriZetto, TriZetto reserves the right to supplement its objections and responses.

9. Without waiving any of the foregoing general objections, TriZetto responds to the Interrogatories, subject to the following additional express reservation of rights:

a. The right to object on any ground whatsoever to the admission into evidence or other use of any Interrogatory Responses in any subsequent step or proceeding in this action or any other action;

b. The right to object on any and all grounds, at any time, to any other discovery requests or other discovery procedures involving or relating to the subject matter of these Interrogatories; and

c. The right at any time to revise, correct, add to or clarify any of the responses propounded herein.

The foregoing general objections and qualifications shall be deemed incorporated in full in the Responses to each specific Interrogatory set forth below.

## RESPONSES

### INTERROGATORY NO. 6:

State in complete detail each and every basis for your assertion that the claims of the '164 patent are invalid under 35 U.S.C. §§ 102 or 103. Your response should, without limitation: identify each prior art reference you contend anticipates any claim of the '164 patent under

3

35 U.S.C. § 102 and each prior art reference or combination of references you contend renders any claim of the '164 patent obvious under 35 U.S.C. § 103; state in complete detail, by means of a claim chart, where TriZetto contends each limitation of any allegedly invalid claim of the '164 patent is disclosed by each reference or combination of references; and state in complete detail the basis for TriZetto's assertion that one of ordinary skill in the art at the time of the '164 patent's invention would have been motivated to combine or modify any prior art reference or combination of references TriZetto contends is invalidating under 35 U.S.C. § 103.

**RESPONSE TO INTERROGATORY NO. 6:** (January 20, 2005)

TriZetto objects to this interrogatory as vague, ambiguous and compound.

TriZetto objects to this interrogatory as overbroad, unduly burdensome and not calculated to lead to the discovery of admissible evidence. The interrogatory purports to require TriZetto to provide a claim construction for every term of every claim in the '164 patent in the context of providing TriZetto's invalidity contentions. To date, McKesson has not identified which claims of the '164 patent it is asserting, thus requiring TriZetto to state its claim construction and invalidity contentions for every claim of the '164 patent is unreasonable.

TriZetto objects to this interrogatory on the grounds that it calls for the disclosure of information protected by the attorney client communications privilege and/or the attorney work product doctrine. To the extent that TriZetto claims privilege for any information responsive to this interrogatory and withholds on the basis of privilege, TriZetto will prepare and provide a privilege log in accordance with the Federal Rules of Civil Procedure at a future date.

TriZetto objects to this interrogatory on the grounds that it contains multiple sub-parts and purports to require TriZetto to respond to several different interrogatories through the use of sub-parts.

TriZetto objects on the basis that discovery and investigation are on-going and it continues to gather evidence which may affect its answer to this interrogatory. Thus, TriZetto reserves the right to amend, modify or add to its response to this interrogatory during the course of this lawsuit.

Subject to these objections, and TriZetto's General Objections, which are incorporated herein, TriZetto will produce copies of all invalidating prior art of which it is currently aware, or becomes aware, and that it will provide a claim construction chart setting forth its invalidity contentions at the appropriate time required by the Court's Scheduling Order.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:  (May 5, 2005)

TriZetto reasserts and reincorporates by reference herein its previous response to Interrogatory No. 6, and the general objections set forth above.  Additionally, claim construction in this action has not occurred, and discovery has only just begun with no depositions having been conducted to date.  The information contained in this response is based on information that is reasonably available to TriZetto at the present time.  TriZetto's identification of prior art is as specific as is possible at this time.  Accordingly, TriZetto reserves the right to supplement, amend and augment its response to this interrogatory as new, additional and different information is learned and discovered and when the claims at issue are construed by the Court. Subject to and without waiving those objections, TriZetto supplements its previous response as follows:

First, the claims of the '164 patent are invalid and unenforceable against TriZetto because at least three references cited by the patent examiner during prosecution of the '164 patent and 23 additional prior art references together completely disclose and describe the apparatus and methods claimed and described by the '164 patent, rendering the patent invalid as either

anticipated or obvious under 35 U.S.C. §§ 102 & 103. Set forth below is a chart of the prior art references that TriZetto presently contends anticipate one or more claims of the patent in suit or render one or more claims obvious.

| | Author, Title & Source | Anticipates/Renders Obvious |
|---|---|---|
| 1. | *System validates medical fee schedules,* Best Review: Life/Health, June 1987, 92 | Anticipates/Renders Obvious |
| 2. | Weitzel, J.R., et al., *A Company / University Joint Venture to build a knowledge-based system,* MIS Quarterly, Vol. 12, No. 1, March 1988, 23-34 | Anticipates/Renders Obvious |
| 3. | Kerschberg, L. "A Proposal for the Development of an Expert System for Medical Claims Processing: MEDCLAIM," Institute of Information Management, Technology and Policy, College of Business Administration, University of South Carolina, Columbia, SC, (July 1985). | Anticipates/Renders Obvious |
| 4. | Weitzel, J.R. and Kerschberg, L. "Developing Knowledge-Based Systems: Reorganizing the System Development Life Cycle," working paper, University of South Carolina, Columbia, SC and George Mason University, Fairfax, VA (December 1986). | Renders Obvious |
| 5. | Ronald Hurst, *Cost Containment – The Caterpillar Experience,* The Psychiatric Hospital, vol. 13, no. 3 (1982). | Renders Obvious |
| 6. | Egdahl, M.D. and Hertenstein, M.D., *An Access-oriented Negotiated Fee Schedule: The Caterpillar Experience,* Ann Surg., 206(3), pp. 349-57 (Sept. 1987). | Renders Obvious |
| 7. | Bauer JW, Cassidy TG, DeBord JR, Hart RD, Lee RH, Maher JE, Montgomery CE, Neufeld GK, Rivan RJ, Soderstrom CW, et al., Related Articles, *An access-oriented negotiated fee schedule: the Caterpillar experience,* Ann Surg., 208(5), pp. 667-8 (Nov. 1988). | Renders Obvious |
| 8. | Waterman, Donald A. (The Rand Corporation), *A Guide to Expert Systems,* Addison-Wesley Publishing, Inc. (1985). | Renders Obvious |

