SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE RODNEY SQUARE
P.O. BOX 636
WILMINGTON, DELAWARE 19899-0636

(302) 651-3000
FAX: (302) 651-3001
http://www.skadden.com

DIRECT DIAL
302-651-3154
EMAIL ADDRESS
MBARLOW@SKADDEN.COM

FIRM/AFFILIATE OFFICES
—
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
—
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

October 7, 2005
Public Version: October 12, 2005

**PUBLIC VERSION**

By Electronic Filing

The Honorable Sue L. Robinson
United States District Court for the District of Delaware
844 North King Street
Wilmington, Delaware 19801

      RE:   *McKesson Information Solutions LLC v. The TriZetto Group, Inc.*,
             C.A. No. 04-1258 (SLR) (D. Del.)

Dear Chief Judge Robinson:

      This letter responds to TriZetto's September 30 letter regarding McKesson's Rule 30(b)(6) witnesses and Rule 26 disclosures. (D.I. 109, 110). TriZetto's complaints are unfounded and reflect TriZetto's own failure to narrowly tailor its Rule 30(b)(6) topics, and TriZetto's blatant misreading of a party's obligations under Rules 26 and 30(b)(6).

**McKesson Satisfied Its Rule 30(b)(6) Obligations**

      TriZetto wrongly asserts that McKesson did not satisfy its Rule 30(b)(6) obligations in connection with the depositions of two of its designees, Ms. Wukitch and Mr. Nunnelly. As an initial matter, TriZetto ignores the fact that TriZetto failed to comply with its obligation under Rule 30(b)(6) to "describe with ***reasonable particularity*** the matters on which examination is required." This is necessary because "[a]n overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task. . . . . Where, as here, the [deponent] cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible." *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000); *see also Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 126 (D.D.C. 2005) ("The purpose of designating matters for the Rule 30(b)(6)

The Honorable Sue L. Robinson
October 7, 2005
Page 2

deposition is to give the opposing party notice of the areas of inquiry that will be pursued so that it can identify appropriate deponents and ensure they are prepared for the deposition.").

TriZetto's Rule 30(b)(6) topics are clearly overbroad. For example, the three topics in dispute with respect to Mr. Nunnelly broadly state "HBOC's acquisition of HPR," "HBOC's acquisition of GMIS," and "McKesson's acquisition of HBOC." As McKesson stated in its timely served objections to TriZetto's Rule 30(b)(6) notice, see Exhibit 1 submitted herewith, these topics are overbroad and do not identify the particular issues concerning the acquisitions that TriZetto was actually interested in. The HPR and GMIS acquisitions were $300+ million and $200+ million acquisitions, respectively, each of which involved countless issues and scores of individual participants. McKesson's acquisition of HBOC was a $13 billion acquisition that combined two global providers of healthcare solutions. Each of these Rule 30(b)(6) topics implicate many possible subjects, none of which are specified in the topic, and, despite McKesson's proper overbreath objection, TriZetto did not provide any further direction concerning the information it sought concerning these topics.

TriZetto's complaints about Ms. Wukitch and Mr. Nunnelly's testimony are also without merit because both witnesses did in fact provide information regarding the topics for which they were designated.

With regard to Ms. Wukitch, the record shows that she was personally knowledgeable about information regarding her designated topics in view of her position and responsibilities at McKesson. See Exhibit 2 submitted herewith at 8, 10-12 & 26. The record is also clear that Ms. Wukitch adequately prepared for her Rule 30(b)(6) deposition, including reviewing documents regarding the topics currently in dispute, such as enforcement letters, cease-and-desist letters, and market and product strategy documents. See id. at 6-8. Notably, although Ms. Wukitch adequately prepared for her deposition topics, TriZetto elected to not depose her on all of those topics. For instance, TriZetto did not ask her a single question regarding the damages-related topics for which she was designated (and in connection with which they now improperly complain about the knowledge of Ms. Bell and Cutcliff as discussed below).

As to the specific topics in dispute, Ms. Wukitch's testimony complied with Rule 30(b)(6). Other than testifying that much of the information sought by TriZetto was privileged, Ms. Wukitch fully responded to numerous questions regarding the enforcement of the '164 patent by McKesson and its predecessor HBOC. See Exhibit 2 at 38-43. Indeed, it appears that some of TriZetto's complaints are wrongly based on the fact that Ms. Wukitch did not testify as to privileged information, even though TriZetto's counsel specifically excluded such information from his questions. See Exhibit B to TriZetto's Letter Brief at 41-44 (D.I. 109).

