# EXHIBIT A

ENTIRE DOCUMENT IS REDACTED

**EXHIBIT B**

Page 1

2002 U.S. Dist. LEXIS 15655, *

LEXSEE 2002 U.S. DIST LEXIS 15655

**MOTOROLA, INC., Plaintiff, vs. VOSI TECHNOLOGIES, INC. and IVANO STAMEGNA, Defendants.**

Case No. 01 C 4182

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

**2002 U.S. Dist. LEXIS 15655**

**August 19, 2002, Decided
August 22, 2002, Docketed**

**PRIOR HISTORY:** Motorola, Inc. v. Vosi Techs., Inc., 2001 U.S. Dist. LEXIS 21498.

**DISPOSITION:** [*1] Plaintiff's motion for protective order granted in part and denied in part; motion to compel denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff corporation sought a declaratory judgment that it was not infringing defendants patent holders' patents, or alternatively, that the patents were invalid. The holders counterclaimed for willful patent infringement, misappropriation of trade secrets, breach of contract, and fraud. The corporation moved for a protective order and to compel.

**OVERVIEW:** The corporation received opinions from counsel regarding the holders' patents. The corporation moved for a protective order seeking a ruling on the scope of the waiver that would exist if it relied on the advice of counsel regarding its options to defend against the claim of willful infringement. The corporation sought three limitations on the scope of any such waiver: (1) limitation of the waiver to opinions concerning validity, not infringement or other subjects; (2) the holders could not take discovery as to any mental impressions or thought processes; and (3) the holders could not take discovery of post-suit options or work product. The court found that the limitation regarding validity cut too narrowly. The order provided that the corporation had to provide all opinions of counsel that were communicated regarding the issue of validity and other opinions that included a construction of any of the patents. The holders were not permitted to take discovery of any mental impressions, thought processes, or work product that were not communicated to the corporation. The holders were not permitted to take discovery of post-suit opinions or the work product of trial counsel.

**OUTCOME:** The corporation's motion for protective order was granted as to the opinion of counsel regarding validity and denied as to the crime-fraud claims. The corporation's motion to compel was denied.

**LexisNexis(R) Headnotes**

*Patent Law > Remedies > Collateral Assessments > Increased Damages*
*Patent Law > Remedies > Collateral Assessments > Attorney Fees*
*Patent Law > Infringement Actions > Infringing Acts > General Overview*
[HN1] Willful infringement of patents consists of deliberate disregard of a patentee's rights. Thus the focus is generally on whether the infringer exercised due care to avoid infringement, usually by seeking the advice of competent and objective counsel, and receiving exculpatory advice. When it is found that the infringer acted without a reasonable belief that its actions would avoid infringement, the patentee has established willful infringement. If a party claims reliance on advice of counsel to defend against a claim of willful infringement, it waives its attorney-client and work-product privileges with respect to the subject matter of the legal advice relied upon.

*Civil Procedure > Disclosure & Discovery > Protective Orders*
[HN2] A motion for a protective order is an appropriate procedure; it permits a party to make a fully-informed and intelligent decision whether to rely on advice of counsel with full knowledge of the consequences of the decision.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*
*Patent Law > Infringement Actions > General*

Case 1:04-cv-01258-SLR  Document 130-2  Filed 10/12/2005  Page 4 of 16

Page 2
2002 U.S. Dist. LEXIS 15655, *

*Overview*
*Patent Law > Remedies > Collateral Assessments > Attorney Fees*
[HN3] A waiver of the attorney-client privilege ordinarily concerns only the subject matter of the communications that are disclosed. But, opinions regarding validity are necessarily based on a particular construction of the claims of a patent. The opinions that involve issues other than validity but that include a construction of the patent concern, to that extent, the same subject matter as opinions regarding validity. It would be unfair to permit a party to make a selective disclosure of opinions that have a bearing on the validity issue.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*
[HN4] Communications between an attorney and a client that are made in furtherance of a crime or fraud are not protected by the attorney-client or work-product privileges. A party claiming that the crime-fraud exception applies must make a prima facie showing that a crime or a fraud was committed. If the exception applies, the privilege is deemed waived as to documents and communications in furtherance of the crime or the fraud.

*Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > General Overview*
*Patent Law > Remedies > Collateral Assessments > Attorney Fees*
[HN5] A patent applicant owes the Patent Office a duty of candor and good faith which runs from the date of its application until the date a patent is issued or the application is abandoned. 37 C.F.R. § 1.56(a). The crime-fraud exception to the attorney-client and work-product privileges applies when a prima facie showing is made that a patentee procured its patent through a fraud on the Patent Office. A party claiming the exception must make a prima facie showing that the patent applicant made a willful misrepresentation or omission of a material fact before the Patent Office, with the intent to deceive the examiner, and upon which the examiner actually relied.

*Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > General Overview*
[HN6] A patent applicant's duty of candor to the Patent Office extends through the date the patent is issued. 37 C.F.R. § 1.56(a).

*Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > General Overview*
[HN7] Fraud consisting of the knowing pursuit of baseless litigation may bring the crime-fraud exception into play, and there is authority for the proposition that pursuit of a claim of infringement of a patent that the holder knows was invalidly obtained is sufficient to invoke the exception.

**COUNSEL:** For MOTOROLA INC, plaintiff: Jerold A. Jacover, Timothy Quinn Delaney, James R. Sobieraj, Malcolm J. Duncan, David Howard Bluestone, Brinks, Hofer, Gilson & Lione, Chicago, IL.

For VOSI TECHNOLOGIES, INC., IVANO STAMEGNA, defendants: Vasilios D. Dossas, Keith A. Vogt, David J. Sheikh, Robert P. Greenspoon, Niro, Scavone, Haller & Niro, Ltd., Chicago, IL.

For VOSI TECHNOLOGIES, INC., counter-claimant: Keith A. Vogt, Niro, Scavone, Haller & Niro, Ltd., Chicago, IL.

For MOTOROLA INC, counter-defendant: Jerold A. Jacover, Timothy Quinn Delaney, Malcom J. Duncan, David Howard Bluestone, Brinks, Hofer, Gilson & Lione, Chicago, IL.

**JUDGES:** MATTHEW F. KENNELLY, United States District Judge.

**OPINIONBY:** MATTHEW F. KENNELLY

**OPINION:**

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

In this case, plaintiff Motorola Inc. seeks a declaratory judgment that it is not infringing patents held by defendants Vosi Technologies, Inc. and Ivano Stamegna, or alternatively that those patents are invalid. Vosi has counterclaimed [*2] for patent infringement, misappropriation of trade secrets, breach of contract, and fraud. This Memorandum Opinion and Order concerns two motions filed by Motorola, one concerning its own attorney-client privilege and the other concerning Vosi's attorney-client privilege.

