IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 04-1258 (SLR) |
| THE TRIZETTO GROUP, INC., | ) ) | |
| Defendant. | ) | |

**THE TRIZETTO GROUP INC.'S OPENING BRIEF IN SUPPORT OF ITS
MOTION TO EXCLUDE THE EXPERT TESTIMONY
OF MARGARET L. JOHNSON AND MARK A. MUSEN**

MORRIS, NICHOLS, ARSHT & TUNNELL
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
   Attorneys for Defendant
   The TriZetto Group, Inc.

OF COUNSEL:

Jeffrey T. Thomas
David A. Segal
Michael A. Sitzman
GIBSON, DUNN & CRUTCHER LLP
Jamboree Center, 4 Park Plaza
Irvine, California 92614-8557
(949) 451-3800

December 20, 2005

## TABLE OF CONTENTS

Page

TABLE OF CITATIONS                                                                    ii

NATURE AND STAGE OF PROCEEDINGS                                                       1

SUMMARY OF ARGUMENT                                                                   2

STATEMENT OF FACTS                                                                    3

I.      THE JOHNSON REPORT AND TESTIMONY                                             3

II.     THE MUSEN REPORT AND TESTIMONY                                               4

ARGUMENT                                                                             6

I.      LEGAL STANDARD FOR ADMISSIBILITY OF EXPERT
        OPINIONS                                                                     6

II.     THE FEDERAL CIRCUIT'S PRECEDENT FOR
        DETERMINING INFRINGEMENT OF PATENTS IN
        CONTEXT OF MEANS-PLUS-FUNCTION CLAIMS UNDER
        35 U.S.C. 112 (6)                                                            8

III.    MCKESSON'S PROFFERED EXPERT INFRINGEMENT
        TESTIMONY IS INADMISSIBLE, BECAUSE IT IS NEITHER
        RELIABLE NOR RELEVANT TO THIS CASE.                                          10

        A.      Margaret Johnson's Testimony Is Unreliable And Irrelevant
                Because It Fails To Follow The Methodology For
                Determining Infringement Mandated By The Federal
                Circuit.                                                             10

        B.      Mark Musen's Testimony Is Also Inadmissible Because It
                Fails To Follow The Methodology For Determining
                Infringement Mandated By The Federal Circuit.                        16

CONCLUSION                                                                           20

ii.

TABLE OF CITATIONS

Page(s)

Cases

*Altiris, Inc. v. Symantec Corp.,*
    318 F.3d 1363 (Fed. Cir. 2003) ................................................ 10

*Budde v. Harley-Davidson, Inc.,*
    250 F.3d 1369 (Fed. Cir. 2001) ................................................ 13

*Calhoun v. Yamaha Motor Corp., U.S.A.,*
    350 F.3d 316 (3d Cir. 2003) ................................................ 7

*Cytologix Corp. v. Ventana Med. Sys., Inc.,*
    __F.3d __, 76 U.S.P.Q.2d 1592 (Fed. Cir. 2005) ................................................ 9, 17

*Daubert v. Merrell Dow Pharms., Inc.,*
    509 U.S. 589 (1993) ................................................ 6, 7, 10, 15

*General Elec. Co. v. Joiner,*
    522 U.S. 136 (1997) ................................................ 7

*Harris Corp. v. Ericsson Inc.,*
    417 F.3d 1241 (Fed. Cir. 2005) ................................................ 9, 16

*In re Paoli R.R. Yard PCB Litig.,*
    35 F.3d 717 (3d Cir. 1994) ................................................ 7, 19

*In re TMI Litig.,*
    193 F.3d 613 (3d Cir. 1999) ................................................ 7, 8, 19

*Kumho Tire Co. v. Carmichael,*
    526 U.S. 137 (1999) ................................................ 6

*Mas-Hamilton Group v. LaGard, Inc.,*
    156 F.3d 1206 (Fed. Cir. 1998) ................................................ 9, 12, 13

*Medical Instrumentation & Diagnostics Corp. v. Elekta AB,*
    344 F.3d 1205 (Fed. Cir. 2003) ................................................ 9, 16

*Pennwalt Corp. v. Durand-Wayland, Inc.,*
    833 F.2d 931 (Fed. Cir. 1987) ................................................ 9, 12

*TechSearch, L.L.C. v. Intel Corp.,*
    286 F.3d 1360 (Fed. Cir. 2002) ................................................ 8

## TABLE OF CITATIONS (cont'd)

*United States v. Mitchell*,
    365 F.3d 215 (3d Cir. 2004)            passim

*WMS Gaming Inc. v. Int'l Game Tech.*,
    184 F.3d 1339 (Fed. Cir. 1999)        10, 15

