IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE TRIZETTO GROUP, INC., ) <br> ) <br> Defendant. ) <br> ) | CIVIL ACTION NO. 04-1258-SLR |

**PLAINTIFF MCKESSON INFORMATION SOLUTIONS LLC'S
OPENING BRIEF IN SUPPORT OF ITS MOTION TO
EXCLUDE AND STRIKE THE NON-INFRINGEMENT OPINIONS OF
<u>TRIZETTO'S EXPERT WITNESS DR. RANDALL DAVIS</u>**

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff
McKesson Information Solutions LLC

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500

DATED: December 20, 2005

## TABLE OF CONTENTS

**PAGE**

I. STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS ..................................................................................................1

II. SUMMARY OF ARGUMENT ........................................................................................2

III. STATEMENT OF FACTS ..............................................................................................4

IV. RELEVANT LEGAL STANDARDS ..............................................................................6

V. ARGUMENT....................................................................................................................7

    A. Dr. Davis's Non-Infringement Opinions Should Be Excluded To The Extent They Are Based On Functionality Of The Accused Systems Not Required For Infringement Of The '164 Patent ......................7

    B. Dr. Davis's Non-Infringement Opinions Should Be Excluded Because He Used Different Claim Constructions To Assess Non-Infringement And Invalidity .................................................................................10

    C. Dr. Davis's Non-Infringement Opinions Should Be Excluded Because He Did Not Evaluate The '164 Patent Claims From The Perspective Of One Of Ordinary Skill In The Art ..........................................12

    D. Dr. Davis's Non-Infringement Opinions Should Be Stricken To The Extent They Rely On Flowcharts Not Provided To McKesson During Fact Discovery .................................................................................13

    E. Dr. Davis's Non-Infringement Opinions Should Be Stricken To The Extent They Rely On Demonstrations Of The Accused Products Not Provided To McKesson........................................................15

VI. CONCLUSION...............................................................................................................17

# TABLE OF AUTHORITIES

**CASES**   **PAGE(S)**

*A.B. Dick Co. v. Burroughs Corp.,*
713 F.2d 700 (Fed. Cir. 1983) ................................................................................ 9

*AFG Indus., Inc. v. Cardinal IG Co., Inc.,*
239 F.3d 1239 (Fed. Cir. 2001) ............................................................................. 9

*Am. Stock Exch., LLC v. Mopex, Inc.,*
215 F.R.D. 87 (S.D.N.Y. 2002) ............................................................................ 7

*Daubert v. Merrell Dow Pharms., Inc.,*
509 U.S. 579 (1993) .............................................................................................. 6

*Eaton Corp. v. Rockwell Int'l Corp.,*
323 F.3d 1332 (Fed. Cir. 2003) ........................................................................... 12

*Globespanvirata, Inc. v. Texas Instruments, Inc.,*
C.A. No. 03-2854, 2005 U.S. Dist. LEXIS 16348 (D.N.J. Jul. 11, 2005) ...... 14, 15

*Innovad, Inc. v. Microsoft Corp.,*
260 F.3d 1326 (Fed. Cir. 2001) ............................................................................ 9

*Izumi Prods. Co. v. Koninklijke Philips Elec. N.V.,*
315 F. Supp. 2d. 589 (D. Del. 2004) ..................................................................... 6

*Oxford Gene Tech. Ltd. v. Mergen Ltd.,*
345 F. Supp. 2d 431 (D. Del. 2004) ...................................................................... 6

*Phillips v. AWH Corp.,*
415 F.3d 1303 (Fed. Cir. 2005) ........................................................................... 12

*Praxair, Inc. v. ATMI, Inc.,*
231 F.R.D. 457 (D. Del. 2005) ............................................................. 6, 7, 13, 14

**STATUTES**

FED. R. CIV. P. 26(a)(2)(B) ...................................................................................... 15

FED. R. CIV. P. 37(c)(1) ....................................................................................... 7, 15

Pursuant to the Scheduling Order in this case, plaintiff, McKesson Information Solutions LLC ("McKesson"), respectfully submits this opening brief in support of its motion to exclude and strike the non-infringement opinions of Dr. Randall Davis, one of defendant The TriZetto Group, Inc.'s ("TriZetto") experts.

