IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MCKESSON INFORMATION SOLUTIONS LLC, )
)
)
Plaintiff, )
)
v. )          C.A. No. 04-1258 (SLR)
)
THE TRIZETTO GROUP, INC., )
)
Defendant. )

**THE TRIZETTO GROUP, INC.'S APPENDIX OF EXHIBITS IN SUPPORT
OF ITS MOTION TO EXCLUDE EXPERT TESTIMONY OF
MARGARET L. JOHNSON AND MARK A. MUSEN**

MORRIS, NICHOLS, ARSHT & TUNNELL
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Defendant The TriZetto Group, Inc.*

OF COUNSEL:

Jeffrey T. Thomas
David Segal
Michael A. Sitzman
GIBSON, DUNN & CRUTCHER LLP
Jamboree Center
4 Park Plaza
Irvine, CA  92614

December 20, 2005

Confidential Version Filed December 15, 2005
Redacted Public Version Filed December 21, 2005

**THE TRIZETTO GROUP, INC.'S INDEX OF EXHIBITS IN SUPPORT OF
ITS MOTION TO EXCLUDE EXPERT TESTIMONY
OF MARGARET L. JOHNSON AND MARK A. MUSEN**

| Appendix Exhibit Number | Description |
|---|---|
| A. | Expert Report of Dr. Margaret L. Johnson, Ph.D., dated October 21, 2005 ("Johnson Report") |
| B. | Johnson Deposition Transcript Cites |
| C. | Expert Report of Mark A. Musen, M.D., Ph. D., dated October 21, 2005 ("Musen Report") |
| D. | Exhibit 1 to Musen Report |
| E. | Exhibit 2 to Musen Report |
| F. | Exhibit 3 to Musen Report |
| G. | Exhibit 4 to Musen Report |
| H. | Exhibit 5 to Musen Report |
| I. | Musen Deposition Transcript Cites |

40220501_1.DOC

# EXHIBIT A

# REDACTED

# EXHIBIT B

REDACTED

EXHIBIT C

REDACTED

# EXHIBIT D

REDACTED

# EXHIBIT E

# REDACTED

# EXHIBIT F

# REDACTED

# EXHIBIT G

REDACTED

# EXHIBIT H

# REDACTED

# EXHIBIT I

1           IN THE UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF DELAWARE

3

4      MCKESSON INFORMATION          )

       SOLUTIONS, LLC,                      )

5                              )

                PLAINTIFF,    )

6      vs.                  ) Case No. 04-1258-SLR

                              )

7      THE TRIZETTO GROUP, INC.,     )

                              )

8                DEFENDANT.     )

       _____)

9

10

11

12

13

14      VIDEO DEPOSITION OF MARK MUSEN, M.D., PH.D.

15       Held at Skadden, Arps, Slate, Meagher & Flom

16          525 University Avenue, 11th Floor

17              Palo Alto, California

18        Tuesday, November 22, 2005, 9:11 a.m.

19

20

21

22

23

24      REPORTED BY:  CHRIS DE GEORGE, CSR. NO. 7069

25

1

1    manufacturer.  And I certainly reviewed the depositions

2    regarding testimony regarding QicLink.  That doesn't

3    tell me which version it is.

4        Q.   Okay.  Let me -- I want to go back to this.

5    You've not looked at any software from TriZetto?

6        A.   That's correct.

7        Q.   And you've not looked at any source code from

8    TriZetto?

9        A.   That's correct.

10       Q.   Did you ask Mr. Hendershot or Mr. Swenson to

11   do that?

12       A.   I relied on the report from Dr. Johnson who

13   had an opportunity to look at some of that software.

14       Q.   And --

15       A.   But I've never seen -- I've never seen

16   functioning software.  I don't think Dr. Johnson has

17   either.

18       Q.   Okay.  You relied on Johnson.  Did you think

19   that was sufficient for your formulation of your

20   opinions or conclusions?

21       A.   Yes.

22       Q.   Okay.  And so -- and that came up, by the way,

23   in the context of whether or not you'd asked to say, Oh,

24   I really want to see source code.  So I'm assuming from

25   that you felt you did not have to go and actually look

1    at the source code.

2        A.  I took the claims made by TriZetto in their

3    product literature at face value.

