# EXHIBIT B

# REDACTED

# EXHIBIT C

REDACTED

# EXHIBIT D

REDACTED

# EXHIBIT E

REDACTED

# EXHIBIT F

REDACTED

# EXHIBIT G

REDACTED

# EXHIBIT H

**11/22/2005  Musen, Mark**

1              IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF DELAWARE

3

4       MCKESSON INFORMATION          )

        SOLUTIONS, LLC,            )

5                              )

                PLAINTIFF,    )

6       vs.                  ) Case No. 04-1258-SLR

                             )

7       THE TRIZETTO GROUP, INC.,    )

                             )

8              DEFENDANT.    )

        _____)

9

10

11

12

13

14         VIDEO DEPOSITION OF MARK MUSEN, M.D., PH.D.

15         Held at Skadden, Arps, Slate, Meagher & Flom

16            525 University Avenue, 11th Floor

17                 Palo Alto, California

18         Tuesday, November 22, 2005, 9:11 a.m.

19

20

21

22

23

24         REPORTED BY:  CHRIS DE GEORGE, CSR. NO. 7069

25

1           Since you haven't seen or looked at the

2     TriZetto source code or the TriZetto products, how --

3     well, I'm assuming, then, that you don't know that the

4     TriZetto products have the same structure or similar

5     structure to what is described in the patent.

6           A.   I know they're software systems.  If the

7     requisite definition of structure is -- is simply

8     software, then the TriZetto products must embody the

9     principles of the patent in software as their structure.

10          Q.   If -- if that were true, then any software

11    program that carries out these functions, "these" being

12    the functions set forth in the claims, would infringe

13    the patent.

14          MR. HENDERSHOT:  Assuming all other

15    limitations were met?

16          MR. SITZMAN:  Assuming all other limitations

17    were met.

18          THE WITNESS:  That's my understanding reading

19    the court order from, I guess, September 20th.

20          MR. SITZMAN:  Let -- let me actually introduce

21    that, if you don't mind.

22          THE WITNESS:  Okay.

23          (Defendant's Exhibit MM-5 was marked.)

24    BY MR. SITZMAN:

25          Q.   I had the court reporter mark as the -- as

**11/22/2005  Musen, Mark**

1      Q.  No?  This is an outline of the presentation

2    that was given.  You see the -- I'll draw your attention

3    to page 119638.

4      A.  Okay.

5      Q.  It's entitled "The Model Approach to Physician

6    Fee Review."

7      A.  Yeah.

8      Q.  And it talks about the survey of medical

9    community, compare the community findings.

10      Draw your attention to Item Number 5 and then

11    Number 6.  Five says: "Develop, from" the "above, rate

12    schedules, appropriate bundling guidelines, service

13    descriptions, and appropriate service/diagnosis/

14    procedure correlation and build into software."

15      And then 6 says:  "Recode selected bills and

16    enter into computer.  Computer identifies exceptions to

17    rate schedules, bundling, use of assistant surgeons, and

18    so forth."

19      Doctor, does this disclosure, in your mind,

20    provide the outline or work-up of what's disclosed in

21    the '164 patent?

22      MR. HENDERSHOT:  Objection.  Vague and

23    ambiguous as to "outline or work-up."

24      THE WITNESS:  I mean, it certainly is

25    consonant with the goals of the '164 patent.

174

1        A.   I would agree that there's been a disclosure

2    to the attendees at this meeting that there is the

3    potential to build such a computer.  I don't think the

4    computer system has been disclosed in this outline.

5        Q.   Okay.

6        A.   I guess I'm confused by this 'cause it was my

7    understanding that Hertenstein was sort of a -- a

8    one-man show at this particular time doing this work for

9    Caterpillar, so I'm not -- I'm not sure who is making

10   this presentation.

11       Q.   Well, Charlie Moore at HPI was the one who was

12   in charge of making this presentation back in Boston,

13   but I think the evidence will show that he was working

14   very closely with Dr. Holloway and Dr. Hertenstein in

15   the development of this process.

