IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 04-1258-SLR |
| | ) | |
| v. | ) | |
| | ) | **REDACTED PUBLIC VERSION** |
| THE TRIZETTO GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**PLAINTIFF MCKESSON INFORMATION SOLUTIONS LLC'S
OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
REGARDING DEFENDANT'S EIGHTH AFFIRMATIVE DEFENSE**

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500

Attorneys for Plaintiff
McKesson Information Solutions LLC

Confidential Version Filed: December 15, 2005

Redacted Version Filed: December 22, 2005

# TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF PROCEEDINGS. ...................................................1

II.   SUMMARY OF ARGUMENT. ..........................................................................1

III.  STATEMENT OF FACTS...................................................................................3

IV.   MCKESSON IS ENTITLED TO SUMMARY JUDGMENT ON
      TRIZETTO'S EIGHTH AFFIRMATIVE DEFENSE BECAUSE
      TRIZETTO CANNOT PROVE LACHES, ESTOPPEL, WAIVER
      OR ACQUIESCENCE...........................................................................................10

    A.    Standard of Review on Summary Judgment..............................................10

    B.    TriZetto Cannot Establish any of the Essential Elements of
        Estoppel....................................................................................................10

        1.    McKesson Did Not Engage in any Misleading Conduct. ..............11

        2.    TriZetto's Conduct Indicates No Reliance on McKesson's
            Alleged Conduct. ...........................................................................15

        3.    TriZetto Suffered No Form of Prejudice. .......................................20

            (a)    Economic Prejudice is not Present.....................................20

            (b)    Evidentiary Prejudice...........................................................24

    C.    McKesson is Entitled to Summary Judgment on the Issue of
        Laches. ....................................................................................................26

        1.    TriZetto is not Entitled to any Presumption of Material
            Prejudice. .......................................................................................27

        2.    TriZetto Cannot Prove Material Prejudice.....................................31

            (a)    Economic Prejudice .............................................................31

            (b)    Evidentiary Prejudice...........................................................34

    D.    McKesson is Entitled to Summary Judgment on the Issues of
        Waiver and Acquiescence. .......................................................................35

V.    LACHES IS NOT A DEFENSE TO WILLFUL INFRINGEMENT....................36

VI.   CONCLUSION.....................................................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,*
   960 F.2d 1020 (Fed. Cir. 1992)..................................................................*passim*

*Amgen, Inc. v. Hoechst Marion Roussel, Inc.,*
   314 F.3d 1313 (Fed. Cir. 2003)........................................................................ 25

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986)........................................................................................ 10

*Boston Scientific Scimed, Inc. v. Cordis Corp.,*
   392 F. Supp. 2d 676 (D. Del. 2005).................................................................. 10

*Coach House Rest., Inc. v. Coach & Six Rests., Inc.,*
   934 F.2d 1551 (11th Cir. 1991) ....................................................................... 35

*Ecolab, Inc. v. Envirochem, Inc.,*
   264 F.3d 1358 (Fed. Cir. 2001)........................................................................ 20

*Genzyme Corp. v. Atrium Med. Corp.,*
   No. 00-958-MPT, 2003 U.S. Dist. LEXIS 12784 (D. Del. 2003) ......................... 28, 30

*Haghighi v. Russian-American Broad. Co.,*
   173 F.3d 1086 (8th Cir. 1999) ......................................................................... 35

*Helifix Ltd. v. Blok-Lok, Ltd.,*
   208 F.3d 1339 (Fed. Cir. 2000)........................................................................ 25

*Hemstreet v. Computer Entry Systems Corp.,*
   972 F.2d 1290 (Fed. Cir. 1992)........................................................................ 32

*Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.,*
   219 F.3d 104 (2d Cir. 2000)............................................................................. 36

*Lemelson v. Wang Laboratories, Inc.,*
   874 F. Supp. 430 (D. Mass. 1994).................................................................... 29

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986)........................................................................................ 10

*Meyers v. Asics Corp.,*
   974 F.2d 1304 (Fed. Cir. 1992)........................................................................ 14

*Meyers v. Brooks Shoe Inc.,*
   912 F.2d 1459 (Fed. Cir. 1992)........................................................................ 15, 34

*RCA Corp. v. Data General Corp.*,
    701 F. Supp. 456 (D. Del. 1988)............................................................................ 28, 29

*State Contracting & Engineering Corp. v. Condotte America, Inc.*,
    346 F.3d 1057 (Fed. Cir. 2003)............................................................................ 32, 33

*Symbol Techs., Inc. v. Proxim Inc.*,
    No. Civ. 01-801-SLR, 2004 WL 1770290 (D. Del. 2004) ....................................... 13, 25

*Tenneco Auto. Operating Co., Inc. v. Visteon Corp.*,
    375 F. Supp. 2d 375 (D. Del. 2005)............................................................................ 20

*Tyler Refrigeration Corp. v. Kysor Indus. Corp.*,
    601 F. Supp. 590 (D. Del 1985)............................................................................ 26, 27

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*,
    944 F.2d 870 (Fed. Cir. 1991)............................................................................ 27, 28

## STATUTES

FED. R. CIV. P. 56(c) ......................................................................................................... 10

Plaintiff McKesson Information Solutions LLC ("McKesson") respectfully submits its opening brief in support of its motion for summary judgment on defendant The TriZetto Group, Inc.'s ("TriZetto") Eighth Affirmative Defense.

