IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 04-1258-SLR |
| | ) | |
| v. | ) | |
| | ) | **REDACTED PUBLIC VERSION** |
| THE TRIZETTO GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

---

**PLAINTIFF MCKESSON INFORMATION SOLUTIONS LLC'S
MEMORANDUM IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT OF INFRINGEMENT**

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff McKesson
 Information Solutions LLC

OF COUNSEL:
Jeffery G. Randall
David W. Hansen
Michael C. Hendershot
Jon V. Swenson
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500

Confidential Version Filed: December 15, 2005

Redacted Version Filed: December 22, 2005

## TABLE OF CONTENTS

PAGE

Table of Authorities .................................................................................................. ii

I.  STATEMENT OF THE NATURE AND STAGE OF THE
    PROCEEDING .............................................................................................1

II. SUMMARY OF ARGUMENT ..........................................................................2

III. SUMMARY OF RELEVANT FACTS ...............................................................5

IV. RELEVANT LEGAL STANDARDS ..................................................................9

    A.  Standard Of Review On Summary Judgment .............................................9

    B.  Standard For Patent Infringement .............................................................9

V.  MCKESSON IS ENTITLED TO SUMMARY JUDGMENT THAT
    TRIZETTO DIRECTLY INFRINGES CLAIM 3 OF THE '164 PATENT .........11

    A.  The Operations Of The Accused Systems Are Not In Dispute –
        TriZetto's Corporate Designees, Customers, And Executives
        Have All Admitted Infringement ..............................................................11

    B.  TriZetto's Infringement Expert Does Not Dispute The Operation
        Of The Accused Systems But Only Contends That Two Elements
        Of Claim 3 Are Not Met Under His Incorrect Claim Construction ...........13

    C.  TriZetto's Claim Constructions Are Incorrect And McKesson Is
        Entitled To Judgment As A Matter Of Law That TriZetto Directly
        Infringes Claim 3 Of The '164 Patent .....................................................14

        1.  The undisputed evidence demonstrates that the Accused
            Systems include a "predetermined database" under any
            reasonable interpretation of that element. ......................................15

        2.  The undisputed evidence demonstrates that the Accused
            Systems include means for ascertaining whether a claim
            contains a plurality of medical service codes under any
            reasonable interpretation of that element. ......................................20

VI. MCKESSON IS ENTITLED TO SUMMARY JUDGMENT THAT
    TRIZETTO DIRECTLY INFRINGES CLAIMS 6, 15, AND 16 OF
    THE '164 PATENT .......................................................................................23

VII. CONCLUSION ............................................................................................25

i

TABLE OF AUTHORITIES

PAGE(S)

CASES

*A.B. Dick Co. v. Burroughs Corp.*,
713 F.2d 700 (Fed. Cir. 1983) ................................................................................ 22

*ABB Automation v. Schlumberger Res. Mgmt. Servs.*,
254 F. Supp.2d 479 (D. Del. 2003) .................................................................. 10, 14

*ACTV, Inc. v. Walt Disney Co.*,
346 F.3d 1082 (Fed. Cir. 2003) .............................................................................. 17

*AFG Indus., Inc. v. Cardinal IG Co., Inc.*,
239 F.3d 1239 (Fed. Cir. 2001) .............................................................................. 22

*Altris, Inc. v. Symantec Corp.*,
318 F.3d 1363 (Fed. Cir. 2003) .............................................................................. 10

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).................................................................................................. 9

*Biagro Western Sales, Inc. v. Grow More, Inc.*,
423 F. 3d 1296 (Fed. Cir. 2005) .............................................................................. 9

*Cybor Corp. v. FAS Techs., Inc.*,
138 F. 3d 1448 (Fed. Cir. 1998) ............................................................................ 10

*Gart v. Logitech, Inc.*,
254 F.3d 1334 (Fed. Cir. 2001) .............................................................................. 10

*Innovad, Inc. v. Microsoft Corp.*,
260 F.3d 1326 (Fed. Cir. 2001) .............................................................................. 22

*Int'l Rectifier Corp. v. IXYS Corp.*,
361 F.3d 1363 (Fed. Cir. 2004) .............................................................................. 10

*Kemco Sales, Inc. v. Control Papers Co.*,
208 F.3d 1352 (Fed. Cir. 2000) .............................................................................. 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986).................................................................................................. 9

*Northern Telecom Ltd. v. Samsung Elecs. Co.,*
  215 F.3d 1281 (Fed. Cir. 2000) .............................................................................. 15, 20

*Pa. Coal Ass'n v. Babbit,*
  63 F.3d 231 (3d Cir. 1995) ............................................................................................ 9

*Pfizer, Inc. v. Teva Pharms. USA, Inc.,*
  2005 U.S. App. LEXIS 25123 (Fed. Cir. Nov. 22, 2005) ........................................... 17

*Phillips v. AWH Corp.,*
  415 F.3d 1303 (Fed. Cir. 2005) ............................................................................. 16, 17

