IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE TRIZETTO GROUP, INC.,<br><br>Defendant. | CIVIL ACTION NO. 04-1258-SLR<br><br>**REDACTED PUBLIC VERSION** |

<u>**PLAINTIFF'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE AND/OR STRIKE THE OPINIONS OF JESSE DAVID, PH.D.**</u>

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff
McKesson Information Solutions LLC

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500

Confidential Version Filed December 20, 2005

Redacted Public Version Filed December 23, 2005

# TABLE OF CONTENTS

**Page**

I. Nature and Stage of Proceedings. ...........................................................................1

II. Summary of Argument. ...........................................................................................1

III. Summary of Relevant Facts. ....................................................................................2

IV. The Court Should Exclude Dr. David's Opinions Because They Are Unreliable And Inadmissible. ...............................................................................4

    A. Relevant Legal Standard. .............................................................................4

    B. The Court Should Strike the Portions of Dr. David's Expert Report that Reference the Previously Undisclosed TriZetto Documents and Exclude Dr. David from Giving Testimony Based on Those Materials. ......................................................................................................6

    C. Dr. David's Opinion Regarding Lost Profits Is Unreliable Because Dr. David Applies the Wrong Methodology. ...............................................10

V. Conclusion. ...........................................................................................................13

# TABLE OF AUTHORITIES

<u>Page(s)</u>

## CASES

*Am. Stock Exch., LLC v. Mopex, Inc.*,
   215 F.R.D. 87 (S.D.N.Y. 2002) .................................................................................. 5

*Fonar Corp. v. General Elec. Co.*,
   107 F.3d 1543 (Fed. Cir. 1997) ................................................................................ 10

*ISCO Int'l, Inc. v. Conductus, Inc.*,
   No. Civ. A. 01-487, 2003 WL 280223 (D. Del. Feb. 10, 2003) ................................ 11

*Oxford Gene Tech. Ltd. v. Mergen Ltd.*,
   345 F. Supp. 2d 431 (D. Del. 2004) ........................................................................ 4, 5

*Praxair, Inc. v. ATMI, Inc.*,
   231 F.R.D. 457, 463 (D. Del. 2005) .................................................................. 5, 6, 9

*Rite-Hite Corp. v. Kelley Co.*,
   56 F.3d 1538 (Fed. Cir. 1995) .................................................................................. 10

## STATUTES

FED. R. CIV. P. 37(c)(1) .................................................................................................... 5

Plaintiff McKesson Information Solutions LLC ("McKesson") respectfully submits its opening brief in support of its motion to exclude and/or strike the opinions of Jesse David, Ph.D., defendant The TriZetto Group, Inc.'s ("TriZetto") damages expert.

## I. NATURE AND STAGE OF PROCEEDINGS.

On September 13, 2004, McKesson filed this lawsuit against TriZetto for willfully infringing McKesson's U.S. Patent No. 5,253,164 ("the '164 patent"). (D.I. 1.) TriZetto filed an Answer and Counterclaim on November 1, 2004. (D.I. 10.)

Document discovery in this case closed on May 13, 2005. (D.I. 28.) Fact discovery was originally scheduled to be completed by August 26, 2005. (*Id.*) However, at TriZetto's request, the Court extended the fact discovery deadline to September 16, 2005. (D.I. 58.) Opening expert reports, including the report of McKesson's damages expert, were served on October 24, 2005. (D.I. 134.) On November 17, 2005, TriZetto served the expert report of its damages expert, Dr. Jesse David. (D.I. 143.) Expert discovery closed on November 30, 2005. (D.I. 28.)

The Court set the deadline for filing *Daubert* motions on December 20, 2005. (D.I. 28.) This case is set for a jury trial on the issues of infringement, willfulness, and damages commencing on April 17, 2006, with all other issues to be tried thereafter. (D.I. 28 & 145.) Accordingly, McKesson now moves for an order excluding and/or striking certain opinions of TriZetto's damages expert Dr. David.

## II. SUMMARY OF ARGUMENT.

The Court should grant McKesson's motion for the following reasons:

1. Dr. David's opinions are inadmissible to the extent they rely upon TriZetto documents that were not produced during fact discovery in this case. Throughout fact discovery, TriZetto frustrated McKesson's efforts to obtain information and documents regarding, *inter alia*, customer-specific sales and revenue data for the accused products, TriZetto's responses to customers' requests for proposals, and TriZetto product demonstrations. After fact discovery closed, however, TriZetto gave its own damages

1

expert the same information and documents that it had refused to provide to McKesson. TriZetto's disregard for its discovery obligations and its disobedience of this Court's Scheduling Orders are not justified and have prejudiced this Court and McKesson.

