# EXHIBIT G

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

525 UNIVERSITY AVENUE

PALO ALTO, CALIFORNIA 94301-1908
———
TEL: (650) 470-4500

FAX: (650) 470-4570

www.skadden.com

DIRECT DIAL
650-470-4580
DIRECT FAX
888-329-6150
EMAIL ADDRESS
JRANDALL@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEWARK
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

August 26, 2005

<u>By Fax ((949) 475-4670)</u>

Jeffrey T. Thomas, Esq.
Gibson, Dunn & Crutcher LLP
4 Park Plaza
Irvine, CA 92614

RE:    *McKesson Information Solutions LLC v. The TriZetto Group, Inc.*
C.A. No. 04-1258 (SLR) (D. Del.)

Dear Jeff:

As of today we have written you three letters regarding glaring deficiencies in TriZetto's document production: (1) technical and user manuals describing the features and operations of the accused products: Facets, ClaimFacts, and QicLink (August 12, 2005); (2) claim editing manuals for QicLink, significant number of customer agreements, organization charts, and prior art references (August 15, 2005); and (3) opinion of counsel TriZetto obtained in connection with McKesson's patent (August 16, 2005).

Other than saying that you were looking into these categories and that you were considering producing the manuals for the overall accused product systems, TriZetto has not produced any of the requested documents. Needless to say, these documents should have been produced long ago and they are important to our upcoming depositions.

In addition to the deficiencies identified in my earlier letters, we have further identified a number of gaps in TriZetto's document production:

1.    <u>Knowledge, awareness, and consideration of '164 patent</u>.  All documents relating to knowledge by TriZetto, including its acquired companies (*e.g.*, Erisco and RIMS), of the '164 patent.  As you know, TriZetto has asserted laches and estoppel defenses and thus cannot withhold as privileged and must produce all documents relating to its awareness, knowledge, and consideration of the '164 patent.

Jeffrey T. Thomas, Esq.
August 26, 2005
Page 2

2.    <u>Financial data reflecting revenues for each customer of each accused product broken down by month and associated units from 1998 – 2004.</u>  TriZetto has not produced any documents that show the revenues for each of the accused products that are broken down by customer, month, and associated units (such as PMPM or PEPM). However, related financial documents that TriZetto has produced demonstrated that such information was kept in the regular course of business. (*See, e.g.,* TRZ 835334, TRZ 835530, TRZ 835579, TRZ 835517, TRZ 835768, TRZ 835361, and TRZ 835779).  Please produce all such documents containing the above parameters immediately.

3.    <u>Documents concerning volume discount.</u>  TriZetto's produced license agreements indicate that TriZetto/Erisco employed volume discount for certain customers. Please immediately produce all documents relating to volume discount for each of the accused products, including financial data broken down by customer and month, and documents reflecting the institutional practice of volume discount.

4.    <u>Business plans.</u>  TriZetto produced a document entitled, "The TriZetto Group, Inc. 3 Year Business Plan, 2004-2006" (TRZ 835745-TRZ 835749).  Please immediately produce all similar documents for 1998-2003. Similarly, TriZetto produced business plans for each of the accused products for 2003-2005.  (*See* TRZ 835791, TRZ 835792, and TRZ 835794).  Please also immediately produce all similar documents for each of the accused products for 1998-2002.

5.    <u>Income statements.</u>  TriZetto produced documents entitled, "The TriZetto Group, Inc. Income Statement" for the months ending December 31, 2000 and December 31, 2001. (*See* TRZ 835978 and TRZ 835979). Please immediately produce all similar documents for all the other months between 1998 and 2004.

6.    <u>Organizational profitability.</u>  TriZetto produced a document entitled, "The TriZetto Group, Inc. Organizational Profitability 2004 Budget" (TRZ 836147-836149). Please immediately produce all similar documents for 1998-2003.  Additionally, TriZetto produced a document entitled, "The TriZetto Group, Inc. Organizational Profit & Loss Statement" for 2003 and 2004. (*See* TRZ 836150-TRZ 836214 and TRZ 836081-TRZ 836146).  As such, please also immediately produce all similar documents for 1998-2002.

7.    <u>EBITDA/Contribution margin statements.</u>  TriZetto produced a document entitled, "The TriZetto Group, Inc. EBITDA/Contribution Margin Statement" for 2002 (TRZ 836035-TRZ 836080).  Please immediately produce all similar documents for 1998-2001 and 2003-2004.

8.    <u>Erisco annual financial reports.</u>  TriZetto produced what appears to be Erisco's annual financial report for 2001 (TRZ 835980-TRZ 836034). Please immediately produce all similar documents for 1998-2000.

Jeffrey T. Thomas, Esq.
August 26, 2005
Page 3

9.     <u>TriZetto forecasts</u>. TriZetto produced several documents that appear to be forecasts for certain customers of the accused products and certain time periods. (*See, e.g.*, TRZ 173850-TRZ 173852, TRZ 173857-TRZ 173859, TRZ 637150-TRZ 637152, and TRZ 637161-TRZ 637163). Please immediately produce all similar documents for all other customers of the accused products and all other time periods from 1998-2004.

10.     <u>ClinicaLogic revenues</u>. TriZetto produced a document entitled, "ClinicaLogic Revenue" relating to certain current and former ClinicaLogic customers from 1998 to 2004 (TRZ 171603). Please immediately produce all similar documents for all other current and former ClinicaLogic customers not on this document. Similarly, TriZetto also produced a document entitled, "The TriZetto Group, Inc. ClinicaLogic Billing 1988-2004," again relating to certain current and former ClinicaLogic customers (TRZ 088508-TRZ 088511). Again, please produce immediately all similar documents for all other current and former ClinicaLogic customers not on this document.

11.     <u>Pricing strategy</u>. TriZetto production documents indicate that TriZetto has developed pricing strategy for each of the accused products. (*See, e.g.*, TRZ 835519). Please produce immediately all documents relating to TriZetto's pricing strategy for each of the accused products.

We will need immediate production of these additional documents. Thanks.

Very truly yours,

Jeffrey G. Randall

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

### 525 UNIVERSITY AVENUE
### PALO ALTO, CALIFORNIA 94301

TELEPHONE No.: (650) 470-4500
FACSIMILE No.: (650) 470-4570

DIRECT FACSIMILE No: 888-329-6150
EMAIL: JRANDALL@SKADDEN.COM

## FACSIMILE TRANSMITTAL SHEET

PLEASE DELIVER THE FOLLOWING PAGE(S) TO:

NAME: Jeffrey T. Thomas, Esq.

FIRM: Gibson, Dunn & Crutcher LLP

CITY: Irvine                          DATE: August 26, 2005

TELEPHONE No.:

FACSIMILE No.: 949-475-4670

FROM: Jeffrey G. Randall          FLR/RM: 9th Floor

REFERENCE No.: 224040/98           DIRECT DIAL: 650-470-4580

TOTAL NUMBER OF PAGES INCLUDING COVER(S):          4

THIS FACSIMILE IS INTENDED ONLY FOR USE OF THE ADDRESSEE(S) NAMED HEREIN AND MAY CONTAIN LEGALLY PRIVILEGED AND/OR CONFIDENTIAL INFORMATION. IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS FACSIMILE, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS FACSIMILE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL FACSIMILE TO US AT THE ADDRESS ABOVE VIA THE LOCAL POSTAL SERVICE. WE WILL REIMBURSE ANY COSTS YOU INCUR IN NOTIFYING US AND RETURNING THE FACSIMILE TO US.

MESSAGE: Please see the attached.

