IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC, | ) ) | |
| | ) | C.A. No. 04-1258 (SLR) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE TRIZETTO GROUP, INC., | ) | |
| | ) | |
| Defendant. | | |

**THE TRIZETTO GROUP, INC.'S OPPOSITION TO MCKESSON'S
MOTION TO EXCLUDE AND STRIKE THE NON-INFRINGEMENT
OPINIONS OF TRIZETTO'S EXPERT WITNESS DR. RANDALL DAVIS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
*Attorneys for Defendant
The TriZetto Group, Inc.*

OF COUNSEL:

Jeffrey T. Thomas
David A. Segal
Michael A. Sitzman
GIBSON, DUNN & CRUTCHER LLP
Jamboree Center, 4 Park Plaza
Irvine, California 92614-8557
(949) 451-3800

January 5, 2006

TABLE OF CONTENTS

Page

TABLE OF CITATIONS                                                              ii

I.    NATURE AND STAGE OF THE PROCEEDINGS                    1

II.   SUMMARY OF ARGUMENT                                          2

III.  STATEMENT OF FACTS                                             4

IV.   ARGUMENT                                                            4

      A.    Dr. Davis's Non-Infringement Opinions Do Not Depend On
            The Additional Functionality Of The TriZetto Products.        4

      B.    Dr. Davis Used The Same Claim Construction For His
            Non-Infringement And Invalidity Reports.                      8

      C.    Dr. Davis Interpreted The Patent Claims From The
            Perspective Of A Person Of Ordinary Skill In The Art.         10

      D.    The Flowcharts Were Specially Prepared For Use In This
            Litigation And Were Not Discoverable Documents Under
            Fed. R. Civ. P. 34.                                           11

      E.    McKesson Never Sought A Live Demonstration Of The
            TriZetto Products.                                            12

V.    CONCLUSION                                                         14

ii.

## TABLE OF CITATIONS

Page(s)

Cases

*In re Cendant Corp. Sec. Litig.*,
    343 F.3d 658 (3d Cir. 2003)    11

*Mas-Hamilton Group v. LaGard, Inc.*,
    156 F.3d 1206 (Fed. Cir. 1998)    5

*Pennwalt Corp. v. Durand-Wayland, Inc.*,
    833 F.2d 931 (Fed. Cir. 1987)    5, 9

*Smiths Industries Med. Sys., Inc. v. Vital Signs, Inc.*,
    183 F.3d 1347 (Fed. Cir. 1999)    10

Statutes

35 U.S.C. § 103    10

35 U.S.C. § 112(6)    9

Rules

Fed. R. Civ. P. 26(a)(2)(B)    12

Fed. R. Civ. P. 34    11

Defendant The TriZetto Group, Inc. ("TriZetto") submits this brief in opposition to the motion of plaintiff McKesson Information Solutions, LLC's ("McKesson") to exclude and strike the non-infringement opinions of TriZetto's expert witness Dr. Randall Davis ("Dr. Davis").

## I.    NATURE AND STAGE OF THE PROCEEDINGS

On September 13, 2004, McKesson filed this suit against TriZetto alleging infringement of U.S. Patent No. 5,253,164 ("the '164 patent"). On October 1, 2004, McKesson amended its Complaint. On November 1, 2004, TriZetto answered and filed a counterclaim seeking a declaratory judgment of invalidity, unenforceability, and non-infringement.

McKesson alleges that three of TriZetto's products (Facets, ClaimFacts and QicLink – collectively, "the TriZetto Products") infringe fifteen claims of the '164 patent (Claims 1-6 and 8-16). Fact and expert discovery have been completed. The Court has bifurcated the issue of invalidity and stayed motion practice and trial on that issue. On the issues of infringement, damages and equitable defenses, motion practice is proceeding and scheduled for hearing on February 16, 2006, at which time the Court is also scheduled to consider any issues of claim construction. Trial on the issues of infringement, damages and equitable defenses is set for April 17, 2006.

This is TriZetto's brief in opposition to McKesson's motion to exclude and strike the non-infringement opinions of TriZetto's expert witness Dr. Davis. Notwithstanding the bifurcation of the invalidity issue, McKesson has included several arguments in its motion pertaining to invalidity.

