IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MCKESSON INFORMATION          )
SOLUTIONS  LLC,               )
                              )          C.A. No. 04-1258 (SLR)
                Plaintiff,    )
                              )
        v.                    )
                              )
THE TRIZETTO GROUP, INC.,     )
                              )
                Defendant.    )

## THE TRIZETTO GROUP, INC.'S ANSWERING BRIEF IN OPPOSITION TO MCKESSON'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
  *Attorneys for Defendant*
  *The TriZetto Group, Inc.*

OF COUNSEL:

Jeffrey T. Thomas
David A. Segal
Michael A. Sitzman
GIBSON, DUNN & CRUTCHER LLP
Jamboree Center, 4 Park Plaza
Irvine, California 92614-8557
(949) 451-3800

January 10, 2006

TABLE OF CONTENTS

Page

TABLE OF CITATIONS                                                                    ii

NATURE AND STAGE OF THE PROCEEDING                                        1

SUMMARY OF ARGUMENT                                                              2

STATEMENT OF FACTS                                                                   4

ARGUMENT                                                                                   4

I.      MCKESSON'S MOTION SHOULD BE DENIED BECAUSE IT
        DOES NOT INCLUDE THE REQUIRED STRUCTURE-TO-
        STRUCTURE COMPARISON FOR THE MEANS-PLUS-
        FUNCTION ELEMENTS                                                           4

        A.      Proving Infringement Of A Means-Plus-Function Element
                Requires A Structure-To-Structure Comparison                     6

        B.      McKesson's Motion Does Not Contain The Required
                Structure-To-Structure Comparison                                   8

II.     THE  WITNESS  TESTIMONY  ON  WHICH  MCKESSON
        RELIES  IS  INSUFFICIENT  AND  INADMISSIBLE  TO
        DEMONSTRATE INFRINGEMENT                                            11

III.    MCKESSON DOES NOT ADEQUATELY EXPLAIN HOW THE
        TRIZETTO  PRODUCTS  ALLEGEDLY  PERFORM  THE
        FUNCTIONS OF CLAIMS 3, 6, 15 AND 16                               14

IV.     THE  TRIZETTO  PRODUCTS  DO  NOT  MEET  SEVERAL
        ELEMENTS OF CLAIMS 3, 6, 15 AND 16                               15

        A.      The TriZetto Products Do Not Contain A "Predetermined
                Database"                                                              17

        B.      The  TriZetto  Products  Do  Not  Ascertain  Whether
                Submitted Medical Claims Contain A Plurality Of Medical
                Service Codes                                                          21

        C.      The TriZetto Products Do Not Authorize Or Reject Medical
                Claims In Response To Determining The Validity Of A
                Code On The Claim                                                     24

CONCLUSION                                                                               26

ii.

## TABLE OF CITATIONS

Page(s)

Cases

*Ballas v. Tedesco*,
    41 F. Supp. 2d 531 (D.N.J. 1999)                    11

*Centricut, LLC v. Esab Group, Inc.*,
    390 F.3d 1361 (Fed. Cir. 2004)                    12, 14

*CytoLogix Corp. v. Ventana Med. Sys., Inc.*,
    76 U.S.P.Q.2d 1592 (Fed. Cir. 2005)                    8

*Mas-Hamilton Group v. LaGard, Inc.*,
    156 F.3d 1206 (Fed. Cir. 1998)                    7, 8

*Medical Instrumentation & Diagnostics Corp. v. Elekta AB*,
    344 F.3d 1205 (Fed. Cir. 2003)                    6, 7

*O.I. Corp. v. Tekmar Co.*,
    115 F.3d 1576 (Fed. Cir. 1997)                    6

*Pennwalt Corp. v. Durand-Wayland, Inc.*,
    833 F.2d 931 (Fed. Cir. 1987)                    8

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)                    13

*SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*,
    859 F.2d 878 (Fed. Cir. 1988)                    15

*TechSearch, L.L.C. v. Intel Corp.*,
    286 F.3d 1360 (Fed. Cir. 2002)                    15

Statutes

35 U.S.C. § 112(6)                    4, 5, 6

Rules

Fed. R. Evid. 701                    11

## NATURE AND STAGE OF THE PROCEEDING

On September 13, 2004, plaintiff McKesson Information Solutions, LLC ("McKesson") filed this suit against The TriZetto Group, Inc. ("TriZetto") alleging infringement of U.S. Patent No. 5,253,164 ("the '164 patent"). On October 1, 2004, McKesson amended its Complaint. On November 1, 2004, TriZetto answered and filed a counterclaim seeking a declaratory judgment of invalidity, unenforceability, and non-infringement.

McKesson alleges that three of TriZetto's products (Facets, ClaimFacts and QicLink – collectively, the "TriZetto Products") infringe fifteen claims of the '164 patent (Claims 1-6 and 8-16). Fact and expert discovery have been completed. The Court has bifurcated the issue of invalidity and stayed motion practice and trial on that issue. On the issues of infringement, damages and equitable defenses, motion practice is proceeding and scheduled for hearing on February 16, 2006, at which time the Court is also scheduled to consider any issues of claim construction. Trial on the issues of infringement, damages and equitable defenses is set for April 17, 2006.

On December 15, 2005, TriZetto filed a motion for summary judgment of non-infringement as to all claims of the '164 patent. Among other things, TriZetto contends that McKesson cannot prove infringement as to any claim because it has not performed a structure-to-structure comparison of the means-plus-function claim elements, and that it cannot perform such comparison given the lack of structure identified in the '164 patent. Additionally, the TriZetto Products do not contain a "predetermined database" and do not perform the "ascertaining" step required in each of the patent claims. On the same day, McKesson filed a motion for summary judgment of infringement, arguing that it is entitled to judgment that

TriZetto had infringed Claims 3, 6, 15 and 16 of the '164 patent.  This is TriZetto's opposition brief to McKesson's motion for summary judgment.

