IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MCKESSON INFORMATION SOLUTIONS LLC,   )
   )
        Plaintiff,   )   CIVIL ACTION NO. 04-1258-SLR
   )
     v.   )   **REDACTED PUBLIC VERSION**
   )
THE TRIZETTO GROUP, INC.,   )
   )
        Defendant.   )
   )

## PLAINTIFF MCKESSON INFORMATION SOLUTIONS LLC'S RESPONSE TO TRIZETTO'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DR. MARGARET L. JOHNSON AND DR. MARK A. MUSEN

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff
McKesson Information Solutions LLC

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500

DATED: January 5, 2006
PUBLIC VERSION FILED: January 11, 2006

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... ii

I.    NATURE AND STAGE OF PROCEEDINGS ................................................... 1

II.   SUMMARY OF ARGUMENT ........................................................................... 2

III.  SUMMARY OF RELEVANT FACTS .............................................................. 3

IV.   LEGAL BACKGROUND ................................................................................... 4

V.    DR. JOHNSON'S OPINIONS MEET THE STANDARDS FOR
      ADMISSIBILITY UNDER RULE 702 AND *DAUBERT* ................................... 5

      A.    Dr. Johnson Is Admittedly Competent To Opine On The Matters In
            Her Report And TriZetto Does Not Dispute The Accuracy Of Her
            Analysis Of The Source Code Of TriZetto's Accused Systems ............... 5

      B.    Dr. Johnson's Report And Testimony Are Based On Valid
            Reasoning And Reliable Methodology And Will Assist The Trier
            Of Fact In Determining TriZetto's Infringement Of The '164
            Patent .......................................................................................................... 6

VI.   DR. MUSEN'S OPINIONS MEET THE STANDARDS FOR
      ADMISSIBILITY UNDER RULE 702 AND *DAUBERT* ................................. 13

      A.    Dr. Musen's Infringement Analysis Identified Corresponding
            Structure For Each Means-Plus-Function Element .................................. 15

      B.    Dr. Musen Appropriately Relied On Dr. Johnson's Analysis Of
            The Source Code Of TriZetto's Products When Forming His
            Opinions ................................................................................................... 17

      C.    TriZetto Misunderstands What An Algorithm Is And Argues For A
            Standard Never Applied By The Federal Circuit ...................................... 18

      D.    The Evidence Dr. Musen Relied Upon In Opining That TriZetto's
            Products Infringe Is Highly Relevant And Admissible ........................... 20

VII.  CONCLUSION .................................................................................................. 21

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*AFG Indus., Inc. v. Cardinal IG Co.,*
  239 F.3d 1239 (Fed. Cir. 2001) .................................................................................. 12

*Fonar Corp. v. General Elec. Co.,*
  107 F.3d 1543 (Fed. Cir. 1997) .................................................................................. 18

*In re Donaldson Co.,*
  16 F.3d 1189 (Fed. Cir. 1994) .................................................................................... 16

*Itron, Inc. v. Benghiat,*
  169 F. Supp. 2d 1073 (D. Minn. 2001) ...................................................................... 18

*Kannankeril v. Terminix Int'l Inc.,*
  128 F.3d 802 (3d Cir. 1997) ......................................................................................... 4

*Med. Instrumentation v. Elekta AB,*
  344 F.3d 1205 (Fed. Cir. 2003) .................................................................................. 18

*The Cincinnati Ins. Co. v. Cochran,*
  No. 99-0552-WS-C, 2005 WL 2179799  (S.D. Ala. Sept. 2, 2005) ....................... 17, 18

*United States v. Mitchell,*
  365 F.3d 215 (3d Cir. 2004)............................................................................. 4, 5, 9, 10

Plaintiff, McKesson Information Solutions LLC ("McKesson"), respectfully submits its opposition to defendant The TriZetto Group, Inc.'s ("TriZetto") Motion to Exclude the Expert Testimony of Dr. Margaret L. Johnson and Dr. Mark A. Musen.

## I.    NATURE AND STAGE OF PROCEEDINGS

On September 13, 2004, McKesson filed this lawsuit against TriZetto for willfully infringing McKesson's U.S. Patent No. 5,253,164 ("the '164 patent"). (D.I. 1.) TriZetto filed an Answer and Counterclaim on November 1, 2004. (D.I. 10.)

