IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 04-1258-SLR |
| v. | ) ) | **REDACTED PUBLIC VERSION** |
| THE TRIZETTO GROUP, INC., | ) ) | |
| Defendant. | ) ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF MICHAEL J. WAGNER

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899
(302) 651-3000

Attorneys for Plaintiff
McKesson Information Solutions LLC

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California  94301
(650) 470-4500

DATED:  January 5, 2006
**PUBLIC VERSION FILED: January 11, 2006**

**TABLE OF CONTENTS**

                                                                              **Page**

TABLE OF AUTHORITIES ................................................................................ ii

I.    NATURE AND STAGE OF PROCEEDINGS ...................................................... 1

II.   SUMMARY OF ARGUMENT ............................................................................ 1

III.  SUMMARY OF RELEVANT FACTS .................................................................. 2

IV.   THE COURT SHOULD DENY TRIZETTO'S MOTION BECAUSE
      MR. WAGNER'S OPINIONS ARE RELIABLE AND WELL
      GROUNDED IN FACT AND LAW ..................................................................... 3

      A.    Mr. Wagner's Lost Profits Opinion Is Admissible ................................... 3

            1.    Mr. Wagner's Opinion Regarding the Lack of Acceptable,
                  Non-Infringing Alternatives Is the Product of a Reliable
                  Analysis of Sufficient Facts ........................................................ 3

            2.    TriZetto's Attack on Mr. Wagner's Lost Profits Opinion
                  Fails Because TriZetto Misreads the Law and
                  Misrepresents Mr. Wagner's Analysis ......................................... 7

      B.    Mr. Wagner's Reasonable Royalty Opinion Is Admissible ..................... 12

            1.    TriZetto's Argument that Mr. Wagner Makes Incorrect
                  Assumptions Is Wrong and Not a Valid Basis for
                  Exclusion ................................................................................. 12

            2.    Mr. Wagner Correctly and Reliably Applied the "Book of
                  Wisdom" in Analyzing Reasonable Royalty .............................. 13

            3.    Mr. Wagner's Application of the Entire Market Value Rule
                  Is Consistent with Applicable Law and Based on Sufficient
                  Facts ........................................................................................ 19

V.    CONCLUSION ................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993)............................................................................................... 8

*Fromson v. Western Litho Plate and Supply Co.*,
   853 F.2d 1568 (Fed. Cir. 1988), *overruled on other grounds by*
   *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*,
   383 F.3d 1337 (Fed. Cir. 2004)....................................................................... 13, 14

*Heller v. Shaw Indus., Inc.*,
   167 F.3d 146 (3d Cir. 1999) ............................................................................. 3, 8

*Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*,
   378 F. Supp. 2d 459 (D. Del. 2005)........................................................... 14, 15, 17

*Kaufman Co. v. Lantech, Inc.*,
   926 F.2d 1136 (Fed. Cir. 1991)...................................................................... 4, 8, 9

*Micro Chem., Inc. v. Lextron, Inc.*,
   317 F.3d 1387 (Fed. Cir. 2003)........................................................................ 7, 12

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*,
   575 F.2d 1152 (6th Cir. 1978) ............................................................................. 4

*Rite-Hite Corp. v. Kelley Co.*,
   56 F.3d 1538 (Fed. Cir. 1995)............................................................................. 9

*Sinclair Refining Co. v. Jenkins Petroleum Process Co.*,
   289 U.S. 689 (1933).......................................................................................... 14

*St. Clair Intellectual Property Consultants, Inc. v. Canon, Inc.*,
   C.A. No. 03-241, 2004 WL 2213562 (D. Del. Sept. 28, 2004) ............................ 16, 18

*State Indus., Inc. v. Mor-Flo Indus., Inc.*,
   883 F.2d 1573 (Fed. Cir. 1989)....................................................................... 6, 20

*Stryker Corp. v. Intermedics Orthopedics, Inc.*,
   96 F.3d 1409 (Fed. Cir. 1996)............................................................................. 6

*TWM Mfg. Co. v. Dura Corp.*,
   789 F.2d 895 (Fed. Cir. 1986).......................................................................... 17, 20

## STATUTES

FED. R. EVID. 702.................................................................................................. 8

Plaintiff McKesson Information Solutions LLC ("McKesson") respectfully submits its opposition to defendant The TriZetto Group, Inc.'s ("TriZetto") Motion to Exclude the Expert Testimony of Michael J. Wagner.

## I.    NATURE AND STAGE OF PROCEEDINGS.

On September 13, 2004, McKesson filed this lawsuit against TriZetto for willfully infringing McKesson's U.S. Patent No. 5,253,164 ("the '164 patent"). (D.I. 1.) TriZetto filed an Answer and Counterclaim on November 1, 2004. (D.I. 10.)

