IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC, | ) ) ) | C.A. No. 04-1258 (SLR) |
| Plaintiff, | ) ) | **REDACTED VERSION** |
| v. | ) ) | |
| THE TRIZETTO GROUP, INC., | ) ) | |
| Defendant. | ) | |

**DEFENDANT THE TRIZETTO GROUP, INC.'S OPPOSITION TO
PLAINTIFF'S MOTION TO EXCLUDE AND/OR STRIKE THE
<u>OPINIONS OF JESSE DAVID, PH.D.</u>**


MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
   *Attorneys for Defendant
   The TriZetto Group, Inc.*

OF COUNSEL:

Jeffrey T. Thomas
David A. Segal
Michael A. Sitzman
GIBSON, DUNN & CRUTCHER LLP
Jamboree Center, 4 Park Plaza
Irvine, California 92614-8557
(949) 451-3800

Original Filing Date:  January 5, 2006

Redacted Filing Date:  January 12, 2005

i.

TABLE OF CONTENTS

Page

I.   NATURE AND STAGE OF PROCEEDINGS ................................................................1

II.  SUMMARY OF ARGUMENT ........................................................................................1

III. STATEMENT OF FACTS ...............................................................................................3

IV.  ARGUMENT ....................................................................................................................5

     A.   Dr. David Did Not Rely On Improperly Withheld Documents ..............................5

          1.   Many Of The Documents In Question Did Not Exist During
               Document Production ......................................................................................5

          2.   McKesson Had Access To TriZetto's Financial Data ..............................6

          3.   McKesson's Complaints Do Not Justify Exclusion Of
               Dr. David's Opinions ......................................................................................8

     B.   Dr. David's Analysis Of The Non-Infringing Alternatives Is Proper ....................9

V.   CONCLUSION ...............................................................................................................16

TABLE OF AUTHORITIES

Page(s)

**Cases**

*BIC Leisure Products v. Windsurfing Int'l*,
    1 F.3d 1214 (Fed. Cir. 1993)..................................................................................................10

*Grain Processing Corp. v. American Maize-Products Co.*,
    185 F.3d 1341 (Fed. Cir. 1999)..................................................................................12, 13, 14

*Kaufman Co. v. Lantech, Inc.*,
    926 F.2d 1136 (Fed. Cir. 1991)..............................................................................................11

*Kearns v. Chrysler Corp.*,
    32 F.3d 941 (Fed. Cir. 1995)..................................................................................................10

*Panduit v. Stahlin Bros. Fibre Works, Inc.*,
    575 F.2d 1152 (6th Cir. 1978) ...............................................................................................10

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*,
    939 F.2d 1540 (Fed. Cir. 1991)..............................................................................................11

**Treatises**

John W. Schlicher, PATENT LAW:  LEGAL AND ECONOMIC PERSPECTIVES § 5.2 [2]
    (2d ed. 1998) .........................................................................................................................12

John W. Schlicher, PATENT LAW:  LEGAL AND ECONOMIC PRINCIPLES § 9.05[2][1]
    (1997) ....................................................................................................................................12

Robert P. Merges, PATENT LAW 1080 (2d ed. 1997) ..................................................................11

1.

## I.    NATURE AND STAGE OF PROCEEDINGS

On September 13, 2004, plaintiff McKesson Information Solutions, LLC ("McKesson") filed this suit against The TriZetto Group, Inc. ("TriZetto") alleging infringement of U.S. Patent No. 5,253,164 ("the '164 patent").  On October 1, 2004, McKesson amended its Complaint.  On November 1, 2004, TriZetto answered and filed a counterclaim seeking a declaratory judgment of invalidity, unenforceability, and non-infringement.

