IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MCKESSON INFORMATION )
SOLUTIONS, LLC, )
)
       Plaintiff, )
)
    v. )   C.A. No. 04-1258 (SLR)
)
THE TRIZETTO GROUP, INC., )
)
       Defendant. )

**THE TRIZETTO GROUP, INC.'S REPLY BRIEF IN SUPPORT OF ITS
MOTION TO EXCLUDE THE EXPERT TESTIMONY OF
<u>MARGARET L. JOHNSON AND MARK A. MUSEN</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (No. 1014)
Rodger D. Smith II (No. 3778)
1201 N. Market Street
Wilmington, Delaware 19899
(302) 658-9200

*Attorneys for Defendant The TriZetto Group, Inc.*

OF COUNSEL:

GIBSON, DUNN & CRUTCHER LLP
Jeffrey T. Thomas
David Segal
Michael A. Sitzman
Jamboree Center, 4 Park Plaza
Irvine, CA  92614
(949) 451-3800

January 12, 2006

# TABLE OF CONTENTS

Page

I.  SUMMARY OF ARGUMENT ................................................................................. 1

II. ARGUMENT ....................................................................................................... 3

A.  THE STRUCTURE FOR A COMPUTER-IMPLEMENTED MEANS-
    PLUS-FUNCTION ELEMENT IS THE DISCLOSED *ALGORITHM*, NOT
    SIMPLY "SOFTWARE" ..................................................................................... 3

B.  DR. MARGARET JOHNSON'S OPINION IS UNRELIABLE AND
    IRRELEVANT, BECAUSE SHE FAILED TO FOLLOW THE PROPER
    INFRINGEMENT METHODOLOGY ................................................................. 8

C.  DR. MARK MUSEN'S OPINION IS ALSO UNRELIABLE AND
    IRRELEVANT, BECAUSE HE FAILED TO FOLLOW THE PROPER
    INFRINGEMENT METHODOLOGY ............................................................... 13

III. CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

Page

**Cases**

*Advanced Med. Optics, Inc. v. Alcon, Inc.,*
   2005 U.S. Dist. LEXIS 5803 (D. Del. 2005) ........................................................... 12

*Altiris, Inc. v. Symantec Corp.,*
   318 F.3d 1363 (Fed. Cir. 2003)................................................................................ 3, 4

*Cytologix Corp. v. Ventana Med. Systems Inc.,*
   76 U.S.P.Q.2d 1592 (Fed. Cir. 2005)................................................................... 11, 15

*Fonar Corp. v. General Electric Co.,*
   107 F.3d 1543 (Fed. Cir. 1997)................................................................................ 14

*Harris Corp. v. Ericsson Inc.,*
   417 F.3d 1241 (Fed. Cir. 2005)............................................................................ 3, 12

*Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.,*
   347 F. Supp. 2d 114 (D. Del. 2004)..................................................................... 12, 16

*Kumho Tire Co. v. Carmichael,*
   526 U.S. 137 (1999)................................................................................................... 2

*Mas-Hamilton Group v. LaGard, Inc.,*
   156 F.3d 1206 (Fed. Cir. 1998)......................................................................... 10, 11

*Medical Instrumentation & Diagnostics Corp. v. Elekta AB ("MIDCO"),*
   344 F.3d 1205 (Fed. Cir. 2003)........................................................................... 6, 10

*MKS Instruments, Inc., v. Advanced Energy Indus., Inc.,*
   325 F. Supp. 2d 471 (D. Del. 2004)......................................................................... 16

*Praxair, Inc. v. ATMI, Inc.,*
   C.A. No. 03-1158-SLR, 2003 U.S. Dist. LEXIS 26794 (D. Del. 2003).................... 16

*Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.,*
   183 F.3d 1347 (Fed. Cir. 1999)................................................................................ 13

*TechSearch, L.L.C. v. Intel Corp.,*
   286 F.3d 1360 (Fed. Cir. 2002)................................................................................. 8

iii.

Page

*United States v. Mitchell*,
   365 F.3d 215 (3d Cir. 2004)................................................................................. 9, 10

*WMS Gaming Inc. v. Int'l Game Tech.*,
   184 F.3d 1339 (Fed. Cir. 1999)........................................................................ 3, 4, 6

## Statutes

35 U.S.C. § 112(6) ................................................................................................. 5

Fed. R. Civ. P. 34................................................................................................. 13

.

The TriZetto Group, Inc. ("TriZetto") submits this reply brief in support of its motion to exclude the testimony of Dr. Margaret Johnson and Dr. Mark Musen, retained by McKesson Information Solutions, LLC ("McKesson") as infringement experts in this case.

