IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC, | ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 04-1258-SLR |
| v. | ) ) ) | |
| THE TRIZETTO GROUP, INC., | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF MCKESSON INFORMATION SOLUTIONS LLC'S
REPLY BRIEF IN SUPPORT OF ITS MOTION TO
EXCLUDE AND STRIKE THE NONINFRINGEMENT OPINIONS OF
TRIZETTO'S EXPERT WITNESS DR. RANDALL DAVIS**

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff McKesson
  Information Solutions LLC

OF COUNSEL:
Jeffery G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500

DATED: January 12, 2006

# TABLE OF CONTENTS

I.  STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS ................................................................................................. 1

II.  SUMMARY OF ARGUMENT ............................................................................. 1

III. SUMMARY OF RELEVANT FACTS ................................................................. 4

IV. ARGUMENT ......................................................................................................... 4

    A.  Dr. Davis's Opinions Based On Extraneous Functionality Of The Accused Systems Are Not Relevant To The Issue Of Infringement And Should Be Stricken By The Court .......................... 4

    B.  Dr. Davis's Noninfringement Opinions Should Be Excluded Because He Did Not Evaluate The '164 Patent Claims From The Perspective Of One Of Ordinary Skill In The Art. ............................. 7

    C.  Dr. Davis's Noninfringement Opinions Should Be Excluded Because The Claim Constructions Offered In His Noninfringement Report Cannot Be Reconciled With His Invalidity Report ....................... 8

    D.  McKesson Is Entitled To All Materials Relating To The Flowcharts Relied Upon By Dr. Davis As Well As A Deposition Of The TriZetto Employee Who Prepared The Flowcharts ...................... 9

    E.  Dr. Davis's Opinions Based On TriZetto's Demonstrations Of The Accused Systems Should Be Stricken ........................................ 10

V.  CONCLUSION .................................................................................................... 14

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*A.B. Dick Co. v. Burroughs Corp.,*
    713 F.2d 700 (Fed. Cir. 1983) .................................................................................. 4

*Hackman v. Valley Fair,*
    932 F.2d 239 (3d Cir. 1991) ................................................................................ 9, 11

*Izumi Prods. Co. v. Koninklifke Philips Elec. N.V.,*
    315 F. Supp. 2d 589 (D. Del. 2004) ......................................................................... 4

*Oxford Gene Tech. Ltd., v. Mergen Ltd.,*
    345 F. Supp. 2d 431 (D. Del. 2004) ......................................................................... 5

*U.S. v. Nobles,*
    422 U.S. 225 (1975) ................................................................................................. 9

*Vehicular Tech. Corp. v. Titan Wheel Int'l, Inc.,*
    141 F.3d 1084 (Fed. Cir. 1998) ................................................................................ 6

*Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.,*
    239 F.3d 1225 (Fed. Cir. 2001) ............................................................................ 6, 7

*Westinghouse Elec. Corp. v. Republic of Philippines,*
    951 F.2d 1414 (3rd Cir. 1991) ................................................................................. 9

**STATUTES**

Fed. R. Civ. P. 26(a)(2)(B) ............................................................................................. 11

Plaintiff, McKesson Information Solutions LLC ("McKesson"), respectfully submits this reply brief in support of its motion to exclude and strike the noninfringement opinions of Dr. Randall Davis, one of defendant The TriZetto Group, Inc.'s ("TriZetto") experts.

## I.   STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

The nature and stage of the proceedings are set forth in McKesson's opening brief. McKesson now submits this reply brief in support of its motion to exclude and strike Dr. Davis's noninfringement opinions.

## II.   SUMMARY OF ARGUMENT

The report and opinions of TriZetto's noninfringement expert, Dr. Randall Davis, do not meet the requirements of *Daubert*, Rule 702, and Federal Rule of Civil Procedure 26, and should be excluded as unreliable and unhelpful to the trier of fact. Further, Dr. Davis should not be permitted to offer opinions based on improper evidence for the following reasons:

1.   TriZetto does not dispute that Dr. Davis's discussion of additional functionality beyond the elements of the asserted claims in his non-infringement analysis is irrelevant and properly excludable. Instead, TriZetto submits a declaration from Dr. Davis to clarify that, despite contrary suggestions in his report, he did not rely upon "most" of these additional functions as a basis for his opinions. The need for TriZetto to submit a declaration clarifying the basis for Dr. Davis's opinions all but confirms his report failed to comply with the basic requirements of Federal Rule of Civil Procedure 26 and undermines the reliability of all his non-infringement analysis and opinions. The actual basis for Dr. Davis's non-infringement opinions is now entirely unclear. Indeed,

1

without the admittedly irrelevant discussion of additional limitations that TriZetto now disclaims, a number of the opinions in Dr. Davis's report have no stated basis at all.

