IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 04-1258-SLR |
| | ) | |
| v. | ) | |
| | ) | **REDACTED PUBLIC VERSION** |
| THE TRIZETTO GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**PLAINTIFF MCKESSON INFORMATION SOLUTIONS LLC'S
ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT OF LACHES**

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500

Attorneys for Plaintiff
McKesson Information Solutions LLC

DATED: January 10, 2006
Redacted Version Filed: January 17, 2006

**TABLE OF CONTENTS**

Page

I.     NATURE AND STAGE OF PROCEEDINGS ................................................... 1

II.    SUMMARY OF ARGUMENT ......................................................................... 1

III.   STATEMENT OF FACTS .............................................................................. 2

IV.    THE COURT SHOULD DENY TRIZETTO'S MOTION BECAUSE
       THERE ARE GENUINE ISSUES OF MATERIAL FACT AND
       TRIZETTO CANNOT PROVE LACHES AS A MATTER OF LAW ............... 7

       A.    Standard of Review on Summary Judgment ............................................. 7

       B.    TriZetto Cannot Prove that McKesson Unreasonably Delayed
             in Filing Suit ..................................................................................... 7

             1.    A Disputed Issue of Fact Exists as to When the Alleged
                   Period of Delay Commenced ....................................................... 9

             2.    Substantial Portions of the Alleged Delay Period Were
                   Excused ................................................................................. 12

                   (a)   The *GMIS v. HPR* Litigation Reduces the Alleged
                         Delay Period .................................................................. 13

                   (b)   The Patent Negotiations Between McKesson and
                         TriZetto Reduce the Alleged Delay Period ...................... 15

                   (c)   HBOC's Acquisition of HPR and McKesson's
                         Acquisition of HBOC Reduce the Alleged Delay
                         Period ............................................................................ 18

                   (d)   Genuine Issues of Fact Exist as to the Economic
                         Appropriateness of Suing Erisco in the Mid-1990s ......... 20

       C.    TriZetto Cannot Prove that It Has Been Materially Prejudiced
             Because of McKesson's Alleged Delay in Filing Suit ............................ 22

             1.    No Economic Prejudice Exists ................................................... 22

                   (a)   TriZetto Cannot Show a Nexus Between its Alleged
                         Losses and Any Alleged Delay in Filing Suit .................. 23

                   (b)   TriZetto Would Not Have Acted Differently Even
                         if McKesson Had Sued Earlier ........................................ 26

**TABLE OF CONTENTS (con't)**

Page

2.    TriZetto has Experienced No Evidentiary Prejudice
      Because of the Purported Delay.....................................................30

V.    CONCLUSION.........................................................................................36

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                **PAGE(S)**

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,*
   960 F.2d 1020 (Fed. Cir. 1992)............................................................................*passim*

*Autoclave Eng'rs, Inc. v. Duriron Co.,*
   190 U.S.P.Q. 125 (E.D. Pa. 1976) ................................................................................. 21

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.,*
   145 F.3d 1303 (Fed. Cir. 1998).................................................................................... 7

*Ecolab, Inc. v. Envirochem, Inc.,*
   264 F.3d 1358 (Fed. Cir. 2001)................................................................................... 23

*Genzyme Corp. v. Atrium Med. Corp.,*
   No. 00-958-MPT, 2003 U.S. Dist. LEXIS 12784 (D. Del. July 22, 2003)............*passim*

*Giese v. Pierce Chem. Co.,*
   29 F. Supp. 2d 33 (D. Mass. 1998) .............................................................................. 17

*Hemstreet v. Computer Entry Sys. Corp.,*
   972 F.2d 1290 (Fed. Cir. 1992).............................................................................. 23, 24

*Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc.,*
   270 F.3d 298 (6th Cir. 2001) ...................................................................................... 25

*Ill. Tool Works Inc. v. Grip-Pak, Inc.,*
   725 F. Supp. 951 (N.D. Ill. 1989) ............................................................................... 20

*Izumi Prods. Co. v. Koninklijke Philips Elecs. N.V.,*
   315 F. Supp. 2d 589 (D. Del. 2004), *aff'd*, 140 Fed. Appx. 236 (Fed. Cir. 2005)........ 28

*James River Corp. of Va. v. Hallmark Cards,*
   915 F. Supp. 968 (E.D. Wis. 1996)................................................................... 29, 30, 31

*Jamesbury Corp. v. Kitton Indus. Prods., Inc.,*
   839 F.2d 1544, 1552 (Fed. Cir. 1988)......................................................................... 13

*Lemelson v. Wang Labs., Inc.,*
   874 F. Supp. 430 (D. Mass. 1994) .............................................................................. 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986)...................................................................................................... 7

*Meyers v. Brooks Shoe, Inc.*,
    912 F.2d 1459 (Fed. Cir. 1990) , *overruled on other grounds by Auckerman*,
    960 F.2d 1020 (Fed. Cir. 1992) .................................................................................. 25

*RCA Corp. v. Data General Corp.*,
    701 F. Supp. 456 (D. Del. 1988).......................................................................... 15, 32

*State Contracting & Eng'g Corp. v. Condotte Am., Inc.*,
    346 F.3d 1057 (Fed. Cir. 2003)................................................................................. 24

*Symbol Techs., Inc. v. Proxim Inc.*,
    No. 01-801-SLR, 2004 U.S. Dist. LEXIS 14949 (D. Del. July 28, 2004) ....... 23, 31, 35

*Tenneco Auto. Operating Co. v. Visteon Corp.*,
    375 F. Supp. 2d 375 (D. Del. 2005).......................................................................... 24

*Wanlass v. GE*,
    148 F.3d 1334 (Fed. Cir. 1998)................................................................................... 8

**STATUTES**

FED. R. CIV. P. 56(c) .......................................................................................................... 7

iv

Plaintiff McKesson Information Solutions LLC ("McKesson") respectfully submits its answering brief to defendant The TriZetto Group, Inc.'s ("TriZetto") Motion for Partial Summary Judgment of Laches.

