IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MCKESSON INFORMATION SOLUTIONS LLC,  )
                                       )
            Plaintiff,         )    CIVIL ACTION NO. 04-1258-SLR
                                       )
            v.               )
                                       )    **REDACTED PUBLIC VERSION**
THE TRIZETTO GROUP, INC.,              )
                                       )
            Defendant.     )
                                       )

## PLAINTIFF MCKESSON INFORMATION SOLUTIONS LLC'S
## ANSWERING BRIEF IN OPPOSITION TO
## THE TRIZETTO GROUP INC.'S MOTION FOR
## SUMMARY JUDGMENT OF NON-INFRINGEMENT

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff McKesson
  Information Solutions LLC

OF COUNSEL:
Jeffery G. Randall
David W. Hansen
Michael C. Hendershot
Jon V. Swenson
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500

DATED: January 10, 2006
Redacted Version Filed: January 17, 2006

# TABLE OF CONTENTS

I.      NATURE AND STAGE OF THE PROCEEDING.................................................. 1

II.     SUMMARY OF ARGUMENT .......................................................................... 2

III.    SUMMARY OF RELEVANT FACTS ................................................................ 4

        A.      The '164 Patent And TriZetto's Accused Systems ..................................... 4

        B.      TriZetto's Customers, Executives, And Corporate Designees Have
                Admitted The Accused Systems Infringe Every Asserted Claim Of
                The '164 Patent ....................................................................................... 6

        C.      McKesson's Experts Have Demonstrated That TriZetto Infringes
                Under The Applicable Precedent ............................................................... 9

        D.      TriZetto's Own Expert Testified That Many Of The Means-Plus-
                Function Elements Underlying TriZetto's Motion Are Present In
                Each Accused Product............................................................................ 11

IV.     SUMMARY JUDGMENT STANDARD............................................................ 12

V.      TRIZETTO'S MOTION SHOULD BE DENIED BECAUSE THE
        ACCUSED SYSTEMS INFRINGE THE ASSERTED CLAIMS OF THE
        '164 PATENT ............................................................................................... 13

        A.      The Record Evidence Establishes That TriZetto's Accused Systems
                Infringe The Asserted Claims ................................................................ 13

                1.      McKesson's experts have demonstrated TriZetto's
                        infringement of every element of the asserted claims................... 14

                2.      TriZetto's contention that there is no evidence regarding the
                        means-plus-function elements ignores TriZetto's expert's
                        testimony that the Accused Systems satisfy most of those
                        elements.................................................................................. 18

                3.      TriZetto misrepresents what an "algorithm" is and advances
                        an improper standard for structural comparison. .......................... 19

        B.      TriZetto's Motion Is Based On A Mischaracterization Of The Law
                And The Court's September 20, 2005 Order, Both Of Which
                Support McKesson's Claim Construction................................................. 22

                1.      The Federal Circuit and this Court have held that "software"
                        can satisfy the "structure" aspect of section 112(6). ..................... 22

      2.     McKesson's identification of corresponding structure for the claimed means-plus-function elements is supported by the applicable precedent............................................................................... 24

    C.     TriZetto's Motion Is Based On An Incorrect Application Of Section 112(6) To The Steps Of Method Claims That Are Not Written In Means-Plus-Function Format.................................................................. 27

VI.    TRIZETTO'S MOTION SHOULD BE DENIED BECAUSE THE ACCUSED SYSTEMS INCLUDE A "PREDETERMINED DATABASE" AND THEY ASCERTAIN WHETHER CLAIMS CONTAIN A "PLURALITY OF MEDICAL SERVICE CODES".......................................... 28

    A.     TriZetto's Construction Of "Predetermined Database" Is Wrong And The Undisputed Evidence Demonstrates That The Accused Systems Infringe Under Any Reasonable Construction Of That Term ......................................................................................................... 29

    B.     TriZetto's Construction Of "Ascertaining Whether A Claim Contains A Plurality Of Medical Service Codes" Is Wrong And The Undisputed Evidence Demonstrates That The Accused Systems Infringe Under Any Reasonable Construction Of That Term................... 31

    C.     At A Minimum, Disputed Issues of Fact Exist Regarding Direct Infringement Under TriZetto's Incorrect Rewriting Of These Claim Terms.................................................................................................... 32

    D.     TriZetto's Proffer Of Three Single-Page Declarations Does Not Support Summary Judgment, Particularly In View Of The Declarants' Contrary Deposition Testimony ........................................... 36

VII.   CONCLUSION................................................................................................. 38

## TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

*A.B. Dick Co. v. Burroughs Corp.,*
   713 F.2d 700 (Fed. Cir. 1983)..................................................................................33

*ACTV, Inc. v. Walt Disney Co.,*
   346 F.3d 1082 (Fed. Cir. 2003)..............................................................................30

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986)...............................................................................................13

*Budde v. Harley Davidson, Inc.,*
   250 F.3d 1369 (Fed. Cir. 2001)..............................................................................25

*Fonar Corp. v. General Elec. Co.,*
   107 F.3d 1543 (Fed. Cir. 1997)..............................................................................20

*Harris Corp. v. Ericsson Inc.,*
   417 F.3d 1241 (Fed. Cir. 2005)..............................................................................25

*In re Donaldson Co.,*
   16 F.3d 1189 (Fed. Cir. 1994)................................................................................17

*Itron, Inc. v. Benghiat,*
   169 F. Supp. 2d 1073 (D. Minn. 2001) ..................................................................19

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986)..........................................................................................12, 13

*Medical Instrumentation and Diagnostic Corp. v. Elekta AB,*
   344 F.3d 1205 (Fed. Cir. 2003)........................................................... *passim*

*Northern Telecom Ltd. v. Samsung Elecs. Co.,*
   215 F.3d 1281 (Fed. Cir. 2000)..........................................................................29, 31

*Pa. Coal Ass'n v. Babbit,*
   63 F.3d 231 (3d Cir. 1995)......................................................................................13

*Pfizer, Inc. v. Teva Pharms. USA, Inc.,*
   2005 U.S. App. LEXIS 25123 (Fed. Cir. Nov. 22, 2005).............................................30

*Phillips v. AWH Corp.,*
   415 F.3d 1303 (Fed. Cir. 2005)..............................................................................30

**STATUTES**

FED. R. CIV. P. 56(c). .....................................................................................................12

## I.    NATURE AND STAGE OF THE PROCEEDING

McKesson filed this lawsuit against TriZetto on September 13, 2004, and asserted that TriZetto has directly infringed claims 1-6 and 8-16 of McKesson's U.S. Patent No. 5,253,164 ("the '164 patent") by making, using, selling, and offering to sell three infringing software products: Facets, QicLink and ClaimFacts ("Accused Systems"). (D.I. 1.)

The Court bifurcated the case and issues relating to alleged patent invalidity have been stayed. (D.I. 132.) Issues relating to infringement, willfulness, and damages are set for trial on April 17, 2006, with a bench trial on equitable issues following afterwards. (D.I. 145 and 28.) The disputed terms of the '164 patent at issue have not yet been construed by the Court, and the parties have submitted proposals and briefing on this issue. (D.I. 148, 158, and 170.)

Fact and expert discovery has been completed on all issues with the exception of two witnesses that the Special Master has allowed McKesson to re-depose due to TriZetto's counsels' improper instructions that prevented these witnesses from testifying to relevant, non-privileged matter. During fact discovery, TriZetto's customers, executives and corporate designees all admitted that the Accused Systems infringe the '164 patent claims asserted by McKesson. (*See* Exhs. 1, 2, and 3.)[1] Based on the undisputed evidence gathered during discovery, and admissions made by TriZetto's infringement expert, McKesson moved for summary judgment that TriZetto directly infringes claims 3, 6, 15 and 16 of the '164 patent. (*Id.*)

---

[1]    Citations to "Exh. __" are to the Declaration of Michael A. Barlow in Support of Plaintiff's Answering Brief in Opposition to The TriZetto Group Inc.'s Motion for Summary Judgment of Non-Infringement filed concurrently herewith.

