IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 04-1258-SLR |
| | ) | |
| v. | ) | |
| | ) | **REDACTED PUBLIC** |
| THE TRIZETTO GROUP, INC., | ) | **VERSION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

### PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE AND/OR STRIKE THE OPINIONS OF JESSE DAVID, PH.D.

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff
McKesson Information Solutions LLC

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500

DATED: January 12, 2006
Redacted Public Version Filed: January 18, 2006

# TABLE OF CONTENTS

I.    NATURE AND STAGE OF PROCEEDINGS ...................................................... 1

II.   SUMMARY OF ARGUMENT ............................................................................ 1

III.  THE COURT SHOULD EXCLUDE DR. DAVID'S OPINIONS DUE TO
      TRIZETTO'S DISCOVERY VIOLATIONS AND DR. DAVID'S USE
      OF AN INCORRECT AND UNRELIABLE LOST PROFITS
      METHODOLOGY ................................................................................................ 2

      A.    TriZetto Fails to Show that Its Discovery Violations Are
            Substantially Justified and Harmless ......................................................... 2

            1.    Customer-Specific Sales and Revenue Data. .................................. 2

            2.    TriZetto's Responses to Customers' RFPs ..................................... 7

            3.    1992 License Between HealthChex and RIMS .............................. 8

      B.    Federal Circuit Precedent Does Not Support the Lost Profits
            Methodology Used by Dr. David ................................................................ 9

IV.   CONCLUSION .................................................................................................. 12

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Fonar Corp. v. Gen. Elec. Co.*,
107 F.3d 1543 (Fed. Cir. 1997)....................................................................... 10

*Gerling Int'l Ins. Co. v. Comm'r of Internal Revenue*,
839 F.2d 131 (3d Cir. 1988)............................................................................ 4

*Grain Processing Corp. v. American Maize-Prods. Co.*,
185 F.3d 1341 (Fed. Cir. 1999).............................................................. 9, 10, 11

*ISCO Int'l, Inc. v. Conductus, Inc.*,
No. Civ. A. 01-487, 2003 WL 280223 (D. Del. Feb. 10, 2003) ................................. 10

*Praxair, Inc. v. ATMI, Inc.*,
231 F.R.D. 457 (D. Del. 2005) ....................................................................... 6

*Rite-Hite Corp. v. Kelley Co.*,
56 F.3d 1538 (Fed. Cir. 1995)......................................................................... 10

**STATUTES**

FED. R. CIV. P. 30(b)(6) ................................................................................. 4

FED. R. CIV. P. 34(a) ..................................................................................... 3

Plaintiff McKesson Information Solutions LLC ("McKesson") respectfully submits its reply brief in support of its motion to exclude and/or strike the opinions of Jesse David, Ph.D., defendant The TriZetto Group, Inc.'s ("TriZetto") damages expert.

## I.    NATURE AND STAGE OF PROCEEDINGS.

The nature and stage of the proceedings are described in McKesson's opening brief. (D.I. 173.)

## II.    SUMMARY OF ARGUMENT.

In addition to the reasons set forth in McKesson's opening brief, the Court should grant McKesson's motion for the following reasons:

1.    TriZetto fails to show that its withholding of relevant documents responsive to McKesson's discovery requests was substantially justified and harmless. TriZetto does not offer any reasonable explanation for its refusal to produce during discovery damages-related documents that TriZetto subsequently gave to its damages expert, Dr. David.  Instead, TriZetto's proffered excuses disregard TriZetto's discovery obligations, misstate the relevant facts, and misrepresent McKesson's arguments.

2.    TriZetto also fails to show that Dr. David used a reliable and accepted methodology to analyze lost profits.  TriZetto concedes that Dr. David only analyzed what could have occurred but for TriZetto's infringement, not what likely would have occurred.  That methodology directly conflicts with the precedent of the Federal Circuit and this Court, which have emphasized the need to perform a factual analysis of what foreseeably would have happened absent the infringement.

Because Dr. David's opinions based on previously unproduced TriZetto documents are inadmissible and his opinion regarding lost profits is unreliable,

1

McKesson respectfully requests that the Court grant its motion to exclude and/or strike those opinions of Dr. David.

### III. THE COURT SHOULD EXCLUDE DR. DAVID'S OPINIONS DUE TO TRIZETTO'S DISCOVERY VIOLATIONS AND DR. DAVID'S USE OF AN INCORRECT AND UNRELIABLE LOST PROFITS METHODOLOGY.

