IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MCKESSON INFORMATION SOLUTIONS LLC,

Plaintiff,

v.

THE TRIZETTO GROUP, INC.,

Defendant.

CIVIL ACTION NO. 04-1258-SLR

**REDACTED PUBLIC VERSION**

Confidential Version Filed: January 20, 2006

Redacted Public Version Filed: January 25, 2006

**PLAINTIFF MCKESSON INFORMATION SOLUTIONS LLC'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT**

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff McKesson Information Solutions LLC

OF COUNSEL:
Jeffery G. Randall
David W. Hansen
Michael C. Hendershot
Jon V. Swenson
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500

DATED: January 20, 2006

# TABLE OF CONTENTS

Page

NATURE AND STAGE OF THE PROCEEDING .......... 1

SUMMARY OF ARGUMENT .......... 1

STATEMENT OF FACTS .......... 2

ARGUMENT .......... 2

I. MCKESSON PRESENTED CONCLUSIVE EVIDENCE THAT TRIZETTO INFRINGES EVERY ELEMENT OF CLAIMS 3, 6, 15, AND 16, INCLUDING ADMISSIONS FROM TRIZETTO'S EXPERT THAT ARE COMPLETELY IGNORED IN TRIZETTO'S BRIEF .......... 2

A. TriZetto's Expert's Admissions Confirm That The Only Disputes Regarding TriZetto's Infringement Of Claims 3, 6, 15, And 16 Are Limited To Two Claim Construction Questions .......... 3

B. Trizetto's Argument Regarding Evidence Of A "Structure-To-Structure" Comparison Is Incorrect And Is Refuted By Its Own Expert's Infringement Admissions, Which Trizetto Has Insisted Are Based Upon Just Such A Comparison .......... 5

C. TriZetto's Argument Regarding Evidence Of A "Functional Analysis" Is Incorrect And Is Refuted By Its Own Expert's Infringement Admissions, Which TriZetto Has Insisted Are Based Upon Just Such An Analysis .......... 6

II. TRIZETTO'S OPPOSITION CONFIRMS THAT ITS DEFENSES ARE LIMITED TO ARGUMENTS REGARDING THE LEGAL QUESTION OF CLAIM CONSTRUCTION AND THAT SUMMARY JUDGMENT IS APPROPRIATE .......... 6

A. The Undisputed Evidence Establishes That The Accused Systems Include A "Predetermined Database" Under Any Reasonable Interpretation Of That Element .......... 8

1. TriZetto concedes the multiple limitations it seeks to read into "predetermined" are not described in the '164 specification and improperly argues that non-public extrinsic evidence should limit this straightforward term .......... 8

2. TriZetto concedes that "predetermined" is not a special term of art and this term must therefore be construed pursuant to its ordinary meaning, a construction under which TriZetto indisputably infringes ........................................ 10

B. The Undisputed Evidence Demonstrates That The Accused Systems Include A "Means For Ascertaining" Whether A Medical Claim "Contains A Plurality Of Medical Service Codes" Under Any Reasonable Interpretation Of That Element.................................... 12

C. The Accused Systems Perform The "Authorizing" Step In Claims 15 And 16 Of The '164 Patent................................................................ 15

III. THE EVIDENCE THAT MCKESSON RELIES UPON IS HIGHLY RELEVANT AND ADMISSIBLE TO PROVE INFRINGEMENT .................. 17

CONCLUSION................................................................................................................ 20

# TABLE OF AUTHORITIES

Page(s)

## CASES

*A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700 (Fed. Cir. 1983) .......... 15

*ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082 (Fed. Cir. 2003).......... 13

*CCS Fitness v. Brunswick Corp.*, 288 F.3d 1359 (Fed. Cir. 2002).......... 11

*Gemstar-TV Guide Int'l., Inc. v. Int'l Trade Comm'n*, 383 F.3d 1352 (Fed. Cir. 2004).......... 11

*Generation II Orthotics Inc. v. Med. Tech. Inc.*, 263 F.3d 1356 (Fed. Cir. 2001).......... 13

*Lucent Techs., Inc. v. Extreme Networks, Inc.*, 367 F. Supp. 2d 649 (D. Del. 2005).......... 11

*McCarty v. Lehigh Valley R.R. Co.*, 160 U.S. 110 (1895).......... 9

*Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250 (Fed. Cir. 1999).......... 13

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005).......... 9, 10, 11

Plaintiff, McKesson Information Solutions LLC ("McKesson"), respectfully submits this reply brief in support of its motion for summary judgment that defendant The TriZetto Group, Inc.'s ("TriZetto") Facets, QicLink, and ClaimFacts products (the "Accused Systems") infringe claims 3, 6, 15, and 16 of McKesson's U.S. Patent No. 5,253,164 ("the '164 patent").

