IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MCKESSON INFORMATION SOLUTIONS LLC, )
                                       )

              Plaintiff,          )     CIVIL ACTION NO. 04-1258-SLR

                                     )

             v.                )     **REDACTED PUBLIC VERSION**

                                     )

THE TRIZETTO GROUP, INC.,         )

                                     )

              Defendant.      )

                                     )

## PLAINTIFF'S ANSWERING CLAIM CONSTRUCTION BRIEF

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff
McKesson Information Solutions LLC

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500

DATED: January 20, 2006
Redacted Public Version Filed: January 25, 2006

## TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................ 1

  A.  The Specification's Disclosure Of "Software" Known To Those
      Skilled In The Art Is Appropriate. ............................................................ 1

  B.  The Terms Of The '164 Patent Are Amenable To Construction. .............. 4

  C.  Claims Are Generally Given Their Ordinary Meaning. ........................... 5

  D.  The Method Claims Are Not In Step-Plus-Function Form. ....................... 6

II.  ARGUMENT ..................................................................................................... 7

  A.  Disputed Term: "means for operating on a predetermined
      database." ................................................................................................ 8

      1.  Means-plus-function Analysis ...................................................... 8

      2.  Disputed Terms Within The "means for operating ...." .............. 10

          (a)  "predetermined database" ............................................... 10

               (1)  TriZetto's Construction Is Not Supported By,
                    And Is Contrary To, The Specification. ............... 10

               (2)  The Court Should Adopt McKesson's
                    Construction. ....................................................... 12

          (b)  "medical service code" .................................................. 13

          (c)  "A set of relationships among the medical service
               codes defining whether selected ones of the medical
               service codes are valid when input with other
               selected ones of the medical service codes" ................... 14

  B.  Disputed Term: "means for receiving at least one claim." ..................... 15

  C.  Disputed Term: "means for ascertaining whether the at least one
      claim contains a plurality of medical service codes." ............................ 15

      1.  The Functional Language Speaks For Itself, And TriZetto's
          Attempt To Introduce Unclaimed Limitations Must Fail. ........... 15

2.     The Corresponding Software Structure Does Not Include The Unnecessary Step Of Comparing A Multiple Code Count To One.................................................................16

D.     Elements Requiring "determining whether … codes" Meet Certain Criteria. .................................................................................18

     1.     "Means for determining whether one of the medical service codes in the at least one claim is not present in the predetermined database" (Claim 13) .........................................18

          (a)     TriZetto's Attempt To Modify The Express Claim Language Is Unnecessary And Improper.........................18

          (b)     The Specification Discloses Corresponding Software Structure And Expressly Links It To The Claimed Function.................................................19

     2.     The "determining …valid or invalid" Elements Of Claims 3(d), 15(d) And 16(c)..................................................21

          (a)     "Valid or invalid" Means Appropriate Or Not Appropriate For Payment..................................................21

          (b)     TriZetto's Modifications To The Express Claim Language Improperly Introduce New Limitations Without Any Evidentiary Support. .................................23

               (1)     The Properly Construed "determining …" Function Is Fully Supported By Corresponding Software Structure.......................24

     3.     Disputed Terms Within The "determining … [criterion]" Element: "non-medical criteria"; "medically exclusive"; And "medically determined relationships"..................................25

          (a)     The Express Claim Language Speaks For Itself, And TriZetto's Proposed Modifications Violate Canons of Claim Construction.........................................25

          (b)     TriZetto's Contention That These Elements Are Indefinite For Lack Of Corresponding Structure Rests On A Fundamental Misinterpretation Of The Claimed Function.........................................29

E.     Disputed Terms: "means for authorizing/rejecting medical service codes in response to the means for determining." .................................31

|  | 1. | TriZetto Improperly Introduces Multiple Unclaimed Limitations Into The "authorizing" And "rejecting" Elements Without Supporting Argument Or Evidence. | 31 |

|  | 2. | The Specification Discloses Well-Known Software As Structure Corresponding To The Claimed Functions, And TriZetto's Attempt To Construe The Corresponding Structure More Narrowly Must Fail. | 31 |

F. Disputed Terms: "authorizing/rejecting the at least one claim in response to the means for determining." ................................................. 32

|  | 1. | The Express Claim Language Is Not Indefinite And Should Be Construed To Mean What It Says. | 33 |

|  | 2. | The Corresponding Structure Is Neither Indefinite Nor Limited To Authentication or Rejection By A "User." | 35 |

G. The Dependent Claims Of The '164 Patent ............................................. 35

III. CONCLUSION ................................................................................................. 36

iii

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.B. Dick Co. v. Burroughs Corp.,*
   713 F.2d 700 (Fed. Cir. 1983)...................................................................................... 33

*Ballard Med. Prods. v. Allegiance Healthcare Corp.,*
   268 F.3d 1352 (Fed. Cir. 2001)............................................................................... 5, 18

*Budde v. Harley-Davidson, Inc.,*
   250 F.3d 1369 (Fed. Cir. 2001).......................................................................... 4, 9, 32

*Creo Prod., Inc. v. Presstek, Inc.,*
   305 F.3d 1337 (Fed. Cir. 2002).................................................................................. 21

*Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.,*
   275 F.3d 1347 (Fed. Cir. 2001).................................................................................. 28

*Epcon Gas Sys. Inc. v. Bauer Compressors, Inc.,*
   279 F.3d 1022 (Fed. Cir. 2002)................................................................................... 6

*Exxon Research & Eng'g Co. v. United States,*
   265 F.3d 1371 (Fed. Cir. 2001)................................................................................... 4

*Gemstar-TV Guide Int'l., Inc. v. Int'l Trade Comm'n,*
   383 F.3d 1352 (Fed. Cir. 2004)............................................................................. 12, 28

*Generation II Orthotics, Inc. v. Med. Tech., Inc.,*
   263 F.3d 1356 (Fed. Cir. 2001)............................................................................... 6, 16

*Harris Corp. v. Ericsson, Inc.,*
   417 F.3d 1241 (Fed. Cir. 2005)............................................................................... 1, 16

*Hoechst Celanese Corp. v. BP Chems. Ltd.,*
   78 F.3d 1575 (Fed. Cir. 1996).................................................................................... 28

*ICU Med., Inc. v. B. Braun Med., Inc.,*
   344 F. Supp. 2d 663 (N.D. Cal. 2004) ........................................................................ 6

*Invitrogen Corp. v. Biocrest Mfg., L.P.,*
   424 F.3d 1374 (Fed. Cir. 2005)................................................................................... 4

*Johnson Worldwide Assocs. v. Zebco Corp.,*
   175 F.3d 985 (Fed. Cir. 1999).................................................................................... 22

*Lucent Techs., Inc. v. Extreme Networks, Inc.,*
   367 F. Supp. 2d 649 (D. Del. 2005)............................................................... 5

*Med. Instr. and Diagnostics Corp. v. Elekta AB,*
   344 F.3d 1205 (Fed. Cir. 2003)................................................................ 1, 2

*Metrologic Instruments, Inc. v. PSC, Inc.,*
   No. 99-4876, 2004 U.S. Dist. LEXIS 24949 (D.N.J. Dec. 13, 2004).......................... 3

*Micro Chem., Inc. v. Great Plains Chem. Co.,*
   194 F.3d 1250 (Fed. Cir. 1999)............................................................... 15

*Northrop Grumman Corp. v. Intel Corp.,*
   325 F.3d 1346 (Fed. Cir. 2003)............................................................... 16

*O.I. Corp. v. Tekmar Co.,*
   115 F.3d 1576 (Fed. Cir. 1997)................................................................ 7

*Orion IP, LLC v. Staples, Inc.,*
   No. 2:04-CV-297, 2005 WL 3447887 (E.D. Tex. Dec. 15, 2005) ............................... 5

*Pfizer, Inc. v. Teva Pharms. USA, Inc.,*
   No. 05-1331, 2005 U.S. App. LEXIS 25123 (Fed. Cir. Nov. 22, 2005) .................... 11

*Phillips v. AWH Corp.,*
   415 F.3d 1303 (Fed. Cir. 2005)..........................................................*passim*

*Seal-Flex, Inc. v. Athletic Track & Court Constr.,*
   172 F.3d 836 (Fed. Cir. 1999)................................................................ 7

*Teleflex, Inc v. Ficosa N. Am. Corp.,*
   299 F.3d 1313 (Fed. Cir. 2002)............................................................... 11

*United States Surgical Corp. v. Ethicon, Inc.,*
   103 F.3d 1554 (Fed. Cir. 1997)............................................................ 5, 18

*Warrior Lacrosse, Inc. v. STX, LLC,*
   No. 04-70363, 2005 WL 1378752 (E.D. Mich. June 2, 2005) ..................................... 5

*Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.,*
   239 F.3d 1225 (Fed. Cir. 2001)........................................................... 16, 17

*White v. Dunbar,*
   119 U.S. 47 (1886)........................................................................... 10

*WMS Gaming Inc. v. Int'l Game Tech.,*
   184 F.3d 1339 (Fed. Cir. 1999)............................................................... 3

## I.    INTRODUCTION

TriZetto's attempts to redefine nearly every word of the Asserted Claims, often with little regard for what the '164 patent actually says, have resulted in an unfortunate number of disputes. However, four fundamental issues are common to many of the claim terms.

### A.    The Specification's Disclosure Of "Software" Known To Those Skilled In The Art Is Appropriate.

One of the primary disputes centers on the appropriate corresponding structure for the means-plus-function claim elements. TriZetto places great emphasis on the statement in *Harris Corp. v. Ericsson, Inc.*, 417 F.3d 1241, 1253 (Fed. Cir. 2005), that a "computer-implemented means-plus-function term is limited to the corresponding structure disclosed in the specification and equivalents thereof, and the corresponding structure is the algorithm." From this, TriZetto extrapolates that -- regardless of a patent's disclosure, the level of skill in the art, or the claims at issue -- the structure corresponding to a means-plus-function element can *never* properly be construed as "software." *See* D.I. 158 at 9 ("the word 'software' is not enough - the specific algorithm in the specification must be identified"). Based on this assumption, TriZetto concludes McKesson's constructions are insufficient and, contrary to the presumption of validity, certain claim elements are indefinite for inadequate corresponding structure.

