IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MCKESSON INFORMATION SOLUTIONS LLC, )
)
)     C.A. No. 04-1258 (SLR)
Plaintiff,     )
)     **REDACTED VERSION**
v.     )
)
THE TRIZETTO GROUP, INC.,     )
)
Defendant.     )

## THE TRIZETTO GROUP, INC.'S APPENDIX OF EXHIBITS IN SUPPORT OF ITS ANSWERING CLAIM CONSTRUCTION BRIEF

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
Wilmington, Delaware 19899
(302) 658-9200

Attorneys for Defendant The TriZetto Group, Inc.

OF COUNSEL:

GIBSON, DUNN & CRUTCHER LLP
Jeffrey T. Thomas
David A. Segal
Michael A. Sitzman
Jamboree Center, 4 Park Plaza
Irvine, CA 92614

Original Filing Date: January 20, 2006

Redacted Filing Date: January 27, 2006

## THE TRIZETTO GROUP, INC.'S INDEX OF EXHIBITS IN SUPPORT OF ITS RESPONSE TO MCKESSON'S CLAIM CONSTRUCTION BRIEF

| Appendix Exhibit | Description |
| --- | --- |
| K. | Holloway Deposition Transcript Cites |
| L. | Hertenstein Deposition Transcript Cites |
| M. | Expert Report of David A. Wilson, Ph.D. |
| N. | Wilson Deposition Transcript Cites |
| O. | Preliminary Amendment dated January 29, 1991 (MCK000278-MCK000300) |
| P. | Goldberg Deposition Transcript Cites |
| Q. | MCK119729-MCK119736 |
| R. | MCK042483-MCK042497 |
| S. | MCK028705-MCK028723 |
| T. | MCK051106-MCK051168 |
| U. | MCK118824-MCK118852 |
| V. | DBASE III Plus |
| W. | Special Master Order #5 |
| X. | Radosevich Deposition Transcript Cites |
| Y. | Correspondence from Special Master |

# Exhibit K

Redacted

# Exhibit L

Redacted

# Exhibit M

Redacted

# Exhibit N

**11/23/2005  Wilson, David, Ph.D.**

```
1                UNITED STATES DISTRICT COURT
2               FOR THE DISTRICT OF DELAWARE
3
4
         MCKESSON INFORMATION      )
5        SOLUTIONS,              )
                              )
6              Plaintiff,      )
                              )
7        vs.                   )  No. 04-1258 SLR
                              )
8        THE TRIZETTO GROUP,      )
                              )
9              Defendant.      )
10
11
12
                       DEPOSITION OF
13
                   DAVID A. WILSON, Ph.D.
14
                   PALO ALTO, CALIFORNIA
15
               Wednesday, November 23, 2005
16
17
18
19
20
21
22
23
24       REPORTED BY:  JANE H. STULLER, CSR NO. 7223
25       (211471)
```

1

1      A. I think the only thing I probably did was

2    write some internal reports at SRI for management

3    but we did not publish those.  To the best of

4    knowledge, we did not publish those externally.  I

5    also made proposals to do some work in some of these

6    areas.  But again, I don't think anything was

7    published.

8      Q. Okay.  Other than presenting, which you

9    probably, did proposals -- and I'm thinking about

10   even the UK tax issue, you probably made a proposal

11   for the Java engine and things like that.

12       But publicly, have you made any

13   presentations at conferences where you were

14   discussing knowledge-based or expert systems?

15      A. I don't think so.  I give a lot of -- given

16   a lot of conference presentations, but it's usually

17   on object-oriented programming and subjects, more --

18       THE REPORTER:  Usually?

19       THE WITNESS:  Object-oriented programming.

20   I have also done, taught thousands of students

21   advanced programming, but I don't believe I have

22   every tried to teach them rule-based systems.

23   BY MR. SITZMAN:

24      Q. Are -- pardon me, I'm not as familiar with

25   your CV as you probably are.  Are you currently

11/23/2005 Wilson, David, Ph.D.

1    teaching?

2        A. No.

3        Q. Okay. What was -- when were you last

4    teaching, or when was your last teaching engagement?

5        A. Well, internal classes on various subjects

6    at Portal Software in Cupertino where I worked for

7    two and a half years as an architect, I taught

8    classes in Cupertino on various subjects. And also

9    in Hamburg, Germany, on various subjects.

10        Q. Umm, do you -- do you have any -- I notice

11    you have a number of patents, but do you have any

12    patents on any knowledge-based expert computer

13    systems?

14        A. No.

15        Q. Have you ever applied for any?

16        A. No.

17        Q. Prior to getting involved in this case, had

18    you had any experience with medical claims

19    processing or handling, other than maybe your

20    personal submissions of medical claims?

21        A. Not directly, no. My -- my mother happened

22    to run the accounts receivable office for the

23    largest hospital in central New York, so I spent a

24    lot of time discussing claims processing with her,

25    but it was all at the dinner table.

# Exhibit O

0408v
H0433/7002

07 648314

#14/E

BH
4-8-91

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant      : Donald C. Holloway, Robert D. Hertenstein,
                 George A. Goldberg and Kelli A. Dugan
Filing Date    : Herewith
For            : EXPERT SYSTEM AND METHOD FOR ASSESSING MEDICAL
                 CLAIMS

Hon. Commissioner of
Patents and Trademarks
Washington, D.C.  20231

PRELIMINARY AMENDMENT

Dear Sir:

        Prior to examination, please amend the
above-identified application as follows:

IN THE CLAIMS

Please cancel claims 1-6 without prejudice, and substitute in
their place claims 7-32.

        7. In a computer system having means for operating on
a predetermined database containing medical service codes and a
set of relationships among the medical service codes defining
whether selected ones of the medical service codes are valid
when input with other selected ones of the medical service
codes, a method for processing input claims containing at least
one medical service code, comprising the steps of:

MCK 000278

receiving at least one claim;

ascertaining whether the at least one claim contains a
plurality of medical service codes;

determining whether one of the medical service codes
in the plurality of medical service codes is valid or invalid
by interacting with the database and the set of relationships
contained in the database;

authorizing medical service codes which are valid in
response to the determining step; and

rejecting medical service codes which are invalid in
response to the determining step.

8. The method of claim 7, further comprising the step
of revising the at least one claim to delete invalid medical
service codes.

9. The method of claim 8, further comprising the step
of informing a user why the at least one claim was revised.

10. The method of claim 7, wherein the database
containing medical service codes includes medical service codes
described by CPT codes.

