IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MCKESSON INFORMATION SOLUTIONS LLC, )
                                    )
                  Plaintiff,        )        CIVIL ACTION NO. 04-1258-SLR
                                    )
        v.                          )        **REDACTED PUBLIC VERSION**
                                    )
THE TRIZETTO GROUP, INC.,           )
                                    )
                  Defendant.        )
_____     )
                                    )

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT REGARDING DEFENDANT'S EIGHTH AFFIRMATIVE DEFENSE OF LACHES AND ESTOPPEL

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff
McKesson Information Solutions LLC

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500

DATED: January 20, 2006
Redacted Public Version Filed: January 27, 2006

# TABLE OF CONTENTS

**Page**

I.  NATURE AND STAGE OF PROCEEDINGS ...................................................1

II.  SUMMARY OF ARGUMENT ...................................................................1

III.  SUMMARY JUDGMENT OF NO LACHES IS PROPER BECAUSE
TRIZETTO FAILS TO RAISE A TRIABLE ISSUE AS TO EVERY
ESSENTIAL ELEMENT OF ITS DEFENSE................................................2

    A.  The Evidence Does Not Support TriZetto's Proposed Start Date for
Measuring the Alleged Delay Period............................................................2

    B.  TriZetto Cannot Prove that McKesson Delayed Filing Suit for
More than Six Years Because Much of the Alleged Delay Period
is Excused. ......................................................................................4

        1.  The *GMIS v. HPR* Litigation. ...................................................4

        2.  The Patent Negotiations Between the Parties. ...............................5

        3.  The HPR-HBOC and HBOC-McKesson Acquisitions. ...............6

        4.  Economic Appropriateness of Filing Suit. ...................................8

        5.  The Foregoing Justifications Reduce the Alleged Delay
Period to Less than Six Years. ......................................................9

    C.  TriZetto Cannot Prove as a Matter of Law that It Suffered
Economic or Evidentiary Prejudice Because of McKesson's
Alleged Delay .................................................................................9

        1.  Economic Prejudice .................................................................9

        2.  Evidentiary Prejudice...............................................................12

IV.  MCKESSON IS ENTITLED TO SUMMARY JUDGMENT OF NO
ESTOPPEL BECAUSE TRIZETTO CANNOT PROVE EVERY
ESSENTIAL ELEMENT OF ITS DEFENSE AS A MATTER OF LAW ........15

    A.  TriZetto Has Failed to Raise a Triable Issue as to Whether
McKesson Engaged in Misleading Conduct...........................................15

    B.  TriZetto Cannot Prove Reliance Because the Undisputed Facts
Establish that TriZetto Acted Without Regard to the Patent. .................17

    C.  TriZetto Lacks Sufficient Evidence to Be Able to Prove Prejudice. .......19

V.    JUDGE BECHTLE'S RULINGS ARE IRRELEVANT TO TRIZETTO'S
      LACHES AND ESTOPPEL DEFENSES ...........................................................19

VI.   CONCLUSION............................................................................................20

# TABLE OF AUTHORITIES

<u>Page(s)</u>

**CASES**

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,*
    960 F.2d 1020 (Fed. Cir. 1992)..................................................................4, 12, 15, 17

*ABB Robotics, Inc. v. GMFanuc Robotics Corp.,*
    52 F.3d 1062 (Fed. Cir. 1995)...........................................................................12

*Autoclave Eng'rs, Inc. v. Duriron Co.,*
    190 U.S.P.Q. 125 (E.D. Pa. 1976) ......................................................................8

*Gasser Chair Co. v. Infanti Chair Mfg. Corp.,*
    60 F.3d 770 (Fed. Cir. 1995)..............................................................................7

*Genzyme Corp. v. Atrium Med. Corp.,*
    No. 00-958-MPT, 2003 U.S. Dist. LEXIS 12784 (D. Del. July 22, 2003)...........6, 7, 8

*Giese v. Pierce Chem. Co.,*
    29 F. Supp. 2d 33 (D. Mass. 1998) ......................................................................6

*Ill. Tool Works Inc. v. Grip-Pak, Inc.,*
    725 F. Supp. 951 (N.D. Ill. 1989) ........................................................................8

