IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC, | ) ) ) | |
| | ) | C.A. No. 04-1258 (SLR) |
| Plaintiff, | ) ) | |
| v. | ) ) | **REDACTED VERSION** |
| THE TRIZETTO GROUP, INC., | ) ) | |
| Defendant. | ) ) | |

## THE TRIZETTO GROUP, INC.'S REPLY BRIEF IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
Wilmington, Delaware 19899
(302) 658-9200

Attorneys for Defendant The TriZetto Group, Inc.

OF COUNSEL:

Jeffrey T. Thomas
David Segal
Michael A. Sitzman
Daniel P. Muino
GIBSON, DUNN & CRUTCHER LLP
Jamboree Center, 4 Park Plaza
Irvine, CA 92614

Original Filing Date: January 20, 2006

Redacted Filing Date: January 27, 2006

# TABLE OF CONTENTS

Page

I.  ARGUMENT ................................................................................................. 1

    A.  THE CORRESPONDING STRUCTURE FOR A SOFTWARE PATENT
        IS NOT SIMPLY "SOFTWARE," BUT THE *SPECIFIC ALGORITHMS*
        THAT ARE REQUIRED TO BE DISCLOSED IN THE PATENT
        SPECIFICATION FOR *EACH* CLAIMED FUNCTION ..................................... 1

        1.  McKesson's Approach Is Contrary To Federal Circuit Authority,
            Including The *MIDCO* Case .................................................................. 2

        2.  McKesson's Approach Evades The Principle Of 35 U.S.C.
            § 112(6) ................................................................................................ 7

        3.  McKesson Misreads The Court's September 20, 2005 Order .................... 7

        4.  TriZetto Has Not Argued That The Corresponding Structure Must
            Be Source Code ..................................................................................... 8

    B.  MCKESSON AND ITS EXPERTS HAVE FAILED TO IDENTIFY ANY
        DISCLOSED ALGORITHMS CORRESPONDING TO THE CLAIMED
        FUNCTIONS AND COMPARE THOSE ALGORITHMS TO THE
        TRIZETTO PRODUCTS ................................................................................. 10

        1.  Drs. Johnson And Musen Did Not Identify Any Algorithms In The
            Patent And Did Not Undertake A Proper Structure-To-Structure
            Comparison ......................................................................................... 10

        2.  McKesson's Claim Construction Does Not Identify The Specific
            Algorithms Corresponding To The Claimed Functions ........................... 14

    C.  TRIZETTO'S EXPERT, DR. RANDALL DAVIS, HAS
        DEMONSTRATED THAT THE TRIZETTO PRODUCTS DO NOT
        INFRINGE ANY OF THE '164 PATENT CLAIMS ......................................... 17

    D.  THE TRIZETTO PRODUCTS DO NOT INFRINGE, BECAUSE THEY
        DO NOT INCLUDE A "PREDETERMINED DATABASE" AND DO
        NOT PERFORM THE "ASCERTAINING" FUNCTION ................................. 18

    E.  MCKESSON HAS FORFEITED A DOCTRINE OF EQUIVALENTS
        THEORY, BECAUSE ITS EXPERTS DID NOT UNDERTAKE SUCH
        AN ANALYSIS ............................................................................................... 19

II.  CONCLUSION ............................................................................................ 20

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Altiris, Inc. v. Symantec Corp.,*
  318 F.3d 1363 (Fed. Cir. 2003) ............................................................................. 1, 2

*Budde v. Harley-Davidson, Inc.,*
  250 F.3d 1369 (Fed. Cir. 2001) .................................................................................. 6

*Cytologix Corp. v. Ventana Med. Systems Inc.,*
  76 U.S.P.Q.2d 1592 (Fed. Cir. 2005) ........................................................................ 1

*Harris Corp. v. Ericsson Inc.,*
  417 F.3d 1241 (Fed. Cir. 2005) ..................................................................... 1, 2, 3, 4

*Intel Corp. v. VIA Techs.,*
  319 F.3d 1357 (Fed. Cir. 2003) .................................................................................. 5

*Johnson v. IVAC Corp.,*
  885 F.2d 1574 (Fed. Cir. 1989) ............................................................................... 10

*Mas-Hamilton Group v. LaGard, Inc.,*
  156 F.3d 1206 (Fed. Cir. 1998) .................................................................................. 1

*Medical Instrumentation & Diagnostics Corp. v. Elekta AB,*
  344 F.3d 1205 (Fed. Cir. 2003) ......................................................................... passim

*MKS Instruments, Inc., v. Advanced Energy Indus., Inc.,*
  325 F. Supp. 2d 471 (D. Del. 2004) ......................................................................... 20

*Pennwalt Corp. v. Durand-Wayland, Inc.,*
  833 F.2d 931 (Fed. Cir. 1987) ........................................................................... passim

*Praxair, Inc. v. ATMI, Inc.,*
  C.A. No. 03-1158-SLR, 2003 U.S. Dist. LEXIS 26794 (D. Del. 2003).................................. 20

*S3, Inc. v. nVIDIA Corp.,*
  259 F.3d 1364 (Fed. Cir. 2001) .............................................................................. 5, 6

*TechSearch, L.L.C. v. Intel Corp.,*
  286 F.3d 1360 (Fed. Cir. 2002) ......................................................................... 11, 12

*WMS Gaming Inc. v. Int'l Game Tech.,*
  184 F.3d 1339 (Fed. Cir. 1999) ........................................................................... passim

iii.

