EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MCKESSON INFORMATION SOLUTIONS LLC, )
)
)
Plaintiff, )
)
v. )          C.A. No. 04-1258 (SLR)
)
THE TRIZETTO GROUP, INC., )
)
Defendant. )

## THE TRIZETTO GROUP, INC.'S
## PROPOSED PRELIMINARY JURY INSTRUCTIONS

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Melissa Stone Myers (#3985)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
  Attorneys for Defendant
  The TriZetto Group, Inc.

OF COUNSEL:

Jeffrey T. Thomas
David A. Segal
Michael A. Sitzman
GIBSON, DUNN & CRUTCHER LLP
Jamboree Center
4 Park Plaza
Irvine, CA  92614-8557
(949) 451-3800


March 31, 2006

**Members of the Jury:**

Now that you have been sworn in, I have the following preliminary instructions for guidance on your role as jurors in this case.

**The Parties**

This is an action for patent infringement arising under the patent laws of the United States.  The plaintiff is McKesson Information Solutions, LLC, which I will refer to as "McKesson."  The defendant is The TriZetto Group, Inc., which I will refer to as "TriZetto." This patent dispute involves computer software used in reviewing medical bills submitted by doctors to health insurance companies.  These bills are referred to as "medical claims."

McKesson is the owner of the patent at issue in this case.  The patent is U.S. Patent No. 5,253,164, which I will refer to as the "'164 patent."  A copy of this patent has been given to you along with these preliminary instructions.

TriZetto is a company engaged in the design, development, marketing and sale of various products and services, including computer software for reviewing and processing medical claims.

McKesson contends that the ClinicaLogic component of TriZetto's products infringes the '164 patent.  TriZetto denies all of McKesson's allegations of infringement and further asserts that the '164 patent is invalid and unenforceable.

**Duty of Jury**

It will be your duty to find what the facts are from the evidence as presented at the trial.  You, and you alone, are the judges of the facts.  I will explain to you the rules of law which apply in this case, and I will explain to you the meaning and scope of the patent claims. You will have to apply those facts to the law as I will instruct you at the close of evidence. You must follow that law whether you agree with it or not.

2

You are the judges of the facts.  I will decide which rules of law apply to this case.

Nothing I say or do during the course of the trial is intended to indicate what your verdict should be.

**<u>Evidence</u>**

The evidence from which you will find the facts will consist of the testimony of witnesses, and documents and other things admitted into evidence.  In addition, the evidence may include certain facts as agreed to by the parties or as I instruct you.

Certain things are not evidence.

1.      Statements, arguments and questions by lawyers are not evidence.  Objections to questions are not evidence.  Lawyers have an obligation to their clients to make an objection when they believe testimony or exhibits being offered into evidence are not admissible under the rules of evidence.  You should not be influenced by a lawyer's objection or by my ruling on the objection.  If I sustain or uphold the objection, and find the matter is not admissible, you should ignore the question or other item of evidence.  If I overrule an objection and allow the matter into evidence, you should consider the testimony or other item of evidence as you would any evidence.  If I instruct you during the trial that some item of evidence is admitted for a limited purpose, you must follow that instruction and consider the evidence for that purpose only.  I will instruct you further during the trial if this happens.

2.      Anything you see or hear outside the courtroom is not evidence and must be disregarded.  You are to decide this case solely on the evidence presented here in the courtroom.

In judging the facts, it will be up to you to decide which witnesses to believe, which witnesses not to believe, and how much of any witness's testimony to accept or reject.

**Burden of Proof**

This is a civil case.  McKesson is charging TriZetto with patent infringement. McKesson has the burden of proving infringement by what is called a preponderance of the evidence.  That means that McKesson has to produce evidence which, when considered in the light of all the facts, leads you to believe that what McKesson claims is more likely true than not.  To put it differently, if you were to put the evidence of McKesson and TriZetto concerning infringement on opposite sides of a scale, the evidence supporting McKesson's claims would have to make the scales tip somewhat on its side.

McKesson is also alleging that TriZetto's infringement was willful.  McKesson has the burden of proving willful infringement by clear and convincing evidence.  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.  Proof by clear and convincing evidence, therefore, is a higher burden than proof by a preponderance of the evidence.

In this case, TriZetto has alleged that the patent in suit is invalid and unenforceable. This Court previously ordered that issues of validity will be determined at a second, later phase of this trial.  Equitable defenses, such as laches and equitable estoppel, as well as the defense of inequitable conduct will be decided by the Court.

**Summary of the Issues**

In this case, you must decide several things according to the instructions that I shall give you at the end of the trial.  Those instructions will repeat this summary and will provide more detail.  In essence, you must decide:

1.     Whether McKesson has proven by a preponderance of the evidence that the ClinicaLogic component of TriZetto's products infringe the asserted claims of the '164 patent.

2.     If so, whether McKesson has proven by clear and convincing evidence that TriZetto's infringement was willful.

3.     If you find infringement, whether McKesson has proven by a preponderance of the evidence that it is entitled to damages.

4.     If you find McKesson is entitled to damages, whether McKesson has proven by a preponderance of the evidence that it has marked all of its products that included the patented invention with the patent number.

**Conduct of the Jury**

Now, a few words about your conduct as jurors.

Although you are not to talk about the case with anyone else, you are permitted to talk to each other, when everyone is in the jury room, about the technology at issue in this case. You may write questions down and give them to Francesca, my courtroom deputy. She will give the questions to me and I will pass them along to the attorneys, who may or may not try to incorporate your questions into their examinations.

Even though you may talk to each other about the technology, you should not reach any conclusions as to the issues presented until all the evidence is in and you have been given your final instructions.

Finally, you must only consider the evidence presented in the courtroom. Do not read or listen to anything touching on this case that is not admitted into evidence. By that I mean, if there is a newspaper article or radio or television report relating to this case, do not read the article or watch or listen to the report. In addition, do not try to do any independent research or investigation on your own on matters relating to this case.

The proceedings during trial will be transcribed by court reporters; however, it is not the practice of this Court to make the trial transcripts available to jurors. You must rely on your own recollection of what testimony was presented and how credible that testimony was.

If you wish, you may take notes in the binders we have provided. The binders will be collected each time you leave the courtroom. Keep in mind that your notes are for your own personal use - they are not to be given or read by anyone else.

Finally, please wear your juror identification tags everyday, so that the parties can avoid engaging you in conversation, thereby bringing your impartiality into question.

