EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MCKESSON INFORMATION SOLUTIONS LLC,    )
                                       )
                          Plaintiff,   )         CIVIL ACTION NO. 04-1258-SLR
                                       )
             v.                        )
                                       )
THE TRIZETTO GROUP, INC.,              )
                                       )
                          Defendant.   )
                                       )

## PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899
(302) 651-3000

Attorneys for Plaintiff
McKesson Information Solutions LLC

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California  94301
(650) 470-4500

DATED:  March 31, 2006

# TABLE OF CONTENTS

**PAGE**

1. **GENERAL INSTRUCTIONS**
   1.3    BURDENS OF PROOF .........................................................................1

2. **THE PARTIES AND THEIR CONTENTIONS**
   2.2    PLAINTIFF'S CONTENTIONS............................................................2
   2.3    DEFENDANT'S CONTENTIONS........................................................3
   2.4    SUMMARY OF PATENT ISSUES ......................................................4

3. **INFRINGEMENT**
   3.1    THE ASSERTED CLAIMS ..................................................................5
   3.3    OPEN ENDED OR "COMPRISING" CLAIMS ...................................6
   3.4    CLAIM CONSTRUCTION ..................................................................7
   3.5    MEANS-PLUS-FUNCTION CLAIM LIMITATIONS .........................8
   3.6    PATENT INFRINGEMENT GENERALLY .......................................10
   3.7    DIRECT INFRINGEMENT--LITERAL INFRINGEMENT ...............12
   3.7.1  DIRECT INFRINGEMENT—INFRINGEMENT OF
          APPARATUS CLAIMS ....................................................................14
   3.7.2  DIRECT INFRINGEMENT—INFRINGEMENT OF
          METHOD CLAIMS ..........................................................................15
   3.8    DIRECT INFRINGEMENT--INFRINGEMENT UNDER
          DOCTRINE OF EQUIVALENTS ......................................................16
   3.8.1  DIRECT INFRINGEMENT--MEANS-PLUS-FUNCTION
          CLAIM LIMITATIONS ....................................................................18
   3.9    INDIRECT INFRINGEMENT.............................................................21
   3.9.1  INDIRECT INFRINGEMENT--INDUCEMENT OF
          INFRINGEMENT...............................................................................22
   3.9.2  INDIRECT INFRINGEMENT--CONTRIBUTORY
          INFRINGEMENT...............................................................................24

**4.    DAMAGES**

4.1    COMPENSATORY DAMAGES IN GENERAL ................................. 26

4.2    REASONABLE CERTAINTY ............................................................ 27

4.3    DATE DAMAGES BEGIN—NOTICE REQUIREMENT .................. 28

4.3.1    DATE DAMAGES BEGIN—METHOD CLAIMS ............................. 30

4.4    LOST PROFITS – GENERALLY ....................................................... 31

4.4.1    LOST PROFITS DUE TO LOST SALES ........................................... 32

4.4.2    LOST PROFITS – COLLATERAL SALES ........................................ 35

4.5    REASONABLE ROYALTY AS A MEASURE OF DAMAGES ........ 36

4.5.1    FACTORS FOR DETERMINING REASONABLE ROYALTY ......... 38

4.6    TOTAL DAMAGES .......................................................................... 40

**5.    WILLFUL INFRINGEMENT**

5.1    WILLFUL INFRINGEMENT—GENERALLY ................................... 41

5.2    WILLFUL INFRINGEMENT--OPINION OF COUNSEL ................... 44

5.2.1    WILLFUL INFRINGEMENT--OPINION OF COUNSEL
        BASED ON INCOMPLETE INFORMATION .................................... 46

5.2.2    WILLFUL INFRINGEMENT--RELEVANCE OF
        OPINION OF COUNSEL .................................................................. 47

1.    **GENERAL INSTRUCTIONS**

1.3    BURDENS OF PROOF

This is a civil case in which plaintiff is charging defendant with patent infringement. Plaintiff has the burden of proving patent infringement by what is called a preponderance of the evidence. That means plaintiff has to produce evidence which, when considered in light of all of the facts, leads you to believe that what plaintiff asserts is more likely true than not. To put it differently, if you were to put plaintiff's and defendant's evidence of infringement on opposite sides of a scale, the evidence supporting plaintiff's assertions would have to make the scale tip somewhat to its side.

Plaintiff is also charging defendant with willful infringement. Plaintiff has the burden of proving willful infringement by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable. Proof by clear and convincing evidence is a higher burden than proof by a preponderance of the evidence.

Sources:  *See* Delaware Patent Jury Instructions 1.3; *IMX*, ("Burdens of Proof").

## 2.    THE PARTIES AND THEIR CONTENTIONS

### 2.2    PLAINTIFF'S CONTENTIONS

McKesson contends that TriZetto has infringed claims 1-6 and 8-16 of the '164 patent.  These claims may be referred to as "the asserted claims."  McKesson contends that the following TriZetto products infringe one or more of the asserted claims:

- Facets

- ClaimFacts

- QicLink

These products may be referred to as "the accused products."

McKesson further contends that TriZetto's infringement was willful.  McKesson also contends that, as a result of TriZetto's infringement of the '164 patent, TriZetto is liable for damages.  Specifically, McKesson contends that it is entitled to damages in the form of lost profits and/or a reasonable royalty from TriZetto.

Sources:  *See IMX*, ("Plaintiff's Contentions"); *Praxair, Inc. v. ATMI, Inc.*, C.A. No. 03-1158-SLR (Charge to the Jury, Dec. 7, 2005, "Plaintiffs' Contentions").

2.3     DEFENDANT'S CONTENTIONS

TriZetto contends that Facets, ClaimFacts, and QicLink do not infringe any of the asserted claims 1-6 and 8-16 of the '164 patent.

Sources:  *See IMX*, ("Defendant's Contentions"); *Praxair*, ("Defendants' Contentions").

2.4    SUMMARY OF PATENT ISSUES

In this case, you must decide several things according to the instructions that I shall give you.  They include:

As to each of the accused products Facets, ClaimFacts, and QicLink, whether McKesson has proven by a preponderance of the evidence that the product literally infringes at least one asserted claim of the '164 patent.

As to each of the accused products, whether McKesson has proven by a preponderance of the evidence that the product infringes at least one asserted claim of the '164 patent under the doctrine of equivalents.

