# EXHIBIT 4

## McKESSON'S STATEMENT OF DISPUTED ISSUES OF LAW
## THAT REMAIN TO BE LITIGATED

McKesson identifies the following disputed issues of law that remain to be litigated in the jury trial on infringement, damages and willfulness.  Because the Court has directed that TriZetto's equitable defenses be tried to the Court after the jury trial and because such bench trial has not yet been scheduled, McKesson reserves the right to identify disputed issues of law that remain to be litigated in said bench trial in accordance with the schedule to be set by the Court. To the extent that any issues of fact set forth in Exhibit 2 of the Joint Pretrial Order may be considered issues of law, McKesson hereby incorporates those portions of Exhibit 2 herein by reference.  McKesson also incorporates herein by reference its briefs in support of or in opposition to the pending motions for summary judgment, claim construction briefing and *Daubert* motions.

I.    ISSUES ON WHICH PLAINTIFF BEARS THE BURDEN OF PROOF

A.    Direct Infringement

35 U.S.C. § 271(a) states:

Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefore, infringes the patent.

"The patent document [] grants the patentee a right to exclude others. . . . The Supreme Court has likened patent claims to the description of real property in a deed 'which sets the bounds to the grant which it contains.'"  *Gen. Foods Corp. v. Studiengesellschaft Kohle mbH*, 972 F.2d 1272, 1274 (Fed. Cir. 1992) (citation omitted).  "[T]he patented invention is defined by

the claims." *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999).

"A claim in a patent provides the metes and bounds of the right which the patent confers on the

patentee to exclude others from making, using or selling the protected invention." *Id.* (quoting

*Corning Glass Works* v. *Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989)).

"With respect to . . . infringement . . . the claims define the patent owner's property rights

whereas infringement is the act of trespassing upon those rights." *Hoechst-Roussel Pharms., Inc.

v. Lehman*, 109 F.3d 756, 759 (Fed. Cir. 1997).

    "A patent is infringed if any claim is infringed, . . . for each claim is a separate statement

of the patented invention." *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1220 (Fed. Cir.

1995) (citation omitted), *cert. denied*, 520 U.S. 1115 (1997).

    "An accused product that 'imperfectly' or 'sometimes, but not always' embodies a

claimed element or method nonetheless infringes." *Stryker Corp. v. Davol, Inc.*, 75 F. Supp. 2d

741, 743 (W.D. Mich. 1999) (quoting *Bell Commc'n Research Inc. v. Vitalink Commc'n Corp.*,

55 F.3d 615, 622-23 (Fed. Cir. 1995)), *aff'd,* 234 F.3d 1252 (Fed. Cir. 2000); *see Paper

Converting Mach. Co. v. MagnaGraphics Corp.*, 745 F.2d 11, 20 (Fed. Cir. 1984) ("That the

machine was not operated in its optimum mode is inconsequential:  imperfect practice of an

invention does not avoid infringement."); *Shamrock Techs., Inc. v. Med. Sterilization, Inc.*, 903

F.2d 789, 792 (Fed. Cir. 1990) ("Inefficient infringement is still infringement.").

    An accused product infringes even if it does not always infringe when it is used.  *See

Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1089 (Fed. Cir. 1998) ("Even

assuming that Nu-Kote's video establishes that its cartridge will not infringe under a particular

set of controlled circumstances . . . this has little bearing on whether its cartridge will avoid

infringement under other foreseeable operating conditions."); *Sunrise Med. HHG, Inc. v. AirSep*

*Corp.*, 95 F. Supp. 2d 348, 444 n.741 (D. Del. 2000) ("The fact that an accused device that only infringes during certain times of operation nonetheless infringes has been long accepted."); *Intersprio USA, Inc. v. Figgie Int'l, Inc.*, 815 F. Supp. 1488, 1512 (D. Del. 1993) ("[I]t is of no moment that in certain modes of operation … the E-Z Flo may not operate in a way that would infringe the '145 patent.  It matters that the accused device operate in an infringing way at some time…."), *aff'd,* 18 F.3d 927 (Fed. Cir. 1994).

Additionally, when an accused product is a software, the accused product infringes if it includes the means for performing a recited function regardless of whether that means is activated or utilized in any way.  *Fantasy Sports Properties, Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002).

> Software is a set of instructions, known as code, that directs a computer to perform specified functions or operations.  Thus, the software underlying a computer program that presents a user with the ability to select among a number of different options must be written in such a way as to enable the computer to carry out the functions defined by those options when they are selected by the user.  Therefore, although a user must activate the functions programmed into a piece of software by selecting those options, the user is only activating means that are *already present in the underlying software*.  Otherwise, the user would be required to alter the code to enable the computer to carry out those functions.

*Id*. (emphasis in original).  *See also Padcom, Inc. v. Netmotion Wireless, Inc.*, Civ. No. 03-983-SLR, 2006 U.S. Dist. LEXIS 6549 (D. Del. Feb. 22, 2006).

