IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>THE TRIZETTO GROUP, INC.<br><br>        Defendant. | Civil Action No. 04-1258-SLR |

**EXHIBIT 13**

**THE TRIZETTO GROUP INC.'S STATEMENT OF
MISCELLANEOUS ISSUES**

      TriZetto[1] submits the following evidentiary issues to be decided by the Court prior to trial in this matter.

      1.     <u>McKesson Has Not Complied With The Special Discovery Master's Orders And Has Not Cooperated During The Pre-Trial Process</u>.  On September 8, 2005, this Court ordered that challenges to assertions of privilege shall be referred to a Special Discovery Master.  D.I. 84.  Judge Louis C. Bechtle was thereafter appointed.  Upon submissions made by the parties, the Special Discovery Master has ordered McKesson on several occasions to produce documents that it wrongfully withheld and to produce certain deponents for redeposition where improper instructions of privilege had been given.  *See, e.g.*, SDM Order No. 4 (12/16/05).  McKesson sought reconsideration of the Special Discovery Master's rulings, but the Special Discovery Master has maintained that

---

[1]    References herein to "TriZetto" are to The TriZetto Group, Inc., as well as its predecessors, Erisco and RIMS, unless otherwise noted.  References herein to "McKesson" are to McKesson Information Solutions, LLC, as well as its predecessors, HBOC, GMIS and HPR, unless otherwise noted.

certain documents must be produced. TriZetto has repeatedly requested production of these documents, but McKesson refuses to produce them.

The Special Discovery Master also ordered McKesson to review its privilege log to identify and produce documents that are not privileged in light of his orders. The Special Discovery Master reviewed a representative sample of the privilege log documents and concluded that most were not privileged. McKesson has produced only a few documents in response to this order, continued to withhold the production of other documents, and has made no attempt to certify that it has, in fact, completed a comprehensive review of its privilege log based on the Special Discovery Master's rulings. In light of the Special Discovery Master's findings on the small representative sample, it is likely that many other documents on McKesson's privilege log are not privileged and should have been produced. Accordingly, TriZetto believes that McKesson has not made a good faith effort to comply with the Special Discovery Master's orders and has continued to withhold documents based on improper privilege claims.

TriZetto has made diligent efforts to coordinate with McKesson to prepare the Joint Pretrial Order and prepare for trial generally, but McKesson has not cooperated in many respects causing prejudice to TriZetto and hampering its ability to fully prepare for trial. Specifically, (1) McKesson has refused to exchange or provide the names of witnesses that it intends to call live at trial in this matter; (2) McKesson has refused to provide or include deposition designations in the Joint Pretrial Order; and (3) McKesson refused to exchange its list of trial exhibits until three days before the Joint Pretrial Order was due to be filed, leaving TriZetto with little time to review and lodge appropriate objections. McKesson's actions do not comport with the requirements of L.R. 16.4(b).

2.   References To The 1994 *GMIS v. HPR* Action. In 1994, McKesson's predecessor in interest, HPR, was sued by GMIS, which sought declaratory relief that the

'164 patent was not infringed by *GMIS's* products and was invalid. *GMIS v. HPR*, No. 94-576 (E.D. Pa. 1994). That action settled in January 1995.

McKesson argues that GMIS's payment of $7 million to settle the *GMIS* litigation is evidence that: (1) the '164 Patent is valid; (2) TriZetto's accused products infringe the '164 Patent; and/or (3) the '164 Patent is economically valuable. McKesson should not be permitted to make these arguments or suggestions to the jury. At the time the *GMIS* litigation was settled, the court had determined that validity and infringement were triable issues. In any event, the result of the *GMIS* litigation is irrelevant to the issues here. Pursuant to Fed. R. Evid. 401 & 402, evidence of the *GMIS* litigation is irrelevant and inadmissible. *See, e.g., Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1193 (9th Cir. 2002) (holding other litigation "had no relevance"); *Kinan v. City of Brockton*, 876 F.2d 1029, 1037 (1st Cir. 1989) (excluding evidence of other cases, explaining, "both were settled prior to verdict. The cases were decided on the basis of negotiations, not findings of fact."). Even if the *GMIS* litigation were somehow relevant, it is nevertheless subject to exclusion under the balancing test of Fed. R. Evid. 403. *See Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1566-70 (Fed. Cir. 1993) (excluding evidence of other patent litigation).

