IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civ. No. 04-1258-SLR<br>) |
| THE TRIZETTO GROUP, INC., | )<br>)<br>) |
| Defendant. | ) |

Thomas J. Allingham II, Esquire and Michael A. Barlow, Esquire of Skadden, Arps, Slate, Meagher & Flom LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Jeffery G. Randall, Esquire, David W. Hansen, Esquire, Michael C. Hendershot, Esquire and Jon V. Swenson, Esquire of Skadden, Arps, Slate, Meagher & Flom LLP, Palo Alto, California.

Jack B. Blumfeld, Esquire and Rodger D. Smith II, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware. Counsel for Defendant. Of Counsel: Jeffrey T. Thomas, Esquire, David A. Segal, Esquire and Michael A. Sitzman, Esquire of Gibson, Dunn & Crutcher LLP, Irvine, California.

MEMORANDUM OPINION

Dated: April 5, 2006
Wilmington, Delaware

*[signature]*
ROBINSON, Chief Judge

## I. INTRODUCTION

On September 13, 2004, McKesson Information Solutions LLC ("McKesson") filed this action against The TriZetto Group, Inc. ("TriZetto") for infringement of certain claims of United States Patent No. 5,253,164 ("the '164 patent"). (D.I. 1) The asserted claims are 1-6 and 8-16 of the '164 patent. Before the court are the parties' cross motions for summary judgment of laches and McKesson's summary judgment motion on TriZetto's equitable defenses. (D.I. 160, 163)

## II. Background

The parties differ on many of the facts, but the court sets out the facts that not disputed. The '164 patent describes the use of a computer system and method for analyzing medical service codes submitted on a medical claim to detect and correct errors or problems that may result in inappropriate payment. Correction of these errors is done through the use of a knowledge-based computer system that contains a database of medical service codes with relationships among those codes. (D.I. 165 at 6) The patent issued in October 1993 to McKesson's predecessor Health Payment Review, Inc. ("HPR") and takes priority from an application filed in September 1988. (D.I. 166 at 1-2) The type of software claimed is called clinical editing software and McKesson sells two clinical editing products, ClaimCheck and CodeReview. (D.I. 208 at 2)

Erisco Managed Care Technolgoies, Inc. ("Erisco") sold ClaimFacts, a complete medical claims processing solution and, in 1989, added a clinical editing component as part of its product. (D.I. 166 at 2)  Resource Information Management Systems, Inc. ("RIMS") also offered a competing medical claims processing system, the accused product QicLink. (D.I. 166 at 3)  Trizetto obtained Facets and ClaimFacts through its acquisition of ERISCO in October 2000 and QicLink through its acquisition of RIMS in December 2000. (D.I. 208 at 3)

In 1989, HPR offered to incorporate its clinical editing product into RIMS' claims processing product. (D.I. 166 at 3)  HPR also attempted to license its product to Erisco in 1989, but Erisco declined. (Id.)

On January 24, 1994, HPR issued a press release publicizing the issuance of the '164 patent. (D.I. 166 at 4)  On January 31, 1994, one of HPR's competitors, GMIS, Inc., sued HPR in a declaratory judgment action seeking a verdict that the '164 patent was invalid, not infringed and unenforceable. HPR counterclaimed on the issue of patent infringement. (D.I. 208 at 3)  During discovery, HPR employees testified that Erisco sold a competing clinical editing product incorporated into its claims processing system. (D.I. 166 at 4)  On the eve of trial, the parties settled for a payment by GMIS to HPR of $7,200,000 in return for a non-exclusive license to the '164 patent. (D.I. 208

2

at 3)

A year after settlement, HBO & Company ("HBOC") acquired GMIS and then, in 1997, HBOC acquired HPR and the rights to the '164 patent. (D.I. 166 at 4) Management changed as a result of this acquisition. (D.I. 208 at 5) In October of 1998, McKesson announced that it had entered into an agreement to acquire HBOC and the deal was completed in January 1999. (D.I. 208 at 5) Again, corporate restructuring resulted. (Id.) A year later, TriZetto acquired both Erisco and RIMS. (D.I. 166 at 5) In 2001, McKesson and TriZetto entered into discussions regarding a business relationship.

### III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper

Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

IV. **DISCUSSION**

The court denies the parties' motions for summary judgment because genuine issues of material fact exist. The issues of latches, equitable estoppel and waiver and acquiescence will be tried by the court, along with the issue of inequitable conduct.

A. **Laches**

Laches is defined as "the neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar." A.C. Aukerman Co. v.

R.L Chaides Const. Co., 960 F.2d 1020, 1028-29 (Fed. Cir. 1992) (en banc). For a defense of laches, the defendant has the burden of proving that: (1) the plaintiff delayed in filing suit for an unreasonable and inexcusable length of time after the plaintiff knew or reasonably should have known of its claim against the defendant; and (2) the defendant suffered material prejudice or injury as a result of the plaintiff's delay. Id. at 1028.

