IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE TRIZETTO GROUP, INC., )<br>)<br>Defendant. )<br>) | CIVIL ACTION NO. 04-1258-SLR |

## MCKESSON'S SUPPLEMENTAL PRETRIAL SUBMISSION REGARDING CLAIM CONSTRUCTION ISSUES

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
Jeremy D. Anderson (#4515)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff
McKesson Information Solutions LLC

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500

DATED: April 6, 2006

As discussed with the Court at the pretrial conference, two significant issues regarding the "predetermined database" and "means for determining" claim elements require additional and careful consideration by the Court.

**1. *Predetermined Database Construction*:** The Court's *Markman* Order interpreted the claim term "predetermined database" as "[a] set of decision-making rules that incorporate a medical code classification system and expert medical clinical judgment *and that are not programmed to be modified by the user*." The Court correctly recognized that the claimed database includes both a "set of decision-making rules that incorporate a medical code classification system and expert medical judgment" (such as those provided in Appendix B)[1] and a "set of relationships" specifying whether "particular medical service codes" are appropriate for payment when received together (construed separately by the Court as element 4 (D.I. 307 at 4)). *See* D.I. 307 at 3, n. 8 (quoting patent: "'The present invention uses a set of decision-making rules coupled to a knowledge base of facts and observations ....'"). Thus, while the Court correctly held that the individual relationships between particular codes in the database may be modified, its requirement that the general decision-making rules that implement those individual relationships "are not programmed to be modified by the user" contradicts the patent's express teachings.

In the Summary of Invention and throughout the description of the preferred embodiment, the '164 patent emphasizes that the database *should be modified* to update and refine the system:

- "There is included a knowledge base and a knowledge base interpreter which applies the knowledge base using the rules specified in the knowledge base interpreter. The process is *an ongoing process which can be updated* as new methods of inappropriate coding are discovered." '164 patent, at col. 3, ln. 32-37 (emphasis added).

- "... A history database 7 is provided *to update and refine the knowledge base interpreter 5 and the knowledge base 6* and to monitor savings associated with the recommendation." *Id.* at col. 4, ln. 64 - col. 5, ln. 3 (emphasis added).

---

[1] *See, e.g.,* '164 Patent col. 6, ll. 19-26 ("... codes ... to which will be applied one or more of the rules shown in summary form in Fig. 6 and more fully detailed in Appendix B.").

- "In step 39 the PROCESS database 17 is appended to the HISTORY database 40 for recordkeeping purposes and for future use as a means to study these 'case histories' and *refine, update and change the rules and the knowledge base interpreter 5*." *Id.* at col. 10, ln. 3-7 (emphasis added).

- "Since the invention resides in a programmed computer of the automatic programming category, the development of this HISTORY database 40 may lead to *the development of new rules and a growth and refinement of the knowledge base interpreter 5*." *Id.* at col. 10, ln. 55-60 (emphasis added).

Nowhere does the patent draw a distinction as to who can and cannot perform the desired modification of the database. The patent's silence as to who may modify or update the database does not approach the sort of clear and unambiguous disavowal of claim scope necessary to support the restriction imposed by the Court on this element. Nor does the fact that the rules "incorporate ... expert medical clinical judgment" implicitly require that a "user" be prohibited from updating the database. The patent's background expressly acknowledges that claims processing departments include individuals with such "expert medical clinical judgment": "the claim is ... referred for *review by clinical staff*. This reviewer, *usually a nurse*, may request the surgeon's official operative report, a required part of the hospital record, and/or <u>call for a physician to review the claim</u>." '164 Patent, Col. 2, ll. 31-37 (emphasis added). To the extent the Court's construction was intended to exclude modification of a database's rules only by inexpert data-entry processors, the term "user" is ambiguous on this point and it is unclear how a database can be "programmed" to prohibit access to certain functions based on an individual's expertise.

McKesson respectfully submits that the error in this construction may be addressed by modifying the Court's definition as follows:

> "'***Predetermined database***': **A set of decision-making rules that incorporate a medical service code classification system and expert medical clinical judgment** ~~and that are not programmed to be modified by the user~~."

