EXHIBIT 1

## McKESSON'S STATEMENT OF DISPUTED ISSUES OF FACT THAT REMAIN TO BE LITIGATED IN THE BENCH TRIAL

McKesson identifies the following disputed issues of fact that remain to be litigated in the bench trial on laches, estoppel, and inequitable conduct. To the extent that McKesson's Statement of Disputed Issues of Law contains issues of fact, those issues are incorporated herein by reference.

I.    LACHES

A.    Whether TriZetto can prove that McKesson unreasonably delayed in filing suit against TriZetto for infringement of the '164 patent.

B.    Whether TriZetto can prove that it suffered economic or evidentiary prejudice because of and as a result of McKesson's alleged delay in filing suit.

II.    ESTOPPEL

A.    Whether TriZetto can prove that McKesson engaged in misleading conduct that led TriZetto to reasonably infer that it would not be sued for infringement of the '164 patent.

B.    Whether TriZetto can prove that TriZetto actually and substantially relied on such alleged conduct.

C.    Whether TriZetto can prove that TriZetto will suffer economic or evidentiary prejudice because of its reliance on McKesson's alleged conduct.

III.    INEQUITABLE CONDUCT

      A.      Whether TriZetto can prove by clear and convincing evidence that the applicants of the '164 patent withheld material information from the United States Patent and Trademark Office ("PTO") during the prosecution of the '164 patent.

      B.      Whether TriZetto can prove by clear and convincing evidence that the applicants of the '164 patent knew of the allegedly withheld information and of its materiality.

      C.      Whether TriZetto can prove by clear and convincing evidence that the applicants of the '164 patent intended to defraud the PTO in allegedly withholding the undisclosed information.

# EXHIBIT 2

## MCKESSON'S STATEMENT OF DISPUTED ISSUES OF LAW
## THAT REMAIN TO BE LITIGATED IN THE BENCH TRIAL

McKesson identifies the following disputed issues of law that remain to be litigated in the

bench trial on TriZetto's equitable defenses of laches, estoppel, and inequitable conduct. To the

extent that any issues of fact set forth in McKesson's Statement of Disputed Issues of Fact that

Remain to Be Litigated may be considered issues of law, McKesson hereby incorporates those

issues herein by reference. McKesson also incorporates herein by reference its briefs in support

of or in opposition to the parties' motions for summary judgment.


I.    ISSUES ON WHICH DEFENDANT BEARS THE BURDEN OF PROOF

    A.    Inequitable Conduct

The standard for proving inequitable conduct is high, requiring proof by clear and

convincing evidence:

> To hold a patent unenforceable for inequitable conduct, a court must find, by clear
> and convincing evidence, [1] that the applicant omitted or misrepresented [2]
> material facts [3] with the intention of misleading or deceiving the patent
> examiner. Once the challenger has shown the requisite levels of materiality and
> intent, the district court must balance the equities to determine whether the
> patentee committed inequitable conduct that warrants holding the patent
> unenforceable.

*Monsanto Co. v. Bayer Bioscience N.V.*, 363 F.3d 1235, 1239 (Fed. Cir. 2004). The alleged

infringer must "offer clear and convincing proof of the materiality of the prior art, knowledge

chargeable to the applicant of that prior art and of its materiality, and the applicant's failure to

disclose the prior art, coupled with an intent to mislead the PTO." *Warner-Lambert Co. v. Teva*

*Pharms. USA, Inc.*, 418 F.3d 1326, 1342-43 (Fed. Cir. 2005); *see also Kingsdown Med.*

*Consultants Ltd. v. Hollister, Inc.*, 863 F.2d 867, 872 (Fed. Cir. 1988) ("Inequitable conduct

resides in failure to disclose material information, or submission of false material information,

with an intent to deceive, and those two elements, materiality and intent must be proven by clear and convincing evidence").

> Inequitable conduct entails a two-step analysis: first, a determination of whether the withheld reference meets a threshold level of materiality and intent to mislead, and second, a weighing of the materiality and intent in light of all the circumstances to determine whether the applicant's conduct is so culpable that the patent should be unenforceable.

*Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 744 (Fed. Cir. 2002). "Both intent and materiality are questions of fact." *Id.*

The materiality that must be shown to establish inequitable conduct has been defined by the Federal Circuit and must be proven by clear and convincing evidence. The defendant must prove by clear and convincing evidence that (1) the reference is material from the view point of a "reasonable patent examiner;" (2) the relevance of the reference with respect to the claims of the patent-in-suit; (3) the reference is not less pertinent than or merely cumulative of prior art or information already cited to or by the U.S. Patent and Trademark Office ("PTO" herein); and (4) the materiality may not be evaluated based upon subjective beliefs, such as those of the patentee. *Dayco Prods., Inc. v. Total Containment, Inc.*, 129 F.3d 1358, 1363, 1367 (Fed. Cir. 2003) (citation omitted); *Bristol-Myers Squibb Co. v. Rphone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1238 (Fed. Cir 2003).

Information is material if "there is a substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent." *TAP Pharm. Prods., Inc. v. OWL Pharms., LLC*, 419 F.3d 1346, 1351 (Fed. Cir. 2005). "[T]he mere fact that a patent applicant attempts to distinguish its patent from the prior art does not constitute a material omission or misrepresentation where the patent examiner has the prior art before him or her, and therefore, is free to make his or her own conclusions regarding the claimed invention." *LifeScan, Inc. v. Home Diagnostics, Inc.*, 103 F.Supp. 2d 379,

2

386 (D. Del. 2000); *see also Akzo N.V. v. U.S. Int'l Trade Comm'n*, 808 F.2d 1471, 1482 (Fed.

Cir. 1986).

When the inequitable conduct defense is based on the alleged failure to disclose a prior

art reference to the PTO, "the applicant['s] actual knowledge of the reference's existence must be

proved." *Nordberg, Inc. v. Telsmith, Inc.*, 82 F.3d 394, 397 (Fed. Cir. 1996); *see also Therma-*

*Tru Corp. v. Peachtree Doors, Inc.*, 44 F.3d 988, 996 (Fed. Cir. 1995) ("There can not have been

culpable intent in withholding information that the inventor did not have.").

When the allegedly withheld prior art reference is information concerning a § 102(b)

"public use" or "on sale" event, "the failure to tell the examiner about this purported bar can not

be deemed material or culpable" if the § 102(b) bar did not in fact arise. *Allied Colloids*, 64 F.3d

at 1578; *see also Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1466 (Fed. Cir. 1997) (rejecting

contention that "even if the submission were not an on-sale event, it should have been presented

to the patent examiner so that the patent examiner could decide whether it was.  There is no

obligation to present the examiner with information that is not material to patentability, on pain

of loss of patent rights based on inequitable conduct.").

Cumulative information is also not material, and an applicant's failure to disclose such

information to the PTO is, thus, not inequitable conduct. See 37 C.F.R. § 1.56 (b) ("Information

is material to patentability when it is not cumulative to information already of record or being

made of record in the application"); *Jazz Photo Corp. v. Int'l Trade Comm'n.*, 264 F.3d 1094,

1110 (Fed. Cir. 2001) ("Failure to cite cumulative references is not inequitable conduct").

Additionally, "[i]ntent is an independent element of inequitable conduct, and must be

separately established." *Hupp*, 122 F.3d at 1465; *see also Allen Eng'g Corp. v. Bartell Indus.*,

299 F.3d 1336, 1352 (Fed. Cir. 2002) ("Materiality does not presume intent, which is a separate

3

and essential component of inequitable conduct." (internal quotations and citation omitted)).

"[I]ntent as an essential predicate to patent unenforceability does not mean that the inventor

intended to do what he did in patent prosecution; it means that the inventor intended to deceive

or mislead the examiner into granting the patent . . . [i]nvalidity for inequitable conduct requires

a showing, by clear and convincing evidence, of intent to deceive or mislead the patent examiner

into granting the patent." *Therma-Tru*, 44 F.3d at 995-96; *see also Juicy Whip*, 292 F.3d at 744

(challenger has burden by clear and convincing evidence to show that applicant acted with

"intent to mislead" the examiner).

