IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE TRIZETTO GROUP, INC.<br><br>Defendant. | C.A. No. 04-1258-SLR |

**THE TRIZETTO GROUP, INC.'S MOTION TO STRIKE THE
SUPPLEMENTAL EXPERT REPORT OF MARK A. MUSEN**

Defendant The TriZetto Group, Inc. ("TriZetto") hereby moves to strike the Supplemental Expert Report of Mark A. Musen, dated April 4, 2006, and served by plaintiff McKesson Information Systems, LLC ("McKesson") on April 6, 2006. Dr. Musen's new report, served long after expert discovery closed and little more than one week before the commencement of trial, is inappropriate and untimely.

**I. STATEMENT OF FACTS**

On September 13, 2004, McKesson filed this action against TriZetto, alleging infringement of U.S. Patent No. 5,253,164 (the "'164 patent"). McKesson asserted that three of TriZetto's products (Facets, ClaimFacts and QicLink) infringe fifteen claims of the '164 patent (Claims 1-6 and 8-16). Fact discovery closed on September 16, 2005, and expert discovery closed on November 30, 2005. McKesson served the opening report of its infringement expert, Dr. Mark A. Musen, on October 24, 2005 (Exh. A).

The Court heard argument on claim construction and summary judgment motions on February 16, 2006. On April 5, 2006, the Court issued its claim construction ruling (D.I.

307).  The Court also granted TriZetto's motion for summary judgment of non-infringement of all asserted claims of the '164 patent, except Claims 1, 2 and 16 (D.I. 301).  Trial on the issues of infringement, damages, willfulness and equitable defenses is set for April 17, 2006.

On April 5, 2006, the Court held the pretrial conference.  The next day, McKesson served a 122-page Supplemental Expert Report of Mark A. Musen (Exh. B), which addresses all fifteen asserted claims, including the twelve as to which the Court had already granted summary judgment of non-infringement, and many issues not addressed in his original report.  Although that report was dated April 4, 2006, McKesson waited until after the pretrial conference to serve it.  TriZetto moves to strike that report.

## II.  ARGUMENT

On April 6, 2006, McKesson served a "supplemental" report of its infringement expert, Dr. Mark Musen, ostensibly containing screenshots to support Dr. Musen's original analysis.  The purported reason for that report is that McKesson did not obtain working versions of the accused TriZetto products until recently.  In fact, this report is not a supplementation of Dr. Musen's original report – it is a completely new expert report, filled with detailed analysis that could have been included in the original report, but was not.

McKesson served Dr. Musen's original infringement report on October 24, 2005.  The report was 17 pages long, and had three claim charts attached – one for each of the accused products.  In the original report, Dr. Musen advocated the infringement theory that McKesson had been pursuing throughout this litigation – i.e., that the corresponding structure for the means-plus-function elements of the '164 patent was simply any "software" and that infringement had been "admitted" by TriZetto's employees and customers.  That report contained *no* citations to the patent specification and made no effort to compare the structure disclosed in the specification

2

to the structure of the TriZetto products. Nor did it supply a detailed functional comparison of the TriZetto products to the patent claims. Instead, the report included conclusory allegations of functional infringement. The claim charts attached to the original report simply listed lay witness testimony and some quotes from product documents.

Now, a little more than one week before trial, McKesson has served a "supplemental" expert report for Dr. Musen, 122 pages long and attaching 130 pages of exhibits. This is *a completely new expert report*, incorporating detailed structural and functional analyses that could have been included in his original report:

- Although the original report never once cited the patent specification, the new report compares portions of the specification (particularly the clinical editing rules of Appendix B) to the TriZetto products.

- Although the original report provided no explanation as to how the TriZetto products allegedly perform the various claimed functions, the new report contains page after page explaining the alleged correspondence.

- Although the original report did not say a word about the doctrine of equivalents (other than to "reserve" the right to add an analysis at a later time), the "supplemental" report devoted a section to that subject (Exh. B at 120-22) (which McKesson has stricken given the Court's ruling at the pretrial conference).

