IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE TRIZETTO GROUP, INC.<br><br>Defendant. | C.A. No. 04-1258-SLR |

**TRIZETTO'S MOTION TO STRIKE THE PORTION OF
MARCIA J. RADOSEVICH'S APRIL 10, 2006 DEPOSITION
CONDUCTED BY MCKESSON, AND FOR SANCTIONS**

Defendant The TriZetto Group, Inc. ("TriZetto") hereby moves to strike the portion of the April 10, 2006 deposition conducted by plaintiff, McKesson Information Solutions LLC ("McKesson"), and for sanctions. The grounds for this motion are the following.

**A.  Order No. 5 (D.I. 286) – The Special Master Determined That McKesson's Counsel Improperly Instructed Radosevich Not To Answer Questions At Her Deposition**

TriZetto took the deposition of Marcia J. Radosevich ("Radosevich"), HPR's former President and Chief Executive Officer, on July 7, 2005. At the conclusion of TriZetto's questioning, McKesson questioned Radosevich and concluded the deposition. On October 18, 2005, TriZetto asked the Special Master to compel Radosevich to appear again for her deposition to answer questions about specific topics that McKesson's counsel improperly instructed her not to answer.[1] In Order No. 5 (D.I. 286), confirmed by the Court on April 5, 2006, the Special

---

[1] Although Radosevich had separate counsel at the deposition, McKesson took the position that it was the owner of the attorney-client privilege for the time when she was the President of HPR, and it asserted the privilege at her deposition.

Master concluded that Radosevich had been improperly instructed by McKesson's counsel not to answer two questions:

 (1) "Did you personally ever ask anyone at HPR to assist in the review of the patent applications . . . [a]nd who did you ask to assist?" *See* D.I. 286 at 7 and Exhibit A (attaching page 126 of Radosevich's deposition transcript); and

 (2) "[W]hat was said to the sales people by yourself and other members of HPR management about what customers should be told about the patent?" *See* D.I. 286 at 7 and Exhibit B (attaching pages 175-177 of Radosevich's deposition transcript).

 **B.** **Order No. 7 (D.I. 288) – The Special Master Ordered Radosevich To Appear For A Second Deposition**

As of January 18, 2006, McKesson had failed to respond to TriZetto's requests for dates for the second deposition of Radosevich. As a result, TriZetto wrote to the Special Master requesting an order requiring the production of Radosevich for a second deposition. TriZetto noted that Radosevich had her own counsel, but it assured the Special Master that it would negotiate a mutually agreeable date with Radosevich's attorney or serve a subpoena upon receipt of the requested order.

McKesson took the position that "Radosevich is a third party witness who resides in Florida. It would be unnecessary and unduly burdensome to require her to submit to a further deposition simply to answer the two questions that Your Honor ordered be answered." (January 26 letter, Exhibit C at n.1). McKesson argued alternatively that the Court should allow Radosevich to answer the questions at issue by way of a declaration.

TriZetto responded that just because Radosevich is not currently employed by McKesson did not preclude the Special Master from ordering her to appear for a second

deposition. Radosevich was the Chief Executive Officer of HPR – the assignee of the '164 patent – and she testified that she was primarily responsible for prosecuting the patent. Moreover, it was McKesson's attorney who improperly instructed Radosevich not to answer the questions at issue. Finally, McKesson's proposal of allowing Radosevich to answer the questions by declaration would not work because TriZetto should be afforded the opportunity to ask reasonable follow-up questions.

The Special Master struck a compromise in Order No. 7 (D.I. 288), confirmed by the Court on April 5, 2006, and held that:

> I have made it clear in my order that when a witness was blocked from answering a particular topic or subject that was improper, that witness should be deposed **on that topic**. **It is not the opportunity to reopen for new inquiries and new areas which simply raises an objection** and multi-page letters complaining about one side or the other.
>
> . . .
>
> [T]o the extent that the [Special Master] identified the subject that the witness was precluded from answering, re-examination **on those precise topics** and any **reasonable follow up** will be permitted. In this regard, the deposition of Marsha Radosevich is also to be redeposed, however, that may take place as a telephone deposition.

D.I. 288 at 2, 3.

