IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>THE TRIZETTO GROUP, INC.<br><br>    Defendant. | C.A. No. 04-1258-SLR |

**THE TRIZETTO GROUP, INC.'S STATEMENT CONCERNING
<u>THE COURT'S CONSTRUCTION OF "PREDETERMINED DATABASE"</u>**

    MORRIS, NICHOLS, ARSHT & TUNNELL LLP
    Jack B. Blumenfeld (No. 1014)
    Rodger D. Smith II (No. 3778)
    1201 N. Market Street
    Wilmington, Delaware 19899
    (302) 658-9200

    Attorneys for Defendant The TriZetto Group, Inc.

OF COUNSEL:

GIBSON, DUNN & CRUTCHER LLP
Jeffrey T. Thomas
David Segal
Michael A. Sitzman
Daniel P. Muino
Jamboree Center, 4 Park Plaza
Irvine, CA  92614

April 11, 2006

Defendant The TriZetto Group, Inc. ("TriZetto") respectfully requests that the Court reconsider its April 11, 2006 Order (D.I. 320) modifying its construction of the term "predetermined database." The Court's modification of that term came in response to the "Supplemental Pretrial Submission" filed by plaintiff McKesson Information Solutions LLC ("McKesson") on April 6, 2006, asking the Court to reconsider its construction of "predetermined database." D.I. 309. Given the Court's admonition at the pre-trial conference against filing reconsideration motions, TriZetto did not file a substantive response to McKesson's submission. TriZetto now submits this statement requesting that the Court reinstate its original construction of "predetermined database."

## I.    ARGUMENT

In its claim construction order of April 5, 2006, the Court construed the term "predetermined database" to mean:

> A set of decision-making rules that incorporate a medical code classification system and expert medical clinical judgment *and that are not programmed to be modified by the user*.

D.I. 307 at 3. On April 11, 2006, the Court modified that construction by deleting the italicized phrase. D.I. 320. TriZetto submits that the Court's original construction was correct.

Even though the claims use the word "predetermined," the Court's revised construction neither includes that word nor gives it any meaning. Without the phrase explaining that the database cannot be modified by the user, it becomes simply a database of "decision-making rules," not a *predetermined* database as set forth in the claims. It is fundamental that claims must be construed so as to give meaning to all of their terms. *See Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so"). Under the Court's revised construction, McKesson would have a broader patent than was issued to it.

It appears that the Court has not given a new definition of "predetermined," but has instead concluded that the specification shows that neither its original definition nor any other

1

definition should be part of the construction. This, however, is contrary to the law and the specification.

Nowhere does the patent specification indicate that "predetermined" has no meaning. It does teach that the database of the invention can be modified by the experts who create it. As recognized by the Court, the specification explains that the database is created by medical experts who generate "decision-making rules" based on their own "clinical judgment." D.I. 307 at 3 n.8 ('164 Patent, col. 5, l. 67 – col. 6, l. 13: "Each of the rules was developed as a result of reviewing medical procedures by expert medical personnel"). This is consistent with the very nature of the patented invention – it is "*[a]n expert computer system.*" '164 Patent, Abstract. TriZetto has never disputed that the expert knowledge in the "predetermined database" is subject to modification or updating. The issue is that, consistent with the intrinsic and extrinsic evidence, the modifications or updates are done by the experts who created the database, *not by the users*. That is what makes the database "predetermined."

The Court's decision to revise its construction apparently hinged on the patent's description of the HISTORY database. D.I. 320 at 4. But the passage the Court cites (col. 10, ll. 4-7) says *nothing* about the *user* modifying the database; it simply says the database can be modified, which begs the question of who can modify it and when. The specification does not state that the HISTORY database allows *users* to modify the database nowhere does the patent describe how the users can view any of the databases, let alone modify the carefully determined "expert rules" in the predetermined database.

Instead, the specification suggests that the HISTORY database allows the *experts* who design the system to make the modifications. The specification reference cited by the Court (col. 10, ll. 4-7) states the HISTORY database can be used to change and refine not only the rules, but also the "knowledge base interpreter" – *i.e.*, the core software of the patented computer system. '164 Patent, col. 4, ll. 54-68. It makes little sense to suppose that users would be empowered to modify the core software of the *expert* computer system. In fact, the patent does not describe

2

any such user-modification capabilities, but only the ability of the expert designer to make changes and provide updates to its program and expert knowledge base.

