IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE TRIZETTO GROUP, INC., )<br>)<br>Defendant. )<br>) | Civil Action No. 04-1258-SLR |

**MCKESSON'S MEMORANDUM
IN RESPONSE TO TRIZETTO'S MOTION TO STRIKE
THE PORTION OF MARCIA J. RADOSEVICH'S APRIL 10, 2006
DEPOSITION CONDUCTED BY MCKESSON, AND FOR SANCTIONS**

Plaintiff McKesson Information Solutions LLC ("McKesson") hereby respectfully submits its response to defendant The TriZetto Group, Inc.'s ("TriZetto's") Motion To Strike The Portion Of Marcia J. Radosevich's April 10, 2006 Deposition Conducted By McKesson, And For Sanctions (D.I. 321), filed and served on McKesson late last night.

\* \* \*

It is distressing that with only five days left before the commencement of the trial of this action, McKesson must direct its attention to responding to baseless and mean-spirited accusations about its conduct concerning 45 minutes of deposition testimony taken in a non-party deposition in which the witness's own counsel raised no objection. Unfortunately, in order to clear the record and dispel any misimpression that TriZetto is trying to create about the conduct of McKesson's attorneys, McKesson must

respond to TriZetto's accusations point-by-point. As will be shown below, TriZetto's motion is based on nothing more than half-truths, misleading omissions and outright falsehoods. Indeed, as will become apparent, if anyone should be sanctioned by the Court, it is TriZetto for its misrepresentation of the record.

McKesson's response is organized into two sections. First, we address what appears to be the core of TriZetto's argument; namely, that McKesson went beyond the scope of permissible questioning. Second, to the extent the Court finds it necessary, we provide a detailed response to TriZetto's miscellaneous accusations of supposed "improper conduct" by McKesson's counsel.

> A.  **McKesson's Questions Were Well Within The Scope Of Permissible Testimony**

The core of TriZetto's argument is that McKesson's counsel was not permitted to ask the witness any of the questions that now appear on the record. TriZetto's variously asserts two possible theories: (i) that McKesson was prohibited from asking Ms. Radosevich any questions at all, on any subject, including questions on cross examination, D.I. 321 at 1, 5; or, alternatively, (ii) that the "subjects raised by McKesson and the documents used to question [Ms.] Radosevich plainly fall outside the scope of [Special Master] Order No. 5," id. at 7, see also id. at 5, 6.

At the outset, it is significant to note that Ms. Radosevich is a non-party, represented by her own counsel, and that her counsel did not object to the questions TriZetto now finds offensive. Indeed, had TriZetto given notice to Ms. Radosevich of its motion to compel and an opportunity for her to be heard, as it was required to do under

Rule 37(a) of the Federal Rules of Civil Procedure,[1] this wasteful motion practice may have been avoided altogether.

### 1. TriZetto's Claim That McKesson Could Not Ask Any Questions At All Is Both Illogical And Refutable

TriZetto argues that Special Master Orders Nos. 5 and 7 "were limited to allowing TriZetto to question [Ms.] Radosevich on the two specific topics addressed in the Orders," D.I. 321 at 5 (emphasis in original), and that McKesson was therefore not entitled to any questioning of the witness at all, including questioning on cross examination.[2]

First, this claim is illogical. Because Ms. Radosevich is unavailable to testify live at trial, her out-of-court testimony is considered hearsay and inadmissible as evidence absent an exception. Fed. R. Evid. 802. To qualify for any exception, the Federal Rules of Evidence require, for example, that "the witness has been subject to cross examination." Fed. R. Evid. 804. Thus, if TriZetto had any intention of actually using any of Ms. Radosevich's testimony as evidence at trial, which presumably it did, it must concede that the opportunity for cross examination was not only proper, but required.

---

[1] Rule 37(a) states in relevant part: "A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling disclosure or discovery . . ." Fed. R. Civ. P. 37. No such notice was provided to Ms. Radosevich or her counsel.

