IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE TRIZETTO GROUP, INC., ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 04-1258-SLR |

**MCKESSON'S RESPONSE TO TRIZETTO'S MOTIONS TO STRIKE THE SUPPLEMENTAL REPORTS OF MCKESSON EXPERT WITNESSES DR. MARGARET JOHNSON AND DR. MARK MUSEN**

This memorandum is in response to TriZetto's motions to strike in their entirety the supplement expert reports of McKesson's expert witnesses Dr. Margaret Johnson and Dr. Mark Musen. For the reasons set forth herein, both of TriZetto's motions should be denied.

**I.   ARGUMENT**

**A.   The Supplemental Reports Are Not Untimely And TriZetto's Motions Are, At Best, Premature**

It is amazing that TriZetto argues that the supplemental reports are "untimely." *See, e.g.,* D.I. 317 at 1; D.I. 323 at 1. As discussed below, the supplemental reports consist almost entirely of screen shots based on McKesson's recent access to working versions of the infringing TriZetto Facets, ClaimFacts and QicLink systems. As the Court well knows, TriZetto actively and effectively prevented McKesson from accessing working versions of the infringing products during discovery. TriZetto's counsel had flatly rejected McKesson's prior requests for the technical assistance finally ordered by the Court. It was only through the Court's recent direct intervention that McKesson was finally able to view operable versions of the accused products.

1

Based on the Court's efforts, McKesson finally had access to a working Facets product on Thursday, March 23, 2006. TriZetto finally provided McKesson access to working versions of ClaimFacts and QicLink the week of March 28, and we only completed our review at the end of the day on Thursday, March 31, 2006.

The supplemental reports were completed as quickly thereafter as possible. Thus, Dr. Musen's supplemental report was completed on April 4, 2006, within days of his review of TriZetto's working systems. Dr. Johnson was out of town until last weekend and was only first able to view the working TriZetto systems this past Saturday, April 8, 2006. Her report was completed within days and provided to TriZetto on April 11, 2006.

TriZetto's emphasis on the length of the supplemental reports is a red herring. The supplement reports are long because they are full of screen shots of TriZetto's products in operation. TriZetto can hardly claim prejudice based on screen shots of its own systems. In fact, at the April 5, 2006 pretrial conference, counsel for TriZetto stated that their objection to "generic descriptions of Facets screen shots" on McKesson's exhibit list would likely be resolved once the screen shots were provided. (D.I. 311 at 51: "Once we see it, I doubt it will be a problem").

It would be inappropriate for TriZetto to benefit from its obstruction of McKesson's legitimate discovery requests by granting TriZetto's motions to strike the supplemental reports. The supplemental reports could not have been submitted any sooner and they are based on belatedly provided evidence that confirms and clearly illustrates Dr. Johnson's and Dr. Musen's opinions concerning the operation of the accused TriZetto products.

Granting TriZetto's sweeping motions to strike would be particularly inappropriate in light of the fact that the supplement reports consist mostly of screen shots of the pertinent operation of TriZetto's infringing products that, as discussed below, are consistent with and clearly illustrate the opinions in Dr. Johnson's and Dr. Musen's initial reports. McKesson informed the Court and TriZetto at the pretrial conference on April 5, 2006 that these screen shots would be provide in connection with McKesson's supplemental expert report. The

Court correctly stated at that time that any objection to use of these screen shots as trial exhibits would be "more helpfully addressed" not in gross as requested by TriZetto's motion, but rather "on an exhibit by exhibit basis" (if needed) when the exhibit is proposed pursuant to the Court's 48 hour rule. (D.I. 311 at 51-52).

