IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE TRIZETTO GROUP, INC., ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 04-1258-SLR |

**MCKESSON'S MEMORANDUM REGARDING
ITS PROPOSED REVISIONS TO THE JURY INSTRUCTIONS**

 

                                            Thomas J. Allingham II (#0476)
                                            Michael A. Barlow (#3928)
                                            SKADDEN, ARPS, SLATE,
                                                MEAGHER & FLOM LLP
                                            One Rodney Square
                                            P.O. Box 636
                                            Wilmington, Delaware  19899
                                            (302) 651-3000

                                            Attorneys for Plaintiff McKesson
                                                Information Solutions LLC

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California  94301
(650) 470-4500

DATED:  April 22, 2006

Plaintiff McKesson Information Solutions LLC ("McKesson") respectfully submits this Memorandum Regarding Its Proposed Revisions To The Jury Instructions, distributed by the Court in draft form on Wednesday, April 19, 2006. Although McKesson's comments to the instructions themselves are limited, as a whole they are insufficient to protect McKesson's right to a fair trial in light of TriZetto's repeated attempts to mislead and confuse the jury about settled legal questions and irrelevant facts. McKesson's proposed revisions are attached hereto at Appendix A.[1]

## I.   INSTRUCTIONS MUST BE INCLUDED TO CORRECT FOR TRIZETTO'S IMPROPER ATTEMPT TO RE-ARGUE THE COURT'S *MARKMAN* RULINGS

It is a bedrock principle of patent law that a court's prior claim constructions are the "law of the case . . . not available for redetermination." Del Mar Avionics, Inc. v. Quinton Instrument Co., 836 F.2d 1320, 1323 (Fed. Cir. 1987). Indeed, the Federal Circuit has held it to be reversible error for the Court to permit inconsistent claim construction evidence to be put before the jury. Cytologix Corp. v. Ventana Med. Sys., 424 F.3d 1168, 1172 (Fed. Cir. 2005) (holding that the "risk of confusing the jury is high when experts opine on claim construction before the jury"). In Moba, B. V. v. Diamond Automation, Inc., 325 F.3d 1306, 1313-14 (Fed. Cir. 2003), for example, the Federal Circuit reversed a jury verdict on non-infringement where it was shown that the verdict was based on the absence of additional elements not required by the district court's Markman construction.

---

[1]   A disk containing the proposed revisions will be provided to the Court first thing Monday morning.

Because of TriZetto's introduction of evidence and re-argument of settled issues of law before the jury, without corrective instructions to the jury on certain claim elements, McKesson will clearly be prejudiced.

### A. TriZetto Improperly Introduced Evidence And Tried To Re-Argue The Construction Of The "Determining" Step From Claim 1

As the Court is aware, Claim 1 of U.S. Patent No. 5,253,164 (the "'164 patent") contains the following element:

> determining whether any medical service code contained in the at least one claim is not present in the predetermined database

During claim construction, TriZetto urged the Court to read the following functional limitations into this step: (i) requiring a <u>direct lookup</u> in the predetermined database for the medical service codes; and (ii) requiring an <u>affirmative confirmation</u> that each code is present in the database (rather than finding out whether at least one is not present, as the plain claim language states). D.I. 158 (TriZetto's "Claim Construction Opening Brief"), at 19-21; D.I. 159, Ex. B (TriZetto's "Proposed Claim Construction"), at 4. McKesson responded to both of these points in its own claim construction briefing, arguing that the Court should adopt the ordinary meaning for the terms. D.I. 255 (McKesson's "Answering Claim Construction Brief") at 18-21.

The Court rejected TriZetto's formulation and construed the claim element as subject to the ordinary meaning of the terms. D.I. 307; see <u>York Prods., Inc. v. Central Tractor Farm & Family Ctr.</u>, 99 F.3d 1568, 1572 (Fed. Cir. 1996) ("Without an express intent to impart a novel meaning to claim terms, an inventor's claim terms take on their ordinary meaning.").

Notwithstanding this outcome, TriZetto nevertheless pressed the <u>same</u> <u>argument</u> to the jury:

> MR. THOMAS: . . . When a claim comes in to TriZetto, it is checked against a simple list. There's a simple list in the system outside of Clinical Logic, outside of the clinical editing software is simply a list of the A.M.A. codes. Claim comes in. It checks to see if that's a real code. If it is, it goes on. If it's not, it stops. A claim that comes in that does not have a real A.M.A. CPT code on it never even gets to this predetermined database that we were talking about a minute ago. That is not the function of that predetermined database. So we do not infringe Claim 1 because we do not use that database to do this simple look up function to find out whether a code is a real code. That takes care of Claim 1.

