IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MCKESSON INFORMATION SOLUTIONS LLC, )
                                                                   )
             Plaintiff,       )
                                                                   )
      v.                              )   Civil Action No. 04-1258-SLR
                                                                   )
THE TRIZETTO GROUP, INC.,              )
                                                                   )
             Defendant.     )

## MCKESSON'S OFFER OF PROOF FOR ITS
## REBUTTAL CASE DURING THE INFRINGEMENT PHASE

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff McKesson
   Information Solutions LLC

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500

DATED: April 23, 2006

Plaintiff McKesson Information Solutions LLC ("McKesson") respectfully submits for the Court's review its Offer Of Proof For Its Rebuttal Case During The Infringement Phase. This Offer concerns two subjects: (1) McKesson's request for the Court to review defendant The TriZetto Group, Inc.'s ("TriZetto's") recent challenge to all of McKesson's deposition designations, see TriZetto's objections, filed as an appendix;[1] and (2) TriZetto's tactics during McKesson's case-in-chief that have demonstrably prejudiced McKesson's ability to maintain sufficient time on its trial "clock."

## Preliminary Statement

McKesson rested its affirmative case on Wednesday, April 19 (subject to testimony and exhibits from Ms. Lampe) and McKesson has been informed that TriZetto will likely rest its affirmative case on Monday, April 24. McKesson therefore anticipates commencing its rebuttal case by the end-of-day Monday. In light of this, and in accordance with the Court's 48-hour notice rule, McKesson provided to TriZetto on Saturday, April 22, all of McKesson's deposition designations. TriZetto responded by objecting to each and every designation proposed by McKesson. As the Court will see, these objections are essentially no different from those it lodged at various times against McKesson during the course of McKesson's case-in-chief.

---

[1] McKesson will submit first thing Monday morning highlighted copies of the relevant deposition transcripts with objections noted.

However, TriZetto's reflexive response to McKesson's designations is wholly inappropriate, and substantively incorrect, in light of three, important changed circumstances:

First, TriZetto's expert has conceded the presence of the "predetermined database" and "medical service codes" elements in the accused products;

Second, it is now clear, with the benefit of hindsight, that TriZetto <u>must have known</u> these remarkable concessions by its expert were in the offing; yet TriZetto chose to repeatedly object to witness testimony on these subjects, forcing McKesson to unnecessarily use up its limited time concerning an issue that TriZetto knew would be mooted; and

Third, the Court determined on the last day of McKesson's case-in-chief that a claim for inducing infringement includes the elements: (i) "that defendant knew of the patent" and (ii) "that defendant knew or should have known that his or her encouragement or instructions would likely result in the other person doing that which you find to be infringement of the patent," and, ostensibly relating to the issue of intent, TriZetto pushed for the Court to allow historical testimony by TriZetto's witnesses on impermissible and prejudicial subjects.

The manifest prejudice to McKesson created by these issues should be corrected and TriZetto penalized.

### A. TriZetto's Concessions Concerning The Terms "Predetermined Database" And "Medical Service Codes" Render Moot Its Previous Objections To McKesson's Designation Of Party And 30(b)(6) Testimony Concerning The Patent

As the Court is well aware, a cornerstone of McKesson's affirmative case on infringement were the admissions by TriZetto's own executives, 30(b)(6) designees, and customers that TriZetto's accused products performed the steps of McKesson's

patent. Not surprisingly, TriZetto vigorously challenged the admission of this material, arguing variously that its introduction violated, inter alia, Fed. R. Evid. 402, 403, 602 and 701. Much of McKesson's limited time for trial was devoted to responding to TriZetto's challenges. Ultimately, the Court precluded much of McKesson's proposed testimony, applying a rule of thumb that excluded any testimony concerning claim terms subject to the Court's Markman rulings. See D.I. 340 (April 17, 2006 Order); 4/18/06 Trial Tr. at 483-84 (only questions concerning terms "not specifically construed" by the Court would be allowed). With respect to Claims 1, 2 and 16, the terms concerned "predetermined database" and "medical service codes." See D.I. 307 (Court's April 5, 2006 claim construction), ¶¶ 1-4.

