IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC,<br><br>      Plaintiff,<br><br>   v.<br><br>THE TRIZETTO GROUP, INC.<br><br>      Defendant. | Civil Action No. 04-1258-SLR |

**THE TRIZETTO GROUP, INC.'S RESPONSE TO MCKESSON'S
<u>PROPOSED REVISIONS TO THE JURY INSTRUCTIONS (D.I. 345)</u>**

                MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                Jack B. Blumenfeld (No. 1014)
                Rodger D. Smith, II (No. 3778)
                1201 N. Market Street
                Wilmington, Delaware 19899
                (302) 658-9200
                Attorneys for Defendant The TriZetto Group, Inc.

Of Counsel:

GIBSON, DUNN & CRUTCHER LLP
Jeffrey T. Thomas
David Segal
Michael A. Sitzman
Jamboree Center, 4 Park Plaza
Irvine, CA  92614

April 23, 2006

I.   **INTRODUCTION**

McKesson's proposed revisions to the Court's jury instructions are an attempt to advance new claim constructions on the eve of closing arguments. Throughout the discovery and pretrial phases of this case, McKesson has repeatedly argued that the "determining" and "ascertaining" steps of the claims at issue should be given their "ordinary meaning."[1] *See, e.g.*, D.I. 148, Exh. A, pp. 4, 8. Now, after the close of evidence, McKesson wants the Court to create new self-serving constructions for these terms, and instruct the jury accordingly. In so doing, McKesson completely contradicts itself, arguing in one breath that the specification should be used to understand the meaning of the subject claim term, and in the next that it should be completely ignored. *Compare* McKesson's Memorandum, p. 4 (Claim 1 – "determining" step), with p. 7 (Claims 2 and 16 – "ascertaining" step). McKesson's revisions are without merit and should be rejected.

II.   **TRIZETTO HAS NOT RE-ARGUED CLAIM CONSTRUCTION**

As justification for its new claim construction, McKesson asserts that TriZetto is attempting to re-argue claim construction. This is simply wrong. TriZetto has not re-argued any aspect of the claim construction. On the contrary, TriZetto has offered competent evidence from its infringement expert (Professor Randall Davis), a person of ordinary skill in the art, to explain how the accused products do not meet the limitations of the claims at issue. As part of his analysis, Prof. Davis looked to the '164 specification for guidance. TriZetto has not sought to

---

[1]   While TriZetto requested construction of these terms, the Court has not construed them. *See* D.I. 307.

side-step this Court's claim construction, nor has it violated any legal principles applicable to claim construction.

In the Federal Circuit's *en banc* decision in *Phillips v. AWH Corp.,* the Federal Circuit confirmed the "bedrock principle" that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1311-26 (Fed. Cir. 2005). *See also Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979-81 (Fed. Cir. 1995) (en banc), *aff'd* 517 U.S. 370 (1996). The words of the claim are generally given the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention. *Id*. at 1312-13. This fundamental concept is what is often referred to in shorthand as "ordinary meaning." *See Combined Sys. Inc. v. Defense Tech. Corp. of Am.*, 350 F.3d 1207, 1216 n.6 (Fed. Cir. 2003).

The claims do not stand alone, however, but are part of a fully integrated written instrument, and must be read in view of the specification, of which they are a part. *Id*. at 1315. The *Phillips* court reiterated the holding in *Vitronics* that "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Id.* (*citing Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

McKesson's expert, Dr. Musen, agrees with TriZetto that the specification is necessary to help understand the patent and the claims.

> Q. [I]f I understood you correctly – and please correct me if I'm wrong – the examples [in the '164 patent specification] were helpful to you to understand the patent and to understand the claims?
>
> A. Examples of the entire specification, yes.

2

> Q. And the specification, which the Court has seen and the jurors have seen, [is] very long, it has a lot of detail in it, but all of that generally helps understand the patent claims?
>
> A. Correct.

Apr. 18, 2006 Trial Tr. 417:16-25. Given that Dr. Musen's testimony on direct examination relied almost exclusively on an analysis of Example 1 in the specification and a comparison to the accused products, McKesson must agree with this proposition as well. *See id.*, 303:13-309:13; 332:17-362:14. Accordingly, there is no justification to revise the jury instructions as McKesson has proposed.

### A. The "Determining" Step From Claim 1

The Court has construed the term "predetermined database" to mean, "A set of decision-making rules that incorporate a medical code classification system and expert medical clinical judgment." D.I. 320, ¶ 11. That predetermined database is an element of every claim at issue.

