IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MCKESSON INFORMATION SOLUTIONS
LLC,

                Plaintiff,

    v.

THE TRIZETTO GROUP, INC.

              Defendant.

Civil Action No. 04-1258-SLR

## THE TRIZETTO GROUP, INC.'S MOTION FOR JUDGMENT OF
## NONINFRINGEMENT AS A MATTER OF LAW

Pursuant to Fed. R. Civ. P. 50(a), The TriZetto Group, Inc. ("TriZetto") hereby moves for

judgment as a matter of law ("JMOL") of non-infringement of Claims 1, 2 and 16 of U.S. Patent

No. 5,253,164 (the "'164 patent").

## I.      INTRODUCTION

At the close of its case, plaintiff McKesson Information Solutions LLC ("McKesson")

had not offered evidence sufficient to prove that the accused TriZetto products (Facets,

ClaimFacts and QicLink) literally infringe Claims 1, 2 and 16 of the '164 patent. Accordingly,

judgment of non-infringement as a matter of law should be granted in favor of TriZetto on all

three claims.

McKesson presented (1) the testimony of infringement expert Dr. Mark Musen and (2)

snippets of videotaped deposition testimony of certain TriZetto employees and customers in

support of its case. None of this testimony proves that TriZetto's products literally infringe all elements of Claims 1, 2 and 16.[1]

Dr. Musen's testimony contained fatal flaws with respect to each of Claims 1, 2 and 16. To begin with, Dr. Musen did not review the source code to observe the details of how the TriZetto products operate. Instead, he relied on a source code analysis performed by Dr. Margaret Johnson, McKesson's other infringement expert. But McKesson chose not to offer Dr. Johnson's testimony at trial. Hence, much of Dr. Musen's testimony lacks a substantive basis. Indeed, Dr. Musen admitted he does not have knowledge of several features of the TriZetto products critical to proving infringement.

As to Claim 1, Dr. Musen acknowledged he does not know how the TriZetto products perform medical code validation, the overall function described in Claim 1. He has no knowledge as to whether the TriZetto products check the predetermined database to see if a medical code is not present, as directed in Claim 1. Dr. Musen speculated that the TriZetto products might use an index to perform the code validation function (which is not what Claim 1 actually requires), but he was not even sure about that. Consequently, Dr. Musen has no basis for opining on the "determining" and "informing" steps of Claim 1. McKesson introduced no other evidence on these steps.

As to Claim 2, McKesson's infringement case fails because it has not shown that the TriZetto products perform (1) the "determining" step, (2) the "authorizing" and "rejecting" steps, or (3) the "ascertaining" step.

- Dr. Musen admitted that his expert report contained no analysis of how the TriZetto products determine that two codes are "mutually exclusive due to non-medical criteria." Thus, any opinion offered at trial was outside the scope of his

---

[1] The Court has precluded McKesson from asserting infringement under the doctrine of equivalents. April 5, 2006 Tr., at 55:23-56:1.

report.[2] Pursuant to the Court's definition, the predetermined database does not contain rules based on "non-medical criteria," but rules built on "expert medical clinical judgment." Dr. Musen's examples were all rules that are in TriZetto's predetermined database, and he presented no evidence of any "non-medical" rules in the TriZetto systems.

- Dr. Musen provided no examples in the TriZetto products of "authorizing" and "rejecting" medical codes based on a determination that they are "mutually exclusive." In the two clinical editing examples Dr. Musen provided, the steps of "authorizing medical service codes which are not mutually exclusive" and "rejecting medical service codes which are mutually exclusive" were not performed. Dr. Musen's examples each involved a medical claim containing two codes. Dr. Musen testified that both codes on the claim were "mutually exclusive." Yet, those "mutually exclusive" codes were not both rejected, as called for in Claim 2 – one was rejected and one was authorized. This does not track the language of Claim 2. In fact, Dr. Musen admitted that his opinion is valid only if the claim language is changed.

- Dr. Musen did not show that the TriZetto products perform the "ascertaining" step of Claim 2. He testified that the TriZetto products "count" codes, but that is not the same as "ascertaining," as clearly indicated in the '164 specification. Figures 2 and 3 of the specification plainly distinguish between "counting" codes and "ascertaining" a plurality. McKesson offered no evidence to show that the TriZetto products literally ascertain whether more than one code exists on a submitted medical claim. Moreover, Dr. Musen did not know whether the

---

[2] The Court warned that if a party is found to have introduced expert testimony beyond the scope of the expert's report, it will be required to pay for a new trial, should it prevail. April 18, 2006 Trial Tr., at 265:14-18.

"counting" feature on which he focused was actually a functional step in the clinical editing method performed by the TriZetto products.

