IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE TRIZETTO GROUP, INC., ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 04-1258-SLR <br><br> SEALED VERSION FILED: April 25, 2006 <br><br> REDACTED PUBLIC <br> VERSION FILED: April 26, 2006 |

**MCKESSON'S STATEMENT IN CONNECTION WITH ITS
REQUEST TO EXCLUDE FROM THE JURY TRIAL
ON DAMAGES AND WILLFULNESS THE PROPOSED TERMS
OF THE PARTIES' PRIOR SETTLEMENT NEGOTIATIONS**

Pursuant to Fed. R. Evid. 402, 403 and 408,[1] plaintiff McKesson

Information Solutions LLC ("McKesson"), by its counsel, hereby respectfully submits

---

[1] Rule 408 reads:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, <u>is not admissible to prove liability for or invalidity of the claim or its amount</u>. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408 (emphasis added). The purpose of the rule is to facilitate the settlement of disputes by encouraging the making of offers to compromise. 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence §§ 408[01]-[02] (1986).

this statement in connection with its request for the Court to exclude from the second phase of the jury trial the evidence of the terms of any offers or proposals made or considered by either party in connection with the settlement negotiations that occurred during 2001-03. *(If the Court only wishes to look at the issue of Mr. Wagner's report, please see infra ¶ 5 at page 6.)* As grounds for this request, McKesson states as follows:

    1.    Any analysis begins with Rule 408 of the Federal Rules of Evidence, which governs the inadmissibility of offers of compromise. Although TriZetto in litigation now tries to characterize the 2001-03 discussions as "business" negotiations, the testimony of TriZetto's own senior executives confirms that by at least 2001, a primary goal of the discussions was to resolve the '164 patent dispute short of litigation. For example, TriZetto's CEO, Jeffrey Margolis, testified at deposition that by 2001, McKesson was threatening TriZetto with enforcement of the patent:

**REDACTED**

**REDACTED**

Under settled Third Circuit precedent, which applies in this matter,[2] the 2001-03 negotiations qualify for Rule 408 protection. In the leading case of <u>Affiliated Mfrs., Inc. v. Aluminum Co. of Am.</u>, 56 F.3d 521 (3d Cir. 1995), the Third Circuit held that "[a]s a matter of interpretation, the meaning of 'dispute' as employed in the rule includes both litigation and less formal stages of a dispute . . . The district court properly interpreted the scope of the term 'dispute' to include <u>a clear difference of opinion</u> between the parties here concerning payment of two invoices." <u>Id.</u> at 528 (emphasis added). In reaching this conclusion, the Third Circuit rejected other authority that held the Rule was triggered only when the dispute "crystallized to the point of threatened litigation." <u>Id.</u> at 527 (citing and rejecting <u>Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.</u>, 561 F.2d 1365, 1372-73 (10th Cir. 1977)).

---

[2] Because admissibility questions relating to settlement negotiations are not unique to patent law, Third Circuit rather than Federal Circuit law applies. <u>See, e.g.</u>, <u>Revlon Consumer Products Corp. v. L'Oréal S.A.</u>, No. 96-192, 1997 WL 158281, *2 (D. Del. Mar. 26, 1997) (in patent infringement action, admission of expert testimony under Rule 702 is issue of procedure not unique to patent law, and thus Third Circuit rather than Federal Circuit precedent applies).

3

2.      Given that Rule 408 applies, and assuming the only issue to be tried at this stage is damages,[3] the only possible relevance that TriZetto could assert over this information is its relevance to damages. For example, TriZetto may try to assert that the negotiations are relevant to reasonable royalties as a counter to any expert opinion by McKesson concerning a "hypothetical negotiation" between the parties; arguing that the jury should be able to consider a "real world" example of an actual license negotiation between the parties and be able to compare that to the hypothetical negotiation constructed by McKesson's experts. Although this argument may have facile appeal, it is incorrect as a matter of law and fact.

3.      <u>First</u>, it is <u>precisely</u> this kind of tactic by TriZetto that Rule 408 protects against. As stated above, the only evidence of the negotiations that McKesson seeks to preclude are the specific terms of the proposed settlements. Under the plain terms of Rule 408, such evidence <u>cannot</u> be used "<u>to prove liability for or invalidity of the claim or its amount</u>." Fed. R. Evid. 408 (emphasis added). The whole point of Rule 408 is for the parties to be free to discuss different options without fear that their statements or offers would come back to haunt them in litigation. TriZetto is trying to do just that; and the Rule states that such information simply cannot come in.

4.      <u>Second</u>, even if the Court were to entertain TriZetto's argument on the merits (which McKesson believes it should not), the result is the same. Courts have consistently held that even on relevance grounds, and particularly balanced against the

---

[3]  McKesson also believes the information at issue (terms and amounts) is irrelevant to willfulness, but does not address that in detail here. We would be happy to submit additional information on this if the Court so desired.

