IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 04-1258 (SLR) |
| THE TRIZETTO GROUP, INC., | ) ) ) | |
| Defendant. | ) | |

**DECLARATION OF RANDALL DAVIS
IN SUPPORT OF THE TRIZETTO GROUP, INC.'S
<u>MOTION FOR SUMMARY JUDGMENT OF INVALDITY</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith, II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200

*Attorneys for Defendant The TriZetto Group, Inc.*

OF COUNSEL:

Jeffrey T. Thomas
David A. Segal
Michael A. Sitzman
GIBSON, DUNN & CRUTCHER LLP
Jamboree Center
4 Park Plaza
Irvine, CA  92614-8557
(949) 451-3800

June 1, 2006

I, Randall Davis, declare as follows:

1. I am a Professor of Computer Science at the Massachusetts Institute of Technology. I have been retained by The TriZetto Group, Inc. ("TriZetto") in this litigation to provide expert opinions on the subjects of infringement and validity. I submit this declaration in support of TriZetto's motion for summary judgment of invalidity on the grounds of anticipation and obviousness. I have personal knowledge of the facts set forth herein and if called upon to do so, I could and would testify competently hereto.

2. I submitted an expert report in this case on the subject of patent invalidity on October 24, 2005 ("October 2005 Report") (attached as Exhibit 19 to the Appendix in support of TriZetto's motion for summary judgment of invalidity on the grounds of anticipation and obviousness).

3. In my October 2005 Report, I defined a person of ordinary skill in the art of U.S. Patent No. 5,253,164 ("the '164 patent") "to be someone with an undergraduate degree in Computer Science with at least one course in artificial intelligence, and at least one year of experience in building expert systems." A person with these qualifications would be capable of working with experts to collect their knowledge and build it into an expert system.

4. At my deposition, I testified that in addition to the qualifications stated in Paragraph 3, a person of ordinary skill in the art could also have personal knowledge of medical claims processing, as suggested by McKesson's experts. Under this definition or the one stated in Paragraph 3, I myself was a person of ordinary skill in the art throughout the 1980s.

5. In my October 2005 report, I explained that Claims 1 and 2 of the '164 patent were anticipated and/or rendered obvious by three prior art systems (among others): (1) the Advanced MedLogic System ("AMS"), developed by the Health Data Institute ("HDI") in 1986; (2) U.S. Patent No. 5,070,452 (the "Doyle Patent"), with an original filing date of June 30, 1987; and (3) the Clinical Data Editor, developed by Health Systems International and described in the February 15, 1984 edition of *Modern Healthcare* magazine. *See* October 2005 Report, pp. 20-25, 32.

6.     On April 5, 2005, the Court issued its claim construction order. The Court construed the term "predetermined database" to mean "a set of decision-making rules that incorporate a medical code classification system and expert medical clinical judgment." D.I. 307 at 3. I understand that the Court did not incorporate the Appendix B "metarules" or any other limitations from the patent specification into Claims 1 and 2.

7.     I understand that McKesson at the April 2006 trial took the following new positions with respect to Claims 1 and 2: (1) Claim 1 is a medical code validation method performed using *any* database of codes, not necessarily a "predetermined database"; and (2) one example of Claim 2 is a method for correcting double billing on medical claims, such as billing for the initial and subsequent medical visits on the same claim. These interpretations of Claims 1 and 2 were not offered by McKesson earlier in this litigation and differ significantly from the natural reading of the claim language. McKesson's new interpretations strengthen my invalidity opinions.

8.     Based on the Court's claim construction and McKesson's new interpretations offered at trial, I can confirm that (1) AMS both anticipates and renders obvious Claims 1 and 2, (2) the Doyle Patent both anticipates and renders obvious Claim 1, and (3) the Clinical Data Editor both anticipates and renders obvious Claim 1.

9.     AMS performed a medical code validation method and checked for double billing in precisely the same manner as Claims 1 and 2. *See* October 2005 Report, pp.20-24. AMS also included a "predetermined database" of "decision-making rules that incorporate a medical code classification system and expert medical clinical judgment." *Id.*

10.     The Doyle Patent and the Clinical Data Editor performed the same medical code validation technique as Claim 1. *Id.* at 24-25, 32.

11.     I can perceive no distinction between the methods of Claims 1 and 2 and the prior art systems described above, but to the extent some slight distinction exists, the methods of Claims 1 and 2 would have been obvious to a person of ordinary skill in the art in light of the prior art systems.

12. At my deposition, I testified that none of the prior art references I discussed in my report (including AMS, the Doyle Patent, and the Clinical Data Editor) anticipated the patent claims, based on my understanding of those claims at the time. Due to McKesson's new interpretations of Claims 1 and 2 offered at trial, I can now state that AMS, the Doyle Patent, and the Clinical Data Editor do anticipate Claims 1 and 2, as described above in Paragraphs 9 and 10.

13. While I had previously assumed that Claim 1 required checking the "predetermined database" itself to determine that a code was not present (*see* October 2005 Report, pp. 4-5), McKesson has interpreted the method of Claim 1 to include checking *any* database of valid medical codes. According to McKesson's expert, Dr. Mark Musen, the "predetermined database" need not be used at all to perform the method of Claim 1. *See* April 18, 2006 Trial Tr., at 487:25-489:7 (Musen Testimony: "Q. Do you read anything in [Claim 1] that's requiring that the predetermined database be used to make that determination? A. Nothing at all."). AMS, the Doyle Patent, and the Clinical Data Editor covered the method of Claim 1, as so interpreted.

14. While I was previously uncertain about the meaning of the Claim 2 phrase "mutually exclusive due to non-medical criteria," which is nowhere defined in the patent specification (*see* October 2005 Report, pp. 5-6), McKesson has interpreted Claim 2, in one example, as a method for identifying and correcting double billing on a medical claim. AMS performed the method of Claim 2, as so interpreted.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

This declaration was executed this 1st day of June, 2006, at Cambridge, Massachusetts.

_____
Randall Davis

100014114_1.DOC

4

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 1, 2006, caused to be electronically filed the Declaration of Randall Davis in Support of The Trizetto Group, Inc.'s Motion for Summary Judgment of Invalidity with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

>Michael A. Barlow
>Skadden, Arps, Slate, Meagher & Flom LLP

I also certify that copies were caused to be served on June 1, 2006, upon the following in the manner indicated:

### BY EMAIL AND HAND

Michael A. Barlow
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
Wilmington, DE 19801

### BY EMAIL AND FEDERAL EXPRESS

Jeffrey G. Randall
Skadden, Arps, Slate, Meagher & Flom LLP
525 University Avenue
Suite 1100
Palo Alto, CA 94301

/s/   Rodger D. Smith II (#3778)
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com