IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | C.A. No. 04-1258 (SLR) |
| THE TRIZETTO GROUP, INC., | ) ) ) | |
| Defendant. | ) | |

## DECLARATION OF DONALD F. DEMERS

                               MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                               Jack B. Blumenfeld (#1014)
                               Rodger D. Smith, II (#3778)
                               1201 N. Market Street
                               P.O. Box 1347
                               Wilmington, DE  19899
                               (302) 658-9200

                               *Attorneys for Defendant The TriZetto Group, Inc.*

OF COUNSEL:

Jeffrey T. Thomas
David A. Segal
Michael A. Sitzman
GIBSON, DUNN & CRUTCHER LLP
Jamboree Center
4 Park Plaza
Irvine, CA  92614-8557
(949) 451-3800

June 1, 2006

I, Donald F. Demers, declare as follows:

1. I know the following facts of my own personal knowledge, and if called as a witness, I could and would testify thereto.

2. I am currently employed by Affiliated Computer Services, Inc., which provides claims processing systems and other computer systems to payers of medical claims. I have 46 years' experience developing computer system applications, and for the past 24 years I have been developing systems for use in the health care industry.

3. In 1983, while I was the president of a company named Cortron Corporation, I was contacted by a company named CoMed Management, Inc. ("CoMed"), which was in the business of establishing HMO health care insurance companies. CoMed retained me to develop a computerized claims processing system that could be used by the HMOs it was establishing.

4. During 1983-84, I developed an automated claims processing system for CoMed, which was called Health Care Processing System ("HCPS"). One of the core features of HCPS was its use of CPT codes. We decided that the information on what medical procedure had been performed should be captured by way of standard procedure service codes (CPT and revenue codes), and so the system was constructed such that it would not accept and process a professional claim unless that claim contained at least one valid CPT code. For this reason, the system included a database that contained all the CPT codes that had been issued by the American Medical Association. When a claim was received and input into HCPS, the system would check that database to determine whether a CPT code on the claim was included in the database — i.e., whether the code was a valid CPT code.

5. If a claim was entered into HCPS that included an invalid code, the system would inform the user that the code was invalid and the claim would be pended for further review and investigation. Such a claim would not be approved for payment until a valid code was put on the claim.

6. HCPS was installed at several HMOs during 1984. The first version of HCPS as installed in 1984 included the CPT code database, and that first version performed the code validation function described above.

7. The first version of HCPS as installed in 1984 also checked the CPT code(s) on a claim against other information on the claim, such as the age and gender of the patient. If there was any inconsistency between the code(s) and other information on the claim, the user would be informed and the claim would not be approved for payment until the inconsistency was resolved. In order to make use of this feature, the HCPS users maintained a database that contained rules associated with the CPT codes that defined when a code was appropriate (e.g., rules that stated which codes were appropriate for a male, a female or both, and rules that defined age ranges for some of the CPT codes).

8. The first version of HCPS as installed in 1984 also performed the function of checking for duplicate procedure service codes on a claim. If a claim included the same procedure service code twice, such that the HMO using the system was being double-billed, HCPS would recognize that, and only the first code would be approved for payment; the second code would not be approved. In addition to disapproving the second code, the system would inform the user of the action that had been taken.

9. The first version of HCPS as installed in 1984 also had the ability to check CPT codes and other information on a claim to the codes and information on historical claims for the same patient. If the system detected an inconsistency between the information on a new claim and information on a prior claim, the user would be informed and the new claim would not be approved for payment until the problem was resolved. For example, if a new claim contained the same CPT code that had been on a prior claim, HCPS would recognize that as a possible duplicate/double-billing situation, and the user would be so informed.

10. Prior to July 1986, another feature was added to HCPS. The system was upgraded to allow it to compare two different procedure service codes on a single claim, or across multiple claims, based on whether the two codes represented procedures that could be performed at the same time or within a certain number of days of each other. If a claim included two codes that were for procedures that should not be performed together, HCPS would recognize that and so inform the user. Also, if the two codes were for a procedure and a related follow-up treatment that should be in the payment for the first procedure, HCPS would recognize that and only allow the first procedure for payment. For example, if a claim included a code for a surgery and a code for a post-operative doctor's visit that was included in the payment for the surgery, HCPS could recognize that and disallow a separate payment for the post-operative visit.

11. To allow customers to use the feature described in paragraph 10 above, we provided them with the software code and the database maintenance process needed for defining and executing that functionality. The customers would then determine which procedures they wanted to include in this part of the claims processing system, and would enter the corresponding CPT codes and the rules and relationships among the codes into the database structure that we provided to them.

12. I do not recall exactly when the feature described in paragraph 10 above was added to HCPS, but I am certain it was prior to July 1986, because I have an HCPS manual from July 1986 which describes the feature. The pertinent pages from that manual are attached hereto as Exhibit A.

13. Beginning in February 1986, the installations of HCPS were expanded beyond the HMOs established by CoMed. In 1985, I founded a company named Digital Insurance Systems Corp. ("DISCorp"). In February 1986, DISCorp obtained the rights to provide HCPS to customers of its own separate from the CoMed HMOs. DISCorp did obtain a number of additional customers for HCPS, and the system was installed at those customers beginning in the first half of 1986.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed this 23rd day of May, 2006, at Columbus, Ohio.

_____
Donald F. Demers

100007387_1.DOC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 1, 2006, caused to be electronically filed the Declaration of Donald F. Demers with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Michael A. Barlow
> Skadden, Arps, Slate, Meagher & Flom LLP

I also certify that copies were caused to be served on June 1, 2006, upon the following in the manner indicated:

### BY EMAIL AND HAND

> Michael A. Barlow
> Skadden, Arps, Slate, Meagher & Flom LLP
> One Rodney Square
> Wilmington, DE 19801

### BY EMAIL AND FEDERAL EXPRESS

> Jeffrey G. Randall
> Skadden, Arps, Slate, Meagher & Flom LLP
> 525 University Avenue
> Suite 1100
> Palo Alto, CA 94301

> /s/ Rodger D. Smith II (#3778)
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE 19899
> (302) 658-9200
> rsmith@mnat.com