EXHIBIT 2

0408v
H0433/7002

07 648314

#14/E
BN
4-8-91

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant      :  Donald C. Holloway, Robert D. Hertenstein,
                  George A. Goldberg and Kelli A. Dugan
Filing Date    :  Herewith
For            :  EXPERT SYSTEM AND METHOD FOR ASSESSING MEDICAL
                  CLAIMS

Hon. Commissioner of
Patents and Trademarks
Washington, D.C.  20231

<u>PRELIMINARY AMENDMENT</u>

Dear Sir:

        Prior to examination, please amend the

above—identified application as follows:


<u>IN THE CLAIMS</u>


Please cancel claims 1-6 without prejudice, and substitute in

their place claims 7-32.


        7. In a computer system having means for operating on

a predetermined database containing medical service codes and a

set of relationships among the medical service codes defining

whether selected ones of the medical service codes are valid

when input with other selected ones of the medical service

codes, a method for processing input claims containing at least

one medical service code, comprising the steps of:

MCK 000278

receiving at least one claim;

ascertaining whether the at least one claim contains a plurality of medical service codes;

determining whether one of the medical service codes in the plurality of medical service codes is valid or invalid by interacting with the database and the set of relationships contained in the database;

authorizing medical service codes which are valid in response to the determining step; and

rejecting medical service codes which are invalid in response to the determining step.

8. The method of claim 7, further comprising the step of revising the at least one claim to delete invalid medical service codes.

9. The method of claim 8, further comprising the step of informing a user why the at least one claim was revised.

10. The method of claim 7, wherein the database containing medical service codes includes medical service codes described by CPT codes.

11. The method of claim 7, wherein the database containing medical service codes includes medical service codes described by CRVS codes.

2. —

MCK 000279

12. The method of claim 7, further comprising the step of requesting further information from a user regarding the at least one claim.

13. The method of claim 7, wherein the relationships among the medical service codes include medically determined relationships.

14. In a computer system having means for operating on a predetermined database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when input with other selected ones of the medical service codes, a method for processing input claims containing at least one medical service code, comprising the steps of:

receiving at least one claim;

ascertaining whether the at least one claim contains a plurality of medical service codes;

determining whether one of the medical service codes in the at least one claim is included in any other medical service code in the at least one claim;

authorizing medical service codes which are not contained in any other medical service code; and

rejecting medical service codes which are contained in any other medical service code.



— 3 —

MCK 000280

15. The method of claim 14, further comprising the step of revising the at least one claim to not include a rejected medical service code.

16. In a computer system having means for operating on a predetermined database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when input with other selected ones of the medical service codes, a method for processing input claims containing at least one medical service code, comprising the steps of:

receiving at least one claim;

ascertaining whether the at least one claim contains a plurality of medical service codes;

determining whether one of the medical service codes in the at least one claim is medically exclusive with any other medical service code in the at least one claim;

authorizing medical service codes which are not medically exclusive with any other medical service codes contained in the at least one claim in response to the determining step; and

rejecting medical service codes which are medically exclusive with any other medical service codes contained in the at least one claim in response to the determining step.



— 4 —

MCK 000281

C.M    17. In a computer system having means for operating on a predetermined database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when input with other selected ones of the medical service codes, a method for processing input claims containing at least one medical service code, comprising the steps of:

P1    receiving at least one claim;

L    determining whether any medical service code contained in the at least one claim is not present in the predetermined database; and

P1    informing a user that a medical service code is not contained in the predetermined database.

18. In a computer system having means for operating on a predetermined database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when input with other selected ones of the medical service codes, a method for processing input claims containing at least one medical service code, comprising the steps of:

P1    receiving at least one claim;

L    ascertaining whether the at least one claim contains a plurality of medical service codes;

- 5 -



MCK 000282

P1    determining whether one of the medical service codes in the at least one claim is mutually exclusive due to non-medical criteria with any other medical service code in the at least one claim;

P1    authorizing medical service codes which are not mutually exclusive due to non-medical criteria with any other medical service codes contained in the at least one claim in response to the determining step; and

P1    rejecting medical service codes which are mutually exclusive due to non-medical criteria with any other medical service codes contained in the at least one claim in response to the determining step.

15. A computer system including a central processing unit and associated memory for processing input claims containing at least one medical service code, comprising:

P1    a predetermined database stored in the associated memory, the database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when received with other selected ones of the medical service codes;

P1    means for receiving at least one claim;

L    means for ascertaining whether the at least one claim contains a plurality of medical service codes;

- 6 -

*104*

MCK 000283

means for determining whether one of the medical service codes in the plurality of medical service codes is valid or invalid by interacting with the database and the set of relationships contained in the database;

means for authorizing medical service codes which are valid in response to the means for determining; and

means for rejecting medical service codes which are invalid in response to the means for determining.

4. The apparatus of claim 3, further comprising means for revising the at least one claim to delete invalid medical service codes.

5. The apparatus of claim 4, further comprising means for informing a user why the at least one claim was revised.

6. The apparatus of claim 3, wherein the database containing medical service codes includes medical service codes described by CPT codes.

7. The apparatus of claim 3, wherein the database containing medical service codes includes medical service codes described by CRVS codes.

– 7 –

105

MCK 000284

24. The apparatus of claim 19, further comprising means for requesting further information from a user regarding the at least one claim.

25. The apparatus of claim 19, wherein the relationships among the medical service codes include medically determined relationships.

26. A computer system including a central processing unit and associated memory for processing input claims containing at least one medical service claim, comprising:

a predetermined database stored in the associated memory, the database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when received with other selected ones of the medical service codes;

means for receiving at least one claim;

means for ascertaining whether the at least one claim contains a plurality of medical service codes;

means for determining whether one of the medical service codes in the at least one claim is included in any other medical service code in the at least one claim;

means for authorizing medical service codes which are not contained in any other medical service code; and

- 8 -

MCK 000285

means for rejecting medical service codes which are contained in any other medical service code.

27. The apparatus of claim 26, further comprising means for revising the at least one claim to not include a rejected medical service code.

28. A computer system including a central processing unit and associated memory for processing input claims containing at least one medical service code, comprising:

a predetermined database stored in the associated memory, the database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when received with other selected ones of the medical service codes;

means for receiving at least one claim;

means for ascertaining whether the at least one claim contains a plurality of medical service codes;

means for determining whether one of the medical service codes in the at least one claim is medically exclusive with any other medical service code in the at least one claim;

means for authorizing medical service codes which are not medically exclusive with any other medical service codes

107

MCK 000286

contained in the at least one claim in response to the means
for determining; and

means for rejecting medical service codes which are
medically exclusive with any other medical service codes
contained in the at least one claim in response to the
determining step.

13

25. A computer system including a central processing
unit and associated memory for processing input claims
containing at least one medical service code, comprising:

a predetermined database stored in the associated
memory, the database containing medical service codes and a set
of relationships among the medical service codes defining
whether selected ones of the medical service codes are valid
when received with other selected ones of the medical service
codes;

means for receiving at least one claim;

means for determining whether any medical service code
contained in the at least one claim is not present in the
predetermined database; and

means for informing a user that a medical service code
is not contained in the predetermined database.

14

26. A computer system including a central processing
unit and associated memory for processing input claims
containing at least one medical service code, comprising:

— 10 —

*108*

MCK 000287

a predetermined database stored in the associated memory, the database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when received with other selected ones of the medical service codes;

means for receiving at least one claim;

means for ascertaining whether the at least one claim contains a plurality of medical service codes;

means for determining whether one of the medical service codes in the at least one claim is mutually exclusive due to non-medical criteria with any other medical service code in the at least one claim;

means for authorizing medical services codes which are not mutually exclusive due to non-medical criteria with any other medical service codes contained in the at least one claim in response to the means for determining; and

means for rejecting medical service codes which are mutually exclusive due to non-medical criteria with any other medical service codes contained in the at least one claim in response to the means for determining.



