IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 04-1258 (SLR) |
| THE TRIZETTO GROUP, INC., | ) ) | **REDACTED VERSION** |
| Defendant. | ) ) | |

## OPENING BRIEF IN SUPPORT OF THE TRIZETTO GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY FOR FAILURE TO DISCLOSE THE BEST MODE OF PRACTICING THE CLAIMED INVENTION

<div style="margin-left:40%">

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith, II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200

*Attorneys for Defendant The TriZetto Group, Inc.*

</div>

OF COUNSEL:

Jeffrey T. Thomas
David A. Segal
Michael A. Sitzman
GIBSON, DUNN & CRUTCHER LLP
Jamboree Center
4 Park Plaza
Irvine, CA  92614-8557
(949) 451-3800

Original Filing Date:  June 1, 2006
Redacted Filing Date:  June 7, 2006

## TABLE OF CONTENTS

Page

I.     NATURE AND STAGE OF THE PROCEEDINGS ........................................................1

II.    SUMMARY OF ARGUMENT ...............................................................................1

III.   STATEMENT OF FACTS ...................................................................................3

       A.    The '164 Patent.............................................................................................3

       B.    The Inventors Developed A Best Mode For Carrying Out Their Claimed
             Invention Prior To Filing The '164 Patent Application ...........................4

       C.    The Inventors Concealed The Predetermined Database From The PTO
             And The Public At Large .............................................................................6

       D.    The Predetermined Database Is Part Of The Claimed Subject Matter .................8

IV.    ARGUMENT ......................................................................................................9

       A.    Summary Judgment Standard ....................................................................9

       B.    The Best Mode Requirement Prevents Inventors From Obtaining A Patent
             While Concealing The Best Mode Of Practicing The Invention .........................10

       C.    The Predetermined Database Is Part Of The Claimed Subject Matter Of
             The '164 Patent.............................................................................................11

       D.    The Inventors Failed To Comply With The Best Mode Requirement By
             Not Disclosing Their Complete Predetermined Database ...................................13

             1.    At the Time The Inventors Filed The '164 Patent Application, They
                   Knew Of A Best Mode Of Practicing The Claimed Invention...............14

             2.    The Inventors Concealed The Best Mode Of Practicing The
                   Claimed Invention.................................................................................18

       E.    McKesson Cannot Explain Away The Inventors' Failure To Comply With
             The Best Mode Requirement .......................................................................19

             1.    The Disclosure By The Inventors Of The Functions Of Their
                   Software Does Not Satisfy The Best Mode Requirement ......................19

             2.    The Appendices In The Specification Of The '164 Patent Do Not
                   Satisfy The Best Mode Requirement .....................................................22

**Table of Contents**
**(Continued)**

Page

3.    The Fact That The AMA Updates The CPT Manual Does Not
Excuse The Inventors' Concealment Of Their Best Mode ......................23

V.    CONCLUSION...............................................................................................24

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Barmag Barmer & Maschinensabrik AG v. Murata Mach. Ltd.,
731 F.2d 831 (Fed. Cir. 1984).................................................................9

Celotex Corp. v. Catrett,
477 U.S. 317 (1986)..............................................................................9

Chemcast Corp. v. Arco, Indus.,
913 F.2d 923 (Fed. Cir. 1990)...............................................12, 13, 23

Dana Corp. v IPC Ltd. P'ship,
860 F.2d 415 (Fed. Cir. 1988)...............................................11, 12, 23

Engel Indus., Inc. v. Lockformer Co.,
946 F.2d 1528 (Fed. Cir. 1991)..........................................................24

Fonar Corporation v. General Elec.,
107 F.3d 1543 (Fed. Cir. 1997)..........................................................19

Graco, Inc. v. Binks Mfg. Co.,
60 F.3d 785 (Fed. Cir. 1995)..............................................................13

Northern Telecom, Inc. v. Datacom Corp.,
908 F.2d 931 (Fed. Cir. 1990).......................................................10, 11

Old Town Canoe Co. v. Confluence Holdings Corp.,
Nos. 05-1123, -1148, 2006 WL 1228887 (Fed. Cir. May 9, 2006) ...........13, 19