| | Author, Title & Source | Anticipates/Renders Obvious |
|---|---|---|
| 9. | McDermott, John, *Artificial Intelligence Applications for Business: Building Expert Systems*, Proceedings of the NYU Symposium (May 1983). | Renders Obvious |
| 10. | Gerson, Elihu and Star, Susan Leigh, *Analyzing Due Process in the Workplace*, ACM Transactions on Office Information systems, vol. 4, no. 3 (July 1986). | Renders Obvious |
| 11. | Hayes-Roth, Frederick, *et. al., Building Expert Systems: An Overview of Expert Systems*, Addison-Wesley Publishing, Inc. (1985). | Renders Obvious |
| 12. | Taylor, Edward, *Developing A Knowledge Engineering Capability in the TRW Defense Systems Group*, The AI Magazine (Summer 1985) | Renders Obvious |
| 13. | Bobrow, Daniel, *et. al., Expert Systems: Perils and Promise*, Computing Practices, Communications of the ACM, vol. 29, no. 9 (Sept. 1986) | Renders Obvious |
| 14. | Genesereth, Michael, Ginsberg, Matthew, *Logic Programming*, Communications of the ACM, vol. 28, no. 9 (Sept. 1985). | Renders Obvious |
| 15. | Yasdi, Ramin, *Modeling Database Based Expert Systems at the Conceptual Level*, Proceedings of the 1985 ACM Computer Science Conference (March 1985). | Renders Obvious |
| 16. | Colmerauer, Alain, *Prolog in 10 Figures*, Communications of the ACM, vol. 28, no. 12 (Dec. 1985). | Renders Obvious |
| 17. | Hayes-Roth, Frederick, *Rule-Based Systems*, Communications of the ACM, vol. 28, no. 9 (Sept. 1985). | Renders Obvious |
| 18. | Weitzel, J.R. and Kerschberg, L. *A System Development Methodology for Knowledge-Based Systems*, IEEE Transactions on Systems, Man and Cybernetics, vol. 19, no. 3 (May/June 1989). | Renders Obvious |
| 19. | Winston, Patrick H., Prendergast, Karen A., *The AI Business: The Commercial Uses of Artificial Intelligence*, The MIT Press (1984) | Renders Obvious |

| | Author, Title & Source | Anticipates/Renders Obvious |
|---|---|---|
| 20. | Mack, Barbara, *A Prescription for Cutting Corporate Health Expenses,* Wall Street Journal (Jul. 18, 1983). | Renders Obvious |
| 21. | U.S. Pat. No. 4,591,983, issued May 27, 1986 (Bennett patent) | Anticipates/Renders Obvious |
| 22. | U.S. Pat. No. 4,667,292, issued May 19, 1987 (Mohlenbrock patent) | Anticipates/Renders Obvious |
| 23. | U.S. Pat. No. 5,018,067, issued May 21, 1991 (Mohlenbrock 2 patent) | Renders Obvious |
| 24. | U.S. Pat. No. 5,070,452, issued Dec. 3, 1991 (Doyle patent) | Renders Obvious |
| 25. | U.S. Pat. No. 4,803,641, issued Feb. 7, 1989 (Hardy patent) | Renders Obvious |
| 26. | Jap. Appl. No. 55-107352, entitled " Medical business system," published Feb. 24, 1982 (Yoshikuni App.) | Anticipates/Renders Obvious |

In addition, the following references in combination with those cited and referenced above render one or more claims of the '164 patent obvious.

1. Marva J. Crouff, *Automating Claims Processing,* Insurance Software Review, Autumn 1988, pp. 52, 54.

2. *Enhancing Accuracy and Timeliness is Integral to the Claims Adjudication Process,* Employee Benefit Plan Review, Anonymous, Dec. 1985, pp. 10-12.

3. *Expert System identifies miscoded health claims,* Bests Review: Life/Health, November 1990, 60

4. *Claims editing software runs coding rule checks,* Bests Review: Life/Health, November 1990, 62

5. Woolsey, C., *Employer spots inflated medical bills,* Business Insurance, June 25, 1990, 3

6. Leary, E., *SSA applies expertise to develop expert systems (Spotlight on AI-expert systems, Social Security Administration),* Government Computer News, Vol. 6, No. 17, August 28, 1987, 49(3)

7. Beard, P., *Blue Cross develops insurance claim ES,* AIWeek, Vol. 6, No. 7, April 1, 1989, 3

8.   Sullivan-Trainor, M., *Catching new clients,* Computerworld, Vol. 21, No. 50, December 14, 1987, 95, 99

9.   Snyeder, C., *From research to reality: the leading edge of expert systems,* Insurance Software Review, Vol. 12, No. 3, Autumn 1987, 22-4, 26-7, 30

10.  Christensen, J., *Insuring,* High Technology Business, Vol. 8, No. 10, October 1988, 47-8

11.  *Expert Systems In the Insurance Industry: 1987 Survey Report Update,* Coopers and Lybrand, 1987

12.  Pallatto, J., *Expert system cures the blues (Blue Cross develops insurance claims analysis system NERSys),* PC Week, Vol. 5, No. 50, December 12, 1988, 35, 44.