Ms. Wukitch also provided substantive answers to numerous questions regarding discussions with other parties about the '164 patent. See Exhibit 2 at 44-50. The deposition excerpts highlighted by TriZetto showing that she was not personally involved in certain discussions do not evidence any violation of Rule 30(b)(6), which does not require that a designee have personal knowledge as to a topic. In addition, Ms. Wukitch identified persons who she believed did have personal knowledge regarding an issue. Notably, TriZetto never requested the deposition of any of these individuals, even though several weeks remained before

The Honorable Sue L. Robinson
October 7, 2005
Page 3

close of fact discovery and TriZetto had not used (and did not use) all of its 15 allotted depositions.

Ms. Wukitch's lack of recollection as to certain issues also is not improper, particularly since the record clearly shows that TriZetto's counsel made no effort to try to refresh her recollection with additional questioning or documents, even though many documents have been produced in this case regarding the subject matter at issue. For example, Ms. Wukitch gave substantive testimony regarding discussions between McKesson and TriZetto, but in a few instances did not recall the specific timing of certain events. *See* Exhibit 2 at 65-69. Although both parties have produced many thousands of documents concerning the parties' prior discussions, TriZetto's counsel did not attempt to refresh Ms. Wukitch's recollection as to these timing issues. TriZetto's counsel also did not even attempt to refresh Ms. Wukitch's recollection about McKesson's stated position regarding Ingenix's rights to the '164 patent, even though McKesson produced a document that would have answered that question. *See* Exhibit 3 submitted herewith.

McKesson also complied with its Rule 30(b)(6) obligations with respect to Mr. Nunnelly. As discussed above, the three topics for which Mr. Nunnelly was designated were impermissibly overbroad, as McKesson made clear in its timely objections. As with Ms. Wukitch, Mr. Nunnelly was the appropriate representative to testify as to the designated topics. He was personally involved in HBOC's acquisitions of both GMIS and HPR. *See* Exhibit 4 submitted herewith at 15-16 & 20-21. He was also the general manager of the HBOC division responsible for claims auditing products during the acquisition of HPR and HBOC's subsequent acquisition by McKesson. *See id.* at 11-12 & 15-16. He also reviewed documents regarding each of the acquisitions in preparation for his deposition. *See id.* at 17, 19 & 22.

Mr. Nunnelly also provided substantive answers to many questions regarding the various acquisitions. For example, Mr. Nunnelly responded substantively to questions regarding HBOC's reasons for acquiring HPR, *see id.* at 25, how the HPR acquisition was valued, *see id.* at 27-28, HBOC's analysis of GMIS's and HPR's competitors, *see id.* at 38-41, HBOC's evaluation of future sales, *see id.* at 50-51, HBOC's due diligence in connection with the GMIS acquisition *see id.* at 56-63, the transfer of ownership of the '164 patent from HBOC to McKesson, *see id.* at 68, the reorganization of HBOC's claims auditing division, *see id.* at 70-72, and HBOC's view as to the value of the '164 patent at the time of the McKesson acquisition. *See id.* at 74-75.

Given the extreme and objectionable breadth of the three topics, and TriZetto's failure to provide any guidance as to what specific issues it wanted to address, Mr. Nunnelly was able to provide sufficient testimony as to numerous issues on each of the topics. In addition, although Mr. Nunnelly did not recall information as to certain issues, it is clear from his deposition transcript that TriZetto's counsel made no attempt to refresh his recollection. Indeed, during his main examination of Mr. Nunnelly, TriZetto's counsel introduced only a single exhibit – TriZetto's Rule 30(b)(6) deposition notice. At no time during the deposition did TriZetto's counsel show Mr. Nunnelly any acquisition agreements, press releases, SEC filings, or any other documents concerning the three acquisitions, even though many such documents are publicly available. Notably, TriZetto also never served in this case any document requests seeking

The Honorable Sue L. Robinson
October 7, 2005
Page 4

documents from any of the three acquisitions, such as HSR filings or even the acquisition agreements.

The legitimacy of TriZetto's complaints concerning McKesson's witnesses is also belied by the fact that TriZetto blatantly ignored its own obligation to produce knowledgeable witnesses in response to McKesson's Rule 30(b)(6) deposition notice.