**1. Motorola's motion for protective order**

In its counterclaim, Vosi alleges that Motorola willfully infringed its patents, which if proven could result in an award of treble damages. 35 U.S.C. § 284. [HN1] Willful infringement consists of deliberate disregard of the patentee's rights. *Vulcan Engineering Co. v. Fata Aluminum, Inc.*, 278 F.3d 1366, 1378 (Fed. Cir. 2002). "Thus the focus is generally on whether the infringer exercised due care to avoid infringement, usually by seeking the advice of competent and objective counsel, and receiving exculpatory advice. When it is found that the infringer acted without a reasonable belief that its actions would avoid infringement, the patentee

has established willful infringement ...." *Id.* If a party claims reliance on advice of counsel to defend against a claim of willful infringement, it waives its attorney-client and work-product [*3] privileges with respect to the subject matter of the legal advice relied upon. *See In re Pioneer Hi-Bred International, Inc.*, 238 F.3d 1370, 1375 (Fed. Cir. 2001); *Eli Lilly & Co. v. Zenith Goldline Pharmaceuticals, Inc.*, 149 F. Supp. 2d 659, 661 (S.D. Ind. 2001); *Thermos Co. v. Starbucks Corp.*, 1998 U.S. Dist. LEXIS 17753, No. 96 C 3833, 1998 WL 781120, at *1 (N.D. Ill. Nov. 3, 1998).

Motorola, which evidently received opinions from counsel regarding the Vosi patents, is assessing whether it should rely on those opinions to defend against the claim of willful infringement. It has filed a motion for protective order, seeking a ruling on the scope of the waiver that will exist if it elects to rely on advice of counsel. This [HN2] is an appropriate procedure; it permits a party to make a fully-informed and intelligent decision whether to rely on advice of counsel with full knowledge of the consequences of the decision. *Cf. Quantum Corp. v. Tandon Corp.*, 940 F.2d 642, 643-44 (Fed. Cir. 1991) (suggesting bifurcation of the issue of willfulness as a way of relieving party of dilemma of whether to waive privilege).

Motorola wants the Court to impose three [*4] limitations on the scope of any such waiver. First, Motorola says that it would rely only on advice concerning the validity of Vosi's patents; it seeks to limit the waiver to opinions concerning validity, not those concerning infringement or other subjects. The Court agrees with Vosi that this cuts it too narrowly. It is true, as noted above, that [HN3] a waiver of the attorney-client privilege ordinarily concerns only the subject matter of the communications that are disclosed. *See Micron Separations, Inc. v. Pall Corp.*, 159 F.R.D. 361, 365 n.8 (D. Mass. 1995) (reliance on counsel's advice regarding validity does not waive privilege with respect to advice regarding infringement). But as Vosi points out, opinions regarding validity are necessarily based on a particular construction of the claims of the patent. It is conceivable that Motorola could have received an opinion of invalidity that was based on a very broad construction of the claims, while also receiving an opinion of non-infringement that was based on a narrower construction. In that hypothetical situation, knowledge of the narrower construction could cast doubt on the premise of the opinion of invalidity and thus [*5] could bear on whether it was reasonable for Motorola to rely on that opinion. *Cf. Micron*, 159 F.R.D. at 363 (later opinions which "cast doubt on the premises or bases of the earlier opinion" relied upon are within scope of waiver of privilege).

In short, opinions that involve issues other than validity but that include a construction of the patent concern, to that extent, the same subject matter as opinions regarding validity. It would be unfair to permit Motorola to make a selective disclosure of opinions that have a bearing on the validity issue. *See Abbott Laboratories v. Baxter Travenol Laboratories, Inc.*, 676 F. Supp. 831, 832 (N.D. Ill. 1987). For these reasons, if Motorola chooses to rely on its counsel's opinions regarding validity, it must disclose all pre-suit communications of counsel on subjects other than validity insofar as they include a construction of the same patent or patents that are the subject of any validity opinion.

Vosi has agreed to the second limitation proposed by Motorola: that any waiver be limited to matters that were actually communicated to Motorola, and should not include counsel's mental impressions, thought processes, [*6] and work product that were not communicated to Motorola.

Motorola's proposed third limitation concerns the post-suit opinions of its trial counsel. Motorola's trial counsel are not the same lawyers who provided the pre-suit opinions on which it may rely to defend against the claim of willful infringement. Motorola argues that trial counsel's opinions should retain their protection irrespective of Motorola's reliance on advice of pre-litigation counsel. The Court agrees with this proposed limitation. *Accord, e.g., Thermos*, 1998 U.S. Dist. LEXIS 17753, 1998 WL 781120, at *5; *Micron*, 159 F.R.D. at 365-66. The willfulness or non-willfulness of Motorola's conduct logically depends upon the advice it received before suit was filed. Moreover, if a party's reliance on advice of counsel to defend a claim of willful infringement resulted, without more, in a waiver of the attorney-client and work-product privileges pertaining to the opinions of its trial counsel, it would inappropriately chill communications between trial counsel and client and would impair trial counsel's ability to give the client candid advice regarding the merits of the case.

In sum, the Court rules as follows:

1) [*7] If Motorola relies on an opinion of counsel regarding validity, it must provide all other opinions of counsel that were communicated to Motorola regarding the issue of validity and all other opinions that were communicated to Motorola that include a construction of any of the patents in suit.

2) Defendants shall not be permitted to take discovery as to any mental impressions, thought processes, and work product of counsel that were not communicated to Motorola.

3) Defendants shall not be permitted to take discovery of post-suit opinions or work product of Motorola's trial counsel.

**2. Motorola's fourth motion to compel discovery**

Case 1:04-cv-01258-SLR   Document 130-2   Filed 10/12/2005   Page 6 of 16

Page 4
2002 U.S. Dist. LEXIS 15655, *

In its fourth motion to compel discovery, Motorola contends that Vosi's attorney-client and work-product privileges should be deemed waived pursuant to what is commonly called the "crime-fraud" exception to those privileges. [HN4] Communications between attorney and client that are made in furtherance of a crime or fraud are not protected by the attorney-client or work-product privileges. *See, e.g., Clark v. United States,* 289 U.S. 1, 15, 77 L. Ed. 993, 53 S. Ct. 465 (1933); *In re Grand Jury Subpoenas,* 144 F.3d 653, 660 (10th Cir. 1998) [*8] (exception applies to work-product privilege as well as attorney-client privilege). The party claiming that the crime-fraud exception applies must make a *prima facie* showing that a crime or fraud was committed. *Clark.* 289 U.S. at 15; *In re Spalding Sports Worldwide, Inc.,* 203 F.3d 800, 806 (Fed. Cir. 2000). If the exception applies, the privilege is deemed waived as to documents and communications in furtherance of the crime or fraud. *Spalding,* 203 F.3d at 807; *see also, e.g., In re Bankamerica Corp. Securities Litigation,* 270 F.3d 639, 642 (8th Cir. 2001).

[HN5] A patent applicant owes the Patent Office a duty of candor and good faith, *Molins PLC v. Textron, Inc.,* 48 F.3d 1172, 1178 (Fed. Cir. 1995), which runs from the date of its application until the date a patent is issued or the application is abandoned. 37 C.F.R. § 1.56(a). The crime-fraud exception to the attorney-client and work-product privileges applies when a *prima facie* showing is made that a patentee procured its patent through a fraud on the Patent Office. *Spalding,* 203 F.3d at 807. The party [*9] claiming the exception must make a *prima facie* showing that the patent applicant made a willful misrepresentation or omission of a material fact before the Patent Office, with the intent to deceive the examiner, and upon which the examiner actually relied. *See id.; Leybold-Heraeus Technologies, Inc. v. Midwest Instrument Co.,* 118 F.R.D. 609, 614 (E.D. Wis. 1987).