<u>Statutes</u>

Fed. R. Civ. P. 26        1

Fed. R. Evid. 702 (2005)        6

Pursuant to the Court's February 18, 2005 Scheduling Order, defendant The TriZetto Group, Inc. ("TriZetto") hereby submits this brief in support of its motion to exclude the expert testimony proffered by plaintiff McKesson Information Solutions, LLC's ("McKesson") infringement experts, Margaret L. Johnson and Mark A. Musen.[1]

## NATURE AND STAGE OF PROCEEDINGS

On September 13, 2004, McKesson filed this suit against TriZetto alleging infringement of U.S. Patent No. 5,253,164 (the "'164 patent"). On October 1, 2004, McKesson amended its Complaint. On November 1, 2004, TriZetto answered and filed a counterclaim seeking a declaratory judgment of invalidity, unenforceability, and non-infringement.

McKesson alleges that three of TriZetto's products (Facets, ClaimFacts and QicLink) infringe fifteen claims of the '164 patent (Claims 1-6 and 8-16). Fact and expert discovery have been completed. The Court has bifurcated the issue of invalidity and stayed motion practice and trial on that issue. On the issues of infringement, damages and equitable defenses, motion practice is proceeding and scheduled for hearing on February 16, 2006, at which time the Court is also scheduled to consider any issues of claim construction. Trial on the issues of infringement, damages and equitable defenses is set for April 17, 2006. This is TriZetto's Opening Brief in support of its Motion to Exclude the Expert Testimony of Plaintiff's Experts, Margaret L. Johnson and Mark A. Musen.

---

[1]    This motion, as well as the expert reports of Dr. Johnson and Dr. Musen, focus exclusively on the issue of literal infringement. Because neither expert offered any opinions on infringement under the doctrine of equivalents during expert discovery, they are precluded from doing so in this case. Fed. R. Civ. P. 26.

## SUMMARY OF ARGUMENT

Neither of McKesson's infringement experts have performed a proper infringement analysis to offer an opinion that the accused products infringe the means-plus-function elements of the '164 patent. Although the asserted claims have 32 means-plus-function claim elements, neither of McKesson's infringement experts identified any structure in the patent specification that: (i) corresponds to the function claimed in the means-plus-function elements; *and* (ii) is identical to or equivalent with a specific structure found in the accused products that performs the identical function determined in step (i). Each expert has circumvented these requirements in different ways.

Margaret L. Johnson created her own algorithm to cover what she believed was the claimed functionality, and then analyzed whether the accused TriZetto products performed the functions of *her* algorithm. Mark A. Musen, on the other hand, was content to rely on the disclosure of "software" as the sole structure disclosed in the '164 patent corresponding to *every* means-plus-function claim element. By not identifying any specific software or algorithm, as required by the Court, Dr. Musen was left to conclude that "any software program" that performs the functions of the '164 patent must necessarily infringe.

Although each expert had their own unique approach to deal with the lack of structure disclosed in the '164 patent, neither expert disputes that he or she did not perform the four-step analysis required under Federal Circuit precedent to offer an opinion that the accused products infringe the patent. Because they failed to perform a structure-to-structure and function-to-function comparison, McKesson's infringement experts should be precluded from testifying in this action.

**STATEMENT OF FACTS**

I.       **THE JOHNSON REPORT AND TESTIMONY**

On October 21, 2005, McKesson expert Dr. Margaret L. Johnson submitted her report addressing the subject of patent infringement. *See* Ex. A (Expert Report of Dr. Margaret L. Johnson, Ph.D., dated October 21, 2005 ("Johnson Report")). On November 29, 2005, TriZetto took the deposition of Dr. Johnson ("Johnson Dep."). *See* Ex. B.

In her 14-page report, Dr. Johnson did not identify a single specific structure in the specification that corresponded to or was in any way linked to the means-plus-function claims asserted by McKesson. Other than a general assertion that the '164 patent describes a "software program," and that the '164 patent contains an implementation of the preferred embodiment at Appendix D, Dr. Johnson made no effort to identify any portion of the specification that purportedly disclosed the correspondence between the software and the function disclosed by each claim limitation or the specific algorithm purportedly disclosed in the specification. *See* Ex. B (Johnson Dep.), at 13; *see id.* at 35:12-36:7; *see also* D.I. 99 (Memorandum Order dated September 20, 2005).

Also absent from Dr. Johnson's report was a comparison of the patent claims at issue with the accused products. *See* Ex. B (Johnson Dep.), at 70:4-17. Dr. Johnson did not perform a structure-to-structure analysis, nor did she perform a function-to-function analysis. Instead, Dr. Johnson approached the infringement analysis by creating her own five-part algorithm that encompassed "some," but not all, of the functionality of the patent claims. Ex. A (Johnson Report), at 8. Dr. Johnson then compared her own algorithm to the function of the accused products. *Id.* at 30:21-31:1,

4.