I.  **STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS**

McKesson filed this lawsuit against TriZetto on September 13, 2004, and asserted that TriZetto infringed McKesson's U.S. Patent No. 5,253,164 ("the '164 patent") by making, using, selling and offering to sell three infringing software products: Facets, QicLink, and ClaimFacts ("Accused Systems"). (D.I. 1.) McKesson has asserted that TriZetto infringes all 16 claims of the '164 patent except claim 7, which deals with medical service codes that are no longer widely used.

The case has been bifurcated by the Court and issues relating to alleged patent invalidity have been stayed. (D.I. 132.) Issues relating to infringement, willfulness, and damages are set for trial on April 17, 2006, with a bench trial on equitable issues following afterwards. (D.I. 145.)

Expert discovery was completed on November 30, 2005, as ordered by the Court. The parties filed summary judgment motions and claim construction statements on December 15, 2005. The Court has not yet ruled on the claim construction disputes.

During fact discovery, TriZetto's customers, designees, and executives admitted that the Accused Systems infringe all of the '164 patent claims asserted by McKesson. TriZetto retained Dr. Davis as an expert witness to opine that the '164 patent was not infringed by the Accused Systems and that the asserted claims of the '164 patent are

invalid in light of the prior art. By this motion, McKesson moves to exclude and strike Dr. Davis's non-infringement opinions.

## II. SUMMARY OF ARGUMENT

*First*, Dr. Davis's opinions do not meet the requirements for admissibility under Rule 702 and should be excluded for at least the following reasons:

1. Dr. Davis's non-infringement opinion is based in part on additional functionality of the Accused Systems that is not required to infringe the asserted claims of McKesson's '164 patent. Thus, Dr. Davis bases his non-infringement opinion on the following arguments:

(a) the Accused Systems include other claims processing functionality in addition to the infringing clinical editing functionality;

(b) the Accused Systems perform additional clinical editing steps in connection with the unbundling process that are not included in the asserted claims;

(c) in addition to performing clinical editing on single claims containing multiple medical service codes, the Accused Systems perform clinical editing on claims containing only a single code and across multiple claims that might have been submitted for a patient; and

(d) the Accused Systems perform additional claims processing functions after completing the clinical editing function before determining to authorize or reject a claim.

All of the asserted claims of the '164 patent are open-ended "comprising" claims. Under these circumstances, settled Federal Circuit precedent holds that "[i]t is fundamental that one cannot avoid infringement merely by adding elements if each element recited in the

claims is found in the accused device." Thus, to the extent that Dr. Davis's non-infringement opinion is based on additional functionality of the Accused Systems not required to infringe the asserted claims of the '164 patent, his opinion is legally irrelevant and will not assist the trier of fact in determining TriZetto's infringement of the '164 patent.

2. Dr. Davis did not apply the same claim construction in connection with his non-infringement and invalidity opinions. The Federal Circuit has held that "[i]t is axiomatic that claims are construed the same way for both invalidity and infringement." Dr. Davis's failure to apply a consistent claim construction renders his opinions legally irrelevant and unable to assist the trier of fact in determining TriZetto's infringement of the '164 patent.

3. Dr. Davis also did not evaluate infringement applying a consistent definition of a "person of ordinary skill in the art" as relates to the '164 patent. Infringement must be evaluated from a perspective of one of ordinary skill in the art. Dr. Davis's testimony indicates that he was unsure of the proper standard and he used differing standards at various points in time. Dr. Davis's failure to apply a consistent standard on this issue renders his opinions legally irrelevant and unable to assist the trier of fact in determining TriZetto's infringement of the '164 patent.

*Second*, the Court should strike the portions of Dr. Davis's opinions based on his reliance on materials not previously provided to McKesson.

1. Dr. Davis's opinions are based on TriZetto flowcharts for the Accused Products requested by McKesson as early as December 2004. TriZetto improperly chose not to produce these documents to McKesson prior to the close of fact discovery in

September 2005. TriZetto's failure to produce these flowcharts to McKesson during fact discovery violates the Federal Rules of Civil Procedure and TriZetto should be precluded from relying on this evidence in any way.