4        Q.  Okay.  And from the claims made in the product

5    literature, you made the conclusions and prepared the

6    analysis and conclusions in your report.

7        A.  That's correct.  That information was

8    obviously supplemented by the deposition testimony that

9    I received as well.

10       Q.  Do you believe that based on the deposition

11   testimony and the claims that were made in the product

12   literature, that you could do an analysis, a sufficient

13   analysis, to conclude that there was infringement of

14   these claims by each of the TriZetto products?

15       A.  Yes.

16       Q.  Do you know of any other experts, either, you

17   know, in your -- your field or -- or related fields, who

18   would opine on infringement based only on deposition

19   testimony and product literature and not the actual

20   either software product or the actual product itself?

21           MR. HENDERSHOT:  Objection.  Calls for

22   speculation.  Misstates his testimony.

23   BY MR. SITZMAN:

24       Q.  Yeah.  And I guess I'll just clarify:  Do you

25   know of anyone?

1       A.  Yes.

2       Q.  Okay.  How do you know that it performs that

3    ' identical function?

4       A.  I know that by looking at the product

5    literature that I've been -- been given and by reviewing

6    the testimony of all those who were deposed in this

7    case.

8       Q.  Okay.  Where in your report, MM-1, is the

9    structure identified that corresponds to the function

10   that I just read into the record?

11      A.  The structure is software.  My understanding

12   in this case is that it is sufficient to say that the

13   function is implemented in software.

14      Q.  Is -- is there any particular software or are

15   you just saying software?

16      A.  Well, the patent specification gives a

17   particular embodiment for how that software might be

18   constructed, but at issue is whether software is used to

19   perform this particular function, a function which,

20   until this patent, had been done only manually.

21      Q.  Okay.  So software is used.  Can you identify

22   then -- well, let -- let's be clear.  Your report

23   does- -- doesn't call out exactly what software is used.

24      A.  That's correct.

25      Q.  Okay.  Can you identify for me, though, in the

1        Since you haven't seen or looked at the

2    TriZetto source code or the TriZetto products, how --

3    well, I'm assuming, then, that you don't know that the

4    TriZetto products have the same structure or similar

5    structure to what is described in the patent.

6        A.   I know they're software systems.  If the

7    requisite definition of structure is -- is simply

8    software, then the TriZetto products must embody the

9    principles of the patent in software as their structure.

10       Q.   If -- if that were true, then any software

11   program that carries out these functions, "these" being

12   the functions set forth in the claims, would infringe

13   the patent.

14             MR. HENDERSHOT:  Assuming all other

15   limitations were met?

16             MR. SITZMAN:  Assuming all other limitations

17   were met.

18             THE WITNESS:  That's my understanding reading

19   the court order from, I guess, September 20th.

20             MR. SITZMAN:  Let -- let me actually introduce

21   that, if you don't mind.

22             THE WITNESS:  Okay.

23             (Defendant's Exhibit MM-5 was marked.)

24   BY MR. SITZMAN:

25       Q.   I had the court reporter mark as the -- as

1      Q.   Other than the disclosure of software, have

2    you reviewed anything that tells you what the structure

3    of the software is, what the code is, what the

4    subroutines are, what the processes are, how it

5    processes its claims so that you can identify that

6    portion of the Facets product that carries out that

7    function?

8          MR. HENDERSHOT:  Objection.  Compound, asked

9    and answered.

10          THE WITNESS:  I have not delved down to a

11    lower level of granularity to dissect the -- the

12    component pieces that would allow me to answer that

13    question.  I based my assessment on my understanding of

14    the necessary structure as dictated by the memorandum

15    of -- of September 20th.  And if software is a

16    sufficient means for achieve- -- achieving the necessary

17    functionality, I -- I deem that to be sufficient.

18    BY MR. SITZMAN:

19      Q.   Is it fair to say that you stopped looking or

20    decided not to look beyond the product once you

21    concluded that it must be software-based, and since the

22    functionality was the same, you must conclude that it

23    must have the same structure or a similar structure?

24          MR. HENDERSHOT:  Objection.  Argumentative.

25          THE WITNESS:  My approach seemed very

1    reasonable to me.

2    BY MR. SITZMAN:

3        Q.  I'm sorry.  In my statement, was -- was there

4    anything wrong in what I had said?