16            Did you ask, as part of your analysis and part

17   of your report to get information, about what

18   disclosures had been made by Caterpillar or HPI or any

19   of the earlier developers as to what disclosures had

20   been made of the computerized system?

21       A.   I discussed that with McKesson's counsel.

22       Q.   Okay.  And what were you told about these

23   disclosures to the public?

24       A.   I was told that the only thing that was

25   disclosed was the idea that the manual processing had

11/22/2005  Musen, Mark

1    in evidence.

2    BY MR. SITZMAN:

3        Q.  You can go ahead and answer truthfully.

4        A.  I'm not sure what you really mean by that.

5        Q.  Well, did he tell you what we need -- what he

6    needed to correct, what he needed to fix on the record

7    for purposes of the deposition?

8        A.  Not in those terms.

9        Q.  Well, in what terms did he use?

10       A.  That there were areas that he wanted to get

11   additional information to clarify.

12       Q.  And did he tell you why he couldn't get them

13   later since he was -- you know, you are his witness and

14   why he wanted them now at this deposition?

15       A.  I didn't -- I didn't pursue that question.

16       Q.  You didn't ask him?  Okay.

17           Let's work backwards through all the doors

18   that have now been reopened.

19           Paragraph 48 of your deposition -- of your

20   opening report, do you offer any opinion regarding the

21   doctrine of equivalence?

22       A.  No.

23       Q.  Do you -- have you reached any conclusions

24   about the doctrine of equivalence?

25       A.  No.

1    reasonable to me.

2    BY MR. SITZMAN:

3        Q.  I'm sorry.  In my statement, was -- was there

4    anything wrong in what I had said?

5        A.  It wasn't -- I do not believe it was necessary

6    to go to a lower level of granularity to ascertain those

7    specific components.

8        Q.  Okay.  And why did you not believe that?

9            MR. HENDERSHOT:  Objection.  Asked and

10   answered.

11           THE WITNESS:  Because if the function needed

12   to be reproduced and the testimony and the -- and the

13   product literature suggests that it was and the

14   structure was clearly software, then my job was done.

15   BY MR. SITZMAN:

16       Q.  Okay.  And then the log- -- logical leap,

17   then, is any software program that performs those

18   functions, according to your analysis, would infringe

19   that claim limitation.

20       A.  That's my understanding of the court memo.

21       Q.  Okay.  And that was the first sentence of

22   paragraph 1 that Mr. Hendershot read to you and not the

23   last two sentences of that -- of the memorandum.

24       A.  I read the entire paragraph.

25       Q.  Okay.  The -- the part that says, on page 2,

302

11/22/2005  Musen, Mark

1     A.  That's correct.

2     Q.  All right.  And it's not included in any of

3  your reports.

4     A.  That is correct.

5        MR. HENDERSHOT:  A comparison of the code from

6  Appendix D to the code of the accused products?

7        MR. SITZMAN:  Well, Appendix D, Appendix B,

8  Appendix C, spec.  Any part of the patent I said.

9        MR. HENDERSHOT:  I don't think you did.  I may

10  have misheard.  I apologize.  I thought you said the

11  comparison of the code and the patent to the code.

12        MR. SITZMAN:  I -- I meant the totality of the

13  patent, any part of the patent.

14        MR. HENDERSHOT:  Is your answer still

15  accurate?

16        THE WITNESS:  That is correct.

17        MR. HENDERSHOT:  Okay.

18        MR. SITZMAN:  All right.  I think -- I

19  think -- I think I'm well covered.  I -- I appreciate

20  you bearing with me.  I -- I don't think I necess- -- I

21  don't think I have to go through the "means for"

22  language.

23        THE WITNESS:  Okay.

24        MR. SITZMAN:  Thank you.

25        MR. HENDERSHOT:  Can I hear -- can I hear his

# EXHIBIT I

REDACTED

# EXHIBIT J

# REDACTED