## I.    NATURE AND STAGE OF PROCEEDINGS.

On September 13, 2004, McKesson filed this lawsuit against TriZetto for willfully infringing McKesson's U.S. Patent No. 5,253,164 ("the '164 patent").    (D.I. 1.) McKesson filed a First Amended Complaint on October 1, 2004. (D.I. 7.) TriZetto filed an Answer and Counterclaim on November 1, 2004. (D.I. 10.) As its Eighth Affirmative Defense, TriZetto asserted that "[t]he Complaint is barred by any or all of the doctrines of laches, waiver, acquiescence, and estoppel." (*Id.* at 6.) After months of discovery, including the production of many thousands of documents and the depositions of dozens of witnesses, fact and expert discovery have been completed and McKesson now moves for summary judgment as to TriZetto's Eighth Affirmative Defense.

## II.    SUMMARY OF ARGUMENT.

McKesson is entitled to summary judgment for the following reasons:

1.    TriZetto's estoppel defense fails as a matter of law because TriZetto cannot establish that McKesson misled TriZetto to believe that McKesson would not sue TriZetto for infringement. TriZetto has no evidence that McKesson, through words or conduct, ever represented that it intended to not enforce the '164 patent against TriZetto. TriZetto also cannot show that it could or, in fact, did reasonably infer such an intent from McKesson's silence because there is no evidence that such silence was preceded by any accusation or threat of infringement against TriZetto.

1

2.     TriZetto's estoppel defense also must be rejected because there is no evidence that TriZetto actually relied on any alleged statements or conduct by McKesson in connection with taking any action concerning its business or the accused products. Instead, the evidence shows that since first learning of the '164 patent in 1994, TriZetto has made decisions about its business and the accused products without regard for the '164 patent or any positions that McKesson has allegedly taken on the patent.

3.     TriZetto cannot establish the material prejudice that is required to prove estoppel. In particular, the evidence does not support a finding of economic prejudice because TriZetto did not suffer economic harm in reliance on or as a result of any purported belief that McKesson would not sue TriZetto for infringement. Nor does the evidence warrant a finding of evidentiary prejudice because TriZetto's reliance on such belief has not impaired its ability to present its defense in this case.

4.     TriZetto cannot prevail on its laches defense as a matter of law because it lacks sufficient evidence to prove that it suffered any prejudice as a result of McKesson's alleged delay in filing this lawsuit. Prejudice cannot be presumed in this case because McKesson did not delay filing suit for more than six years. Moreover, TriZetto cannot establish economic prejudice because the type of economic harm allegedly suffered does not equate to economic prejudice and because such harm has no nexus to McKesson's alleged delay. Evidentiary prejudice is also lacking because McKesson's alleged delay has not impaired TriZetto's ability to present its defense in this case.

5.     TriZetto's defenses of waiver and acquiescence fail as a matter of law because there is no evidence that McKesson, through words or conduct, relinquished its

2

right to enforce the '164 patent against TriZetto or that McKesson's conduct with regard to enforcement of the patent has prejudiced TriZetto in any way.

6.    TriZetto cannot rely on laches as a defense to willful infringement. As an equitable doctrine that only affects pre-litigation damages, laches has no bearing on the issue of willfulness or injunctive relief.

## III.  STATEMENT OF FACTS.

HPR is McKesson's predecessor and the original assignee of the '164 patent, which issued on October 12, 1993. Ex. 1.[1] On January 14, 1994, HPR issued a press release announcing the '164 patent's issuance. Ex. 2. On January 24, 1994 in a New York Times Article entitled "Health Care System Finds Overpayments," Marcia Radosevich, the President of HPR, was quoted as generally stating that "[w]e do intend to enforce our patent rights." Ex. 3.

On January 31, 1994, HPR's competitor GMIS sued HPR in a declaratory judgment action seeking a verdict that the patent was invalid, not infringed and unenforceable. Ex. 4. This lawsuit prompted HPR to file a patent infringement counterclaim against GMIS on March 25, 1994. Ex. 5. On January 23, 1995, on the eve of trial, the litigation settled for a payment by GMIS to HPR of $7,200,000 in return for a non-exclusive license to the patent. Ex. 6.

In 1994, TriZetto's predecessor Erisco became aware of the '164 patent and the GMIS litigation and believed that                                **REDACTED**

---

[1] All exhibits referenced herein are to the exhibits attached to the Declaration of Michael Barlow in Support of Plaintiff's Motion for Summary Judgment re Defendant's Eighth Affirmative Defense.

**REDACTED**


**REDACTED**

---

[2]  The President of Erisco during the GMIS litigation, Tony Bellomo, testified that       **REDACTED**

**REDACTED**                          (Ex. 7 at 193.)

[3]  HPR's President, Dr. Radosevich, testified:


**REDACTED**


(Ex. 8 at 262-63.)

[4]  Mr. Bellomo, Erisco's President, testified:

**REDACTED**

* * * *

**REDACTED**

(Ex. 7 at 194.)