*SanDisk Corp. v. Memorex Prods., Inc.,*
  415 F.3d 1278 (Fed Cir. 2005) ................................................................................... 17

*TAP Pharmaceutical Prods., Inc v. OWL Pharms., L.L.C.,*
  419 F.3d 1346 (Fed. Cir. 2005) ................................................................................... 10

*Tex. Digital Sys. v. Telegenix, Inc.,*
  308 F.3d 1193, 1202 (Fed. Cir. 2002) ......................................................................... 21

**STATUTES**

FED. R. CIV. P. 56(c) ........................................................................................................ 9

Plaintiff, McKesson Information Solutions LLC ("McKesson"), respectfully submits this opening memorandum in support of its motion for summary judgment that defendant, The TriZetto Group, Inc. ("TriZetto"), infringes claims 3, 6, 15 and 16 of McKesson's patent.

## I.     STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING.

McKesson filed the current lawsuit against TriZetto on September 13, 2004, and asserted that TriZetto has directly infringed McKesson's U.S. Patent No. 5,253,164 ("the '164 patent") by making, using, and offering to sell three infringing software products: Facets, QicLink, and ClaimFacts ("Accused Systems"). (D.I. 1.) The case has been bifurcated by the Court and issues relating to alleged patent invalidity have been stayed. (D.I. 132.) Issues relating to infringement, willfulness, and damages are set for trial on April 17, 2006, with a bench trial on equitable issues following afterwards. (D.I. 145.) The disputed terms of the patent at issue have yet to be construed by the Court and the parties have submitted proposals and briefing on this issue concurrently with this motion for summary judgment.

Fact and expert discovery has been completed on all issues with the exception of two witnesses that the Special Master has ordered must be re-deposed due to TriZetto's attorneys' improper instructions that prevented TriZetto's witnesses from testifying to relevant, non-privileged matter. During fact discovery, TriZetto's ██████████████ ████████████ admitted that the Accused Systems infringe the '164 patent claims

asserted by McKesson.[1] Based on the undisputed evidence gathered during discovery, and admissions made by TriZetto's infringement expert, McKesson now moves for summary judgment that TriZetto directly infringes claims 3, 6, 15 and 16 of the '164 patent.

## II.    SUMMARY OF ARGUMENT.

McKesson should be granted summary judgment that TriZetto infringes claims 3, 6, 15 and 16 of the '164 patent for the following reasons:

1.    Resolving whether a patent claim is directly infringed involves a two-step inquiry requiring a determination of the proper construction of the claim's terms -- a question of law -- followed by an examination of the accused product to determine whether every element of the claim as construed is present -- a question of fact.

2.    The undisputed material facts concerning the operation of TriZetto's Accused Systems establish that each of the Accused Systems infringe claim 3 of the '164 patent. TriZetto's ███████████████████ each admitted that the Accused Systems infringe every element of claim 3 of the '164 patent. In fact, all of these witnesses have admitted that the Accused Systems infringe all of the asserted claims. In addition, TriZetto's infringement expert does not contest the veracity of this testimony or dispute the relevant operations of the Accused Systems.

---

[1] McKesson has asserted all 16 claims of the '164 patent except claim 7, which deals with medical service codes that are no longer widely used. The evidence shows that TriZetto's Accused Systems infringe *all* of the asserted claims. McKesson has limited this motion to certain of those claims merely to simplify the motion while significantly narrowing the issues that will remain should the Court grant summary judgment in McKesson's favor.

3.    TriZetto's infringement expert's non-infringement argument is based solely on incorrect constructions of two terms of claim 3, namely, the "predetermined database" and "ascertaining whether the . . . claim contains a plurality of medical service codes" terms.

a)    *"Predetermined database"*:  TriZetto's expert admits that each Accused System contains a "database ... containing medical service codes and a set of relationships among the medical service codes," as specified by claim 3. TriZetto and its infringement expert argue, however, that the databases in its Accused Products are not "predetermined," which they incorrectly argue means "established by the vendor and not modifiable by the end user." Ex. N at 45:25-46:14.[2]  TriZetto's attempt to read these additional limitations into claim 3 is contrary to Federal Circuit authority and the express teachings of the '164 patent, which never mentions a "vendor" and describes a preferred embodiment in which the relationships in the database are refined and updated based on the user's experience.    TriZetto's Accused Products undeniably include databases containing medical service codes and relationships among the codes that are determined and fixed before the databases are provided to customers and before they are used to process claims, which is all that is required to satisfy the plain language of this claim term.

---

[2]  Citations to "Ex. ___ " are to documents attached as exhibits to the Declaration of Michael A. Barlow In Support of Plaintiff McKesson Information Solutions LLC's Motion for Summary Judgment of Infringement, dated December 15, 2005.