2.  Dr. David's opinion regarding lost profits is unreliable and inadmissible because Dr. David's analysis and conclusions rely upon a flawed methodology. Dr. David acknowledges that the proper approach to analyzing lost profits requires consideration of what alternative actions the alleged infringer foreseeably would have undertaken but for the infringement. Dr. David, however, fails to apply this methodology in analyzing lost profits in this case. Instead, he merely considers what TriZetto could have done, without regard to whether such actions would have been taken or were reasonably probable.

Because Dr. David's opinions based on previously unproduced TriZetto documents are inadmissible and his opinion regarding lost profits is unreliable, McKesson respectfully requests that the Court grant its motion to exclude and/or strike those opinions of Dr. David.

### III. SUMMARY OF RELEVANT FACTS.

McKesson has alleged that TriZetto infringes 15 claims of the '164 patent in connection with the sale and/or use of three TriZetto products: Facets, ClaimFacts and QicLink. McKesson seeks damages and injunctive relief. McKesson's damages are based on lost profits and/or reasonable royalty.

For approximately ten months, the parties engaged in extensive fact discovery in this case. TriZetto, however, refused to provide substantial information and documents relevant to damages. Throughout discovery, McKesson served numerous interrogatories, document requests, and Rule 30(b)(6) deposition topics regarding damages, including requests for information and/or documents concerning customer-specific sales and revenue data for the three accused products, TriZetto's responses to customers' requests

2

for proposals ("RFPs"), and TriZetto product demonstrations. (Exh. D at 21, 22, 34 & 42; Exh. E at 17; Exh. F at 5.)[1]

TriZetto responded to the interrogatories by merely referring to its documents. (Exh. E at 19.) When McKesson reviewed TriZetto's 800,000+ pages of document production, McKesson found that many of the requested damages-related materials were missing. (Exh. G at 2; Exh. H at 3.) TriZetto rejected McKesson's efforts to obtain these missing documents by claiming that all responsive documents had already been produced or that the requested documents were irrelevant. (Exh. I at 3 & 5.)

Unable to obtain key information through interrogatories and document requests, McKesson sought a 30(b)(6) deposition of TriZetto regarding customer, sales, and revenue information for the three accused products. (Exh. F at 5 (Topic Nos. 18 & 19).) TriZetto, however, refused to produce a witness on these topics. (Exh. J.)[2] On October 21, 2005, the Court ordered TriZetto to file a written response to the damages-related 30(b)(6) topics. (D.I. 132.) On October 31, 2005, 1-1/2 months after close of fact discovery and after McKesson's damages expert submitted his opening report, TriZetto served a written response that simply referred to 14,000 pages of documents that TriZetto had previously produced. (Exh. K.) Accordingly, at a November 7, 2005 hearing, the Court ordered TriZetto "to respond in writing, not just refer to documents." (Exh. L at 17:5-6.) On November 18, 2005, TriZetto served a supplemental response to the damages-related 30(b)(6) topics, which provided a partial list of customers and aggregated revenue information covering only a few years. (Exh. M.)

---

[1] The exhibits cited in this brief refer to exhibits attached to the Declaration of Michael A. Barlow in Support of Plaintiff's Motion to Exclude and/or Strike Opinions of Jesse David, Ph.D., filed concurrently herewith.

[2] McKesson notes that although the cited email states that TriZetto's refusal to produce a witness on these 30(b)(6) topics was set forth in "prior communications," McKesson has no record of such communications and TriZetto never specifically identified or provided the "prior communications" to McKesson, despite its repeated requests.

On November 17, 2005, TriZetto served the expert report of its damages expert, Dr. Jesse David, in response to the opening report of McKesson's damages expert Mr. Wagner. (Exh. B.) In his report, Dr. David opined that damages based on lost profits were not an appropriate measure of damages in this case. (*Id.* at 4-21.) In addition, Dr. David's report relied upon several hundred pages of *previously unproduced* TriZetto documents, including customer-specific sales and revenue data for the three accused products, TriZetto's responses to customers' RFPs, and TriZetto product demonstrations.[3] TriZetto produced these and hundreds of pages of other new documents on the same day it served Dr. David's report. (Exh. N.)