## Confirmation Report–Memory Send

Time : 08-26-05 12:58pm
Tel line 1 :
Tel line 2 :
Name :

| | | |
|---|---|---|
| Job number | : | 724 |
| Date | : | 08-26 12:56pm |
| To | : | 16224040919484754670 |
| Document Pages | : | 04 |
| Start time | : | 08-26 12:56pm |
| End time | : | 08-26 12:57pm |
| Pages sent | : | 04 |

Job number : 724 *** SEND SUCCESSFUL ***

---

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
525 UNIVERSITY AVENUE
PALO ALTO, CALIFORNIA 94301

TELEPHONE NO.: (650) 470-4500
FACSIMILE NO.: (650) 470-4570

DIRECT FACSIMILE NO: 888-329-8190
EMAIL: JRANDALL@SKADDEN.COM

**FACSIMILE TRANSMITTAL SHEET**

PLEASE DELIVER THE FOLLOWING PAGE(S) TO:

| | | | |
|---|---|---|---|
| NAME: | Jeffrey T. Thomas, Esq. | | |
| FIRM: | Gibson, Dunn & Crutcher LLP | | |
| CITY: | Irvine | DATE: | August 26, 2005 |
| TELEPHONE NO | | | |
| FACSIMILE NO | 949-475-4670 | | |
| FROM | Jeffrey G. Randall | FL/RM: | 9th Floor |
| REFERENCE NO.: | 224040/98 | DIRECT DIAL: | 650-470-4580 |

TOTAL NUMBER OF PAGES INCLUDING COVER(S): 4

THIS FACSIMILE IS INTENDED ONLY FOR USE OF THE ADDRESSEE(S) NAMED HEREIN AND MAY CONTAIN LEGALLY PRIVILEGED AND/OR CONFIDENTIAL INFORMATION. IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS FACSIMILE, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS FACSIMILE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL FACSIMILE TO US AT THE ADDRESS ABOVE VIA THE LOCAL POSTAL SERVICE. WE WILL REIMBURSE ANY COSTS YOU INCUR IN NOTIFYING US AND RETURNING THE FACSIMILE TO US.

MESSAGE: Please see the attached.

# EXHIBIT H

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

### 525 UNIVERSITY AVENUE
### PALO ALTO, CALIFORNIA 94301
###### TEL: (650) 470-4500
###### FAX: (650) 470-4570
###### www.skadden.com

DIRECT DIAL
**650-470-4580**
EMAIL ADDRESS
JRANDALL@SKADDEN.COM

FIRM/AFFILIATE OFFICES
**BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON**
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

August 31, 2005

**By Email and Facsimile**

Michael Sitzman, Esq.
Gibson, Dunn & Crutcher LLP
One Montgomery Street, Suite 3100
San Francisco, CA 94104

> RE:   *McKesson Information Solutions LLC v. The TriZetto Group, Inc.,*
>        C.A. No. 04-1258 (SLR) (D. Del.)

Dear Michael:

   In connection with our call today to discuss outstanding discovery issues, set forth below are the outstanding document production issues we need to try to resolve prior to our hearing before Chief Judge Robinson. If you have any document issues, please let us know immediately. The deposition issues we need to discuss are those I discussed with you during our call yesterday.

The Issues Raised In D. Hansen's August 12 And 15 Letters To J. Thomas

   The following is a list of the issues addressed in our August 12 and 15 letters. Jeff Thomas stated in his August 29 email that you were producing all of these documents, but he did not say when the documents would be produced and we have not received any of the documents. We need these materials now to allow time to review them in connection with preparation for upcoming depositions.

- Technical and user manuals describing the operation of the infringing systems, Facets, ClaimFacts, QicLink.

- System-specific claim editing manuals for QicLink.

- The 100+ missing customer agreements.

- Organization charts.

- The Kuo prior art reference.

Michael Sitzman, Esq.
August 31, 2005
Page 2

<u>Materials Relating To TriZetto's Willfulness, Laches And Estoppel Defenses</u>

 In response to David Hansen's August 16 letter, you produced last week a copy of an opinion of counsel TriZetto received from Blakely Sokoloff and an email from Stradling Yocca on the issues of laches, estoppel, infringement and validity. As a preliminary matter, the opinions you produced are incomplete. For example, the February 5, 2003 letter from Blakely Sokoloff does not include the fax cover page, the signature page or the exhibits.

 Also, as discussed in my August 26 letter and during our conversation yesterday, TriZetto's waiver on these issues extends broadly to all documents relating to the patent in suit, including all documents relating to TriZetto, Erisco and RIMS's knowledge and consideration of the patent, communications with counsel, documents reflecting such communications, internal discussions of these issues, etc. *See, e.g., Novartis Pharma. Corp. v. Eon Labs Mfg., Inc.*, 206 F.R.D. 396, 398 (D. Del. 2002) (where "a party relies on the advice of counsel defense to a charge of willful infringement . . . the party has expressly waived its privilege with respect to attorney-client communications and work product documentation [and] everything with respect to the subject matter of counsel's advice is discoverable"); *Beneficial Franchise Co., Inc. v. Bank One, N.A.*, 205 F.R.D. 212, 217-18 (N.D. Ill. 2001) (same; waiver based on reliance on opinion of counsel in connection with estoppel defense). Moreover, as held in *Beneficial*, the waiver extends to communications with trial counsel (your firm, TriZetto's prior counsel and local counsel) after the suit commenced which "cast doubt or contradict" the opinion received prior to suit.

 As I told you yesterday, we believe that the willfulness, laches, and estoppel waivers extend to virtually all of the documents on TriZetto's privilege log and we therefore request immediate production of those documents. To the extent that you disagree, we will need you to provide a supplemental log listing the documents you contend are not covered by the broad waiver, as well as an explanation why each of those documents is not covered by the waiver.

 In addition, we request that you immediately produce all documents relating to these issues provided to and considered by TriZetto's outside counsel. We were informed by Stradling Yocca that they have already provided you with all of their files, and you presumably have either already obtained the files from other counsel or are in the position to do so. You should also produce all communications between trial counsel and TriZetto which "cast doubt or contradict" the opinions received prior to the filing of this suit.

<u>TriZetto's Product CDs</u>

 As discussed in our August 26 letter to Jeff Thomas, the product CDs provided by TriZetto are incomplete and do not work. You have not responded to this letter.

Michael Sitzman, Esq.
August 31, 2005
Page 3

<u>The Issues Raised In My August 26 Letter To J. Thomas</u>

The following is a list of the issues discussed in my letter. We have not received any response. Again, we need these materials now to allow time to review them in connection with preparation for upcoming depositions.

- Financial data reflecting revenues for each customer of each accused product broken down by month and associated units for 1998 through the present.

- Documents concerning volume discounts provided by TriZetto on the accused products.

- Business plans.

- Income statements for 1998 through the present.

- TriZetto's organizational profitability.

- EBITDA/contribution margin statements.

- Erisco's annual financial reports, including any private placement documents.

- TriZetto's forecasts.

- ClincaLogic (and other claim editing module) revenues.

- TriZetto pricing strategy documents.

<u>Other Document Production Issues</u>

Following are additional problems with TriZetto's production:

- You produced source code for Facets, but have not produced any source code for ClaimFacts or QicLink.

- You have failed to produce numerous responses by TriZetto to customers' Requests for Proposal.

- You have not produced TriZetto's claim editing rules database.

- You have not produced manuals or other documents instructing customers how to customize or modify the infringing products to suit their particular needs,

Michael Sitzman, Esq.
August 31, 2005
Page 4

including documents relating to TriZetto's ClinicaLogic Edits Administrative Rules Maintenance ("CLEAM") program.

- Although we are informed by Stradling Yocca that they gave you all of the documents relating to TriZetto's purchase of Erisco, you have not produced those documents to us. Of particular relevance are documents relating to discussions of McKesson and/or intellectual property diligence issues, including knowledge of potential patent disputes.

- You have not produced documents relating to Erisco's financing efforts prior to its purchase by TriZetto. Of particular relevance are documents relating to discussions of McKesson and/or intellectual property diligence issues, including knowledge of potential patent disputes.

- You have not produced the "productivity and quality improvements" documented by BCBS Tennessee that TriZetto makes available to potential customers, as well as similar materials relating to other customers. *See* TriZetto's Response To Pacific Health Systems, Inc. RFP (March 15, 2002) at 10.

- You have not produced any "Benchmark Studies," including the Benchmark Study conducted in connection with the Regence Group.

- You have not produced documents relating to customer savings, despite the fact that this is a specific product feature marketed by TriZetto.

Inadvertent Production

We have sent a number of letters requesting the immediate return of inadvertently produced privileged documents. We also identified additional such documents during Ms. Wukitch's deposition last Friday. We again request that all copies of these documents be returned to us and that you also return any other such documents that you have identified.