II.    **SUMMARY OF ARGUMENT**

        McKesson asks the Court to exclude and strike the non-infringement opinions of TriZetto's expert witness Dr. Davis for five reasons, none of which is a proper basis for excluding or limiting Dr. Davis's opinions.

        First, McKesson argues that Dr. Davis's non-infringement opinions are inappropriately based on the fact that the accused TriZetto products have additional functionality beyond what is found in the claims of the '164 patent.  Although the TriZetto Products do perform more than the simple functions described in the '164 patent, Dr. Davis's non-infringement opinions are not based on the additional functionality.  Dr. Davis properly compared the patent claims to the TriZetto Products and found no infringement, because the products do not perform all of the functions of the patent claims and do not have the same or equivalent structure.

        Second, McKesson contends that Dr. Davis used a different claim construction for his non-infringement and invalidity reports.[1]  This is simply incorrect.  Dr. Davis used the same construction for both reports and followed the proper methodology for performing his infringement and validity analyses.

        Third, McKesson submits that Dr. Davis did not interpret the patent claims from the perspective of a person of ordinary skill in the art.  Again, this is incorrect.  Dr. Davis clearly defined a person of ordinary skill in his opening report and used that hypothetical person in his analysis.  In response to questions by McKesson's counsel, Dr. Davis agreed that "a person of

---

[1]    To the extent that McKesson is seeking a ruling concerning Dr. Davis's invalidity opinions, that issue is not ripe given the Court's order bifurcating issues concerning invalidity.  The only issue properly before the Court are Dr. Davis's non-infringement opinions.

ordinary skill" in this case could be defined as possessing even more skill than contemplated in Dr. Davis's definition. But Dr. Davis's expert analysis and opinion was offered using his own definition.

Fourth, McKesson protests the inclusion of certain product flowcharts in Dr. Davis's report, on the ground that they should have been produced during discovery. However, the flowcharts in question were not documents created and kept in the ordinary course of TriZetto's business, but were specifically created for purposes of this litigation at the request of counsel. Accordingly, they were protected by the work product doctrine and not subject to discovery. When the flowcharts were provided to Dr. Davis, they became discoverable as expert documents and were timely produced.

Finally, McKesson objects to the live product demonstration provided to Dr. Davis, notwithstanding the fact that McKesson was given source code for all the products and functional software copies of the products and relevant modules. During discovery, McKesson requested and received installable software for each of the TriZetto Products. When McKesson's counsel complained that they were unable to install the software, TriZetto provided technical assistance during at least two conference calls. McKesson subsequently demanded that TriZetto send a technical support person to their counsel's office, an unreasonable request that TriZetto declined. TriZetto offered McKesson further assistance by telephone, but McKesson never responded to TriZetto's offer. Additionally, McKesson did not ask for product demonstrations from TriZetto's customers, several of whom were subpoenaed by McKesson. In sum, McKesson could have sought product demonstrations during discovery, but decided not to do so. Dr. Davis's opinions should not be limited because of McKesson's inaction.

III.     **STATEMENT OF FACTS**

       The relevant facts are set forth in the argument sections.

IV.    **ARGUMENT**

      **A.    Dr. Davis's Non-Infringement Opinions Do Not Depend On The Additional Functionality Of The TriZetto Products.**

       McKesson accuses Dr. Davis of basing his non-infringement opinions on the fact that the TriZetto Products have additional functionality beyond what is found in the '164 patent claims.  D.I. 182 at 2-3, 7-9.  Although the TriZetto Products do perform far more than the simple functions described in the '164 patent, that is not the basis of Dr. Davis's non-infringement opinions.  *See* Declaration of Randall Davis in Opposition to McKesson's Motion to Exclude and Strike the Non-Infringement Opinions of TriZetto's Expert Witness Dr. Randall Davis ("Davis Decl."), filed herewith, pp. 2-3, ¶ 4(a).  Dr. Davis determined that the TriZetto Products do not infringe the '164 patent because they do not perform all of the claimed functions of the patent and they do not have the same or equivalent structure as disclosed in the patent.  *Id.* at p. 2, ¶ 3.