## SUMMARY OF ARGUMENT

McKesson's motion for summary judgment of infringement is deficient for several reasons.

First, McKesson does not perform the required structure-to-structure comparison for proving infringement of the means-plus-function elements.  Claims 3, 6, 15 and 16 each contain at least one element written in means-plus-function form.  To prove infringement as to these elements, McKesson must undertake both a functional and structural comparison of the patent to the accused products.  McKesson's brief contains no structural comparison whatsoever.  Indeed, McKesson's infringement experts did not undertake such a comparison as they concluded it was unnecessary.  *See* TriZetto's Motion to Exclude Testimony of Margaret L. Johnson and Mark A. Musen (D.I. 178-179).  Accordingly, McKesson has failed to carry its burden.

Second, the testimony of TriZetto's customers and employees, on which McKesson relies almost exclusively to support its motion, is insufficient and inadmissible to prove infringement.  McKesson cites to testimony from at least 11 witnesses who were asked whether they believed that the Trizetto Products process medical claims in the manner described in the '164 patent.  These witnesses were neither prepared nor qualified to offer any opinion on the subject of patent infringement.  None of these witnesses were experts (McKesson does not cite at all to the opinions or testimony of its own experts).  None of the lay witnesses had any formal training, knowledge or education regarding patents, patent claim interpretation or patent law in general.  Most of the witnesses had never read the patent beforehand, and they were given no opportunity at their depositions to read anything beyond the patent claims.  Nor were they

asked to review and consider any structure disclosed in the patent specification. Many were unclear regarding the meaning of certain ambiguous terms and had to rely on definitions sometimes offered by McKesson's counsel. Other times, they were just told by McKesson's counsel to respond on the spot. Determining infringement is a task for qualified experts, not lay witnesses who have never before seen the patent. Consequently, the witness testimony is insufficient and inadmissible to prove infringement and McKesson's motion fails for lack of support.

Third, McKesson neglects to provide any substantive explanation of how the TriZetto Products match the functionality and structure of the patent claims. Instead, McKesson simply quotes conclusory witness testimony and product documents without explaining how the accused products perform the claimed functions. McKesson leaves it to the Court to work through the proffered "evidence" and figure out how the TriZetto Products supposedly infringe each element of each claim. For this reason as well, McKesson's infringement motion is defective.

Fourth, the TriZetto Products do not meet several elements of Claims 3, 6, 15 and 16. The products do not contain a "predetermined database," they do not ascertain whether a plurality of medical codes is present on a submitted claim, and they do not authorize or reject medical claims based on whether a code on the medical claim is valid or invalid. These non-infringement positions are amply supported by the claim language, the patent specification, and the testimony of TriZetto expert Dr. Randall Davis. TriZetto's claim construction with respect to these elements does not add unstated limitations to the claims, but rather supplies meaning to the express limitations of the existing claim language that McKesson seeks to avoid.

Finally, McKesson's motion is based on the assumption that the Court will adopt its deficient and unhelpful claim construction. If the Court does not embrace McKesson's construction, the motion must necessarily be denied.

For these reasons, and for the reasons set forth in TriZetto's motion for summary judgment of non-infringement, McKesson's motion should be denied.

<u>STATEMENT OF FACTS</u>

The relevant facts are set forth in the argument sections below, as appropriate.

<u>ARGUMENT</u>

I.    MCKESSON'S MOTION SHOULD BE DENIED BECAUSE IT DOES NOT INCLUDE THE REQUIRED STRUCTURE-TO-STRUCTURE COMPARISON FOR THE MEANS-PLUS-FUNCTION ELEMENTS

Claims 3, 6, 15 and 16, asserted by McKesson in its motion, each contain at least one element written in means-plus-function form. It is undisputed that these means-plus-function elements are subject to the requirements of 35 U.S.C. § 112(6), under which the claimed functions must be matched to corresponding structure from the patent specification. The Court has already determined that 35 U.S.C. § 112(6) applies to these elements and that corresponding structure must be identified and linked to each specific element. D.I. 99.

Claims 3, 6 and 15 each include the following means-plus-function elements:

- "means for receiving at least one claim"

- "means for ascertaining whether the at least one claim contains a plurality of medical service codes"

- "means for determining whether one of the medical service codes in the plurality of medical service codes is valid or invalid by interacting with the database and the set of relationships contained in the database"

Claims 3 and 6 also include these additional elements:

- "means for authorizing medical service codes which are valid in response to the means for determining"

- "means for rejecting medical service codes which are invalid in response to the means for determining"

Claim 15 contains elements for "authorizing" and "rejecting" medical "claims," rather than "medical service codes":

- "means for authorizing the at least one claim in response to the means for determining"

- "means for rejecting the at least one claim in response to the means for determining"

Finally, Claim 16 contains the following means-plus-function element:[1]

- "means for operating on a predetermined database . . ."

To prove infringement of these means-plus-function elements, McKesson must show that the accused products perform the identical functions *and* have identical or equivalent structure as what is disclosed in the patent specification. In its motion, McKesson completely ignores the structure requirement and does not attempt to compare any structure from the specification to the accused products. McKesson briefly acknowledges the applicability of 35 U.S.C. § 112(6) to the means-plus-function elements in the patent, but remains silent on the issue throughout the remainder of its brief. D.I. 165 at 10. For this reason alone, McKesson's infringement motion should be denied.

---

[1]     Claim 16 also contains several step-plus-function elements, as explained in TriZetto's Opening Claim Construction Brief. D.I. 158 at 10-11.