Document discovery in this case closed on May 13, 2005. (D.I. 28.) Fact discovery was originally scheduled to be completed by August 26, 2005. (*Id.*) However, at TriZetto's request, the Court extended the fact discovery deadline to September 16, 2005. (D.I. 58.) McKesson served opening expert reports on the issue of infringement from McKesson's experts Dr. Margaret L. Johnson and Dr. Mark A. Musen on October 24, 2005. (D.I. 134.) Also on October 24, 2005, TriZetto served expert reports on issues of invalidity which have been stayed by the Court. (D.I. 133.) On November 14, 2005, TriZetto served a rebuttal expert report relating to non-infringement and McKesson served rebuttal reports relating to invalidity. (D.I. 139 and 140.) All of the experts were deposed prior to the close of expert discovery on November 30, 2005. (D.I. 28.) Subsequent to the close of expert and fact discovery and after all expert depositions had been completed, TriZetto proposed new definitions for several of the claim terms. (D.I. 148.) The court has yet to construe the disputed terms of the patent and a hearing is scheduled for February 16, 2006. (D.I. 28.)

The case is set for a jury trial on infringement, willfulness, and damages beginning on April 17, 2006, with all other issues to be tried thereafter. (D.I. 28 & 145.)

## II.    SUMMARY OF ARGUMENT

TriZetto's motion to exclude Drs. Johnson and Musen's expert opinions is without merit and should be denied in its entirety for at least the following reasons:

1.    TriZetto does not dispute that Drs. Johnson and Musen are highly qualified or that they applied proper scientific methods when conducting their expert analysis -- requirements under *Daubert* and Rule 702 for the admissibility of expert opinions.    Rather, TriZetto's motion is simply a poorly disguised attempt to prevent McKesson from presenting admissible expert opinions with which TriZetto happens to disagree.    TriZetto's disagreement with McKesson's experts' opinions is not a proper basis for excluding their opinions or testimony.

2.    It would be inappropriate to exclude Dr. Johnson's opinions and testimony since they are relevant and based on Dr. Johnson's admittedly accurate analysis of the computer source code for each of TriZetto's Accused Systems.    Dr. Johnson properly used an algorithm that accurately captures the pertinent aspects of the '164 patent to assist her in locating the source code for each of the Accused Systems that corresponds to the '164 patent claims.    TriZetto does not dispute that Dr. Johnson accurately located the source code that performs the infringing functionality in the Accused Systems.

3.    It would also be inappropriate to exclude Dr. Musen's opinions and testimony since Dr. Musen's analysis was based on a proper and reliable methodology. As TriZetto largely concedes, Dr. Musen performed every analytical step TriZetto identifies as necessary for the means-plus-function elements of the asserted claims. Thus, TriZetto resorts to mischaracterizing the 150 pages of analysis and evidence Dr. Musen presented in his report as "conclusory."    Contrary to TriZetto's assertion, Dr. Musen's careful analysis of the evidence pursuant to the legal principles set forth by the Federal Circuit and this Court is not "unreliable" simply because the parties, as in any patent case,

2

dispute the proper construction of certain claim elements. TriZetto's chief criticism, that Dr. Musen did not personally review lines of TriZetto's source code, wholly ignores the fact that Dr. Musen properly relied upon Dr. Johnson's detailed analysis of that code in addition to ████████████████████████████████████████████████████████ ████████████████████████████████████████████ The record is clear. Dr. Musen identified the claimed functionality in the Accused Systems and engaged in an appropriate comparison of the structure in the patent and the Accused Systems that performs that functionality. TriZetto's argument that this express analysis is insufficient

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

Drs. Johnson and Musen's opinions are reliable because they are based on reasonable factual assumptions derived from their considerable and undisputed expertise and instructions provided by the Federal Circuit and this Court. It would therefore be inappropriate to exclude their opinions and testimony in this case. Accordingly, McKesson respectfully requests that the Court deny TriZetto's motion in its entirety.

## III.   SUMMARY OF RELEVANT FACTS

McKesson is the assignee of the '164 patent, titled "System and Method for Detecting Fraudulent Medical Claims Via Examination of Service Codes." (D.I. 7, Exh. A.) The '164 patent describes and claims computer systems and methods to analyze medical service codes submitted on a medical claim in order to detect and correct errors that may result in an inappropriate amount being paid for the services billed. An example of the types of errors addressed by the '164 patent is a practice known as "unbundling," which refers to "unpackaging services [on a medical claim] that were intended to be

bundled into a single code." (D.I. 7, Exh. A at col. 2, ll. 12-14.) The detection and correction of errors such as unbundling is typically referred to as "clinical editing."

TriZetto is accused of willfully infringing the '164 patent based on the manufacture, sale and use of three TriZetto products -- Facets, ClaimFacts, and QicLink (the "Accused Systems") -- all of which include technology described and claimed in the '164 patent.

McKesson served TriZetto with the expert reports of Dr. Margaret L. Johnson and Dr. Mark A. Musen on October 24, 2005. In their reports, Drs. Johnson and Musen provided analyses and opinions regarding the infringing functionality of the Accused Systems. TriZetto served McKesson with the rebuttal report of its noninfringement expert, Dr. Randall Davis, on November 14, 2005.