Document discovery in this case closed on May 13, 2005. (D.I. 28.) Fact discovery was originally scheduled to be completed by August 26, 2005. (*Id.*) However, at TriZetto's request, the Court extended the fact discovery deadline to September 16, 2005. (D.I. 58.) Opening expert reports, including the report of McKesson's damages expert, Mr. Wagner, were served on October 24, 2005. (D.I. 134.) On November 14 & 17, 2005, TriZetto served the reports of its experts, including its damages expert Dr. Jesse David. (D.I. 141 & 143.) Expert discovery closed on November 30, 2005. (D.I. 28.)

The case is set for a jury trial on infringement, willfulness, and damages beginning on April 17, 2006, with all other issues to be tried thereafter. (D.I. 28 & 145.)

## II.    SUMMARY OF ARGUMENT.

TriZetto's motion to exclude Mr. Wagner's expert testimony is without merit and should be denied in its entirety for the following reasons:

1.    TriZetto's assertion that Mr. Wagner's opinion regarding lost profits is unreliable or based on erroneous facts is unfounded. Mr. Wagner's opinion is the product of a reliable methodology applied to sufficient facts and data. That TriZetto disagrees with the facts underlying his opinion is not a ground for exclusion. It is the jury's role at trial, not the Court's role on an evidentiary motion, to evaluate the correctness of those facts.

2.    TriZetto's attack against Mr. Wagner's application of the "book of wisdom" is equally unfounded. The Supreme Court, the Federal Circuit, and this Court

1

have endorsed the flexible application of the "book of wisdom" in analyzing reasonable royalty damages. That is precisely how Mr. Wagner used that methodology in this case. TriZetto's challenge is based on its disagreement with Mr. Wagner's factual assumptions and its misreading of his analysis--neither of which supports excluding his testimony.

       3.      Contrary to TriZetto's assertions, Mr. Wagner properly applied the entire market value rule in connection with his reasonable royalty analysis. Mr. Wagner's analysis is entirely consistent with Federal Circuit precedent regarding the entire market value rule. In addition, Mr. Wagner's conclusion regarding the appropriateness of applying the rule in this case is based on sufficient facts and data.

      Accordingly, McKesson respectfully requests that the Court deny TriZetto's motion to exclude Mr. Wagner's expert testimony.

## III.   SUMMARY OF RELEVANT FACTS.

      McKesson is the current assignee of the asserted '164 patent, which is entitled "System and Method for Detecting Fraudulent Medical Claims Via Examination of Service Codes" and issued on October 13, 1993. (D.I. 7, Exh. A.) The '164 patent describes and claims computer systems and methods to analyze medical service codes submitted on a medical claim in order to detect and correct errors that may result in an inappropriate amount being paid for the services billed. An example of the types of errors addressed by the '164 patent is a practice known as "unbundling," which refers to "unpackaging services [on a medical claim] that were intended to be bundled into a single code." (D.I. 7, Exh. A at col. 2, ll. 12-14.) The detection and correction of errors such as unbundling is sometimes referred to as "clinical editing."

      The '164 patent was originally owned by Health Payment Review, Inc. ("HPR"). In November 1997, HBO & Company ("HBOC") acquired HPR. In January 1999, McKesson acquired HBOC. As noted above, McKesson is the current owner of the '164 patent. McKesson also sells two clinical editing products covered by the '164 patent-- ClaimCheck and CodeReview.

In this case, TriZetto is accused of willfully infringing the '164 patent based on the sale and use of three TriZetto products--Facets, ClaimFacts, and QicLink--all of which include technology covered by the '164 patent. TriZetto obtained the accused Facets and ClaimFacts products through its acquisition of Erisco Managed Care Technologies, Inc. ("Erisco") in October 2000. TriZetto obtained the accused QicLink product through its acquisition of Resource Information Management Systems, Inc. ("RIMS") in December 2000.

On October 24, 2005, McKesson served TriZetto with the report of its damages expert, Michael Wagner. In his report, Mr. Wagner provided analyses and opinions regarding damages based on lost profits and reasonable royalty. (D.I. 177, Exh. A.) On November 17, 2005, TriZetto served McKesson with the rebuttal report of its damages expert, Jesse David. In his report, Dr. David opined that damages should be limited to reasonable royalty. (D.I. 177, Exh. B.)

## IV. THE COURT SHOULD DENY TRIZETTO'S MOTION BECAUSE MR. WAGNER'S OPINIONS ARE RELIABLE AND WELL GROUNDED IN FACT AND LAW.

### A. Mr. Wagner's Lost Profits Opinion Is Admissible.

#### 1. Mr. Wagner's Opinion Regarding the Lack of Acceptable, Non-Infringing Alternatives Is the Product of a Reliable Analysis of Sufficient Facts.

In determining the admissibility of an expert's testimony, the relevant inquiry is not whether the expert's opinion is correct or even persuasive, but whether the expert's opinion could reliably follow from the facts known to him and the methodology used. *See Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 1523 (3d Cir. 1999) ("[A]n expert opinion must be based on reliable methodology and must reliably flow from that methodology and the facts at issue–but it need not be so persuasive as to meet a party's burden of proof or even necessarily its burden of production."). In this case, there is no question that Mr. Wagner's opinion regarding lost profits satisfies this requirement.