McKesson alleges that three of TriZetto's products (Facets, ClaimFacts and QicLink) infringe 15 claims of the '164 patent (Claims 1-6 and 8-16).  Fact and expert discovery have been completed, but the parties have raised a number of discovery issues with the Special Master, who has issued five orders.  As a result of those orders, additional document production and depositions will be necessary.  The Court has bifurcated the issue of invalidity and stayed motion practice and trial on that issue.  On the issues of infringement, damages and equitable defenses, motion practice is proceeding and scheduled for hearing on February 16, 2006, at which time the Court is also scheduled to consider any issues of claim construction.  Both parties have filed summary judgment motions and motions to exclude expert testimony.  Trial on the issues of infringement, damages and equitable defenses is set for April 17, 2006.

## II.    SUMMARY OF ARGUMENT

The motion filed by McKesson to exclude the opinions of Dr. Jesse David, TriZetto's damages expert, is based on two assertions:  (1) Dr. David relied on 12 documents that allegedly should have been produced earlier; and (2) Dr. David used the wrong legal standard when considering the non-infringing alternatives that were available to TriZetto and its predecessors.  Neither of these assertions is meritorious.

2.

The 12 documents identified by McKesson are a tiny fraction of the total number of documents that Dr. David considered. Moreover, all but one of those 12 documents did not even exist when McKesson served its document requests and TriZetto produced documents. Instead, these documents reflect information that was gathered by Dr. David and TriZetto employees who were asked to assist Dr. David in connection with his work to rebut the damage calculations that have been done by Michael Wagner, McKesson's damages expert. It is quite common for a damages expert to ask the company whose counsel has retained the expert to gather and provide data and information the expert would like to review. Mr. Wagner did just that with McKesson, which has provided Mr. Wagner with documents and data he has relied on in calculating McKesson's alleged damages. Dr. David did the same with TriZetto, and the documents McKesson now claims should have been produced during discovery are documents containing the information that Dr. David asked to be gathered. Pursuant to the rules for expert discovery, those documents were timely produced to McKesson in advance of Dr. David's deposition, and McKesson had full opportunity to question Dr. David about the data in the documents. TriZetto could not have produced the documents earlier because they did not exist until shortly before they were produced.

McKesson's motion asserts that information of the type upon which Dr. David relied was not available to McKesson. That is simply not the case. As shown by Mr. Wagner's 44-page damages report, and the 52 detailed financial schedules attached to it, McKesson and Mr. Wagner had access to a huge amount of TriZetto financial information. TriZetto produced thousands of pages on the finances related to the accused products, and Mr. Wagner was able to find in those documents the same type of data that was provided to Dr. David by TriZetto.

3.

McKesson's assertion of improperly withheld documents is just the latest example of McKesson's apparent strategy of making exaggerated claims of incomplete discovery responses.

The relief that McKesson seeks — exclusion of all of Dr. David's opinions — is also unwarranted. Many of those opinions have absolutely nothing to do with the 12 documents that McKesson is complaining about. For example, one of Dr. David's key opinions is that Mr. Wagner failed to properly account for the non-infringing alternatives that were available to TriZetto and its predecessors. The information and documents that Dr. David received from TriZetto while he was preparing his report have no bearing on that non-infringing alternative issue. In fact, as discussed below, it is McKesson, not TriZetto, that has been tardy in completing its production of documents on this issue.

With regard to the second ground for this motion, that Dr. David used the wrong legal standard in considering the non-infringing alternatives, McKesson has misstated the law. McKesson claims that all the non-infringing alternatives should be ignored absent proof as to which of the alternatives TriZetto would actually have selected in the hypothetical, but-for world. That gets the law exactly backwards. The Federal Circuit has held that *all* alternatives that were reasonably available at the relevant time *must* be considered. The test is not subjective, but is an objective test that looks at what the accused infringer would have done had it acted as a rational economic competitor. Dr. David applied this correct legal standard.