## I.    SUMMARY OF ARGUMENT

TriZetto's motion to exclude the expert testimony of Dr. Margaret Johnson and Dr. Mark Musen rests on the fact that both experts undeniably used the wrong infringement methodology in their reports, rendering their opinions inadmissible.  McKesson's response fails to explain why these defective infringement opinions should be admitted at trial.

The fundamental failing of McKesson's infringement experts is their erroneous assumption that merely referencing "software," in some generic sense, is sufficient to supply structure for the means-plus-function elements.  Operating under this assumption, Drs. Johnson and Musen declare "software" to be the general structure for the entire patent and conclude that the accused products have the same structure because they also utilize "software."  This approach is completely inappropriate.  Drs. Johnson and Musen have failed to perform a meaningful structure-to-structure comparison for each means-plus-function element, as required by law. They do not identify the *algorithms* from the patent specification corresponding to each means-plus-function element and do not compare those *algorithms* to the accused products. Accordingly, their infringement opinions should be excluded as unreliable, irrelevant and unhelpful to a trier of fact.

McKesson attempts to obfuscate the legal issue presented in TriZetto's motion by peppering its opposition with irrelevant assertions concerning the qualifications of its experts. The qualifications of Drs. Johnson and Musen are irrelevant to the issue presented in TriZetto's motion – namely, the faulty *methodology* used to arrive at the experts' conclusions.  TriZetto's motion does not question the academic qualifications of McKesson's infringement experts (which is an issue that goes to the weight of their opinions, not admissibility).  Even a qualified expert may proffer unreliable and irrelevant expert testimony by using the wrong methodology. An expert witness may properly be excluded from testifying where "despite those qualifications,

2.

.

[the court finds] unreliable, 'the methodology employed by the expert in analyzing the data . . . and the scientific basis, if any, for such an analysis.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151-53 (1999); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 589 (1993). Drs. Johnson and Musen, no matter how academically qualified they may be, have used the wrong methodology to determine infringement.

McKesson also grossly mischaracterizes TriZetto's arguments by repeatedly asserting that "TriZetto has not challenged the accuracy of Dr. Johnson's conclusions." But this is precisely the issue raised in TriZetto's motion – the accuracy and relevance of Dr. Johnson's and Dr. Musen's conclusions, both of whom have relied on an erroneous *methodology*. Dr. Johnson did not compare the accused TriZetto Products to the patent claims, as required by law. Instead, she compared the products to her own "algorithm," which did not correlate to any of the patent claims and omitted some of the claimed functionality. A proper infringement analysis entails comparing each element of each claim to the accused products, not amalgamating the patent functions into an incomplete and simplified "algorithm" and comparing that to the products. Dr. Johnson's opinion that the accused products match her own algorithm is irrelevant to the issue of infringement and should be excluded under *Daubert*.

Additionally, neither Dr. Johnson nor Dr. Musen performed the structural comparison required to prove infringement of the means-plus-function elements in the claims. Consequently, their opinions are not "the product of reliable principles and methods" (as required by Fed. R. Evid. 702) and should be excluded from evidence. Allowing either of these experts to testify on erroneous theories of infringement would be improper and provide no value whatsoever to the trier of fact.

3.

.

## II.     ARGUMENT

### A.     THE STRUCTURE FOR A COMPUTER-IMPLEMENTED MEANS-PLUS-FUNCTION ELEMENT IS THE DISCLOSED *ALGORITHM*, NOT SIMPLY "SOFTWARE"

The Federal Circuit has explicitly stated on at least three occasions that the corresponding structure for "[a] computer-implemented means-plus-function term . . . is the algorithm" disclosed in the patent specification. *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1253 (Fed. Cir. 2005); *see also WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1348 (Fed. Cir. 1999) ("[t]he structure of a microprocessor programmed to carry out an algorithm is limited by the disclosed algorithm"); *Altiris, Inc. v. Symantec Corp.,* 318 F.3d 1363, 1375 (Fed. Cir. 2003) ("one must . . . look to the specification for an adequate understanding of the structure of that software").  Simply invoking the word "software" is not enough – the particular algorithm in the specification that performs each claimed function must be identified.  *Altiris,* 318 F.3d at 1375 ("merely pointing out that the relevant structure is software rather than hardware is insufficient").[1]

The fundamental failing of McKesson's infringement experts is their erroneous assumption that merely referencing "software," in some generic sense, is sufficient to supply structure for the means-plus-function elements.  Ex. S (Musen Dep.) at 102:8-13 ("The structure is software.  My understanding in this case is that it is sufficient to say that the function is implemented in software."); Ex. B (Johnson Dep.) at 36:1-7 ("[I]n the places where we have a 'means for' type of language in the claim, there's a function defined in those – in the claim

---

[1]     A more complete discussion of the legal standard for determining infringement of computer-implemented means-plus-function elements is provided in TriZetto's Opening Brief in Support of TriZetto's Motion for Summary Judgment of Non-Infringement.  D.I. 153 at 7-12.