2.      Dr. Davis's opinions also should be excluded because he did not undertake an analysis of the '164 patent from a proper perspective of one of skill in the art. TriZetto concedes that Dr. Davis testified that the proper definition of the level of skill in the art could require knowledge of medical claims processing and that his opinions did not apply such a definition. Such a distinction is central to a number of Dr. Davis's opinions regarding the proper interpretation of the medical claims processing terminology in the '164 patent's claims and specification, many of which Dr. Davis (a computer scientist like the person of ordinary skill contemplated in his analysis) opined he had difficulty understanding. Because Dr. Davis has no background or experience in medical claims processing, he is not competent to provide opinions concerning such terms and his opinions in this regard should be stricken.

3.      Even a cursory review of Dr. Davis's reports in this case reveals two manifestly different claim construction analyses. Contrary to TriZetto's argument that Dr. Davis set forth his construction of the asserted claims in his opening report, that report includes absolutely no construction of any of the means-plus-function claim elements. As a result, Dr. Davis's opinions are legally irrelevant, will not assist the trier of fact, and should be excluded.

4.      TriZetto now identifies the flowcharts relied upon by Dr. Davis as work product specifically prepared by a TriZetto employee, Craig Luftig, at counsel's request and not TriZetto business records. As a result, Dr. Davis's use and reliance upon these documents constitutes a complete waiver of privilege and work product protection

entitling McKesson to immediate production of all materials relating to the subject matter of the flowcharts. Unlike the charts prepared by McKesson's experts in their reports, McKesson has been denied the ability to question Dr. Davis about details concerning the preparation and other issues concerning the flowcharts. As a result, McKesson should be permitted question Mr. Luftig regarding the flowcharts when he appears for the additional deposition ordered by the Special Master to address TriZetto's improper privilege instructions and the Court should rule on the propriety of Dr. Davis's reliance on the flowcharts after such discovery.

5. Dr. Davis's testimony and report confirm that he relied extensively on demonstrations of the Accused Systems, a fact TriZetto cannot change by now offering a declaration directly contradicting that testimony. TriZetto does not dispute that it was therefore obligated to produce the demonstrations under Federal Rule of Civil Procedure 26(a)(2)(B). Instead, TriZetto unsuccessfully attempts to justify its failure to provide such a demonstration during fact discovery in response to McKesson's repeated requests and the Court's repeated instructions to provide working versions of the Accused Systems. Indeed, on the same day it received Dr. Davis's report, McKesson requested it be provided the same access to the Accused Systems as Dr. Davis. TriZetto again declined, refusing to send a technician to assist McKesson, but never mentioned that it was easily able to arrange such a demonstration for Dr. Davis remotely from across the country. Thus, the Court should preclude TriZetto from relying on the product demonstrations, strike Dr. Davis's opinions, and order TriZetto to immediately provide such product demonstrations to McKesson in order to minimize any further prejudice.

### III. SUMMARY OF RELEVANT FACTS

All relevant facts not set forth in McKesson's opening brief are included in the argument section below.

### IV. ARGUMENT

#### A. Dr. Davis's Opinions Based On Extraneous Functionality Of The Accused Systems Are Not Relevant To The Issue Of Infringement And Should Be Stricken By The Court

TriZetto does not dispute that Dr. Davis's infringement report includes extensive discussion of functionality in the TriZetto Accused Systems that is outside of the scope of the asserted claims of McKesson's '164 patent. TriZetto also does not dispute that the presence of such extraneous functionality is irrelevant to the issue of infringement as a matter of law and therefore should be excluded. *Compare* (D.I. 203 at 4), *with A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 703 (Fed. Cir. 1983) ("[i]t is fundamental that one cannot avoid infringement merely by adding elements"), *and Izumi Prods. Co. v. Koninklijke Philips Elec. N.V.*, 315 F. Supp. 2d 589, 601 (D. Del. 2004) (the "fit" requirement of admissibility under Rule 702 requires proposed expert testimony be "relevant") (quoting *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000)).