## I.    NATURE AND STAGE OF PROCEEDINGS.

On September 13, 2004, McKesson filed this lawsuit against TriZetto for willfully infringing McKesson's U.S. Patent No. 5,253,164 ("the '164 patent").    (D.I. 1.) McKesson filed a First Amended Complaint on October 1, 2004. (D.I. 7.) TriZetto filed an Answer and Counterclaim on November 1, 2004. (D.I. 10.) As its Eighth Affirmative Defense, TriZetto asserted that "[t]he Complaint is barred by any or all of the doctrines of laches, waiver, acquiescence, and estoppel." (*Id.* at 6.) Fact and expert discovery have been completed.

On December 15, 2005, McKesson moved for summary judgment on TriZetto's Eighth Affirmative Defense. (D.I. 160.) TriZetto also moved for summary judgment as to only the laches component of its Eighth Affirmative Defense. (D.I. 163.)

## II.    SUMMARY OF ARGUMENT.

TriZetto is not entitled to summary judgment on the issue of laches for the following reasons:

1.    TriZetto cannot prove as a matter of law that McKessson unreasonably delayed in suing TriZetto or that any unexcused delay lasted more than six years. Genuine issues of fact exist as to when McKesson knew or reasonably should have known of TriZetto's infringement and, therefore, as to when the delay period should start. In addition, the evidence shows that substantial portions of the alleged delay period were

1

excused by events that the Federal Circuit and this Court have recognized as justifying delays in filing suit.

        2.      TriZetto cannot prove as a matter of law that it was materially prejudiced because of McKesson's alleged delay. The evidence does not support a finding of economic prejudice because TriZetto has demonstrated, through its real-world behavior, that its alleged economic losses were unrelated to McKesson's alleged delay and that TriZetto would not have acted any differently if McKesson had sued earlier. The evidence also does not support a finding of evidentiary prejudice because TriZetto has failed to show that any alleged loss of evidence was the result of McKesson's alleged delay and has prevented TriZetto from presenting a full and fair defense.

        Accordingly, the Court should deny TriZetto's motion for summary judgment.

## III.    STATEMENT OF FACTS.

        The asserted '164 patent issued on October 13, 1993, and was originally owned by Health Payment Review, Inc. ("HPR"). (D.I. 162, Ex. 1.) In September of 1997, HBO & Company ("HBOC") announced its acquisition of HPR, which was completed two months later. (Ex. A[1]; D.I. 162, Ex. 14.) In January 1999, McKesson acquired HBOC. (D.I. 162, Ex. 15.) McKesson, consequently, is the current owner of the '164 patent and sells two clinical editing products covered by the '164 patent--ClaimCheck and CodeReview.

        In this case, TriZetto is accused of willfully infringing the '164 patent based on the sale and use of three TriZetto products--Facets, ClaimFacts, and QicLink--all of

---

[1] The lettered exhibits referenced in this brief refer to the exhibits attached to the Declaration of Michael Barlow in Support of plaintiff McKesson Information Solutions LLC's Opposition to Defendant's Motion for Partial Summary Judgment of Laches, filed concurrently herewith.

which include technology covered by the '164 patent. TriZetto obtained the accused Facets and ClaimFacts products through its acquisition of Erisco Managed Care Technologies, Inc. ("Erisco") in October 2000. (D.I. 162, Ex. 17.) TriZetto obtained the accused QicLink product through its acquisition of Resource Information Management Systems, Inc. ("RIMS") in December 2000.[2] (Ex. B.)

Shortly after the issuance of the '164 patent, TriZetto's predecessor Erisco became aware of it.[3] As discussed below, Erisco also became aware of litigation regarding the '164 patent between HPR and its principal competitor GMIS. Specifically, on January 31, 1994, GMIS sued HPR in a declaratory judgment action seeking a verdict that the '164 patent was invalid, not infringed and unenforceable. (D.I. 162, Ex. 4.) This lawsuit prompted HPR to file a patent infringement counterclaim against GMIS on March 25, 1994. (D.I. 162, Ex. 5.) On January 23, 1995, on the eve of trial, the litigation settled                                 **REDACTED**

(D.I. 162, Ex. 6.)

**REDACTED**

---

[2]   Unless a distinction is useful, McKesson will be used to refer to itself and its predecessors HBOC and HPR, and TriZetto will be used to refer to itself and its predecessors Erisco and RIMS.

[3]   Anthony Bellomo, Erisco's former President, testified:

**REDACTED**

(Ex. C at 191-92.)

[4]  Mr. Bellomo, Erisco's former President, testified that

(D.I. 162, Ex. 7 at 193.)                          **REDACTED**

3

**REDACTED**

---

[5]     Mr. Bellomo, Erisco's former President, testified:

**REDACTED**

(D.I. 162, Ex. 7 at 204-05.)

[6]     Mr. Bellomo, Erisco's former President, testified:

**REDACTED**

(D.I. 162, Ex. 9 at 185-86.)

[7]     Mr. Bellomo, Erisco's former President, testified:

**REDACTED**

(D.I. 162, Ex. 7 at 205-06.)

[8]     Mr. Bellomo, Erisco's former President, testified:

**REDACTED**

*(cont'd)*

In September of 1997, HBOC announced that it had entered into an agreement to acquire HPR for approximately $500 million in stock. (D.I. 162, Ex. 14.) HBOC completed the acquisition in December 1997. (Ex. A.) Significant changes in the management of the patentee occurred as a result of the acquisition. For example, Marcia Radosevich, HPR's CEO, left the combined company shortly after the acquisition. (D.I. 162, Ex. 8 at 27.) John Nunnelly, an HBOC General Manager, took over responsibility for HPR's business and operations. (Ex. D at 15-16.) In addition, eleven months after acquiring HPR, HBOC reorganized, creating a new division responsible for, *inter alia*, HPR's CodeReview product line. (Ex. E at 10-11.)