By this motion, TriZetto seeks summary judgment on non-infringement as to all of the asserted claims of the '164 patent. TriZetto's motion is based entirely on improper and incorrect claim construction arguments that it advanced for the first time after all expert depositions had been completed. (D.I. 153.) TriZetto's motion should be denied and summary judgment of literal infringement of claims 3, 6, 15 and 16 of the '164 patent should be entered in McKesson's favor against TriZetto pursuant to McKesson's motion.

## II.    SUMMARY OF ARGUMENT

TriZetto's motion for summary judgment does not, and cannot, overcome the overwhelming evidence of infringement in this case and, in fact, highlights the absence of any disputes that its products infringe the asserted claims under any reasonable construction. Not only should TriZetto's motion should be denied, the Court should grant McKesson's motion for summary judgment of infringement (D.I. 165) for at least the following reasons:

1.    Unlike nearly every patent case, neither TriZetto's witnesses nor its

TriZetto's attempt to brush these admissions aside is without merit and ignores that its own expert did not dispute the witnesses' description of the Accused Systems and testified himself that most of the claim elements are infringed, including nearly all the means-plus-function elements TriZetto emphasizes in its motion.  These admissions are further confirmed by TriZetto's description of the Accused Systems in its own product literature and manuals.

2.    The opinions of McKesson's experts -- set forth in nearly 200 pages of analysis and supporting element-by-element claim charts in their reports -- demonstrate

2

TriZetto's infringement under any reasonable interpretation of the '164 claims. TriZetto does not dispute these witnesses' expertise or the accuracy of their technical analysis of the evidence, including TriZetto's source code. TriZetto further concedes that Dr. Musen's report expressly addresses each analytical step regarding function and structure that TriZetto identifies as necessary to establish infringement of the means-plus-function claim elements.    That TriZetto disagrees regarding the proper claim construction of corresponding structure does is neither surprising nor a basis for summary judgment. TriZetto's mischaracterization of Dr. Musen's opinions as contingent upon the Court's adoption of what he deems the proper construction of the claims is refuted by the fact that Dr. Musen reviewed both parties' proposed constructions and the Court's September 20, 2005 Order in reaching opinions he explained would apply under any reasonable claim construction. Those opinions were properly based upon, *inter alia*, Dr. Johnson's detailed analysis of TriZetto's source code, which included a trace capturing what portions of that code implement the claimed functions and tracked the rules the Accused Systems apply to medical claims to TriZetto's source code and the equivalent rules in the '164 specification.

3.    TriZetto's argument regarding means-plus-function structural analysis ignores that its own infringement expert testified that the Accused Systems include four of the five means-plus-function elements of representative claim 3 and contested the proper construction of the function, not the equivalence of structure, for the fifth. These elements appear nearly identically throughout the asserted apparatus claims and this testimony alone contradicts TriZetto's argument that there is an absence of evidence of infringement. Moreover, TriZetto's structural arguments are facially inapplicable to method claims 1, 2,

and 16, which include only one means-plus-function element for which the parties agree regarding the corresponding structure.

4.    In contrast to McKesson's claim construction, which comports with Federal Circuit authority and the Court's September 20, 2005 Order, TriZetto premises its non-infringement arguments on constructions that flatly contradict the plain meaning of the claim language and the express teachings of the '164 patent. The impropriety of TriZetto's constructions, one of which attempts to read three extraneous limitations and 35 words into a two-word claim element, is manifest. Moreover, although TriZetto did not disclose these constructions until after expert discovery and days before filing the present motion, there is substantial testimonial, documentary, and expert evidence that TriZetto infringes even under its own unduly narrow constructions.

## III.    SUMMARY OF RELEVANT FACTS

### A.    The '164 Patent And TriZetto's Accused Systems

The '164 patent describes and claims the use of computer systems and computer implemented methods for analyzing, detecting, and correcting problems with medical claims. (D.I. 167, Exh. A.) A medical claim is akin to a bill or invoice submitted by a service provider (*e.g.*, a physician) to the organization responsible for a patient's medical expenses (*e.g.*, an insurance company) to request payment for medical services provided to that patient. A medical claim typically includes one or more codes representing particular medical services performed by a provider for which payment is being sought. The most common form of these medical service codes is the Current Procedural Terminology codes ("CPT" or "CPT-4" codes), which are published by the American Medical Association. Medical service codes typically are associated with a previously negotiated fee that

4

establishes how much a particular provider will be paid for performing the service represented by the medical service code. Thus, the medical service codes listed on a medical claim determine the amount a service provider should be paid for that claim.

The '164 patent describes and claims the use of a computer system and method for analyzing medical service codes submitted on a medical claim to detect and correct errors or problems that may result in inappropriate payment. One of the specific problems that the '164 patent addresses is the submission of medical claims containing what are commonly referred to as "unbundled" medical service codes. Unbundling involves the submission of medical service codes corresponding to individual components of an overall procedure instead of, or in addition to, the single comprehensive code for that procedure. For example, the comprehensive medical service code for an appendectomy procedure includes certain procedures that are considered integral to the main procedure (e.g., an incision, removal of the appendix, and stitches), and these procedures should not separately be authorized for payment. Unbundling often results in a higher bill than if the claim appropriately included only the comprehensive code.

Correction of these errors in the system described in the '164 patent is done through the use of a knowledge-based computer system that includes a database of medical service codes with relationships among those codes. The relationships define whether it is appropriate to pay the fee associated with medical service codes when submitted for payment with other medical service codes. The system and method described and claimed in the '164 patent provide the ability to consistently catch and process inappropriately coded claims that might otherwise go undetected and result in overpaying for medical services.

5

TriZetto markets each of the Accused Systems to its customers for use in medical claims processing. Each of the Accused Systems includes features to address the medical coding problems identified in the '164 patent and addressed by its claims. Although each of the three Accused Systems are marketed to different segments of the claims processing community, each of these products contain common infringing functionality and TriZetto's

**B.     TriZetto's Customers, Executives, And Corporate Designees Have Admitted The Accused Systems Infringe Every Asserted Claim Of The '164 Patent**

including with the expert report of Dr. Mark Musen submitted by McKesson, copies of which are submitted herewith. (*See* Exhs. 1, 2, and 3.) These charts list an element-by-element comparison of each of the Accused Systems with the asserted claims of the '164

For example, TriZetto's Chairman and CEO, Jeff Margolis, testified as follows with respect to claim 1:

6



Similarly, TriZetto's designated witness on the operation of QicLink confirmed that

QicLink also infringes:

> Q.   So, Mr. Danza, before we went off the record we were discussing the claims of the '164 patent which has been marked as Exhibit 7. And correct me if I'm wrong, but we had gone through Claims 1, 2, 3, 4, 5, 6, 8 and 9 and you had not identified any element recited in those claims that was not present in the QicLink product, is that correct?
>
> A.   That's correct.

(Exh. 5 at 103:4-12.)

TriZetto's customers who use the Accused Systems also testified that the TriZetto

systems each infringe all of the asserted claims of the '164 patent.   Thus, Harrington

Benefit's designated witness testified that ClaimFacts infringes all of the asserted claims:

> Q.   So to make sure I've got everything straight, it is your testimony that every element of Claims 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, 15, and 16, of the '164 patent is either present in or practiced by ClaimFacts with ClinicaLogic as that product is received from TriZetto?
>
> A.   Yes.