#### A. TriZetto Fails to Show that Its Discovery Violations Are Substantially Justified and Harmless.

TriZetto does not dispute that its damages expert, Dr. David, relied upon documents provided by TriZetto that were never produced to McKesson during discovery, despite numerous requests for such materials.[1] As shown in McKesson's opening brief, TriZetto's failure to produce these materials violates its discovery obligations and the Court's Scheduling Orders and warrants exclusion of the previously unproduced documents and those of Dr. David's opinions that rely upon those documents. (D.I. 173 at 6-10.)  TriZetto fails to show otherwise and indeed confirms that its discovery violations are not substantially justified and have harmed McKesson and the Court.

#### 1. Customer-Specific Sales and Revenue Data.

TriZetto attempts to excuse its failure to provide customer-specific sales and revenue data for the three accused products by arguing that (1) the specific hard-copy documents provided to Dr. David did not exist during discovery; (2) TriZetto produced other financial documents during discovery; (3) excluding all of Dr. David's opinions is an excessive sanction; and (4) McKesson has engaged in similar conduct.  All of TriZetto's arguments are without merit.

---

[1] As set forth in Exhibit A to McKesson's opening brief, these previously undisclosed documents consist of (1) customer-specific sales and revenue data for the three accused products, (2) TriZetto's responses to customers' requests for proposals ("RFPs"), and (3) a 1992 license between HealthChex and TriZetto's predecessor RIMS. (D.I. 174, Exh. A.)

2

TriZetto's first argument fails because it incorrectly assumes that TriZetto had no obligation to provide the customer-specific data that existed in electronic form during fact discovery. Although TriZetto claims that the financial documents given to Dr. David did not exist in hard-copy form during discovery, TriZetto admits that the customer-specific sales and revenue data contained in those documents existed in electronic form during discovery. (D.I. 201 at 4.) Indeed, TriZetto states that it simply "reorganized and reformatted" its existing financial data for Dr. David. (D.I. 201 at 6.)

Information is not protected from discovery merely because it is in electronic form. The federal discovery rules do not exempt electronic data from discovery and, in fact, broadly define discoverable documents to include information that exists in electronic form. *See* FED. R. CIV. P. 34(a) (broadly defining documents to include "other data compilations from which information can be obtained"). Indeed, this Court even provides default standards for the discovery of electronic documents. (*See* Court's Default Standard for Discovery of Electronic Documents ("E-Discovery").)

During fact discovery, McKesson served numerous requests that required TriZetto to provide the customer-specific sales and revenue data that it had in electronic form. McKesson served a request for "[d]ocuments sufficient to evidence the source and amount of all revenues received by TriZetto in connection with [the accused products]." (D.I. 174, Exh. D at 22.) McKesson also served an interrogatory requesting TriZetto to "[i]dentify and describe in complete detail any and all revenue and the sources thereof derived by TriZetto in connection with [each accused product]." (D.I. 174, Exh. E at 17.) In addition, McKesson served a Rule 30(b)(6) deposition notice that included topics

3

regarding customer, sales, and revenue information for the three accused products. (D.I. 174, Exh. F at 5 (Topic Nos. 18 & 19).)

Regardless of whether TriZetto had hard-copy documents containing customer-specific sales and revenue data during discovery, TriZetto certainly had the information in electronic form and was obligated to provide that information in response to all of the above discovery requests.  Computer files containing customer-specific sales and revenue data clearly constitute the type of data compilations covered by Federal Rule of Civil Procedure 34.  Moreover, both McKesson's interrogatory and deposition topics required substantive responses based on all information known or reasonably available to TriZetto, not just information contained in existing hard-copy documents.  *See* FED. R. CIV. P. 30(b)(6) ("The persons so designated shall testify as to matters known or reasonably available to the organization."); *Gerling Int'l Ins. Co. v. Comm'r of Internal Revenue*, 839 F.2d 131, 137-38 (3d Cir. 1988) (holding that Rule 33 "requires a party to respond to interrogatories by supplying information which is in its possession or which is available to it upon reasonable inquiry").