**NATURE AND STAGE OF THE PROCEEDING**

The nature and stage of the proceedings are set forth in McKesson's opening brief. McKesson submits this reply brief in support of its motion for summary judgment of infringement.

**SUMMARY OF ARGUMENT**

McKesson should be granted summary judgment that TriZetto infringes claims 3, 6, 15, and 16 of the '164 patent for the following reasons:

1. TriZetto's argument that McKesson has failed to meet its burden to establish infringement ignores the record. McKesson presented volumes of undisputed evidence establishing that the Accused Systems infringe, including the testimony of TriZetto's own infringement expert who admits that TriZetto infringes all but two elements of claim 3, including four means-plus-function elements. TriZetto's argument that McKesson has not provided structural and functional analysis supporting infringement is incorrect and is belied by the admissions of infringement by its own infringement expert, whom TriZetto asserts conducted a proper structural and functional analysis. McKesson has presented an overwhelming amount of conclusive evidence that the Accused Systems infringe the '164 patent claims.

2. Because TriZetto cannot dispute the relevant operation of the Accused Systems, it tries to circumvent the undisputed factual record by construing claim terms contrary to their plain meaning. TriZetto's construction of these terms – which TriZetto only first proposed after close of discovery in a desperate attempt to avoid a ruling of infringement – improperly adds numerous unstated limitations that are contrary to the patent specification and the otherwise distort the plain meaning of these terms. TriZetto's proposed constructions are wrong and they

do not create a genuine issue of material fact that defeats the propriety of summary judgment of infringement in McKesson's favor.

3. Contrary to TriZetto's argument, [REDACTED]

## STATEMENT OF FACTS

The relevant facts are set forth in McKesson's opening brief and the argument section below.

## ARGUMENT

### I. MCKESSON PRESENTED CONCLUSIVE EVIDENCE THAT TRIZETTO INFRINGES EVERY ELEMENT OF CLAIMS 3, 6, 15, AND 16, INCLUDING ADMISSIONS FROM TRIZETTO'S EXPERT THAT ARE COMPLETELY IGNORED IN TRIZETTO'S BRIEF

As set forth its opening brief, McKesson's motion is based on the significant undisputed evidence establishing that TriZetto's Accused Systems infringe claims 3, 6, 15, and 16 of the '164 patent, including the admissions of TriZetto's expert, Dr. Randall Davis, that the Accused Systems infringe nearly every element of claim 3, including all but one means-plus-function claim element. (*See, e.g.,* D.I. 165 at 2-4 ("Based on the undisputed evidence gathered during discovery, *and admissions made by TriZetto's infringement expert,* McKesson now moves for summary judgment …") (emphasis added); *id.* at 13-15 ("TriZetto's infringement expert … does not contest the relevant operation and features of the Accused Systems … and he agrees that the Accused Systems infringe nearly all of the elements of claim 3 – citing only two elements he contends are

not infringed."); *id.* at 2-4, 8, 11, 20, 21-22.) Remarkably, in arguing that McKesson has offered insufficient evidence of infringement, TriZetto ***completely ignores*** the infringement admissions made by its expert, Dr. Davis, that are emphasized throughout McKesson's opening brief. (*See* D.I. 210 at 14 ("McKesson has inexplicably chosen to base its motion solely on the testimony of lay witnesses"); *id.* at 2-3 & 4-15.) TriZetto cannot avoid summary judgment by pretending that its infringement expert, Dr. Davis, did not make these important infringement admissions.

**A. TriZetto's Expert's Admissions Confirm That The Only Disputes Regarding TriZetto's Infringement Of Claims 3, 6, 15, And 16 Are Limited To Two Claim Construction Questions**

As McKesson explained in its opening brief, summary judgment is appropriate because TriZetto's own expert, Dr. Davis, admitted that his non-infringement opinion for Claim 3 of the '164 patent was limited to claim construction arguments concerning two elements of the claim – legal, not factual, issues. (*See* D.I. 165 at 13-14 ("Q. The three systems include all of the components of Claim 3 except for the term 'predetermined' and except for, in your opinion, the element that says 'means for ascertaining whether the at least one claim contains a plurality of medical service codes' correct? A. That I will agree with.") (quoting D.I. 167, Exh. N at 296:12-19).)