*Harris,* however, does not impose a bright-line rule that "the word 'software' is not enough" or exempt computer-implemented inventions from the law governing the construction of means-plus-function elements generally. The Federal Circuit has made clear that the knowledge of those skilled in the art must be considered in identifying and construing corresponding structure and has emphasized that "[i]n past cases, we have been generous in finding something to be a corresponding structure when the specification contained a generic reference to structure that would be known to those in the art and that structure was clearly associated with performance of the claimed function." *Med. Instr. and Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1213-1214 (Fed. Cir. 2003) ("*MIDCO*"). The Federal Circuit in *MIDCO* described three such cases:

> For example, in *Intel Corp. v. VIA Technologies, Inc.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003), we found that the "core logic" modified to perform a particular program was adequate corresponding structure for a claimed function although the specification did not disclose internal circuitry of the core logic to show exactly how it must be modified. The core logic was described as structure in the

1

> specification, and the specification explained that it was the adapted core logic that was capable of performing the functions recited in the claim. *Id.* ...

> Similarly, in *S3, Inc. v. nVIDIA Corp.*, 259 F.3d 1364, 1370-71 (Fed. Cir. 2001), we concluded that a "selector" was adequately disclosed as corresponding structure for the "means ... for selectively receiving," although the electronic structure of the sensor and the details of its operation were not described. ...

> *Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369 (Fed. Cir. 2001), is yet another example of this line of cases. In *Budde*, we held that the district court correctly found that a patent disclosed adequate corresponding structure for a "status sensing means." *Id.* at 1381. ... We found that the specification's description of the vacuum sensor as a "commercially available unit" would have been understood by a person skilled in the art to disclose structure capable of performing the recited function. *Id.* at 1382. Unlike the specifications of the patents in suit, the specification in *Budde* disclosed a generic structure that was clearly linked to the claimed function.

344 F.3d at 1214. Notably, in discussing its prior decision in *Intel*, the Federal Circuit in *MIDCO* explained, "[t]here was no need for a disclosure of specific circuitry in that case, just as here ***there would be no need for a disclosure of the specific program code if software were linked to the converting function and one skilled in the art would know the kind of program to use.*" *Id.* (emphasis added). Thus, where the details of the structure linked to a claimed function are known to those skilled in the art, a specification need not recite those details to adequately describe the corresponding structure for a means-plus-function element.

As the Court acknowledged in its September 20, 2005 Order, *Harris* did not exempt computer-implemented means-plus-function elements from this law or eliminate the relevance of the knowledge of those skilled in the art to identifying the structure for such elements. Rather, as with other types of structure under section 112(6), a patent may properly disclose that the corresponding software and algorithm for performing a claimed function would be known to those skilled in the art:

> In order for ["software capable of"] ... to pass muster under Federal Circuit precedent, the specification must disclose "software" as the corresponding structure that performs the specific function in a means-plus-function claim limitation. Moreover, the "software" must either be specifically described or identified as "software" known to those of skill in the art. Therefore, plaintiff must ... identify[] those portions of the specification that disclose the correspondence between the software (the structure) and the function disclosed by each claim limitation, as well as ... where it is disclosed (or otherwise inferred) that the algorithm/software is known to those of skill in the art.

2

(D.I. 99 at 1-2 (citing *MIDCO*, 344 F.3d at 1211-1212 and *Harris*, 417 F.3d at 1253)). The '164 patent does just that.

As explained in McKesson's opening brief, the '164 patent explicitly discloses that the claimed inventions may be implemented using "*any type of suitable computer system* which can interact with the program of the present invention ... containing sufficient data processing capabilities and memory and *suitable **commercially available** database management **software programs to perform the desired functions**." D.I. 167, Exh. A (hereinafter "'164 patent") at col. 4, ll. 33-42 (emphasis added). The '164 patent further links software to the performance of the claimed functions at every conceivable level of detail, from a textual description and flowcharts of its operations down to unnecessarily disclosed exemplary source code of the preferred embodiment. Thus, the '164 patent "disclose[s] 'software' as the corresponding structure that performs the specific function[s]," clearly shows the correspondence between the software and the claimed functions, and discloses that the algorithm/software for "perform[ing] the desired functions" was "commercially available" and therefore known to those of skill in the art. Claimed functions, such as "operating on a database," "receiving at least one claim," or "determining whether a code is not present in a database," need not be supported by or limited to specific, expressly disclosed algorithms where the specification expressly states that skilled artisans would understand how to implement these functions in "commercially available" software.

Where an inventor provides the type of disclosure found in the '164 patent, it follows that the novelty of the invention does not lie in the details of some particular embodiment for performing a described function, such as specific lines of exemplary source code. Such a situation stands in contrast to *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339 (Fed. Cir. 1999), the ruling of which *Harris* largely restates, where the algorithm disclosed for performing the claimed function was the point of novelty. *See Metrologic Instruments, Inc. v. PSC, Inc.*, No. 99-4876, 2004 U.S. Dist. LEXIS 24949, at *40-41 (D.N.J. Dec. 13, 2004) ("In WMS Gaming, the algorithm at issue was not only unknown to one of ordinary skill in the art, but was also the only

3

point of novelty in the patent at issue.") (Exh. 1).[1]  In this case, the inventors were the first individuals ever to conceive of and use a computer to perform the claimed functions and overcome the problems addressed by the '164 patent. Thus, the novelty of the '164 patent is not defined by exemplary source code disclosed for performing the claimed functions in a computer system -- no prior computer systems performed those functions in any manner. No such prior system existed. That the point of novelty of the patented invention does not reside at the granular level of lines of source code is further evidenced by the fact that the exemplary code included with the patent is never discussed in the prosecution history. Thus, as the Court has explained, where a disclosure is made such as the one found in the '164 patent, construing the corresponding structure as "software capable of ..." performing a claimed function "pass[es] muster under Federal Circuit precedent." D.I. 99 at 1.

### B.    The Terms Of The '164 Patent Are Amenable To Construction.

Throughout its brief, TriZetto has asserted a number of claim elements are indefinite because TriZetto cannot understand them or identify structure for performing certain means-plus-function elements. However, a claim is indefinite only if it is "insolubly ambiguous" and is not "amenable to construction, however difficult that task may be." *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001). "Even if it is a formidable task to understand a claim, and the result not unanimously accepted, as long as the boundaries of a claim may be understood it is 'sufficiently clear to avoid invalidity [for] indefiniteness.'" *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1383 (Fed. Cir. 2005) (citation omitted). Moreover, to overcome the statutory presumption of validity, TriZetto must come forward with clear and convincing evidence that a claim element is not amenable to construction, including for its assertions that claims lack corresponding structure. *Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1376 (Fed. Cir. 2001). TriZetto does not and cannot square its indefiniteness argument with its own expert's admission that he was able to determine the metes and bounds of every claim.  Exh. 2 at 224:20-225:2.  TriZetto cannot prove the claims are not "amenable to construction" by clear and convincing evidence when its own experts are able to construe them.

---

[1] Citations to "Exh. ___" are to documents attached as exhibits to the Declaration of Michael A. Barlow In Support of Plaintiff's Answering Claim Construction Brief, dated January 20, 2006.

Nor can TriZetto manufacture clear and convincing evidence that the means-plus-function elements are indefinite by rewriting their functions, in a manner contrary to the claim language and specification, and then complaining that the new limitations it has concocted lack corresponding structure.

### C.    Claims Are Generally Given Their Ordinary Meaning.

Although the Federal Circuit has "frequently stated that the words of a claim 'are generally given their ordinary and customary meaning,'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)), TriZetto takes issue with the fact that McKesson urges the Court to follow that principle and apply the ordinary meaning to the claim terms. The Court need not devote its scarce resources to parsing the claim language of nearly every claim term in the '164 patent as suggested by TriZetto. *See, e.g.*, *United States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1570 (Fed. Cir. 1997) ("*Markman* did not hold that the trial judge must always parse the claims for the jury, whether or not there is an issue in material dispute as to the meaning or scope of the claims"; "[n]either this court nor the Supreme Court held that the trial judge must conduct such a rote exercise"); *see also Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir. 2001) ("As long as the trial court construes the claims to the extent necessary to determine whether the accused device infringes, the court may approach the task in any way that it deems best.").

Where, as here for the majority of the terms at issue, the ordinary meaning of terms is clear, the terms may be read to the jury without further construction by the Court. *See, e.g.*, *Lucent Techs., Inc. v. Extreme Networks, Inc.*, 367 F. Supp. 2d 649, 671 (D. Del. 2005) ("the Court construes the disputed terms as follows: 'arrangement' is construed consistently with its plain meaning as 'arrangement' [and]... declines to further interpret the term 'arrangement.'"); *Warrior Lacrosse, Inc. v. STX, LLC*, No. 04-70363, 2005 WL 1378752, at *8 (E.D. Mich. June 2, 2005) (holding claims terms were unambiguous and did not require construction where there was no "language in the specification which represents a clear disavowal of the ordinary and plain meaning of these terms") (Exh. 3); *Orion IP, LLC v. Staples, Inc.*, No. 2:04-CV-297, 2005 WL 3447887, at *4 (E.D. Tex. Dec. 15, 2005) ("'Customer' is not used in the claims in any manner

5

different from that of its ordinary meaning in the art, which is no different than its ordinary lay meaning. 'Customer' does not require construction.") (Exh. 4); *ICU Med., Inc. v. B. Braun Med., Inc.*, 344 F. Supp. 2d 663, 673 (N.D. Cal. 2004) ("The Court finds that the terms 'substantially flat' and 'substantially flush' are unambiguous and therefore require no construction.").

The claims of the '164 patent are written in straightforward terms, the vast majority of which are clear on their face, are readily understandable by a jury, and do not require further construction. TriZetto does not assert that the patent assigns any special meaning to the claim language but nonetheless asks the Court to redefine a host of unambiguous terms, often in a manner that is less clear than the claim language itself. *Markman* does not require an Article III Judge to needlessly pursue such wordplay and it would be inappropriate to do so here.

### D.    The Method Claims Are Not In Step-Plus-Function Form.

TriZetto argues every element of claims 1, 2, and 16 is written in "step-plus-function" form and therefore should be construed pursuant to section 112(6). TriZetto's argument is literally unprecedented and contrary to established Federal Circuit law.