11. The method of claim 7, wherein the database
containing medical service codes includes medical service codes
described by CRVS codes.

— 2 —

MCK 000279

12. The method of claim 7, further comprising the step of requesting further information from a user regarding the at least one claim.

13. The method of claim 7, wherein the relationships among the medical service codes include medically determined relationships.

14. In a computer system having means for operating on a predetermined database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when input with other selected ones of the medical service codes, a method for processing input claims containing at least one medical service code, comprising the steps of:



receiving at least one claim;

ascertaining whether the at least one claim contains a plurality of medical service codes;

determining whether one of the medical service codes in the at least one claim is included in any other medical service code in the at least one claim;

authorizing medical service codes which are not contained in any other medical service code; and

rejecting medical service codes which are contained in any other medical service code.

— 3 —

MCK 000280

15. The method of claim 14, further comprising the step of revising the at least one claim to not include a rejected medical service code.

16. In a computer system having means for operating on a predetermined database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when input with other selected ones of the medical service codes, a method for processing input claims containing at least one medical service code, comprising the steps of:

receiving at least one claim;

ascertaining whether the at least one claim contains a plurality of medical service codes;

determining whether one of the medical service codes in the at least one claim is medically exclusive with any other medical service code in the at least one claim;

authorizing medical service codes which are not medically exclusive with any other medical service codes contained in the at least one claim in response to the determining step; and

rejecting medical service codes which are medically exclusive with any other medical service codes contained in the at least one claim in response to the determining step.

— 4 —

MCK 000281

CM   27. In a computer system having means for operating on a predetermined database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when input with other selected ones of the medical service codes, a method for processing input claims containing at least one medical service code, comprising the steps of:

P| receiving at least one claim;

L determining whether any medical service code contained in the at least one claim is not present in the predetermined database; and

P| informing a user that a medical service code is not contained in the predetermined database.

28. In a computer system having means for operating on a predetermined database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when input with other selected ones of the medical service codes, a method for processing input claims containing at least one medical service code, comprising the steps of:

P| receiving at least one claim;

L ascertaining whether the at least one claim contains a plurality of medical service codes;

- 5 -



MCK 000282

P1   determining whether one of the medical service codes in the at least one claim is mutually exclusive due to non-medical criteria with any other medical service code in the at least one claim;

P1   authorizing medical service codes which are not mutually exclusive due to non-medical criteria with any other medical service codes contained in the at least one claim in response to the determining step; and

P1   rejecting medical service codes which are mutually exclusive due to non-medical criteria with any other medical service codes contained in the at least one claim in response to the determining step.

3

19. A computer system including a central processing unit and associated memory for processing input claims containing at least one medical service code, comprising:

P1   a predetermined database stored in the associated memory, the database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when received with other selected ones of the medical service codes;

P1   means for receiving at least one claim;

L   means for ascertaining whether the at least one claim contains a plurality of medical service codes;

*104*

MCK 000283

means for determining whether one of the medical service codes in the plurality of medical service codes is valid or invalid by interacting with the database and the set of relationships contained in the database;

means for authorizing medical service codes which are valid in response to the means for determining; and

means for rejecting medical service codes which are invalid in response to the means for determining.

4
20. The apparatus of claim 3, further comprising means for revising the at least one claim to delete invalid medical service codes.

5
21. The apparatus of claim 4, further comprising means for informing a user why the at least one claim was revised.

6
22. The apparatus of claim 3, wherein the database containing medical service codes includes medical service codes described by CPT codes.

7
23. The apparatus of claim 3, wherein the database containing medical service codes includes medical service codes described by CRVS codes.

- 7 -

105

MCK 000284

8
24. The apparatus of claim 19, further comprising means for requesting further information from a user regarding the at least one claim.

9
25. The apparatus of claim 19, wherein the relationships among the medical service codes include medically determined relationships.

10
26. A computer system including a central processing unit and associated memory for processing input claims containing at least one medical service claim, comprising:

a predetermined database stored in the associated memory, the database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when received with other selected ones of the medical service codes;

means for receiving at least one claim;

means for ascertaining whether the at least one claim contains a plurality of medical service codes;

means for determining whether one of the medical service codes in the at least one claim is included in any other medical service code in the at least one claim;

means for authorizing medical service codes which are not contained in any other medical service code; and

– 8 –

106

MCK 000285

means for rejecting medical service codes which are contained in any other medical service code.

27. The apparatus of claim 26, further comprising means for revising the at least one claim to not include a rejected medical service code.

28. A computer system including a central processing unit and associated memory for processing input claims containing at least one medical service code, comprising:

a predetermined database stored in the associated memory, the database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when received with other selected ones of the medical service codes;

means for receiving at least one claim;

means for ascertaining whether the at least one claim contains a plurality of medical service codes;

means for determining whether one of the medical service codes in the at least one claim is medically exclusive with any other medical service code in the at least one claim;

means for authorizing medical service codes which are not medically exclusive with any other medical service codes

107

MCK 000286

contained in the at least one claim in response to the means
for determining; and

    means for rejecting medical service codes which are
medically exclusive with any other medical service codes
contained in the at least one claim in response to the
determining step.

    *13*
    25. A computer system including a central processing
unit and associated memory for processing input claims
containing at least one medical service code, comprising:

    a predetermined database stored in the associated
memory, the database containing medical service codes and a set
of relationships among the medical service codes defining
whether selected ones of the medical service codes are valid
when received with other selected ones of the medical service
codes;

    means for receiving at least one claim;

    means for determining whether any medical service code
contained in the at least one claim is not present in the
predetermined database; and

    means for informing a user that a medical service code
is not contained in the predetermined database.

    *14*
    26. A computer system including a central processing
unit and associated memory for processing input claims
containing at least one medical service code, comprising:

    - 10 -

    *108*

MCK 000287

a predetermined database stored in the associated memory, the database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when received with other selected ones of the medical service codes;

means for receiving at least one claim;

means for ascertaining whether the at least one claim contains a plurality of medical service codes;

means for determining whether one of the medical service codes in the at least one claim is mutually exclusive due to non-medical criteria with any other medical service code in the at least one claim;



means for authorizing medical services codes which are not mutually exclusive due to non-medical criteria with any other medical service codes contained in the at least one claim in response to the means for determining; and

means for rejecting medical service codes which are mutually exclusive due to non-medical criteria with any other medical service codes contained in the at least one claim in response to the means for determining.