*Izumi Prods. Co. v. Koninklijke Philips Elecs. N.V.,*
    315 F. Supp. 2d 589 (D. Del. 2004).....................................................................12

*James River Corp. of Va. v. Hallmark Cards,*
    915 F. Supp. 968 (E.D. Wis. 1996).................................................................12, 14

*Meyers v. Asics Corp.,*
    974 F.2d 1304 (Fed. Cir. 1992).....................................................................15, 16

*Meyers v. Brooks Shoe, Inc.,*
    912 F.2d 1459 (Fed. Cir. 1990).........................................................................11

*RCA Corp. v. Data Gen. Corp.,*
    701 F. Supp. 456 (D. Del. 1988).........................................................................6

*Symbol Techs., Inc. v. Proxim Inc.,*
    No. 01-801-SLR, 2004 WL 1770290 (D. Del. July 28, 2004) ............................13, 17

Plaintiff McKesson Information Solutions LLC ("McKesson") respectfully submits its reply brief in support of its motion for summary judgment on defendant The TriZetto Group, Inc.'s ("TriZetto") Eighth Affirmative Defense of laches and estoppel.

## I.    NATURE AND STAGE OF PROCEEDINGS.

The nature and stage of proceedings are generally set forth in McKesson's opening brief. (D.I. 161.) In addition, on January 10, 2006, TriZetto withdrew the acquiescence and waiver portions of its Eighth Affirmative Defense. (D.I. 212 at 4 n.3.)

## II.    SUMMARY OF ARGUMENT.

In addition to the reasons set forth in its opening brief, McKesson is entitled to summary judgment as to TriZetto's Eighth Affirmative Defense for the following reasons:

1.    TriZetto cannot prove laches as matter of law because TriZetto lacks sufficient evidence to be able to establish every essential element of its defense. The evidence does not support a finding that McKesson unreasonably delayed in filing suit or that McKesson delayed for more than six years so as to give rise a presumption of laches. In addition, TriZetto cannot show that it suffered any economic prejudice because the undisputed facts show that TriZetto acted without regard to the positions taken by McKesson regarding the '164 patent. TriZetto also has failed to present evidence that any loss of evidence was caused by McKesson's delay or has prevented TriZetto from being able to present a full and fair case on the merits.

2.    Summary judgment of no estoppel is proper because TriZetto cannot prove each essential element of its defense as a matter of law. With regard to misleading conduct, TriZetto offers evidence that the Federal Circuit has clearly held is insufficient to establish this element. TriZetto's asserted reliance is factually unsupported and, in fact,

1

is refuted by evidence that TriZetto acted regardless of the enforcement or non-enforcement of the '164 patent. TriZetto also has failed to present evidence sufficient to show that it has suffered any economic or evidentiary prejudice.

Because TriZetto has failed to raise triable issues as its laches or estoppel defense, McKesson is entitled to summary judgment on TriZetto's Eighth Affirmative Defense.

## III.   SUMMARY JUDGMENT OF NO LACHES IS PROPER BECAUSE TRIZETTO FAILS TO RAISE A TRIABLE ISSUE AS TO EVERY ESSENTIAL ELEMENT OF ITS DEFENSE.

### A.   The Evidence Does Not Support TriZetto's Proposed Start Date for Measuring the Alleged Delay Period.

TriZetto asserts that the delay period should begin in October 1993, when the '164 patent issued, because McKesson's predecessor HPR allegedly knew or reasonably should have known at that time that TriZetto's predecessors, Erisco and RIMS, were selling products with infringing clinical editing functionality. The evidence does not support such an early start date.

As to RIMS, TriZetto's only evidence of HPR's knowledge of RIMS's activities consists of two documents from 1989            REDACTED

REDACTED                                        (D.I. 213, Exhs. H & I.) Neither of these documents shows or suggests that HPR ever knew or reasonably should have known that RIMS was selling an infringing clinical editing product. Nor do the documents shed light on what, if anything, HPR knew regarding RIMS's products as of October 1993. Moreover, the former President and CEO of HPR, Dr. Radosevich, testified that as of 1994,            REDACTED

REDACTED            (D.I. 209, Exh. H at MCK 039730.) Thus, the evidence

2

refutes TriZetto's claim that HPR had actual or constructive knowledge of RIMS's infringement as of October 1993.