**Statutes**

35 U.S.C. § 112(6) ........................................................................................................... 1, 2, 7, 15

# I.    ARGUMENT

**A.    THE CORRESPONDING STRUCTURE FOR A SOFTWARE PATENT IS NOT SIMPLY "SOFTWARE," BUT THE *SPECIFIC ALGORITHMS* THAT ARE REQUIRED TO BE DISCLOSED IN THE PATENT SPECIFICATION FOR *EACH* CLAIMED FUNCTION**

McKesson does not contest that each claim of U.S. Patent No. 5,253,164 ("the '164 patent") contains at least one element written in means-plus-function form, pursuant to 35 U.S.C. § 112(6). Nor is there a dispute that determining infringement of a means-plus-function element requires *both* a function-to-function and a structure-to-structure comparison. *See Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 934 (Fed. Cir. 1987); *Medical Instrumentation & Diagnostics Corp. v. Elekta AB ("MIDCO")*, 344 F.3d 1205, 1211 (Fed. Cir. 2003). The Federal Circuit recently reversed a verdict of infringement due to the absence of a structural analysis. *Cytologix Corp. v. Ventana Med. Systems Inc.*, 76 U.S.P.Q.2d 1592, 1600 (Fed. Cir. 2005).

The present dispute concerning the means-plus-function elements in the '164 patent boils down to the following question: Is it enough to invoke "software," in a general sense, as the corresponding structure for computer-implemented means-plus-function elements? The answer has been delivered by the Federal Circuit on at least three occasions: *No*, the corresponding structure for computer-implemented functions is not simply "software," but the *specific algorithm* disclosed in the patent specification for *each* claimed function. *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1253 (Fed. Cir. 2005) ("[a] computer-implemented means-plus-function term is limited to the corresponding structure disclosed in the specification and equivalents thereof, and the corresponding structure is the algorithm"); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1348 (Fed. Cir. 1999); *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1376 (Fed. Cir. 2003).

REDACTED

Despite this Court's earlier Order requiring something more from McKesson's claim construction, McKesson contends that "software" alone is sufficient structure to satisfy the

§ 112(6) requirements for all 32 means-plus-function claim limitations at issue. McKesson and its infringement experts, Drs. Johnson and Musen, have declined to identify any specific algorithms from the patent specification corresponding to the claimed functions. Instead, their "structural analysis" consists of observing that both the patent and the TriZetto Products use "software" – ergo, the structure is the same and infringement is established based solely on function. This analysis is simply wrong, as a matter of law. McKesson's approach (1) ignores dispositive Federal Circuit authority and misreads the Federal Circuit's *MIDCO* decision; (2) evades the principles of 35 U.S.C. § 112(6); (3) misinterprets the Court's September 20, 2005 Order; and (4) mischaracterizes TriZetto's legal position.

### 1.    McKesson's Approach Is Contrary To Federal Circuit Authority, Including The *MIDCO* Case

The Federal Circuit ruled in *Harris*, *WMS Gaming* and *Altiris* that the corresponding structure for computer-implemented means-plus-function elements is the *specific algorithm* disclosed in the patent specification for *each* function, not merely "software" in general. *Harris*, 417 F.3d at 1253; *WMS Gaming*, 184 F.3d at 1348; *Altiris,* 318 F.3d at 1376.


REDACTED


*WMS Gaming* is the seminal Federal Circuit decision on the subject of software structure. *See Harris*, 417 F.3d at 1249, 1253. In *WMS Gaming*, the Federal Circuit rejected the notion that corresponding structure for a computer-implemented means-plus-function element is simply "software" (i.e., "an[y] algorithm executed by a computer"). *WMS Gaming*, 184 F.3d at 1348. Instead, the corresponding structure is the *specific algorithm* disclosed in the patent specification for performing the claimed function:

> In a means-plus-function claim in which the disclosed structure is a computer, or microprocessor, programmed to carry out an algorithm, the disclosed structure is not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm.

*Id*. at 1349.  Accordingly, the court ruled that the corresponding structure for the means-plus-function element in question was a specific, multi-step algorithm disclosed in a figure in the patent specification.  *Id*.  ("the structure disclosed [is] . . . the algorithm illustrated in Figure 6").