**Course of the Trial**

The trial will now begin. The attorneys have three opportunities to talk to you during the trial. The first opportunity is the opening statement. During the opening statements, the attorneys will introduce their respective stories to you. As I've already instructed, however, what the lawyers say is not evidence. It will be up to you to determine whether the evidence - the testimony of the witnesses and the admitted documents - supports what the lawyers say in their opening statements. The second opportunity that the lawyers have to talk to you is during transition statements. Lawyers are permitted to make transition statements whenever they call a witness to the stand, to introduce the witness and to briefly explain the relevance of the witness's anticipated testimony. Finally, after all the evidence is in, the lawyers will offer closing arguments to summarize and interpret the evidence for you, and to tie the evidence to their story. I will then give you instructions on the law and describe for you the matters you must resolve.

You will then retire to the jury room to deliberate on your verdict.

You should generally expect that we will start the trial each morning at 9:30 a.m. and finish at 4:30 p.m., with two 15-minute breaks (morning and afternoon), and one half-hour

break for lunch.  As I said earlier, I time my civil trials, meaning each party is given a certain

number of hours in which to present its evidence.  This assures that trials will be completed

on a predictable basis.  This system can only work, however, if you, as jurors, report to the

courtroom on a punctual basis as well.

## GLOSSARY OF PATENT TERMS

| | |
|---|---|
| **Assignment** | Transfer of ownership rights in a patent or patent application from one person or company to another. |
| **Claims** | That part of a patent which defines the limits of the invention. These are found at the end of the patent specification in the form of numbered paragraphs. |
| **Disclosure or Description** | That part of the patent specification which explains how the invention works and usually includes a drawing or drawings. |
| **File wrapper or Prosecution history** | The written record of proceedings in the United States Patent and Trademark Office (Patent Office or PTO) including the original patent application and subsequent communications between the Patent Office and applicant. |
| **Patent application** | The initial papers filed in the Patent Office by an applicant. These typically include a specification, drawings, and the oath (declaration) of applicant. |
| **Patent examiners** | Personnel employed by the Patent Office who review (examine) patent applications to determine whether to issue a patent. |
| **Prior art** | Any information which is used to describe public, technical knowledge prior to the invention by the applicant or more than a year prior to his/her application. |
| **References** | Any item of prior art (publication or patent) used to determine patentability. |
| **Specification** | That part of the patent application or patent which describes the invention and concludes with one or more claims. |

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Melissa Stone Myers*
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Melissa Stone Myers (#3985)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
  Attorneys for Defendant
  The TriZetto Group, Inc.

OF COUNSEL:

Jeffrey T. Thomas
David A. Segal
Michael A. Sitzman
GIBSON, DUNN & CRUTCHER LLP
Jamboree Center
4 Park Plaza
Irvine, CA  92614-8557
(949) 451-3800

March 31, 2006

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MCKESSON INFORMATION SOLUTIONS LLC,                )
)
)
                    Plaintiff,                     )
)
            v.                                     )          C.A. No. 04-1258 (SLR)
)
THE TRIZETTO GROUP, INC.,                          )
)
                    Defendant.                     )

**THE TRIZETTO GROUP, INC.'S**
**PROPOSED CLOSING JURY INSTRUCTIONS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Melissa Stone Myers (#3985)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
  Attorneys for Defendant
  The TriZetto Group, Inc.

OF COUNSEL:

Jeffrey T. Thomas
David A. Segal
Michael A. Sitzman
GIBSON, DUNN & CRUTCHER LLP
Jamboree Center
4 Park Plaza
Irvine, CA  92614-8557
(949) 451-3800

March 31, 2006

# TABLE OF CONTENTS

Page

**1.3    BURDENS OF PROOF** ................................................................................. 1

**2.2    PLAINTIFF'S CONTENTIONS** .................................................................. 2

**2.3    DEFENDANT'S CONTENTIONS** ............................................................. 3

**2.4    SUMMARY OF PATENT ISSUES** ........................................................... 4

**3.1    THE ASSERTED CLAIMS** ....................................................................... 5

**3.3    CLAIM CONSTRUCTION** ......................................................................... 6

**3.4    OPEN-ENDED OR "COMPRISING" CLAIMS** ................................... 12

**3.5    MEANS-PLUS-FUNCTION CLAIM LIMITATIONS** ......................... 13

**3.5.1  STEP-PLUS-FUNCTION CLAIM LIMITATIONS** ............................ 14

**3.6    PATENT INFRINGEMENT GENERALLY** ......................................... 15

**3.7    LITERAL INFRINGEMENT** .................................................................. 16

**3.8.1  MEANS-PLUS-FUNCTION CLAIM LIMITATIONS** ......................... 18

**3.8.2  STEP-PLUS-FUNCTION CLAIM LIMITATIONS** ............................ 19

**3.9    INDIRECT INFRINGEMENT** ............................................................... 20

**3.9.1  INDUCING INFRINGEMENT** .............................................................. 21

**3.9.2  CONTRIBUTORY INFRINGEMENT** .................................................. 22

**4.1    COMPENSATORY DAMAGES IN GENERAL** ................................... 23

**4.2    REASONABLE CERTAINTY** .............................................................. 24

**4.3    NOTICE REQUIREMENT FOR PATENTS WITH PRODUCT CLAIMS** .......... 25

**4.4    LOST PROFITS** ..................................................................................... 26

**4.5    REASONABLE ROYALTY AS A MEASURE OF DAMAGES** .............. 28

**4.5.1  FACTORS FOR DETERMINING REASONABLE ROYALTY** ............ 29

**4.6    CLOSING STATEMENT - DAMAGES** ................................................ 31

**5.1    WILLFUL INFRINGEMENT** ................................................................ 32

**5.2.1  LACHES** ................................................................................................ 36

**5.2.2  EQUITABLE ESTOPPEL** ................................................................... 37

## 1.3    BURDENS OF PROOF

This is a civil case in which the plaintiff is charging the defendant with patent infringement. The plaintiff has the burden of proving patent infringement by what is called a preponderance of the evidence. That means that the plaintiff has to produce evidence which, when considered in light of all of the facts, leads you to believe that what the plaintiff asserts is more likely true than not. To put it differently, if you were to put the plaintiff's and the defendant's evidence of infringement on opposite sides of a scale, the evidence supporting the plaintiff's assertions would have to make the scales tip somewhat to its side. The plaintiff is also charging the defendant with willful infringement. The plaintiff has the burden of proving willful infringement by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable. Proof by clear and convincing evidence is a higher burden than proof by a preponderance of the evidence.