McKesson has proven by a preponderance of the evidence that TriZetto has induced or contributed to the infringement of at least one asserted claim of the '164 patent.

Whether McKesson has proven by clear and convincing evidence that TriZetto's infringement was willful.

If you decide that at least one asserted claim of the '164 patent is infringed by TriZetto, whether McKesson has proven by a preponderance of the evidence that it is entitled to recover damages as compensation for TriZetto's infringement and, if so, what amount of damages.


Source:  *See IMX*, ("Summary of Patent Issues").

4

3.    **INFRINGEMENT**

3.1    THE ASSERTED CLAIMS

Before you can decide whether TriZetto has infringed the '164 patent, you will have to understand the patent "claims." The patent claims are the numbered paragraphs at the end of the patent.

The purpose of the claims is to provide notice to the public of what a patent covers and does not cover. The claims are intended to describe, in words, the boundaries of the invention described and illustrated in the patent. The claims define the patent owner's property rights. Infringement is the act of trespassing on those rights. Only the claims of the patent can be infringed. Neither the specification, which is the written description of the invention, nor the drawings of the patent can be infringed.

In addition, the claims of a patent do not have to cover every feature of the patented invention. Each claim is a separate statement of the patented invention an, therefore, each of the asserted claims 1-6 and 8-16 of the '164 patent must be considered individually. To show infringement of the '164 patent, McKesson needs only to establish that one of the asserted claims in the '164 patent has been infringed.

There are a number of claims involved here. As I stated earlier, McKesson asserts that TriZetto's accused products Facets, ClaimFacts, and QicLink infringe claims 1-6 and 8-16 of the '164 patent. Claim 1 begins at column 117, line 1 of the '164 patent, which is Exhibit 1 in evidence.

Sources:  *See* Delaware Patent Jury Instructions 3.1; *IMX*, ("The Asserted Claims").

5

### 3.3    OPEN ENDED OR "COMPRISING" CLAIMS

All of the asserted claims 1-6 and 8-16 of the '164 patent use the transitional term, "comprising."  "Comprising" is interpreted the same as "including" or "containing."  In patent claims, "comprising" means that the claims are open-ended.  As such, the claim is not limited to only what is in the claim.

Based on this explanation, if you find that an accused TriZetto product includes all of the limitations in any asserted claim of the '164 patent, the fact that the product may also include additional components or perform additional functions is not relevant. The presence of additional components or functions in the accused product does not mean that the product does not infringe a patent claim.

Sources:  *See* Delaware Patent Jury Instructions 3.11; *IMX*, ("Open Ended or 'Comprising' Claims"); *Praxair*, ("Open Ended or 'Comprising' Claims"); *A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 703 (Fed. Cir. 1983), *cert. denied*, 464 U.S. 1042 (1984); *Mannesmann Demag Corp. v. Engineered Metal Products Co.*, 793 F.2d 1279, 1282 (Fed. Cir. 1986); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1271 (Fed. Cir. 1986), *cert. denied*, 479 U.S. 1030 (1987).

### 3.4    CLAIM CONSTRUCTION

To decide the question of infringement, you must first understand what the claims of the patent cover.  It is my duty under the law to define what the patent claims mean.

You must ignore any different interpretation given to these terms by the witnesses or attorneys.

If I have not been provided a specific definition for a given term, you are to use the ordinary meaning of that term.  I instruct you that the following claim terms have the following definitions:

[Insert after *Markman* ruling]


Source:  *See IMX*, ("Claim Construction").

### 3.5    MEANS-PLUS-FUNCTION CLAIM LIMITATIONS

Some patent claim limitations may describe a "means" for performing a function, rather than describing the structure that performs the function.  For example, let's say that a patent describes a table in which the legs are glued to the tabletop.  One way to claim the table is to recite the tabletop, four legs and glue between the legs and the tabletop.  Another way to claim the table is to recite the tabletop and legs, but, rather than recite the glue, recite a "means for securing the legs to the tabletop."  This second type of claim limitation is called a "means-plus-function" limitation.  It describes a means for performing the function of securing the legs to the tabletop, rather than expressly reciting the glue.

When a claim limitation is in means-plus-function form, it covers the structures described in the patent specification for performing the function stated in the claim, and also any structure that is equivalent to the described structures.  In our example, the claim covers a table using glue to secure the legs to the tabletop, as described in the patent, and any equivalent structure that performs the function of securing the legs to the tabletop.

The asserted claims 1-6 and 8-16 of the '164 patent include one or more means-plus-function limitations.  In instructing you about the meaning of a means-plus-function claim limitation, I will tell you, first, the function that each means-plus-function claim limitation performs; and second, the structure disclosed in the patent specification that corresponds to each means-plus-function limitation.  You must use my interpretation of the means-plus-function element in your deliberations regarding infringement.

[Insert after *Markman* ruling]

8

Sources:  *See* Association Model Patent Jury Instructions 7.4 (2002); American Intellectual Property Law Association Model Patent Jury Instructions 2.2 (2005); 35 U.S.C. § 112 ¶ 6; *Utah Med. Prods., Inc. v. Graphic Controls Corp.*, 350 F.3d 1376 (Fed. Cir. 2003); *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1435-37 (Fed. Cir. 2000); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266-68 (Fed. Cir. 1999); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1347-50 (Fed. Cir. 1999); *Al-Site Corp. v. VSI Int'l Inc.*, 174 F.3d 1308, 1318-21 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus. Inc.*, 145 F.3d 1303, 1307-10 (Fed. Cir. 1998); *B. Braun Med. Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424-25 (Fed. Cir. 1997); *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1578 (Fed. Cir. 1993); *Valmont Indus., Inc. v. Reinke Mfg. Co., Inc.*, 983 F.2d 1039, 1042-43 (Fed. Cir. 1993).

3.6    PATENT INFRINGEMENT GENERALLY

Patent law provides that a person or business entity infringes a patent if that person or entity makes, uses, offers to sell, or sells, without the patent owner's permission, any product, apparatus, or method legally protected by at least one valid claim of the patent.

A patent owner may enforce its right to exclude others from making, using, offering to sell, or selling the patented invention by filing a lawsuit for patent infringement. Here, McKesson has alleged that TriZetto's accused products Facets, ClaimFacts, and QicLink infringe one or more of the asserted claims 1-6 and 8-16 of the '164 patent. McKesson has the burden of proving, by a preponderance of the evidence, that TriZetto has infringed at least one of the asserted claims either literally or under the doctrine of equivalents.