"Infringement requires proof by a preponderance of the evidence."  *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999).  "To show infringement of a patent, a patentee must supply sufficient evidence to prove that the accused product or process contains, either literally or under the doctrine of equivalents, every limitation of the properly construed claim."  *Id.*

"Determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact."  *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1341 (Fed. Cir. 2001)

(citing *Bai v. L&L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998), *cert. denied*, 535 U.S. 906 (2002)).

       1.    <u>Literal Infringement</u>

       a.    <u>Claim Construction</u>

"A patent infringement analysis involves two steps:  claim construction and application of the construed claim to the accused process or product." *Middleton, Inc. v. Minnesota Mining & Mfg. Co.*, 311 F.3d 1384, 1387 (Fed. Cir. 2002).  The first step of the infringement analysis, claim construction, is a question of law. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (*en banc).*

       b.    <u>Comparing the Properly Construed Claims to the Accused Product</u>

"After claim construction, the next step in an infringement analysis is comparing the properly construed claims with the allegedly infringing devices.  This comparison is a question of fact." *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1369 (Fed. Cir. 2001) (citation omitted) (citing *Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352, 1360 (Fed. Cir. 2000)); *see also Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 974 (Fed. Cir. 1999) ("The second step of the infringement analysis, *i.e.,* comparing the properly construed claims to the device accused of infringing, is a question of fact.").

"An accused device cannot escape infringement by merely adding features, if it otherwise has adopted the basic features of the patent." *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1482 (Fed. Cir. 1984) (citation omitted), *cert. denied*, 469 U.S. 924 (1984).  Likewise, an accused method "does not avoid literally infringing a method claim … simply because it employs *additional* steps." *Dow Chem. Co. v. Sumitomo Chem. Co.*, 257 F.3d 1364, 1380 (Fed.

Cir. 2001) (emphasis in original) (citing *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1271 (Fed. Cir. 1986), *cert. denied*, 479 U.S. 1030 (1987)).

The asserted claims of the '164 patent use the phrase "comprising" or "comprises," which is open-ended. "The term 'compris[ing]' means that the claim … may include elements other than those explicitly recited in the claim." *Novo Nordisk A/S v. Eli Lilly & Co.*, 1999 WL 1094213, at *12 (D. Del. 1999); *see Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997) ("'Comprising' is a term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim.").

c.     Mean-Plus-Function

35 U.S.C. § 112 states:

An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

"An infringement analysis under section 112, paragraph 6, 'begins with determining whether the accused device or method performs an identical function to the one recited in the claim. . . . If the identical function is performed, the next step is to determine whether the accused device uses the same structure . . . found in the specification, or [its] equivalents.' . . . This issue is a question of fact." *Utah Med. Prods., Inc. v. Graphic Controls Corp.*, 350 F.3d 1376, 1383 (Fed. Cir. 2003) (citations omitted). "The specification must be read as a whole to determine the structure capable of performing the claimed function." *Budde v. Harley Davidson, Inc.*, 250 F.3d 1369, 1379 (Fed. Cir. 2001).

"In a means-plus-function claim in which the disclosed structure is a computer, or microprocessor, programmed to carry out an algorithm, the disclosed structure is not the general

purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm." *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1349 (Fed. Cir. 1999). However, "there would be no need for a disclosure of the specific program code if software were linked to the … function and one skilled in the art would know the kind of program to use." *Med. Instrumentation and Diagnostic Corp. ("MIDCO") v. Elekta, AB*, 344 F.3d 1205, 1214 (Fed. Cir. 2003). Also, if a structure corresponding to a claimed function is "commercially available" and therefore known to those skilled in the art, it need not be described in detail. *Budde*, 250 F.3d at 1382. The Federal Circuit has "been generous in finding something to be a corresponding structure when the specification contain[s] a generic reference to structure that would be known to those in the art and that structure was clearly associated with performance of the claimed function." *MIDCO*, 344 F.3d at 1213-1214 (citing various cases in which adequate structure was found).

### 2.  Infringement Under the Doctrine of Equivalents

"[A] product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997).

"[T]here is no basis for treating an infringing equivalent any differently than a device that infringes the express terms of the patent. Application of the doctrine of equivalents, therefore, is akin to determining literal infringement, and neither requires proof of intent." *Id.* at 35 (quoting *Union Paper-Bag Mach. Co. v. Murphy*, 97 U.S. 120, 125 (1878)). "Unimportant and insubstantial substitutes for certain elements could defeat the patent, and its value to inventors could be destroyed by simple acts of copying. For this reason … [t]he scope of a patent is not

limited to its literal terms but instead embraces all equivalents to the claims described." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 122 S. Ct. 1831, 1837 (2002); *see also Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1316 (Fed. Cir. 1999) ("The second step of an infringement analysis requires that the patentee prove that the accused device embodies every limitation in the claim, either literally, or by a substantial equivalent.") (citing *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1578 (Fed. Cir. 1993)).