3. <u>McKesson's Infringement Experts Cannot Go Beyond Their Expert Reports</u>. Dr. Mark Musen and Dr. Margaret Johnson should be precluded from offering any opinions at trial that were not disclosed in their expert reports. This includes the issue of infringement under the doctrine of equivalents, which neither expert examined (discussed in Issue 4, below), as well as the subject of structural infringement in connection with the means-plus-function elements. Drs. Musen and Johnson did not perform an appropriate structural comparison in their expert reports – they did not identify corresponding structure from the patent specification for each of the means-plus-function elements and compare it to the accused products. At trial, their testimony should be limited to what they set out in their reports. Specifically, they should not be

3

permitted to opine at trial on the additional structure provided by McKesson to the Court at the summary judgment hearing (D.I. 274), nor offer opinions regarding structure identified in the Court's claim construction order that the experts did not previously examine in their reports.

Moreover, Dr. Johnson should be precluded from opining that TriZetto's products have functionality identical to the means-plus-function elements of the asserted claims. In her expert report, Dr. Johnson opined only that the TriZetto's programs had "*similar* functionality to that described in the patent." D.I. 157, Exh. I at 5 (emphasis added). She did not opine about the specific functions in the patent claims, nor did she offer an opinion that the functions in the TriZetto programs were *identical* to those described in the patent claims. Instead, Dr. Johnson created her own "algorithm" that only partially captured the functionality described in the claims, and compared her algorithm to the TriZetto products. She never directly compared the patent claims to the accused products. D.I. 179, Exh. B (Johnson Depo. 70:15-17: "Q. Okay. But there isn't a claim-to-product comparison specifically anywhere in your report, is there? A. No.").

Opinions that are not included in expert reports and/or opinions that contradict those that are contained in an expert report are not admissible at trial. The Court has the authority to limit or exclude expert testimony that has not been previously disclosed or is defective. *See MKS Instruments, Inc. v. Advanced Energy Industries, Inc.*, 325 F. Supp. 2d 471, 474 (D. Del. 2004) (granting motion to exclude expert testimony for failure to timely provide evidence to support claim of infringement in an expert report); *Microstrategy, Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1355-56 (Fed. Cir. 2005) ("[t]he District Court has the responsibility to exclude an expert opinion that overlooks factors that render the testimony unreliable and/or speculative"). Accordingly, Drs. Musen and Johnson should be limited to the opinions expressly stated in their reports.

4.  <u>McKesson Should Be Precluded From Relying On The Doctrine of Equivalents Theory</u>. McKesson's experts did not offer any doctrine of equivalents

analysis in their experts reports or during their expert depositions. Dr. Musen stated that "this report addresses TriZetto's little infringement of the '164 Patent . . . I reserve the right to supplement my analyses and opinions to address infringement under the doctrine of equivalents once the Court renders its claim construction rulings or as additional information comes to my attention." D.I. 157, Exh. B (Musen Report, p. 17, ¶ 48). Dr. Musen confirmed at his deposition that he had not performed any infringement analysis under the doctrine of equivalents. *Id.* at Exh. H (Musen Depo, 186:1-8, 294:19-295:8). Dr. Johnson's expert report likewise says nothing whatsoever about the doctrine of equivalents and contains no equivalents analysis. *Id.* at Exh. I (Johnson Report). By failing to include an equivalents analysis in either of its expert reports, McKesson has waived the right to offer such a theory at trial in this matter. *See Praxair, Inc. v. ATMI, Inc.*, C.A. No. 03-1158-SLR, 2003 U.S. Dist. LEXIS 26794, at *17 (D. Del. 2003) (excluding expert testimony as a sanction for failure to comply with the Court's Scheduling Order regarding close of expert discovery); *MKS Instruments, Inc. v. Advanced Energy Industries, Inc.*, 325 F. Supp. 2d 471, 474 (D. Del. 2004) (granting motion to exclude expert testimony because of failure to timely provide evidence to support claim of infringement under the doctrine of equivalents in an expert report). TriZetto requests that this Court exclude evidence, testimony or argument proffered by McKesson that TriZetto has infringed the '164 Patent under the doctrine of equivalents.