With regard to the first prong of unreasonable delay, "[t]he length of time which may be deemed unreasonable has no fixed boundaries but rather depends on the circumstances." Id. at 1032. In determining whether the plaintiff's delay in filing suit was unreasonable, the court must look to the period of time beginning when the plaintiff knew or reasonably should have known of the defendant's alleged infringing activity and ending when the plaintiff filed suit. The period does not begin, however, until the patent issues. Id. In addition, the court must consider and weigh any excuses offered by the plaintiff for its delay including, but not limited to: (1) other litigation; (2) negotiations with the accused; (3) possible poverty or illness under limited circumstances; (4) wartime conditions; (5) the extent of the alleged infringement; and (6) a dispute over the ownership of the asserted patent. Id. at 1033.

A presumption of unreasonable delay arises if the patentee delays filing suit for six years after actual or constructive

knowledge of the defendant's acts of alleged infringement. Id. at 1037. However, this presumption may be rebutted if the plaintiff is able to show sufficient evidence to generate a genuine issue of fact as to the existence of either one of the factual elements associated with the laches defense. Id. at 1038. If the presumption of laches is rebutted, the defense of laches is not eliminated. Rather, the defendant can still establish laches by establishing the elements for this defense based upon the totality of the evidence presented. Id. at 1038.

Turning to consider the second prong of material prejudice, the defendant can establish either evidentiary prejudice or economic prejudice. Id. Evidentiary prejudice may arise where the delay has curtailed the defendant's ability to present a full and fair defense on the merits due to the loss of evidence, the death of a witness, or the unreliability of memories. Id. Economic prejudice arises where a defendant suffers the loss of monetary investments or incurs damages which would have been prevented if the plaintiff had filed suit earlier. Id. In this regard, courts must look for a change in the economic position of the alleged infringer during the period of delay; courts cannot simply infer economic prejudice from the possibility of damages pursuant to a finding of liability for infringement. Id.

"The application of the defense of laches is committed to the sound discretion of the district court." Id. at 1032.

Because it is equitable in nature, "mechanical rules" do not govern its application. Id. at 1032. Instead, the court must consider all of the facts and circumstances of the case and weigh the equities of the parties. "The issue of laches concerns delay by one party and harm to another. Neither of these factors implicates the type of special considerations which typically trigger imposition of the clear and convincing standard." Consequently, the defendant must establish the elements for the laches defense by the preponderance of the evidence, consistent with the burden of proof in equitable laches and estoppel cases. Intuitive Surgical, Inc. v. Computer Motion, Inc., 2002 WL 31833867, *5 n.4 (D. Del. 2002). When laches is applied, the patentee may not recover any damages for the period of time prior to filing suit. Aukerman, 960 F.2d at 1028.

    TriZetto asserts that McKesson knew about TriZetto or its predecessors allegedly infringing activities and products since 1989. As a result, TriZetto argues that the time for the period of laches began once the patent issued on October 12, 1993. Because McKesson waited nearly eleven years to file suit, TriZetto contends that the presumption of laches arises. McKesson has raised a genuine issue of material fact of whether it knew or reasonably should have known of the alleged infringement from: business discussions regarding the purchase of CodeReview clinical editing product; knowledge that RIMS was a

vendor of claims processing software; and knowledge that Erisco sale of clinical editing functionality. The court finds a genuine issue of material fact regarding when McKesson knew or reasonably should have known about the alleged infringement.

The court also finds that McKesson has raised genuine issues of fact regarding whether an unreasonable delay can be shown due to McKesson's alleged excuses. McKesson has raised a genuine issue of material dispute regarding the excuses for delay in suit due to litigation,[1] negotiations,[2] change in management[3] and the economic appropriateness of suing Erisco.[4] Furthermore, McKesson raises a genuine issue of material fact regarding whether economic prejudice exists due to the alleged delay in filing

---

[1] McKesson has produced evidence that TriZetto knew of the suit between GMIS and HPR and expected to be sued after the GMIS suit. (D.I. 162, ex. 7 at 197)

[2] McKesson has produced evidence that McKesson and TriZetto commenced negotiations concerning the '164 patent in 2001 and the parties were negotiating a resolution to the patent dispute at least through 2003. (D.I. 162, ex. 7 at 70-71; ex. 10 at 39-40, 162-63)

[3] McKesson has produced evidence that the patentee underwent two substantial changes in management as a result of two significant mergers. (D.I. 162, ex. 14, 15, 16; D.I. 209, ex. A, ex. C, ex. D, ex. E, ex. O)

[4] McKesson has produced evidence as to whether it made clear economic sense for HPR to sue Erisco for infringement during the first several years following the issuance of the '164 patent. (D.I. 168, ex. 5 at 186; ex. 11; D.I. 209, ex. Q)

suit.[5]