This construction provides meaning to both "database" (*i.e.*, "a set of decision-making rules ...") and "predetermined" (*i.e.*, the rules are derived from "expert medical clinical judgment") without contradicting the patent's express teachings.

To the extent the Court believes the erroneous limitation is necessary despite the patent's contrary disclosure, McKesson requests clarification of two points to resolve ambiguities that will result in substantial further litigation. *First*, while it appears clear from the Court's Order, McKesson requests that the Court confirm that it is only the general "decision-making rules" (*e.g.*, rules such as those in Appendix B of the patent), and not the individual "relationships" among "particular medical service codes" accessed by those rules (*e.g.*, element 4 of the Court's *Markman* Order), that must be programmed to be non-modifiable by a user. *Second*, McKesson requests clarification that "modified" in the Court's construction means an actual alteration of the decision-making rules, not merely applying settings to activate or deactivate the rules or to apply them but simply bypass their results.

**2. *Summary Judgment regarding "Means for Determining"*:** The Court's grant of partial summary judgment of non-infringement overlooks evidence in McKesson's experts' reports that is squarely directed to TriZetto's infringement of the claimed "means for determining." It is apparent from the Court's *Markman* Order that it has construed the structure for these limitations to be the rules in Interact.dbf, item 24 in Figures 2 and 4 cited by the Court. *See* D.I. 307 at 6, 11, 14, 16-18. These rules, listed in Figure 6 of the patent, are the same rules provided in Appendix B of patent.[2] While the Court did not explicitly identify the structure upon which its ruling is based, even TriZetto agrees that the structure supporting the means for determining is the rules provided in Appendix B of the patent: "It is clear from the patent specification, the prosecution history, and the inventor testimony that the patent claims were intended to cover the specific rules outlined in Appendix B." D.I. 228 at 7. McKesson respectfully requests clarification that the structure corresponding to the "means for determining" elements is one or more of the "E" or "R" Rules of Appendix B. McKesson consistently referenced the Appendix B Rules in its construction of the means for determining elements and

---

[2] *See* '164 Patent, Col. 6, ll. 19-26 ("Interact database [includes] ... the rules shown in summary form in Fig. 6 and more fully detailed in Appendix B.").

Dr. Johnson provided a direct correlation between these rules and the structure of the accused products in her report.

The Court's finding that Dr. Johnson merely addressed the functionality of the claims cannot be squared with Dr. Johnson's report, which includes a chart clearly mapping the Appendix B rules to rules described in TriZetto's product literature and the source code that implements them. *See* D.I. 276 at 3-4, D.I. 179, Exh. A at 13. Regardless of whether Dr. Johnson presented her analysis in a limitation-by-limitation format for *other* claim elements, her report reflects a full structural analysis of the "means for determining" limitations upon which the Court based its ruling. Dr. Johnson's expert identification of the structure in the accused products that apply the Appendix B rules identified in the Court's construction, at a minimum, raises a triable issue of fact precluding summary judgment.

Additionally, TriZetto has consistently and improperly argued that the infringement analysis performed by McKesson's experts is faulty because it did not map the structure in the patent to the claims. However, while expert opinion *may* assist the Court in identifying appropriate structure, it remains an issue of claim construction for the Court to resolve. A proper infringement analysis requires a comparison of the structure, as identified by the Court, to the accused products. Here, the Court identified the structure in the patent as the Appendix B rules and Dr. Johnson performed an appropriate infringement analysis by making a direct comparison of the Appendix B rules to the structure found in the accused products. Accordingly, McKesson submits that the Court's opinion regarding proof of infringement of the "means for determining" limitations is incorrect. McKesson respectfully requests the Court to withdraw its Order regarding summary judgment of claims 3-6 and 8-15.

By: /s/ *signature*
Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
Jeremy D. Anderson (#4515)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff McKesson
  Information Solutions LLC

OF COUNSEL:
Jeffery G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500

DATED:      April 6, 2006