The defendant must prove by clear and convincing evidence each of the following: (1)

that the prior art was actually known to the individual accused of inequitable conduct; (2) that the

prior art was actually known to the individual accused of inequitable conduct to be prior art; (3)

that the individual accused of inequitable conduct had actual knowledge that the prior art was

material; (4) that the alleged conduct did not amount merely to the improper performance of, or

omission of, an act that ought to have been performed; (5) that the particular conduct was not

merely due to "gross negligence," which does not of itself justify an inference of intent to

deceive; (6) that the nondisclosure of information was the result of deliberate decision; and (7)

that the deliberate decision to not disclose was accompanied by deceitful intent. *See Kimberly-*

*Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1450 (Fed. Cir. 1984); *Molins PLC v.*

*Textron, Inc.*, 48 F.3d 1172, 1181 (Fed. Cir. 1995); *Kingsdown Med. Consultants, Ltd. V.*

*Hollister, Inc.*, 863 F.2d 867, 873, 876 (Fed. Cir. 1998); *Dayco Prods., Inc. v. Total Containment,*

*Inc.*, 329 F 3d 1358, 1362, 1367 (Fed. Cir. 2003).

A finding of simple or gross negligence "does not itself justify an inference of intent to

deceive; the involved conduct, viewed in light of all the evidence, including evidence indicative

4

of good faith, must indicate sufficient culpability to require a finding of intent to deceive."

*Molins PLC*, 48 F.3d at 1181 (quoting *Kingsdown*, 863 F.2d at 876).  Emphasizing the high level

of culpability required to merit a charge of inequitable conduct, the Federal Circuit has noted that

"the habit of charging inequitable conduct in almost every major patent case has become an

absolute plague."  *Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988).

A court "will not find inequitable conduct on an evidentiary record that is completely

devoid of evidence of the patentee's intent to deceive . . . ."  *Amgen, Inc.*, 314 F.3d at 1358; *see*

*also Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1327 (Fed. Cir. 2000) (rejecting contention

that "intent could be found without any factual basis").  For this reason, "[i]ntent to deceive can

not be inferred solely from the fact that information was not disclosed. . ."  *Hebert v. Lisle Corp.*,

99 F.3d 1109, 1116 (Fed. Cir. 1996).

Moreover, "[i]ntent to deceive should be determined in light of the realities of patent

practice. . . . Given the ease with which a relatively routine act of patent prosecution can be

portrayed as intended to mislead or deceive, clear and convincing evidence of conduct sufficient

to support an inference of culpable intent to deceive is required."  *Northern Telecom, Inc. v.*

*Datapoint, Corp.*, 908 F.2d 931, 939 (Fed. Cir. 1990).  When the PTO examiner has "[a]ll the

pertinent information squarely before" him, he is "free to reach his own conclusion."  *Id.* at 938

(internal quotations omitted).  When an examiner initials the references cited in a Form PTO-

1449 Information Disclosure Statement, he is presumed to have considered those references in

determining the patentability of the application's claims.  *See Molins*, 48 F.3d at 1184 ("The

examiner initialed each reference, indicating his consideration of the same, and stated that he had

considered all the cited prior art.");  *Fiskars, Inc.*, 221 F.3d at 1327.

5

B.    Laches

To successfully invoke laches, a defendant must prove that the plaintiff delayed filing suit

an unreasonable and inexcusable length of time after the plaintiff knew or should have known of

the defendant's infringing activity and that the delay resulted in material prejudice to the

defendant. *State Contracting & Eng'g. Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1065 (Fed.

Cir. 2003). The defendant must prove both factors by a preponderance of the evidence. *A.C.*

*Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1045 (Fed. Cir. 1992). Once those

factual premises are established, the court weighs the equities in order to assess whether laches

should apply to bar those damages that accrued prior to suit. *State Contracting*, 346 F.3d at 1065.

If the period of delay is less than six years, prejudice is not presumed. *Id.* (citing *Aukerman*, 960

F.2d at 10.35-36).

A laches defense is based on equitable principles and is not governed by the application

of "mechanical rules." *Aukerman*, 960 F.2d at 1032 (citations omitted). "A court must look at

all of the particular facts and circumstances of each case and weigh the equities of the parties."