The reason for McKesson's last minute "supplementation" is readily apparent. On April 5, the Court correctly granted summary judgment of non-infringement on the apparatus claims, given the lack of expert testimony supporting structural infringement. McKesson now

hopes to correct its mistake after summary judgment has been granted against it and to proceed to trial with a new expert analysis.[1] McKesson's attempt to introduce a new expert report now is completely inappropriate. The Court instructed at the April 5 pretrial conference that "if the [supplemental] analysis of this evidence is *different in substance and in kind* from what this expert reported before, then that is a problem." April 5, 2006 Tr., at 54-56. Dr. Musen's new report offers analysis different in substance and kind from his original. Moreover, most of the structural analysis in Dr. Musen's new report is irrelevant at this point, because the Court has granted summary judgment with respect to the apparatus claims to which such structural analysis would pertain.

McKesson argues that Dr. Musen is simply supplementing his original report with screenshots and examples from the working versions of the TriZetto products, information that he allegedly did not have before. Not so. First, the new report contains a great deal more than screenshots supporting Dr. Musen's original analysis. Second, Dr. Musen has had TriZetto's source code and hundreds of pages of TriZetto product documentation (containing more than a hundred screenshots and examples) for a long time, yet did not include any of this in his original report. Indeed, Dr. Musen testified that he did not review the source code and did not believe he needed to "delve down to a lower level of granularity" to opine on infringement. Third, it was McKesson's own failure to pursue discovery diligently that resulted in McKesson's late acquisition of the functional TriZetto products. TriZetto provided McKesson with source code, product documents and functional software early in this litigation. When McKesson had

---

[1] McKesson also submitted a new claim construction to the Court on the day of the Markman hearing, disclosing specific corresponding structure for the first time. D.I. 274. Like Dr. Musen's new report, this was an effort to change McKesson's position at the last moment.

problems installing the software, TriZetto offered technical assistance and the Court offered to mediate the technical issues. But McKesson waited months to accept the Court's offer to resolve the problems. McKesson cannot use its own dilatory conduct to justify the submission of a new expert report a week before trial.[2]

### A. The "Supplemental" Musen Report Is A Completely New Expert Report

Recognizing the deficiencies of Dr. Musen's original October 24, 2005 report, McKesson now attempts to submit a brand new report, containing not just screenshots, but extensive structural and functional analyses that were not included in his original report. The Court should strike Dr. Musen's new report as untimely. *See Praxair, Inc. v. ATMI, Inc.*, C.A. No. 03-1158-SLR, 2003 U.S. Dist. LEXIS 26794, at *17 (D. Del. 2003) (excluding expert testimony as a sanction for failure to comply with the court's scheduling order regarding close of expert discovery); *MKS Instruments, Inc., v. Advanced Energy Indus., Inc.*, 325 F. Supp. 2d 471, 474 (D. Del. 2004) (granting motion to exclude expert testimony for failure to timely disclose).

The following is a brief side-by-side comparison of the features of the old and new reports:

|  | **Original Report (Exh. A)** | **New Report (Exh. B)** |
|---|---|---|
| **Length** | 17 pages, and 3 claim charts listing witness testimony and quotes from product documents. | 122 pages, and 3 exhibits containing 130 pages of screenshots. |

---

[2] McKesson has advised us that it also intends to submit a new report for its other infringement expert, Dr. Margaret Johnson, although it has not said when it will do so.

| **References to Patent Specification** | None. | Dozens of references to the clinical editing rules of Appendix B of the '164 patent.<br><br>*See* Exh. B at 64-66, 68, 71-78, 84-94, 96-97, 106-107, 111-114, 116-117. |
|---|---|---|
| **Detailed Structural Comparison** | None. Simply repeats the stock phrase, "[T]he '164 patent discloses software or a combination of software and hardware as the structure that performs the functions corresponding to these elements."<br><br>*See* Exh. A at 8-16. | Dozens of detailed comparisons of the Appendix B rules to the TriZetto products.<br><br>*See* Exh. B at 64-66, 68, 71-78, 84-94, 96-97, 106-107, 111-114, 116-117. |
| **Detailed Functional Comparison** | None. Simply repeats conclusory statements that the TriZetto products perform the functions of each claim.<br><br>*See* Exh. A at 10-16. | 60 pages of detailed charts comparing the claim functions to the TriZetto products.<br><br>*See* Exh. B at 58-119. |