### C.  Radosevich's Attorney Confirmed That The Deposition Would Be Limited To The Topics Addressed In Order No. 5

On March 18, 2006, TriZetto sent Radosevich's counsel a copy of Order Nos. 5 and 7 along with the relevant letter submissions of the parties to the Special Master. On March 30, Radosevich's counsel sent an email to TriZetto, copying McKesson, "confirm[ing] Ms. Radosevich's agreement to appear for a continuation on April 10, 2006 of her deposition **on those limited questions specifically ordered by the Special Master's Order**." (Exhibit D). On April 5, TriZetto sent Radosevich's counsel and McKesson an email stating that because the

deposition would be taken telephonically, it would provide any exhibits that would be used during the deposition by April 7. (*Id.*). On April 6, TriZetto sent Radosevich's counsel and McKesson a dial-in telephone number and a participant code so that the deposition could be conducted telephonically as indicated by the Special Master in Order No. 7. (*Id.*). In an April 7 email to TriZetto and McKesson, Radosevich's counsel sought confirmation that TriZetto would not be using any exhibits during Radosevich's deposition. TriZetto provided such confirmation that same day. (*Id.*). During this entire exchange, McKesson never indicated that it intended to use any exhibits during Radosevich's deposition.

### D.  McKesson Violated Order Nos. 5 And 7 By Improperly Questioning Radosevich On Documents And Topics That Were Not Addressed In The Orders

On April 10, with a court reporter present, TriZetto dialed in to conduct Radosevich's telephonic deposition. To TriZetto's surprise, McKesson's counsel, Mr. Randall, revealed that he was in Florida with Radosevich and her counsel for the deposition, and that he had retained a videographer to record the deposition, even though it was TriZetto's deposition and McKesson had never provided **any** notification to TriZetto that the deposition would be videotaped.

TriZetto proceeded to depose Radosevich for approximately forty minutes on the specific topics addressed in Order No. 5 and asked reasonable follow questions, as permitted by Order No. 7.[2] A copy of the deposition transcript is attached hereto as Exhibit E.

After the deposition began, McKesson's counsel announced that he was attempting to fax to TriZetto *seven* documents that he wanted to use to question Radosevich.

---

[2] McKesson objected several times to TriZetto's questioning on the grounds that it exceeded the scope of Order Nos. 5 and 7. (Exhibit E at 18:6-19, 21:8-10, 22:12-23:12).

(Exhibit E at 29:6-22). TriZetto objected to McKesson questioning Radosevich on the grounds that Order Nos. 5 and 7 were limited to allowing *TriZetto* to question Radosevich on the two specific topics addressed in the Orders. (*Id*. at 30:2-18). Indeed, McKesson closed Radosevich's deposition at the conclusion of her first session in July of 2005 and never sought to re-open that deposition during the intervening eight months. In fact, as set forth in its submission to the Special Master, McKesson opposed having Radosevich appear for a second deposition.

To make matters far worse, TriZetto soon discovered that the documents about which McKesson intended to have Radosevich testify were more than one hundred pages and had **nothing** to do with the specific topics addressed in Order No. 5. As noted above, Order No. 5 stated that TriZetto could ask Radosevich questions about: (1) HPR's application for the '164 patent, and (2) what HPR's management told its salespeople to convey to customers concerning the '164 patent. In contrast, the documents about which McKesson questioned Radosevich included:

- A letter that Radosevich allegedly sent to Erisco (TriZetto's predecessor) in January 1989 (Exhibit E at 33:20-34:6);
- A news article discussing GMIS's payment of a large sum of money to settle the GMIS v. HPR litigation over the '164 patent (*Id.* at 45:22-46:9);
- A Form S-4 filed by HBO & Co. (McKesson's predecessor) in November 1997 (*Id.* at 68:13-17);
- A power point presentation describing HPR's CodeReview product (*Id.* at 41:12-42:9);
- A Form 10-K filed by HPR in September 1996 (*Id.* at 58:19-21); and
- Radosevich's deposition taken in the GMIS v. HPR litigation (*Id.* at 43:12-44:4).

The first of these documents was marked as an exhibit at Radosevich's first deposition, and she was examined on it. The third and fifth documents were not produced during discovery in this case.

Over TriZetto's objections, McKesson proceeded to question Radosevich concerning these documents and subjects that were completely unrelated to the specific topics listed in Order No. 5. Specifically, in addition to the documents, McKesson questioned Radosevich about:

- Whether Radosevich sent Erisco materials describing HPR's CodeReview product (Exhibit E at 36:5-13, 38:18-23);

- Whether Radosevich believed that Erisco used the materials that she allegedly sent describing HPR's CodeReview to develop a competing product (*Id*. at 39:22-40:3);

- Whether Erisco was a potential customer of HPR's CodeReview product (*Id*. at 37:15-38:17;

- Whether Erisco ever asked Radosevich if it was applying for the '164 patent (*Id*. at 40:8-41:11);

- What knowledge Radosevich had about Erisco's products (*Id*. at 44:20-45:21);

- Whether Erisco ever initiated any conversations with HPR about the '164 patent (*Id*. at 49:21-50:13);

- The terms of the settlement of the GMIS v. HPR litigation over the '164 patent (*Id*. at 48:10-49:2);

- Whether HPR's CodeReview product was successful in the marketplace from 1994 through 1996 (*Id*. at 61:20-64:17); and

- HPR's merger with HBOC (*Id*. at 67:8-68:1).