For the claim term "predetermined" to be read completely out of the claims, the patent would have to be quite clear, and there is no such clear direction in the patent. In fact, as described in TriZetto's original claim construction brief, the specification is replete with references to the database containing only rules that are supplied by the medical experts *who create the database*. Because there is no clear direction in the patent that a "predetermined" database is equivalent to any "database," a definition of "predetermined" is necessary, and the Court's original construction was correct.

Not only does the patent specification support the Court's original construction, but the historical background of CodeReview (the product on which the '164 patent is based) confirms that the function of the HISTORY database is consistent with that original construction. Specifically, the HISTORY database allowed HPR, the *designer* of CodeReview, to update and modify the predetermined database. D.I. 211 at Exh. Q (MCK 042486). HPR's customers would periodically transmit the HISTORY database to HPR "to allow HPR physicians to evaluate CodeReview's recommendations and increase its clinical astuteness by providing solutions to the most recently devised coding problems." *Id*. Hence, the HISTORY database was intended to permit CodeReview's designers (specifically, the HPR physicians) – not the customers – to modify the predetermined database.[1]

Finally, the Court's original interpretation of "predetermined database" is also confirmed by the early HPR descriptions of the "predetermined database" in its CodeReview product (also

---

[1] *See also* D.I. 258 at Exh. R (MCK 042486) (the HISTORY database "allow[s] HPR physicians to evaluate CodeReview's recommendations and increase its clinical astuteness by providing solutions to the most recently derived coding problems"); *id.* (the customer will "send the Decision History file to HPR" on a monthly basis); D.I. 258 at Exh. T (MCK 051136) ("Backing up the History File—Send to HPR").

3

known as "MedReview"). A September 1987 memorandum circulated at HPR, the assignee of the '164 patent, discusses the predetermined nature of the database and explains why it cannot be modified by the user:

> [W]hile Aetna will receive access to the complete knowledge base by using MedReview, it will not receive a complete hardcopy listing and will not be allowed to make any changes to the knowledge base. In order to assure that the knowledge base is properly used, HPI/HPR must maintain control over any changes to it. Aetna will not be in a position to evaluate the consequences of even minor changes – in fact, it will not be easy for us to anticipate the consequences of changes. As a result, this will be one of our biggest challenges, and one of the major reasons Aetna will have to maintain an ongoing contract with us.

D.I. 211 at Exh. O (MCK 119730). This is the product that HPR patented, including the concept of a "predetermined database."

In light of the fact that there is nothing in the specification that states that users can even view, let alone modify, the database, this extrinsic evidence (as well as dictionary definitions) is relevant. All of this evidence leads to only one conclusion: The Court's original definition of "predetermined database" was correct. The Court's original construction appropriately captured the meaning of the word "predetermined" and was entirely consistent with the HISTORY database feature, which allows modification by the designer, not the user. By contrast, the Court's revised construction reads the word "predetermined" completely out of the claims.

## II.    CONCLUSION

For the reasons set forth herein, TriZetto respectfully requests that the Court reinstate its original construction of "predetermined database."

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/Jack B. Blumenfeld*
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
Wilmington, DE  19899
(302) 658-9200
Attorneys for Defendant The TriZetto Group, Inc.

4

OF COUNSEL:

GIBSON, DUNN & CRUTCHER LLP
Jeffrey T. Thomas
David Segal
Michael A. Sitzman
Jamboree Center, 4 Park Plaza
Irvine, CA  92614

April 11, 2006

5

CERTIFICATE OF SERVICE

I, Jack B. Blumenfeld, hereby certify that on April 11, 2006 I electronically filed The TriZetto Group, Inc.'s Statement Concerning the Court's Construction of "Predetermined Database" with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Thomas J. Allingham, II
> Skadden, Arps, Slate, Meagher & Flom LLP

I also certify that copies were caused to be served on April 11, 2006 upon the following in the manner indicated:

BY HAND

Thomas J. Allingham, II
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, DE  19899

BY EMAIL

Jeffrey G. Randall
Skadden, Arps, Slate, Meagher & Flom LLP
525 University Avenue
Suite 1100
Palo Alto, CA  94301

> */s/ Jack B. Blumenfeld*
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE  19899
> (302) 658-9200
> jblumenfeld@mnat.com