[2] This position was also articulated by TriZetto's counsel during the deposition:

> MR. THOMAS: My position is you had your opportunity to cross-examine the witness at the first deposition and that the purpose of this session today is simply to follow up on some questions that she was improperly instructed not to answer at the prior deposition. [4/10/06 Radosevich Tr. at 30:13-18 (Attached as Exhibit E, D.I. 321)]

3

Second, there is nothing in the Special Master's Orders to suggest that only one side of the litigation is permitted to take testimony on the topics identified in the Orders. To the contrary, Special Order No. 7 simply states that "re-examination on th[e] precise topics and any reasonable follow up will be permitted." D.I. 288 at 3.

Third, the argument that McKesson's questions were precluded because McKesson "closed [Ms.] Radosevich's deposition at the conclusion of her first session in July of 2005 and never sought to re-open that deposition," D.I. 321 at 5, is not only untrue, it is irrelevant since McKesson's questions fall within the scope of the topics permitted by the Special Master. See infra Section A.2.

### 2. McKesson's Questions Were Permissible

The two topics permitted by the Special Master were (1) who Ms. Radosevich "communicated with to assist in the review of patent applications" and (2) what Ms. Radosevich "said about what was to be told to customers." D.I. 286 at 7. Special Order No. 7 also allowed for "any reasonable follow up" concerning those topics. D.I. 288 at 3. At the deposition of Ms. Radosevich, TriZetto's counsel summarized his interpretation of the scope of two issues:

1)   "the preparation of the patent application"; and

2)   "communications by salespeople with customers."

[4/10/06 Radosevich Tr. at 34:7-11 (statement of Mr. Thomas) (emphasis added)]

The bulk of TriZetto's complaints concern communications with Erisco. See D.I. 321 at 6 (first six of TriZetto's nine bullets relate to this topic). Those questions are perfectly appropriate because during much of the time under discussion Erisco was a potential customer of HPR; a fact confirmed by the witness. 4/10/06 Radosevich Dep. at

39:14-21 (witness's understanding at time "was that Erisco wanted to license our code").

Thus, McKesson's questions on this topic, and the documents used to assist the witness regarding same, were permissible.

TriZetto's last three bullets concern, respectively, the GMIS license, "HPR's CodeReview product" and the merger with HPR, D.I. 321 at 6, but what TriZetto fails to state is that the very purpose for these questions was to understand the impact of these particular events on HPR's communications with its customers. That connection was clearly established on the record on numerous occasions. See, e.g., 4/10/06 Radosevich Dep. at 54:24-55:4, 55:17-23, 56:22-57:1, 63:5-8; 65:3-6, 66:8-12, 68:2-5, 70:8-13. Again, these questions, and the documents used to assist the witness regarding same, were permissible.[3]

### B. TriZetto's Miscellaneous Claims Of Inappropriate Conduct Are Refuted By The Record

Notwithstanding the narrowness of TriZetto's motion, TriZetto spends much of its effort attempting to smear McKesson's counsel. The record demonstrates not only the irrelevance of TriZetto's claims, but their falsity.

#### 1. Claim One: McKesson "Improperly Instructed" The Witness Not To Answer Questions

TriZetto begins its motion by claiming that McKesson's counsel "improperly instructed" Ms. Radosevich not to answer questions at her earlier deposition.

---

[3] In fact, it was TriZetto, not McKesson, that seemed to stray from the Special Master's Orders. For example, TriZetto's posed such indefensible questions as: "Are you aware of anyone explaining to any of the inventors the duty of candor that is required in submitting patent applications?" [4/10/06 Radosevich Tr. at 8:7-9] and "Miss Radosevich, did you believe that any of the competitive clinical editing systems were infringing your patent?" [id. at 25:10-12].