Contrary to TriZetto's position at the pretrial conference, and contrary to the Court's instruction that screen shots be addressed on an "exhibit by exhibit" basis, TriZetto has not only objected to all of McKesson's additional screen shots, but it has also ignored McKesson's repeated requests to identify or object to specific screenshots that contain new opinions. *See* Exh. A attached (4/10/06 emails from Jeff Randall to Jack Blumenfeld regarding Dr. Musen's Supplemental Report) ("please let me know whether you object to the entire report or just certain portions"; "what are the new opinions and analysis that you object to?"; "please identify your specific objections to each opinion that you believe warrants submission to the court"; "why are you refusing to identify the 'new' opinions--or any opinions for that matter--that you object to and the full basis for your objections. I have asked you three times for this information and you have yet to provide any specifics. Please make a good faith effort to provide this information if you are serious about these 'objections.'"); *see also* Exh. B attached (4/12/06 email from Jeff Randall to Jack Blumenfeld regarding Dr. Johnson's Supplemental Report) ("Jack, we don't intend to ask Dr. Johnson to opine on infringement of the claims that the Court has issued summary judgment on."). Despite McKesson's repeated requests, TriZetto did not identify a single objectionable screen, but rather filed motions to strike Dr. Musen and Johnson's reports in their entirety. Thus, although McKesson tried to resolve TriZetto's issues without resorting to the Court's intervention, as TriZetto's recent round of motions indicates, TriZetto apparently just wants to burden counsel and the Court with baseless motions seeking sweeping rulings that are not justified by the facts. To date, TriZetto has not identified one legitimate objection to the additional screenshots contained in the supplemental reports.

The Court warned the parties during the April 5 pretrial conference that expert testimony was presented "at your own risk" and subject to appropriate sanctions if the testimony was improper. (D.I. 311 at 53). McKesson intends to heed the Court's admonition and it does not intend to offer opinions from Dr. Johnson or Dr. Musen that are beyond the scope of their initial expert reports.

### B. The Supplemental Reports Are Consistent With, Confirm And Clearly Illustrate Dr. Johnson And Dr. Musen's Original Opinions

TriZetto incorrectly argues that the supplemental reports are "not a supplementation" of Dr. Johnson and Dr. Musen's original reports, but rather are "completely new" expert reports "filled with detailed analysis that could have been included" in their original reports. *See* D.I. 317 at 1-2; D.I. 323 at 1-2. In truth, the supplemental reports consist almost entirely of recently obtained screen shots of working versions of TriZetto's accused Facets, ClaimFacts and QicLink products which clearly illustrate the opinions provided by Drs. Johnson and Musen in their initial reports.

Thus, the first analysis in Dr. Johnson's supplemental report includes screen shots illustrating the operation of TriZetto's Facets, QicLink and ClaimFacts system actually performing one of the "rebundling" clinical edits discussed in detail on pages 5 through 9 of Dr. Johnson's initial report. *See* D.I. 323, Exh. A at 5-9; Exh. B at 7-13. TriZetto does not and could not dispute that Dr. Johnson's initial report includes a detailed discussion of the rebundling example in her supplemental report for Facets. In fact, Dr. Johnson's initial report illustrated the example not only by reference to a TriZetto manual, she conducted a detailed trace of the Facets software relating to the "rebundle" feature. *See, e.g., id.*, Exh. A at 7 & Appendix B.

TriZetto faults Dr. Johnson for not having sufficient time to also report similarly detailed software traces for QicLink and ClaimFacts. *See id.* at 5.[1] It is indisputable, however, that Dr. Johnson's initial report specifically identified the QicLink and ClaimFacts source code files relating to clinical editing functionality in these products, and that she opined that the functionality she detailed for Facets was also present in QicLink and ClaimFacts. *Id.*, Exh. A at 11. Dr. Johnson was only precluded from providing the screen shots illustrating this example in her supplemental report based on TriZetto's improper failure to provide McKesson with access to working versions of the accused products during discovery.

Dr. Johnson's supplemental report also includes screen shots illustrating TriZetto's accused systems performing what TriZetto terms "Subset Procedure" and "Secondary Procedure" clinical edits. *Id.*, Exh. B at 4-6. The chart in Dr. Johnson's initial report clearly shows that Dr. Johnson was opining that these clinical edits were including in TriZetto's accused products. *Id.*, Exh. A at 13. Again, the screen shots in her supplemental report only illustrate the analysis set forth in her initial report.