4/17/06 Trial Tr. at 151:12-152:1 (TriZetto Opening Statement). TriZetto's lead infringement expert put the same contradictory reading before the jury, along with his objectionable demonstratives:

> A. The important point here is that there are two separate and distinct databases in the Facets software and the other programs as well. There is a database called, labeled up there, the CPT code list, which contains an exhaustive list of all of the CPT codes taken as suggested by the little animation there directly from a publication provided by the American Medical Association. That's all the codes that the program is supposed to know about.

4/20/06 Trial Tr. at 852:7-15 (Direct Testimony of Randall Davis).

This argument and testimony not only improperly suggest to the jury that TriZetto's alleged differing functionality has some relevance to the meaning of the claim term, in effect it operates to <u>exclude</u> the preferred embodiment from the scope of the claim. See, e.g., '164 patent col. 5, ll. 11-15 and App. C at cols. 51-52 ("it is determined whether the code entry is valid or invalid by reference to the ALLCODE database 11"; "ALLCODE: Allcode is the file which contains every code . . ."). As the Federal

3

Circuit has "frequently stated, a construction that 'would not read on the preferred embodiment . . . would 'rarely if ever [be] correct and would require highly persuasive evidentiary support.'" Chimie and Rhodia, Inc. v. PPG Indus. Inc., 402 F.3d 1371, 1377 (Fed. Cir. 2005) (citations omitted). The Court has already made the determination that the construction does not exclude the embodiment and TriZetto's suggestion otherwise has prejudiced McKesson.

### B. TriZetto Introduced Evidence And Tried To Re-Argue The "Ascertaining" Element From Claims 2 And 16

Claims 2 and 16 of the '164 patent contain the following element:

ascertaining whether the at least one claim contains a
plurality of medical service codes;

During claim construction, TriZetto argued that the Court construe the term to be limited to requiring the function to "[i]dentifying if the claim contains more than one medical service code in order to determine whether multiple code edits should be checked." DI 159, Ex. B (TriZetto's "Proposed Claim Construction"), at 8.

The basis for TriZetto's position was Figure 2 (and a comparable Figure 4) from the '164 patent's specification:



4

See DI 159, Ex. B, at 8 (arguing that § 112(6) "governs this element because it identifies a function and not an act. As such, McKesson has failed to specifically identify structure corresponding to this claim limitation, as required by the Court's September 22, 2005 Order. TriZetto offers the following construction of the structure described in this element: Fig. 2, box 20; Fig. 4, box 23'; 25', 27, 27', col. 5, l. 53 ('if the number of codes determined was more than one, then the MULTIPLE PROGRAM is run')"; col. 59 ("if code-count >1[¶] DO MULTIPLE.prg[¶]end if"); see also D.I. 158 (TriZetto's "Claim Construction Opening Brief"), at 17-19.

  McKesson challenged TriZetto's position in its own Answering Brief.  See D.I. 255 (McKesson's "Answering Claim Construction Brief") at 15-18. McKesson argued, among other things, that "TriZetto seeks to create a correspondence with this structure by improperly importing the functional limitation, 'in order to determine whether multiple code edits should be checked.' Absent that improper limitation, there is no connection to the unnecessary structure TriZetto proposes -- a decision sequence that compares the number of codes to one in order to determine whether to run 'MULTIPLE.PRG.'" Id. at 17.

  Again, the Court rejected TriZetto's formulation in its Markman ruling and ordered the terms to be interpreted with their ordinary meaning. D.I. 307.

  Yet again, TriZetto did an end-run of this ruling in its presentation to the jury and submission of evidence:

> MR. THOMAS: . . . Could we have the next [demonstrative, "Fig. 2"], please?  This is a drawing out of the of the patent that describes the patented function, systems, a flow chart for software, and this step right here, here's the entry program.  That just means that's where it comes

5

> in. The claim enters there. The first thing it does is it goes to this. This is the yes no question. Number of codes greater than one. Is it greater than one or not? If yes, it goes this direction (indicating), and that interact database. That's the database that has the rules that determine whether two codes or three codes go together. Okay? So if yes, it goes there. There's the yes. If no, there's no, it goes down here (indicating), and it goes to something called by itself rule database. That's a database that does not have any of these rules for comparing codes and figuring out which codes go together. It's a crucial step in the process. It's written as a separate step into is the claims themselves, and it's depicted here. <u>That's not how the TriZetto system works</u>.
>
> . . . That is different, as you can see as plain as day, that is different from what is in this step in Claims 2 and 16, just is not a step in the TriZetto system. <u>That step is missing.</u> And that's in both Claims 2 and 16. So since that step is missing --

4/17/06 Trial Tr. at 153:25-154:21, 156:8-13 (TriZetto Opening Statement) (emphasis added). The prejudicial argument came in through TriZetto's infringement expert as well:

> Q.  Where in the patent spec do you want us to turn?
>
> A.  I'd like to look at Figure 2 as a way of understanding the meaning of the terms.
>
> Q.  Okay. I think the jury all has that and probably knows this figure real well since we've put it up a couple times. Trial Exhibit 1, Figure 2. What does Figure 2 show us?
>
> A.  Figure 2 is what's called a flow chart, which is a graphical way of, as I suspect some of you know, is a graphical way of indicating the sequence of steps that a program should carry out in order to accomplish a particular task.