TriZetto's primary argument was that the evidence was not admissible opinion evidence or not evidence from a person of "ordinary skill in the art":[2]

```
 4        MR. THOMAS: Your Honor, this is classic
 5   opinion testimony. These folks -- these folks don't know
 6   anything about the patent. They are shown the patent for
 7   the first time.
 8        What they are really being asked is, do you
 9   have an opinion about whether what you've just read,
10   this patent, corresponds with your system? All they
11   know about the system is what they see on the screen.
12   The Federal Rule of Evidence 701 says that you cannot
13   allow lay testimony unless it's, A, rationally based on
14   the perception of the witness. So, first of all, they
```

---

[2] Although TriZetto stated in court that a person of ordinary skill in the art is someone with "computer programming background or understanding," 4/18/06 Trial Tr. at 478:4-6, TriZetto's experts disagreed on this. Compare 10/24/05 Randall Davis Report at 4 (person is "someone with an undergraduate degree in Computer Science with at least one course in artificial intelligence, and at least one year of experience in building expert systems") with 11/30/05 Philip Hawley Dep. at 140:11-25 (person is someone with "medical training, not exclusively, but typically a person of medical training; for example, a nurse or a physician who has sufficient experience in claim auditing work experience").

3

> 15  have to know about the patent and they have to know
> 16  about the Trizetto system.
> 17       B, it has to be helpful to a clear
> 18  understanding of the witness' testimony for the
> 19  determination of a fact in issue.
> 20       And, C, it's not based on scientific,
> 21  technical or other specialized knowledge within the scope
> 22  of Rule 702.

4/17/06 Trial Tr. at 222.

> 12       MR. THOMAS: Your Honor, the issue is we're
> 13  not just asking does your system work. Where language
> 14  is taken directly, even if the patent isn't even slid
> 15  in front of the person's face, where language is taken
> 16  directly out of a claim, and it's asked to be -- you
> 17  know, whether or not that matches up with a product,
> 18  that language in the claim, as you say under Phillips,
> 19  has to be read in light of the specification and one
> 20  of ordinary skill in the art.

4/18/06 Trial Tr. at 482. Thus, TriZetto's challenge was based on whether the jury should be permitted to hear testimony of allegedly questionable reliability. See Asplundh Mfg. Div. v. Benton Harbor Eng'g, 57 F.3d 1190, 1202 (3d Cir. 1995) ("[T]he centerpiece of the Daubert regime is the gatekeeping role of the trial judge, whose duty it is to screen challenged expert testimony and assure that it is sufficiently reliable to be of assistance to the jury.").

*However, TriZetto did not tell McKesson or the Court that its own expert would concede that the Court-construed claim terms were performed by the accused products.* During trial, Randall Davis, testified on these terms as follows:

> 22  Q.  Okay. And do all three of the accused systems
> 23  have a means for operating on a predetermined database
> 24  containing medical service codes and a set of
> 25  relationships among the medical service codes defining
> 1   whether selected ones of the medical service codes are

4

>  2  valid when input with other selected ones of the
>  3  medical service codes?
>  4  A.  I believe so.
>  . . .
> 10  Q.  . . . Do each of the
> 11  accused systems practice a method for processing input
> 12  claims containing at least one medical service code?
> 13  A.  They do have a method for, yes.

4/17/06 Trial Tr. at 905 (cross examination of Randall Davis) (emphasis added); see also id. at 852:7-9, 17-23 (conceding on direct that clinical editing rules are incorporated into the predetermined database).