In the steps of Claim 1, a determination is required to be made as to whether a medical service code is not present in the predetermined database. After hearing the evidence that the TriZetto's systems do not check the predetermined database to validate medical service codes, McKesson now seeks an affirmative instruction that checking the ALLCODES database is sufficient to satisfy the elements of the determining step in Claim 1. McKesson's self-serving instruction is entirely improper.

As a preliminary matter, McKesson is attempting to misdirect the jury so that it will apply its strained interpretation of the "determining" step and find infringement. Additionally, the proposed language is misleading since only literal infringement is at issue here. This proposed language is contrary to the established case law that a method claim is literally infringed only if *each and every* step of each of the asserted claims of the patents in suit has been

3

practiced by the defendant. *See NTP, Inc. v. Research in Motion Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005); *Roberts Dairy Co. v. United States*, 208 Ct. Cl. 830, 847 (Ct. Cl. 1976) (citations omitted); *see also MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1352 (Fed. Cir. 2005) (stating that there is no literal infringement if even one claim limitation is missing or not met). McKesson's use of the language "any method" attempts to back-door a doctrine of equivalents argument that this Court has already ordered McKesson is precluded from presenting. *See* D.I. 311 at 55.

### 1. During Claim Construction, McKesson Argued That This Claim Element Should Be Given Its Ordinary Meaning.

During claim construction, McKesson argued that this claim element should be given its ordinary meaning. TriZetto has offered expert testimony from a person of ordinary skill in the art, who has reviewed the claims and claim language in light of the specification, and compared it to the TriZetto systems and concluded that they do not infringe Claim 1 of the patent.

McKesson's understanding of the ordinary meaning of this claim term was explained in its answering claim construction brief.[2] In its answering claim construction brief, McKesson stated that there are two possible examples in the specification as to how the lookup function of claim 1 of the '164 patent functioned: (1) the program might lookup a code directly in the predetermined database; and (2) the program might lookup a code in a list of all possible codes that could be present in the predetermined database. D.I. 255 at 19. McKesson's brief concedes

---

[2] McKesson expressly stated that this argument applied to the "express language" for Claim 1. *See* D.I. 255 at 18.

that the ALLCODE database described in the specification is different from the predetermined database described in the claims. D.I. 255 at 19-20.

### 2. TriZetto Has Offered Evidence That A Direct Lookup Of A Medical Code In The Predetermined Database Is The Only Way To Perform The Determining Step Of Claim 1.

To the extent that TriZetto has argued and presented evidence that the ordinary meaning of the determining step of Claim 1 requires a direct lookup of a code in the predetermined database, this evidence is *consistent* with McKesson's own argument in its claim construction brief. In its opening statement, TriZetto stated that it does not perform the steps of Claim 1 because it does not look at the predetermined database. Apr. 17, 2006 Trial Tr. 148:20-149:15. This understanding of the meaning of the determining step of Claim 1 is consistent with the ordinary meaning that McKesson put forth in its answering claim construction brief. *See* D.I. 255 at 19 (stating that a program may lookup the predetermined database). Likewise, at trial, TriZetto's expert testified that "there are two separate and distinct databases in the Facets software and the other programs as well." Apr. 20, 2006 Trial Tr. 852:7-9.

### 3. McKesson's "Curative" Instruction Changes The Scope Of The Patent Claim.

McKesson's suggestion that TriZetto is reading a preferred embodiment out of the claim term also ignores the prosecution history. While in general the claims of a patent are not limited to the preferred embodiment, when an applicant for a patent commits to a particular meaning for a patent term in the specification or during prosecution, that meaning will be binding on the applicant during litigation. *See, e.g., Wang Labs., Inc. v. Am. Online, Inc.*, 197 F.3d 1377, 1383 (Fed. Cir. 1999) ("[W]hen the preferred embodiment is described as the invention itself, the claims are not entitled to a broader scope than that embodiment"). Furthermore, where the

5

patentee disclaims material during prosecution that covers a preferred embodiment, a preferred embodiment may be excluded from the scope of the patent claims altogether. *Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319, 1327 (Fed. Cir. 2002). In adding new claims, including the claim that eventually became Claim 1, the patentee specifically distinguished the subject matter of the '164 patent over the prior art because the prior art contains "no teaching or suggestion of a database containing medical service codes and relationships among the codes." *See* D.I. 257 at 15 & D.I. 258, Ex. O at 18 (Prelim. Amend. dated Jan. 29, 1991). Thus, Claim 1 is specifically limited to the predetermined database and the predetermined database must contain medical service codes and relationships among the codes. As such, even if TriZetto were reading the preferred embodiment out of the patent claims, such a contention is consistent with the specification and the prosecution history. *See Wang Labs., Inc.*, 197 F.3d at 1383; *Rheox, Inc.*, 276 F.3d at 1327.