As to Claim 16, McKesson has not proven the presence of the "ascertaining" step, as explained in connection with Claim 2. Also, McKesson did not prove infringement of the "authorizing" and "rejecting" steps of Claim 16. Dr. Musen's trial testimony on "authorizing" and "rejecting" medical *claims*, as opposed to medical *codes*, was outside the scope of his report, which included no analysis of those elements. The examples Dr. Musen gave at trial show that he is disregarding the language of Claim 16 by substituting the word "code" for "claim." Moreover, Dr. Musen admitted, after reviewing a TriZetto product manual, that the TriZetto products do not reject medical claims in response to clinical editing – *i.e.*, "in response to the determining step" – as required by Claim 16.

The videotaped deposition testimony of TriZetto's employees and customers also does not supply substantial evidence concerning the claim elements addressed above. In fact, most of the videotaped testimony supports TriZetto's non-infringement positions.

Finally, Dr. Musen admitted that the TriZetto products are capable of substantial non-infringing uses. Indeed, the TriZetto products can be used without ever installing the clinical editing software that is accused of infringing in this case. Accordingly, McKesson's claim for contributory infringement cannot survive.

## II.    STANDARD FOR PROVING LITERAL INFRINGEMENT

McKesson accuses three of TriZetto's software products – Facets, ClaimFacts and QicLink – of infringing claims 1, 2, and 16 of the '164 patent. McKesson has the burden of proving patent infringement by a preponderance of the evidence. *SmithKline Diagnostics, Inc. v. Helena Lab Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988); *Nomos Corp. v. Brainlab, Inc.*, 239 F. Supp. 2d 430, 434 (D. Del. 2003), *aff'd*, 357 F.3d 1364 (Fed. Cir. 2004); *Novartis Pharms. Corp. v. EON Labs Mfg.*, 234 F. Supp. 2d 464, 467 (D. Del. 2002), *aff'd*, 363 F.3d 1306 (Fed. Cir. 2004). An accused infringer has no burden of proving non-infringement. *Under Sea Indus., Inc.*

4

*v. Dacor Corp.*, 833 F.2d 1551, 1557 (Fed. Cir. 1987) ("[t]he district court erred to the extent it apparently placed the burden on [the accused infringer] of showing non-infringement").

An infringement analysis involves two steps: "1) claim construction; and 2) application of the properly construed claim to the accused product." *Tech Search, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002). The Court has construed the patent claims in its Order of April 5, 2006 (D.I. 307), as amended by its Order of April 11, 2006 (D.I. 320).[3]

The Court must compare the accused products with the properly construed claims of the patent. *Nomos*, 239 F. Supp. 2d at 434-35; *Novartis*, 234 F. Supp. 2d at 467. Literal infringement does not occur unless each element of the asserted claims is literally present in the accused products. *Nomos*, 239 F. Supp. 2d at 434; *Novartis*, 234 F. Supp. 2d at 467. All of the limitations of a claim must be considered meaningful and the absence of even one limitation negates infringement. *Perkin-Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1533 (Fed. Cir. 1987); *Unique Concepts, Inc. v. Brown*, 939 F.2d 1553, 1562 (Fed. Cir. 1991).

## III.    MCKESSON HAS FAILED TO PROVE LITERAL INFRINGEMENT OF CLAIMS 1, 2 AND 16

Judgment as a matter of law is appropriate when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a)(1). The law of the regional circuit applies to the evaluation of a motion for judgment as a matter of law. *See, e.g., Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1248 (Fed. Cir. 2005). Under Third Circuit law, the issue on a motion for judgment as a matter of law is whether there is a "legally sufficient evidentiary basis" for a jury to render a

---

[3] TriZetto respectfully disagrees with the Court's decision in the April 11, 2006 Order to alter its definition of "predetermined database." TriZetto also believes that the "ascertaining" steps of Claims 2 and 16 should have been construed in accordance with the specification, as requested by TriZetto. Finally, as TriZetto argued in its claim construction briefing, the term "non-medical criteria" in Claim 2 is indefinite, rendering the claim invalid.

verdict for the opposing party. *Jaasma v. Shell Oil Co.*, 412 F.3d 501, 503 (3d Cir. 2005);

*Walter v. Holiday Inns, Inc.*, 985 F.2d 1232, 1238 (3d Cir. 1993).

**A.      McKesson's Expert, Dr. Musen, Lacks A Substantive Basis For Most Of The Infringement Opinion He Offered At Trial.**

McKesson has built its case almost entirely on the expert testimony of Dr. Musen.  Much

of that testimony, however, has no substantive basis, given McKesson's decision to jettison the

testimony of McKesson's other expert, Dr. Johnson.