4

clear risk of prejudice, offers made in connection with avoiding litigation are of minimal if any value given all of the other considerations involved. For example:

- In Pharmastem Therapeutics, Inc. v. Viacell Inc., No. 02-148, 2003 WL 22387038 (D. Del. Oct. 7, 2003) (Sleet, J.), defendant had moved to exclude from evidence certain license agreements with third parties that plaintiff was seeking to introduce in order to demonstrate a reasonable royalty rate on its patent. Id. at **1-2. The Court concluded that based on, inter alia, the fact that certain documents referred to amounts contemplated to settle claims of infringement, it was clear that the discussions leading to the license agreement "arose in a context where litigation was threatened or at least probable," and excluded the information. Id. at *3.

- Pioneer Hi-Bred Int'l, Inc. v. Ottawa Plant Food, Inc., 219 F.R.D. 135 (N.D. Iowa 2003), was an infringement action brought by the owner of a patent for hybrid and inbred seed corn against an unlicensed reseller. Prior to trial, Pioneer moved in limine to exclude evidence of settlements it had reached with other defendants. Among the grounds asserted in Pioneer's motion was preclusion under Rule 408 of the Federal Rules of Evidence. Id. 143-44. In opposing the motion, the defendant argued that the settlement terms were relevant to the question of reasonable royalty. Id. The court rejected the defendant's argument and excluded all evidence of the settlements under Rule 408. It also chastised the defendant for "attempt[ing] to circumvent" the Rule. The Court finally concluded that even if Rule 408 did not apply, it "doubts that the decree has more than marginal relevance, because numerous factors, apart from the value of the claim, go into the determination to settle." Id. at 144.

- In Fromson v. Citiplate, Inc., 699 F. Supp. 398 (E.D.N.Y. 1988), on motions in limine prior to jury trial, the plaintiff sought to introduce earlier licenses that it had agreed to with other alleged infringers in order to support its claim of reasonable royalties. The court rejected plaintiff's argument and held that Rule 408 precluded the use of these negotiations because they constituted "evidence of a compromise when the validity of the

5

patent was in issue." The court stated that plaintiff's "damages plainly should not be measured by the amount he realized on licenses to infringers." The court also excluded such evidence on the basis of Rule 403, finding that the "probative weight was extremely limited in light of the prior infringement by the licensees and others and the dispute as to the validity of the patent." Id. at 405.

**REDACTED**

5.  With respect to the issue raised by Mr. Thomas in court 1 hour ago, there are three documents that Mr. Thomas informed us that he is relying on for his argument that McKesson's expert is trying to take advantage of the settlement negotiations while at the same time trying to preclude the license amounts. We address these in turn:

- Trial Exhibit 598 (Letter of Intent). This document simply was not relied on in any way by Dr. Wagner. It is nowhere in his report.

- Trial Exhibits 834 & 835 (Draft Patent License Agreement & Draft Joint Marketing Agreement). Mr. Wagner does not rely on either of these documents in his report. Although Mr. Wagner does cite one similar document in his report, see 10/24/05 Wagner Report at 24, it is clear from reading in context (pp. 24-25) that Mr. Wagner is not relying on that document in any way for his report. Thus, although the document was mentioned, it was not a part of his Report.

- With regard to the claim that Mr. Wagner relied on the settlement negotiations in connection with his work on interfaces, he only relied on the fact that interfaces existed,

not on any settlement discussions purportedly concerning such interfaces (see p. 6). Mr. Wagner could just as easily have relied, and did rely, on non-settlement materials to make the same point, see, e.g., Trial Exhibit 102 (attached) (see page 6 & n.33), generated in the ordinary course of business at TriZetto. This also makes the fact from the negotiations redundant.

WHEREFORE, McKesson respectfully requests this Court to exclude the introduction at trial of the proposed license terms from the parties' settlement negotiations pursuant to Fed. R. Evid. 402, 403 and 408, in the second phase of the jury trial.

By: /s/ Michael A. Barlow
Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff McKesson
Information Solutions LLC

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500

DATED: April 25, 2006

**CERTIFICATE OF SERVICE**

I, Michael A. Barlow, hereby certify that on April 25, 2006, I electronically filed McKesson's Statement In Connection With Its Request To Exclude From The Jury Trial On Damages And Willfulness The Proposed Terms Of The Parties' Prior Settlement Negotiations by CM/ECF, which will send notification of such filing to those designated below, and that I served the following persons in the manner listed:

**VIA CM/ECF AND HAND DELIVERY**
Jack B. Blumenfeld, Esq.
Rodger D. Smith, II, Esq.
MORRIS NICHOLS ARSHT
 & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899

*/s/ Michael A. Barlow*
Michael A. Barlow (ID No. 3928)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000
mbarlow@skadden.com