15
31. A computer system including a central processing unit and associated memory for processing input claims containing at least one medical service code, comprising:

MCK 000288

a predetermined database stored in the associated memory, the database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when received with other selected ones of the medical service codes;

means for receiving at least one claim;

means for ascertaining whether the at least one claim contains a plurality of medical service codes;

means for determining whether one of the medical service codes in the plurality of medical service codes is valid or invalid by interacting with the database and the set of relationships contained in the database;

means for authorizing the at least one claim in response to the means for determining; and

means for rejecting the at least one claim in response to the means for determining.

32. In a computer system having means for operating on a predetermined database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when input with other selected ones of the medical services codes, a method for processing input claims containing at least one medical service code, comprising the steps of:

MCK 000289

receiving at least one claim;

ascertaining whether the at least one claim contains a plurality of medical service codes;

determining whether one of the medical service codes in the plurality of medical service codes is valid or invalid by interacting with the database and the set of relationships contained in the database;

authorizing the at least one claim in response to the determining step; and

rejecting the at least one claim in response to the determining step.

### REMARKS

This is a preliminary amendment accompanying the filing of a continuation application.  Claims 1-6 have been cancelled without prejudice.  In their place, Applicants have submitted new claims 7-32 which are believed to clearly and patentably distinguish the present invention over the prior art of record.

In the Office Action of October 29, 1990, claims 1 and 2 were rejected under 35 U.S.C. §102(a) as being anticipated by, or in the alternative under 35 U.S.C. §103 as obvious over Weitzel et al.  Claims 3-6 were rejected under 35 U.S.C. §103 as being unpatentable over the combination of Weitzel et al. in view of Hardy et al.  Applicants respectfully traverse this rejection.

- 13 -

MCK 000290

Applicants do not believe that the Weitzel et al. reference is a valid reference under 35 U.S.C. §102.  To be a valid reference, the Weitzel et al., reference must enable someone to practice the invention.  It does not do that.

In <u>Reading & Bates Construction Co. v. Baker Energy Resources Corporation and Baker Marine Corp</u>., 233 USPQ 1168, 1173 (Fed. Cir. 1984), appeal No. 84-527, decided November 15, 1984, the Court held:

> . . .For the <u>invention</u> of the '903 patent to be <u>described</u> in the Smith brochure pursuant to §102(b), the Smith brochure itself must enable someone to practice the invention of the '903 patent.  <u>Preemption Devices Inc. v. Minnesota Mining & Mfg. Co</u>., 732 F.2d 903, 906-221 USPQ 841 (Fed. Cir. 1984).  It does not do that.  The mere fact that the Smith brochure, a one-page promotional brochure, boasts the ability and results of the process of the '903 patent is insufficient, as a matter of law, to constitute an enabling disclosure of the process of the '903 patent.
>
> The Smith brochure itself may qualify as a prior art reference under §103, but only for what is disclosed in it.  It cannot serve as the vehicle by which the '903 patent and the more detailed disclosure it contains may also be considered as prior art. (Emphasis in original)

In view of the Federal Circuit holding, Applicants believe that the Weitzel et al. reference is only valid for what is disclosed in it.  The Office Action states, with respect to p. 30 Weitzel et al., "This phrase implies that the system does revise a medical claim not to include inappropriate medical claims, exactly what is claimed by applicants".  The Applicants believe that functions should not be and cannot be

- 14 -

MCK 000291

inferred from statements in the Weitzel et al. reference.
Weitzel et al. merely state the results of processing, not how
the processing is accomplished, or any of the rules used.  The
reference is only valid for what it does disclose, and nothing
more.  It is inappropriate to infer that Weitzel et al.
performs any functions beyond the statements of the abilities
of the system and results of the claim review procedures.

 Even assuming that Weitzel et al. is a valid
reference, the present invention, as claimed, is still
patentably distinct from Weitzel et al.  Weitzel et al. is a
system for reviewing claims to determine if the health care
services performed were medically necessary and properly
authorized.  On page 28 of Weitzel et al., determining medical
"necessity" is described as assessing the patient's diagnosis,
surgical procedures, the length of time since they occurred and
severity of the patient's condition.  On page 29 of Weitzel et
al., an indicator of a patient's prognosis is described as the
device by which the patient's recouprative potential and
therefore the type and degree of medical services necessary, is
assessed.  Thus, Weitzel et al. is concerned with determining
whether or not the total services billed were appropriate given
the patient's medical condition.

 By contrast, the present invention is concerned with
determining whether or not service providers are attempting to
claim excess payment for medical services by violating rules

- 15 -

MCK 000292

which interrelate predetermined medical service codes.  Unlike Weitzel et al., the present invention does not assess the patient's "prognosis" to determine whether or not the medical service claims are appropriate for the patient's condition. The present invention uses and claims a set of rules that describe the relationship between medical service codes (which correspond to particular medical services or procedures) to determine whether or not there are improper medical service codes in a particular claim.

Even when additionally combined with the Hardy et al. reference, there are still no teachings or suggestions of the present invention, as claimed.  Hardy et al. discloses a basic expert system tool including a knowledge base having facts and ruled, and editing and communication tools.  There is no teaching or suggestion in either Hardy et al. or Weitzel that these references may be combined in the manner stated in the Office Action.  Further, even if these references could be combined as stated in the Office Action, the combination would not meet the limitations of the claims.  The combination of Weitzel et al. and Hardy et al. suggests an expert system which reviews medical service claims and assesses the appropriateness of the medical services in light of the patient's prognosis or medical condition and is then able to inform the user of the system's decision process or request further information from the user.  As with Weitzel et al. itself, there is no teaching

— 16 —

**MCK 000293**

or suggestion of rules describing relationships among particular medical service codes for assessing whether a medical service claim contains medical service codes which violate the rules.

With regard to the claims, Applicants are submitting a set of claims which are believed to clearly distinguish over the Weitzel et al. and Hardy et al. references, either singly or in combination. Claims 7-12, and 31 are method claims, of which claim 7, 14, 16, 17, 18, and 31 are independent. Claims 19-30, and 32 are apparatus claims, of which claims 19, 26, 28, 29, 30, and 32 are independent.

Taking claim 7 as exemplary of the method claims, claim 7 recites a computer system having means for operating on "a predetermined database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when input with selected ones of the medical service codes." Claim 7 additionally cites receiving at least one claim and ascertaining whether there are a plurality of medical service codes in the at least one claim. Claim 7 further recites "determining whether one of the medical service codes in the plurality of medical service is valid or invalid by interacting with the database and the set of relationships contained in the database" and "authorizing medical service codes which are valid", and "rejecting medical service codes which are invalid

MCK 000294

in response to the determining step". Applicants believe that these recitations in claim 7, such as, _inter alia_, describing the predetermined database as containing medical service codes and a set of relationships among the codes, processing the codes to determine which codes are valid, and authorizing valid medical service codes and rejecting invalid medical service codes distinguish the present invention over the art of record. Applicants believe that the prior art, either singly or in combination, contains no teaching or suggestion of a database containing medical service codes and relationships among the codes. The prior art of record, namely, the Weitzel et al. reference, only refers to a method for determining whether or not a particular course of medical treatment is authorized or not.

Claim 14 describes a method similar to claim 7 and recites _inter alia_ "determining whether one of the medical service codes in the at least one claim is included in any other medical service code in the at least one claim, authorizing medical service codes not contained in any other medical service code, and rejecting medical service codes which are contained in any other medical service code".