Pannu v. Iolab Corp.,
155 F.3d 1344 (Fed. Cir. 1998)..........................................................13

Spectra-Physics, Inc. v. Coherent, Inc.,
827 F.2d 1524 (Fed. Cir. 1987)...........................................10, 11, 14, 23

U.S. Gypsum Co. v. Nat'l Gypsum Co.,
74 F.3d 1209 (Fed. Cir. 1996)........................................................10, 13

**Statutes**

35 U.S.C. § 112(1) ....................................................................... passim

37 C.F.R. 1.71(b) ................................................................................10

Fed. R. Civ. P. 56...............................................................................9

## I.    NATURE AND STAGE OF THE PROCEEDINGS

On September 13, 2004, plaintiff McKesson Information Solutions, LLC ("McKesson") filed this suit against The TriZetto Group, Inc. ("TriZetto"), alleging that three of TriZetto's products (Facets, ClaimFacts and QicLink) infringe fifteen claims (Claims 1-6 and 8-16) of U.S. Patent No. 5,253,164 ("the '164 patent"). On October 1, 2004, McKesson amended its Complaint. On November 1, 2004, TriZetto answered and filed a counterclaim seeking a declaratory judgment of invalidity, unenforceability, and non-infringement.

Fact and expert discovery were completed in late 2005. The Court construed the patent claims in its Order of April 5, 2006 (D.I. 307), which was later amended by the Order of April 11, 2006. D.I. 320. Also on April 5, 2006, the Court granted TriZetto's Motion for Summary Judgment of Non-Infringement as to Claims 3-6 and 8-15. D.I. 301. A jury trial on infringement of the remaining claims – Claims 1, 2 and 16 – commenced on April 17, 2006. The jury returned a verdict finding literal infringement of Claims 1 and 2, but found that TriZetto did not infringe Claim 16. D.I. 358.

The Court has scheduled a trial on the issues of willfulness, damages, invalidity, laches, equitable estoppel, and inequitable conduct to commence October 3, 2006. Dispositive motions concerning invalidity are scheduled to be heard on August 2, 2006. This is TriZetto's Opening Brief in support of its Motion for Summary Judgment of invalidity for failure to disclose the best mode of practicing the claimed invention.

## II.    SUMMARY OF ARGUMENT

The '164 patent discloses a system and method, embodied by the inventors' CodeReview product, whereby a claims processor can enter medical claims containing CPT codes into a computer, and the computer processes those medical claims by using a software

program and predetermined database (or knowledge base). The predetermined database includes the CPT codes and relationships among those codes. By interacting with the relationships among the CPT codes that are contained in the predetermined database, the computer determines whether two or more codes are appropriate for payment when entered on the same claim.

Claims 1 and 2 of the '164 patent are invalid as a matter of law because at the time the inventors[1] filed their patent application they knew of, but concealed, a mode of practicing their claimed invention that they considered to be better than any other. More specifically, the inventors failed to disclose, and thus concealed from the public, the preferred embodiment of the "predetermined database" (*i.e.*, the database which formed the cornerstone of their claimed invention) in violation of 35 U.S.C. § 112(1).

The inventors of the '164 patent have acknowledged that the computer system at issue was designed to match precisely a manual system for editing medical claims that Dr. Robert Hertenstein had developed while working at Caterpillar Corporation in the 1980s.

REDACTED

---

[1]    The four inventors of the '164 patent are Dr. Robert Hertenstein, Dr. Donald Holloway, Dr. George Goldberg and Kelli Dugan.

Rather than disclose their database, the inventors only disclosed a handful of examples and general "metarules." *See generally*, Ex. 1 ('164 patent), Apps. A, B. These limited examples and rules, however, would not enable a person skilled in the art to build a system that the inventors believed would be the best way to practice their disclosed invention, *i.e.*, a system including the complete set of preferred edits of the inventors' system. By failing to disclose the details of the predetermined database, the inventors violated the best mode requirement of paragraph 1 of 35 U.S.C. § 112.