13.  Gladwell, Malcolm, *Computer Firm Finds the Link for Health Care,* Washington Business, December 5, 1988, 5-6

14.  Freudenheim, Milt, *Insurers vs. Doctors: A Software Battleground,* New York Times (Nov. 15, 1989)

15.  Riordan, Teresa, *Patents: A software-technology infringement case against Microsoft goes to trial in Federal Court,* New York Times (Jan. 24, 1994).

16.  U.S. Pat. No. 4,858,121, issued Aug. 15, 1989 (Barber patent).

17.  U.S. Pat. No. 4,658,370, issued Apr. 14, 1987 (Erman patent)

Second, the '164 patent is invalid under 35 U.S.C. § 102(b), because the CodeReview product from McKesson's predecessor in interest was in public use and/or on-sale more than one year prior to the date that the priority application was filed. This is evidenced by at least the following publicly available references:  (1) U.S. Trademark No. 1,624,579, registered November 27, 1990 (CodeReview Mark); and (2) Bhide, Amar and Mohan, Brian, *Marcia Radosevich and Health Payment Review: 1989(A)*, Harvard Business School, 9-394-204 (Feb. 1999).  Additional documents produced by McKesson reveal that prior to the CodeReview product being finalized, a "prototype" was being sold, offered for sale and/or given away to customers and prospects well before the priority application was filed.

Third, the '164 patent is invalid under 35 U.S.C. §§ 102(a) & 102(g), insofar as the invention disclosed and claimed therein was made by others and in use by others prior to the date of invention for the '164 patent.  Specifically, Medical C Schedule and Audit System and

9

MediStar from Insurance Software Packages, Inc., and Code Advisor and ClaimCheck from

Gabrieli Medical Information Systems, Inc. These systems were used and offered for sale by

others before the date of invention of the '164 patent.

Fourth, the '164 patent is invalid under 35 U.S.C. § 102(f). The invention described,

disclosed and claimed in the '164 patent was not conceived by the inventors listed in the patent.

The claims of the '164 patent each describe and claim a "computer system" that depends upon

and interacts with a "predetermined database stored in the associated memory." TriZetto is

informed and believes that the named inventors lacked sufficient knowledge and detail so as to

conceive and/or reduce to practice a "predetermined database stored in the associated memory."

Others, who were not identified in the patent were the persons who conceived and reduced this

invention to practice.

## SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6: (June 20, 2005)

TriZetto reasserts and reincorporates by reference herein its responses to Interrogatory

No. 6 from January 20, 2005 and May 5, 2005, except for the lists of prior art references from

the May 5, 2005 supplemental response, which are superseded by the list of prior art references

in this response. TriZetto also reasserts and reincorporates by reference herein the general

objections set forth above.

Claim construction in this action has not occurred, and discovery has only just begun

with no depositions having been conducted to date. The information contained in this response

is based on information that is reasonably available to TriZetto at the present time. TriZetto's

identification of prior art is as specific as is possible at this time. Accordingly, TriZetto reserves

the right to supplement, amend and augment its response to this interrogatory as new, additional

and different information is learned and discovered and when the claims at issue are construed

by the Court. Subject to and without waiving those objections, TriZetto supplements its previous response as follows:

Claims 1, 2, 3, 4, 6, 9, 10, 11, 12, 13 and 14 of the '164 patent, which McKesson accuses TriZetto of infringing, are invalid and unenforceable against TriZetto because at least 15 references cited in the '164 patent and 71 additional prior art references together completely disclose and describe the apparatus and methods claimed and described in the asserted claims of the '164 patent, rendering the patent invalid as either anticipated or obvious under 35 U.S.C. §§ 102 & 103. Set forth below is a chart of the prior art references that TriZetto presently contends anticipate one or more claims of the patent in suit or render one or more claims obvious. This chart supersedes the lists of prior art references provided in TriZetto's May 5, 2005 supplemental response.

| Tab | Author, Title & Source | Anticipates/Renders Obvious |
|-----|------------------------|-----------------------------|
| 1. | Marva J. Crouff, *Automating Claims Processing*, Insurance Software Review, Autumn 1988, pp. 52, 54. | Renders Obvious |
| 2. | *Enhancing Accuracy and Timeliness is Integral to the Claims Adjudication Process*, Employee Benefit Plan Review, Anonymous, Dec. 1985, pp. 10-12. | Renders Obvious |
| 3. | Healthstar, Health Benefits Management System, Product Description, v. 1.024 (Insurance Software Packages, Inc.) | Renders Obvious |
| 4. | *System validates medical fee schedules*, Best Review: Life/Health, June 1987, 92 [Insurance Software Packages, Inc. Medical C Schedule and Audit System] | Anticipates/Renders Obvious |
| 5. | *Expert System identifies miscoded health claims*, Bests Review: Life/Health, November 1990, 60 | Renders Obvious |
| 6. | *Claims editing software runs coding rule checks*, Bests Review: Life/Health, November 1990, 62 | Renders Obvious |