**REDACTED**

A review of the relevant excerpts of Ms. Wukitch's and Mr. Nunnelly's depositions, rather than the isolated snippets highlighted by TriZetto, demonstrate that McKesson and its witnesses have complied with their obligations under Rule 30(b)(6). This is especially true in view of TriZetto's overly broad topics, which do not comport with Rule 30(b)(6)'s requirement for reasonable particularity. However, even if the Court were to find that McKesson's witnesses did not fully testify as to the designated topics, McKesson still satisfied its Rule 30(b)(6) obligations since the record shows that McKesson and its witnesses made a diligent and good faith effort to prepare for the depositions, and the witnesses did in fact provide substantive testimony on numerous issues within those topics. *See, e.g., United States v. Massachusetts Industrial Fin. Agency*, 162 F.R.D. 410, 412 (D. Mass. 1995) (denying motion to compel further Rule 30(b)(6) deposition because deponent's inability to fully testify on all designated topics was not tantamount to a failure to appear and there was no evidence of willfulness or bad faith).

### McKesson Satisfied Its Rule 26 Obligations

TriZetto's complaints concerning Ms. Bell and Ms. Cutcliff's supposed lack of knowledge concerning McKesson's damages claims are completely unfounded. TriZetto's complaints are particlarly inappropriate in light of the fact, as noted above, TriZetto failed to ask any damages related questions to Ms. Wukitch, the head of the pertinent McKesson business unit and McKesson's Rule 30(b)(6) witness in connection with damages issues. TriZetto is also not entitled to the additional depositions it requests, particularly since TriZetto did not even exhaust its allotted 15 fact depositions.

*Ms. Bell.* The deposition testimony submitted by TriZetto in connection with its letter brief does not show that Ms. Bell lacks knowledge relevant to McKesson's damages claims. In fact, the portions of Ms. Bell's deposition submitted by TriZetto show that she has knowledge that McKesson has lost customers to TriZetto and Erisco. *See* TriZetto Exhibit E at 49 (D.I. 109). Ms. Bell's inability to provide – off the top of her head – "a definite number of customers

The Honorable Sue L. Robinson
October 7, 2005
Page 5

who moved to [TriZetto's] systems," *id.*, or to identify the precise "amount of dollars ... that McKesson has lost as a result of customers that have gone to Erisco or TriZetto," *id.*, does not mean that she has no knowledge concerning facts relevant to McKesson's damages. The same is true of questions showing Ms. Bell's lack of lawsuit-related "tasks," *id.* at 37-38, and her lack of involvement in "McKesson patent strategy," *id.* at 106-07. TriZetto's complaint that Ms. Bell did not know in June 2003 "what the amount of business was that McKesson was at risk of losing to TriZetto," *id.* at 83, shows at most, that she is not psychic. Finally, TriZetto's question concerning an "estimate of damages that McKesson has suffered as a result of customers that have gone to Erisco or TriZetto," *id.* at 37-38, is properly the subject for expert, not fact witness testimony.

In addition, although not elicited by TriZetto, Ms. Bell testified during her deposition on issues directly relevant to McKesson's damages. For example, McKesson's market share is relevant to McKesson's lost profits damages claim, and Ms. Bell testfied that McKesson's current market share in the claim editing field was "[a]pproximately 80 percent." *See* Exhibit 6 submitted herewith.

***Ms. Cutcliff.*** The deposition testimony submitted by TriZetto in connection with its letter brief also does not show that Ms. Cutcliff does not have knowledge relevant to McKesson's damages claims. For example, in a portion of Ms. Cutcliff's deposition not submitted by TriZetto, Ms. Cutcliff testified regarding her personal knowledge of the royalty arrangements for a potential license to the '164 patent discussed between TriZetto and McKesson. *See* Exhibit 7 submitted herewith at 54-55. McKesson cannot be blamed for TriZetto's failure to press Ms. Cutcliff further on this issue, or for TriZetto's failure to ask other damages-related questions within the scope of Ms. Cutcliff's personal knowledge.

Respectfully submitted,

Michael A. Barlow (#3928)

cc:   Jack B. Blumenfeld, Esq. (by e-filing)
      Jeffrey T. Thomas, Esq. (by e-mail).