Motorola contends that attorney David Duckworth, who prosecuted Vosi's patent applications that led to issuance of the patents in suit, committed a fraud on the Patent Office in connection with the prosecution of the patents. It says that Duckworth knowingly submitted a false affidavits from Ivano Stamegna (the inventor and a defendant in this case) in support of the patent applications, and that Duckworth knowingly failed to advise the Patent Office of prior art that invalidated certain of the claims in certain of the patents. We consider these contentions in turn.

In November 1997, the Patent Office rejected all of the claims of the application that ultimately led to issuance of U.S. Patent No. 5,797,088, citing as prior art another patent, the Nagashima patent, which had been issued after Stamegna's [*10] application was filed. Duckworth advised Stamegna about the possibility of "swearing behind" the Nagashima patent -- in other words, showing that Stamegna had actually conceived of his invention before the date of Nagashima's application, May 20, 1993, and had engaged in activities from before that date continuously to the filing of his own application showing that he was diligent in making the application. Duckworth Dep. 58-61. Following this discussion, Stamegna drafted and sent to Duckworth a statement that he had conceived of the invention in late 1991, but that "in 1992, due to the real estate depression in California, my priorities got shifted and I had to put my invention on hold. In 1993, I began working on it and in 1994 I pursued it diligently putting a lot of energy into the unit ...." Motion to Compel, Ex. L. Duckworth then prepared a declaration which Stamegna signed and Duckworth submitted to the Patent Office. The declaration included a statement that Stamegna had conceived of the invention prior to May 20, 1993, and that "from prior to May 20, 1993, I was diligent in attempting to reduce the invention to practice until at least October 30, 1995," the date of Stamegna's [*11] patent application. Motion to Compel, Ex. M, PP1, 3. He provided details in support of the claim of diligence. *Id.* PP4-5. The patent examiner relied on Stamegna's statements in allowing the claims in his patent applications. Motion to Compel, Ex. N.

Motorola argues that Stamegna's declaration that Duckworth submitted to the Patent Office was inconsistent with the statement that Stamegna had provided to Duckworth and that this reflects an intent to deceive the examiner. Specifically, it says that Stamegna's initial statement to Duckworth reflected that he was not diligent until 1994 but that his declaration stated that he had been diligent since before May 20, 1993. This is, in the Court's view, a misinterpretation of Stamegna's initial statement. Stamegna did not say that he *was not* diligent *until* 1994; rather he said that he *was* diligent *in* that year. The two propositions are materially different. The fact that Stamegna (a non-lawyer) had, in his initial statement, used the word "diligently" only with respect to his activities in 1994 does not preclude the possibility that he had exercised diligence, as that term is used in patent law, in 1993. Indeed, Stamegna's [*12] initial statement to his attorney included an assertion that he had begun working on the invention in 1993, which is consistent with his later declaration to the Patent Office, and that declaration gave a detailed account of what he had done before May 20, 1993 to support the claim of diligence. Motion to Compel, Ex. M, PP4-5. Based on the evidence submitted to the Court, the most reasonable inference is that after inquiring of Stamegna upon receiving his initial statement, Duckworth honestly believed that Stamegna could claim that he had been diligent prior to May 1993. The submission of the declaration does not support invocation of the crime-fraud exception.

Motorola's other claim of a fraud on the Patent Office arises from a statement by Duckworth in a

document he submitted in support of a patent application that Vosi currently has pending. Duckworth's statement refers to matters that had taken place in connection with his prosecution on Vosi's behalf of two of the patents involved in this case, U.S. Patent Nos. 6,058,298 and 6,058,078. The '298 patent was issued on May 2, 2000, and the '078 patent was issued on July 4, 2000. Vosi's pending patent application, Application No. [*13] 09/561,788, is, as best as we can determine, a continuation application relating to the subject matter of the earlier patents.

In support of the currently-pending application, Duckworth submitted a document to the Patent Office in which he recounted discussions he had in June 2000 with Marsha Banks-Harold, the examiner on the applications that led to issuance of the '298 and '078 patents. Duckworth stated that on June 1, 2000, he called Banks-Harold and advised her that he had uncovered two prior art references which appeared to anticipate "numerous claims, but not all claims" of the '088 patent -- which had been issued in 1998 -- and also implicated "allowed claims" of the applications that led to the '298 and '078 patents. Motion to Compel, Ex. O. Duckworth stated that he told Banks-Harold that this prior art had been uncovered after he had received Notices of Allowance on both the '298 and '078 patents, but before the '298 patent was actually issued (the conversation took place after issuance of the '298 patent but before issuance of the '078 patent). Duckworth advised Banks-Harold that it was his understanding that an applicant finding himself in these circumstances was permitted [*14] to allow a patent to issue despite the belatedly-discovered prior art, so long as the claims that were the subject of the prior art were disclaimed after issuance. Duckworth stated that after consulting with her supervisor, Banks-Harold reported to him that Vosi had two options: it could "withdraw the [pending] application from issuance and abandon the application and then prosecute a continuation application in which the relevant [prior art] information was provided to the Patent Office," or "could allow the patent to issue and thereafter disclaim claims which were considered invalid." Motion to Compel, Ex. O. Duckworth said that he later advised Banks-Harold that he would allow the '078 patent to issue and would then prosecute a continuation application which disclosed the relevant prior art, prosecuting the claims believed to be allowable. *Id.*

In essence, Duckworth and Vosi decided to take the best of both of the proposals the patent examiner had made -- in a sense, to have their cake and eat it too. Though the examiner had proposed making a new continuation application in conjunction with a withdrawal of the then-pending application, or alternatively a disclaimer of invalid [*15] claims after issuance of the then-pending patent, Vosi and Duckworth elected to make a continuation application without withdrawing the pending application, and Vosi never disclaimed the purportedly invalid claims after allowing the patent to issue. Thus far there has been no explanation of why Vosi or Duckworth chose this course.

But although this course of conduct is suggestive of what could fairly be called sharp practices, the Court does not see how it was a fraud on the Patent Office with respect to the issuance of either the '298 or the '078 patent. Motorola has not attempted to show that Duckworth's claim regarding the timing of his knowledge of the prior art in question was false -- for example, that his knowledge of the prior art actually predated Vosi's receipt of the notice of allowance of either of the patents. Nor has Motorola tried to refute Duckworth's claim that the examiner in effect said that it was permissible for an applicant faced with this situation to allow a patent to issue without making further pre-issuance disclosures. And Motorola has not attempted to refute Duckworth's claim that he told the examiner, prior to the issuance of the '078 patent, that he was [*16] going to permit that patent to issue, and only then submit a continuation application. On the present record, the Court cannot say that Duckworth or Vosi committed a fraud on the Patent Office by allowing either patent to issue. Indeed, Duckworth's disclosure of the prior art to the examiner before the '078 patent was issued was the antithesis of fraud, and the issuance of that patent after the examiner knew that Duckworth would allow it to issue and would only then submit a continuation application disclosing the prior art is indicative that the examiner was not defrauded with regard to the '078 patent and that the non-disclosure of the prior art before issuance of the '298 patent likewise was not material.