39:21-25.  Dr. Johnson concluded that the "three TriZetto products have similar functionality to that described in the patent."  Ex. A (Johnson Report), at 5.

At her deposition, Dr. Johnson admitted that none of the patent claims at issue performed her entire algorithm (*id.* at 34:9-18), and that her algorithm omitted some functionality contained in the claims (*id.* at 62:21-63:4).  In looking at the accused products, Dr. Johnson admitted that she did not consider the specific functions of the claims, and instead focused her analysis exclusively on her own algorithm.  *Id.* at 57:1-14.  Dr. Johnson also acknowledged that she did not interpret several key claim terms, and as a result, did not consider the functions claimed in various asserted claim elements. *Id.* at 56:13-57:23; 65:13-66:2 ("mutually exclusive due to non-medical criteria"); 62:16-63:4, 109:21-110:2 ("medically exclusive"); 66:20-67:14 ("claims" versus "codes"); 107:13-23, 109:21-110:2.

Based on her analysis, Dr. Johnson concluded that all three accused products infringe all 15 asserted patent claims.

## II.    THE MUSEN REPORT AND TESTIMONY

Also on October 21, 2005, McKesson expert Dr. Mark A. Musen submitted a report opining that the TriZetto products infringe the 15 asserted claims of the '164 patent.  *See* Ex. C (Expert Report of Mark A. Musen ("Musen Report")), at 9.[2] In his 17-page report, Dr. Musen opines generally in fifteen conclusory paragraphs that the TriZetto products (without distinguishing between them) perform the functions of

---

[2]    Exhibits 1-5 of the Musen Report have been attached as Exhibits D-H to the Appendix of Exhibits in Support of TriZetto's Motion to Exclude Expert Testimony of Margaret L. Johnson and Mark A. Musen.

each patent claim at issue. *Id*. at 10-16. Repeatedly, Dr. Musen opines that "the structure of the computer system disclosed in the '164 patent for performing the function of each 'means for' element of this claim is included in, or is equivalent to, the structure of each product." *Id*. at 10-17.

Like Dr. Johnson, Dr. Musen fails to identify any specific structure in the patent specification that: (i) corresponds with any specific function claimed in the patent claims; and (ii) is identical or equivalent to a specific structure found in each of the accused products. Indeed, the closest that Dr. Musen gets to the subject of structure is to say that:

> Regarding the various "means for" elements in the claims, the '164 patent discloses software or a combination of software and hardware as the structure that performs the functions corresponding to these elements.

*Id*. at 8. Like Dr. Johnson, Dr. Musen also fails to perform a structure-to-structure comparison in support of his infringement opinion as required by Federal Circuit precedent. Instead, Dr. Musen's methodology relies entirely on: (i) excerpts from TriZetto's product literature; and (ii) deposition testimony of TriZetto's employees and customers regarding the function (and not the structure) of the TriZetto products.[3] *See generally* Exs. E-G (Musen Report, Exs. 2-4).

At his deposition on November 22, 2005, Dr. Musen admitted that he did not identify any specific structure in the specification corresponding to each of the

---

[3]     As set forth in TriZetto's Opening Brief in Support of its Motion for Summary Judgment of Non-infringement, filed December 15, 2005, TriZetto objects to the admission of the witness testimony cited in Dr. Musen's charts as the witnesses were non-lawyer employees of TriZetto and its customers. These witnesses were laypersons that did not have the benefit of the Court's claim construction ruling, or even, in some cases, a review of the patent prior to testifying.

means-plus-function claim elements in the patent. *See, e.g.*, Ex. I (Deposition of Mark A. Musen ("Musen Dep.")), at 302:5-14. Dr. Musen also admitted that he did not perform a structure-to-structure comparison between the '164 patent and the accused TriZetto products. *Id*. Specifically, Dr. Musen admitted that he did not "delve down to a lower level of granularity to dissect the [patent claims]." *Id*. at 301:1-13. Instead he was content to conclude that *any software program* that performs the functions of the '164 patent would infringe the patent. *Id*. at 302:16-20.

## ARGUMENT

### I.    LEGAL STANDARD FOR ADMISSIBILITY OF EXPERT OPINIONS

The admissibility of expert evidence in federal court is governed by Fed. R. Evid. 702, which provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702 (2005).

As interpreted by the Supreme Court, Rule 702 accords a district court with a "gatekeeping" responsibility in order to ensure that proffered expert testimony is both *reliable* and *relevant*. *See, e.g., Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 589, 597 (1993); *see also United States v. Mitchell*, 365 F.3d 215, 234 (3d Cir. 2004).