    2.    Dr. Davis's opinions are also based on demonstrations of the Accused Products that have not been provided to McKesson. TriZetto's failure to provide these demonstrations to McKesson violates the Federal Rules of Civil Procedure and TriZetto should be precluded from relying on this evidence. Further, the Court should order TriZetto to provide McKesson with immediate access to the product demonstrations to limit the prejudice McKesson already has suffered.

### III.   STATEMENT OF FACTS

TriZetto hired Dr. Davis to provide opinions that the '164 patent is invalid and that the Accused Systems do not infringe the claims of the '164 patent. Dr. Davis has been paid to testify in over 30 cases and is also using his personal knowledge regarding the operation of the prior art to support his contentions that the '164 patent is invalid. (Ex. C at 2 and 11 n.6.)[1] Dr. Davis's opening expert report focused on invalidity, an issue that has been stayed by the Court.

Dr. Davis's rebuttal report addresses the Accused Systems' infringement of the '164 patent claims. As discussed in detail below, Dr. Davis bases his non-infringement on functionality of the Accused Systems that is not required for infringement of the asserted claims of the '164 patent. Dr. Davis also appears to have used different claim constructions in connection with his non-infringement and invalidity opinions (Ex. A at

---

[1] Citations to Ex. ___ are to the exhibits attached to the Declaration of Michael A. Barlow In Support of Plaintiff McKesson Information Solutions LLC's Motion to Exclude And Strike The Non-Infringement Opinions of TriZetto's Expert Witness Dr. Randall Davis.

4

241:25-242:9), and an inconsistent meaning of an ordinarily skilled artisan within the meaning of the '164 patent. (*Id.* at 206:2-21; 211:10-23.) These errors render Dr. Davis's non-infringement opinions legally irrelevant.

Dr. Davis also relied on evidence that should have been provided to McKesson but was not. This evidence includes "flowcharts for the TriZetto products . . . ." (Ex. B at 31; *see also id.* at 33-34 & Ex. B.) The flowcharts are one of a few documents that were given to Dr. Davis by TriZetto to determine operation of the Accused Systems. (Ex. A at 267:24-268:3.) Although requested by McKesson as early as December 2004 (Ex. D, Requests 41 & 42), TriZetto did not provide McKesson with the flowcharts prior to the close of fact discovery. TriZetto's strategic decision to withhold these documents precluded McKesson from questioning TriZetto's customers, designees and executives about these documents during depositions. It also precluded McKesson's infringement experts from using or even considering these documents in connection with their reports.

Dr. Davis also based his non-infringement opinions on demonstrations of the Accused Products and certain screen shots from the demonstrations. (Ex. B at 27-30; Ex. A at 260:7-23.) TriZetto also has not provided McKesson with these product demonstrations. TriZetto's failure in this regard is particularly egregious given the many months that McKesson has unsuccessfully tried to obtain working versions of the Accused Systems from TriZetto. Again, TriZetto's failure to provide the demonstration relied upon by Dr. Davis and working versions of the Accused Systems seriously prejudiced McKesson in connection with fact and expert discovery.

IV.  **RELEVANT LEGAL STANDARDS**

The Court may properly exclude expert opinions and opinion testimony as inadmissible for failure to comply with (1) Federal Rule of Evidence 702, or (2) the Court's discovery deadlines and scheduling orders. *See Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 434 (D. Del. 2004) ("Federal Rule of Evidence 702 obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable."); *Praxair, Inc. v. ATMI, Inc.*, 231 F.R.D. 457, 463 (D. Del. 2005) ("As a sanction for failure to comply with the scheduling order in this case, the court is authorized to exclude evidence proffered by the disobedient party.").