5        A.  It wasn't -- I do not believe it was necessary

6    to go to a lower level of granularity to ascertain those

7    specific components.

8        Q.  Okay.  And why did you not believe that?

9            MR. HENDERSHOT:  Objection.  Asked and

10   answered.

11           THE WITNESS:  Because if the function needed

12   to be reproduced and the testimony and the -- and the

13   product literature suggests that it was and the

14   structure was clearly software, then my job was done.

15   BY MR. SITZMAN:

16       Q.  Okay.  And then the log- -- logical leap,

17   then, is any software program that performs those

18   functions, according to your analysis, would infringe

19   that claim limitation.

20       A.  That's my understanding of the court memo.

21       Q.  Okay.  And that was the first sentence of

22   paragraph 1 that Mr. Hendershot read to you and not the

23   last two sentences of that -- of the memorandum.

24       A.  I read the entire paragraph.

25       Q.  Okay.  The -- the part that says, on page 2,

302

1      MR. SITZMAN:  Okay.

2      THE WITNESS:  I mean, we've been saying all

3   day that all of the criteria are represented in codes.

4   Clearly, the embodiment suggests that the point of

5   service is also represented in some codified form.

6   BY MR. SITZMAN:

7      Q.   Okay.  And that could be a code like a medical

8   service code.

9      A.   Possibly.

10      Q.   Okay.  And point of service are you familiar

11   with --

12      A.   And in- -- and, indeed, that's the case.  I --

13   I realize it's late in the day and we're all getting

14   tired, but when you look at CPT codes for

15   physician-patient encounters, they necessarily indicate

16   the place of service, they -- whether it's the office,

17   whether it's emergency room, whether it's in the

18   hospital.

19      Q.   Okay.

20      A.   I'm sorry.  I'm -- I'm beginning to fade.

21      Q.   If the Court concludes that in order to have a

22   proper infringement analysis of a software-based patent

23   that you must compare the code from the patent to the

24   code in the infring- -- allegedly infringing product,

25   you clearly didn't do that; is that correct?

323

1    A.   That's correct.

2    Q.   All right.  And it's not included in any of

3  your reports.

4    A.   That is correct.

5        MR. HENDERSHOT:  A comparison of the code from

6  Appendix D to the code of the accused products?

7        MR. SITZMAN:  Well, Appendix D, Appendix B,

8  Appendix C, spec.  Any part of the patent I said.

9        MR. HENDERSHOT:  I don't think you did.  I may

10  have misheard.  I apologize.  I thought you said the

11  comparison of the code and the patent to the code.

12        MR. SITZMAN:  I -- I meant the totality of the

13  patent, any part of the patent.

14        MR. HENDERSHOT:  Is your answer still

15  accurate?

16        THE WITNESS:  That is correct.

17        MR. HENDERSHOT:  Okay.

18        MR. SITZMAN:  All right.  I think -- I

19  think -- I think I'm well covered.  I -- I appreciate

20  you bearing with me.  I -- I don't think I necess- -- I

21  don't think I have to go through the "means for"

22  language.

23        THE WITNESS:  Okay.

24        MR. SITZMAN:  Thank you.

25        MR. HENDERSHOT:  Can I hear -- can I hear his

## CERTIFICATE OF SERVICE

I, Rodger D. Smith II, hereby certify that on December 21, 2005, I caused to be electronically filed redacted The TriZetto Group, Inc.'s Appendix of Exhibits in Support of its Motion to Exclude Expert Testimony of Margaret L. Johnson and Mark A. Musen with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Thomas J. Allingham, II
> Skadden, Arps, Slate, Meagher & Flom LLP

I also certify that copies were caused to be served on December 21, 2005, upon the following in the manner indicated:

### BY HAND

> Thomas J. Allingham, II
> Skadden, Arps, Slate, Meagher & Flom LLP
> One Rodney Square
> P.O. Box 636
> Wilmington, DE  19899

### BY FEDERAL EXPRESS

> Jeffrey G. Randall
> Skadden, Arps, Slate, Meagher & Flom LLP
> 525 University Avenue
> Suite 1100
> Palo Alto, CA  94301

> /s/    Rodger D. Smith II (#3778)
> Morris, Nichols, Arsht & Tunnell
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE  19899
> (302) 658-9200
> rsmith@mnat.com