* * * *

**REDACTED**

(Ex. 7 at 201.)

Dr. Radosevich, HPR's President, similarly testified:

**REDACTED**

*(cont'd)*

4

**REDACTED**

_____

*(cont'd from previous page)*

**REDACTED**

(Ex. 8 at  262)

[5]     Mr. Bellomo, Erisco's President, testified:

**REDACTED**

(Ex. 9 at 185.)

[6]     Mr. Bellomo, Erisco's President, testified:

**REDACTED**

(Ex. 7 at 204-05.)

[7]     Mr. Bellomo, Erisco's President, testified:

**REDACTED**

(Ex. 7 at 205-06.)

[8]     Mr. Bellomo, Erisco's President, testified:

**REDACTED**

*(cont'd)*

**REDACTED**

_____

*(cont'd from previous page)*

**REDACTED**

(Ex. 7 at 207 (emphasis added).)

[9]   Mr. Margolis, TriZetto's CEO, testified:

**REDACTED**

(Ex. 10 at 169.)

[10]   Mr. Luftig testified:

**REDACTED**

(Ex. 11 at 50.)

[11]   Mr. Bellomo, Erisco's President, testified:

**REDACTED**

(Ex. 9 at 192.)

[12]   Mr. Bellomo, Erisco's President, testified:

**REDACTED**

*(cont'd)*

REDACTED


REDACTED                                In short, the meeting did not


_____
*(cont'd from previous page)*

REDACTED

\* \* \* \*

REDACTED

(Ex. 9 at 198-99.)

[13]   Mr. Bellomo, Erisco's President, testified:


REDACTED


(Ex. 9 at 194 (emphasis added).)

[14]   Mr. Bellomo, Erisco's President, testified:


REDACTED

\* \* \* \* \*


REDACTED

(Ex. 9 at 212-215)

7

**REDACTED**

Several months after this alleged meeting, in September of 1997, HPR was acquired by HBOC for approximately $500 million in stock, resulting in a change of ownership of the patent rights and management of HPR. Ex. 14. Dr. Radosevich, the CEO of HPR, left the combined company shortly after the acquisition.[16] In October of 1998, McKesson acquired HBOC in a deal worth approximately $15 billion. Ex. 15. The acquisition resulted in a restructuring of the combined company's management and Board of Directors. Ex. 15. For example, Charles W. McCall, the former President and CEO of HBOC resigned a few months later. Ex. 16. As a result of this acquisition, McKesson acquired ownership of the '164 patent.

In March of 2000, TriZetto announced that it was acquiring Erisco and the acquisition closed in October of 2000. Ex. 17. In December 2000, TriZetto acquired another company, RIMS. Through the acquisitions of Erisco and RIMS, TriZetto acquired the products that are accused of infringement in this case.

---

[15] Mr. Bellomo, Erisco's President, testified:

**REDACTED**

(Ex. 9 at 202 (emphasis added).)

[16]

**REDACTED**

(Ex. 8 at 27.)

8

**REDACTED**

**REDACTED**

McKesson filed the

present patent infringement suit against TriZetto on September 13, 2004,

**REDACTED**

---

[17]   Mr. Margolis, TriZetto's CEO, testified:

**REDACTED**

(Ex. 10 at 90-91 (emphasis added).)

[18]   Mr. Bellomo, Erisco's President, testified:

**REDACTED**

**REDACTED**

(Ex. 7 at 70-71.)

9

IV.   **MCKESSON IS ENTITLED TO SUMMARY JUDGMENT ON TRIZETTO'S EIGHTH AFFIRMATIVE DEFENSE BECAUSE TRIZETTO CANNOT PROVE LACHES, ESTOPPEL, WAIVER OR ACQUIESCENCE.**

A.   **Standard of Review on Summary Judgment.**

Summary judgment is proper if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the moving party has shown an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting FED. R. CIV. P. 56(e)).   The mere existence of some evidence supporting the nonmoving party will not defeat a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).   Rather, there must exist "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*   As this Court has held, "[i]f the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law." *Boston Scientific Scimed, Inc. v. Cordis Corp.*, 392 F. Supp. 2d 676, 680 (D. Del. 2005).

B.   **TriZetto Cannot Establish any of the Essential Elements of Estoppel.**

Proof of estoppel requires proof of three elements by a preponderance of the evidence: (1) the patentee committed misleading conduct that led the alleged infringer to reasonably infer it would not be sued; (2) the alleged infringer relied on such conduct; and (3) due to its reliance, the alleged infringer will be materially prejudiced if the suit proceeds. *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed.

10

Cir. 1992). TriZetto lacks sufficient evidence to establish any of these essential elements. *First*, there is no evidence that McKesson ever made any statement or took any action indicating that it would not sue TriZetto for infringement or otherwise leading TriZetto to reasonably infer an intent not to sue. *Second*, TriZetto cannot prove actual reliance because the evidence shows that the potential enforcement or nonenforcement of the '164 patent never influenced TriZetto's business decisions. *Third*, TriZetto has insufficient evidence to establish that it has suffered any detriment as a result of McKesson's actions or TriZetto's reliance thereon.