3

**b)**       *"Ascertaining whether the . . . claim contains a plurality of medical service codes"*:  TriZetto and its expert admit that medical claims often include more than one (*i.e.*, a "plurality") of medical service codes, and that the Accused Systems count and store the number of medical service codes contained in each medical claim.  They contend, however, that the Accused Systems do not "ascertain[] whether the at least one claim contains a plurality of medical service codes" as required by claim 3 because this term is limited to "[i]dentifying if the claim contains more than one medical service code *in order to determine whether multiple code edits should be checked*." Ex. B at 15 (emphasized portion does not appear in the "ascertaining" element of claim 3).  Nothing in the language of the '164 patent or claim 3 supports TriZetto's narrow construction, and TriZetto's attempt to contort the plain meaning of this claim term highlights that there is no genuine dispute that the Accused Systems infringe claim 3.  TriZetto's Accused Systems undeniably identify whether a claim contains one or more than one (*i.e.*, a "plurality") medical service codes, all that is required to satisfy this claim term.

4.       Claim construction is a question of law for the Court.  TriZetto's attempt to avoid a finding of infringement by improperly narrowing the plain meaning of the disputed terms of claim 3 is contrary to Federal Circuit authority and demonstrates the absence of any genuine issues of material fact.  McKesson is therefore entitled to judgment as a matter of law that TriZetto's Accused Products infringe claim 3 of the '164 patent.

4

5.    There are also no disputed issues of material fact concerning the operation of the Accused Systems relevant to claims 6, 15, and 16 of the '164 patent and summary judgment should be entered in McKesson's favor in connection with these claims as well. As to claim 6 (which depends from claim 3), there is no dispute that TriZetto's Accused Systems use the standard "CPT" medical service codes required for infringement of this claim. The elements of claims 15 and 16 are similar to the elements of claim 3, and there is no factual dispute that TriZetto's Accused Products also infringe these claims.

Granting summary judgment in McKesson's favor on any or all of the claims that are the subject of this motion will significantly narrow the issues for trial and simplify the case for the jury. Because most of the claims of the '164 patent asserted by McKesson contain elements that are common to claim 3, even if the Court only grants summary judgment of infringement of claim 3, the case will be significantly narrowed for trial and the jury can focus on the few elements of the remaining claims. In many cases there would be as few as one element for a jury to decide in each independent claim.

## III.    SUMMARY OF RELEVANT FACTS.

The '164 patent describes and claims the use of computer systems and computer implemented methods for analyzing, detecting, and correcting problems with medical claims. Ex. A. A medical claim is akin to a bill or invoice submitted by a service provider (*e.g.*, a physician) to the organization responsible for a patient's medical expenses (*e.g.*, an insurance company) to request payment for medical services provided to that patient. A medical claim typically includes one or more codes representing particular medical services performed by a provider for which payment is being sought.

5

The most common form of these medical service codes is the Current Procedural Terminology codes ("CPT" or "CPT-4" codes), which are published by the American Medical Association. Medical service codes are typically associated with a previously negotiated fee that establishes how much a particular provider will be paid for performing the service represented by the medical service code. Thus, the medical service codes listed on a medical claim determine the amount a service provider should be paid for that claim.

The '164 patent describes the use of a computer system and method for analyzing medical service codes submitted on a medical claim to detect and correct errors or problems that may result in inappropriate payment. One of the specific problems that the '164 patent addresses is the submission of medical claims containing what are commonly referred to as "unbundled" medical service codes. Unbundling involves the submission of medical service codes corresponding to individual components of an overall procedure instead of, or in addition to, the single comprehensive code for that procedure. For example, the comprehensive medical service code for an appendectomy procedure includes certain procedures that are considered integral to the main procedure (*e.g.*, an incision, removal of the appendix, and stitches), and these procedures should not separately be authorized for payment. Unbundling often results in a higher bill than if the claim appropriately included only the comprehensive code.

Correction of these errors in the system described in the '164 patent is done through the use of a knowledge-based computer system that contains a database of medical service codes with relationships among those codes. The relationships define

6

whether it is appropriate to pay the fee associated with medical service codes when submitted for payment with other medical service codes. The system and method described and claimed in the '164 patent provide the ability to consistently catch and process inappropriately coded claims that might otherwise go undetected and result in overpaying for medical services. For example, claim 3 describes:

[A]   A computer system including a central processing unit and associated memory for processing input claims containing at least one medical service code, comprising:

[B]   a predetermined database stored in the associated memory, the database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when received with other selected ones of the medical service codes;

[C]   means for receiving at least one claim;

[D]   means for ascertaining whether the at least one claim contains a plurality of medical service codes;

[E]   means for determining whether one of the medical service codes in the plurality of medical service codes is valid or invalid by interacting with the database and the set of relationships contained in the database;

[F]   means for authorizing medical service codes which are valid in response to the means for determining; and

[G]   means for rejecting medical service codes which are invalid in response to the means for determining.

Ex. A, col. 117.

TriZetto markets each of the Accused Systems to its customers for use in medical claims processing. Each of the Accused Systems includes features to address the medical coding problems identified in the '164 patent and addressed by its claims. Although each of the three Accused Systems are marketed to different segments of the claims processing

7

community, each of these products contain common infringing functionality and TriZetto's fact and expert witnesses have testified that there is no material distinction among the Accused Systems. *See* Ex. K at 130:9-132:24.