On November 30, 2005, McKesson deposed Dr. David regarding the opinions set forth in his report, including the bases for his opinion regarding lost profits. In addition, with regard to the previously unproduced documents cited in his report, Dr. David testified at his deposition that (1) he had requested those documents because he had not been able to find the information in the TriZetto documents that were produced during discovery (Exh. C at 41:18-23); and (2) he received the new TriZetto documents within a couple weeks after requesting them. (*Id.* at 36:18-37:1.)

## IV. THE COURT SHOULD EXCLUDE DR. DAVID'S OPINIONS BECAUSE THEY ARE UNRELIABLE AND INADMISSIBLE.

### A. Relevant Legal Standard.

The Court may properly exclude expert opinions and opinion testimony as inadmissible for failure to comply with (1) Federal Rule of Evidence 702, or (2) the Court's discovery deadlines and scheduling orders. *See Oxford Gene Tech. Ltd. v.*

---

[3] Each of the previously unproduced documents that Dr. David relied upon in his report are listed in Exhibit A. For the Court's convenience, Exhibit A also identifies (1) the pages or exhibits of Dr. David's report that cite those documents; (2) the relevant testimony from Dr. David's deposition regarding his receipt of and reliance upon those documents; and (3) McKesson's efforts during discovery to obtain the information contained in the newly produced documents cited in Dr. David's report. Due to their substantial volume, we have not included copies of the newly produced documents but will provide them to the Court upon request.

4

*Mergen Ltd.*, 345 F. Supp. 2d 431, 434 (D. Del. 2004) ("Federal Rule of Evidence 702 obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable."); *Praxair, Inc. v. ATMI, Inc.*, 231 F.R.D. 457, 463 (D. Del. 2005) ("As a sanction for failure to comply with the scheduling order in this case, the court is authorized to exclude evidence proffered by the disobedient party.").

With regard to Rule 702, "[t]he subject of an expert's testimony must be grounded in the methods and procedures of science and based on more than a subjective belief or speculation." *Oxford*, 345 F. Supp. 2d at 434. The testimony also "must 'fit' the issues in the case by having a 'valid scientific connection to the pertinent inquiry.'" *Id.* (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591-92 (1993)). Thus, "the court must assess whether the methodology underlying the testimony is scientifically valid and whether it can properly be applied to the facts in issue." *Oxford*, 345 F. Supp. 2d at 434. The party offering the expert testimony--in this case, TriZetto--has the burden to prove that such expert testimony is admissible. *Id.*

With regard to failure to comply with discovery deadlines and scheduling orders, Federal Rule of Civil Procedure 37(c)(1) provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." FED. R. CIV. P. 37(c)(1). "Rule 37(c)(1)'s preclusionary sanction is 'automatic' absent a determination of either 'substantial justification' or 'harmlessness.' ... The burden to prove substantial justification or harmlessness rests with the dilatory party." *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002).

Recently, in *Praxair*, this Court excluded portions of the defendant's expert report on patent invalidity because the report referenced prior art references disclosed by the defendant for the first time at the end of a fact discovery extension. *Praxair*, 231 F.R.D.

5

at 464. Fact discovery in *Praxair* closed on March 21, 2005, with a limited extension until April 15, 2005, "to bring closure to open discovery issues." *Id.* During the extension, the defendants disclosed several new prior art references. *Id.* Moreover, the defendants' expert report on patent invalidity, which was served on May 2, 2005, relied on these newly disclosed references. *Id.* at 463. Trial in the case was set for late November 2005. *See id.* Although the Court acknowledged that excluding evidence for failure to meet a timing requirement is a harsh measure, the Court explained that:

> "sometimes, such exclusion is necessary; fidelity to the constraints of Scheduling Orders and deadlines is critical to the Court's case management responsibilities." *Finch v. Hercules, Inc.*, 1995 WL 785100 at *9 (D. Del. 1995). The "flouting of discovery deadlines causes substantial harm to the judicial system." *Id.* (internal citations omitted). As a sanction for failure to comply with the scheduling order in this case, the court is authorized to exclude evidence proffered by the disobedient party. *United States v. 68.94 Acres of Land*, 918 F.2d 389, 396 (3d Cir. 1990).

*Praxair*, 231 F.R.D. at 463. The Court concluded that an evidentiary exclusion was appropriate against the disobedient defendant in *Praxair*:

> The court grants plaintiffs' motion to strike defendants' invalidity defenses based on these prior art references. The motion granted by the court extending discovery was to bring closure to open discovery issues, not to open new discovery issues. Therefore, prior art identified after March 21, 2005 is not admissible absent good cause. No good cause is shown here. Furthermore, the portions of Dr. Glew's expert report that refer to these references are stricken.

*Id.* at 464.