Very truly yours,

Jeffrey G. Randall

cc:    Jeffrey T. Thomas, Esq. (by email)

# EXHIBIT I

# GIBSON, DUNN & CRUTCHER LLP

### LAWYERS

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

4 Park Plaza  Irvine, California 92614-8557
(949) 451-3800
www.gibsondunn.com

kroosvelt@gibsondunn.com

September 6, 2005

Direct Dial
(949) 451-3932

Fax No.
(949) 475-4741

Client No.
T 92654-00006

### VIA FACSIMILE & OVERNIGHT MAIL

Bernard C. Shek, Esq.
David W. Hansen, Esq.
Jeffrey G. Randall, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
525 University Avenue, Suite 1100
Palo Alto, CA 94301

Re:   *McKesson Information Solutions LLC v. The TriZetto Group, Inc.*

Gentlemen:

This letter addresses various issues concerning the documents produced by both McKesson and Trizetto in the above-captioned litigation.

## MCKESSON'S RECENT PRODUCTIONS

Between July 30, 2005 and August 29, 2005 – more than two months after McKesson was required to complete its document production – McKesson produced over 6,000 pages of documents that are clearly responsive to Trizetto's document requests. Those documents include:

- Software and Patent license agreements between McKesson and various customers.

- Email and other correspondence related to McKesson's efforts to enforce the '164 Patent against various companies.

- Competitor briefings.

- Marketing and business plans for HPR and McKesson.

## GIBSON, DUNN & CRUTCHER LLP

Bernard C. Shek, Esq.
David W. Hansen, Esq.
Jeffrey G. Randall, Esq.
September 6, 2005
Page 2

- Numerous documents related to the GMIS v. HPR litigation.

- Product CDs for various McKesson programs.

- Installation manuals and technical guides for McKesson's CodeReview product.

Once again, we ask that you please provide us with an explanation why McKesson has only recently provided these documents – documents that are clearly important to the above-captioned litigation – and let us know immediately if any more documents will be forthcoming.

### TRIZETTO'S DOCUMENT PRODUCTION

McKesson has recently raised a handful of issues concerning the documents produced by Trizetto. We should note at the outset that many of the documents McKesson is now seeking are extremely dated and do not exist. While some of those documents may have existed many years ago, they have since been discarded. Had McKesson (or its predecessors in interest) filed its lawsuit in a timely manner, many of those documents may have been available at the time. Because of McKesson's inexcusable delay, however, both parties are at a distinct disadvantage. With that in mind, we will attempt to address the issues McKesson has raised below.

### Technical And User Manuals Describing The Operation Of Facets, ClaimFacts, And QicLink.

As you know, Trizetto produced all of its ClinicaLogic manuals to McKesson long ago as part of its initial document production. Nevertheless, McKesson has recently demanded that Trizetto produce *all* of its technical and user manuals that are related in any way to Facets, ClaimFacts and QicLink. We have enclosed all such manuals that are currently in Trizetto's possession, custody or control. Please be advised, however, that Trizetto is only producing these materials in order to avoid a discovery battle. We are not agreeing in any way that discovery related to programs other than clinical editing is appropriate or that such documents are relevant to the above-captioned litigation.

### Trizetto Customer Agreements

McKesson has provided a list of customer agreements that it claims are missing from Trizetto's document production. With one exception, all of the agreements that McKesson has identified were either signed outside of the relevant time period (September 14, 1998 to November 2004) or do not exist. The one exception is enclosed.

# GIBSON, DUNN & CRUTCHER LLP

Bernard C. Shek, Esq.
David W. Hansen, Esq.
Jeffrey G. Randall, Esq.
September 6, 2005
Page 3

## Organizational Charts

We have enclosed a CD containing all current Trizetto organizational charts and a paper copy of a 1991 Erisco organizational chart. These documents constitute everything in Trizetto's possession, custody or control related to this issue.

## Prior Art

We have enclosed the Kuo prior art reference and three other prior art references identified by Trizetto.

## Materials Related To Opinions Of Outside Counsel Regarding The '164 Patent

On August 26, 2005, Trizetto produced opinions of outside counsel regarding the '164 Patent. We have enclosed all documents that Trizetto had previously marked as privileged that relate to these opinions. It is our position that privileged documents related to the acquisitions of Erisco and RIMS – as opposed to the '164 Patent – remain privileged.

## Trizetto's Product CDs

Trizetto has produced everything that McKesson needs in order to install the software programs that Trizetto has provided. Nevertheless, in an effort to compromise, we have enclosed another set of program CDs for Facets and QicLink and a cassette for ClaimFacts (ClaimFacts is not available in another format due the age of the program and the fact that it runs on a mainframe). We have also enclosed a printout of the files contained on the ClaimFacts cartridge. As to the specific database CD referenced in your August 26, 2005 letter, there is nothing more to produce.

## Financial Data

Trizetto produced all financial reports in its possession, custody or control as part of its initial document production months ago.

## Documents Concerning Volume Discounts

Trizetto has located one document that has not already been produced concerning volume discounts provided by Trizetto on the accused products. A copy of that document is enclosed.

## GIBSON, DUNN & CRUTCHER LLP

Bernard C. Shek, Esq.
David W. Hansen, Esq.
Jeffrey G. Randall, Esq.
September 6, 2005
Page 4

### Business Plans

As McKesson has acknowledged, Trizetto has already produced company business plans for 2004 through 2006 and product business plans for 2003 through 2005. Trizetto does not have any other business plans prior to these dates in its possession, custody or control.

### Income Statements For 1998 Through The Present; Trizetto's Organizational Profitability; EBITDA/Contribution Margin Statements; Erisco Annual Financial Reports

Trizetto has already produced the following: (1) Trizetto Organizational Profit & Loss Statements, consolidated and by business unit for 2003 and 2004; (2) Trizetto EBITDA/Contribution Margin Statements consolidated and by business unit for 2001; (3) Trizetto Income Statements for 2001; (4) ERISCO financial documents (consolidated and by business unit) for 2001; (4) documents stating the consolidated income for Erisco for 1997 through 2000; and (5) Trizetto Organizational Profitability Statements for 2004.

We have enclosed additional Trizetto financial documents for the years 2000, 2001, and one document that includes totals for 1998, 1999 and 2000. With these documents, Trizetto has produced all of the financial information pertaining the years 1998 through 2004 in its possession, custody or control.

### Trizetto's Forecasts

Trizetto produced all forecasts in its possession, custody or control as part of its initial document production months ago.

### ClinicaLogic And Other Claim Editing Module Revenues

Trizetto produced all documents related to ClinicaLogic and other claim editing module revenues in its possession, custody or control as part of its initial document production months ago.

### Trizetto Pricing Strategy Documents

Other than the one document referenced above concerning volume discounts, Trizetto has produced all pricing strategy documents in its possession, custody or control.

## GIBSON, DUNN & CRUTCHER LLP

Bernard C. Shek, Esq.
David W. Hansen, Esq.
Jeffrey G. Randall, Esq.
September 6, 2005
Page 5

### Source Code For ClaimFacts And QicLink

McKesson failed for many months to identify the Trizetto products that it alleges infringe the '164 Patent. In fact, McKesson has still only identified Facets in its response to Trizetto's interrogatory asking for the identity of the products that McKesson alleges infringe the '164 Patent. As a result, Trizetto produced all of its source code for the Facets program months ago as part of its initial document production. The source code for the ClaimFacts and QicLink programs is quite large and we are in the process of gathering the materials. We expect that we will be able to provide McKesson with the source code for ClaimFacts and QicLink within a couple of days.

### Responses To Customers' Requests For Proposals

Trizetto has an entire marketing department that responds to requests for proposals. Additionally, Trizetto offers many products and services that are not at issue in this case. As such, we are not sure what documents you are seeking when you reference "responses to requests for proposals." Accordingly, we ask that you identify with more specificity what documents you are seeking in this regard so that we can ascertain whether such information is available, obtainable and responsive to pending discovery requests.

The way things stand now, it appears that you are requesting all communications with Trizetto's customers. Such a request would be extremely burdensome and there is no reason to believe that these types of documents would be relevant to the litigation. Accordingly, we have not and will not agree to produce all communications with Trizetto's customers.

### Trizetto's Claims Editing Rule Database

We do not understand the relevance of the Trizetto Claims Editing Rule Database. Please provide your rationale for requesting the database and we will consider producing it.

### Manuals Regarding Customization

As stated above, we have enclosed all manuals related to Facets, ClaimFacts and QicLink that are currently in Trizetto's possession, custody or control. As far as the ClinicaLogic Edits Maintenance program is concerned, Trizetto has already produced over three hundred documents that mention or discuss this topic.