       Dr. Davis undertook two tasks in his non-infringement report:  First, he analyzed and critiqued the reports of McKesson's experts Dr. Margaret Johnson and Dr. Mark Musen.  Rebuttal Report of Randall Davis, dated November 14, 2005 (attached as Exhibit B ("Ex. B") to McKesson's motion to exclude and strike Dr. Davis's non-infringement opinion), at 4-20.  Second, he described a number of differences between the TriZetto Products and the method and apparatus of the '164 patent.  Ex. B at 24-34.  These differences include the fact that several functions listed in the patent claims are not performed by the TriZetto Products:

- the TriZetto Products do not "ascertain whether the at least one claim contains a plurality of medical service codes," as required by Claims 2-6, 8-12 and 14-16 (Ex. B at 24-27);

- the TriZetto Products do not delete medical service codes from input medical claims, as required by Claim 4 (Ex. B at 27-28);

- the TriZetto Products do not "request additional information from a user," as required by Claim 8 (Ex. B at 29-30);

- the TriZetto Products do not have "a predetermined database," as required by all of the claims (Ex. B at 32-33); and

- the TriZetto Products do not authorize medical claims "in response to the determining step," as required by Claims 15 and 16 (Ex. B at 34).

The absence of these functions from the TriZetto Products renders the products non-infringing, as infringement can only occur when all functions of the patent claims are met. *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 934 (Fed. Cir. 1987) ("It is . . . well-settled that each element of a claim is material and essential and that in order for a court to find infringement, the plaintiff must show the presence of every element or its substantial equivalent in the accused device.").  Dr. Davis's approach to this subject was appropriate and his opinions proper.

Dr. Davis also discussed the architectural and processing differences between the TriZetto Products and the method and apparatus of the '164 patent.  Ex. B at 30-32.  The point of this discussion was to illuminate the lack of structural equivalence between the TriZetto Products and the claimed method and apparatus of the '164 patent.  Davis Decl., p. 2, ¶ 3.  Because each of the asserted claims of the '164 patent contain means-plus-function elements, the infringement analysis must include a structural comparison of the accused products and the patent.  *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211-12 (Fed. Cir. 1998).  Dr. Davis's discussion of the products' overall architecture and processing was included for this reason.

McKesson complains about some remarks in Dr. Davis's report concerning additional features in the TriZetto Products. D.I. 182 at 8-9. Most of these are merely explanatory comments, not the foundation of Dr. Davis's non-infringement opinion (one comment is a substantive basis for Dr. Davis's opinion, as explained below):

- *"Where the '164 system is focused on clinical editing, the TriZetto products do the entire scope of claims adjudication, starting with the basic data validation, eligibility verification, provider verification, and so forth, eventually coming to clinical editing, then continuing on to medical utilization analysis, pricing and payment."* Ex. B at 31.

  This sentence introduces Dr. Davis's discussion of the processing performed by the TriZetto Products. It was included to provide background, not as an independent basis for Dr. Davis's opinion. Davis Decl., pp. 2-3, ¶ 4(a).

- *"[W]here the '164 system examines only the current claims, the TriZetto systems make use of both a current and prior claims database."* Ex. B at 31. The examination of prior medical claims by the TriZetto Products is relevant to understanding that the products do not perform the "ascertaining" step of the patent claims. Davis Decl., p. 3, ¶ 4(b). The method and apparatus of the '164 patent "ascertains whether the at least one claim contains a plurality of medical service codes" prior to commencing its multi-code clinical editing. *Id*. The TriZetto Products do not contain this limitation. Instead, they perform multi-code clinical editing on all claims, regardless of how many codes are present on the claim, even just one. Ex. B at 24. The reason for this, in part, is that the TriZetto Products are capable of checking codes on prior claims, together with codes on

the current claim.  *Id.*  Hence, Dr. Davis's discussion concerning the "prior claims database" and the ability of the TriZetto Products to edit across multiple claims is directly relevant to his infringement analysis, because it explains why the TriZetto Products do not perform the "ascertaining" step of the claims.

- *"[T]he TriZetto products check all claims against the diagnosis . . . This is a relation between a medical service code and a diagnosis, which is not part of what the '164 patent claims."*  Ex. B at 32.

This remark addresses the scope of the patent claims, as compared to what is described in the specification.  Davis Decl., p. 3, ¶ 4(c).  Dr. Davis explains that although one of the editing rules listed in Appendix B of the '164 patent (rule Q8) mentions diagnosis, the claims do not encompass editing based on diagnosis and, thus, cannot be construed to include such criteria.  *Id.*

- *"Examination of the claims also makes it clear that while they specify authorizing, rejecting, and/or deleting of medical service codes, there is no claim in the '164 patent adding to a medical claim a medical service code that was not entered by the user."*  Ex. B at 21.