A.    Proving Infringement Of A Means-Plus-Function Element
      Requires A Structure-To-Structure Comparison

Elements written in means-plus-function form are permitted by 35 U.S.C.

§ 112(6), which states:

> An element in a claim for a combination may be expressed as a
> means or step for performing a specified function without the
> recital of structure, material, or acts in support thereof, and such
> claim shall be construed to cover the corresponding structure,
> material, or acts described in the specification and equivalents
> thereof.

In exchange for the benefit of writing a claim element in the simplified means-plus-function

form, the patentee is obliged to clearly link the claimed function to corresponding structure

disclosed in the patent specification. *See Medical Instrumentation & Diagnostics Corp. v. Elekta

AB ("MIDCO")*, 344 F.3d 1205, 1211 (Fed. Cir. 2003) ("[t]he duty of a patentee to clearly link

or associate structure with the claimed function is the quid pro quo for allowing the patentee to

express the claim in terms of function under section 112, paragraph 6"); *O.I. Corp. v. Tekmar

Co.*, 115 F.3d 1576, 1583 (Fed. Cir. 1997) ("the price that must be paid for use of that

convenience is limitation of the claim to the means specified in the written description and

equivalents thereof").

The Federal Circuit has made clear that determining infringement of a means-

plus-function element involves four steps:[2]

(1)    Identify the claimed function of the element;

---

[2]    The legal standard for determining infringement of means-plus-function elements is
discussed in greater detail in TriZetto's Opening Brief in Support of TriZetto's Motion for
Summary Judgment of Non-Infringement. D.I. 153 at 7-12. TriZetto also discusses this
legal standard in its Motion to Exclude Expert Testimony of Margaret L. Johnson and
Mark A. Musen. D.I. 179 at 7-8.

(2)    Identify the corresponding structure in the patent specification that performs the function;

(3)    Perform a function-to-function comparison to see if the accused products have the identical function as the claim element; and

(4)    Perform a structure-to-structure comparison to see if the accused products have identical or equivalent structure that corresponds to the claim element.

*See MIDCO*, 344 F.3d at 1211; *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211-12 (Fed. Cir. 1998).

As with any infringement analysis, the four-step process for determining infringement of a means-plus-function element includes both "1) claim construction; and 2) application of the properly construed claim to the accused product." *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002). The first two steps involve construction of the means-plus-function element:

(1)    "The first step . . . is to identify the particular claimed function."

(2)    "The second step in the analysis is to look to the specification and identify the corresponding structure for that function."

*MIDCO*, 344 F.3d at 1210. The third and fourth steps involve comparing the accused products to the construed claim element:

(3)    A function-to-function comparison: "[D]etermine whether the accused device performs an identical function to the one recited in the means-plus-function clause."

(4)    A structure-to-structure comparison: "[D]etermine whether the accused device utilizes the same structure or materials as described in the specification, or their equivalents."

*Mas-Hamilton*, 156 F.3d at 1211-12; *see also Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 934 (Fed. Cir. 1987) ("the court must compare the accused structure *with the disclosed structure*, and must find equivalent *structure* as well as *identity* of claimed *function* for the structure") (emphasis in original).

Infringement of a means-plus-function element cannot be shown without proof that the structure in the accused product is identical to or at least equivalent to the corresponding structure disclosed in the patent specification.  In fact, the Federal Circuit recently reversed a jury verdict of infringement due to the lack of a structure-to-structure analysis.  *CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 76 U.S.P.Q.2d 1592, 1600 (Fed. Cir. 2005) ("CytoLogix failed to identify the structure in the specification . . . and compare it to the structure of the accused device").

> B.     McKesson's Motion Does Not Contain The Required Structure-To-Structure Comparison

McKesson's motion is devoid of any structure-to-structure analysis.  McKesson presents no evidence or testimony of any kind discussing:  (1) the structure in the patent specification corresponding to the functions of the various means-plus-function elements; or (2) the structure of the TriZetto Products – i.e., the software algorithms that carry out the product functions (McKesson's evidence focuses almost exclusively on product functionality as opposed to structure).  Nor does McKesson make any attempt to compare the patent structure to the structure of the accused products.

McKesson's motion is based almost exclusively on the testimony of certain TriZetto customers and employees, who were asked at deposition whether the TriZetto Products perform the elements of the patent claims.  D.I. 165 at 11-12, 18-19; D.I. 167 at Ex. D.  For the reasons explained in Section IV.B below, this testimony is insufficient and inadmissible to

establish infringement.  And in any event, the witnesses, at best, only addressed the *functions* listed in the patent claims, not the *structure* disclosed in the patent specification.

McKesson questioned the following witnesses on the subject of patent infringement:

1.     TriZetto CEO and Chairman Jeffrey Margolis ("Margolis Depo.");

2.     TriZetto Executive Vice President Anthony Bellomo ("Bellomo Depo.");

3.     TriZetto employee Craig Luftig, the 30(b)(6) designee on Facets ("Luftig Depo.");

4.     TriZetto employee Karen Lampe, the 30(b)(6) designee on ClaimFacts ("Lampe Depo.");

5.     TriZetto employee John Danza, the 30(b)(6) designee on QicLink ("Danza Depo.");

6.     TriZetto employee Tara Smith ("Smith Depo.");

7.     Tracy Pierson and Carolyn Drini, the designees for TriZetto customer Providence Health Plan ("Pierson & Drini Depo.");

8.     John Blake, the designee for TriZetto customer Blue Cross Blue Shield of Tennessee ("Blake Depo.");

9.     Patricia Keplinger, the designee for TriZetto customer Harrington Benefits ("Keplinger Depo."); and

10.    Clifton Jones, the designee for TriZetto customer Key Benefit Administration ("Jones Depo.").

McKesson's counsel asked the witnesses, in varying ways, whether the functions of the patent claims are performed by the TriZetto Products.  Margolis Depo., 110:18-161:8