## IV.    LEGAL BACKGROUND

"Rule 702 mandates a policy of liberal admissibility." *United States v. Mitchell*, 365 F.3d 215, 245 (3d Cir. 2004) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994)). The test for admissibility is not focused on the conclusions generated by an expert; rather it is based on "valid reasoning and reliable methodology." *Kannankeril v. Terminix Int'l Inc.*, 128 F.3d 802, 806 (3d Cir. 1997). "[S]tandards of reliability and helpfulness should be applied ... with a 'preference for admitting any evidence having some potential for assisting the trier of fact.'" *Mitchell*, 365 F.3d at 245 (quoting *United States v. Velasquez*, 64 F.3d 844, 49 (3d Cir. 1995)). As the Court in *Mitchell* explained:

> *Daubert* does not require that a party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct. As long as an expert's scientific testimony rests upon "good grounds, based on what is known," it should be tested by the adversary process -- competing expert testimony and active cross-examination -- rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies. In

4

short, *Daubert* neither requires nor empowers trial courts to determine which of several competing scientific theories has the best provenance. It demands only that the proponent of the evidence show that the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion.

*Mitchell*, 365 F.3d at 244 (quoting *Ruiz-Troche v. Pepsi Cola Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998)).

## V.    DR. JOHNSON'S OPINIONS MEET THE STANDARDS FOR ADMISSIBILITY UNDER RULE 702 AND *DAUBERT*

TriZetto's motion to exclude Dr. Johnson's report and testimony is baseless and should be denied out of hand.

### A.    Dr. Johnson Is Admittedly Competent To Opine On The Matters In Her Report And TriZetto Does Not Dispute The Accuracy Of Her Analysis Of The Source Code Of TriZetto's Accused Systems

TriZetto does not and could not dispute Dr. Johnson's credentials as a computer scientist. In addition to double masters degrees in computer science and music history, Dr. Johnson has a Ph.D. in computer science. Dr. Johnson is an Associate Chair of the Computer Science department at Stanford University, where she has been a senior lecturer for the past fifteen years. *See* D.I. 180, Exh. A at 2, 15; Exh. 1[1] 130:2-14. Dr. Johnson has taught a wide variety of computer science classes at Stanford and her research is focused in the area of software development practices and performance. *See* D.I. 180, Exh. A at 2. Dr. Johnson is thus eminently qualified to analyze and provide

---

[1]    The numbered exhibits cited in this brief refer to exhibits attached to the Declaration of Michael A. Barlow in Support of Plaintiff's Opposition to Defendant's Motion to Exclude the Expert Testimony of Margaret L. Johnson and Mark A. Musen, filed concurrently herewith.

opinions and testimony concerning the source code for TriZetto's Accused Systems, which is precisely the subject matter of her report and testimony.

TriZetto also does not dispute Dr. Johnson's conclusions regarding the functionality of the Accused Systems based on her analysis of the source code. Her

███████████████████████████████████████████████

███████████████████████████████████████████████

For these reasons alone TriZetto's motion to exclude Dr. Johnson's report and testimony should be denied.

**B.     Dr. Johnson's Report And Testimony Are Based On Valid Reasoning And Reliable Methodology And Will Assist The Trier Of Fact In Determining TriZetto's Infringement Of The '164 Patent**

Instead of attacking Dr. Johnson's credentials or her conclusions regarding the infringing functionality she identified in the source code for each of TriZetto's Accused Systems, TriZetto seeks to disqualify Dr. Johnson's testimony as supposedly "unreliable" because her opinions are based on an algorithm she allegedly "invented" after she could not find "specific corresponding structure in the patent specification . . . ." D. I. 179 at 11. TriZetto also attacks Dr. Johnson's algorithm as not being "based on the patent claims alone . . . ." *Id.*

Concerning the latter argument, TriZetto quotes extensively from Dr. Johnson's deposition concerning the fact that she reviewed the entire patent in deriving the algorithm. *See id.* at 11-12. TriZetto completely omits from the last passage it quotes, however, its counsel's concession that Dr. Johnson's algorithm "matches up" with the

functions of the '164 patent claims and Dr. Johnson's explanation that the algorithm did not merely "summarize" the patent claims -- it "captured" the "functionality" of the '164 patent claims:

> Q.   Okay. Is this algorithm -- reading this algorithm, I was able to see, to some extent, how it matches up in describing some of the functions that are set out in the patent claims. Is this designed to be a summary of the functions that are actually set out in the patent claims?
>
> A.   No, I didn't try to summarize. I really tried to capture what that functionality was.

D.I. 180, Exh. B at 30:5-12.