TriZetto does not dispute that Mr. Wagner has applied an accepted methodology in analyzing lost profits--namely, the four-factor approach set forth in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978). TriZetto concedes that "[Mr.] Wagner applies the *Panduit* methodology to his lost profits analysis" and that *Panduit* is an "accepted mechanism for demonstrating [lost profits] causation." (D.I. 176 at 9-10.) TriZetto also does not challenge Mr. Wagner's analysis of three of the four *Panduit* factors. Instead, TriZetto argues that Mr. Wagner's entire lost profits opinion is inadmissible because TriZetto disagrees with his analysis of the second *Panduit* factor-- lack of acceptable, non-infringing alternatives. TriZetto's claim is without merit because Mr. Wagner's opinion regarding this factor reliably follows from his analysis of the facts.

In his report, Mr. Wagner found that absent TriZetto's infringement,

**REDACTED**

**REDACTED**

(D.I. 177, Exh. A at 6.) In reaching this conclusion, Mr. Wagner did not "need [to] negative every possibility that the purchaser might not have bought another product other than [the patentee's] absent the infringement." *Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1141 (Fed. Cir. 1991). Instead, Mr. Wagner "need[ed] only show that there was a reasonable probability that the sales would have been made 'but for' the infringement." *Id.* That is precisely what he did.

In his analysis, Mr. Wagner expressly acknowledged that    **REDACTED**
**REDACTED**    and assumed that    **REDACTED**    (D.I. 177, Exh. A at 6.) However, based on his review of the evidence, including the testimony of TriZetto's    **REDACTED,**    Mr. Wagner reasoned that absent TriZetto's infringement, TriZetto and its customers would have preferred McKesson's ClaimCheck product over any other third-party alternative because they actually demonstrated that preference in the real world. (*Id.* at 6-8.) The facts supporting Mr. Wagner's analysis included the following:

4

- **REDACTED**

- **REDACTED**

- **REDACTED**

- **REDACTED**

- **REDACTED**

- **REDACTED**

- **REDACTED**

- **REDACTED**

Mr. Wagner also found that                **REDACTED**

**REDACTED**

(*Id.*)  In particular, the testimony of Erisco's    **REDACTED**    and other

TriZetto **REDACTED** showed that although         **REDACTED**

**REDACTED**                              Erisco

and later TriZetto never made or considered any efforts to avoid infringement, despite the

supposed availability of non-infringing alternatives.   (*Id.*)   Such evidence supports

Mr. Wagner's conclusion because, as the Federal Circuit has held, "'[t]he "acceptable

substitute" element, though it is to be considered, must be viewed of limited influence

where the infringer knowingly made and sold the patented product for years while

5

ignoring the "substitute."'" *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1418 n.3 (Fed. Cir. 1996) (quoting *Panduit*, 575 F.2d at 1162 n.9) (brackets in original).

    Mr. Wagner's conclusion about what sales McKesson would have made but for TriZetto's infringement is further supported by the market dominance of McKesson's clinical editing solutions. *See State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1578 (Fed. Cir. 1989) (holding that a patentee may rely on proof of market share in lieu of proof of lack of acceptable, non-infringing alternatives in a lost profits analysis). As Mr. Wagner stated in his report,

**REDACTED**

(D.I.

177, Exh. A at 5.) At his deposition, Mr. Wagner also discussed how McKesson's dominant market position supports his conclusion:

**REDACTED**

6

**REDACTED**

(Barlow Decl., Exh. 1 at 106:5-107:7 (emphasis added).[1])

As the foregoing shows, Mr. Wagner has properly analyzed lost profits under *Panduit*. Mr. Wagner considered ample facts from multiple sources, including TriZetto's own documents and the testimony of its **REDACTED** . Moreover, as set forth in his report, Mr. Wagner found that these facts revealed material information regarding what TriZetto and its customers would have done absent TriZetto's infringement. Indeed, these facts are strong indicators of what would happen in the but-for world because they reflect the real-world behavior of TriZetto and its customers. Because Mr. Wagner's lost profits opinion is based on a competent and reliable analysis of sufficient facts, his opinion is admissible.

> **2.    TriZetto's Attack on Mr. Wagner's Lost Profits Opinion Fails Because TriZetto Misreads the Law and Misrepresents Mr. Wagner's Analysis.**

TriZetto fails to show that Mr. Wagner's reliable and admissible opinion regarding lost profits is rendered inadmissible because TriZetto believes that some of Mr. Wagner's assumptions are erroneous or that he did not consider some reasons why TriZetto and its customers might not have turned to McKesson's product. That TriZetto disagrees with some of the facts underlying Mr. Wagner's opinion or contends that Mr. Wagner should have looked at other possibilities is not a valid ground to exclude his opinion. In addition, TriZetto's assertions are simply wrong.