### III.    STATEMENT OF FACTS

Exhibit A to the Declaration of Michael A. Barlow filed in support of McKesson's motion to strike Dr. David's opinions lists the documents that McKesson claims should have been produced earlier. As noted above, all these documents were produced before Dr. David's deposition, just as McKesson produced voluminous documents in advance of Mr. Wagner's

deposition. Six of the 12 documents listed were prepared by TriZetto at Dr. David's request following the receipt of Mr. Wagner's opening damages report.[1] There were no TriZetto financial documents in the format Dr. David wanted to see. Rather than going back through the voluminous TriZetto financial records that had been produced during fact discovery to pull out the information and put it into these formats himself, Dr. David asked TriZetto employees to perform this task for him. In addition, Dr. David asked that TriZetto organize the financial data in some ways it does not normally do. This information was then put into spreadsheets and sent to Dr. David for his report. These documents could not have been produced earlier as they did not exist. Declaration of Jeffrey T. Thomas ("Thomas Decl."), ¶ 2.

Five of the remaining six documents McKesson complains about are recent requests for proposals ("RFPs") from prospective TriZetto customers and TriZetto's responses thereto.[2] These documents were created during the period June-November 2005, well after McKesson's December 2004 document request. Thomas Decl., ¶ 3. TriZetto produced thousands of pages of communications and contracts with customers in response to that request, and has identified those documents in written discovery responses. Dr. David asked to see a few of the most recent customer RFPs, and they were provided to him and were produced to

---

[1] Those six documents are: TRZ840267-345; TRZ840346-49; TRZ840746; TRZ839576-78; TRZ839572-74; and TRZ840241-42. *See* Declaration of Jeffrey T. Thomas filed herewith ("Thomas Decl."), ¶ 2.

[2] The last of the 12 documents is a 1992 license agreement between RIMS (a company TriZetto acquired in 2000) and a third party, HealthChex. That agreement granted RIMS the right to sell a software program named AutoAudit. There has never been any dispute about RIMS receiving this license or about the fact that RIMS and TriZetto have in fact sold AutoAudit. Mr. Wagner's report discusses those sales and factors them into his damages analysis. Dr. David asked to see the original license agreement and a search was conducted to try to locate it. The 1992 agreement was found and was provided to both Dr. David and McKesson.

5.

McKesson. Again, these five documents did not even exist when TriZetto was gathering this type of document for production; all of the documents post-date the Court's May 13, 2005, deadline for completion of document production.

## IV.   ARGUMENT

### A.   Dr. David Did Not Rely On Improperly Withheld Documents

#### 1.   Many Of The Documents In Question Did Not Exist During Document Production

It is common for a damages expert to ask for information from the company on whose behalf he/she is testifying to cut down on the time and expense of gathering and summarizing the information. Mr. Wagner has done just that on behalf of McKesson. For example, Mr. Wagner provided McKesson with a list of TriZetto customers and asked McKesson to calculate the revenues it would have received had those customers purchased McKesson's software products. Rather than doing this calculation himself by using preexisting documents (e.g., McKesson pricing sheets), McKesson compiled the data in the format Mr. Wagner requested and provided it to him. Thomas Decl., ¶ 8. Moreover, Mr. Wagner's report states that he considered 36 documents that apparently were provided to him by McKesson or its counsel, which do not appear to have been produced in this action as Mr. Wagner's report does not provide any Bates numbers for them. (TriZetto has sent a letter to McKesson requesting copies of these documents, but McKesson has not yet responded.) Thomas Decl., ¶ 9. If, as McKesson seems to be contending, an expert is not entitled to rely on information he/she gathers from the company on whose behalf the expert is testifying, then Mr. Wagner's opinions should also be excluded.

6.

Like Mr. Wagner, Dr. David also asked that some legwork be done for him. As discussed above, TriZetto reorganized and reformatted some of its financial data for Dr. David. That resulted in six spreadsheets, which went to Dr. David and were produced to McKesson. This clearly does not constitute discovery abuse of any kind.

There is also nothing improper about Dr. David's consideration of a few bids by TriZetto to prospective customers. He merely wanted to see how TriZetto's current bids compare with those from earlier months and years. Five such documents, all of which are dated after the deadline set by the Court for completion of document production, were provided to Dr. David and McKesson. Thomas Decl., ¶ 3. There is no basis for McKesson's claim that this somehow represents discovery abuse.