4.

.

language, and the structure associated with those is software.").[2]  Drs. Johnson and Musen do not identify the *algorithms* from the patent specification corresponding to each means-plus-function element and do not compare those *algorithms* to the accused products, as required by law. Instead, they simply observe that the patent covers a method and apparatus implemented in software and that the TriZetto Products are also implemented in software.  From this, they conclude the structures are the same.  Ex. S (Musen Dep.) at 109:1-19 ("I know [the TriZetto Products are] software systems.  If the requisite definition of structure is – is simply software, then the TriZetto products must embody the principles of the patent in software as their structure.").  That approach to determining infringement is completely improper, under the express rule of *Harris*, *WMS Gaming* and *Altiris*.

In its brief, McKesson continues to insist that invoking "software" is enough to supply the corresponding structure for computer-implemented means-plus-function elements. *See* D.I. 206 at 8 ("Dr. Johnson specifically testified . . . that 'software is the structure'"); 15 ("Dr. Musen concluded that the proper construction . . . required the corresponding structure to be software or software and hardware.").  In arguing this position, McKesson ignores Federal Circuit precedent, misreads the Court's September 20, 2005 Order, and mischaracterizes TriZetto's legal argument.

First, McKesson completely ignores the three Federal Circuit cases – *Harris*, *WMS Gaming* and *Altiris* – that squarely require the identification of a particular disclosed *algorithm* as the corresponding structure for computer-implemented means-plus-function elements.  *Harris*, 417 F.3d at 1253; *WMS Gaming*, 184 F.3d at 1348; *Altiris,* 318 F.3d at 1375.

---

[2]    Exhibits A through I were previously cited in and attached to TriZetto's Opening Brief in Support of its Motion to Exclude the Expert Testimony of Margaret L. Johnson and Mark A. Musen.  D.I. 179.  Any new Exhibits referenced or relied upon in this Reply are cited as Exhibits J through S and listed in TriZetto's Appendix Of Exhibits to this Reply.

5.

.

TriZetto referenced and quoted those three cases in its Opening Brief (D.I. 179 at 8, 13), but McKesson never cites them or attempts to deal with them in any way.

Second, McKesson misreads the Court's September 20, 2005 Order, which states in relevant part:

> [T]he specification must disclose "software" as the corresponding structure that performs the specific function in a means-plus-function claim limitation. Moreover, the "software" must either be specifically described or identified as "software" known to those of skill in the art.
>
> [P]laintiff must identify[] those portions of the specification that disclose the correspondence between the software (the structure) and the function disclosed by each claim limitation, as well as the specific algorithm disclosed in the specification, or where it is disclosed (or otherwise inferred) that the algorithm/software is known to those of skill in the art.

D.I. 99 at 1-2.[3]  McKesson contends that its experts have complied with the Court's ruling by opining that one skilled in the art would understand the corresponding structure to be "software." D.I. 206 at 15.  But the Court required that McKesson identify a "*specific algorithm*" for "*each claim limitation*," not merely recite "software" as the generic structure for the entire patent. McKesson's experts have not identified *specific algorithms* disclosed in the patent specification for *each* claim limitation, as required by the Court's order and the Federal Circuit's decisions in *Harris*, *WMS Gaming* and *Altiris*.  Nor have they identified, for each claim limitation, *specific algorithms* that they believe, based on the patent specification, would have been known to those of skill in the art.  McKesson's experts have simply invoked "software," in the most generic

---

[3]    The Court definitively determined and the parties do not dispute that 35 U.S.C. § 112(6) applies to the means-plus-function elements of the '164 patent claims.  D.I. 99.

.

sense, as the corresponding structure.  This violates the Court's order and Federal Circuit precedent.[4]

Third, McKesson accuses TriZetto of misunderstanding what an algorithm is and demanding that McKesson identify source code from the patent specification as the corresponding structure.  D.I. 206 at 18-19.  TriZetto has *never* said that the corresponding structure must be source code (although it could be represented by source code).  Consistent with the Court's September 20, 2005 Order and the Federal Circuit's opinions in *Harris*, *WMS Gaming* and *Altiris*, the corresponding structure must be a *specific algorithm* for performing the claimed function – *i.e.*, a description of the particular software steps taken or parts required to perform the function.  *See WMS Gaming*, 184 F.3d at 1349 (describing a software algorithm as a specific set of steps disclosed in the specification for performing the function).