TriZetto attempts to excuse the extraneous portions of Dr. Davis's report by arguing that he did not rely on "most" of these passages in forming the opinions in his report. (*See* D.I. 203 at 6 ("[m]ost of these are ... not the foundation of Dr. Davis's non-infringement opinion (one comment is a substantive basis for Dr. Davis's opinion ....").) As an initial matter, at a minimum TriZetto's admission only confirms that the irrelevant portions of Dr. Davis's report and his testimony on these issues should be stricken as requested by McKesson.

4

More troubling is TriZetto's attempt to excuse these flaws in Dr. Davis's report by submitting a declaration from Dr. Davis attempting to explain what he actually relied on in reaching his noninfringement opinions. Federal Rule of Civil Procedure 26(a)(2)(B) required Dr. Davis's report to "contain a complete statement of all opinions to be expressed and the basis and reasons therefor . . . ." The need for TriZetto to submit a *post hoc* explanation from Dr. Davis confirms that his report does not meet the threshold requirements for admissibility under Rule 26.

Moreover, Dr. Davis avers that the very passages of his report that TriZetto argues were "not the foundation of Dr. Davis's non-infringement opinion" were in fact "designed to support" his noninfringement opinion. (*Compare* D.I. 203 at 6, *with* D.I. 204 ¶ 4.) Under these circumstances, Dr. Davis's report is unreliable since there is no way for McKesson to determine the actual "basis and reasons" for his noninfringement opinions as required by Rule 26. As but one example, the removal of the additional functionality between the Accused System's validity check and claim authorization -- as TriZetto attempts in connection with the "authorizing" elements of claims 15 and 16 -- leaves no basis whatsoever for Dr. Davis's noninfringement opinion concerning those claims. (*Compare* D.I. 183, Exh. C at 34, *with* D.I. 203 at 8.[1])

These deficiencies warrant exclusion of Dr. Davis's report and his testimony. *See Oxford Gene Tech. Ltd., v. Mergen Ltd.*, 345 F. Supp. 2d 431, 436-37 (D. Del. 2004)

---

[1] The fact that TriZetto's argument leaves Dr. Davis with no basis for his noninfringement opinions concerning claims 15 and 16 is consistent with Dr. Davis's admissions during his deposition that the Accused Systems include the "authorizing" elements of these claims. (*See* Exh. F at 294:9-16 (admitting that the Accused Systems perform the claimed determination of whether a code is valid and, based at least on that determination, perform "claim authorization.").)

5

(excluding expert testimony as unreliable under *Daubert* and as conclusory under Rule 26(a)(2)(B)).

TriZetto's argument that Dr. Davis's discussion of the Accused Systems' "overall architecture and processing" is relevant to an analysis of the means-plus-function claim elements is contrary to law.[2] The relevant inquiry involves an element-by-element analysis, not an overall comparison of the patented system with the "overall architecture and processing" of an accused system as TriZetto asserts. *See, e.g., Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001) ("a court may not import ... structural limitations from the written description that are unnecessary to perform the claimed function"); *cf. Vehicular Tech. Corp. v. Titan Wheel Int'l, Inc.*, 141 F.3d 1084, 1092 (Fed. Cir. 1998) (discounting testimony under doctrine of equivalence that "does not speak directly to the issue of equivalence of the claim limitations, but rather speaks to the overall structure and function").

Also contrary to law is TriZetto's argument that Dr. Davis's emphasis that "the TriZetto systems make use of both a current and prior claims database" (D.I. 183, Exh. B at 31) is relevant because it demonstrates "the TriZetto products are capable of checking codes on prior claims." (D.I. 203 at 6.) The claim element at issue in this instance involves "ascertaining whether the at least one claim contains a plurality of medical service codes." (D.I. 167, Exh. A.) The plain language of this claim element involves only the current claim being processed; nothing in the language mentions or implies the

---

[2] *See* D.I. 203 at 5 ("architectural and processing differences between the TriZetto Products and the method and apparatus of the '164 patent ... structural equivalence between the TriZetto Products and the claimed method and apparatus of the '164 patent ... structural comparison of the accused products and the patent").