In October of 1998, McKesson announced that it had entered into an agreement to acquire HBOC in a deal worth approximately $15 billion. (D.I. 162, Ex. 15.) The acquisition was completed in January 1999. (Ex. F.) The acquisition resulted in a restructuring of the combined company's management and Board of Directors. (D.I. 162, Ex. 15.) For example, Charles W. McCall, the former President and CEO of HBOC, resigned a few months after the deal was completed. (D.I. 162, Ex. 16.)

**REDACTED**

---

*(cont'd from previous page)*

**REDACTED**

(D.I. 162, Ex. 7 at 207 (emphasis added).)

[9]    Jeffrey Margolis, TriZetto's CEO, testified:

**REDACTED**

(D.I. 162, Ex. 10 at 169 (emphasis added).)

**REDACTED**

---

[10]  Mr. Margolis, TriZetto's CEO, testified:

**REDACTED**

(D.I. 162, Ex. 10 at 90-91 (emphasis added).)

[11]  Mr. Bellomo, Erisco's former President, testified:

**REDACTED**

(D.I. 162, Ex. 7 at 70-71.)

Mr. Margolis, TriZetto's CEO, similarly testified:

**REDACTED**

(D.I. 162, Ex. 10 at 39-40 (emphasis added).)

**REDACTED**

IV.    **THE COURT SHOULD DENY TRIZETTO'S MOTION BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACT AND TRIZETTO CANNOT PROVE LACHES AS A MATTER OF LAW.**

A.    **Standard of Review on Summary Judgment.**

Summary judgment is proper only if "there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In determining whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of the opponent." *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307 (Fed. Cir. 1998).

In this case, TriZetto is not entitled to summary judgment because it cannot establish any of the requisite elements of laches as a matter of law.

B.    **TriZetto Cannot Prove that McKesson Unreasonably Delayed in Filing Suit.**

The first essential element that a defendant-alleged infringer must prove to establish laches is that the plaintiff-patentee unreasonably and inexcusably delayed in

---

[12]    Mr. Bellomo, Erisco's former President and TriZetto's current Executive Vice President, testified .                                                                                                        :

**REDACTED**

(Ex. G at 18-19. (emphasis added).)

7

filing suit against the defendant. *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992). The period of delay is measured from the time the plaintiff knew or reasonably should have known of the defendant's infringement to the date of suit. *See Wanlass v. GE*, 148 F.3d 1334, 1337-38 (Fed. Cir. 1998). The period, however, cannot begin prior to issuance of the patent. *Id.*

Whether a patentee unreasonably and inexcusably delayed must be determined on a case-by-case basis. *See Aukerman*, 960 F.2d at 1032 (holding that whether a period of delay is "deemed unreasonable and inexcusable has no fixed boundaries but rather depends on the circumstances"). Thus, the "court must look at all of the particular facts and circumstances of each case and weigh the equities of the parties." *Id.*

"A court must also consider and weigh any justification offered by the plaintiff for its delay." *Id.* at 1033. The Federal Circuit has repeatedly recognized numerous events as excusing a patentee's delay in filing suit, including other litigation, negotiations with the accused, poverty and illness under limited circumstances, wartime conditions, extent of infringement, and dispute over ownership of the patent. *See id.* (citing cases). Additionally, this Court has found that management changes in the patentee and economic feasibility justify a delay in bringing suit. *See Genzyme Corp. v. Atrium Med. Corp.*, No. 00-958-MPT, 2003 U.S. Dist. LEXIS 12784, at *17 (D. Del. July 22, 2003). (D.I. 162, Ex. 22.)

Although an unexcused delay of more than six years gives rise to a rebuttable presumption of unreasonable delay and prejudice, the patentee need only raise a genuine issue of fact regarding the reasonableness of the delay or lack of prejudice to overcome the presumption. *See Aukerman*, 960 F.2d at 1038 ("By raising a genuine issue

8

respecting either factual element of a laches defense, the presumption of laches is overcome."). Moreover, the burden of persuasion always remains with the alleged infringer. *See id.* at 1038-39 ("[W]e reiterate that, at all times, the defendant bears the ultimate burden of persuasion of the affirmative defense of laches.").

TriZetto cannot prove as a matter of law that McKesson unreasonably delayed, or that any unexcused period of delay lasted more than six years, because (1) there is a genuine issue of fact as to when the period of delay should start; and (2) the facts show that substantial portions of the alleged delay period were excused.

**1.    A Disputed Issue of Fact Exists as to When the Alleged Period of Delay Commenced.**

TriZetto asserts that the delay period should begin in October 1993, when the '164 patent issued, because McKesson's predecessor HPR allegedly knew or reasonably should have known at that time that TriZetto's predecessors, Erisco and RIMS, were selling products with infringing clinical editing functionality. The evidence does not support such an early start date.

TriZetto has presented no evidence that McKesson or its predecessors were aware that RIMS was selling any product that performed clinical editing, let alone infringed the '164 patent, prior to TriZetto's acquisition of RIMS in December 2000.

REDACTED

9

**REDACTED**

(D.I. 168, Exhs. 7, 8 & 12.)  Neither these documents nor Dr. Radosevich's testimony demonstrate or suggest that HPR knew or reasonably should have known that RIMS was selling a clinical editing product, much less an infringing clinical editing product.

The two 1989 documents were authored four years before the '164 patent issued and merely show :

**REDACTED**

The documents do not indicate whether as of 1989, RIMS was considering other clinical editing products or what, if anything, HPR knew in this regard.  Moreover, the 1989 documents do not shed any light on what, if anything, HPR knew regarding RIMS's products as of October 1993.