(Exh. 6 at 134:25-135:11)

Similarly, the witness designated by Premera Blue Cross testified that Facets

infringes all of the asserted claims:

> Q.   Does the Facets System operate to perform the steps described in Claim 1?
>
> A.   (Witness peruses document.) Yes.

7

Q.    I'd like you to look at Claim 2, and I have the same question, which is: Does the Facets System operate to perform the steps described in Claim 2?

A.    (Witness peruses document.) Yes.
***

Q.    With respect to Claim 3, does the Facets System include the components described in Claim 3?

A.    (Witness peruses document.) Yes.
***

Q.    Does -- does the Facets System include the components of Claim 3 and the added component of a means or mechanism for revising at least one claim to discontinue further processing of an invalid medical service code?

A.    (Witness peruses document.) Yes.

Q.    Can you read Claim 5? And the question is: Does the Facets System include the components of Claim 3 and Claim 4 and the added component described in Claim 5 with the understanding that, at least with respect to the word "delete," you should use -- you should apply the understanding that it means discontinuing any further processing of an invalid medical service code?

A.    (Witness peruses document.) Yes.

Q.    With respect to Claim 6, the question is: Does the Facets System include the components described in just Claim 3 and the added component of Claim 6?

A.    (Witness peruses document.) Yes.

Q.    Does the Facets System include the components described in Claim 3 and the added component described in Claim 8?
***

A.    (Witness peruses document.) Yes.

Q.    Does the Facets System include the components described in Claim 3 and the added component described in Claim 9?

A.    (Witness peruses document.) Yes.

8

Q.    Claim 10 is an independent claim that stands on its own, so the question is:    Does the Facets System contain the components described in Claim 10?

A.    (Witness peruses document.) Yes.

Q.    Does the Facets System include the components described in both Claim 10 and the added element of Claim 11?

A.    (Witness peruses document.) Yes.

Q.    Claim 12 is an independent claim, so it stands on its own.  Does the Facets System include the components described in Claim 12?

A.    (Witness peruses document.) Yes.

Q.    Claim 13 is also an independent claim, and it stands on its own.  Does the Facets System include the components described in Claim 13?

A.    (Witness peruses document.) Yes.

Q.    Claim 14 is also an independent claim, and so it stands on its own as well.  Does the Facets System include the components described in Claim 14?

A.    (Witness peruses document.) Yes.

Q.    Claim 15 is also an independent claim.  Does the Facets System include the components described in Claim 15?

A.    (Witness peruses document.) Yes.

Q.    Claim 16 is an independent method claim, so the question is slightly different.  Does the Facets System operate to perform the steps described in Claim 16?

A.    (Witness peruses document.) Yes.

(Exh. 7 at 31:12-35:7.)

### C.    McKesson's Experts Have Demonstrated That TriZetto Infringes Under The Applicable Precedent

McKesson has submitted infringement reports from Drs. Mark Musen and Margaret Johnson.  TriZetto has not contested the expertise of either witness or the

9

technical competence and accuracy of their analyses. Based upon their in-depth analysis of evidence relating to TriZetto's Accused Systems -- including source code, TriZetto's product documentation, and the depositions in this case -- McKesson's experts have opined that each of the Accused Systems infringes each of the asserted claims of the '164 patent. These opinions are set forth in nearly 200 pages of analysis and supporting element-by-element claim charts.

McKesson's experts' properly analyzed the means-plus-function aspects of the asserted claims consistent with Federal Circuit precedent and this Court's September 20, 2005 Order. For example, Dr. Musen explained in his infringement report that "claim elements describing a 'means for' performing a specific function ... are construed to include the structure described in the patent's specification as performing that function and that structure's equivalents." (D.I. 180, Exh. C at ¶ 17.) Applying this standard, Dr. Musen set forth his opinion that the Accused Systems infringe each asserted claim, explaining that "the structure of the computer system disclosed in the '164 patent for performing the function of each 'means for' element of this claim is included in, or is equivalent to, the structure of each product." (*Id.* at ¶ 32, 33, 34, 35, 36, 38, 40, 41, 42, 43, 44, 45, 46.) Having reviewed both parties' proposed claim constructions, a patent treatise's chapter on claim construction, and the Court's September 20, 2005 Order, Dr. Musen explained: "I believe my analyses and opinions would apply to any reasonable interpretation of the '164 patent claims under the principles discussed above, including the interpretation proposed by McKesson." (*Id.* at ¶ 29.)

Dr. Musen's opinions were based, in part, on his review of Dr. Johnson's analysis of TriZetto's source code as described in her report. ███████████████████████████

10



**D.   TriZetto's Own Expert Testified That Many Of The Means-Plus-Function Elements Underlying TriZetto's Motion Are Present In Each Accused Product**

TriZetto has offered one expert on the issue of infringement, Dr. Randall Davis. Dr. Davis admitted during his deposition that the Accused Systems infringe nearly every element of representative claim 3, including four of the five means-plus-function elements included within that claim.

These same means-plus-function elements are included nearly verbatim in the other asserted claims of the '164 patent, and they constitute much of TriZetto's argument concerning its alleged non-infringement. The means-plus-function elements that Dr. Davis admits are included in TriZetto's Accused Systems include:

- *"means for receiving at least one claim"* -- this element appears verbatim in every asserted apparatus claim;

- *"means for determining whether one of the medical service codes in the plurality of medical service codes is valid or invalid by interacting with the database and the set of relationships contained in the database"* -- this element appears verbatim in claim 15, and with slight variation as to what relationship is determined in every other asserted apparatus claim;

- *"means for authorizing medical service codes ... in response to the means for determining"* -- this element appears in all but one asserted apparatus claim; and

- *"means for rejecting medical service codes ... in response to the means for determining"* -- this element appears in all but one asserted apparatus claim.

Dr. Davis only identified two grounds for his assertion that TriZetto does not infringe claim 3, both of which require the Court to adopt TriZetto's improperly narrow claim construction. The first is premised upon the Court's adoption of TriZetto's incorrect construction of the word "predetermined" in connection with the "predetermined database" element of the asserted claims. As discussed below and in McKesson's claim construction submissions, TriZetto's tortured definition of this plain word requires the use of 35 words. The second is premised upon the Court's adoption of TriZetto's incorrect construction of the function "ascertaining whether the at least one claim contains a plurality of medical service codes." (D.I. 167, Exh. N at 295:6-17, 296:12-19.) As discussed below and in McKesson's claim construction submissions, Dr. Davis admitted during his deposition that the Accused Systems all determine whether the medical claim being processed contains one or more than one medical service code; TriZetto's non-infringement position hinges on a lengthy, unstated limitation it improperly adds to this straightforward claim element. (D.I. 167, Exh. N at 292:13, 20, 22.)

## IV.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper if "there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). TriZetto, as the moving party, bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). Thus, while McKesson will have the burden to prove infringement at trial, *TriZetto* has the burden of showing the absence of material facts essential to McKesson's infringement case in order to be entitled to summary judgment of non-infringement. *Id.* McKesson is required to "come forward with 'specific facts showing that there is a genuine

12

issue for trial'" only if TriZetto first meets its burden of proving that there is an absence of material fact issues. *Id.* (quoting FED. R. CIV. P. 56(e)).

In ruling on TriZetto's motion, the Court is required to "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbit,* 63 F.3d 231, 236 (3d Cir. 1995). The facts proffered by McKesson need only be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

TriZetto's motion should be denied since it has not (and could not) establish the absence of material facts warranting a grant of summary judgment of non-infringement in its favor. In fact, as set forth in McKesson's motion for summary judgment of infringement, the undisputed facts establish that TriZetto is infringing the asserted claims of McKesson's '164 patent and judgment to that effect should be entered in favor of McKesson.