TriZetto's argument that it produced other financial documents during discovery that provided responsive information is unfounded because none of those documents contained the specific information that McKesson sought throughout discovery—*i.e.*, *customer-specific* sales and revenue information.  Dr. David repeatedly testified that he did not find such information in any of the documents that TriZetto had produced in discovery, even though his team "had done a lot of review" by the time he requested the new documents from TriZetto.  (D.I. 174, Exh. A at 1-5 & 12-17; Exh. C at 41:1-9, 18-23.)  Dr. David also made clear that the only reason he requested the additional

4

documents was because he did not find the information in any of TriZetto's production documents. (D.I. 174, Exh. C at 41:18-23 ("If we had it, I wouldn't ask for it.").) In its opposition brief, TriZetto also appears to confirm that it did not produce during discovery documents reflecting the sources of its revenues for the accused products, as evidenced by the fact that although TriZetto claims to have "produced and identified the financial records that reflected its revenues," TriZetto does not claim to have ever produced or identified records reflecting the sources of those revenues. (D.I. 201 at 7.)

That McKesson's damages expert, Michael Wagner, was able to perform his damages analysis based on the information that TriZetto produced during discovery also does not justify or render harmless TriZetto's discovery violations. The customer-specific sales and revenue data that Dr. David received and relied upon is clearly relevant to damages and is information that Mr. Wagner was not able to consider before submitting his report. TriZetto's failure to provide this data earlier gave Dr. David a material advantage over Mr. Wagner in terms of the amount of TriZetto customer data that the experts were able to analyze. For example, Mr. Wagner was only able to analyze customer-specific revenue data for ten Facets customers because TriZetto did not produce information on other Facets customers. (Exh. O at 117:8-20.[2]) In contrast, Dr. David received and relied upon previously unproduced documents containing revenue data for *all* Facets customers. (D. I. 174, Exh. C at 73:11-74:11 & 82:8-83:20.)

TriZetto also grossly exaggerates the relief requested by McKesson. Contrary to TriZetto's assertion, McKesson does not seek exclusion of all of Dr. David's opinions as

---

[2] Exhibits O and P cited herein refer to the exhibits attached to the Declaration of Michael A. Barlow in Support of Plaintiff's Reply Brief in Support of Its Motion to Exclude and/or Strike the Opinions of Jesse David, Ph.D., filed concurrently herewith.

a sanction for TriZetto's discovery violations.  As McKesson made clear in its opening brief, McKesson seeks to "strike the portions of Dr. David's report that rely on those previously unproduced documents and exclude any testimony from Dr. David based on those documents."  (D.I. 173 at 10.)  As the Court recognized in *Praxair, Inc. v. ATMI, Inc.*, 231 F.R.D. 457 (D. Del. 2005), such a sanction is entirely appropriate for the type of discovery violations that TriZetto has committed.  *See id.* at 464 (striking prior art references that were first disclosed at the end of fact discovery and the portions of defendants' invalidity expert's report that referred to those prior art references).

TriZetto is also incorrect in its assertion that McKesson has engaged in similar conduct.  As an initial matter, this argument is irrelevant because McKesson's compliance with its own discovery obligations has no bearing on whether TriZetto's discovery violations were substantially justified or harmless.  *See id.* at 463 (identifying factors that a court considers in determining whether an exclusionary sanction is appropriate).  Moreover, McKesson has not engaged in the same or similar conduct as TriZetto.  Unlike TriZetto, McKesson produced during discovery all of the documents relied upon by Mr. Wagner.[3]  In addition, TriZetto's assertion that the issues being decided by the Special Master are somehow analogous to TriZetto's discovery violations is unfounded.  The issues before the Special Master concern disputes regarding privilege assertions that both parties made during discovery, not whether a party has acted

---

[3]  TriZetto's erroneous assertion that Mr. Wagner relied upon previously unproduced documents appears to have been made for no reason other than to fabricate a basis for denying McKesson's motion.  TriZetto did not raise the issue until after McKesson filed its motion to exclude Dr. David's testimony, nearly two months after TriZetto received Mr. Wagner's report.  TriZetto also made no attempt to confirm whether any of the allegedly unproduced McKesson documents, in fact, had been previously produced, opting instead to write a self-serving letter to McKesson that could be used as an exhibit to its opposition to McKesson's motion.

improperly by providing its own expert with documents and information that the party withheld from discovery for no legitimate reason.[4]

TriZetto has not shown that it was substantially justified in withholding during discovery the customer-specific sales and revenue data that Dr. David relied upon, or that its very belated disclosure of that information was harmless. Accordingly, the Court should exclude those documents and those of Dr. David's opinions that rely upon them.

### 2.    TriZetto's Responses to Customers' RFPs.

With regard to TriZetto's responses to customers' RFPs, TriZetto argues that it was not obligated to produce the documents given to Dr. David because they are all dated after the close of document discovery. In addition, as with the customer-specific sales and revenue data, TriZetto argues that exclusion of all of Dr. David's opinions is an excessive sanction and that McKesson has engaged in conduct similar to TriZetto's. As discussed above, both of these arguments are without merit and should be rejected.