As shown by the following table and Exhibit H to McKesson's opening brief, with the exception of one claim element (the "ascertaining" element) and the interpretation of a single word in another element ("predetermined"), TriZetto's expert admitted at his deposition that every element of Claim 3 is infringed by the Accused Systems:

| CLAIM 3 | TRIZETTO'S EXPERT |
|---|---|
| 3. A computer system including a central processing unit and associated memory for processing input claims containing at least one medical service code, comprising: | Q. … At the start of Claim 3 it says, "A computer system, including a central processing unit and associated memory for processing input claims containing at least one medical service code comprising." … Each of the three accused systems has that, right?<br>A. Each of the three systems has that.<br>Q. They satisfy that element, correct?<br>A. I believe so.<br>(D.I. 167, Exh. N at 278:9-20) |
| a predetermined database stored in the associated memory, the database | Q. Okay. So each of the three systems includes the component that's listed as the element which starts with |

| CLAIM 3 | TRIZETTO'S EXPERT |
|---|---|
| containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when received with other selected ones of the medical service codes; | "a predetermined database stored in associated memory," ending with "one of the medical service codes" if you were to remove the term which we disagree on, "predetermined," correct?<br>A. Correct.<br>(*Id.* at 280:9-16) |
| means for receiving at least one claim; | Q. And each of the three accused systems satisfies the next element, means for receiving at least one claim, correct?<br>A. It would need to.<br>(*Id.* at 281:5-8) |
| means for ascertaining whether the at least one claim contains a plurality of medical service codes; | A. … [N]one of these systems ascertain whether there's a plurality of medical service codes. They never make a decision based on whether there is one or more than one.<br>A. … At some point it determines how many they are -- there are. … So it knows how many it has to do.<br>(*Id.* at 283: 4-8; 292:19-20, 22) |
| means for determining whether one of the medical service codes in the plurality of medical service codes is valid or invalid by interacting with the database and the set of relationships contained in the database; | Q. Do all of the three accused infringing systems satisfy the next element in Claim 3, means for determining whether one of the medical service codes in a plurality of medical service codes is valid or invalid by interacting with the database in a set of relationships contained in database?<br>A. Yes, they can do that.<br>(*Id.* at 294:9-16) |
| means for authorizing medical service codes which are valid in response to the means for determining; and | Q. And do each of the three accused systems satisfy the next element, the means for authorizing an element?<br>A. Yes.<br>(*Id.* at 294:17-20) |
| means for rejecting medical service codes which are invalid in response to the means for determining. | Q. And do each of the three accused infringing systems satisfy the last element, the means for rejecting medical service codes?<br>A. Yes.<br>(*Id.* at 294:21-24) |

Despite the fact that this testimony alone defeats most of its arguments, TriZetto's opposition completely ignores Dr. Davis's infringement admissions and even goes so far as to inaccurately criticize McKesson for supposedly "bas[ing] its motion solely on the testimony of lay witnesses" and "cherry-pick[ing] the witness testimony that supports its case." (D.I. 210 at 13, 14.) Indeed, TriZetto's only references to Dr. Davis's testimony are limited to the two elements that McKesson identified as being subject to claim construction disputes. (*See id.* at 18

(discussing "predetermined"); *id.* at 22 (discussing "ascertaining" element).) Thus, TriZetto does not dispute that Dr. Davis's admissions establish nearly all elements of TriZetto's infringement.

**B. Trizetto's Argument Regarding Evidence Of A "Structure-To-Structure" Comparison Is Incorrect And Is Refuted By Its Own Expert's Infringement Admissions, Which Trizetto Has Insisted Are Based Upon Just Such A Comparison**

TriZetto bases its opposition on the fictional assertion that "McKesson presents no evidence or testimony of any kind" concerning the structure in the '164 patent or the Accused Systems corresponding to the means-plus-function claim elements. (*Id.* at 8.) However, as explained above, McKesson presented admissions of TriZetto's own expert that four of the five means-plus-function elements of claim 3 are infringed. (*See, e.g.*, D.I. 167, Exh. H at 1-2 (means for receiving: "It would need to"; means for determining: "Yes"; means for authorizing: "Yes"; means for rejecting: "Yes").)[1] These infringement admissions are the product of an infringement analysis that, according to TriZetto, "properly compared the structure and function of the means-plus-function ... elements to the structure and function of the TriZetto Products. This is the appropriate approach to analyzing elements under 35 U.S.C. § 112(6)." (D.I. 203 at 9; *see also* D.I. 210 at 3 ("Determining infringement is a task for qualified experts").) Thus, the admissions of TriZetto's expert alone constitute sufficient evidence of TriZetto's infringement of the structural aspects of the means-plus-function claim elements.

In addition, McKesson fully refuted TriZetto's argument concerning McKesson's supposed failure to conduct a proper "structure-to-structure" analysis for the means-plus-function

---

1 With respect to the fifth means-plus-function element of claim 3, the "means for ascertaining," TriZetto asserts a defense based on the construction of the claimed ***function***, not the corresponding structure. (*See, e.g.*, D.I. 210 at 21 (discussing "an 'ascertaining' ***function*** that the TriZetto Products simply do not perform") (emphasis added).)

claim elements in its opposition to TriZetto's Motion For Summary Judgment Of Non-Infringement.[2] (D.I. 216, § V.)