TriZetto agrees that "only the language 'step for' and not 'step' alone or 'step of' invokes a presumption that Section 112, ¶ 6 applies." D.I. 158 at 8. Since none of the method claims in the '164 patent includes "steps for" language, they are presumed not to be subject to section 112(6). This presumption is not easily overcome. Indeed, it appears the Federal Circuit has never found that a claim triggers step-plus function analysis absent "steps for" language. Moreover, TriZetto offers in support of its groundbreaking construction -- that a method-claim element is subject to section 112(6) merely because it parallels the functional language of a means-plus-function element in the same patent -- has been repeatedly and categorically rejected. *See, e.g., Epcon Gas Sys. Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1028 (Fed. Cir. 2002) ("method claims that 'parallel,' or have limitations similar to, apparatus claims admittedly subject to § 112, paragraph 6 are not necessarily subject to the requirements of § 112, paragraph 6"); *Generation II Orthotics, Inc. v. Med. Tech., Inc.*, 263 F.3d 1356, 1368 (Fed. Cir. 2001) ("The mere fact that a method claim is drafted with language parallel to an apparatus claim with means-plus-function language does not mean that the method claim should be subject to an analysis under § 112, paragraph 6."); *O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576, 1584 (Fed. Cir. 1997)

6

("We understand that the steps in the method claim are essentially in the same language as the limitations in the apparatus claim, albeit without the 'means for' qualification. ... However, ... we [do] not agree ... that the "parallelism" of the claims means that the method claims should be subject to the requirements of section 112, P 6."). TriZetto's blanket conclusion that the method claim elements contain only functions is wrong. As the Federal Circuit explained in *O.I. Corp.*, a claim element is not transformed into a "step-plus-function" element merely because it includes a word ending in "ing." 115 F.3d at 1583 ("constru[ing] every process claim containing steps described by an 'ing' verb, such as passing, heating, reacting, transferring, etc. into a step-plus-function limitation ... would be limiting process claims in a manner never intended by Congress.").

Although TriZetto does not cite to a single instance where the Federal Circuit or any court found that claims lacking "steps for" language were found to be subject to section 112(6),[2] TriZetto urges this Court to be the first to do so, for *every* element of the method claims in the '164 patent.

## II.   ARGUMENT

Faced with a discovery record littered with admissions of infringement based on any reasonable interpretation of the asserted claims, TriZetto takes a novel approach to claim construction. Instead of letting the unambiguous claim language speak for itself or proposing reasonable constructions consistent with the claim language and intrinsic evidence, TriZetto generates a flood of claim construction disputes by unabashedly redrafting the language of nearly every claim element – adding, deleting, and changing claim limitations until the elements mean something quite different from what they say. Then, indiscriminately interpreting all elements under section 112(6) regardless of whether they are stated in means-plus-function format, TriZetto contends that its fanciful interpretations of the claim language lack corresponding disclosures in the specification, rendering the claims invalid for indefiniteness. With all due

---

[2]   In its opening brief, TriZetto relies heavily on Judge Rader's concurring opinion in *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836 (Fed. Cir. 1999). In *Seal-Flex*, however, the parties agreed that certain method claim elements were subject to section 112(6), without the triggering "step for" language. *Id.* at 842-43. Judge Rader's concurring opinion concluded that section 112(6) should not have been applied to the method-claim element. *Id.*

respect, there is a simpler explanation for why TriZetto cannot find disclosures supporting its outlandish constructions: they're wrong.

As detailed in McKesson's opening brief, when the claim terms are given their correct, ordinary meanings, there is direct and ample support in the specification. TriZetto's attempt to rewrite the claim language to manufacture an indefiniteness argument must be rejected, and the Court should adopt McKesson's proposed constructions.

### A.    Disputed Term: "means for operating on a predetermined database."

#### 1.    Means-plus-function analysis

As an initial matter, TriZetto mischaracterizes this element as appearing "in every independent claim of the '164 patent." D.I. 158 at 2; *see also id.* at 11-12 ("[t]he language, 'means for operating on a predetermined database ...,' or other similar language is contained in each of the claims asserted in the patent"). In fact, the "means for operating on a predetermined database ..." element appears only in the preambles of claims 1, 2, and 16. Claims 3-6 and 8-15 simply require that the computer system include "a predetermined database stored in the associated memory ..." — an element that conspicuously lacks the "means for" language that would trigger the presumption that section 112(6) applies. Moreover, those claims do not even include the functional language of "operating on" the predetermined database. Where, as here, the "predetermined database" elements of claims 3-6 and 8-15 include neither "means" nor function, it would be wholly improper to apply section 112(6).

Aside from the disputes over what TriZetto identifies as the "constituent terms" of the element (addressed below), the parties' dispute here concerns only the structure corresponding to the "means for operating ...." TriZetto argues that "nothing in the specification ... links any structure to this means-plus-function element," that the corresponding structure disclosed in the specification is "not enough structure to support the function, " and that McKesson must identify "the specific algorithm to carry out the function." D.I. 158 at 11-12 (citing *Harris*, 417 F.3d at 1253).

First, the corresponding structure disclosed in the specification is more than adequately linked to the claimed function. Despite its protestations, TriZetto expressly "*agrees*" that the

8

corresponding "structure disclosed in the specification is located at Fig 1, col. 4, ll. 33-42 ...."[3] D.I. 158 at 11 (emphasis added); *see also* D.I. 170 at 20-21. Particularly where, as here, TriZetto itself has managed to identify the disclosed structure corresponding to the claimed function, it cannot prove a "lack of corresponding structure ... by clear and convincing evidence." *Budde*, 250 F.3d at 1380-81.

TriZetto's argument that the disclosed structure is "not enough structure" also fails. D.I. 158 at 11. Relying solely on *Harris* to make its argument, TriZetto ignores the Court's prior analysis of the controlling law, as discussed in section I.A. Here, the specification expressly links "database management software programs," '164 col. 4, l. 39, to the claimed function *and* discloses that such programs are "commercially available," *id.* at l. 38 – *i.e.*, known to those of skill in the art. *See Budde*, 250 F.3d at 1382; *see also* '164 col. 4, l. 39. Nothing more is required.

Finally, the deposition testimony cited by TriZetto is irrelevant to whether the claimed function is adequately supported by corresponding structure. First, TriZetto cites testimony from Dr. Wilson's deposition stating that "'[t]here is nothing in the *claims* that specifies a specific relationship between specific codes.'" D.I. 158 at 12 (emphasis added). Thus, Dr. Wilson's answer addresses only the absence of any specific *claimed* relationship between codes — not what is disclosed in the *specification*. Indeed, the lack of any specific *claimed* relationship among codes defeats TriZetto's argument that the specification should have disclosed more information about detailed relationships in the database.

Regardless, the specific contents of the database itself are irrelevant to the structure for *operating on* the database. To the extent any disclosure of the specific rules in the database could be considered relevant, the patent's lengthy discussion of the

---

[3]   As noted in McKesson's opening brief, TriZetto mischaracterizes McKesson's claim construction position as including "Appendix D" (containing the inventor's exemplary software code) as part of the structure corresponding to the claimed function. In fact, McKesson cited Appendix D only in support of the fact that any specific algorithm(s) performed by the disclosed "commercially available database management software programs" would be known to one of ordinary skill in the art. '164 at col. 4, ll. 38-39.

rules, supported by Appendices defining them and providing examples of their application, is more than adequate. Again, therefore, TriZetto has failed to prove by clear and convincing evidence that the specification fails to disclose structure corresponding to the claimed function.

In sum, McKesson has properly identified and construed the structure corresponding to "operating on a predetermined database . . ." as "data processing capabilities, memory, and software capable of managing a database, as well as their equivalents." D.I. 148, Exh. A at 1. TriZetto's counter-argument that the specification lacks sufficient corresponding structure is (1) based on a misinterpretation of controlling law, and (2) unsupported by any relevant evidence – much less the requisite clear and convincing evidence.

### 2.    Disputed terms within the "means for operating …."

#### (a)    "predetermined database"

As TriZetto acknowledged in its opening brief, "it is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" D.I. 158 at 6 (quoting *Phillips*, 415 F.3d at 1312). For this reason, the Supreme Court has long recognized that it would be "unjust to the public, as well as an evasion of the law, to construe [the patent claims] in a manner different from the plain import of its terms." *White v. Dunbar*, 119 U.S. 47, 52 (1886). Despite this settled principle, TriZetto departs entirely from the claim language "predetermined database" and distorts a straightforward two-word element into a 35-word "construction" containing three additional limitations that appear nowhere in the '164 patent: "a database *[1] containing a single computer readable table [2] that is designed to be modified or updated only by the system designer or vendor, and [3] that is not designed to be modifiable by the end user*." D.I. 148, Exh. A at 2 (emphasis added). This rewriting of plainly worded claim language is contrary to the law and every source of evidence bearing on its proper construction.

#### (1)    TriZetto's construction is not supported by, and is contrary to, the specification.

As an initial matter, the limitations TriZetto proposes do not, as TriZetto claims, "provide some insight into the way the term was intended at the time the claims were drafted." D.I. 158 at 13. Instead, the limitations have little, if any, bearing on the meaning of "predetermined." The

10

only question implied by the word "predetermined" is when the database is determined. TriZetto's construction, however, ignores the issue of *when* the database is determined and instead focuses only on *who* may modify the claimed database.

TriZetto argues that its construction is supported by the specification and notes that *Phillips* "re-affirmed ... the claims specification, and prosecution history are the principal sources for claim construction." *Id.* quoting *Phillips*, 415 F.3d at 1311-1326. However, the Federal Circuit in *Phillips* also reaffirmed that a specification must include "an intentional disclaimer, or disavowal, of claim scope by the inventor" before limitations may be read into a claim, 415 F.3d at 1316, a standard the Federal Circuit has held to require "expressions of manifest exclusion or restriction." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002). The '164 patent includes no such disclaimer and TriZetto does not contend that it does. Rather, TriZetto argues that the specification "implies" that the three additional limitations it proposes "follow logically" from the '164 patent's teachings because, in part, it is "not common" for a user to modify the core of a program. D.I. 158 at 14-15. This argument is legally insufficient and an inaccurate description of the specification.