15
31. A computer system including a central processing unit and associated memory for processing input claims containing at least one medical service code, comprising:

- 11 -

109

MCK 000288

¶ a predetermined database stored in the associated memory, the database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when received with other selected ones of the medical service codes;

¶ means for receiving at least one claim;

means for ascertaining whether the at least one claim contains a plurality of medical service codes;

¶ means for determining whether one of the medical service codes in the plurality of medical service codes is valid or invalid by interacting with the database and the set of relationships contained in the database;

¶ means for authorizing the at least one claim in response to the means for determining; and

¶ means for rejecting the at least one claim in response to the means for determining.



32. In a computer system having means for operating on a predetermined database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when input with other selected ones of the medical services codes, a method for processing input claims containing at least one medical service code, comprising the steps of:

— 12 —

110

MCK 000289

receiving at least one claim;

ascertaining whether the at least one claim contains a plurality of medical service codes;

determining whether one of the medical service codes in the plurality of medical service codes is valid or invalid by interacting with the database and the set of relationships contained in the database;

authorizing the at least one claim in response to the determining step; and

rejecting the at least one claim in response to the determining step.

## REMARKS

This is a preliminary amendment accompanying the filing of a continuation application. Claims 1-6 have been cancelled without prejudice. In their place, Applicants have submitted new claims 7-32 which are believed to clearly and patentably distinguish the present invention over the prior art of record.

In the Office Action of October 29, 1990, claims 1 and 2 were rejected under 35 U.S.C. §102(a) as being anticipated by, or in the alternative under 35 U.S.C. §103 as obvious over Weitzel et al. Claims 3-6 were rejected under 35 U.S.C. §103 as being unpatentable over the combination of Weitzel et al. in view of Hardy et al. Applicants respectfully traverse this rejection.

- 13 -

MCK 000290

Applicants do not believe that the Weitzel et al. reference is a valid reference under 35 U.S.C. §102. To be a valid reference, the Weitzel et al., reference must enable someone to practice the invention. It does not do that.

In <u>Reading & Bates Construction Co. v. Baker Energy Resources Corporation and Baker Marine Corp.</u>, 233 USPQ 1168, 1173 (Fed. Cir. 1984), appeal No. 84-527, decided November 15, 1984, the Court held:

> . . .For the <u>invention</u> of the '903 patent to be <u>described</u> in the Smith brochure pursuant to §102(b), the Smith brochure itself must enable someone to practice the invention of the '903 patent. <u>Preemption Devices Inc. v. Minnesota Mining & Mfg. Co.</u>, 732 F.2d 903, 906-221 USPQ 841 (Fed. Cir. 1984). It does not do that. The mere fact that the Smith brochure, a one-page promotional brochure, boasts the ability and results of the process of the '903 patent is insufficient, as a matter of law, to constitute an enabling disclosure of the process of the '903 patent.
>
> The Smith brochure itself may qualify as a prior art reference under §103, but only for what is disclosed in it. It cannot serve as the vehicle by which the '903 patent and the more detailed disclosure it contains may also be considered as prior art. (Emphasis in original)

In view of the Federal Circuit holding, Applicants believe that the Weitzel et al. reference is only valid for what is disclosed in it. The Office Action states, with respect to p. 30 Weitzel et al., "This phrase implies that the system does revise a medical claim not to include inappropriate medical claims, exactly what is claimed by applicants". The Applicants believe that functions should not be and cannot be

- 14 -

MCK 000291

inferred from statements in the Weitzel et al. reference.
Weitzel et al. merely state the results of processing, not how
the processing is accomplished, or any of the rules used.  The
reference is only valid for what it does disclose, and nothing
more.  It is inappropriate to infer that Weitzel et al.
performs any functions beyond the statements of the abilities
of the system and results of the claim review procedures.

        Even assuming that Weitzel et al. is a valid
reference, the present invention, as claimed, is still
patentably distinct from Weitzel et al.  Weitzel et al. is a
system for reviewing claims to determine if the health care
services performed were medically necessary and properly
authorized.  On page 28 of Weitzel et al., determining medical
"necessity" is described as assessing the patient's diagnosis,
surgical procedures, the length of time since they occurred and
severity of the patient's condition.  On page 29 of Weitzel et
al., an indicator of a patient's prognosis is described as the
device by which the patient's recouprative potential and
therefore the type and degree of medical services necessary, is
assessed.  Thus, Weitzel et al. is concerned with determining
whether or not the total services billed were appropriate given
the patient's medical condition.

        By contrast, the present invention is concerned with
determining whether or not service providers are attempting to
claim excess payment for medical services by violating rules

- 15 -

MCK 000292

which interrelate predetermined medical service codes.  Unlike
Weitzel et al., the present invention does not assess the
patient's "prognosis" to determine whether or not the medical
service claims are appropriate for the patient's condition.
The present invention uses and claims a set of rules that
describe the relationship between medical service codes (which
correspond to particular medical services or procedures) to
determine whether or not there are improper medical service
codes in a particular claim.

Even when additionally combined with the Hardy et al.
reference, there are still no teachings or suggestions of the
present invention, as claimed.  Hardy et al. discloses a basic
expert system tool including a knowledge base having facts and
ruled, and editing and communication tools.  There is no
teaching or suggestion in either Hardy et al. or Weitzel that
these references may be combined in the manner stated in the
Office Action.  Further, even if these references could be
combined as stated in the Office Action, the combination would
not meet the limitations of the claims.  The combination of
Weitzel et al. and Hardy et al. suggests an expert system which
reviews medical service claims and assesses the appropriateness
of the medical services in light of the patient's prognosis or
medical condition and is then able to inform the user of the
system's decision process or request further information from
the user.  As with Weitzel et al. itself, there is no teaching

- 16 -

MCK 000293

or suggestion of rules describing relationships among particular medical service codes for assessing whether a medical service claim contains medical service codes which violate the rules.

With regard to the claims, Applicants are submitting a set of claims which are believed to clearly distinguish over the Weitzel et al. and Hardy et al. references, either singly or in combination. Claims 7-12, and 31 are method claims, of which claim 7, 14, 16, 17, 18, and 31 are independent. Claims 19-30, and 32 are apparatus claims, of which claims 19, 26, 28, 29, 30, and 32 are independent.