As to TriZetto's other predecessor Erisco, TriZetto's argument that the delay period started in October 1993 is belied by the evidence. TriZetto does not assert that HPR knew that Erisco was infringing the '164 patent. Indeed, Dr. Radosevich testified at her deposition in this case that while at HPR, **REDACTED**

**REDACTED** (D.I. 209, Exh. I at 256.)

Instead, TriZetto asserts that HPR knew of Erisco's infringing activities because HPR knew that Erisco was offering clinical editing functionality. TriZetto, however, fails to present any evidence as to what, if anything, HPR knew about Erisco's clinical editing functionality that would have indicated that Erisco was infringing the '164 patent.

In addition, to the extent that TriZetto contends that HPR had sufficient grounds to sue Erisco for infringement based solely on its knowledge that Erisco sold clinical editing functionality, TriZetto's assertion is at odds with its non-infringement positions. In particular, TriZetto has asserted that the only way to establish infringement is to compare the software code of the accused products with the '164 patent. (D.I. 153 at 13-23.) If one cannot analyze infringement without looking at the software code, as TriZetto contends, TriZetto cannot establish that HPR reasonably should have known that Erisco was infringing based solely on HPR's knowledge of the fact that Erisco was selling clinical editing functionality.

Accordingly, TriZetto cannot prove that HPR knew or reasonably should have known about Erisco or RIMS's infringement in or around October 1993.

**B.    TriZetto Cannot Prove that McKesson Delayed Filing Suit for More than Six Years Because Much of the Alleged Delay Period is Excused.**

Even if TriZetto's proposed start date is used, the evidence establishes that substantial portions of the alleged delay period are excused and therefore TriZetto cannot prove that McKesson delayed filing suit against TriZetto for more than six years.

**1.    The *GMIS v. HPR* Litigation.**

TriZetto asserts that the prior *GMIS v. HPR* litigation does not excuse the alleged delay because HPR did not give notice of the litigation to Erisco. TriZetto's argument, however, ignores clear Federal Circuit precedent that "there can be no rigid requirement in judging a laches defense that such notice *must* be given. If a defendant is, for example, aware of the litigation from other sources, it would place form over substance to require a specific notice." *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1039 (Fed. Cir. 1992) (emphasis in original).

Here, it is undisputed that Erisco was well aware of the *GMIS v. HPR* litigation,

REDACTED

(D.I. 162, Exh. 7 at 193, 197 & 204-05). Under the circumstances, providing notice to Erisco would have served no purpose other than to "place form over substance." *Aukerman*, 960 F.2d at 1039.

REDACTED

The Federal Circuit in *Aukerman* emphasized that "a notice requirement is not to be rigidly imposed," even where there was prior contact between the patentee and alleged infringer. *Id.* (finding that district court erred in requiring patentee to give defendant notice of other litigation, even though patentee and defendant had been engaged in patent licensing discussions

4

before the other litigation commenced). Given that the prior contact cited by TriZetto involved a few limited communications that occurred years before the patent issued, requiring notice in this case would be unreasonable and contrary to the Federal Circuit's prohibition against the rigid imposition of a notice requirement. Accordingly, the alleged delay period must be excused during the *GMIS v. HPR* litigation.

### 2.     The Patent Negotiations Between the Parties.

TriZetto's assertion that the parties' negotiations from 2001 through 2003 were not focused on resolving the patent dispute is belied by the evidence, including the testimony of TriZetto's CEO and Chairman, Jeffrey Margolis, and its Executive Vice President, Anthony Bellomo.

REDACTED

REDACTED

5

REDACTED

TriZetto's reliance on *Giese v. Pierce Chem. Co.*, 29 F. Supp. 2d 33, 40 (D. Mass. 1998), is misplaced. *Giese* involved negotiations between the patentee and third parties, something not present here. Rather, the negotiations that took place here were between the patentee and accused infringer and were intended to avoid litigation on the patent-- exactly the type of negotiations that this Court has found justifies a delay in filing suit. *See RCA Corp. v. Data Gen. Corp.*, 701 F. Supp. 456, 477 (D. Del. 1988) ("[Plaintiff's] genuine effort to resolve its dispute with [defendant] through negotiations provides a justifiable excuse for the eleven year delay in commencing this suit.").