REDACTED

That is the primary support for McKesson's "structural analysis" of all 32 means-plus-function claim elements.  But that single sentence only describes "a general purpose computer," not "the special purpose computer programmed to perform the disclosed algorithm," required by *WMS Gaming*.  McKesson's experts made no effort to compare the TriZetto Products to any algorithms in the figures, appendices or text of the '164 specification.  They simply concluded that the TriZetto Products infringe because they use "software."  This approach was expressly rejected by *WMS Gaming*.

The Federal Circuit revisited the software structure issue in *Altiris* and *Harris*, again rejecting the contention that "software" alone was sufficient corresponding structure for computer-implemented functions.  In *Altiris*, the patentee argued that the corresponding structure for the element "means of booting said digital computer" was simply "software that will boot the computer."  *Altiris,* 318 F.3d at 1376.  The court rejected that argument:

> [M]erely pointing out that the relevant structure is software rather than hardware is insufficient.  As stated above, because "commands" (i.e., software) is so broad as to give little indication of the particular structure used here and is described only functionally, one must still look to the specification for an adequate understanding of the structure of that software.

*Id*. at 1376.  The proper structure included specific computer parts and software disclosed in the specification corresponding to each claimed function.  *Id*. at 1377.

Likewise, in *Harris*, the Federal Circuit applied the rule of *WMS Gaming* to reject the district court's conclusion that the structure for a particular computer-implemented function was a generic "symbol processor." *Harris*, 417 F.3d at 1253-54 ("the court in *WMS Gaming* rejected the argument that the corresponding structure was merely 'an algorithm executed by a computer,' holding instead that it was limited to the specific algorithm disclosed in the specification"). The *Harris* court stated:

> The district court did not have the benefit of briefing on *WMS Gaming*, but this precedent establishes that corresponding structure of the "time domain processing means" cannot be merely a "symbol processor," as the district court held. The "symbol processor" construction does not incorporate any disclosed algorithm.

*Id*. at 1254. The *Harris* court construed the corresponding structure to be "a microprocessor programmed to carry out a two-step algorithm" disclosed in the patent specification. *Id*.


REDACTED


*MIDCO* does not permit a patentee to satisfy the structural requirement by invoking *any software* known to those of skill in the art, but rather requires that particular software structure be revealed in the patent specification for each claimed function. *MIDCO*, 344 F.3d at 1212. The district court concluded that adequate structure was identified for the "means for converting" element, because "techniques for performing those conversions were known to those of skill in the art at the time the application was filed." *Id*. at 1211. On appeal, the Federal Circuit rejected that approach: "It is important to determine whether one of skill in the art would understand the specification itself to disclose the structure, not simply whether that person would be capable of implementing that structure." *Id*. at 1212. The Federal Circuit concluded that the "means for converting" lacked a corresponding software structure because *no particular software program* (whether known to one of skill in the art or not) was disclosed for this element. *Id*. at 1218

("[t]here must be something in the disclosure to indicate to the public that the patentee intends for a particular structure to correspond to the claimed function").


REDACTED

But TriZetto has never said that "specific circuitry" or "program code" must be disclosed to supply adequate structure. The corresponding structure for a software function is the disclosed algorithm for performing that function – i.e., the particular steps undertaken and devices used to perform the function. The three cases discussed in *MIDCO* all followed this logic – they all involved *particular* disclosed devices and software programs for performing each separate function:

    1. In *Intel Corp. v. VIA Techs.*, 319 F.3d 1357 (Fed. Cir. 2003), the corresponding structure was the core logic of a computer adapted to run a *particular* software program called "Fast Write" (the program on which the patent was based). *Id.* at 1365 ("the structure corresponding to the functions was the core logic of a computer adapted to perform Fast Write"). The "protocol used to perform Fast Write was part of the corresponding structure as well." *Id.*[1]

    2. In *S3, Inc. v. nVIDIA Corp.*, 259 F.3d 1364 (Fed. Cir. 2001), the corresponding structure was a *particular* electronic device called a "selector" that was disclosed in the patent specification for performing a specific claimed function. *Id.* at 1370. The

_____

[1]

REDACTED

But McKesson neither links a particular software program to the claimed functions nor does it identify any program code. In *Intel*, 319 F.3d at 1365, the particular program was "Fast Write," and the court concluded that the structure encompassed the protocol of Fast Write, not simply any software for carrying out the claimed functions. Given that McKesson has not linked any particular program or program code to the claimed functions, its reliance on *MIDCO* and *Intel* is misplaced.

"selector" was "a standard electronic component whose structure is well known in this art." *Id.*

3.  In *Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369 (Fed. Cir. 2001), the corresponding structure was a *particular* device – a "vacuum sensor" – disclosed in the specification for performing a certain claimed function. *Id.* at 1381. The specification explained that "vacuum sensors are commercially available units which produce analog signals for the control unit." *Id.*

In contrast to these three cases, McKesson and its experts have not identified any *particular* algorithms or software programs corresponding to the claimed functions, and have not compared any algorithms or programs to the TriZetto Products. Instead, McKesson's experts have assumed that the corresponding structure is *any software* for performing the claimed functions, and have found infringement because the TriZetto Products use software.