In this case, the defendant contends that it does not infringe the '164 patent and is urging that the asserted claims of the patent in suit are invalid and unenforceable. The defendant believes it acted appropriately and with the advice of counsel. This Court previously ordered that issues of validity will be determined at a second, later phase of this trial. Equitable defenses, such as laches and equitable estoppel, as well as the defense of inequitable conduct will be decided by the Court.

Source:  Adapted to fit this case from *IMX  v. LendingTree* ("Burdens of Proof").

## 2.2    PLAINTIFF'S CONTENTIONS

McKesson contends that TriZetto has infringed claims 1-6 and 8-16 of the '164 patent by making, using, selling or offering for sale the ClinicaLogic component of TriZetto's products. McKesson further contends that TriZetto's infringement was willful.  McKesson also contends that, as a result of the infringement of the '164 patent by TriZetto, TriZetto is liable for damages.  Specifically, McKesson contends that it is entitled to damages in the form of either lost profits or a reasonable royalty from TriZetto.

Source:  Adapted to fit this case from *IMX  v. LendingTree* ("Plaintiff's Contentions").

## 2.3    DEFENDANT'S CONTENTIONS

TriZetto contends that the ClinicaLogic component of its products do not infringe any of the asserted claims.  TriZetto believes it acted appropriately and with the advice of counsel. TriZetto further contends that McKesson is not entitled to any damages.  TriZetto also contends that the asserted claims are invalid as being anticipated and/or obvious over the prior art and that the patent is unenforceable.  This Court previously ordered that issues of validity will be determined at a second, later phase of this trial.  Equitable defenses, such as laches, equitable estoppel, as well as the defense of inequitable conduct will be decided by the Court.

Source:  Adapted to fit this case from *IMX  v. LendingTree* ("Defendant's Contentions").

## 2.4    SUMMARY OF PATENT ISSUES

In this case, you must decide several things according to the instructions that I shall give you.  They include:

Whether McKesson has proven by a preponderance of the evidence that the ClinicaLogic component of TriZetto's products literally infringe any asserted claim of the '164 patent.

Whether McKesson has proven by clear and convincing evidence that TriZetto's infringement was willful.

If you decide that at least one asserted claim of the '164 patent is infringed by TriZetto, whether McKesson has proven by a preponderance of the evidence that it is entitled to recover damages as compensation for TriZetto's infringement and, if so, what amount of damages McKesson has proven to exist by a preponderance of evidence.

If you find McKesson is entitled to damages, you must decide whether McKesson has proven by a preponderance of the evidence that it has marked all of its products that included the patented invention with the patent number.

Source:  Adapted to fit this case from *IMX  v. LendingTree* ("Summary of Patent Issues").

### 3.1    THE ASSERTED CLAIMS

Before you can decide whether or not TriZetto has infringed the '164 patent, you will have to understand the patent "claims."  The patent claims are the numbered paragraphs at the end of the patent.

The purpose of the claims is to provide notice to the public of what a patent covers and does not cover.  The claims are intended to describe, in words, the boundaries of the invention described and illustrated in the patent.  The claims define the patent owner's property rights.  Infringement is the act of trespassing on those rights.  Only the claims of the patent can be infringed.  Neither the specification, which is the written description of the invention, nor the drawings of the patent can be infringed.

In addition, the claims of a patent do not have to cover every feature of the patented invention.  Each claim is a separate statement of the patented invention and, therefore, each of the asserted claims must be considered individually.  To show infringement of the '164 patent, McKesson needs only to establish that one of the asserted claims in that patent has been infringed.

There are a number of claims involved here.  McKesson asserts that the TriZetto infringes claims 1-6 and 8-16 of the '164 patent.  Claim 1 begins at column 117, line 2 of McKesson's '164 patent which is Exhibit __ in evidence.  These claims shall be referred to hereafter as "the asserted claims."

Source:  Adapted to fit this case from *IMX  v. LendingTree* ("The Asserted Claims").

## 3.3    CLAIM CONSTRUCTION

It is my duty under the law to define what the patent claims mean.  I have made my determination on the meaning of the disputed language in each asserted claim, consistent with how the language would have been understood by one of ordinary skill in the art in 1988 when the application for the '164 patent was filed.

You are advised that the following definitions for the following terms must be applied:

1.    "Receiving at least one claim" shall have the following function [insert after Markman ruling] and the following corresponding act [insert after Markman ruling].

2.    "A predetermined database containing medical service codes and a set of relationships among the medical service codes" shall mean [insert after Markman ruling].

3.    "Determining whether any medical service code contained in the at least one claim is not present in the predetermined database" shall have the following function [insert after Markman ruling] and the following corresponding act [insert after Markman ruling].

4.    "Informing a user that a medical service code is not contained in the predetermined database" shall have the following function [insert after Markman ruling] and the following corresponding act [insert after Markman ruling].

5.    "Ascertaining whether the at least one claim contains a plurality of medical service codes" shall have the following function [insert after Markman ruling] and the following corresponding act [insert after Markman ruling].

6.    "Determining whether one of the medical service codes in the at least one claim is mutually exclusive due to non-medical criteria with any other medical service code in the at least one claim" shall have the following function [insert after Markman ruling] and the following corresponding act [insert after Markman ruling].

7.      "Determining whether one of the medical service codes in the plurality of medical service codes is valid or invalid by interacting with the database and the set of relationships contained in the database" shall have the following function [insert after Markman ruling] and the following corresponding act [insert after Markman ruling].

8.      "Authorizing medical service codes which are not mutually exclusive due to nonmedical criteria with any other medical service codes contained in the at least one claim in response to the determining step" shall have the following function [insert after Markman ruling] and the following corresponding act [insert after Markman ruling].

9.      "Authorizing the at least one claim in response to the determining step" shall have the following function [insert after Markman ruling] and the following corresponding act [insert after Markman ruling].

10.     "Rejecting medical service codes which are mutually exclusive due to non-medical criteria with any other medical service codes contained in the at least one claim in response to the determining step" shall have the following function [insert after Markman ruling] and the following corresponding act [insert after Markman ruling].

11.     "Rejecting the at least one claim in response to the determining step" shall have the following function [insert after Markman ruling] and the following corresponding act [insert after Markman ruling].