A company may infringe a patent without knowledge that what it is doing is an infringement of the patent. A company may also infringe even though, in good faith, it believes that what it is doing is not an infringement of any patent. Knowledge or intent to infringe is not relevant.

There are three ways to infringe a patent. One may: (1) directly infringe a patent; (2) induce others to infringe a patent, in which case the inducer is liable for infringement as well as the direct infringer; or (3) contribute to the infringement of a patent by another by supplying a component specially designed for the patented invention, in which case both the direct infringer and the contributory infringer would be liable for patent infringement. McKesson asserts that TriZetto has engaged in direct infringement,

inducement of infringement, and contributory infringement.  I will now explain in more detail each type of infringement.

Sources:  *See* Delaware Patent Jury Instructions 3.4 and 3.5; *Praxair*, ("Patent Infringement Generally"); *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 478 (1974); 35 U.S.C. §§ 271 & 281.

3.7    DIRECT INFRINGEMENT--LITERAL INFRINGEMENT

There are two ways in which a patent claim may be directly infringed.  First, a claim may be literally infringed.  Second, a claim may be infringed under what is called the "doctrine of equivalents," which I will address shortly.

For an accused product to literally infringe an asserted claim, the subject matter of the claim must be found in the accused product.  In other words, an asserted claim is literally infringed if the accused product includes each and every limitation of that patent claim.  Literal infringement must be determined with respect to each asserted claim individually by comparing the accused product to each of the asserted claims 1-6 and 8-16 of the '164 patent.  If the accused product omits any single limitation recited in a given claim, that product does not literally infringe that claim.  You must determine literal infringement with respect to each asserted patent claim and each accused product individually.

Therefore, in determining whether an accused product literally infringes any asserted claim, you should do the following:

First, you should determine the scope of the asserted claim by reading the claim language, limitation by limitation, as those limitations have been construed by the court or, if they have not been specifically construed, according to their ordinary meaning.

Second, you should compare each accused product to each of the limitations of the asserted claim.

If you find that each and every limitation of the asserted claim in the accused product, you must return a verdict of literal infringement as to that claim.  If you do not

find each and every limitation of the asserted claim in the accused product, you may not return a verdict of literal infringement as to that claim.

You must repeat the above analysis with every asserted claim and each accused product.

Remember, the question is whether TriZetto's accused products Facets, ClaimFacts, and QicLink infringe any of the asserted patent claims, and not whether TriZetto's accused products are identical or even similar to a product made by McKesson. Accordingly, you must be certain to compare TriZetto's accused products with the asserted claims and not with any product made by McKesson. McKesson's products are irrelevant to the infringement issues in this case.

Sources: *See* Delaware Patent Jury Instructions 3.8; *IMX*, ("Literal Infringement"); *Praxair*, ("Literal Infringement"); 35 U.S.C. § 271; *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 759 (Fed. Cir. 1984); *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1484 (Fed. Cir.), *cert. denied*, 469 U.S. 924 (1984); *Mannesmann Demag Corp. v. Engineered Metal Products Co.*, 793 F.2d 1279, 1282 (Fed. Cir. 1986); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Seal-Flex, Inc. v. Athletic Track and Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993).

### 3.7.1    DIRECT INFRINGEMENT—INFRINGEMENT OF
###    APPARATUS CLAIMS

In this case, claims 3-6 and 8-15 of the '164 patent are what is known as "apparatus" claims.  In order for TriZetto's accused products to infringe these apparatus claims, it is only necessary that the claim elements be present in the accused product at the time the product is made, offered for sale or sold.  It is not necessary that each of the elements be activated or operational in order for the accused products to directly infringe.  Even if a user must activate the functions included in the accused product, including functions included in software provided by TriZetto with the accused products, the user is only activating means that are already present in the accused products.  If the claim elements are present in the accused products, the accused products directly infringe regardless of whether the elements are ever activated or used in any way.

Sources:  *Fantasy Sports Properties, Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002); *Padcom, Inc. v. NetMotion Wireless Inc.*, No. 03-983-SLR, 2006 U.S. Dist. LEXIS 6549 at *14-15 (D. Del. Feb. 22, 2006).

### 3.7.2   DIRECT INFRINGEMENT—INFRINGEMENT OF METHOD CLAIMS

In this case, claims 1, 2 and 16 of the '164 patent are what is known as "method" claims. To infringe the method claims, TriZetto's accused products do not need to practice the claimed method at all times. Put differently, an accused product infringes a method claim even if the product does not always infringe the claimed method when it is used. As such, an accused product infringes a claimed method even if the accused device only infringes during certain times of operation.

Sources: *Bell Commc'n Research Inc. v. Vitalink Commc'n Corp.,* 55 F.3d 615, 622-23 (Fed. Cir. 1995), *aff'd,* 234 F.3d 1252 (Fed. Cir. 2000); *Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.,* 134 F.3d 1085, 1089 (Fed. Cir. 1998); *Sunrise Med. HHG, Inc. v. AirSep Corp.*, 95 F. Supp. 2d 348, 444 n.741 (D. Del. 2000).

3.8    DIRECT INFRINGEMENT--INFRINGEMENT UNDER
DOCTRINE OF EQUIVALENTS

If you do not find literal infringement, you may consider infringement under the "doctrine of equivalents."  Under the doctrine of equivalents, an accused product can infringe an asserted claim if it includes elements that are identical or equivalent to the limitations of the asserted claim.  Under the patent law, an infringing equivalent is not treated any differently than a product that literally infringes the limitations of an asserted claim.

The test to determine equivalence under the doctrine of equivalents is whether the differences between the claim limitation which you have found not to be literally present and the element present in TriZetto's accused product are insubstantial.  In determining whether the differences are substantial or insubstantial, you may consider whether the claim limitation and the element in the accused product perform substantially the same function in substantially the same way to produce substantially the same result.  Whether the claim limitation and the element present in an accused product are equivalent is to be determined as of the time of the alleged infringement.

If you find only insubstantial differences between the claim limitation and the corresponding element in TriZetto's accused product, then you will have determined that the corresponding element in the accused product is equivalent to the claim limitation. On the other hand, if you find that the claim limitation and the corresponding element in TriZetto's accused product have substantial differences, then you will have determined that the corresponding element in the accused product is not equivalent to the claim limitation.