"Infringement under the doctrine of equivalents is an equitable doctrine devised for 'situations where there is no literal infringement but [where] liability is nevertheless appropriate to prevent what is in essence a pirating of the patentee's invention.'" *Insta-Foam Prods., Inc. v. Universal Foam Sys., Inc.*, 906 F.2d 698, 702 (Fed. Cir. 1990) (quoting *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 870 (Fed. Cir. 1985)). "The doctrine of equivalents is an equitable doctrine designed to prevent parties from realizing the benefits of another's patent by designing around the patent's literal language." *BOC Health Care, Inc. v. Nellcor, Inc.,* 892 F. Supp. 598, 604 (D. Del. 1995), *aff'd*, 98 F.3d 1357 (Fed. Cir. 1996). "Infringement under the doctrine of equivalents may be found where those limitations of a claim not found exactly in the accused device are met equivalently." *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1568 (Fed. Cir. 1996).

Means-plus-function limitations also may be infringed under the doctrine of equivalents. *See WMS Gaming*, 184 F.3d at 1353 (affirming finding of infringement under doctrine of equivalents of claim that included means-plus-function limitations because the district court did not err in finding that the function and structure of the accused device were equivalent to those of the asserted claim). Thus, even if the accused device does not perform a function identical to the function recited in the asserted claim, the accused device may still infringe if the differences

between the functions are insubstantial and the accused device possesses the same or equivalent corresponding structure. *See id.*

The "essential inquiry" in determining infringement under the doctrine of equivalents is: "Does the accused product or process contain elements identical or equivalent to each claimed element of the patented invention?" *Warner-Jenkinson*, 520 U.S. at 40. "An element in the accused product is equivalent to a claim limitation if the differences between the two are 'insubstantial' to one of ordinary skill in the art." *Eagle Comtronics, Inc. v. Arrow Commc'n Labs., Inc.*, 305 F.3d 1303, 1315 (Fed. Cir. 2002), *cert. denied,* 123 S. Ct. 995 (2003). It is well-established that knowledge in the art that one element is interchangeable with another is highly persuasive objective evidence of equivalence. *See Warner-Jenkinson*, 520 U.S. at 35-37; *Sofamor Danek Group, Inc. v. DePuy-Motech, Inc.*, 74 F.3d 1216, 1222 (Fed. Cir. 1996) ("This court commends, for instance, evidence that persons reasonably skilled in the art would have known of the interchangeability of an ingredient not contained in the patent with one that was.").

"Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Warener-Henkinson*, 520 U.S. at 29. In applying the "all elements rule" to determine infringement under the doctrine of equivalents, it is appropriate to identify "the role played by each element in the context of the specific patent claim." *Id*. at 40. This analysis "will thus inform the inquiry as to whether a substitute element matches the function, way, and result of the claimed element, or whether the substitute element plays a role substantially different from the claimed element." *Id.*

An accused method must contain every claim element, but "not necessarily in a corresponding component." *Corning Glass Works*, 868 F.2d at 1259. "A patentee is, for

example, free to frame the issue of equivalency, if it chooses, as equivalency to a combination of

limitations." *Id.* at 1259 n.6 (citation omitted).  Courts have held that "[o]ne-to-one

correspondence of components is not required, and elements or steps may be combined without

ipso facto loss of equivalency." *Ethicon EndoSurgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d

1309, 1320 (Fed. Cir. 1998) (quoting *Sun Studs, Inc. v. ATA Equip. Leasing, Inc.*, 872 F.2d 978,

989 (Fed. Cir. 1989), *overruled on other grounds by A.C. Aukerman Co. v. R.L. Chaides Constr.*

*Co.*, 960 F.2d 1020 (Fed. Cir. 1992)).

   B.  <u>Indirect Infringement</u>

  "Although not direct infringement under [35 U.S.C.] § 271(a), a party's acts in

connection with selling equipment may, however, constitute active inducement of

infringement … under 35 U.S.C. §§ 271(b) and (c)." *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770,

774 (Fed. Cir. 1993).  35 U.S.C. § 271(b) provides that "whoever actively induces infringement

of a patent shall be liable as an infringer."  Additionally, 35 U.S.C. § 271(c) provides:

> Whoever sells a component of a patented machine, manufacture, combination or
> composition, or a material or apparatus for use in practicing a patented process,
> constituting a material part of the invention, knowing the same to be especially
> made or especially adapted for use in an infringement of such patent, and not a
> staple article or commodity of commerce suitable for substantial noninfringing
> use, shall be liable as a contributory infringer.

  To prevail under a theory of indirect infringement, the plaintiff "must first prove that the

defendant['s] actions led to direct infringement of" the patent-in-suit.  *Dynacore Holdings Corp.*

*v. U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004).