     5.    <u>The "Entire Market Value" Theory Of Damages Cannot Be Applied In This Case</u>. On December 20, 2005, TriZetto moved to exclude the testimony of Michael J. Wagner ("Wagner"), an expert designated by McKesson on the subject of patent damages. D.I. 176. In the event the Court does not grant the motion in its entirety, TriZetto submits that Wagner should not be permitted to utilize the entire market value rule at trial in opining on McKesson's alleged damages.

     Under the entire market value rule, patentees may claim damages for unpatented products sold with the patented invention if three strict standards are met: (1) the

5

patented feature must form the basis for customer demand for the unpatented products; (2) the patentee must reasonably anticipate that it would be able to sell the unpatented products along with the patented item; and (3) the patented and the unpatented items must be functionally related.  *TWN Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 901 (Fed. Cir. 1986).  Furthermore, courts have held that a critical fact in applying the entire market value rule is that the infringing product derives substantially all, if not its entire, value from use of the patented component.  *W. Elec. Co. v. Stewart-Warner Corp.*, 631 F.2d 333, 341 (4th Cir. 1980).  Here, none of these factors are met.

For example, Mr. Wagner has made no showing that TriZetto would not be able to sell its other products and services without offering clinical editing software.  D.I. 176, 227.  In fact, Mr. Wagner has done no analysis or independent research to determine the importance of clinical editing to TriZetto's overall claims processing product line.  D.I. 177, Exh. C, 135:24-25, 136:1-5, 137:22-138:13.  In addition, it is undisputed that McKesson does not even sell the other TriZetto products.

Furthermore, Wagner's entire damages model hinges on the notion that TriZetto's customers would have bought all of TriZetto's other products and services but would have purchased the clinical editing software from McKesson.  D.I. 176, 227.  Obviously, this means TriZetto can sell its other products and services without offering clinical editing software.

Therefore, any opinions by Mr. Wagner that are based on the entire market rule should be excluded.

6.   "Change In Management" And "Waiting Until It Made Economic Sense" Are Not Valid Excuses For Laches.  McKesson has argued that valid excuses exist to toll or excuse McKesson's eleven year delay in filing this lawsuit.  Two of those excuses are not legally recognized and should not be presented to the jury.

First, McKesson contends that a change in management at HPR (due to its acquisition by HBOC and the subsequent acquisition of HBOC by McKesson) serves as

6

an excuse for its delay in asserting the '164 patent against TriZetto. D.I. 161. No such excuse has ever been recognized by the Federal Circuit. D.I. 212. Moreover, this excuse is completely contrary to the public policy underlying the laches defense. *See Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1273 (Fed. Cir. 1999) (noting that "[l]aches is firmly rooted in the equitable principle that courts will not assist one who has slept on his rights"). In fact, McKesson's excuse runs contrary to established Federal Circuit case law that *requires* the transferee of a patent to accept the consequences of the dilatory conduct of any transferors. *Eastman Kodak Co. v. The Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1559 (noting that a patentee cannot avoid the consequences of his laches by transferring the patent), *overruled on other grounds by Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448 (Fed. Cir. 1998).