The court similarly denies McKesson's motion for summary judgment of laches. TriZetto raises a genuine issue of material fact regarding when HPR knew or reasonably should have known about Erisco's allegedly infringing products.[6] TriZetto raises genuine issues of material fact regarding whether McKesson's excuses for delay in bringing suit were valid.[7] TriZetto also raises a genuine issue of material fact that it has been significantly prejudiced as a result of McKesson's purported

---

[5] McKesson has produced evidence that TriZetto would not have structured its purchase of Erisco differently had McKesson brought suit earlier or conducted business differently. (D.I. 209, ex. G at 220-21, 18-19; D.I. 162, ex. 7 at 193, 197; ex. 9 at 185; ex. 11 at 45-46, 62-63) McKesson has also raises a genuine issue of material fact regarding whether any evidentiary prejudice resulted from the purported delay. (D.I. 209, ex. T at 171-72; ex. I at 15-16)

[6] TriZetto produced evidence that HPR knew of Erisco's accused clinical editing software before the patent issued as evidenced from HPR's business plan and Erisco's open advertising. (D.I. 213, ex. U; ex. V; ex. W; ex. X; ex. Y)

[7] TriZetto raises a genuine issue of material fact regarding whether Erisco was put on adequate notice of HPR's intent to sue as a result of its earlier litigation. (D.I. 213, ex. F, ex. G) TriZetto raises a genuine issue of material fact regarding the past negotiations between the parties and that they were directed towards a joint marketing agreement and not an effort to settle a patent dispute regarding the '164 patent. (D.I. 213, ex. Z, ex. N, ex. Q, ex. O, ex. BB) TriZetto raises a genuine issue of material dispute regarding whether the changes in management in HPR excuse a delay in bringing suit because they were merely an excuse for dilatory conduct.

delay.[8]

## B. Equitable Estoppel

Equitable estoppel is neither limited to a particular factual situation nor subject to resolution by simple or hard and fast rules. Aukerman, 960 F.2d at 1041. In order to establish equitable estoppel, a defendant must show: (1) the patentee, through misleading words, conduct, or silence, led the alleged infringer to reasonably infer that the patentee did not intend to enforce its patent against the alleged infringer; (2) the alleged infringer relied on that conduct; and (3) due to its reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim. Id.

Misleading statements or conduct may include specific statements, action, inaction, or silence where there was an obligation to speak. Id. at 1042. The patentee's conduct must "support[] an inference that the patentee [does] not intend to press an infringement claim against the alleged infringer." Id. In order to have equitable estoppel, "the alleged infringer must have knowledge of the patentee and its patent and must reasonably infer that the patentee acquiesced to the allegedly infringing

---

[8]TriZetto produces evidence that its actions were based in large part on the fact that McKesson took no action with regard to its patent. (D.I. 169 at ¶¶ 8,9; D.I. 213, ex. EE at 27-28, ex F at 214-16; ex. GG) TriZetto also produces evidence that it has suffered evidentiary prejudice as a result of the purported delay. (D.I. 213, ex. KK, ex. LL, ex. MM, ex. NN, ex. F)

activity for some time." Winbond Elec. Corp. v. Int'l Trade Comm'n, 262 F.3d 1363, 1374 (Fed. Cir. 2001).[9]

"Reliance is not a requirement of laches but is essential to equitable estoppel." Aukerman, 960 F.2d at 1042. "To show reliance, the infringer must have had a relationship or communication with the plaintiff which lulls the infringer into a sense of security in going ahead with" his or her activity. Id. at 1043. "As with laches, [material] prejudice may be a change of economic position or loss of evidence." Id.

"Finally, the trial court must, even where the three elements of equitable estoppel are established, take into consideration any other evidence and facts respecting the equities of the parties in exercising its discretion and deciding whether to allow the defense of equitable estoppel to bar the suit." Id.

The court finds a genuine issue of material fact regarding whether McKesson's alleged silence as to the '164 patent was misleading, whether TriZetto relied on McKesson's conduct and

---

[9] In Aukerman, the patentee accused the defendant of infringing the patents in suit more than eight years before it initiated litigation. 960 F.2d at 1026-27. Thus, Aukerman's use of "or" in stating that a defendant relying on equitable estoppel must be aware of the "patentee and/or its patent" is dicta. The Federal Circuit later held that where an accused infringer admitted that it was unaware of the patent in suit, it could not assert an implied license through equitable estoppel. Winbond, 262 F.3d at 1374. The court concludes that in order to assert equitable estoppel, an accused infringer must have knowledge of the patentee and its patent.

whether TriZetto would suffer material prejudice if the suit were allowed to proceed. This is an equitable defense and the court is not inclined, when facts are at issue, to decide the merits on summary judgment.[10]

## V.    CONCLUSION

For the reasons set forth above, the court denies TriZetto's motion for summary judgment of latches and denies McKesson's motion for summary judgment on TriZetto's equitable defenses. An appropriate order shall issue.

---

[10]The theories of waiver and acquiescence require proof of the same or similar elements required by the estoppel defense. The motion for summary judgment is denied for these claims for the same reasons set out above.