*Id.* "A court must also consider and weigh any justification offered by the plaintiff for its delay "

*Id.* Excuses that have been recognized include, but are not limited to: other litigation;

negotiations; poverty or illness; wartime conditions; extent of infringement; dispute over patent

ownership, a change in management, and/or economic appropriateness. *Id.* at 1033; *see also*

Chisum on Patents § 19.05[2][b]; *Aukerman*, 960 F.2d at 1033; *RCA Corp. v. Data General*

*Corp.*, 701 F. Supp. 456, 477 (D. Del. 1988) (finding that patentee's efforts to license patent to

alleged infringer "provides a justifiable excuse for the eleven year delay in commencing this

suit"), *aff'd*, 887 F.2d 1056 (Fed. Cir. 1989); *Genzyme Corp. v. Atrium Med. Corp.*, No. 00-958-

MPT, 2003 U.S. Dist. LEXIS 12784, at *17 (D. Del. July 22, 2003), *see also Jamesbury Corp. v.*

*Kitton Indus. Prods., Inc.*, 839 F.2d 1544, 1552 (Fed. Cir. 1988), *overruled on other grounds by Aukerman*. "The length of time which may be deemed unreasonable has no fixed boundaries but rather depends on the circumstances." *Aukerman*, 960 F.2d at 1032.

Material prejudice can either be economic prejudice or evidentiary prejudice. *State Contracting*, 346 F.2d at 1066. A "nexus must be shown between the patentee's delay in filing suit and the expenditures; the alleged infringer must change his position 'because of and as a result of the delay.'" *Id.* (citations omitted); *see also Gasser Chair Co. v. Infanti Chair Mfg.*, 60 F.3d 770, 775 (Fed. Cir. 1995) ("[t]he evidence of record showed that [the alleged infringer] was indifferent to whether [the patentee] would sue because of his personal belief that the patent was invalid"); *Meyers v. Brooks Shoe, Inc.*, 912 F.2d 1459, 1463 (Fed. Cir. 1990) (failure to show prejudice from delay in filing suit when evidence indicated that the accused infringer would have continued its activity anyway).

C.    Estoppel

Proof of estoppel requires proof of three elements by a preponderance of the evidence: (1) the patentee committed misleading conduct that led the alleged infringer to reasonably infer it would not be sued; (2) the alleged infringer relied on such conduct; and (3) due to its reliance, the alleged infringer will be materially prejudiced if the suit proceeds. *See Aukerman,* 960 F.2d at 1028.

The Federal Circuit has made clear that a patentee's inaction cannot support a finding of misleading conduct unless it is "combined with other facts respecting the relationship or contacts between the parties to give rise to the necessary inference that the claim against the defendant is abandoned." *Id.* at 1042. "Silence may give rise to the defense of equitable estoppel only when coupled with either affirmative conduct or an affirmative obligation." *Symbol Techs., Inc. v.*

7

*Proxim, Inc.,* No. Civ. 01-801-SLR, 2004 WL 1770290, at *8 (D. Del. 2004) (emphasis added).

To be misleading, silence generally requires that the patentee first threatened immediate or

vigorous enforcement of the patent against the alleged infringer. *See Meyers* v. *Asics Coup.,* 974

F.2d 1304, 1309 (Fed. Cir. 1992) (finding that patentee could not have threatened litigation over

the patent because patentee did not contact the alleged infringer after the patent issued). For

example, "a suggestion of infringement coupled with an offer to license followed by silence"

would be insufficient to establish equitable estoppel." *Id.* at 1309.

To prove economic prejudice, the alleged infringer must establish that it will suffer

economic loss because of its reliance on the allegedly misleading conduct. *See Tenneco Auto.*

*Operating Co., Inc. v. Visteon Corp.*, 375 F. Supp. 2d 375, 383 (D. Del. 2005). The loss,

however, cannot simply be "the damages normally associated with a finding of infringement" or

costs associated with "business decisions to capitalize on a market opportunity." *Ecolab, Inc. v.*

*Envirochem, Inc.*, 264 F.3d 1358, 1371-72 (Fed. Cir. 2001). In *Ecolab*, the Federal Circuit

affirmed the district court's grant of summary judgment for the plaintiff on the defendant's laches

and estoppel defenses. *Id.* In particular, the Federal Circuit agreed with the district court's

reasoning that:

> [T]he hiring of new employees, modification of equipment, and engagement in
> sales and marketing activities related to the [accused product] are damages
> normally associated with a finding of infringement and do not constitute the type
> of damages necessary for a finding of economic prejudice.