Dr. Musen's new report addresses the alleged presence of particular claimed features in the TriZetto products, such as the "predetermined database" and "non-medical criteria." Exh. B, at 36 (discussing the user's selection of clinical editing administrative rules), 61, 76 (providing example of edit purportedly based on non-medical criteria). There was no such discussion in his original report.

Dr. Musen could have undertaken this more detailed analysis last October. Long before opening expert reports were exchanged, Dr. Musen had the patent, the source code for the TriZetto products, and hundreds of pages of product documentation. He could have compared the Appendix B rules to the TriZetto products, but he did not do so. He could have examined the product source code, but he did not do so. *See* Exh. C (Musen Depo.), 30:4-9. He could have performed detailed structural and functional analyses, comparing each TriZetto product (as

6

described in the source code and product documents) to the relevant structure in the patent specification and the functions described in the claims. But again, Dr. Musen did not do so.[3]

Dr. Musen testified that all of his opinions concerning infringement were contained in his original report. Exh. C, 27:5-10. He did not believe it was necessary to analyze and compare the structure found in the patent specification to the structure of the TriZetto products in detail. Exh. C (Musen Depo.), 302:5-14 ("I do not believe it was necessary to go to a lower level of granularity to ascertain those specific components . . . [b]ecause if the function needed to be reproduced and the testimony and the . . . product literature suggests that it was and the structure was clearly software, then my job was done"). Accordingly, he chose not to compare the Appendix B rules (or any other part of the patent specification) to the TriZetto products, but instead assumed that the corresponding structure was simply "software." *Id.*, 102:8-13 ("The structure is software. My understanding in this case is that it is sufficient to say that the function is implemented in software"); 109:1-9 ("If the requisite definition of structure is – is simply software, then the TriZetto products must embody the principles of the patent in software as their structure"). Having chosen to follow that path, McKesson cannot change course after summary judgment and a week before trial.[4]

---

[3] McKesson could have sought to extend the expert discovery period until the working software was obtained and Dr. Musen was able to supplement his report. Instead, McKesson insisted that expert discovery close on November 30, 2005, even refusing a request from TriZetto to extend the period slightly to accommodate the schedule of one of TriZetto's experts.

[4] Dr. Musen's new structural analysis is now mostly irrelevant in any event, because the Court has granted summary judgment of non-infringement on the apparatus claims of the '164 patent. D.I. 302. McKesson never made any contention during the summary judgment proceedings that it required additional discovery to defend against TriZetto's motion.

**B.  The Availability Of Screenshots From The Working Products Does Not Justify The Submission Of A New Report By Dr. Musen**

McKesson contends that the screenshots it recently obtained from the working versions of the TriZetto products justify Dr. Musen's 122-page "supplemental" report. But Dr. Musen's new report contains much more than merely screenshots. It includes extensive detailed analysis that was not found in his original report.

Moreover, Dr. Musen already had numerous screenshots and clinical editing examples available to him in the documentation for the TriZetto products, yet he did not incorporate any of those into his original report. *See, e.g.,* Exh. D (Facets Extended Enterprise Claims Processing User Guide), RD001198, 1223-1268, 1274-1292, 1302-1322 (contained on CD, TRZ838251); Exh. E (ClinicaLogic User Guide), RD001042-1094, 1107-1192 (contained on CD, TRZ838254); Exh. F (ClaimFacts ClinicaLogic System Overview), TRZ092365-92374. The following screenshots are exemplary:

| **Screenshots from Facets documentation in Dr. Musen's possession (Exh. D, RD001223, 1228).** | **Screenshots from Dr. Musen's "Supplemental" Report (Exh. B, 9-10).** |
|---|---|
|  |  |



The availability of this product documentation (including screenshots) belies any suggestion that Dr. Musen was unable to perform a detailed analysis until he viewed the working products. Dr. Musen simply neglected to include details in his original report.