During the deposition, TriZetto's counsel asked McKesson's counsel to explain how these topics relate to the topics addressed by Order No. 5, but he declined to do so. (Exhibit E at 34:24-36:3).

### E. The Court Should Strike The Portion Of Radosevich's Deposition Conducted By McKesson And Sanction McKesson

TriZetto requests that the Court strike the portion of Radosevich's deposition taken by McKesson on April 10. The subjects raised by McKesson and the documents used to question Radosevich plainly fall outside the scope of Order No. 5. That order states, "when a witness was blocked from answering a particular topic or subject that was improper, that witness should be deposed **on that topic**. **It is not the opportunity to reopen for new inquiries and new areas which simply raises an objection**." The order further provides that "to the extent that the [Special Master] identified the subject that the witness was precluded from answering, re-examination **on those precise topics** and any **reasonable follow up** will be permitted." Furthermore, Radosevich's counsel stated quite clearly before the deposition that Radosevich would only be questioned "**on those limited questions specifically ordered by the Special Master's Order**."[3] McKesson understood the limitations of Order No. 5: McKesson's counsel faxed the Order to TriZetto during Radosevich's deposition and indicated that he intended to use it as an exhibit.

McKesson's counsel obviously viewed the April 10, 2006 deposition of Radosevich, which was supposed to be limited to questions he himself had instructed the witness not to answer last July, as a post-discovery opportunity to get new testimony on unrelated topics

---

[3] When asked for his position on McKesson's improper questions, Radosevich's attorney acknowledged that the deposition should have been limited to the subject matters addressed in the Special Master's Orders. Nevertheless, he allowed McKesson's counsel to ask his questions in an abundance of caution so that Radosevich did not risk being ordered to appear for a third deposition. (Exhibit E at 50:19-51:17).

in a setting at which TriZetto would have no reason to believe such an examination would occur. McKesson's counsel's decision not to provide the exhibits to TriZetto until after the deposition began demonstrates this. McKesson has clearly attempted to gain a tactical advantage in blatant disregard of the Special Master's Orders.

As a result of its conduct, McKesson should be sanctioned in the amount of $2,000, to cover: (1) the attorneys' fees incurred by TriZetto for being forced to participate while McKesson improperly questioned Radosevich, (2) the attorneys' fees incurred by TriZetto to prepare this Motion, and (3) the unnecessary additional court reporter fees incurred by TriZetto in connection with the deposition. *See Chambers v. NASCO*, 501 U.S. 32, 43 and 45 (1991) (noting that federal courts are invested with the inherent power to impose sanctions for abuse of the judicial process, willful disobedience of a court order, or conduct which manifests bad faith).[4]

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld (#1014)*
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
Wilmington, DE 19899
(302) 658-9200
   Attorneys for Defendant The TriZetto Group, Inc

OF COUNSEL:

GIBSON, DUNN & CRUTCHER LLP
Jeffrey T. Thomas
David Segal
Michael A. Sitzman
Jamboree Center, 4 Park Plaza
Irvine, CA 92614

April 11, 2006

---

[4] Even if the Court does not strike the portions of Radosevich's deposition taken by McKesson, TriZetto requests that the Court refuse to allow McKesson to use the videotape during trial. McKesson failed to give any notice to TriZetto that it intended to videotape the deposition as required by Fed. R. Civ. P. 30(b)(2).

## RULE 7.1.1 CERTIFICATE

I hereby certify that the subject of the foregoing motion has been discussed with counsel for plaintiff, and that the parties have not been able to reach agreement.

*/s/ Jack B. Blumenfeld (#1014)*
Jack B. Blumenfeld (#1014)

CERTIFICATE OF SERVICE

I, Jack B. Blumenfeld, hereby certify that on April 11, 2006 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Thomas J. Allingham, II
> Skadden, Arps, Slate, Meagher & Flom LLP

I also certify that copies were caused to be served on April 11, 2006 upon the following in the manner indicated:

> BY HAND
>
> Thomas J. Allingham, II
> Skadden, Arps, Slate, Meagher & Flom LLP
> One Rodney Square
> P.O. Box 636
> Wilmington, DE  19899
>
> BY EMAIL
>
> Jeffrey G. Randall
> Skadden, Arps, Slate, Meagher & Flom LLP
> 525 University Avenue
> Suite 1100
> Palo Alto, CA  94301

> */s/ Jack B. Blumenfeld (#1014)*
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE  19899
> (302) 658-9200
> jblumenfeld@mnat.com