5

D.I. 321 at 1-2. Since the Special Master's Orders already addressed the substantive issues concerning the prior deposition, there can be no purpose served by TriZetto's statements other than as an attempt to smear counsel. Yet even that fails since TriZetto misrepresents what happened. Contrary to TriZetto's assertion, McKesson's counsel plainly did <u>not</u> instruct the witness not to answer questions, but simply cautioned the witness to "avoid reveal[ing] any communications that [the witness] had with your attorneys and any direction given to you by your attorneys in connection with the patent prosecution process." D.I. 321, Ex. A at 126:19-24; <u>see also id.</u> at 125:16-17 ("There wasn't an instruction not to answer."). In fact, McKesson's counsel <u>specifically advised</u> TriZetto's counsel that "what was said by sales people or management to third parties" obviously "is not privileged and I don't think that counsel or the witness is objecting to disclosure of that information at all." <u>Id.</u>, Ex. B at 175:4-11. In fact, the only instruction not to answer came from the <u>witness</u>'s attorney, not McKesson. <u>See id.</u> Ex. B at 176:24-175:5.

    **2. Claim Two: McKesson Improperly Asserted A <u>Privilege With Respect To Ms. Radosevich's Testimony</u>**

    In a footnote on page 1 of their motion, TriZetto appears to suggest that the Special Master's Order directing the continuation of Ms. Radosevich's deposition was based on the fact that "McKesson took the position that it was the owner of the attorney-client privilege for the time [Radosevich] was the president of HPR." D.I. 321 at 1 n.1. That was not the basis of the Special Master's ruling. The Special Master's Orders never called into question McKesson's fundamental right to assert the privilege with respect to Ms. Radosevich and TriZetto is wrong to suggest otherwise.

6

### 3. Claim Three: McKesson Did Not Provide TriZetto With Dates For Ms. Radosevich's Deposition

TriZetto suggests that McKesson acted improperly by "fail[ing] to respond to TriZetto's requests for dates for the second deposition of for Radosevich." D.I. 321 at 2. TriZetto does not mention, however, that McKesson was not the witness's counsel and thus had no control over her schedule. Indeed, as TriZetto's own documents reveal, TriZetto tried to schedule her deposition without even notifying McKesson of the deposition. See D.I. 321, Ex. D at 4-6. The only reason McKesson learned about the deposition at all was that the witness's counsel had the courtesy to notify it. Id. at 4.

### 4. Claim Four: McKesson Did Not Provide TriZetto With Exhibits In Advance Of The Deposition

TriZetto contends that McKesson acted improperly by not notifying TriZetto in advance of McKesson's intended use of exhibits. D.I. 321 at 4 ("During this entire exchange, McKesson never indicated that it intended to use any exhibits during Radosevich's deposition.").

First, how TriZetto could possibly have an expectation of receiving advance notice from McKesson about exhibits in an e-mail exchange in which it did not even include McKesson, is difficult to fathom. McKesson was only added after Ms. Radosevich's counsel, not TriZetto, had the courtesy to add it as a copyee.

Second, there is no precedent that TriZetto can point to in this action where the parties pre-designated exhibits. The practice throughout this litigation has been for counsel to provide copies of exhibits to the other attorneys at the time the exhibit is introduced. McKesson actually went beyond the practice by sending each and every exhibit it was intending to use to TriZetto's counsel before the deposition began. This

7

goes beyond anything that TriZetto's counsel has done for McKesson in any deposition in this case.

### 5. Claim Five: McKesson's Counsel Attended The Deposition In Person

TriZetto claims that McKesson acted improperly by being physically present at the deposition rather than by phone. In its brief, TriZetto says that "[t]o TriZetto's surprise, McKesson's counsel, Mr. Randall, revealed that he was in Florida with Radosevich and her counsel for the deposition," D.I. 321 at 4, as if to suggest that McKesson had surreptitiously conspired with Ms. Radosevich's attorney to be present.

Again, this accusation is contradicted by the truth. As is clear from TriZetto's attached exhibits, as well as the Special Master's Order, participation by phone was an option, not a requirement:

> [T]he deposition of Marsha Radosevich is also to be redeposed, however, that may take place as a telephone deposition.

D.I. 288 at 3 (emphasis added). In addition, the witness's counsel informed the parties by e-mail that he would be in Florida and available in person as well as available by phone from any location. See D.I. 321, Ex. D at 4 ("[The witness] and I will both be in the Palm Beach, FL area and can go to a location there chosen by the parties or to participate from wherever by phone."). TriZetto could have easily attended in person if it so chose and McKesson never suggested otherwise.