Similarly, TriZetto wrongly complains that Dr. Musen's supplemental report includes "new" analyses because it addresses the presence of a "predetermined database" and "non-

---

[1] To understand why Dr. Johnson has insufficient time to conduct detailed traces of the source code for all three TriZetto products, the Court need only consider the testimony of TriZetto's expert Dr. Randall Davis that to do so "would be a job that probably would have taken the better part of, oh, I don't know, six months or a year's worth of full-time work. There's a lot of code there. It would have been an overwhelming task to analyze all of the code for all of the systems." [Davis Dep. at 273:16-25] Although the details of her trace for QicLink and ClaimFacts were not included in her initial report, as noted in her supplemental report, Dr. Johnson opined that the functionality was included in QicLink and ClaimFacts and identified the specific source code files that included the clinical editing functionality.

5

medical-criteria" in the accused products. D.I. 317 at 6. In fact, like Dr. Johnson's supplemental report, Dr. Musen's supplemental report consists almost completely of screen shots of the accused products in operation supporting the opinions in his initial report. These screen shots and the accompanying explanations do not provide "completely new" opinions as TriZetto argues. *Id.* at 3. Rather they are completely consist with, confirm and clearly illustrate Dr, Musen's opinions in his initial report.

For example, contrary to TriZetto's argument, the following quotations clearly demonstrate that Dr. Musen's initial report included his opinion that the "predetermined database" and "non-medical criteria" claim elements are present in TriZetto's infringing products:

- "During the processing of a medical claim, each product determines whether a medical service code in that claim should not be paid with another medical service code contained in that claim based on *non-medical criteria*."

- "Each product includes a *predetermined database* of medical service codes and relationships among those codes ...."

- "[A]s further illustrated in the charts attached to this report ... each product determines whether the medical service codes are submitted in a claim are appropriate for payment by interacting with that product's *predetermined database*."

*See* D.I. 317, Exh. A, at 10-11, 16.

In addition to opining on "non-medical criteria" in his initial report, Dr. Musen was deposed at length on this element and TriZetto even questioned Dr. Musen about the specific example that is included in his supplemental report. *See* Exh. C (Dr. Musen Tr.) at 41:14-62:2 attached. Dr. Musen's supplemental report is therefore entirely appropriate confirmation and illustration of his initial opinions.

6

### C. McKesson Does Not Intend To Offer Opinions From Dr. Johnson Or Dr. Musen That TriZetto Infringes The Apparatus Claims

There is nothing sinister, as suggested by TriZetto, about the fact that Dr. Musen's report includes information relating to TriZetto's infringement of the apparatus claims of the '164 patent and infringement under the doctrine equivalents. Dr. Musen completed his supplemental report on April 4, 2006, the day before the Court issued its summary judgment ruling on the apparatus claims in McKesson's patent and also ruled that Dr. Musen would not be allowed to opine concerning the doctrine of equivalents. Although McKesson disagrees with these rulings, consistent with the Court's rulings on the doctrine or equivalents, McKesson informed TriZetto in the letter forwarding Dr. Musen's supplemental report that "we have stricken those portions of Dr. Musen's supplemental report directed to his opinion of infringement under the doctrine of equivalents." *See* Exh. D attached. Also, consistent with the Court's summary judgment ruling, McKesson does not intend to offer opinions from either Dr. Musen or Dr. Johnson that TriZetto infringes the apparatus claims of the McKesson patent.

## II. CONCLUSION

For the foregoing reasons, McKesson respectfully requests that the Court deny TriZetto's motions to strike the supplemental reports of McKesson expert witnesses Dr. Margaret Johnson and Dr. Mark Musen.

DATED: April 13, 2006

By: _____
Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
Jeremy D. Anderson (#4515)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899
(302) 651-3000

Attorneys for Plaintiff
   McKesson Information Solutions LLC

OF COUNSEL:
Jeffery G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California  94301
(650) 470-4500