4/20/06 Trial Tr. at 870:23-871:9 (Direct Testimony of Randall Davis). When asked on cross examination the basis for his conclusions, Dr. Davis appeared to be under the belief that the Court has not construed the claim terms:

> Q. Particularly these three claims that have been construed by the Court; correct?
>
> A. Except that the element ascertaining whether at least one claim contains a plurality of medical service codes to my knowledge has not, in fact, been construed by the Court.
>
> Q. Well, in fact, it has. Didn't your previous construction seek a construction that it was limited to the figures?
>
> A. Well, first, it wasn't my construction and, second, if I recall properly now, we're dealing with things that are legal and not technical. I believe there was a decision by the Court that there was some question as to the interpretation of the phrase, contains a plurality of medical service codes.

Id. at 911:5-19.

Thus, TriZetto argued to the jury that the element requires not only ascertaining whether a claim has one or more than one code, but also making a "yes/no determination" whether the number of codes in a claim is greater than one, as shown in Figure 2 of the patent, in order to decide whether multiple code edits should be checked. Again, this is precisely the argument TriZetto advanced at claim construction and lost.

Revisions to the instructions are needed to correct the damage done by TriZetto's positions. In the absence of these corrections, this jury trial will be reduced to a debate about Markman, precisely what the Federal Circuit prohibits. Therefore, McKesson urges the Court to adopt the corrective instructions suggested in Appendix A.

## II. INSTRUCTIONS MUST BE INCLUDED TO CORRECT FOR TRIZETTO'S OTHER IMPROPER INTRODUCTION OF EVIDENCE

TriZetto argued and introduced testimony to the jury concerning TriZetto's alleged prior practice of similar technology. The reason TriZetto did this is clear from its opening statement:

> MR. THOMAS: . . . Now, this TriZetto software was developed years before the patent even existed and it continued to be used out in the marketplace for ten years after the patent was issued, before any allegation of infringement was made.

4/17/06 Trial Tr. at 137:21-25 (TriZetto Opening Statement).

> . . . As Mr. Randall mentioned, there was a company named Erisco, E-r-i-s-c-o, and Erisco was purchased by TriZetto in the year 2000. But long before that, back in 1989, Erisco decided to develop this type of software, clinical editing software.

Id. at 141:25-142:5.

> . . . Now, this work was all finished. The PACE folks and the Erisco folks were all done with their work by late 1989. The patent came out in September of 1993, about four years later. Erisco obviously did not have the patent at the time they did this work. They created Clinical Logic from scratch.

Id. at 145:15-21.

As the jury question posed on Thursday, April 20 (asking whether "a program performing a function before a patent file date and issue date considered to be infringing even though they perform the same function") confirms, TriZetto was successful in confusing the jury into thinking that TriZetto's supposed proof of past practice excuses its infringement. The jury's question also indicates that the jury thinks the accused products were developed before the "file date," when, in fact, the patent's

8

effective filing date is in late 1988 -- before TriZetto contends its predecessors began working on any of the accused products.[2] Although the Court advised the jury it could nonetheless find infringement, McKesson will be prejudiced by the jury's confusion on this issue, including the patent's true, effective filing date.

Therefore, McKesson requests a jury instruction reiterating that that patent's effective filing date and issue date are irrelevant to infringement, while at the same time clarifying the patent's true, effective filing date so that the jury can conclude TriZetto did not develop its product first in any event.

---

[2] TriZetto's expert Philip Hawley gave fact testimony concerning Erisco's development of the its product. He testified that he began the project in the Spring of 1989 and completed it in the Fall of 1989. See 4/20/06 Trial Tr. at 795:15-796:6, 812:8-12.

9

**CONCLUSION**

The proceedings to date have left no doubt that the jurors will need guidance to properly interpret certain claim terms and that further corrective instructions are needed. McKesson respectfully submits that its proposed revisions be accepted.

By:    */s/ Michael A. Barlow*
Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff McKesson
   Information Solutions LLC

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500

DATED: April 22, 2006