TriZetto's concessions on these points render moot any challenge to the subject witnesses' testimony. Under Rule 701, for example, the opinion testimony can come in if the testimony is "(a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Since the witness' testimony is directly in line with the concessions by TriZetto, there is no longer a basis for excluding it from the jury. To put it another way, the fact that the witnesses read the actual terms of the patent during his deposition, rather than being questioned about them in the abstract, can no longer be challenged on reliability grounds because their application to the products is now undisputed.

> B.  **TriZetto Permitted McKesson To Fight These Issues In Court, All While Knowing That TriZetto's Expert Would Make The Dispute Irrelevant**

McKesson has obviously devoted a huge amount of court time, as well as its internal resources, in trying to resolve this evidentiary dispute as well as

accommodating the Court's rulings concerning the depositions. TriZetto was perfectly willing to let this go on, even though it must have known that its expert would concede these two critical points concerning the application of the claim terms to the accused products. By withholding this information, TriZetto inflicted unnecessary delay and expense on the jury, on the Court and on McKesson. The immediate effect on McKesson is that it lost many hours of otherwise available time that it could have used to bring additional evidence before the jury. McKesson requests that TriZetto be penalized for its conduct by having to forfeit some of its time to McKesson for the remainder of the jury trial.

### C. TriZetto's Introduction Of Evidence Purporting To Show Its Independent Development Of The Accused Products In The Late 1980s Permits McKesson To Put On Its Own Evidence Of TriZetto's State Of Mind

TriZetto argued and introduced testimony to the jury concerning TriZetto's alleged prior practice of similar technology. The reason TriZetto did this is clear from its opening statement:

```
21   MR. THOMAS: Now, this Trizetto software was developed
22   years before the patent even existed and it continued to
23   be used out in the marketplace for ten years after the
24   patent was issued, before any allegation of infringement
25   was made.
```

4/17/06 Trial Tr. at 137 (TriZetto Opening Statement).

```
25         As Mr. Randall mentioned, there was a
1    company named Erisco, E-r-i-s-c-o, and Erisco was
2    purchased by Trizetto in the year 2000. But long before
3    that, back in 1989, Erisco decided to develop this type
4    of software, clinical editing software.
```

Id. at 141-42.

```
15          Now, this work was all finished.  The PACE
16   folks and the Erisco folks were all done with their work
17   by late 1989.
18          The patent came out in September of 1993,
19   about four years later.  Erisco obviously did not have
20   the patent at the time they did this work.  They created
21   Clinical Logic from scratch.
```

Id. at 145. Subsequently, at TriZetto's urging, the Court set forth a standard of law midway through trial governing the claim of inducing infringement. After substantial back-and-forth, the Court concluded that the standard included the following two elements, among others:

```
19          Second, that defendant knew of the patent.
20          Third, that defendant knew or should have
21   known that his or her encouragement or instructions
22   would likely result in the other person doing that which
23   you find to be infringement of the patent.
```

11/19/06 Trial Tr. at 538 (Court's instructions).

As the jury question posed on Thursday, April 20 (asking whether "a program performing a function before a patent file date and issue date considered to be infringing even though they perform the same function") confirms, TriZetto successfully confused the jury into thinking that TriZetto's supposed proof of past practice excuses its infringement.

McKesson should be permitted to adduce its own evidence of TriZetto's intent; namely, what its executives and 30(b)(6) witnesses ("most knowledgeable" about the products) understood about whether the accused products matched the patent steps. It is not a question of whether the construction is correct; but whether TriZetto believed it

7

was correct. Thus, for this independent reason the evidence sought by McKesson should come in on rebuttal.[3]

## CONCLUSION

McKesson's designations are critical to its rebuttal case. McKesson respectfully submits that in light of the changed circumstances discussed above, the Court should overrule TriZetto's objections and allow McKesson's proposed testimony.

By:    */s/ Michael A. Barlow*
Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff McKesson
   Information Solutions LLC

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500

DATED: April 23, 2006

---

[3] McKesson has also submitted separately proposed corrective jury instructions. D.I. 345.