Here, McKesson's "curative" instruction, in fact, changes the scope of the patent claims entirely. McKesson ignores the Federal Circuit's cautionary note that claims are to be construed "independent of the accused product, in light of the specification, the prosecution history, and the prior art", and that "the construction of claims is simply a way of elaborating the normally terse claim language[] in order to understand and explain, *but not to change*, the scope of the claims." *Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1347 (Fed. Cir. 2000) (emphasis added). By adding the ALLCODES database to the claim construction instruction, McKesson impermissibly expands the scope of a claim that was explicitly limited to the predetermined database during prosecution in order to overcome the prior art.

  **4.** **No Curative Instruction Is Necessary Since There Is No Basis To Instruct The Jury To Ignore Evidence That McKesson Has Advocated *Supports* Its Understanding Of Claim 1.**

Both McKesson and TriZetto have presented evidence to the jury concerning the "determining" step of Claim 1. McKesson has presented evidence by its expert that any one of three possible functions is within the "determining step." *See, e.g.*, Apr. 18, 2006 Trial Tr. 328:24-329:1 (stating that "You could search the database one element at a time. You could have an index. You could phone a friend. You can do lots of things."). TriZetto has similarly presented testimony from its expert that TriZetto's product does not look into a predetermined database nor does it look at an index of the predetermined database. *See, e.g.*, 851:12-853:5. The evidence proffered by TriZetto, in fact, merely demonstrates that TriZetto's programs do not operate in any of the three ways in which McKesson's expert stated that claim 1 requires TriZetto's system to behave in order to infringe. *See* Apr. 20, 2006 Trial Tr. 852:7-853:5 (stating that the TriZetto products use two separate and distinct databases and one is not an index of the other).

Because all the evidence presented by TriZetto is consistent with the Court's claim construction, arguments advanced by McKesson itself during claim construction, and Federal Circuit precedent, there is no basis for a curative instruction on this issue.

  **B.** **The "Ascertaining" Step of Claims 2 and 16.**

In contrast to claim 1, where McKesson reads the specification into the claim, McKesson suggests that the claim term "ascertaining whether the at least one claim contains a plurality of medical service codes" should not be limited to the steps illustrated in Figures 2 and 3 of the '164 Patent. *Id.*, App. A at A-5 ("Claim Construction") (emphasis added).

7

As noted above in Section II.A., *supra*, McKesson's proposed "any method" language attempts to apply a doctrine of equivalents analysis to a case in which only literal infringement is at issue. Likewise, the suggestion that this step need not be performed *at all* is at odds with Federal Circuit precedent requiring that a method claim is literally infringed only if *each and every* step of each of the asserted claims of the patents in suit has been practiced by the defendant. *See, e.g., NTP, Inc.*, 418 F.3d at 1318; *MicroStrategy Inc.*, 429 F.3d at 1352.

### 1. McKesson Has Argued That This Claim Term Should Be Given Its Ordinary Meaning.

Once again, in its pretrial claim construction briefs, McKesson argued that this claim term should be giving its ordinary meaning. *See, e.g.*, D.I. 255 at 15-16 (stating that "[t]he functional language of this element speaks for itself, and TriZetto's attempt to introduce unclaimed limitations must fail."). At the claim construction and summary judgment stage, the Court did not construe this claim term. However, the Court noted that that there is a triable issue of fact as to whether this claim element is present in the TriZetto products (at least as far as the means-plus-function equivalent of this claim term). D.I. 301 at 7 ("[T]he court declines to grant summary judgment for plaintiff because defendant, through Dr. Davis' expert report and deposition, raised a genuine issue of material fact regarding the presence of this limitation in the accused product that plaintiff has not rebutted.").

### 2. TriZetto Has Offered Evidence From One Of Ordinary Skill In The Art Why TriZetto's Products Do Not Perform This Step.