Dr. Musen admitted that he did not examine the source code – *i.e.*, the human-readable

software – to understand the details of *how* the TriZetto products operate.  Instead, he relied on

an analysis performed by Dr. Johnson, plus a limited sample of source code that was included in

her report:

> Q.  You looked at the manual and all of the other operations details, but the one thing you didn't look at was the source code for the actual programs, right?
>
> Dr. Musen:  I looked at the source code that was included in Dr. Johnson's report.  I didn't look at any other source codes.
>
> Q.  You didn't upload any of the source codes or look at the computer program and look at any of the details of the computer program?
>
> Dr. Musen:  No.  That was Dr. Johnson's job.
>
> Q.  Okay.  And you relied on Dr. Johnson in issuing your report?
>
> Dr. Musen:  Certainly.

April 18, 2006 Trial Tr., at 422:1-423:5.

Dr. Musen's opinion hinged on a software analysis performed by Dr. Johnson.  *See* April

18, 2006 Trial Tr., at 437:5-7 (Dr. Musen:  "I find it inconceivable that Dr. Johnson would get it

wrong when she evaluated the software").  Yet, McKesson chose not to offer Dr. Johnson's

testimony at trial, leaving Dr. Musen without a software analysis to support his opinion.

Without Dr. Johnson's testimony, Dr. Musen does not have any basis for his infringement

opinion.  For example, Dr. Musen testified that he did not have detailed knowledge regarding the

contents and operation of the predetermined database in the TriZetto products:

Q. Let's start with the data that's in the database. Have you looked at all the data in the database?

Dr. Musen: I have not looked at all the data. I've seen samples of the database either directly through Dr. Johnson's report or indirectly what the products displayed to users, as we saw earlier today.

Q. All right. And have you also looked at the, I think you've already told us, you did not look at the software code that validates whether or not a code on a claim is actually a valid CPT code, is that correct?

Dr. Musen: Right. I trust that TriZetto's programmers can handle that kind of function.

April 18, 2006 Trial Tr., at 426:23-427:10. Without knowledge of how the TriZetto products operate on the predetermined database, Dr. Musen cannot opine on Claim 1, as discussed below.

Indeed, Dr. Musen's entire infringement opinion lacks support without Dr. Johnson's technical analysis. Dr. Musen's testimony was based solely on observing the output of the TriZetto products – *i.e.*, the results shown on the computer screen – not the actual steps undertaken by the software. Consequently, Dr. Musen was merely speculating that the TriZetto products perform the methods of Claims 1, 2 and 16 – he did not have the first-hand knowledge to say so for certain. For this reason alone, Dr. Musen's opinion is insufficient to support a finding of infringement.

**B.    McKesson Has Not Proven Literal Infringement Of Claim 1.**

The infringement issue concerning Claim 1 is straightforward: Has McKesson proven that the TriZetto products perform the steps of "determining whether any medical service code . . . is not present in the predetermined database" and "informing a user that a medical service code . . . is not present in the predetermined database." McKesson has failed to proffer evidence demonstrating infringement of these elements.

McKesson's only effort to demonstrate infringement of Claim 1 came from Dr. Musen. But it is clear from his testimony that Dr. Musen lacks sufficient knowledge to opine on the "determining" and "informing" steps of Claim 1.

The Court has interpreted "predetermined database" to mean "a set of decision-making rules that incorporate a medical code classification system and expert medical clinical judgment." D.I. 320, at 4. Dr. Musen opined that the TriZetto products have a "predetermined database" containing "decision rules based on expert clinical medical expertise." April 18, 2006 Trial Tr., at 370:14-371:7. Thus, McKesson must prove that the TriZetto software determines if a code is not present in the predetermined database containing the "decision-making rules."

Yet, Dr. Musen was unable to say whether the TriZetto products check the predetermined database to determine if any medical code is not present, as required by Claim 1. Dr. Musen admitted that he has no specific knowledge as to how the TriZetto products perform that code validation:

> Q. But one thing you don't know is, you don't know what database the TriZetto programs go to to validate the codes, correct?
>
> Dr. Musen: That's correct.
>
> . . .
>
> Q. Do you know where TriZetto, the TriZetto programs store the index of all the A.M.A. codes?
>
> Dr. Musen: I don't know the details of the architecture.
>
> Q. You don't know if they store the index of the A.M.A. codes in the rules database or some other database, correct?
>
> Dr. Musen. That is correct.

*Id.* at 427:11-14, 431:16-22. Dr. Musen's understanding of TriZetto's code validation function came solely from viewing the error message that appears on the screen when an invalid code is entered. *See* Exhibit 1120 ("Line Item 1 Procedure code not found"). But he did not know which database was actually checked to perform code validation – the required predetermined database or some other database:

> Q. [*Displaying Exhibit 1120, Facets screenshot – "Line Item 1 Procedure code not found"*] And this was an example of a situation where the code was not found, isn't that correct?

Dr. Musen:  That's correct. . . .

Q.  And you have no idea, based on your testimony, what database the Facets software went to check and return that message, correct?

Dr. Musen:  I'm not clueless.  I mean, I would assume that if the program were created in a reasonable way, there would be an index into the ClinicaLogic database and it would use that index to find the answer.  But I don't know for sure.