Claim 16 describes a similar method as claim 7 and recites, _inter alia_ "determining whether one of the medical service codes in the at least one claim is medically exclusive

MCK 000295

with any other medical service code in the at least one claim",
"authorizing medical service codes which are not medically
exclusive with any other medical service codes", and "rejecting
medical service codes which are medically exclusive with any
other medical service code" in response to the determining
step.

Claim 17 describes a method similar to claim 7 and
recites, _inter_ _alia_, "determining whether any medical service
code contained in the at least one claim is not present in the
predetermined database", and "informing a user that a medical
service code is not contained in the predetermined database".

Claim 18 describes a similar method as claim 7 and
recites, _inter_ _alia_, "determining whether one of the medical
service codes in the at least one claim is mutually exclusive
due to non-medical criteria with any other medical service
code", "authorizing medical service codes which are not
mutually exclusive due to non-medical criteria with any other
medical service codes", and "rejecting medical service codes
which are mutually exclusive due to non-medical criteria with
any other medical service codes" in response to the determining
step.

Claim 19 describes a computer system including a
central processing unit and associated memory for processing
input claims including "a predetermined database stored in the

MCK 000296

associated memory, the database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when received with other selected ones of the medical service codes", "means for receiving at least one claim", and "means for ascertaining whether the at least one claim contains a plurality of medical service codes".

Claim 19 further recites "means for determining whether one of the medical service codes in the plurality of medical service codes are valid or invalid by interacting with the database and set of relationships contained in the database", and "means for authorizing valid medical service codes" and "means for rejecting invalid medical service codes". Claim 19 is believed to distinguish over the prior art of record because, inter alia, there is no means for determining whether one of the medical service codes is valid or invalid and no means for authorizing valid medical service codes and no means for rejecting invalid medical service codes disclosed or suggested in the prior art of record.

Claim 26 describes a system similar as claim 19 and recites, inter alia, "means for determining whether one of the medical service codes in the at least one claim is included in any other medical service code in the at least one claim", "means for authorizing medical service codes which are not

MCK 000297

contained in any other medical service code", and "means for rejecting medical service codes which are contained in any other medical service code".

Claim 28 describes a system similar to claim 19 and recites, _inter_ _alia_, "means for determining whether one of the medical service codes in the at least one claim is medically exclusive with any other medical service code in the at least one claim", "means for authorizing medical service codes which are not medically exclusive with any other medical service codes", and "means for rejecting medical service codes which are medically exclusive with any other medical service codes" in response to the means for determining.

Claim 29 describes a system similar to claim 19 and describes, _inter_ _alia_, "means for determining whether any medical service code contained in the at least one claim is not present in the predetermined database" and "means for informing a user that a medical service code is not contained in the predetermined database".

Claim 30 describes a system similar to claim 19 and recites, _inter_ _alia_, "means for determining whether one of the medical service codes in the at least one claim is mutually exclusive due to non-medical criteria with any other medical service code in the at least one claim", "means for authorizing medical service codes which are not mutually exclusive due to

- 21 -

MCK 000298

non-medical criteria with any other medical service codes", and "means for rejecting medical service codes which are mutually exclusive due to non-medical criteria with any other medical service codes" in response to the means for determining.

Claim 31 describes a similar method as claim 7 and recites, inter alia, "determining whether one of the medical service codes in a plurality of medical service codes is valid or invalid by interacting with the database and the set of relationships contained in the database", "authorizing the at least one claim in response to the determining step," and "rejecting the at least one claim in response to the determining step".

Claim 32 describes a system similar to claim 19 and recites, inter alia, "means for determining whether one of the medical service codes in the plurality of medical service codes is valid or invalid by interacting with the database and the set of relationships contained in the database", "means for authorizing the at least claim in response to the means for determining", and "means for rejecting the at least one claim in response to the means for determining".

The dependent claims additionally describe further patentable features of the present invention.

In view of the foregoing amendments and remarks, application should now be in condition for allowance. A notice

MCK 000299

to this effect is respectfully requested.  Should further
questions arise concerning this application, the Examiner is
invited to call the Applicants' attorney at the number listed
below.

Respectfully submitted,

Donald C. Holloway, et al.

By _____
A. Jason Mirabito
Reg. No. 28,161
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, MA  02210-2211
Tel.: (617) 720-3500

Docket no. H033/7002

Dated:  January 29, 1991

0408v

— 23 —

MCK 000300

EXHIBIT 3

Ex~~ss Mail #B62832134

**252307**

*PATENT*

Docket No. _____

**Commissioner of Patents and Trademarks**

**Washington, D.C. 20231**

## NEW APPLICATION TRANSMITTAL

Transmitted herewith for filing is the patent application of

Inventor(s):  Don C. Holloway;
Dr. Robert D. Hertenstein;
George A. Goldberg;
Kelli A. Dugan

NOTE:  *Patent must be applied for in the name(s) of all of the actual inventor(s). 37 CFR 1.41 and 1.53(b).*

For (title):  EXPERT SYSTEM AND METHOD FOR ASSESSING MEDICAL APPLICATIONS

### 1.  Type of Application

This new application is for a(n) (*check one applicable item below* ):

[x]  Original

[ ]  Design

WARNING:  *Do not use this transmittal for a completion in the U.S. of an International Application under 35 U.S.C. 371(c)(4) unless the International Application is being filed as a divisional, continuation or continuation-in-part application.*

NOTE:  *If one of the following 3 items apply then complete and attach ADDED PAGES FOR NEW APPLICATION TRANSMITTAL WHERE BENEFIT OF A PRIOR U.S. APPLICATION CLAIMED*

[ ]  Divisional

[ ]  Continuation

[ ]  Continuation-in-part (CIP)

### 2.  Benefit of Prior U.S. Application(s) (35 USC 120)

NOTE:  *If the new application being transmitted is a divisional, continuation or a continuation-in-part of a parent case, or where the parent case is an International Application which designated the U.S., then check the following item and complete and attach ADDED PAGES FOR NEW APPLICATION TRANSMITTAL WHERE BENEFIT OF PRIOR U.S. APPLICATION(S) CLAIMED.*

[ ]  The new application being transmitted claims the benefit of prior U.S. application(s) and enclosed are ADDED PAGES FOR NEW APPLICATION TRANSMIT-
TAL WHERE BENEFIT OF PRIOR U.S. APPLICATION(S) CLAIMED.

---

#### CERTIFICATION UNDER 37 CFR 1.10

I hereby certify that this New Application Transmittal and the documents referred to as enclosed therein are being deposited with the United States Postal Service on this date   September 30, 1988   in an envelope as "Express Mail Post Office to Addressee" Mailing Label Number  B62832134   addressed to the: Commissioner of Patents and Trademarks, Washington, D.C. 20231

Jacqueline Angelone

(Type or print name of person mailing paper)

(Signature of person mailing paper)

NOTE:  *Each paper or fee referred to as enclosed herein has the number of the "Express Mail" mailing label placed thereon prior to mailing. 37 CFR 1.10(b).*

(Application Transmittal [4-1]—page 1 of 6)

MCK 000074

**3. Papers Enclosed Which Are Required For Filing Date Under 37 CFR 1.53(b) (Regular) or 37 CFR 1.153 (Design) Application**

_23_ Pages of specification

_2_ Pages of claims                    Appendixes

_1_ Pages of Abstract

_7_ Sheets of drawing                  27 pages, Appendix A
                                       3 pages, Appendix B
   ☐ formal                            3 pages, Appendix C
   ☒ informal                          41 pages, Appendix D
      ☒ in triplicate