### III.    STATEMENT OF FACTS

#### A.    The '164 Patent

The '164 patent claims an expert computer system and method for processing medical claims containing medical service codes. *See generally* Ex. 1 ('164 patent), Abstract, col. 117-120. The goal of the claimed invention was to provide a "cost effective automated data processing system for achieving the desired results in paying only appropriately coded claim amounts." *Id.*, col. 3:6-8. The original patent application was filed on September 30, 1988 and, after two continuation applications, the '164 patent eventually issued on October 12, 1993, to HPR, Inc., and is now owned by McKesson.

To receive payment for their medical services, physicians submit medical claims containing "medical service codes," which indicate the particular service(s) or procedure(s) performed. The medical service codes most commonly used are the CPT codes developed by the American Medical Association. To prevent coding errors, manual techniques, such as the one developed by Dr. Hertenstein at Caterpillar, were developed to prevent physicians from either "assigning a higher paying code than a procedure merits, or [] unpackaging services that were intended to be bundled into a single code." *See id.*, col. 2:8-14.    REDACTED

REDACTED

HPR's embodiment of the claimed invention was eventually called CodeReview. *See, e.g.,* Ex. 1 ('164 patent), col. 3:17-29; *id.,* App. A ("Typical Session with CodeReview"); Ex. 6 (Radosevich Dep. Ex. 1).

**B.      The Inventors Developed A Best Mode For Carrying Out Their Claimed Invention Prior To Filing The '164 Patent Application**

The cornerstone of the inventors' CodeReview product was a predetermined database containing medical service codes and a set of relationships among the medical service codes – rules that Dr. Hertenstein had previously developed at Caterpillar for whether selected medical service codes were valid when received with other selected medical service codes.  Ex. 7 (Dugan Dep.), at 96:16-24; Ex. 4 (Hertenstein Dep.), at 12:14-16; Ex. 5 (Holloway Dep.), at 315:41-3.  The predetermined database was created by Dr. Holloway and Dr. Goldberg by spending thousands of hours observing and recording how Dr. Hertenstein reviewed and corrected CPT codes on medical claims.  Ex. 8 (Goldberg Dep.), at 302:18-303:7; Ex. 9 (Goldberg Dep. Ex. 14); *see also* Ex. 2, (Musen Rep.), at 33.  As a result of this massive effort, CodeReview was able to incorporate the knowledge and experience of the inventors, specifically Dr. Hertenstein.

REDACTED

REDACTED


By early 1988, the inventors were touting their predetermined database as being the centerpiece of CodeReview.


REDACTED

REDACTED

**C.**    **The Inventors Concealed The Predetermined Database From The PTO And The Public At Large**

The '164 patent does not disclose, either in the claims of the patent or the specification, the codes and relationships among the codes that were included in the inventors' predetermined database.

REDACTED

REDACTED

REDACTED

**D.    The Predetermined Database Is Part Of The Claimed Subject Matter**

The preambles of Claims 1 and 2 both include "a computer system with means for operating on" "a predetermined database containing medical service codes and a set of relationships among the medical service codes" to check and edit the medical service codes on a claim. Ex. 1 ('164 patent), claims 1, 2. This Court construed the term "predetermined database" to mean "a set of decision-making rules that incorporate a medical code classification system and expert medical clinical judgment." D.I. 320, at 2-3. The relationships among the medical service codes "specify[] that if two or more particular medical service codes are input together as part of the same claim, then one or more of the input medical service codes are appropriate for payment." *See id.* at 4.

Although McKesson contended at trial that neither the predetermined database nor an index of the codes contained therein need be accessed during the performance of the steps of the claimed method, Claim 1 of the patent describes the method of receiving a medical claim and determining whether any medical code on that claim is "not present" in the predetermined database. Ex. 1 ('164 patent), col. 117:8-13. If any code on a medical claim is not present in the predetermined database, then the user is informed of that fact. *Id.*, col. 117:14-15. Correspondingly, although McKesson also asserted that the predetermined database need not be used as part of the method steps of Claim 2, the claim describes the process of receiving a medical claim and determining whether the codes on the claim are "mutually exclusive" with each other "due to non-medical criteria." *Id.*, col. 117:27-31.