| Tab | Author, Title & Source | Anticipates/Renders Obvious |
|---|---|---|
| 7. | Woolsey, C., *Employer spots inflated medical bills,* Business Insurance, June 25, 1990, 3 | Renders Obvious |
| 8. | Weitzel, J.R., et al., *A Company / University Joint Venture to build a knowledge-based system,* MIS Quarterly, Vol. 12, No. 1, March 1988, 23-34 | Anticipates/Renders Obvious |
| 9. | Leary, E., *SSA applies expertise to develop expert systems (Spotlight on AI-expert systems, Social Security Administration),* Government Computer News, Vol. 6, No. 17, August 28, 1987, 49(3) | Renders Obvious |
| 10. | Beard, P., *Blue Cross develops insurance claim ES,* AIWeek, Vol. 6, No. 7, April 1, 1989, 3 | Renders Obvious |
| 11. | Sullivan-Trainor, M., *Catching new clients,* Computerworld, Vol. 21, No. 50, December 14, 1987, 95, 99 | Renders Obvious |
| 12. | Snyeder, C., *From research to reality: the leading edge of expert systems,* Insurance Software Review, Vol. 12, No. 3, Autumn 1987, 22-4, 26-7, 30 | Renders Obvious |
| 13. | Christensen, J., *Insuring,* High Technology Business, Vol. 8, No. 10, October 1988, 47-8 | Renders Obvious |
| 14. | *Expert Systems In the Insurance Industry: 1987 Survey Report Update,* Coopers and Lybrand, 1987 | Renders Obvious |
| 15. | Pallatto, J., *Expert system cures the blues (Blue Cross develops insurance claims analysis system NERSys),* PC Week, Vol. 5, No. 50, December 12, 1988, 35, 44. | Renders Obvious |
| 16. | Gladwell, Malcolm, *Computer Firm Finds the Link for Health Care,* Washington Business, December 5, 1988, 5-6 | Renders Obvious |
| 17. | Kerschberg, L. "A Proposal for the Development of an Expert System for Medical Claims Processing: MEDCLAIM," Institute of Information Management, Technology and Policy, College of Business Administration, University of South Carolina, Columbia, SC, (July 1985). | Anticipates/Renders Obvious |

| Tab | Author, Title & Source | Anticipates/Renders Obvious |
|---|---|---|
| 18. | Weitzel, J.R. and Kerschberg, L. "Developing Knowledge-Based Systems: Reorganizing the System Development Life Cycle," working paper, University of South Carolina, Columbia, SC and George Mason University, Fairfax, VA (December 1986).<br><br>Final Publication, April 1989 in Communications of the ACM, Vol. 32, No. 4. | Renders Obvious |
| 19. | Ronald Hurst, *Cost Containment – The Caterpillar Experience,* The Psychiatric Hospital, vol. 13, no. 3 (1982). | Renders Obvious |
| 20. | Egdahl, M.D. and Hertenstein, M.D., *An Access-oriented Negotiated Fee Schedule: The Caterpillar Experience*, Ann Surg., 206(3), pp. 349-57 (Sept. 1987). | Anticipates/Renders Obvious |
| 21. | Bauer JW, Cassidy TG, DeBord JR, Hart RD, Lee RH, Maher JE, Montgomery CE, Neufeld GK, Rivan RJ, Soderstrom CW, et al., Related Articles, *An access-oriented negotiated fee schedule: the Caterpillar experience*, Ann Surg., 208(5), pp. 667-8 (Nov. 1988). | Renders Obvious |
| 22. | Waterman, Donald A. (The Rand Corporation), *A Guide to Expert Systems*, Addison-Wesley Publishing, Inc. (1985). | Renders Obvious |
| 23. | McDermott, John, *Artificial Intelligence Applications for Business: Building Expert Systems*, Proceedings of the NYU Symposium (May 1983). | Renders Obvious |
| 24. | Gerson, Elihu and Star, Susan Leigh, *Analyzing Due Process in the Workplace*, ACM Transactions on Office Information systems, vol. 4, no. 3 (July 1986). | Renders Obvious |
| 25. | Hayes-Roth, Frederick, *et. al.*, *Building Expert Systems: An Overview of Expert Systems*, Addison-Wesley Publishing, Inc. (1985). | Renders Obvious |
| 26. | Taylor, Edward, *Developing A Knowledge Engineering Capability in the TRW Defense Systems Group*, The AI Magazine (Summer 1985) | Renders Obvious |
| 27. | Bobrow, Daniel, *et. al.*, *Expert Systems: Perils and Promise*, Computing Practices, Communications of the ACM, vol. 29, no. 9 (Sept. 1986) | Renders Obvious |

13

| Tab. | Author, Title & Source | Anticipates/Renders Obvious |
|------|------------------------|------------------------------|
| 28. | Bhide, Amar and Mohan, Brian, *Marcia Radosevich and Health Payment Review: 1989(A)*, Harvard Business School, 9-394-204 (Feb. 1999) | Renders Obvious |
| 29. | Genesereth, Michael, Ginsberg, Matthew, *Logic Programming*, Communications of the ACM, vol. 28, no. 9 (Sept. 1985). | Renders Obvious |
| 30. | Yasdi, Ramin, *Modeling Database Based Expert Systems at the Conceptual Level*, Proceedings of the 1985 ACM Computer Science Conference (March 1985). | Renders Obvious |
| 31. | Freudenheim, Milt, *Insurers vs. Doctors: A Software Battleground*, New York Times (Nov. 15, 1989) | Renders Obvious |
| 32. | Riordan, Teresa, *Patents: A software-technology infringement case against Microsoft goes to trial in Federal Court*, New York Times (Jan. 24, 1994). | Renders Obvious |
| 33. | Colmerauer, Alain, *Prolog in 10 Figures*, Communications of the ACM, vol. 28, no. 12 (Dec. 1985). | Renders Obvious |
| 34. | Hayes-Roth, Frederick, *Rule-Based Systems*, Communications of the ACM, vol. 28, no. 9 (Sept. 1985). | Renders Obvious |
| 35. | Weitzel, J.R. and Kerschberg, L. *A System Development Methodology for Knowledge-Based Systems*, IEEE Transactions on Systems, Man and Cybernetics, vol. 19, no. 3 (May/June 1989). | Renders Obvious |
| 36. | Winston, Patrick H., Prendergast, Karen A., *The AI Business: The Commercial Uses of Artificial Intelligence*, The MIT Press (1984) | Renders Obvious |
| 37. | Mack, Barbara, *A Prescription for Cutting Corporate Health Expenses*, Wall Street Journal (Jul. 18, 1983). | Renders Obvious |
| 38. | U.S. Pat. No. 4,591,983 (Bennett patent) | Anticipates/Renders Obvious |
| 39. | U.S. Pat. No. 4,667,292 (Mohlenbrock patent) | Anticipates/Renders Obvious |