Motorola argues that Duckworth's and Vosi's failure to follow the advice they say they got from the patent examiner indicates that they were defrauding the Patent Office from the outset. But this is a *non sequitur*. There is no basis for the Court to infer from Duckworth's post-issuance conduct that his statements regarding the timing of his discovery of the prior art were untrue. It is just as likely that the determination not to disclaim the allegedly invalid claims resulted [*17] from a decision made after the issuance of the patents. Though Duckworth's and Vosi's failure to follow the examiner's alleged advice is unexplained, it does not constitute *prima facie* evidence of an intent to defraud the Patent Office while the '298 and '078 patent applications were still pending.

If indeed there was a fraud, it took place after issuance of the patents, when Vosi chose not to disclaim the patents and then attempted, both prior to and during this litigation, to enforce them against Motorola. But this was not, in the Court's view, a fraud on the Patent Office. Motorola correctly argues that [HN6] a patent applicant's duty of candor to the Patent Office extends through the date the patent is issued, *see* 37 C.F.R. § 1.56(a), but it

cites no authority for the proposition that a patent holder has a duty of candor vis-a-vis the Patent Office beyond the date of issuance. And Motorola does not contend that Vosi or Duckworth has made any knowing misrepresentations or omissions of material facts in the currently-pending continuation application.

Motorola also suggests that Vosi's attempt to enforce the patents prior to Motorola's filing of this action, [*18] its pursuit of a counterclaim for infringement based on the two patents, and its refusal (as yet) to concede, in response to interrogatories, that the patents are invalid in any respect is also evidence of fraudulent intent. But even if this were so, it would not be *prima facie* evidence of an intent to defraud the Patent Office. Once the patents had issued, the potential victims of the claimed fraud were the public and persons or entities (like Motorola) against whom defendants attempted to enforce a patent that they arguably should have disclaimed, not the Patent Office.

[HN7] Fraud consisting of the knowing pursuit of baseless litigation may bring the crime-fraud exception into play, *see, e.g., In re Richard Roe, Inc.,* 168 F.3d 69, 71-72 (2d Cir. 1999), and there is authority for the proposition that pursuit of a claim of infringement of a patent that the holder knows was invalidly obtained is sufficient to invoke the exception. *Leybold,* 118 F.R.D. at 615 (citing *Kockums Industries Ltd. v. Salem Equipment, Inc.,* 561 F. Supp. 168 (D. Ore. 1983)). But that is not the focus of Motorola's motion. Moreover, a claim of crime or fraud based [*19] on the conduct of litigation presents issues that are even more sensitive than those involved when the claim is based on pre-litigation conduct. *See generally Richard Roe, Inc.,* 168 F.3d at 71-72. Without a better sense of exactly what claims of what patents Vosi is and is not relying upon to support its allegations of infringement, the Court is not prepared to say that those allegations, or any significant part of them, have "little or no legal or factual basis," let alone that the litigation has been carried on for the purpose of furthering a fraud. *Id.* at 71.

For these reasons, the Court denies Vosi's motion to compel, though the denial is without prejudice to later reassertion following further discovery of the particulars of Vosi's claims in this litigation. In that regard, the Court, on its own motion, directs Vosi (if it has not done so already) to provide a direct answer to Vosi's interrogatory number 20, which requests identification of which claims of the Vosi patents are invalid. Under the circumstances present here, Vosi's answer dated August 5, 2002, which simply refers Motorola to "documents which will be produced by Defendants," is [*20] insufficient. A direct answer is to be provided within five days of entry of this order.

**Conclusion**

For the reasons stated above, Motorola's motion for protective order [docket item 86-1] is granted in part and denied in part, and its fourth motion to compel [item 80-1] is denied.

MATTHEW F. KENNELLY

United States District Judge

Date: August 19, 2002

**EXHIBIT C**

2005 U.S. Dist. LEXIS 10149, *

LEXSEE 2005 U.S. DIST LEXIS 10149

**INTEX RECREATION CORPORATION, Plaintiff, v. METALAST, S.A., Sociedad Unipersonal, Defendant.**

**Civil Action No. 01-1213 (JDB)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

**2005 U.S. Dist. LEXIS 10149**

**March 2, 2005, Decided**

**SUBSEQUENT HISTORY:** Summary judgment granted, in part, summary judgment denied, in part by, Motion denied by Intex Rec. Corp. v. Metalast, S.A., 2005 U.S. Dist. LEXIS 10147 (D.D.C., May 20, 2005)

**PRIOR HISTORY:** Intex Rec. Corp. v. Metalast, S.A., 2003 U.S. Dist. LEXIS 1986 (D.D.C., Feb. 12, 2003)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff marketer of swimming pool ladders sued defendant owner of a patent for such ladders, seeking a declaration of noninfringement. The owner sought increased damages on its counterclaim for willful infringement and the marketer asserted the defense of advice of counsel. The owner moved to compel discovery, and the marketer moved for a protective order, concerning the scope of the marketer's waiver of attorney-client privilege.

**OVERVIEW:** The parties agreed that, by asserting reliance upon counsel as a defense to willful infringement, the marketer waived attorney-client privilege. However, the marketer asserted that the waiver only extended to the opinion letters of counsel and documents referring to those letters, but the owner contended that the waiver included all communications between the marketer and its counsel regarding the subject matter of the opinion letters. The court held that the marketer was required to produce all documents and communications that concerned the subject matter of the opinion letters, including any information in the marketer's files, any information provided to counsel as a basis for the opinions, and any attorney work product that counsel provided to the marketer. Nonetheless, since the focus of the defense of advice of counsel was whether the marketer had a reasonable belief that its ladders were not infringing, the privilege was waived only to the extent the documents were generated by or communicated to the marketer. Further, the broad waiver of the privilege extended to materials which questioned or contradicted in any way the competence or validity of the opinion letters.

**OUTCOME:** The owner's motion to compel discovery and the marketer's motion for a protective order were granted in part and denied in part.

**LexisNexis(R) Headnotes**

*Civil Procedure > Disclosure & Discovery > Privileged Matters*
*Evidence > Privileges > Waiver of Privilege*
*Patent Law > Remedies > Collateral Assessments > Increased Damages*
[HN1] The scope of the waiver of attorney-client privilege when advice of counsel is raised as a defense in a patent infringement action is very broad.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*
*Evidence > Privileges > Waiver of Privilege*
*Patent Law > Remedies > Collateral Assessments > Increased Damages*
[HN2] There is no question that the attorney-client privilege is waived when a client asserts reliance on the advice of counsel as an affirmative defense to willful patent infringement, because the client has then made a conscious decision to inject as an issue in the litigation the advice of counsel.

*Patent Law > Jurisdiction & Review > Standards of Review > General Overview*
[HN3] Resolution of discovery disputes and other procedural issues unique to patent litigation is guided by decisions of the U.S. Court of Appeals for the Federal Circuit.