Following the well-established case law stemming from *Daubert* and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (extending *Daubert's*

gatekeeping obligation to all expert testimony, not just "scientific testimony"), the Third

Circuit has listed eight factors to determine the reliability of expert testimony:

> (1) whether a method consists of a testable hypothesis;
> (2) whether the method has been subject to peer review;
> (3) the known or potential rate of error; (4) the existence
> and maintenance of standards controlling the technique's
> operation; (5) whether the method is generally accepted;
> (6) the relationship of the technique to methods which have
> been established to be reliable; (7) the qualifications of the
> expert witness testifying based on the methodology; and
> (8) the non-judicial uses to which the method has been put.

*Mitchell*, 365 F.3d 215, 235; *see also Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d

316, 320-21 (3d Cir. 2003) (stating that these factors provide an ample starting point, but

that a court "may take into account any other relevant factors").

      In applying these "*Daubert* factors," courts must exclude opinion evidence

that is connected to existing data only by the expert's unsupportable assertions. *General

Elec. Co. v. Joiner*, 522 U.S. 136, 147 (1997).  The court's goal should be to determine

the reliability of a particular expert opinion through a preliminary assessment of the data

and methodologies underlying the opinion. *Daubert*, 509 U.S. at 592-93.  "[A]ny step

that renders the analysis unreliable under the *Daubert* factors renders the expert's

testimony inadmissible.  This is true whether the step completely changes a reliable

methodology or merely misapplies that methodology."  *In re Paoli R.R. Yard PCB Litig.*,

35 F.3d 717, 745 (3d Cir. 1994).

      Even if the methodology underlying the expert opinion is *reliable*, the

expert opinion must also be *relevant* to assisting the trier of fact in understanding the

evidence or the facts at issue. *Daubert*, 509 U.S. at 590.  "This requirement is one of

relevance, and expert evidence which does not relate to an issue in the case is not

helpful."  *In re TMI Litig.*, 193 F.3d 613, 670 (3d Cir. 1999) (*citing Daubert*, 509 U.S. at

591).  Where the assumptions in support of the proffered testimony are at odds with the actual facts of the case, the expert testimony may properly be excluded on the basis of irrelevance or lack of "fit."  *Id.* (excluding expert testimony on the basis of relevancy where the expert testimony was based on a model that was merely a "demonstration" and not intended to simulate the actual conditions at the time of the accident at issue in the case).  Expert evidence that is irrelevant is, therefore, inadmissible.  *Id.*  ("The expert's testimony must 'fit,' and admissibility depends, in part, on a connection between the expert opinion offered and the particular disputed factual issues in the case.").

## II.    THE FEDERAL CIRCUIT'S PRECEDENT FOR DETERMINING INFRINGEMENT OF PATENTS IN CONTEXT OF MEANS-PLUS-FUNCTION CLAIMS UNDER 35 U.S.C. 112 (6)

An infringement analysis involves two steps:  "1) claim construction; and 2) application of the properly construed claim to the accused product."  *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002).  An infringement analysis under 35 U.S.C. 112 (6) ("Section 112(6)") requires a four-step process which includes a structure-to-structure comparison of the accused device and the structure described in the specification of the asserted patent.  The patentee must:

(1)    Identify the claimed function of the element;

(2)    Identify the corresponding structure in the patent specification that performs the function;

(3)    Perform a function-to-function comparison to see if the accused products have the identical function as the claim element; and

> (4)     Perform a structure-to-structure comparison to see if the accused products have identical or equivalent structure that corresponds to the claim element.

See Medical Instrumentation & Diagnostics Corp. v. Elekta AB ("MIDCO"), 344 F.3d 1205, 1210-11 (Fed. Cir. 2003); Mas-Hamilton Group v. LaGard, Inc., 156 F.3d 1206, 1211-12 (Fed. Cir. 1998); see also Pennwalt Corp. v. Durand-Wayland, Inc., 833 F.2d 931, 934 (Fed. Cir. 1987) ("[T]he court must compare the accused structure with the disclosed structure, and must find equivalent structure as well as identity of claimed function for the structure.") (emphasis in original).

Infringement under Section 112(6) cannot be shown without proof that the structure in the accused product is identical or equivalent to the structure from the patent specification that corresponds with the function described in the claims.

> Infringement of a means-plus-function limitation requires that the relevant structure in the accused device be identical or equivalent to the corresponding structure in the specification. To establish infringement under § 112, ¶ 6, it is insufficient for the patent holder to present testimony "based only on a functional, not a structural, analysis." (internal citations omitted)

Cytologix Corp. v. Ventana Med. Sys., Inc., __F.3d __ , 76 U.S.P.Q.2d 1592, 1600 (Fed. Cir. 2005).