With regard to Rule 702, "[t]he subject of an expert's testimony must be grounded in the methods and procedures of science and based on more than a subjective belief or speculation." *Oxford*, 345 F. Supp. 2d at 434. "The Third Circuit has construed Rule 702 as embodying 'three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability and fit.'" *Izumi Prods. Co. v. Koninklijke Philips Elec. N.V.*, 315 F. Supp. 2d 589, 600 (D. Del. 2004) (quoting *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000)); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993). Under the "fit" requirement Rule 702, the proposed expert's testimony must (i) be relevant to the issues in the case, and (ii) assist the trier of fact. *See, e.g., Izumi Prods.*, 315 F. Supp. 2d at 601. The party offering the expert testimony — here TriZetto — has the burden to prove that the proposed expert testimony is admissible, including the burden of proving that the proposed testimony will assist the trier of fact to decide factual issues. *See, e.g., id.; Oxford*, 345 F. Supp. 2d at 434.

6

With regard to failure to comply with discovery deadlines and scheduling orders, Federal Rule of Civil Procedure 37(c)(1) provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." FED. R. CIV. P. 37(c)(1). "Rule 37(c)(1)'s preclusionary sanction is 'automatic' absent a determination of either 'substantial justification' or 'harmlessness.' ... The burden to prove substantial justification or harmlessness rests with the dilatory party." *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002) (citations omitted).

As this Court has recently made clear in *Praxair*:

> [F]idelity to the constraints of Scheduling Orders and deadlines is critical to the Court's case management responsibilities. The flouting of discovery deadlines causes substantial harm to the judicial system. As a sanction for failure to comply with the scheduling order in this case, the court is authorized to exclude evidence proffered by the disobedient party.

251 F.R.D. at 463 (internal citations and quotations omitted).

## V. ARGUMENT

### A. Dr. Davis's Non-Infringement Opinions Should Be Excluded To The Extent They Are Based On Functionality Of The Accused Systems Not Required For Infringement Of The '164 Patent

Dr. Davis's non-infringement opinions are based on additional functionality of the Accused Systems that is not required for infringement of the asserted claims of the '164 patent.[2]

---

[2] For purposes of this motion only, McKesson does not challenge Dr. Davis's inaccurate positions concerning claim construction. Based on the Court's order staying invalidity issues, McKesson also reserves its right to later challenge Dr. Davis's invalidity opinions.

7

For example, Dr. Davis opines that "[w]here the '164 system is focused on clinical editing, the TriZetto products do the entire scope of claims adjudication, starting with the basic data validation, eligibility verification, provider verification, and so forth, eventually coming to clinical editing, then continuing on to medical utilization analysis, pricing and payment." (Ex. B at 31.) Dr. Davis also opines that "where the '164 system examines only the current claims, the TriZetto systems make use of both a current and prior claims database." (*Id.* (citation omitted).) In addition, Dr. Davis opines that "the TriZetto products check all claims against the diagnosis box[.] This is a relation between a medical service code and a diagnosis, which is not part of what the '164 patent claims." (*Id.* at 32 (citation omitted).)

Dr. Davis also opines that the Accused Systems perform additional steps in connection with the "rebundling" type clinical edits described and claimed in the '164 patent that are not required by the asserted claims of the patent. Thus, Dr. Davis opines that, although the claims of the '164 patent address "authorizing, rejecting, and/or deleting" medical service codes, they "do not mention either the addition of or the replacement of codes." (*Id.* at 21.)

Dr. Davis also bases his non-infringement opinion on the argument that the Accused Systems perform clinical editing across multiple medical claims and on medical claims with single codes, neither of which he believes to be covered by the claims of the '164 patent. (*Id.* at 24-27.) Dr. Davis does not dispute, however, that the Accused Systems also perform clinical editing on single claims containing multiple codes.

As his final example of additional superfluous features of the Accused Systems relied upon by Dr. Davis in connection with his non-infringement opinion, Dr. Davis

8

opines that the Accused Systems include additional steps after the clinical editing functionality before medical claims are authorized or rejected. (*Id.* at 34 ("[c]linical editing is only one part of a much larger process").) Dr. Davis opines that the inclusion of these additional steps in the Accused Systems avoids infringement of claims 15 and 16 of the '164 patent. (*Id.* at 34.)