### 1. McKesson Did Not Engage in any Misleading Conduct.

TriZetto cannot show that McKesson (or any of its predecessors) misled TriZetto (or its predecessors) into believing that McKesson would not sue TriZetto for infringement. TriZetto has no evidence that McKesson, through words or conduct, ever represented that it intended to not enforce the '164 patent against TriZetto. In addition, TriZetto could not and, in fact, did not reasonably infer such an intent from McKesson's silence on the issue.

First, there is no evidence that either of TriZetto's predecessors--Erisco or RIMS-- had any communications with McKesson or its predecessors regarding the '164 patent. With regard to RIMS, TriZetto has never identified any communication regarding any subject that occurred between RIMS and McKesson, HBOC, or HPR after the patent issued.

### REDACTED

With regard to Erisco, the evidence shows that after the '164 patent issued in October 1993, **REDACTED**

11

**REDACTED**

**REDACTED**

**REDACTED**

---

[19]  Mr. Bellomo, Erisco's President, testified:

**REDACTED**

(Ex. 9 at 202.)

Dr. Radosevich, HPR's President, testified:

**REDACTED**

(Ex. 8 at 256.)

REDACTED

\* \* \* \*

REDACTED

REDACTED

TriZetto also cannot establish any misleading conduct based on the silence or inaction of McKesson or its predecessors regarding the enforcement of the '164 patent against TriZetto or its predecessors. The Federal Circuit has made clear that a patentee's inaction cannot support a finding of misleading conduct unless it is "combined with other facts respecting the relationship or contacts between the parties to give rise to the necessary inference that the claim against the defendant is abandoned." *A.C. Aukerman Co.*, 960 F.2d at 1042. "Silence may give rise to the defense of equitable estoppel *only* when coupled with either affirmative conduct or an affirmative obligation." *Symbol Techs., Inc. v. Proxim Inc.*, No. Civ. 01-801-SLR, 2004 WL 1770290, at *8 (D. Del. 2004) (emphasis added). Ex. 24.

There is no evidence that McKesson or its predecessors engaged in any affirmative conduct with regard to TriZetto or its predecessors which, when coupled with silence, gives rise to the "necessary inference" that McKesson had abandoned its claim against TriZetto.

REDACTED

13

**REDACTED**


**REDACTED**


                                                                To be misleading, silence

generally requires that the patentee first threatened immediate or vigorous enforcement of

the patent against the alleged infringer.  *See Meyers v. Asics Corp.*, 974 F.2d 1304, 1309

(Fed. Cir. 1992) (finding that patentee could not have threatened litigation over the patent

because patentee did not contact the alleged infringer after the patent issued).


**REDACTED**


**REDACTED**


TriZetto may assert that Dr. Radosevich's general statement in a 1994 *New York

Times* article that HPR would enforce its patent rights renders HPR's subsequent silence

misleading. However, there is nothing about Dr. Radosevich's statement that would support the "necessary inference" that McKesson abandoned a claim against TriZetto. The article does not indicate that Dr. Radosevich's statement was directed at TriZetto, Erisco, RIMS or anyone else. Ex. 3. Nor does the article state or suggest that Dr. Radosevich was specifically accusing anyone of infringement or threatening litigation against anyone. Even if the article did suggest that HPR was accusing others of infringement, the Federal Circuit has found such conduct insufficient to support a finding of estoppel. *See Meyers v. Brooks Shoe Inc.*, 912 F.2d 1459, 1464 (Fed. Cir. 1992), *overruled on other grounds sub nom.*, 960 F.2d 1020, 1038-39 (Fed. Cir. 1992) (". . . we do not believe that a suggestion of infringement coupled with an offer to license followed by silence would suffice to establish equitable estoppel.").[20]

Because TriZetto cannot establish by a preponderance of the evidence that McKesson misled TriZetto to reasonably infer an intent not to enforce the '164 patent against TriZetto, TriZetto's estoppel defense fails as a matter of law.

### 2. TriZetto's Conduct Indicates No Reliance on McKesson's Alleged Conduct.

TriZetto's estoppel defense also lacks evidentiary support because TriZetto cannot establish that it actually relied on McKesson's allegedly misleading conduct. Specifically, there is no evidence "that, in fact, [TriZetto] substantially relied on the misleading conduct of the patentee in connection with taking some action." *A.C. Aukerman Co.*, 960 F.2d at 1042-43.

**REDACTED**

---

[20] Such an accusation would not even support declaratory judgment jurisdiction.

15

REDACTED

REDACTED

REDACTED

---

[21]   Mr. Bellomo, Erisco's President, testified:

REDACTED

(Ex 9 at 212-13)

[22]   Mr. Margolis, TriZetto's CEO, testified:

REDACTED

*(cont'd)*

16

REDACTED

REDACTED

REDACTED

_____

*(cont'd from previous page)*

REDACTED

(Ex. 10 at 88-89)

[23]    Mr. Margolis, TriZetto's CEO, testified:

REDACTED

(Ex. 10 at 98-99.)

17

**REDACTED**

---

[24]   Mr. Bellomo, Erisco's President, testified:

**REDACTED**

**REDACTED**

(Ex. 7 at 206-07) (emphasis added).