During discovery in this case, TriZetto's ███████████████████████ ████████ have testified that the Accused Systems each include every element of claim 3. Ex. D. Indeed, these witnesses expressly acknowledged that the Accused Systems actually infringe claim 3. *See* Chart, page 12 *infra*. TriZetto's infringement expert does not dispute the witnesses' description of the Accused Systems' operation, and he testified that they include all but two elements of claim 3, for which TriZetto has proposed special, contorted meanings. Ex. N at 295:6-17, 296:12-19.

The first dispute involves element [B] in claim 3 listed above, and concerns the meaning of the term "predetermined." McKesson has construed this term according to its ordinary meaning. In contrast, TriZetto's construction includes numerous unstated limitations:

> A database containing a single computer readable table that is designed to be modified or updated only by the system designer or vendor, and that is not designed to be modifiable by the end user.

Ex. B at 2.

The second dispute involves element [D] of claim 3, the "means for ascertaining whether the at least one claim contains a plurality of medical service codes." Until a week ago, the parties agreed that the "ascertaining" function of this element did not require construction. Ex. C at 6. However, TriZetto belatedly provided a new construction on December 13 that added a lengthy, unstated limitation to this term:

8

Identifying if the claim contains more than one medical service code *in order to determine whether multiple code edits should be checked.*

Ex. B at 15 (emphasis added).

## IV.   RELEVANT LEGAL STANDARDS.

### A.   Standard Of Review On Summary Judgment.

Summary judgment is proper if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). The court should "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbit*, 63 F.3d 231, 236 (3d Cir. 1995). If the moving party has shown an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita* at 587 (quoting FED. R. CIV. P. 56(e)). The mere existence of some evidence supporting the nonmoving party will not defeat a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, there must exist "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

### B.   Standard For Patent Infringement.

"An infringement analysis proceeds first to claim construction to determine the scope and meaning of the asserted claims, and second to a comparison of the properly construed claims with the allegedly infringing product to determine whether the product embodies every limitation of the claims." *Biagro Western Sales, Inc. v. Grow More, Inc.*,

423 F. 3d 1296, 1301 (Fed. Cir. 2005) (citing *Cybor Corp. v. FAS Techs., Inc.*, 138 F. 3d 1448, 1454 (Fed. Cir. 1998) (*en banc*)).  The construction of claim terms is a question of law and the analysis of the accused product is a question of fact.  Accordingly, "[w]here the parties do not dispute any relevant facts regarding the accused product ... but disagree over possible claim interpretations, the question of literal infringement collapses into claim construction and is amenable to summary judgment." *Int'l Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363, 1374-75 (Fed. Cir. 2004) (quoting *General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 983 (Fed. Cir. 1997)).  In cases like this one where only disputes of claim construction are involved, summary judgment of infringement may be granted once the court construes the disputed claim terms.  *See, e.g., TAP Pharmaceutical Prods., Inc v. OWL Pharms.*, L.L.C., 419 F.3d 1346, 1350 (Fed. Cir. 2005); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001).  Summary judgment of infringement cannot be avoided by relying on a claim construction not adopted by the court or by presenting conclusory statements of non-infringement.  *ABB Automation v. Schlumberger Res. Mgmt. Servs.*, 254 F. Supp. 2d 479, 481-482 (D. Del. 2003).

For claims written in means-plus-function language subject to 35 U.S.C. § 112, ¶6, determination of the claimed function and corresponding structure is a question of law to be decided by the court.  *Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352, 1360 (Fed. Cir. 2000).  Once the court has construed the means-plus-function elements, summary judgment on infringement may be granted.  *See, e.g, Altris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1378 (Fed. Cir. 2003).

10

## V.    MCKESSON IS ENTITLED TO SUMMARY JUDGMENT THAT TRIZETTO DIRECTLY INFRINGES CLAIM 3 OF THE '164 PATENT.

There is no factual dispute concerning the relevant aspects of the Accused Systems. The undisputed testimony from TriZetto's ███████████████ ██████████ demonstrates that the Accused Systems infringe claim 3. TriZetto's own expert identifies only two claim elements he contends are not present in the Accused Systems, and this argument improperly requires that these elements be interpreted to include extraneous limitations that are contrary to the elements' plain meaning, contradict the '164 patent's express teachings, and exclude its preferred embodiment. Because TriZetto's restrictive construction of these elements is wrong and there is no dispute as to the relevant functionality of the Accused Systems, McKesson is entitled to summary judgment of infringement of claim 3 against TriZetto.

### A.    The Operations Of The Accused Systems Are Not In Dispute – TriZetto's Corporate Designees, Customers, And Executives Have All Admitted Infringement.