Applying the above legal principles to this case, the Court should find that Dr. David's opinions are inadmissible because they are based on an incorrect methodology regarding lost profits and because of TriZetto's unjustified and prejudicial failure to comply with its discovery obligations.

    **B.    The Court Should Strike the Portions of Dr. David's Expert Report that Reference the Previously Undisclosed TriZetto Documents and Exclude Dr. David from Giving Testimony Based on Those Materials.**

TriZetto should not be allowed to offer expert testimony that is based upon documents that TriZetto refused to produce during fact discovery in this case.

Throughout the ten-month fact discovery in this case, TriZetto continually frustrated McKesson's efforts to obtain information relevant to damages, particularly customer-specific sales and revenue data, TriZetto's responses to customers' RFPs, and TriZetto product demonstrations. However, when TriZetto's damages expert, Dr. David, requested the same information because he did not find it in the documents produced in the case, TriZetto quickly provided Dr. David with previously unproduced documents containing that information. There is no excuse for TriZetto's failure to produce such clearly discoverable documents during fact discovery or for its disregard of this Court's Scheduling Orders and discovery deadlines.[4]

During fact discovery, TriZetto impeded multiple attempts by McKesson to obtain customer-specific sales and revenue data for the accused products. In response to a document request for such information, TriZetto objected and refused to produce documents. (Exh. D at 22-23.) In response to an interrogatory for such information, TriZetto referred to documents that did not contain the requested information. (Exh. E at 17 & 19; Exh. G at 2.) In response to a Rule 30(b)(6) deposition notice regarding such information, TriZetto objected and refused to produce a witness. (Exh. F at 5; Exh. J.) In response to requests for the information during meet-and-confer, TriZetto claimed to have "produced all financial reports in its possession, custody or control as part of its initial document production months ago." (Exh. I at 3; Exh. G at 2.)

McKesson faced similar impediments in its efforts to obtain TriZetto's responses to customers' RFPs and product demonstrations. Although McKesson requested such information in a document request served in December 2004 and again during the parties' meet-and-confer, TriZetto refused to produce any documents reflecting responses to

---

[4] As noted above, Exhibit A identifies each of the previously unproduced documents relied upon by Dr. David. For each of those documents, Exhibit A also sets forth the deposition testimony that confirms Dr. David's reliance on those materials and the fact that he did not find comparable information in previously produced documents, and shows McKesson's attempts to obtain the same information during fact discovery.

customers' RFPs or product demonstrations. (Exh. D at 34-35; Exh. I at 5.) In fact, TriZetto claimed that "there is no reason to believe that these types of documents would be relevant to the litigation." (Exh. I at 5.)

Despite TriZetto's unwillingness to produce the foregoing information and documents to McKesson, TriZetto readily provided that information to its own damages expert after the close of fact discovery. At his deposition, Dr. David testified that within a couple weeks of requesting them, TriZetto gave him previously unproduced documents reflecting customer-specific sales and revenue data for the three accused products, TriZetto product demonstrations, and TriZetto's responses to customers' RFPs.[5] Dr. David further testified that he requested this information because, despite having received and reviewed many thousands of pages of documents produced in this case, Dr. David and his team had not found the requested information or documents.[6]

---

[5]

**REDACTED**

[6]

**REDACTED**

Dr. David referred to and relied on many of these new TriZetto documents to support the analyses and conclusions set forth in his expert report. (Exh. A.)

TriZetto can offer no reasonable explanation for its failure to produce during fact discovery the types of documents provided to its damages expert. The information was clearly and repeatedly requested by McKesson during discovery. The information also is plainly relevant to damages, as evidenced by Dr. David's reliance on the information in his report. That it only took TriZetto a couple weeks to obtain the information for its expert also shows that the information was readily available to TriZetto and that it would not have imposed any burden to produce the information during fact discovery. Moreover, despite the substantial relevant sales and revenue data in its possession, TriZetto clearly limited the amount of data that it provided to McKesson. In its written supplemental response to McKesson's 30(b)(6) topics regarding damages, TriZetto stated that it "does not have revenue data by customer for ClaimFacts and Facets transactions earlier than January 2001." (Exh. M at 4-5.) However, the previously unproduced documents that TriZetto gave to Dr. David included revenue data by customer for Facets transactions dating back to September 1998. (Exh. A at 1.)