### Documents Related To The Purchase Of Erisco

We have already identified for you the documents Trizetto has produced that relate to the acquisition of Erisco.

SEP. 6. 2005 10:56AM    GD&C OC                          NO. 3664   P. 7

## GIBSON, DUNN & CRUTCHER LLP

Bernard C. Shek, Esq.
David W. Hansen, Esq.
Jeffrey G. Randall, Esq.
September 6, 2005
Page 6

### "Productivity And Quality Improvement" Documented By BCBS Tennessee.

We are checking to see if any of these documents exist.

### Benchmarking Studies

Trizetto does not conduct benchmark type comparisons between its and McKesson's products. We have already produced emails that reference benchmarking studies in the context of installing Trizetto programs at customer locations, but these relate to technical support as opposed to marketing.

### Documents Related To Customer Savings

We are checking to see if any of these documents exist.

* * *

If you have any questions concerning the foregoing issues, please do not hesitate to contact us.

Very truly yours,

T. Kevin Roosevelt

TKR/map
Enclosures
c:      (w/o encl.)
        Jack B. Blumenfeld, Esq.
        Jeffrey T. Thomas
        David A. Segal
        Michael A. Sitzman

30376480_1.doc

# EXHIBIT J

**Sitzman, Michael A.**

| | |
|---|---|
| **From:** | Sitzman, Michael A. |
| **Sent:** | Thursday, September 15, 2005 10:14 PM |
| **To:** | 'Jeff Randall'; 'BSHEK@skadden.com'; 'DHANSEN@skadden.com' |
| **Cc:** | 'Jack B. Blumenfeld'; Thomas, Jeffrey T.; Segal, David A. |
| **Subject:** | McKesson/TriZetto deposition issues |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Blue |

Jeff:

Regarding your further deposition of Craig Luftig, I have obtained his availability, but I have not yet cleared that with our team in terms of coverage. In order to avoid delay, I wanted to share with you his availability with the understanding that some or all of these dates may not be workable given our current schedules and those of your team. Accordingly, Mr. Luftig is available on September 20, 21 or 23. Please rank these dates in order of your preference and availability and I will see which of these dates I can confirm with my team tomorrow morning.

With regard to McKesson's 30(b)(6) deposition notice of TriZetto, we have designated witnesses for all non-objectionable topics and made each available for deposition. In prior communications, we have advised that topics 8, 11-13, 18-20 and 38 were objected to on the grounds that the topics were (i) in the form of a contentions, which are prohibited in the District of DE; (ii) called for testimony and information that was protected by the attorney-client privilege and attorney work-product doctrine; (iii) called for information that was provided for in the form of voluminous documents that were already produced; (iv) duplicative of prior 30(b)(6) topic or topics; and (v) lacking in reasonable particularity.

If you have any questions regarding the foregoing, please let me know.

Mike Sitzman

GIBSON, DUNN & CRUTCHER, LLP
1 Montgomery St
San Francisco, CA 94104
(415) 393-8221
fax (415) 986-5309

1

# EXHIBIT K

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

MCKESSON INFORMATION
SOLUTIONS, LLC,

        Plaintiff,

    v.

THE TRIZETTO GROUP, INC.,

        Defendant.

Civil Action No. 04-1258 SLR

## DEFENDANT'S SUPPLEMENTAL RESPONSE TO PLAINTIFF'S RULE 30(b)(6) DEPOSITION NOTICE

Pursuant to the Court's Order of October 20, 2005, defendant The TriZetto Group, Inc. hereby provides a supplemental response to Topics 18 through 20 in plaintiff's Rule 30(b)(6) deposition notice.

**Response to Topic No. 18**

The identities of defendant's customers with regard to the clinical editing programs sold by defendant are reflected in the documents that have been produced herein which are listed on Exhibit A hereto. In addition, attached hereto as Exhibit B is a list of defendant's current customers for its Facets claims processing system which have received the clinical editing module of Facets; attached hereto as Exhibit C is a list of defendant's current customers with regard to the ClaimFacts system which have received clinical editing functionality; and attached hereto as Exhibit D is a list of defendant's current customers with regard to the QicLink system which have received clinical editing functionality.

**Response to Topic No. 19**

The sales transactions between defendant and its customers for the relevant period, as well as the terms of said transactions and the benefits of the transactions to the customers that have been communicated by defendant to the customers, are reflected in the documents that have been produced herein which are listed on Exhibits A and E hereto. In addition, additional information relevant to this topic is reflected in Exhibits B through D hereto.

**Response to Topic No. 20**

The functionality of defendant's clinical editing systems that have been communicated by defendant to the customers is reflected in the documents that have been produced herein which are listed on Exhibits A and E hereto. In addition, additional information relevant to this topic is reflected in Exhibits B through D hereto.

GIBSON, DUNN & CRUTCHER LLP

Jeffrey T. Thomas
David A. Segal
Michael A. Sitzman
GIBSON, DUNN & CRUTCHER LLP
Jamboree Center, 4 Park Plaza
Irvine, California 92614-8557
(949) 451-3800

Attorneys for Defendant
THE TRIZETTO GROUP, INC.

October 31, 2005

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that copies of the foregoing were caused to be served this 31st day of October, 2005, upon the following counsel in the manner indicated:

BY UPS OVERNIGHT MAIL

Thomas J. Allingham, II
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, DE  19899

Jeffrey G. Randall
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, CA  94301

_Kimberly A. Spake_
Kimberly A. Spake

30380031_1.DOC

3

# EXHIBIT L

Multi-Page™

1

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

- - -

McKESSON INFORMATION SOLUTIONS     :    CIVIL ACTION
LLC,
         Plaintiff          :

        vs.             :

THE TRIZETTO GROUP, INC.,        :

        Defendant         :    NO. 04-01258 (SLR)

- - -

Wilmington, Delaware
Monday, November 7, 2005
5:05 o'clock, p.m.

- - -

BEFORE: HONORABLE SUE L. ROBINSON, Chief Judge

- - -

APPEARANCES:

        SKADDEN, ARPS, SLATE, MEAGHER & FLOM
        BY:   MICHAEL A. BARLOW, ESQ.

              -and-

        SKADDEN, ARPS, SLATE, MEAGHER & FLOM
        BY:   JEFF RANDALL, ESQ.
             (Palo Alto, California)

         Counsel for Plaintiff

                            Valerie J. Gunning
                            Official Court Reporter

Page 2

1  APPEARANCES (Continued):

2      MORRIS, NICHOLS, ARSHT & TUNNELL
       BY:  JACK B. BLUMENFELD, ESQ.
3

4          -and-

5      GIBSON, DUNN & CRUTCHER LLP
       BY:  JEFFREY THOMAS, ESQ.
6          (Irvine, California)

7      Counsel for Defendant

8          - - -

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

1              PROCEEDINGS

2

3          (Proceedings commenced in the courtroom,
4    beginning at 5:05 p.m.)

5

6          THE COURT: All right. I take it you all have
7    not worked out your differences, so I will let, I guess,
8    counsel for McKesson to let me know what is going on at this
9    point.

10         MR. RANDALL: Thank you, your Honor. Jeff
11   Randall, representing McKesson.

12         We wrote to you and asked for this hearing
13   because there are a number of outstanding issues that we
14   would like to address, and, first, there are a few
15   discovery issues, some of which relate to expert discovery
16   which has been going on for about a week, and then also there
17   are a couple of issues that relate to your recent order
18   bifurcating the prior art portion of this case. Apparently,
19   TriZetto construes that as opening and reopening prior art
20   discovery, which would then allow them to continue to dump
21   new prior art on us months after the close of discovery. But
22   we first addressed the discovery issues, and I will address
23   them in reversion order.

24         There are a few that are discrete that shouldn't
25   take too much time. I would like to address those first, and

Page 4

1    then I will address the prior art issue.

2          You had ordered TriZetto some time ago to provide
3    written responses to Rule 30(b)(6) topics because they
4    produced witnesses that were unable to answer questions
5    regarding the specified topics. And the topics were, for
6    instance, they were Topics 19 and 20 of our Rule 30(b)(6)
7    deposition notice and they asked for things like the dates
8    that contracts were entered into for the sale of accused
9    products, what the customer's name was, the date of the
10   contract and the amount of revenue, for instance, from that
11   contract, information that is readily available to them.
12   Instead of answering in substantive format that information,
13   they just simply referred us to 14,000 pages of production
14   documents, and they did not answer it.