This comment explains that the rebundling rules in Appendix B of the '164 patent (rules R1 to R4) are not included in any of the claims.  Davis Decl., p. 3-4, ¶ 4(d).  This fact renders the expert report of Dr. Johnson irrelevant, since she focuses almost exclusively on rebundling examples using rules R1 to R4.  *Id.*  Although the rebundling concept and rules are disclosed in the specification, Dr. Davis correctly notes that the claims do not provide such functionality.

McKesson also argues that Dr. Davis's non-infringement opinion concerning Claims 15 and 16 relies on "additional superfluous features."  D.I. 182 at 8-9.  This is incorrect.  Dr. Davis observed that the TriZetto Products *never* authorize or reject medical claims in response to whether a code on the medical claim is determined to be valid, which is a required step in Claims 15 and 16.  Ex. B at 34.  Dr. Davis was not just saying that additional functions are performed by the TriZetto Products between the validity check and the claim authorization.  Davis Decl., p. 4, ¶ 5.  Rather, he was distinguishing the TriZetto Products by the fact that they never authorize medical claims in response to whether one of the codes is valid.  Thus, Claims 15 and 16 are not infringed by the TriZetto Products.

**B.     Dr. Davis Used The Same Claim Construction For His Non-Infringement And Invalidity Reports.**

McKesson contends that Dr. Davis used different claim constructions in connection with his non-infringement and invalidity reports.  D.I. 182 at 10-12.  This is not so.  Dr. Davis used the same construction for both reports (even though only one report is ripe for consideration at this time – *see supra*, footnote 1).  Davis Decl., p. 4, ¶ 6.

As he explained during his deposition, Dr. Davis construed the relevant terms of the patent claims when he first reviewed the '164 patent:  "I tried to construe … the terms of the claim when I first went through the patent and continued to use that construction throughout my work."  Davis Depo. at 309:3-310:11 (attached as Exhibit A ("Ex. A") to McKesson's motion to exclude and strike Dr. Davis's non-infringement opinion); *see also* Davis Decl., ¶ 6.  Dr. Davis laid out this construction in his opening report on the subject of invalidity.  Expert Report of Randall Davis, dated October 24, 2005 (attached as Exhibit C ("Ex. C") to McKesson's motion to exclude and strike Dr. Davis's non-infringement opinion), at 4-9.  He used the same construction in his rebuttal report on infringement.  Davis Depo. at 310:5-11 (Ex. A) ("Q. And so you used a

construction in performing your invalidity report?   A. Yes.   Q. And did you make any modifications to your construction when you set about to do your infringement report?   A. No. No, I did not."); *see also* Davis Decl., ¶ 6.

McKesson complains that while Dr. Davis stressed the importance of the TriZetto source code to his non-infringement analysis (particularly with respect to the means-plus-function elements), he did not analyze the source code of the prior art systems in his invalidity report.   D.I. 182 at 10-11.   On this basis, McKesson contends that Dr. Davis was using a different claim construction in each of his reports.   This is illogical.

An infringement analysis is distinct from and governed by different principles than a validity analysis.   In his non-infringement report, Dr. Davis properly compared the structure and function of the means-plus-function and step-plus-function elements to the structure and function of the TriZetto Products.   This is the appropriate approach to analyzing elements under 35 U.S.C. § 112(6).   *See Pennwalt*, 833 F.2d at 934 ("the court must compare the accused structure *with the disclosed structure*, and must find equivalent *structure* as well as *identity* of claimed *function* for the structure").   In performing his comparison, Dr. Davis relied on the TriZetto source code as the best and clearest information concerning the TriZetto Products.   Davis Depo. at 275:1-5 (Ex. A).