(Exh. A); Bellomo Depo., 84:20-119:4 (Exh. B); Luftig Depo., 66:9-100:18, 120:4-148:23 (Exh. C); Lampe Depo., 57:21-80:22 (Exh. D); Danza Depo., 92:2-105:6 (Exh. E); Smith Depo., 85:8-95:16 (Exh. F); Pierson & Drini Depo., 67:20-77:21 (Exh. G); Blake Depo., 134:2-145:7 (Exh. H); Keplinger Depo., 102:4-143:5 (Exh. I); Jones Depo., 29:10-34:22 (Exh. J).   The witnesses were not asked to read or comment on the structure disclosed in the patent specification.  *Id.* Most of the witnesses had never read through the patent specification, and none were given an opportunity to do so at their deposition.  *See* Margolis Depo., 37:22-25 (Exh. A); Bellomo Depo., 85:3-6 (Exh. B); Lampe Depo., 26:5-14, 95:24-96:10 (Exh. D); Danza Depo., 112:17-113:1 (Exh. E); Smith Depo., 120:18-121:17 (Exh. F); Blake Depo., 155:16-19 (Exh. H); Keplinger Depo., 100:3-12 (Exh. I); Jones Depo., 66:16-24 (Exh. J).  Most importantly, the witnesses were never asked to compare the structure from the patent specification to the structure of the TriZetto Products.  Thus, even if their testimony were competent evidence, it does not supply the needed structural analysis.

Apart from the witness testimony, McKesson also relies on certain TriZetto product documents.  *See* D.I. 167 at Ex. D.  Again, most of the material quoted by McKesson addresses only the function of the TriZetto Products, not the corresponding structure.  Whatever structure is revealed in the product documents, McKesson makes no effort to compare it to the structure from the patent specification.  Nor does McKesson submit any expert testimony from its two "infringement experts" supporting a structural comparison (indeed, McKesson does not cite to the opinions or testimony of its experts at all in its motion).  Because McKesson has

utterly failed to undertake the required structure-to-structure analysis, its infringement motion must be denied.[3]

## II.     THE WITNESS TESTIMONY ON WHICH MCKESSON RELIES IS INSUFFICIENT AND INADMISSIBLE TO DEMONSTRATE INFRINGEMENT

McKesson's infringement motion is based chiefly on the deposition testimony of certain TriZetto customers and employees (listed in Section IV.A above).  McKesson contends that these witnesses "have all admitted infringement."  D.I. 165 at 11.  Yet, McKesson cannot build its infringement case on the testimony of these witnesses, none of whom was prepared or qualified to offer opinions on infringement at their depositions.  For the reasons discussed below, the testimony of these witnesses is not admissible to establish infringement.  *See* Fed. R. Evid. 701.

Although the TriZetto customers and employees were certainly capable of testifying as fact witnesses with regard to their knowledge of the TriZetto Products, their testimony concerning patent infringement was pure speculation.   Under Federal Rule of Evidence 701, witnesses not testifying as experts are only permitted to offer opinions which are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) *not based on scientific, technical, or other specialized knowledge within the scope of Rule 702*."  Fed. R. Evid. 701 (emphasis added).  Given the technical nature of patents in general and the '164 patent in particular, the task of analyzing infringement is a subject for designated experts, not lay

---

[3]     McKesson cannot correct the deficiencies in its motion in its reply brief.  *Ballas v. Tedesco*, 41 F. Supp. 2d 531, 533 fn. 2 (D.N.J. 1999) ("[a] moving party may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief").

witnesses.  *See Centricut, LLC v. Esab Group, Inc.*, 390 F.3d 1361, 1370 (Fed. Cir. 2004) ("[w]e have . . . noted that 'typically' expert testimony will be necessary in cases involving complex technology").   The TriZetto customers and employees had neither the foundation nor the qualifications to opine on the subject of patent infringement.

First, virtually none of the witnesses had even read the patent when they were asked about the patent claims, nor were they given a chance to review the patent beyond the claims themselves.  *See* Margolis Depo., 37:22-25 (Exh. A); Bellomo Depo., 85:3-6 (Exh. B); Lampe Depo., 26:5-14, 95:24-96:10 (Exh. E); Danza Depo., 112:17-113:1 (Exh. E); Smith Depo., 120:18-121:17 (Exh. F); Blake Depo., 155:16-19 (Exh. H); Keplinger Depo., 100:3-12 (Exh. I); Jones Depo., 66:16-24 (Exh. J).   Hence, most of the witnesses were offering opinions on patent claims they were reading for the first time, and without the aid of the patent specification.

Second, the witnesses obviously did not have the Court's claim construction to assist them, given that the Court has not yet issued a claim construction ruling in this case.   As none of the witnesses were patent lawyers or otherwise skilled in reading patents, their interpretation of the claim language was based wholly on their own layperson's understanding.

Third, without a claim construction and without having read the patent specification, it is not surprising that many witnesses had difficulty with the ambiguous terms in the patent claims.  For example, Mr. Danza and Mr. Blake were not clear on the meaning of "predetermined database."   Danza Depo., 92:21-93:2 ("I don't know what a predetermined database would indicate") (Exh. E); Blake Depo., 159:22-160:12 (Exh. H).  Ms. Lampe and Mr. Bellomo had trouble with the terms "mutually exclusive" and "medically exclusive."  Lampe Depo., 62:15-63:14 ("I'm not sure what they're meaning by mutually exclusive") (Exh. D);

Bellomo Depo., 116:12-21 ("I'm not sure I understand what the term 'medically exclusive' means") (Exh. B).  Several witnesses had questions regarding the usage of the term "non-medical criteria."  Lampe Depo., 59:11-25 (Exh. D); Margolis Depo., 152:8-18 (Exh. A); Luftig Depo., 71:21-72:16 (Exh. C).  Counsel for McKesson sometimes supplied the witnesses with its own interpretations of the ambiguous terms.  Consequently, the opinions the witnesses offered were based on McKesson's claim construction, not the Court's claim construction.