As Dr. Johnson explained during her deposition, an algorithm is "a high level description of the processing" performed by a computer system. *See* D.I. 180, Exh. B at 28:8-10. Consistent with TriZetto's counsel's concession and Dr. Johnson's testimony, even a cursory comparison of Dr. Johnson's algorithm with the asserted claims of the '164 patent shows that Dr. Johnson's algorithm in fact "captures" the functionality of the claims. Thus, Dr. Johnson's report summarized the algorithm and her opinions as follows:





D.I. 180, Exh. A at 5.

Dr. Johnson's algorithm clearly and accurately "captures" the elements of the asserted claims. As but a few examples, Dr. Johnson's algorithm functions nos. 1. and 2. cover asserted claims 1 and 13 of the '164 patent. Algorithm function nos. 1., 3., 4., and 5. correspond to, among others, asserted claims 2, 3, 4, and 5 of the '164 patent.

Dr. Johnson did not, as TriZetto argues, "invent" the algorithm because she could not find "specific corresponding structure" in the patent for the various means-plus-function claim elements. Dr. Johnson specifically testified during her deposition that in preparing her report she identified the "structure" disclosed in the '164 patent for the various claim elements, and she explained that "software is the structure, as defined in the spec, and the software is supported by commercially-available database management systems." Exh. 1 at 35:7-21; *see also id.* at 36:8-16 ("means for receiving at least one claim"); Exh. 1 at 37 ("determining whether any medical service code contained in the at least one claim is not present in the predetermined database"); *id.* at 38 ("means for ascertaining whether the at least one claim contains a plurality of medical service codes"); *id.* at 52:22-53:5 ("authorizing" and "rejecting"). As she explained during her deposition, Dr. Johnson did not use an algorithm in connection with her analysis because the patent

8

did not include structure; rather, she used an algorithm because it "was easier for [her] to hold in [her] head as [she] analyzed the source code." *Id.* at 39:17-20.

Thus, contrary to TriZetto's argument, Dr. Johnson identified the pertinent structure in the patent and conducted an appropriate "structure-to-structure" and "function-to-function" comparison of TriZetto's source code. As discussed below in Section IV.A. in connection with Dr. Musen's opinions, and in McKesson's claim construction brief, Dr. Johnson's identification of structure is consistent with Federal Circuit precedent and this Court's Order addressing this issue. The fact that TriZetto disagrees is not surprising and is not, in any event, a proper basis for excluding Dr. Johnson's report or testimony.

There is no basis for TriZetto's argument that Dr. Johnson's analysis of the source code for TriZetto's Accused Systems is not "reliable" because it "is not a testable hypothesis; it is not subject to peer review; it has no known rate of error; it uses no standards to control operation of creating an algorithm; and it is not generally accepted in the patent law context." D.I. 179 at 13. These tests, drawn by TriZetto from the Third Circuit's decision in *Mitchell*, are used to determine the propriety of admitting expert opinions that are based on **new** scientific methodologies. *See Mitchell*, 365 F.3d at 219 (expert opinion based on use of latent fingerprint identification). In contrast, Dr. Johnson used a straightforward, well-established and reliable methodology in connection with her analysis of the TriZetto source code. *See, e.g.,* D.I. 180, Exh. A at 5 ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Johnson has conducted numerous other such analyses, including as expert in twelve other cases. *See id.* at 15-16 & Exh. 1 at 11:1-4.

In addition, contrary to TriZetto's argument, Dr. Johnson's analysis is completely "testable" (or as phrased in *Mitchell,* "falsifiable") and subject to "peer review." *See Mitchell,* 365 F.3d at 235 ("A proposition is 'falsifiable' if it is 'capable of being proved false; defeasible.'"). Dr. Johnson's analysis sets forth the functionality of the asserted claims of the '164 patent and details where that functionality is found in the source code for each of the Accused Systems. For example, Dr. Johnson opines in her report that:



Each of these conclusions, if incorrect, could readily have been challenged by TriZetto's experts, at least one of whom (Dr. Davis) is a "peer" of Dr. Johnson's.[2] It is particularly telling that TriZetto has not challenged the accuracy of any of these conclusions.[3]

---

[2]  As these illustrations and other portions of Dr. Johnson's report show, contrary to TriZetto's quibble concerning Dr. Johnson's use of the term "similar functionality" in one portion of her report, *see* D.I. 179 at 12 n.4, she in fact determined that the Accused Systems included the identical functionality of the claimed elements.

[3]  TriZetto's suggestion that Dr. Johnson's analysis does not lend itself to an "error rate" challenge is particularly inappropriate given that TriZetto has not identified any "errors" in her source code analysis.

Similarly, Dr. Johnson's report includes a detailed trace of the Facets source code showing precisely how Facets performs "rebundling" as well as a table specifying which source code files perform specific rules or validation checks in the Facets product. *See* D.I. 180, Exh. A at 12-13 & Appendix B. The accuracy of Dr. Johnson's source code trace and table, if incorrect, could easily have been disputed by TriZetto or its experts. It is again particularly telling that TriZetto has not challenged the accuracy of Dr. Johnson's work.