TriZetto misconstrues the law regarding admissibility of expert testimony under Federal Rule of Evidence 702. The admissibility of an expert's testimony does not depend upon the correctness of facts underlying his opinion. *See Micro Chem., Inc. v.*

---

[1]  The numbered exhibits cited in this brief refer to exhibits attached to the Declaration of Michael A. Barlow in Support of Plaintiff's Opposition to Defendant's Motion to Exclude the Expert Testimony of Michael J. Wagner, filed concurrently herewith.

*Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."). Rule 702 "is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other." FED. R. EVID. 702, Advisory Committee Note for 2000 Amendments; *Heller*, 167 F.3d at 152 ("an expert opinion ... need not be so persuasive as to meet a party's burden of proof or even necessarily its burden of production"). If TriZetto believes that some of Mr. Wagner's assumptions are erroneous, the appropriate means of attacking those assumptions are through cross-examination at trial and the presentation of contrary evidence. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

TriZetto's assumption that Mr. Wagner needed to consider all other possibilities imposes on McKesson and its expert a standard for showing lost profits that is far more rigorous than the standard set forth by the Federal Circuit. The Federal Circuit has held that "[a] patentee need not negative every possibility that the purchaser might not have bought another product other than his absent the infringement. Instead, the patentee need only show that there was a reasonable probability that the sales would have been made 'but for' the infringement." *Kaufman*, 926 F.2d at 1141.

As discussed above, Mr. Wagner identified ample evidence that absent infringement, TriZetto and its customers likely would have turned to McKesson's ClaimCheck product instead of any other clinical editing solution. Having found sufficient facts to show that it was reasonably probable that the sales would have been made absent infringement, Mr. Wagner was under no obligation to address and negate every possible alternative that TriZetto and its customers might have pursued. Indeed, the onus is on the alleged infringer to show that such alternatives make it "unreasonable

8

to infer that some or all of the infringing sales probably caused the patentee to suffer the loss of profits." *Id*. at 1141-42.

In addition to misconstruing the applicable legal principles, TriZetto is simply incorrect in its assertions that Mr. Wagner's assumptions are erroneous or that he failed to consider evidence of other possibilities. TriZetto contends that Mr. Wagner erroneously assumed that there were no non-infringing alternatives and therefore failed to consider evidence of the availability of such alternatives. To the contrary, Mr. Wagner did consider the availability of non-infringing alternatives and indeed performed his analysis assuming that such alternatives were available. (D.I. 177, Exh. A at 6 (

**REDACTED**                ).) Mr. Wagner also discussed two of the products that TriZetto contends are non-infringing alternatives--ClaimCheck and Auto-Audit. (*Id*. at 5-8.) In addition, the evidence does not even support TriZetto's assertion that ClaimCheck and Auto-Audit were non-infringing alternatives. ClaimCheck is not a "non-infringing alternative" within the meaning of *Panduit* because the patentee has owned ClaimCheck throughout the damages period.[2] *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1548 (Fed. Cir. 1995) (finding that the patentee's own product "was not an 'acceptable, non-infringing substitute' within the meaning of *Panduit* because, being patented by [the patentee], it was not available to customers except from [the patentee]").

---

[2] TriZetto's own damages expert, Dr. David, testified:

**REDACTED**

(Barlow Decl., Exh. 2 at 151:25-152:8.)

The HBOC-HPR acquisition was completed in November 1997, ten months before the damages period commenced in September 1998. (D.I. 177, Exh. A at 3.)

9

Auto-Audit was unlicensed until 2003 and therefore could not have been a non-infringing alternative throughout much of the damages period.[3]

TriZetto also improperly asserts that Mr. Wagner failed to consider evidence indicating "that many of TriZetto's customers do not use clinical editing software." Mr. Wagner could not have considered such evidence because TriZetto did not produce it before Mr. Wagner submitted his report. TriZetto does not identify any evidence produced before Mr. Wagner's report that supports its contention that many customers do not use clinical editing functionality. Instead, TriZetto cites only to the rebuttal report of its own damages expert, Dr. David, which was submitted more than three weeks after Mr. Wagner's report. (D.I. 177 at 17 n.4 & 18.) The referenced pages of Dr. David's rebuttal report also do not cite any evidence for the proposition that many customers do not use clinical editing functionality. (D.I. 177, Exh. B at 8-10.) In addition, Dr. David admitted at his deposition that he did not receive any information suggesting that TriZetto customers did not use clinical editing functionality until after Mr. Wagner submitted his report.[4] Moreover, as discussed in McKesson's Motion to Exclude and/or Strike the

_____

[3] TriZetto's damages expert, Dr. David, testified:


**REDACTED**


(Barlow Decl., Exh. 2 at 161:7-20.)

[4] Dr. David testified:


**REDACTED**


(Barlow Decl., Exh. 2 at 36:18-22.)