### 2. McKesson Had Access To TriZetto's Financial Data

As shown by Mr. Wagner's report, McKesson has had full access to the financial data contained in TriZetto's business records. Attached to the Thomas Declaration filed herewith are Schedules 1-13.5 to Mr. Wagner's report. Thomas Decl., Exh. D. These schedules are based on the thousands of pages of financial data produced by TriZetto herein, which contain the same type of information that Dr. David reviewed and relied upon. For example, one of the documents about which McKesson now complains (TRZ840267-345) contains information on Facets license and maintenance fees, and many of Mr. Wagner's schedules contain similar data (*see, e.g.*, Schedule 3.1, which breaks down Facets revenues by "software licenses, software maintenance, services and other," as well as Schedule 12.1, which shows Facets revenues by customer). Document TRZ840346-39 is a breakdown of revenue for three TriZetto products (Facets, ClaimFacts and QicLink) and many of Mr. Wagner's schedules show he had access to similar data (*see, e.g.*, Schedules 1.1, 6.1, 5.1, 6.2, 6.3, 6.4, 7.1). Documents TRZ839572-74 and

7.

840241-42 contain information on TriZetto sales of a software program called AutoAudit, and several of Mr. Wagner's schedules show that he had data on the extent of the AutoAudit sales (*see, e.g.*, Schedules 1.1 and 1.2).

TriZetto has produced its financial documents as they exist in the ordinary course of business, and McKesson and its expert have been able to extract from those documents the data upon which McKesson bases its damages claim. Although Dr. David had the benefit of TriZetto's assistance in understanding and reformatting the financial information, just as Mr. Wagner had with McKesson as is typical in cases of this type, the fact that Dr. David had this assistance does not reflect inadequate discovery responses by TriZetto.

McKesson points to its Document Request No. 34, which requested "documents sufficient to evidence the source and amount of all revenues received by TriZetto in connection with TriZetto's products." It also references its Interrogatory No. 14, which states: "Identify and describe in complete detail any and all revenue and the sources thereof derived by TriZetto in connection with [each accused product] . . . ." In response, TriZetto produced and identified the financial records that reflected its revenues. Thomas Decl., ¶ 4. Thousands of pages were produced in response to this document request, and specific documents were identified in response to the interrogatory. Thomas Decl., ¶ 5, Exh. A. As can be seen from Mr. Wagner's report, he was able to find in those documents revenue numbers for TriZetto, for each of TriZetto's predecessors, and for each of the accused products. TriZetto's responses to that document request and that interrogatory were sufficient.

McKesson also points to Topics 18 and 19 of its Rule 30(b)(6) deposition notice, which ask for the identities of TriZetto's customers and certain details about the sales transactions. TriZetto provided two responses to these requests, which listed the specific

documents that contain the relevant information and included charts showing customer names, contract dates, the contract values, the TriZetto sales representatives, etc. Thomas Decl., Exhs. B, C. Prior to filing its motion, McKesson never complained in any way about the most recent TriZetto response. Of course, the documents McKesson now complains about were not referenced in those responses as they were not, and could not have been, among the documents TriZetto produced previously.

### 3. McKesson's Complaints Do Not Justify Exclusion Of Dr. David's Opinions

McKesson also asks that all of Dr. David's opinions be excluded, without regard to the relevance of the 12 documents to Dr. David's opinions. In other words, McKesson has not even attempted to demonstrate any nexus between the documents and the opinion testimony it seeks to have excluded. In fact, most of Dr. David's opinions have absolutely nothing to do with any of the 12 documents. For example, perhaps the most significant of Dr. David's opinions with regard to McKesson's alleged lost profits damages is that the availability of several non-infringing alternatives precludes lost profits damages in this case. The documents upon which Dr. David relies for this opinion (e.g., the license agreements under which McKesson and its predecessors granted licenses to third parties for the '164 patent) were produced by and available to McKesson. Thus, there is no basis to exclude Dr. David's opinion based on the unrelated, recently created documents.