There are many conceivable algorithms that could theoretically correspond to the means-plus-function elements of the '164 patent, but McKesson's experts never attempt to identify any of them.  For example, the element "means for receiving at least one claim," found in Claims 3-15, can be performed in a number of different ways.  A medical claim could be "received" by having a person type the claim information into the system.  It could also be "received" electronically, transmitted from a physician's office.  The medical claim could be

---

[4]     The Federal Circuit's opinion in *Medical Instrumentation & Diagnostics Corp. v. Elekta AB ("MIDCO")*, 344 F.3d 1205 (Fed. Cir. 2003), does not permit a patentee to satisfy the structural requirement by having its expert invoke "software," as McKesson suggests. D.I. 206 at 18 n.7.  *MIDCO* made clear that specific software structure had to be revealed in the patent specification.  344 F.3d at 1212 ("[I]t is not proper to look to the knowledge of one skilled in the art apart from and unconnected to the disclosure of the patent."). The patentee in *MIDCO* argued, as McKesson does here, that corresponding structure was provided by a general statement in the patent specification indicating that software for performing the patented functions was "either commercially available or within the skill of practitioners in the programming arts."  *Id*. at 1217.  The court rejected this contention, observing that such a generic reference to "software" did not disclose specific structure linked to each claim element.  *Id*. at 1217-18 ("[T]here must be something in the disclosure to indicate to the public that the patentee intends for a particular structure to correspond to a claimed function.").

.

scanned into the system.  Each of these techniques would involve different software algorithms and hardware structures.  But McKesson's experts never discuss the structure for the "receiving" element.

Similarly, the various "determining" steps of the claims can be executed using different algorithms.  For instance, Claims 3, 6, 15 and 16 determine that a code is "valid or invalid" by "interacting with the database."  Presumably, McKesson construes this step to cover the clinical editing functionality of the TriZetto Products – *i.e.*, the application of clinical editing rules to determine that a code is "valid or invalid."[5]  Appendix B of the '164 patent discloses a number of clinical editing rules, each of which is a conceivable partial algorithm for performing the "determining" function.  It is clear from the patent specification, the prosecution history, and the inventor testimony that the patent claims were intended to cover the specific rules outlined in Appendix B.  *See* '164 patent, col. 5, l. 67 – col. 6, l. 13; *see also* Ex. J (MCK 000293 - the invention "claims a set of rules"); Ex. K (Holloway Dep.) at 247:1-14, 271:10-12 ("Q. Do each of the 16 claims here include one or more of the metarules found in Appendix B?  A. Yes.").  Yet, McKesson's experts never attempt to link these rules to the patent claims, nor do they explain how the system "interact[s] with the database" to apply these rules.

One specific algorithm that does clearly appear in the patent specification is the algorithm for "ascertaining whether the at least one claim contains a plurality of medical service codes."  This algorithm is found in Figure 2 (Box 20) of the '164 patent and reads:  "No. of codes > 1."  McKesson's experts fail to identify and address this algorithm in their reports.[6]

---

[5]     TriZetto disagrees with this interpretation of "valid or invalid," as explained in TriZetto's Opening Claim Construction Brief.  D.I. 158 at 22-23.

[6]     In its motion for summary judgment of infringement, McKesson implicitly urges the Court to ignore this algorithm and find that the TriZetto Products infringe the "ascertaining" step even though they do not perform the algorithm.  D.I. 165 at 20-21.

.

Because McKesson's experts have failed to identify and analyze the specific, disclosed algorithms corresponding to the claimed functions, their faulty infringement opinions would be of no value to the trier of fact and should be excluded.

### B.    DR. MARGARET JOHNSON'S OPINION IS UNRELIABLE AND IRRELEVANT, BECAUSE SHE FAILED TO FOLLOW THE PROPER INFRINGEMENT METHODOLOGY

McKesson contends that TriZetto's motion is based on nothing more than its disagreement with the conclusions of McKesson's experts. D.I. 206 at 2, 9. However, TriZetto's motion does not focus on the experts' conclusions, but on the flawed *methodology* they used to arrive at those conclusions. Dr. Johnson did not compare the accused products to the claims, as required by law. Nor did she perform the necessary structure-to-structure comparison for the means-plus-function elements. Accordingly, her infringement opinions are unreliable, irrelevant and inadmissible.