6

analysis of prior claims. The function is accomplished by counting the number of codes on a received claim -- a function Dr. Davis concedes the Accused Systems perform. (*See id.*, Exh. N at 292:13, 20, 22.) The "prior claims database" referenced by TriZetto is thus extraneous to the claims of the '164 patent and Dr. Davis's opinions in this regard are legally irrelevant. *See Wenger*, 239 F.3d at 1233.

### B. Dr. Davis's Noninfringement Opinions Should Be Excluded Because He Did Not Evaluate The '164 Patent Claims From The Perspective Of One Of Ordinary Skill In The Art.

TriZetto does not dispute that a proper definition of a person of ordinary skill in the art is necessary to an infringement analysis. TriZetto also does not dispute that Dr. Davis testified that he would "accept[]" that such an individual would require knowledge of medical claims processing and that he might need to "amend" his definition to account for such knowledge. (D.I. 183, Exh. A at 206:16, 212:4.) TriZetto's attempt in its brief to brush this testimony aside because the proper definition could require "even more skill" ignores the significance of the proper skill level to Dr. Davis's opinions. (D.I. 203 at 11.)

There is no question that Dr. Davis's background is in computer science and that he has no background or experience with medical claims processing. Dr. Davis's complete lack of background or experience in this area accounts for his inability to understand certain claim elements related to claims processing issues and to correlate those elements to portions of the '164 patent's specification. (*See, e.g.*, D.I. 183, Exh. C at 6 ("claim 2 cannot in my opinion be sensibly interpreted"); *Id.* at 8 ("It is unclear how 'determining whether one of the medical service codes ... is medically exclusive with any other medical service code' differs from the determining element of certain other claims").)

7

In contrast, Dr. Musen, one of McKesson's experts, is a professor of Computer Science *and Medicine* at Stanford University, and he has experience regarding medical claims processing stemming from the time of the invention. Dr. Musen did not experience Dr. Davis's difficulties with "sensibly interpret[ing]" the medical claims processing terminology, such as exclusivity due to medical and non-medical criteria. (*See, e.g.,* Exh. G at 43:1-5, 131:8-20.) Similarly, another of TriZetto's offered experts, Dr. Hawley, who was retained by TriZetto to supervise the development of the clinical editing rules of the Accused Systems, testified that he was able to understand each element and determine the metes and bounds of each asserted claim. (*See* Exh. H at 224:20-24.)

Because Dr. Davis does not have any background or experience in medical claims processing, he is not competent to provide opinions concerning the various medical claims processing terms at issue in this case and his opinions in this regard should be stricken.

    **C.    Dr. Davis's Noninfringement Opinions Should Be Excluded Because The Claim Constructions Offered In His Noninfringement Report Cannot Be Reconciled With His Invalidity Report**

TriZetto asserts that Dr. Davis used the "same construction" for both his October 24, 2005 invalidity report and his November 14, 2005 rebuttal report on noninfringement and that "Dr. Davis laid out this construction in his opening report on the subject of invalidity." (D.I. 203 at 8.) The declaration of Dr. Davis submitted by TriZetto with its brief is to the same effect.

Contrary to TriZetto's argument, Dr. Davis's opening invalidity report contains absolutely no construction of any of the means-plus-function claim elements in

8

McKesson's '164 patent. (*See* D.I. 183, Exh. C at 4-9; D.I. 203 at 8.) Significant other aspects of Dr. Davis's reports and testimony indicate that he did not in fact use the same claim construction in connection with his invalidity and noninfringement analyses as TriZetto now asserts. (*See* D.I. 183 at 10-12.) For the reasons stated in McKesson's opening brief, Dr. Davis's opinions are therefore legally irrelevant, will not assist the trier of fact and should be excluded.

### D. McKesson Is Entitled To All Materials Relating To The Flowcharts Relied Upon By Dr. Davis As Well As A Deposition Of The TriZetto Employee Who Prepared The Flowcharts

TriZetto claims that the flowcharts of the Accused Systems relied upon by Dr. Davis were not documents maintained by TriZetto in the ordinary course of business, but rather were specially prepared for Dr. Davis at counsel's request by TriZetto employee Craig Luftig. There is no question that Dr. Davis's use and reliance on these documents constitutes a complete waiver of privilege and work product protection that might otherwise attach to these documents and related materials. *See, e.g., U.S. v. Nobles*, 422 U.S. 225, 239-240 (1975); *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1426-27 (3d Cir. 1991).[3] McKesson is thus entitled to immediate production of all documents relating to the subject matter of the flowcharts, including documents that otherwise might be protected by the attorney-client privilege or the work product doctrine.