The cited testimony from Dr. Radosevich also does not support commencing the delay period in October 1993.   **REDACTED**

does not show (1) what she knew about RIMS's claims processing software; (2) whether she had any information from which to determine whether RIMS offered clinical editing functionality, let alone whether such functionality infringed the '164 patent; and (3) assuming that she even possessed such knowledge or

---

[13]  Claims processing software may not contain clinical editing functionality, and the vendors of claims processing software may not compete with the vendors of clinical editing software.

**REDACTED**

(D.I. 162, Ex. 7 at 15-16.)

10

information, when she acquired that knowledge or information.

**REDACTED**

Thus, the
evidence does not support, and in fact refutes, TriZetto's claim that HPR had actual or
constructive knowledge of RIMS's infringement as of October 1993.

As to TriZetto's other predecessor Erisco, TriZetto's argument that the delay
period started in October 1993 is belied by the evidence.

**REDACTED**

Instead, TriZetto asserts
that HPR knew of Erisco's allegedly infringing activities because HPR knew that Erisco
was offering clinical editing functionality.   TriZetto, however, fails to present any
evidence as to what, if anything, HPR knew about Erisco's clinical editing functionality
that would have indicated that Erisco was infringing the '164 patent.

---

[14]    At her November 1994 deposition in the *GMIS v. HPR* litigation, Dr. Radosevich testified:

**REDACTED**

(Ex. H at MCK 039730.)

[15]    Dr. Radosevich, testified in this case:

**REDACTED**

(Ex. I at 256.)

11

In addition, to the extent that TriZetto contends that HPR had sufficient grounds to sue Erisco for infringement based solely on its knowledge that Erisco sold clinical editing functionality, TriZetto's assertion is at odds with its non-infringement positions in this case. In particular, TriZetto has asserted that the only way to establish infringement is to compare the software code of the accused products with the '164 patent. (D.I. 153 at 13-23.) In fact, although TriZetto's employees, customers, and Rule 30(b)(6) designees on the accused products have conceded that the accused products practice the claims of the '164 patent, TriZetto has argued that such infringement admissions do not even create a triable issue of fact as to its infringement. (*Id.* at 18 n.4.) If one cannot analyze infringement without looking at the software code, as TriZetto contends, TriZetto cannot establish that HPR reasonably should have known that Erisco was infringing based solely on HPR's knowledge of the fact that Erisco was selling clinical editing functionality.

Because there are genuine issues of fact regarding the proper date from which the delay period should be measured, TriZetto cannot prove as a matter of law that McKesson unreasonably delayed in filing suit.

### 2.    Substantial Portions of the Alleged Delay Period Were Excused.

TriZetto also cannot prove unreasonable delay as a matter of law because the evidence supports a finding that substantial portions of the alleged delay period are excused. In particular, the undisputed facts show that the alleged delay period must be reduced by at least about five years as a result of HPR's patent litigation with GMIS (1 year),                     REDACTED                     , and the acquisitions of HPR by HBOC and HBOC by McKesson (16+ months). It is also questionable whether the first several years after the '164 patent issued should be included in the delay period                     REDACTED

12

**REDACTED**

(a)    The *GMIS v. HPR* Litigation Reduces the Alleged Delay
       Period.

As mentioned in *Aukerman*, the Federal Circuit has held that the delay period is

tolled if the patentee is engaged in other litigation during that period and the alleged

infringer knows of such litigation. *See Aukerman*, 960 F.2d at 1033; *see also Jamesbury*

*Corp. v. Kitton Indus. Prods., Inc.*, 839 F.2d 1544, 1552 (Fed. Cir. 1988), *overruled on*

*other grounds by Aukerman*. In this case, it is undisputed that McKesson's predecessor,

HPR, was involved in the *GMIS v. HPR* litigation from January 1994 to January 1995.

**REDACTED**

(D.I. 162, Ex. 7 at 197.)

---

[16]    Mr. Bellomo, Erisco's former President, testified:

**REDACTED**

(D.I. 162, Ex. 7 at 204-05.)

13

TriZetto contends that despite Erisco's actual knowledge, HPR was required to give Erisco notice of the *GMIS v. HPR* litigation and its intent to sue Erisco thereafter simply because          **REDACTED**

The Federal Circuit, however, emphasized that "a notice requirement is not to be rigidly imposed," even where there was prior contact between the patentee and alleged infringer. *Aukerman*, 960 F.2d at 1039 (finding that district court erred in requiring patentee to give defendant notice of other litigation, even though patentee and defendant had been engaged in patent licensing discussions before the other litigation commenced). "If a defendant is, for example, aware of the litigation from other sources, it would place form over substance to require a specific notice." *Id.*

As discussed above, Erisco knew of the *GMIS v. HPR* litigation,

**REDACTED**          Under the circumstances, requiring notice merely because HPR and Erisco had discussed a possible product sale unrelated to any patent and several years before the '164 patent issued would violate the Federal Circuit's prohibition against rigidly applying a notice requirement.

Accordingly, the one-year period in which HPR was involved in the *GMIS v. HPR* litigation should not be included in the calculation of any delay period.

---

[17]    As indicated by HPR's former President and CEO, Marcia Radosevich,

**REDACTED**

(D.I. 162, Ex. 7 at 193.)

14

**(b)    The Patent Negotiations Between McKesson and TriZetto Reduce the Alleged Delay Period.**

Negotiations between the patentee and alleged infringer regarding the patent also excuse delay in filing suit. *See Aukerman*, 960 F.2d at 1033 ("Excuses which have been recognized ... include ... negotiations with the accused . . . ."); *RCA Corp. v. Data General Corp.*, 701 F. Supp. 456, 477 (D. Del. 1988) (finding that patentee's efforts to license patent to alleged infringer "provides a justifiable excuse for the eleven year delay in commencing this suit"), *aff'd*, 887 F.2d 1056 (Fed. Cir. 1989); *Lemelson v. Wang Labs., Inc.*, 874 F. Supp. 430, 435 (D. Mass. 1994) ("I find that the ongoing correspondence between the parties, the tone of the initial correspondence, and [Plaintiff's] preoccupation with ongoing patent litigation excuses its admittedly leisurely efforts to vindicate its claims against [Defendant.]")