## V.    TRIZETTO'S MOTION SHOULD BE DENIED BECAUSE THE ACCUSED SYSTEMS INFRINGE THE ASSERTED CLAIMS OF THE '164 PATENT

### A.    The Record Evidence Establishes That TriZetto's Accused Systems Infringe The Asserted Claims

The evidence of TriZetto's infringement of the asserted claims of the '164 patent is overwhelming. Thus, the record evidence includes:

- *Express admissions of infringement by the witnesses TriZetto designated as most knowledgeable regarding the Accused Systems (see, e.g.,* Deposition of TriZetto Rule 30(b)(6) witness, Karen Lampe: "Q. [W]ould you agree that the TriZetto ClaimFacts system contains all of the elements described in both claim 3 and claim 4? A. Yes.") (Exh. 9 at 73:11-14.);

- ███████████████████████████████████

13



- *Express admissions of infringement by the users of the Accused Systems (see, e.g., Deposition of Premera Blue Cross: "Q. With respect to Claim 3, does the Facets System include the components described in Claim 3? A. Yes.") (Exh. 7 at 31:24-32:3.);*

- *Express admissions from TriZetto's own non-infringement expert that nearly every element of the '164 claims are infringed by the Accused Systems (see, e.g., Deposition of Dr. Randall Davis: "Q. The three systems include all of the components of Claim 3 except for the term 'predetermined' and except for, in your opinion, the element that says 'means for ascertaining whether the at least one claim contains a plurality of medical service codes' correct? A. That I will agree with.); (D.I. 167, Exh. N at 296:12-19) and,*

- *Nearly 200-pages of infringement analysis offered by McKesson's expert witnesses, who TriZetto admits have proper expertise, based on their examination of every level of evidence down to specific lines of TriZetto's source code.*

Notwithstanding this record, TriZetto argues that the evidence clearly and undeniably supports the grant of summary judgment of non-infringement in its favor. As just this summary of the evidence indicates, based on the proper legal standards, at the very least TriZetto cannot establish the absence of a material fact dispute concerning its infringement of the asserted claims and its motion should be denied.

    **1.    McKesson's experts have demonstrated TriZetto's infringement of every element of the asserted claims.**

TriZetto's main argument is that McKesson's experts did not offer a structure-to-structure comparison for the means-plus-function elements of the asserted claims. TriZetto

mischaracterize McKesson's evidence as "purely functional" in the hopes of fitting certain

14

Federal Circuit authority, Dr. Musen's opinions properly account for the relevant legal principles and are competent evidence of TriZetto's infringement.

███████████████████████████████████████████████████████

████████████████████████████ To identify the appropriate corresponding structure, Dr. Musen reviewed the Court's September 20, 2005 Order, which explained that for corresponding structure to be "'software' ... under Federal Circuit precedent, the specification must disclose 'software' as the corresponding structure that performs the specific function in a means-plus-function claim limitation. Moreover, the 'software' must either be specifically described or identified as 'software' known to those of skill in the art." (D.I. 99 at 1 (citing *Medical Instrumentation and Diagnostic Corp. ("MIDCO") v. Elekta AB*, 344 F.3d 1205, 1211-12 (Fed. Cir. 2003)); *see also* Exh. 8 at 286:17-287:16; 301:1-17 ("I based my assessment on my understanding of the necessary structure as dictated by the memorandum of -- of September 20th").) Based on the '164 patent's association of "suitable commercially available database management software programs to perform the desired functions," Dr. Musen concluded software was the appropriate structure under the Court's explanation of the applicable law. [Exh. 8 at 105:13-16] That TriZetto disputes the proper interpretation of the claims is neither surprising nor grounds for summary judgment in its favor.

TriZetto's mischaracterization of Dr. Musen's opinion being contingent upon the Court adopting his construction ignores that Dr. Musen reviewed both parties' proposed

15

constructions[2] and the Court's Order and set forth opinions he believed "would apply to any reasonable interpretation of the '164 patent claims." (*Id.* at ¶ 29). Moreover, as Dr. Musen explained, his opinion that the Accused Systems infringe the asserted claims specifically encompasses TriZetto's software implementation of the algorithms broadly described in the '164 patent for each of the claimed means-plus-function elements. (Exh. 8 at 282-84.) TriZetto concedes that Dr. Musen's opinions include a structural comparison for every means-plus-function element of every claim: "'the structure of the computer system disclosed in the '164 patent for performing the function of each 'means for' element of this claim is included in, or is equivalent to, the structure of each product.'" (D.I. 153 at 18.)

TriZetto's attack on Dr. Musen for not personally examining lines of TriZetto's source code overlooks the fact that Dr. Musen reviewed and relied upon Dr. Johnson's detailed source-code analysis in her expert report. TriZetto does not contest the accuracy of Dr. Johnson's analysis and conclusions regarding the operations of TriZetto's source code. Instead, TriZetto inconsistently criticizes Dr. Johnson on the one hand for identifying equivalence between structure in TriZetto's source code and the system described in the '164 patent specification (in addition to the claim elements) yet argues on the other hand that she somehow did not sufficiently compare the structure in the specification to TriZetto's source code. (*See id.* at 20-23.) Notably, TriZetto makes no effort to square its argument that Dr. Johnson neglected a structure-to-structure comparison

---

[2]     TriZetto's suggestion that Dr. Musen did not "consider the structure that McKesson itself has identified" (D.I. 179 at 18) stands in direct contrast to Dr. Musen's report which expressly "incorporated" "McKesson's proposed claim construction" and explained Dr. Musen's opinion that his "analyses and opinions would apply to any reasonable interpretation of the '164 patent claims …, including the interpretation proposed by McKesson." D.I. 180, Exh. C at ¶¶ 12, 29.

16

with the table on page 13 of her report that expressly tracks the Accused Systems' clinical edits to the code that implements them and to the very rules from the '164 patent specification that TriZetto contends the means-plus-function elements should be limited to.[3]

Regardless of how TriZetto seeks to mischaracterize their analysis, Dr. Musen and Dr. Johnson's opinions -- set forth in nearly 200 pages of analysis and element-by-element claim charts -- address every element of TriZetto's infringement. TriZetto's attacks on the means-plus-function analysis conducted by McKesson's experts is particularly inappropriate in light of the fact that TriZetto did not deem it necessary for its own experts to mention or engage in *any* means-plus-function analysis to conclude that the prior art included these same claim elements.[4] *See, e.g.*, Exh. 13 at 180:22-24 to 182:9-12 ("Q. Did you look at the patent to determine whether any structure's disclosed for that means? A. No. Q. Did you get any assistance in terms of interpreting the means elements from counsel at TriZetto? A. No."); Exh. 14 at 203:23-204:3 ("[W]ould the answers you just gave that you weren't instructed to and did not apply any special interpretation to those ... hold true for all of the means for limitations or elements? A. ...[T]hat would be true.").

---



[4]    It is well-settled that section 112, "paragraph six applies regardless of the context in which the interpretation of means-plus-function language arises, *i.e.*, whether ... as part of a validity or infringement determination in a court." *In re Donaldson Co.*, 16 F.3d 1189, 1193 (Fed. Cir. 1994).