TriZetto's argument that the specific RFP responses given to Dr. David were dated after close of document discovery also should be rejected because TriZetto views its discovery violation too narrowly. There is no question that prior to the close of document discovery, TriZetto had in its possession many responses to customers' RFPs. Despite McKesson's request for such documents, TriZetto refused to produce any RFP responses, asserting that they were not relevant to the litigation. (D.I. 174, Exh. D at 34; Exh. I at 5.) TriZetto's subsequent decision to give Dr. David numerous RFP responses

---

[4] McKesson also notes that the Special Master has ordered TriZetto to produce many documents that it had asserted were privileged. Indeed, in a recent order, the Special Master disagreed with TriZetto's privilege assertion with regard to more than 60 documents and ordered that they be produced. (Exh. P.)

to aid in his damages analysis plainly demonstrates that its refusal to produce such documents during discovery was improper and unjustified. That TriZetto chose to give Dr. David RFP responses dated after the close of document discovery instead of the earlier dated responses does not excuse TriZetto's decision to withhold all RFP responses from discovery.

Because TriZetto has not justified its failure to produce RFP responses during discovery, the responses provided to Dr. David and those of his opinions that are based on those documents should be excluded.

### 3. 1992 License Between HealthChex and RIMS.

TriZetto does not dispute that it failed to produce the 1992 license agreement between HealthChex and TriZetto's predecessor RIMS in response to McKesson's document requests. Indeed, the only argument that TriZetto makes with regard to this document is that "[t]here has never been any dispute about RIMS receiving this license or about the fact that RIMS and TriZetto have in fact sold AutoAudit." (D.I. 201 at 4 n.2.) If this were true, it is unclear why TriZetto needed to give this document to Dr. David. In fact, McKesson does dispute numerous issues regarding the HealthChex-RIMS relationship and what rights, if any, RIMS and later TriZetto had to sell AutoAudit as part of the accused QicLink product. That is why McKesson sought discovery relating to the HealthChex-RIMS relationship. TriZetto's failure to produce the license until long after fact discovery closed was unjustified. It also precluded McKesson from taking pertinent discovery regarding the license and McKesson's damages expert from considering the license in his analysis. Accordingly, an exclusionary sanction is warranted with regard to the license and those of Dr. David's opinions that are based on the license.

**B.     Federal Circuit Precedent Does Not Support the Lost Profits Methodology Used by Dr. David.**

The parties agree as to what methodology Dr. David used to analyze lost profits--TriZetto admits that Dr. David's methodology was based on what non-infringing alternatives TriZetto "could have utilized," not what alternatives TriZetto likely would have utilized. (D.I. 201 at 11 ("Dr. David's methodology is based on restructuring the but-for market with alternatives that TriZetto – *or any other rational competitor* – could have utilized." (Emphasis in original.).)  TriZetto, however, argues that Dr. David's methodology was appropriate because Federal Circuit law allows one simply to assume that any rational competitor would have sold one of those alternatives. (*Id.* ("Once such an alternative is identified, the courts assume that a rational competitor *would* have utilized it.") (Emphasis in original.).)  TriZetto misreads Federal Circuit precedent and takes a legal position that would reduce the lost profits analysis to pure speculation.

Contrary to TriZetto's assertion, the Federal Circuit in *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341 (Fed. Cir. 1999), did not hold that once the possible non-infringing alternatives are identified, it is proper to forgo any factual analysis as to what alternatives the infringer likely would have pursued but for the infringement.  The Federal Circuit made clear that "a fair and accurate reconstruction of the 'but for' market also *must take into account*, where relevant, alternative actions the infringer *foreseeably would have undertaken* had he not infringed."  *Id.* at 1350-51 (emphasis added).  Thus, the Federal Circuit explicitly required an analysis regarding the likelihood that the infringer would have pursued alternative actions.

Although TriZetto contends that the foregoing quote does not accurately reflect the holding of *Grain Processing*, the Federal Circuit repeatedly emphasized in its opinion

that a proper lost profits analysis must analyze "*likely outcomes* with infringement factored out." *Id.* at 1350 (emphasis added). The Federal Circuit explained that "[t]o prevent the hypothetical from lapsing into pure speculation, this court requires sound economic proof of the nature of the market and likely outcomes with infringement factored out of the economic picture." *Id. See also id.* ("The 'but for' inquiry therefore requires a reconstruction of the market, as it would have developed absent the infringing product, to determine what the patentee 'would … have made.'"); *id.* at 1355 ("Whether and to what extent American Maize's alleged alternative prevents Grain Processing from showing lost sales of Maltrin 100 depends not only on whether and when the alternative was available, but also on whether and to what extent it was acceptable as a substitute in the relevant market.").