### C. TriZetto's Argument Regarding Evidence Of A "Functional Analysis" Is Incorrect And Is Refuted By Its Own Expert's Infringement Admissions, Which TriZetto Has Insisted Are Based Upon Just Such An Analysis

As with its structural analysis, TriZetto ignores the admissions of its expert, Dr. Davis, emphasized throughout McKesson's opening brief and argues that McKesson has presented insufficient evidence that the claimed functions are infringed. (*See* D.I. 210 at 14-15.) This argument is incorrect.

As discussed above, TriZetto's infringement expert, Dr. Davis, who TriZetto contends performed a proper functional analysis, admitted infringement as to all but one means-plus-function element at Claim 3. Indeed, the single function TriZetto offers as an example in its brief, "determin[ing] that a code is 'valid or invalid' by 'interacting with the database,'" appears in a means-plus-function element that Dr. Davis admitted was infringed by all three Accused Systems. (*Compare* D.I. 210 at 15 *with* D.I. 167, Exh. H at 1 ("Q. Do all of the three accused infringing systems satisfy the next element in Claim 3, means for determining whether one of the medical service codes in a plurality of medical service codes is valid or invalid by interacting with the database in a set of relationships contained in database? A. Yes, they can do that.").)

## II. TRIZETTO'S OPPOSITION CONFIRMS THAT ITS DEFENSES ARE LIMITED TO ARGUMENTS REGARDING THE LEGAL QUESTION OF CLAIM CONSTRUCTION AND THAT SUMMARY JUDGMENT IS APPROPRIATE

TriZetto concedes that its non-infringement defense to claims 3, 6, 15, and 16 is premised on the Court's adoption of TriZetto's claim construction of two claim elements, and TriZetto does not raise any disputed issue of material fact concerning the operation of the Accused Systems. Indeed, TriZetto's opposition highlights that its entire defense hinges on its incorrect construction

---

[2] It is noteworthy that, despite its emphasis on "structure-to-structure" comparison in this and other motions, TriZetto does not identify the corresponding structure for any means-plus-function element as a basis for its supposed non-infringement of the '164 patent.

of two straightforward terms – "predetermined" database, and "ascertaining" whether a claim contains a "plurality" of medical codes.

As explained in McKesson's opening brief, TriZetto did not offer its current constructions of these terms until December 9, 2005 - months after the close of fact discovery, after all expert depositions were completed, and only days before the present motion was due to be filed. (*See* D.I. 165 at 8-9, 20.) Although TriZetto argues that the numerous extraneous limitations now included in its new constructions "spring[] directly from the text of the patent claims and the teaching of the specification" (D.I. 210 at 21), TriZetto does not explain why the constructions never occurred to TriZetto or its attorneys during the 10+ years that TriZetto and its patent attorneys studied the '164 patent prior to this lawsuit.[3] TriZetto also does not explain why these constructions did not occur to TriZetto in connection with the previous claim constructions it had submitted during the first 15 months of this hotly-contested lawsuit, before McKesson obtained the overwhelming evidence that all of the Accused Systems infringe the '164 patent.

The simple truth is that TriZetto's belated attempt to contort these straightforward claim terms is nothing more than a desperate last-minute attempt to avoid a ruling that the Accused Systems infringe. This is confirmed by the fact that TriZetto did not believe that the "ascertaining" function required ***any*** construction until the eve of McKesson's summary judgment motion. For example, as late as its October 11, 2005 "Supplemental Proposed Claim Construction," TriZetto stated that the function of "ascertaining" whether a claim "contains a plurality of medical service codes" did not require construction by the Court: ***"TriZetto does not believe that the function described in this element requires construction."*** (D.I. 167, Exh. C at 10.)

Thus, unless the Court agrees with TriZetto's untimely argument that the proper construction of "predetermined" requires 34 words and three additional limitations found nowhere in the '164 patent, or that "ascertaining whether [a] claim contains a plurality of medical

---

[3] It is undisputed that TriZetto retained patent counsel in connection with the '164 patent as early as January 1994.

service codes" means something other than what it says, summary judgment of infringement should be granted in McKesson's favor.[4]

### A. The Undisputed Evidence Establishes That The Accused Systems Include A "Predetermined Database" Under Any Reasonable Interpretation Of That Element

#### 1. TriZetto concedes the multiple limitations it seeks to read into "predetermined" are not described in the '164 specification and improperly argues that non-public extrinsic evidence should limit this straightforward term

As set forth in McKesson's opening brief, TriZetto's construction improperly seeks to read not one, but three extraneous limitations into the two-word element "predetermined database":

> A database [1] containing a single computer readable table [2] that is designed to be modified or updated only by the system designer or vendor, and [3] that is not designed to be modifiable by the end user.