The preferred embodiment teaches that the database can and should be updated and modified and does not disclose or imply any limitation on who should do so.[4] *See, e.g.,* '164 col. 3, ll. 32-37; col. 4, ll. 64- 'col. 5, l. 3; col. 10, ll. 3-7, 55-60. As the Federal Circuit recently reiterated, such a "claim construction that excludes a preferred embodiment . . . is 'rarely, if ever, correct.'" *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, No. 05-1331, 2005 U.S. App. LEXIS 25123, at *18 (Fed. Cir. Nov. 22, 2005) (D.I. 167, Exh. I) (citation omitted). The '164 patent does not mention the terms "system designer," "vendor," or "end user," let alone require that such an unmentioned "system designer" specifically prohibit an end user from updating the system. The '164 patent's teachings are in no way limited to a "vendor" and are equally applicable to a payer organization, such as an insurance company, seeking to design its own system for application to the medical claims it processes (*i.e.,* a circumstance in which the "system designer" would also be the "end user"). Moreover, the specification never states that the user is a layperson, much less

---

[4]    TriZetto offers no argument or support for its proposed addition of the limitation, "single computer-readable table." D.I. 148, Exh. A at 2.

"intentionally disclaims" anyone other than a layperson from using the system.    In fact, McKesson's intended customers at the time of the invention included sophisticated organizations that would typically employ medical claims processing experts.

Furthermore, in its summary judgment briefing, TriZetto concedes the specification itself does not limit the claims when it argues that the Court should read these limitations from a business memo into the specification and from there into the claims.  D.I. 210 at 18-19.

TriZetto also tries to argue that the specification somehow expressly limits the term predetermined database because "the HISTORY database is used to change ...the program and rules database" and it is "not common for a user to modify the very core of the program that a user is given."  D.I. 158 at 15.  It is telling that the strongest statement TriZetto can make on this point is that it is "not common" for a user to modify the core of a program.  This is hardly an intentional disclaimer prohibiting an end user from modifying the HISTORY database, or any database, mentioned in the '164 patent.

### (2)    The Court should adopt McKesson's construction.

Contrary to TriZetto's transparent attempt to manufacture a non-infringement argument by adding new limitations, as discussed in McKesson's opening brief, there is no reason for the Court to depart from the fundamental principles of claim construction and apply the ordinary meaning.  The '164 patent claims are directed to computer systems and methods for processing codes in medical claims to determine whether the codes are appropriate for payment, based on relationships between the medical service codes in a "predetermined database."  To comport with the overall context of the claims and the specification's description of the invention, the only requirement is that the database be determined at the time the medical claims are processed.  This meaning is clear from the word "predetermined" itself and no further construction is required.

TriZetto's emphasis that "predetermined" is not a term of art with a specialized technical meaning defeats its attempt to import the superfluous limitations it proposes.  The Federal Circuit has made clear that where a claim element is not a specialized term of art, it is to be construed according to its meaning in customary English usage. *See, e.g., Gemstar-TV Guide Int'l., Inc. v. Int'l Trade Comm'n,* 383 F.3d 1352, 1366 (Fed. Cir. 2004) ("Because the parties have presented no evidence that 'visual identification' has a specialized technical meaning in the art, we consult

non-technical dictionary definitions to determine its ordinary meaning."). TriZetto's construction does not even approach such a meaning for "predetermined," which means just what it says, determined in advance.

TriZetto also argues that the term should not be given its ordinary meaning because of a

D.I. 158 at 12-13.  These definitions are not contradictory.[5]

Additionally, TriZetto's own expert defined the word "predetermined" in the context of the claims as "as of a moment in time exists as defined." Exh. 2 at 211:12-21.  Contrary to TriZetto's contrived "inconsistency," there is significant agreement among both parties' experts that "predetermined" means what it says.

Finally, TriZetto falsely asserts that "McKesson seeks to ignore the meaning and use of the word 'predetermined.'"  D.I. 158 at 13.  Rather, McKesson urges the Court to adopt the ordinary meaning of the term "predetermined database."



(b)    "medical service code"

TriZetto's construction of the term "medical service code" as "a code, *description, or other indicator* that is used to denote a medical service, treatment, or procedure," D.I. 158 at 15,

---

13

is unnecessarily vague and contradicts the specification. As an initial matter, TriZetto appears to agree that the word "code" has a sufficiently clear definition, as it uses that term in its proposed construction. Despite this, TriZetto suggests that "code" does not mean code, but should also include a "description or other indicator." This definition is contrary to the specification, which expressly distinguishes "codes" from "descriptions." *See, e.g.,* '164 col. 10, ll. 17-50 (describing correlating a description to a code before it can be processed); '164 col. 4, ll. 51-56 (user may enter "a description ... *or* the codes") (emphasis added); '164 col. 5, ll. 15-17 (discussing whether a "code and description do not match"). Moreover, TriZetto's emphasis on two specification excerpts that refer to "other classification systems" is misplaced. D.I. 158 at 15. Neither of these excerpts disclose or suggest that such classification systems encompass "description[s] or other indicator[s]" as opposed to different forms of *codes. Id.* at 15-16. To the contrary, the specification makes clear that these "other classification systems" are "*coding* methods." '164 col. 3, ll. 38-42 ("The present invention utilizes the CPT-4 codes ... although *other coding methods* for classification of medical procedures such as the CRVS discussed above may be utilized as well.") (emphasis added). TriZetto cannot overcome these express teachings of the specification with extrinsic evidence, *Phillips,* 415 F.3d at 1317-18, particularly where the testimony it cites refers only to "codes" and does not mention "description[s] or other indicator[s]." *See* D.I. 158 at 16 ("'dental procedure *codes* or surgical *codes* ...'").

McKesson's construction, "*a code representing a particular medical service or procedure, e.g., CPT-4 codes, CRVS codes, and similar medical service or procedure codes,*" is consistent with the intrinsic record, supported by the evidence TriZetto cites, and should be adopted. D.I. 148, Exh. A at 1.

      (c)    **"A set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when input with other selected ones of the medical service codes"**

The parties agree that "valid" in the context of the set of relationships among medical service codes means "appropriate for payment." However, the remainder of TriZetto's construction unnecessarily rewrites straightforward claim language, rendering it less clear and omitting a claim term. Rewriting this element in a "format as used by computer programs to express the application of logic rules" as TriZetto proposes might have some meaning to a

14

computer engineer, but it will hardly benefit lay jurors. D.I. 158 at 16. TriZetto's "attempt[] to clarify the logic of the step" is also unnecessary, as the claim element does not recite any "step" but rather structure. *Id.* Moreover, TriZetto's construction reads the word "other" out of the claim language entirely. Given that TriZetto does not have "any real disagreement" with McKesson's construction, *id.*, which corrects this oversight, the set of relationships should be construed as defining whether a code is "appropriate for payment when input with one or more different medical service codes." D.I. 148, Exh. A at 2.

**B.    Disputed Term: "means for receiving at least one claim."**

TriZetto does not advance any argument concerning the construction of either the functional language or corresponding structure for this element. McKesson respectfully requests that the Court adopt its proposed construction. *See* D.I. 170 at 21-23.

**C.    Disputed Term: "means for ascertaining whether the at least one claim contains a plurality of medical service codes."[6]**

**1.    The functional language speaks for itself, and TriZetto's attempt to introduce unclaimed limitations must fail.**

Concerning the functional language of this element, TriZetto ironically accuses McKesson of seeking to "distort the meaning" of the element by simply saying it speaks for itself. D.I. 158 at 17. However, TriZetto seeks to distort the element's plain meaning of "means for ascertaining whether the at least one claim contains a plurality of medical service codes" by appending the limitation, "in order to determine whether multiple code edits should be checked."[7] D.I. 148, Exh. A at 15. Contrary to TriZetto's addition of a second function to this element, the Federal Circuit has made clear that "§ 112, ¶ 6 … does not permit limitation of a means-plus-function claim by adopting a function different from that *explicitly* recited in the claim." *Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999) (emphasis added). The "ascertaining" function requires just that and does not imply or require the additional cause or step TriZetto proposes. Indeed, TriZetto's attempt to import a limitation into this function is

---

[6]    TriZetto has proposed an identical construction of the same claim language that appears in method claims 2 and 16 and should be rejected for the reasons discussed herein.

[7]    TriZetto's additional, improper modifications to the express functional language are addressed in McKesson's opening brief on claim construction. D.I. 170 at 24.

particularly improper given that it did not assert any of its terms required construction until days before the present briefing. D.I. 170 at 1,

TriZetto's distortion of the function is a transparent effort to read in structure that is unnecessary to the function actually claimed in the hopes of manufacturing a non-infringement argument. *Cf., Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001) ("Under § 112, ¶ 6, a court may not import functional limitations that are not recited in the claim, or structural limitations from the written description that are unnecessary to perform the claimed function."). However, as the Federal Circuit has made clear, improperly defining a function, like TriZetto does here, naturally results in an improper identification of structure. *See Generation II*, 263 F.3d at 1363 ("Correctly identifying the claimed function is important, because '[a]n error in identification of the function can improperly alter the identification of the structure ... corresponding to that function.'") (quoting *Micro Chem.*, 194 F.3d at 1257).

### 2. The corresponding software structure does not include the unnecessary step of comparing a multiple code count to one.

Once the claimed function has been properly construed to exclude the limitations that TriZetto seeks to import, the parties' dispute concerning the structure corresponding to the claimed function is easily resolved in McKesson's favor. *See id.* at 1363. While McKesson's proposed construction fully respects the functional claim language and identifies the structure necessary to perform the function,[8] TriZetto seeks to include additional, unnecessary structure.

It is fundamental that means-plus-function elements are construed to include only structure *necessary* to perform the claimed function. *See, e.g., Harris*, 417 F.3d at 1264 ("defining the structure turns on what is recited in the written description, clearly linked to the stated function, and *necessary* to perform that function.... [A]n argument about structure directs the court to search the written description for *necessary* and linked structural descriptions") (emphasis added); *Northrop Grumman Corp. v. Intel Corp.*, 325 F.3d 1346, 1352 (Fed. Cir. 2003)

---

[8]    For example, despite TriZetto's argument that McKesson does not give appropriate meaning to the term "whether," McKesson's proposed construction of the corresponding structure expressly includes the term: "software capable of ascertaining *whether* the at least one claim contains a plurality of medical service codes"). D.I. 148, Exh. A at 15. After focusing on its importance, TriZetto's proposed construction of the claimed function ironically omits the term entirely: "identifying if the claim contains more than one medical service code in order to determine whether multiple code edits should be checked." *Id.*

("A court may not import into the claim features that are **unnecessary** to perform the claimed function") (emphasis added); *Wenger Mfg., Inc.*, 239 F.3d at 1233.