Taking claim 7 as exemplary of the method claims, claim 7 recites a computer system having means for operating on "a predetermined database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when input with selected ones of the medical service codes." Claim 7 additionally cites receiving at least one claim and ascertaining whether there are a plurality of medical service codes in the at least one claim. Claim 7 further recites "determining whether one of the medical service codes in the plurality of medical service is valid or invalid by interacting with the database and the set of relationships contained in the database" and "authorizing medical service codes which are valid", and "rejecting medical service codes which are invalid

- 17 -

MCK 000294

in response to the determining step". Applicants believe that
these recitations in claim 7, such as, _inter alia_, describing
the predetermined database as containing medical service codes
and a set of relationships among the codes, processing the
codes to determine which codes are valid, and authorizing valid
medical service codes and rejecting invalid medical service
codes distinguish the present invention over the art of
record.  Applicants believe that the prior art, either singly
or in combination, contains no teaching or suggestion of a
database containing medical service codes and relationships
among the codes.  The prior art of record, namely, the Weitzel
et al. reference, only refers to a method for determining
whether or not a particular course of medical treatment is
authorized or not.

     Claim 14 describes a method similar to claim 7 and
recites _inter alia_ "determining whether one of the medical
service codes in the at least one claim is included in any
other medical service code in the at least one claim,
authorizing medical service codes not contained in any other
medical service code, and rejecting medical service codes which
are contained in any other medical service code".

     Claim 16 describes a similar method as claim 7 and
recites, _inter alia_ "determining whether one of the medical
service codes in the at least one claim is medically exclusive

- 18 -

MCK 000295

with any other medical service code in the at least one claim",
"authorizing medical service codes which are not medically
exclusive with any other medical service codes", and "rejecting
medical service codes which are medically exclusive with any
other medical service codes" in response to the determining
step.

Claim 17 describes a method similar to claim 7 and
recites, inter alia, "determining whether any medical service
code contained in the at least one claim is not present in the
predetermined database", and "informing a user that a medical
service code is not contained in the predetermined database".

Claim 18 describes a similar method as claim 7 and
recites, inter alia, "determining whether one of the medical
service codes in the at least one claim is mutually exclusive
due to non-medical criteria with any other medical service
code", "authorizing medical service codes which are not
mutually exclusive due to non-medical criteria with any other
medical service codes", and "rejecting medical service codes
which are mutually exclusive due to non-medical criteria with
any other medical service codes" in response to the determining
step.

Claim 19 describes a computer system including a
central processing unit and associated memory for processing
input claims including "a predetermined database stored in the

- 19 -

MCK 000296

associated memory, the database containing medical service
codes and a set of relationships among the medical service
codes defining whether selected ones of the medical service
codes are valid when received with other selected ones of the
medical service codes", "means for receiving at least one
claim", and "means for ascertaining whether the at least one
claim contains a plurality of medical service codes".

Claim 19 further recites "means for determining
whether one of the medical service codes in the plurality of
medical service codes are valid or invalid by interacting with
the database and set of relationships contained in the
database", and "means for authorizing valid medical service
codes" and "means for rejecting invalid medical service
codes".  Claim 19 is believed to distinguish over the prior art
of record because, inter alia, there is no means for
determining whether one of the medical service codes is valid
or invalid and no means for authorizing valid medical service
codes and no means for rejecting invalid medical service codes
disclosed or suggested in the prior art of record.

Claim 26 describes a system similar as claim 19 and
recites, inter alia, "means for determining whether one of the
medical service codes in the at least one claim is included in
any other medical service code in the at least one claim",
"means for authorizing medical service codes which are not

— 20 —

MCK 000297

contained in any other medical service code", and "means for rejecting medical service codes which are contained in any other medical service code".

Claim 28 describes a system similar to claim 19 and recites, _inter alia_, "means for determining whether one of the medical service codes in the at least one claim is medically exclusive with any other medical service code in the at least one claim", "means for authorizing medical service codes which are not medically exclusive with any other medical service codes", and "means for rejecting medical service codes which are medically exclusive with any other medical service codes" in response to the means for determining.

Claim 29 describes a system similar to claim 19 and describes, _inter alia_, "means for determining whether any medical service code contained in the at least one claim is not present in the predetermined database" and "means for informing a user that a medical service code is not contained in the predetermined database".

Claim 30 describes a system similar to claim 19 and recites, _inter alia_, "means for determining whether one of the medical service codes in the at least one claim is mutually exclusive due to non-medical criteria with any other medical service code in the at least one claim", "means for authorizing medical service codes which are not mutually exclusive due to

- 21 -

MCK 000298

non-medical criteria with any other medical service codes", and "means for rejecting medical service codes which are mutually exclusive due to non-medical criteria with any other medical service codes" in response to the means for determining.

Claim 31 describes a similar method as claim 7 and recites, _inter alia_, "determining whether one of the medical service codes in a plurality of medical service codes is valid or invalid by interacting with the database and the set of relationships contained in the database", "authorizing the at least one claim in response to the determining step," and "rejecting the at least one claim in response to the determining step".

Claim 32 describes a system similar to claim 19 and recites, _inter alia_, "means for determining whether one of the medical service codes in the plurality of medical service codes is valid or invalid by interacting with the database and the set of relationships contained in the database", "means for authorizing the at least claim in response to the means for determining", and "means for rejecting the at least one claim in response to the means for determining".

The dependent claims additionally describe further patentable features of the present invention.

In view of the foregoing amendments and remarks, application should now be in condition for allowance. A notice

MCK 000299

to this effect is respectfully requested.  Should further
questions arise concerning this application, the Examiner is
invited to call the Applicants' attorney at the number listed
below.

                              Respectfully submitted,

                              Donald C. Holloway, et al.

                         By _____
                              A. Jason Mirabito
                              Reg. No. 28,161
                              Wolf, Greenfield & Sacks, P.C.
                              600 Atlantic Avenue
                              Boston, MA  02210-2211
                              Tel.: (617) 720-3500

Docket no. H033/7002

Dated:  January 29, 1991

0408v

                              - 23 -

                                        MCK 000300

Exhibit P

1       UNITED STATES DISTRICT COURT

2       FOR THE DISTRICT OF DELAWARE

3

4

5    -----------------------------x

6    MC KESSON INFORMATION SYSTEMS, :

7       Plaintiff,    :  Case No.

8    vs.        :  04-1258 SLR

9    THE TRIZETTO GROUP,    :

10      Defendant.    :

11    -----------------------------x

12

13

14    VIDEOTAPED DEPOSITION OF GEORGE A. GOLDBERG

15

16

17        Washington, D.C.

18        Tuesday, September 13, 2005

19

20

21

22

23

24    REPORTED BY:

25    CARMEN SMITH

1

9/28/2005  Goldberg, George, Vol II

1    appear to go up in ascending numerical order, although there

2    are some exceptions.