Because the parties were actively trying to resolve their patent dispute from 2001 through 2003, any alleged delay is excused during that period.

### 3.     The HPR-HBOC and HBOC-McKesson Acquisitions.

Contrary to TriZetto's assertion, excusing an alleged delay in filing suit because of a change in management is not a "newly invented... excuse" by McKesson, but is a justification that this Court has recognized is a "valid reason[] for its delay [in filing suit]." *Genzyme Corp. v. Atrium Med. Corp.*, No. 00-958-MPT, 2003 U.S. Dist. LEXIS 12784, at *17 (D. Del. July 22, 2003) (D.I. 162, Exh. 22). Indeed, this Court in *Genzyme* expressly relied on a change in management in the patentee in finding that the patentee's delay in filing suit was not unreasonable. *Id.* ("Genzyme presents several valid reasons

6

for its delay. According to the testimony, Genzyme underwent a change in management during the relevant time period. As a result, litigation remained a low priority until the 'dust settled.'"). Moreover, as shown in its opening brief and in its opposition to TriZetto's summary judgment motion on laches, application of this recognized excuse is appropriate in this case because the HPR-HBOC and HBOC-McKesson acquisitions did, in fact, result in substantial changes in management to the patentee. (D.I. 161 at 30-31; D.I. 208 at 19-20.)

Excusing a delay in filing suit because of major changes in management is also consistent with the principles of laches. "The application of the laches defense is discretionary, and as an equitable matter, the district court is to look to all the facts and circumstances of the case and weigh the equities of the parties." *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 773 (Fed. Cir. 1995). Indeed, the Federal Circuit has made clear that "[a] court *must consider any excuse* for the delay offered by the plaintiff." *Id.* at 774 (emphasis added).

TriZetto's argument that the transferee of a patent must accept the consequences of the dilatory conduct of the transferors misses the point. McKesson is not asserting that the clock should start over for delay purposes each time the patent is transferred. Nor did this Court in *Genzyme* make such an assertion. Consistent with *Genzyme*, McKesson simply asserts that the time for the dust to settle from two acquisitions of the patentee should be excused. This is in line with Federal Circuit precedent.

Because of the major management changes occurring to the patentee from September 1997 through at least January 1999, any alleged delay is excused for this period.

7

4.    **Economic Appropriateness of Filing Suit.**

This Court and others have found that a patentee may reasonably delay filing suit against an alleged infringer until litigation makes clear economic sense. *See Genzyme*, 2003 U.S. Dist. LEXIS 12784, at *17 ("Waiting until litigation makes clear economic sense is reasonable."); *Ill. Tool Works Inc. v. Grip-Pak, Inc.*, 725 F. Supp. 951, 953 (N.D. Ill. 1989) (holding that it was not unreasonable to delay filing suit until the alleged infringer achieved significant commercial success), *aff'd*, 906 F.2d 679 (Fed. Cir. 1990); *Autoclave Eng'rs, Inc. v. Duriron Co.*, 190 U.S.P.Q. 125, 130 (E.D. Pa. 1976) (excusing plaintiff's five-year delay in bringing suit where "[b]ecause of the expense involved, plaintiff did not institute this action until after [a customer] contract had been awarded to [defendant], when litigation became economically justified.").

In this case, the evidence supports a finding that it did not make clear economic sense to sue Erisco for infringement during the first several years following issuance of the '164 patent. In particular, the evidence shows that

REDACTED

(D.I. 209, Exh. N at MCK 020557 & Exh. P at MCK 005925.) A December 1998 report published by Gartner, Inc. similarly stated that Erisco was making efforts to shift focus away from its indemnity oriented clients served by Facts to the larger managed care market with its Facets product. (*Id.*, Exh. Q at TRZ 835967.)

Because the competitive threat to the patentee from TriZetto or its predecessors did not become significant until several years after the '164 patent issued, it was

8

reasonable to delay filing suit against TriZetto until that course of action made clear economic sense.