*MIDCO* also expressly rejected an argument, identical to McKesson's, that the corresponding structure was supplied by a general statement in the specification indicating that software for performing the patented functions was "either commercially available or within the skill of practitioners in the programming arts." *MIDCO*, 344 F.3d at 1217. The *MIDCO* court disagreed: "Although the specification refers to the use of software programs that 'are either commercially available or within the skill of practitioners in the programming arts,' . . . this statement in no way links software to the function [in question]. . . . There must be something in the disclosure to indicate to the public that the patentee intends for a particular structure to correspond to a claimed function." *Id.* at 1217-18.


REDACTED


But like its *MIDCO* counterpart, McKesson does not identify any

particular algorithms or software programs for performing the claimed functions, and does not compare those algorithms or programs to the TriZetto Products, as required by law.

### 2.    McKesson's Approach Evades The Principle Of 35 U.S.C. § 112(6)

McKesson's approach to construing the corresponding structure of the '164 patent – namely, that the structure is simply *any software* for performing the stated functions – would evade the requirements of 35 U.S.C. § 112(6), which requires that specific structure be clearly linked to an element as a *quid pro quo* for using the simplified means-plus-function form. *See MIDCO*, 344 F.3d at 1211. A means-plus-function element may never be interpreted to cover *any means* for performing the stated function, but is limited to the specific "means" disclosed in the specification. *See Pennwalt*, 833 F.2d at 934 ("section 112, paragraph 6, rules out the possibility that any and every means which performs the function specified in the claim literally satisfies that limitation").

Defining the corresponding structure of a software patent as simply "software," rather than the particular algorithms or software programs that perform each function, completely eviscerates the structural requirement. Under McKesson's logic, the structure supporting the means-plus-function elements of a furniture patent would be "furniture"; of a computer patent, "a computer"; of a pharmaceutical patent, "pharmaceuticals." A patentee could satisfy the structural requirement by inserting a stock phrase into the patent declaring, "The patented functions can be performed by software known to those of skill in the art." By that simple ruse, the patent would cover *any and all software* for performing the stated functions, which is not permitted by law.

### 3.    McKesson Misreads The Court's September 20, 2005 Order

McKesson quotes the Court's September 20, 2005 Order (D.I. 216 at 22), but ignores what it actually says:

> [P]laintiff . . . must identify[] those portions of the specification that disclose the correspondence between the software (the structure) and the function disclosed by each claim limitation, as well as the specific algorithm disclosed in the specification, or where it is disclosed (or otherwise inferred) that the algorithm/software is known to those of skill in the art.

D.I. 99 at 1-2.

REDACTED

But the Court required that McKesson

identify a "*specific algorithm*" for "*each claim limitation*," not merely recite "software" as the

generic structure for the entire patent.  McKesson and its experts have not identified *specific*

*algorithms* disclosed in the patent specification for *each* claim limitation.  Nor have they

identified, for each claim limitation, particular algorithms or software programs that they believe,

based on the patent specification, would have been known to those of skill in the art.

In response to the Court's order, McKesson added many specification references to its

claim construction, and stated that the references describe the structure corresponding to the

claimed functions.  However, as discussed below, McKesson denies that *any* of the references

limit the scope of the claims, and its experts have made no effort to determine if the TriZetto

Products have structure equivalent to that described in the references.  In other words, McKesson

provided specification references in response to the Court's Order and then ignored them.

### 4. TriZetto Has Not Argued That The Corresponding Structure Must Be Source Code

REDACTED

TriZetto has *never* said that the

corresponding structure must be source code.  Consistent with the Court's September 20, 2005

Order and Federal Circuit authority, the corresponding structure must be a *specific algorithm* for

performing the claimed function – i.e., a description of the particular software steps taken or

parts required to perform the function.  *See WMS Gaming*, 184 F.3d at 1349.

McKesson and its experts never identify or analyze any of the algorithms that could

theoretically correspond to the means-plus-function elements of the '164 patent.  As TriZetto

observed in its Opening Brief (D.I. 153 at 13), the element "means for receiving at least one

claim" can be performed in a number of ways, each using different software algorithms and

hardware structures:  a medical claim could be typed into the system, received electronically, or

scanned, to give three basic examples. TriZetto has identified the "entry" program from the '164

specification (shown in Figure 2, Box 7 and in Appendix D, col. 59) as the corresponding structure for the "receiving" step.  D.I. 148 at Exh. A, p. 3.  But McKesson's experts never discuss the structure for the "receiving" element and, as a result, they cannot and do not compare it to the TriZetto Products.