12.     "Medically determined relationships" shall mean [insert after Markman ruling].

13.     "Non-medical criteria" shall mean [insert after Markman ruling].

14.     "Medical service code(s)" shall mean [insert after Markman ruling].

15.     "Means for receiving at least one claim" shall have the following function [insert after Markman ruling] and the following corresponding structure [insert after Markman ruling].

16.     "Means for operating on a predetermined database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when input with other selected ones of the medical service codes" shall have the following function [insert after Markman ruling] and the following corresponding structure [insert after Markman ruling].

17.     "Means for determining whether any medical service code contained in the at least one claim is not present in the predetermined database" shall have the following function [insert after Markman ruling] and the following corresponding structure [insert after Markman ruling].

18.     "Means for informing a user that a medical service code is not contained in the predetermined database" shall have the following function [insert after Markman ruling] and the following corresponding structure [insert after Markman ruling].

19.     "Means for ascertaining whether the at least one claim contains a plurality of medical service codes" shall have the following function [insert after Markman ruling] and the following corresponding structure [insert after Markman ruling].

20.     "A set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when input with other selected ones of the medical service codes" shall mean [insert after Markman ruling].

21.     "Means for determining whether one of the medical service codes in the plurality of medical service codes is valid or invalid by interacting with the database and the set of relationships contained in the database" shall have the following function [insert after Markman ruling] and the following corresponding structure [insert after Markman ruling].

22.     "Valid or invalid" shall mean [insert after Markman ruling].

23.    "Means for determining whether one of the medical service codes in the at least one claim is included in any other medical service code in the at least one claim" shall have the following function [insert after Markman ruling] and the following corresponding structure [insert after Markman ruling].

24.    "Means for determining whether one of the medical service codes in the at least one claim is medically exclusive with any other medical service code in the at least one claim" shall have the following function [insert after Markman ruling] and the following corresponding structure [insert after Markman ruling].

25.    "Means for determining whether one of the medical service codes in the at least one claim is mutually exclusive due to non-medical criteria with any other medical service code in the at least one claim" shall have the following function [insert after Markman ruling] and the following corresponding structure [insert after Markman ruling].

26.    "Means for authorizing medical service codes which are valid in response to the means for determining" shall have the following function [insert after Markman ruling] and the following corresponding structure [insert after Markman ruling].

27.    "Means for authorizing medical service codes which are not contained in any other medical service code" shall have the following function [insert after Markman ruling] and the following corresponding structure [insert after Markman ruling].

28.    "Means for authorizing medical service codes which are not medically exclusive with any other medical service codes contained in the at least one claim in response to the means for determining" shall have the following function [insert after Markman ruling] and the following corresponding structure [insert after Markman ruling].

29.    "Means for authorizing medical service codes which are not mutually exclusive due to non-medical criteria with any other medical service codes contained in the at least one claim in response to the means for determining" shall have the following function [insert after Markman ruling] and the following corresponding structure [insert after Markman ruling].

30.    "Means for authorizing the at least one claim in response to the means for determining" shall have the following function [insert after Markman ruling] and the following corresponding structure [insert after Markman ruling].

31.    "Means for rejecting medical service codes which are invalid in response to the means for determining" shall have the following function [insert after Markman ruling] and the following corresponding structure [insert after Markman ruling].

32.    "Means for rejecting medical service codes which are contained in any other medical service code" shall have the following function [insert after Markman ruling] and the following corresponding structure [insert after Markman ruling].

33.    "Means for rejecting medical service codes which are medically exclusive with any other medical service codes in the at least one claim in response to the determining step" shall have the following function [insert after Markman ruling] and the following corresponding structure [insert after Markman ruling].

34.    "Means for rejecting medical service codes which are mutually exclusive due to non-medical criteria with any other medical service codes contained in the at least one claim in response to the means for determining" shall have the following function [insert after Markman ruling] and the following corresponding structure [insert after Markman ruling].

35.    "Means for rejecting the at least one claim in response to the means for determining" shall have the following function [insert after Markman ruling] and the following corresponding structure [insert after Markman ruling].

36.    "Means for revising the at least one claim to delete invalid medical service codes" shall have the following function [insert after Markman ruling] and the following corresponding structure [insert after Markman ruling].

37.    "Means for revising the at least one claim to not include a rejected medical service code" shall have the following function [insert after Markman ruling] and the following corresponding structure [insert after Markman ruling].

38.    "Means for informing a user why the at least one claim was revised" shall have the following function [insert after Markman ruling] and the following corresponding structure [insert after Markman ruling].

39.    "Means for requesting further information from a user regarding the at least one claim" shall have the following function [insert after Markman ruling] and the following corresponding structure [insert after Markman ruling].

Source:  Adapted to fit this case from *Cordis Corp. v. Boston Scientific Corp.* ("Construction of Claims").

### 3.4    OPEN-ENDED OR "COMPRISING" CLAIMS

All of the asserted claims 1-6 and 8-16 of the '164 patent use the transitional term, "comprising."  "Comprising" is interpreted the same as "including" or "containing."  In patent claims, "comprising" means that the claims are open-ended.  As such, the claim is not limited to only what is in the claim.

Based on this explanation, if you find that the ClinicaLogic component of TriZetto's products includes all of the limitations in any asserted claim of the '164 patent, the fact that the product may also include additional components or perform additional functions is not relevant.

Source:  Adapted to fit this case from *IMX  v. LendingTree* ("Open Ended or 'Including' Claims).

### 3.5     MEANS-PLUS-FUNCTION CLAIM LIMITATIONS

Some patent claim limitations may describe a "means" for performing a function, rather than describing the structure that performs the function.  For example, let's say that a patent describes a table in which the legs are glued to the tabletop.  One way to claim the table is to recite the tabletop, four legs and glue between the legs and the tabletop.  Another way to claim the table is to recite the tabletop and the legs, but, rather than recite the glue, recite a "means for securing the legs to the tabletop."  This second type of claim limitation is called a "means-plus-function" limitation.  It describes a means for performing the function of securing the legs to the tabletop, rather than expressly reciting the glue.

When a claim limitation is in means-plus-function form, it is limited to the structure disclosed in the patent specification for performing the function stated in the claim, and also any structure that is equivalent to the disclosed structure that performs the identical function.  In our example, the claim covers a table using glue to secure the legs to the tabletop, as described in the patent, and any equivalent structure that performs the identical function of securing the legs to the tabletop in the same way as the glue.