16

Sources:  *See IMX*, ("Infringement Under Doctrine of Equivalents"); Delaware

Patent Jury Instructions 3.9; *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S.

17, 39 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608-09

(1950); *Allen Engineering Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1345 (Fed. Cir.

2002); *De Marini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1331-32 (Fed. Cir. 2001);

*Biovail Corp. Int'l v. Andrx Pharms., Inc.*, 239 F.3d 1297, 1302-03 (Fed. Cir. 2001);

*Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1107 (Fed. Cir. 2000);

*Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1287 (Fed. Cir. 2000);

*Bayer AG v. Elan Pharm., Research Corp.*, 212 F.3d 1241, 1247-50 (Fed. Cir. 2000);

*Augustine Med., Inc. v. Gaymar Indus., Inc.*, 181 F.3d 1291, 1304 (Fed. Cir. 1999);

*Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 934-5 (Fed. Cir. 1987) (*en banc*);

*Atlas Powder Co. v. E. I. DuPont de Nemours & Co.*, 750 F.2d 1569, 1579-80 (Fed. Cir.

1984).

### 3.8.1    DIRECT INFRINGEMENT--MEANS-PLUS-FUNCTION CLAIM LIMITATIONS

As I told you, a means-plus-function claim limitation describes a means for performing a particular function.  A means-plus-function limitation may be present in an accused product literally or under the doctrine of equivalents.

To prove that an accused product includes a structure that is literally covered by a means-plus-function limitation, a patent owner must prove two things by the more probable than not standard.  First, that the accused product contains a structure that performs the same function to the function recited in the means-plus-function limitation. Second, that the structure of the accused product that performs that function is either the same as or equivalent to the corresponding structure disclosed in the patent specification.

If the function performed by the structure is not the same as the function recited in the means-plus-function limitation, the patent owner may prove that the accused product is covered by the means-plus-function limitation under the doctrine of equivalents.  To prove equivalents, the patent owner must prove, first, that the accused product contains a structure that performs an equivalent function to the one recited in the claim limitation; and second, that the structure that performs that function is the same as or equivalent to the structure described in the patent specification.

Whether or not the structure or function of the accused products Facets, ClaimFacts, and QicLink  is equivalent to the structure disclosed in the patent and the function recited in the claims is decided from the perspective of a person of ordinary skill in the field of the invention.  A structure or function is equivalent if such an ordinary skilled person would consider the differences between the accused structure or function and the structure or function in the patent to be insubstantial.

18

One way of determining whether the structure of the accused product is equivalent to the structure disclosed in the specification is to determine whether or not persons of ordinary skill in the field of the invention believe that the structure disclosed in the specification and the structure of the accused product are interchangeable. Another way is to determine whether or not the accused structure performs substantially the same function, in substantially the same way, to achieve substantially the same result.

Let's go back to our example of the claim reciting three limitations -- first, a tabletop, second, legs and third, a means for securing the legs to the tabletop. The third limitation is the means-plus-function portion of the claim. The patent in our example discloses glue to secure the legs to the tabletop. Let's assume that the accused device uses nails. They both perform the claimed function of securing the legs to the tabletop. The fact that nails and glue are different does not mean that, under the patent laws, they may not be equivalent. Whether or not they are equivalent depends on such things as whether the glue is important to the invention claimed in the patent, whether those skilled in the art of table-making would consider the glue and nails to be interchangeable, and whether in the patent or prosecution history the two are referred to as equivalent.

Sources:  *See* Federal Circuit Bar Association Model Patent Jury Instructions 8.6 (2002); 35 U.S.C. § 112 ¶ 6 (1984); *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1435-37 (Fed. Cir. 2000); *Caterpillar, Inc. v. Deere & Co.*, 224 F.3d 1374, 1380 (Fed. Cir. 2000); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266-68 (Fed. Cir. 1999); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1347-50 (Fed. Cir. 1999); *Al-Site Corp. v. VSI Int'l Inc.*, 174 F.3d 1308, 1318-21 (Fed. Cir. 1999); *Chiuminatta*

19

*Concrete Concepts, Inc. v. Cardinal Indus. Inc.*, 145 F.3d 1303, 1307-10 (Fed. Cir. 1998);

*B. Braun Med. Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424-25 (Fed. Cir. 1997).

3.9    INDIRECT INFRINGEMENT

As I have told you, in addition to enforcing a patent against a direct infringer, a patent owner may also enforce the patent against indirect infringers.  There are two types of indirect infringement--inducing infringement and contributory infringement.  The act of encouraging or inducing others to infringe a patent is called "inducing infringement."  The act of contributing to the infringement of others by, for example, supplying them with components used in the patented invention is called "contributory infringement."

There can be no indirect infringement unless someone is directly infringing the patent.  Thus, in order to prove that TriZetto is inducing another person to infringe or contributing to the infringement of another, McKesson must prove that it is more probable than not that the other person is directly infringing at least one claim of the patent.

In this case, McKesson accuses TriZetto of inducing or contributing to the infringement of claims 1-6 and 8-16 of the '164 patent.  McKesson must prove that it is more probable than not that TriZetto has induced or contributed to the infringement of any of these claims.

Sources:  *See* Federal Circuit Bar Association Model Patent Jury Instructions 8.12 (2002); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 340-41 (1961); *Arthur A. Collins, Inc. v. N. Telcom Ltd.*, 216 F.3d 1042, 1049 (Fed. Cir. 2000); *Porter v. Farmers Supply Serv., Inc.*, 790 F.2d 882, 884-86 (Fed. Cir. 1986).

3.9.1    INDIRECT INFRINGEMENT--INDUCEMENT OF
INFRINGEMENT

A person induces patent infringement if he or she purposefully causes, urges or encourages another to infringe a patent.  Inducing infringement cannot occur unintentionally.  This is different from direct infringement, which, as I've told you, can occur unintentionally.  In order to prove inducement, the patent owner must prove that it is more probable than not that the accused inducer knew of the patent and encouraged or instructed another person to use a product in a manner that infringes the patent.  The patent owner must also prove that it is more probable than not that the other person infringed the patent.  A person can be an inducer even if he or she thought that what he or she was encouraging or instructing the other person to do was not an infringement.

Here, McKesson asserts that TriZetto induced patent infringement.  McKesson must prove four things by the more probable than not standard:

First, TriZetto encouraged and instructed another person how to use one or more of the accused TriZetto products in a manner that you, the jury, find infringes at least one of the asserted claims 1-6 and 8-16 of the '164 patent.