   1.  <u>Inducement of Infringement</u>

  "The Patent Act imposes indirect infringement liability on a party who actively induces

others to directly infringe a patent." *MOBA, B.V., v. Diamond Automation, Inc.*, 325 F.3d 1306,

1318 (Fed. Cir. 2003).  "Although § 271(b) does not use the word 'knowingly,' [the Federal

Circuit] has uniformly imposed a knowledge requirement. . . . '[P]roof of actual intent to cause *the acts* which constitute the infringement is a necessary prerequisite to finding active inducement' under § 271(b)." *Id.* (citation omitted; emphasis added). "While proof of intent is necessary, direct evidence is not required; rather circumstantial evidence may suffice." *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) (citation omitted). "A crucial element of induced infringement is that the inducer must have actual or constructive knowledge of the patent." *Insituform Techs., Inc. v. Cat Contr., Inc.*, 161 F.3d 688, 695 (Fed. Cir. 1998).

        2.    <u>Contributory Infringement</u>

"Liability for contributory infringement includes one who 'sells within the United States . . . a component of a patented machine . . . knowing the same to be especially made for or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.'" *Serrano v. Telular Corp.*, 111 F.3d 1578, 1583 (Fed. Cir. 1997) (citation omitted). "There can be no contributory infringement without direct infringement." *Id.* (citation omitted).

To prevail under a theory of contributory infringement, the plaintiff "must show that the alleged contributory infringer knew that the combination for which its components were especially made was both patented and infringing." *Preemption Devices, Inc. v. Minnesota Min. & Mfg. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986) (citation omitted). "Section 271(c), *supra*, also requires a showing that a component especially made or adapted for use in the patented combination is not a staple article suitable for substantial non-infringing use." *Id.* (citation omitted).

C.    <u>Damages</u>

"The statutory instruction for awarding damages for patent infringement is that the award

must be 'adequate to compensate for the infringement.'" *Del Mar Avionics, Inc. v. Quinton*

*Instrument Co.*, 836 F.2d 1320, 1326 (Fed. Cir. 1987).  35 U.S.C. § 284 provides the foundation

for damages awards in cases of patent infringement, stating:

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

> When the damages are not found by a jury, the court shall assess them.  In either event the court may increase the damages up to three times the amount found or assessed….

> The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances.

Further, in discussing the statutory standard for determining compensatory damages in patent

cases, the Supreme Court stated:

> The question to be asked in determining damages is "how much had the Patent Holder . . . suffered by the infringement.  And that question [is] primarily: had the Infringer not infringed, what would the Patentee Holder. . . have made?"  . . . Thus, to determine the damages that may be recovered from Aro here, we must ask how much CTR suffered by Aro's infringement--how much it would have made if Aro had not infringed.

*Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964).

35 U.S.C. § 284 "imposes no limitation on the types of harm resulting from infringement

that the statute will redress.  The section's broad language awards damages for any injury as long

as it resulted from the infringement." *King Instruments Corp. v. Perego*, 65 F.3d 941, 947 (Fed.

Cir. 1995).  This is a result of Congress seeking "to ensure that the patent owner would in fact

receive full compensation for 'any damages' he suffered as a result of the infringement." *Id*. at

948 (quoting *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654-55 (1983)).  A damages

award shall be "in no event less than a reasonable royalty." This sets the floor below which damages award may not fall. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544 (Fed. Cir. 1995).

In essence, the patentee should be restored to the financial position it would have occupied *but for* the infringement. *See Aro Mfg.*, 377 U.S. at 507; *see also Del Mar Avionics*, 836 F.2d at 1326-28. "[T]he balance between full compensation … and the reasonable limits of liability encompassed by general principles of law can best be viewed in terms of reasonable, objective foreseeability." *Rite-Hite*, 56 F.3d at 1546. "[T]he methodology of assessing and computing damages is committed to the sound discretion of the district court." *King Instruments*, 65 F.3d at 952 (citation omitted).

While the amount a prevailing party may recover is a finding of fact on which the plaintiff bears the burden of proof by a preponderance of the evidence, "certain subsidiary decisions underlying a damage theory are discretionary with the court, such as, the choice of an accounting method for determining profit margin, or the methodology for arriving at a reasonable royalty." *Smithkline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991).

Here, McKesson must prove the amount of damages by a preponderance of the evidence. *Id.* To establish a fact by preponderance of the evidence means to prove that something is more likely than not. When the amount of damages cannot be ascertained with precision, any doubts regarding the amount must be resolved against the infringer, here TriZetto. *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1118 (Fed. Cir. 1996); *Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1482 (Fed. Cir. 1990), *op. clarified by* 22 U.S.P.Q.2d 1303 (Fed. Cir. 1991); *Del Mar Avionics*, 836 F.2d at 1327. Any adverse consequences resulting from TriZetto's failure to keep or produce accurate financial records of revenue derived from its infringement rests on TriZetto.

*Oiness v. Walgreen Co.*, 88 F.3d 1025, 1030 (Fed. Cir. 1996); *Hartness Int'l, Inc. v. Simplimatic Eng'g Co.*, 819 F.2d 1100, 1111 (Fed. Cir. 1987); *Beatrice Foods Co. v. New England Printing & Lithographing Co.*, 899 F.2d 1171, 1175-76 (Fed. Cir. 1990).