Second, McKesson suggests that there is an excuse that allows a patentee to delay filing suit "until litigation makes clear economic sense." D.I. 208. No Federal Circuit case makes such a blanket pronouncement, and analogous circuit court cases have flatly rejected a patentee's reliance on such an excuse. *See Baker Mfg. Co. v. Whitewater Mfg. Co.*, 430 F.2d 1008, 1014-15 (7th Cir. 1970) (rejecting patentee's excuse that it wished to wait until defendant's business had grown and litigation would be worthwhile). Likewise, district courts have rejected the proposition that a delay is excused if the extent of the alleged infringement is too minimal to justify suit. *Northern Telecom, Inc. v. Datapoint Corp.*, 23 U.S.P.Q.2d 1881 (N.D. Tex. 1992); *see also Odetics, Inc. v. Storage Tech. Corp.*, 919 F. Supp. 911, 922 (E.D. Va. 1996) (rejecting patentee's excuse that "it had no reason to investigate [the accused infringer's product] because the two companies were operating and selling their respective products in different competitive markets"), *aff'd in part, rev'd in part*, 185 F.3d 1259 (Fed. Cir. 1999). Furthermore, the policy underlying laches rejects this as a potential excuse. A patentee cannot wait to sue for many years while a small infringing company becomes a large company. *See Odetics,*

*Inc.*, 185 F.3d at 1273 (noting that if a patentee sleeps on his rights, he authorizes the public to infringe a patented invention during the laches period).

Accordingly, McKesson should be precluded from offering any evidence or argument of these excuses to rebut the presumption of laches that applies in this case.

7.  <u>McKesson Should Not Be Permitted To Rely On Incomplete Documents</u>. During discovery, McKesson produced a January 24, 1989 letter from Marcia J. Radosevich, HPR's President, to Faith Glover, Director of Health Information at Erisco (TriZetto's predecessor). That letter references "enclos[ed] materials which describe HPR and our expert system, CodeReview(tm), which corrects physician claim coding errors." McKesson apparently contends that Erisco copied the information from the enclosures referenced in the letter when it developed its accused software products. McKesson could not find or produce the enclosures referenced in the January 24, 1989 letter. In a letter dated December 20, 2005, McKesson stated that it "ha[s] not been able to identify the precise materials forwarded by Erisco to Ms. Radosevich." Furthermore, at her deposition, Ms. Radosevich did not identify the materials she allegedly forwarded to Erisco with the January 24, 1989 letter. McKesson has provided no explanation as to where the enclosures are or where the letter was found. Accordingly, McKesson should not be permitted to present any evidence or argument that TriZetto (or its predecessor) copied the information from the enclosures.

8.  <u>McKesson Cannot Argue That TriZetto Failed To Get An Opinion Of Counsel</u>. Under the Federal Circuit's *en banc Knorr-Bremse* opinion, an adverse inference may not be drawn from the absence of an opinion of counsel. *Knorr-Bremse Systeme F.N. GMBH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004). Specifically, the Federal Circuit has held that "the failure to obtain an exculpatory opinion of counsel shall no longer provide an adverse inference or evidentiary presumption that such an opinion would have been unfavorable." *Id.* at 1346. Rather, a determination of willfulness is to be made based on a "totality

8

of the circumstances." *Id.* at 1342. Accordingly, McKesson should be precluded from arguing that TriZetto's failure to obtain or its delay in obtaining an opinion of counsel creates an inference that TriZetto's infringement was willful.

        9.      <u>McKesson Should Not Be Permitted To Argue That TriZetto Has Admitted Infringement</u>. In numerous filings, McKesson has argued repeatedly that TriZetto's witnesses "have all admitted infringement." *See, e.g.,* D.I. 165 at 11. McKesson claims that through the deposition testimony of lay witnesses who were neither qualified to offer opinions on infringement nor offered on the ultimate issue of infringement, have nevertheless "admitted infringement." Pursuant to Fed. R. Evid. 701, witnesses not testifying as experts are only permitted to offer opinions which are "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Given the technical nature of patents in general and the '164 patent in particular, the task of analyzing infringement is relegated to designated experts and not lay witnesses. *See Centricut, LLC v. Esab Group, Inc.*, 390 F.3d 1361, 1370 (Fed. Cir. 2004).