*Id.*

> With regard to evidentiary prejudice, the Federal Circuit has held:

> Evidentiary, or 'defense' prejudice, may arise by reason of a defendant's inability
> to present a full and fair defense on the merits due to the loss of records, the death
> of a witness, or the unreliability of memories of long past events, thereby
> undermining the court's ability to judge the facts.

8

*Aukerman,* 960 F.2d at 1033.  Where "a deposed witness has indicated that he does not have a recollection of a particular fact, the lapse in memory is susceptible to more than one reasonable inference; in the absence of other evidence to support defendant's contention, its alleged evidentiary prejudice is no more likely than not." *Symbol Techs.*, 2004 WL 1770290, at *5. "Like the absence of memory by a witness, the absence of a document that was once known to exist, without more, does not give rise to an inference of evidentiary prejudice." *Id.*

# EXHIBIT 3

## STATEMENT OF McKESSON'S PROOFS AT THE BENCH TRIAL
## ON LACHES, ESTOPPEL AND INEQUITABLE CONDUCT

1.      McKesson will, to the extent necessary, introduce evidence to rebut each of

TriZetto's equitable defenses.  TriZetto will not be able to prove that McKesson is

estopped from suing TriZetto for infringement of the '164 patent.  TriZetto also will not be

able to prove that any of the damages awarded to McKesson are barred by laches.  TriZetto

also will not be able to prove by clear and convincing evidence that the '164 patent is

unenforceable as a result of inequitable conduct.

1

# EXHIBIT 4

## MCKESSON'S LIST OF INTENDED BENCH TRIAL WITNESSES

McKesson identifies the following witnesses whom it may call live or by deposition at the bench trial regarding TriZetto's equitable defenses of laches, estoppel, and inequitable conduct. The list set forth below is not a commitment that McKesson will call any particular witness at trial or a representation that any of the listed witnesses are available to appear or will appear at trial. With respect to TriZetto's witnesses, McKesson reserves the right to introduce testimony through deposition or live examination as appropriate. McKesson also reserves the right to call any witness called by TriZetto, and to revise this list in light of further rulings by the Court or any other changed circumstances.

**McKesson**

| | |
|---|---|
| Marc Owen | One Post Street<br>San Francisco, CA  94104 |
| Carolyn Wukitch | 5 Country View Road<br>Malvern, PA  19355 |
| Michael Cesarz | 5 Country View Road<br>Malvern, PA  19355 |
| Chris Doubleday | 5 Country View Road<br>Malvern, PA  19355 |

1

**Third Parties**

| | |
|---|---|
| Marcia Radosevich | 3689 Jappeloup Lane<br>West Palm Beach, FL  33414 |
| Don Holloway | 39 Kenilworth Road<br>Wellesley, MA  02482 |
| Robert Hertenstein | 412 Diamond Pt.<br>Morton, IL  61550 |
| George Goldberg | 5020 Garfield St., NW<br>Washington, DC  20016-3469 |
| Kelli Dugan | 1107 Vickers Ave.<br>Durham, NC  27707 |
| Richard Egdahl | 333 Commonwealth Avenue<br>Boston, MA  02115 |

**TriZetto**

| | |
|---|---|
| Anthony Bellomo | TriZetto Group<br>Enterprise Software Division<br>1085 Morris Aveue<br>Union, NJ  07083 |
| Craig Luftig | TriZetto Group<br>Enterprise Software Division<br>1085 Morris Avenue<br>Union, NJ  07083 |
| Karen Lampe | TriZetto Group<br>Enterprise Software Division<br>1085 Morris Avenue<br>Union, NJ  07083 |
| Jeffrey Margolis | TriZetto Group<br>Corporate Headquarters<br>567 San Nicolas Drive, Suite 360<br>Newport Beach, CA 92660 |
| Jim Sullivan | TriZetto Group<br>Corporate Headquarters<br>567 San Nicolas Drive, Suite 360<br>Newport Beach, CA  92660 |

**TriZetto**

John Danza

TriZetto Group
Technology Office & Training Center
500 Technology Drive
Naperville, IL  60563

Eric T. King

Blakely Sokoloff Taylor & Zafman
3200 Park Center Drive, Suite 700
Costa Mesa, CA  92626