Finally, any delay in obtaining the working TriZetto products was the result of McKesson's own failure to pursue discovery diligently. Early in this litigation, TriZetto provided McKesson with the source code, product documentation, and functional software for all three TriZetto Products. McKesson never asked TriZetto for a product demonstration, and did not serve a request to inspect the working TriZetto products. *See* D.I. 205 (Declaration of Jeffrey T. Thomas), ¶ 6. Instead, McKesson sought installable software that it could use on its own. TriZetto provided that software and participated in at least two conference calls to help McKesson set up the software. *Id*. at ¶ 4. McKesson subsequently demanded that TriZetto send a technical support person to the office of McKesson's counsel. *Id*. at ¶ 6. TriZetto declined this request, but offered to provide further assistance by telephone, if needed. *Id*.

On November 7, 2005, McKesson raised this issue with the Court. The Court instructed that "if counsel for McKesson believes that there are still problems, then you all need to organize a telephone conference with me with a technical person for each side." D.I. 138 at

9

20:21-24. TriZetto's counsel then invited McKesson to contact the Court as instructed if it had any remaining problems with the software. D.I. 205, ¶ 6. But McKesson did not respond and did not seek to arrange a telephone conference with the Court. Instead, it waited until the Markman hearing on February 16, 2006 to raise the issue again. The Court then set up the telephone conference it had offered three months earlier. McKesson's failure to pursue the discovery diligently does not justify Dr. Musen's new 122-page expert report, containing substantial analysis that could and should have been included in his original report.

      **C.    TriZetto Would Be Prejudiced By Dr. Musen's New Report**

Finally, there is no question that TriZetto would be prejudiced if McKesson were permitted to present Dr. Musen's testimony about the matters disclosed in his 122-page report submitted eleven days before trial. TriZetto has had no opportunity to examine Dr. Musen's new positions, or to have its expert respond to them. It is far too late to do so now.

### III. CONCLUSION

Dr. Musen's new expert report should be stricken and Dr. Musen's trial testimony should be limited to what was disclosed in his original report.

                                            MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                                            */s/ Jack B. Blumenfeld*
                                            Jack B. Blumenfeld (#1014)
                                            Rodger D. Smith II (#3778)
                                            1201 N. Market Street
                                            Wilmington, Delaware 19899
                                            (302) 658-9200
                                            Attorneys for Defendant The TriZetto Group, Inc.

OF COUNSEL:

GIBSON, DUNN & CRUTCHER LLP
Jeffrey T. Thomas
David Segal
Michael A. Sitzman
Jamboree Center, 4 Park Plaza
Irvine, CA  92614

April 11, 2006

**RULE 7.1.1 CERTIFICATE**

I hereby certify that the subject of the foregoing motion has been discussed with counsel for plaintiff, and that the parties have not been able to reach agreement.

*/s/ Jack B. Blumenfeld*
Jack B. Blumenfeld (#1014)

## CERTIFICATE OF SERVICE

I, Jack B. Blumenfeld, hereby certify that on April 11, 2006 I electronically filed The TriZetto Group, Inc.'s Motion to Strike the Supplemental Expert Report of Mark A. Musen with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Thomas J. Allingham, II
> Skadden, Arps, Slate, Meagher & Flom LLP

I also certify that copies were caused to be served on April 11, 2006 upon the following in the manner indicated:

### BY HAND

> Thomas J. Allingham, II
> Skadden, Arps, Slate, Meagher & Flom LLP
> One Rodney Square, P.O. Box 636
> Wilmington, DE  19899

### BY FEDERAL EXPRESS

> Jeffrey G. Randall
> Skadden, Arps, Slate, Meagher & Flom LLP
> 525 University Avenue
> Suite 1100
> Palo Alto, CA  94301

> /s/   *Jack B. Blumenfeld*
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE  19899
> (302) 658-9200
> jblumenfeld@mnat.com