### 6. Claim Six: The Deposition Was Videotaped

TriZetto claims that McKesson "never provided any notification to TriZetto that the deposition would be videotaped." D.I. 321 at 4 (emphasis in original). This astounding accusation is contradicted by the fact that TriZetto itself noticed the

8

deposition for video transcription. See Ex. 1, attached hereto (TriZetto's Notice Of Deposition); see also D.I. 321, Ex. D at 4 (counsel for Ms. Radosevich confirming the deposition as a "continuation"). TriZetto also fails to mention that in every other deposition in this case, the testimony was recorded by video transcription.

    **7.**  **Claim Seven:  The Use Of SEC Filings**

TriZetto's suggestion that two of McKesson's exhibits were improperly introduced at the deposition because they were not produced in litigation, D.I. 321 at 6, again leaves out the key facts. The two documents were public SEC filings, retrievable for free off the Internet (see, e.g., www.sec.gov), and "it is well-established that discovery need not be required of documents of public record which are equally accessible to all parties." Krause v. Buffalo and Erie Cnty. Workforce Dev. Consortium, Inc., No. 03-730A(F), 2005 WL 2420358, at *16 (W.D.N.Y. Sept. 29, 2005) (denying defendants' motion to strike plaintiff's use of government records) (citing S.E.C. v. Samuel H. Sloan & Co., 369 F. Supp. 994, 995 (S.D.N.Y. 1973)).

    **8.**  **Claim Eight:  McKesson Failing To Argue The
       Merits Of TriZetto's Complaints At The Deposition**

In another attempt to create the appearance of impropriety, TriZetto asserts that "[d]uring the deposition, TriZetto's counsel asked McKesson's counsel to explain how these topics relate to the topics addressed by Order No. 5, but he declined to do so." D.I. 321 at 7. Again, the actual record of counsel's interactions tells a different story:

> MR. THOMAS [TriZetto]:  Jeff, do you want to explain on the record how this has anything to do with preparation of the patent application or communications with customers?

       MR. RANDALL [McKesson]:  Your objection is noted. It falls squarely within the subject.

       MR. THOMAS:  How?  Go ahead and say on the record how.

       MR. RANDALL:  I'm not going to argue with you.

       MR. THOMAS:  Well, you have to lay some foundation or give some justification for going into this and going outside the scope of the deposition for today.  What is your justification for this?

       MR. RANDALL:  Jeff, I'm not going to argue with you.

       MR. THOMAS:  You don't have one.  That's why you are not going to argue with me.

       MR. RANDALL:  If you would refrain from obstructing this deposition, you would soon find out the relevance of this.

       MR. THOMAS:  I just want an explanation.  That's all.

       MR. RANDALL:  I don't have to give it to you right now.  You can listen to the witnesses' answers.  If you need to move to strike it later, you can.  You are simply obstructing the witness I'm asking you politely please stop it.  [4/10/06 Radosevich Tr. at 34:24-36:3]

As the above demonstrates, McKesson's counsel's unwillingness to engage in a debate about foundational issues is not an improper and revelatory concession, as TriZetto's counsel would suggest, but simply appropriate deposition protocol.

**Conclusion**

For the foregoing reasons, McKesson respectfully submits that TriZetto's Motion To Strike The Portion Of Marcia J. Radosevich's April 10, 2006 Deposition Conducted By McKesson, And For Sanctions (D.I. 321), be denied.

                                              By:   */s/ Michael A. Barlow*
                                                         Thomas J. Allingham II (#0476)
                                                         Michael A. Barlow (#3928)
                                                         SKADDEN, ARPS, SLATE,
                                                            MEAGHER & FLOM LLP
                                                         One Rodney Square
                                                         P.O. Box 636
                                                         Wilmington, Delaware  19899
                                                         (302) 651-3000

                                                         Attorneys for Plaintiff McKesson
                                                            Information Solutions LLC

OF COUNSEL:
Jeffery G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California  94301
(650) 470-4500

DATED:  April 12, 2006

11