TriZetto has presented evidence through its expert demonstrating why the TriZetto systems do not perform the "ascertaining" step of Claims 2 and 16. Specifically, TriZetto's expert, Dr. Randall Davis, testified that "ascertaining a plurality and counting are two different

8

things." Apr. 20, 2006 Trial Tr. 866:23-24; *see also id*. at 867:10-868:1 (stating that ascertaining requires a "yes" or "no" determination). In support of his understanding of the ordinary meaning of the claim terms, Prof. Davis testified that Figure 2 of the patent specification contained a flow chart that explains the sequence of steps that the program should carry out in order to "ascertain whether the at least one claim contains a plurality of medical service codes." *Id*. at 871:5-9. As discussed above, reference to the specification is appropriate in order to understand the meaning of a claim term. *See Phillips*, 415 F.3d at 1315 (noting that the specification "is the single best guide to the meaning of a disputed term."); *see also Vitronics Corp*, 90 F.3d at 1582. Thus, the evidence presented by TriZetto is consistent with applicable Federal Circuit precedent.

Although TriZetto has never contended that Figure 2 limits the claim language, Dr. Musen (McKesson's expert) admitted that Figure 2 in the '164 patent represents the "ascertaining step." Apr. 18, 2006 Trial Tr. 443:1-3. For purposes of infringement, the issue is whether the TriZetto systems perform a patented method that includes each of the steps set forth in the claims. It is not enough that the accused product performs one or some of the steps – it must carry out the method described in the patent claim. As Professor Davis testified (and Dr. Musen agreed), Figure 2 assists the experts in understanding and explaining how the ascertaining step fits into the patented method.

### 3. There Is No Basis To Instruct The Jury To Ignore The Evidence Proffered By TriZetto.

Because the evidence presented by TriZetto is consistent with Federal Circuit precedent and McKesson's own assertion that the "ordinary meaning" of the claim terms should apply, there is no basis to instruct the jury to ignore the evidence proffered by TriZetto.

In fact, McKesson's revisions to the claim construction amply demonstrate its attempt to manipulate both sides of this argument. While McKesson's expert relied heavily on Example 1

9

of the specification in explaining the patent, McKesson seeks to preclude TriZetto using any portion of the specification to explain the steps of the patent claims. *See, e.g.*, Apr. 18, 2006 Trial Tr. at 303:14-309:12 (discussing Example 1 of the specification).

### III. EVIDENCE PROFFERED BY TRIZETTO AS TO THE DEVELOPMENT OF ITS PRODUCTS IS RELEVANT AND NOT PREJUDICIAL

The fact that the TriZetto systems were designed to have two separate databases – one containing a list of CPT codes and another containing the rules and relationships for purposes of clinical editing – is a historical artifact of the way the system was programmed prior to the inclusion of clinical editing in 1984. TriZetto has not made any argument in this phase of the trial regarding the alleged validity of the '164 patent. Nor has TriZetto stated that its own system serves as prior art. The Court has ruled on this issue and instructed TriZetto not to present this evidence and TriZetto has complied. The Court has also already provided guidance to the jury on this matter in response to the jury's questions. Apr. 20, 2006 Trial Tr. 903:9-18. No further instruction is necessary.

### IV. CONCLUSION

McKesson's proposed revisions to this Court's jury instructions are misleading, irrelevant, and lack adequate legal support and should be rejected.

                    MORRIS, NICHOLS, ARSHT & TUNNELL LLP


                    */s/  Jack B. Blumenfeld*
                    Jack B. Blumenfeld (No. 1014)
                    Rodger D. Smith, II (No. 3778)
                    1201 N. Market Street
                    Wilmington, Delaware 19899
                    (302) 658-9200
                      Attorneys for Defendant The TriZetto Group, Inc.

Of Counsel:

GIBSON, DUNN & CRUTCHER LLP
Jeffrey T. Thomas
David Segal
Michael A. Sitzman
Jamboree Center, 4 Park Plaza
Irvine, CA  92614

April 23, 2006

517146

**CERTIFICATE OF SERVICE**

I, Jack B. Blumenfeld, hereby certify that on April 23, 2006 I electronically filed The TriZetto Group, Inc.'s Response to McKesson's Proposed Revisions to the Jury Instructions with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

>Thomas J. Allingham, II
>Skadden, Arps, Slate, Meagher & Flom LLP

I also certify that copies were caused to be served on April 23, 2006 upon the following in the manner indicated:

**BY HAND**

>Thomas J. Allingham, II
>Skadden, Arps, Slate, Meagher & Flom LLP
>One Rodney Square, P.O. Box 636
>Wilmington, DE  19899

>*/s/  Jack B. Blumenfeld*
>Morris, Nichols, Arsht & Tunnell LLP
>1201 N. Market Street
>P.O. Box 1347
>Wilmington, DE  19899
>(302) 658-9200
>jblumenfeld@mnat.com

1