Q.  You don't know for sure, and you don't know whether or not that database contains the medical rules and relationships, is that correct?

Dr. Musen:  That's correct.

*Id.* at 427:11-14, 431:16-22, 438:7-439:9.

Dr. Musen suggested that it is not necessary to check the predetermined database to determine if a code is not present in that database – that a separate index could be used to do so. *Id.* at 487:5-489:7.  But this theory defies the literal language of Claim 1, which involves "operating on a *predetermined database*," "determining whether any medical service code . . . is not present in the *predetermined database*," and "informing a user that a medical service code . . . is not contained in the *predetermined database*."  The claim says nothing about an "index," nor did McKesson ever seek to have the Court construe it that way.  Dr. Musen is essentially offering an equivalence theory (which he is precluded from doing), not a literal infringement analysis.  Moreover, even under his own theory, Dr. Musen did not offer sufficient testimony, as he does not know whether the TriZetto products use an index to perform code validation.  *Id.* at 439:1-5 (Dr. Musen: "I would assume . . . it would use that index to find the answer.  But I don't know for sure.").

Dr. Musen's testimony does not establish infringement of Claim 1 and McKesson has not offered any other evidence to support its infringement assertion.  Judgment should be granted to TriZetto on Claim 1 as a matter of law.

## C.  McKesson Has Not Proven Literal Infringement Of Claim 2.

McKesson has failed to prove infringement of Claim 2 because it has not shown that the TriZetto products (1) determine if two medical codes are "mutually exclusive due to non-medical

criteria," (2) perform the "authorizing" and "rejecting" steps, or (3) perform the "ascertaining" step.

### 1.     McKesson Has Not Proven The "Determining" Step.

Dr. Musen admitted that his expert report contained no analysis of how the TriZetto products allegedly determine that two codes are "mutually exclusive due to non-medical criteria":

> Q.  There's also nothing in your report that analyzes how the TriZetto programs determine whether two medical services codes are mutually exclusive due to non-medical criteria, correct?
>
> Dr. Musen:  The means by which that determination was not – correct.
>
> Q.  The means.  In other words, the criteria or how that was carried out, is that correct?
>
> Dr. Musen:  Yes, that's correct.

April 18, 2006 Trial Tr., at 448:17-25.  Nowhere in his report did Dr. Musen explain how TriZetto performs the "determining" step of Claim 2 – he merely quoted a few excerpts from depositions and documents (some of which have not been admitted into evidence at trial).  D.I. 180 at Exh. E, pp. 11-12; Exh. F, p. 10; Exh. G, pp. 14-15.  Consequently, Dr. Musen's trial testimony concerning the "determining" step of Claim 2 is beyond the scope of his expert report.

In any event, McKesson has not shown that the TriZetto products make determinations based on "non-medical criteria."  The Court's definition of "predetermined database" makes clear that the decision-making rules the database contains are based on "*medical clinical judgment*."  Dr. Musen testified that the TriZetto products each contain a predetermined database used to perform clinical editing.  April 18, 2006 Trial Tr., at 370:14-371:4.  He acknowledged that the predetermined database contains "decision rules based on *expert clinical medical expertise*."  *Id*. at 370:21-22; 319:9-13 ("Q.  Do you have an understanding as to what predetermined database means?  Dr. Musen:  It's a database that's set up to have relationships

among those codes that are able to encode *clinical judgment*.") (emphasis added).[4] Consequently, any suggestion that the predetermined database, built by doctors to incorporate "expert clinical medical expertise," actually includes rules based on "non-medical criteria" is contrary to the Court's construction.

Because the predetermined database cannot and does not contain "non-medical" rules, and Dr. Musen has not identified any other databases allegedly housing such rules, Dr. Musen's testimony does not establish that the TriZetto products determine mutual exclusivity of codes based on "non-medical criteria."

Nor can McKesson rely on lay witness testimony to save its case. The designees for TriZetto customers Key Benefits Administrators (Clifton Jones) and Harrington Benefits (Patricia Keplinger) testified that QicLink and ClaimFacts can determine if codes are "mutually exclusive due to non-medical criteria." *Id.* at 559:6-25; 751:20-753:7. But neither witness had an understanding of the precise, literal manner in which patent language must be read. Nor had the witnesses reviewed the patent specification to understand the patented technology. Finally, neither witness was shown to have sufficient expertise with the TriZetto products to meaningfully assess whether these methods were literally present. While the Court has ruled that this testimony is admissible, that does not mean it is reliable. McKesson cannot build its case on a few bits of ill-founded testimony from TriZetto's customers.