NOTE: _The Notice of October 7, 1985 (1059 O.G. 38–39) states the following: "Submission of Drawings —For your convenience and for more effective handling of any drawing corrections which may be necessary, please DO NOT SUBMIT ORIGINAL DRAWINGS WITH PATENT APPLICATIONS. DO SUBMIT THREE HIGH QUALITY COPIES. If the copies submitted pass the formality review and patent examination, no substitute drawings will be necessary. If corrections are necessary, they should be made to the original drawings. Either a good copy of the corrected drawings or the corrected original can then be submitted after the Notice of Allowability is mailed." The Notice of November 25, 1985 (1061 O.G. 12) further clarifies the submission of drawing practice by pointing out that the copies that are submitted to the office must be on strong, white, smooth and non-shiny paper and also points out that drawings for patent applications do not need to be submitted on bristol board._

**4. Additional papers enclosed**

   ☐ Preliminary Amendment
   ☐ Information Disclosure Statement
   ☐ Form PTO-1449
   ☐ Citations
   ☐ Declaration of Biological Deposit
   ☐ Special Comments
   ☐ Other

**5. Declaration or oath**

   ☐ Enclosed

      executed by _(check all applicable boxes)_

      ☐ inventor(s).

      ☐ legal representative of inventor(s). 37 CFR 1.42 or 1.43

      ☐ joint inventor or person showing a proprietary interest on behalf of inventor who refused to sign or cannot be reached.

MCK 000075

☐ this is the petition required by 37 C(  ).47 and the statement required by 37 CFR 1.47 is also attached. *See item 12 below for fee.*

☑ Not Enclosed.

NOTE: *Where the filing is a completion in the U.S. of an International Application but where a declaration is not available or where the completion of the U.S. application contains subject matter in addition to the International Application the application may be treated as a continuation or continuation-in-part, as the case may be, utilizing ADDED PAGE FOR NEW APPLICATION TRANSMITTAL WHERE BENEFIT OF PRIOR U.S. APPLICATION CLAIMED.*

☐ Application is made by a person authorized under 37 CFR 1.41(c) on behalf of *all* the above named inventor(s). The declaration or oath, along with the surcharge required by 37 CFR 1.16(e) can be filed subsequently.

NOTE: *It is important that all the correct inventor(s) are named for filing under 37 CFR 1.41(c) and 1.53(b).*

☐ Showing that the filing is authorized. (*Not required unless called into question. 37 CFR 1.41(d).*)

## 6. Inventorship Statement

WARNING: *If the named inventors are each not the inventors of all the claims an explanation, including the ownership of the various claims at the time the last claimed invention was made, should be submitted.*

The inventorship for all the claims in this application are:

☒ The same

**or**

☐ Are not the same. An explanation, including the ownership of the various claims at the time the last claimed invention was made,

☐ is submitted

☐ will be submitted.

## 7. Language

NOTE: *An application including a signed oath or declaration may be filed in a language other than English. A verified English translation of the non-English language application and the processing fee of $26.00 required by 37 CFR 1.17(k) is required to be filed with the application or within such time as may be set by the Office. 37 CFR 1.52(d).*

NOTE: *A non-English oath or declaration in the form provided or approved by the PTO need not be translated. 37 CFR 1.69(b).*

☒ English

☐ non-English

☐ the attached translation is a verified translation. 37 CFR 1.52(d).

NOTE: *37 CFR 1.52(d) "An application may be filed in a language other than English. A verified English translation of the non-English language application and the fee set forth in § 1.17(k) are required to be filed with the application or within such time as may be set by the Office."*

## 8. Assignment

☒ An assignment of the invention to <u>HPR, Inc., 53 Bay State Road,</u>
<u>Boston, MA  02215</u>

☐ is attached

☒ will follow

## 9. Certified Copy

Certified copy(ies) of application(s)

(Application Transmittal [4-1]—page 3 of 6)

MCK 000076

| (country) | (appln. no.) | (filed) |
|---|---|---|
| (country) | (appln. no.) | (filed) |
| (country) | (appln. no.) | (filed) |

from which priority is claimed

☐ is(are) attached

☐ will follow

NOTE:  The foreign application forming the basis for the claim for priority must be referred to in the oath or declaration. 37 CFR 1.55(a) and 1.63.

NOTE:  This item is for any foreign priority for which the application being filed directly relates. If any parent U.S. application or international Application from which this application claims benefit under 35 U.S.C. 120 is itself entitled to priority from a prior foreign application then complete item 17 on the ADDED PAGES FOR NEW APPLICATION TRANSMITTAL WHERE BENEFIT OF PRIOR U.S. APPLICATION(S) CLAIMED

## 10.  Fee Calculation

**A.**  ☑  **Regular application**

| CLAIMS AS FILED | | | |
|---|---|---|---|
| Number filed | Number Extra | Rate | Basic Fee $340.00 |
| Total Claims          2  −20 = 0 | X | $ 12.00 | 0 |
| Independent Claims    2  −3 = 0 | X | $ 34.00 | 0 |
| Multiple dependent claim(s), if any | | $110.00 | |

☐ Amendment cancelling extra claims enclosed

☐ Amendment deleting multiple dependencies enclosed

☐ Fee for extra claims is not being paid at this time

NOTE·  If the fees for extra claims are not paid on filing they must be paid or the claims cancelled by amendment, prior to the expiration of the time period set for response by the Patent and Trademark Office in any notice of fee deficiency. 37 CFR 1.16(d).

Filing Fee Calculation          $ _____340.00_____

**B.**  ☐  **Design application**
   ($140.00—37 CFR 1.16(f))

Filing Fee Calculation          $ _____

## 11.  Small Entity Statement(s)

☐ Verified Statement(s) that this is a filing by a small entity under 37 CFR 1.9 and 1.27 is(are) attached.

Filing Fee Calculation (50% of **A** or **B** above)          $ _____

NOTE:  Any excess of the full fee paid will be refunded if a verified statement and a refund request are filed within 2 months of the date of timely payment of a full fee. 37 CFR 1.28(a).

(Application Transmittal [4-1]—page 4 of 6)

MCK 000077

**12.  Fee Payment Being Made At This Time**

☒  Not Enclosed

☐  No filing fee is to be paid at this time. (*This and the surcharge required by 37 CFR 1.16(e) can be paid subsequently.* )

☐  Enclosed

☐  basic filing fee                                                    $ _____

☐  recording assignment
($7.00; 37 CFR 1.21(h)(1))                        $ _____

☐  petition fee for filing by other
than all the inventors or person
on behalf of the inventor where
inventor refused to sign or cannot
be reached. ($140.00; 37 CFR
1.47 and 1.17(h))                                          $ _____

☐  for processing an application with
a specification in a non-English
language. ($26.00; 37 CFR 1.52(d) and
1.17(k)                                                            $ _____

☐  processing and retention fee
($100.00; 37 CFR 1.53(d) and 1.21(l)        $ _____

NOTE:  37 CFR 1.21(l) establishes a fee for processing and retaining any application which is abandoned for failing
to complete the application pursuant to 37 CFR 1.53(d) and this, as well as the changes to 37 CFR 1.53 and
1.78, indicate that in order to obtain the benefit of a prior U.S. application, either the basic filing fee must be
paid or the processing and retention fee of § 1.21(l) must be paid within 1 year from notification under
§ 53(d).

**Total fees enclosed**                          $ _____

**13.  Method of Payment of Fees**

☐  check in the amount of $ _____

☐  charge Account No. _____ in the amount of $ _____. A du-
plicate of this transmittal is attached.

NOTE:   Fees should be itemized in such a manner that it is clear for which purpose the fees are paid. 37 CFR 1.22(b).