As construed by the Court, the method claims of the patent are not limited to any particular database and do not include any specific database structure. Instead, the claims merely mention the concept of a database with rules for comparing codes on a medical claim. As described in TriZetto's concurrently filed Motions, this general concept was obvious, anticipated by prior art, and even disclosed by the inventors themselves more than one year before the patent application was filed. The fact that the claims are so broad, however, does not allow McKesson to avoid complying with the best mode requirement. As discussed below, the law requires a patentee to disclose the best way to practice the invention, even if the claims are broader than the patentee's specific preferred embodiment.

## IV.    ARGUMENT

### A.    Summary Judgment Standard

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The party bearing the burden of proof at trial must come forward with facts showing that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321-22 (1986). As the Supreme Court held in *Celotex*, "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. This standard has been adopted by the Federal Circuit in patent cases as well. *Barmag Barmer & Maschinensabrik AG v. Murata Mach. Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984) (summary judgment is appropriate in a patent case as in any other).

Invalidity for failure to comply with the best mode requirement requires proof by clear and convincing evidence that the inventors knew of and concealed a better mode of

carrying out the invention than was set forth in the patent specification. *Northern Telecom, Inc.*
*v. Datacom Corp.*, 908 F.2d 931, 935 (Fed. Cir. 1990) (noting that the party asserting invalidity
must establish by clear and convincing evidence facts supporting a conclusion of invalidity).
Here, summary judgment is appropriate because there are no genuine issues of material fact as to
(1) the inventors' belief that the detailed relationships among medical service codes in their
predetermined database was better than the coding relationships known to others in the industry,
and (2) the inventors' failure to disclose that best mode of practicing their claimed invention in
the '164 patent.  The absence of any disputed issues of fact clearly and convincingly establishes
that Claims 1 and 2 of the '164 patent are invalid.[2]

**B.      The Best Mode Requirement Prevents Inventors From Obtaining A
         Patent While Concealing The Best Mode Of Practicing The Invention**

         Paragraph 1 of Section 112 of the Patent Act requires that a patent applicant must
"set forth the best mode contemplated by the inventor of carrying out his invention."  35 U.S.C.
§ 112(1); *see also* 37 C.F.R. 1.71(b).  Failure to satisfy the best mode requirement results in a
patent being invalid.  *See, e.g., U.S. Gypsum Co. v. Nat'l Gypsum Co.*, 74 F.3d 1209 (Fed. Cir.
1996) (affirming the district court's grant of summary judgment of patent invalidity for failure to
disclose best mode); *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1535 (Fed. Cir.
1987) (declaring two patents invalid for failure to comply with best mode requirement).

         The purpose behind the best mode requirement is "to ensure that the public, in
exchange for the rights given the inventor under the patent laws, obtains from the inventor a full
disclosure of the preferred embodiment of the invention."  *Dana Corp. v IPC Ltd. P'ship*, 860

---

[2]      Because all of the claims of the '164 patent include the predetermined database as an
         element, all the claims correspondingly are invalid for failure to comply with the best
         mode requirement.

F.2d 415, 418 (Fed. Cir. 1988) (patent invalidated where an inventor had knowledge of best mode as evidenced by report authored prior to application, but which application failed to disclose). The best mode requirement is essential to ensuring that a patent applicant plays fair and square with the patent system. An inventor must not be given the right to exclude others from practicing the claimed invention unless at the time of filing he or she has provided an adequate disclosure of the best mode known to him or her of carrying out the invention. *Spectra-Physics*, 827 F.2d at 1532.

For example, in *Northern Telecom* the inventors were issued a patent that claimed a data storage apparatus that captured data on ordinary magnetic cassette tapes. The inventor's preferred embodiment, however, required the use of cassette tapes that had specific yield strength and magnetic characteristics, which at the time the application was filed were met by only one brand of commercially-available tapes. *Id.* at 940. The Federal Circuit held that, even though the specification enabled one of ordinary skill to practice the claimed invention, the inventor's failure to disclose either the one conforming brand of cassette tapes or their required characteristics violated the best mode requirement. *Id.* As a result, the court invalidated the patent. *Id.* Like the unique characteristics of the preferred audio tape in *Northern Telecom*, the contents of the inventors' perceived "vastly superior" database should have been disclosed as part of the preferred embodiment of the '164 patented invention.