14

| Tab | Author, Title & Source | Anticipates/Renders Obvious |
|-----|------------------------|------------------------------|
| 40. | U.S. Pat. No. 5,018,067 (Mohlenbrock 2 patent) | Anticipates/Renders Obvious |
| 41. | U.S. Pat. No. 5,070,452 (Doyle patent) | Anticipates/Renders Obvious |
| 42. | U.S. Pat. No. 4,858,121 (Barber patent) | Renders Obvious |
| 43. | U.S. Pat. No. 4,658,370 (Erman patent) | Renders Obvious |
| 44. | U.S. Pat. No. 4,803,641 (Hardy patent) | Anticipates/Renders Obvious |
| 45. | Jap. Appl. No. 55-107352, entitled "Medical business system" (Yoshikuni App.) | Anticipates/Renders Obvious |
| 46. | U.S. Trademark No. 1,583,416 (ClaimCheck Mark) | Renders Obvious |
| 47. | U.S. Trademark No. 1,624,579 (CodeReview Mark) | Renders Obvious |
| 48. | U.S. Trademark No. 2,165,159 (Code Advisor Mark) | Renders Obvious |
| 49. | Stachura CT, *Software reference guide: case-mix management,* Journal of the American Medical Record Association [J Am Med Rec Assoc] February 1987, Vol. 58 (2), pp. 42-6. | Renders Obvious |
| 50. | Stachura CT, *Software reference guide: DRG assignment,* J Am Med Rec Assoc, January 1987, Vol. 58, (1), pp. 33-40 | Renders Obvious |
| 51. | Stachura CT, *Software reference guide: encoding,* J Am Med Rec Assoc, November 1986, Vol. 57 (11), pp. 25-8 | Renders Obvious |
| 52. | Wilkinson R, *Does your grouper 'over-maximize' reimbursement?,* Hospitals, October 20, 1986, Vol. 60 (20), pp. 88 | Renders Obvious |
| 53. | Huertas-Cortocarrero D, Ruiz PP, Marmol JP, *Concurrent clinical review: using microcomputer-based DRG-software,* Health Policy 1988, Vol. 9 (2), pp. 211-7 | Renders Obvious |
| 54. | Nathanson M, *Medical records. Experts: more research needed to set value of code programs,* Modern Healthcare, June 21, 1985, Vol. 15 (13), pp. 98, 102. | Renders Obvious |

| Tab | Author, Title & Source | Anticipates/Renders Obvious |
|---|---|---|
| 55. | Caterinicchio RP, *Implementing a DRG-driven acuity system for nurse staffing under prospective hospital payment,* Hospital Topics, May-June 1985, Vol. 63 (3), pp. 6-7, 13 | Renders Obvious |
| 56. | Jackson B, Jensen J, *Hospitals turn to new software, hardware to cope with DRG's,* Modern Healthcare, September 1984, Vol. 14 (12), pp. 109-12 | Renders Obvious |
| 57. | Nathanson M, *New software helps hospitals watch costs, profit under DRG,* Modern Healthcare, September 1984, Vol. 14 (12), pp. 132, 136-8 | Renders Obvious |
| 58. | *DRG helper makes it easy for doctors to maximize reimbursement,* Hospital Forum, July-August 1984, Vol. 27 (4), pp. 62-3 | Renders Obvious |
| 59. | Burda D, *Health care market experiences grouper software explosion,* J Am Med Rec Assoc, May 1984, Vol. 55 (5), pp. 35-7 | Renders Obvious |
| 60. | *Health care executive's guidebook to automation in the 1980s: health care information systems and DRG's,* Hospital Forum, Jan-Feb 1984, Vol. 27 (1), pp. 23-30 | Renders Obvious |
| 61. | Gonnella JS, Hornbrook MC, Louis DZ, *Staging of disease. A case mix measurement,* Journal of the American Medical Association [JAMA], February 3, 1984, Vol. 251 (5), pp. 637-44 | Renders Obvious |
| 62. | Ray WJ, Johnstone J, *Using medical records to ensure fair DRG reimbursement,* Computer in Healthcare, December 1983, Vol. 4 (12), pp. 32-6, 40 | Renders Obvious |
| 63. | Heck S, Esmond T, *Financial modeling/case-mix analysis,* Computers in Healthcare, June 1983, Vol. 4 (6), pp. 50-1, 54 | Renders Obvious |
| 64. | Moliver M, *Computers and reimbursement,* Contemporary longterm care, April 1986, Vol. 9 (4), pp. 46-7 | Renders Obvious |
| 65. | Turner JM, *DRG compliance measurement in the future,* Software in Healthcare, August-September 1985, Vol. 3 (4), pp. 48 | Renders Obvious |