*Patent Law > Remedies > Collateral Assessments > Increased Damages*
[HN4] The question of willful patent infringement is one of fact turning on whether the alleged infringer had a

Case 1:04-cv-01258-SLR   Document 130-2   Filed 10/12/2005   Page 11 of 16

Page 2
2005 U.S. Dist. LEXIS 10149, *

reasonable belief that the challenged activity did not violate the law. The Federal Circuit makes it clear that the infringer's intent, not that of counsel, is the relevant issue. When an alleged infringer claims reliance upon advice of counsel, a court must examine objective evidence to assess whether the reliance was justified. Hence, the infringer's intent and reasonable beliefs are the primary focus of a willful infringement inquiry. The inquiry with respect to reliance on an opinion of counsel, of course, is not the legal correctness of the opinion, but whether the opinion was competent. That assessment requires examination of objective evidence concerning the adequacy of any legal opinion.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*
*Evidence > Privileges > Waiver of Privilege*
*Patent Law > Remedies > Collateral Assessments > Increased Damages*
[HN5] On the issue of the scope of waiver of attorney-client privilege and work product immunity where the advice of counsel has been raised as a defense to willfulness in a patent dispute, a broad waiver is appropriate, although the waiver does not extend to include attorney work product materials created for trial even if never disclosed to the client.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*
*Evidence > Privileges > Waiver of Privilege*
*Patent Law > Remedies > Collateral Assessments > Increased Damages*
[HN6] Considerations of fairness require that a litigant should not be able to claim reliance on advice of counsel as a defense to willful patent infringement, and hence a sword in litigation, while at the same time asserting attorney-client privilege or work product doctrine as a shield to protect against the opposing party testing the legitimacy of that claim. Fairness requires that the litigant asserting the defense waives the attorney-client privilege and work product immunity to the broadest extent consonant with the direct relevance to the advice of counsel itself. Hence, not just opinion letters themselves and communications with the client about them must be produced, but also those materials that counsel actually relied upon in rendering an opinion, to the extent those documents were provided to the client. The waiver also includes all documents that refer or relate to the subject matter addressed in counsel's opinion letters, to the extent those documents were provided to the client. The subject matter waived is not limited to the specific opinion letter proffered, but rather extends to the specific issues of advice asserted as a defense to willfulness, including infringement and validity.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*
*Evidence > Privileges > Waiver of Privilege*
*Patent Law > Remedies > Collateral Assessments > Increased Damages*
[HN7] A middle ground is the most appropriate approach to the scope of waiver of the attorney-client privilege when advice of counsel is raised as a defense to willful infringement, under which waiver extends only to those trial counsel work product materials that have been communicated to the client and contained conclusions or advice that contradict or cast doubt on the earlier opinions. This approach accommodates both the concern for fairness that drives the broad waiver doctrine and the well-recognized high level of protection generally accorded trial counsel opinion work product. Hence, any otherwise privileged documents or other information generated by the alleged infringer or its counsel subsequent to opinion letters (including post-suit materials), and relating to the subject matter of those opinion letters, must be produced if the documents were communicated to the infringer and if they question or contradict in any way the competence or validity of the opinions rendered. Only in this way can fairness be ensured by requiring the infringer to disclose not only the opinions relied upon through invocation of the advice of counsel defense but also any damaging or contradictory information regarding those opinions.

*Patent Law > Remedies > Collateral Assessments > Increased Damages*
[HN8] A key factor in deciding whether an enhanced damages award for willful infringement is warranted is whether the infringer deliberately or knowingly copied the patentee's design.

**COUNSEL:** [*1] For Plaintiff/Counter-defendant: William Charles Casano, Greenstein, Delorme & Luchs, P.C., Washington, D. C.; David N. Makous, Thomas S. Kidde, Daniel C. Decarlo, Lewis Brisbois Bisgaard & Smith LLP, Los Angeles, California.

For Defendant/Counter-claimant: John E. Curtin, Fairfax, Virginia; Martin G. Raskin, Joshua L. Raskin, Steinberg & Raskin, PC, New York, New York.

**JUDGES:** JOHN D. BATES, United States District Judge.

**OPINIONBY:** JOHN D. BATES

**OPINION:**

### MEMORANDUM OPINION

In this patent infringement case, defendant Metalast, S.A. ("Metalast") asserts that plaintiff Intex Recreation Corp. ("Intex") has willfully infringed its patent on a swimming pool ladder, U.S. Patent No. 5,547,041 ("the 041 patent"). Metalast seeks enhanced damages pursuant

to 35 U.S.C. § 284 based on the alleged willful infringement. The case has been through a claim construction proceeding and discovery, and is now in the summary judgment phase. However, in response to Metalast's claim for enhanced damages, Intex has raised a defense of alleged good-faith reliance on the advice of counsel.

The parties agree that by asserting the advice of counsel defense, Intex has waived the attorney-client [*2] privilege for the two written opinion letters prepared by its trial counsel relating to issues of infringement and validity of the 041 patent. As is often the case in such circumstances, however, there is a substantial disagreement with respect to the scope of the waiver, with the parties taking positions at opposite polar extremes. Metalast argues for a broad waiver that would include all communications between Intex and its counsel regarding the subject matter of the opinion letters (i.e., the issues of infringement and validity of the 041 patent), while Intex urges a narrow waiver limited to the specific opinion letters themselves and documents referring to those opinion letters which it has previously produced. In particular, Intex takes issue with Metalast's assertion that the waiver encompasses documents relating to settlement discussions and trial strategy (the majority of documents at issue) which Intex considers unrelated to the subject matter of the opinion letters.

Metalast has filed a motion to compel production of all documents and communications within the broad scope of the waiver it advocates. Intex has filed a motion for a protective order that would limit the [*3] scope of depositions relating to the subject matter of the opinion letters, and also curtail the breadth of a proposed Fed. R. Civ. P. 30(b)(6) deposition noticed by Metalast. The Court agrees that the scope of the waiver of attorney-client privilege under these circumstances is broad, although not quite so broad as Metalast contends. The Court will therefore grant in part and deny in part both motions.

### BACKGROUND

Intex seeks a declaration that the 041 patent is invalid and not infringed while Metalast claims that Intex has willfully infringed the 041 patent. Metalast served a broad set of requests for production of documents, to several of which Intex objected on grounds that the documents are subject to the attorney-client privilege and are attorney work product. Metalast insisted that Intex must identify any responsive documents as to which a privilege is claimed on a privilege log in accordance with Fed. R. Civ. P. 26(b)(5). Intex responded that it would provide a privilege log as needed, and that it would waive the attorney-client privilege for the limited purpose of producing opinions of counsel regarding the 041 patent. [*4] Intex then produced to Metalast a complete copy of a July 28, 2000 opinion letter prepared by its lead trial counsel and sent to Intex, as well as a redacted copy of a October 3, 2000 opinion e-mail from its counsel to Intex (together the "opinion letters"). The opinion letters contain attorney-client communications regarding the issues of infringement and validity of the 041 patent.