In the world of computer electronics and software patents, the Federal Circuit has held that the corresponding structure for "[a] computer-implemented means-plus-function term . . . is the algorithm" disclosed in the patent specification. Harris Corp. v. Ericsson Inc., 417 F.3d 1241, 1253 (Fed. Cir. 2005). Simply invoking the word "software" is not enough – the particular algorithm in the specification that performs the claimed function must be identified. As the Court stated in its September 20, 2005 Order,

the Federal Circuit has held a "computer-implemented means-plus-function term is limited to the corresponding structure disclosed in the specification and equivalents thereof, *and the corresponding structure is the algorithm.*"  D.I. 99 (emphasis added). *See also WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1348 (Fed. Cir. 1999) (holding that "[t]he structure of a microprocessor programmed to carry out an algorithm" is expressly disclosed in the patent specification); *Altiris, Inc. v. Symantec Corp.,* 318 F.3d 1363, 1375 (Fed. Cir. 2003) (holding that specific corresponding software structure from the patent specification be identified to support the means-plus-function element of "means of boosting said digital computer").

### III.    MCKESSON'S PROFFERED EXPERT INFRINGEMENT TESTIMONY IS INADMISSIBLE, BECAUSE IT IS NEITHER RELIABLE NOR RELEVANT TO THIS CASE

The testimony presented by McKesson's infringement experts is neither reliable nor relevant to this case, because the analysis performed and conclusions reached are completely contrary to the established precedent of the Federal Circuit.  Thus, the testimony of McKesson's infringement experts should be held inadmissible and excluded from trial.  *See, e.g., Daubert*, 509 U.S. at 597 (district court must act as "gatekeeper" and exclude expert testimony which does not "rest[] on a reliable foundation" or is "irrelevant to the task at hand").

#### A.    Margaret Johnson's Testimony Is Unreliable And Irrelevant Because It Fails To Follow The Methodology For Determining Infringement Mandated By The Federal Circuit

Dr. Johnson's testimony is unreliable because her opinions rest on an improper analysis of the patent claims.  In reaching her opinions, Dr. Johnson did not

perform or rely on the four-step infringement analysis of means-plus-function limitations. *See supra*.   Instead, she created her own five-part algorithm that is not disclosed anywhere in the patent.   *See* Ex. A (Johnson Report), at 5; Ex. B (Johnson Dep.), at 30:5-14.   Failing to find specific corresponding structure in the patent specification (step (2) above), Dr. Johnson invented her own algorithm that she believed embraced most, but not all, of the functionality expressed in the claims.   Dr. Johnson's need to invent her own algorithm underscores the lack of structure disclosed in the patent specification.

When questioned about her creative algorithmic approach, Dr. Johnson admitted that it was not based on the patent claims alone and explained the following:

Q.    First, can you explain to me what exactly you mean by "algorithm" as it's used in this section here?

A.    It is a high-level description of the processing.

*             *             *

A.    I defined the algorithm by analyzing the patent, all different parts of the patent.

*             *             *

Q.    The algorithm here, was that drawn from these patent claims?

A.    In part.

Q.    In part.   Okay.   And then also from other parts of the patent as well?

A.    Yes.

*             *             *

Q.    So this is designed to capture pretty much all of the functionality that's set out in the patent claims?

A.    In the patent claims and the descriptions elsewhere.

*             *             *

Q.       . . . [C]an you tell me if the algorithm pertains to any patent claim in particular?  Is there any one patent claim that it pertains to?

A.       The process I went through in defining this algorithm was to read through the claims, read through the entire patent and come up with a representation that describes the processing that is described here.  So there isn't any one particular claim that I would map to this.  It really was derived from the entire — the entire document.

*Id*. at 28:8-10, 29:15-16, 29:24-30:4, 30:12-14, 31:4-12.

Having invented her own algorithm, Dr. Johnson then compared her algorithm to the function of the accused TriZetto products, and concluded that the patent claims were infringed.  Ex. B (Johnson Dep.), at 30:21-31:1, 39:21-25 ("I used that algorithm to guide my search through the TriZetto products to see whether or not that algorithm was present.  And what is in my report are the places where I found that algorithm in the TriZetto products.").

Dr. Johnson did not perform a function-to-function comparison (step (3) above),[4] and she did not perform a structure-to-structure comparison (step (4) above).  Ex. B (Johnson Dep.), at 70:4-17 ("Q. [T]here isn't a claim-to-product comparison specifically anywhere in your report, is there?  A. No.");[5] *see Pennwalt*, 833 F.2d 931,

---

[4]     When she did discuss functionality, Dr. Johnson used the wrong infringement standard, concluding that the TriZetto Products "have *similar functionality* to that described in the patent."  Ex. A (Johnson Report), at 5.  Under Federal Circuit precedent, the functionality must be *identical* in order to infringe.  *See Mas-Hamilton*, 156 F.3d at 1211-12 ("[T]he accused device [must] perform an identical function to the one recited.").