All of the asserted claims of the '164 patent are open-ended "comprising" claims.[3] Under these circumstances, settled Federal Circuit precedent holds that "[i]t is fundamental that one cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device." *See A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 703 (Fed. Cir. 1983). The Federal Circuit has "consistently held that the word 'comprising' is an open transition phrase." *AFG Indus., Inc. v. Cardinal IG Co., Inc.*, 239 F.3d 1239, 1245 (Fed. Cir. 2001). "When a claim uses an 'open' transition phrase, its scope may cover devices that employ additional, unrecited elements." *Id.* at 1244; *Innovad, Inc. v. Microsoft Corp.*, 260 F.3d 1326, 1333 (Fed. Cir. 2001).

Thus, to the extent that Dr. Davis bases his non-infringement opinion on additional functionality of the Accused Systems not required for infringement of the asserted claims, his opinion is legally irrelevant and will not assist the trier of fact in determining TriZetto's infringement of the '164 patent. Dr. Davis's opinion should therefore be excluded.

---

[3] For example, like all the asserted claims, claim 3 provides: "A computer system including a central processing unit and associated memory for processing input claims containing at least one medical service code, ***comprising***:" (D.I. 1 (emphasis added).)

9

### B.     Dr. Davis's Non-Infringement Opinions Should Be Excluded Because He Used Different Claim Constructions To Assess Non-Infringement And Invalidity

In response to questioning by McKesson's counsel during his deposition, Dr. Davis testified that he did not know whether he used the same claim construction in connection with his non-infringement and invalidity opinions:

> Q.    Did you apply a narrower claim scope or broader claim scope or the same claim scope to your opinions regarding validity and infringement?
>
> \*\*\*
>
> A.    I'm sorry, I guess, as I sit here, I don't know the answer to that question, whether I specifically tried to make it narrower or broader or the same.

(Ex. A at 241:25-:242:9.) Although Dr. Davis attempted to change this testimony later in his deposition in response to questioning by TriZetto's counsel (*Id.* at 309:12-25), the evidence shows that Dr. Davis in fact used different constructions in connection with his non-infringement and invalidity analyses.

For example, Dr. Davis clearly used different claim constructions when construing the means-plus-function elements in conducting his infringement and invalidity analysis. Dr. Davis's rebuttal report repeatedly criticizes McKesson's infringement experts' opinions for failing to identify sufficient "structure" for the means-plus-function elements.[4] For example, Dr. Davis testified that it was necessary to review source code to determine whether the Accused Systems infringe the '164 patent claims

---

[4] Again, while McKesson does not agree with Dr. Davis's claim construction arguments, McKesson will not challenge those arguments in connection with this motion.

10

(*Id.* at 274:1-5), and he criticizes McKesson's experts for purportedly failing to identifying in the source code exactly where the claim elements are located.

Consistent with his opinion that the Accused Systems' source code must be analyzed in connection with a determination of infringement, Dr. Davis also testified that infringement cannot be determined based on marketing material:

> Q. Isn't it true that one can determine whether or not TriZetto infringes the -- any claim of the patent by simply reviewing a marketing brochure for any one of the three accused systems?
>
> A. Not to my understanding, no.
>
> Q. Why not?
>
> A. I don't believe you can determine, for example, whether the system ascertains whether a claim contains a plurality ... a plurality of service codes by looking at the marketing brochure.

(*Id.* at 274:20-275:6.)

Dr. Davis did not use this strict interpretation of the means-plus-function elements in connection with this invalidity opinion. Indeed, the terms means-plus-function or "structure" relating to source code are found nowhere in Dr. Davis's opening report on invalidity. In stark contrast to his non-infringement analysis and opinions, Dr. Davis did not examine source code for virtually any of the prior art references he relies upon in connection with his invalidity analysis and opinion. (*Id.* at 196:12-19.) Perhaps even more telling, Dr. Davis's invalidity analyses and opinions are generally based on his review of marketing materials and other documents that do not contain source code. (*Id.* at 154:1-6.)