**REDACTED**

(Ex. 7 at 205-06.)

**REDACTED**

(Ex. 7 at 207.)

[25]   Mr. Margolis, TriZetto's CEO, testified:

**REDACTED**

(Ex. 10 at 164.)

[26]   Mr. Margolis, TriZetto's CEO, testified:

*(cont'd)*

18

**REDACTED**

The evidence clearly shows that TriZetto and its predecessors did not take any actions or alter its behavior in any way because of the April 1997 meeting or a purported belief that McKesson did not intend to enforce its rights under the '164 patent. Consequently, estoppel cannot by law exist in the present case.

_____

*(cont'd from previous page)*

**REDACTED**

(Ex. 10 at 185-86 (emphasis added).)

[27] Craig Luftig, TriZetto's head of Facets Development, testified:

**REDACTED**

**REDACTED**

(Ex. 11 at 62-63).

19

3.    **TriZetto Suffered No Form of Prejudice.**

McKesson is also entitled to summary judgment as to estoppel because the evidence does not support a finding that TriZetto suffered economic or evidentiary prejudice as a result of McKesson's allegedly misleading conduct.

(a)    **Economic Prejudice is not Present**

To prove economic prejudice, TriZetto must establish that it will suffer economic loss because of its reliance on the allegedly misleading conduct. *See Tenneco Auto. Operating Co., Inc. v. Visteon Corp.*, 375 F. Supp. 2d 375, 383 (D. Del. 2005). The loss, however, cannot simply be "the damages normally associated with a finding of infringement" or costs associated with "business decisions to capitalize on a market opportunity." *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1371-72 (Fed. Cir. 2001). In *Ecolab*, the Federal Circuit affirmed the district court's grant of summary judgment for the plaintiff on the defendant's laches and estoppel defenses. *Id.* In particular, the Federal Circuit agreed with the district court's reasoning that:

> [T]he hiring of new employees, modification of equipment, and engagement in sales and marketing activities related to the [accused product] are damages normally associated with a finding of infringement and do not constitute the type of damages necessary for a finding of economic prejudice.

*Id.*

TriZetto cannot prove economic prejudice because, as shown above, TriZetto and its predecessors did not rely on any alleged statements or conduct regarding the nonenforcement of the '164 patent. Even assuming that TriZetto could establish the other essential elements of estoppel, TriZetto cannot show a nexus between McKesson's alleged conduct and the costs allegedly incurred or decisions made in connection with the sales of the accused products.

REDACTED

REDACTED

REDACTED

REDACTED

21

**REDACTED**

**REDACTED**

---

[28] Mr. Luftig, Erisco's Head of Facets Development, testified:

**REDACTED**

**REDACTED**

(Ex. 11 at 45-46.)

22

**REDACTED**

**REDACTED**

**REDACTED**

(Ex. 10 at 164-65.)

**REDACTED**

**REDACTED**

**REDACTED**

(Ex. 10 at 185-86 (emphasis added).)[29]


**REDACTED**


Because TriZetto

cannot establish any causal nexus between McKesson's alleged conduct and any alleged

economic harm, TriZetto must prove evidentiary prejudice to satisfy the third prong of its

estoppel defense.  As explained below, TriZetto cannot.

### (b)    Evidentiary Prejudice

> Evidentiary, or 'defense' prejudice, may arise by reason of a defendant's
> inability to present a full and fair defense on the merits due to the loss of
> records, the death of a witness, or the unreliability of memories of long
> past events, thereby undermining the court's ability to judge the facts.

---

[29] Mr. Luftig, TriZetto's Head of Facets Development, similarly testified:


**REDACTED**


**REDACTED**


**REDACTED**

(Ex. 11 at 62-63).

*A.C. Aukerman*, 960 F.2d at 1033. Where, "a deposed witness has indicated that he does not have a recollection of a particular fact, the lapse in memory is susceptible to more than one reasonable inference; in the absence of other evidence to support defendant's contention, its alleged evidentiary prejudice is no more likely than not." *Symbol Techs.*, 2004 WL 1770290, at *5. Ex. 24 "Like the absence of memory by a witness, the absence of a document that was once known to exist, without more, does not give rise to an inference of evidentiary prejudice." *Id.*

TriZetto cannot show that its alleged reliance on McKesson's actions or silence with regard to the '164 patent will prevent TriZetto from being able to present a full and fair defense on the merits. It is clear that the vast bulk of relevant evidence in this case is still available and that TriZetto has had ample opportunities to discover that evidence.

All named inventors of the '164 patent are still alive and were extensively deposed by TriZetto in this litigation. TriZetto deposed the inventors: Drs. Holloway, Hertenstein, and Goldberg for two days each, and Kelli Dugan for one day. The testimony of these inventors was used throughout the defendant's expert reports. The former President and CEO of HPR, the assignee of the patent when it was issued, Marcia Radosevich, also sat for a deposition.