The relevant facts regarding the operation of TriZetto's Accused Systems are not in dispute. Indeed, ████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████ testified that the Accused Systems include every element recited in claim 3 of the '164 patent:

| TRIZETTO'S CUSTOMERS |
| --- |
| **Q.** Based on your understanding, Ms. Drini, does the Facets system comprise the components described in claim 3? ***<br>**[A]** Based on my understanding, I would say yes.<br><br>*--Providence Health Plan 30(b)(6) at Ex. U, 69:18-23* |

11

**Q.** With respect to Claim 3, does the Facets System include the components described in Claim 3?
**A.** (Witness peruses document.) Yes.
*-- Premera Blue Cross 30(b)(6) at Ex. T, 31:24-32:3*



**Q.** . . . And every element of Claim 3 described here in the '164 patent is included within ClaimFacts with ClinicaLogic as you received it from TriZetto?
**A.** Yes.

*--Harrington Benefits 30(b)(6) at Ex. O, 116:15-21*

**Q.** With respect to claim 3, the question is just slightly different. Does QuicLink [sic] with ClinicaLogic contain the components described in claim 3?
**A.** Yes.

*--Key Benefit Administrators 30(b)(6) at Ex. P, 30:19-23*

| TRIZETTO'S CORPORATE DESIGNEES |
|---|

**Q.** With that in mind, would you agree that the TriZetto ClaimFacts system contains all of the elements described in both claim 3 and claim 4?
**A.** Yes.

*--TriZetto 30(b)(6) designee, K. Lampe at Ex. Q, 73:11-14*

**Q.** Thank you. Having reviewed claim 3 of the '164 patent, are there any elements within claim 3 that are not practiced by the QicLink product?
**A.** No, there isn't.

*--TriZetto 30(b)(6) designee, J. Danza at Ex. M, 100:12-16*



As illustrated in the claim chart attached as Ex. D, the undisputed evidence establishes that the Accused Systems: (1) operate in a computer system with a central

processing unit and associated memory (Claim 3[A]);[3] (2) include a database containing medical service codes and a set of relationships determined by TriZetto that define whether selected medical service codes are appropriate for payment when received with other selected medical service codes (Claim 3[B]); (3) receive medical claims containing at least one medical service code for processing by the computer system (Claim 3[C]); (4) ascertain how many medical service codes are contained on a medical claim (Claim 3[D]); (5) include software for interacting with the database of medical service codes and relationships to determine if the medical service codes on a claim are appropriate for payment (Claim 3[F]); (6) authorize medical service codes that are determined to be appropriate for payment (Claim 3[G]); and (7) reject medical service codes that are determined to be inappropriate for payment (Claim 3[H]).

### B.    TriZetto's Infringement Expert Does Not Dispute The Operation Of The Accused Systems But Only Contends That Two Elements Of Claim 3 Are Not Met Under His Incorrect Claim Construction.

TriZetto's infringement expert does not raise any issue of fact regarding the Accused Systems' direct infringement of claim 3.  He does not contest the relevant operation and features of the Accused Systems as described by TriZetto's witnesses and

---

[3] In addition to alleging that TriZetto has directly infringed the '164 patent, McKesson has also alleged that TriZetto has indirectly infringed the patent by contributing to and inducing direct infringement by TriZetto's customers who use the Accused Systems to actually audit medical claims.  TriZetto has not disputed the facts surrounding its contributory or inducement of infringement including the fact that there is no substantial non-infringing use and that TriZetto markets, instructs, trains, and installs the Accused Systems to audit medical claims using a computer system.  Rather, TriZetto only asserts that under its interpretation of the '164 patent claims, the Accused Systems do not infringe when they are used by TriZetto's customers.

███████ and he agrees that the Accused Systems infringe nearly all of the elements of

claim 3 -- citing only two elements he contends are not infringed:[4]

> **Q.** With respect to Claim 3, would you agree that the only dispute regarding whether or not the three accused systems infringed that claim is the word "predetermined" and the element that states "means for ascertaining whether the at least one claim contains a plurality of medical service codes"?

> **A.** Those are the distinctions I would make at the moment, yes.

> **Q.** And those are the only ones?

> **A.** These are the only ones I know of right now, yes.
> ...

> **Q.** The three systems include all of the components of Claim 3 except for the term "predetermined" and except for, in your opinion, the element that says means for ascertaining whether the at least one claim contains a plurality of medical service codes" correct?

> **A.** That I will agree with.

Ex. N at 295:6-17, 296:12-19.

The defenses to infringement relied upon by TriZetto's expert raise only issues of

law (claim construction) amenable to summary judgment, not issues of fact.

> **C.    TriZetto's Claim Constructions Are Incorrect And McKesson Is Entitled To Judgment As A Matter Of Law That TriZetto Directly Infringes Claim 3 Of The '164 Patent.**

TriZetto's proposed constructions of the disputed claim elements are incorrect and

McKesson is therefore entitled to summary judgment against TriZetto for infringement of

claim 3. *See ABB Automation*, 254 F. Supp. 2d at 481-82.

---

[4] Ex. H includes TriZetto's expert's deposition testimony relating to each individual element of claim 3.