TriZetto's failure to comply with discovery obligations has prejudiced this Court and McKesson. "'[F]idelity to the constraints of Scheduling Orders and deadlines is critical to the Court's case management responsibilities.' ... The *'flouting of discovery deadlines causes substantial harm to the judicial system.'*" *Praxair*, 231 F.R.D. at 463 (quoting *Finch v. Hercules, Inc.*, No. Civ. A. 92-251 1995 WL 785100, at *9 (D. Del. Dec. 22, 1995)) (emphasis added). The harm to McKesson also has been substantial since McKesson did not learn of the new TriZetto documents until it received Dr. David's report--two months after fact discovery closed and only five months before trial. *See Praxair*, 231 F.R.D. at 463 (finding prejudice where new prior art references were disclosed at the end of fact discovery and approximately seven months before trial). Because fact discovery had closed, McKesson could not depose TriZetto witnesses or

9

take other discovery regarding the newly produced information. McKesson's damages expert also was unable to consider the newly produced information in preparing his expert report, which had been submitted several weeks before the new information was produced. In addition, by the time the issues presented in this motion are fully briefed and ready for the Court's consideration, trial will be only three months away. Attempting to cure the prejudice caused by TriZetto through additional discovery at that time will only further prejudice McKesson by disrupting its trial preparation.

TriZetto cannot show that its belated production of relevant and responsive documents or its expert's reliance on such materials is substantially justified or harmless. Accordingly, the Court should strike the portions of Dr. David's report that rely on those previously unproduced documents and exclude any testimony from Dr. David based on those documents.

### C. Dr. David's Opinion Regarding Lost Profits Is Unreliable Because Dr. David Applies the Wrong Methodology.

In his expert report, Dr. David opines that lost profits is not an appropriate measure of damages in this case. His opinion on this issue, however, is unreliable because Dr. David applies the wrong standard in analyzing this issue.

Whether lost profits are available as damages for patent infringement depends on whether there is "a reasonable probability that [the patentee] would have made the sales 'but for' the infringement." *Fonar Corp. v. General Elec. Co.*, 107 F.3d 1543, 1553 (Fed. Cir. 1997). The issue is not simply what *could* have occurred but for the infringement, but what *would* have occurred. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1546 (Fed. Cir. 1995) ("We believe that under § 284 of the patent statute, the balance between full compensation, which is the meaning that the Supreme Court has attributed to the statute, and the reasonable limits of liability encompassed by general principles of law can best be viewed in terms of reasonable, objective foreseeability."). "The 'but for' inquiry, thus, requires a reconstruction of the market as it would have been absent the infringing

10

product, to determine which sales the patentee would have made." *ISCO Int'l, Inc. v. Conductus, Inc.*, No. Civ. A. 01-487, 2003 WL 280223, at *1 (D. Del. Feb. 10, 2003) (Exh. 1). In his expert report, Dr. David acknowledges that "'a fair and accurate reconstruction of the 'but for' market also must take into account, where relevant, alternative actions the infringer foreseeably would have undertaken had he not infringed.'" (Exh. B at 13 (quoting Grain Processing Corp. v. American Maize-Products Co., 185 F.3d 1341, 1350-51 (Fed. Cir. 1999)).)

Although Dr. David acknowledges that a lost profits analysis must consider "alternative actions the infringer foreseeably would have undertaken," he fails to follow this approach in his own analysis. Instead, he focuses only on actions that could have been taken, not on what foreseeably would have been done. Examples of these speculative observations are set forth below:

**REDACTED**


**REDACTED**

11

At his deposition, Dr. David also confirmed that in assessing lost profits, he focused on what could have occurred, not on what would have occurred:

**REDACTED**

**REDACTED**

(Exh. C at 150:25-151:24.)

Instead of identifying "alternative actions the infringer foreseeably would have undertaken had he not infringed," which Dr. David admits is required in a lost profits analysis, Dr. David identifies alternative actions that TriZetto could have undertaken. The mere possibility that TriZetto could have taken certain actions does not assist the trier of fact in determining whether those actions were reasonably probable or how those possible actions would have affected McKesson's sales in a "but for" world. Because Dr. David fails to consider the likelihood of TriZetto's possible alternatives, his opinion regarding lost profits is unreliable and therefore inadmissible.

12

V. CONCLUSION.

For the foregoing reasons, McKesson respectfully requests that the Court grant its motion to exclude and/or strike the following opinions of Dr. Jesse David: (1) those of his opinions that rely upon the previously unproduced TriZetto documents, which are identified in Exhibit A; and (2) his opinion regarding lost profits.

By: /s/ Michael A. Barlow
Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff
McKesson Information Solutions LLC

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, CA 94301
(650) 470-4500

DATED: December 20, 2005

13