15         So we would like them to specify in a substantive
16   manner the answer to those questions.

17         The second issue is that some time ago, again,
18   your Honor ordered TriZetto to provide working copies
19   of their products, and that should not be too difficult.
20   When they sell a product, they provide a C.D. to the
21   customer. They assist them with the installation of
22   that C.D.

23         And we argued a number of times, two different
24   hearings, we argued about that, and both times TriZetto said,
25   Judge, we've done that. We gave them working copies. And

Page 5

1    you said, Give them working copies as you provide them to
2    your customers. This isn't difficult. Just do it. It will
3    resolve a whole host of discovery disputes. That's what you
4    are ordered to do and they said that's what they complied
5    with. However, that's not what they did.

6          We recently learned that while we were having
7    great difficulty accessing various parts of the product and
8    we weren't quite sure why, we discovered that the reason why
9    was they had blocked off large components of the product on a
10   C.D., and which would prevent us from having any access to
11   those portions or preventing those portions of the product
12   from working.

13         So they have a system, and our claims are
14   addressed at an expert computer system, the entire system.
15   They have unilaterally decided that only a portion of the
16   system infringes and, therefore, they unilaterally and in
17   violation of your order blocked off a large portion of the
18   product from us and never told us that and we had great
19   problems getting to those.

20         And finally, they admitted, that's right, we
21   never gave you access to that.

22         The second problem, and we, of course, were not
23   sure why we were having these problems with their product,
24   was that their product, over time, like most software
25   products, has bugs in it. And so when it has bugs,

Multi-Page™

**Page 14**

1  through a September 13th deposition of George Goldberg, one
2  of the inventors, who is represented by Skadden, that he as
3  well as the President of HPR during the relevant time frame
4  had a system back in the mid-1980s that performed functions
5  identical to some of the functions that they are now claiming
6  that this patent covers, including the function of
7  determining whether performance codes are consistent with the
8  age and gender of a patient.
9          We have learned that Mr. Goldberg turned over his
10  documents to Skadden early on. Some were produced and then
11  the others were withheld until several months after the
12  deadline for producing documents in this case.
13          We have received additional documents on that
14  system as recently as last week. We have received a new
15  privilege log from Skadden last week that shows that they
16  are continuing to withhold documents relevant to that prior
17  art.
18          And most recently -- one of the pieces of prior
19  art that they complain about in our most recent submission
20  was the information that dates back to the 1980's. That is
21  now in the possession of DeLoitte & Touche.
22          They issued -- although they claim they have
23  pursued no discovery with regard to this art that's in
24  question here as being not timely submitted, they, in fact,
25  submitted a -- served a subpoena on DeLoitte & Touche back

**Page 15**

1  in May.
2          We have been asking them whether they received
3  any documents from DeLoitte & Touche. They served additional
4  subpoenas on DeLoitte & Touche on September 3rd and September
5  13th, three days before the discovery cutoff.
6          What we have now learned, your Honor, is that on
7  October 4th, DeLoitte & Touche actually produced documents to
8  them on a day when discovery was still going on. Depositions
9  were taken on that very day.
10          On October 13th, we asked them what was going on
11  with this DeLoitte & Touche art, and on October 16th, two --
12  almost two weeks after they had received the art, they said
13  they were still looking into it.
14          We then learned from DeLoitte & Touche that they
15  have produced documents and we asked them again what was
16  going on.
17          We received no response until last Friday, Friday
18  of last week, your Honor, in which they told us, Oh, we've
19  sent them back. They didn't tell us when they sent them
20  back, but it turns out they sent them back the day before,
21  last Thursday.
22          So they received documents from a third party
23  relevant to this prior art that they're complaining about,
24  presumably reviewed the documents, did not provide us copies
25  of the documents, did not tell us they had received the

**Page 16**

1  documents, held on to the documents for a month, and then
2  sent them back to DeLoitte & Touche, claiming that they are
3  not relevant.
4          In addition, your Honor, as you know, you
5  referred this case over to the special master and we have
6  met with him and there are a lot, hundreds of documents on
7  Skadden's privilege log relevant to this prior art issue.
8          THE COURT: Well, I will tell you what. I'm
9  going to send the prior art issue to the special master
10  and I will specifically set out in my order what the
11  issue is.
12          When I bifurcated, I did not mean to open
13  discovery. If, however, you are claiming that a prior
14  use was not public, but was known -- I'm not exactly sure
15  what you are claiming, but if you are claiming that somehow
16  or other this information was only accessible to plaintiff
17  and plaintiff failed to respond accurately and truthfully
18  to your interrogatories, then that is a possible exception
19  to my order. Other than that kind of special -- that kind of
20  prior art, however, I will not allow further discovery. We
21  had a discovery cutoff date. I was giving you the
22  opportunity to try the prior art identified before the close
23  of discovery.
24          So I will set that out specifically. I will
25  send that to a special master. I am not going to deal with

**Page 17**

1  it today. And, hopefully, I will be clearer in this order
2  than I was in the last.
3          Written responses to 30(b)(6) topics. Because it
4  was supposed to be a person and you failed, in my estimate,
5  to give a bona fide person, you had to respond in writing,
6  not just refer to documents. I will require all parties to
7  do that for these 30(b)(6) topics identified and you've got a
8  week to do that, so I don't need to hear about that.
9          With respect to the working versions of the
10  accused product, I do want to hear your side of the story
11  on that.
12          MR. THOMAS: Yes. Thank you, your Honor.
13          This Facets system that he is referring to is
14  huge and has many different components. And the client --
15  the customers select which components they want: A few, some
16  or all.
17          And quoting from their own expert report recently
18  served, your Honor, their expert said, Facets allows payers
19  to select from a variety of modules to meet specific business
20  requirements, including claims processing, claims repricing,
21  capitation risk, fund accounting, premium billing,
22  claims editing and various other requirements.
23          He then goes on to say, Importantly, the clinical
24  editor component of Facets contains the allegedly infringing
25  functionality.

# EXHIBIT M

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| MCKESSON INFORMATION SOLUTIONS, LLC, | |
| Plaintiff, | Civil Action No. 04-1258 SLR |
| v. | |
| THE TRIZETTO GROUP, INC., | |
| Defendant. | |

## DEFENDANT'S SUPPLEMENTAL RESPONSE TO PLAINTIFF'S RULE 30(b)(6) DEPOSITION NOTICE

Pursuant to the Court's Order of November 7, 2005, defendant The TriZetto Group, Inc. hereby provides a supplemental response to Topics 18 through 20 in plaintiff's Rule 30(b)(6) deposition notice.

**Response to Topic No. 18**

The identities of defendant's customers with regard to the clinical editing programs sold by defendant are reflected in the tables below. Production of customer identities is limited to those relevant customers that purchased the accused clinical editing module.

In that regard, the following table identifies defendant's customers that purchased both the Facets claims processing system and the clinical editing module functionality:

1

| Facets Customer Name | State |
|---|---|
| Amerigroup Corporation | VA |
| *WellPoint-Anthem* | IN |
| BCBS of Missouri | MO |
| APS Healthcare | MD |
| BC of Idaho | ID |
| BC of Northeastern Pennsylvania | PA |
| BCBS of Kansas City (MO) | MO |
| BCBS of Louisiana | LA |
| BCBS of Michigan | MI |
| BCBS of Minnesota | MN |
| BCBS of Tennessee | TN |
| Beverly Enterprises | AK |
| Boston Medical Center HN Plan | MA |
| CalOptima | CA |
| Capital Blue Cross | PA |
| CareFirst | DC |
| *CareSource* | |
| CareSource-Indiana | IN |
| CareSource-Michigan | MI |
| CareSource-Ohio | OH |
| Central Benefits | OH |
| COSVI | PR |
| Essence, Inc. | MO |
| Fidelis Care NY | NY |
| GEHA | MO |
| Great Western Healthcare | CO |
| Harrington Services | OH |
| Health Plus | NY |
| HealthNow NY | NY |
| Heartland Health/CHP | MO |
| Intermountain Health Care | UT |
| Intervalley | CA |
| John Deere Health Plan | IL |
| John Muir / Mt. Diablo | CA |
| John P. Pearl | IL |
| Keystone Mercy | PA |
| Leon Medical Centers Health Plan | FL |
| Medis | PORT |
| Michigan Conference of Teamsters | MI |
| Mutual of Omaha | NE |
| MVP Health Plan | NY |
| ODS Companies | OR |
| OSF Health Plans | IL |
| *Pacificare Healthcare Systems:* | |
| American Medical Security | WI |
| Pacificare Asia-Pacific (Guam) | Guam |
| *Specialty:* | |
| Pacificare Behavioral Health | CA |