In his invalidity report, Dr. Davis examined whether the patent claims would have been obvious to one of ordinary skill in the art.   Employing the same construction that he used for his non-infringement analysis, Dr. Davis found all of the patented functions in the prior art references he examined (Ex. C at 9-33) and concluded that the structure described in the '164 patent (including the source code in Appendix D of the patent) was not novel and would have been obvious to one of ordinary skill in the art (Ex. C at 40).   This is the correct approach to an

obviousness analysis under 35 U.S.C. § 103.  *See Smiths Industries Med. Sys., Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1353 (Fed. Cir. 1999) ("a claimed invention is unpatentable if 'the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious' to one of ordinary skill in the art at the time the invention was made").  The fact that source code was helpful to understanding the structure of the TriZetto Products for non-infringement purposes does not mean that prior art source code was necessary to the obviousness inquiry.  As Dr. Davis explained, the prior art references, together with the practical knowledge of a person of ordinary skill in the art at the time, were sufficient to render the patent claims obvious.  Davis Depo. at 197:14-198:6 (Ex. A).  Although Dr. Davis certainly used distinct methods for analyzing non-infringement and invalidity, as legally prescribed for those subjects, he did not use a different claim construction.

**C.    Dr. Davis Interpreted The Patent Claims From The Perspective Of A Person Of Ordinary Skill In The Art.**

McKesson argues that Dr. Davis did not interpret the patent claims from the viewpoint of a person of ordinary skill in the art.  D.I. 182 at 12-13.  McKesson suggests that Dr. Davis was not clear concerning the appropriate qualifications of a person of ordinary skill.  This is simply incorrect.

In his opening report, Dr. Davis identified a person of ordinary skill "to be someone with an undergraduate degree in Computer Science with at least one course in artificial intelligence, and at least one year of experience in building expert systems."  Ex. C at 3 fn.1.  At his deposition, Dr. Davis explained that such a person would acquire an understanding of specific knowledge domains when they undertook to build a particular expert system.  Hence, the person of ordinary skill would have learned the concepts and issues of medical claims editing by working on an expert system in that area.  Davis Depo. at 206:2-21 (Ex. A) ("I think that

someone with this background and skill would be able to learn the task domain in a perfectly reasonable amount of time."). Dr. Davis viewed the patent claims in both of his reports from the perspective of a person of ordinary skill. Ex. C at 3; Ex. B at 2 ("I understand that a claim's language should be interpreted from the perspective of an individual skilled in the art of the invention at the time the application for the patent was filed.").

Contrary to McKesson's argument, Dr. Davis's definition of a person of ordinary skill did not vary in the course of his deposition. In response to questioning by McKesson's counsel, Dr. Davis agreed that "a person of ordinary skill" in this case could be someone with even more skill than the person he had defined in his report. Davis Depo. at 206:2-211:9 (Ex. A). But Dr. Davis made clear that his definition was appropriate and was what he actually used in performing his analysis. *Id.* at 206:2-21; *see also* Davis Decl., ¶ 7.

### D. The Flowcharts Were Specially Prepared For Use In This Litigation And Were Not Discoverable Documents Under Fed. R. Civ. P. 34.

McKesson complains that the flowcharts attached to Dr. Davis's non-infringement report were not produced to McKesson during the fact discovery period. D.I. 182 at 14-15. But these flowcharts were not documents that existed in the ordinary course of TriZetto's business. Instead, they were specially created by TriZetto employee Craig Luftig at the request of counsel for use in this litigation. Accordingly, the flowcharts were protected by the work product doctrine and were not discoverable pursuant to Fed. R. Civ. P. 34. *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 662 (3d Cir. 2003) ("the work product doctrine applies to 'documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative'").

When Dr. Davis prepared his non-infringement report in early November 2005, he was interested in a graphical representation of the process flow for the TriZetto Products.

Davis Decl., p. 5, ¶ 8. Upon requesting and reviewing the flowcharts, Dr. Davis incorporated them into his report. The flowcharts are no different than the various charts included in the reports of McKesson's experts. For example, the report of McKesson's damages expert, Michael J. Wagner, contains a large collection of charts created for this litigation and not previously produced during discovery. *See* Appendix of Exhibits in Support of TriZetto's Motion to Exclude the Expert Testimony of Michael J. Wagner, filed December 20, 2005, Exh. A, Tab B. Similarly, the flowcharts in Dr. Davis's report were specifically prepared for this litigation and not subject to discovery until they were incorporated into Dr. Davis's report. The flowcharts were produced in accordance with Fed. R. Civ. P. 26(a)(2)(B). Thus, there is no basis to exclude or strike Dr. Davis's testimony.