Because the witnesses did not read the patent specification, did not have the Court's claim construction ruling, and were not clear on many of the claim terms, they were in absolutely no position to properly interpret the patent claims.  Patent claims are interpreted from the perspective of a person of ordinary skill in the art who has *read the entire patent, including the specification.  See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) ("[i]mportantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification").  None of the witnesses was able to properly interpret the patent claims during their depositions.  Consequently, their testimony is of no value to establishing infringement.

Additionally, McKesson chose to cherry-pick the witness testimony that supports its case, while ignoring unfavorable testimony.  For example, Mr. Bellomo testified that the Facets database is not "predetermined," because it can be modified by the customers.  Bellomo Depo., 91:21-92:15 ("the database is not predetermined, because it's affected by our customers, so the database that's contained in Facets for both the clinical editing as well as the other parts of the application is modifiable, able to be modified, added to, augmented, deleted by each and

every customer of ours") (Exh. B).  But McKesson completely ignores this testimony, instead focusing on the testimony that better suits its position.

Additionally, as discussed above in Section IV.A, the witnesses did not consider the corresponding structure from the patent specification and attempt to compare that structure to the TriZetto Products.  Hence, the witness testimony does not supply the missing structure-to-structure comparison needed to prove infringement.

Instead of submitting testimony from its experts, McKesson has inexplicably chosen to base its motion solely on the testimony of lay witnesses who were neither prepared nor qualified to opine on infringement of the '164 patent.  Even if this lay testimony were admissible (which it is not), it is not dispositive of infringement and certainly cannot be used to contradict the expert testimony of TriZetto's expert, who has given a non-infringement opinion based on his expertise and a full consideration of the patent.  *See Centricut*, 390 F.3d at 1370.  McKesson does not even cite its own expert reports to support its infringement motion.

For all these reasons, the testimony of TriZetto's customers and employees is insufficient and inadmissible to establish infringement.

III.   MCKESSON DOES NOT ADEQUATELY EXPLAIN HOW THE
       TRIZETTO   PRODUCTS   ALLEGEDLY   PERFORM   THE
       FUNCTIONS OF CLAIMS 3, 6, 15 AND 16

Not only does McKesson's motion lack a structural analysis, it also lacks an adequate functional analysis.  By relying so heavily on the purported admissions of the lay witnesses, McKesson neglects to offer a substantive explanation of how the TriZetto Products perform the various functions of the patent claims.  Instead, McKesson's infringement analysis consists primarily of conclusory witness testimony and product document excerpts, offered without any meaningful explanation.  D.I. 165 at 11-12, 18-19; D.I. 167 at Ex. D.  It is McKesson's burden to "prove infringement by a preponderance of the evidence" by showing that

"every limitation of the patent claims asserted to be infringed is found in the accused device, either literally or by an equivalent." *SmithKline Diagnostics, Inc. v. Helena Labs. Corp*., 859 F.2d 878, 889 (Fed. Cir. 1988).   This analysis requires both "claim construction" and "application of the properly construed claim to the accused product." *TechSearch,* 286 F.3d at 1369.  McKesson has failed to carry this burden in its infringement motion.

For example, McKesson does not explain how the TriZetto Products determine that a code is "valid or invalid" by "interacting with the database," as required by the "determining" step of Claims 3, 6, 15 and 16.  Presumably, McKesson construes this step to cover the clinical editing functionality of the TriZetto Products – i.e., the application of clinical editing rules to the codes on the submitted claim.  Yet, McKesson does not attempt to explain which of the rules disclosed in the patent are encompassed by Claims 3, 6, 15 and 16 and which of those rules are performed by the TriZetto Products.  It is clear from the prosecution history that the claims of the '164 patent were intended to cover the rules outlined in Appendix B of the patent specification.  *See* MCK 000293 (the invention "claims a set of rules") (Exh. K).  But McKesson does not address those rules anywhere in its motion.  Accordingly, McKesson fails to properly construe the "determining" element of Claims 3, 6, 15 and 16 and fails to apply that element to the accused products, as required by law.

## IV.   THE TRIZETTO PRODUCTS DO NOT MEET SEVERAL ELEMENTS OF CLAIMS 3, 6, 15 AND 16

As explained more fully in TriZetto's Motion for Summary Judgment of Non-Infringement (D.I. 153), the TriZetto Products do not infringe the claims of the '164 patent because (1) they do not contain a "predetermined database," and (2) they do not ascertain whether submitted medical claims contain a plurality of codes in order to proceed with the multiple-code edits.  D.I. 153 at 24-27.  These facts are confirmed by TriZetto's infringement

expert, Dr. Randall Davis.  *See* Rebuttal Report of Randall Davis ("Davis Report") (D.I. 167 at Ex. E, pp. 24-27, 32-33).[4]  Dr. Davis also confirmed that the TriZetto Products do not authorize or reject medical claims "in response to the determining step," as required by Claims 15 and 16.  Davis Report (D.I. 167 at Ex. E, p. 34).

McKesson attempts to refute these non-infringement positions in its motion, without referring to any competent evidence, including the testimony of its own experts.  D.I. 165 at 15-24.  McKesson accuses TriZetto of relying on incorrect constructions of the relevant claim terms.  McKesson insists that under the "plain language" of Claims 3, 6, 15 and 16, the TriZetto Products infringe the disputed elements.  McKesson's arguments are faulty for several reasons.