TriZetto's claim that Dr. Johnson's approach is "not generally accepted in patent law" is not based on her methodology or conclusions, but rather on the fact that the parties disagree on the proper interpretation of certain claim elements. Such a disagreement is not proper grounds for excluding competent and relevant expert conclusions like Dr. Johnson's. Dr. Johnson's analysis is completely consistent with accepted methodology and is in no way at odds with "generally accepted patent law."

TriZetto's argument that none of the asserted claims include all of the elements of Dr. Johnson's algorithm completely misses the point. Dr. Johnson's algorithm was not intended to map to a particular claim; rather, as noted, it captures the functionality of the asserted claims of the '164 patent to assist Dr. Johnson in determining whether that functionality was present in the source code for TriZetto's Accused Systems. Dr. Musen performed a specific claim element by claim element analysis based in part on Dr. Johnson's analysis. Dr. Musen appropriately relied on Dr. Johnson's source code

11

analysis, particularly since the accuracy of Dr. Johnson's analysis has not been challenged by TriZetto.[4]

TriZetto's argument that Dr. Johnson did not interpret claim terms such as "mutually exclusive due to non-medical criteria" or "medically exclusive" also misses the point. Dr. Johnson is offered as an expert on source code analysis, not on CPT codes or medical claims processing. Interpretation of claim terms of the sort identified by TriZetto is more properly done by experts such as Dr. Musen, who has specific expertise in this area.[5]

As Dr. Johnson explained in her report and during her deposition, her role as an expert in this case was to review the '164 patent and compare the functionality described and claimed in the patent to the source code for TriZetto's three Accused Systems. *See* D.I. 180, Exh. A at 5; Exh. 1 at 39:14-25. Where necessary, Dr. Johnson properly determined the structure for elements of the patent claims and analyzed the corresponding structure in the source code produced by TriZetto for the Accused Systems. Dr. Johnson's determination that the claimed functionality is found in all three of the Accused Systems is clearly relevant, has not been challenged by TriZetto, and will

---

[4]    In addition, each of the asserted claims of the '164 patent use the open ended term "comprising." Under these circumstances it is irrelevant that Dr. Johnson's algorithm may include more elements than are included in a particular claim. *See, e.g., AFG Indus., Inc. v. Cardinal IG Co.*, 239 F.3d 1239, 1244 (Fed. Cir. 2001) ("When a claim uses an 'open' transition phrase, its scope may cover devices that employ additional, unrecited elements.").

[5]    If anything, it is inappropriate for TriZetto's computer expert, Dr. Davis, to interpret these terms, which are not within his area of expertise. Moreover, contrary to TriZetto's argument, *see* D.I. 179 at 15 n.6, Dr. Johnson's claim construction is completely consistent with McKesson's.

unquestionably aid the trier of fact in determining infringement.    In addition, Dr. Johnson's analysis was properly relied on by Dr. Musen in connection with his analysis of TriZetto's infringement.    Under these circumstances, it would be inappropriate to exclude Dr. Johnson's report and testimony and TriZetto's motion should be denied.

## VI.    DR. MUSEN'S OPINIONS MEET THE STANDARDS FOR ADMISSIBILITY UNDER RULE 702 AND *DAUBERT*

TriZetto does not dispute that Dr. Musen's unique expertise and skill in medicine, computer science, and expert systems will assist the jury in this case.    Dr. Musen is a professor of both Medicine and Computer Science at Stanford University, where he heads the department of Medical Informatics and is director of its Knowledge Modeling Group. Dr. Musen received an M.D. from Brown University in 1980 and a Ph.D. in Medical Information Sciences from Stanford as a result of his work on medical expert systems in 1988 -- the year in which the application resulting in the '164 patent was filed.

Nor does TriZetto seriously dispute that the infringement opinions set forth in Dr. Musen's 17-page report and 123 pages of supporting element-by-element claim charts are relevant to the central issue of TriZetto's infringement and therefore "fit" the facts of this case.    Rather, Trizetto merely disagrees with Dr. Musen's view of the proper construction of certain claim elements and attempts to recast this legal dispute -- which both parties agree must ultimately be resolved by the Court -- as a challenge to the reliability of his methodology.