*(cont'd)*

Opinions of Jesse David, Ph.D., TriZetto first produced that information to McKesson with Dr. David's report--more than three weeks after Mr. Wagner submitted his report and two months after the close of fact discovery.  (D.I. 173 at 4 & 7-10.)[5]  Because TriZetto failed to produce any evidence indicating "that many of [its] customers do not use clinical editing software" during discovery or even before Mr. Wagner submitted his report, Mr. Wagner could not have considered such evidence in analyzing lost profits.

TriZetto also misconstrues the assumptions underlying Mr. Wagner's lost profits analysis.  TriZetto incorrectly states that Mr. Wagner assumed that in the but-for world, all of TriZetto's customers would have bought ClaimCheck.  As his report makes clear, Mr. Wagner did not make such an assumption and, in fact, excluded from his lost profits calculation those TriZetto customers who purchased versions of the accused products that did not include clinical editing functionality.  (D.I. 177, Exh. A at 13 ("...**REDACTED**

**REDACTED**                    ...") & Schs. 1.1 & 2.5

(                              **REDACTED**

).)

---

*(cont'd from previous page)*

**REDACTED**

*(Id.* at 73:11-22.)

**REDACTED**

*(Id.* at 78:12-18.)

5 McKesson has moved to exclude this belatedly produced information and Dr. David's opinions based on such information because TriZetto violated its discovery obligations by failing to produce the information earlier and because TriZetto's misconduct is unjustified and has prejudiced McKesson and the Court.  (*Id.* at 7-10.)  That TriZetto is using this belatedly produced information to try to exclude McKesson's damages expert further evidences the egregiousness of TriZetto's actions and the harm to McKesson.

Similarly, TriZetto incorrectly states that Mr. Wagner assumed that in the but-for world, TriZetto's customers would have paid more for ClaimCheck. As explained at his deposition, Mr. Wagner did not make that assumption:


**REDACTED**


(Barlow Decl., Exh. 1 at 73:8-23.)

TriZetto's disagreement with Mr. Wagner's analysis and conclusion regarding lost profits does not justify excluding Mr. Wagner's testimony. Mr. Wagner's opinion is the product of a reliable analysis of sufficient facts and data. TriZetto cannot show otherwise. Accordingly, the Court should deny TriZetto's motion to exclude Mr. Wagner's testimony regarding lost profits.

### B.    Mr. Wagner's Reasonable Royalty Opinion Is Admissible.

#### 1.    TriZetto's Argument that Mr. Wagner Makes Incorrect Assumptions Is Wrong and Not a Valid Basis for Exclusion.

TriZetto contends that Mr. Wagner's reasonable royalty analysis is unreliable because it is based on the same allegedly erroneous assumptions that Mr. Wagner relied upon in analyzing lost profits. As discussed above, however, TriZetto's disagreement with the facts underlying Mr. Wagner's opinions is not an appropriate basis to exclude his expert testimony. *See Micro Chem.*, 317 F.3d at 1392 ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the

correctness of facts underlying one expert's testimony."). In addition, as shown above, Mr. Wagner's assumptions are not erroneous and are adequately supported by the facts of this case. For example, Mr. Wagner's assumption regarding the demand for McKesson's clinical editing software is based on the real-world demand for those products, as well as TriZetto's own admissions that ClaimCheck is the         **REDACTED**         and that "

<strong>REDACTED</strong>                    . (D.I. 177, Exh.

A at 30-31.) Accordingly, TriZetto's attack on the assumptions underlying Mr. Wagner's reasonable royalty analysis fails for the same reasons that its attack on the assumptions underlying Mr. Wagner's lost profits analysis fails.

### 2. Mr. Wagner Correctly and Reliably Applied the "Book of Wisdom" in Analyzing Reasonable Royalty.

The "book of wisdom" is a convention used in connection with the hypothetical negotiation methodology to calculate reasonable royalty damages that "permits and often requires a court to look to events and facts that occurred [after the hypothetical negotiation] and that could not have been known to or predicted by the hypothesized negotiators." *Fromson v. Western Litho Plate and Supply Co.*, 853 F.2d 1568, 1575 (Fed. Cir. 1988), *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004). In this case, TriZetto attacks Mr. Wagner's use of the "book of wisdom" on the ground that he considers too much post-negotiation evidence. In particular, TriZetto argues that Mr. Wagner's reliance on facts and events relating to the current patentee, McKesson, and the current accused infringer, TriZetto, is inappropriate because their predecessors, HPR and Erisco, were the patentee and accused infringer, respectively, at the time of the hypothetical negotiation, which has been assumed to be October 1993.

TriZetto's argument fails for several reasons. *First*, Mr. Wagner's consideration of post-negotiation evidence concerning McKesson and TriZetto is entirely consistent with settled law regarding the "book of wisdom" approach. *Second*, whether Mr. Wagner

13

places too much emphasis on subsequent events goes to the weight of his testimony, not its admissibility. *Third*, TriZetto's own damages expert heavily relies on similar post-negotiation evidence in calculating reasonable royalty damages.