Given Dr. David's focus on the non-infringing alternatives, it is ironic that McKesson is now complaining about documents that it believes should have been produced earlier. TriZetto is still attempting to get a complete document production from McKesson, and the Special Master has recently ordered McKesson to produce a number of documents that he

9.

found McKesson has improperly withheld. TriZetto is still waiting for McKesson to produce the documents that the Special Master ordered be produced. Moreover, as recently as December 12, 2005, McKesson produced additional documents, including a distributor agreement under which McKesson granted a third party, Perot Systems Corporation, the right to sell the pertinent McKesson software. This agreement made Perot Systems Corporation yet another source from which TriZetto could acquire non-infringing software. This is a document that Dr. David would have found of interest, but it was not produced until almost two weeks after the close of expert discovery. It is ironic that McKesson complains that documents relevant to expert opinions have been produced late.

If McKesson believes that a particular document upon which Dr. David has relied, or his testimony about such a document, should not be permitted into evidence at trial, it can make its objection at the appropriate time. It is, however, inappropriate for McKesson to ask for the sweeping remedy of exclusion of all of Dr. David's opinions based on a handful of documents that are unrelated to much of the opinion testimony he will give at trial.

### B. Dr. David's Analysis Of The Non-Infringing Alternatives Is Proper

McKesson also argues that Dr. David's opinions regarding lost profits and, specifically, his analysis of the non-infringing alternatives here, are unreliable because he applies the wrong legal standard. McKesson contends that the determinative issue is "not what *could* have occurred but for the infringement but what *would* have occurred." D.I. 173 at 10. The legal premise for McKesson's position is that adequate non-infringing alternatives are relevant only if there is proof as to which of the alternatives TriZetto would have selected had it not sold the product that is accused of infringement. That is wrong, and it turns the law on this issue on its head.

First, by focusing on what TriZetto *itself* would have actually done at the time of infringement, McKesson attempts to turn the analysis into a subjective inquiry. The Federal Circuit has clearly held that the standard is an objective test based on what a rational economic competitor in the accused infringer's position would have been able to do. Second, the Federal Circuit has also held that the controlling issue is whether there were *acceptable* non-infringing alternatives, all of which must be considered. Once any such alternatives are identified, courts rely on rational competitor behavior to assume that the alleged infringer *would have* actually utilized at least one of the alternatives. Dr. David has based his conclusions on this methodology endorsed by the Federal Circuit, and he analytically connects his opinions to the undisputed facts of this case.

It is black letter law that to recover lost profit damages for patent infringement, the patentee must prove causation. *Kearns v. Chrysler Corp.*, 32 F.3d 941, 952 (Fed. Cir. 1995); *BIC Leisure Products v. Windsurfing Int'l*, 1 F.3d 1214, 1218 (Fed. Cir. 1993) (holding that a patent owner must prove a causal relation between the infringement and its loss of profits). The accepted analytical framework used to demonstrate causation was delineated in *Panduit v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152 (6th Cir. 1978). Under *Panduit*, the chain of causation is broken when the accused infringer had available to it non-infringing alternatives to the accused product. *Id.* at 1156. In other words, under *Panduit*, the plaintiff must show an absence of adequate non-infringing alternatives. *Id.*

By requiring Dr. David to base his methodology and conclusions on what TriZetto *itself* actually *would have done* if it had selected from adequate non-infringing alternatives available here, McKesson attempts to turn the *Panduit* test into a subjective inquiry. The Federal Circuit, however, has rejected such an analysis. In *Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136,

1141 (Fed. Cir. 1991), the district court held that determining the existence of acceptable non-infringing alternatives, was a "subjective and highly individualized inquiry." The Federal Circuit reversed, holding that "whether a patentee deserves lost profit damages is not based on a subjective individualized inquiry, but on an objective standard of '*reasonable probability*.'" *Id.* (emphasis added). Dr. David's methodology is based on restructuring the but-for market with alternatives that TriZetto – *or any other rational competitor* – could have utilized. This methodology falls directly within the objective standard required by the Federal Circuit.[3]