McKesson argues that Dr. Johnson's conclusions on the functionality of the accused systems are relevant to the determination of patent infringement. McKesson insists that Dr. Johnson uses a "straightforward, well-established and reliable methodology" in connection with her report. D.I. 206 at 9. This contention is simply absurd, given that Dr. Johnson plainly does not "appl[y] the properly construed claim to the accused product." *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002). Dr. Johnson's "methodology" involved creating her own "algorithm" and comparing that algorithm to the accused products. *See* Ex. A (Johnson Report) at 5. This is not an algorithm that appears anywhere in the specification. Dr. Johnson created this algorithm because she could not find structure that corresponded to the functions described in the patent claims. Further, Dr. Johnson's algorithm does not correlate to any of the patent claims in particular, and it omits some of the key functionality contained in the claims. *See* Ex. B (Johnson Dep.) at 34:9-18. Dr. Johnson's ultimate conclusion that the TriZetto Products match her algorithm is completely irrelevant to establishing infringement of the patent claims.

.

McKesson mischaracterizes the issue raised in TriZetto's motion by repeatedly asserting that "TriZetto has not challenged the accuracy of Dr. Johnson's conclusions." D.I. 206 at 8, 10, 11, 17. McKesson suggests that it is inappropriate to use a *Daubert* motion to force an opponent to prove the accuracy of their expert's assessment, citing the following from *United States v. Mitchell*, 365 F.3d 215 (3d Cir. 2004):

> As the Court in *Mitchell* explained: *Daubert* does not require that a party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct . . . *Daubert* neither requires nor empowers trial courts to determine which of several competing scientific theories has the best provenance.

D.I. 206 at 4-5 (citations omitted). But TriZetto has not moved the Court to require proof from McKesson that Dr. Johnson's opinion is correct, nor requested the Court to determine which theory is best. TriZetto relies upon *Daubert* and *Mitchell* to show that the conclusions of Dr. Johnson are not based upon a "scientifically sound and methodologically reliable fashion," because she does not use the correct infringement methodology. D.I. 179 at 5; *Mitchell*, 365 F.3d at 244 (internal citations omitted).

The *Mitchell* factors derive almost exclusively from *Daubert*, which is binding U.S. Supreme Court precedent.[7] McKesson states that the *Mitchell* factors are "used to determine the propriety of admitting expert opinions that are based on *new* scientific methodologies." D.I. 206 at 9 (emphasis in original). But Dr. Johnson's algorithm is a new

---

[7] The general observations articulated by *Daubert* are captured in the following five factors: (1) whether the expert's technique or theory can be or has been tested—that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community. *Mitchell*, 365 F.2d at 235 (citing Notes to Advisory Committee on Fed. R. Evid. 702). Thus, these factors that TriZetto relies upon in its Opening Brief, are binding and applicable in this case as Supreme Court precedent.

.

methodology, and one that departs from the established technique for determining patent infringement. *See* Ex. B (Johnson Dep.) at 29:15 (discussing how she created the algorithm, "I defined the algorithm by analyzing the patent"). Dr. Johnson's approach to patent infringement is not reliable because "it is not a testable hypothesis; it is not subject to peer review; it has no known rate of error; it uses no standards to control operation of creating an algorithm; and *is not generally accepted in the patent law context*." *Mitchell*, 365 F.3d at 234 (emphasis added).

Dr. Johnson plainly failed to follow the steps prescribed by the Federal Circuit for determining infringement of means-plus-function claims: (1) identify the claimed function in the element; (2) identify the corresponding structure in the specification that performs the function; (3) perform a function-to-function comparison to see if the accused products have the identical function as the claim element; and (4) perform a structure-to-structure comparison to see if the accused products have identical or equivalent structure that correspond to the claim element. *See MIDCO,* 344 F.3d at 1210-11; *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211-12 (Fed. Cir. 1998).

Dr. Johnson does not identify the claimed function of each element (step 1). Instead, Dr. Johnson purportedly "captures" the functionality with her five-step generalized algorithm. *See* Ex. B (Johnson Report) at 5. McKesson acknowledges that "Dr. Johnson's algorithm was not intended to map to a particular claim," but insists that the algorithm "captures the functionality of the asserted claims of the '164 patent to assist Dr. Johnson in determining whether that functionality was present in the source code for TriZetto's Accused Systems." D.I. 206 at 11. In reality, the algorithm does not actually "capture" all of the functionality of the asserted claims.