In addition, contrary to TriZetto's argument, the flowcharts prepared by TriZetto and relied upon by Dr. Davis are significantly different "than the various charts included

---

[3]   Dr. Davis's statement in his declaration that the flowcharts "were not the basis of my knowledge or opinions concerning the accused products[,]" (D.I. 204 ¶ 9), is contrary to his deposition testimony, (*see* D.I. 183 at 274), and the declaration statement should be disregarded by the Court. *See Hackman v. Valley Fair*, 932 F.2d 239, 241 (3d Cir. 1991) ("When, without a satisfactory explanation, a nonmovant's affidavit contradicts earlier deposition testimony, the district court may disregard the affidavit. . . .").

in the reports of McKesson's experts." (*See* D.I. 203 at 12.) The charts included in McKesson's expert reports were prepared by McKesson's experts and TriZetto was fully able to question McKesson's experts concerning those charts. In contrast, the flowcharts relied on by Dr. Davis were prepared by TriZetto employee Craig Luftig, not by Dr. Davis. Because Dr. Davis was not involved in the preparation of the flowcharts, McKesson was unable to question Dr. Davis about details concerning the preparation of and other aspects concerning the flowcharts.

TriZetto should therefore be ordered to produce Mr. Luftig for deposition concerning the flowcharts. TriZetto will suffer little prejudice since the Special Master has already ordered TriZetto to produce Mr. Luftig for an additional deposition concerning various issues relating to TriZetto's infringement and alleged invalidity based on TriZetto's improper instructions at his prior depositions. (*See* Exh. I.)

McKesson also requests that further ruling on the propriety of Dr. Davis's reliance on these flowcharts in connection with his opinions be stayed pending the outcome of McKesson's additional discovery on this issue.

### E. Dr. Davis's Opinions Based On TriZetto's Demonstrations Of The Accused Systems Should Be Stricken

Dr. Davis states in the declaration submitted with TriZetto's brief that TriZetto's demonstrations of the Accused Systems "were not the basis of my knowledge or opinions concerning the accused products." (D.I. 204 ¶ 9.) This statement is at odds with the record evidence, including Dr. Davis's deposition testimony.

Dr. Davis's noninfringement rebuttal report relies extensively on TriZetto's demonstrations of the Accused Systems. For example, Dr. Davis's noninfringement report includes four screen shots and numerous arguments based on demonstrations of the

10

operation of the Accused Systems. (*See, e.g.,* D.I. 182, Exh. B at 25, 26, 28, 29, 33, 34.) Based on the demonstration, Dr. Davis opined in his report that "the '164 system embodies different relations from those used in the TriZetto systems." (*Id.* at 33.) He expressly bases this opinion on the fact that the examples located in "Appendix A have been run through the TriZetto products." (*Id.*) Similarly, Dr. Davis testified during his deposition that the demonstrations "grounded things" and helped him "make sure that [he] understood" the Accused Systems. (D.I. 183, Exh. A at 260:22-23.) Dr. Davis's reliance on "live demonstrations" of the Accused Systems is therefore is clear from his report and deposition.

Because Dr. Davis's declaration statement is contrary to his report and his deposition testimony, it should be disregarded by the Court. *See Hackman,* 932 F.2d at 241.

Further, Dr. Davis's submission of a declaration to make wholesale changes, or "clarifications," to the opinions presented in his report seriously calls into question the reliability of all of his opinions. The submission of his declaration is a tacit admission that Dr. Davis's report is deficient because his noninfringement conclusion is not based upon the evidence that he clamed in his report supported it. Therefore, Dr. Davis's entire report cannot meet the reliability requirement of *Daubert* and Rule 702 and must be stricken by the Court.