**REDACTED**

---

[18]    Mr. Bellomo testified:

**REDACTED**

*(cont'd)*

15

**REDACTED**

---
*(cont'd from previous page)*

**REDACTED**

(D.I. 162, Ex. 7 at 70-71.)

Similarly, Mr. Margolis testified:

**REDACTED**

(D.I. 162, Ex. 10 at 39-40 (emphasis added).)

[19]    Mr. Margolis testified:

**REDACTED**

(D.I. 162, Ex. 10 at 162-63.)

16

**REDACTED**                    (Ex. J at TRZ 044801.)


First, TriZetto's reliance on *Giese v. Pierce Chem. Co.*, 29 F. Supp. 2d 33 (D. Mass. 1998), for this argument is misplaced. *Giese* only stands for the proposition that negotiations with a third party should not excuse a patentee's delay in suing the defendant. *See id.* at 40 ("The fact that [patentee] was negotiating with [a third-party German company] for [a] non-exclusive licensing of his technology has no bearing on his dispute with [defendants] over their potential infringement. . . . Third party negotiations simply do not represent an attempt to resolve the dispute with the defendants short of litigation--the main justification for tolling during negotiations."). Because the negotiations in this case were between McKesson and TriZetto, *Giese* is inapposite.


**REDACTED**


---

[20]    Mr. Margolis testified:

**REDACTED**

(Ex. K at 41.)

**REDACTED**

(Ex. L at TRZ 839298.)

Accordingly,

should not be included in any calculation of the alleged delay period.

       (c)    **HBOC's Acquisition of HPR and McKesson's
Acquisition of HBOC Reduce the Alleged Delay Period.**

A change in management of the patentee due to merger or acquisition has been

recognized as a valid reason for delay. *See Genzyme*, 2003 U.S. Dist. LEXIS 12784 at

*17. In *Genzyme*, this Court found that a patentee's delay in filing suit was justified by

the fact that it "underwent a change in management during the relevant time period. As a

result, litigation remained a low priority until the 'dust settled.'" *Id.*

---

[21]   Mr. Bellomo testified:

**REDACTED**

(D.I. 162, Ex. 7 at 71-72.)

[22]   Carolyn Wukitch, McKesson Senior Vice President, testified:

**REDACTED**

(Ex. E at 175.)

18

In this case, the patentee underwent two substantial changes in management as a result of two significant mergers. In September of 1997, HBOC announced that it had agreed to acquire then-patentee HPR for approximately $500 million in stock. (D.I. 162, Ex. 14.) HBOC completed the acquisition in December 1997. (Ex. A.) Significant changes in the management of the patentee occurred as a result of the acquisition. For example, Marcia Radosevich, HPR's CEO, left the combined company shortly after the acquisition. (D.I. 162, Ex. C at 27.) John Nunnelly, an HBOC General Manager, took over responsibility for HPR's business and operations. (Ex. D at 15-16.) In addition, eleven months after acquiring HPR, HBOC reorganized, creating a new division responsible for, *inter alia*, HPR's CodeReview product line. (Ex. E at 10-11.)

In October of 1998, McKesson announced that it had agreed to acquire HBOC in a deal worth approximately $15 billion. (D.I. 162, Ex. 15.) The acquisition was completed in January 1999. (Ex. F.) The acquisition resulted in a restructuring of the combined company's management and Board of Directors. (D.I. 162, Ex. 15.) For example, Charles W. McCall, the former President and CEO of HBOC, resigned a few months after the deal was completed. (D.I. 162, Ex. 16.)

The documentary and testimonial evidence demonstrates that the HBOC-HPR and McKesson-HBOC acquisitions created substantial internal business issues regarding the integration of businesses, including their product lines, operations, and customer bases.[23]

---

[23]  McKesson's 10-K for the year 1999 discussed some of these business issues:

> McKesson Integration of acquisitions, including the HBOC Transaction, involves a number of special risks. Such risks include:

> the diversion of management's attention to the assimilation of the operations of businesses the Company has acquired;

* * * * *

*(cont'd)*

REDACTED

(Ex. O at 148.)

Because of the significant changes occurring within McKesson from September 1997 through 1999 as a result of these two acquisitions, any alleged delay in filing suit is excused for this period to allow the "dust to settle."

###### (d)     Genuine Issues of Fact Exist as to the Economic Appropriateness of Suing Erisco in the Mid-1990s.

This Court and others have found that a patentee may reasonably delay filing suit against an alleged infringer until litigation makes clear economic sense. *See Genzyme*, 2003 U.S. Dist. LEXIS 12784, at *17 ("Waiting until litigation makes clear economic sense is reasonable."); *Ill. Tool Works Inc. v. Grip-Pak, Inc.*, 725 F. Supp. 951, 953 (N.D. Ill. 1989) (holding that it was not unreasonable to delay filing suit until the alleged infringer achieved significant commercial success), *aff'd*, 906 F.2d 679 (Fed. Cir. 1990);

---

*(cont'd from previous page)*

the assimilation and retention of the personnel of the acquired companies;

(Ex. M.)

*Autoclave Eng'rs, Inc. v. Duriron Co.*, 190 U.S.P.Q. 125, 130 (E.D. Pa. 1976) (excusing plaintiff's five-year delay in bringing suit where "[b]ecause of the expense involved, plaintiff did not institute this action until after [a customer] contract had been awarded to [defendant], when litigation became economically justified.").