2.    **TriZetto's contention that there is no evidence regarding the means-plus-function elements ignores TriZetto's expert's testimony that the Accused Systems satisfy most of those elements.**

Contrary to TriZetto's attempts to argue there is no evidence regarding infringement of the claimed means-plus-function elements, its sole non-infringement expert, Dr. Davis, *agreed with McKesson's experts* that many of those elements are satisfied by the Accused Systems.   Independent claim 3 is representative of the '164 patent's independent claims, including five means-plus-function elements that appear identically or nearly identically in all the other asserted claims.  Dr. Davis admitted that four of these five elements were infringed by each of the Accused Systems[5]:

| | |
|---|---|
| means for receiving at least one claim; | Q.  And each of the three accused systems satisfies the next element, means for receiving at least one claim, correct?<br>A.  It would need to.<br>(D.I. 167, Exh. N at 281:5-8) |
| means for determining whether one of the medical service codes in the plurality of medical service codes is valid or invalid by interacting with the database and the set of relationships contained in the database; | Q.  Do all of the three accused infringing systems satisfy the next element in Claim 3, means for determining whether one of the medical service codes in a plurality of medical service codes is valid or invalid by interacting with the database in a set of relationships contained in database?<br>A.  Yes, they can do that.<br>(*Id.* at 294:9-16) |
| means for authorizing medical service codes which are valid in response to the means for determining; and | Q.  And do each of the three accused systems satisfy the next element, the means for authorizing an element?<br>A.  Yes.<br>(*Id.* at 294:17-20) |
| means for rejecting medical service codes which are invalid in response to the means for determining. | Q.  And do each of the three accused infringing systems satisfy the last element, the means for rejecting medical service codes?<br>A.  Yes.<br>(*Id.* at 294:21-24) |

---

[5]    Dr. Davis did not distinguish the fifth means-plus-function element of claim 3 on structural grounds; rather he based his opinion on his construction of the claimed *function*, "ascertaining whether the at least one claim contains a plurality of medical service codes."

18

*See also id.* at 296:12-19 ("Q. The three systems include all of the components of Claim 3 except for the term "predetermined" and except for, in your opinion, the element that says "means for ascertaining whether the at least one claim contains a plurality of medical service codes," correct? A. That I will agree with."). TriZetto cannot establish an absence of evidence by refusing to acknowledge the sworn testimony of its own expert. *Compare* D.I. 153 at 13 (discussing "means for receiving at least one claim") *with* D.I. 167, Exh. N at 281:5-8 ("Q. And each of the three accused systems satisfies the next element, "means for receiving at least one claim," correct? A. It would need to."). This testimony alone provides the very infringement evidence TriZetto contends is lacking for nearly every means-plus-function element in the asserted claims.

### 3.    TriZetto misrepresents what an "algorithm" is and advances an improper standard for structural comparison.

TriZetto contends that the claimed means-plus-function elements must be limited to their corresponding "algorithms" and therefore "a structure-to-structure comparison" requires one to "compare the code from the patent to the code in the ... allegedly infringing product." *See, e.g.,* D.I. 180, Exh. I at 323:21-324:16 (cited at page 17 of TriZetto's brief). The Federal Circuit has never imposed such a requirement and TriZetto's argument that it is necessary reflects a fundamental misunderstanding of what constitutes an "algorithm." The Federal Circuit has never held that a computer-implemented means-plus-function element should be limited to the source code in a patent and for good reason -- program code is not an algorithm. An algorithm is a logical representation of a process that may be implemented in various software embodiments. *See, e.g., Itron, Inc. v. Benghiat,* 169 F. Supp. 2d 1073, 1092 (D. Minn. 2001) (quoting David Bender, Computer Law, § 3.02(3) (2000)): the "'algorithm' of a computer program may involve the use of a flowchart

19

'wherein the logic of the program is depicted graphically ... to show the various processing steps and flow of data'").[6] As Dr. Musen explained: "An algorithm is an abstraction that provides a procedure for performing some computation which may then be implemented in software. ... One can choose a variety of programming languages to implement the algorithm and the algorithm is still preserved." D.I. 207, Exh. 2 at 281:11-25.

For this reason, there is no requirement, and TriZetto cites to no case suggesting there is, that the source code in a patent's specification must be construed as the corresponding structure for a means-plus-function claim element even where it is construed to require the disclosed algorithm.[7] Such an unduly narrow construction is certainly inappropriate for the claims of the '164 patent. As Dr. Musen explained:

- "The algorithms that practice the claims in the '164 patent directly flow from the functions that are described in those claims. Dr. Davis [TriZetto's expert] said as much in -- in his initial report. The algorithms are straightforward and immediately inferable from the functions." *Id.* at 302:25-303:23;

- "I believe the functions described in the claims state implicitly what algorithms are necessary in order to achieve the corresponding functions." *Id.* at 111:1-13;

---

[6]    Indeed, requiring an examination of the code disclosed in a patent's specification to identify structure would run afoul of settled Federal Circuit precedent that such code need not be disclosed to obtain a software patent. *See, e.g., Fonar Corp. v. General Elec. Co.*, 107 F.3d 1543, 1549 (Fed. Cir. 1997) ("best mode is satisfied by a disclosure of the functions of the software .... flow charts or source code listings are not a requirement for adequately disclosing the functions of software."); *MIDCO*, 344 F.3d at 1214 ("there would be no need for a disclosure of the specific program code if software were linked to the ... function and one skilled in the art would know the kind of program to use.").

[7]    TriZetto errantly asserts that Dr. Musen "admitted his report does not contain a structure-to-structure comparison." (D.I. 153 at 16.) However, the testimony TriZetto cites includes no such admission but instead simply acknowledged that he had not compared the "code" of the '164 patent to the "code" of the Accused Systems. Because the code is not the corresponding structure or algorithm for any of the claim element such a comparison is not required.

- "I wouldn't say that the function is synonymous with the algorithm …. It's my belief that for each of the means for claims, the function that is described is tied tightly to an algorithm …." *Id.* at 107:21-108:17.[8]

As a result of this tight correlation between the claimed functions and their corresponding algorithms, Dr. Musen explained that although code for performing the claimed functions could be written in a variety of ways, each of these would require the corresponding algorithms or their equivalents:

> [The structure is] necessarily equivalent. … The algorithms for performing the claims in the '164 patent are straightforward. There is really a limited way in which those algorithms could be implemented in software and variations in the design decisions would be irrelevant. … Because, one, the structure that matters is simply software at this point, but in terms of the capabilities of the system or qualities of the system or its duplication of function, that would be -- precisely how the software would be implemented would be irrelevant 'cause there are infinite ways in which one could program a system but the algorithms would be relatively straightforward and the same.

*Id.* at 309:11-310:22.

Thus, TriZetto's emphasis on Dr. Musen's testimony that any software program that performs the claimed functions would infringe is misplaced. This testimony does not indicate any deficiency in Dr. Musen's analysis of corresponding structure but rather reflects the nature of the claimed functions and their tight correlation to their logical algorithms.

---

[8]      Dr. Musen further testified that the algorithms for performing the claimed functions are disclosed or may be inferred from the rules in Appendix B of the '164 patent, the patent's flowcharts, and the description of the invention in the patent's specification. *See* D.I. 207, Exh. 2 at 64:7-66:17; 282:4-283:1l; 313:7-314:4; 295:24-296:14; 296:25-297:18; 303:24-304:7; 305:24-306:24.

21

**B.     TriZetto's Motion Is Based On A Mischaracterization Of The Law And The Court's September 20, 2005 Order, Both Of Which Support McKesson's Claim Construction**

**1.     The Federal Circuit and this Court have held that "software" can satisfy the "structure" aspect of section 112(6).**

TriZetto bases its argument on the erroneous assumption that -- regardless of a patent's disclosure, the level of ordinary skill in the art, or the particular claims at issue -- the structure corresponding to a means-plus-function element can never properly be construed as "software." TriZetto incorrectly argues that the Court pronounced such a rule in this case: "invoking the word 'software' is not enough -- the particular algorithm in the specification that performs the claimed function must be identified. This requirement is spelled out in this Court's September 20, 2005 Order." (D.I. 153 at 9.)