The Federal Circuit in other cases has similarly emphasized the importance of analyzing the reasonable foreseeability of what would have occurred but for the infringement. *See Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1553 (Fed. Cir. 1997) (holding that availability of lost profits damages depends on whether there is "a reasonable probability that [the patentee] would have made the sales 'but for' the infringement"); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1546 (Fed. Cir. 1995) (holding that determination of appropriate damages under 35 U.S.C. § 284 "can best be viewed in terms of reasonable, objective foreseeability"). This Court also has held that the lost profits inquiry "requires a reconstruction of the market as it would have been absent the infringing product, to determine which sales the patentee would have made." *ISCO Int'l, Inc. v. Conductus, Inc.*, No. Civ. A. 01-487, 2003 WL 280223, at *1 (D. Del. Feb. 10, 2003) (D.I. 173, Exh. 1).

10

The Federal Circuit's requirement that courts analyze the likelihood of alternative actions absent infringement would be rendered meaningless if, as TriZetto contends, courts assume that any rational competitor would pursue any one of those alternatives. TriZetto essentially seeks to divorce the lost profits analysis from any factual inquiry regarding what foreseeably would have occurred in the "but for" world. Indeed, under TriZetto's view of the law, the lost profits inquiry would be transformed from "a fair and accurate reconstruction of the 'but for' market [that] take[s] into account … alternative actions the infringer foreseeably would have undertaken had he not infringed" (*Grain Processing*, 185 F.3d at 1350-51) to a speculative reconstruction of the "but for" market that only takes into account alternative actions the infringer might possibly have undertaken had he not infringed.

This improper, speculative reconstruction of the market is precisely what Dr. David did in analyzing lost profits in this case. Both TriZetto and Dr. David admit that his methodology focused on what alternatives TriZetto "could have" pursued absent infringement. (D.I. 201 at 11; D.I. 174, Exh. C at 150:25-151:24.)  Instead of also analyzing which of these alternatives TriZetto was likely to pursue, Dr. David simply used a generic assumption about rational competitors to assume that TriZetto would have pursued any one of the alternatives and that any one of those alternatives would have barred lost profits completely. (D.I. 201 at 12; D.I. 174, Exh. B at 13.)  In fact, Dr. David conceded at his deposition that he did not perform any analysis with regard to what alternatives TriZetto would have pursued:                **REDACTED**

**REDACTED**

11

Because Dr. David fails to consider what alternatives TriZetto foreseeably would have pursued absent its infringement, Dr. David's analysis and opinion regarding lost profits is inconsistent with Federal Circuit precedent. Accordingly, his opinion regarding lost profits is unreliable and therefore inadmissible.[5]

**IV.    CONCLUSION.**

For the foregoing reasons, McKesson respectfully requests that the Court grant its motion to exclude and/or strike the following opinions of Dr. Jesse David: (1) those of his opinions that rely upon the previously unproduced TriZetto documents (which are identified in D.I. 174, Exh. A); and (2) his opinion regarding lost profits.

By: _____

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff
McKesson Information Solutions LLC

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, CA 94301
(650) 470-4500

DATED: January 12, 2006

---

[5] TriZetto's criticisms of Mr. Wagner's lost profits analysis are unfounded and, as shown in McKesson's opposition to TriZetto's motion to exclude Mr. Wagner's expert testimony, do not justify exclusion of Mr. Wagner's lost profits opinion. (D.I. 199.)

12

## CERTIFICATE OF SERVICE

I, Michael A. Barlow, hereby certify that on January 12, 2006, I electronically filed Plaintiff's Reply Brief in Support of Its Motion to Exclude and/or Strike the Opinions of Jesse David, Ph.D. and Declaration of Michael A. Barlow using CM/ECF, which will send notification of such filing to those designated below, and that I served the following persons in the manner listed:

**VIA CM/ECF**
Rodger D. Smith, II, Esq.
MORRIS NICHOLS ARSHT
 & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899

**HAND DELIVERY**
Jack B. Blumenfeld, Esq.
MORRIS NICHOLS ARSHT
 & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899

Michael A. Barlow (ID No. 3928)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000
mbarlow@skadden.com

440372.02-Wilmington S1A