(D.I. 167, Exh. B at 2.)

As an initial matter, TriZetto does not present any argument in support of its "containing a single computer readable table" limitation, and the Court should reject this improper limitation out of hand.

In addition, TriZetto does not dispute that the extensive limitations it now seeks to add to this straightforward claim element, as well as the terms "system designer," "vendor," or "end user," do not appear anywhere in the '164 patent.[5] Rather, TriZetto argues that these limitations should be read into the word "predetermined" merely because TriZetto considers them

---

[4] TriZetto's contention that "Dr. Davis's non-infringement opinion with respect to Claim 3 is not based solely on the absence of two elements" is baseless. (*See* D.I. 210 at 16.) TriZetto's citation to the discussion of the "structural differences between the TriZetto products and the '164 patent" ignores that (i) Dr. Davis testified that the bases for his opinion did not include such system-level architectural differences, (D.I. 167, Exh. H.), and (ii) that a such system-to-system comparison is legally irrelevant to whether the equivalence of the structure that performs the individual functions of the claims. (D.I. 230 at 6.)

[5] The '164 patent does not mention or draw any distinction between a "system designer" and the "end user." The '164 patent's teachings are in no way limited to a "vendor" and are equally applicable to a payer organization, such as an insurance company, seeking to design its own system for application to the medical claims it processes (*i.e.*, a circumstance in which the "system designer" would also be the "end user").

"consistent with the nature of the patented technology" and surmises that "it stands to reason" that they may be desirable "[g]iven ... the purpose of the technology." (*See* D.I. 210 at 18.)

TriZetto's suggestion that claim elements should be narrowed by the inclusion of additional limitations supposedly "consistent with" a patent's specification, or that allegedly "stand to reason" based on its teachings, is contrary to settled law. Well-established Federal Circuit precedent requires "an intentional disclaimer, or disavowal, of claim scope by the inventor" before such limitations may be read into a patent's claims. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc); *see also McCarty v. Lehigh Valley R.R. Co.*, 160 U.S. 110, 116 (1895) ("if we once begin to include elements not mentioned in the claim, in order to limit such claim ..., we should never know where to stop"). There is no question that the '164 patent does not include such a "disclaimer" or "disavowal" and TriZetto does not contend otherwise. It would therefore be clear error to include the additional limitations suggested by TriZetto.

In fact, the teachings of the '164 patent specification are contrary to the additional limitations TriZetto proposes. The '164 specification expressly teaches that "[t]he process is an ongoing process which can be updated as new methods of inappropriate coding are discovered" and that one should "refine, update and change the rules and the knowledge base interpreter 5." (*See* D.I. 165 at 16.) Thus, the specification expressly teaches that the predetermined database *should be modified and updated* and does not impose or imply any limitation on who should do so, let alone draw a distinction between the "system designer or vendor" and a "end user" – entities never mentioned in the patent.

Because there is no support anywhere in the patent or its prosecution history for the

suggestion that the Court limit claim terms based on such extrinsic evidence would violate

another of the most settled principles of patent law, particularly since the memo was not publicly available. As the *en banc* Federal Circuit recently explained in *Philips*:

> [E]xtrinsic evidence by definition is not part of the patent and does not have the specification's virtue of being created at the time of patent prosecution for the purpose of explaining the patent's scope and meaning. … [T]here is a virtually unbounded universe of potential extrinsic evidence of some marginal relevance that could be brought to bear on any claim construction question. In the course of litigation, each party will naturally choose the pieces of extrinsic evidence most favorable to its cause, leaving the court with the considerable task of filtering the useful extrinsic evidence from the fluff. ... Finally, undue reliance on extrinsic evidence poses the risk that it will be used to change the meaning of claims in derogation of the "indisputable public records consisting of the claims, the specification and the prosecution history," thereby undermining the public notice function of patents.