Here, McKesson contends that the corresponding structure is "software capable of ascertaining whether the at least one claim contains a plurality of medical service codes." More specifically, McKesson cites specification excerpts describing software that determines the number of medical service codes in a given claim. *See, e.g.*, '164 col. 5, ll. 45-47 ("In step 18, the number of codes resulting from the foregoing steps is counted and stored."); *id.* col. 5, ll. 52-53 ("It will be recalled that in step 18 the number of codes was determined and stored."). Once the codes contained in the claim have been counted, it has been "ascertain[ed] whether the … claim contains a plurality of … codes." If the count is one, then it does not contain a plurality of codes. If the count is two or higher, it does contain a plurality of codes. No further structure is necessary to accomplish the claimed function.

TriZetto, by contrast, seeks to introduce an additional, unnecessary structural limitation of comparing the code count to one. Specifically, TriZetto points to a decision sequence in the '164 patent's Figure 2, boxes 20-21, which runs a program called "MULTIPLE PRG." if the "No. OF CODES > 1," and to related lines of programming code. As noted above, TriZetto seeks to create a correspondence with this structure by improperly importing the functional limitation, "in order to determine whether multiple code edits should be checked." Absent that improper limitation, there is no connection to the unnecessary structure TriZetto proposes – a decision sequence that compares the number of codes to one in order to determine whether to run "MULTIPLE.PRG."[9] Moreover, the structure cited by TriZetto is superfluous in any event. Under TriZetto's reasoning, a computer system would not have ascertained whether a count of two or more codes is a "plurality" unless it expressly compared the code count to one. That argument is absurd: a fundamental utility of computer systems is to recognize numbers and their

---

[9]    TriZetto further argues that "the specification expressly distinguishes between counting the number of codes, which is stored as part of the entry program, and 'ascertaining' whether there is a plurality of codes prior to performing multiple code checking (Multiple Prg.)" D.I. 158 at 18. The purported distinction is incorrect and is in any event irrelevant to the functional claim language, which is silent as to whether the "ascertaining" step occurs as part of an "entry program" or as a prelude to running "Multiple Prg."

significance, and a count of "2" or higher need not be compared to "1" to ascertain that it is a plurality.

In sum, TriZetto's proposed construction is fundamentally flawed in at least two respects. First, TriZetto improperly imports unclaimed limitations into the functional language. Second, TriZetto then relies on its improperly imported functional limitations to include structure that is unnecessary to perform the claimed function. The Court should reject TriZetto's flawed construction and adopt McKesson's proper interpretation.

**D.**     **Elements Requiring "determining whether ... codes" Meet Certain Criteria.**

      **1.**     **"Means for determining whether one of the medical service codes in the at least one claim is not present in the predetermined database" (Claim 13).**

As an initial matter, TriZetto's lone argument that element 1(b) should be construed as a step-plus-function because the "determining element[] ... [is] identical" to the functional language of 13(c) has been consistently rejected by the Federal Circuit. *See* section I.D. , above. TriZetto's other arguments should also be rejected.

      **(a)**     **TriZetto's attempt to modify the express claim language is unnecessary and improper.**

Concerning the functional language of element 13(c) (and the express language of element 1(b)), TriZetto takes issue with McKesson's position that the language should take its ordinary meaning and simply be read to the jury. TriZetto does not, however, point to any term in the express claim language that purportedly has an ambiguous, technical or other special meaning. The Court need not devote its scarce resources to parsing such clear claim language. *See, e.g., United States Surgical*, 103 F.3d at 1570; *see also Ballard Med.*, 268 F.3d at 1358. "[D]etermining whether any medical service code contained in the at least one claim is not present in the predetermined database," should take its ordinary meaning and simply be read to the jury, as McKesson contends.

TriZetto, by contrast, seeks to modify the functional language to mean "perform[ing] a check to verify that the medical service codes that are input on the medical claim are present in the predetermined database." D.I. 158 at 19. TriZetto's proposed construction suffers various flaws, the most serious of which is to construe the claimed criterion ("whether any medical

18

service code ... *is not* present in the predetermined database," '164 col. 117, ll. 11-13) as its diametric opposite ("that the medical service codes ... *are* present in the predetermined database," D.I. 148, Exh. A at 4). As discussed further below, TriZetto's reversal of the functional language's meaning appears calculated to support its argument that the patent's specification does not disclose corresponding structure. Moreover, TriZetto offers no argument whatsoever, whether based on intrinsic or extrinsic evidence, for redrafting "determining whether" as "performing a check to verify that." TriZetto's attempt to needlessly rewrite the claim language should be rejected, since its inability to find supporting structure for its construction confirms the impropriety of TriZetto's attempt.

### (b) The specification discloses corresponding software structure and expressly links it to the claimed function.

Concerning the corresponding structure (applicable, as discussed above, only to element 13(c)), TriZetto first argues that the disclosure lacks "linking language" sufficient to associate "software" or any other structure with claimed function. *See* D.I. 158 at 20. Contrary to TriZetto's argument, the specification expressly discloses "commercially available database management *software* programs *to perform the desired functions*." '164 col. 4, ll. 38-40 (emphasis added). Moreover, anyone of ordinary skill in the art would understand that such "commercially available *database* management software programs" correspond to the particular function of "determining whether any medical service code ... is not present in the predetermined *database*." Indeed, TriZetto's own expert has opined that "[c]hecking the validity of input data by comparing it against a list of known good values is one of the most fundamental techniques taught by every introductory programming course." D.I. 217, Exh. 10 at 4. In addition, the '164 patent further discloses two examples that clearly link software to the claimed function : (1) a lookup for a code in the predetermined database; and (2) a lookup for a code in a list of all possible codes that could be present in the predetermined database.

*First*, TriZetto ignores that, in describing items 22 and 23 of '164 Figure 4 ("a flowchart of the operation of the programmed computer for multiple entries"), the specification discloses: "examin[ing the multiple codes] first by *looking up from INTERACT database 24 any references to those specific multiple codes* presented in step 22 to which will be applied one or

19

more of the rules ...." '164 col. 4, ll. 9-10; col. 6, ll. 19-26 (emphasis added). Anyone of ordinary skill in the art would understand that a computer program that looks up references to a code in a database necessarily determines whether the code is not present in the database. Moreover, the lookup software linked in the '164 patent specification to the claimed functions determines whether the codes are not present in the INTERACT database — the very database that TriZetto concedes is the preferred embodiment of the "predetermined database." In sum, the specification clearly associates the "determining ..." element of claim 13 with software capable of interacting with the database to perform the claimed function.

*Second*, the '164 patent discloses software that performs a lookup for a code in the "ALLCODE" database, a listing of all of the codes for a given classification system. *See id.* col. 4, ll. 7-8; col. 5, ll. 8-15. Because the ALLCODE database includes every code that could possibly be present in the predetermined database, (the INTERACT database) determining that a code is not in the ALLCODE database necessarily determines that it is not present in the predetermined database. *See* Figure 1. Properly construed, this is all the claimed function



**Figure 1.**

requires. However, to craft an indefiniteness argument TriZetto reverses the meaning of the functional language from determining a code is **not** present to determining a code **is** present and complains that the specification does not include corresponding structure for TriZetto's rewritten function.[10] TriZetto cannot overcome the specification's clear disclosure of software as the corresponding structure by ignoring the specification's express teachings and attacking its own straw-man construction. As explained in McKesson's opening brief, the meaning of this function is clear and amply supported by corresponding structure in the specification. *See* D.I. 170 at 16;

---

[10] Logically, a code **not** present in the ALLCODE database cannot be present in the INTERACT database; conversely, however, a code that **is** present in the ALLCODE database need not be present in the INTERACT database.

*Creo Prod., Inc. v. Presstek, Inc.*, 305 F.3d 1337, 1345 (Fed. Cir. 2002) ("[I]n the case of a means-plus-function claim . . . the written description may disclose distinct and alternative structures for performing the claimed function.").

### 2. The "determining ...valid or invalid" elements of claims 3(d), 15(d), and 16(c).

Means-plus-function claim elements 3(d) and 15(d) require a "means for determining whether one of the medical service codes in the plurality of medical service codes is valid or invalid by interacting with the database and the set of relationships contained in the database." Method-claim element 16(c), by contrast, lacks "means for" or "step for" language and claims only "determining ...." Here again, TriZetto labels element 16(c) as a "step-plus-function" element subject to section 112(6) based solely on the argument that its language parallels the functional language of elements 3(d) and 15(d). As discussed above, that argument must fail. *See* section I.D., *supra*. Thus, while any construction of the express "determining ..." language should apply to all three elements, only elements 3(d) and 15(d) are further limited to the corresponding structure or its equivalents under section 112(6).

#### (a) "Valid or invalid" means appropriate or not appropriate for payment.

TriZetto's construction of "valid or invalid" in the determining elements of claims 3, 15, and 16 manages to contradict the language of those claims, other claims in the '164 patent, the specification, its own expert's view of the proper construction, and, most remarkably, TriZetto's own construction of identical language within the same claims. Claims 3, 15, and 16 require determining whether a medical service code "is valid or invalid by ***interacting with the database and the set of relationships contained in the database*.**" '164 cols. 117, 120. Each claim makes clear that the relationships upon which this determination is based "defin[e] whether selected ones of the medical service codes are ***valid*** when input with other selected ones of the medical service codes." *Id.* (emphasis added). Thus, each claim uses the term "valid" twice – first in describing the code-to-code relationships in the database and again in describing a determination made regarding a particular code by interacting with those relationships.

In each claim, TriZetto agrees that valid means "appropriate for payment," D.I. 148, Exh. A at 13, in the first instance of the code-to-code relationships defining whether a code is

valid when input with other code(s) but inexplicably contends that it means something else – "the code exists in the database" – in the context of making a determination based on those same relationships. *Id.* at 17. It is axiomatic that the same claim term must be construed consistently throughout a patent's claims. *Phillips*, 415 F.3d at 1314. TriZetto's construction not only casts aside this fundamental canon of claim construction, it goes one step further and interprets the same word inconsistently within the same claim. Not surprisingly, TriZetto's construction, in addition to contradicting itself, is contrary to the language of the claims. If determining whether a code was valid meant only confirming "the code exists in the database," D.I. 148, Exh. A at 17, there would be no need for the claimed requirement of "interacting with … the set of relationships," '164 cols. 117, 120, that define whether a code is "valid when input with other selected ones of the medical service codes." *Id.* col. 120, ll. 28-29.