3        Q    Does that further help you believe that you

4    likely were sitting with the code book and going through it

5    to develop these rules?

6            MR. SHEK:  Objection.  Misstates the prior

7    testimony.

8            THE WITNESS:  However, the question is a little

9    different this time, because you're saying to develop them,

10   and it's possible that some of this was done that way, and

11   it's possible that others of them had already been thought

12   of; and as I went through the book and got to that code,

13   then I wrote the rule and it -- but it had been pre-

14   developed in a very minor way, the way Wolfgang Mozart

15   supposedly often know what he was going to write before he

16   sat down and actually wrote it out.

17           Well, we finally found a document that clearly is

18   mine.

19           MR. SEGAL:  I'm going to mark a one-page document

20   bearing Bates number MCK 050028 as Exhibit 16 and ask you to

21   take a look at that.

22                        (Goldberg Deposition Exhibit No.

23                        16 was marked for identification.)

24

25                    (Document handed to witness.)

9/28/2005  Goldberg, George, Vol II

1          BY MR. SEGAL:

2      Q    See if you recognize this document at all.

3          (Pause)

4          And I note it copies what's called the

5    Development Group.

6      A    Well, the answer to your direct question is easy;

7    I do not recall this document at all.

8      Q    Were you a member of the Development Group at HPR

9    about May 10, 1988?

10     A    I assume I was.  At some point I was a member of

11   the Development Group.  I don't know if I continued to be a

12   member of the development group as we move forward with the

13   development of a more specific product, and that's all I can

14   say about that.

15     Q    The middle of this document -- and correct me if

16   I mischaracterize it -- generally refers to a review of the

17   databases and the CodeReview software.  And refers to the

18   database as having an interview and entry date?

19     A    Where is that, please?

20     Q    2C.

21     A    Thank you. I was hung up on 1 when I saw the word

22   'interview.'  So now I'm going to 2.

23         I see 2C.

24     Q    Can you tell me what the interview date was?

25     A    Well, actually, I don't recall that there was

1    one.  Now that I see it here, I am willing to be convinced

2    the Denise didn't make it up, and there was an interview

3    date, and I would believe that that would refer to dates of

4    my interviews with Robert Hertenstein, and I notice that it

5    says whether at the beginning of number 2, so I don't know

6    if that means if an interview date was required for every

7    entry.

8         Nor -- because I'm now speculating at what you're

9    driving at -- nor does this necessarily mean that if it gave

10   an interview date with Robert Hertenstein, that that meant

11   that 100 percent of rules that might have been entered on

12   that interview date were in fact from him as opposed to my

13   extensions based on what we had talked about during the

14   interview.

15        So I'm saying a lot more than just the question

16   that was asked.

17   Q    Did you write memos or have interview sheets

18   recording your conversations with Dr. Hertenstein during the

19   development of the CodeReview product?

20   A    Well, I certainly had sheets like Exhibit 15, and

21   I do understand that this occurred later, but that's not

22   what you're asking.

23        So all during the interview process, I produced

24   documents similar to 15.  It is possible that the date on

25   Deposition Exhibit 15, which for that deposition is February

1    7, 1989, would have been the so-called interview date.

2    Whether there was an interview or not, because we wanted to

3    get an idea of when I wrote the rule, and the entry date

4    could have been days later, weeks later, even months later;

5    and the reason I feel so secure about this is that that's --

6    I remember that, because subsequently I have been involved

7    in writing rules, and we typically have two dates; the rule

8    development date, whatever it may be called, and the rule

9    entry date.

10    Q    The question was, did you have interview sheets

11    reflecting the conversations that you had with Dr.

12    Hertenstein in connection with your work on the CodeReview

13    product?

14    A    Sorry. I remember taking notes. Whether I would

15    call them interview sheets or not, I don't know.

16    Q    Do you recall dating your notes so that the

17    content of your conversations could be input into the code

18    review knowledge base?

19    A    I don't recall -- you've asked two questions in

20    one. I don't recall dating those interview -- those notes,

21    and I don't think those notes would have gone directly into

22    the knowledge base; there would have had to be another step

23    resembling Exhibit 15; that would be my recollection, but

24    part of -- even part of that is speculation, even though

25    we're now much closer to what I did.

9/28/2005  Goldberg, George, Vol II

1          MR. SEGAL:  This is a good time to break for

2     lunch.