### 5.   The Foregoing Justifications Reduce the Alleged Delay Period to Less than Six Years.

The foregoing excuses reduce the alleged delay period by at least seven years. The period from October 1993 through late 1997 (~ 4 years) is excused because litigation during that time did not make clear economic sense.[1]  The period from September 1997 through at least January 1999 (16 months) is also excused due to the changes in management resulting from the HPR-HBOC and HBOC-McKesson acquisitions.  Finally, the period from mid-2001 to late 2003 (~ 2-1/2 years) is excused because of the parties' patent negotiations during that time.  Because these justifications reduce the alleged delay period to less than six years, TriZetto is not entitled to any presumption of laches.

### C.   TriZetto Cannot Prove as a Matter of Law that It Suffered Economic or Evidentiary Prejudice Because of McKesson's Alleged Delay

#### 1.   Economic Prejudice

TriZetto asserts that it has suffered economic prejudice because its product investment "has continued to the present based in large part on the fact that McKesson took no action with regard to its patent." (D.I. 212 at 19.)  As detailed in McKesson's opening brief, this statement is simply untrue because the undisputed evidence shows that TriZetto has followed the same course of action *without regard* to what McKesson or its predecessors have done with respect to the '164 patent. (D.I. 161 at 21-24.)

TriZetto's assertions that it would have acted differently had McKesson sued earlier cannot be reconciled with TriZetto's real-world actions in which TriZetto

---

[1]  This period also includes the one-year period that is excused due to the *GMIS v. HPR* litigation.

continued infringing the '164 patent despite fears of being sued for infringement and even after McKesson filed this litigation.

REDACTED

REDACTED

REDACTED

---

[2] TriZetto asserts that its decision to add infringing technology to its QicLink product "was based in large measure" on TriZetto's expectation that McKesson would not sue for infringement. (D.I. 212 at 20-21.) However, the evidence cited by TriZetto does not even mention the '164 patent, much less that lack of enforcement of the '164 patent motivated the change in any way. (D.I. 213, Exh. EE at 28.)

10

REDACTED

REDACTED

there is no reason to believe that TriZetto would have acted any differently under other circumstances. The Federal Circuit and this Court agree.

Both the Federal Circuit and this Court have held that an accused infringer cannot prove economic prejudice where the evidence shows that the accused infringer engaged in the same conduct regardless of what actions the patentee took with respect to the patent. *See Meyers v. Brooks Shoe, Inc.*, 912 F.2d 1459, 1463 (Fed. Cir. 1990), *overruled on other grounds by Aukerman*, 960 F.2d 1020 (finding that defendant failed to show economic prejudice because evidence indicated that it would have continued its

11

development and sales activities regardless of what plaintiff "did or did not do"); *Izumi Prods. Co. v. Koninklijke Philips Elecs. N.V.*, 315 F. Supp. 2d 589, 613 (D. Del. 2004) (rejecting defendant's claim that it would have switched to a non-infringing alternative had it received notice of infringement earlier because defendant did not switch to a non-infringing alternative after the lawsuit was filed), *aff'd*, 140 Fed. Appx. 236 (Fed. Cir. 2005). *See also ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 52 F.3d 1062, 1064 (Fed. Cir. 1995) ("[C]ases in which economic prejudice has been found lacking did not so hold because of a lack of capital investments, but, rather, because the alleged infringer failed to prove that their increased expenditures, i.e., on marketing and development, were in any way related to actions taken by the patentee."). Accordingly, the uncontroverted evidence of TriZetto's real-world behavior defeats TriZetto's claim of economic prejudice as a matter of law.

### 2.    Evidentiary Prejudice

Evidentiary prejudice requires proof that the defendant is unable "to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts." *Aukerman*, 960 F.2d at 1033. Merely showing of loss of memory or documents is not enough. *See James River Corp. of Va. v. Hallmark Cards*, 915 F. Supp. 968, 979-80 (E.D. Wis. 1996). As shown in McKesson's opening brief and in its opposition to TriZetto's summary judgment motion on laches, TriZetto cannot present sufficient evidence from which a trier of fact could reasonably conclude that McKesson's alleged delay in filing suit has caused such a loss of evidence that TriZetto is unable to present a full and fair defense on the merits. (D.I. 161 at 25-26; D.I. 208 at 32-37.)