Similarly, the various "determining" steps of the claims can be executed using different algorithms.  For instance, Claims 3, 6, 15 and 16 determine that a code is "valid or invalid" by "interacting with the database."  Presumably, McKesson construes this step to cover the clinical editing functionality of the TriZetto Products – i.e., the application of clinical editing rules to determine that a code is "valid or invalid."[2]  Appendix B of the '164 patent discloses a number of clinical editing rules, each of which is a conceivable partial algorithm for performing the "determining" function.

REDACTED

Despite the importance placed on the Appendix B rules by the inventors and the specification itself, McKesson and its experts never once attempt to link these rules to the patent claims, nor do they explain how the system "interact[s] with the database" to apply these rules.

One specific algorithm that appears in the patent specification is the algorithm for "ascertaining whether the at least one claim contains a plurality of medical service codes."  This is found in Figure 2 (Box 20) of the '164 patent and reads:  "No. of codes > 1."  *See* D.I. 148 at Exh. A, p. 15.  McKesson's experts fail to identify and address this algorithm in their reports.

---

2       TriZetto disagrees with this interpretation of "valid or invalid," as explained in TriZetto's
        Opening Claim Construction Brief.  D.I. 158 at 22-23.

3       Exhibits A through K were previously submitted (D.I. 157) with TriZetto's Opening Brief
        in support of its Motion for Summary Judgment of Non-Infringement.  Exhibits L
        through Q are contained in TriZetto's Supplemental Appendix Of Exhibits filed with this
        Reply Brief.

**B.    MCKESSON AND ITS EXPERTS HAVE FAILED TO IDENTIFY ANY DISCLOSED ALGORITHMS CORRESPONDING TO THE CLAIMED FUNCTIONS AND COMPARE THOSE ALGORITHMS TO THE TRIZETTO PRODUCTS**

McKesson has failed to offer evidence or expert opinion to prove that the structure disclosed in the '164 patent for each claim limitation is identical or equivalent to the structure of the TriZetto Products.    Given that a structure-to-structure comparison is indispensable to McKesson's case, the absence of such a comparison is a failure of proof warranting summary judgment of non-infringement. *Johnson v. IVAC Corp.*, 885 F.2d 1574, 1578 (Fed. Cir. 1989) ("accused infringer . . . is entitled to summary judgment, on the ground of non-infringement, by pointing out that the patentee failed to put forth evidence to support a finding that a limitation of the asserted claim was met by the structure in the accused devices"); *Pennwalt*, 833 F.2d at 934.

**1.    Drs. Johnson And Musen Did Not Identify Any Algorithms In The Patent And Did Not Undertake A Proper Structure-To-Structure Comparison**

REDACTED

Drs. Johnson and Musen do not identify the *algorithms* from the patent specification (or even particular software programs known to those of skill in the art) corresponding to each means-plus-function element and do not compare those *algorithms* (or known software programs) to the accused products, as required by law.    Instead, they simply observe that the patent covers a method and apparatus implemented in software and that the TriZetto Products are also implemented in software.    From this, they conclude the structures are the same. Musen Dep. at 109:1-19 (Exh. H) ("I know [the TriZetto Products are] software systems.    If the requisite definition of structure is – is simply software,

then the TriZetto products must embody the principles of the patent in software as their structure."). That approach to determining infringement is completely improper.[4]

### a.  **Expert Report of Dr. Margaret Johnson**

In her report, Dr. Johnson does not "appl[y] the properly construed claim to the accused product," as required. *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002).

REDACTED

Dr. Johnson's ultimate conclusion that the TriZetto Products match her algorithm is irrelevant to establishing infringement of the patent claims.[5]

REDACTED          Regardless of what was intended, the algorithm *does not* capture all of the functionality of the patent claims (and it certainly does not supply corresponding structure, as it is written in purely functional terms).

REDACTED

At best, Dr. Johnson's algorithm is a partial representation of the claimed functionality.

———————————————

REDACTED

In any event, lumping the functionality of multiple patent claims together in an "algorithm" and comparing that to the accused products is not an appropriate way to assess infringement. The law requires a comparison of the accused product with *each function of the asserted claim*. *TechSearch*, 286 F.3d at 1369.

REDACTED

Moreover, Dr. Johnson failed to perform the required structural comparison. She did not identify the algorithms from the patent specification corresponding to each of the claimed functions, nor did she compare those algorithms to the accused products.

REDACTED

This is the only occasion on which Dr. Johnson addressed any specific part of the patent specification. Yet, this is not a structure-to-structure comparison, because Dr. Johnson does not identify the Appendix B rules (or any part of the specification) as corresponding structure for any function of the patent claims at issue. If Dr. Johnson had connected the Appendix B rules to particular patent claims (thereby limiting those claims to that structure), then her comparison might have had some merit. But Dr. Johnson never connects the Appendix B rules to the claims. McKesson cannot have it both ways – if it wished to rely on Dr. Johnson's comparison, it should have identified which Appendix B rules correspond to which patent claims and accepted the structural limitation thereby imposed. In any event, the table on page 13 could not apply to anything more than the "determining" steps of the patent claims – it does not discuss or provide structure for the "receiving," "ascertaining," "authorizing," or "rejecting" steps in each of the claims.