All the claims of the '164 patent include means-plus function limitations.  In instructing you about the meaning of a means-plus-function claim limitation, I will tell you, first, the function that each of the means-plus-function claim limitations performs; and second, the structure disclosed in the patent specification that corresponds to each means-plus function limitation.

Source:  35 U.S.C. § 112, ¶ 6; Federal Circuit Bar Association Model Patent Jury Instructions 7.4; *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259 (Fed. Cir. 1999); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339 (Fed. Cir. 1999).

13

### 3.5.1   STEP-PLUS-FUNCTION CLAIM LIMITATIONS

Like the means-plus-function claim limitations I have described previously, some patent claim limitations may describe a "step" for performing a function, rather than describing the method that performs the function.  When a claim limitation is in step-plus-function form, it is limited to the acts disclosed in the patent specification for performing the function stated in the claim, and also any act that is equivalent to the disclosed act that performs the identical function.

Claims 1,2, and 16 are in step-plus-function form.  In instructing you about the meaning of a step-plus-function claim limitation, I will tell you, first, the function that each of the step-plus-function claim limitations performs; and second, the act disclosed in the patent specification that corresponds to each step-plus function limitation.

Source:  35 U.S.C. § 112, ¶ 6; *O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576 (Fed. Cir. 1997).

### 3.6    PATENT INFRINGEMENT GENERALLY

A patent owner may enforce its right to exclude others from making, using, selling, or offering to sell a patented invention by filing a lawsuit for patent infringement.  Here, McKesson has alleged that the ClinicaLogic component of TriZetto's products infringe the asserted claims of the '164 patent.  McKesson has the burden of proving, by a preponderance of the evidence, that TriZetto has literally infringed at least one of the asserted claims.

A company may infringe a patent without knowledge that what it is doing is an infringement of the patent.  A company may also infringe even though, in good faith, it believes that what it is doing is not an infringement of any patent.  Knowledge or intent to infringe is not relevant to whether infringement has occurred, but, as I will describe later, may be relevant to whether infringement was willful.

A patent may be infringed, either directly or indirectly.  I will now explain in more detail each type of infringement.

Source:  Adapted to fit this case from *IMX  v. LendingTree* ("Patent Infringement Generally").

### 3.7     LITERAL INFRINGEMENT

McKesson asserts that the ClinicaLogic component of TriZetto's products literally infringe the asserted claims of the '164 patent.  For an accused product to literally infringe an asserted claim, the subject matter of the claim must be found in the accused product.  In other words, an asserted claim is literally infringed if the accused product includes each and every limitation in the patent claim.  Literal infringement must be determined with respect to each asserted claim individually by comparing the accused product to each of the asserted claims.  If the accused product omits any single limitation recited in a given claim, that product does not literally infringe that claim.  You must determine literal infringement with respect to each asserted claim and each accused product individually.

Therefore, in determining whether the ClinicaLogic component of TriZetto's products literally infringe any asserted claim, the following steps should be taken by you:

First, you should determine the scope of the asserted claim by reading the claim language, limitation by limitation, as those limitations have been construed by the court or, if they have not been specifically construed, according to their ordinary meaning in light of the specification; and

Second, you should compare the ClinicaLogic component of TriZetto's products, element by element, to each of the limitations of the asserted claim.

If you find each and every limitation of the asserted claim exists in the accused products, you must return a verdict of literal infringement as to that claim.

If you did not find each and every limitation of the asserted claim in the ClinicaLogic component of TriZetto's products, you must return a verdict of non-infringement as to that claim.

You must repeat the above analysis with every asserted claim.

Remember the question is whether the ClinicaLogic component of TriZetto's products infringe any of the asserted claims, and not whether TriZetto's accused products are similar or even identical to a McKesson product. Accordingly, you must be certain to compare the ClinicaLogic component of TriZetto's products with the claims it is alleged to infringe and not with any product of McKesson.

Source: Adapted to fit this case from *IMX  v. LendingTree* ("Patent Infringement Generally"); *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005).

**INFRINGEMENT**
**3.8.1    MEANS-PLUS-FUNCTION CLAIM LIMITATIONS**

As I told you, a means-plus-function claim limitation describes a means for performing a particular function.    To prove that an accused product infringes a means-plus-function limitation, a patent owner must prove two things by a preponderance of evidence:  First, that the accused product contains a structure that performs the identical function to the function recited in the means-plus function limitation (a function-to-function comparison); and second, that the structure of the accused product that performs the function is either identical or equivalent to the corresponding structure disclosed in the patent specification (a structure-to-structure comparison).

Whether or not the structure of the accused product is equivalent to the structure disclosed in the patent is decided from the perspective of a person of ordinary skill in the field of the invention.  A person of ordinary skill is a person of average education and training in the field.  A structure is equivalent if such an ordinary skilled person would consider the differences between the accused structure and the structure in the patent to be insubstantial.

One way of determining whether the structure of the accused product is equivalent to the structure disclosed in the specification is to determine whether or not persons of ordinary skill in the field of the invention believe that the structure disclosed in the specification and the structure of the accused product are interchangeable.  Another way is to determine whether or not the accused structure performs the identical function, in substantially the same way, to achieve substantially the same result.

Source:  35 U.S.C., § 112, ¶ 6; Federal Circuit Bar Association Model Patent Jury Instructions 8.5; *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266-68 (Fed. Cir. 1999); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1347-50 (Fed. Cir. 1999).]

**INFRINGEMENT**
**3.8.2   STEP-PLUS-FUNCTION CLAIM LIMITATIONS**

As I told you, a step-plus-function claim limitation describes a step for performing a particular function.  To prove that an accused method or process infringes a step-plus-function limitation, a patent owner must prove two things by a preponderance of evidence:  First, that the accused process contain an act that performs the identical function to the function recited in the step-plus function limitation (a function-to-function comparison); and second, that the act of the accused process that performs the function is either identical or equivalent to the corresponding act disclosed in the patent specification (an act-to-act comparison).

Whether or not the act of the accused method or process is equivalent to the act disclosed in the patent is decided from the perspective of a person of ordinary skill in the field of the invention.  A person of ordinary skill is a person of average education and training in the field.  An act is equivalent if such an ordinary skilled person would consider the differences between the accused act and the act in the patent to be insubstantial.