Second, TriZetto knew of the '164 patent.

Third, TriZetto knew or should have known that its encouragement or instructions would likely result in the other person using the accused product in the manner that you find to be an infringement of the '164 patent.

Fourth, the other person infringed the '164 patent.

If, and only if, you are persuaded of each of these four things, you may find that TriZetto induced patent infringement.

22

Sources:  *See* Federal Circuit Bar Association Model Patent Jury Instructions 8.12.1 (2002); 35 U.S.C. § 271(b) (1984); *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1318 (Fed. Cir. 2003); *Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1261 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1311-12 (Fed. Cir. 1998); *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 161 F.3d 688, 695 (Fed. Cir. 1998); *Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*, 72 F.3d 872, 876 n.4 (Fed. Cir. 1995); *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774-76 (Fed. Cir. 1993); *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553-54 (Fed. Cir. 1990); *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1468-69 Fed. Cir. 1990).

### 3.9.2    INDIRECT INFRINGEMENT--CONTRIBUTORY INFRINGEMENT

Contributory infringement can occur when a supplier provides a part, or a component, to another for use in a patented product or machine, or in a patented process. In order for there to be contributory infringement, the person who received the component must infringe the patent.  The component must also have certain characteristics.  First, the component must be a material part of the invention.  Second, the component must be especially made or adapted for use in a manner that infringes the patent, and the supplier must know that the component was especially made for that use. Third, the component must not have a substantial use that does not infringe the patent.  A component that has a number of non-infringing uses is often referred to as a staple or commodity article.  Providing such a staple or commodity article is not contributory infringement, even if the person to whom the article was supplied uses it in an infringing manner.

In this case, McKesson asserts that TriZetto's selling or supplying the accused TriZetto products is a contributory infringement of the asserted claims 1-6 and 8-16 of the '164 patent.  In order to establish that TriZetto has contributorily infringed the asserted claims of the '164 patent, McKesson must prove five things by the more probable than not standard.  These five things are:

First, TriZetto knew of the '164 patent.

Second, the accused TriZetto product is a material component of the claimed invention and TriZetto sold or supplied that component.

Third, TriZetto knew that the component was especially made for use in a manner that infringes the patent claims.

24

Fourth, the component is not a staple or commodity article.

Fifth, the component was actually used in a manner that you find infringes the '164 patent.

Sources:  *See* Federal Circuit Bar Association Model Patent Jury Instructions 8.12.2 (2002); 35 U.S.C. § 271(c) (Supp. 2001); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476 (1964); *Serrano v. Telular Corp.*, 111 F.3d 1578, 1583-84 (Fed. Cir. 1997); *Sage Prods., Inc. v. Devon Indus., Inc.*, 45 F.3d 1575, 1577-78 (Fed. Cir. 1995); *Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*, 72 F.3d 872, 876 n.4 (Fed. Cir. 1995); *FMC Corp. v. Up-Right, Inc.*, 21 F.3d 1073, 1076-77 (Fed. Cir. 1994); *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774-76 (Fed. Cir. 1993); *Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1447-48 (Fed. Cir. 1990); *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 673 (Fed. Cir. 1990); *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1468-69 (Fed. Cir. 1990); *Hodosh v. Block Drug Co.*, 833 F.2d 1575, 1578-79 (Fed. Cir. 1987); *Preemption Devices, Inc. v. Minn. Mining & Mfg. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986).

4.    **DAMAGES**

    4.1    COMPENSATORY DAMAGES IN GENERAL

    If you have determined that TriZetto has infringed any of the asserted claims 1-6 and 8-16, you must next determine the damages to be awarded to McKesson.  The patent laws provide that, in the case of infringement of a valid patent claim, the owner of the patent shall be awarded damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer. Damages are compensation for all losses suffered as a result of the infringement.

    Whether TriZetto benefited from, realized profits from or even lost money as a result of the acts of infringement is not the measure of damages.  It is also not relevant if TriZetto did not foresee that it would cause McKesson damage at the time that it infringed the asserted claims.  The only issue is the amount necessary to adequately compensate McKesson for TriZetto's infringement.  Adequate compensation should return McKesson to the position it would have occupied had there been no infringement.

    Sources:  *See IMX*, ("Compensatory Damages in General" & "Foreseeability"); Delaware Patent Jury Instructions 6.1 and 6.2.

4.2        REASONABLE CERTAINTY

Once the fact of damages has been proven by finding of infringement, you must determine the extent of damages.  Under the patent laws, McKesson is entitled to all damages that can be proven with "reasonable certainty."  On one hand, reasonable certainty does not require proof of damages with mathematical precision.  Mere difficulty in ascertaining damages does not preclude awarding McKesson damages.  On the other hand, McKesson is not entitled to speculative damages; that is, you should not award any amount of loss that, although possible, is wholly remote or the result of mere conjecture. You may base your evaluation of reasonable certainty on opinion evidence.

Any doubts regarding the computation of the amount of damages should be resolved in favor of McKesson.

Sources:  *See IMX*, ("Reasonable Certainty"); Delaware Patent Jury Instructions 6.3; *see also Ryco, Inc. v. Ag-Bag Corp.*, 857 F.2d 1418, 1427-28 (Fed. Cir. 1988); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065-66 (Fed. Cir. 1983).

27

### 4.3    DATE DAMAGES BEGIN—NOTICE REQUIREMENT

McKesson can recover damages from the date McKesson first gave notice of its patent rights.  It is McKesson's burden to prove by a preponderance of the evidence that it gave TriZetto notice.

McKesson can give notice in two ways.  The first way is to give notice to the public in general.  McKesson can do this by placing the word "patent" or the abbreviation "PAT" with the number of the '164 patent on substantially all the products it or its licensees sold that included the patented invention.  It is not necessary that all such products be marked.  This type of notice is effective from the date McKesson and its licensees began to consistently mark substantially all of its patented products with the patent number.

The Patent Law does not require marking within a particular time after issuance of a patent.  Once a patentee complies with its duty to mark, any prior failure or delay in complying with that marking requirement is irrelevant.  In other words, the focus is on whether and when the patentee began to comply with its duty to mark, not whether there are unmarked patented products in the marketplace as a result of any prior failure or delay in complying with the marking requirement.  Once consistent marking has begun, there is no reason to further limit damages in this regard so long as the marking remains substantially consistent and continuous.