        1.    <u>Lost Profits</u>

    "To be entitled to damages beyond a reasonable or established royalty, [the patent owner] must prove his actual damages, that is, his entitlement to lost profits." *Water Techs.*, 850 F.2d at 671.

> A patent owner may recover as a measure of damages the lost profits caused by the illicit competition of an infringer. The owner must establish a factual basis for causation, i.e., that but for the infringer's improper acts, he would have made greater sales, charged higher prices or incurred lower expenses. Causation need be proved only as a reasonable probability. An inference that the patent owner lost sales equal in quantity to those actually made by the infringer may arise if the two were the only suppliers of a unique and demanded product and the owner had or could have acquired the capacity to meet the full demand.

*Id.* (quoting 5 D. Chisum, *Patents* § 20.03[1], at 20-72 (1984)).

    A lost profits award is appropriate if the patent owner proves that it would have made sales on its patented product 'but for' the alleged infringer's infringement, i.e., that causation existed. *Id.* "While damages are to be proved . . . a patent owner need not demonstrate causation with certainty. A reasonable probability that the patent owner would have made some or all of the sales is sufficient." *Id. See also Rite-Hite*, 56 F.3d at 1546 ("We believe that under § 284 of the patent statute, the balance between full compensation, which is the meaning that the Supreme Court has attributed to the statute, and the reasonable limits of liability encompassed by general principles of law can best be viewed in terms of reasonable, objective foreseeability.").

    "[T]he 'but for' inquiry, thus, requires a reconstruction of the market as it would have been absent the infringing product, to determine which sales the patentee would have made." *ISCO Int'l, Inc. v. Conductus, Inc.*, No. Civ. A. 01-487 GMS, 2003 WL 280223, at *1 (D. Del.

Feb. 10, 2003).  "[A] fair and accurate reconstruction of the 'but for' market also must take into account, where relevant, alternative actions the infringer foreseeably would have undertaken had he not infringed."  *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341, 1350-51 (Fed. Cir. 1999).

A proper lost profits analysis must analyze *"likely outcomes* with infringement factored out of the economic picture."  *Id*. at 1350 (emphasis added).  The Federal Circuit explained that "[t]o prevent the hypothetical from lapsing into pure speculation, this court requires sound economic proof of the nature of the market and likely outcomes with infringement factored out of the economic picture."  *Id*; *see also id*. ("The 'but for' inquiry therefore requires a reconstruction of the market, as it would have developed absent the infringing product, to determine what the patentee 'would … have made.'") (citation omitted); *id*. at 1355 ("Whether and to what extent American Maize's alleged alternative prevents Grain Processing from showing lost sales of Maltrin 100 depends not only on whether and when the alternative was available, but also on whether and to what extent it was acceptable as a substitute in the relevant market.").

The Federal Circuit in other cases has similarly emphasized the importance of analyzing the reasonable foreseeability of what would have occurred but for the infringement.  *See Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1553 (Fed. Cir. 1997) (holding that availability of lost profits damages depends on whether there is "a reasonable probability that [the patentee] would have made the sales 'but for' the infringement"); *Rite-Hite*, 56 F.3d at 1546 (holding that determination of appropriate damages under 35 U.S.C. § 284 "can best be viewed in terms of reasonable, objective foreseeability").

In determining lost profits "[w]here a patent owner maintains that its lost sales equal in quantity to the infringing sales, [the Federal Circuit's] precedent has approved generally the four-part test set forth in *Panduit Corp. v. Stahlin Brothers Fibre Works, Inc.*, 575 F.2d 1152 . . . ." *Water Techs.*, 850 F.2d at 671-72.  The elements of the four-part *Panduit* test are:

> (1) demand for the patented product,
>
> (2) absence of acceptable noninfringing substitutes,
>
> (3) his manufacturing and marketing capability to exploit the demand, and
>
> (4) the amount of the profit he would have made."

*Id*. at 672.

"The *Panduit* test in part (2) embodies the idea . . . that lost profits for all sales made by an infringer are easier to obtain where there are only two suppliers in the market, the infringer and the patent owner." *Id*.  Factors that point toward an absence of acceptable noninfringing substitutes include (1) failure of the infringer to design its own device, (2) an election to infringe despite having expended only minimal sums on design when notified of infringement, (3) willful infringement, (4) failure to successfully market other allegedly acceptable designs, (5) violation of an injunction against infringement, and (6) withdrawal from the business after enforcement of such an injunction. *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 900 (Fed. Cir. 1986).

However, "the 'acceptable substitute' element, though it is to be considered, must be viewed of limited influence where the infringer knowingly made and sold the patented product for years while ignoring the 'substitute.'" *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1418 n.3 (Fed. Cir. 1996) (quoting *Panduit*, 575 F.2d at 1162 n.9).

The *Panduit* test is an acceptable but not exclusive test for determining "but for" causation. *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993).