        Specifically, most of the witnesses upon whom McKesson relies in advancing this argument had never read the '164 patent prior to their depositions, and were given no opportunity at their depositions to read any part of the patent beyond the claims. These witnesses obviously could not opine on the subject of infringement, given that an infringement analysis requires construing the claims in light of the patent specification. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) ("[i]mportantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification"). None of the witnesses were patent lawyers or other skilled artisans specializing in patent prosecution. None of the witnesses had the Court's claim construction to assist them in interpreting the '164 patent claims and many of them were confused by particular terms in the claims. In most instances, McKesson's counsel

9

supplied the lay witnesses with its own interpretation of the claim terms, which is not necessarily how the Court will interpret those terms.

TriZetto has not admitted infringement. None of its experts have admitted infringement. Indeed, TriZetto has continuously argued that none of the claims of the '164 Patent are infringed by the TriZetto products, filing a summary judgment motion of non-infringement. D.I. 152, 153. Accordingly, any argument at trial by McKesson that TriZetto has admitted infringement is contrary to the facts, the law and is being offered solely to confuse and mislead the jury. Fed. R. Evid. 403.

10.     Post-Report, Post-Deposition Changes By McKesson's Damage Expert Should Be Precluded. TriZetto took the deposition of McKesson's expert witness on damages, Michael J. Wagner, on Monday, November 21, 2005. On Saturday, November 19 at 1:54 a.m., McKesson's counsel sent to TriZetto's counsel an email containing a list of changes to many of Wagner's schedules to his expert report and a list of 12 items that Wagner had intended to include in the various volumes to his report, but had not included. Wagner stated at his deposition that even the materials that McKesson provided on November 19 had errors and that he would need to make further revisions. TriZetto noted at the conclusion of Wagner's depositions that these new materials were untimely and TriZetto did not have sufficient time to review them. As a result, TriZetto did not close Wagner's deposition and requested that McKesson make Wagner available for a subsequent deposition on the new materials. McKesson refused to make Wagner available for a subsequent deposition.

Pursuant to the Scheduling Order entered in this case, the deadline for McKesson to submit Wagner's expert report was September 30, 2005. As a result, McKesson should not be permitted to present evidence of any of the materials that were submitted to TriZetto on November 19 – a month and a half after the September 30 deadline. Fed. R. Civ. P. 16(f). At the very least, McKesson should not be permitted to present testimony from Wagner based on work or analyses he performed *after* his November 21 deposition.

10

11.     Authorized Sales Cannot Be Included as Damages.  TriZetto respectfully requests that this Court issue an order precluding McKesson from seeking damages based on RIMS' or TriZetto's sales of Auto-Audit, a software product developed and sold by a company named Solucient.  Prior to being acquired by TriZetto in 2000, RIMS sold Auto-Audit to its customers, and TriZetto has continued to do so after it acquired RIMS.  Those sales were, however, authorized by the patent owner and, thus, do not constitute infringement.  *Intel Corp., v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566 (Fed. Cir. 1993).  McKesson, however, is including those sales in its damages demand.

On July 1, 2002, McKesson and Solucient entered into a License Agreement for the '164 Patent, which covers all versions of Auto-Audit, Auto-Query, and any other software product of Solucient, which would constitute an infringement of the '164 Patent.  License Agreement, ¶ 2.02.  The License Agreement specifically provides Solucient with authority to use "third parties, distributors, or re-sellers" to "offer, license, or lease" the Licensed Products to end users.  License Agreement, ¶ 3.00.

TriZetto was an authorized distributor of Auto-Audit for Solucient.  As a result, its sales of Auto-Audit, from July 2002 forward, were not infringing, and McKesson cannot get damages based on these sales.  *See Intel*, 995 F.2d at 1568 (holding that the law is "well settled" that "an authorized sale of a patented product . . . manufactured by a licensee acting within the scope of its license" is beyond the reach of the patent); *Unidisco v. Schattner*, 824 F.2d 965 (Fed. Cir. 1987) (holding that resale by a distributor could not infringe the patent if the distributor purchased the product from an authorized licensee).