---

[4] Dr. Musen suggested that the predetermined database in the TriZetto products includes rules based on "billing conventions" that he believes to be "non-medical." *Id.* at 298:11-299:6. The example he gave was the decision to include certain kinds of anesthesia in the billing code for the overall medical procedure performed. *Id.* Yet, if this relationship is "non-medical," then most of the rules in the database are "non-medical." All of the rules in the TriZetto products reflect a "billing convention" of some kind – *i.e.*, a decision that certain medical services should not be billed separately. Under Dr. Musen's theory, virtually all of the rules in the predetermined database are "non-medical." This contradicts the Court's interpretation of predetermined database – a database "based on *expert clinical medical expertise.*"

## 2.     McKesson Has Not Proven The "Authorizing" and "Rejecting" Steps.

Dr. Musen provided no examples of how the TriZetto products perform the "authorizing" and "rejecting" steps of Claim 2. Dr. Musen discussed two examples of clinical editing rules performed by the TriZetto products which, in his opinion, determine that two codes are "mutually exclusive due to non-medical criteria."[5]

- When Codes 64450 (removal of a foreign body) and 10120 (anesthesia) are entered together on the same claim, the TriZetto products allow the payment of 10120, but disallow 64450. April 18, 2006 Tr., at 342:20-345:8 & Exhs. 116, 117.

- When Codes 12036 (repair of smaller laceration) and 12037 (repair of laceration over 30 centimeters) are entered together on the same claim, the TriZetto products allow the payment of 12037, but disallow 12036. April 18, 2006 Tr., at 383:2-25 & Exh. 1125.

Dr. Musen testified that these sets of codes, when entered together on the same claim, are "mutually exclusive due to non-medical criteria":

> Q. So patent Claim 2, there's the medical claim that comes in, 64450 and 10120.
>
> Dr. Musen:  Right.
>
> Q. Determining whether one of the medical service codes in the at least one claim is mutually exclusive due to non-medical criteria. You just told me that these two are mutually exclusive due to non-medical criteria.
>
> Dr. Musen:  That's correct.

*Id*. at 461:13-21.

Under the plain language of Claim 2, these "mutually exclusive" codes should both be rejected. The "rejecting" step requires "rejecting medical service codes *which are mutually exclusive* due to non-medical criteria." Neither of the two codes should be authorized, because

---

[5]  Neither of these examples was included in Dr. Musen's expert report.

the "authorizing" step only authorizes "medical service codes *which are not mutually exclusive due to non-medical criteria.*" Hence, under Claim 2, both of the "mutually exclusive" codes on the medical claim should be rejected.

But that is not how the codes in Dr. Musen's examples are handled. In those examples, one of the supposedly "mutually exclusive" codes is allowed and the other is disallowed. This does not track the language of the "authorizing" and "rejecting" steps of Claim 2. Dr. Musen acknowledged the disparity between his examples and the plain language of the "authorizing" and "rejecting" steps:

> Q. So then the last step of patent Claim 2 rejects medical service codes which are mutually exclusive due to non-medical criteria. So it rejects the two codes that you told me were mutually exclusive due to non-medical criteria?
>
> Dr. Musen: Right.
>
> Q. According to patent Claim 2, there is no code to authorize. Both are rejected and there's nothing left, correct?
>
> Dr. Musen: I don't – I don't read it that way.
>
> Q. Okay. The only way to read it your way is to read into the claim additional language that is not in the claim, correct? Dr. Musen?
>
> Dr. Musen: Well, when the language needs to be – there obviously – obviously, there could be additional description.
>
> Q. There needs to be some additional work and changes to the language of patent Claim 2 to make your Example 1 that you testified about this morning work?
>
> Dr. Musen: Right. But I understand exactly what patent Claim 2 –
>
> Q. That's fine.
>
> A. – means.
>
> Q. Just a yes or no on that one would be fine.
>
> A. Yes.

*Id.* at 462:24-463:23.

During redirect examination, Dr. Musen sought to twist both the claim language and the product functionality to make them match. In his revised telling, the TriZetto products first reject both codes on the claim and then authorize one code and reject the other. *Id*. at 506:13-507:17. But Dr. Musen offered no evidence that the TriZetto products actually work this way. His description makes no sense and is not the way the codes are actually processed by the TriZetto products, as Dr. Musen himself explained: "[F]undamentally what we see is that the first code has been rejected and the second code has been accepted." *Id*. at 345:6-8. Dr. Musen cannot rewrite the claim language and fabricate TriZetto's functionality to make them match – McKesson must take the claim as it is written and the products as they are. The TriZetto products simply do not perform the "authorizing" and "rejecting" steps as written in Claim 2.