**14.  Authorization to Charge Additional Fees**

*WARNING:   If no fees are to be paid on filing the following items should not be completed.*

*WARNING:   Accurately count claims, especially multiple dependent claims, to avoid unexpected high charges, if
extra claim charges are authorized.*

☐  The Commissioner is hereby authorized to charge the following additional fees
by this paper and during the entire pendency of this application to Account No.

_____

☐  37 CFR 1.16 (filing fees)

☐  37 CFR 1.16 (presentation of extra claims)

NOTE:   Because additional fees for excess or multiple dependent claims not paid on filing or on later presentation
must only be paid or these claims cancelled by amendment prior to the expiration of the time period set for
response by the PTO in any notice of fee deficiency (37 CFR 1.16(d)), it might be best not to authorize the
PTO to charge additional claim fees, except possibly when dealing with amendments after final action.

☐  37 CFR 1.16(e) (surcharge for filing the basic filing fee and/or declaration
on a date later than the filing date of the application)

☐  37 CFR 1.17 (application processing fees)

(Application Transmittal [4-1]—page 5 of 6)

MCK 000078

**WARNING:** *While 37 CFR 1.17(a), (b), (c) and (d) deal with extensions of time under § 1.136(a) this authorization should be made only with the knowledge that: "Submission of the appropriate extension fee under 37 C.F.R. 1.136(a) is to no avail unless a request or petition for extension is filed." (Emphasis added). Notice of November 5, 1985 (1080 O.G. 27).*

☐   37 CFR 1.18 (issue fee at or before mailing of Notice of Allowance, pursuant to 37 CFR 1.311(b).

*NOTE: Where an authorization to charge the issue fee to a deposit account has been filed before the mailing of a Notice of Allowance, the issue fee will be automatically charged to the deposit account at the time of mailing the notice of allowance. 37 CFR 1.311(b).*

*NOTE: 37 CFR 1.28(b) requires "Notification of any change in loss of entitlement to small entity status must be filed in the application . . . prior to paying, or at the time of paying, . . . . issue fee". From the wording of 37 CFR 1.28(b): (a) notification of change of status must be made even if the fee is paid as "other than a small entity" and (b) no notification is required if the change is to another small entity.*

## 15.  Instructions As To Overpayment

☐   credit Account No. _____

☐   refund

Reg. No. 31,624⌐

SIGNATURE OF ATTORNEY
Jason M. Honeyman

Tel. No. (617) 426-4600

Type or print name of attorney
GASTON & SNOW
P.O. Address
One Federal Street
Boston, MA   02110

☐  **Incorporation by reference of added pages**

*Check the following item if the application in this transmittal claims the benefit of prior U.S. application(s) (including an international application entering the U.S. stage as a continuation, divisional or C-I-P application) and complete and attach the ADDED PAGES FOR NEW APPLICATION TRANSMITTAL WHERE BENEFIT OF PRIOR U.S. APPLICATION(S) CLAIMED*

☐  Plus Added Pages For New Application Transmittal Where Benefit Of Prior U.S. Application(s) Claimed

Number of pages added _____

☐  Plus Added Pages For Papers Referred To In Item 4 Above

Number of pages added _____

☐  **Statement Where No Further Pages Added**

*If no further pages form a part of this Transmittal then end this Transmittal with this page and check the following item*

☐  This transmittal ends with this page.

(Application Transmittal [4-1]—page 6 of 6)

MCK 000079

# EXPERT SYSTEM AND METHOD FOR ASSESSING MEDICAL APPLICATIONS

## Field of the Invention

The present invention relates to expert systems as applied to the field of medical claims analysis and decision-making mechanisms for analyzing and applying payments to such medical claims.

## Background of the Invention

To date, attempts to modify fee-for-service payment of physicians have focused only on price. Evidence is accumulating that, while many errors are inadvertent, some physicians are increasing their reimbursement by targeting the other component of the equation: codes describing the procedures performed.

Declines in inpatient care and physician visits over the last five years have been more than offset by the increase in prices of all providers. The net result has been an actual increase in the rate of real growth in health care expenditures in the past decade because of lower general inflation. Cost containment efforts, having so far concentrated on reducing unnecessary use, now are beginning to address price. Additionally the focus has been on hospitals more than physicians. Yet the cost of physician services, the second largest component of health care costs, was 20.1 percent of total costs in 1986, up from 18.9 percent in 1980. Physician costs climbed 11 percent in 1986, compared with 7.7 percent for all medical costs and 1.5 percent for the general economy.

3

MCK 000080

In an effort to retain patients amid increased health care
competition, physicians are negotiating agreements with managed
care programs such as health maintenance organizations (HMOs)
and preferred provider organizations (PPOs). Physicians give
price concessions to these organizations through a negotiated
fee schedule or a discount from historic charges. In addition,
they agree to strong utilization controls to reduce unnecessary
use. As a consequence, unless total patient volume increases,
physicians have two primary options for maintaining their
income. One is to increase dramatically their charges to
fee-for-service patients whose benefit plans often pay the
price that is customary in the physician community. The other
is to up their charges to managed care programs by the indirect
method of upcoding.

Incentives like these have driven the momentum in
Washington, D.C. to reform the method of physician payment for
Medicare and Medicaid. While various alternatives are being
considered, such as capitation or physician diagnosis related
groups (DRGs), widespread implementation of such approaches is
not imminent. Instead, modifications to the fee-for-service
payment system are likely in the next several years. If such
reforms can maintain satisfactory levels of patient access
while gaining physician support, a modified fee-for-service
method may remain the major payment method.

Thus far, attempts to alter fee-for-service payment have
included efforts such as: freezing Medicare physician fees for

MCK 000081

-24

specified periods; developing a model for a Medicare resource based relative value scale to set prices for different physician services; and revising Medicaid fee schedules and Blue Shield relative value scales for physician reimbursement in Massachusetts.

These approaches address only part of the problem: establishing payment amount. A second, independent component for determining what physicians are paid is the code specifying the service provided. While true coding errors on payment claims will always occur, there also is evidence that some physicians are increasing their reimbursement by upcoding, assigning a higher paying code than a procedure merits, or by unpackaging services that were intended to be bundled into a single code. The administrative systems currently available are not adequate to detect and correct most of these errors.

Standard industry practice allows medical claims processors to enter the codes submitted on surgeon claims into a computer system. Fee screens are applied to these codes establishing the maximum amount that will be paid. Two coding methods most frequently used are the American Medical Association's "Current Procedural Terminology, Fourth Edition (CPT-4)," and the "California Relative Value Studies (CRVS)." Some claims administrators allow their claims processors to assign a code if it is absent from the claim; others return the claim to the physician's office for a code. Once entered into the claims processing systems, the code is typically edited for

MCK 000082

consistency with the age and sex of the patient, and sometimes for obvious rules in coding. After this step, if there is still a perceived problem with either the code or the fee, the claim is removed from the production process and referred for review by clinical staff. This reviewer, usually a nurse, may request the surgeon's official operative report, a required part of the hospital record, and/or call for a physician to review the claim. A payment for the claim, if approved, is established, and the claim is returned to the processor for payment. Emphasis throughout the insurance industry is on minimizing the time between when a claim is received and when it is paid, rather than on its accuracy.