**C.    The Predetermined Database Is Part Of The Claimed Subject Matter Of The '164 Patent**

35 U.S.C. § 112 requires an inventor to disclose the "best mode" of practicing all claimed subject matter.

<p style="text-align:center">REDACTED</p>

REDACTED

Indeed, both Claim 1 and Claim 2 include as an element in the preamble:

> a computer system having means for operating on a **predetermined database** containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when input with other selected ones of the medical service codes...[Ex. 1 ('164 patent), col. 117:2-40 (emphasis added)]

REDACTED

Thus, it is clear that the predetermined database is an element of the claimed invention and, therefore, is subject to the best mode requirement of 35 U.S.C. § 112, paragraph 1.

Importantly, a patentee is required to disclose his or her best mode even if the claims are broader than the patentee's preferred implementation. *Chemcast Corp.*, 913 F.2d at 928. ("That the claim is broad is no reason to excuse noncompliance with the best mode requirement."). Indeed, the best mode requirement also applies to non-claimed elements that are necessary to practice the best mode of carrying out the claimed invention. *Chemcast Corp. v. Arco, Indus.*, 913 F.2d 923, 926 (Fed. Cir. 1990); *Dana Corp.*, 860 F.2d at 418 (failure to disclose fluoride surface necessary to satisfactory performance of the seal, though not the subject matter of the claimed invention, violated "best mode" requirement and invalidated patent); *see also Old Town Canoe Co. v. Confluence Holdings Corp.*, Nos. 05-1123, -1148, 2006 WL

1228887, *10 (Fed. Cir. May 9, 2006) (no need to determine if cooling doors were claimed based on evidence of concealed specifications). Thus, even if the predetermined database was not a claimed element of the '164 patent, the best mode requirement would still apply because the predetermined database is necessary to practice the best mode of carrying out the claimed invention.

### D.     The Inventors Failed To Comply With The Best Mode Requirement By Not Disclosing Their Complete Predetermined Database

There is a two-part test for determining if an inventor has complied with the best mode requirement. *See Chemcast Corp*, 913 F.2d at 927-28. First, the inventors must have known of a better mode of carrying out the claimed invention than they disclosed in the patent specification. Second, the inventors must have concealed that better mode. The first inquiry is subjective, and focuses on the inventor's state of mind as of the time he or she filed the patent application. *Old Town Canoe*, 2006 WL 1228887, at *10; *Chemcast Corp.*, 913 F.2d at 926. In the case of joint inventorship, "a best mode disclosure is necessary, even if only one of the inventors contemplates a best mode." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1351 n.5 (Fed. Cir. 1998).

The second inquiry is objective and compares what the inventor knew at the time of the filing of the application with what was actually disclosed in the patent. *Chemcast Corp.*, 913 F.2d at 926. Thus, TriZetto does not need to put forward evidence that the inventors of the '164 had a specific intent to conceal their predetermined database. *See U.S. Gypsum Co.*, 74 F.3d at 1215 ("A best mode violation may occur if the disclosure of the best mode is so objectively inadequate as to effectively conceal the best mode from the public."); *Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 789-90 (Fed. Cir. 1995) ("[s]pecific intent to deceive is not a required element of the best mode defense"); *see also Old Town Canoe*, 2006 WL 1228887, at *10 (evidence that

described precise parameters for molding process prepared before the filing of application and given to patent lawyer, but not disclosed in the specification, sufficient for finding of best mode violation); *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1536 (Fed. Cir. 1987) (noting that "evidence of 'concealment,' whether accidental or intentional, is considered").