| Tab | Author, Title & Source | Anticipates/Renders Obvious |
|---|---|---|
| 66. | Mohlenbrock WC, *Getting the most out of DRG's*, Group Practice Journal, September-October 1985, Vol. 34 (5), pp. 27-32 | Renders Obvious |
| 67. | Gibbons PS, Pishotta FT, Stepto RC, *A system for reporting gynecologic procedures. A linguistic-logical approach*, Journal of Reproductive Medicine, March 1983, Vol. 28 (3), pp. 201-5 | Renders Obvious |
| 68. | Studney DR, Hakstian AR, *Effect of a computerized ambulatory medical record system on the validity of claims data*, Medical Care, April 1983, Vol. 21 (4), pp. 463-7 | Renders Obvious |
| 69. | Poulson GP, *Detailed costing system nets efficiency, savings*, Hospitals, October 1, 1984, Vol. 58 (19), pp. 106-8, 111 | Renders Obvious |
| 70. | *Medical coding*, Medical Record and Health Care Information Journal, February 1988, Vol. 29 (1), pp. 20-2 | Renders Obvious |
| 71. | Johnson KF, *Integrated system brings hospital data together*, Health Progress, October 1987, Vol. 68 (8), pp. 46-9, 82 | Renders Obvious |
| 72. | Tauber J, Lahav M, *Simplified diagnostic coding sheet for computerized data storage and analysis in ophthalmology*, Ophthalmic Surgery, November 1987, Vol. 18 (11), pp. 846-9 | Renders Obvious |
| 73. | Miller KM, Wisnicki HJ, Buchman JP. Riley MJ, Repka MX, Taylor HR, Guyton DL, *The Wilmer Information System. A classification and retrieval system for information on diagnosis and therapy in ophthalmology*, Ophthalmology, March 1988, Vol. 95 (3), pp. 403-9 | Renders Obvious |
| 74. | Carter K, *PCs can tap databanks for costs*, Modern Healthcare, June 20 1986, Vol. 16 (13), pp. 52 | Renders Obvious |
| 75. | Ohnsson J, *GMIS (Gabrieli Medication Information Systems) software flags inappropriate billings, medical procedures*, Contract Healthcare, May 1988, pp. 28-9 | Renders Obvious |
| 76. | Cimino JJ, *Review paper: coding systems in health care*, Methods of Information in Medicine, December 1996, Vol. 35 (4-5), pp. 273-84 | Renders Obvious |

| Tab | Author, Title & Source | Anticipates/Renders Obvious |
|---|---|---|
| 77. | Gabrieli ER, Speth DJ, Casiraghi E, *Knowledge bases,* Journal of Clinical Computing, 1985, Vol. 13 (5), pp. 150-4 | Renders Obvious |
| 78. | Gabrieli ER, Saumby JA, *Computer-based coding of medical data,* Topics in Health Record Management, March 1982, Vol. 2 (3), pp. 51-9 | Renders Obvious |
| 79. | Ely RM, *Savings through claims audits,* Topics in Health Care Financing, Summer 1986, Vol. 12 (4), pp. 61-7 | Renders Obvious |
| 80. | U.S. Pat. No. 4,347,568 (Giguere patent) | Renders Obvious |
| 81. | U.S. Pat. No. 4,491,725 (Pritchard patent) | Renders Obvious |
| 82. | U.S. Pat. No. 4,730,259 (Gallant patent) | Renders Obvious |
| 83. | U.S. Pat. No. 4,839,822 (Dormond patent) | Renders Obvious |
| 84. | U.S. Pat. No. 4,937,743 (Rassman patent) | Renders Obvious |
| 85. | U.S. Pat. No. 4,975,840 (De Tore patent) | Renders Obvious |
| 86. | U.S. Pat. No. 4,991,091 (Allen patent) | Renders Obvious |

Set forth below is an element-by-element chart mapping the prior art references listed above to each element of the asserted claims of the '164 patent.

| '164 PATENT CLAIM 1 | PRIOR ART REFERENCES THAT ANTICIPATE OR RENDER OBVIOUS |
|---|---|
| 1.      In a computer system having means for operating on a predetermined database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when input with other selected ones of the medical service codes, | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6). |
| a method for processing input claims containing at least one medical service code, comprising the steps of: | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6). |

| | |
|---|---|
| receiving at least one claim; | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 22; 27 (p. 882); 34; 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 43 (cols. 5-6); 44 (col. 10); 85. |
| determining whether any medical service code contained in the at least one claim is not present in the predetermined database; and informing a user that a medical service code is not contained in the predetermined database. | 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 22; 27 (p. 882); 34; 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 43 (cols. 5-6); 44 (col. 10); 85. |
| '164 PATENT CLAIM | PRIOR ART REFERENCES THAT ANTICIPATE OR RENDER OBVIOUS |
| 2. In a computer system having means for operating on a predetermined database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when input with other selected ones of the medical service codes, | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6). |
| a method for processing input claims containing at least one medical service code, comprising the steps of: | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6). |
| receiving at least one claim; | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 22; 27 (p. 882); 34; 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 43 (cols. 5-6); 44 (col. 10); 85. |
| ascertaining whether the at least one claim contains a plurality of medical service codes; | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 22; 27 (p. 882); 34; 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 43 (cols. 5-6); 44 (col. 10); 85. |
| determining whether one of the medical service codes in the at least one claim is mutually exclusive due to non-medical criteria with any other medical service code in the at least one claim: | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 22; 27 (p. 882); 34; 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 43 (cols. 5-6); 44 (col. 10); 85. |
| authorizing medical service codes which are not mutually exclusive due to non-medical criteria with any other medical service codes contained in the at least one claim in response to the determining step; and rejecting medical service codes which are | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 22; 27 (p. 882); 34; 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 43 (cols. 5-6); 44 (col. 10); 85. |

| mutually exclusive due to non-medical criteria with any other medical service codes contained in the at least one claim in response to the determining step. | |
|---|---|