The parties then exchanged correspondence with respect to the scope of any waiver of attorney-client privilege. Metalast insisted that the waiver included all communications between Intex and its counsel regarding the issues of infringement and validity of the 041 patent, as well as all documents in Intex's possession that refer or relate to counsel's opinion or represent information provided to counsel as a basis for the opinions. Intex disagreed, insisting that waiver should be limited to the specific opinion letters. Intex did, however, eventually provide Metalast with a privilege log.

Following fact and expert discovery relating to claim construction and the Court's decision on claim construction, the parties also conducted discovery related to damages. Intex filed a motion for leave to file a [*5] Second Amended Complaint to add a count asserting that the 041 patent was invalid pursuant to 35 U.S.C. § 102(b) and to file an amended answer to Metalast's counterclaim to add that defense as well. Metalast opposed the motion. In a September 23, 2003 Order, the Court granted Intex's motion stating that "only narrowly limited additional discovery will be required on that [new] claim." Both parties thereafter asserted that the remaining discovery was narrowly focused on damages and the new invalidity claim. Deposition notices served by Metalast for Intex pursuant to Rule 30(b)(6) and for Intex's trial counsel have generated a dispute between the parties as to the proper scope of remaining discovery as well as the appropriate scope of the waiver of attorney-client and work product privileges.

### ANALYSIS

The parties' competing motions focus on four issues. First, what is the proper scope of the waiver of attorney-client privilege in patent cases where willful infringement is an issue and advice of counsel has been raised as a defense? Second, how should the general principle with respect to the scope of waiver be applied here as to such items as post-suit [*6] trial counsel materials, settlement communications, and documents and communications prepared after the disputed design was changed? Third, must Intex produce the entire October 3, 2000 opinion e-mail without redactions? And fourth, should Metalast be constrained in its proposed depositions with respect to either the scope of the waiver of attorney-client privilege or inquiries going beyond damages and invalidity?

### I. Scope of Waiver

Consistent with most cases to address the issue, this

Case 1:04-cv-01258-SLR   Document 130-2   Filed 10/12/2005   Page 13 of 16

Page 4
2005 U.S. Dist. LEXIS 10149, *

Court concludes that [HN1] the scope of the waiver of attorney-client privilege when advice of counsel is raised as a defense in a patent infringement action is very broad. Hence, Intex must produce all documents and communications that concern the subject matter of the opinion letters (i.e., infringement and validity of the 041 patent under 35 U.S.C. § 112) to the extent the documents were generated by or communicated to Intex, including any information in Intex's files, any information provided to counsel as a basis for the opinions, and any attorney work product that counsel provided to Intex.

[HN2] There is no question that the attorney-client privilege is waived when [*7] a client asserts reliance on the advice of counsel as an affirmative defense, because the client has then made a conscious decision to inject as an issue in the litigation the advice of counsel. See Glenmede Trust Co. v. Thompson, 56 F.3d 476, 486 (3d Cir. 1995); Simmons, Inc. v. Bombardier, Inc., 221 F.R.D. 4, 8 n.4 (D.D.C. 2004); Aspex Eyewear, Inc. v. E'Lite Optik, Inc., 276 F. Supp. 2d 1084, 1088 (D. Nev. 2003); Steelcase, Inc. v. Haworth, Inc., 954 F. Supp. 1195, 1197-98 (W.D. Mich. 1997). The parties agree with that proposition, but disagree concerning the scope of the resulting waiver.

As a threshold matter, the Court addresses the applicable law. [HN3] Resolution of discovery disputes and other procedural issues unique to patent litigation is guided by decisions of the Federal Circuit. See Panduit Corp. v. All States Plastic Mfg. Co., 744 F.2d 1564, 1574-75 (Fed. Cir. 1984), overruled on other grounds by Richardson-Merrell, Inc. v. Koller, 472 U.S. 424, 432, 86 L. Ed. 2d 340, 105 S. Ct. 2757 (1985). However, there is a split of authority among the district courts on whether the scope of the waiver resulting from [*8] the advice of counsel defense is a matter unique to patent law or a matter to be determined by precedent from the regional circuit courts. Simmons, 221 F.R.D. at 9 n. 5 (citing discussion in Chimie v. PPG Indus., Inc., 218 F.R.D. 416, 419 (D. Del. 2003). As the Simmons court noted, "the better reasoned approach recognizes that reliance on an advice-of-counsel defense in patent litigation is a unique brand of the defense rendering general advice-of-counsel discovery holdings inapposite" because the defense "is used only to provide insight into the alleged infringer's state of mind" and determine whether the requisite level of willfulness under 35 U.S.C. § 284 is present. Id.; accord Steelcase, 954 F. Supp. at 1198; but see Chimie, 218 F.R.D. at 419 n.4. The scope of waiver issue, however, has not been resolved by the Federal Circuit. In this situation, the Court believes that it is appropriate to resolve the scope of waiver issue by reference to Federal Circuit decisions on the nature of the advice of counsel defense and other district court decisions addressing the scope of waiver issue [*9] in patent infringement cases, rather than by reference to regional circuit decisions on attorney-client privilege and work product immunity generally. See Simmons, 221 F.R.D. at 9 n. 5.

[HN4] The question of willful patent infringement is one of fact turning on whether the alleged infringer had a reasonable belief that the challenged activity did not violate the law. See Nat'l Presto Indus., Inc. v. West Bend Co., 76 F.3d 1185, 1192-93 (Fed. Cir. 1996). "The Federal Circuit has made it clear that the infringer's intent, not that of counsel, is the relevant issue." Steelcase, 954 F. Supp. at 1198 (citing Ortho Pharmaceutical Corp. v. Smith, 959 F.2d 936, 944 (Fed. Cir. 1992)); see Solomon v. Kimberly-Clark Corp., 1999 U.S. Dist. LEXIS 1594, 1999 WL 89570, *3 (N.D. Ill.), rev'd on other grounds, 216 F.3d 1372 (Fed. Cir. 2000). When an alleged infringer claims reliance upon advice of counsel, a court must examine "objective evidence" to assess whether the reliance was justified. See Read Corp. v. Portec, Inc., 970 F.2d 816. 829 (Fed. Cir. 1992). Hence, the infringer's "intent and reasonable beliefs are [*10] the primary focus of a willful infringement inquiry." Ortho Pharmeceutical, 959 F.2d at 944; Steelcase, 954 F. Supp. at 1198. The inquiry with respect to reliance on an opinion of counsel, of course, "is not the legal correctness of the opinion, but whether the opinion was competent." Aspex Eyewear, 276 F. Supp. 2d at 1090. That assessment requires examination of objective evidence concerning the adequacy of any legal opinion. See Underwater Devices, Inc. v. Morrison-Knudsen Co., 717 F.2d 1380, 1390 (Fed. Cir. 1983); Aspex Eyewear, 276 F. Supp. 2d at 1091.

There is a split of authority among the district courts [HN5] on the issue of the scope of waiver of attorney-client privilege and work product immunity where the advice of counsel has been raised as a defense to willfulness in a patent dispute. This Court concludes that a broad waiver is appropriate, although (as explained below) the waiver should not extend to include attorney work product materials created for trial even if never disclosed to the client.