[5]     Dr. Johnson's testimony suggests that the patent specification may not actually disclose specific structure supporting the means-plus-function elements. Dr. Johnson characterized the specification as follows:  "All that's defined in the specification is that the software is supported by commercially-available database management systems, and there is really no other limitation on what the software must do.  There's no description of constructs or specific algorithms that the software must perform in order to do the functions specified in the claims."  Ex. B

(continued . . .)

934 (Fed. Cir. 1987).  Instead, she took a new approach:  an invented algorithm-to-function comparison, and concluded that the TriZetto products infringe the '164 patent.

Dr. Johnson's methodology is entirely unreliable and inadmissible.  Her algorithmic approach, created specifically for her analysis in this case, is not an approach recognized by any Federal Circuit precedent addressing infringement of Section 112(6) claims.  Indeed, Dr. Johnson's methodology in eliminating steps 2–4 of the infringement analysis and substituting her own model comparison is contrary to Federal Circuit precedent.  Dr. Johnson's approach to Section 112(6) claims is not a testable hypothesis; it is not subject to peer review; it has no known rate of error; it uses no standards to control operation of creating an algorithm; and is not generally accepted in the patent law context.  *See Mitchell*, 365 F.3d at 235 (providing non-exhaustive list of factors to use to determine reliability of expert testimony).  Dr. Johnson's analysis and methodology is contrary to black-letter patent law that an infringement analysis must compare each element of the asserted claims to the accused product.  *Mas-Hamilton*, 156 F.3d at 1211 ("To prove literal infringement, the patentee must show that the accused device contains every limitation in the asserted claims.") (internal citations omitted); *Pennwalt*, 833 F.2d at 934 ("If even one limitation is missing or not met as claimed, there is no literal

---

(. . . continued)

      (Johnson Dep.), at 36:8-25.  She also stated:  "What I did in my report was, as I mentioned earlier, went through the patent and analyzed the claims and all parts of the patent to define this algorithm.  And the reason why I focused on defining an algorithm was because the structure that was defined in the patent was so general that an algorithm was easier for me to hold in my head as I analyzed the source code."  *Id.* at 39:14-20.  This might explain why McKesson and its experts have declined to identify specific structure – such structure does not exist in the patent for all means-plus-function elements, rendering those claims invalid.  *See Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369 (Fed. Cir. 2001).

14.

infringement."). Thus, Dr. Johnson's methodology is unreliable and her testimony should be excluded under *Daubert* and the various *Mitchell* factors.

Moreover, Dr. Johnson's self-created algorithm is inconsistent with the patent claims themselves. Dr. Johnson admits that her own algorithm is different in some respects from each of the claims in the patent. At her deposition, Dr. Johnson admitted that none of the patent claims perform her entire algorithm. Ex. B (Johnson Dep.), at 34:9-18. Moreover, her algorithm omits some functionality contained in the claims. *Id.* at 62:21-63:4. Dr. Johnson admits that she did not consider the specific functions found in the claims when she looked at the accused products; instead, she considered her more general algorithm. *Id.* at 57:1-14. For example, Dr. Johnson did not include the specific function of determining whether two medical service codes are "mutually exclusive due to non-medical criteria," found in Claims 2 and 14, in her algorithm. *Id.* at 56:13-57:23, 65:13-66:2. Nor did she consider the function of determining whether medical service codes are "medically exclusive," found in Claim 12. *Id.* at 62:16-63:4, 109:21-110:2. The same is true for the functions of authorizing and rejecting medical *claims*, as distinct from codes, found in Claims 15 and 16. *Id.* at 66:20-67:14. Indeed, Dr. Johnson did not even venture to interpret some of the claim terms, as would be necessary to analyze those functions (e.g., "mutually exclusive due to non-medical criteria" and "medically exclusive"). *Id.* at 107:13-23, 109:21-110:2.

Apart from her algorithm, the only other reference that Dr. Johnson makes in her report to anything that could be interpreted as structure is a single reference to Appendix D: "Appendix D of the '164 patent contains an implementation of the preferred embodiment, including the algorithm discussed above, written in a

programming language called Clipper."  Ex. A (Johnson Report), at 13.  However, she makes no effort to identify specific supporting structure in Appendix D and instead refers only generally to "software" as providing structure.  At her deposition, Dr. Johnson testified:  "[W]here we have a 'means for' type of language in the claim, there's a function defined in those – in the claim language, and the structure associated with those is *software*."  Ex. B (Johnson Dep.), at 35:12-36:7 (emphasis added).  Beyond simply invoking "software" in a general sense, Dr. Johnson did not identify any supporting structure for the means-plus-function elements.[6]  *See, e.g., id.* at 47:20-48:9 ("Q. [D]id you identify any structure from the specification that supports that function?   A. Software.   Q. Just software generally?   A. Yes.").   Merely asserting that the corresponding structure is "software" is not enough to save Dr. Johnson's opinions.  *See Harris*, 417 F.3d at 1249.  In the context of software patents, corresponding structure must be a specific algorithm expressly disclosed in the patent specification.  *See WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1349 (Fed. Cir. 1999); *see also Harris*, 417 F.3d at 1254 ("*WMS Gaming* restricts computer-implemented means-plus-function terms to the algorithm disclosed in the specification.").