Indeed, Dr. Davis's non-infringement opinion is itself based on differing claim constructions. Thus, although he testified that it was necessary to examine source code to

11

determine infringement, he nonetheless testified that he determined that portions of the Accused Systems outside of the clinical editing module (known as "ClinicaLogic" or "ClaimEdits") did not infringe without examining the structure in the source code. (*Id.* at 273:10-17; 311:15-313:3.)

"'It is axiomatic that claims are construed the same way for both invalidity and infringement.'" *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1343 (Fed. Cir. 2003) (quoting *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003)). It is clear that Dr. Davis used differing claim constructions in connection with his non-infringement and invalidity opinions. Dr. Davis's failure to apply a consistent claim construction renders his non-infringement opinion legally irrelevant and unable to assist the trier of fact in determining TriZetto's infringement of the '164 patent. Dr. Davis's opinion should therefore be excluded.

### C. Dr. Davis's Non-Infringement Opinions Should Be Excluded Because He Did Not Evaluate The '164 Patent Claims From The Perspective Of One Of Ordinary Skill In The Art

Interpretation of claim terms necessary for a determination of infringement must be made from the perspective of a person of ordinary skill in the art. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).

Dr. Davis was not certain of the appropriate qualifications of a person of ordinary skill in the art of the '164 patent. For example, during his deposition he relied first on the definition in his report, which provides that the hypothetical skilled artisan has "an undergraduate degree in computer science with at least one course in artificial intelligence and at least one year of experience in building expert systems." (Ex. A at 206:2-11.) Later in his deposition, he "accepted" the additional criterion that the person must also "be familiar with the task domain of claims editing." (*Id.* at 206:11-21.) Even

later, Dr. Davis indicated that he really did not have a clear idea of the proper qualifications:

> Q. Well, I'm trying to find about -- I'm trying to determine what person of ordinary skill in the art you used in determining that that person would find these claims obvious. And the person that you used was someone without any knowledge of medical claims processing, right?
>
> A. But with access to someone with medical claims processing knowledge. And if we don't want to structure it that way, then, as I said, I'll need to amend this definition and say it's someone who has these properties plus knowledge of medical claims processing.

(*Id.* at 211:10-23.)

Dr. Davis's varying definitions of the qualifications of a person of ordinary skill in the art of the '164 patent — a fundamental prerequisite to a determination of infringement — fatally undermines the reliability and admissibility of his non-infringement opinions. Dr. Davis's opinions should therefore be excluded.

### D. Dr. Davis's Non-Infringement Opinions Should Be Stricken To The Extent They Rely On Flowcharts Not Provided To McKesson During Fact Discovery

In *Praxair*, this Court excluded portions of the defendant's expert report on patent invalidity because the report referenced prior art references disclosed by the defendant for the first time at the end of a fact discovery extension. *Praxair*, 231 F.R.D. at 464. Fact discovery in *Praxair* closed on March 21, 2005, with a limited extension until April 15, 2005, "to bring closure to open discovery issues." *Id.* During the extension, the defendants disclosed several new prior art references. *Id.* Moreover, the defendants' expert report on patent invalidity, which was served on May 2, 2005, relied on these newly disclosed references. *Id.* at 463. Trial in the case was set for late November 2005.

13

*Id.* Although the Court acknowledged that excluding evidence for failure to meet a timing requirement is a harsh measure, the Court explained that:

> "sometimes, such exclusion is necessary; fidelity to the constraints of Scheduling Orders and deadlines is critical to the Court's case management responsibilities." The "flouting of discovery deadlines causes substantial harm to the judicial system." As a sanction for failure to comply with the scheduling order in this case, the court is authorized to exclude evidence proffered by the disobedient party.

*Id.* (citations omitted). The Court concluded that an evidentiary exclusion was appropriate against the disobedient defendant in *Praxair*:

> The court grants plaintiffs' motion to strike defendants' invalidity defenses based on these prior art references. The motion granted by the court extending discovery was to bring closure to open discovery issues, not to open new discovery issues. Therefore, prior art identified after March 21, 2005 is not admissible absent good cause. No good cause is shown here. Furthermore, the portions of Dr. Glew's expert report that refer to these references are stricken.

*Id.* at 464.