TriZetto's invalidity defenses focus largely on prior-art patents and publications. Since these types of prior art must contain enabling disclosures of the invention, the document itself is the evidence of interest. *See Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1354 (Fed. Cir. 2003); *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1347 (Fed. Cir. 2000). No additional explanations or testimony are generally needed with respect to these types of prior art references.                **REDACTED**

**REDACTED**

TriZetto also has had the benefit of receiving during discovery numerous documents from the earlier GMIS v. HPR declaratory judgment litigation relating to the patent. In this prior litigation, which lasted from 1994 to 1995, GMIS sought (but failed to obtain) a declaration that the '164 patent was invalid, not infringed and unenforceable--contentions similar to those raised in the present litigation. The documents that McKesson produced from this earlier litigation include: the parties' pretrial memorandums; various motions for summary judgment and the related opposition motions; the expert reports on damages, infringement, prior art, technical aspects of the technology, and the patent application process; requests for admissions; interrogatory responses; requests for production of documents and things; and depositions of the named inventors and various executives of GMIS and HPR, including the former President and CEO of HPR, Marcia Radosevich.

Given the substantial amounts of relevant information that is available and has been discovered in this case, TriZetto cannot establish that any alleged reliance on McKesson's actions or silence regarding the '164 patent has impaired TriZetto's ability to present its case or has undermined the Court's ability to judge the facts.

**C.    McKesson is Entitled to Summary Judgment on the Issue of Laches.**

TriZetto's laches defense fails as a matter of law because TriZetto has insufficient evidence to prove that it suffered material prejudice as a result of McKesson's alleged delay in filing suit. "To gain the benefit of a laches defense in a patent infringement suit, the party asserting it must demonstrate its opponent's inexcusable delay in bringing its claim and establish material prejudice resulting from the delay." *Tyler Refrigeration*

*Corp. v. Kysor Indus. Corp.*, 601 F. Supp. 590, 604 (D. Del 1985), *aff'd*, 777 F.2d 687 (Fed. Cir. 1985); *see also A.C. Aukerman*, 960 F.2d at 1032. "[A]t all times, the defendant bears the ultimate burden of persuasion of the affirmative defense of laches." *Id.* at 1038. TriZetto cannot meet its burden in this case because the evidence does not establish the requisite nexus between the alleged delay and any economic injury purportedly suffered by TriZetto and because the alleged delay has not impaired TriZetto's ability to present its defense in this case.

### 1.    TriZetto is not Entitled to any Presumption of Material Prejudice.

As an initial matter, although a rebuttable presumption of material prejudice arises if the alleged infringer proves that the patentee delayed filing suit for more than six years (*Id.* at 1037), TriZetto lacks sufficient evidence to invoke the presumption. Specifically, TriZetto cannot prove that McKesson delayed for more than six years from the time McKesson had actual or constructive knowledge of infringement to the filing of this lawsuit because intervening events excuse a substantial portion of the alleged delay.

In determining the length of delay, courts "measure[] from the time the plaintiff knew or reasonably should have known of the defendant's alleged infringing activities to the date of suit." *Id.* at 1032. "A court must also consider and weigh any justification offered by the plaintiff for its delay." *Id.* at 1033. Justifications that have been recognized by as excusing a patentee's delay include other litigation,[30] licensing or

---

[30] *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 877 (Fed. Cir. 1991).

settlement negotiations with the accused infringer,[31] and changes in management of the patentee.[32]

Here, TriZetto appears to assert that HPR had actual or constructive knowledge of infringement by Erisco in or around 1994. Ex. 19 at 15-16. Although the evidence relied upon by TriZetto does not demonstrate actual or constructive knowledge at that time, even assuming TriZetto could prove knowledge as of 1994, three intervening events preclude a finding that McKesson delayed for more than six years during the ten-year period between 1994 and the filing of this lawsuit in 2004: (1) HPR's year-long litigation against competitor GMIS regarding the '164 patent;                **REDACTED**

          **REDACTED**                and (3) the change in management resulting from HBOC's purchase of HPR in 1997 and McKesson's acquisition of HBOC in 1998.

The Federal Circuit has held that any delay in suing the alleged infringer is tolled if the patentee is engaged in other litigation and the alleged infringer knows of the other litigation. *See A.C. Aukerman*, 960 F.2d at 1039; *Vaupel*, 944 F.2d at 877. In this case, shortly after the '164 patent issued, HPR became embroiled in litigation regarding the patent. In particular, GMIS sued HPR on January 31, 1994, seeking a declaratory judgment that the '164 patent was invalid, not infringed and unenforceable. The litigation with GMIS lasted a year, concluding in January 1995 as the result of a settlement.                **REDACTED**

---

[31] *RCA Corp. v. Data General Corp.*, 701 F. Supp. 456, 477 (D. Del. 1988), *aff'd*, 887 F.2d 1056 (Fed. Cir. 1989).

[32] *Genzyme Corp. v. Atrium Med. Corp.*, No. 00-958-MPT, 2003 U.S. Dist. LEXIS 12784 at *17 (D. Del. 2003). Ex. 22.

**REDACTED**                                    Accordingly, McKesson's

alleged delay in suing TriZetto is excused during the year-long period that HPR spent

litigating with GMIS.

Negotiations with the alleged infringer to settle or license the patent also excuse

delay in filing suit. *See RCA*, 701 F. Supp. at 477 (finding that the patentee's efforts to

license the patent to the alleged infringer "provides a justifiable excuse for the eleven

year delay in commencing this suit"); *Lemelson v. Wang Laboratories, Inc.*, 874 F. Supp.