1.   **The undisputed evidence demonstrates that the Accused Systems include a "predetermined database" under any reasonable interpretation of that element.**

TriZetto's infringement expert admits that the Accused Systems each include a "database stored in the associated memory, the database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when received with other selected ones of the medical service codes." *See* Ex. N at 280:9-23. He argues, however, that the Accused Systems do not infringe because the "predetermined database" element of claim 3 is limited to a database "containing a single computer-readable table that is designed to be modified or updated only by the system designer or vendor, and that is not designed to be modifiable by the end user." Ex. B at 2. TriZetto's attempt to narrow this claim element by adding these unstated limitations is clearly incorrect.

As a practical matter, TriZetto's proposed construction cannot be correct since it would permit anyone to avoid infringement merely by arbitrarily partitioning the database into more than one table or tasking anyone other than the "system designer or vendor" with updating the database.

In addition, the "predetermined database" element does not include the unstated limitations proposed by TriZetto. The Federal Circuit has "repeatedly and clearly held" that it is improper to "read unstated limitations into claim language." *Northern Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281, 1290 (Fed. Cir. 2000).

Moreover, the '164 patent does not even suggest that a "system designer or vendor" should design the database of medical service codes to prohibit modification by

15

the user. Indeed, the '164 patent does not include the words "vendor" and "system designer."

In fact, the '164 patent's description of the preferred embodiment repeatedly and unambiguously explains that the database of medical service codes and relationships can and should be modified based on the user's experience:

- "There is included a knowledge base and a knowledge base interpreter which applies the knowledge base using the rules specified in the knowledge base interpreter. The process is an ongoing process which can be updated as new methods of inappropriate coding are discovered." Ex. A, at col. 3, ln. 32-27.

- "When the knowledge base interpreter has recommended approval of payment of a particular type, the user 3 then may authorize payment to the provider of the processed claim or may forward that information via input into computer system 4. A history database 7 is provided to update and refine the knowledge base interpreter 5 and the knowledge base 6 and to monitor savings associated with the recommendation." *Id.* at col. 4, ln. 64 - col. 5, ln. 3.

- "In step 39 the PROCESS database 17 is appended to the HISTORY database 40 for recordkeeping purposes and for future use as a means to study these 'case histories' and refine, update and change the rules and the knowledge base interpreter 5." *Id.* at col. 10, ln. 3-7.

- "Since the invention resides in a programmed computer of the automatic programming category, the development of this HISTORY database 40 may lead to the development of new rules and a growth and refinement of the knowledge base interpreter 5." *Id.* at col. 10, ln. 55-60.

As these passages illustrate, the specification suggests that database modification can be made by users based on their claims processing experiences. It would therefore be completely improper to limit the term "predetermined database" as suggested by TriZetto. *See, e.g., Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (*en banc*) (limitations should only be read into claims if the specification reveals "an intentional disclaimer, or disavowal, of claim scope by the inventor").

16

Further, TriZetto's proposed construction would also exclude the preferred embodiment. The Federal Circuit has made clear that "[a] claim construction that excludes a preferred embodiment . . . is rarely, if ever, correct." *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 2005 U.S. App. LEXIS 25123 at *18 (Fed. Cir. Nov. 22, 2005) (quoting *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1285 (Fed Cir. 2005)).

TriZetto's improperly narrow claim construction is nothing more than a transparent attempt to circumvent the undisputed evidence establishing that each of the Accused Systems include the claimed "predetermined database" under any reasonable construction of the term.

Moreover, the "context of the surrounding words of the claim . . . must be considered in determining the ordinary and customary meaning of [the claim's] terms" *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003); *see also Phillips*, 415 F.3d at 1314.

> "Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

*Phillips*, 415 F.3d at 1316 (citation omitted).

Claim 3 is directed to a computer system for processing medical claims containing medical service codes to determine whether the codes in the claim are appropriate for payment. This determination is made based on relationships between the medical service codes in the "predetermined database." To comport with the overall context of claim 3 and the specification's description of the invention, the only

17

requirement is that the code relationships in the database be set at the time the medical

claims are processed.

It is undisputed that the databases of medical service codes and relationships in

the Accused Systems are determined and preset prior to processing claims:



**THE DATABASE IN TRIZETTO'S PRODUCTS IS PREDETERMINED AT THE TIME OF CLAIM PROCESSING**

The undisputed evidence further demonstrates that the medical service codes and

relationships between those codes in the database of each Accused System are

predetermined by TriZetto before being provided to a customer:

| **THE MEDICAL SERVICE CODES AND RELATIONSHIPS IN THE ACCUSED SYSTEMS' DATABASES ARE PREDETERMINED BY TRIZETTO WHEN PROVIDED TO A CUSTOMER** |
|---|
| Q.  And it has a predetermined database containing medical service codes; correct? |
| A.  Yes. |
| Q.  And the database has a set of relationships among the medical service codes; correct? |

**A.** Yes.

> *--Key Benefit Administrators 30(b)(6) designee at Ex. P, 21:17-22;*

----

**Q.** ... ClinicaLogic within ClaimFacts includes a database of medical service codes and some relationships among those medical and service codes that define whether or not those codes are valid or invalid when bundled together? ***

**A.** I believe that—how I understand your question is, yes, there are—there are standards set within the ClinicaLogic software piece of ClaimCheck—ClaimFacts that—that do state whether or not two codes could be billed together, things along that nature.