| Facets Customer Name | State |
|---|---|
| Pacificare Dental & Vision | CA |
| Preferred Care Partners | FL |
| Preferred One | MN |
| Premera | WA |
| Presbyterian | NM |
| Priority Health | MI |
| Providence Health Plan | OR |
| QualChoice of AR | AR |
| Rocky Mountain HMO | CO |
| Samaritan Health Services | OR |
| Seguros Banamex | MEX |
| Sierra Health Services | NV |
| The HealthCare Group (M-Plan) | IN |
| The Regence Group | OR |
| Three Rivers Health Plan | PA |
| TMG Healthcare | PA |
| *UnitedHealth Group:* | |
| *Health Care Services* | |
| AmeriChoice (Great Lakes) | MI |
| *Specialized Care Services* | |
| Behavioral Health | MN |
| Optum (Nurse Triage) | MN |
| Dental Benefit Providers | MN |
| Unimerica Workplace Benefits | MN |
| United Resource Networks | MN |
| Univera | NY |
| Universal American Financial Corp. | TX |
| Western Health Advantage | CA |

The following table identifies defendant's customers that purchased both the ClaimFacts system and the clinical editing module functionality:

| ClaimFacts Customer Name | State |
|---|---|
| ACS (Motorola) | AZ |
| Amalgamated | NY |
| Boilermakers National Fund | KS |
| Bridgestone/Firestone | OH |
| Central States Teamsters | IL |
| Comprehensive Care Systems | MN |
| Federated Mutual Insurance | MN |
| Gov't Employees Hosp. Association (GEHA) | MO |
| Guardian Life | NY |
| Harrington | OH |
| HealthPlan Services | FL |
| N.R.E.C.A. (C.B.A.) | VA |
| Oregon Dental Services | OR |
| Pacific Life | CA |

3

| ClaimFacts Customer Name | State |
|---|---|
| SAMBA | MD |
| Trustmark | MO |
| UMR/United Medical Resources | OH |
| Western Southern Life (WSL) | OH |

Finally, the following table identifies defendant's customers that purchased both the QicLink system and the clinical editing functionality:

| QicLink Customer Name | State |
|---|---|
| Administrative Services Group Inc. | KY |
| AdminOne | AR |
| American National Insurance Co. | TX |
| AultCare Corporation | OH |
| Benesight, Inc. | CO |
| Chesterfield Resources, Inc. | OH |
| CNIC Health Solutions Inc. | CO |
| Cost Containment USA | MI |
| Fringe Benefit Services, Inc. | CO |
| Fringe Benefits Management Company | FL |
| Health Services for Children with Special Needs | DC |
| Healthcare Management Administrators, Inc. | WA |
| IMSCO Health Systems | GA |
| JAS, Inc. | UT |
| Key Benefit Administrators | IN |
| Loma Linda University | CA |
| MAPFRE Life Insurance Company | PR |
| Mutual Assurance Admin, Inc. | OK |
| National Health Insurance Company | TX |
| North Broward Hospital District | FL |
| Nyhart Company, Inc. | IN |
| Pittman and Associates | TN |
| Professional Claims Management | OH |
| Rapid City Regional Hospital | SD |
| San Francisco Elec. Workers Hlth & Welfare Plan | CA |
| Self Insured Plans, LLC | FL |
| Southern Benefit Services, LLC | LA |
| TML Intergovernmental Employee Benefits Pool | TX |
| Tower Life Insurance Company | TX |

**Response to Topic No. 19**

The sales transactions between defendant and its customers during the relevant period are listed in the tables below. The first two tables reflect revenue by customer from January 2001 to September 2005 for sales of the ClaimFacts and Facets claims processing systems. Trizetto does not have revenue data by customer for ClaimFacts and

Facets transactions earlier than January 2001. The table also identifies the sales

representative responsible for making representations to each customer in connection

with customer sales of ClaimFacts and Facets claim processing systems.

## CLAIMFACTS CUSTOMER TRANSACTIONS

| Customer Name | Date of Original Contract | Contract Value 1/2001-9/2005 | Sales Mgmt |
|---|---|---|---|
| ACS (Motorola) | 4/7/1989 | 3,360,072 | Bergen |
| Amalgamated | 12/27/1985 | 908,556 | Antes |
| Boilermakers National Fund | 6/21/1984 | 1,292,153 | Bergen |
| Bridgestone/Firestone | 1/3/1994 | 1,226,729 | Georgiadis |
| Central States Teamsters | 10/15/1985 | 3,384,595 | Georgiadis |
| Comprehensive Care Systems | | 940,233 | Schlichting |
| Federated Mutual Insurance | 1/11/1996 | 1,689,243 | Schlichting |
| Gov't Employees Hosp. Association (GEHA) | 9/9/1986 | Reported on the Facets tab | Georgiadis |
| Guardian Life | 11/21/1990 | 1,236,563 | Antes |
| Harrington | 8/29/1985 | Reported on the Facets tab | Georgiadis |
| HealthPlan Services | 9/30/1994 | 1,212,339 | Licameli |
| N.R.E.C.A. (C.B.A.) | 1/15/1985 | 1,552,004 | Nagle |
| Oregon Dental Services | 8/1/1986 | 551,684 | Schlichting |
| Pacific Life | 7/10/1990 | 1,111,160 | Schlichting |
| SAMBA | 12/20/1991 | 1,005,183 | Nagle |
| Trustmark | | 1,045,109 | Georgiadis |
| UMR/United Medical Resources | | 1,134,948 | Georgiadis |
| Western Southern Life (WSL) | 4/22/1991 | 419,399 | Georgiadis |

## FACETS

| Customer Name | Date of Original Contract | Contract Value 1/2001-9/2005 | Sales Mgmt/Dir |
|---|---|---|---|
| Amerigroup Corporation | 11/18/2003 | 9,531,985 | Nagle |
| *WellPoint-Anthem* | *1/20/1998* | *34,491,381* | *Francis* |
| BCBS of Missouri | 2/1/1996 | 9,746,168 | Francis |
| APS Healthcare | 2/28/2002 | 7,235,885 | Nagle |
| BC of Idaho | 10/5/1998 | 7,808,245 | Schlichting |
| BC of Northeastern Pennsylvania | 9/7/2000 | 5,988,942 | Nagle |
| BCBS of Kansas City (MO) | 2/1/1996 | 10,690,173 | Licameli |
| BCBS of Louisiana | 12/18/2002 | 14,096,087 | Bergen |
| BCBS of Michigan | 11/1/2001 | 50,557,355 | Georgiadis |
| BCBS of Minnesota | 4/30/1999 | 1,509,575 | Schlichting |
| BCBS of Tennessee | 3/5/1996 | 22,108,516 | Licameli |
| Beverly Enterprises | 1/31/2003 | 1,046,885 | Bergen |
| Boston Medical Center HN Plan | 10/25/2001 | 4,295,735 | Antes |
| CalOptima | 2/22/2000 | 4,247,889 | Schlichting |