### E.  McKesson Never Sought A Live Demonstration Of The TriZetto Products.

In preparing his non-infringement report, Dr. Davis was given a short, live demonstration of the basic clinical editing functionality of each accused product. McKesson protests that it was not privy to this live demonstration and contends that as a result it has been prejudiced. D.I. 182 at 15-16. McKesson asks that TriZetto and Dr. Davis be precluded from relying on the product demonstrations. McKesson's complaint is misguided for several reasons.

First, at McKesson's request, TriZetto provided McKesson with the entire source code, product specifications, and functional software for all three TriZetto Products. McKesson never asked TriZetto for a product demonstration, nor did it serve a demand to inspect the working TriZetto products, pursuant to Fed. R. Civ. P. 34. *See* Declaration of Jeffrey T. Thomas in Support of TriZetto's Opposition to McKesson's Motion to Exclude and Strike the Non-Infringement Opinions of TriZetto's Expert Witness Dr. Randall Davis ("Thomas Decl."), filed herewith, at ¶ 6. Instead, McKesson wanted installable software that it could use on its own.

TriZetto provided that software and participated in at least two conference calls to help McKesson set up the software.  *Id.* at ¶ 4.  McKesson subsequently demanded that TriZetto send a technical support person to the office of McKesson's counsel.  *Id.* at ¶ 6.  TriZetto declined this unreasonable request, but offered to provide further assistance by telephone, if needed.  *Id.* McKesson next addressed this issue with the Court, and the Court specifically instructed that "if counsel for McKesson believes that there are still problems, then you all need to organize a telephone conference with me with a technical person for each side."  D.I. 138 at 20:21-24. TriZetto's counsel wrote a letter to McKesson's counsel extending an invitation to contact the Court as instructed if McKesson had any remaining problems with the software.  Thomas Decl., ¶ 6.  McKesson never responded and did not raise this issue again with either TriZetto or the Court.  *Id.*

Second, despite having subpoenaed a multitude of TriZetto's customers, McKesson never asked to view the functioning products of any of those customers, nor did it seek a product demonstration from the customers.  McKesson even deposed several customers at their facilities and never once requested either an inspection of the working software or a demonstration of their system.

Third, even after McKesson received Dr. Davis's non-infringement report on November 15, 2005 (in which he disclosed that he had viewed a live demonstration of the products), McKesson still did not ask TriZetto for a live demonstration or for any assistance with the functional software that was previously delivered.

It is apparent that McKesson was not particularly interested in the product demonstrations, preferring instead to seek exclusion of evidence it never diligently sought. TriZetto has made all reasonable efforts to supply source code, product specifications and

software products to McKesson and to assist McKesson with the software.  McKesson's decision

not to request a live demonstration and its failure to seek additional assistance is not a reason to

limit Dr. Davis's testimony.

## V.    CONCLUSION

For the reasons set forth herein, McKesson's motion to exclude and strike the

expert testimony of Dr. Randall Davis should be denied in its entirety.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

_____
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
rsmith@mnat.com
  *Attorneys for Defendant*
  *The TriZetto Group, Inc.*

OF COUNSEL:

Jeffrey T. Thomas
David A. Segal
Michael A. Sitzman
GIBSON, DUNN & CRUTCHER LLP
Jamboree Center, 4 Park Plaza
Irvine, California 92614-8557
(949) 451-3800

January 5, 2006
500574

## CERTIFICATE OF SERVICE

I, Rodger D. Smith II, hereby certify that on January 5, 2006, I caused to be electronically filed Defendant The TriZetto Group, Inc.'s Opposition To McKesson's Motion To Exclude And/Or Strike The Non-Infringement Opinions Of TriZetto's Expert Witness Dr. Randall Davis with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Thomas J. Allingham, II
Skadden, Arps, Slate, Meagher & Flom LLP

I also certify that copies were caused to be served on January 5, 2006, upon the following in the manner indicated:

### BY HAND

Thomas J. Allingham, II
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, DE  19899

### BY FEDERAL EXPRESS

Jeffrey G. Randall
Skadden, Arps, Slate, Meagher & Flom LLP
525 University Avenue
Suite 1100
Palo Alto, CA  94301

/s/     *Rodger D. Smith II (#3778)*
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com