First, the notion that the term "predetermined database" has a "plain language" meaning is absurd, given that both of McKesson's experts admit the term is unknown in the art.  The definition that McKesson uses – a database with data that is fixed before the product is used (D.I. 165 at 3, 17-18) – fails to distinguish the "predetermined database" from an ordinary database.  By contrast, TriZetto's definition – a database that cannot be modified by the end user – gives meaning to the word "predetermined" and accords with the patent specification, which describes the contents of the database as expert-derived and, therefore, unalterable by the end user.  The TriZetto Products indisputably do not contain a "predetermined database," because their databases are designed to permit user modification of the contents.

---

[4]      Contrary to McKesson's contention (D.I. 165 at 13-14), Dr. Davis's non-infringement opinion with respect to Claim 3 is not based solely on the absence of two claim elements from the TriZetto Products (although that alone is sufficient to demonstrate non-infringement).  Dr. Davis also opined regarding the structural differences between the TriZetto Products and the '164 patent, an opinion that is applicable to Claim 3.  Davis Report (D.I. 167 at Ex. E, pp. 30-32).

Second, the TriZetto Products simply do not ascertain whether submitted claims contain a plurality of medical codes.  Counting the number of codes on a claim is not the same as specifically determining if there is more than one code on a single claim.  Whether or not the Court adopts TriZetto's claim construction of this element, the claim language makes clear that a plurality of codes is specifically ascertained and that the "determining" step is only executed on that plurality.  The TriZetto Products do not have this functionality.

Third, the TriZetto Products never authorize medical claims in response to a determination that one of the medical codes on the claim is valid, as required by Claims 15 and 16.  McKesson contends that this non-infringement position relies on additional functionality occurring between code validation and claim authorization.  McKesson argues that because the medical claim will ultimately be authorized sometime after the codes are validated, Claims 15 and 16 are infringed.  But Claims 15 and 16 require authorizing claims "in response to" the validity determination.  This is something the TriZetto Products never do.

A.     The TriZetto Products Do Not Contain A "Predetermined Database"

As discussed in TriZetto's Opening Claim Construction Brief (D.I. 158), the term "predetermined database" must be interpreted so as to give meaning to the word "predetermined."   D.I. 158 at 13.   "Predetermined database" clearly does not have a "plain language" meaning, because it is not a term generally used in the art, as acknowledged by both of McKesson's experts.  *See* Deposition of Mark Musen, 40:12-20 ("[P]redetermined database is not a term that you would ordinarily see in the computer science literature.  That's an – the adjective is odd, and so it would be unusual to assume that that would have a special meaning with respect to . . . people skilled in computer science.") (Exh. L); Deposition of Margaret Johnson, 106:17-20 ("It is not a term that is found" in the art) (Exh. M).

McKesson defines "predetermined database" to require that "the code relationships in the database be set at the time the medical claims are processed." D.I. 165 at 18. However, this definition fails to distinguish a "predetermined database" from any other database. McKesson's definition avoid the adjective "predetermined" and simply requires that the database contents be fixed at the time the database is used. But that is true for any database. It is a given that a database must be fixed before it is used. Databases are not ordinarily changed while they are in use. *See* Deposition of Randall Davis ("Davis Depo."), 38:2-41:10 ("[t]he database doesn't change during processing") (Exh. N). Thus, McKesson's definition makes no distinction between a "predetermined" database and an ordinary database.

TriZetto's interpretation of "predetermined database" – a database "not designed to be modifiable by the end user" – supplies clear meaning to the word "predetermined." It is also consistent with the nature of the patented technology, as described in the patent specification. The specification explains that the "predetermined database" contains rules developed by experts specifically for the program. *See* '164 patent, col. 3, ll. 42-45; col. 5, ll. 67-68; col. 5, l. 68 – col. 6, l. 4. Given that the purpose of the technology is to allow laymen to apply specific expert-derived knowledge to medical service codes on a medical claim, it stands to reason that the database contents can be modified by the designers of the expert-derived rules, but cannot be modified by the end users. *See* D.I. 158 at 14. TriZetto's infringement expert, Dr. Davis, confirmed that interpretation: "My understanding of 'predetermined' as it is in the patent is that it is given to you by a vendor and is not changed by the user, not never changed, that's not what I said, but not end-user-modifiable." Davis Depo., 42:18-43:2 (Exh. N).

This interpretation is further reinforced by the historical background of CodeReview (originally called MedReview), the product on which the patent is based. '164

patent, col. 3, ll. 17-29; App. A (describing the patent functionality with examples from a "Typical Session with CodeReview").  A September 1987 memorandum circulated at HPR, the assignee of the '164 patent, discusses the predetermined nature of the database and explains why the database cannot be modified by the end user:

> [W]hile Aetna will receive access to the complete knowledge base by using MedReview, it will not receive a complete hardcopy listing and will not be allowed to make any changes to the knowledge base.  In order to assure that the knowledge base is properly used, HPI/HPR must maintain control over any changes to it.  Aetna will not be in a position to evaluate the consequences of even minor changes – in fact, it will not be easy for us to anticipate the consequences of changes.  As a result, this will be one of our biggest challenges, and one of the major reasons Aetna will have to maintain an ongoing contract with us.

MCK 119730 (Exh. O).  This memorandum helps explain the practical importance of the "predetermined database" to the CodeReview/MedReview product – the need of the product designer to maintain control over the expert knowledge base and avoid problematic modifications by the end user.