TriZetto's brief largely concedes that Dr. Musen performed each of the four steps TriZetto identifies as necessary to his infringement analysis under 35 U.S.C. § 112 (6). *See, e.g.*, D.I. 179 at 16 (Dr. Musen identifies "the structure in the '164 patent that corresponds to every one of the 32 means-plus-function claim limitations"); *id.* at 18

(Dr. Musen "stat[es] that the TriZetto products perform the functions of each patent claim"); *id.* at 18 (Dr. Musen "states that the TriZetto products includes [*sic*] 'software' and/or 'hardware' for performing that function"). Indeed, the record could not be more clear on this point:

| D.I. 179 at 8-9 | Testimony of Dr. Musen |
|---|---|
| (1) Identify the claimed function of the element; | Q. Purely in terms of interpreting the claims in reaching your -- your understanding of those ... "means for" elements, did you identify the function that corresponds to each element? A. Yes. (Exh. 2 at 284:10-14.) |
| (2) Identify the corresponding structure in the patent specification that performs the function; | Q. So for each "means for" element in the '164 claims, you identified the function recited for that means in the claims and identified the structure described in the specification of the '164 patent for performing that [function]? A. Yes. (Exh. 2 at 284:22-285:2.) |
| (3) Perform a function-to-function comparison to see if the accused products have the identical function as the claim element; | Q. And in assessing the infringement, did you identify for each 'means for' element of the '164 claims the identical function in the accused products? A. That's correct. That's the appendices in my initial report. (Exh. 2 at 287:17-21.) |
| (4) Perform a structure-to-structure comparison to see if the accused products have identical or equivalent structure that corresponds to the claim element. | Q. And having identified those functions, did you identify, in forming your infringement opinion, whether or not the structure was equivalent or identical to the structure disclosed in the '164 patent? A. They were necessarily equivalent because they were implemented in software. (Exh. 2 at 287:22-288:2.) |

Thus, it is not surprising that TriZetto does not challenge Dr. Musen's methodology but rather repackages a claim construction dispute regarding corresponding structure as the sole basis for its *Daubert* challenge.

14

### A.    Dr. Musen's Infringement Analysis Identified Corresponding Structure For Each Means-Plus-Function Element

There is no dispute that Dr. Musen identified the structure described in the '164 patent corresponding to each claimed § 112 (6) function.  As Dr. Musen explained in his report,

assessing the appropriate structure corresponding to the claimed functions, Dr. Musen relied upon this Court's September 20, 2005 Memorandum Order.  D.I. 180, Exh. C at para. 12.  As the Court explained: "the specification must disclose 'software' as the corresponding structure .... the 'software' must either be specifically described or identified as 'software' known to those of skill in the art." (D.I. 99.)  Because, in his opinion, one skilled in the art would understand the '164 patent specification to "disclose 'software' as the corresponding structure," Dr. Musen concluded that the proper construction of the claimed means-plus-function elements required the corresponding structure to be software or software and hardware under the Court's Order.  Exh. 2. at 286:17-287:16.  *See also id.* at 301:1-17 ("I based my assessment on my understanding of the necessary structure as dictated by the memorandum of -- of September 20[th].  And if software is a sufficient means for ... achieving the necessary functionality, I -- I deem that to be sufficient.").  The fact that TriZetto believes the means-plus-function claim elements should be construed differently does not render Dr. Musen's methodology unreliable or his testimony inadmissible.

Indeed, TriZetto's repeated assertions that the means-plus-function claim elements should be construed to require the algorithm disclosed in the '164 patent for

each such function overlook that Dr. Musen reviewed both parties' proposed claim constructions in preparing his infringement report, explaining: ███████████

████████████████████████████████████████████████████████████████████

180, Exh. C at para. 29. Consistent with this, Dr. Musen testified that his infringement opinion would not change if the claimed means-plus-function elements were construed to require the algorithms disclosed in the '164 patent for performing the functions as TriZetto urges.[6] Exh. 2 at 283:4-23 and errata.

TriZetto's characterization of Dr. Musen's means-plus-function analysis as somehow "conclusory" or "unreliable" is belied by the fact that neither TriZetto nor its proffered experts deemed it necessary to mention -- much less include -- any such analysis in their opening reports. Cf. In re Donaldson Co., 16 F.3d 1189, 1193 (Fed. Cir. 1994) ("paragraph six applies regardless of the context in which the interpretation of means-plus-function language arises, i.e., whether ... as part of a validity or infringement determination in a court"). Indeed, TriZetto's experts testified at deposition that they reached their opinions without analyzing the means-plus-function elements differently from the other elements and without determining the structure that corresponds to those elements. See, e.g., Exh. 3 at 180:22-24 to 182:9-12 ("Q. Did you look at the patent to determine whether any structure's disclosed for that means? A. No. Q. Did you get any assistance in terms of interpreting the means elements from counsel at TriZetto? A.

---

[6]   TriZetto's additional argument in footnote 1 of its brief that Dr. Musen should be precluded from offering any opinions regarding infringement under the doctrine of equivalents is premature. The overwhelming evidence establishes literal infringement and Dr. Musen testified that his opinion would apply under any reasonable construction even though TriZetto had not advanced many constructions until after expert depositions were completed. In any event, Dr. Musen, like TriZetto's experts, expressly reserved the right to supplement his opinions, if necessary, after claim construction was decided by the Court.