TriZetto's argument is based on an overly narrow and rigid view of the "book of wisdom." The Supreme Court, the Federal Circuit, and this Court have all endorsed a flexible "book of wisdom" approach to ensure that the patentee is adequately compensated for the use made of the patented invention by the infringer. *See Sinclair Refining Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 698 (1933); *Fromson*, 853 F.2d at 1575; *Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 378 F. Supp. 2d 459, 465 (D. Del. 2005). In *Sinclair*, the Supreme Court held that subsequent experience "is a book of wisdom that courts may not neglect. We find no rule of law that sets a clasp upon its pages, and forbids us to look within." 289 U.S. at 698. The Court explained:

> An imaginary bid by an imaginary buyer, acting upon the information available at the moment of the breach, is not the limit of recovery where the subject of the bargain is an undeveloped patent. Information at such a time might be so scanty and imperfect that the offer would be nominal. The promisee of the patent has less than fair compensation if the criterion of value is the price that he would have received if he had disposed of it at once, irrespective of the value that would have been uncovered if he had kept it as his own.

*Id.* at 699.

The Federal Circuit has also emphasized the importance of flexibility in considering facts and events occurring after the hypothetical negotiation:

> The methodology encompasses fantasy and flexibility; fantasy because it requires a court to imagine what warring parties would have agreed to as willing negotiators; *flexibility because it speaks of negotiations as of the time infringement began, yet permits and often requires a court to look to events and facts that occurred thereafter and that could not have been known to or predicted by the hypothesized negotiators.*

*Fromson*, 853 F.2d at 1575 (emphasis added).

Recently, this Court thoroughly analyzed the precedent and other case law regarding the "book of wisdom" and concluded that "information not available as of that

date [of the hypothetical negotiation] must necessarily be considered by the factfinder" to ensure that the damages are no less than a reasonable royalty for the use made of the invention by the infringer, as is required by 35 U.S.C. § 284. *Honeywell*, 378 F. Supp. 2d at 465-66. This Court explained:

> the flexibility offered by the "book of wisdom" is as important in the context patent law as it is in the context of contract law because it discourages infringement. If the hypothetical negotiation could not be informed by post-negotiation information, then prospective infringers might perceive "that blatant, blind appropriation of inventions ... is the profitable, can't-lose course." [*Fromson*, 853 F.2d] at 1575. In other words, prospective infringers might rationally conclude that, at worst, upon a finding of infringement "a license can be compelled, probably at the same royalty that would have been paid if the patentee's rights had been respected at the outset." *Id.* at 1574. Moreover, the "book of wisdom" prevents the hypothetical negotiation method from determining a reasonable royalty at a point in time before the patent has proven its worth. In doing so, the "book of wisdom" concept protects the *quid pro quo* arrangement underlying patent law by ensuring that the patentee will be adequately compensated for infringement. *See id.* at 1575.

378 F. Supp. 2d at 465 (holding that it was permissible to use 2004-05 sales projections to calculate reasonable royalties, even though such projections would not have been available at the time of the hypothetical negotiation in March 2000).

Mr. Wagner's use of the "book of wisdom" in this case is entirely consistent with the foregoing precedent. As stated in his report, in order to ensure that the reasonable royalty he calculated was adequate to compensate McKesson for TriZetto's infringing use of the '164 patent, Mr. Wagner considered both facts and evidence available as of the hypothetical negotiation and those that may not have been known until after that date. (D.I. 177, Exh. A at 17 ("                    **REDACTED**

                    **REDACTED**

                    **REDACTED**                    .") & 19

("**REDACTED**

                    **REDACTED**

15

**REDACTED**                                ".").)  In addition,

to ensure that his use of the "book of wisdom" was not arbitrary or suggestive of any bias,

Mr. Wagner viewed all events between the date of the hypothetical negotiation and trial

as relevant to consider--an approach that he has consistently followed when using the

"book of wisdom."[6]

Moreover, this Court previously denied a motion to exclude Mr. Wagner's expert

testimony in another patent case based on his use of this same approach in applying the

"book of wisdom." *See St. Clair Intellectual Property Consultants, Inc. v. Canon, Inc.*,

C.A. No. 03-241, 2004 WL 2213562, at *2-3 (D. Del. Sept. 28, 2004).  In *St. Clair*, the

defendants moved to exclude Mr. Wagner's expert testimony based on essentially the

same ground as TriZetto's motion in this case--*i.e.*, "that Mr. Wagner's 'book of wisdom'

methodology ignores the hypothetical negotiation date and considers all information to

the current date as relevant to the hypothetical negotiation." *Id.* at *1.  Rejecting the

defendants' assertion, this Court found Mr. Wagner's approach to be reliable and proper,

holding that "nothing in Mr. Wagner's methodology ignores the settled law in the 'book

of wisdom' methodology, and, therefore, the Court concludes his methodology a [sic]

satisfies the requirements of Rule 702." *Id.* at *3.