The Federal Circuit has emphasized that the controlling issue is *not* what the alleged infringer *would* have done, but "whether the competitors sell an *acceptable* non-infringing substitute." *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991). Once such an alternative is identified, the courts assume that a rational competitor *would* have utilized it. In *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1351 (Fed. Cir. 1999), the Federal Circuit defined what a rational competitor *would* do if faced with acceptable non-infringing substitutes:

> Without the infringing product, a rational would be-infringer is likely to offer an acceptable non-infringing alternative, if available, to compete with the patent owner rather than leave the market altogether. The competitor in the "but for" marketplace is hardly likely to surrender its complete market share when faced with a patent, if it can compete in some other lawful manner.

This approach recognizes that the alleged infringer usually did not actually consider the alternatives, but instead produced and sold the product accused of infringement.

---

[3]  Curiously, in its Opening Brief, McKesson cites *Rite-Hite* for the proposition that § 284 of the patent statute requires a test of "reasonable, objective foreseeability." D.I. 173 at 10. McKesson then proceeds to require a subjective analysis of what TriZetto *itself* would have actually done.

Thus, a subjective examination into what that party *would have done* is an impossible and unrealistic inquiry. As a result, the law focuses on what a rational competitor who – when an adequate non-infringing alternative in the but-for market is available – would do. Dr. David's methodology and opinions are anchored in this economic analysis. In fact, Dr. David relies on the above passage from *Grain Processing* in his report when concluding that "it seems clear that the 'would-be infringer' in this case, [TriZetto], *would have been able to remain in the but-for marketplace* by making sales of the accused products 'in some other lawful manner.'" David Report at 13 (emphasis added).

Furthermore, *Grain Processing* holds that the *Panduit* analysis is not limited to substitutes that the alleged infringer actually would have selected. In fact, *all* alternatives that could have been available during the period of infringement must be considered – even if they were not actually produced and sold during that time. 185 F.3d at 1351. The court held that "an accurate reconstruction of the but-for market takes into account *any alternatives available to the infringer*." *Id.* (emphasis added). In support of its holding, the *Grain Processing* court cited several leading patent scholars, such as:

> The infringer should have a chance to argue what he or she *might have done in the absence of infringement*. Obviously, if the defendant is not permitted to present evidence of this ilk, the analysis is quite skewed: only the patentee's "best case" scenario is presented, rather than a more realistic scenario.

*Id., quoting* Robert P. Merges, PATENT LAW 1080 (2d ed. 1997) (emphasis added). The court quoted another scholar, who stated that "[w]here an infringer demonstrates that it *could have chosen* to market a non-infringing alternative . . . the sales that it made of the infringing products were not sales that the patentee would otherwise have made . . . ." *Id., quoting* John W. Schlicher, PATENT LAW: LEGAL AND ECONOMIC PERSPECTIVES § 5.2 [2] (2d ed. 1998). Finally,

13.

the court concluded with a quote from that expert: "[U]nless the law wishes to systematically overreward patented inventions, it is necessary to inquire about the nature and value of the product that the infringer *could have made* had he not infringed." *Id., quoting* John W. Schlicher, PATENT LAW: LEGAL AND ECONOMIC PRINCIPLES § 9.05[2][1] (1997) (emphasis added). Thus, the *Panduit* analysis is not limited to adequate alternatives that the alleged infringer can prove it *would* have used. Rather, the inquiry must include *all* acceptable alternatives that a rational competitor *could* have selected.

      McKesson relies on the *Grain Processing* court's statement that "a fair and accurate reconstruction of the 'but for' market also must take into account, where relevant, alternative actions the infringer foreseeably *would* have undertaken had he not infringed." 185 F.3d at 1350 (emphasis added). McKesson thus takes one word from *Grain Processing* out of context and ignores the actual holding and rationale of the case.