Dr. Johnson admitted that her algorithm did not specifically encompass some of the functionality of the patent claims. *See* Ex. B (Johnson Dep.) at 34:9-18. For instance, her algorithm did not include "authorizing medical service codes which are not mutually exclusive due to non-medical criteria" (*see, e.g.*, Claim 2(d)) or "rejecting medical service codes which are mutually exclusive due to non-medical criteria" (*see, e.g.*, Claim 2(e)). Nor did the algorithm

.

cover determining whether medical service codes are "medically exclusive," found in Claim 12. *See* Ex. B (Johnson Dep.) at 62:16-63:4, 109:21-110:2.  The same is true for the functions of authorizing and rejecting medical *claims*, as distinct from codes, found in Claims 15 and 16.  *Id.* at 66:20-67:14.   At best, Dr. Johnson's algorithm is a partial representation of the claimed functionality.

Moreover, lumping the functionality of multiple patent claims together in an "algorithm" and comparing that to the accused products is not the appropriate way to assess infringement.  McKesson contends that Dr. Johnson's comparison of the accused products to her own algorithm is a sufficient function-to-function comparison (step 3).  *See* D.I. 206 at 10. However, the correct legal standard requires a comparison of the function of the accused product with the function of *the asserted claim*.  Dr. Johnson did not perform this comparison.  *See* Ex. B (Johnson Dep.) at 70:15-17 ("Q.   Okay.   But there isn't a claim-to-product comparison specifically anywhere in your report, is there?   A.   No.").   Dr. Johnson's comparison of the accused TriZetto products to *her own algorithm* is legally improper and would not assist the trier of fact.[8]

Even assuming that Dr. Johnson's algorithm properly identified all the functionality as required under 112(6), her analysis still fails to meet the structural requirement. "[I]t is insufficient for the patent holder to present testimony 'based only on a functional, not a structural, analysis.'"  *Cytologix Corp. v. Ventana Med. Systems Inc.*, 76 U.S.P.Q.2d 1592, 1600

---

[8]     Dr. Johnson also used an incorrect infringement standard when she concluded that "all three TriZetto products have *similar* functionality to that described in the patent."  Ex. A (Johnson Report) at 5 (emphasis added).  The functionality must be *identical*, not merely similar, in order to infringe.  *See Mas-Hamilton*, 156 F.3d at 1211-12 ("[T]he accused device [must] perform an identical function to the one recited.").  McKesson asserts that this is merely a "quibble" and that Dr. Johnson did determine that the TriZetto Products include the identical functionality of the claimed elements.  D.I. 206 at 10, n.2.  However, this is not what her expert report actually says.  Moreover, Dr. Johnson only compared the TriZetto Products to her incomplete algorithm, not the patent claims, so she did not reliably conclude that the products had identical functionality as the claims.

12.

.

(Fed. Cir. 2005) (internal citations omitted).  Dr. Johnson fails to identify the corresponding structure *in the patent specification* that performs the various functions (step 2).  As explained above in Section II.A, the corresponding structure for "[a] computer-implemented means-plus-function term . . . is the algorithm" disclosed in the patent specification.  *Harris*, 417 F.3d at 1253.  Dr. Johnson did not identify the algorithms from the patent specification corresponding to the claimed functions, nor did she compare those algorithms to the accused products.

For these reasons, TriZetto's motion to exclude the expert testimony of Dr. Johnson should be granted.  *See Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 347 F. Supp. 2d 114, 116 (D. Del. 2004)  (granting motion *in limine* to exclude expert testimony where expert failed to offer particularized testimony as to each of the elements of the Federal Circuit test); *see also Advanced Med. Optics, Inc. v. Alcon, Inc.*, 2005 U.S. Dist. LEXIS 5803 (D. Del. 2005) (excluding expert from testifying on infringement where counsel admitted that the expert had not performed an element-by-element analysis of the patents against the accused products).

.

### C.    DR. MARK MUSEN'S OPINION IS ALSO UNRELIABLE AND IRRELEVANT, BECAUSE HE FAILED TO FOLLOW THE PROPER INFRINGEMENT METHODOLOGY

McKesson fails to explain how Dr. Musen's infringement analysis comports with applicable Federal Circuit precedent.[9]  McKesson suggests that it merely has a difference of opinion with TriZetto on applicable claim construction.  However, McKesson ignores that Dr. Musen has failed to follow applicable Federal Circuit methodology for determining infringement.   TriZetto's motion to exclude addresses Dr. Musen's failure to provide both *relevant* and *reliable* testimony.

McKesson asserts that Dr. Musen has identified structure because any "software" capable of performing its functional claims is enough to satisfy the requirements of § 112, ¶ 6.  *See* D.I. 206 at 13-20.  As explained above in Section II.A, this is incorrect.  Dr. Musen needed to identify the specific algorithms from the patent specification corresponding to the claimed functions and compare those algorithms with the accused products.  Dr. Musen has admittedly not done so.