TriZetto does not dispute that the Accused System demonstrations were required to be produced to McKesson pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), which requires that expert witness reports include "the data or other information ***considered*** by the witness in forming the opinions . . . ." (emphasis added). As illustrated

11

above, Dr. Davis clearly "considered" the product demonstrations in preparing his report even if they "were not the basis of my knowledge or opinions concerning the accused products[]" as claimed in his declaration. (D.I. 204 ¶ 9 ("[T]he live product demonstrations I viewed helped reinforce my understanding of the products . . . .").) TriZetto nonetheless continues to refuse to produce the demonstrations to McKesson and for this reason Dr. Davis's opinions should be excluded. (*See* D.I. 182 at 15-16.)

TriZetto attempts to excuse its refusal to produce the demonstrations by arguing that "McKesson was not particularly interested in the product demonstrations . . . ." (D.I. 203 at 13.) TriZetto's argument is of course belied by McKesson's opening brief in connection with this motion, which requests production of the product demonstrations. (*See* D.I. 182 at 15-16.) It also ignores McKesson's repeated requests for working versions of the Accused Systems, and TriZetto's obstruction of these requests, despite the Court's numerous orders requiring that working systems be provided to McKesson. (*See id.* at 16.)[4]

TriZetto's claims that it need not produce software that contains functionality outside of the clinical editing module are directly contradicted by TriZetto's reliance on other parts of the software to support its noninfringement contentions. (*See, e.g.,* D.I. 183, Exh. B at 31 ("[U]nlike the '164 system, data validation [which is claimed by the '164 patent] is not part of clinical editing, it is in fact done considerably earlier in the overall

---

[4]   McKesson had to ask for the Court's assistance on several occasions to order TriZetto to produce working versions of the software to McKesson. (*See* D.I. 90 at 4-8, 36:1-3; D.I. 116 at 18:2-19:3, 60; D.I. 138 at 6:19-23, 20:13-24.) Only then did TriZetto produce software for the Accused Systems to McKesson. However, the software it finally did produce still did not comply with the Court's orders because: (1) the software is incomplete and will not allow McKesson to process medical claims; and (2) the software contained known bugs that made the product inoperable.

12

process."); *see also* D.I. 210 at 24-25 (the function claimed by the '164 patent of "[c]laim authorization is a function performed later in the process (by a different part of the software)....").) In addition to being incomplete, the product was also sent to McKesson with known bugs. (*See* D.I. 205 ¶ 4.)

Finally, TriZetto's claim in its brief that "even after McKesson received Dr. Davis's noninfringement expert report on November 15, 2005 (in which he disclosed that he had viewed a live demonstration of the products), McKesson still did not ask TriZetto for a live demonstration or for any assistance with the functional software that was previously delivered[,]" is simply wrong.[5] (D.I. 203 at 13.) Upon receiving Dr. Davis's report indicating that he had seen a live demonstration, McKesson sent a letter to TriZetto ***that same day*** requesting that TriZetto provide assistance in configuration and installation of the complete accused systems. (*See* Exh. J.) The letter specifically addressed the live product demonstrations that had been set up for Dr. Davis and stated: "There is no legitimate reason why TriZetto was able to provide its expert with fully operable Accused Systems but has refused to comply with court orders requiring it to provide the operable Accused Systems to McKesson." (*Id.*) The letter further indicated the urgency of its request. (*See id.*) TriZetto never offered to give McKesson access to the product demonstrations in response to this letter.

---

[5] TriZetto's statement in its brief that McKesson never sought a demonstration of the products from TriZetto's customers when "McKesson [] deposed several customers at their facilities..." is also wrong. McKesson never deposed *any* of TriZetto's customers at their facilities. Further, TriZetto's argument that McKesson should have placed additional burden on TriZetto's own customers contradicts TriZetto's requests for the Court to prevent McKesson from requesting any information from its customers. (*See* D.I. 37 at 20.)

13

Based on the foregoing, McKesson requests that the Court preclude TriZetto from relying on the product demonstrations and strike Dr. Davis's opinions based on those demonstrations. Further, to minimize the prejudice suffered by McKesson, TriZetto should be ordered to provide the product demonstrations to McKesson immediately.

## V. CONCLUSION

For the foregoing reasons, McKesson respectfully requests that the Court grant the relief detailed above.

By: /s/ *signature*

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff McKesson
Information Solutions LLC

OF COUNSEL:
Jeffery G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500

DATED: January 12, 2006