In this case, the evidence raises triable issues of fact as to whether it made clear economic sense for HPR to sue Erisco for infringement during the first several years following issuance of the '164 patent.

**REDACTED**

(D.I. 168, Ex. 5 at 186. *See also* D.I. 168, Ex. 11

**REDACTED**

(Ex. N at MCK 020557; Ex. P at MCK 005925.) A December 1998 report published by Gartner, Inc. similarly stated that Erisco was making efforts to shift focus away from its indemnity oriented clients served by Facts to the larger managed care market with its Facets product. (Ex. Q at TRZ 835967.)

**REDACTED**

it was

21

reasonable for McKesson to wait to pursue TriZetto regarding its infringement until that course of action made clear economic sense. Accordingly, TriZetto cannot show that as a matter of law McKesson's delay in filing suit was unreasonable.

**C.    TriZetto Cannot Prove that It Has Been Materially Prejudiced Because of McKesson's Alleged Delay in Filing Suit.**

In addition to failing to prove the first essential element of laches, TriZetto fails to prove as a matter of law the second essential element of laches--that it has suffered material prejudice because of and as a result of McKesson's alleged delay. Specifically, TriZetto cannot establish that McKesson's alleged delay caused TriZetto to suffer economic or evidentiary prejudice.

**1.    No Economic Prejudice Exists.**

In this case, TriZetto asserts that it has been economically prejudiced by McKesson's alleged delay because (1) it made substantial investments in the accused products and would have sought non-infringing alternatives if notified of infringement earlier; (2) the potential damages in this case are greater than the potential damages had McKesson sued earlier; and (3) if McKesson had threatened Erisco before TriZetto acquired Erisco, TriZetto would have taken steps to mitigate its potential liability. (D.I. 166 at 15-17.) None of these alleged losses constitute economic prejudice because TriZetto cannot meet the evidentiary requirements of this Court and the Federal Circuit. TriZetto cannot establish the requisite nexus between such losses and the alleged delay or that such losses are something other than the type of losses normally associated with a finding of infringement liability. Additionally, TriZetto's actions and the testimony of TriZetto's officers have unquestionably shown that TriZetto would not have behaved any differently no matter when McKesson brought its patent infringement suit.

### (a)   TriZetto Cannot Show a Nexus Between Its Alleged Losses and Any Alleged Delay in Filing Suit.

To prove economic prejudice, an accused infringer's alleged financial losses must have an "explicitly proven nexus to the patentee's delay in filing suit." *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1294 (Fed. Cir. 1992). In *Hemstreet*, the defendant spent millions of dollars on research and development, marketing, and expansion of manufacturing facilities. *Id.* at 1293-94. Nevertheless, the Federal Circuit found that such expenditures were not sufficient to prove economic prejudice:

> It is not enough that the alleged infringer changed his position -- i.e., invested in production of the allegedly infringing device. The change must be because of and as a result of the delay, not simply a business decision to capitalize on a market opportunity.

*Id.* at 1294. *See also Genzyme*, 2003 U.S. Dist. LEXIS 12784, at *19. ("[M]ere proof of investment in research and development and increased sales, in and of themselves, are not evidence of economic prejudice.").

More than mere investment and business expansion related to the accused product is needed in order to show economic prejudice. *See Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1371-72 (Fed. Cir. 2001) ("[T]he hiring of new employees, modification of equipment, and engagement in sales and marketing activities related to the [accused product] are damages normally associated with a finding of infringement and do not constitute the type of damages necessary for a finding of economic prejudice.").

The law is clear and establishes that      REDACTED

          REDACTED          does not establish economic prejudice. *See Symbol Techs., Inc. v. Proxim Inc.*, No. 01-801-SLR, 2004 U.S. Dist. LEXIS 14949, at *17 (D. Del. July 28, 2004) ("Simply that the infringer expended capital

in pursuit of its infringing activities does not support a finding of causal connection."). (D.I. 162, Ex. 24.)

TriZetto also argues that its potential damages in this case are greater than they would have been if McKesson had sued earlier. Essentially, TriZetto contends that it has suffered economic prejudice because it has continued to infringe and therefore may be liable for more damages. Financial losses that are merely attributable to an infringement finding are not sufficient to show economic prejudice. *See State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1066 (Fed. Cir. 2003). "Such damages or monetary losses are not merely those attributable to a finding of liability for infringement. Economic prejudice would then arise in every suit. The courts must look for a change in the economic position of the alleged infringer during the period of delay." *Id.* (quoting *Aukerman*, 960 F.2d at 1033). This Court has similarly found that "courts cannot simply infer economic prejudice from the possibility of damages pursuant to a finding of liability for infringement." *Tenneco Auto. Operating Co. v. Visteon Corp.*, 375 F. Supp. 2d 375, 381 (D. Del. 2005).

That TriZetto has expanded its customer base and has sold more infringing products are the product of business decisions to capitalize on market opportunities and do not reflect changes in TriZetto's economic position made "because of and as a result of" McKesson's alleged delay. *See Hemstreet*, 972 F.2d at 1294. Indeed, as discussed below,

## REDACTED

(*See infra* pp. 26-31.) Thus, TriZetto cannot reasonably argue that any changes in its economic position were made because of and as a result of

McKesson's alleged delay. *See Meyers v. Brooks Shoe, Inc.*, 912 F.2d 1459, 1463 (Fed. Cir. 1990), *overruled on other grounds by Auckerman*, 960 F.2d 1020 (Fed. Cir. 1992) (in reversing summary judgment of laches, the Court found that the defendant failed to show economic prejudice because evidence indicated that the defendant would have continued its development and sales activities regardless of what the plaintiff "did or did not do").[24]

The evidence also does not support TriZetto's argument that

**REDACTED**

**REDACTED**

(Ex. G at 220-221 (emphasis added).)