Contrary to TriZetto's mischaracterization, the Court's Order explained that "use of the language 'software capable of'" may "pass muster under Federal Circuit precedent":

> Defendant asserts that plaintiff's claim construction is neither adequate nor helpful in its use of the language "software capable of". In order for this language to pass muster under Federal Circuit precedent, the specification must disclose "software" as the corresponding structure that performs the specific function in a means-plus-function claim limitation. Moreover, the "software" must either be specifically described or identified as "software" known to those of skill in the art. Therefore, plaintiff must supplement its claim construction by identifying those portions of the specification that disclose the correspondence between the software (the structure) and the function disclosed by each claim limitation, as well as the specific algorithm disclosed in the specification, or where it is disclosed (or otherwise inferred) that the algorithm/software is known to those of skill in the art.

(D.I. 99 at 1-2 (citations omitted)).

The Court's Order was based in part on the Federal Circuit's decision in *MIDCO*. In that case, the Federal Circuit reviewed a district court's construction of a "means for converting" claim element in a patent relating to a method and apparatus for converting

22

data from various scanner imaging sources into a selected digital format. Specifically, the district court had held that the structure corresponding to the "means for converting" included "software routines for converting digital-to-digital known to those of skill in the art." 344 F.3d at 1209. In determining whether the district court's construction was proper, the Federal Circuit focused solely on the question of whether there is anything "in the specification or prosecution history that clearly links or associates software with the function of converting images into a selected format." *Id.* at 1211. The Federal Circuit found that software was not the appropriate structure for the "means for converting" because the specification and prosecution history did not clearly link or associate software to the converting function. *Id.* at 1212.

The Federal Circuit, however, made clear that it was not rejecting software as the corresponding structure because the district court used "software" instead of program code or some other more specific structure. *Id.* at 1213-14. Indeed, the Federal Circuit emphasized that "[i]n past cases, we have been generous in finding something to be a corresponding structure when the specification contained a generic reference to structure that would be known to those in the art and that structure was clearly associated with performance of the claimed function." *Id.* at 1214. The Federal Circuit in *MIDCO* described three such cases:

> For example, in *Intel Corp. v. VIA Technologies, Inc.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003), we found that the "core logic" modified to perform a particular program was adequate corresponding structure for a claimed function although the specification did not disclose internal circuitry of the core logic to show exactly how it must be modified. The core logic was described as structure in the specification, and the specification explained that it was the adapted core logic that was capable of performing the functions recited in the claim. *Id.* ...
>
> Similarly, in *S3, Inc. v. nVIDIA Corp.*, 259 F.3d 1364, 1370-71 (Fed. Cir. 2001), we concluded that a "selector" was adequately disclosed as corresponding structure for the "means ... for selectively receiving,"

23

although the electronic structure of the sensor and the details of its operation were not described. ...

*Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369 (Fed. Cir. 2001), is yet another example of this line of cases. In *Budde*, we held that the district court correctly found that a patent disclosed adequate corresponding structure for a "status sensing means." *Id.* at 1381. ... We found that the specification's description of the vacuum sensor as a "commercially available unit" would have been understood by a person skilled in the art to disclose structure capable of performing the recited function. *Id.* at 1382. Unlike the specifications of the patents in suit, the specification in *Budde* disclosed a generic structure that was clearly linked to the claimed function.

344 F.3d at 1214. Notably, in discussing its prior decision in *Intel*, the Federal Circuit in

*MIDCO* explained, "[t]here was no need for a disclosure of specific circuitry in that case,

just as here *there would be no need for a disclosure of the specific program code if

software were linked to the converting function and one skilled in the art would know

the kind of program to use.*" *Id.* (emphasis added).

### 2. McKesson's identification of corresponding structure for the claimed means-plus-function elements is supported by the applicable precedent.

TriZetto's argument that McKesson has inadequately identified "software" as the

corresponding structure for performing the functions recited in the means-plus-function

claim elements is based on an incorrect and unduly restrictive view of the law regarding

construction of such elements. Ignoring much of what is actually disclosed in the '164

patent about structure, TriZetto contends that most of the corresponding structures must be

limited to specific lines of exemplary source code included in an appendix of the patent.

However, neither the Federal Circuit nor this Court has required that corresponding

structures be defined so narrowly or authorized means-plus-function analyses that

disregard relevant disclosures regarding structure. McKesson's claim construction fully

24

complies with the Court's Order and is fully supported by Federal Circuit authority, much of which TriZetto simply ignores.[9]

TriZetto does not dispute that McKesson has identified the recited function for each means-plus-function element. With regard to determining the corresponding structure, the Federal Circuit has made clear that "[t]he specification *must be read as a whole* to determine the structure capable of performing the claimed function." *Budde v. Harley Davidson, Inc.*, 250 F.3d 1369, 1379 (Fed. Cir. 2001) (emphasis added). In addition, a court must consider both "the level of skill in the art" and "the requirement that a lack of corresponding structure be proven by clear and convincing evidence." *Id.* at 1380-81 (reasoning that finding a lack of corresponding structure would invalidate the claim and therefore requires clear and convincing evidence).

McKesson's construction of the means-plus-function elements of the asserted claims fully complies with the requirements set forth by the Federal Circuit and this Court. For each means-plus-function claim element, McKesson has identified "software capable of" performing the recited function as the corresponding structure or part of the corresponding structure. (D.I. 148, Exh. A.) Moreover, consistent with *MIDCO* and the Court's order, McKesson identified for each corresponding structure, the portions of the specification that disclose the correspondence or association between that structure and the recited function. (*Id.*)

For example, for the "means for operating on a predetermined database" element, McKesson identifies the corresponding structure as "data processing capabilities, memory,

---

[9]     TriZetto's emphasis on the Federal Circuit's decision in *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241 (Fed. Cir. 2005), overlooks that the Court was aware of *Harris* and in fact cited it in its September 20, 2005 Order. McKesson's claim construction is consistent with *Harris*.

and software capable of managing a database." (D.I. 148, Exh. A at 1.)  McKesson also

identifies Figure 1 and column 4, lines 33-42 as the portions of the '164 patent that

discloses the link between the identified structure and the recited function.  Indeed, that link

is plainly demonstrated by those portions of the patent.    Column 4, lines 33-42 of the

patent state:

> The computer system 2 may be any type of suitable computer system which
> can interact with the program of the present invention. One such suitable
> computer system is the well-known IBM "personal computer" *containing*
> *sufficient data processing capabilities and memory and suitable*
> *commercially available database management software programs to*
> *perform the desired functions.* Other suitable computer systems exist and
> are intended to come within the scope of the present invention.

(D.I. 167, Exh. A at col. 4, ll. 33-42 (emphasis added); *see also id.*, Fig. 1 (picturing the

computer system as item 2).)  The reference to a computer system having "commercially

available *database* management software" in conjunction with "data processing

capabilities and memory" clearly associates the identified structure to the claimed function

of "operating on a predetermined *database*." (Emphasis added.)  *See MIDCO*, 344 F.3d at

1218.

     With regard to this particular claim element, TriZetto's assertion that McKesson

must also identify the structure corresponding to the "predetermined database" is plainly

wrong.  The "predetermined database" is not written in means-for language and does not

invoke section 112(6).  Indeed, TriZetto's argument is inconsistent with the claim element

itself, which describes a "means for operating on a predetermined database" -- not merely

the database.

26

C.    **TriZetto's Motion Is Based On An Incorrect Application Of Section 112(6) To The Steps Of Method Claims That Are Not Written In Means-Plus-Function Format**

TriZetto ignores that asserted claims 1, 2, and 16 of the '164 patent are directed to methods and each include only one means-plus-function element, a "means for operating on a predetermined database" for which TriZetto "agrees" that McKesson has identified the appropriate corresponding structure in the '164 patent specification. *See* D.I. 158 at 11 (citing '164 patent at Fig. 1, col. 4, ll. 33-42).[10] Thus, there is no dispute that the structure in the '164 patent corresponding to this element is: "data processing capabilities, memory, and software capable of managing a database." Both of McKesson's experts expressly addressed the presence of this structure in the Accused Systems in their reports:



- 

- 

Thus, TriZetto's arguments regarding the means-plus-function elements are facially inapplicable to claims 1, 2, and 16.[11]

---

[10]    While TriZetto agrees this structure corresponds to the claimed function, it inexplicably argues that there is no structure in the specification corresponding to this function.