415 F.3d at 1318-19 (citation omitted).



'164 patent claim terms would improperly be "in derogation of the 'indisputable public records consisting of the claims, the specification and the prosecution history'" and would generally "undermin[e] the public notice function of patents." *Id.*

**2. TriZetto concedes that "predetermined" is not a special term of art and this term must therefore be construed pursuant to its ordinary meaning, a construction under which TriZetto indisputably infringes**

TriZetto's contention that 35 words and three new limitations are necessary to "simply define" a single word in the claims is clearly wrong. As an initial matter, TriZetto's argument that "'[p]redetermined database' clearly does not have a 'plain language' meaning, because it is

not a term generally used in the art," is contrary to fundamental claim construction principles and confuses the legal import of the testimony TriZetto cites. (D.I. 210 at 17.) As TriZetto

Contrary to TriZetto's unsupported conclusion, where a term does not carry a "special meaning" in a technical field that is different from its general usage, that term is to be construed according to its general, plain language meaning. *See, e.g., Gemstar-TV Guide Int'l., Inc. v. Int'l Trade Comm'n*, 383 F.3d 1352, 1366 (Fed. Cir. 2004) ("Because the parties have presented no evidence that 'visual identification' has a specialized technical meaning in the art, we consult non-technical dictionary definitions to determine its ordinary meaning."); *see also Phillips*, 415 F.3d at 314 ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."); *Lucent Techs., Inc. v. Extreme Networks, Inc.*, 367 F. Supp. 2d 649, 671 (D. Del. 2005) ("The Court construes the disputed terms as follows: 'arrangement' is construed consistently with its plain meaning as 'arrangement.' The Court declines to further interpret the term 'arrangement.'"). Under TriZetto's argument no claim term could be construed pursuant to its ordinary meaning unless it was an accepted term of art in a technical field. Such a result is counter to the "heavy presumption" that claim language – whether a "term of art" or not – is to be afforded its ordinary meaning. *CCS Fitness v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002).

The extensive limitations proposed by TriZetto have nothing to do with the ordinary meaning of "predetermined," which is simply something determined "prior to." TriZetto's focus on *who* may "determine" the claimed database ignores this plain meaning, which deals only with *when* the database is determined. The claims of the '164 patent involve a "computer system" used to process medical claims that includes "a predetermined database containing medical

service codes and a set of relationships among the medical service codes." The operation of the claimed system does not depend on *who* determines the database relationships as argued by TriZetto. Rather, consistent with the ordinary meaning of "predetermined," the only requirement for an operable system is that the medical service code relationships in the database be determined "prior to" the processing of a claim.

TriZetto's efforts to avoid the plain meaning of "predetermined database" are not surprising, since TriZetto does not dispute that the "medical service codes and [the] set of relationships among the medical service codes" in the databases of the Accused Systems are "predetermined" when TriZetto's customers use the Accused Systems to process claims. (*See* D.I. 165 at 18-19.) Moreover, contrary to TriZetto's argument, McKesson has not left out the effect of the term "predetermined" in the '164 patent claims by using the ordinary meaning to define this term. [redacted]

(*See* Exh. 1 at 101:13-102:17.) Whether TriZetto deems this to be "an ordinary database" or not is irrelevant to the proper construction of the term "predetermined," a construction under which TriZetto admittedly infringes. (*See* D.I. 210 at 18 ("'[t]he database doesn't change during processing'") (quoting TriZetto's expert, Dr. Davis).)

**B. The Undisputed Evidence Demonstrates That The Accused Systems Include A "Means For Ascertaining" Whether A Medical Claim "Contains A Plurality Of Medical Service Codes" Under Any Reasonable Interpretation Of That Element**

As with its "predetermined" argument, TriZetto does not dispute the relevant facts regarding the Accused Systems' "ascertaining whether the at least one claim contains a plurality of medical service codes." Instead, it again appends an additional limitation to this element in its claim construction and argues that the Accused Systems do not perform this new limitation:

> "[i]dentifying if the claim contains more than one medical service code ***in order to determine whether multiple code edits should be checked.***"

(D.I. 167, Exh. B at 15 (additional function added by TriZetto in bold).) This limitation does not "spring directly form the text of the patent claims" as TriZetto asserts. TriZetto's construction not only improperly adds a limitation not included in the plain claim language, as noted, it does so for a function that TriZetto did not contend required *any construction* until after all discovery had closed.

TriZetto's attempt to limit the "ascertaining" element by requiring an additional function not explicitly recited in the claim is contrary to Federal Circuit authority. The Federal Circuit has repeatedly emphasized that "§ 112, ¶ 6 ... does not permit limitation of a means-plus-function claim by adopting a function different from that ***explicitly*** recited in the claim." *See Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999) (emphasis added); *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1087 (Fed. Cir. 2003) (same); *Generation II Orthotics Inc. v. Med. Tech. Inc.*, 263 F.3d 1356, 1363 (Fed. Cir. 2001) (same). The plain language of the "ascertaining" element does not include the limitation proposed by TriZetto and the PTO did not require such a limitation in determining the patentability of the claims. It would therefore be improper to limit the "ascertaining" element as suggested by TriZetto.[6]