TriZetto's proposed construction also runs afoul of other claims in the '164 patent. For example, claims 1 and 13 expressly recite determining whether a code "is not present in the predetermined database" – the very determination TriZetto proposes "valid or invalid" should be construed to require. Construing an element in one claim to render a different element in another claim redundant is plainly improper. *See Phillips*, 415 F.3d at 1314 ("the usage of a term in one claim can often illuminate the meaning of the same term in other claims. Differences among claims can also be a useful guide in understanding the meaning of particular claim terms.").

TriZetto contends its divergent constructions of the same term are required because the specification uses the term "valid" in the context of a code passing a preliminary lookup. However, TriZetto's argument ignores the other portions of the specification that explicitly use the term "valid" to mean appropriate for payment. *See, e.g.*, '164 col. 10, ll. 10-16. The fact that the specification may use a term differently in different contexts is perfectly natural, and the Federal Circuit cautions against seizing upon just one disclosed meaning to narrow the construction. *See Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 991 (Fed. Cir. 1999) ("Varied use of a disputed term in the written description demonstrates the breadth of the term rather than providing a limited definition."). Moreover, as discussed above, only the latter meaning of valid – appropriate for payment – comports with the express claim language.

22

In sum, the parties agree that the ordinary meaning of "valid" is "appropriate for payment," and TriZetto's attempt to selectively depart from that meaning within the same claims is contrary to the law and the claim language itself. Indeed, TriZetto's construction does not comport with its own expert's view of the proper interpretation of the term. *See* Exh. 2 at 184:21-185:8 ("[V]alid ... in the claims....has a very broad meaning of this is an acceptable or unacceptable circumstance is how I would paraphrase it.").

        (b)    **TriZetto's modifications to the express claim language improperly introduce new limitations without any evidentiary support.**

TriZetto makes several modifications to the "determining ..." language of claims 3, 15, and 16, as illustrated by the table below (TriZetto's modifications emphasized):

| Claim Language | TriZetto's Proposed Construction |
|---|---|
| determining whether | *making a determination that* |
| one of the medical service codes | one of the medical service codes |
| in the plurality of medical service codes | *entered on the claim* |
| is valid or invalid | is 'valid or invalid' |
| by interacting with the database | *based on* the database |
| and the set of relationships contained in the database. | and set of relationships contained in the database. |

D.I. 148, Exh. A at 16. TriZetto cites neither intrinsic nor extrinsic evidence in favor of its selective modifications to the claim language. That alone should be reason enough to reject its construction. TriZetto relies instead on the naked argument that its modifications to the express claim language are "immediately apparent from the language of the claim itself." D.I. 158, at 21. To the contrary, the only thing that is "immediately apparent" is the claim language itself, which needs no further construction – as McKesson contends.

       TriZetto's modifications also should be rejected because they are unnecessary and improperly alter the meaning of the claim element. First, its attempt to replace "determining whether," which is clear on its face, with "making a determination that" is unnecessary and highly suspect in view of TriZetto's focus on the importance of the term "whether" elsewhere in its briefing. *See id.* at 18. Second, TriZetto improperly seeks to replace the express language "in the plurality of medical service codes" with codes "entered on the claim." Apparently, TriZetto

seeks to improperly read into the claim a limitation concerning manual data "entry" despite its utter lack of support anywhere in the claim language. Third, TriZetto's introduction of quotation marks around "'valid or invalid'" signals the incorporation of TriZetto's flawed construction of "valid or invalid" — a misinterpretation on which TriZetto then relies to argue the corresponding structure is insufficiently disclosed, as discussed below.

Finally, TriZetto attempts to change the express claim limitation of "interacting with the database" to "based on the database." This modification appears calculated to support TriZetto's argument that the corresponding structure is insufficient or indefinite — while the structure corresponding to "interacting with the database" is sufficiently disclosed as "commercially available database management software programs," TriZetto seeks to introduce a different limitation that would make the particular database contents appear relevant. TriZetto can only make a colorable argument that the specification insufficiently discloses corresponding structure if its improper modification is accepted. Each of TriZetto's strategic modifications to the claim language should be rejected.

### (1) The properly construed "determining ..." function is fully supported by corresponding software structure.

TriZetto's argument that the specification fails to disclose corresponding structure depends entirely on its misinterpretation of "valid or invalid" to mean existing or not existing in the database. It relies on that misinterpretation to repeat its argument concerning element 13(d) — specifically, that the only corresponding structure is a code lookup in the "ALLCODE database," which is not the "predetermined database" of the invention. As discussed above, however, "valid or invalid" means appropriate or inappropriate for payment, so TriZetto's identification of structure corresponding to determining whether a code exists in the database is incorrect.[11]

When "valid or invalid" in elements 3(d) and 15(d) is properly construed to mean appropriate or inappropriate for payment, it becomes clear that the specification discloses

---

[11]   In the event the Court were to accept TriZetto's flawed construction of "valid or invalid" to mean existing or not existing in the database, TriZetto's argument that the specification does not disclose sufficient, corresponding structure nonetheless fails for all the same reasons discussed above in connection with the "means for determining ..." element of claim 13.

software as the corresponding structure. *See* D.I. 170 at section VII.B.3.d.2. As discussed in McKesson's opening brief, a code is determined to be "valid or invalid" for payment by running the disclosed software that interacts with the database to implement any of the various rules described throughout the patent specification and its appendices. *Id.* Thus, software is linked to the claimed function virtually throughout the specification and appendices. In sum, TriZetto's argument that "there is no [corresponding] structure" rests on a self-serving misinterpretation of the claimed function, exacerbated by a myopic view of the specification. D.I. 148, Exh. A at 16.

### 3. Disputed terms within the "determining ... [criterion]" element: "non-medical criteria"; "medically exclusive"; and "medically determined relationships."

Lumping claim elements 2(c), 10(d), 12(d), and 14(d) together, TriZetto once again seeks to obscure a method claim element not subject to section 112(6) (element 2(c)) among elements stated in means-plus-function format (elements 10(d), 12(d), and 14(d)). Aside from labeling element 2(c) a "step-plus-function element," D.I. 158 at 24, TriZetto offers no particularized argument whatsoever for subjecting the element to section 112(6). As discussed above in section I.D., TriZetto's generalized arguments for step-plus-function treatment fall woefully short of overcoming the presumption against applying section 112(6). Thus, while the parties' disputes concerning the express claim language apply to all four elements, only elements 10(d), 12(d), and 14(d) should be limited to the corresponding structure and equivalents.

### (a) The express claim language speaks for itself, and TriZetto's proposed modifications violate Canons of claim construction.

Concerning the claimed functions and steps, TriZetto's confusing, initial misstatement of several elements' express language, D.I. 158 at 23, necessitates a correction. The claimed criterion in element 2(c) and 14(d) are whether codes are "mutually exclusive due to non-medical criteria." Only element 10(d) determines whether a code is "'included in'" another code. Finally, element 12(d) determines whether a code is "medically exclusive" with another code.

Turning to TriZetto's proposed construction of the express claim language, TriZetto argues that all four claim elements "should be construed to make clear that the ... determination [is made] based on a relationship ... between one code on the at least one claim with another code on the at least one claim." D.I. 158 at 24. The fatal flaw in TriZetto's argument is that, when the

inventors intended to limit a "determining ..." element by drawing a connection to the "relationships" in the database, they expressly included such a limitation in the claims. *See, e.g.,* elements 3(d), 15(d). In claims 2, 10, 12, and 14, by contrast, that limiting language is conspicuously and intentionally absent. *See Phillips,* 415 F.3d at 1314 ("Differences among claims can ... be a useful guide in understanding the meaning of particular claim terms").[12] Thus, TriZetto's proposed "clarification" violates both the prohibition against importing limitations from the specification and the canon that variations in claim language are presumed to be intentional. TriZetto's other attempts to alter the claim language are addressed in McKesson's opening brief. *See* D.I. 170 at 27.

Among the determinations made by the claimed computer systems is whether medical service codes on a medical claim are mutually exclusive with one another. Claim 10 addresses determining whether codes on a claim are "medically exclusive" and Claims 2 and 14 conversely address determining whether such codes are "mutually exclusive due to non-medical criteria."[13] As Dr. Musen explained, one skilled in the art would understand these terms to be complementary and "claim the universe of criteria" for exclusivity among medical service codes. *See* Exh. 5 at 50:14-22. Although the definitions of these terms go hand-in-hand, TriZetto has contended throughout this case that "medically exclusive" was so clear that it required no construction but its complement, "mutually exclusive due to non-medical criteria," was somehow too indefinite to be construed. Now, for the first time, TriZetto asserts that "medically exclusive" has lost its prior clarity and is now indefinite as well. TriZetto's arguments are without merit. The limited evidence TriZetto offers does not approach the heightened standard for indefiniteness,

---

[12]   Moreover, the absence of a claimed connection to the "relationship(s)" in the database in the determining elements of claims 2, 10, 12, and 14 makes perfect sense in the context of the claim language. Unlike elements 3(d) and 15(d), which broadly determine whether a code is "valid or invalid" by interacting with the database and one or more of the relationships therein, each of claims 2, 10, 12, and 14 depend on whether a *particular* criterion is met. No further dependence on generic "relationship(s)" is required or appropriate.

[13]   Claim 9 addresses determining whether a code is valid or invalid based on relationships that include "medically determined relationships." Although not addressed in its brief, TriZetto has asserted this element is indefinite as well. D.I. 148, Exh. A at 24. Given its similarity to determining whether codes are "medically exclusive," the discussion in this section also applies to the "medically determined relationships" recited in Claim 9.

particularly since the record demonstrates that the claims are definite, as they are presumed to be. *See* Section I.B., above.

The terms "medically exclusive" and "non-medical criteria" are clearly amenable to construction. For example, although not cited by TriZetto, its own expert, Dr. Phillip Hawley, testified that he was perfectly capable of construing every asserted claim, including those addressing exclusivity due to medical and non-medical criteria:

> Q    So you were able to determine for yourself the metes and bounds of each claim so you could decide whether what falls within those metes and bounds would be obvious?
>
> A    Correct.
>
> Q    Okay. And that's true for every claim in the '164 patent that you reviewed?
>
> A    Yes. Yes.