3          (Whereupon, at 12:20 p.m., the deposition

4     recessed for lunch.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1        I HEREBY CERTIFY that I have read this
 2   transcript of my deposition and that this transcript
 3   accurately states the testimony given by me, with
 4   the changes or corrections, if any, as noted.
 5
 6
 7        X    George A. Goldberg
 8                  10/18/2005
 9
10
11   Subscribed and sworn to before me this        day of
12             , 20        .
13
14
15
16             X
17             Notary Public
18
19
20
21   My commission expires:
22
23
24
25
```

254

GEORGE A. GOLDBERG

BARKLEY
Court Reporters

1       I HEREBY CERTIFY that I have read this transcript

2  of my deposition and that this transcript accurately states

3  the testimony given by me, with the changes or corrections,

4  if any, as noted.

5

6

7

8  x _George A. Goldberg_____

9        10/18/2005

10

11  Subscribed and sworn to before me this     day of

12      20  .

13

14

15

16  _____

17

18  Notary Public

19

20  My commission expires:

21

22

23

24

25

392

GEORGE A. GOLDBERG, M.D. - VOLUME II

BARKLEY
Court Reporters

# Exhibit Q

Redacted

# Exhibit R

Redacted

Exhibit S

Redacted

Exhibit T

Redacted

# Exhibit U

Redacted

# Exhibit V

2754

# dBASE III® PLUS

A COMPREHENSIVE USER'S
MANUAL FOR NONPROGRAMMERS

## KERMAN D. BHARUCHA



SOFTWARE
AVAILABLE

INFO
INSIDE

---

---



# 3.   Databases and dBASE III PLUS   Fundamentals

A database is a central repository of related information. To paraphrase this, a database is a *physical grouping* of a collection of individual, but related, bits and pieces of *information.*

As an example, if you want to maintain information about each and every individual employed in your organization, you will need to create a *base of data* about all your employees. This base of data could contain, for example, information about each employee's employee-number, name, salary, year of hire, and date of last promotion. This base will subsequently provide you with immediate access to the type of information you are seeking. Databases can and are being maintained for every subject from astronomy to zoology. Computers, because of their speed and accuracy, are the information processors, the physical means, of creating and subsequently accessing these databases.

## RELATIONAL DATABASES

A *relational database* is one in which the data is arranged in the form of a *matrix*, with the rows of the matrix forming each individual record in the database, and the columns of the matrix forming the individual fields of information, across all records. An example of the structure of such a database follows:

9

|  | field-1 | field-2 | field-3 | field-4 | field-5 |
|---|---|---|---|---|---|
|  | (EMP_NUM) | (EMP_NAME) | (ORG) | (TOWN) | (YR_HIRE) |
| record-1 | 80085L | JOHN JONES | BSG | ROCHESTER | 1980 |
| record-2 | 3647A | ADAM SMITH | RBG | PENFIELD | 1975 |
| record-3 | xxxxx | xxxxxxxx | xxxxx | xxxxxxx | xxxxx |
| record-4 | xxxxx | xxxxxxxx | xxxxx | xxxxxxx | xxxxx |

The fields of information can, of course, be just about any field conceptualized by the user of dBASE. The EMP_NUM, EMP_NAME, and other field names have been provided just as examples.

Using such databases, you can establish a *relationship* between two or more databases, by using a common *key* field of information. You can, for example, access an Inventory database, and using the PART NUMBER as the key for each inventory record, list out all the transactions for this PART NUMBER from a Transactions database. As another example, you can access a Personnel-Master file and a Payroll-Master file via the (common) social-security field to produce paychecks. If you are creating another file using a relationship, then for the structure of the new database, you can specify any combination of fields from the input databases. You can even build entirely new fields, using the data from the input databases. A management system that permits such interaction between databases is a *relational database management system*.

## THE dBASE III PLUS SYSTEM

So where does dBASE III PLUS fit in with all of the previous concepts and definitions?

dBASE III PLUS is the name of a software package (a collection of computer programs), marketed by Ashton Tate, Inc., of Culver City, California; it is a very powerful tool for the development of microcomputer business applications.

dBASE III PLUS is a data manager. It is a piece of software that lets the user have full freedom in the conceptualization and creation of databases for all types of business applications. Since business depends on timely information dissemination, the value of a powerful, programmable utility for database generation, maintenance, and query cannot be overstated.

dBASE III PLUS is defined as a *relational database manager*; that is, this software will help you create and maintain relational databases.

dBASE III PLUS can be executed on any microcomputer system that claims IBM compatibility. If you are inclined to use dBASE III PLUS for your business needs, but are unsure of the compatibility of your computer system with dBASE, your dealer should be able to help you out.

## WHO NEEDS THIS BOOK?

Because dBASE III PLUS is a data manager, anyone who has the need to create and maintain data needs to learn to use a package such as dBASE III PLUS.

This book has been written for the person who wants to use dBASE III PLUS for creating and maintaining and querying business-oriented, or commercial, databases (commercial, as opposed to scientific). If you own or use dBASE III PLUS for personal or business applications but have found the dBASE III PLUS manual too techni-

10

Exhibit W



CONRAD
O'BRIEN
GELLMAN
& ROHN, PC

Louis C. Bechtle
*Attorney at Law*
Direct Dial: 215.864.8060
lbechtle@cogr.com

December 19, 2005

Jack B. Blumenfeld, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Michael A. Barlow, Esquire
Skadden Arps, Slate, Meagher & Flom
One Rodney Square
P.O. Box 636
Wilmington, DE 19899

RE:    McKesson Information Solutions LLC v.
The TriZetto Group, Inc.
No. 04-1258 (SLR) (D.Del.)

Dear Counsel:

Enclosed herewith is Special Master Order No. 5 in the above-referenced

matter.

Sincerely,

Louis C. Bechtle

LCB/jrw
Enclosure

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MCKESSON INFORMATION                  :
SOLUTIONS, LLC,                       :
                                      :
    Plaintiff,    :
                                      :     NO.: 04-1256-SLR
    v.             :
                                      :
THE TRIZETTO GROUP, INC.,             :
                                      :
    Defendant.     :

## SPECIAL MASTER ORDER NO. 5

Louis C. Bechtle, Special Discovery Master        December 19, 2005

     In correspondence provided to the Special Discovery Master (SDM) by counsel ( Defendants' letters of October 18, 2005, November 10, 2005, and plaintiff's letter of November 17, 2005, the views of counsel have focused on a contention by defendant that plaintiff's counsel improperly instructed its witnesses not to answer certain questions at depositions taken of Michael Cesarz – 9/9/05; Janet Cutcliff – 9/16/05; Mark E. Owen – 9/8/05; and Carolyn Wukitch 8/26/05 and; Marsha Radosevich – 7/7/05. Counsel have differing views as to whether or not Judge Robinson included the defendant's complaints in this regard as within the scope of the assignment to the SDM. I have waited to consider those positions in depth until I had an accurate view of the position of the parties that I thought

could best be ascertained from my efforts to complete the other assignments that are not disputed as to my work as the SDM. As a result of that other work, I have come to the view that I believe Judge Robinson does expect the SDM to consider the questions regarding the questioning of plaintiff's witnesses at their depositions and this SDM Order will address those concerns. I will be reviewing the excerpts provided in defendant's letter of October 18, 2005 in this exercise.