12

Although TriZetto complains about the loss of memory and documents, TriZetto fails to show that this information would have been available if McKesson had sued earlier. TriZetto offers no evidence that any of the third parties from whom TriZetto subpoenaed documents would have had relevant documents if McKesson had sued earlier. Nor did TriZetto attempt to develop any evidence showing a causal nexus. For example, Ronald Hurst testified that he did not have documents responsive to TriZetto's subpoena because he had left Caterpillar in 1985, eight years before the patent issued. (D.I. 213, Exh. MM at 10.) Although it is likely that many, if not all, of the documents that Mr. Hurst may have had when he left Caterpillar in 1985 were lost or destroyed before the '164 patent even issued in 1993 (and therefore would not have been available if McKesson sued earlier), TriZetto did not further examine Mr. Hurst on the subject. Instead, TriZetto baldly infers that Mr. Hurst would have been able to produce relevant documents had McKesson sued earlier. "Like the absence of memory by a witness, the absence of a document that was once known to exist, without more, does not give rise to an inference of evidentiary prejudice." *Symbol Techs., Inc. v. Proxim Inc.*, No. 01-801-SLR, 2004 WL 1770290, at *16 (D. Del. July 28, 2004).

TriZetto makes an equally improper inference with regard to Dr. Goldberg, who testified that he destroyed any documents that he may have had regarding HPR, Caterpillar, CodeReview, and the '164 patent about a year after the *GMIS v. HPR* litigation was settled. (D.I. 213, Exh. OO at 140.) Since that litigation settled in January 1995, Dr. Goldberg would have destroyed his documents by early 1996—less than three years after the '164 patent issued. Thus, even if McKesson had brought suit against TriZetto earlier, it is likely that Dr. Goldberg's documents would not have been available.

13

TriZetto also fails to show that the loss of memory and documents has prevented TriZetto from being able to present a full and fair defense on the merits. For example, TriZetto does not explain how any lapse in Dr. Hertenstein's memory regarding his prior manual review of medical claims has impaired TriZetto's ability to present its invalidity defense.

REDACTED

In attempting to show evidentiary prejudice, TriZetto has done nothing more than point to losses of memory and documents. However, "loss of memory, witnesses, or documentary evidence alone does not establish prejudice. Instead, [the accused infringer] must show an inability to present a full and fair defense... While [the accused infringer] must understandably be frustrated by its inability to fully develop the factual record, laches requires more than inability to obtain evidence the party ideally wants. The risk of loss of evidence is inevitably a hazard of complex litigation." *James River*, 915 F. Supp. at 979-80. Because TriZetto has failed to present facts evidencing an inability to present

REDACTED

(Exh. 26 at 218. Exhibits 26 to 29 are attached to the Declaration of Michael A. Barlow in Support of Plaintiff's Reply Brief in Support of its Motion for Summary Judgment Regarding Defendant's Eighth Affirmative Defense of Laches and Estoppel, filed herewith.)

14

a full and fair defense or showing a causal nexus between the loss of evidence and McKesson's alleged delay, TriZetto cannot prove evidentiary prejudice as a matter of law.

## IV. MCKESSON IS ENTITLED TO SUMMARY JUDGMENT OF NO ESTOPPEL BECAUSE TRIZETTO CANNOT PROVE EVERY ESSENTIAL ELEMENT OF ITS DEFENSE AS A MATTER OF LAW.

### A. TriZetto Has Failed to Raise a Triable Issue as to Whether McKesson Engaged in Misleading Conduct

TriZetto concedes that McKesson never, through statements or actions, misled TriZetto into believing that they would not be sued for infringement. Instead, TriZetto contends that because TriZetto's predecessors had a few, limited communications with McKesson's predecessor four years before the '164 patent issued, McKesson's silence regarding the patent after it issued reasonably led TriZetto to believe it would not be sued for infringement. TriZetto's assertion is contrary to Federal Circuit precedent and cannot support a finding that McKesson engaged in any misleading conduct.