**b.     Expert Report of Dr. Mark Musen**

Dr. Musen's expert report also lacks the required structure-to-structure comparison for the means-plus-function elements.[6]

REDACTED

But these sentences are merely unsupported assertions, not founded on any structural analysis or identification.

Dr. Musen admitted that he did not compare the specific structure from the patent specification to the TriZetto Products. Musen Dep. at 302:5-14, 323:21-324:16 (Exh. H). He made no effort in his report to identify corresponding structure from the patent, never once citing to the patent specification, figures or appendices. Nor did he attempt to find structure in the TriZetto Products. Musen Dep. at 302:5-14 (Exh. H). Instead, he assumed that "any software program" that carried out the functions of the claims would infringe, and left his analysis at that. *Id.* at 302:5-20 ("I do not believe it was necessary to go to a lower level of granularity to ascertain those specific components . . . [b]ecause if the function needed to be reproduced and the testimony and the . . . product literature suggests that it was *and the structure was clearly software*, then my job was done") (emphasis added). REDACTED

---

6

REDACTED

But the work of TriZetto's invalidity experts is irrelevant to this non-infringement motion, as invalidity has been bifurcated from infringement. REDACTED

7

It is not clear what McKesson is talking about, as

TriZetto     *not* concede this point and has expressly contended in three previous briefs that Dr.

[Footnote continued on next page]

REDACTED                                                                                                  14.

REDACTED                                          Yet, this does

not save Dr. Musen's report, since he never discussed the specification sections cited in the

parties' proposed claim constructions and never once attempted to apply the cited structures to

the TriZetto Products.

REDACTED

But Dr. Musen's report never discusses the "algorithms" in the '164 patent specification or

the structure of the TriZetto Products, and never compares the two.

REDACTED

This makes little sense.   If there is a "tight

correlation" between the functions and the corresponding algorithms, why didn't Dr. Musen

identify those algorithms and compare them to the TriZetto Products?   If the "algorithms for

performing the claims in the '164 patent are straightforward," as Dr. Musen testified, why didn't

he discuss those algorithms in his report?   McKesson uses this supposedly "tight correlation

between the claimed functions and their corresponding algorithms" as an excuse *not* to identify

the corresponding algorithms, and instead declare that *any algorithm* infringes.   This is

inappropriate as a matter of law. *See Pennwalt*, 833 F.2d at 934.

## 2.    McKesson's Claim Construction Does Not Identify The Specific Algorithms Corresponding To The Claimed Functions

REDACTED

. McKesson

contends that this is sufficient to satisfy the requirements of 35 U.S.C. § 112(6) and Federal

Circuit precedent. *Id.* There are three distinct problems with McKesson's claim construction.

_____

[Footnote continued from previous page]
Musen has not undertaken a proper structural comparison. D.I. 153 at 16-19; D.I. 179 at 16-19;
D.I. 228 at 13-16.

First, McKesson does not clearly identify the *specific algorithm* disclosed for *each* claimed function. The language of McKesson's construction merely refers to "software capable of" performing the claimed function and states that this unspecified "software" would be known to one of skill in the art. *See, e.g.,* D.I. 148 at Exh. A, p. 14. In support of its construction, McKesson cites to entire figures and appendices for all of the claimed functions, never explaining what the particular structure is. For example, McKesson cites to the entirety of Figures 2 and 4 and Appendices A, B, C and D for the "determining," "authorizing" and "rejecting" steps of almost every claim, without explaining where in those sources the corresponding structure is found. *Id.* at Exh. A, pp. 16, 18-19, 27-30, 34-37, 44-47, 49-51.

Second, where McKesson does cite to a detailed structure in the specification corresponding to a certain function, it does not expressly include that structure in its claim construction. For example, in connection with the "ascertaining" step of the claims, McKesson cites to column 5, lines 52-54. *See* D.I. 148 at Exh. A, p. 15. This section discusses the algorithm (shown in Box 20 of Figure 2) used to ascertain if the number of codes on the claim is greater than one. *See* '164 patent, col. 5, ll. 52-56 & Fig. 2. Yet, McKesson does not include this specific algorithm in its claim construction, preferring to stick with "software capable of" performing the "ascertaining" function.