One way of determining whether the act of the accused process is equivalent to the act disclosed in the specification is to determine whether or not persons of ordinary skill in the field of the invention believe that the act disclosed in the specification and the act of the accused process are interchangeable.  Another way is to determine whether or not the accused act performs the identical function, in substantially the same way, to achieve substantially the same result.

Source:  35 U.S.C. § 112, ¶ 6; *O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576 (Fed. Cir. 1997).

## 3.9    INDIRECT INFRINGEMENT

As I have told you, in addition to enforcing a patent against a direct infringer, a patent owner may also enforce the patent against indirect infringers. There are two types of indirect infringement – inducing infringement and contributory infringement. The intentional act of encouraging or inducing others to infringe a patent is called "inducing infringement." The act of contributing to the infringement of others by, for example, supplying them with parts used in the patented invention is called "contributory infringement."

There can be no indirect infringement unless someone is directly infringing the patent. Thus, in order to prove that TriZetto is inducing another person to infringe or contributing to the infringement of another, McKesson must prove by a preponderance of the evidence that the other person is directly infringing at least one claim of the patent using the product sold or supplied by TriZetto.

<u>Source</u>:  Federal Circuit Bar Association Model Patent Jury Instruction 8.12.

### 3.9.1   INDUCING INFRINGEMENT

A person induces patent infringement if he or she purposefully causes, urges or encourages another to infringe a patent. Inducing infringement cannot occur unintentionally. In order to prove inducement, the patent owner must prove by a preponderance of the evidence that the accused infringer knew of the patent and encouraged or instructed another person to use a product in a manner known to infringe the patent. The patent owner must also prove by a preponderance of the evidence that the other person infringed the patent.

Here, McKesson asserts that TriZetto induced patent infringement. McKesson must prove four things by a preponderance of the evidence:

First, TriZetto encouraged or instructed a third party on how to use the ClinicaLogic component of TriZetto's products in a manner that you, the jury, find infringes claims 1-6 or 8-16 of the '164 patent.

Second, TriZetto actually knew of the '164 patent.

Third, TriZetto actually knew that its actions would likely result in the third party infringing the '164 patent.

Fourth, the third party infringed the '164 patent.

If, and only if, you are persuaded by a preponderance of the evidence of each of these four things, can TriZetto be found to have induced patent infringement.

Source:  35 U.S.C. § 271(b); Federal Circuit Bar Association Model Patent Jury Instructions 8.12.1; *Hewlett Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464 (Fed. Cir. 1990); *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988).

## 3.9.2   CONTRIBUTORY INFRINGEMENT

McKesson also argues that TriZetto has contributed to infringement by another. Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims.

In order for there to be contributory infringement by TriZetto, someone other than TriZetto must directly infringe the asserted claims of the '164 patent; if there is no direct infringement by anyone, there can be no contributory infringement.

If you find someone has directly infringed the '164 patent, then contributory infringement exists if McKesson shows by a preponderance of the evidence each of the following:

(1)     TriZetto manufactured and sold a product that was capable of being used in an infringing manner.

(2)     The product must not be a staple or commodity.  A staple or commodity is a product or device that has substantial non-infringing uses.

(3)     TriZetto supplied the product with knowledge of the '164 patent and knowledge that the article was especially made or adapted for use in an infringing manner.

To determine whether an accused device has substantial non-infringing uses, you must consider the entire device, not just the part that is capable of practicing the patented claims. When a device as a whole is capable of performing a patented method, but is also capable of substantial non-infringing use independent of the patented method, a claim for contributory infringement will not lie.

Source: 35 U.S.C. § 271(c); Delaware Model Patent Jury Instructions 3.7;  *Hewlett Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464 (Fed. Cir. 1990); *Universal Elecs., Inc. v. Zenith Elecs. Corp.*, 846 F. Supp. 641, 651 (N.D. Ill. 1994), *aff'd*, 41 F.3d 1520 (Fed. Cir. 1994); *Hodosh v. Block Drug Co.*, 833 F.2d 1575, 1578 (Fed. Cir. 1987).

## DAMAGES
## 4.1    COMPENSATORY DAMAGES IN GENERAL

If you have determined that TriZetto has infringed any of the asserted claims, you must next determine the damages to be awarded to McKesson.  The patent laws provide that, in the case of infringement of a valid patent claim, the owner of the patent shall be awarded damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by TriZetto.  Damages are compensation for all losses suffered as a result of the infringement.

Whether TriZetto benefited from, realized profits from, or even lost money as a result of the acts of infringement is not the measure of damages.  The only issue is the amount necessary to adequately compensate the patentee for the infringement.  Adequate compensation should return McKesson to the position it would have occupied had there been no infringement.

Source:   Adapted to fit this case from *IMX    v. LendingTree* ("Compensatory Damages in General").

## 4.2    REASONABLE CERTAINTY

Once the fact of damages has been proven by a finding of infringement, you must determine the extent of damages.  Under the patent law, McKesson is entitled to all damages that can be proven with "reasonable certainty."  On the one hand, reasonable certainty does not require proof of damages with mathematical precision.  Mere difficulty in ascertaining damages does not preclude awarding McKesson damages.  On the other hand, McKesson is not entitled to speculative damages; that is, you should not award any amount for loss which, although possible, is wholly remote or left to conjecture and/or guess.  You may base your evaluation of "reasonable certainty" on opinion evidence.

Source:  Adapted to fit this case from *IMX  v. LendingTree* ("Reasonable Certainty").

### 4.3     NOTICE REQUIREMENT FOR PATENTS WITH PRODUCT CLAIMS

McKesson can recover damages for infringement that occurred only after McKesson gave notice of its patent rights.  It is McKesson's burden to prove by a preponderance of the evidence that it gave TriZetto notice.

McKesson can give notice in two ways.  The first way is to give notice to the public in general.  McKesson can do this by placing the word "patent" or the abbreviation "PAT" with the number of the '164 patent on substantially all the products it sold that included the patented inventions.  McKesson's licensees who use the patented invention must also mark substantially all of their products that include the patented invention with the patent number.  This type of notice is effective from the date McKesson and its licensees began to mark substantially all of their products that use the patented invention with the patent number.  If McKesson and its licensees did not mark substantially all of their products that use the patented invention with the patent number, then McKesson did not provide notice in this way.  Once McKesson and its licensees begin marking, the marking must be substantially consistent and continuous.