A second way McKesson can provide notice of its patent is to make TriZetto aware that TriZetto may be an infringer.  This type of notice is effective from the time it is given.

You must calculate damages for the period starting from the date McKesson began complying with its marking requirement or the date McKesson gave notice to TriZetto, whichever is earlier. However, the earliest date from which you may begin calculating damages is September 13, 1998.

Source: *See* 35 U.S.C. § 287; Federal Circuit Bar Association Model Patent Jury Instructions 12.1.1 (2002); American Intellectual Property Law Association Model Patent Jury Instructions 12.2 (2005); *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 (Fed. Cir. 1993); *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997).

### 4.3.1   DATE DAMAGES BEGIN—METHOD CLAIMS

The requirement that a patentee provide notice for damages to begin does not apply to the method claims of a patent.  In other words, if you find that TriZetto infringes any of the asserted method claims of the '164 patent, but not any of the apparatus claims of the patent, you must calculate damages for the period beginning on September 13, 1998, regardless of when McKesson may have given notice of its patent.  The method claims of the '164 patent that have been asserted in this case are claims 1, 2 and 16.

Source:  *See State Contr. & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1073-74 (Fed. Cir. 2003); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1082-83 (Fed. Cir. 1983); *Bandag, Inc. v. Gerrard Tire Co.*, 704 F.2d 1578, 1581 (Fed. Cir. 1983).

4.4    LOST PROFITS – GENERALLY

In this case, McKesson is seeking lost profits as part of its patent damages. Lost profit damages are the profits McKesson asserts it lost because of the infringement. They are not the profits TriZetto actually made. McKesson's lost profits may be in several different forms, but are commonly in the form of lost sales. In this case, McKesson must establish that the infringement caused its lost profits. Thus, McKesson must show that "but for" the infringement, McKesson would have made the profits that were allegedly lost.

Sources: *See Leapfrog Enterprises, Inc. v. Fisher-Price, Inc.*, C.A. No. 03-927-GMS D.I. 298 (D. Del. June 14, 2005) (Final Jury Instructions, "Lost Profits-Generally"); Delaware Patent Jury Instructions 6.5; *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1119 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995).

4.4.1    LOST PROFITS DUE TO LOST SALES

McKesson is claiming that it lost sales because of TriZetto's alleged infringement. In order to recover lost profits damages for the sales that TriZetto made, McKesson must show that it is more probable than not that but for TriZetto's alleged infringement, McKesson would have made some or all of the infringing sales.  You may infer that McKesson has proven lost profits if McKesson shows four things:

(1)    There was a demand for the patented product.

(2)    No acceptable non-infringing substitutes were available or, if there were, the portion of TriZetto's sales that McKesson would have made despite the availability of other acceptable, non-infringing substitutes.  One way to prove the portion of sales McKesson would have made but for the infringement is to prove McKesson's share of the relevant market excluding the infringing products.

(3)    McKesson had the ability to meet the market demand.

(4)    The amount of the profit McKesson would have made.

On the subject of acceptable, non-infringing substitutes, McKesson need not negate every possibility that purchasers of TriZetto's products might have bought another product or no product at all.  The mere existence of a competing device does not make that product an acceptable substitute.  To be an acceptable non-infringing substitute, a proposed competitive substitute must have been acceptable to the actual purchasers of the infringing products.  However, consumer demand for the unique advantages of a patented invention, as opposed to an alleged non-infringing substitute, may suggest that there is no acceptable non-infringing substitute.

In proving its damages, McKesson's burden of proof is not an absolute one, but rather a burden of reasonable probability.  If it is reasonably probable that McKesson would have made some or all of the infringing sales, and it is reasonably probable what amount McKesson would have netted from the denied sales, then TriZetto is liable for the lost profits on those infringing sales.

Sources:  *See* Delaware Patent Jury Instructions 6.5; Model Patent Jury Instructions for the District Court of the Northern District of California, §§ 5.3 & 5.4; Federal Circuit Bar Association Model Patent Jury Instructions 12.3.1 (2002); American Intellectual Property Law Association Model Patent Jury Instructions 12.4 (2005); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156-58 (6th Cir. 1978); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1353-57 (Fed. Cir. 2001); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1550 (Fed. Cir. 1995) (*en banc*); *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Tec Air, Inc. v. Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1362 (Fed. Cir. 1999); *Oiness v. Walgreen Co.*, 88 F.3d 1025,1029 (Fed. Cir. 1996); *King Instruments Corp. v. Perego*, 65 F.3d 941, 952-53 (Fed. Cir. 1995); *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 971 (Fed. Cir. 2000); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1417-18 (Fed. Cir. 1996); *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571 (Fed. Cir. 1996); *SmithKline Diagnostics, Inc. v. Helena Labs.*, *Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964); *Ferguson Beauregard/Logic Controls v. Mega Sys., L.L.C.*, 350 F.3d 1327, 1345-46 (Fed. Cir. 2003); *Ryco, Inc. v. Ag-Bag Corp.*, 857 F.2d 1418, 1428 (Fed. Cir.

1988); *King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 863-64 (Fed. Cir. 1985);

*Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 21 (Fed. Cir. 1984);

*Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1365 (Fed. Cir. 1984);

*Central Soya Co. v. Geo A Hormel & Co.*, 723 F.2d 1573, 1578-79 (Fed. Cir. 1983);

*Yarway Corp. v. Eur-Control USA, Inc.*, 775 F.2d 268, 275 (Fed. Cir. 1985); *BIC Leisure*

*Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214 (Fed. Cir. 1993).

4.4.2    LOST PROFITS – COLLATERAL SALES

In this case, McKesson contends that the patented product is ordinarily sold along with a product called ClaimReview.  To recover lost profits on sales of ClaimReview, McKesson must prove two things.  First, McKesson must show that it is more likely than not that McKesson would have sold ClaimReview but for the infringement.  Second, the collateral product and the patented product together must be analogous to components of a single assembly or parts of a complete machine, or they must constitute a functional unit.

Sources:  *See* American Intellectual Property Law Association Model Patent Jury Instructions 12.11 (2005); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549-1551 (Fed. Cir. 1995); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d 649, 656 (Fed. Cir. 1985); *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 22-23 (Fed. Cir. 1984); Model Patent Jury Instructions for the District Court of the Northern District of California 5.4; *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1157-58 (6th Cir. 1978).