For example, the "but-for" inquiry may be based on the market share approach endorsed by the Federal Circuit in *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577-78 (Fed. Cir. 1989). Under the market share approach, if "acceptable non-infringing substitutes" were available from suppliers who would have made only some, but not all, of the sales that were made by the defendant, then the patent owner may be entitled to lost profits on a portion of the infringing sales. *State Indus.*, 883 F.2d at 1578.

2.    <u>Reasonable Royalty</u>

35 U.S.C. § 284 provides that any damages award for patent infringement will be adequate to compensate for the infringement, "but in no event less than a reasonable royalty for use made of the invention by the infringer." 35 U.S.C. § 284; *see also Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1575 (Fed. Cir. 1988) (stating that "the royalty arrived at must be reasonable under all the circumstances; i.e., it must be at least a close approximation of what would be 'adequate to compensate' for the 'use made of the invention by the infringer.'") (citation omitted), *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004).

The reasonable royalty "is not necessarily the measure of damages, but 'is merely the floor below which damages shall not fall.'" *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1568 (Fed. Cir. 1984) (quoting *Bandag Inc. v. Gerrard Tire Co., Inc.*, 704 F.2d 1578, 1583 (Fed. Cir. 1983)); *Fromson*, 853 F.2d at 1574 ("When the evidence is inadequate to establish actual or nearly actual damages, a court may under Section 284 employ a 'reasonable royalty' as the floor below which a damage award may not fall."). "The amount of a reasonable royalty depends on the facts of each case, as they are shown to the Court." *See Trans-World Mfg.*

*Corp. v. Al Nyman & Sons, Inc.*, 633 F. Supp. 1047, 1055 (D. Del. 1986) (citing *Panduit*, 575 F.2d at 1159).

"The royalty may be based upon an established royalty, if there is one, or if not, upon the supposed result of hypothetical negotiations between the plaintiff and defendant." *Rite-Hite*, 56 F.3d at 1554. When an established royalty does not exist, it is permissible for a court to determine an appropriate reasonable royalty based on the "hypothetical negotiations between willing licensor and willing licensee." *Fromson*, 853 F.2d at 1574. In making this determination, it is necessary to "return to the date when the infringement began." *Wang Labs.*, 993 F.2d at 870 (quoting *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1079 (Fed. Cir. 1983)). Facts and events that occurred subsequent to the date of the hypothetical negotiations, however, are often important in determining a proper reasonable royalty. The reasonable royalty analysis "permits and often requires a court to look to events and facts that occurred [after the hypothetical negotiation] and that could not have been known to or predicted by the hypothesized negotiators." *Fromson*, 853 F.2d at 1575; *see also Mobil Oil Corp. v. Amoco Chems. Corp.*, 915 F. Supp. 1333, 1353 (D. Del. 1994) (citing *Fromson*, 853 F.2d at 1575-76, and stating that "the Court is permitted to look forward to events and facts that occurred after the infringement began.").

Fifteen non-exclusive factors set forth in *Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) help to guide the analysis:

1.    The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

2.    The rates paid by the licensee for the use of other patents comparable to the patent in suit.

3.    The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4.    The licensor's established policy and marketing program to maintain his patent monopoly by not licensing other to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5.    The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

6.    The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

7.    The duration of the patent and the term of the license.

8.    The established profitability of the product made under the patent; its commercial success; and its current popularity.

9.    The utility and advantages of the patent property over the old models or devices, if any, that had been used for working out similar results.

10.    The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11.    The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

12.     The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13.     The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14.     The opinion testimony of qualified experts.

15.     Any other economic factor that a normally prudent businessman would, under similar circumstances, take into consideration in negotiating the hypothetical license.

However, the analytical approach of determining a reasonable royalty based on constructing a hypothetical negotiation between a "willing licensor" and "willing licensee" should not be taken literally.  Judge Markey, in *Panduit*, 575 F.2d 1152 at 1158-59, made clear that this view would be in error:

> The setting of a reasonable royalty after infringement cannot be treated, as it was here, as the equivalent of ordinary royalty negotiations among truly "willing" patent owners and licensees.  That view would constitute a pretense that the infringement never happened.  It would also make an election to infringe a handy means for competitors to impose a "compulsory license" policy upon every patent owner. . . .

> On the date a patent issues, a competitor which made no investment in research and development of the invention, has four options: (1) it can make and sell a non-infringing substitute product, and refrain from making, using, or selling a product incorporating the patented invention; (2) it can make and sell the patented product, if the patent owner be willing, negotiating a license and paying a reasonable (negotiated) royalty; (3) it can simply take the invention, running the risk that litigation will ensue and that the patent will be found valid and infringed. . . . Determination of a reasonable royalty, after election of option (3) cannot, without injustice, be treated as though the infringer had elected option (2) in the first place.