McKesson also is not entitled to damages for sales of Auto-Audit made prior to July 2002.  In paragraph 13.00 of the License Agreement, McKesson released and discharged Solucient and Solucient's re-sellers, distributors and customers from any liability for sales of Auto-Audit prior to the effective date of the agreement.  License Agreement, ¶ 13.00.  Thus, pursuant to its own contract, McKesson is prohibited from

11

seeking damages for sales of Auto-Audit by RIMS or TriZetto prior to 2002. *See CIVIS-DDI, LLC v. CELLCO P'ship*, 2004 U.S. Dist. LEXIS 24319 (N.D. Ill. Nov. 30, 2004) (holding that a claim of infringement is unavailing when the defendant is a member of a class previously released from liability in a settlement agreement between the patent holder and another alleged infringer).

12.     The Hypothetical Negotiation Does Not Involve McKesson And TriZetto. At the time the '164 patent issued in October 1993 – the date of the alleged first infringement – neither TriZetto nor McKesson were on the scene. McKesson had no interest in the '164 patent, and neither McKesson nor TriZetto was offering clinical editing software. It is undisputed that had a negotiation occurred in October 1993 the parties would have been HPR (McKesson's predecessor) and Erisco (TriZetto's predecessor). Nevertheless, McKesson's expert Michael Wagner attempts to recreate a hypothetical negotiation between McKesson and TriZetto.

By changing the parties at the bargaining table, Mr. Wagner is able to skew the *Georgia-Pacific* factors in favor of a higher royalty rate. But the Supreme Court has stated that the book of wisdom does not "charge the offender with elements of value non-existent at the time of his offense. *It is to bring out and expose to light the elements of value that were there from the beginning.*" *Sinclair Refining Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 698 (1933) (emphasis added). Although there is some disagreement among courts as to what evidence of subsequent events is admissible, one thing is certain: No court has ever held that the book of wisdom may be used to change the parties to the hypothetical negotiation. As a result, Mr. Wagner should not be permitted to testify about McKesson's alleged reasonable royalty damages based on an assumption that the parties to the hypothetical negotiation would have been TriZetto and McKesson.

13.     There Cannot Be Any Willful Infringement Before 2003. McKesson should be precluded from arguing that TriZetto willfully infringed the '164 patent prior to

12

2003. In accordance with Federal Circuit law, *actual notice* of another's patent rights is necessary to trigger the affirmative duty of care. *See Imonex Servs. Inc. v. W. H. Munzprufer Dietmar Trenner GmbH*, 408 F.3d 1374, 1377 (Fed. Cir. 2005) (*citing Rolls-Royce Ltd. v. GTE Valeron Corp.*, 800 F.2d 1101, 1109 (Fed. Cir. 1986)). Constructive notice is insufficient to trigger the duty of care. *See id.* (*citing Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998)). Accordingly, because it was not until 2003 that McKesson provided actual notice of its contention that the claim editing functions of TriZetto's products infringed the '164 patent, McKesson should be required to establish, by clear and convincing evidence, that TriZetto's conduct following this notice – as opposed to TriZetto's conduct in the ten years before McKesson or its predecessors provided notice – warrants a finding of willfulness.

        14.      <u>There Can Be No Damages For Any Infringement Before 2003</u>. Pursuant to 35 U.S.C. § 287(a), McKesson cannot get damages prior to either actual notice of infringement or constructive notice by way of McKesson's marking of its own patented product. *See* 35 U.S.C. § 287(a); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996). McKesson did not provide *actual* notice to TriZetto until October 2003. Prior to that time, McKesson did not mark its products with the number of the '164 patent. Specifically, McKesson's products do not contain the word "patent" or the abbreviation "pat," together with the number of the '164 patent. It is clear from the discovery produced (in response to specific requests concerning compliance with the marking statute) that none of McKesson's products were properly marked prior to 2003 with the '164 patent number. McKesson has produced no documents showing that their products were marked prior to 2003, let alone marked in a consistent and continuous manner. *See American Medical Sys. v. Medical Eng'g. Corp.*, 6 F.3d 1523, 1537 (Fed. Cir. 1993) ("We caution, however, that once marking has begun, it must be substantially consistent and continuous in order for the party to avail itself of the constructive notice provisions

13

of the statute").

40224215_4.DOC

14