### 3.    McKesson Has Not Proven The "Ascertaining" Step.

Dr. Musen acknowledged that the "ascertaining" steps of Claims 2 and 16 involve determining whether there is more than one code (a "plurality") on a claim. April 18, 2006 Trial Tr., at 321:15-24 ("Q. [The] computer system receives claims and it determines whether there's more than one code on a claim? A. That's correct."). Dr. Musen testified that the TriZetto products perform the "ascertaining" step by counting the number of codes on the medical claim. *Id*. at 373:13-374:23. But "counting" is not the same thing as "ascertaining a plurality," as clearly illustrated by the patent specification.[6]

The figures in the patent specification plainly distinguish between counting codes on a claim and ascertaining whether there is more than one code. Figure 3 shows the steps

---

[6] The patent specification is highly relevant to understanding the meaning of the claim terms. *Phillips v. AWH Corp*., 415 F.3d 1303, 1315 (Fed. Cir. 2005) ("the specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'"). TriZetto asked the Court to construe the "ascertaining" function (D.I. 148), but the Court provided no construction of this term (D.I. 307).

undertaken when a claim is received by the patented system.  Among those steps are "Count No.
of Codes" on the claim:



# FIG. 3

Figure 2 shows the processing that occurs immediately following the "count" step in Figure 3.
In box 20, the system ascertains whether there is a plurality of codes on the claim – *i.e.*, "No. of
Codes > 1":



Dr. Musen acknowledged, as he had to, that box 20 of Figure 2 is an ascertaining step.
April 18, 2006 Trial Tr., at 442:13-443:3.  But he insisted that counting codes also amounts to
ascertaining a plurality.  This would result in two ascertaining steps occurring in the patented
system, one after the other.  Dr. Musen's interpretation of "ascertaining" is contradicted by the

patent specification. Counting codes cannot be construed as "ascertaining a plurality" when the

patent specification offers a clear illustration of "ascertaining" that is distinct from counting.

Although the "ascertaining" step of Claim 2 is not limited to what is disclosed in the

specification, McKesson cannot take a position that blatantly contradicts what the specification

teaches.

Moreover, Dr. Musen did not know whether the "ascertaining" step is actually part of the

method performed by the TriZetto products:

> Q. Is counting the codes sufficient to ascertain whether a claim contains a
> plurality of medical service codes?
>
> Dr. Musen: For purposes of the computer, if it knows the number of
> codes, it knows whether it has more than one.
>
> Q. And is that used in the processing of claims we've seen?
>
> Dr. Musen: It may – it may or may not be used directly, but certainly it's
> used indirectly to know whether there's a cluster of codes.

April 18, 2006 Trial Tr., at 374:5-14. McKesson must demonstrate that TriZetto practices the

entire method of Claim 2, with each step an integral part of the process. *See TechSearch LLC v.*

*Intel Corp.*, 286 F.3d 1360, 1376 (Fed. Cir. 2002) (steps of a method must be connected to one

another: "where . . . the claim recites steps of a method, each dependent upon the other, we

cannot interpret the limitations so loosely"). McKesson has not shown that even the counting

function that Dr. Musen described is part of the clinical editing process practiced by the TriZetto

products.

Because Dr. Musen only testified that the TriZetto products count codes, as opposed to

ascertaining whether there is more than one code, and McKesson has not introduced any other

evidence on this point, McKesson has not proven that the TriZetto products perform the

"ascertaining" step.

**D.     McKesson Has Not Proven Literal Infringement Of Claim 16.**

McKesson has failed to demonstrate infringement of Claim 16, both because it has not shown the presence of the "ascertaining" step in the TriZetto products and has not shown that the products authorize and reject the same claim.

The "ascertaining" step of Claim 16 is identical to that in Claim 2. For the reasons explained above in Section III.C.3, McKesson has not proven that the TriZetto products perform the "ascertaining" step of Claim 16.

Nor has McKesson shown that the TriZetto products authorize *and* reject *medical claims* in response to the "determining" step of Claim 16. Dr. Musen admitted that his expert report says nothing whatsoever about the authorization or rejection of *medical claims*, as opposed to *medical codes*. In the claim charts attached to his report, Dr. Musen provided no analysis of the "authorizing" and "rejecting" steps of Claim 16, but instead referred the reader to his entry for "authorizing" and "rejecting" in Claim 2. D.I. 180 at Exh. E, p. 39; Exh. F, p. 36; Exh. G, p. 47-48. But Claim 2 deals with authorizing and rejecting *codes*, not *claims*. Dr. Musen acknowledged that medical codes and medical claims are entirely different things:

> Q.  When you prepared your report in October and you were describing the steps of authorizing and rejecting claims for Claim 16, do you see what reference you made there?
>
> Dr. Musen:  That's right.  I referenced Claim 2.
>
> Q.  You referenced Claim 2.  But Claim 2 authorizes and rejects codes, right?  It does not reject claims?
>
> Dr. Musen:  That's correct.
>
> Q.  And you told me at the outset of my examination that codes and claims were entirely different things?
>
> Dr. Musen:  Yes.

April 18, 2006 Trial Tr., at 465:18-466:3. Dr. Musen's trial testimony concerning the authorization and rejection of medical claims was outside the scope of his report, in which he said absolutely nothing about those functions.