While the problems detailed above are generally accepted, the concern is whether the cost of obtaining the savings will warrant the effort. The solution requires that medical judgment be applied to select the most appropriate code(s) when subtle clinical distinctions result in significant differences in payment to the medical care provider, or to decide when to request additional information from the provider. However, applying the required expert medical judgment has the potential of slowing down the processing of claims and significantly increasing the cost of doing so. At present, processing of medical claims is done on an automated basis using computer systems by relatively unskilled workers who input data, including the CPT-4 codes, into the computer and process them for payment. Usually, such an operator is unaware of whether

MCK 000083

the entity to whom the request for payment is made, such as an insurance company, should pay or not pay the claim as submitted. It is impractical for each of the operators to have a trained medical physician or technician to sit by the operator and decide whether a particular claim should be paid or not. The expense of such supervision would result in costs which would offset any savings realized by paying only the appropriate amount of the claim. Also, with a multiplicity of such medical reviewers, inconsistent results would occur. Therefore, to save expenses while maintaining productivity of the processing system, medical judgment must be incorporated in an automated data processing system which contains decision rules that can be used to automate the review of claims being processed.

In order to provide a cost effective automated data processing system for achieving the desired results in paying only appropriately coded claim amounts, expert systems or artificial intelligence software provides the vehicle for widespread distribution of an expert's decision-making guidance. An expert system in the form of a computer program is one which reasons like a human expert to solve the problems associated with appropriate coding of medical treatment for claims payments.

## Summary of the Invention

CodeReview, a product of HPR, Inc., the assignee of the present invention, uses expert systems techniques especially

MCK 000084

-5-

suited to representing the medical judgment required to assign
appropriate codes to surgeon's claims. CodeReview prompts the
user for additional information not already entered into the
computer, and will either recommend appropriate code(s) or
recommend pending the claims until additional information is
received form the physician's office. The prompts and
recommendations provided by CodeReview are based on the
decision rules that physician reviewers have already used on a
manual basis to solve identical problems and are consistent
with informed surgical opinion.

The present invention uses a set of decision-making
rules coupled to a knowledge base of facts and observations to
assist the medical claims processor. There is included a
knowledge base and a knowledge base interpreter which applies
the knowledge base using the rules specified in the knowledge
base interpreter. The process is an ongoing process which can
be updated as new methods of inappropriate coding are
discovered.

The present invention utilizes the CPT-4 codes in the
knowledge base of the expert system, although other coding
methods for classification of medical procedures such as the
CRVS discussed above may be utilized as well. The knowledge
base interpreter is a part of the CodeReview program and
contains an association of the CPT-4 codes with the knowledge
base of expert-derived decisions or rules. An example is the
inclusion of one CPT-4 code procedure within another CPT-4 code

MCK 000085

procedure.  As a specific and simple example of the foregoing,
a physician or his or her billing company may submit a claim
for payment for two procedures with appropriate CPT-4 codes for
the procedures.  If those two were CPT-4 numbers 49000 for
Exploration of the Abdomen and 44140 for Partial Colectomy, and
both procedures were performed on the same date, the program of
the present invention will recommend to the claims processor
that code 49000 should only be paid when it is not done as part
of a code 44140 partial colectomy.  Since code 44140 was
performed, the claim for code 49000 should not be accepted and
paid.  The computer program invokes a rule which has been
specified that states that if code 44140 appears with another
code in a particular range, which in this example includes
49000, the second code should be rejected and only the first
specified paid.  The claims processor then rejects the payment
code 49000, authorizes payment for code 44140, and so informs
the physician or billing company, with the explanation given
above.  Without such a program, the claims processor usually
pays both code numbers.

Brief Description of the Drawings

        Fig. 1 is a block diagram of the system of the present
invention;

        Fig. 2 is a flowchart of the overall operation of the
programmed computer of the present invention;

        Fig. 3 is a flowchart depicting the entry program of
the programmed computer of the present invention;

MCK 000086

-79-

Fig. 4 is a flowchart of the operation of the programmed computer for multiple entries;

Fig. 5 is a flowchart of the operation of the computer programmed for single code entries or multiple code entries which survive the flowchart of Fig. 4;

Fig. 6 is a chart of the categories of rules applied to the entries in the present invention.

Fig. 7 is a flowchart of the operation of the programmed computer depicting the lookup function of the computer programmed in accordance with the present invention.

DELUX     Description of the Preferred Embodiment

P     Referring now to the drawings, there is shown in Fig. 1 a general block diagram of a preferred embodiment of the present invention.  Claims to be processed 1 are received by the entity from whom payments are requested.  A user designated at 3 enters various facts from the claims 1 into the computer system 2.  Such facts include, in addition to the entries for the one or more medical procedures for which payment is sought, other data such as age of the patient, claim number, date(s) of treatment(s) and procedure(s), the name of the physician, etc. The computer system 2 may be any type of suitable computer system which can interact with the program of the present invention.  One such suitable computer system is the well-known IBM "personal computer" containing sufficient data processing capabilities and memory and suitable commercially available database management software programs to perform the desired

MCK 000087

functions.   Other suitable computer systems exist and are

intended to come within the scope of the present invention.

The system may include a connection with another computer

system 4 whereby the user 3, after having used the system and

methods of the present invention, communicates his or her

information to the computer 4 which approves payment for the

claim submitted.   It is understood that the computer 4 could,

in appropriate circumstances, to be described below, refuse any

payment or be instructed to request further information from

the entity providing the claims 1.

Generally, the user 3 will enter into the computer

system 2 a description of the medical claims for which

reimbursement or payment is requested or the codes associated

with such claims or both.   The appropriate code(s) are then

sent to the knowledge base interpreter 5 for its assessment of

the coded claims.  The interpreter 5, using the rules of the

present invention, interacts with the knowledge base 6 of the

present invention and returns to the user 3 either a

recommendation as to code(s) for which payment is proper or

requests the user to provide further information or to obtain

further information from the entity providing the claim or

refers the claim to trained medical personnel for assessment.

When the knowledge base interpreter has recommended approval of

payment of a particular type, the user 3 then may authorize

payment to the provider of the processed claim or may forward

that information via input into computer system 4.   A history

MCK 000088

database 7 is provided to update and refine the knowledge base
interpreter 5 and the knowledge base 6 and to monitor savings
associated with the recommendation.

Referring now to Figs. 2 and 3, the user first runs the
ENTRY PROGRAM shown generally at 7 in Fig. 3.  Referring now to
Fig. 3, in step 8, if the CPT-4 code is given, the codes are
entered into the programmed computer of the present invention
and read at step 9.  If the codes are or may be incorrectly
given, the LOOKUP PROGRAM 10 is run, as will be explained with
reference to Fig. 7.  If the entity which is requesting payment
has provided a code entry or entries for the treatment given,
then in step 9 it is determined whether the code entry is valid
or invalid by reference to the ALLCODE database 11.  If an
incorrect code (meaning here that there is no such
alpha/numeric code or the code and description do not match)
entry or entries are given or if no code entry is given at all,
in step 9 the valid code entry or entries are specified by the
process of the LOOKUP PROGRAM 10.  By valid is meant that there
is a code or codes for the treatment given a patient.  It does
not mean that the entry or entries are valid for payment. The
ALLCODE database preferably uses the CPT-4 classification
system, but other classification systems are intended to be
within the scope of the present invention.  The computer
programmed in accordance with present invention then looks up
in the SUPERSEDE database file 12 to determine whether an
earlier code number has been superseded by another code

MCK 000089

260:m

B entry in an updated version of the CPT-4 classification system. If the code(s) have been superseded, in step 13 the old code entry or entries are replaced by the superseded code(s) and this information is sent to the PROCESS database 17. In step 14, if another code was added in the preceding process, the program loops back to step 8 again. If not, it goes on to step 15. In step 15, any duplicate codes, if more than one code entry, are eliminated. However, in certain instances, duplicate codes are permitted, so that before eliminating the duplicate codes, a lookup in the database file 16 is performed to determine if the duplicate entries are valid. If there are no duplicate entries or or only one entry, step 15 is not performed. After step 15, the record file, as may be affected by steps 9, 10, 13, and 14, is updated and sent to the PROCESS database 17. In step 18, the number of codes resulting from the foregoing steps is counted and stored. This count will determine whether a particular program for multiple entries must be run, as will be discussed below. In step 19, the ENTRY PROGRAM 7 returns to the operations of the flowchart of Fig. 2.