Whether a patent complies with the best mode requirement is a question separate and distinct from whether the specification enables one to make the invention at all. *Chemcast*, 913 F.2d at 928. In other words, a patent specification can enable one to make and use the patented invention and, nevertheless, the patent can be invalid under the best mode analysis if it fails to disclose the inventor's preferred embodiment. *Spectra-Physics*, 827 F.2d at 1533 (specification can be enabling, yet fail to disclose the best mode). Therefore, the question here is not whether those skilled in the art could make or use the '164 patent system and method without the complete contents of the predetermined database; it is whether they could practice the version of the claimed invention that the inventors believed was the "best." Here, such practice is impossible because the inventors concealed their preferred embodiment – the specific edits of the predetermined database.

1.     **At the Time The Inventors Filed The '164 Patent Application, They Knew Of A Best Mode Of Practicing The Claimed Invention**

It is undisputed that the inventors of the '164 patent knew of a best mode for practicing their patented system and method at the time they filed the '164 patent application. The inventors filed their initial patent application on September 30, 1988. At that time, HPR had a working embodiment of their claimed invention (CodeReview).

REDACTED

14

REDACTED

_____

REDACTED

REDACTED

 

The details of the predetermined database become even more important when the purported invention of the '164 patent is compared with the systems and information that was available long before the patent application was filed.  There is no doubt that there were much older software systems that performed the functions of the patent; for example, TriZetto's own ClaimFacts system had been validating CPT codes since 1980.  There is also no doubt that some information on relationships among CPT codes was readily available; indeed, as Doctors Hertenstein and Goldberg acknowledged, the AMA CPT manual itself contains some rules for which codes should be combined and which should not.  Ex. 4 (Hertenstein Dep.), at 38:1-9; Ex. 8 (Goldberg Dep.), 316:10-14; 306:1-11.  Thus, the only feature of CodeReview, the product upon which the patent was based, that allegedly set it apart was the quantity and quality of the rules and relationships in the database.  But by failing to disclose the best mode (i.e., by failing to

disclose any real structure regarding their predetermined database), the inventors made it impossible to replicate what the inventors believed was the best mode of practicing their preferred embodiment.[4]

Accordingly, in order to practice the invention, a system like CodeReview would have to be built, and, in the opinion of the inventors, it would be impossible to build the best version of such a product without detailed code relationships included in the inventors' system. By not disclosing that information in the patent, the inventors withheld the one item needed to build a system that was in any way different from – and they believed better than – what was already readily available.

In sum, the inventors clearly believed prior to filing the application for the '164 patent that the code-specific rules contained in their predetermined database were superior to other databases, as well as incapable of recreation through a purely logical review of the CPT book. As such, TriZetto has established the first prong of the inventors' best mode violation.

---

[4]    The inventors' best mode failure also makes it impossible to determine how many rules and relationships among codes one would need in their own predetermined database to infringe.

REDACTED

2.     **The Inventors Concealed The Best Mode Of Practicing The Claimed Invention**

The undisputed evidence also establishes that the inventors did not disclose the details of the predetermined database – that is, their code-to-code specific edits – in their patent application.  As an initial matter, all of the inventors and McKesson's own expert admit the obvious – that is, that the predetermined database (specifically, the specific code-to-code relationships created by the inventors of the '164 patent) does not appear in the '164 patent specification.  *See generally* Ex. 1 ('164 patent); *see also* Ex. 8 (Goldberg Dep.), at 326:23-25, 327:4-5; Ex. 4 (Hertenstein Dep.), at 194:8-10; 12-13; Ex. 4 (Hertenstein Dep.), at 187:6-9; 12-13; Ex. 7 (Dugan Dep.), at 146:8-16; Ex. 11 (Johnson Dep.), at 42:12-15.

REDACTED

Thus, the inventors' concealment is objectively established simply by comparing the inventors' awareness of their predetermined database with the inadequate disclosures in the patent specification.  *Gypsum*, 74 F.3d at 1215 ("A best mode violation may occur if the disclosure of the best mode is so objectively inadequate as to effectively conceal the best mode from the public.").  As such, it is undisputed that the second prong of a best mode violation is

also established – the inventors of the '164 patent concealed the best mode of practicing the

claimed invention.[5]

**E.      McKesson Cannot Explain Away The Inventors' Failure To Comply
         With The Best Mode Requirement**

**1.      The Disclosure By The Inventors Of The Functions Of Their
         Software Does Not Satisfy The Best Mode Requirement**

To explain the inventors' concealment of their database, McKesson may argue

that, in accordance with *Fonar Corporation v. General Electric*, 107 F.3d 1543, 1549 (Fed. Cir.