| '164 PATENT CLAIMS | PRIOR ART REFERENCES THAT ANTICIPATE OR RENDER OBVIOUS |
|---|---|
| 3. A computer system including a central processing unit and associated memory for processing input claims containing at least one medical service claim, comprising: | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6). |
| a predetermined database stored in the associated memory, the database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when received with other selected ones of the medical service codes; | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6). |
| means for receiving at least one claim; | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 22; 27 (p. 882); 34; 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 43 (cols. 5-6); 44 (col. 10); 85. |
| means for ascertaining whether the at least one claim contains a plurality of medical service codes; | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 22; 27 (p. 882); 34; 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 43 (cols. 5-6); 44 (col. 10); 85. |
| means for determining whether one of the medical service codes in the plurality of medical service codes is valid or invalid by interacting with the database and the set of relationships contained in the database: | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 22; 27 (p. 882); 34; 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 43 (cols. 5-6); 44 (col. 10); 85. |
| means for authorizing medical service codes which are valid in response to the means for determining; and means for rejecting medical service codes which are invalid in response to the means for determining. | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 22; 27 (p. 882); 34; 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 43 (cols. 5-6); 44 (col. 10); 85. |

| '164 PATENT CLAIM 4 | PRIOR ART REFERENCES THAT ANTICIPATE OR RENDER OBVIOUS |
|---|---|
| 4. The apparatus of claim 3, further comprising means for revising the at least one claim to delete invalid medical service codes. | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 22; 27 (p. 882); 34; 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 43 (cols. 5-6); 44 (col. 10); 85. |

| '164 PATENT CLAIM 6 | PRIOR ART REFERENCES THAT ANTICIPATE OR RENDER OBVIOUS |
|---|---|
| 6. The apparatus of claim 3, wherein the database containing medical service codes includes medical service codes described by CPT codes. | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6). |

| '164 PATENT CLAIM 9 | PRIOR ART REFERENCES THAT ANTICIPATE OR RENDER OBVIOUS |
|---|---|
| 9. The apparatus of claim 3, wherein the relationships among the medical service codes include medically determined relationships. | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6). |

| '164 PATENT CLAIM 10 | PRIOR ART REFERENCES THAT ANTICIPATE OR RENDER OBVIOUS |
|---|---|
| 10. A computer system including a central processing unit and associated memory for processing input claims containing at least one medical service claim, comprising: | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6). |
| a predetermined database stored in the associated memory, the database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when received with other selected ones of the medical service codes; | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6). |
| means for receiving at least one claim; | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 22; 27 (p. 882); 34; 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 43 (cols. 5-6); 44 (col. 10); 85. |

| | |
|---|---|
| means for ascertaining whether the at least one claim contains a plurality of medical service codes; | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 22; 27 (p. 882); 34; 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 43 (cols. 5-6); 44 (col. 10); 85. |
| means for determining whether one of the medical service codes in the at least one claim is included in any other medical service code in the at least one claim; | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 22; 27 (p. 882); 34; 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 43 (cols. 5-6); 44 (col. 10); 85. |
| means for authorizing medical service codes which are not contained in any other medical service code; and means for rejecting medical service codes which axe contained in any other medical service code. | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 22; 27 (p. 882); 34; 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 43 (cols. 5-6); 44 (col. 10); 85. |

| '164 PATENT CLAIM 11 | PRIOR ART REFERENCES THAT ANTICIPATE OR RENDER OBVIOUS |
|---|---|
| 11. The apparatus of claim 10, further comprising means for revising the at least one claim to not include a rejected medical service code. | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 22; 27 (p. 882); 34; 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 43 (cols. 5-6); 44 (col. 10); 85. |

| '164 PATENT CLAIM 12 | PRIOR ART REFERENCES THAT ANTICIPATE OR RENDER OBVIOUS |
|---|---|
| 12. A computer system including a central processing unit and associated memory for processing input claims containing at least one medical service code, comprising: | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6). |
| a predetermined database. stored in the associated memory, the database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when received with other selected ones of the medical service codes; | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6). |
| means for receiving at least one claim; | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 22; 27 (p. 882); 34; 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 43 (cols. 5-6); 44 (col. 10); 85. |

| | |
|---|---|
| means for ascertaining whether the at least one claim contains a plurality of medical service codes; | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 22; 27 (p. 882); 34; 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 43 (cols. 5-6); 44 (col. 10); 85. |
| means for determining whether one of the medical service codes in the at least one claim is medically exclusive with any other medical service code in the at least one claim; | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 22; 27 (p. 882); 34; 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 43 (cols. 5-6); 44 (col. 10); 85. |
| means for authorizing medical service codes which are not medically exclusive with any other medical service codes | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 22; 27 (p. 882); 34; 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 43 (cols. 5-6); 44 (col. 10); 85. |
| contained in the at least one claim in response to the means for determining; and means for rejecting medical service codes which are medically exclusive with any other medical service codes contained in the at least one claim in response to the determining step. | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 22; 27 (p. 882); 34; 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 43 (cols. 5-6); 44 (col. 10); 85. |

| '164 PATENT CLAIM 13 | PRIOR ART REFERENCES THAT ANTICIPATE OR RENDER OBVIOUS |
|---|---|
| 13. A computer system including a central processing unit and associated memory for processing input claims containing at least one medical service code, comprising: | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6). |
| a predetermined database stored in the associated memory, the database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when received with other selected ones of the medical service codes; | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6). |
| means for receiving at least one claim; | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 22; 27 (p. 882); 34; 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 43 (cols. 5-6); 44 (col. 10); 85. |
| means for determining whether any medical service code contained in the at least one claim is not present in the | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 22; 27 (p. 882); 34; 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 43 |

| | |
|---|---|
| predetermined database; and means for informing a user that a medical service code is not contained in the predetermined database. | (cols. 5-6); 44 (col. 10); 85. |