[HN6] Considerations of fairness require that a litigant should not be able to claim reliance on advice [*11] of counsel as a defense, and hence a sword in litigation, while at the same time asserting attorney-client privilege or work product doctrine as a shield to protect against the opposing party testing the legitimacy of that claim. See Aspex Eyewear, 276 F. Supp. 2d at 1092-93. Fairness requires that the litigant asserting the defense waives the attorney-client privilege and work product immunity "to the broadest extent consonant with the direct relevance to the advice of counsel itself." BASF Aktiengesellschaft v. Reilly Indus., Inc., 283 F. Supp. 2d 1000, 1005 (S.D. Ind. 2003) (quoting Chiron Corp. v. Genentech, Inc., 179 F. Supp. 2d 1182, 1189-90 (E.D. Cal. 2001)). Hence, not just the opinion letters

Case 1:04-cv-01258-SLR   Document 130-2   Filed 10/12/2005   Page 14 of 16

Page 5
2005 U.S. Dist. LEXIS 10149, *

themselves and communications with the client about them must be produced, but also those materials that counsel actually relied upon in rendering an opinion, to the extent those documents were provided to the client. Id. The waiver also includes all documents that refer or relate to the subject matter addressed in counsel's opinion letter, to the extent those documents were provided to the client. See Steelcase, 954 F. Supp. at 1198-99. [*12] The subject matter waived is not limited to the specific opinion letter proffered, but rather extends to the specific issues of advice asserted as a defense to willfulness, including infringement and validity. See Akeva, L.L.C. v. Mizuno Corp., 243 F. Supp. 2d 418, 422 (M.D.N.C. 2003). Thus, here, the subject matter waived by Intex is properly defined as infringement and validity of the 041 patent under 35 U.S.C. § 112. This Court concludes that such a broad scope of the waiver is necessary to ensure fairness in the litigation by permitting litigants to test through discovery the positions taken in the litigation. See Aspex Eyewear, 276 F. Supp. 2d at 1093 (relying on broad reach of discovery rather than admissibility standard).

## II. Application of a Broad Waiver

Simply stating that the scope of the waiver must be broad does not fully resolve the discovery issues presented here. In applying a broad waiver with respect to the subject matter of the opinion letters, the Court must decide whether the waiver extends to post-suit trial counsel materials (attorney work product), whether it includes materials prepared after [*13] the design of the ladder at issue was changed, and whether settlement materials of Intex and its counsel must be produced.

Many courts have applied a broad subject matter waiver to require disclosure of all pre-and post-complaint materials, even uncommunicated attorney work product. See, e.g., Chiron, 179 F. Supp. 2d at 1188. That would encompass opinions (and related materials) provided to the client by litigation counsel as well as opinion counsel, both before and after the advice letter, and uncommunicated work product of opinion counsel. See id.; see also Akeva, 243 F. Supp. 2d at 423-24 (disclosure of uncommunicated work product required only when opinion counsel is also trial counsel). n1

---

n1 Metalast makes this argument regarding waiver of uncommunicated attorney work product for the first time in its reply brief. Metalast's Reply to Intex' Opp. to Metalast's Mot. to Compel at 3-5 ("Metalast's Reply Br."). However, Metalast's motion refers only to production of "communications between counsel and client concerning the subject matter of the opinions" and other information in Intex's possession, and does not make the broader waiver argument regarding uncommunicated attorney work product. See Metalast's Motion to Compel at 1-2 and Proposed Order. Additionally, another section of Metalast's reply brief states that it seeks attorney work product only to the extent that Metalast can demonstrate that documents were communicated to Intex and contained conclusions or advice that cast doubt on the earlier opinion letters. Metalast's Reply Br. at 7-8. Therefore, the issue of whether the waiver encompasses uncommunicated attorney work product is of questionable relevance to Metalast's motion to compel. However, the Court's delineation of the scope of the waiver necessarily touches on the issue, and should guide the course of the remaining deposition discovery as well.

---

[*14]
However, courts have recognized the need to afford some protection to work product generated by litigation counsel in order to shield the effectiveness of trial preparation from undue discovery by an adversary. See Aspex Eyewear, 276 F. Supp. 2d at 1095. The issue of any temporal limitation on an otherwise broad waiver of attorney-client privilege has divided the federal courts, with many courts insisting on the broadest waiver and hence disclosure of all communications and documents regarding the subject matter of the opinion through trial (and whether or not communicated to the client), see, e.g., Akeva, 243 F. Supp. 2d at 423; Chiron, 179 F. Supp. 2d at 1188-90, while other courts construe the subject matter narrowly and limit waiver to communications and documents created prior to litigation, in order to maximize protection of litigation work product, see, e.g., Dunhall Pharm., Inc. v. Discus Dental, Inc., 994 F. Supp. 1202, 1206 (C.D. Cal. 1998). See generally BASF, 283 F. Supp. 2d at 1005-06 (collecting and discussing cases).

This Court agrees with the BASF court that [HN7] a "middle [*15] ground" is the most appropriate approach to this issue, under which waiver extends only to those trial counsel work product materials that have been communicated to the client and "contained conclusions or advice that contradict or cast doubt on the earlier opinions." BASF, 283 F. Supp. 2d at 1006. This approach accommodates both the concern for fairness that drives the broad waiver doctrine and the well-recognized high level of protection generally accorded trial counsel opinion work product. Id. Hence, any otherwise privileged documents or other information generated by Intex or its counsel subsequent to the two opinion letters issued in 2000 (including post-suit materials), and relating to the subject matter of those opinion letters, must be produced if the documents were communicated to Intex and if they question or contradict in any way the competence or validity of the opinions rendered. See id. at 1007. Only in this way can fairness

Case 1:04-cv-01258-SLR   Document 130-2   Filed 10/12/2005   Page 15 of 16

Page 6
2005 U.S. Dist. LEXIS 10149, *

be ensured by requiring Intex to disclose not only the opinions relied upon through invocation of the advice of counsel defense but also any damaging or contradictory information regarding those opinions. n2 [*16]

> n2 If Intex represents that there are no documents on the privilege log in this category, but Metalast believes in good faith that there are, then the Court may review any disputed items in camera.

Application of this principle here should be straightforward even though opinion counsel is also trial counsel. Post-suit trial counsel materials for which attorney work product or attorney-client protection is asserted must be disclosed if they question or contradict in any way the competence or validity of the 2000 opinion letters to the extent such materials were communicated to Intex. That disclosure obligation includes materials prepared after the design of the ladder at issue was changed and any settlement materials, because the operative guiding principle is whether otherwise privileged post-suit trial counsel work product contradicts or casts doubt on the earlier opinion letters, in which case it must be produced even if "settlement material" or created post-design change. n3

> n3 However, it is worth repeating that the subject matter of the opinion letters that are the basis for the advice of counsel defense -- infringement and validity under 35 U.S.C. § 112 -- also defines the scope of the waiver. Hence, there is no obligation to disclose privileged material relating to possible invalidity of the 041 patent under 35 U.S.C. § 102(b), a different subject matter.