Accordingly, Dr. Johnson's testimony should be excluded as inadmissible, unreliable and irrelevant.  *See Daubert*, 509 U.S. at 597; *Mitchell*, 365 F.3d at 235.

---

[6]     Dr. Johnson also ignored McKesson's own claim construction, which contains broad citations to the specification, none of which are discussed in Dr. Johnson's report.  *See* D.I. 148 (Joint Statement of Disputed Claim Terms and Proposed Constructions); *see also* footnote 7, *infra*.

**B.     Mark Musen's Testimony Is Also Inadmissible Because It Fails To Follow The Methodology For Determining Infringement Mandated By The Federal Circuit.**

Like that of Dr. Johnson, Dr. Musen's report and testimony fails to follow the four-step infringement analysis required under established Federal Circuit precedent. Because Dr. Musen's testimony is based on methodology contrary to that mandated by the Federal Circuit, it is *unreliable* as evidence. *See, e.g., Mitchell*, 365 F.3d at 235 (listing acceptability of methodology among eight factors to determine reliability of expert testimony). Furthermore, because Dr. Musen's testimony is based on faulty assumptions and conclusory opinions, it is *irrelevant* as evidence in this case.

In his report, Dr. Musen generally identifies "software" as the structure in the '164 patent that corresponds to every one of the 32 means-plus-function claim limitations. Under Federal Circuit law, an infringement analysis requires, among other items, an identification of the corresponding structure to the functions of the patent's claims, and a comparison of that structure to the structure of the accused product. *See MIDCO*, 244 F.3d at 1210. Merely asserting that the corresponding structure is "software" is not enough. *See Harris*, 417 F.3d at 1249.

Here, Dr. Musen's opinion on the subject of corresponding structure is relegated to two sentences in his report:

> Regarding the various 'means for' elements in the claims, the '164 patent discloses software or a combination of software and hardware as the structure that performs the functions corresponding to these elements. Indeed, in a computer system or computer implemented method, each function associated with the 'means for' elements must necessarily be performed by software or software and related hardware.

17.

Ex. C (Musen Report), at 8.[7]

In deposition testimony, Dr. Musen stated repeatedly his belief that no further identification beyond software was needed. *See* Ex. I (Musen Dep.), at 102:8-13. ("Q.  Where in your report, MM-1, is the structure identified that corresponds to the function that I just read into the record?  A.  The structure is software.  My understanding in this case is that it is sufficient to say that the function is implemented in software."); 102:22-24 (agreeing that the Musen Report does not call out exactly *what* software is used); and 302:5-14 (expressing Musen's belief that no further analysis or more detailed identification of structure was necessary).

Like Dr. Johnson, Dr. Musen's methodology for analyzing infringement of the '164 patent runs contrary to established case law.  As the Federal Circuit has repeatedly reaffirmed, testimony based solely on a functional, rather than a structural analysis, does not establish infringement.  *Cytologix*, 76 U.S.P.Q.2d at 1600.  Dr. Musen admitted that he did not attempt to find structure in the TriZetto products.  Ex. I (Musen Dep.), at 302:5-14.  In fact, his report does not contain a structure-to-structure comparison matching the patent structure to any TriZetto product.  *Id*. at 323:21-324:16.

> Q.   Since you haven't seen or looked at the TriZetto source code or the TriZetto products . . . I'm assuming, then, that you don't know that the TriZetto products have the same structure or similar structure to what is described in the patent?

[7]   As with Dr. Johnson, Dr. Musen's report fails to use, discuss or explain McKesson's *own* identification of structure in support of its infringement analysis.  *See* Ex. H (Musen Report, Ex. 5) (attaching the parties' preliminary Proposed Claim Construction statement from October 11, 2005 containing McKesson's identification of corresponding structure).

> A. I know they're software systems. If the requisite definition of structure is – is simply software, then the TriZetto products must embody the principles of the patent in software as their structure.

Ex. I (Musen Dep.), at 109:1-9.

Based on this assumption, Dr. Musen believed that he did not need to consider the structure of the TriZetto products beyond the fact that they are "software." *Id.* at 302:5-14 ("I do not believe it was necessary to go to a lower level of granularity to ascertain those specific components . . . [b]ecause if the function needed to be reproduced and the testimony and the . . . product literature suggests that it was *and the structure was clearly software*, then my job was done.") (emphasis added). In fact, Dr. Musen acknowledged that he did not review the TriZetto source code and did not feel any review of TriZetto's source code was necessary in conducting his infringement analysis. *Id.* at 30:4-9.