The flowcharts relied on by Dr. Davis in connection with his non-infringement opinion were requested by McKesson as early as December 2004 and were not produced by TriZetto prior to the close of fact discovery. TriZetto's inexcusable decision to withhold these documents precluded McKesson from using these documents in connection with depositions of TriZetto's customers, representatives and executives. It also precluded McKesson's experts from considering these documents in connection with their reports.

"In deciding the issue of prejudice or surprise, this Court has held that it 'should not speculate on how [the surprised party] would have used the additional information disclosed;' rather prejudice exists when the surprised party likely would have conducted discovery differently." *Globespanvirata, Inc. v. Texas Instruments, Inc.*, C.A. No. 03-

14

2854, 2005 U.S. Dist. LEXIS 16348 at *7 (D.N.J. Jul. 11, 2005) (Ex. E) (quoting *In re Mercedes-Benz Antitrust Litig.*, 225 F.R.D. 498, 506 (D.N.J. 2005)). The prejudice to McKesson is furthered by the fact that TriZetto considers the flowcharts to be key pieces of evidence regarding the functionality of the Accused Systems and they were actually relied upon by TriZetto's expert in opining on the operability of the Accused Systems.

There is no legitimate excuse for TriZetto's decision to withhold these documents during fact discovery and TriZetto should be precluded from relying on these flowcharts and any opinions that Dr. Davis has made based on the flowcharts should be stricken.

### E. Dr. Davis's Non-Infringement Opinions Should Be Stricken To The Extent They Rely On Demonstrations Of The Accused Products Not Provided To McKesson

TriZetto has not provided McKesson with the product demonstration it gave to Dr. Davis. Dr. Davis actually relied on this demonstration in connection with his non-infringement opinions. (Ex. A at 260:7-23.)

Expert witness reports are required to contain a complete statement of all opinions to be expressed and "the data or *other information considered by the witness in forming the opinions . . . .*" FED. R. CIV. P. 26(a)(2)(B) (emphasis added). A party that fails to disclose evidence required by Rule 26(a)(2)(B) will not be allowed to use that evidence unless the failure to disclose the evidence is harmless. *See* FED. R. CIV. P. 37(c)(1) discussed above.

McKesson has been both prejudiced and surprised by Dr. Davis's reliance on the product demonstrations, particularly since McKesson has unsuccessfully attempted for months to obtain working versions of the Accused Systems from TriZetto. Although TriZetto has inexcusably delayed McKesson's ability to view the Accused Systems as they processed claims, Dr. Davis was freely and quickly provided this opportunity.

15

(Ex. A at 259:9-13.) The Accused System software TriZetto provided McKesson contained bugs and has never completely functioned to process claims.

McKesson has been seriously prejudiced by TriZetto's misconduct in connection with fact and expert depositions. McKesson has also been prejudiced to the extent that its experts were not allowed to view claims being processed by the Accused Systems in preparing their reports. McKesson will be further prejudiced if TriZetto is allowed to use product demonstrations unavailable to McKesson at trial.

There is no legitimate excuse for TriZetto's failure to provide McKesson with complete working versions of the Accused Products. McKesson has been requesting working products for months and the Court has ordered the parties to work together to provide McKesson with working products. (D.I. 138 at page 33, 43-44.) In contrast to the months unsuccessfully devoted to this effort by McKesson, Dr. Davis testified that setting up the product demonstrations was a "very easy thing to do" and was accomplished "with a call or two." (Ex. A at 263:19-24.)

McKesson therefore requests that TriZetto be precluded from relying on the product demonstrations and the portions of Dr. Davis's report and opinions relating thereto. To limit the prejudice already suffered by McKesson, the Court should also order TriZetto to immediately provide the demonstrations to McKesson.

## VI.   CONCLUSION

For the reasons set forth herein, McKesson respectfully requests that Dr. Davis's non-infringement opinions be excluded under Federal Rule of Evidence 702 and that his opinions be stricken because they are based on materials not provided to McKesson.

By: /s/ *signature*

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899
(302) 651-3000

Attorneys for Plaintiff
McKesson Information Solutions LLC

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, CA  94301
(650) 470-4500

DATED:  December 20, 2005