430, 435 (D. Mass. 1994) ("I find that the ongoing correspondence between the parties,

the tone of the initial correspondence, and Patent Incentives' preoccupation with ongoing

patent litigation excuses its admittedly leisurely efforts to vindicate its claims against

DG.")


**REDACTED**

---

[33]    Mr. Bellomo, Erisco's President, testified:


**REDACTED**


(Ex. 7 at 204-05.)

[34]    Mr. Bellomo, Erisco's President, testified:


**REDACTED**


**REDACTED**

*(cont'd)*

**REDACTED**

A change in management of the patentee due to merger or acquisition also has been recognized as a valid reason for delay. *See Genzyme*, 2003 U.S. Dist. LEXIS 12784, at *17. Ex. 22. In *Genzyme*, the court found that a valid reason for the patentee's delay was the fact that it "underwent a change in management during the relevant time period. As a result, litigation remained a low priority until the 'dust settled.' *Id.*

During the relevant time period in this case, the patentee underwent two substantial changes in management as a result of two significant mergers. In September of 1997, HBOC acquired HPR for approximately $500 million in stock, resulting in a change of ownership of the patent rights and management. Ex. 14. Marcia Radosevich, the CEO of HPR, left the combined company shortly after the acquisition.[35] In October

_____

*(cont'd from previous page)*

**REDACTED**

(Ex. 7 at 70-71.)

Mr. Margolis, TriZetto's CEO, testified:

**REDACTED**

(Ex. 10 at 39-40 (emphasis added).)

[35]    Dr. Radosevich, HPR's President, testified:

**REDACTED**

*(cont'd)*

of 1998, McKesson acquired HBOC in a deal worth approximately $15 billion. Ex. 15. The acquisition resulted in a restructuring of the combined company's management and Board of Directors. Ex. 15. For example, Charles W. McCall, the former President and CEO of HBOC management resigned a few months later. Ex. 16. Because of the significant changes occurring to the patentee in 1997 and 1998 as a result of these two acquisitions, any alleged delay in filing suit is excused for at least the period from September 1997 to October 1998, if not longer to allow the "dust to settle."

As show above, the alleged ten-year delay is excused for at least four-and-a-half year period due to the prior GMIS litigation (1 year), **REDACTED**

**REDACTED**       , McKesson's acquisition of HBOC, and HBOC's acquisition of HPR (13+ months), TriZetto cannot establish that McKesson delayed filing suit for more than six years. Accordingly, TriZetto is not entitled to any presumption of material prejudice and must satisfy both the burden of production and persuasion as to that essential element. As shown below, TriZetto cannot meet its burden.

## 2.    TriZetto Cannot Prove Material Prejudice.

McKesson is also entitled to summary judgment as to estoppel because the evidence does not support a finding that TriZetto suffered economic or evidentiary prejudice as a result of McKesson's allegedly misleading conduct.

### (a)    Economic Prejudice

Proof of economic prejudice for laches requires a similar showing to the proof required for economic prejudice in an estoppel defense. TriZetto must establish a nexus

*(cont'd from previous page)*

**REDACTED**

(Ex. 8 at 27.)

between McKesson's alleged conduct and TriZetto's alleged economic injury; in the case

of laches, TriZetto must suffer injury "because of and as a result of the delay." *Hemstreet*

*v. Computer Entry Systems Corp.*, 972 F.2d 1290, 1294 (Fed. Cir. 1992). As the Federal

Circuit explained,

> "Such damages or monetary losses are not merely those attributable to a
> finding of liability for infringement.    Economic prejudice would then
> arise in every suit.    The courts must look for a change in the economic
> position of the alleged infringer during the period of delay."

*State Contracting & Engineering Corp. v. Condotte America, Inc.*, 346 F.3d 1057, 1066

(Fed. Cir. 2003) (quoting *A.C. Aukerman*, 960 F.2d at 1033).

In *State Contracting*, the Federal Circuit affirmed a district court's grant of

judgment as a matter of law rejecting the defendant's laches defense. 346 F.3d at 1065-

67. The Federal Circuit held that the district court had correctly rejected the defendant's

prejudice arguments that had the plaintiff sued earlier, the defendant would not have used

the infringing design or would have sought a design around. *Id.* at 1066. The Federal

Circuit concluded that "[t]he economic prejudice asserted by the [defendant] is limited to

the amount of their infringement liability and thus is not sufficient to support the laches

defense." *Id.*

In this case, TriZetto cannot show the type of economic harm sufficient to

establish economic prejudice or that a nexus exists between such harm and McKesson's

alleged delay.

**REDACTED**

Ex. 19 at 17. As the Federal Circuit has made clear though, these types of

losses are not sufficient to establish economic prejudice because they are "merely those

32

attributable to a finding of liability for infringement." *State Contracting*, 346 F.3d at 1066. Moreover, TriZetto's alleged harm has nothing to do with McKesson's alleged delay in filing suit.