**Q.** And the contents of that database are predetermined by TriZetto before they ship the product to Harrington?

**A.** Yes.

> *--Harrington Benefits 30(b)(6) designee at Ex. O, 57:6-24;*

----

**Q.** So we get this, I want to get my terminology correct. ClaimFacts is a system that has integrated into it ClinicaLogic and this database that has a predetermined set of relationships between medical service codes; is that right?

**A.** Yes, I would say that's correct.

> *--TriZetto 30(b)(6) designee, K. Lampe at Ex. Q, 58:13-18;*

[REDACTED]

----

**Q.** And the database of ClinicaLogic within QicLink when it ships to a customer and the database being the medical service codes and the relationships among those are predetermined before the product is shipped to the customer, is that right?

**A.** Yes, that's right.

> *--TriZetto 30(b)(6) designee, J. Danza at Ex. M, 66:11-17;*

The facts are clear and uncontested. The database of medical service codes and relationships in the Accused Systems are "predetermined" under any reasonable construction of the term.

2.    **The undisputed evidence demonstrates that the Accused Systems include means for ascertaining whether a claim contains a plurality of medical service codes under any reasonable interpretation of that element.**

TriZetto's contention that the Accused Systems do not "ascertain[] whether the at least one claim contains a plurality of medical service codes" is also wrong. TriZetto's expert admits that the Accused Systems count and store the number of medical service codes contained on a claim -- a process that by definition ascertains whether a claim has one or more than one (*i.e.*, a "plurality") medical service code. *See, e.g.*, Ex. N at 292:13, 20, 22 (each Accused System determines a "maximum line number" of medical service codes on a claim to be processed and "determines how many they are -- there are. ... So it knows how many it has to do."). Again, TriZetto does not dispute the relevant operation of its products but instead attempts to improperly narrow the meaning of clear claim language.

TriZetto and its expert argue that "ascertaining whether the at least one claim contains a plurality of medical service codes" is limited to "[i]dentifying if the claim contains more than one medical service codes *in order to determine whether multiple code edits should be checked.*" Ex. B at 15 (emphasis added); Ex. N at 283:4-8 ("none of these systems ascertain whether there's a plurality of medical service codes. *They never make a decision based on whether there is one or more than one.*") (emphasis added). There is no support for reading such a limitation into this function. Indeed, TriZetto did not even contend that this term required construction until a week ago. *See* Ex. C at 6.

20

As with the "predetermined database" element of claim 3, the "ascertaining" element does not include the unstated limitations proposed by TriZetto. Again, the Federal Circuit has "repeatedly and clearly held" that it is improper to "read unstated limitations into claim language." *Northern Telecom*, 215 F.3d at 1290. If the inventors had intended this element to be restricted as TriZetto's argues, they would simply have said so. *See Tex. Digital Sys. v. Telegenix, Inc.*, 308 F.3d 1193, 1202 (Fed. Cir. 2002) (there is a "heavy presumption" that the claims "mean what they say" and possess the "full range" of their ordinary meaning).

Moreover, nothing in the actual language of this element requires or even suggests that the determination of whether the claim includes a "plurality" of codes must be tied to a particular decision or purpose.[5] This element simply describes making a determination whether a medical claim contains more than one code -- a determination each of the Accused Systems makes by identifying the number of medical service codes on every claim they receive. As in the '164 patent, this function is admittedly performed in the Accused Systems by software that counts the number of medical service codes on a claim.

TriZetto's expert also argues that the Accused Systems do not infringe because they contain *additional* functionality. He does this by emphasizing in his report that the

---

[5] The subsequent element in claim 3 recites: "means for determining whether one of the medical service codes in the plurality of medical service codes is valid or invalid by interacting with the database and the set of relationships contained in the database." TriZetto's expert agrees that this element is present in each of the Accused Systems. *See* Ex. N at 294:16 ("Yes, they can do that.")

Accused Systems can process claims with a single medical service code and can perform clinical editing across multiple claims. Ex. E at 26. These arguments are plainly irrelevant to whether the Accused Systems infringe claim 3.

Claim 3 describes a "computer system ... comprising" a series of component elements. The Federal Circuit has "consistently held that the word 'comprising' is an open transition phrase." *AFG Indus., Inc. v. Cardinal IG Co., Inc.*, 239 F.3d 1239, 1245 (Fed. Cir. 2001). "When a claim uses an 'open' transition phrase, its scope may cover devices that employ additional, unrecited elements." *Id.* at 1244. The fact that the Accused Systems include components and functionality *in addition* to each element recited in claim 3 has no bearing TriZetto's direct infringement of claim 3:

> It is fundamental that one cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device. *See Temco Electric Motor Co. v. Apco Manufacturing Co.*, 275 U.S. 319, 328, 48 S.Ct. 170, 173, 72 L.Ed. 298 (1928). For example, a pencil structurally infringing a patent claim would not become noninfringing when incorporated into a complex machine that limits or controls what the pencil can write.