| Customer Name | Date of Original Contract | Contract Value 1/2001-9/2005 | Sales Mgmt/Dir |
|---|---|---|---|
| Capital Blue Cross | 12/21/2001 | 37,115,829 | Nagle |
| CareFirst | 3/21/1997 | 6,178,126 | Nagle |
| *CareSource* | | *11,649,673* | |
| CareSource- Indiana | 3/28/2003 | Included above | Georgiadis |
| CareSource- Michigan | 3/28/2003 | Included above | Georgiadis |
| CareSource- Ohio | 3/28/2003 | Included above | Georgiadis |
| Central Benefits | 3/22/1995 | 4,782,377 | Georgiadis |
| COSVI | 4/30/2002 | 4,079,456 | Licameli |
| Essence, Inc. | 5/9/2003 | 790,589 | Georgiadis |
| Fidelis Care NY | 12/30/2002 | 3,694,108 | Antes |
| GEHA | 12/23/1997 | 1,629,207 | Georgiadis |
| Great West Healthcare | 9/1/2005 | 7,194,628 | Francis |
| Harrington Services | 9/1/1995 | 2,737,900 | Georgiadis |
| Health Plus | 10/31/2000 | 8,262,488 | Antes |
| HealthNow NY | 7/17/1997 | 10,758,747 | Antes |
| Heartland Health/CHP | 8/17/1998 | 2,450,004 | Georgiadis |
| Intermountain Health Care | 4/6/2001 | 10,724,217 | Bergen |
| Intervalley | 6/16/1999 | 2,124,599 | Schlichting |
| John Deere Health Plan | 9/28/1998 | 8,008,243 | Georgiadis |
| John Muir / Mt. Diablo | 2/20/2004 | 4,664,618 | Schlichting |
| John P. Pearl | | 993,890 | Georgiadis |
| Keystone Mercy | 3/26/1999 | 9,597,866 | Nagle |
| Leon Medical Centers Health Plan | 10/29/2004 | 2,525,867 | Licameli |
| Medis | 1/26/1995 | 2,523,953 | Renzi |
| Michigan Conference Of Teamsters | 7/31/2002 | 1,373,159 | Georgiadis |
| Mutual of Omaha | 4/19/2000 | 10,772,925 | Bergen |
| MVP Health Plan | 2/2/2001 | 17,529,986 | Antes |
| ODS Companies | 5/26/2005 | 2,888,638 | Schlichting |
| OSF Health Plans | 10/8/1997 | 3,115,419 | Georgiadis |
| *Pacificare Healthcare Systems:* | | | |
| *Health Plans:* | | | |
| American Medical Security | 12/29/2003 | 6,597,688 | Georgiadis |
| Pacificare Asia-Pacific (Guam) | 6/3/1995 | 579,670 | Francis |
| *Specialty:* | | | |
| PacifiCare Behavioral Health | 6/3/1995 | 10,915,033 | Francis |
| PacifiCare Dental & Vison | 6/3/1995 | 3,484,130 | Francis |
| Preferred Care Partners | 4/24/2005 | 840,277 | Licameli |
| Preferred One | 5/23/1995 | 2,407,687 | Georgiadis |
| Premera | 2/13/2001 | 25,300,607 | Francis |
| Presbyterian | 12/31/2003 | 8,754,892 | Bergen |
| Priority Health | 6/30/2000 | 7,042,017 | Georgiadis |
| Providence Health Plan | 2/6/2002 | 13,416,366 | Schlichting |
| QualChoice of AR | | 75,585,036 | Licameli |
| Rocky Mountain HMO | 11/12/1998 | 3,452,151 | Bergen |
| Samaritan Health Services | 7/15/2004 | 1,157,582 | Schlichting |
| Seguros Banamex | 4/1/1997 | 1,767,517 | Schlichting |

| Customer Name | Date of Original Contract | Contract Value 1/2001-9/2005 | Sales Mgmt/Dir |
|---|---|---|---|
| Sierra Health Services | 12/30/1997 | 4,125,392 | Schlichting |
| The HealthCare Group (M-Plan) | 12/21/2001 | 27,694,095 | Georgiadis |
| The Regence Group | 12/29/1994 | 84,240,452 | Francis |
| Three Rivers Health Plan | 3/19/1999 | 2,353,032 | Nagle |
| TMG Healthcare | 12/28/1998 | 3,712,180 | Nagle |
| *UnitedHealth Group:* | | *85,899,496* | |
| *Health Care Services* | | | |
| AmeriChoice (Great Lakes) | 4/22/2002 | 2,829,824 | Schlichting |
| *Specialized Care Services* | | | |
| Behavioral Health | 4/22/2002 | Included in UHG amt. | Schlichting |
| Optum (Nurse Triage) | 4/22/2002 | Included in UHG amt. | Schlichting |
| Dental Benefit Providers | 4/22/2002 | Included in UHG amt. | Schlichting |
| Unimerica Workplace Benefits (Life) | 4/22/2002 | Included in UHG amt. | Schlichting |
| United Resource Networks | 4/22/2002 | Included in UHG amt. | Schlichting |
| Univera | 12/17/1998 | 3,933,544 | Antes |
| Universal American Financial Corp. | 3/29/2005 | 2,432,214 | Bergen |
| Western Health Advantage | 2/28/2005 | 4,388,026 | Schlichting |

In addition, the following table reflects revenue by customer from March 2003 to September 2005 for sales of the QicLink system. Trizetto does not have revenue data by customer for QicLink transactions earlier than March 2003. The table also identifies the sales representative responsible for making representations to each customer in connection with customer sales.

| Customer Name | Date of Original Contract | Contract Value 1/2003-9/2005 | Sales Mgmt |
|---|---|---|---|
| Administrative Services Group Inc. | 6/19/1998 | 773,415 | Ristich |
| AdminOne | 4/16/1999 | 567,853 | Pyne |
| American National Insurance Co. | 3/6/1997 | 2,429,152 | Ristich |
| AultCare Corporation | 9/15/1995 | 915,752 | Ristich |
| Benesight, Inc. | 12/31/1997 | 2,137,952 | Ristich |
| Chesterfield Resources, Inc. | 7/28/2004 | 1,601,965 | Kirch |
| CNIC Health Solutions Inc | 9/30/2002 | 804,932 | Ristich |
| Cost Containment USA | 9/12/1995 | 385,163 | Ristich |
| Fringe Benefit Services, Inc. | 12/21/2001 | 193,827 | Ristich |
| Fringe Benefits Management Company | 7/22/1992 | 369,724 | Pyne |
| Health Services for Children with Special Needs | 9/1/1995 | 256,275 | Pyne |
| Healthcare Management Administrators, Inc. | 12/23/1993 | 670,950 | Ristich |
| IMSCO Health Systems | 7/20/2005 | 73,565 | Pyne |
| JAS, Inc. | 1/28/2004 | 638,114 | Pyne |

| Customer Name | Date of Original Contract | Contract Value 1/2003-9/2005 | Sales Mgmt |
|---|---|---|---|
| Key Benefit Administrators | 2/1/2001 | 1,646,490 | Pyne |
| Loma Linda University | 8/17/1993 | 585,161 | Ristich |
| MAPFRE Life Insurance Company | 1/26/2000 | 291,413 | Pyne |
| Mutual Assurance Admin., Inc. | 8/30/1999 | 772,109 | Pyne |
| National Health Insurance Company | 1/23/1992 | 654,239 | Ristich |
| North Broward Hospital District | 3/23/2003 | 873,856 | Pyne |
| Nyhart Company, Inc. | 1/23/1992 | 437,172 | Pyne |
| Pittman and Associates | 12/3/1999 | 707,056 | Pyne |
| Professional Claims Management | 10/3/1995 | 509,844 | Ristich |
| Rapid City Regional Hospital | 7/1/1997 | 518,964 | Ristich |
| San Francisco Elec. Workers Hlth & Welfare Plan | 2/4/2000 | 153,438 | Ristich |
| Self Insured Plans, LLC | 6/12/1997 | 500,238 | Pyne |
| Southern Benefit Services, LLC | 4/14/2005 | 196,999 | Pyne |
| TML Intergovernmental Employee Benefits Pool | 5/26/1989 | 1,113,907 | Ristich |
| Tower Life Insurance Company | 8/26/1992 | 623,556 | Pyne |

It should be noted that the transactions listed in the above tables reflect all revenue from the customers, including revenue generated from purchases completely unrelated to the clinical editing programs supplied to the customers.

Finally, the benefits of the transactions to the customers that have been communicated by the defendant to the customers are consistent with the functionality description provided in response to Topic No. 20.

**Response to Topic No. 20**

The functionality of defendant's clinical editing systems that have been communicated by defendant to each customer is reflected in the excerpt produced herein.