McKesson protests that TriZetto's interpretation of "predetermined database" incorporates new, unstated limitations into the patent claims.  D.I. 165 at 15.  But TriZetto's construction does not add new limitations, it simply defines an existing limitation in the claims – i.e, that the database is "predetermined."

McKesson also argues that the "HISTORY database" mentioned in the patent specification suggests a means for end users to modify the predetermined database.  D.I. 165 at 16.  McKesson insists that TriZetto's construction would exclude this feature of the preferred embodiment.  *Id.* at 17.  But the HISTORY database merely stores historical data for "recordkeeping purposes" and system performance analysis, it does not provide a mechanism for end users to modify the predetermined database.  '164 patent, col. 4, l. 68 – col. 5, l. 3; col. 10, ll.

3-7. Indeed, nowhere in the patent specification, flowcharts, or appendices (including the source code in Appendix D) is there any mechanism for allowing the end user to modify the predetermined database.

Moreover, the historical background of CodeReview (the product on which the '164 patent is based) makes clear that the HISTORY database was intended to allow the *designer* of CodeReview, HPR, to update and modify the predetermined database, not the end user customer. *See* MCK 042486 (Exh. Q). The customer would periodically transmit the HISTORY database to HPR "to allow HPR physicians to evaluate CodeReview's recommendations and increase its clinical astuteness by providing solutions to the most recently devised coding problems." *Id.* Hence, the HISTORY database was intended to allow CodeReview's designers (specifically, the HPR physicians) to modify the predetermined database, not the customers. Accordingly, TriZetto's construction of "predetermined database" is consistent with the patent specification and the historical background of CodeReview.

Using the proper claim construction offered by TriZetto, it is clear that the TriZetto Products do not contain a "predetermined database." McKesson erroneously focuses on establishing that the contents of the TriZetto databases are determined prior to processing claims. D.I. 165 at 18-19. Of course, this would be true of any database in this context. The proper inquiry is whether the contents of the TriZetto databases are unalterable by the end user, making them "predetermined." The TriZetto databases are not predetermined, as they are specifically designed to be altered, modified and adapted by the end user. *See* D.I. 153 at 25-26. Accordingly, the TriZetto Products do not infringe Claims 3, 6, 15 and 16 (or any other claims) of the '164 patent.

B.     The TriZetto Products Do Not Ascertain Whether Submitted Medical Claims Contain A Plurality Of Medical Service Codes

As explained in TriZetto's Motion for Summary Judgment of Non-Infringement, the TriZetto Products do not ascertain whether a submitted medical claim has more than one medical code, as required by Claims 3, 6, 15 and 16.  D.I. 153 at 26-27.  TriZetto has offered the following construction of the "ascertaining" element:  "Identifying if the claim contains more than one medical service code in order to determine whether multiple code edits should be checked."  D.I. 158 at 17.  McKesson accuses TriZetto of incorporating unstated limitations into the "ascertaining" element by linking it to the checking of "multiple code edits."  D.I. 165 at 20-21.  TriZetto's construction springs directly from the text of the patent claims and the teaching of the specification.  Even if the Court declines to adopt TriZetto's construction of this element, the clear language of the claims mandates an "ascertaining" function that the TriZetto Products simply do not perform.

The "ascertaining" element requires "ascertaining whether the at least one claim contains a plurality of medical service codes."  McKesson does not dispute that this entails a specific determination of whether the submitted medical claim contains more than one code.  *See* D.I. 165 at 21 ("[t]his element simply describes making a determination whether a medical claim contains more than one code").  The "ascertaining" element is not an arbitrary, isolated function, but is connected to the other functions in the claims.  Directly following the "ascertaining" element is the step of "determining whether one of the medical service codes ***in the plurality*** of medical service codes is valid or invalid."  '164 patent, Claims 3, 6, 15 and 16.  Hence, the validity determination specified in the "determining" step only occurs with respect to codes in the plurality.  It logically follows that the "determining" step is only triggered if a plurality is ascertained.

Figure 2 of the patent specification (shown below) clearly illustrates the structure of the "ascertaining" feature.  *See* D.I. 158 at 18.  In box 20 of Figure 2, the system specifically asks whether the number of codes on the claim is greater than one: "No. of codes > 1."  If, and only if, the answer to this question is "Yes," the system proceeds to apply its multi-code edits (contained in the Interact.dbf database).  If the answer is "No," the system does not apply the multi-code edits.



The TriZetto Products do not perform the "ascertaining" step.  First, they do not specifically ascertain whether the submitted medical claim has more than one medical code.  They never execute the function "No. of codes > 1," as the patent prescribes.  Davis Report (D.I. 167 at Ex. E, p. 24); Davis Depo., 281:9-283:8 (Exh. N).  McKesson acknowledges this distinction, but argues that by counting the number of codes on a claim, the TriZetto Products implicitly ascertain whether there is more than one.  D.I. 165 at 20.  This is not correct.  As Dr. Davis explained, counting how many codes are present on a claim is not the same as ascertaining whether there is more than one:

> Q.  How does the system know that there is another medical service code to examine?
>
> A. . . . I take the term "ascertaining" whether the claim contains a plurality to mean asking a yes/no question.  Is there one or more than one?  It's not just are there more? . . . You can ask, are there more codes on the claim as yet unprocessed?  That's not the same as asking, is there one or is there more than one . . . code on the entire claim? . . . [I]t . . . seems to me quite apparent that the TriZetto systems do not do that.

Davis Depo., 284:8-285:8 (Exh. N).     Moreover, the patent itself distinguishes between "counting" and "ascertaining." The entry program described in the patent counts the number of codes on a submitted claim. *See* '164 patent, Fig. 3, box 18 ("Count No. of Codes"). This is a separate function from the "ascertaining" feature. *See id*., col. 5, ll. 45-56 (distinguishing the entry program step of counting codes from ascertaining if the number of codes is greater than one).