No."); Exh. 4 at 203:23-204:3 ("[W]ould the answers you just gave that you weren't instructed to and did not apply any special interpretation to those [means-plus-function elements], apart from what you applied to all of the claims, hold true for all of the means for limitations or elements? A. ...[T]hat would be true."). Furthermore, the reliability of Dr. Musen's analysis is confirmed by TriZetto's sole non-infringement expert who *agrees with Dr. Musen's opinions* regarding TriZetto's infringement of every means-plus-function element of representative claim 3 except one for which he advances a differing construction of the *function*, not the structure. *See* Exh. 5 at 295:6-17, 296:12-19; 280:9-16; 281:5-8; 294:9-24.

### B.    Dr. Musen Appropriately Relied On Dr. Johnson's Analysis Of The Source Code Of TriZetto's Products When Forming His Opinions

TriZetto bases its challenge to Dr. Musen's analysis of the infringing products on the fact that Dr. Musen did not personally review the source code for the Accused Systems. However, Dr. Musen expressly relied upon Dr. Johnson's identification of the specific portions of TriZetto's code that perform the claimed functions. *See, e.g.,* D.I. 180, Exh. C at para. 30 ███████████████████████████████

███████████████████████████████████████  ("I know how they're currently implemented from my reading of the documents and from Dr. Johnson's report ..."); D.I. 180, Exh. I at 30:7-13 ("I relied upon the report from Dr. Johnson who had an opportunity to look at some of that software."); Exh. 2 at 122:3-123:5; *id.* at 308:7-19.    TriZetto does not contest the accuracy of Dr. Johnson's conclusions regarding the operations of its source code. Dr. Musen's reliance on her opinions is entirely appropriate: "it is a commonplace that an expert may rely on the work of other experts in forming her opinions, Fed. R. Evid. 703, and 'when an expert relies on the opinion of another, such reliance goes to the weight, not the admissibility of the expert's opinion.'" *The Cincinnati Ins. Co. v. Cochran*, No. 99-0552-WS-C, 2005 WL

2179799, at *6 (S.D. Ala. Sept. 2, 2005) (quoting *Ferrara & DiMercurio v. St. Paul Mercury Ins. Co.*, 240 F.3d 1, 9 (1st Cir. 2001)).

### C.    TriZetto Misunderstands What An Algorithm Is And Argues For A Standard Never Applied By The Federal Circuit

TriZetto contends that the claimed means-plus-function elements must be limited to the disclosed algorithms and therefore "a structure-to-structure comparison" requires one to "compare the code from the patent to the code in the ... allegedly infringing product." *See, e.g.*, D.I. 180, Exh. I at 323:21-324:16 (cited at page 17 of TriZetto's brief). The Federal Circuit has never imposed such a requirement and TriZetto's argument that it is necessary reflects a fundamental misunderstanding of what constitutes an "algorithm." The Federal Circuit has never held that a computer-implemented means-plus-function element must be limited to the source code in a patent and for good reason—program code is not an algorithm. An algorithm is a logical representation of a process that may be implemented in various software embodiments. *See, e.g., Itron, Inc. v. Benghiat*, 169 F. Supp. 2d 1073, 1092 (D. Minn. 2001) (quoting David Bender, Computer Law, § 3.02(3) (2000): the "'algorithm' of a computer program may involve the use of a flowchart 'wherein the logic of the program is depicted graphically ... to show the various processing steps and flow of data'").[7] As Dr. Musen explained: "An algorithm is an abstraction that provides a procedure for performing some computation which may

---

[7]    Indeed, requiring an examination of the code disclosed in a patent's specification to identify structure would run afoul of settled Federal Circuit precedent that such code need not be disclosed to obtain a software patent. *See, e.g., Fonar Corp. v. General Elec. Co.*, 107 F.3d 1543, 1549 (Fed. Cir. 1997) ("best mode is satisfied by a disclosure of the functions of the software .... flow charts or source code listings are not a requirement for adequately disclosing the functions of software."); *Med. Instrumentation v. Elekta AB*, 344 F.3d 1205, 1214 (Fed. Cir. 2003) ("there would be no need for a disclosure of the specific program code if software were linked to the ... function and one skilled in the art would know the kind of program to use.").

then be implemented in software. ... One can choose a variety of programming languages to implement the algorithm and the algorithm is still preserved." Exh. 2 at 281:11-25.