---

[6]  Mr. Wagner testified:

**REDACTED**

(Barlow Decl., Exh. 1 at 152:10-153:1.)

TriZetto's assertion that Mr. Wagner improperly used the "book of wisdom" to improve the patentee's bargaining position by replacing the original patentee, HPR, with its successor, McKesson, is without merit. TriZetto's position that Mr. Wagner is only permitted to consider what royalty HPR might have agreed to in October 1993 is untenable because it ignores the fact that TriZetto and its predecessors have infringed the patent for more than twelve years. *See TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 900 (Fed. Cir. 1986) ("That [original patentee] Turner might have agreed to a lesser royalty is of little relevance, for to look only at that question would be to pretend that the infringement never happened."); *Honeywell*, 378 F. Supp. 2d at 464 (holding that because "[t]he unwanted effect of [the hypothetical negotiation method] is that the factfinder may be tempted 'to pretend that the infringement never happened' ... the hypothetical negotiation approach 'must be flexibly applied as a device in the aid of justice.'") (quoting *TWM*, 789 F.2d at 900).

TriZetto's assertion also fails because TriZetto misconstrues Mr. Wagner's analysis. Nowhere in his report does Mr. Wagner state or suggest that McKesson would have had a stronger negotiating position than its predecessor. In fact, at his deposition, Mr. Wagner explained that he believes all the parties would have had equal negotiating ability and equal access to the relevant facts:

**REDACTED**

(Barlow Decl., Exh. 1 at 154:18-155:4.)

TriZetto similarly errs in its assertion that Mr. Wagner testified that the reasonable royalty "likely would have been lower" if HPR and Erisco were the

17

negotiating parties. (D.I. 176 at 23.) Mr. Wagner did not provide any such testimony. Rather, when asked how the royalty in that scenario would compare to the royalty he calculated, Mr. Wagner stated, " **REDACTED**

**REDACTED** ." (Barlow

Decl., Exh. 1 at 158:2-13.)

TriZetto's argument that Mr. Wagner relies too heavily on post-negotiation facts is also not a valid ground for excluding his testimony because the extent of his reliance goes to the weight of his testimony, not its admissibility. *See St. Clair*, 2004 WL 2213562 at *3. In *St. Clair*, the defendants argued that Mr. Wagner gave too much weight to subsequent events in his royalty calculation. This Court rejected the defendants' argument: "[T]his argument is insufficient to exclude Mr. Wagner's testimony. [The defendants] will have the opportunity to cross-examine Mr. Wagner at trial regarding the weight he gives to any subsequent events calculated into his calculations." *Id*. As in *St. Clair*, the Court should reject TriZetto's efforts in this case to exclude Mr. Wagner's expert testimony based on how much weight he gives to post-negotiation events.

TriZetto's attack on Mr. Wagner's use of the "book of wisdom" is further belied by its own damages expert's use of the "book of wisdom," particularly Dr. David's heavy reliance on evidence relating to McKesson and TriZetto. Although TriZetto criticizes Mr. Wagner for considering facts and events involving McKesson and TriZetto, Dr. David relied on such information throughout his reasonable royalty analysis, including his assessment of HPR's negotiating position (D.I. 177, Exh. B at 25-27), his determination of the royalty base and starting-point royalty rate (*id*. at 28-32), and his discussion of numerous *Georgia-Pacific* factors (*id*. at 38-40 & 44-47).

For example, to determine what HPR's negotiating position would have been in October 1993, Dr. David relied on patent licensing discussions between McKesson and

18

TriZetto that took place nine to ten years after the hypothetical negotiation date, as well as discussions between McKesson and other third parties that occurred between 2001 and 2003. (*Id*. at 25-27.) Similarly, Dr. David arrived at his starting-point royalty rate for a hypothetical negotiation in October 1993 by relying on four licenses and three licensing discussions that did not exist or occur until after the hypothetical negotiation date--in some cases ten years later. (*Id*. at 30-33.) All of the licensing discussions and one of the licenses also involved HPR's successor, McKesson. (*Id*.) In addition, in opining that the hypothetical negotiators in October 1993 would have used a royalty base equal to only **REDACTED** of the accused products' revenue, Dr. David relied solely upon TriZetto's revenue data from 2004 to arrive at his figure of **REDACTED**. (*Id*. at 30 & Exh. 6.)

It is clear that this information, upon which Dr. David so heavily relied, was not known or knowable by the hypothetical negotiators in October 1993 and concerned facts and events that did not involve the original patentee or original infringer. Yet, under TriZetto's distorted view of the "book of wisdom," its own damages expert can rely upon such information, while the patentee's damages expert cannot. There is no support for such a plainly biased application of the "book of wisdom."