      Dr. David's methodology stands on rock solid ground, and the facts he relies upon are undisputed. He uses as his *starting* point the Federal Circuit precedent discussed above. In reaching his final conclusion on adequate non-infringing alternatives, Dr. David follows the methodology established by *Grain Processing*, and states that "the 'would-be infringer' in this case would have been able to stay in the but-for marketplace by making sales of the accused products 'in some other lawful manner.'" David Report at 13, *quoting Grain Processing*, 185 F.3d at 1351 (emphasis added).

      In addition, Dr. David's conclusions flow directly from the undisputed facts of this case. McKesson cannot deny that it and its predecessors have granted at least four licenses under the '164 patent to third parties. The first of these licenses was granted 11 years ago. The licensees had the right to sell their *software* to distributors and other resellers, and thus TriZetto

14.

could have acquired the software from any of these licensees and provided it to the TriZetto customers.

REDACTED

The weakness of McKesson's position is further underscored by a fourth alternative, a software product called AutoAudit that was sold by a company named Solucient.

REDACTED

Since before the '164 patent even issued, TriZetto or one of its predecessors has been offering the AutoAudit program to its customers. Thus, not only is this an alternative TriZetto could have selected, it is one that it actually did (and still does) utilize.

---

4

REDACTED

McKesson and its damages expert, Mr. Wagner, have ignored all of these facts. Instead, McKesson takes the untenable legal position that non-infringing alternatives should be ignored. For the reasons set forth in TriZetto's *Daubert* motion to exclude Mr. Wagner's testimony, this is a major reason that McKesson's damages model is improper and should not be allowed.

In the end, McKesson claims that Dr. David should have used a methodology that is at odds with Federal Circuit law. As is often true in cases like this, nobody can ever know with precision what TriZetto would have done in the but-for world. Thus, the law requires that all of the non-infringing *alternatives* available be considered, and the question is what a rational competitor in TriZetto's position would have done. Dr. David need not ground his opinions on what TriZetto *would* have done, but on rational competitor behavior. Dr. David has done just that. By properly reconstructing the but-for market, Dr. David's testimony will assist the trier of fact in determining the merits of his conclusions – a responsibility solely within the province of the jury. His opinions regarding the availability of non-infringing alternatives are reliable and admissible.

16.

## V.   CONCLUSION

For the reasons described above, TriZetto respectfully submits that McKesson's motion to exclude Dr. David's testimony should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
rsmith@mnat.com
  *Attorneys for Defendant*
  *The TriZetto Group, Inc.*

OF COUNSEL:

Jeffrey T. Thomas
David A. Segal
Michael A. Sitzman
GIBSON, DUNN & CRUTCHER LLP
Jamboree Center, 4 Park Plaza
Irvine, California 92614-8557
(949) 451-3800

Original Filing Date:  January 5, 2006

Redacted Filing Date:  January 12, 2006
#501778

**CERTIFICATE OF SERVICE**

I, Rodger D. Smith II, hereby certify that on January 12, 2006, I caused to be electronically filed Defendant The TriZetto Group, Inc.'s Opposition To Plaintiff's Motion To Exclude And/Or Strike The Opinions Of Jesse David, Ph.D. (Redacted Version) with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Thomas J. Allingham, II
> Skadden, Arps, Slate, Meagher & Flom LLP

I also certify that copies were caused to be served on January 5, 2006, upon the following in the manner indicated:

**BY HAND**

> Thomas J. Allingham, II
> Skadden, Arps, Slate, Meagher & Flom LLP
> One Rodney Square
> P.O. Box 636
> Wilmington, DE  19899

**BY FEDERAL EXPRESS**

> Jeffrey G. Randall
> Skadden, Arps, Slate, Meagher & Flom LLP
> 525 University Avenue
> Suite 1100
> Palo Alto, CA  94301

> /s/   *Rodger D. Smith II (#3778)*
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE  19899
> (302) 658-9200
> rsmith@mnat.com