Defining the structure to encompass "all software," as Dr. Musen does, evades the requirements of 35 U.S.C. § 112, ¶ 6, which commands that specific structure be clearly linked to the element as a *quid pro quo* for drafting the element in the simplified means-plus-function

---

[9]    McKesson's attacks on TriZetto's expert testimony are irrelevant to this motion.  McKesson's complaints regarding TriZetto's experts are directed to the *invalidity* (and not infringement) reports of Drs. Kerschberg, Hawley, and Davis.  In an invalidity analysis, where the function and structure in the patent would have been obvious to one of ordinary skill in the art prior to the filing of the patent application, the patent is invalid.  *See Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1353 (Fed. Cir. 1999).  This is different from an infringement analysis, where identical function and at least equivalent structure must be found between the patent claims and the accused product.  Dr. Davis expressly noted that the structures corresponding to the means-plus-function elements in the '164 patent are different from the structures of the TriZetto Products.  *See* Ex. L (Davis Dep.) at 289-90.

.

form.[10]  Dr. Musen identifies "software" as the structure for each and every one of the means-plus-function elements contained in the patent.   According to Dr. Musen, the structural parameters of the means-plus-function language do not matter, because all the elements are "software."  This notion is legally erroneous and has led Dr. Musen to submit a faulty infringement opinion.[11]

Consequently, Dr. Musen has failed to perform a structure-to-structure comparison as required under Federal Circuit precedent.  The entirety of Dr. Musen's opinion rests on fifteen conclusory paragraphs drawn to the functionality of TriZetto's products.  *See* Ex. C at 10-16.  Dr. Musen relies on TriZetto's product documentation, deposition testimony by TriZetto's employees and customers regarding the function of TriZetto's products, and Dr. Johnson's purely functional and erroneous expert analysis.[12]  *Id.*  McKesson does not dispute,

---

[10]   McKesson relies on the Federal Circuit's opinion in *Fonar Corp. v. General Electric Co.*, 107 F.3d 1543 (Fed. Cir. 1997), to define the structural requirement under § 112(6), but *Fonar* actually discusses the requirement that an inventor disclose the *best mode* of his invention in the specification pursuant to § 112(1).  *Id.* at 1549 ("[s]tating the functions of the best mode software satisfies that description test").  The quoted portion of *Fonar* does not discuss the structure needed to support a means-plus-function claim under § 112(6).  McKesson's citation to *Fonar* is a red herring.

[11]   McKesson blatantly misrepresents the language of TriZetto's Opening Brief concerning Dr. Musen's erroneous structural definition.  McKesson states that "TriZetto's brief largely concedes that Dr. Musen performed each of the fours steps . . . necessary to his infringement analysis under 35 U.S.C. § 112(6)."  D.I. 206 at 13.  McKesson then quotes from TriZetto's Opening Brief as follows:  "Dr. Musen identifies 'the structure in the '164 patent that corresponds to every one of the 32 means-plus-function limitations.'"  *Id.*  In actuality, TriZetto's brief says, "Dr. Musen generally identifies 'software' as the structure in the '164 patent that corresponds to every one of the 32 means-plus-function claim limitations."  McKesson's misquotation of TriZetto's brief completely changed the meaning of this sentence.

[12]   McKesson suggests that TriZetto has somehow failed to respond to requests McKesson has never made for working versions of TriZetto's products.   D.I. 206 at 21 n.9.  McKesson never asked TriZetto for a product demonstration and never served a demand to inspect the working TriZetto products under Fed. R. Civ. P. 34.  D.I. 205 at ¶ 9.

.

however, that each of the proffered items of evidence apply purely to the functionality of the products. Similarly, the testimony of McKesson's employees and customers is purely functional testimony by laypersons, several of which had not even had an opportunity to read the patent.[13]

Furthermore, as discussed above in Section II.B, *supra*, Dr. Johnson's testimony is purely functional as well. As a result, each and every source on which Dr. Musen's testimony and report relies is purely functional. None of these sources provide any evidence as to structure supporting the admittedly functional claims in the '164 patent. Because this is a purely functional analysis, and the patent at issue contains means-plus-function clauses, there is no basis for Dr. Musen's infringement opinion. *See Cytologix Corp. v. Ventana Med. Sys., Inc.*, 76 U.S.P.Q.2d 1592, 1600 (Fed. Cir. 2005) (overturning jury verdict where patent holder presented testimony "based only on a functional, not a structural, analysis").