Despite TriZetto's specific knowledge of the risk associated with the '164 patent, it did nothing whatsoever to mitigate that risk                **REDACTED**

_____

[24] TriZetto's reliance on *Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc.*, 270 F.3d 298 (6th Cir. 2001) is misplaced. *Herman Miller* involved a trade dress case and applied a different standard for laches than the one followed by the Federal Circuit and this Court in patent cases. *Id.* at 320-21.

**REDACTED**

      (b)    **TriZetto Would Not Have Acted Differently Even If McKesson Had Sued Earlier.**

TriZetto's assertion that it would have sought non-infringing alternatives if it had been sued earlier is belied by the fact that TriZetto never pursued any non-infringing alternatives,

**REDACTED**

_____

[25] Mr. Luftig, Erisco's Head of Facets Development, testified:

**REDACTED**

_(cont'd)_

26

REDACTED

---

*(cont'd from previous page)*

REDACTED

(D.I. 162, Ex. 11 at 45-46.)

[26]   Mr. Bellomo, Erisco's former President, testified:

REDACTED

(D.I. 162, Ex. 7 at 205-07 (emphasis added).)

27

REDACTED

(*Id.* at 185-86 (emphasis added).)

REDACTED

(D.I. 162, Ex. 10 at 164.)

REDACTED

(*Id.* at 169.)  Given that TriZetto did not even pursue non-infringing alternatives after this

litigation was filed, TriZetto's assertion that it would have done so if notified of

infringement earlier is not credible or persuasive. *See Izumi Prods. Co. v. Koninklijke*

28

*Philips Elecs. N.V.*, 315 F. Supp. 2d 589, 613 (D. Del. 2004) (in denying defendant's motion for summary judgment of laches, finding unpersuasive defendant's claim that it would have switched to a non-infringing alternative had it received notice of infringement earlier because defendant did not switch to a non-infringing alternative after the lawsuit was filed), *aff'd*, 140 Fed. Appx. 236 (Fed. Cir. 2005).

**REDACTED**

(Ex. G at 18-19 (emphasis added).)

Courts have found that an alleged infringer's failure to modify its behavior in the face of potential or actual litigation shows that the alleged infringer would not have done so if suit had been brought earlier. *See Genzyme*, 2003 U.S. Dist. LEXIS 12784, at *20 (in denying defendant's post-trial motion on defense of laches, finding that "[defendant's] knowledge of its potential infringement and its continued infringement after suit reinforces [plaintiff's] position" that defendant did not suffer economic prejudice); *James River Corp. of Va. v. Hallmark Cards*, 915 F. Supp. 968, 978 (E.D. Wis. 1996) ("Where no evidence shows the infringer stopped selling the allegedly infringing product even

after the patentee filed the complaint, a court may draw the inference that the infringer would have continued to sell the infringing product even if the patentee had brought suit earlier. . . .  Similarly, where an alleged infringer does not submit evidence 'that they curtailed design and development' of an infringing product once a patentee filed suit, it is reasonable to infer the infringer would not have acted differently had the patentee sued earlier.") (citation omitted)).

TriZetto's failure to mitigate its potential losses under any circumstance clearly shows that even if suit had been brought earlier, TriZetto would not have made or considered making any changes to the accused products or taking any other actions to try to avoid infringement.

2.    **TriZetto has Experienced no Evidentiary Prejudice Because of the Purported Delay.**

TriZetto is also unable to establish that it suffered evidentiary prejudice as a result of McKesson's alleged delay in filing suit.  Evidentiary prejudice requires proof that the defendant is unable "to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts." *Aukerman*, 960 F.2d at 1033. Merely showing of loss of memory or documents is not enough. *See James River*, 915 F. Supp. at 979-80.

> Laches cannot be found unless the party asserting it demonstrates how unavailable evidence would be important to the defense. . . .
>
> . . .
>
> . . . [L]oss of memory, witnesses, or documentary evidence alone does not establish prejudice. Instead, [the accused infringer] must show an inability to present a full and fair defense... While [the accused infringer] must understandably be frustrated by its inability to fully develop the factual record, laches requires more than inability to obtain evidence the party

> ideally wants. The risk of loss of evidence is inevitably a hazard of complex litigation.

*Id.*

Where "a deposed witness has indicated that he does not have a recollection of a particular fact, the lapse in memory is susceptible to more than one reasonable inference; in the absence of other evidence to support defendant's contention, its alleged evidentiary prejudice is no more likely than not." *Symbol Techs.*, 2004 U.S. Dist. LEXIS, at *15. "Like the absence of memory by a witness, the absence of a document that was once known to exist, without more, does not give rise to an inference of evidentiary prejudice." *Id.* at *16.

TriZetto cannot show as a matter of law that McKesson's alleged delay in filing suit has prevented TriZetto from being able to present a full and fair defense on the merits. It is clear that the vast bulk of relevant evidence in this case is still available and that TriZetto has had ample opportunities to discover that evidence. All named inventors of the '164 patent are still alive and were extensively deposed by TriZetto in this litigation. TriZetto deposed inventors Holloway, Hertenstein, and Goldberg for two days each, and inventor Dugan for one day. The testimony of these inventors was used throughout TriZetto's expert reports. TriZetto also extensively deposed the former President and CEO of HPR, Marcia Radosevich.

TriZetto also has had the benefit of receiving during discovery numerous documents from the earlier *GMIS v. HPR* litigation, which involved many issues similar to those raised in the present litigation. The documents that McKesson produced to TriZetto from this earlier litigation include: the parties' pretrial memorandums; various motions for summary judgment and the related opposition motions; the expert reports on

31

damages, infringement, prior art, technical aspects of the technology, and the patent application process; requests for admissions; interrogatory responses; requests for production of documents and things; and depositions of the named inventors and various executives of GMIS and HPR, including Dr. Radosevich.