[11]    Although the Federal Circuit has never found a single claim element to trigger "step-plus-function" analysis under section 112, paragraph 6, TriZetto contends that *every* element in the methods of claims 1, 2, and 16 should be construed under that section. As explained in McKesson's claim construction briefing, TriZetto's literally unprecedented argument is without merit.

## VI.   TRIZETTO'S MOTION SHOULD BE DENIED BECAUSE THE ACCUSED SYSTEMS INCLUDE A "PREDETERMINED DATABASE" AND THEY ASCERTAIN WHETHER CLAIMS CONTAIN A "PLURALITY OF MEDICAL SERVICE CODES"

Faced with an overwhelming record demonstrating its infringement of the asserted claims as written, TriZetto now seeks to avoid infringement by rewriting the claims. After expert discovery closed and months after the Court ordered the parties to disclose their proposed constructions, TriZetto offered the constructions of the two claim elements it now contends entitle it to summary judgment. However, TriZetto's eleventh-hour attempt to construe the claims around the evidence contradicts the plain meaning of the claim, the '164 patent's express teachings, its preferred embodiment, and settled claim construction authority.

First, TriZetto has redefined the claim term "predetermined database" by adding the following emphasized language found nowhere in the patent specification:

> A database *containing a single computer-readable table that is designed to be modified or updated only by the system designer or vendor, and that is not designed to be modifiable by the end user.*

(D.I. 153 at 25 (emphasis added)).

Second, TriZetto has redefined the claim term "ascertaining whether the at least one claim contains a plurality of medical service codes" by appending an extraneous limitation emphasized below:

> "[i]dentifying if the claim contains more than one medical service code *in order to determine whether multiple-code edits should be checked.*"

*Id.* at 26 (emphasis added). While it is not uncommon for an accused infringer to improperly seek to read limitations from a patent's specification into a claim construction, TriZetto attempts to import limitations into the '164 patent claims from the ether. Neither

28

of TriZetto's proposed special meanings are supported by, or even found in, the '164
specification and neither support its motion for summary judgment.

**A.    TriZetto's Construction Of "Predetermined Database" Is Wrong And
The Undisputed Evidence Demonstrates That The Accused Systems
Infringe Under Any Reasonable Construction Of That Term**

The evidence is undisputed and TriZetto's own infringement expert admits that the
Accused Systems contain a database as described in the '164 patent claims. *See* D.I. 167,
Exh. N. at 280:9-23. To avoid this evidence TriZetto improperly urges the Court to read
no less than *three* additional limitations into the single word "predetermined," none of
which appear anywhere in the '164 patent. *See Northern Telecom Ltd. v. Samsung Elecs.
Co.*, 215 F.3d 1281, 1290 (Fed. Cir. 2000) (it is improper to "read unstated limitations into
claim language."). TriZetto begins with the ordinary meaning of the term "predetermined"
as "determined beforehand." D.I. 153 at 25. However, TriZetto then detours away from
that meaning and the teachings of the '164 patent entirely and attempts to add the
following limitations:

- *"a single computer readable table"* -- The '164 patent teaches using
multiple database files to comprise the database and each of these
database files could be viewed by a person of ordinary skill as tables.
*See* Exh. 15 at 70-74.

- *"modified or updated only by the system designer or vendor"* -- The
words "system designer" and "vendor" are found nowhere in the '164
patent specification and the '164 patent does not teach this limitation.

- *"not designed to be modifiable by the end user"* -- The '164 patent
specification expressly teaches a predetermined database that has
relationships that can and should be modified based on the user's
experience. D.I. 167, Exh. A at col. 3, ll. 27-32; col 4, ll. 64-col. 5, ll. 3;
col. 10, ll. 3-7 and 55-60.

Notably, none of the additional limitations TriZetto has crafted address *when* -- as opposed
to by whom -- the database is "determined." Moreover, TriZetto's construction would
exclude the '164 patent's preferred embodiment, which teaches the use of multiple

29

database files and tables and the desirability of modifying the database. As the Federal Circuit recently reiterated, such a "claim construction that excludes a preferred embodiment . . . is 'rarely, if ever, correct.'" *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 2005 U.S. App. LEXIS 25123 at *18 (Fed. Cir. Nov. 22, 2005) (D.I. 167, Exh. I) (citation omitted).

The only reasonable interpretation of the term predetermined that is consistent with the ordinary meaning of the term and the '164 patent specification is a database that is set at the time medical claims are processed. The "context of the surrounding words of the claim . . . must be considered in determining the ordinary and customary meaning of [the claim's] terms." *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005). The '164 patent claims are directed to a computer systems and methods for processing codes on medical claims to determine whether the codes in the claim are appropriate for payment, based on relationships between the medical service codes in a "predetermined database." To comport with the overall context of the claims and the specification's description of the invention, the only requirement is that the database be determined at the time the medical claims are processed.

Consistent with this interpretation, McKesson's experts who were persons of ordinary skill in the art at the time the patent was filed have independently reviewed the patent and arrived at the conclusion that predetermined simply means that the database is fixed "prior to the system running." Exh. 16 at 40:21-25; also Exh. 8 at 37:25-38:4 ("I ascribed the database to be a database which is a conceptual structure that stores data where the data, prior to run time, had been fixed."). One of TriZetto's customers also

understood that the database was predetermined "prior to the claim coming in...." Exh. 17 at 48:22. The evidence clearly establishes that the Accused Systems operate pursuant to any reasonable definition of this element. *See* D.I. 165 at 18-19.

**B.** **TriZetto's Construction Of "Ascertaining Whether A Claim Contains A Plurality Of Medical Service Codes" Is Wrong And The Undisputed Evidence Demonstrates That The Accused Systems Infringe Under Any Reasonable Construction Of That Term**

TriZetto does not dispute that each of the Accused Systems actually determine the number of medical service codes contained on a claim. *See, e.g.,* D.I. 167, Exh. N at 292:13, 20, 22. Rather, TriZetto improperly adds an additional unstated limitation to the "ascertaining" term to require that the ascertaining be done "in order to determine whether multiple code edits should be checked." *See Northern Telecom,* 215 F.3d at 1290. Nothing in the claim language of this element requires or even suggests that the determination of whether the claim contains a "plurality" of codes must be tied to a particular purpose, and it would be improper for the Court to read such a limitation into the claim language. *Id.* In fact, unlike other elements of the '164 patent claims, there is no causal relationship in the claims between the means for ascertaining and checking "whether multiple code edits should be checked." (*See, e.g.,* D.I. 167, Exh. A at col. 117, ll. 60-64 (in claim 3, both the "means for authorizing . . ." and the "means for rejecting . . ." are expressly "in response to the means for determining"). Had the inventors of the '164 patent wanted to claim such a relationship they could easily have done so -- but they did not.

The meaning of this claim language is readily apparent on its face. TriZetto did not contend it required construction at all until days before filing the present motion and still does not contend that the '164 patent assigns any special meaning to its terms. Indeed,

outside of the additional language it seeks to attach, TriZetto's construction does little more than restate the claim language in synonymous terms.

### C.    At A Minimum, Disputed Issues of Fact Exist Regarding Direct Infringement Under TriZetto's Incorrect Rewriting Of These Claim Terms

TriZetto's strategy is transparent and does not support summary judgment. Faced with conclusive evidence of its infringement, TriZetto waited until after the close of fact discovery and after all expert depositions had been taken to unveil its claims constructions. TriZetto then filed the present motion, declaring there is no evidence specifically addressing the new constructions it disclosed just days earlier. Despite TriZetto's gamesmanship, the record includes substantial evidence that TriZetto infringes even under its erroneous, post-discovery constructions.