The undisputed evidence establishes that the Accused Systems perform the function actually recited in the "ascertaining" element. [REDACTED] and TriZetto's expert's noninfringement opinion is based only on TriZetto's improper "in order to" limitation discussed above. (*See* D.I. 167, Exh. N at 283:4-8 ("A. ... [N]one of these systems ascertain whether there's a plurality of medical service codes. They never make a decision based on whether there

---

6 TriZetto's attempt to justify the extraneous "in order to" limitation by referring to the '164 patent's preferred embodiment is equally unavailing. *See Micro Chem.*, 194 F.3d 1250 (reversing the construction of a claimed function as requiring a limitation highlighted by the preferred embodiment but not explicitly recited in the claim element).

is one or more than one.").) In fact, TriZetto admits in its brief that all of the Accused Systems count "how many codes are present on a claim . . . ." (D.I. 210 at 22.)

There is no support for TriZetto's argument that the patent "distinguishes between 'counting' and 'ascertaining.'" (*Id.* at 23.) The portion of the specification referenced by TriZetto shows that, in the preferred embodiment disclosed in the patent, the number of codes on a medical claim is determined by "counting" the codes, precisely what TriZetto's Accused System's admittedly do. This "count" determines whether the medical claim contains a "plurality" of codes (*i.e.,* more than one code). The patent claims use of the broader term "ascertain" – simply meaning "to find our or learn with certainty" (*see* Exh. 2 at 67) – which includes but is not limited to "learning" whether a medical claim "contains a plurality of medical service codes" by counting the codes as admittedly done by TriZetto's Accused Systems.

There is no dispute that each Accused System counts the exact number of medical service codes on a medical claim and stores that number in memory. Whether this number is two, three, four, or some greater number, the Accused System has ascertained whether, in this case affirmatively, the claim contains more than one medical service code (*i.e.,* a plurality). Likewise, if this number is one, the Accused System has ascertained whether, in this case negatively, whether the claim contains more than one medical service code (*i.e.,* not a plurality). TriZetto's attempt to draw a distinction between "counting" and "ascertaining" misses the point. Although counting determines the exact number of codes on a claim *in addition* to ascertaining whether there is one or some greater number of codes, it still ascertains whether there is "a plurality." Nothing more is required by the claimed function.

TriZetto's argument regarding the processing of single-code medical claims is a red herring. Regardless of what the Accused Systems do once they ascertain that a medical claim does not contain a plurality of medical service codes, they still include the claimed "means for ascertaining" and every other element required by Claim 3. Whether the Accused Systems include functionality in addition to the infringing functionality — such as the ability to apply edits across multiple claims

– is irrelevant to TriZetto's infringement of Claim 3. *A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 703 (Fed. Cir. 1983) ("It is fundamental that one cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device") (citation omitted).

### C. The Accused Systems Perform The "Authorizing" Step In Claims 15 And 16 Of The '164 Patent

TriZetto argues that the Accused Systems do not infringe Claims 15 and 16 because they supposedly do not "authorize" medical claims "in response to" the determination of whether medical service codes are "valid or invalid" for payment. (D.I. 210 at 24.) TriZetto's argument in is based on its incorrect assertion that the only portions of the Accused Systems that infringe the '164 patent "are the clinical editing modules" which "authorize a *code* after determining that the code is valid" but "never authorize *claims*. Claim authorization is a function performed later in the process (by a different part of the software) in response to different determinations not specified in the patent claims." (*Id.*)

TriZetto's argument overlooks the fact that all of the asserted claims of the '164 patent, including Claims 15 and 16, are broadly directed to a "computer system . . . for processing input claims," (*see* D.I. 167, Exh. A, Claims 15 & 16), and not simply to a "clinical editing module" portion of such a system. So long as the overall claim processing "system" includes the infringing functionality, it does not matter whether different portions of the system satisfy different elements of claim or whether the claim processing system includes additional functionality not required by the claims. *A.B. Dick*, 713 F.2d at 703 ("It is fundamental that one cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device") (citation omitted).[7] TriZetto does not cite any authority to the contrary.

---

[7] Because such additional functionality cannot establish non-infringement, TriZetto's expert disclaimed the additional functionality as a basis for his opinion in response to McKesson's *Daubert* motion. (D.I. 204 ¶ 5 ("[M]y non-infringement opinion with respect to Claims 15 and 16 does not rely on these additional functions…").) Despite this express disclaimer, TriZetto's brief improperly continues to assert this additional functionality as a basis for non-infringement. (D.I.

*(cont'd)*

TriZetto admits that the Accused Systems perform medical code "validation, as required by Claims 15 and 16." (*See* D.I. 210 at 24.) TriZetto also admits that the Accused Systems authorize claims for payment after the "code validation" process is completed.[8] (*Id.*) This is



(*cont'd from previous page*)
210 at 24 ("Claim authorization is a function performed later in the process (by a different part of the software)…").)