Exh. 2 at 224:20-225:2. McKesson's expert, Dr. Mark Musen, was similarly capable of construing the terms "medically exclusive" and "non-medical criteria," as he repeatedly explained in testimony TriZetto again omits from its argument:

> I provided a definition which I think is reasonable and I think is -- would be assumed by ... most people that a ... criterion which is medical deals with the procedure applied to the patient as a -- and is a consequence of the medical condition of the patient as opposed to a non-medical criterion which is a function of the mechanics of setting up the procedure of billing.
>
> ***
>
> See, in my mind it -- it's pretty straightforward, that if I'm dealing with combinations of codes that relate to the medical procedure. The example, of course, here is cholecystectomy ... with sphincterotomy versus cholecystectomy as one code and sphincterotomy as the second code. What I -- I think anyone would assume the ordinary meanings there, that those are medical procedures that are typically combined and should not be billed separately. I think that, unambiguously, is a medical relationship. If I look at whether I'm going to bill for both the lumbar puncture and the lumbar puncture tray, unambiguously, in my mind, that is a non-medical distinction because the two codes relate to the mechanics of how you get billed and reimbursed.
>
> If I'm looking at a situation where a surgeon is repairing a laceration and there's one -- and there -- there are two lacerations, each of, say, 2 centimeters and -- and do I get -- do I bill for two 2-centimeter lacerations? Do I bill for one 4-centimeter laceration? It turns out there are policies that are set forth for reimbursement that determine how those are billed. Those are not really medical. The patient doesn't care whether he gets billed one way or the other. He

27

obviously wants the lacerations repaired. But that is a function of the -- of the medical care process, and I view that as non-medical.

Exh. 5 at 53:23-54:1; 58:20-60:1.

Given that both parties' experts agree that the terms may be construed and the boundaries of the claims may be determined, the claims are indisputably "amenable to construction" and therefore definite under Federal Circuit authority.[14] TriZetto cannot overcome this evidence by pointing to the inventors' testimony. The Federal Circuit has found that terms are subject to construction even where an inventor did not understand a term at issue. *See Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.*, 275 F.3d 1347, 1359-60 (Fed. Cir. 2001) (affirming district court finding that patent was not indefinite, despite testimony from a co-inventor that he did not understand what the claim limitation "substantially completely wetted" meant). As the Federal Circuit has explained, "*Markman* requires us to give no deference to the testimony of the inventor about the meaning of the claims." *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1580 (Fed. Cir. 1996).[15]

TriZetto does not contend that these claim elements are terms of art or that anything in the intrinsic record assigns a special meaning to their terms, and the terms should therefore be given their customary English meaning. *See Gemstar-TV*, 383 F.3d at 1366 ("Because the parties have presented no evidence that 'visual identification' has a specialized technical meaning in the art, we consult non-technical dictionary definitions to determine its ordinary meaning."). Given that the meaning of such straightforward terms as "medical," "exclusive," and "relationships" is readily apparent, these elements do not require further construction. *See Phillips*, 415 F.3d at 1314. D.I. 170 at 11.

---

[15]    TriZetto's argument that "non-medical" escapes meaning is surprising given that its own expert used the term in his report and TriZetto uses it on its own website. *See* Exh. 7 at 7 fn.10 ("claim examiners are non-medical personnel"); <http://www.trizetto.com/hpSolutions/hipaaTraining101.asp>, Exh. 8 ("Review of medical and non-medical Code Sets and requirements for the four proposed national standard identifiers.")

        **(b)**      **TriZetto's contention that these elements are indefinite for lack of corresponding structure rests on a fundamental misinterpretation of the claimed function.**

TriZetto next argues that the specification fails to disclose sufficient structure corresponding to the "determining ..." functions of claims 10, 12 or 14. (As noted above, claim 2 is not subject to section 112(6), so TriZetto's structural arguments do not apply.) Here again, TriZetto's argument depends on its improper importation of an unclaimed limitation into the functional language.

As discussed in McKesson's opening brief, TriZetto seeks to modify each of claims 10, 12, and 14 to require: "that one of the input medical service codes is *inappropriate for payment due to* [TriZetto's statement of the claimed criterion]." D.I. 170 at 27 (emphasis added). TriZetto then relies on that nonexistent limitation to argue in its opening brief that the elements lack supporting structure because "the specification discloses ... an entire expert system that ... authorize[s] only the codes that are *appropriate for payment* as a whole." D.I. 158 at 25. As discussed in McKesson's opening brief, however, the determination whether a single criterion is met (as claimed in elements 10(d), 12(d), and 14(d)) does not necessarily determine whether a code is appropriate for payment. *See* D.I. 170 at 27-28. Only when all applicable criteria have been applied does the system determine whether the codes are "appropriate for payment" (*i.e.*, "valid" as claimed in elements 3(d) and 15(d)). *Id.* Thus, TriZetto's addition of the limitation is wholly improper, and its structural argument that the specification does not disclose determining "appropriateness for payment" based on whether a single criterion is met is irrelevant.

For this same reason, TriZetto's argument that the claimed determinations individually cannot establish a code as appropriate for payment because "multiple databases" must be consulted to do so is another red herring and must also fail. *See* D.I. 158 at 25. Regardless of what TriZetto contends is necessary to define a code as appropriate for payment, the claimed functions do not require any such determination. Rather they are addressed to individual criteria, not an overall determination that a code is "valid or invalid" as recited in claim 3.[16]

---

[16]    Moreover, none of the databases TriZetto cites relate to the code-to-code relationships applied in the determining elements of claims 10, 12, and 14, which the parties agree are contained in the INTERACT database. *See* D.I. 158 at 23 (ALLCODE database includes listing of all existing codes); '164 col. 5, ll 26-
*(cont'd)*

TriZetto further argues that the specification is unclear as to which of the "'rules'" is used to determine the particular criteria claimed in elements 10(d), 12(d) or 14(d). D.I. 158 at 25. As detailed in McKesson's opening brief, however, the specification (including its appendices) clearly associates particular rules with each of the claimed criteria. D.I. 170 at 32-33.

TriZetto also argues that the "determining" elements lack proper written description because the "*specification*" – not the claims – "says that the 'determination' of appropriate codes is based on the detailed rules in the predetermined database." D.I. 158 at 25. Essentially, TriZetto seeks to invalidate *claim* elements that do not even *mention* a database by arguing that the specification does not disclose the full contents of the database. However, each of the authorities TriZetto cites merely requires that the *claimed* invention be described in the specification. TriZetto cites no rule — and none exists — requiring that aspects of the invention discussed in the specification but not claimed must be described in exhaustive detail.

Finally, TriZetto contends that the "determining ..." elements of claims 10, 12, and 14 lack a clear link to structure in the specification. D.I. 158 at 24. McKesson's opening brief details more than adequate "linkage" between the claimed functions and corresponding structure. *See* D.I. 170 at 30-32.

After devoting nearly three pages of briefing to its indefiniteness argument, TriZetto offers no argument whatsoever in support of its competing construction of corresponding structure. *See* D.I. 158 at 27.[17] Particularly considering the absence of any supporting argument, TriZetto's unduly narrow construction must be rejected.

In sum, TriZetto cannot demonstrate, by the requisite clear and convincing evidence, that the specification fails to link and disclose structure corresponding to the claimed functions. McKesson's proposed construction for the corresponding structure — "software capable of interacting with the database to determine whether one of the medical service codes in the at least

---

*(cont'd from previous page)*
31 (SUPERSEDED includes list of codes superseded by new codes in classification system); '164 col. 8, ll. 38-51 (BYITSELF includes single code rules).

[17] TriZetto's conditional "accept[ance of] the structure identified in McKesson's listing" distorts McKesson's proposed claim constructions and must be rejected. D.I. 158 at 27. McKesson proposed a specific construction for the corresponding structure and cited relevant portions of the specification as support for that construction. TriZetto disingenuously "accept[s]" the specification cites without agreeing to the express construction proposed by McKesson. *Id.*

one claim is [criterion], as well as its equivalents"— is fully supported by the claim language and corresponding disclosures. D.I. 148, Exh. A at 16.

### E.   Disputed Terms: "means for authorizing/rejecting medical service codes in response to the means for determining."

Claims 2, 3, 10, 12, and 14 include authorizing "codes" that meet given criteria and rejecting codes that fail the criteria. Consistent with its pattern, TriZetto applies section 112(6) to method-claim elements 2(d) ("authorizing ...") and 2(e) ("rejecting ...") despite the lack of triggering "step for" language. Here again, TriZetto's cursory argument fails to overcome the presumption against applying step-plus-function treatment. Thus, TriZetto's arguments concerning "corresponding structure" apply only to the "means for authorizing ..." and "means for rejecting ..." elements of claims 3, 10, 12, and 14.

#### 1.   TriZetto improperly introduces multiple unclaimed limitations into the "authorizing" and "rejecting" elements without supporting argument or evidence.

Concerning the functional language of these elements, TriZetto recites its wholesale modifications to the express claim language with little or no accompanying argument or evidentiary support. *See* D.I. 158 at 32. The impropriety of TriZetto's attempt to redraft the "authorizing ..." and "rejecting ..." elements is discussed in detail in McKesson's opening brief and need not be repeated here. *See* D.I. 170 at 33-35. The only specific argument TriZetto makes in its opening brief is that the "authorizing" and "rejecting" elements must be done "in response to the means for determining." That is true of claims 3, 12, and 14, which expressly include the limitation. Contrary to TriZetto's argument, however, Claim 10 includes no such limitation. Particularly where, as here, the express claim language of the "authorizing" and "rejecting" elements is unambiguous on its face, the Court should reject TriZetto's attempt to redraft the claims and simply read the elements to the jury.

#### 2.   The specification discloses well-known software as structure corresponding to the claimed functions, and TriZetto's attempt to construe the corresponding structure more narrowly must fail.

For elements subject to section 112(6), TriZetto argues that it is insufficient to identify the corresponding structure as "software" capable of performing the function, and that a specific algorithm is required. As discussed above, however, TriZetto misinterprets the controlling law.