1.    I begin this Order by denying defendant's request that any privilege that could apply to the excerpts to be considered here have been waived because of the alleged failure of the plaintiff to conform to the Stipulated Protective Order approved by the court.

2.    Deposition of Michael Cesarz – Vice President – Project Manager – Tab 1 – Page 152 – Line 3 – 15.

Privilege not allowed. To instruct a witness not to answer based on the presence of grounds for privilege, counsel must advise as to the basis of that assertion. Comments by and among plaintiff's non-attorney employees or those of third parties or affiliates are not entitled to attorney client privilege protection unless the comments would disclose a confidential communication of the attorney. That is not the ground for refusing to answer offered here.

Tab 2 – Page 212 – Line 15 to Page 213 – Line 9.

If the reference mentioned on Line 20 was designed for or to a certain goal that was all or part of a communication by counsel to the witness, the

2

privilege is allowed.  On the other hand if the witness (who is testifying from a document that he prepared) is listing tasks to be performed by others, and they represent the witness' judgment as to what is to be done, the answer to the question is not privileged even though it follows and may be the result, in whole or in part, of an attorney communication.  It is the communication that is protected, not the conduct that follows or results from attorney client communication.  If a client is advised by his attorney to go to the bank and make a certain deposit on or before a certain date, any discussions that the client has with third parties or others, or the fact that he followed that advice is not protected by the attorney client privilege.  It is the communication with the lawyer to the client is protected, not what the client's reaction to that advice is.

<u>Tab 3 – Page 218 – Line 13  to Page 219 – Line 4.</u>

Privilege asserted on Page 218, Line 13 to Line 18 is proper.  It specifically protects the substance of a communication with counsel.  The privilege asserted on Page 218 – Line 22 to Page 219 – Line 4 is not proper.  The witness's decision or judgment following the rendering of attorney advice is not protected.  Again, clients often follow their attorney's advice and engage in conduct that reflects.  Despite that, the conduct is not protected.  It is the advice that is protected.

<u>Tab 4 – Page 223 – Line 17 to Page 224 – Line 16.</u>

If the associated risks are those within the attorney's expertise <u>and</u> of the type the attorney was retained to assess and communicate to the client, that communication is privileged. However, if the risks are risks that non lawyer management type employees are trained and expected to assess – even if they reflect or are influenced by attorney communications, the assessments are not privileged. What is being expressed in the document here, by its terms, are the business opinions of plaintiff's employees and not a communication with counsel. The question should be answered.

<u>Tab 4 – Page 226 – Line 1 to 10.</u>

Privilege is not allowed. The witness' judgment, though based on a communication of counsel is not privileged.

<u>Tab – 4 Page 226 – Line 12 to 22.</u>

Plaintiff's counsel's assertion of the privilege that could disclose substantive communications is appropriate.

<u>Tab 5 – Page 237 – Line 11 to Page 238 – Line 23.</u>

Privilege not allowed. While the expression of privilege by plaintiff's counsel at Page 237—Line 20 -- 23 and Page 238 – Line 19 to 22 is correct, it does not appear that the premise ("legal advice" or "communications") can be satisfied by the document that was authored by this witness and says that these judgments

4

are being made from a business perspective. The truth of this is buttressed by the

note that the legal assessment has not yet been made. If attorney communications

are restated in the business assessments, they should or could have been redacted

as attorney client communications.

<u>Tab 5 – Page 240 – Line 11 to Page 241 – Line 2.</u>

Privilege is not allowed. This question seeks testimony concerning "events"

with a competitor. In the first place, such events are not confidential if they are

with a competitor or if they occurred in connection with any other third party, and

secondly, the question has nothing to do with attorney client communications. The

witness is not being asked what attorney client communications, but merely what

the events were.

<u>Tab 6 – Page 261 – Line 15 to 22.</u>

Assertion of privilege is proper.

<u>Tab 6 – Page 262 – Line 14 to Page 263 – Line 4.</u>

A reading of this excerpt suggests that the plaintiff answered the question

the best that he could.

<u>Tab 6 – Page 264 – Line 21 to Page 265 – Line 15.</u>

Assertion of privilege is proper.

<u>Tab 6 – Page 266 – Line 3 to Page 267 – Line 7.</u>

Privilege not allowed.  The witness is being asked what he was doing that resulted in his making notes that he put in his memorandum.  What non-attorneys do are not covered by the attorney client privilege.  Any instructions or communications he may receive from his attorney are protected.  What action he took as a result of those communications and written by him in his memorandum are not protected.  If the witness can say truthfully – under oath – that the entries in his notes were told to him by his counsel, they may be protected, subject to confidentiality and wavier concerns.

<u>Tab 7 – Page 290 – Line 11 to Line 25.</u>

Reference to "main concern" is troublesome.  Witnesses should be asked if the main concern is in its entirety a legal one that has been communicated confidentially to plaintiff (and employees with a need to know).  If that is "yes", plaintiff should provide that communication to the SDM for *en camera* review.  If it is "no" the question should be answered.

<u>Tab 8 – Page 83 – Line 5 to Line 21 (Janet Cutcliff – Vice President Business Development).</u>

No ruling needed.

<u>Tab 9 – Page 92 – Line 11 to Page 94 – Line 4.</u>

Assertion of privilege is proper.

6

<u>Tab 10 – Page 51 – Line 13 to Page 52 – Line 6 (Mark Owen, Sr. V.P.)</u>

Note enough information to rule.

<u>Tab 11 – Page 124 – Line 1 to Line 19 (Marsha Radosevich).</u>

Witness is unable to answer the question.

<u>Tab 11 – Page 126 – Line 15 to – Line 25.</u>

Privilege disallowed. Witness is merely being asked to name persons that <u>she</u> communicated with to assist in the review of patent applications. She can answer that without disclosing any communications from counsel.

Tab 12 – Page 166 – Line 13 to Page 168 – Line 1 and
<u>Page 169 – Line 10-21.</u>

In the SDM's view, the witness answered the question properly.

<u>Tab 13 – Page 175 – Line 19 to Page 177 – Line 7.</u>

Privilege disallowed. Here, the witness is asked what the witness said about what was to be told to customers. Even if that was an attorney client communication, what was to be told to customers, presumably was not intended to be confidential between attorney and client.

Tab 14 – Page 93 – Line 10 to Line 23 (Carolyn Wukitch – Sr. V.P. and
<u>General Manager.</u>

Instruction to witness appropriate under the circumstances.

7

<u>Tab 15 – Page 119 – Line 9 to Page 120 – Line 17.</u>

Plaintiff's position is correct here. A claim of inadvertent production on Page 119 justifies counsel's instruction to the witness.

<u>Tab 16 – Page 168 – Line 19 to Page 169 – Line 11.</u>

Counsel's instruction to witness is proper for the same reasons as set forth in the ruling in Tab 15.

<u>Tab 17 – Page 172 – Line 1 to Page 173 – Line 7.</u>

Privilege not allowed as to whether email was sent before or after witness received legal summary. Witness is being asked about something she did, not what or even whether, counsel instructed her to do that.