A patentee's inaction cannot support a finding of misleading conduct unless it is "combined with other facts respecting the relationship or contacts between the parties to give rise to the necessary inference that the claim against the defendant is abandoned." *Aukerman*, 960 F.2d at 1042. The Federal Circuit has made clear that the prior relationship or contact must concern the patent-in-suit. *See Meyers v. Asics Corp.*, 974 F.2d 1304, 1309 (Fed. Cir. 1992).

In *Meyers*, the Federal Circuit held that the defendants could not show that the plaintiff Meyers engaged in misleading conduct with regard to enforcement of the three patents-in-suit based on the plaintiff's silence coupled with prior contact. *Id.* In particular, defendant Hyde argued misleading conduct with regard to the asserted '283 and '177 patents based on Meyers's silence and a prior communication regarding the

potential licensing of the asserted '797 patent that occurred before the two patents-in-suit issued. *Id.* With regard to the asserted '797 patent, Hyde argued misleading conduct based on Meyers's silence and the prior licensing communication. *Id.* The Federal Circuit rejected both of Hyde's arguments:

> [B]ecause Meyers did not contact Hyde after the '283 or '177 patents issued, Meyers could not have communicated acquiescence, or threatened litigation with respect to Hyde's alleged infringement of these patents.
>
> As to the '797 patent, Hyde points to a November 9, 1983 letter as evidence of the first element of estoppel. ...This letter is merely an invitation to enter into a business relationship; it neither threatens litigation nor conveys the impression that Meyers would acquiesce in Hyde's alleged infringement.

*Id.* Thus, the Federal Circuit concluded that silence coupled with communications before the asserted patents issued and silence coupled with "an invitation to enter into a business relationship" were insufficient to establish misleading conduct.

Based on the foregoing Federal Circuit precedent, TriZetto cannot establish misleading conduct based on McKesson's silence coupled with communications between the parties' predecessors that took place years before the '164 patent issued and merely concerned                REDACTED                Nothing about those communications or the subsequent silence about the patent could have reasonably misled TriZetto's predecessors into believing that the patent would not be enforced because the patent did not exist at the time and would not issue for another four years.

TriZetto's reliance on general statements made by HPR about its patent rights in news articles is also unavailing. The Federal Circuit has made clear that silence must be "combined with other facts respecting the relationship or contacts *between the parties* to give rise to the necessary inference that the claim against the defendant is abandoned."

*Aukerman*, 960 F.2d at 1042 (emphasis added).   The referenced statements do not demonstrate any relationship whatsoever between the parties or their predecessors.

In addition, that Erisco decided on its own to

## REDACTED

are irrelevant because they do not demonstrate misleading conduct by McKesson, a relationship between McKesson and TriZetto, or any "affirmative obligation" on McKesson's part.  *See Symbol Techs.*, 2004 WL 1770290, at *8 ("Silence may give rise to the defense of equitable estoppel only when coupled with either affirmative conduct or an affirmative obligation.") (D.I. 162, Exh. 24).

Because TriZetto's only evidence of misleading conduct is insufficient as a matter of law, TriZetto's estoppel defense fails.

### B.    TriZetto Cannot Prove Reliance Because the Undisputed Facts Establish that TriZetto Acted Without Regard to the Patent.

As shown in McKesson's opening brief, TriZetto's conduct throughout the term of the '164 patent precludes a finding of reliance because TriZetto and its predecessors never modified their business practices or products based on the potential enforcement or nonenforcement of the patent.  (D.I. 161 at 15-19.)  TriZetto did not take any steps to avoid infringement or develop any defenses to a possible infringement claim after (1) learning about the patent and its potential liability in 1994; (2) the meeting between HPR and Erisco in April of 1997; (3) TriZetto was put on notice as to the threat of infringement litigation in 2001; and (4) the filing of the present lawsuit.

Unable to deny that it never curbed its infringing activities, even after this lawsuit was filed, TriZetto asserts that it did not alter its behavior because it believed HPR did not intend to enforce the patent against Erisco.  (D.I. 212 at 34.)  TriZetto's explanation,

however, lacks factual support and overlooks TriZetto's behavior after being threatened with patent infringement and then sued.