Third, McKesson's claim construction is of no import to its infringement case, because McKesson's experts never used the specification citations in McKesson's claim construction to identify corresponding structure and compare that structure to the TriZetto Products. For example, the patent figures and appendices to which McKesson cites include substantial information about CodeReview, the software product on which the patent is based. *See* '164 patent, col. 3, ll. 17-37. This includes clinical editing examples and rules (Appendices A & B), database descriptions (Appendix C), and even source code (Appendix D). The patent figures refer to numerous programs from CodeReview used to perform the patented functions, including "entry.prg," "multiple.prg," "action.prg," "prompts.prg," and "lookup.prg." *See* '164 patent, Figs. 2, 4 & 5. The figures and appendices also reference several databases (including

"interact.dbf," "byitself.dbf," "allcode.dbf," and "superseded.dbf") that contain clinical editing rules, medical codes, and other information. *See* '164 patent, Figs. 2-5, App. C. Much of this information may supply corresponding structure, yet McKesson's experts made no effort to deal with it. They did not identify corresponding structure from the disclosed information and did not attempt to compare any of the examples, rules, descriptions, programs, databases or source code excerpts from the patent to the TriZetto Products. Instead, they followed McKesson's lead and assumed that the corresponding structure was simply "software" and that any software product that performed the functions embodied in the claims must infringe.

REDACTED

McKesson's construction identifies that structure as "data processing capabilities, memory, and software capable of managing a database." *See* D.I. 148 at Exh. A, p. 1. Once again, this simply recites generic "software" for performing the stated function, not the specific algorithm or even a particular "database management software program" for operating on the predetermined database. To perform a proper structural analysis, McKesson must identify *some structure* (whether a specific algorithm or a particular well-known software program) to which the TriZetto Products can be compared. McKesson and its experts have not attempted to compare the TriZetto Products to a particular algorithm or software program for performing the "operating" function.

REDACTED

TriZetto agreed that, "[t]o the extent any structure is disclosed" in the patent, McKesson has cited the correct specification sections for the "means for operating." D.I. 148 at Exh. A, p. 1. But the specification is incomplete regarding this function. One cannot understand how the system "operates" on the predetermined database without knowing how the database itself is structured (e.g., How are the codes and rules organized in the database? Are they arranged in a table? Are they embedded in separate

records?  How are the rules connected to the codes?).  The organization of the database will determine how the system "operates" on that database.  McKesson is wrong to say that the structure of the "predetermined database" need not be disclosed, when the "predetermined database" is part of the means-plus-function element in question – "means for operating on a predetermined database."

**C.    TRIZETTO'S EXPERT, DR. RANDALL DAVIS, HAS DEMONSTRATED THAT THE TRIZETTO PRODUCTS DO NOT INFRINGE ANY OF THE '164 PATENT CLAIMS**

REDACTED

To the contrary, Dr. Davis made clear in his infringement report that the TriZetto Products do not infringe the patent claims, because they do not perform all of the claimed functions and do not have the same or equivalent structure as disclosed in the patent.  Davis Report (Exh. K).

In his infringement report, Dr. Davis explained that at least five elements listed in the patent claims are not contained in the TriZetto Products, including the "ascertaining" function and the "predetermined database."  Davis Report at 24-30, 32-34 (Exh. K).  The absence of these functions from the TriZetto Products renders the products non-infringing.  *Pennwalt*, 833 F.2d at 934 ("[i]t is . . . well-settled that each element of a claim is material and essential and that in order for a court to find infringement, the plaintiff must show the presence of every element or its substantial equivalent in the accused device").  Dr. Davis also discussed the architectural and processing differences that make the TriZetto Products structurally distinct from the system of the '164 patent.  Davis Report at 24-30, 32-34 (Exh. K).

REDACTED

But Dr. Davis did not concede that *all* of the patented functions are performed.  Moreover, Dr. Davis did not admit that the TriZetto Products are structurally equivalent to the '164 patent.  In fact, he expressly opined and testified that they are not.  Davis Report at 30-32 (Exh. K) ("The system in the '164 patent is structured much like a traditional rule-based expert system. . . . The TriZetto products, by

contrast, are structured as traditional procedural programs."); Davis Dep. at 300:22-301:5, 289:11-290:23 (Exh. O).

**D.    THE TRIZETTO PRODUCTS DO NOT INFRINGE, BECAUSE THEY DO NOT INCLUDE A "PREDETERMINED DATABASE" AND DO NOT PERFORM THE "ASCERTAINING" FUNCTION**

As fully discussed in TriZetto's Answering Brief in opposition to McKesson's motion for summary judgment of infringement (D.I. 210 at 15-18), TriZetto's construction of "predetermined database" (i.e., a database "not designed to be modifiable by the end user") gives meaning to the word "predetermined" and is supported by the patent specification and the history of CodeReview (the product on which the patent is based).

It is clear that the TriZetto Products do not contain a "predetermined database," as properly construed. Each of the TriZetto Products includes an application that allows customers to alter and customize the clinical criteria (i.e., relationships) contained in their respective databases or files. D.I. 155 at ¶ 5 (Luftig Decl.); D.I. 154 at ¶ 5 (Lampe Decl.); D.I. 156 at ¶ 5 (Danza Decl.).[9] The customer can activate or deactivate, delete, or change the terms of a given clinical criteria in the database or file. *Id.*

---

REDACTED

[8]

None of the witnesses on which McKesson relies were patent lawyers or had any experience reading and interpreting patents. Virtually none of them had read the '164 patent specification, either before or during their depositions, and many were confused by certain terms in the patent claims. Obviously, they did not have the Court's claim construction. Consequently, they were in no position to opine on patent infringement, a subject properly reserved for experts. The inadmissibility of this witness testimony is fully discussed in TriZetto's Answering Brief in opposition to McKesson's motion for summary judgment of infringement. D.I. 210 at 8-12.