A second way McKesson can provide notice of its patent is to tell TriZetto that TriZetto is infringing the '164 patent and to identify TriZetto's product that was infringing.  This type of notice is effective from the time it is given.

As I said, McKesson may recover damages only from the time it gave notice of its patent, either by the marking of products or by telling TriZetto of its infringement.

Source:  35 U.S.C. § 287; Federal Circuit Bar Association Model Jury Patent Instructions 12.1.1; *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523 (Fed. Cir. 1993).

## 4.4    LOST PROFITS

In determining damages, you must first determine if McKesson has proven its entitlement to lost profits.  Only if you find that McKesson is not entitled to lost profits will you then determine McKesson's damages based upon a reasonable royalty.

Lost profits may be in the form of diverted sales, eroded prices, or increased expenses. The patent owner must establish a causation between his lost profits and the infringement.  A factual basis for the causation is that "but for" the infringement, the patent owner would have made the sales that the infringer made, charged higher prices, and/or incurred lower expenses. In order to show that McKesson would have made the sales TriZetto made, McKesson must show each of the following factors:  (1) there was a demand for the patented product; (2) no acceptable non-infringing substitute products were available; (3) McKesson had the manufacturing and marketing ability to meet the market demand; and (4) the amount of McKesson's allegedly lost profit.

Because McKesson has not used a market share approach to calculating its request for lost profits, McKesson must show that no acceptable non-infringing alternative was available. The existence of licensees of the '164 patent may demonstrate that acceptable non-infringing substitutes exist.

In proving his damages, the patent owner's burden of proof is not an absolute one, but rather a burden of reasonable probability.  If in all reasonable probability, the patent owner would have made the sales which the infringer has made, what the patent owner in reasonable probability would have netted from the sales denied to him is the measure of his loss, and the infringer is liable for that.  The infringer is not liable, however, for speculative profits.

<u>Source</u>:  District of Delaware Model Patent Jury Instructions 6.5; *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152 (6th Cir. 1978); *Rite-Hite Corp. v. Kelly Co.*, 56 F.3d 1538 (Fed. Cir. 1995); *Comair Rotron, Inc. v. Nippon Densan Corp.*, 49 F.3d 1535 (Fed. Cir. 1995).

## 4.5     REASONABLE ROYALTY AS A MEASURE OF DAMAGES

If you find that McKesson is not entitled to lost profits, then you must determine McKesson's damages based upon a reasonable royalty.  A reasonable royalty in this case is the amount of money that represents the value of the claimed inventions to the parties and represents fair compensation for use of the claimed inventions.  One of the factors in determining the value of the claimed invention is the royalty that would be agreed to in a hypothetical arms-length negotiation between the patent holder and the alleged infringer, with both operating under the assumption that the negotiated patent is valid and is being infringed, i.e., that absent the "reasonable royalty" payment, the alleged infringer would respect the patent.

In determining a reasonable royalty, you should place yourself in October 1993, when the '164 patent was issued, as the period of time during which the hypothetical arms-length negotiation would have occurred.  The relevant parties at the time were the patentee, HPR, Inc. and the developer of the accused product, Erisco Managed Care Technologies, Inc.

In the hypothetical arms-length negotiation, you must assume that the person negotiating on behalf of the alleged infringer, and who was willing to take a license, would have known that the patent holder's patent was valid, was enforceable and was infringed.  You should also assume that both the patent holder and the alleged infringer knew all pertinent information at the time of the hypothetical negotiation.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for TriZetto's use of the patented invention, including the opinion testimony of experts.

Source:  Adapted to fit this case from *IMX  v. LendingTree* ("Reasonable Royalty as a Measure of Damages"); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).

### 4.5.1   FACTORS FOR DETERMINING REASONABLE ROYALTY

In determining a reasonable royalty, some of the factors that should be considered are:

1.      The royalties received by the patent holder for licensing others under the '164 patent;

2.      The rates paid by the alleged infringer for the use of other patents comparable to the '164 patent;

3.      The nature and scope of the license, as exclusive or non-exclusive; or as restricted or nonrestricted in terms of territory;

4.      Whether the patent holder had an established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

5.      The commercial relationship between the patent holder and the alleged infringer, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventors or promoters;

6.      The effect of selling the patented specialty in promoting sales of other products of the alleged infringer;

7.      The duration of the '164 patent and the term of the licenses;

8.      The established profitability of the product made under the patent, its commercial success, and its current popularity;

9.      The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for working out similar results;

10.    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the patent holder, and the benefits to those who have used the invention;

11.    The extent to which the alleged infringer has made use of the invention, and any evidence probative of the value of that use;

12.    The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

13.    The portion of the realizable profit that should be credited to the invention as distinguished from nonpatented elements, business risks, or significant features or improvements added by the alleged infringer;

14.    The opinion testimony of qualified experts; and

15.    Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

Source:    Adapted to fit this case from *IMX    v. LendingTree* ("Factors for Determining Reasonable Royalty"); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).

## 4.6    CLOSING STATEMENT - DAMAGES

In determining the issue of damages, the Court instructs you that the law does not permit an award of a greater sum than the monetary loss which McKesson has suffered as a result of the alleged infringement.  If, under the Court's instructions, you find that McKesson is entitled to damages, in fixing the amount of such damages you may not include and/or add to an otherwise just award any sum for purposes of punishing TriZetto or to set an example.

<u>Source</u>:  Adapted to fit this case from *IMX  v. LendingTree* ("Closing Statement - Damages").

## 5.1    WILLFUL INFRINGEMENT

If you find, on the basis of the evidence and the law as I have explained it, that the ClinicaLogic component of TriZetto's products infringe at least one of the asserted claims, you must further decide whether or not McKesson has proven by clear and convincing evidence that TriZetto's infringement was willful.

Willful infringement is not an all-or-nothing question, but one of degree. Infringement may range from unknowing or accidental, to deliberate, or reckless, disregard of a patentee's legal rights. To determine whether TriZetto acted with a reasonable good faith belief or whether TriZetto willfully infringed the '164 patent, you should consider the totality of the circumstances and all the facts, including the following factors:

1.    Whether TriZetto, in designing the ClinicaLogic component of its products, intentionally copied the design or ideas covered by the '164 patent, or whether the ClinicaLogic component of its products were independently developed. Evidence of copying is evidence of willful infringement; on the other hand, evidence that the ClinicaLogic component of TriZetto's products were independently developed is evidence that the infringement was not willful.