4.5    REASONABLE ROYALTY AS A MEASURE OF DAMAGES

In this case, McKesson alternatively seeks damages in the amount of a reasonable royalty for the accused products Facets, ClaimFacts, and QicLink.  A royalty is an amount of money that someone pays a patent owner to be able to make, use, or sell the patented invention.

A reasonable royalty is the minimum permissible measure of damages set by patent law.  Accordingly, you may award damages in excess of a reasonable royalty if you find that the facts so warrant, but you may not award less than a reasonable royalty.

A reasonable royalty in this case is the amount of money that represents the value of the claimed invention to the parties and represents fair compensation for use of the claimed invention.  One of the factors in determining the value of the claimed invention is the royalty that would be agreed to in a hypothetical arms-length negotiation between McKesson and TriZetto, with both operating under the assumption that the negotiated patent is valid, enforceable, and is being infringed by the accused products.

In determining a reasonable royalty, you should place yourself in October 1993, the period of time during which the hypothetical arms-length negotiation would have occurred.

In the hypothetical arm's-length negotiation, you must assume that both parties are willing participants.  You must assume that the person negotiating on behalf of TriZetto was willing to take a license and would have known that the asserted claims 1-6 and 8-16 of the '164 patent were valid, enforceable and infringed by TriZetto.  You must also assume that McKesson would have been willing to grant a license.  Finally, you

36

must assume that both McKesson and TriZetto knew all pertinent information at the time of the hypothetical negotiation.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for TriZetto's use and sale of the patented invention, including the opinion testimony of experts.

Sources:  *See IMX*, ("Reasonable Royalty as a Measure of Damages"); Delaware Patent Jury Instructions 6.10; 35 U.S.C. § 284; *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1568 (Fed. Cir. 1984); *Bio-Rad Labs. V. Nicolet Instrument Corp.*, 739 F.2d 604, 617 (Fed. Cir. 1984); *Trio Process Corp. v. L. Golstein's Sons, Inc.*, 533 F.2d 126, 129 (3d Cir. 1976); *Paper Converting Machine v. Magna-Graphics*, 745 F.2d 11, 21 (Fed. Cir. 1984); ABA's Section of Patent, Trademark and Copyright Law.

### 4.5.1    FACTORS FOR DETERMINING REASONABLE ROYALTY

In determining the amount of a reasonable royalty, some of the factors that should be considered are:

1.    The royalties received by McKesson for the licensing of others under the '164 patent;

2.    The rates paid by TriZetto for the use of other patents comparable to the '164 patent;

3.    The nature and scope of the license, as exclusive or nonexclusive, or as restricted or non-restricted in terms of territory;

4.    McKesson's established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

5.    The commercial relationship between McKesson and TriZetto, such as whether they are competitors in the same territory in the same line of business, or whether they are inventors or promoters;

6.    The effect of selling the patented specialty in promoting sales of other products of TriZetto, the existing value of the invention to McKesson as a generator of sales of its non-patented items, and the extent of such derivative or convoyed sales;

7.    The duration of the patent and the length of the licenses;

8.    The established profitability of the product made under the patent, its commercial success and its current popularity;

9.    The utility and advantages of McKesson's patented inventions over the old modes or devices, if any, that had been used for working out similar results;

38

10.    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by McKesson, and the benefits to those who have used the invention;

11.    The extent to which TriZetto has made use of the invention, and any evidence that shows the value of that use;

12.    The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or comparable inventions;

13.    The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by TriZetto;

14.    The opinion testimony of qualified experts; and

15.    Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

Sources:  *See IMX*, ("Factors for Determining Reasonable Royalty"); Delaware Patent Jury Instructions 6.11; *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1568 (Fed. Cir. 1984); *Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); ABA's Section of Patent, Trademark and Copyright Law.

4.6   TOTAL DAMAGES

After making your findings concerning lost profits damages or alternatively reasonable royalty damages, you should arrive at a total damages amount to award to McKesson.  This amount should include the amount of lost profits damages McKesson has proved.  It also should include the reasonable royalty damages for that portion of the infringement for which McKesson did not prove lost profits damages.

Source:  *See Tristrata Tech., Inc. v. Mary Kay, Inc.*, C.A. No. 01-127-JJF, D.I. 292 (D. Del. Mar. 9, 2005).

5.      **WILLFUL INFRINGEMENT**

5.1    WILLFUL INFRINGEMENT--GENERALLY

McKesson contends that TriZetto has willfully infringed the asserted claims 1-6 and 8-16 of the '164 patent.  When a person becomes aware that a patent may have relevance to his or her activities, that person has a duty to exercise due care and investigate whether or not his or her activities or proposed activities infringe any valid, enforceable claim of the patent.  If that person did not do this and is found to have infringed the patent claims, then the infringement was willful.

If you find, based on the evidence and the law as I have explained it, that TriZetto has directly or indirectly infringed at least one claim of the '164 patent, you must then decide whether or not McKesson has proven by clear and convincing evidence that TriZetto's infringement was willful.

Willful infringement is established when McKesson has proven two things.  First, that TriZetto was aware of the '164 patent.  Second, that TriZetto had no reasonable, good faith basis for concluding that it did not infringe the '164 patent or that the '164 patent was invalid or unenforceable.

To determine whether TriZetto acted with a reasonable, good faith belief or whether TriZetto willfully infringed the '164 patent, you should consider the totality of the circumstances and all the facts, including the following factors:

(1)      Whether TriZetto, in designing the accused products Facets, ClaimFacts, and QicLink intentionally copied the design or ideas of McKesson that are covered by the '164 patent;

41

(2)    Whether TriZetto, when it learned of the '164 patent, investigated the scope of the patent and formed a good-faith belief that the patent was invalid, unenforceable, or not infringed;

(3)    Whether TriZetto exercised due care to avoid infringing the '164 patent by, for example, trying to "design around" the patent; and

(4)    Whether TriZetto relied on competent legal advice.