The Federal Circuit has followed Judge Markey's reasoning.  For example, in remanding the case for a re-determination of damages in *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1563 (Fed. Cir. 1983), the Federal Circuit offered the following suggestion to the lower court:

> As a final matter we would add that the trial court may award an amount of damages greater than a reasonable royalty so that the award is "adequate to compensate for the infringement."  As stated in *Panduit Corp. v. Stahlin Bros. Fiber Works, supra*, 575 F.2d at 1158, 197 U.S.P.Q. at 731:
>
> "The infringer would have nothing to lose, and everything to gain if he could count on paying only the normal, routine royalty non-infringers might have paid. As said by this court in another context, the infringer would be in a 'heads-I-win, tails-you-lose' position."
>
> Such an increase, which may be stated by the trial court either as a reasonable royalty for an infringer (as in *Panduit*) or as an increase in the reasonable royalty determined by the court, is left to its sound discretion.

The Federal Circuit, discussing the methodology of the hypothetical negotiation, recognized that seeing a reasonable royalty based purely on the outcome of the hypothetical negotiations at the time infringement began would abandon entirely the statutory standard of damages "adequate to compensate" for the infringement.  The court explained that information in the hypothetical negotiation may be incomplete, and may therefore lead to less than fair compensation for the patentee.  *Fromson*, 853 F.2d at 1575-76 (quoting *Sinclair Ref. Co. v. Jenkins Petroleum Co.*, 289 U.S. 689, 698-99 (1933)).

The Federal Circuit has warned that failing to distinguish between royalties payable by infringers as opposed to non-infringers "risks creation of the perception that blatant, blind appropriation of inventions [where lost profits are not recoverable] is the profitable can't-lose course."  *Fromson*, 853 F.2d at 1575.  Courts have thus recognized the "need to distinguish between royalties payable by infringers and non-infringers."  *Id.* at 1575 n.11.

D.     <u>Willful Infringement</u>

35 U.S.C. § 284 "authorizes the court to 'increase the damages up to three times the

amount found or assessed."  "Although various criteria have been stated for determining 'willful

infringement,' which is the term designating behavior for which enhanced damages may be

assessed, the primary consideration is whether the infringer, acting in good faith and upon due

inquiry, had sound reason to believe that it had the right to act in the manner that was found to be

infringing."  *SRI Int'l, Inc. v. Advanced Tech. Labs, Inc.*, 127 F.3d 1462, 1464-65 (Fed. Cir.

1997).

> The law of willful infringement does not search for minimally tolerable behavior,
> but required prudent, and ethical, legal and commercial actions.  Thus precedent
> displays the consistent theme of whether a prudent person would have had sound
> reason to believe that the patent was not infringed or was invalid or unenforceable,
> and would be so held if litigated.

*Id.*; *see also Am. Med. Sys., Inc. v. Med. Eng'g Corp.,* 6 F.3d 1523, 1530 (Fed. Cir. 1993) (stating

that willful infringement "is a factual determination to be made after consideration of the totality

of the circumstances").

Willfulness, a question of fact, must be established by clear and convincing evidence.

*See SRI*, 127 F.3d at 1465.  The decision to enhance damages, and the amount of any

enhancement, however, is within the discretion of the Court.  *See* 35 U.S.C. § 284.  Various

factors are considered in determining whether infringement was willful.  *See SRI*, 127 F.3d at

1465.

A person having actual knowledge of another's patent rights has "an affirmative duty of

due care to avoid infringement."  *nCUBE Corp. v. Seachange Int'l, Inc.*, 436 F.3d 1317, 1324

(Fed. Cir. 2006).  Factors considered in determining whether one has fulfilled that obligation or

acted willfully include what effort, if any, the accused infringer made to assess infringement or

invalidity of the patent, the competence of any opinion of counsel the infringer may have

obtained, and the timing and reason for obtaining such opinion. *See Golden Blount, Inc. v. Robert H. Peterson Co.*, -- F.3d --, 2006 WL 335607, *12 (Fed. Cir. 2006).

With regard to reliance on legal advice, courts consider "the nature of the advice, the thoroughness and competence of the legal opinion presented, and its objectivity." *Id.* For example, the court should consider whether counsel's opinion is premised upon the best information known to the alleged infringer because, "[o]therwise, the opinion is likely to be inaccurate and will be ineffective to indicate the defendant's good faith intent." *Comark Commc'n, Inc. v. Harris Corp.*, 156 F.3d 1182, 1191 (Fed. Cir. 1998). The court should also consider "whether material information is intentionally withheld, or the best information is intentionally not made available to counsel during the preparation of the opinion." *Id.*; see *nCUBE*, 436 F.3d at 1324. This is because such an "opinion can no longer serve its prophylactic purpose of negating a finding of willful infringement." *Comark Commc'n*, 156 F.3d at 1191.

Also, in evaluating the alleged infringer's reliance on counsel's advice, the court should consider whether such reliance on that advice establishes that the alleged infringer acted with a reasonable good faith belief. *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1581 (Fed. Cir. 1989). For example, laches is a partial defense which, if successful, prevents the patent holder from recovering damages incurred prior to the commencement of the suit. *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1039-41 (Fed. Cir. 1992). Even if laches is established, it does not provide a complete defense to the alleged infringer. *Id.* at 1040. As such, the alleged infringer's reliance on counsel's opinion concerning laches does not establish that the alleged infringer acted with a reasonable good faith belief.