In his trial testimony, Dr. Musen continued to conflate medical *claims* and medical *codes*, testifying that the TriZetto products authorize and reject *claims* because they allow or disallow *codes*:

> Q. It says, assign the following *codes* for payment. What do you understand that to indicate?
>
> Dr. Musen: It means that the original *claim* is rejected. A new claim is created and that one is assigned for payment.

*Id.* at 307:22-308:1 (emphasis added). Dr. Musen did not offer any evidence of medical claims being authorized and rejected, only medical codes.

Additionally, Dr. Musen testified that the TriZetto products do not reject medical claims based on the results of clinical editing (*i.e.*, "in response to the determining step"). The TriZetto products refer medical claims for further review by physicians – they never *reject* them:

> Q. I wanted to introduce an exhibit with you that counsel has agreed to admit. It's Exhibit 328. . . .
>
> Can I ask you to read in that first paragraph there [*page 10-4*]?
>
> Dr. Musen: Sure. It says, "The review criteria are used to either, A, certify/approve treatment or, B, determine that a case can be referred to a physician reviewer for further review. In other words, while the criteria can be used to approve or certify treatment, the clinical screening criteria should *never* be used to deny certification or disapprove payment."
>
> Q. So Facets never ever uses – never rejects a medical claim for payment. Instead, the claims are sent for review to a physician, correct?
>
> Dr. Musen: Well, in most insurance plan, when there's a question about a claim, it may be pulled for review. It doesn't say – I think now you have to be careful about the term reject. Just because a claim is not authorized by the Facets system at editing time does not necessarily mean that the enterprise that uses the Facets system is going to deny treatment, and I agree with you. . . .
>
> Q. So back to the claim language and back to the medical claim portion of Claim 16. The medical claim is not rejected in response to clinical editing as you've just read into the record. It is typically referred out to a physician for further review, correct?
>
> Dr. Musen: Yes.

April 18, 2006 Trial Tr., at 472:12-474:15. Dr. Musen's testimony establishes that the TriZetto products do not perform the "rejecting" step of Claim 16 and, consequently, do not infringe the claim.

## IV.     MCKESSON CANNOT PREVAIL ON ITS CLAIM FOR CONTRIBUTORY INFRINGEMENT

Even if McKesson could prove literal infringement of the '164 patent by TriZetto's customers, McKesson cannot succeed on its claim for contributory infringement, because the TriZetto products are capable of substantial non-infringing uses.

Contributory infringement occurs when one:

> offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity suitable for substantial noninfringing use.

35 U.S.C. § 271(c).

As a matter of law, the sale of a staple article or commodity suitable for a substantial non-infringing use is not contributory infringement. *See C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670 (Fed. Cir. 1990). The Supreme Court in the Sony Betamax case stated that a "staple article" is any article capable of a substantial non-infringing use that can operate independent of the patented method:

> [I]n contributory infringement cases arising under the patent laws the Court has always recognized the critical importance of not allowing the patentee to extend his monopoly beyond the limits of his specific grant. These cases deny the patentee any right to control the distribution of unpatented articles unless they are "unsuited for any commercial noninfringing use." Unless a commodity "has no use except through practice of the patented method," the patentee has no right to claim that its distribution constitutes contributory infringement . . . . "[A] sale of an article which though adapted to an infringing use is also adapted to other and lawful uses, is not enough to make the seller a contributory infringer. Such a rule would block the wheels of commerce."

*Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 441 (1984) (citations omitted). A "substantial non-infringing use" is any non-infringing use that is not fanciful or

concocted merely for purposes of litigation. *Dawson Chem. Co., v. Rohm & Haas Co.*, 448 US 176, 198 (1980); *see also Sony*, 464 U.S. at 441.

Only one part of the accused Facets, ClaimFacts and QicLink products – the ClinicaLogic module – performs functions that allegedly infringe the '164 patent. ClinicaLogic performs clinical editing functionality, the general subject of the '164 patent. But ClinicaLogic is only one part of the claims processing functionality, which in turn is only one part of the Facets, ClaimFacts and QicLink products.

To determine whether an accused device has substantial non-infringing uses, the Court must consider the entire device, not just the component part that is capable of practicing the patented claims. *Universal Elecs., Inc. v. Zenith Elecs. Corp.*, 846 F. Supp. 641, 651 (N.D. Ill. 1994), *aff'd*, 41 F.3d 1520 (Fed. Cir. 1994) (citing *Hodosh v. Block Drug Co.*, 833 F.2d 1575, 1578 (Fed. Cir. 1987)). The critical inquiry is whether the device as a whole, not just the component part, has any substantial non-infringing uses. *See Rhone-Poulenc Agrochime, S.A. v. Biagro Western Sales, Inc.*, 35 U.S.P.Q. 2d 1203, 1207 (E.D. Cal. 1994); *Hoffmann-La Roche, Inc. v. Promega Corp.*, 33 U.S.P.Q. 2d 1641, 1648 (N.D. Cal. 1994). Because the accused Facets, ClaimFacts and QicLink products as a whole perform many other functions beyond the allegedly infringing ones – functions that can be performed even without the ClinicaLogic module installed – McKesson's claim for contributory infringement must fail.