It will be recalled that in step 18 the number of codes was determined and stored. In step 20, if the number of codes determined was more than one, then the MULTIPLE PROGRAM is run in step 21, as will be presently explained. Referring now to Fig. 4, this figure is the flowchart of MULTIPLE PROGRAM 21. In step 22, the multiple number of codes under consideration is

MCK 000090

2 6 0 1 m

/3

read out from PROCESS database 17. Generally, in the next
series of steps, the program will examine the multiple codes
presented to determine whether payment or payment authorization
for each of the stated codes is medically appropriate, or
whether one or more of the codes is medically inappropriate, or
whether one or all of the multiple codes should be replaced by
other code(s).

In order to accomplish this, a set of rules developed
for use of this program is now invoked. These rules were
derived using the CPT-4 classification system, and from various
medical procedures which were examined, classified, and
possible combinations of procedures assessed by expert medical
specialists. From this effort resulted a series of rules which
can be and are applied to multiple code entries (and single
code entries as well as will be discussed below). Each of the
rules was developed as a result of reviewing medical procedures
by expert medical personnel and is consistent with the CPT-4
classification system. However, expert medical personnel also
applied clinical judgment to situations where the CPT-4
classification system is not explicit or nonexistent.
Therefore, for both single and multiple code entries, a set of
rules applicable to CPT-4 codes singly and in combination are
used to evaluate the appropriateness of the codes for payment.
The operation of the rules is best illustrated by way of
example with reference to the operation of MULTIPLE PROGRAM
21. In step 23, the codes, multiple in this case, which have

MCK 000091

14

z601m

been read into a file in step 22 from PROCESS database 17, are
examined first by looking up from INTERACT database 24 any
references to those specific multiple codes presented in step
22 to which will be applied one or more of the rules shown in
summary form in Fig. 6 and more fully detailed in Appendix B.
The first rules to be applied as shown in step 23, are rules
referred to as E1 and E2 as shown in Appendix B.  These first
rules are utilized for multiple records wherein one of the
codes may be eliminated for payment approval purposes.  Thus,
in rule E1, if one code number, here designated as ACODE,
appears in the same list of codes as one or more codes in the
range of BCODE to CCODE, then ACODE is eliminated and the code
number appearing within the range of BCODE to CCODE is
retained.  It is this latter code number which will be further
processed and perhaps approved for payment.  Similarly, in the
code E2, if code ACODE appears with another code in the range
of BCODE to CCODE, ACODE is retained and the code within the
range of BCODE to CCODE deleted.  By first applying rules
designated as E1 and E2, it may be possible to eliminate one or
more inappropriate codes from consideration.  Of course, the
codes are not ACODE, BCODE or CCODE but actual code numbers
from the CPT-4.  In operation, when code numbers are entered
into the computer programmed in accordance with the present
invention, the program will perform a lookup of the code
numbers ACODE and XCODE. The INTERACT database 24 in the
program contains a reference that states that when ACODE is

MCK 000092

2 6 0 i m

used with XCODE, and because XCODE is within the bounds of
BCODE to CCODE, only one code can survive, in accordance with
the El and E2 rules.  By way of example, consider example 1 of
Appendix A.  That example implements rule El.  In example 1,
code numbers 64450 and 10120 are entered in step 22 of Fig. 4.
It is assumed that the date of treatment is the same for all
code entries unless specified and entered otherwise.  If so,
after a lookup in the INTERACT database 24, which contains
information relating to the appearance together of 64450 and
10120, the latter appearing in a range of codes analogous to
the BCODE to CCODE example given above, by the El rule the
program is instructed to recommend elimination for 64450, with
an explanation given if desired and as contained in such
example 1.  Of course, many examples of the operation of the El
and E2 rules are possible depending on the codes which are
analyzed.  Two additional "E" rules may be exercised over the
INTERACT database 24.  These are rules EP and EA.  In rule EP,
a code may be eliminated if the place of service is considered
improper or impractical.  An example of this rule EP is given
as example 17 of Appendix A.  Rule EA is designed to eliminate
a code where the age of the patient recommends exclusion of one
of the codes.  An example of the application of this rule is
given as example 18 of Appendix A.  Appendix A contains other
examples of application of the rules.

     After step 23, the results are sent to update PROCESS
database 17.  Then, in step 23', if there is only one code

MCK 000093

number remaining after step 23, the program exits to the RULES

program of Fig. 5. This is because the "R" and the QM, QS and

QB rules apply only to multiple entries. After step 23', in

steps 25 and 26, rules designated as R2 and R1 are run, as will

be explained below. The "R" rules of the present invention, as

shown in Appendix B, generally replace the codes presented in

step 22 with other code(s) not designated in the step 22.

Rule R2, for example, provides that if a code ACODE appears

with BCODE, both codes are deleted and replaced by CCODE. Rule

R3 is similar to R2 except that more than two code entries are

considered, here ACODE, BCODE, and CCODE, which are replaced by

DCODE. Thus, the R1 rule means replace one code by another

code; R2 means replace two codes by another single code, and R3

means replace three codes by another single code. Other "R"

codes could be developed along the same line: RN would mean

replacing N codes with one other code. As shown in Fig. 4, the

RN-R2 rules are applied first before rule R1 is applied to the

codes. Specific example of rules R2 and R1 are given in

examples 2 and 3, respectively, in Appendix A. It must be

understood that it is not required that each of steps 23, 25

and 26 will affect the code numbers processed, but these steps

are used if expert medical judgment indicates they are required

to arrive at appropriate codes.

Describing in greater detail the application of the R2

and R1 rules, step 25 is first seen after having accessed

INTERACT database 24. The results of application of the R2

MCK 000094

rule are sent to PROCESS database 17. Once again in step 25',
the program queries from PROCESS database 17 whether there
remain multiple entries. If negative, the program is exited
from as explained above. In step 26, rule R1 is exercised and
the INTERACT database 24 consulted and compared. The result is
sent to the PROCESS database 17. It is to be understood that
the R3 rule may be implemented for three codes. An example of
the R3 rule is given in Example 4 of Appendix A. In step 27,
after consulting PROCESS database 17 and determining whether a
new code was added in the application of the R2 and the R1
rules and the number of codes is greater than one, the program
loops back to step 23 to exercise the application of rules R2
and R1, E2 and E1, EP and EA on the newly-resulting (after
step 26) codes. After step 27, in step 27' the program queries
whether the remaining codes exceed one code. If not, the
program exits as explained above. If, however, there remains
more than one code resulting from the operations of steps 23,
25 and 26, then the program enters a new ACTION PROGRAM to
apply rules QM, QS and QB, as shown in step 28. The "Q" set of
rules are designed to alert the user 3 that a problem exists in
the context of the codes presented for payment or that the
particular syntax of the codes presented to the computer
programmed in accordance with the present invention are such
that they cannot be effectively dealt with by the programmed
computer, and thus must be referred to a human consultant.
Rule QM states that when ACODE appears with another code in the

MCK 000095

range of BCODE to CCODE, there is a question about this combination of codes.  The user 3 might be instructed to review the claim and codes submitted, be asked to verify the dates(s) of treatment, or refer the matter to a human expert.  An example of the QM code being utilized is set forth as example 5 of Appendix A.  The code designated QS states that if code ACODE appears with another code in the range of BCODE to CCODE, then there is a question about ACODE.  An example of this is given in example 6 in Appendix A.  Finally, rule QB is applied to the codes presented.  If ACODE appears with another code in the range of BCODE to CCODE, then there is a question about the code in the BCODE to CCODE range. The foregoing example given would apply to this code as well.