1997), "where software constitutes part of a best mode of carrying out an invention," the

description of the best mode is "satisfied by a disclosure of the functions of the software." The

*Fonar* court, however, explained the rationale for this rule was "because, normally, writing code

for such software is within the skill of the art, not requiring undue experimentation, once its

functions have been disclosed." *Id.* In other words, the entire premise of the holding in *Fonar*

was that "what is within the skill of the art need not be disclosed to satisfy the best mode

requirement as long as that mode is described." *Id.*

---

[5]      In fact, the evidence arguably goes even further – it establishes that HPR *intentionally
         concealed* the details of the inventors' predetermined database. Ms. Radosevich admitted
         that she discussed with HPR's attorneys the idea of disclosing the predetermined database
         to the Patent and Trademark Office, but she could not recall how those discussions came
         out.    Ex. 12 (Radosevich Dep.), at 132:22-133:6;  135:14-136:5.   Given that the
         predetermined database is not described in the '164 patent's specification, it is reasonable
         to infer that Ms. Radosevich and HPR's attorneys made the conscious decision to
         withhold the database from the PTO. *See Old Town*, 2006 WL 1228887, at *10 (finding
         best mode violation based on details disclosed to patent attorney, but not included in
         patent specification).  This inference is supported by the inventors' testimony that HPR
         considered the database proprietary and did not want to disclose it to the public. *Id.*
         at 135:14-136:5; Ex. 5 (Holloway Dep.), at 140:9-141:18; Ex. 8 (Goldberg Dep.),
         at 317:7-24; Ex. 7 (Dugan Dep.), at 86:3-10; Ex. 10 (Holloway Dep. Ex. 86), at 1-2, 4.

Unlike in *Fonar*, the inventors here have admitted that creating their predetermined database (as opposed to merely the software code to access the database) *was not* within the skill of the art.

REDACTED

REDACTED

Furthermore, as the court is aware, McKesson has said that well-known commercially available software could be used to access the database. *See* D.I. 255, at 3 (McKesson's Answering Claim Construction Brief). Thus, the crux of the invention is the database containing relationships among codes, and in order to practice the invention, such a database must be created. As discussed above, however, it was difficult and time-consuming for the inventors to construct their database, and it was that database that they believed made CodeReview valuable. Ex. 8 (Goldberg Dep.), at 302:18-303:7; Ex. 9 (Goldberg Dep. Ex. 14); *see also* Ex. 2 (Musen Rep.), at 33. Clearly, therefore, in order to practice the best mode of the

invention known to the inventors, a person would need to know the content of the database, not just the functions of the software – content that was not disclosed in the '164 patent.

Accordingly, *Fonar* is inapposite to the case at hand because the mere disclosure of the functions of the software that is used to access the predetermined database – as opposed to the predetermined database itself – would not allow one skilled in the art to practice the preferred embodiment of the claimed invention.

2.    **The Appendices In The Specification Of The '164 Patent Do Not Satisfy The Best Mode Requirement**

McKesson also may argue that the 18 examples in Appendix A or the general rule categories or templates (sometimes called, "metarules") in Appendix B of the '164 patent are an adequate disclosure of the details of the inventors' predetermined database. This argument also would be misplaced as it improperly confuses the distinction between the best mode requirement and the enablement requirement.

REDACTED

As the Federal Circuit explained, a patent specification that complies with the enablement requirement does not in and of itself satisfy the best mode requirement:

[C]ompliance with the best mode requirement focuses on a different matter than does compliance with the enablement requirement. Enablement looks to placing the subject matter of the

claims generally in the possession of the public. If, however, the
applicant develops specific instrumentalities or techniques which
are recognized at the time of filing as the best way of carrying out
the invention, then the best mode requirement imposes an
obligation to disclose that information to the public as well.