| '164 PATENT CLAIM 14 | PRIOR ART REFERENCES THAT ANTICIPATE OR RENDER OBVIOUS |
|---|---|
| 14. A computer system including a central processing unit and associated memory for processing input claims containing at least one medical service code, comprising: | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6). |
| a predetermined database stored in the associated memory, the database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when received with other selected ones of the medical service codes; | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6). |
| means for receiving at least one claim; | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 22; 27 (p. 882); 34; 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 43 (cols. 5-6); 44 (col. 10); 85. |
| means for ascertaining whether the at least one claim contains a plurality of medical service codes; | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 22; 27 (p. 882); 34; 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 43 (cols. 5-6); 44 (col. 10); 85. |
| means for determining whether one of the medical service codes in the at least one claim is mutually exclusive due to non-medical criteria with any other medical service code in the at least one claim: | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 22; 27 (p. 882); 34; 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 43 (cols. 5-6); 44 (col. 10); 85. |
| means for authorizing medical service codes which are not mutually exclusive due to non-medical criteria with any other medical service codes contained in the at least one claim in response to the means for determining; and means for rejecting medical service codes which are mutually exclusive due to non-medical criteria with any other medical service codes contained in the at least one claim in response to the means for determining. | 2 (pp. 10-12); 3 (pp. 3-4, 8); 4; 5; 6; 8 (pp. 28-30); 10; 12 (p. 26); 15; 18 (pp. 483, 485); 20 (pp. 351-353); 22; 27 (p. 882); 34; 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 43 (cols. 5-6); 44 (col. 10); 85. |

Dated: June 20, 2005

GIBSON, DUNN & CRUTCHER LLP

Jeffrey T. Thomas
Jamboree Center
4 Park Plaza
Irvine, California 92614
(949) 451-3800

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL
Jack B. Blumenfeld (No. 1014)
Rodger D. Smith, II (No. 3778)
1201 N. Market Street
Wilmington, Delaware 19899
(302) 658-9200

Attorneys for Defendant
The Trizetto Group, Inc.

SF_40212622_2.DOC

25

## DECLARATION OF SERVICE

I, the undersigned, declare that I am employed in the County of Orange, State of California; I am over the age of eighteen years and am not a party to this action; my business address is Jamboree Center, 4 Park Plaza, Irvine, California 92614, in said County and State, and on the date indicated below, I served the within:

### THE TRIZETTO GROUP, INC.'S SECOND SUPPLEMENTAL RESPONSE TO PLAINTIFF'S INTERROGATORY NO. 6

by placing a true copy thereof in an envelope addressed to each of the persons named below at the address shown:

☑ **BY MAIL:** I placed a true copy in a sealed envelope addressed as indicated above, on the above-mentioned date. I am familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **BY PERSONAL SERVICE:** I placed a true copy in a sealed envelope addressed to each person[s] named at the address[es] shown and giving same to a messenger for personal delivery before 5:00 p.m. on the above-mentioned date.

☐ **BY FACSIMILE:** From facsimile machine telephone number (415) 986-5309, on the above-mentioned date, I served a full and complete copy of the above-referenced document[s] by facsimile transmission to the person[s] at the number[s] indicated.

☐ **BY FEDERAL EXPRESS:** I placed a true copy in a sealed envelope addressed as indicated above, on the above-mentioned date. I am familiar with the firm's practice of collection and processing correspondence for delivery by Federal Express. Pursuant to that practice, envelopes placed for collection at designated locations during designated hours are delivered to Federal Express with a fully completed airbill, under which all delivery charges are paid by Gibson, Dunn & Crutcher, that same day in the ordinary course of business.

☐ **BY ELECTRONIC MAIL:** From an IBM computer, e-mail address athompson@gibsondunn.com in PDF format, to the e-mail addresses listed in the following Service List on the date indicated.

☐ **(STATE)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct and that the foregoing document(s) were printed on recycled paper.

☑ **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this court or who has been admitted pro hac vice at whose direction the service was made.

Executed on June 20, 2005 at Irvine, California.

<br>

Arlene R. Thompson

## SERVICE LIST

By U.S. Mail:
Jeffrey G. Randall
David W. Hansen
Michael C. Hendershot
Donna Hill
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, CA 94301

Telephone: (650) 470-4500
Facsimile: (650) 470-4570

jrandall@skadden.com
dhansen@skadden.com
mhenders@skadden.com
dhill@skadden.com

By U.S. Mail:
Thomas J. Allingham II
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
One Rodney Square
P.O. Box 636
Willimington, DE 19899

Telephone: (302) 651-3000
Facsimile: (302) 651-3001

talling@skadden.com

27

# EXHIBIT 3

REDACTED

Confidential

TRZ837277

REDACTED

Confidential

TRZ837278

REDACTED

Confidential

TRZ837279

# EXHIBIT 4

1

**REDACTED**

TRZ837796

REDACTED

TRZ837797

# EXHIBIT 5

**REDACTED**

Confidential

TRZ837794

## CERTIFICATE OF SERVICE

I, Michael A. Barlow, hereby certify that on October 7, 2005, I electronically filed the Transmittal Declaration of Michael A. Barlow in Support of McKesson's Memorandum in Opposition to TriZetto's Response Regarding TriZetto's Recent Prior Art Disclosures and Witnesses Previously Precluded by the Court with the Clerk of Court using CM/ECF, which will send notification of such filing to those designated below, and that I served the following persons in the manner listed:

**VIA CM/ECF**
Rodger D. Smith, II, Esq.
MORRIS NICHOLS ARSHT
  & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899

**HAND DELIVERY**
Jack B. Blumenfeld, Esq.
MORRIS NICHOLS ARSHT
  & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899

**VIA CM/ECF**
Thomas Preston, Esq.
Blank Rome LLP
Chase Manhattan Centre, Suite 800
1201 Market St.
Wilmington, DE  19801

Michael A. Barlow (ID No. 3928)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000
mbarlow@skadden.com

419320.12-Wilmington S1A