[*17]

### III. Redaction of October 3, 2000 Opinion E-mail

Intex has produced a redacted copy of the October 3, 2000 e-mail that is one of the opinion letters at issue. The redacted material does not relate to the 041 patent according to Intex. Metalast asserts that the entire opinion, without any redaction, must be disclosed based on application of the "selective" or "partial" disclosure doctrine when advice of counsel is asserted as a defense to willful patent infringement. See Steelcase, 954 F. Supp. at 1200 ("opinion cannot be redacted in any fashion"); id. at 1198-99 (production of irrelevant information is a consequence of waiver of the privilege). Although the Court agrees with this general statement of the law, there is one refinement that may be relevant here. Some courts have recognized that waiver is limited to the portion of an opinion letter constituting legal advice on the patent at issue, and hence portions relating to other patents need not be produced. See Solomon, 1999 WL 89570 at *5. The guiding principle, again, is fairness, and the fortuity of combining opinions or subjects in one letter should not result in [*18] a waiver of privilege as to unrelated subject matters. Id. Hence, to the extent the redacted portion of the October 3, 2000 e-mail does not concern the 041 patent at all, it need not be produced. But to the extent the redacted portion nonetheless relates in any way to the 041 patent, then it must be produced as a necessary consequence of the broad subject matter waiver of privilege applicable here.

### IV. Scope of Depositions

The final two questions arise from Intex's motion for a protective order and relate to the proper scope of two noticed depositions: one of Intex's trial counsel, David N. Makous, who also is the author of the July 28, 2000 opinion letter, and a Rule 30(b)(6) notice to Intex. With respect to the scope of permissible inquiry relating to Intex's invocation of an advice of counsel defense, the parties should be guided by the preceding discussion concerning the appropriate scope of the waiver of attorney-client privilege and work product doctrine, and the resulting production of documents and communications under the Court's ruling. This discovery must focus, however, on the competency, not the correctness, of the opinions provided, and on the intent [*19] and reasonable beliefs of Intex in relying on the opinions. Metalast may not use this opportunity to reopen discovery broadly on claim construction, infringement, invalidity or other liability issues. At the same time, the Court recognizes that there is inevitably some overlap between the information relevant to infringement and the reasonableness of Intex's reliance on counsel's opinion regarding non-infringement. Thus, the Court will not limit the depositions solely to invalidity of the 041 permit under 35 U.S.C. § 112 and analysis of the term "uninterrupted inner surface." The areas of inquiry listed by Metalast, while somewhat broad, could potentially result in information relevant to the reasonableness of Intex's reliance on counsel's opinion, and thus are permissible areas of inquiry, subject to the restrictions outlined in the preceding discussion. The areas of inquiry, thus restricted, may include: (a) information provided by Intex to its attorneys regarding infringement and validity; (b) communications between Intex and its attorneys concerning infringement and invalidity; (c) other opinions conveyed to Intex by its attorneys regarding infringement [*20] and validity; (d) documents in Intex's possession that refer or relate to counsel's opinion; and (e) communications with other attorneys regarding infringement and invalidity.

The remaining question, then, relates to the proper

Case 1:04-cv-01258-SLR    Document 130-2    Filed 10/12/2005    Page 16 of 16

Page 7
2005 U.S. Dist. LEXIS 10149, *

scope of additional discovery concerning damages and Intex's new invalidity claim. This is an independent issue not turning on the advice of counsel defense and the resulting waiver of privilege. The parties agree, moreover, that "discovery has closed as to all issues except damages (and Intex' new claim of invalidity)." Metalast Opp. to Intex's Motion for Protective Order at 1.

The disagreement over scope now focuses on nine topics of Metalast's Rule 30(b)(6) deposition notice to Intex. The Court does not believe there are actually that many topics in issue, given the considerable overlap of subjects. Most of the requested discovery, properly (and thus narrowly) construed, is appropriate under the guiding principle that [HN8] a key factor in deciding whether an enhanced damages award for willful infringement is warranted is whether the infringer deliberately or knowingly copied the patentee's design. See Aero Products Int'l, Inc. v. Intex Recreation Corp., 2004 U.S. Dist. LEXIS 13453, 2004 WL 1696749, [*21] at *1 (N.D. Ill.) (citing Read Corp., 970 F.2d at 826-27).

The remaining disputed topics from the Rule 30(b)(6) notice can be grouped for analysis into four subjects. Category 1 covers questioning on all ladders marketed by Intex since 1990. Although designed to acquire admissible evidence on damages, that is too broad a subject of inquiry. Metalast may inquire only into the description (including construction) and quantity of ladders sold by Intex from 1996 (the year the 041 patent was issued) through 2003. Categories 10 and 13 deal with the conception of the design of the accused ladder and the decision to redesign earlier ladders. The Court is somewhat persuaded by Intex's argument that this information is much more relevant to infringement (and hence liability) than to damages, and therefore the discovery should be denied based on the Court's prior bifurcation of discovery and the agreement that discovery is closed except for damages and the new invalidity claim. However, the Court will permit discovery in these categories strictly limited to the issue of willful infringement (and hence giving rise to possible enhanced damages).

Categories 11, 12, 15 and 16 [*22] seek information relating to the initial decision to have the accused ladders manufactured, the initial decision to purchase the accused ladders from Mingda Plastics, and the first contact by Intex with Mingda. This is a narrow area of inquiry relevant to willful infringement and enhanced damages when limited to whether Intex had (or should have had) knowledge that the purchased ladders were copies of patented ladders. Likewise, Categories 14 and 17, dealing with knowledge of the design of the accused ladders and of the construction of Metalast's ladders, involve a narrow inquiry that may lead to the discovery of admissible evidence relating to Intex's knowledge of infringement, and therefore willful infringement and possible enhanced damages.

The Rule 30(b)(6) deposition of a designated Intex employee should proceed consistent with these rulings. It bears repeating, however, that this discovery is narrow, consistent with the agreed limitation of discovery to damages and the new invalidity claim, and should not be taken as an opportunity to reopen discovery on infringement or other issues as to which discovery is closed.

## CONCLUSION

For the foregoing reasons, Metalast's [*23] motion to compel production and Intex's motion for a protective order are each granted in part and denied in part. A separate order has been issued.

JOHN D. BATES

United States District Judge

Dated: March 2, 2005

## ORDER

Upon consideration of [52] the motion of defendant Metalast, S.A. ("Metalast") to compel plaintiff Intex Recreation Corp. ("Intex") to produce all information, including all attorney-client communications, concerning the subject matter of the opinions of counsel produced by Intex in support of its advice of counsel defense to Metalast's willful infringement claim, [51] Intex's motion for protective order, and the responses, replies, and supplemental memoranda, it is hereby

ORDERED, that, for the reasons stated in the Memorandum Opinion issued on this date, Metalast's motion to compel and Intex's motion for protective order are each granted in part and denied in part; it is further

ORDERED, that Intex shall review the documents identified in its privilege log and produce documents responsive to Metalast's request for production of documents in accordance with the standards set forth in the Memorandum Opinion by not later than March 31, 2005; and [*24] it is further

ORDERED, that the deposition of David N. Makous and the deposition of a person designated by Intex pursuant to Fed. R. Civ. P. 30(b)(6) shall proceed in accordance with the standards set forth in the Memorandum Opinion issued on this date.

JOHN D. BATES

United States District Judge

Dated: March 2, 2005