The entirety of Dr. Musen's infringement analysis consists of a series of fifteen conclusory paragraphs (one for each asserted claim) stating that the TriZetto products perform the functions of each patent claim. Ex. C (Musen Report), at 10-16. In each paragraph, Dr. Musen recites the functional language of the claim and states that the TriZetto products includes "software" and/or "hardware" for performing that function. *Id.* at 10-12. Based on this purely *functional* comparison, and in direct contradiction to the Federal Circuit's holding in *Cytologix*, Dr. Musen concludes that the TriZetto products infringe each of the asserted patent claims. *Id.* at 10-16. By failing to identify the structure corresponding to the asserted means-plus-function claim elements *and* perform a structure-to-structure comparison, Dr. Musen has engaged in an unreliable analysis contrary to established case law. *See Mitchell*, 365 F.3d at 235 (noting that such evidence must be excluded).

Dr. Musen's functional analysis, in fact, does not even examine the accused products directly. Dr. Musen functional comparison is relegated solely to: (1) excerpts from TriZetto's product documents regarding functional features; and (2) deposition testimony given by TriZetto employees and customers regarding the function of the TriZetto products. *See* Exs. E-G (Musen Report, Exs. 2-4); *see also* Ex. I (Musen Dep.), at 31:4-15. Dr. Musen further admits that he relied on Dr. Johnson's report to evaluate the functionality of the TriZetto products. Ex. I (Musen Dep.), at 30:16-20. By basing his evaluation solely on third-hand evidence of the functionality of the TriZetto products and failing to evaluate TriZetto's proffered source code for equivalency of structure, Dr. Musen has failed to demonstrate a "fit" between his testimony and the facts of this case. *See In re TMI Litig.*, 193 F.3d at 670. As a result, Dr. Musen's opinion is unsupportable – that is, it is unreliable and irrelevant to the case.

In sum, Dr. Musen's report and testimony rely solely on TriZetto's product literature, deposition testimony of laypersons, and Dr. Johnson's analysis of functionality in its conclusory opinion that TriZetto infringes the '164 patent. Dr. Musen's assumption, contrary to Federal Circuit precedent, that "any software" serves as corresponding structure to the claims of the '164 patent renders his opinion and testimony unreliable and irrelevant. *See In re TMI Litig.*, 193 F.3d at 670 (excluding expert testimony on the basis of relevancy is appropriate where the testimony was based on a model contrary to the facts of the case). Dr. Musen further admits that he did not identify any corresponding structure in the '164 patent, or compare that structure to the structure of TriZetto's products. As a result, Dr. Musen's testimony is unreliable and irrelevant under *Daubert* and should be excluded in this case. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 745

(noting that any step that renders the analysis unreliable under *Daubert* renders the expert's testimony inadmissible).

## **CONCLUSION**

The testimony of McKesson's infringement experts, Dr. Margaret Johnson and Dr. Mark Musen, should be excluded.  Both Dr. Johnson and Dr. Musen fail to follow the well-established methodology for determining infringement of means-plus-function claims as mandated by the Federal Circuit.  By failing to identify corresponding structure in the '164 patent specification, and comparing that structure to the structure of the allegedly infringing products, Drs. Johnson and Musen stray from required methodology.  As such, their testimony on infringement is both unreliable and irrelevant, and under *Daubert* should be excluded in this case.

MORRIS, NICHOLS, ARSHT & TUNNELL

*/s/ Rodger D. Smith II (#3778)*
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
   Attorneys for Defendant
   The TriZetto Group, Inc.

OF COUNSEL:

Jeffrey T. Thomas
David A. Segal
Michael A. Sitzman
GIBSON, DUNN & CRUTCHER LLP
Jamboree Center, 4 Park Plaza
Irvine, California 92614-8557
(949) 451-3800

December 20, 2005
498700

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on December 20, 2005, I caused to be electronically filed the **The TriZetto Group Inc.'s Opening Brief In Support Of Its Motion To Exclude The Expert Testimony Of Margaret L. Johnson and Mark A. Musen** with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Thomas J. Allingham, II
> Skadden, Arps, Slate, Meagher & Flom LLP

I also certify that copies were caused to be served on December 20, 2005, upon the following in the manner indicated:

> <u>**BY HAND**</u>
>
> Thomas J. Allingham, II
> Skadden, Arps, Slate, Meagher & Flom LLP
> One Rodney Square
> Wilmington, DE  19801
>
> <u>**BY EMAIL**</u>
>
> Jeffrey G. Randall
> Skadden, Arps, Slate, Meagher & Flom LLP
> 525 University Avenue
> Suite 1100
> Palo Alto, CA  94301

> */s/ Rodger D. Smith II (#3778)*
> Morris, Nichols, Arsht & Tunnell
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE  19899
> (302) 658-9200
> rsmith@mnat.com