Much of the evidence demonstrating a lack of nexus for TriZetto's laches defense has already been discussed in detail in Section IV.B.3.a above regarding TriZetto's failure to show economic prejudice for its estoppel defense. As explained in that section,

**REDACTED**

**REDACTED**

**REDACTED**

33

**REDACTED**

(Ex. 10 at 164.)

**REDACTED**

Ex. 10 at 169.

**REDACTED**

*See Meyers*, 912 F.2d at 1463 (failure to show prejudice from delay in filing suit when evidence indicated that the accused infringer would have continued its activity anyway; "[f]rom all that appears, [the accused infringer] would have followed the same course regardless of what [the plaintiff] did or did not do."). Accordingly, TriZetto cannot establish the requisite economic prejudice to establish its laches defense.

### (b)    Evidentiary Prejudice

The evidentiary prejudice required for laches is the same evidentiary prejudice required for estoppel-- "a defendant's inability to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts." *A.C. Aukerman*, 960 F.2d at 1033. For the reasons set forth in detail in Section IV.B.3.b above regarding TriZetto's failure to prove evidentiary prejudice for its estoppel defense, TriZetto cannot establish the evidentiary prejudice required by its laches defense.

34

**D.    McKesson is Entitled to Summary Judgment on the Issues of Waiver and Acquiescence.**

As part of its Eighth Affirmative Defense, TriZetto has also asserted waiver and acquiescence.  Both theories require proof of the same or similar elements required by TriZetto's estoppel defense.  "Waiver requires evidence of a voluntary and intentional relinquishment or abandonment of a known right." *Haghighi v. Russian-American Broad. Co.*, 173 F.3d 1086, 1088 (8th Cir. 1999).  The defense of acquiescence requires proof that (1) the plaintiff actively represented that it would not assert a right or a claim; (2) the delay between the plaintiff's active representation and assertion of its right or claim was not excusable; and (3) the delay caused defendant undue prejudice.  *See Coach House Rest., Inc. v. Coach & Six Rests., Inc.*, 934 F.2d 1551, 1558 (11th Cir. 1991).

As discussed above in Section IV.B.1 regarding TriZetto's estoppel defense, TriZetto has produced no evidence that McKesson or its predecessors ever voluntarily relinquished its patent rights with regard to TriZetto or actively represented that it would not assert its patent claims.                          **REDACTED**


**REDACTED**


Also, as shown in Section IV.C.2.a above, TriZetto has failed to prove that any alleged delay in the filing of this lawsuit prejudiced TriZetto.  Therefore, like the affirmative defense of estoppel, TriZetto's waiver and acquiescence defenses are entirely without merit and should be rejected as a matter of law.

35

## V.    LACHES IS NOT A DEFENSE TO WILLFUL INFRINGEMENT.

TriZetto appears to take the position that laches is a defense to willful infringement. In particular, TriZetto is relying on an opinion of counsel regarding laches to rebut evidence that it willfully infringed the '164 patent. The issue of laches, however, is irrelevant to the question of an alleged infringer's continued infringement because "laches bars relief on a patentee's claim *only with respect to damages accrued prior to suit.*" *A.C. Aukerman*, 960 F.2d at 1041 (emphasis added). The law is clear that laches does not absolve willful infringement or preclude injunctive relief:

> It is well established that "laches is not a defense against injunctive relief when the defendant intended the infringement." *Harlequin Enters. Ltd. v. Gulf & W. Corp.*, 644 F.2d 946, 950 (2d Cir. 1981). . . . This good-faith component of the laches doctrine is part of the fundamental principle that "he who comes into equity must come with clean hands." *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945). Thus, the appellees' intentional infringement is a dispositive, threshold inquiry that bars further consideration of the laches defense, not a mere factor to be weighed in balancing the equities, as the district court did in this case.

*Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107 (2d Cir. 2000). Accordingly, TriZetto cannot assert laches as a defense to McKesson's willful infringement claim and cannot rely upon an opinion of counsel regarding laches to rebut evidence of TriZetto's willfulness.

## VI.    CONCLUSION

For the reasons set forth herein, McKesson respectfully requests that the Court grant summary judgment that TriZetto's defenses of estoppel, laches, waiver, and acquiescence fail as a matter of law.

By: _____

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff McKesson
Information Solutions LLC

OF COUNSEL:
Jeffery G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500

DATED:  December 15, 2005

## CERTIFICATE OF SERVICE

I, Michael A. Barlow, hereby certify that on December 15, 2005, I electronically filed Plaintiff McKesson Information Solutions LLC's Motion for Summary Judgment Regarding Defendant's Eighth Affirmative Defense, Plaintiff McKesson Information Solution's Opening Brief In Support of Its Motion for Summary Judgment Regarding Defendant's Eighth Affirmative Defense, Transmittal Declaration of Michael A. Barlow, and proposed Order using CM/ECF, which will send notification of such filing to those designated below, and that I served the following persons in the manner listed:

**VIA CM/ECF**
Rodger D. Smith, II, Esq.
MORRIS NICHOLS ARSHT
  & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899

**HAND DELIVERY**
Jack B. Blumenfeld, Esq.
MORRIS NICHOLS ARSHT
  & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899

Michael A. Barlow (ID No. 3928)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000
mbarlow@skadden.com

438780.01-Wilmington S1A