*A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 703 (Fed. Cir. 1983); *Innovad, Inc. v. Microsoft Corp.*, 260 F.3d 1326, 1333 (Fed. Cir. 2001) ("by using the transition term 'comprising' at the outset of the claim, the claim drafter signaled that an accused device could have additional elements ... beyond those expressly recited and still literally fall within the claim terms").

The undisputed evidence clearly establishes that the Accused Products directly infringe claim 3 of the '164 patent. Summary judgment in favor of McKesson is thus appropriate.

**VI.   MCKESSON IS ENTITLED TO SUMMARY JUDGMENT THAT
TRIZETTO DIRECTLY INFRINGES CLAIMS 6, 15, AND 16 OF THE
'164 PATENT.**

For the same reasons discussed above in connection with claim 3, summary

judgment of TriZetto's direct infringement of claims 6, 15, and 16 of the '164 patent is

also appropriate.  As with claim 3, the relevant facts surrounding the operation of the

Accused Systems are not in dispute and the only additional defenses -- if any -- TriZetto

advances for these claims are legal claim construction arguments.

Claim 6 is a dependent claim that incorporates all the elements of claim 3 and

further requires that that the specified medical service codes include "medical service

codes described by CPT codes."  There is no dispute that the medical service codes

utilized in the databases of the Accused Systems include CPT codes, and numerous

witnesses conceded during deposition that the Accused Systems include the elements of

claim 6.  Ex. F.

Claims 15 and 16 are independent claims that contain every element of claim 3

with one exception:  they cover authorizing and rejecting *claims* where claim 3 covers

authorizing and rejecting *codes*.  All three claims (3, 15, and 16) have the same steps,

including the same step to determine whether medical service codes are valid or invalid

for payment.  TriZetto's expert's non-infringement opinion with respect to these claims is

based on the two identical issues of claim construction relating to "predetermined" and

ascertaining whether there is a plurality of medical service codes on a claim that are

discussed above.  For the reasons discussed above, these arguments are wrong and do not

defeat summary judgment.  TriZetto's only remaining dispute with claims 15 and 16 is

23

another issue of claim construction,[6] namely, TriZetto's expert's assertion is that the Accused Systems do not infringe claims 15 and 16 because they never authorize claims *in response to* the determining step. Once again, this analysis is based on faulty application of the law of claim construction.

TriZetto's expert concedes that all of the Accused Systems actually authorize claims. He argues, however, that "[c]linical editing is only one part of a much larger process" in the Accused Systems and therefore the Accused Systems' authorization of claims is not done in response to a determination that a code is valid or invalid. Ex. E at 34. However, claims 15 and 16, like all of the independent claims of the '164 patent, include the open-ended transition, "comprising." Thus, whether the Accused Systems authorize claims in response to factors *in addition* to a determination that the codes on the claim are valid or invalid is insufficient to establish noninfringement as a matter of law. The fact remains that the Accused Systems do authorize claims in response to several determinations and one of these determinations is the determining step present in claims 15 and 16. Therefore, the undisputed evidence establishes that Accused Systems perform each of the steps listed in claims 15 and 16 and McKesson is entitled to summary judgment.

---

[6] Similar to claim 3, TriZetto's ███████████████████████ have all admitted that the Accused Systems contain every element of claims 15 and 16. *See* Ex. G.

24

VII.  **CONCLUSION**

For the reasons set forth herein, McKesson respectfully requests that the Court grant summary judgment that TriZetto's Accused Systems each directly infringe claims 3, 6, 15, and 16 of the '164 patent.

By: _____

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff McKesson
  Information Solutions LLC

OF COUNSEL:
Jeffery G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500


DATED: December 15, 2005

## CERTIFICATE OF SERVICE

I, Michael A. Barlow, hereby certify that on December 15, 2005, I electronically filed Plaintiff McKesson Information Solutions LLC's Motion for Summary Judgment of Infringement, Plaintiff's McKesson Information Solutions LLC's Opening Brief In Support of Its Motion for Summary Judgment of Infringement, Transmittal Declaration of Michael A. Barlow, and proposed Order using CM/ECF, which will send notification of such filing to those designated below, and that I served the following persons in the manner listed:

**VIA CM/ECF**
Rodger D. Smith, II, Esq.
MORRIS NICHOLS ARSHT
  & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899

**HAND DELIVERY**
Jack B. Blumenfeld, Esq.
MORRIS NICHOLS ARSHT
  & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899

Michael A. Barlow (ID No. 3928)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000
mbarlow@skadden.com

438779.01-Wilmington S1A