### CAPABILITIES AND BENEFITS OF
### FACETS CLINICAL EDITING

The following is a complete list of the various features and benefits of Facets Clinical Editing which outlines the full functionality of the product.

| CAPABILITIES | BENEFITS |
|---|---|
| • Front end processing or fill integration options | • Provides flexibility to accommodate administrative workflow |
| • Flags all questionable situations | • Ensures consistency of selection process and edit results |
| • Over 90,000 rules for editing | • Increases savings |
| • Automatically corrects specific coding errors | • Improves accuracy |
| • Explains all corrections | • Enables users to understand all decisions |
| • Suggests information necessary for evaluation | • Ensures clinical soundness |

### HOW CLINICAL EDITING OPERATES

Facets Clinical Editing provides customers the flexibility to audit medical claims and Referrals and Authorizations during on-line processing. When a claim or referral/authorization is entered, the system compares procedure codes on multiple line items and determines if there are problems such as procedure unbundling or billing of incidental procedures. Facets Clinical Editing checks for possible inconsistencies between the patient's age and diagnosis, the patient's gender and diagnosis, as well as the procedure and diagnosis, etc.

As Facets Clinical Editing detects inconsistencies and billing problems on-line, clear instructions will display on the workscreen enabling the user to make the appropriate decisions. Users will have the capability to accept the edits, override or pend for review. If a user accepts the edits, a copy of the original and the edited line items will be saved to establish a complete audit trail.

Two examples are provided to illustrate how Facets Clinical Editing operates on-line. In the following example, a claim is submitted listing a cholecystectomy (gall bladder removal) with exploration of biliary duct charges at $4,000 and a sphincterotomy (incision of sphincter muscle) billed at $2,472 for a total charge of $6,472. Since these

9

charges are also the Reasonable and Customary amounts for the procedures, they could be paid in full. However, when the claim is adjudicated with the intervention of Facets Clinical Editing, the two procedures are properly "rebundled" into a single comprehensive surgery known as a cholecystectomy with sphincterotomy. Since the total Reasonable and Customary amount for this comprehensive surgical procedure is only $3,500, the potential savings is $2,972.

**EXAMPLE 1 OF PROCEDURE "REBUNDLING":**

**Surgeon's Claim Submission**

| Procedure | Code | R & C Charges | Amount |
|---|---|---|---|
| Cholecystectomy with exploration common duct | 47610 | $4,000 | $4,000 |
| Sphincterotomy | 47460 | $2,472 | $2,472 |
| | TOTAL | $6,472 | $6,472 |

**Recommended Clinical Edit with correct "Rebundling" code:**

| Procedure | Code | R & C Charges | Amount |
|---|---|---|---|
| Cholecystectomy with Sphincterotomy | 47620 | $6,472 | $3,500 |
| | TOTAL | $6,472 | $3,500 |
| **Potential Savings on Claim** | | **$2,972** | |

**EXAMPLE 2 OF PROCEDURE "REBUNDLING":**

**Radiologist's Claim Submission**

| Procedure | Code | R & C Charges | Amount |
|---|---|---|---|
| CAT Scan of Thoracic Spine without contrast material | 72128 | $1,650 | $1,652 |
| CAT Scan of Thoracic Spine with contrast material | 72129 | $1,920 | $1,918 |
| | TOTAL | $3,570 | $3,570 |

10

**Recommended Clinical Edit with correct "Rebundling" code:**

| Procedure | Code | R & C Charges | Amount |
|---|---|---|---|
| CAT Scan of Thoracic Spine without contrast materials, followed by contrast material(s) and further sections | 72130 | $3,570 | $2,300 |
| | TOTAL | $3,570 | $2,300 |
| **Potential Savings on Claim** | | $1,270 | |

## DATA CAPTURE AND REPORTS

Equally important to Facets Clinical Editing is its capability to ensure the appropriate reimbursement of claims, and its capacity to furnish timely and precise information that will allow management to increase control over examining claims and to make cost containment decisions. By using Facets savings report-generating feature, management can readily see cost savings from code correction and ensure continued savings by tracking providers with aberrant billing practices. We believe that these reports will verify the importance of auditing with Facets Clinical Editing.

The Facets calculated savings report will allow management to see the total savings for a particular period as a result of using the system. Savings will be measured as the difference between the total Reasonable and Customary amount for all claims prior to and after editing. Since Facets will store an indicator code in each claim table designating the type of edit (e.g., unilateral to bilateral) that was accepted, the report will be able to itemize savings. This will permit management to identify the most problematic billing practices.

The provider activity report will target key claim data per provider. This report will allow you to identify trends which constitute potentially aberrant billing practices and to monitor quality of care issues. It will also isolate possible fraudulent activity of particular providers by tracking the total number of occurrences per edit.

GIBSON, DUNN & CRUTCHER LLP

Jeffrey T. Thomas
David A. Segal
Michael A. Sitzman
GIBSON, DUNN & CRUTCHER LLP
Jamboree Center, 4 Park Plaza
Irvine, California 92614-8557
(949) 451-3800

Attorneys for Defendant
THE TRIZETTO GROUP, INC.

November 18, 2005

## DECLARATION OF SERVICE

I, the undersigned, declare that I am employed in the County of Orange, State of California; I am over the age of eighteen years and am not a party to this action; my business address is Jamboree Center, 4 Park Plaza, Irvine, California, and on the date indicated below, I served the within:

## DEFENDANT'S SUPPLEMENTAL RESPONSE TO PLAINTIFF'S RULE 30(b)(6) DEPOSITION NOTICE

by placing a true copy thereof in an envelope addressed to each of the persons named below at the address shown:

☐      **BY MAIL:** I placed a true copy in a sealed envelope addressed as indicated above, on the above-mentioned date. I am familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐      **BY PERSONAL SERVICE:** I placed a true copy in a sealed envelope addressed to each person[s] named at the address[es] shown and giving same to a messenger for personal delivery before 5:00 p.m. on the above-mentioned date.

☐      **BY FACSIMILE:** From facsimile machine telephone number (415) 986-5309, on the above-mentioned date, I served a full and complete copy of the above-referenced document[s] by facsimile transmission to the person[s] at the number[s] indicated.

☑      **BY FEDERAL EXPRESS:** I placed a true copy in a sealed envelope addressed as indicated above, on the above-mentioned date. I am familiar with the firm's practice of collection and processing correspondence for delivery by Federal Express. Pursuant to that practice, envelopes placed for collection at designated locations during designated hours are delivered to Federal Express with a fully completed airbill, under which all delivery charges are paid by Gibson, Dunn & Crutcher, that same day in the ordinary course of business.

☑      **BY ELECTRONIC MAIL:** From an IBM computer, email address tstephens@gibsondunn.com in PDF format, to the email addresses listed in the following Service List on the date indicated.

☐      **(STATE)**      I declare under penalty of perjury under the laws of the State of California that the above is true and correct and that the foregoing document(s) were printed on recycled paper.

☑      **(FEDERAL)**      I declare that I am employed in the office of a member of the bar of this court or who has been admitted *pro hac vice* at whose direction the service was made.

Executed on November 18, 2005, at Irvine, California.

_____

Teresa Stephens

## SERVICE LIST

By Federal Express:
Jeffrey G. Randall
David W. Hansen
Michael C. Hendershot
Donna Hill
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, CA 94301

Telephone: (650) 470-4500
Facsimile: (650) 470-4570

By Email:
jrandall@skadden.com
dhansen@skadden.com
mhenders@skadden.com
dhill@skadden.com

By Federal Express:
Thomas J. Allingham II
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899

Telephone: (302) 651-3000
Facsimile: (302) 651-3001

By Email:
talling@skadden.com

30380940_1.DOC

14

# EXHIBIT N

# GIBSON, DUNN & CRUTCHER LLP

### LAWYERS

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

4 Park Plaza  Irvine, California 92614-8557
(949) 451-3800
www.gibsondunn.com

groudabush@gibsondunn.com

November 17, 2005

Direct Dial
(949) 451-4107
Fax No.
(949) 475-4679

Client No.
T 92654-00006

<u>VIA U.S. MAIL</u>

David W. Hansen, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301

Re:   *McKesson Information Solutions, LLC v. The TriZetto Group, Inc.*

Dear Mr. Hansen:

Enclosed are the following documents being produced by The TriZetto Group, Inc. in the above-entitled matter: TRZ839572-TRZ840698 and TRZ840746.

Thank you for your time and consideration.

Very truly yours,

Gabrielle J. Roudabush, Certified Paralegal

GJR/
30381356_1.DOC

LOS ANGELES  NEW YORK  WASHINGTON, D.C.  SAN FRANCISCO  PALO ALTO
LONDON  PARIS  MUNICH  BRUSSELS  ORANGE COUNTY  CENTURY CITY  DALLAS  DENVER