Second, the clinical editing functionality of the TriZetto Products (whether checking for valid codes or applying multi-code edits) does not depend on whether a plurality of codes exist on the submitted claim. Davis Report (D.I. 167 at Ex. E, p. 24). The TriZetto Products will perform validation and other clinical editing functions regardless of whether the submitted claim contains one code or many codes. *Id*.; D.I. 153 at 26-27. This highlights the distinction between "counting" and "ascertaining." If the TriZetto Products count just one code, they still process that claim. If the method and apparatus described in Claims 3, 6, 15 and 16 ascertains that only one code exists, it stops functioning, because the subsequent steps depend on the existence of a plurality of codes.

McKesson argues that Dr. Davis improperly relied on additional functionality in the TriZetto Products to support his non-infringement opinion concerning the "ascertaining" step. D.I. 165 at 21-22. This is not correct. In reaching his opinion that the TriZetto Products do not perform the "ascertaining" step, Dr. Davis explained why the products *do not need* to perform that step.[5] Specifically, the Trizetto Products do not check to see if more than one code is present on a claim, because they perform multi-code clinical editing on all claims, even those

_____

[5]     Dr. Davis's opinion is based on materials that were equally available to McKesson's experts (i.e., source code and product manuals).

with just one code. Davis Report (D.I. 167 at Ex. E, p. 24). The reason for this is that the TriZetto Products are capable of checking codes on prior claims, together with codes on the current claim. *Id*. Hence, they have no need for the "ascertaining" functionality described in the patent claims and they do not perform that functionality.

C.    The TriZetto Products Do Not Authorize Or Reject Medical Claims In Response To Determining The Validity Of A Code On The Claim

In his non-infringement report, Dr. Davis observed that the TriZetto Products never authorize or reject medical claims in response to whether a code on the medical claim is determined to be valid, as required in Claims 15 and 16. Davis Report (D.I. 167 at Ex. E, p. 34). McKesson contends that Dr. Davis improperly relied on additional functionality in the TriZetto Products (beyond what is required in the patent claims) to support this non-infringement opinion. D.I. 165 at 24. Specifically, McKesson argues that because the TriZetto Products validate codes at one point in the process and authorize claims at some later point in the process, then they necessarily authorize claims in response to the code validation, even if other functions and determinations are performed in between. *Id*. This is simply untrue.

While the TriZetto Products do perform other functions between code validation and claim authorization, medical claims are *never* authorized or rejected in response to code validation, as required by Claims 15 and 16. Davis Report (D.I. 167 at Ex. E, p. 34); *see also* Declaration of Randall Davis (D.I. 204 at 4, ¶ 5). The portions of the TriZetto Products that allegedly infringe the '164 patent are the clinical editing modules. *See* Wagner Depo., 128:11-14 (Exh. P). Although those modules can be said to authorize a *code* after determining that the code is valid, they never authorize *claims*. Claim authorization is a function performed later in the process (by a different part of the software) in response to different determinations not specified in the patent claims. *See* Davis Report (D.I. 167 at Ex. E, p. 34). Although Claims 15 and 16

use the open-ended "comprising" language, the "authorizing" and "rejecting" steps are required to be carried out "*in response to the determining step*."  The TriZetto Products do not authorize claims "in response to" a determination that a particular code on the claim is valid or invalid, as set forth in Claims 15 and 16, and they therefore do not infringe.

Moreover, McKesson never attempts to explain how the "authorizing" and "rejecting" steps of Claims 15 and 16 actually work.  If one code on the medical claim is determined to be valid, is that a basis for authorizing the entire claim?  If one code is determined to be invalid, does the system reject the entire claim?  Claim 16 appears to recite a method by which the same medical claim is both authorized and rejected (something that the TriZetto Products certainly do not do).  How does that method work?  McKesson offers no meaningful construction of Claims 15 and 16.  Nor does McKesson explain how the TriZetto Products supposedly perform the elements of Claims 15 and 16, relying instead on deposition quotes and document excerpts that it apparently expects the Court to decipher without explanation.  Consequently, McKesson's motion fails for lack of a proper infringement analysis.

<u>CONCLUSION</u>

For the reasons set forth herein, McKesson's motion for summary judgment of infringement should be denied.


MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

_____

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
rsmith@mnat.com
  *Attorneys for Defendant*
  *The TriZetto Group, Inc.*

OF COUNSEL:

Jeffrey T. Thomas
David A. Segal
Michael A. Sitzman
GIBSON, DUNN & CRUTCHER LLP
Jamboree Center, 4 Park Plaza
Irvine, California 92614-8557
(949) 451-3800

January 10, 2006
501344

## CERTIFICATE OF SERVICE

I, Rodger D. Smith II, hereby certify that on January 10, 2006, I caused to be electronically filed The TriZetto Group, Inc.'s Answering Brief in Opposition To McKesson's Motion For Summary Judgment of Infringement with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Thomas J. Allingham, II
> Skadden, Arps, Slate, Meagher & Flom LLP

I also certify that copies were caused to be served on January 10, 2006, upon the following in the manner indicated:

### BY HAND

> Thomas J. Allingham, II
> Skadden, Arps, Slate, Meagher & Flom LLP
> One Rodney Square
> P.O. Box 636
> Wilmington, DE  19899

### BY EMAIL AND FEDERAL EXPRESS

> Jeffrey G. Randall
> Skadden, Arps, Slate, Meagher & Flom LLP
> 525 University Avenue
> Suite 1100
> Palo Alto, CA  94301

> /s/    *Rodger D. Smith II (#3778)*
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE  19899
> (302) 658-9200
> rsmith@mnat.com