For this reason, there is no requirement, and TriZetto cites to no case suggesting there is, that the source code in a patent's specification be examined to identify the corresponding structure for a means-plus-function claim element, even if it is construed to require the disclosed algorithm. Such analysis is certainly unnecessary for the claims of the '164 patent. As Dr. Musen testified:

- "The algorithms that practice the claims in the '164 patent directly flow from the functions that are described in those claims. Dr. Davis said as much in -- in his initial report. The algorithms are straightforward and immediately inferable from the functions." Exh. 2 at 302:25-303:23;

- "I believe the functions described in the claims state implicitly what algorithms are necessary in order to achieve the corresponding functions." *Id.* at 111:1-13;

- "I wouldn't say that the function is synonymous with the algorithm .... It's my belief that for each of the means for claims, the function that is described is tied tightly to an algorithm ...." *Id.* at 107:21-108:17.[8]

As a result of this tight correlation between the claimed functions and their corresponding algorithms, Dr. Musen explained that although code for performing the claimed functions could be written in a variety of ways, each of these would require the corresponding algorithms or their equivalents:

[The structure is] necessarily equivalent. ... The algorithms for performing the claims in the '164 patent are straightforward. There is really a limited way in which those algorithms could be implemented in software and variations in the design decisions would be irrelevant. ... Because, one, the structure that matters is simply software at this point, but in terms of the capabilities of the system or qualities of the system or its duplication

---

[8]    Dr. Musen further testified that the algorithms for performing the claimed functions are disclosed or may be inferred from the rules in Appendix B of the '164 patent, the patent's flowcharts, and the description of the invention in the patent's specification. *See* Exh. 2 at 64:7-66:17; 282:4-283:11; 313:7-314:4; 295:24-296:14; 296:25-297:18; 303:24-304:7; 305:24-306:24.

of function, that would be -- precisely how the software would be implemented 'cause there are infinite ways in which one could program a system but the algorithms would be relatively straightforward and the same.

*Id.* at 309:11-310:22.

Thus, TriZetto's emphasis on Dr. Musen's testimony that any software program that performs the claimed functions would infringe is misplaced. This testimony does not indicate any deficiency in Dr. Musen's analysis of corresponding structure but rather reflects the nature of the claimed functions and their tight correlation to their logical algorithms.

### D.    The Evidence Dr. Musen Relied Upon In Opining That TriZetto's Products Infringe Is Highly Relevant And Admissible

While TriZetto's consternation over its ███████████████████████

███████████████████████████████████ its attempt to discount the relevance of such evidence has no basis. Remarkably, TriZetto contends that manuals and documentation it drafted to describe its products and the testimony of individuals TriZetto designated as most knowledgeable regarding those products is unreliable evidence of the operations of those products. Indeed, TriZetto's argument would effectively exempt the issue of patent infringement from the ambit of Fed. R. Civ. P. 30(b)(6) or confirm that TriZetto did not comply with its obligations in producing witnesses under that rule. ██████████████████████████

██████████████████████████████████████

executives -- was entirely proper. Moreover, TriZetto again ignores that Dr. Musen's opinion was not limited to such evidence and was further based upon Dr. Johnson's detailed analysis of TriZetto's source code. In short, Dr. Musen based his opinion on every conceivable level of evidence regarding TriZetto's products, ██████████████

████████████████████████████████████████

██████████████████████████████ Each of these sources is

reliable, relevant, and admissible and each confirms TriZetto's infringement.

## VII.    CONCLUSION

For the foregoing reasons, McKesson respectfully requests that the expert

opinions of Drs. Johnson and Musen be admitted as evidence.

By: _____

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff
McKesson Information Solutions LLC

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, CA 94301
(650) 470-4500

DATED: January 5, 2005

---

9    Given TriZetto's failure to comply with McKesson's repeated requests and the Court's repeated instructions to provide working versions of the infringing products, TriZetto can hardly complain that Dr. Musen did not directly observe the operations of those products, particularly given TriZetto's ability to coordinate such a demonstration of the infringing products for its own expert in a matter of hours. *See* Exh. 5 at 263:19-264:4.

## CERTIFICATE OF SERVICE

I, Michael A. Barlow, hereby certify that on January 5, 2006, I electronically filed Plaintiff McKesson Information Solutions LLC's Response to TriZetto's Motion to Exclude the Expert Testimony of Dr. Margaret L. Johnson and Dr. Mark A. Musen and Declaration of Michael A. Barlow using CM/ECF, which will send notification of such filing to those designated below, and that I served the following persons in the manner listed:

**VIA CM/ECF**
Rodger D. Smith, II, Esq.
MORRIS NICHOLS ARSHT
 & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899

**HAND DELIVERY**
Jack B. Blumenfeld, Esq.
MORRIS NICHOLS ARSHT
 & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899

Michael A. Barlow (ID No. 3928)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000
mbarlow@skadden.com

440372.01-Wilmington S1A