Mr. Wagner's use of the "book of wisdom" reflects the application of a reliable and accepted methodology. His approach complies with Federal Rule of Evidence 702 and is consistent with settled law requiring the flexible use of the "book of wisdom" to ensure that infringement damages are not less than the reasonable royalty adequate to compensate a patentee for the infringer's past use of the patent. Accordingly, the Court should deny TriZetto's motion to exclude Mr. Wagner's testimony on reasonable royalty.

### 3. Mr. Wagner's Application of the Entire Market Value Rule Is Consistent with Applicable Law and Based on Sufficient Facts.

TriZetto also challenges Mr. Wagner's use of the entire market value rule in calculating reasonable royalty damages by asserting that he misconstrued the applicable law and did not consider certain evidence. TriZetto's argument is unfounded because

Mr. Wagner correctly applied the rule and because TriZetto did not produce the evidence that Mr. Wagner allegedly should have considered until after Mr. Wagner submitted his report.

The Federal Circuit has held that "[t]he entire market value rule allows for the recovery of damages based on the value of an entire apparatus containing several features, when the feature patented constitutes the basis for customer demand." *TWM*, 789 F.2d at 901; *State Indus.*, 883 F.2d at 1580 ("the entire market value rule ... permits recovery of damages based on the value of the entire apparatus containing several features, where the patent related feature is the basis for customer demand"). This rule may be satisfied by a showing that "a hypothetical licensee would have anticipated an increase in sales of collateral unpatented items because of the patented device." *TWM*, 789 F.2d at 901 (finding that the royalty base properly included unpatented items and the patented device because "[t]hat correlation was shown to exist in this case").

Mr. Wagner's application of the entire market value rule is consistent with Federal Circuit authority. In his report, Mr. Wagner correctly summarized the law regarding the entire market rule. (D.I. 177, Exh. A at 28.) Consistent with *TWM*, Mr. Wagner stated that                **REDACTED**


**REDACTED**


(*Id.* (internal quotations omitted).)

Moreover, Mr. Wagner identified ample evidence to show the correlation between the demand for the accused products and the patented features. For example, Mr. Wagner identified evidence showing that customers of the accused products generated substantial savings from the use of clinical editing functionality. (*Id.* at 33

**REDACTED**

20

**REDACTED**

).) The

substantial savings that customers would obtain from using clinical editing functionality also represented a key sales driver in the marketing literature of TriZetto's predecessor Erisco.  (*Id.* at 34 & 39.)   Indeed, Erisco touted that its customers would save **REDACTED** of billed fees.  (*Id.* at 34.)  To put this savings in perspective, based on Erisco's estimate, the industry-wide savings from the use of Erisco's clinical editing functionality would have ranged from about      **REDACTED**          during the damages period.  (*Id.*)

TriZetto improperly criticizes Mr. Wagner for not considering evidence allegedly showing that many TriZetto customers do not use or purchase clinical editing because TriZetto did not produce such evidence during discovery or even before Mr. Wagner submitted his report.  The only "evidence" that TriZetto identifies in its brief is its own damages expert's rebuttal report, which was not produced until several weeks after Mr. Wagner's report.  (D.I. 176 at 26.)  Moreover, as discussed above in Section IV.A.2 (pp. 10-11), TriZetto first provided its expert with information suggesting that TriZetto customers did not use clinical editing functionality *after* Mr. Wagner submitted his report, and first produced that information to McKesson with Dr. David's rebuttal report.

Mr. Wagner has applied the entire market value rule consistent with Federal Circuit precedent and has performed his reasonable royalty analysis based on sufficient facts and data.  His analysis and opinion regarding reasonable royalty are reliable and admissible under Federal Rule of Evidence 702.  TriZetto fails to demonstrate otherwise. Accordingly, its motion to exclude Mr. Wagner's testimony should be denied.

## V.    CONCLUSION.

For the foregoing reasons, McKesson respectfully requests that the Court deny in
its entirety TriZetto's motion to exclude the expert testimony of Michael J. Wagner.

By: _____

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff
McKesson Information Solutions LLC

OF COUNSEL:

Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, CA 94301
(650) 470-4500

DATED: January 5, 2005

22

## CERTIFICATE OF SERVICE

I, Michael A. Barlow, hereby certify that on January 5, 2006, I electronically filed Plaintiff's Opposition to Defendant's Motion to Exclude the Expert Testimony of Michael J. Wagner and Declaration of Michael A. Barlow using CM/ECF, which will send notification of such filing to those designated below, and that I served the following persons in the manner listed:

**VIA CM/ECF**
Rodger D. Smith, II, Esq.
MORRIS NICHOLS ARSHT
  & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899

**HAND DELIVERY**
Jack B. Blumenfeld, Esq.
MORRIS NICHOLS ARSHT
  & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899

Michael A. Barlow (ID No. 3928)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000
mbarlow@skadden.com

440372.01-Wilmington S1A