McKesson also contends that Dr. Musen is allowed to supplement his infringement opinion to include an entirely new argument that has not been advanced before – infringement under the doctrine of equivalents. McKesson cannot be allowed to "reserve" an *entire* infringement analysis. Allowing Dr. Musen to do so would contravene this Court's Scheduling Order, which provided for closure of expert discovery on November 30, 2005. Expert depositions have already been taken, summary judgment motions have been submitted, and TriZetto has not had any opportunity to conduct discovery on this entirely separate theory.

---

[13]    McKesson's counsel asked the witnesses, in varying ways, whether the functions of the patent claims are performed by the TriZetto Products. *See, e.g.*, Ex. M (Margolis Dep.) at 110:18-161:8; Ex. N (Bellomo Dep.) at 84:20-119:4; Ex. O (Luftig Dep.) at 66:9-100:18, 120:4-148:23; Ex. P (Lampe Dep.) at 57:21-80:22; Ex. Q (Danza Dep.) at 92:2-105:6; Ex. R (Smith Dep.) at 85:8-95:16. The witnesses were not asked to read and comment on the structure disclosed in the patent specification. *Id.* Most of the witnesses had never read through the patent specification, and none were given an opportunity to do so at their deposition. *See, e.g.*, Ex. M (Margolis Dep.) at 37:22-25; Ex. N (Bellomo Dep.) at 85:3-6; Ex. P (Lampe Dep.) at 26:5-14, 95:24-96:10; Ex. Q (Danza Dep.) at 112:17-113:1; Ex. R (Smith Dep.) at 120:18-121:17. Most importantly, the witnesses were not asked to compare the structure from the patent specification to the structure of the TriZetto products.

16.

.

As a result, Dr. Musen must also be prohibited from testifying on infringement under the doctrine of equivalents. *See Praxair, Inc. v. ATMI, Inc*., C.A. No. 03-1158-SLR, 2003 U.S. Dist. LEXIS 26794, at *17 (D. Del. 2003) (excluding expert testimony as a sanction for failure to comply with the Court's scheduling order regarding close of expert discovery); *and MKS Instruments, Inc., v. Advanced Energy Indus., Inc.*, 325 F. Supp. 2d 471, 474 (D. Del. 2004) (granting motion to exclude expert testimony because of failure to timely provide evidence to support claim of infringement under the doctrine of equivalents in expert report).

Dr. Musen conceded that if a comparison between the specific structure from the patent specification and the TriZetto Products is required, he has not performed that comparison. Ex. S (Musen Dep.) at 323:21-324:16. Since that is the comparison that the law requires, Dr. Musen's opinion is defective and irrelevant and should be excluded. *See Honeywell Int'l Inc.*, 347 F. Supp. 2d at 116; *see also Advanced Med. Optics, Inc.*, 2005 U.S. Dist. LEXIS 5803.

.

### III.    CONCLUSION

Drs. Johnson and Musen fail to follow the well-established methodology for determining infringement of a means-plus function claim as mandated by the Federal Circuit by failing to identify corresponding structure and compare that structure to the structure of the accused products.  For the reasons set forth herein, and in TriZetto's Opening Brief, TriZetto's motion to exclude the expert testimony of Dr. Margaret Johnson and Dr. Mark Musen should be granted.

MORRIS, NICHOLS, ARSHT &  TUNNELL LLP

*/s/ Rodger D. Smith II (#3778)*

_____

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
  *Attorneys for Defendant*
  *The TriZetto Group, Inc.*

OF COUNSEL:

GIBSON, DUNN & CRUTCHER LLP
Jeffrey T. Thomas
David Segal
Michael A. Sitzman
Jamboree Center, 4 Park Plaza
Irvine, CA  92614
(949) 451-3800

January 12, 2006
501834

## CERTIFICATE OF SERVICE

I, Rodger D. Smith II, hereby certify that on January 12, 2006, I caused to be electronically filed The TriZetto Group Inc.'s Reply Brief In Support Of Its Motion To Exclude The Expert Testimony Of Margaret L. Johnson and Mark A. Musen with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Thomas J. Allingham, II
Skadden, Arps, Slate, Meagher & Flom LLP

I also certify that copies were caused to be served on January 12, 2006, upon the following in the manner indicated:

### BY EMAIL AND HAND

Thomas J. Allingham, II
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, DE  19899

### BY EMAIL AND FEDERAL EXPRESS

Jeffrey G. Randall
Skadden, Arps, Slate, Meagher & Flom LLP
525 University Avenue
Suite 1100
Palo Alto, CA  94301

/s/     *Rodger D. Smith II (#3778)*
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com