In *RCA Corp. v. Data General Corp.*, this Court found that no material prejudice resulted from the plaintiff's delay in filing suit because the defendant had the benefit of testamentary and documentary evidence from prior litigation between the plaintiff and a third party regarding the asserted patent:

> In addition to rebutting the presumption of unreasonable delay, the Court also finds that [plaintiff] has rebutted the presumption of material prejudice due to the delay. First, [plaintiff's] decision to litigate the [other infringement action] prior to this suit may have actually benefited [defendant]. Due to the similar issues raised in both actions, [defendant] was able to rely on the [other infringement action's] record for extensive discovery and assistance in plotting its trial strategy. I conclude there was available to [defendant] sufficient testamentary and documentary evidence to defend this suit. Additionally, I find no evidence that [plaintiff's] filing of this suit altered the manner in which [defendant] conducted its business.

701 F. Supp. at 477. Like the defendant in *RCA*, TriZetto has benefited from the testamentary and documentary evidence from the *GMIS v. HPR* litigation, as demonstrated by TriZetto's use of such evidence in its motions in this case (D.I. 168, Exhs. 11 & 12) and during discovery. (Ex. R at 293-94 (using inventor Holloway's prior deposition testimony at his deposition in this case); Ex. S at 184 (using inventor Hertenstein's prior deposition testimony at his deposition in this case).)

TriZetto asserts that documents from the parties and various witnesses were lost or destroyed over the years. TriZetto, however, has failed to develop a clear record regarding what documents were lost or destroyed, when they were lost or destroyed, or most importantly, how the loss of such documents has prevented TriZetto from presenting a full and fair defense. For example, although Dr. Radosevich testified that

32

REDACTED

(Ex. I at 15-16)

REDACTED

27

---

[21]   Dr. Egdahl testified:

REDACTED

(Ex. T at 171-72.)

34

**REDACTED**

TriZetto also fails to show evidentiary prejudice with regard to Dr. Goldberg's documents.

**REDACTED**

TriZetto's complaint that McKesson's alleged delay has prejudiced its ability to obtain prior art evidence from third parties is also without merit. That TriZetto was unable to obtain documents from three entities does not evidence any prejudice from McKesson's alleged delay. TriZetto has not presented any evidence that those entities would have had responsive documents if McKesson had sued earlier.

TriZetto's assertion that losses of memory and witnesses support evidentiary prejudice is also unfounded. As to the allegedly unavailable witnesses, TriZetto's argument is based solely on the fact that some individuals with potentially relevant information no longer work for McKesson. Such "unavailability" hardly supports a finding of evidentiary prejudice since TriZetto could have tried to located these individuals and deposed them in this case. TriZetto's failure to do so has nothing to do with McKesson's alleged delay.

34

In addition, TriZetto's claim of evidentiary prejudice based on lapses in memory fails because TriZetto has no evidence indicating that any of the cited lapses in memory have prevented TriZetto from presenting a fair and full defense in this case. As this Court explained, where "a deposed witness has indicated that he does not have a recollection of a particular fact, the lapse in memory is susceptible to more than one reasonable inference; in the absence of other evidence to support defendant's contention, its alleged evidentiary prejudice is no more likely than not." *Symbol Techs.*, 2004 U.S. Dist. LEXIS 14949, at *15. For example, TriZetto deposed Dr. Hertenstein and Dr. Goldberg for two days each on many topics and obtained substantive testimony on most, if not all, of those subjects. That the witnesses could not remember particular facts in response to some of the many hundreds of questions asked during their two-day depositions is not surprising or indicative of any evidentiary prejudice.

Finally, TriZetto fails to show how the fact that McKesson does not have the original CodeReview clinical editing product that existed in 1988, when the '164 patent was applied for, has prevented TriZetto from presenting a full and fair defense. TriZetto asserts that the original CodeReview product would be useful to only two issues: (1) "understanding the structure of the claims in the patent," and (2) "the understanding of those of skill in the art at the time the patent was filed." (D.I. 168 at 21-22.) With regard to the first issue, TriZetto cites no authority for the proposition that extrinsic evidence in the form of the patent's commercial embodiment is relevant to understanding the "structure of the claims" or to construe any claim element. As to the second issue, TriZetto does not explain what a copy of the original CodeReview product would supposedly reveal about the understanding of those skilled in the art at the time the '164

35

patent was applied for or why such information is necessary to TriZetto's case. In addition, as to both issues, TriZetto fails to show that the original product would provide relevant information that is not duplicative of the information already disclosed in the '164 patent, which includes a detailed description of the preferred embodiment, flowcharts, source code, examples of CodeReview in operation, and rules and database descriptions. (D.I. 7, Ex. A.)

Given the substantial amounts of relevant information that is available and has been discovered in this case, TriZetto cannot establish that it has suffered evidentiary prejudice because of McKesson's alleged delay in filing suit.

## V.    CONCLUSION.

For the reasons set forth herein, McKesson respectfully requests that the Court deny TriZetto's motion for summary judgment on its defense of laches.

By: _____
Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff McKesson
Information Solutions LLC

OF COUNSEL:
Jeffery G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500

DATED: January 10, 2006

36

## CERTIFICATE OF SERVICE

I, Michael A. Barlow, hereby certify that on January 10, 2006, I electronically filed Plaintiff McKesson Information Solutions LLC's Answering Brief in Opposition to Defendant's Motion for Partial Summary Judgment of Laches and Declaration of Michael A. Barlow using CM/ECF, which will send notification of such filing to those designated below, and that I served the following persons in the manner listed:

**VIA CM/ECF**
Rodger D. Smith, II, Esq.
MORRIS NICHOLS ARSHT
  & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899

**HAND DELIVERY**
Jack B. Blumenfeld, Esq.
MORRIS NICHOLS ARSHT
  & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899

Michael A. Barlow (ID No. 3928)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000
mbarlow@skadden.com