*First*, McKesson has presented substantial evidence that the Accused Systems "identify[] if the claim contains more than one medical service code in order to determine whether multiple-code edits should be checked." For example, Dr. Johnson's infringement



32



    TriZetto's refusal to address what the Accused Systems do with respect to processing a single claim is telling. It continues to assert that the Accused Systems do not infringe because they perform clinical editing *across multiple claims* but does not indicate what type of processing is done on single claims. In fact, contrary to TriZetto's statement in its brief that "multiple-code edits are applied to every claim," each of TriZetto's own witnesses state in their declarations that "multiple code edits" are not applied to every claim but applied only "if applicable." D.I. 153 at 26; D.I. 155 at ¶ 6; D.I. 154 at ¶ 6; and D.I. 156 at ¶ 6. Regardless, that the Accused Systems include features in addition to those claimed in the '164 patent is irrelevant to infringement as a matter of law. *A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 703 (Fed. Cir. 1983) ("It is fundamental that one cannot avoid infringement merely by adding elements if each element recited in the claims is

found in the accused device.") (citing *Temco Elec. Motor Co. v. Apco Mfg. Co.,* 275 U.S. 319, 328 (1928)).

*Second,* McKesson has presented substantial evidence that the Accused Systems include "a database containing a single computer readable table that is designed to be modified or updated only by the system designer or vendor, and that is not designed to be modifiable by the end user." TriZetto does not dispute that the Accused Systems' databases include "computer readable table[s]" and substantial record evidence indicates that the tables containing the medical service codes and relationships among them in the Accused Systems are designed to be "modified or updated only by" TriZetto, not its customers:

> Q. And when you say the code edits that are updated by TriZetto in their ClinicaLogic product, could you give me a brief description of what you understand those to be.
>
> A. Yes. New codes that are added, deleted codes, changes in the way codes -- are used within the industry are captured there, and all of the different editing criteria that goes with those. So any changes in the rules that are currently in place for one year to another that may change.
>
> Q. And TriZetto does that for Harrington?
>
> A. Yes.

Exh. 6 at 50:4-19. Indeed, the tables of medical service codes and relationships in the Accused Systems are updated only by TriZetto on an annual basis in response to the AMA's updates to its medical service coding system, as evidenced by the numerous ████████████████████████ provided to explain TriZetto's updates to its customers:

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

34

███████████████████████████

Exh. 8 at 507 ███████████████████

Moreover, TriZetto's emphasis on the ability of its customers to "customize" the Accused Systems' operations overlooks the contrary evidence that such customization does not modify the tables of medical service codes and relationships that TriZetto updates annually. As one TriZetto customer testified:

> Q. But that pull-down menu process ... when you're setting the plan, that doesn't, to your knowledge, alter the contents of the database? And by that I mean the codes or the individual relationships among codes defined --
>
> A. No, that does not.
>
> ***
>
> Q. So just so the record's clear, Harrington does not go through the rules and relationships within the ClinicaLogic database that define whether or not medical service codes are valid or invalid and verify for themselves that those individual rules are appropriate or not appropriate; is that correct?
>
> A. That is correct.
>
> Q. Instead, so I take it, Harrington takes the rules and relationships that define whether or not medical service codes are valid or invalid that are provided in the predetermined database that TriZetto provides and applies those to the claims it processes?
>
> A. That's correct.

Exh. 6 at 94:23-95:4, 161:24-162:15. Thus, McKesson has presented substantial evidence upon which a jury could find the Accused Systems' databases include computer readable tables that are designed to be updated by TriZetto and not modified by its customers and therefore directly infringe the "predetermined database" element under TriZetto's strained construction.

35

At a minimum, such evidence raises a triable issue of fact regarding direct infringement under TriZetto's construction, particularly drawing all inferences in favor of McKesson.[12]  Moreover, because TriZetto's non-infringement defenses are premised entirely upon the adoption of its proposed claim construction, summary judgment of infringement should be granted to McKesson should the Court decline to rewrite the asserted claims as TriZetto urges. *See* D.I. 165.

**D.    TriZetto's Proffer Of Three Single-Page Declarations Does Not Support Summary Judgment, Particularly In View Of The Declarants' Contrary Deposition Testimony**

The whole of TriZetto's evidence purportedly establishing the three Accused Systems do not infringe the 15 asserted claims consists of three virtually identical, single-page declarations.  For example, TriZetto contends: "[a]s explained in the Declarations of Craig Luftig ..., Karen Lampe ..., and John Danza ..., the databases or files contained in Facets, ClaimFacts and QicLink are not 'predetermined.'  They are not determined beforehand or predestined as the ordinary meaning of the term would suggest." (D.I. 153 at 25.)  Such a proffer hardly establishes the absence of a disputed issue of fact, particularly given that each declarant directly contradicted TriZetto's assertion under oath at deposition:

---

[12]    Even in the absence of evidence of TriZetto's direct infringement, triable issues of fact remain under TriZetto's construction regarding infringement under the doctrine of equivalents (*e.g.*, whether one skilled in the art would deem having different people enter identical updates to identical databases a substantial difference between those databases).  McKesson's expert explained in his report that he may "supplement [his] analyses and opinions to address infringement under the doctrine of equivalence once the Court renders its claim construction rulings or as additional information comes to [his] attention." (D.I. 180, Exh. C ¶ 48.)  Given that TriZetto did not provide the constructions upon which it bases its motion until well after expert reports were exchanged and all expert depositions were taken, such supplementation is entirely appropriate under Fed. R. Civ. P. 26(e)(1).  Indeed, until a week before filing the present motion, TriZetto asserted that the "ascertaining" function required no construction and had never mentioned many of the terms it now seeks to read into the word "predetermined." (D.I. 167, Exh. C at 6.)

Q. So we get this, I want to get my terminology correct. ClaimFacts is a
system that has integrated into it ClinicaLogic and this database that has
a predetermined set of relationships between medical service codes; is
that right?

A. Yes, I would say that's correct.

(Exh. 9 at 58:13-18)



(Exh. 19 at 76:14-20);

Q. And the database of ClinicaLogic within QicLink when it ships to a
customer and the database being the medical service codes and the
relationships among those are predetermined before the product is
shipped to the customer, is that right?

A. Yes, that's right.

(Exh. 5 at 66:11-17.)

See also Exh. 6 at 57:21-24 ("Q. And the contents of that database are predetermined by
TriZetto before they ship the product to Harrington? A. Yes."). TriZetto's submission of
these declarations does not establish an absence of factual disputes under its proposed
construction, it highlights that such disputes preclude summary judgment in its favor.

37

## VII.    CONCLUSION

For all of the foregoing reasons, McKesson respectfully requests that TriZetto's

summary judgment motion be denied in its entirety.

By: _____

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff McKesson
  Information Solutions LLC

OF COUNSEL:
Jeffery G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500


DATED: January 10, 2006

38

## CERTIFICATE OF SERVICE

I, Michael A. Barlow, hereby certify that on January 10, 2006, I electronically filed Plaintiff's Answering Brief in Opposition to Defendant's Motion for Summary Judgment of Non-Infringement and Declaration of Michael A. Barlow using CM/ECF, which will send notification of such filing to those designated below, and that I served the following persons in the manner listed:

**VIA CM/ECF**
Rodger D. Smith, II, Esq.
MORRIS NICHOLS ARSHT
  & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899

**HAND DELIVERY**
Jack B. Blumenfeld, Esq.
MORRIS NICHOLS ARSHT
  & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899

Michael A. Barlow (ID No. 3928)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000
mbarlow@skadden.com

440372.01-Wilmington S1A