8 All witnesses, including TriZetto's infringement expert Dr. Davis, admit that all of the Accused Systems actually perform a "validity check and the claim authorization …." (D.I. 204 ¶ 5.)

[redacted]

Thus, contrary to TriZetto's arguments, the Accused Systems thus authorize claims in response to the "code validation" step, which is all that is required for infringement of Claims 15 and 16.

TriZetto's supposed confusion concerning the operation of Claims 15 and 16 is at best disingenuous. (*See* D.I. 210 at 25.) For example, TriZetto's infringement expert Dr. Davis was perfectly able to describe Claims 15 and 16 in his opening report without any confusion about the "authorizing" or "rejecting" steps. (D.I. 183, Exh. C at 6-7, 9.) [redacted] Indeed, the claimed function is straightforward: a determination is made whether codes submitted together are valid or invalid and in response to that determination the claim is "rejected" or "authorized." This is precisely what clinical editing products, including the Accused Systems, are designed to do.

## III. THE EVIDENCE THAT MCKESSON RELIES UPON IS HIGHLY RELEVANT AND ADMISSIBLE TO PROVE INFRINGEMENT

TriZetto's claim that McKesson based its summary judgment motion "solely on the testimony of lay witnesses who were neither prepared nor qualified" has no basis whatsoever. (*See* D.I. 210 at 14.) [redacted]





For example, Patricia Kepplinger, the designee from Harrington Benefits, had formal education in computer programming and over 11 years of experience in medical claims processing using ClaimFacts. (Exh. 7 at 7:16-22, 9:23-25.) Ms. Kepplinger testified that ClaimFacts infringed all of the asserted claims of the '164 patent. (D.I. 217, Exh. 1, 2 & 3.)

---

[9] The Special Master has ruled that counsel for TriZetto improperly instructed Mr. Luftig to not answer certain questions relating to TriZetto and its patent counsels' infringement analysis and has ordered that Mr. Luftig be produced for an additional deposition. (*See* D.I. 231, Exh. I.)

[10] TriZetto's designee concerning the infringing ClaimFacts system, Karen Lampe, is the "business analysis specialist in product development of ClaimFacts," (Exh. 5 at 21:23-22:2), and she testified that she had detailed knowledge of the '164 patent and attended several meetings with outside counsel where she received a copy of the '164 patent and discussed, among other things, TriZetto's outside counsel's opinion relating to the '164 patent. (*Id.* at 26:15-25, 30:11-20.) Likewise, TriZetto's designee for the infringing QicLink system, John Danza, had years of experience as "manager of QicLink product management" and testified that TriZetto infringed every asserted patent claim. (Exh. 6 at 7:24-8:4, 9:1-3; D.I. 217, Exh. 1, 2, 3.)



None of these witnesses had any trouble interpreting any of the claim terms included in the claims at issue in this motion.[11] This is not surprising given their experience with medical claims processing and the fact that interpretation of the claim elements is relatively straightforward (despite TriZetto's arguments for unduly narrow and contorted constructions).

Under these circumstances, all of the testimony submitted by McKesson is clearly relevant and admissible to support McKesson's summary judgment motion.

---

[11] The terms TriZetto argues that certain witnesses had trouble with are not used in the claims involved in this motion. (*See* D.I. 210 at 12-13 ("mutually exclusive"; "medically exclusive"; and "non-medical criteria").)

**CONCLUSION**

For the reasons set forth herein, McKesson respectfully requests that the Court grant summary judgment that TriZetto's Accused Systems each directly infringe claims 3, 6, 15, and 16 of the '164 patent.

By: ______________________
Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff McKesson Information Solutions LLC

OF COUNSEL:
Jeffery G. Randall
David W. Hansen
Michael C. Hendershot
Jon V. Swenson
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500

DATED: January 20, 2006

**CERTIFICATE OF SERVICE**

I, Michael A. Barlow, hereby certify that on January 20, 2006, I electronically filed Plaintiff McKesson Information Solutions LLC's Reply Brief in Support of Its Motion for Summary Judgment of Infringement and the Declaration of Michael A. Barlow using CM/ECF, which will send notification of such filing to those designated below, and that I served the following persons in the manner listed:

**VIA CM/ECF**
Rodger D. Smith, II, Esq.
MORRIS NICHOLS ARSHT & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899

**HAND DELIVERY**
Jack B. Blumenfeld, Esq.
MORRIS NICHOLS ARSHT & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899

Michael A. Barlow (ID No. 3928)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000
mbarlow@skadden.com