D.I. 158 at 11-12. Where "software" is linked to the claimed function, the specific algorithm need not be disclosed if it would be known to those skilled in the art. Moreover, contrary to TriZetto's argument that the specification does not adequately disclose corresponding structure or link it to the claimed functions, McKesson's opening brief details how the specification discloses the invention's rules-based system, implemented in software, and links it to the "determining," "authorizing" and "rejecting" functions. D.I. 170 at 29-33, 35-37. Plus, it is undisputed that the relevant relationships reside in the "predetermined database," and the specification expressly discloses that "database management software programs to perform the desired functions" are "commercially available." '164 patent, col. 4, ll. 35-42. Because the software capable of performing the claimed functions, including "authorizing ..." and "rejecting ...," is known in the art, no further disclosure of specific algorithms is needed. *See Budde*, 250 F.3d at 1382.

TriZetto's proposed construction of the corresponding structure ignores the entire written description of the invention and Appendix B, which defines the rules by which the software authorizes or rejects codes, and focuses solely on a particular example applying the "E1/E2" rule in Appendix A. In doing so, TriZetto discusses only authorizing or rejecting codes if they are "valid" or "invalid" (elements 3(e) & (f)) and ignores the different criteria in claims 10 (whether a code is "contained in" another code), 12 (whether codes are "medically exclusive"), and 14 (whether a code is "mutually exclusive due to non-medical criteria"). Moreover, TriZetto's arguments concerning claim 3 appear dependent upon its misinterpretation of the terms "valid" or "invalid" and are, therefore, irrelevant to whether adequate structure is disclosed.

As detailed in McKesson's opening brief, McKesson's proposed constructions suffer no such flaws. McKesson addresses each of the different "authorizing" and "rejecting" elements and demonstrates how the corresponding structure is software capable of performing each function. No more is required, and the Court should adopt McKesson's constructions.

**F.    Disputed Terms: "authorizing/rejecting the at least one claim in response to the means for determining."**

The "authorizing" and "rejecting" elements of claims 15 and 16 authorize or reject a "claim" instead of a "code." True to form, TriZetto disregards the fact that claim 15 states the elements in means-plus-function format, while claim 16 lacks either "means for" or "step for"

32

language. Thus, TriZetto's arguments concerning corresponding structure apply only to claim 15. *See* Section I.D., above.

### 1. The express claim language is not indefinite and should be construed to mean what it says.

TriZetto's contention that the "authorizing" and "rejecting" phrases of claim 15 are indefinite is based on a fundamental misunderstanding of means-plus-function *apparatus* elements. D.I. 158 at 34. TriZetto argues that it is unclear "how an entire medical claim is authorized in response to the determining step, which only determines whether a service code is valid or invalid." *Id.* But claim 15 does not authorize or reject a claim in response to a "determining *step*." On the contrary, it authorizes or rejects a claim "in response to the *means for* determining." The "means for determining" of claim 15 is an apparatus element — not a method step — capable of determining whether a code is valid or invalid. Even if a medical claim includes multiple codes, the entire claim may be "authorized" or "rejected" "in response to the means for determining" by employing the "means for determining" iteratively to determine whether each of the codes is valid or invalid. TriZetto's indefiniteness argument fails because it stems from a mischaracterization of the express claim language of claim 15.

Moreover, TriZetto's argument fails even in the context of method claim 16. The "determining" step of claim 16 is not limited to determining whether *only* one code is valid or invalid. It is fundamental that activity falls within the scope of a method element if it performs each limitation — regardless of whether it performs additional steps. *A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 703 (Fed. Cir. 1983). Thus, determining whether *multiple* codes are valid or invalid falls within the scope of "determining whether one of the medical service codes … is valid or invalid" – to determine the validity of multiple codes, it is necessary to determine the validity of each code. In addition, authorizing or rejecting "in response to" the determining step does not have the narrow meaning TriZetto ascribes. In this context, a "response" is a "something constituting a … reaction." Exh. 9 at 998. Authorizing or rejecting a claim is a "reaction" to determining that a single code is valid or invalid, even if it is also a "reaction" to determining that any remaining codes are valid or invalid.

TriZetto again seeks to conflate the meaning of claims 15 and 16 by arguing that both "claims are indefinite because of the impossible concept of both 'authorizing' and 'rejecting' the

same medical claim in the method described in Claim 16." D.I. 158 at 34 (emphasis omitted). That argument is inapplicable to claim 15, which merely requires that the "system" include "means for authorizing" and "means for rejecting." The mere presence of both apparatus elements does not require that they both be employed to accept and reject the same claim. Concerning claim 16, TriZetto again ignores the iterative nature of determining whether codes or claims should be "authorized" or "rejected." As described in the specification, each time the software of the invention iterates through the process of determining whether code(s) are valid by interacting with the database and the relationships therein, it stores all codes that remain in the claim in the "PROCESS database." *See* '164 patent, col. 7, ll. 11-16, 40-58; col. 8, ll. 20-25. The codes remaining in the claim may then be read from the PROCESS database for a subsequent iteration. *See id.*, col. 5, ll. 57-66; col. 7, ll. 40-45. Thus, a claim may be authorized in one iteration but rejected in a later one, so a method that requires both is not indefinite. TriZetto's lone rhetorical question on the point does not amount to the necessary clear and convincing evidence, particularly given that its expert, who supervised the development of the infringing databases for TriZetto, was able to determine the metes and bounds of claim 16. Exh. 2 at 224:20-225:2.

Turning to TriZetto's proposed constructions, TriZetto seeks to impose the same construction on the "means for authorizing" and "means for rejecting" elements of apparatus claim 15 as the "authorizing" and "rejecting" steps of method claim 16. For both claims, TriZetto's proposed constructions would require that "authorizing" and "rejecting" be "based on the 'determinations of the 'determining' *step*." D.I. 158 at 34 (emphasis added). The construction is clearly inappropriate for claim 15. As discussed above, claim 15 requires authorizing or rejecting "in response to the *means for* determining." In addition, TriZetto adds, deletes, and changes numerous limitations with no accompanying argument or evidentiary support in its briefing. For example, TriZetto: (1) adds "for payment" to "authorizing" and "rejecting"; (2) replaces "the at least one claim" with "the entire claim"; and (3) adds a limitation requiring the claim be "received from the user." Absent any supporting argument or evidence, TriZetto's proposed constructions must be rejected.

### 2.    The corresponding structure is neither indefinite nor limited to authentication or rejection by a "user."

Concerning the structure corresponding to "means for authorizing ..." and "means for rejecting ..." in claim 15, TriZetto argues that the specification discloses authorization only by the user, and not by the system.   Contrary to TriZetto's argument, the specification clearly discloses that:

> the ***program*** will examine the multiple codes presented to ***determine whether payment or payment authorization for each of the stated codes is medically appropriate, or whether one or more of the codes is medically inappropriate, or whether one or all of the multiple codes should be replaced by other code(s).***
> In order to accomplish this, a set of rules developed for use of this ***program*** is now invoked.

'164 patent, col. 5, ll. 59-66 (emphasis added); *see generally* D.I. 170 at 35-37.   Thus, the system's ***program*** authorizes or rejects the multiple codes in the claim – not the "user."

Moreover, TriZetto's attempt to require authorization or rejection by the user is belied by claims 3, 4, and 5.   Claim 3 parallels the language of claim 15, including similar "means for determining ...," "means for authorizing ...," and "means for rejecting ...."   Dependent claims 4 and 5 add the ***further*** elements of "means for revising the at least one claim to delete invalid medical service codes" and "means for informing a user why the at least one claim was revised." The organization of claims 3, 4, and 5 defeats TriZetto's argument in at least two ways.   First, when the inventors intended to claim user involvement, they did so expressly in claim 5.   Second, the user is not involved in the system of the claimed invention until ***after*** the codes in the claim have been "authorized" as "valid" or "rejected" as "invalid" and ***after*** the claim is revised to delete invalid codes.   It would be wholly improper to introduce user involvement earlier, in the "authorizing" or "rejecting" elements.

Finally, McKesson's opening brief easily defeats TriZetto's argument that specification lacks structure corresponding to the "authorizing" and "rejecting" elements of claim 15.   The Court should accept McKesson's proper construction of these disputed terms.

### G.    The Dependent Claims Of The '164 Patent.

As an initial matter, TriZetto does not address all of the dependent claims in its brief and only focuses on misconstruing the structure for claims 4 and 11.   McKesson's opening brief on

claim construction specifically identified the link in the specification of software for performing the claimed functions as the corresponding structure for all of the dependent claims. D.I. 170 at 38 (particularly referring to the rules located in Appendix A and B as the corresponding structure). With respect to the "means for revising functions" in claims 4 and 11, TriZetto's argument that structure associated with the claimed functions must be the user who is manually revising the claims is not supported by the description in the specification. The user taking action in response to prompts from the software is not the user manually revising the claims as TriZetto asserts. Rather, the software itself has already revised the claim and the user's interaction, essentially pressing a single button in response to a prompt, merely results in the edits and reasons for those edits being displayed to the user. Even TriZetto admits that a human revising claims as the corresponding structure is "contrary to the thrust of the '164 patent." D.I. 158 at 35. Further, TriZetto's complaint about structure for the dependent claims that are not subject to section 112(6) has no basis as these elements are not limited by the structure disclosed in the specification.

## III.    CONCLUSION

For the foregoing reasons, McKesson respectfully requests that this Court adopt its proposed constructions for the disputed terms of the '164 patent.

By: _____

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff McKesson
Information Solutions LLC

OF COUNSEL:
Jeffery G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500

DATED:    January 20, 2006

**CERTIFICATE OF SERVICE**

I, Michael A. Barlow, hereby certify that on January 20, 2006, I

electronically filed Plaintiff's Answering Claim Construction Brief and the Declara-

tion of Michael A. Barlow using CM/ECF, which will send notification of such filing

to those designated below, and that I served the following persons in the manner

listed:

| **VIA CM/ECF** | **HAND DELIVERY** |
|---|---|
| Rodger D. Smith, II, Esq. | Jack B. Blumenfeld, Esq. |
| MORRIS NICHOLS ARSHT | MORRIS NICHOLS ARSHT |
| & TUNNELL | & TUNNELL |
| 1201 North Market Street | 1201 North Market Street |
| P.O. Box 1347 | P.O. Box 1347 |
| Wilmington, Delaware 19899 | Wilmington, Delaware 19899 |

Michael A. Barlow (ID No. 3928)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000
mbarlow@skadden.com