<u>Tab 18 – Page 182 – Line 9 to Page 183 – Line 2.</u>

Witness is being asked to give an answer from a business prospective whether a license price was a concern " . . . yes or no." A business decision influenced or "driven" by a lawyer is not privileged. What the attorney said is privileged. What the client's business assessment is resulting from that advice is not. Privilege is not allowed.

<u>Tab 19 – Page 191 – Line 22 to Page 192 – Line 25.</u>

Initially, the inquiry on Page 192 at Line 4 to 25 should be addressed. It is perfectly plain that the witness is being questions about her role and a document she wrote as a high-ranking official of the plaintiff corporation and not as an

individual. Accordingly, decisions she makes in regard to these matters involving this case are on behalf of McKesson, the plaintiff. With that background she is asked on Line 16 whether McKesson aggressively pursued the patent and used it as leverage for the broader deal. (Presumably meaning a business arrangement McKesson and TriZetto were in negotiations about regarding their combined business goals). The witness is a senior vice president and general manager of the plaintiff (see plaintiff's list of non-attorneys.) It is fair to assume that in that post, she either participated in or has knowledge about the basis of the lawsuit and, of equal importance, the reasons for filing it. In the normal course of things, it is the client that authorizes the filing of a lawsuit and the attorneys who either recommend it or recommend against it. A party must have good grounds to sue another party and the attorneys are crucial in arriving at that decision. Their communications in that regard are privileged. That is not what is being asked here. What is being asked here is whether there are, in addition to what the attorneys may have communicated to the parties, parallel business reasons for aggressive pursuit of the patent. The question should and can be answered by the witness

9

without compromising the protection plaintiff is entitled to for attorney client

communication concerning legal advice in regard to the filing of this lawsuit.

SO ORDERED:

LOUIS C. BECHTLE
SPECIAL DISCOVERY MASTER

DATE: December 19, 2005

10

Exhibit X

Redacted

# Exhibit Y

DEC. 29. 2005  3:06PM    CONRAD O'BRIEN/2158649620    NO. 5954  P. 2/3


CONRAD
O'BRIEN
GELLMAN
& ROHN, PC

Louis C. Bechtle
*Attorney at Law*
Direct Dial: 215.864.8060
lbechtle@cogr.com

December 29, 2005

**VIA FACSIMILE**

David W. Hansen, Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
525 University Avenue
Palo Alto, CA  94301

Jack B. Blumenfeld, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899

RE:    McKesson Information Solutions LLC
       v. The TriZetto Group, Inc.
       C.A. No. 04-1258 (SLR) (D. Del.)

Dear Counsel:

I am promptly addressing defendant's letter of December 28, 2005 without waiting for a response from counsel for McKesson in order to save some time. I say that because I will be leaving the country on January 7, 2006 for ten (10) days and I want counsel to take certain steps so upon my return we can convene and resolve outstanding issues including those set forth in the letter of December 28, 2005, if not before.

With those thoughts in mind, the following steps should be taken:

1.  The documents that I required to be produced in Special Master Order No. 4 should be produced by plaintiff to defendant immediately upon receipt of this letter.

2.  Counsel for the plaintiff should examine the documents on plaintiff's privilege log in accordance with the standards set forth in all of the previous Orders I have entered in this matter, and specifically those in Special Master Order No. 4. The extent to which the documents should be produced, they should be produced immediately upon their examination by the plaintiff, if in accordance with those standards they cannot remain as privileged documents. To the extent, following such

DEC. 29. 2005  3:06PM     CONRAD O'BRIEN/2158649620           NO. 5954   P. 3/3

CONRAD O'BRIEN GELLMAN & ROHN, PC

David W. Hansen, Esquire
Jack B. Blumenfeld, Esquire
December 29, 2005
Page 2

review, that plaintiff continues to believe that any documents are privileged, it should make a separate list of them and we shall convene a hearing in Wilmington at the Courthouse where the documents will be presented to me and I will review and rule upon them one by one following my return, if not before.

3.  The eleven (11) documents on page 3 and the twenty-five (25) documents on page 4 to 8 inclusive should be provided to me by the plaintiff immediately upon receipt of this letter and I will use my best efforts to rule on them in-camera before I leave the country.

I want to make it plain by this letter that I expect counsel to apply the standards that I have included in my previous Orders in reviewing the documents on Exhibit "A" and Exhibit "B" before sending them to me for in-camera review. Many of those earlier ruled upon documents seemed fundamentally inappropriate for a claim of privilege under the most basic standards that apply for claiming privilege. I do not expect to see the same grounds that have been rejected heretofore to again be asserted for claiming privilege on these and the documents covered by this letter and otherwise.

Sincerely,

Louis C. Bechtle

LCB/rig

cc:   Michael A. Barlow, Esquire (via facsimile)

DEC. 29. 2005  3:05PM    CONRAD O'BRIEN/2158649620                    NO. 5954    P. 1/3

 CONRAD
O'BRIEN
GELLMAN
& ROHN, PC

## TELECOMMUNICATION TRANSMITTAL

**FILE NO.:**        999-090              **DATE:**        December 29, 2005

| TO: | FAX NO.: | TELEPHONE NO.: |
|-----|----------|----------------|
| David W. Hansen, Esquire | 888-329-1840 | 650-470-4560 |
| Jack B. Blumenfeld, Esquire | 302-658-3989 | 302-575-7291 |
| Michael A. Barlow, Esquire | 888-329-2812 | 302-651-3154 |

**FROM:**    Honorable Louis C. Bechtle

**TOTAL NUMBER OF PAGES INCLUDING THIS COVER SHEET:**    3

**IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL AS QUICKLY AS POSSIBLE FOR RE-TRANSMISSION.**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MESSAGE:**

☐  The original will be sent by regular mail.
☐  The original will be sent by overnight delivery.
☒  No original will be sent.

**CONFIDENTIALITY NOTE:**

        The information transmitted in this facsimile message is intended only for the personal and confidential use
of the recipient(s) named above. This message may be an attorney-client communication and as such is privileged and
confidential. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering
it to the intended recipient, you are hereby notified that you have received this document in error and that any retention,
review, use, dissemination, distribution or copying of this facsimile message and the information contained therein is
strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone and return the
original message to us at the above address by mail (we will reimburse postage). Thank you.

  1515 Market Street ● 16th Floor ● Philadelphia, PA 19102-1916 ● T: 215.864.9600 ● F: 215.864.9620 ● www.cogr.com

## CERTIFICATE OF SERVICE

I, Melissa Stone Myers, hereby certify that on January 27, 2006 I electronically filed the redacted version of The TriZetto Group, Inc.'s Appendix of Exhibits in Support of Its Answering Claim Construction Brief (Redacted Version) with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Michael A. Barlow
> Skadden, Arps, Slate, Meagher & Flom LLP

I also certify that copies were caused to be served on January 27, 2006 upon the following in the manner indicated:

### BY EMAIL and FEDERAL EXPRESS

> Jeffrey G. Randall
> Skadden, Arps, Slate, Meagher & Flom LLP
> 525 University Avenue
> Suite 1100
> Palo Alto, CA  94301

> */s/     Melissa Stone Myers (#3985)*
> Morris, Nichols, Arsht & Tunnell
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE  19899
> (302) 658-9200
> mmyers@mnat.com