First, TriZetto's assertion that it believed HPR did not intend to enforce the '164 patent against Erisco directly contradicts

REDACTED

REDACTED

The evidence clearly establishes that neither TriZetto nor its predecessors relied on any allegedly misleading conduct by McKesson. TriZetto has not offered any

18

evidence that reasonably shows otherwise. Accordingly, summary judgment of no estoppel is warranted.

### C.    TriZetto Lacks Sufficient Evidence to Be Able to Prove Prejudice.

TriZetto advances the same arguments as to the prejudice prong of its estoppel defense that it does with respect to the prejudice element of its laches defense. (D.I. 212 at 35-36.) As discussed above with respect to TriZetto's laches defense, TriZetto cannot prove that it has suffered either economic prejudice or evidentiary prejudice as a result of McKesson's alleged delay. (*See, supra,* at 10-15.) Accordingly, for the same reasons set forth above, TriZetto also cannot prove that it has suffered economic or evidentiary prejudice as result of its reliance on any alleged misleading conduct by McKesson.

### V.    JUDGE BECHTLE'S RULINGS ARE IRRELEVANT TO TRIZETTO'S LACHES AND ESTOPPEL DEFENSES

In a last ditch effort to avoid summary judgment, TriZetto claims that certain rulings by Special Master Bechtle regarding privilege raise triable issues of fact as to its equitable defenses. TriZetto's argument is without merit. None of the eight McKesson documents currently under Judge Bechtle's review are relevant to laches or estoppel. The oldest of these eight documents is dated December 2002, making it unreasonable that any of them are will help establish any essential element of laches or estoppel. Further, since they are all internal documents, it would be difficult to argue how any of them could be pertinent to estoppel.

Additionally, Judge Bechtle did not order re-deposition of McKesson witnesses, but merely ordered that at most twelve questions from McKesson's witnesses and a third party be answered. (Ex. 27.) Contrary to TriZetto's assertion, these twelve questions are not relevant to estoppel. The single question that TriZetto points out as allegedly being

relevant concerns ·                    **REDACTED**

      TriZetto has not shown and cannot show how this is remotely

relevant to its laches and estoppel defenses.[4]

## VI.    CONCLUSION.

      For the foregoing reasons, McKesson respectfully requests that the Court grant its

motion for summary judgment as to TriZetto's Eighth Affirmative Defense.

               By: _____

                 Thomas J. Allingham II (#0476)
                 Michael A. Barlow (#3928)
                 SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                 One Rodney Square
                 P.O. Box 636
                 Wilmington, Delaware  19899
                 (302) 651-3000

                 Attorneys for Plaintiff
                 McKesson Information Solutions LLC

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, CA  94301
(650) 470-4500

DATED:  January 20, 2006

---

[4] TriZetto's assertion that Judge Bechtle found McKesson's privilege claims to be fundamentally inappropriate is grossly misleading.  The quoted statement concerned only a handful of documents from McKesson's privilege log, none of which are relevant to laches or estoppel. TriZetto's criticism of McKesson is also unfounded in view of the fact that Judge Bechtle ordered (Ex. 28) TriZetto to produce dozens of documents from its privilege log months after the close of discovery and after TriZetto had represented to this Court that all such documents had been produced.  (Ex. 29 at 28-29.)

## CERTIFICATE OF SERVICE

I, Michael A. Barlow, hereby certify that on January 20, 2006, I electronically filed Plaintiff's Reply Brief in Support of Its Motion for Summary Judgment Regarding Defendant's Eighth Affirmative Defense of Laches and Estoppel and the Declaration of Michael A. Barlow using CM/ECF, which will send notification of such filing to those designated below, and that I served the following persons in the manner listed:

**VIA CM/ECF**
Rodger D. Smith, II, Esq.
MORRIS NICHOLS ARSHT
  & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899

**HAND DELIVERY**
Jack B. Blumenfeld, Esq.
MORRIS NICHOLS ARSHT
  & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899

Michael A. Barlow (ID No. 3928)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000
mbarlow@skadden.com

440372.02-Wilmington S1A