REDACTED

[9]

The declarants were not asked at deposition whether the databases could be modified by the customer. None of the witnesses was provided a definition for the unusual term "predetermined," as used in this context. Indeed, Mr. Danza testified, "I don't know what a predetermined database would indicate." Danza Dep. at 92:21-93:2

[Footnote continued on next page]

REDACTED

This does not mean that the TriZetto Products do not allow customer modification – they do.  D.I. 155 at ¶ 5; D.I. 154 at ¶ 5; D.I. 156 at ¶ 5.

As for the "ascertaining" function, TriZetto's interpretation of that function arises directly from the claim language and the specific teachings of the patent specification, particularly Figure 2 of the patent.  The TriZetto Products do not perform the "ascertaining" step, because they do not contain the algorithm disclosed in Figure 2.  TriZetto's construction and non-infringement position concerning the "ascertaining" function are fully discussed in TriZetto's Answering Brief in opposition to McKesson's motion for summary judgment of infringement. D.I. 210 at 18-21.

**E.     MCKESSON HAS FORFEITED A DOCTRINE OF EQUIVALENTS THEORY, BECAUSE ITS EXPERTS DID NOT UNDERTAKE SUCH AN ANALYSIS**

REDACTED

---

[Footnote continued from previous page]
(Exh. P).  Accordingly, their testimony concerning "predetermined" relationships among the codes (quoted by McKesson) does not signify that the database and its relationships could not be modified by customers.

McKesson is mistaken.

First, TriZetto's claim construction was not late.  TriZetto's basic construction of "predetermined database" (a database that cannot be modified by the end user) was included in its October 11, 2005 supplemental proposed claim construction, well before opening expert reports were exchanged.  Exh. Q.  Dr. Davis's November 14, 2005 report (submitted prior to the expert depositions) included detailed discussions of the constructions for both "predetermined database" and "ascertaining."  Davis Report at 24-27, 32-33 (Exh. K).  McKesson had an opportunity to question Dr. Davis concerning these constructions at his deposition.  Second, TriZetto's claim construction did not prevent Dr. Musen from offering a doctrine of equivalents analysis in his opening report.  If he had such an analysis, he should have put it into his report.  Dr. Musen cannot "reserve" an entire infringement analysis for later use.  By failing to include an equivalents analysis in its expert reports, McKesson has forfeited the right to offer such a theory in this case.  *See Praxair, Inc. v. ATMI, Inc.*, C.A. No. 03-1158-SLR, 2003 U.S. Dist. LEXIS 26794, at *17 (D. Del. 2003) (excluding expert testimony as a sanction for failure to comply with the Court's Scheduling Order regarding close of expert discovery); *MKS Instruments, Inc., v. Advanced Energy Indus., Inc.*, 325 F. Supp. 2d 471, 474 (D. Del. 2004) (granting motion to exclude expert testimony because of failure to timely provide evidence to support claim of infringement under the doctrine of equivalents in expert report).

## II.    CONCLUSION

For the reasons set forth herein, summary judgment of non-infringement should be granted to TriZetto.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

_____
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
Wilmington, DE 19899
(302) 658-9200

Attorneys for Defendant The TriZetto Group, Inc.

OF COUNSEL:

Jeffrey T. Thomas
David Segal
Michael A. Sitzman
GIBSON, DUNN & CRUTCHER LLP
Jamboree Center, 4 Park Plaza
Irvine, CA  92614

Original Filing Date:  January 20, 2006

Redacted Filing Date:  January 27, 2006

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 27, 2006, he caused to be electronically filed the Reply Brief In Support Of The TriZetto Group, Inc.'s Motion For Summary Judgment Of Non-Infringement (Redacted Version) with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Michael A. Barlow
> Skadden, Arps, Slate, Meagher & Flom LLP

I also certify that copies were caused to be served on January 27, 2006, upon the following in the manner indicated:

**BY EMAIL AND HAND**

> Michael A. Barlow
> Skadden, Arps, Slate, Meagher & Flom LLP
> One Rodney Square
> Wilmington, DE  19801

**BY EMAIL AND FEDERAL EXPRESS**

> Jeffrey G. Randall
> Skadden, Arps, Slate, Meagher & Flom LLP
> 525 University Avenue
> Suite 1100
> Palo Alto, CA  94301

> */s/     Melissa Stone Myers (#3985)*
> Morris, Nichols, Arsht & Tunnell
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE  19899
> (302) 658-9200
> mmyers@mnat.com