2.    Whether TriZetto, when it had knowledge of the '164 patent, investigated the scope of the patent and formed a good faith belief that the '164 patent was invalid, unenforceable, or not infringed.

3.    TriZetto's behavior as a party to the litigation. However, as long as TriZetto has a nonfrivolous defense to infringement, TriZetto's continuation of its accused infringing activity after McKesson initiated suit does not mean that TriZetto is guilty of willful infringement.

4.    TriZetto's size and financial condition.

5.    The closeness of the case.

6.    The duration of TriZetto's alleged misconduct.

7.    Any remedial action by TriZetto.

8.    TriZetto's motivation for harm.

9.    Whether TriZetto attempted to conceal its misconduct.

10.    Whether McKesson provided notice of the '164 patent and the alleged infringement to TriZetto.

11.    Whether McKesson inordinately delayed in bringing suit or engaged in bad faith or misleading actions prior to bringing suit.

12.    Whether TriZetto obtained and followed the advice of a competent lawyer.

Keep in mind that a determination by you that TriZetto has infringed the patent does not automatically mean that the infringement was willful.  As I have explained, infringement is not willful if TriZetto had a good faith belief that it did not infringe or that the '164 patent was invalid or unenforceable, and if its belief was reasonable under all the circumstances.

Source:  Adapted to fit this case from *IMX  v. LendingTree* ("Willful Infringement"); *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508 (Fed. Cir. 1990); *State Indus. v. A.O. Smith Corp.*, 751 F.2d 1226 (Fed. Cir. 1985); *Knorr-Bremse Systeme F.N. GMBH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004); *Westvaco Corp. v. Int'l Paper Co.*, 991 F.2d 735 (Fed. Cir. 1993); *Hall v. Aqua Queen Mfg.*, 93 F.3d 1548, 1553 (Fed. Cir. 1996).

### 5.2    GOOD FAITH RELIANCE ON OPINION OF COUNSEL

As I previously mentioned, one of the factors which may be helpful in evaluating the infringer's state of mind is whether, after becoming aware of the '164 patent, the infringer sought, obtained and justifiably relied on competent legal advice from counsel on whether the patent is invalid, or not infringed, or unenforceable.

In evaluating a defense of reliance on advice of counsel, you should evaluate the good faith of TriZetto and the opinion relied upon.  A good faith opinion means an opinion based on a reasonable examination of the facts and law at the time the opinion was made.  You should consider whether TriZetto actually relied upon and followed its attorney's opinion on this matter.  In evaluating the competence of the opinion itself, it is irrelevant that the opinion turned out to be wrong.  All that is relevant is whether the document or oral opinion and other related communications are so deficient that no reasonable client could rely on it or them.  This question must be answered from the perspective of the reasonable client.  An opinion may be deficient because it contains only conclusory findings with no justification or analysis.  This means that you should review TriZetto's opinion letter and communications for their overall tone, discussion of case law, and analysis of facts in order to determine whether the opinions could have instilled in TriZetto a reasonable confidence that it had a nonfrivolous defense.

In considering the defense of good faith reliance on an opinion of counsel, you may consider the knowledge and experience of the person or persons acting on behalf of TriZetto with respect to patent matters.  You may also consider whether TriZetto in fact did rely on the defenses asserted in the opinion, or whether it later took positions inconsistent with the statements made in the opinion.  Finally, you may also consider whether TriZetto believed it

had a final opinion, either in the form of an oral or written opinion and whether or not a copy exists today.

   In this case, TriZetto obtained a letter from counsel that contained opinions on the equitable defenses of laches and estoppel. As I previously told you, these issues will ultimately be decided by this Court. Even though I will be deciding those issues, you are not precluded from considering laches and equitable estoppel as sufficient defenses in the context of the opinions of counsel that TriZetto obtained in defense to willfulness.

Source:  *Graco, Inc. v. Bink Mfg. Co.*, 60 F.3d 785 (Fed. Cir. 1995).

### 5.2.1   LACHES

Because McKesson has accused TriZetto of willful infringement and TriZetto is relying in part on the advice of counsel, which advice contains an opinion regarding laches, I will now give you some background on the laches defense.  Even though I will decide whether the equitable defenses have been established, you may consider the laches defense in the context of the opinions of counsel that TriZetto obtained in defense to willfulness.

Laches refers to the neglect or delay of the patent holder in bringing suit to remedy an alleged wrong, which taken together with a lapse of time and other circumstances, causes prejudice to the adverse party.  The defense of laches looks at (1) whether McKesson or its predecessors delayed filing suit for an unreasonable and inexcusable length of time from the time McKesson or its predecessors knew or reasonably should have known of its claim against TriZetto or its predecessors, and (2) whether the delay operated to the prejudice or injury of TriZetto.  When a patentee fails to bring suit within six years after the patentee knew or should have known of the potential infringement, there is a presumption of unreasonable delay and prejudice in favor of the defendant.

Source:  *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed. Cir. 1992).

### 5.2.2   EQUITABLE ESTOPPEL

Because McKesson has accused TriZetto of willful infringement and TriZetto is relying in part on the advice of counsel, which advice contains an opinion regarding equitable estoppel, I will now give you some background on the equitable estoppel defense.  Even though I will decide whether the equitable defenses have been established, you may consider the equitable estoppel defense in the context of the opinions of counsel that TriZetto obtained in defense to willfulness.

Equitable estoppel exists where the patentee, through misleading conduct, leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer.  'Conduct' may include specific statements, action, inaction, or silence where there was an obligation to speak.  If the alleged infringer relies on that conduct, and the infringer will be materially prejudiced if the patentee is allowed to proceed with its claim, then estoppel will operate to bar the patentee from asserting its patent.

Source:  *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028, 1032 (Fed. Cir. 1992).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s/ Melissa Stone Myers*
Jack B. Blumenfeld (#1014)
Rodger D. Smith, II (# 3778)
Melissa Stone Myers (#3985)
1201 N. Market Street
Wilmington, Delaware 19899
(302) 658-9200
 Attorneys for Defendant
 The TriZetto Group, Inc.


OF COUNSEL:

GIBSON, DUNN & CRUTCHER LLP
Jeffrey T. Thomas
David Segal
Michael A. Sitzman
Jamboree Center, 4 Park Plaza
Irvine, CA  92614

March 31, 2006