Sources:  *See* Federal Circuit Bar Association Model Patent Jury Instructions 9 (2002); 35 U.S.C. § 284 (Supp. 2001); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999); *Georgia-Pacific Corp. v. United States Gypsum Co.*, 195 F.3d 1322, 1334 (Fed. Cir. 1999); *Johns Hopkins Univ. v. Cellpro*, 152 F.3d 1342, 1363 (Fed. Cir. 1998); *Comark Comm., Inc. v. Harris Corp.*, 156 F.3d 1182, 1191 (Fed. Cir. 1998); *SRI Int '1, Inc. v. Advanced Tech. Labs.*, 127 F.3d 1462, 1465 (Fed. Cir. 1997); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1259-60 (Fed. Cir. 1997); *Nat '1 Presto Indus. v. W: Bend Co.*, 76 F.3d 1185, 1192-93 (Fed. Cir. 1996); *Stryker Corp. v. Intermedics Orthopedics Inc.*, 96 F.3d 1409, 1414 (Fed. Cir. 1996); *Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 792 (Fed. Cir. 1995); *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 180 (Fed. Cir. 1994); *Westvaco Corp. v. Int '1 Paper Co.*, 991 F.2d 735, 745 (Fed. Cir. 1993); *Minn. Mining & Mfg. v. Johnson and Johnson Orthopedics, Inc.*, 976 F.2d 1559, 1580 (Fed. Cir. 1992); *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 944 (Fed. Cir. 1992); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-30 (Fed. Cir. 1992); *Studiengesellschaft Kohle v. Dart Indus., Inc.*, 862 F.2d 1564, 1579 (Fed. Cir. 1988); *Underwater Devices, Inc. v. Morrison-Knudsen, Co.*, 717 F.2d 1380, 1390 (Fed. Cir. 1983); American Intellectual Property Law Association Model Patent

42

Jury Instructions 13 (2005); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1347 (Fed. Cir. 2004) (en banc); *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1571 (Fed. Cir. 1996); *In re Hayes Microcomputer Prods., Inc.*, 982 F.2d 1527, 1543 (Fed. Cir. 1992); *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 944 (Fed. Cir. 1992); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510-11 (Fed. Cir. 1990); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1581 (Fed. Cir. 1989); *Ryco, Inc. v. Ag-Bag Corp.*, 857 F.2d 1418, 1428 (Fed. Cir. 1988).

5.2    WILLFUL INFRINGEMENT--OPINION OF COUNSEL

In this case, TriZetto is asserting reliance on the advice of legal counsel as part of its defense to willfulness.  In evaluating the competence of the legal advice and TriZetto's reliance on that advice, you should consider such factors as when TriZetto obtained the advice, the quality of the information TriZetto provided to its lawyers, the competence of the lawyers' opinion, the reason or motive for obtaining the advice, and whether TriZetto relied upon the advice.  Advice is competent if it was based on a reasonable examination of the facts and law relating to validity, enforceability, and/or infringement issues, consistent with the standards and practices generally followed by competent lawyers.

Sources:  *See* Federal Circuit Bar Association Model Patent Jury Instructions 9 (2002); 35 U.S.C. § 284 (Supp. 2001); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999); *Georgia-Pacific Corp. v. United States Gypsum Co.*, 195 F.3d 1322,1334 (Fed. Cir. 1999); *Johns Hopkins Univ. v. Cellpro*, 152 F.3d 1342, 1363 (Fed. Cir. 1998); *Comark Comm., Inc. v. Harris Corp.*, 156 F.3d 1 182, 1 191 (Fed. Cir. 1998); *SRI Int '1, Inc. v. Advanced Tech. Labs.,* 127 F.3d 1462, 1465 (Fed. Cir. 1997); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1259-60 (Fed. Cir. 1997); *Nut '1 Presto Indus. v. W. Bend Co.*, 76 F.3d 1185, 1192-93 (Fed. Cir. 1996); *Stryker Corp. v. Intermedics Orthopedics Inc.*, 96 F.3d 1409, 141 4 (Fed. Cir. 1996); *Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 792 (Fed. Cir. 1995); *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 180 (Fed. Cir. 1994); *Westvaco Corp. v. Int'1 Paper Co.*, 991 F.2d 735, 745 (Fed. Cir. 1993); *Minnesota Mining & Mfg. v. Johnson and Johnson Orthopedics, Inc.*, 976 F.2d 1559, 1580 (Fed. Cir. 1992); *Ortho Pharm. Corp. v.*

*Smith*, 959 F.2d 936, 944 (Fed. Cir. 1992); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-

30 (Fed. Cir. 1992); *Studiengesellschaft Kohle v. Dart Indus., Inc.*, 862 F.2d 1564, 1579

(Fed. Cir. 1988); *Underwater Devices, Inc. v. Morrison-Knudsen, Co.*, 717 F.2d 1380,

1390 (Fed. Cir. 1983); *Electro Medical Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d

1048, 1056 (Fed. Cir. 1994); *Rolls-Royce Ltd. v. GTE Valeron Corp.*, 800 F.2d 1101,

1109 (Fed. Cir. 1986); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*,

383 F.3d 1337, 1347 (Fed. Cir. 2004) (en banc); *Golden Blount, Inc. v. Robert H.*

*Peterson Co.*, No. 04-1609, 05-1141, 05-1202, 2006 WL 335607, at *12 (Fed. Cir.

Feb. 15, 2006).

5.2.1    WILLFUL INFRINGEMENT--OPINION OF COUNSEL
BASED ON INCOMPLETE INFORMATION

In evaluating TriZetto's reliance on the advice of a lawyer, you should consider the relevance and quality of the information TriZetto provided to the lawyer.  If the lawyer's opinion was based on incomplete or insufficient information, TriZetto's reliance on that opinion cannot establish that TriZetto acted with a reasonable good faith belief.

Sources:  *See Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1191 (Fed. Cir. 1998); *nCUBE Corp. v. Seachange Int'l, Inc.*, 436 F.3d 1317, 1324 (Fed. Cir. 2006).

### 5.2.2    WILLFUL INFRINGEMENT--RELEVANCE OF OPINION OF COUNSEL

Patent law provides that "the test of willful infringement is whether, under all the circumstances, a reasonable person would prudently conduct himself with any confidence that a court might hold the patent invalid or not infringed."  The defense of laches is an equitable defense which, if successful, may prevent the patent holder from recovering damages incurred before the lawsuit was filed.  However, the defense of laches does not affect whether a patent is invalid, unenforceable, or not infringed.

As such, in evaluating TriZetto's reliance on the advice of legal counsel, an opinion concerning the issue of laches cannot provide a defense to willful infringement.

Sources:  *See State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1581 (Fed. Cir. 1989); *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1555 (Fed. Cir. 1996); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1039-41 (Fed. Cir. 1992).

47