In addition to the defense of advice of counsel, courts will also examine "the closeness or complexity of the legal and factual questions presented" and "commercial factors that may have

affected the infringer's actions." *Lucent Tech., Inc. v. Newbridge Networks Corp.*, 168 F. Supp. 2d 269, 275 (D. Del. 2001). Courts will also consider whether the accused infringer copied the patented technology or attempted to design around the patent. *Id.* The defendant's size and financial condition, the duration or timing of its infringing activity, its motivation for harm, and whether it attempted to conceal its activities can also be examined by the court. *See Read v. Portec*, 970 F.2d 816, 828 (Fed. Cir. 1992).

II.    OTHER RELIEF

A.    Injunction

The patent statute provides that courts "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems just." 35 U.S.C. § 283. "It is the general rule that an injunction will issue when infringement has been adjudged, absent a sound reason for denying it." *Richardson v. Suzuki Motors Co., Ltd.*, 868 F.2d 1226, 1247 (Fed. Cir.), *cert. denied*, 493 U.S. 853 (1989). A permanent injunction after trial is not property denied on the ground that such an injunction would put the infringer out of business, since "[o]ne who elects to build a business on a patent found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.11 (Fed. Cir. 1986).

B.    Prejudgment Interest

35 U.S.C. § 284 states:

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with the ***interest and cost as fixed by the court.***

(emphasis added).

The Supreme Court has held that "prejudgment interest should ordinarily be awarded where necessary to afford the plaintiff full compensation for infringement." *See General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654 (1983). It is awarded to the patent owner for the purpose of making him whole, not only for the value of the actual damage suffered but also for the loss of any possible use of the money between the time of the infringement and the date of the judgment." *Underwater Devices, Inc. v. Morrison-Knudsen Co., Inc.*, 717 F.2d 1380, 1389 (Fed. Cir. 1983). The Court also held that, under § 284, "the interest shall be 'fixed by the court', and in our view it leaves the court some discretion in awarding prejudgment interest." *See General Motors*, 4612 U.S. at 656-57.

In reversing a district court's denial of prejudgment interest, the Federal Circuit in *Laitraim Corp. v. Intralox, Inc.*, 785 F.2d 292 (Fed. Cir. 1986), applied the Supreme Court's holding in *General Motors* and "concluded that prejudgment interest should *ordinarily be awarded* affording patent owners complete compensation." *Id*. at 295 (emphasis added); *see also Paper Converting Machine Co. v. MagnaGraphics Corp.*, 745 F.2d 11, 23 (Fed. Cir. 1984) ("Prejudgment interest should ordinarily be awarded absent some justification for withholding such award.").

With regard to enhanced damages awards under § 284, prejudgment interest is to be applied "to the primary or actual damage portion and not to the punitive or enhanced portion." *See Underwater Devices*, 717 F.2d at 1389. Further, in *Dragan v. L.D. Caulk Co.*, 12 U.S.P.Q.2d 1081 (D. Del. 1989), the Court held that the interest should be calculated on the basis of a reasonable royalty on yearly sales, stating:

> Prejudgment interest is ordered by the court, in its discretion, only to restore the recipient of damages to the position it would have been in had a reasonable royalty been paid for the use of the patented invention.

*Id.* at 1091.  Moreover, determination of the interest rate is within the discretion of the district court.  *See Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1144 (Fed. Cir. 1991) ("The ascertainment of the prejudgment interest rate is within the sound discretion of the district court."); *see also Mobil Oil Corp. v. Amoco Chemicals Corp.*, 915 F. Supp. 1333, 1372 (D. Del. 1994) ("[A]s between . . . the infringer, and . . . the patentee, [the infringer] must bear any risk of uncertainty as to damages, including any risk regarding the appropriate rate for prejudgment interest."); *Joy Tech., Inc. v. Flakt, Inc.*, 954 F. Supp. 796, 808 (D. Del. 1996) ("The trial court has discretion both in deciding whether to award interest and in setting the rate.")

C.    Attorney's Fees

35 U.S.C. § 285 provides:  "The court in exceptional cases may award reasonable attorney fees to the prevailing party."  The award of such fees is within the discretion of the trial court, and is to be exercised upon a specific finding of exceptional circumstances.  *See L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1128 (Fed. Cir. 1993) ("The trial judge is in the best position to weigh the factors 'that may contribute to a fair allocation of the burdens of litigation as between winner and loser,' . . . in view of the entirety of the litigation circumstances." (citations omitted)).  Willful or deliberate infringement by the accused infringer is an example of these exceptional circumstances.  *See Id.* ("Although the district court found that this case was not exceptional, our determination that [defendant's] patent infringement was willful has changed the factual premises. . . . We remand to the district court for redetermination of the issue of attorney fees."); *see also Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1567 (Fed. Cir. 1989) (stating that willful infringement may be a sufficient basis for finding a case "exceptional" and thus awarding attorney fees to the prevailing patent owner).