Dr. Musen agreed that the TriZetto products contain numerous functions beyond the methods of Claims 1, 2 and 16:[7]

> Q. And I think we've discussed that there are many, many other applications and uses for the Facets system, the QicLink system, and the ClaimFacts system beyond just clinical editing, correct?
>
> Dr. Musen: Sure.

---

[7] Dr. Musen did not offer an opinion refuting the presence of substantial non-infringing uses in the TriZetto products. April 18, 2006 Trial Tr., at 475:2-5.

> Q. And within clinical editing, Doctor, we're looking at Claims 1, 2 and
> 16. The clinical editing component of the TriZetto systems, the
> ClinicaLogic, does many more other clinical edits other than what is
> described in Claims 1, 2 and 16?
>
> Dr. Musen: Sure. We're just talking about the patent here.

April 18, 2006 Trial Tr., at 475:6-16; *see also* April 19, 2006 Trial Tr., at 584:18-24 (TriZetto

customer Providence Health Plan: "[T]he claims processing [of Facets] is much larger than the

clinical edits. That's one small component of it."). Even the clinical editing portion of the

TriZetto products can perform clinical edits that are not covered by Claims 1, 2 and 16, such as

single-code edits. *Id.* at 445:3-14 (Dr. Musen: "My understanding of the claims is that they

applied only to the mutual incompatibility of service codes and don't deal with individual

codes").

Dr. Musen also acknowledged that the TriZetto products can be used without the

allegedly infringing clinical editing functionality even installed:

> Q. Are you suggesting, based on all of your review, all the manuals that
> are there, that Facets cannot function without clinical editing either being
> included or turned on?
>
> Dr. Musen: No. I don't mean to imply that. I know the user is able to
> customize what edits are done, what warnings are given. I'm sure clinical
> editing could be turned off, but it would be analogous for me to use my
> cell phone as a camera. I would buy a product for a particular function.
>
> Q. Okay. Are you aware of customers from TriZetto who purchase these
> claims or health management systems and do not use or do not include or
> do not have clinical editing?
>
> Dr. Musen: Not personally, no.
>
> Q. Okay. But you are aware that that is an option?
>
> Dr. Musen: I'm aware of it's an option.

April 18, 2006 Trial Tr., at 476:4-21; *see also* April 19, 2006 Trial Tr., at 643:16-644:10

(TriZetto executive vice president Anthony Bellomo: "I believe that [TriZetto customer] Pacific

Care Behavioral Health does not use clinical editing . . . I'm sure there are others"); 686:14-21

(TriZetto designee John Danza: "Q. Do any customers purchase QicLink without the clinical editing functionality? A. They have in the past, yes.").

Because the accused products are capable of substantial non-infringing uses independent of the patented method, JMOL should be granted to TriZetto on McKesson's claim for contributory infringement.[8]

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


_/s/ Rodger D. Smith II_
Jack B. Blumenfeld (No. 1014)
Rodger D. Smith II (No. 3778)
1201 N. Market Street
Wilmington, Delaware 19899
(302) 658-9200

Attorneys for Defendant The TriZetto Group, Inc.

Of Counsel:

GIBSON, DUNN & CRUTCHER LLP
Jeffrey T. Thomas
David Segal
Michael A. Sitzman
Jamboree Center, 4 Park Plaza
Irvine, CA 92614

April 24, 2006

517139

---

[8] With respect to McKesson's claim for active inducement, the Court ruled that a showing of "specific intent" to encourage infringement would not be required. April 19, 2006 Trial Tr., at 538:3-539:5. TriZetto respectfully disagrees with the Court's approach and observes that if "specific intent" were required, McKesson has not proffered sufficient evidence to prove that element of active inducement.

## CERTIFICATE OF SERVICE

I, Rodger D. Smith II, hereby certify that on April 24, 2006, I caused to be electronically filed The TriZetto Group, Inc.'s Motion for Judgment of Noninfringement as a Matter of Law with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Thomas J. Allingham, II
> Skadden, Arps, Slate, Meagher & Flom LLP

I also certify that copies were caused to be served on April 24, 2006 upon the following in the manner indicated:

### BY HAND

> Thomas J. Allingham, II
> Skadden, Arps, Slate, Meagher & Flom LLP
> One Rodney Square, P.O. Box 636
> Wilmington, DE  19899

> */s/  Rodger D. Smith II*
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE  19899
> (302) 658-9200
> rsmith@mnat.com