After all three "Q" codes have been run on the codes presented in step 28, having accessed the INTERACT database 24, the next step 29 is implemented wherein the PROCESS database 17 is updated with the information from the process of Fig. 4, and the program returned in step 30 to Fig. 2 and step 31.  While rules Q, M, QS or QB may raise a question about a code, it will not cause interruption of the program, but will be reserved for later consideration by user 3.

Just prior to implementing the portion of the programmed computer given as step 31, the programmed computer up until this time has performed two operations, the first being the validation of the codes input by user 3, and the second being the application of certain expert rules to

MCK 000096

multiple code entries.  The resulting codes which will be
presented to the portion of the programmed computer in step 31
will either be a single or a multiple (due to looping through
step 21) code.

In step 31, the RULES PROGRAM represented by the
flowchart of Fig. 5 is run.  Referring now to Fig. 5, in step
32 the records of surviving codes are read out from the PROCESS
database 17.  If the code or one of the codes in step 33 is
referenced in the BYITSELF database 34 as having a rule or
rules applicable or relevant to it, in step 35 a series of "Q"
rules is applied.  It must be appreciated that not all codes
will be in the BYITSELF database, so that if there are three
codes resulting from step 32, perhaps only one of those three
will be in the BYITSELF file and will be subject to step 35.
If there are no matches with codes in the BYITSELF database,
then the process moves directly to step 37.  The purpose of the
"Q" rules is to address an individual code which is one of the
surviving codes after the operation of the MULTIPLE PROGRAM or
is the only code on the claim for which payment is requested.
The "Q" rules are rules to request more information about a
particular code.  For example, rule Q1 states that if the code
survived the set of rules applied to multiple codes under the
MULTIPLE PROGRAM routine or is the only code submitted on the
claim, then always a request for more information is made, as
specified in the MESSAGE appended to the code.  An example of
the application of this rule is example 7 in Appendix A.  In

MCK 000097

-18-

2601m

rule Q2, if certain fields have entries that match the claim,
more information is specified in MESSAGE.  An example of
application of this rule is example 8 of Appendix A.  In rule
Q3, if the code survives rules applied to multiple codes or is
the only code submitted on the claim, and the charge on the
claim is greater than a dollar sum given for that code as
DOLLARLIM, then the user 3 is directed to request more
information as specified in a MESSAGE appended.  An example of
this rule is example 9 in Appendix A.  In rule Q4, if the code
survives rules applied to multiple codes or is the only code
submitted on the claim, and the charge on the claim is greater
then the fee screen for the code in CODELIM, then the user 3 is
directed to request more information as specified in MESSAGE.
AN example of this rule Q4 is example 10 in Appendix A.  In
rule Q5, if the code survives the rules applied to multiple
codes or is the only code submitted on the claim, and the place
of service is POS, then the user 3 is directed to request more
information as specified in MESSAGE.  In addition, if CODELIM
is not equal to 0 and the place of of service is POS, the code
in question is replaced by CODELIM and the message is flagged
by MESSAGETYPE.  An example of this rule is example 11 in
Appendix A.  In rule Q6, if the code survives the rules applied
to multiple codes or is the code submitted on the claim, and
there is no evidence of anesthetic as specified in ANESTHESIA,
then the user 3 is directed to request more information as
specified in MESSAGE.  An example of the application of this

**MCK 000098**

-19-

21

rule is example 12 in Appendix A.    Under rule Q7, if the code

survives the rules applied to multiple codes or is the only

code submitted on the claim and the patient's age is between

BEGAGE and ENDAGE, then the user 3 is directed to request more

information as specified in MESSAGE. An example of rule Q7 is

example 13 in Appendix A.   In rule Q8, if the code survives the

rules applied to multiple codes or is the only code submitted

on the claim and the diagnosis is DX, then the user 3 is

directed to request more information as specified in MESSAGE.

In addition, if CODELIM is not equal to  0 and the DX or

ICD9CODE is true, the code in question is replaced with

CODELIM, and the reason for such action flagged by

MESSAGETYPE.   In all Q2 through Q9 rules, the reasons are

flagged by MESSAGETYPE.   An example of the foregoing rule is

given in example 14 in Appendix A.   In rule Q9, if the code

survives the rules applied to multiple codes or code is only

one submitted on the form then ACODE is replaced with CODELIM

and the reason is flagged by MESSAGETYPE.   An example is

example 15 in Appendix A.   Another rule known as L1 may be used

and this rule relates to the amount of payment to be authorized

to be paid.   Rule L1 applies where the number of codes is

greater than one.    Rule L1 is different from the other rules

in that while the other rules are generally concerned with the

correct classification of authorization for payment, rule L1

applies to specific amounts.   In rule L1, if ACODE appears with

another code in the range of, and includes, BCODE to CCODE,

MCK 000099

2 6 0 1 u

MCK 000100

then the payment authorized limits the payment specified in

ACODE to some amount DCODE.  An example of the foregoing rule

is given in example 16 in Appendix A.

Once the "Q" rules have been exercised in step 35, in

step 36 the PROCESS database 17 is once again updated and in

steps 37 (End of File), and 38, the step 31 of Fig. 2 completes

running.  At this juncture, the user 3 views the recommendation

screen for any relevant rules that have been applied, as

discussed above.  These recommendations are generally a request

for more information, but may be something other than a request

as in the case of a specific exclusion message.

In step 39 the PROCESS database 17 is appended to the

HISTORY database 40 for recordkeeping purposes and for future

use as a means to study these "case histories" and refine,

update and change the rules and the knowledge base

interpreter 5.

In steps 41 (End of File) and 42, the process of the

computer programmed in accordance with the present invention is

completed and the program exited from.  At this point the

user 3 has either confirmed that the code(s) for which payment

is requested are valid or have been modified to become valid or

have been pended so that more information may be obtained by

the user 3 from the physician or his or her billing entity to

aid in processing the claims.

Referring now to Fig. 7, the process of the LOOKUP

portion 10 of the programmed computer will now be explained.

23

The purpose of the program 10 is to handle those situations in which claims cannot be read out, in step 9 of Fig. 3, from database 8.  In step 43, the user 3 inputs a description of the treatment noted on the claims form submitted by the physician or his or her billing entity.  The LOOKUP Program 10 searches for a match in step 44 for the description given in step 43 from the index of the CPT-4 manual in a database called CPTINDX 45.  The database 45 contains the records of the index, in machine-readable format, of the CPT-4 manual.  If a match between input 43 and database 45 does not occur, the process loops back to step 43 for the user to reassess the description given and to give a new description.  If, however, a match is made, the program will display a number of related entries from CPTINDX 45 the number of which may be selected by the programmer using well-known programming techniques.  The user 3 then chooses, in step 46, what he or she considers to be the most appropriate selection, which the LOOKUP program then searches for in step 47 in the CPT-4 code or other code shown as ALLCODE database 11.  In step 48, the codes fetched from the CODES database 49, a subset of ALLCODE database 11, are displayed with their descriptions.  In step 50, the user 3 chooses one or more appropriate codes to match the description given in step 43 and the program updates the PROCESS database 17 with this information in step 51.  Following such updating, in step 52, the program returns to step 9 as shown in Fig. 3.  Of course, the process described with reference to

MCK 000101