*Spectra-Physics*, 827 F.2d at 1532.

Accordingly, to comply fully with the best mode requirement, the inventors were

required to disclose the code-specific details of the predetermined database or, at a minimum, the

"large storehouse" relationships among the codes that differentiated it from the prior art or a

logical review of the CPT manual.[6] The inventors and HPR here, however, concealed the details

that they believed made their claimed invention better than other claims editing systems that

might be available.

### 3. The Fact That The AMA Updates The CPT Manual Does Not Excuse The Inventors' Concealment Of Their Best Mode

Finally, the fact that some CPT codes and some code relationships may have

changed after the filing of the '164 patent application does not excuse the inventors from

disclosing the details of the predetermined database. The relevant time for the best mode inquiry

is the time when the patent application was filed. *E.g., Chemcast Corp.*, 913 F.2d at 923, 926-28

("[t]he best mode inquiry focuses on the inventor's state of mind as of the time he filed his

application"); *Dana Corp.*, 860 F.2d at 418. Just as later discovery of a best mode cannot

invalidate a patent, *e.g., Engel Indust., Inc. v. Lockformer Co.*, 946 F.2d 1528, 1533 (Fed. Cir.

---

[6]     The predetermined database could have been incorporated by reference in an appendix to
the '164 patent. Ms. Radosivech testified in her deposition that if a customer asked to
review the rules database, HPR would make it available to them, at least partially, in hard
copy format.
                         REDACTED

1991), an inventor's expectation that there may be later improvements or changes cannot excuse the failure to disclose the best mode known at the time of application.   Given the pace of technological improvements in many fields (or, here, the knowledge that the AMA may modify some CPT codes in future years), almost any inventor could excuse their disclosure failures on such expected or hoped-for future changes.   Such future changes, however, cannot excuse a failure to comply with the best mode requirement imposed by § 112(1).

Here, as of September 1988, the inventors believed that a computer system operating on their predetermined database – including all of Dr. Hertenstein's knowledge concerning appropriate and inappropriate medical codes appearing on claims – was the superior and preferred mode of practicing the claimed invention.   Although the claims of the patent need not be limited to the specific rules in the database, the best mode needed to be set forth in the patent specification so the public had access to it.   The inventors did not disclose their best mode – the contents of the predetermined database – anywhere, however.   Their failure to do so renders the '164 patent invalid.

## V.    CONCLUSION

For the foregoing reasons, TriZetto respectfully requests that the Court grant in its entirety TriZetto's Motion for Summary Judgment of invalidity for failure to disclose the best mode of practicing the claimed invention.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/    *Rodger D. Smith II (#3778)*
Jack B. Blumenfeld (#1014)
Rodger D. Smith, II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
 *Attorneys for Defendant The TriZetto Group, Inc.*

24

OF COUNSEL:

Jeffrey T. Thomas
David A. Segal
Michael A. Sitzman
GIBSON, DUNN & CRUTCHER LLP
Jamboree Center
4 Park Plaza
Irvine, CA  92614-8557
(949) 451-3800

Original Filing Date:  June 1, 2006
Redacted Filing Date:  June 7, 2006

522997 V2

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 7, 2006, I caused to be electronically filed the Opening Brief in Support of The TriZetto Group, Inc.'s Motion for Summary Judgment of Invalidity for Failure to Disclose the Best Mode of Practicing the Claimed Invention (Redacted Version) with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Michael A. Barlow
Skadden, Arps, Slate, Meagher & Flom LLP

I also certify that copies were caused to be served on June 7, 2006, upon the following in the manner indicated:

**BY EMAIL AND HAND**

Michael A. Barlow
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
Wilmington, DE  19801

**BY EMAIL AND FEDERAL EXPRESS**

Jeffrey G. Randall
Skadden, Arps, Slate, Meagher & Flom LLP
525 University Avenue
Suite 1100
Palo Alto, CA  94301

/s/     Rodger D. Smith II (#3778)
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com