| 100. | Barnard, C., *How to select and implement case-mix (product-line analysis).* .., Hosp. Forum, January - February 1985 Vol. 28 (1), pp 25-30 |
| 101. | Jones, R, *Case-mix and computers: there's a micro-mainframe connection.* .., Computers in Healthcare, October 1984, Vol. 5 (10), pp. 36-39 |
| 102. | Jones, R., *Case-mix and computers: there's a micro-mainframe connection...* , Computers in Healthcare, August 1984, Vol. 5 (8), pp. 44-45 |
| 103. | Schumacher, DN, *A practical guide to reviewing case mix financial date*, The Hospital Medical Staff, August 1984, Vol. 13 (8), pp. 170 |
| 104. | Jones, R., *Case-mix and computers. Part one: a look at computer delivery.* .., Computers in Healthcare, June 1984, Vol. 5 (5), pp. 42-45 |
| 105. | Jaggar, FM et al, *A PPS essential: case-mix management systems*, Hospitals, May 1, 1984, Vol. 58 (9), pp. 71-76 |
| 106. | Dorenfest SI, *Computers can figure out DRGs, if you can figure out computer market*, Modern Healthcare, February 15, 1984, Vol. 14 (3), pp. 130, 134, 136 |
| 107. | Fedorowicz, J., *Will your computer meet your case-mix informational.* .., Nurs Health Care, November 1983, Vol. 4 (9), pp. 493-497 |
| 108. | Fedorowicz, J., *Hospital information systems: are we ready for case mix applications*, Health Care Manage Rev., Fall 1983, Vol. 8 (4), pp. 33-41 |
| 109. | Gillette, PE., *Hospital information systems: computer must rack patient costs*, Modern Healthcare, September 1983, Vol. 13 (9), pp. 154, 156, 158 |
| 110. | Nathanson, M., *Hospital information systems: computers crank out DRG...* , Modern Healthcare, September 19833, Vol. 13, (9), pp. 160, 162, 164 |
| 111. | McLaughlin, DB et al., *Personal computers provide advantages and frustrations...* , Hospitals, July 1983, Vol. 57 (14), pg. 94 |
| 112. | Barnard, C., *System strategies for case mix*, Computers in Healthcare, June 1983, Vol., 4 (6), pp. 28-32 |
| 113. | Mitchell WA., *An automated APACHE II scoring system*, Intensive care nursing, 1987, Vol. 3 (1), pp. 14-18 |
| 114. | Packer, CL., *Automation in the medical records department*, Hospitals, March 1, 1985, Vol. 59 (5), pp. 100, 102,104 |
| 115. | Kramer, DJ., *Medicare billing goes electronic*, Software in Healthcare, February March 1986, Vol. 5 (1), pp. 31-32 |
| 116. | Gardner, E., *Coding changes delay reimbursement*, Modem Healthcare, December 4, 1987, Vol. 17 (25), pp. 11 |
| 117. | King, M., *How can case mix work for long-term care providers*, Contemporary Longterm Care, November 1988, Vol. 11 (11), pp. 48, 50 |

| | |
|---|---|
| 118. | Couch, JB., *Assessing medical care on the basis of its value*, Physician executive, July August 1987, Vol. 13 (4), pp. 7-10 |
| 119. | Peterson, RN et al., *Congress to decide Medicare matters; final PPS rules. ..* , Health Law Vigil, September 20, 1985, Vol. 8 (19), pp. 6-8 |
| 120. | Terenzio J., *Preparing for the future today -product line management...* , Healthcare, Computing & communications, September 1985, Vol. 2 (9), pp. 56-58 . |
| 121. | Sovie, MD et al., *Amalgam of nursing acuity*, DRGs and costs... , Nursing Management, March 1985, Vol. 16 (3), pp. 22-42 |
| 122. | Sleight, S. et al., *Addressing case mix management in the smaller hospital...*,  Computers in Healthcare, February 1985, Vol. 6 (2), pp. 22-24 |
| 123. | Nathanson, M., *Hospitals struggling to develop standards*, Modern Healthcare, September 1984, Vol. 14 (12), pp. 140 |
| 124. | Llaurado, JG, *Computing disease severity: staging*, Int J Biomed Comput, July-August 1984, Vol. 15 (4), pp. 243-248 |
| 125. | Christensen, B., *"Staging" software measures severity of patient's illness*, Hospitals, May 1, 1984, Vol. 58 (9), pp. 45-46 |
| 126. | Dambro, MR et al., *An unsuccessful experience with computerized medical. ..* , Journal of Medical Education, August 1988, Vol. 63 (8), pp. 617-623 |
| 127. | Wheeler, JT, *Hospital's six point program clears up financial picture*, Health Progress, July-August 1988, Vol. 69 (6), pp. 78-81 |
| 128. | DiMauro, ME, *Information systems for cost-effective management*, Topics in Health Care Financing, Winter 1987, Vol. 14 (2), pp. 28-34 |
| 129. | Dombi, WA, *Home care denials: computerization and Medicare home care appeals*, Caring: National Association for Home Care Magazine, June 1987, Vol. 6 (6), pp. 16 19 |
| 130. | Crownover, KR, *Shrinking the demand of home care documentation*, Caring: National Association for Home Care Magazine, June 1987, Vol. 6 (6), pp. 20-22 |
| 131. | Sabin, P., *Hospital cost accounting and the new imperative*, Health Progress, May 1987, Vol. 68 (4), pp. 52-57 |
| 132. | Carter, K., *End of PIP will prompt hospitals to try software to speed billing*, Modern Healthcare, February 13, 1987, Vol. 17 (4), pp. 62, 64, 68 |
| 133. | Woodward, RS, *Teaching DRG reimbursement with VisiCalc.*, The Journal of Health Administration Education, Winter 1985, Vol. 3 (1), pp. 91-97 |
| 134. | Landais P. et al., ARCANE. *A new medical patient information system*, Medical Information=Medecine et informatique, April-June 1988, Vol. 13 (2), pp. 105-116 |
| 135. | Carter K., *New reimbursement for outpatient services will mean more...* , Modern Healthcare, August 28, 1987, Vol. 17 (18), pp. 78 |

| 136. | None Listed, *Computerization in the medical record department at Pioneer Valley...* , J Am Med Rec Assoc, February 1985, Vol. 56 (2), pp. 42-43 |
|------|------|
| 137. | Gabrieli, ER, *Automated medical office records*, Journal of Medical Systems, February 1987, Vol. 1'1 (1), pp. 59-68 |
| 138. | Gabrieli, ER et al., *Computerized discharge summaries: a new window...* , Journal of Clinical. Computing, 1987, Vol. 16 (1-2), pp. 47-62 |
| 139. | Gabrieli, ER et al., *Automated analysis of the discharge summary*, Journal of Clinical Computing, 1986, Vol. 15 (1), pr. 128 |
| 140. | Gabrieli, ER et al., *Standardization of medical informatics*, Journal of Clinical Computing, 1986, Vol. 14 (6), pp. 179-198 |
| 141. | Gabrieli, ER et al., *A center for medical informatics; modern methods of information...*, Topics in Health Record Management, September 1985, Vol. 6 (1), pp. 12-15 |
| 142. | Gabrieli, ER et al., *Cognitive processing for computerized new knowledge*, Journal of Clinical Computing, 1985, Vol. 13 (4), pp., 113-116 |
| 143. | Gabrieli, ER et al., *Computer-based knowledge banks for clinical medicine*, Journal of Clinical Computing, 1983, Vol. 11 (5-6), pp. 195-200 |
| 144. | Gabrieli, ER et al., *Computer-oriented coding of medical data*, Journal of Clinical Computing, 1981, Vol. 10 (1), pp. 1-18 |
| 145. | Gabrieli, ER et al., *A proposal for a computer-based national medical information ....*, Journal of Clinical Computing, Vol. 10 (1), 19-52 |
| 146. | Gabrieli, ER et al., *Computer-oriented nomenclature, automated classification ....*, Journal of Clinical Computing, 1980, Vol. 9 (2), pp. 54-66 |
| 147. | Gabrieli, ER, *Medical information system, health records, and knowledge...* , Medical Instrumentation, July-August 1978, Vol. 12 (4), pp. 245-247 |
| 148. | Gabrieli, ER, *Computer-assisted assessment of patient care in the hospital*, Journal of Medical Systems. June 1988, Vol. 12 (3), pp. 135-146 |
| 149. | Bernier, RP, *Clinical evaluation: the next step in claims processing*, Best Rev Life Health Insur Ed, April 1986, Vol. 86 (12), pp. 106-110, 127 |
| 150. | Robinson, Michele L., *AHA voices concerns about HCFA's severity index*, Hospitals, October 5,.1988, p. 26 |
| 151. | Barnard, C., *Preparing for case-mix: the role of data processing*, Healthcare financial management: journal of the Healthcare Financial Management Association, June 1983, Vol. 37 (6), pp. 57-70 |

**FOURTH SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:** (September 13, 2005)

TriZetto reasserts and reincorporates by reference herein its responses to Interrogatory No. 6 from January 20, 2005, May 5, 2005, June 20, 2005, and July 27, 2005, except for the lists of prior art references from those previous responses, which are superseded by the lists of prior art references in this response. TriZetto also reasserts and reincorporates by reference herein the general objections set forth above.

Claim construction in this action has not occurred, and discovery is continuing. The information contained in this response is based on information that is reasonably available to TriZetto at the present time. TriZetto's identification of prior art is as specific as possible at this time. Accordingly, TriZetto reserves the right to supplement, amend and augment its response to this interrogatory as new, additional and different information is learned and discovered and when the claims at issue are construed by the Court. Subject to and without waiving those objections, TriZetto supplements its previous response as follows:

Claims 1, 2, 3, 4, 6, 9, 10, 11, 12, 13 and 14 of the '164 patent, which McKesson accuses TriZetto of infringing, are invalid and unenforceable against TriZetto because at least 27 prior art references together completely disclose and describe the apparatus and methods claimed in the asserted claims of the '164 patent, rendering the patent invalid as either anticipated or obvious under 35 U.S.C. §§ 102 & 103. Set forth below is a chart of the prior art references that TriZetto presently contends anticipate one or more claims of the patent in suit or render one or more claims obvious. This chart supersedes the lists of prior art references provided in TriZetto's previous supplemental responses.

| | | |
|---|---|---|
| 2. | *Enhancing Accuracy and Timeliness is Integral to the Claims Adjudication Process,* Employee. Benefit Plan Review, Anonymous, Dec. 1985, pp. 10-12. | Renders Obvious |
| 8. | Weitzel, J.R., et al., *A Company / University Joint Venture to build a knowledge-based system,* MIS Quarterly, Vol. 12, No. 1, March 1988, 23-34 | Anticipates/Renders Obvious |

| | | |
|---|---|---|
| 12. | Snyeder, C., *From research to reality: the leading edge of expert systems*, Insurance Software Review, Vol. 12, No. 3, Autumn 1987, 22-4, 26-7, 30 | Renders Obvious |
| 18. | Weitzel, J.R. and Kerschberg, L., "Developing Knowledge- Based Systems: Reorganizing the System Development Life Cycle," working paper, University of South Carolina, Columbia, SC and George Mason University, Fairfax, VA (December 1986). Final Publication, April 1989 in Communications of the ACM, Vol. 32, No. 4. | Renders Obvious |
| 20. | Egdahl, M.D. and Hertenstein, M.D., *An Access-oriented Negotiated Fee Schedule: The Caterpillar Experience*, Ann Surg., 206(3), pp. 349-57 (Sept. 1987). | Anticipates/Renders Obvious |
| 38. | U.S. Pat. No. 4,591,983 (Bennett patent) | Anticipates/Renders Obvious |
| 39. | U.S. Pat. No. 4,667,292 (Mohlenbrock patent) | Anticipates/Renders Obvious |
| 40. | U.S. Pat. No. 5,018,067 (Mohlenbrock 2 patent) | Anticipates/Renders Obvious |
| 41. | U.S. Pat. No. 5,070,452 (Doyle patent) | Anticipates/Renders Obvious |
| 44. | U.S. Pat. No. 4,803,641 (Hardy patent) | Anticipates/Renders Obvious |
| 50. | Stachura CT, *Software reference guide: DRG assignment*, J Am Med Rec Assoc, January 1987, Vol. 58, (1), pp. 33-40 | Renders Obvious |
| 53. | Huertas-Cortocarrero D, Ruiz PP, Marmol JP, *Concurrent clinical review: using microcomputer-based DRG-software*, Health Policy 1988, Vol. 9 (2), pp, 211-7 | Renders Obvious |
| 54. | Nathanson M, *Medical records. Experts: more research needed to set value of code programs*, Modem Healthcare, June 21, 1985, Vol. 15 (13), pp. 98, 102. | Renders Obvious |
| 61. | Gonnella JS, Hornbrook MC, Louis DZ, *Staging of disease. A case mix measurement*, Journal of the American Medical Association [JAMA], February 3, 1984, Vol. 251 (5), pp. 637 44 | Renders Obvious |

| | | |
|---|---|---|
| 67. | Gibbons PS, Pishotta FT, Stepto RC, *A system for reporting gynecologic procedures. A linguistic-logical approach*, Journal of Reproductive Medicine, March 1983, Vol. 28 (3), pp. 201-5 | Renders Obvious |
| 73. | Miller KM, Wisnicki HJ, Buchman JP. Riley MJ, Repka MX, Taylor HR, Guyton DL, *The Wilmer Information System. A classification and retrieval system for information on diagnosis and therapy in ophthalmology*, Ophthalmology, March 1988, Vol. 95 (3), pp. 403-9 | Renders Obvious |
| 82. | U.S. Pat. No. 4,730,259 (Gallant patent) | Renders Obvious |
| 83. | U.S. Pat. No. 4,839,822 (Dormond patent) | Renders Obvious |
| 88. | Hao Kuo, MEDCLAIM: *An Expert Support System for Medical Claims Review*, Thesis Submitted in Department of Computer Science, University of South Carolina (1986). | Anticipates/Renders Obvious |
| 96. | Lewis, J et al, *Development of a case mix information system*, Computers in Healthcare, February 1983, Vol. 4 (2), pp. 36-41 | Renders Obvious |
| 106. | Dorenfest SI, *Computers can figure out DRGs, if you can figure out computer market*, Modern Healthcare, February 15, 1984, Vol. 14 (3), pp. 130, 134, 136 | Renders Obvious |
| 127. | Wheeler, JT, *Hospital's six-point program clears up financial picture*, Health Progress, July-August 1988, Vol. 69 (6), pp. 78-81 | Renders Obvious |
| 132. | Carter, K., *End of PIP will prompt hospitals to try software to speed billing*, Modern Healthcare, February 13, 1987, Vol. 17 (4), pp. 62, 64, 68 | Renders Obvious |
| 149. | Bernier, RP, *Clinical evaluation: the next step in claims processing*, Best Rev Life Health Insur Ed, April 1986, Vol. 86 (12), pp. 106-110, 127 | Renders Obvious |
| 152. | McDermott, John, *R1: A Rule-Based Configurer of Computer Systems, Artificial Intelligence*, 1982, No. 19, pp. 39-88. | Anticipates/Renders Obvious |
| 153. | David Leinweber, *Knowledge-Based Systems for Financial Applications*, IEEE Expert, Fall 1988, pp. 18-31. | Anticipates/Renders Obvious |

41

| 154. | Fagan, Lawrence Marvin, *VM: Representing Time-Dependent Relations in a Medical Setting*, Ph.D Thesis Submitted at Stanford University (1980) | Renders Obvious |

Set forth below is an element-by-element chart mapping the prior art references listed above to each element of the asserted claims of the '164 patent.

| 1.      In a computer system having means for operating on a predetermined database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when input with other selected ones of the medical service codes, | 8 (pp. 28-30); 18 (pp. 483, 485); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 61 (pp. 639-640); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23). |
|---|---|
| a method for processing input claims containing at least one medical service code, comprising the steps of: | 2 (pp. 10-12); 8 (pp. 28-30); 12 (p. 26); 18 (pp. 483, 485); 20 (pp. 351-353); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 50 (pp. 34, 37, 39-40); 53 (p. 216); 54 (p. 98); 61 (pp. 639-640); 67 (pp. 201-202); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 106 (p. 134); 127 (pp. 79-80); 132 (p. 62); 149 (pp. 106, 108, 110); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23). |
| receiving at least one claim; | 2 (pp. 10-12); 8 (pp. 28-30); 12 (p. 26); 18 (pp. 483, 485); 20 (pp. 351-353); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 50 (pp. 34, 37, 39-40); 53 (p. 216); 54 (p. 98); 61 (pp. 639-640); 67 (pp. 201-202); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 106 (p. 134); 127 (pp. 79-80); 132 (p. 62); 149 (pp. 106, 108, 110); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23). |
| determining whether any medical service code contained in the at least one claim is not present in the predetermined database; and informing a user that a medical service code is not contained in the predetermined database. | 2 (pp. 10-12); 8 (pp. 28-30); 12 (p. 26); 18 (pp. 483, 485); 20 (pp. 351-353); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 50 (pp. 34, 37, 39-40); 53 (p. 216); 54 (p. 98); 61 (pp. 639-640); 67 (pp. 201-202); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 106 (p. 134); 127 (pp. 79-80); 132 (p. 62); 149 (pp. 106, 108, 110); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23). |

| 2.      In a computer system having means for operating on a predetermined database containing medical service codes and a set of relationships among the medical service codes defining whether | 8 (pp. 28-30); 18 (pp. 483, 485); 38 (cols. 3-8, 1-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 61 (pp. 639-640); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23). |
|---|---|

42

| | |
|---|---|
| selected ones of the medical service codes are valid when input with other selected ones of the medical service codes, | |
| a method for processing input claims containing at least one medical service code, comprising the steps of: | 2 (pp. 10-12); 8 (pp. 28-30); 12 (p. 26); 18 (pp. 483, 485); 20 (pp. 351-353); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 50 (pp. 34, 37, 39-40); 53 (p. 216); 54 (p. 98) 61 (pp. 639-640); 67 (pp. 201-202); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 106 (p. 134); 127 (pp. 79-80); 132 (p. 62); 149 (pp. 106, 108, 110); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23). |
| receiving at least one claim; | 2 (pp. 10-12); 8 (pp. 28-30); 12 (p. 26); 18 (pp. 483, 485); 20 (pp. 351-353); 38 (cols. 3-8, 1-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 50 (pp. 34, 37, 39-40); 53 (p. 216); 54 (p. 98); 61 (pp. 639-640); 67 (pp. 201-202); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44-52); 96 (pp. 36, 41); 106 (p. 134); 127 (pp. 79-80); 132 (p. 62); 149 (pp. 106, 108, 110); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23). |
| ascertaining whether the at least one claim contains a plurality of medical service codes; | 2 (pp. 10-12); 8 (pp. 28-30); 12 (p. 26); 18 (pp. 483, 485); 20 (pp. 351-353); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 50 (pp. 34, 37, 39-40); 53 (p. 216); 54 (p. 98); 61 (pp. 639-640); 67 (pp. 201-202); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 106 (p. 134); 127 (pp. 79-80); 132 (p. 62); 149 (pp. 106, 108, 110); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23). |
| determining whether one of the medical service codes in the at least one claim is mutually exclusive due to non-medical criteria with any other medical service code in the at least one claim; | 2 (pp. 10-12); 8 (pp. 28-30); 12 (p. 26); 18 (pp. 483, 485); 20 (pp. 351-353); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 50 (pp. 34, 37, 39-40); 53 (p. 216); 54 (p. 98); 61 (pp. 639-640); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 106 (p. 134); 127 (pp. 79-80); 132 (p. 62); 149 (pp. 106, 108, 110); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23); 154 (pp. 158-161). |
| authorizing medical service codes which are not mutually exclusive due to non-medical criteria with any other medical service codes contained in the at least one claim in response to the determining step; and rejecting medical service codes which are mutually exclusive due to non-medical criteria with any other medical service codes contained in the at least one claim in response to the determining step. | 2 (pp. 10-12); 8 (pp. 28-30); 12 (p. 26); 18 (pp. 483, 485); 20 (pp. 351-353); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 50 (pp. 34, 37, 39-40); 53 (p. 216); 54 (p. 98); 61 (pp. 639-640); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 106 (p. 134); 127 (pp. 79-80); 132 (p. 62); 149 (pp. 106, 108, 110); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23); 154 (pp. 158-161). |
| | |
| 3.    A computer system including a central processing unit and associated memory for processing input claims containing at least one medical service claim, comprising: | 8 (pp. 28-30); 18 (pp. 483, 485); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 61 (pp. 639-640); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23). |
| a predetermined database stored in the | 2 (pp. 10-12); 8 (pp. 28-30); 12 (p. 26); 18 (pp. 483, 485); 20 (pp. 351- |

| | |
|---|---|
| associated memory, the database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when received with other selected ones of the medical service codes; | 353); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 61 (pp. 639-640); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 106 (p. 134); 127 (pp. 79-80); 132 (p. 62); 149 (pp. 106, 108, 110); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23). |
| means for receiving at least one claim; | 2 (pp. 10-12); 8 (pp. 28-30); 12 (p. 26); 18 (pp. 483, 485); 20 (pp. 351-353); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 50 (pp. 34, 37, 39-40); 53 (p. 216); 54 (p. 98); 61 (pp. 639-640); 67 (pp. 201-202); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 106 (p. 134); 127 (pp. 79-80); 132 (p. 62); 149 (pp. 106, 108, 110); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23). |
| means for ascertaining whether the at least one claim contains a plurality of medical service codes; | 2 (pp. 10-12); 8 (pp. 28-30); 12 (p. 26); 18 (pp. 483, 485); 20 (pp. 351-353), 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 50 (pp. 34, 37, 39-40); 53 (p. 216); 54 (p. 98); 61 (pp. 639-640); 67 (pp. 201-202); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 106 (p. 134); 127 (pp. 79-80); 132 (p. 62); 149 (pp. 106, 108, 110); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23). |
| means for determining whether one of the medical service codes in the plurality of medical service codes is valid or invalid by interacting with the database and the set of relationships contained in the database; | 2 (pp. 10-12); 8 (pp. 28-30); 12 (p. 26); 18 (pp. 483, 485); 20 (pp. 351-353); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 50 (pp. 34, 37, 39-40); 53 (p. 216); 54 (p. 98); 61 (pp. 639-640); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 106 (p. 134); 127 (pp. 79-80); 132 (p. 62); 149 (pp. 106, 108, 110); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23); 154 (pp. 158-161). |
| means for authorizing medical service codes which are valid in response to the means for determining; and means for rejecting medical service codes which are invalid in response to the means for determining. | 2 (pp. 10-12); 8 (pp. 28-30); 12 (p. 26); 18 (pp. 483, 485); 20 (pp. 351-353); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 50 (pp. 34, 37, 39-40); 53 (p. 216); 54 (p. 98); 61 (pp. 639-640); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 106 (p. 134); 127 (pp. 79-80); 132 (p. 62); 149 (pp. 106, 108, 110); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23); 154 (pp. 158-161). |

| | |
|---|---|
| 4.     The apparatus of claim 3, further comprising means for revising the at least one claim to delete invalid medical service codes. | 2 (pp. 10-12); 8 (pp. 28-30); 12 (p. 26); 18 (pp. 483, 485); 20 (pp. 351-353); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 50 (pp. 34, 37, 39-40); 53 (p. 216); 54 (p. 98); 61 (pp. 639-640); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 106 (p. 134); 127 (pp. 79-80); 132 (p. 62); 149 (pp. 106, 108, 110); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23). |

| | |
|---|---|
| 6.     The apparatus of claim 3, wherein | 2 (pp. 10-12); 8 (pp. 28-30); 12 (p. 26); 18 (pp. 483, 485); 20 (pp. 351- |

| | |
|---|---|
| the database containing medical service codes includes medical service codes described by CPT codes. | 353); 38 (cols. 3-8, 1-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 50 (pp. 34, 37, 39-40); 53 (p. 216); 54 (p. 98); 61 (pp. 639-640); 67 (pp. 201-202); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 106 (p. 134); 127 (pp. 79-80); 132 (p. 62); 149 (pp. 106, 108, 110); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23). |
| 9.      The apparatus of claim 3, wherein the relationships among the medical service codes include medically determined relationships. | 2 (pp. 10-12); 8 (pp. 28-30); 12 (p. 26); 18 (pp. 483, 485); 20 (pp. 351-353); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 50 (pp. 34, 37, 39-40); 53 (p. 216); 54 (p. 98); 61 (pp. 639-640); 67 (pp. 201-202); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 106 (p. 134); 127 (pp. 79-80); 132 (p. 62); 149 (pp. 106, 108, 110); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23); 154 (pp. 158-161). |
| 10.      A computer system including a central processing unit and associated memory for processing input claims containing at least one medical service claim, comprising: | 8 (pp. 28-30); 18 (pp. 483, 485); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 61 (pp. 639-640); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23). |
| a predetermined database stored in the associated memory, the database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when received with other selected ones of the medical service codes; | 8 (pp. 28-30); 18 (pp. 483, 485); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 61 (pp. 639-640); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23). |
| means for receiving at least one claim; | 2 (pp. 10-12); 8 (pp. 28-30); 12 (p. 26); 18 (pp. 483, 485); 20 (pp. 351-353); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 50 (pp. 34, 37, 39-40); 53 (p. 216); 54 (p. 98); 61 (pp. 639-640); 67 (pp. 201-202); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 106 (p. 134); 127 (pp. 79-80); 132 (p. 62); 149 (pp. 106, 108, 110); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23). |
| means for ascertaining whether the at least one claim contains a plurality of medical service codes; | 2 (pp. 10-12); 8 (pp. 28-30); 12 (p. 26); 18 (pp. 483, 485); 20 (pp. 351-353); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 50 (pp. 34, 37, 39-40); 53 (p. 216); 54 (p. 98); 61 (pp. 639-640); 67 (pp. 201-202); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 106 (p. 134); 127 (pp. 79-80); 132 (p. 62); 149 (pp. 106, 108, 110); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23). |
| means for determining whether one of the medical service codes in the at least one claim is included in any other medical | 2 (pp. 10-12); 8 (pp. 28-30); 12 (p. 26); 18 (pp. 483, 485); 20 (pp. 351-353); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 50 (pp. 34, 37, 39-40); 53 (p. 216); 54 (p. |

45

| | |
|---|---|
| service code in the at least one claim; | 98); 61 (pp. 639-640); 67 (pp. 201-202); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 106 (p. 134); 127 (pp. 79-80); 132 (p. 62); 149 (pp. 106, 108, 110); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23); 154 (pp. 158-161). |
| means for authorizing medical service codes which are not contained in any other medical service code; and means for rejecting medical service codes which are contained in any other medical service code. | 2 (pp. 10-12); 8 (pp. 28-30); 12 (p. 26); 18 (pp. 483, 485); 20 (pp. 351-353); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 50 (pp. 34, 37, 39-40); 53 (p. 216); 54 (p. 98); 61 (pp. 639-640); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 106 (p. 134); 127 (pp. 79-80); 132 (p. 62); 149 (pp. 106, 108, 110); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23); 154 (pp. 158-161). |

| | |
|---|---|
| 11.      The apparatus of claim 10, further comprising means for revising the at least one claim to not include a rejected medical service code. | 2 (pp. 10-12); 8 (pp. 28-30); 12 (p. 26); 18 (pp. 483, 485); 20 (pp. 351-353); 38(cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 50 (pp. 34, 37, 39-40); 53 (p. 216); 54 (p. 98); 61 (pp. 639-640); 67 (pp. 201-202); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 106 (p. 134); 127 (pp. 79-80); 132 (p. 62); 149 (pp. 106, 108, 110); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23). |

| | |
|---|---|
| 12.      A computer system including a central processing unit and associated memory for processing input claims containing at least one medical service code, comprising: | 8 (pp. 28-30); 18 (pp. 483, 485); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 61 (pp. 639-640); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23). |
| a predetermined database stored in the associated memory, the database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when received with other selected ones of the medical service codes; | 8 (pp. 28-30); 18 (pp. 483, 485); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 61 (pp. 639-640); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23). |
| means for receiving at least one claim; | 2 (pp. 10-12); 8 (pp. 28-30); 12 (p. 26); 18 (pp. 483, 485); 20 (pp. 351-353); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 50 (pp. 34, 37, 39-40); 53 (p. 216); 54 (p. 98); 61 (pp. 639-640); 67 (pp. 201-202); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 106 (p. 134); 127 (pp. 79-80); 132 (p. 62); 149 (pp. 106, 108, 110); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23). |
| means for ascertaining whether the at least one claim contains a plurality of medical service codes; | 2 (pp. 10-12); 8 (pp. 28-30); 12 (p. 26); 18 (pp. 483, 485); 20 (pp. 351-353); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 50 (pp. 34, 37, 39-40); 53 (p. 216); 54 (p. 98); 61 (pp. 639-640); 67 (pp. 201-202); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. |

| | |
|---|---|
| | 36, 41); 106 (p. 134); 127 (pp. 79-80); 132 (p. 62); 149 (pp. 106, 108, 110); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23). |
| means for determining whether one of the medical service codes in the at least one claim is medically exclusive with any other medical service code in the at least one claim; | 2 (pp. 10-12); 8 (pp. 28-30); 12 (p. 26); 18 (pp. 483, 485); 20 (pp. 351-353); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 50 (pp. 34, 37, 39-40); 53 (p. 216); 54 (p. 98); 61 (pp. 639-640); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 106 (p. 134); 127 (pp. 79-80); 132 (p. 62); 149 (pp. 106, 108, 110); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23); 154 (pp. 158-161). |
| means for authorizing medical service codes which are not medically exclusive with any other medical service codes contained in the at least one claim in response to the means for determining; | 2 (pp. 10-12); 8 (pp. 28-30); 12 (p. 26); 18 (pp. 483, 485); 20 (pp. 351-353); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 50 (pp. 34, 37, 39-40); 53 (p. 216); 54 (p. 98); 61 (pp. 639-640); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 106 (p. 134); 127 (pp. 79-80); 132 (p. 62); 149 (pp. 106, 108, 110); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23); 154 (pp. 158-161). |
| and means for rejecting medical service codes which are medically exclusive with any other medical service codes contained in the at least one claim in response to the determining step. | 2 (pp. 10-12); 8 (pp. 28-30); 12 (p. 26); 18 (pp. 483, 485); 20 (pp. 351-353); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 50 (pp. 34, 37, 39-40); 53 (p. 216); 54 (p. 98); 61 (pp. 639-640); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 106 (p. 134); 127 (pp. 79-80); 132 (p. 62); 149 (pp. 106, 108, 110); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23); 154 (pp. 158-161). |

| | |
|---|---|
| 13.    A computer system including a central processing unit and associated memory for processing input claims containing at least one medical service code, comprising: | 18 (pp. 28-30); 18 (pp. 483, 485); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 61 (pp. 639-640); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23). |
| a predetermined database stored in the associated memory, the database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when received with other selected ones of medical service codes; | 8 (pp. 28-30); 8 (pp. 483; 485); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 61 (pp. 639-640); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23). |
| means for receiving at least one claim; | 2 (pp. 10-12); 8 (pp. 28-30); 12 (p. 26); 18 (pp. 483, 485); 20 (pp. 351-353); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 50 (pp. 34, 37, 39-40); 53 (p. 216); 54 (p. 98); 61 (pp. 639-640); 67 (pp. 201-202); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 106 (p. 134); 127 (pp. 79-80); 132 (p. 62); 149 (pp. 106, 108, 110); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23). |
| means for determining whether any medical service code contained in the at least one claim is not present in the predetermined database; and means for | 2 (pp. 10-12); 8 (pp. 28-30); 12 (p. 26); 18 (pp. 483, 485); 20 (pp. 351-353); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 50 (pp. 34, 37, 39-40); 53 (p. 216); 54 (p. 98); 61 (pp. 639-640); 67 (pp. 201-202); 73 (pp. 403-405, 408); 82 |

| | |
|---|---|
| informing a user that a medical service code is not contained in the undetermined database. | (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 106 (p. 134); 127 (pp. 79-80); 132 (p. 62); 149 (pp. 106, 108, 110); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23). |

| | |
|---|---|
| 14.     A computer system including a central processing unit and associated memory for processing input claims containing at least one medical service code, comprising: | 8 (pp. 28-30); 18 (pp. 483, 485); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 61 (pp. 639-640); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23). |
| a predetermined database stored in the associated memory, the database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when received with other selected ones of the medical service codes; | 8 (pp. 28-30); 18 (pp. 483, 485); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 61 (pp. 639-640); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23). |
| means for receiving at least one claim; | 2 (pp. 10-12); 8 (pp. 28-30); 12 (p. 26); 18 (pp. 483, 485); 20 (pp. 351-353); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 50 (pp. 34, 37, 39-40); 53 (p. 216); 54 (p. 98); 61 (pp. 639-640); 67 (pp. 201-202); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 106 (p. 134); 127 (pp. 79-80); 132 (p. 62); 149 (pp. 106, 108, 110); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23). |
| means for ascertaining whether the at least one claim contains a plurality of medical service codes; | 2 (pp. 10-12); 8 (pp. 28-30); 12 (p. 26); 18 (pp. 483, 485); 20 (pp. 351-353); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 50 (pp. 34, 37, 39-40); 53 (p. 216); 54 (p. 98); 61 (pp. 639-640); 67 (pp. 201-202); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 106 (p. 134); 127 (pp. 79-80); 132 (p. 62); 149 (pp. 106, 108, 110); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23). |
| means for determining whether one of the medical service codes in the at least one claim is mutually exclusive due to non-medical criteria with any other medical service code in the at least one claim; | 2 (pp. 10-12); 8 (pp. 28-30); 12 (p. 26); 18 (pp. 483, 485); 20 (pp. 351-353); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 50 (pp. 34, 37, 39-40); 54 (p. 98); 61 (pp. 639-640); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 127 (pp. 79-80); 132 (p. 62); 149 (pp. 106, 108, 110); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23); 154 (pp. 158-161). |
| means for authorizing medical service codes which are not mutually exclusive due. to non-medical criteria with any other medical service codes contained in the at least one claim in response to the means for determining; and means for rejecting medical service codes which are mutually exclusive due to non-medical criteria with any other medical service codes contained in the at least one claim in response to the | 2 (pp. 10-12); 8 (pp. 28-30); 12 (p. 26); 18 (pp. 483, 485); 20 (pp. 351-353); 38 (cols. 3-8, 11-16, 20-24); 39 (cols. 9-12); 40 (cols. 5-6, 9-10); 41 (cols. 2-6); 44 (col. 10); 50 (pp. 34, 37, 39-40); 53 (p. 216); 54 (p. 98); 61 (pp. 639-640); 73 (pp. 403-405, 408); 82 (cols. 1-4); 83 (cols. 2-3, 7-8); 88 (pp. 2-3, 26, 30-40, 44, 52); 96 (pp. 36, 41); 106 (p. 134); 127 (pp. 79-80); 132 (p. 62); 149 (pp. 106, 108, 110); 152 (pp. 45, 50, 57, 62, 68); 153 (p. 23); 154 (pp. 158-161). |

48

| means for determining. | |
|---|---|

To the extent that the above-cited references establish obviousness in combination with other references, the motivation to combine such references is found in the references themselves or will be established through the introduction of expert testimony at the appropriate time. The relevant language from the above-cited references establishing a motivation to combine includes, but is not limited to, the following excerpts:

| | | |
|---|---|---|
| 8. | Weitzel, J.R., et al., *A Company / University Joint Venture to build a knowledge-based system*, MIS Quarterly, Vol. 12, No. 1, March 1988, 23-34 | "A refrain that occurs over and over in the current literature on building commercial knowledge-based systems is to select a problem and a design that can be solved using available technology. . . [T]he knowledge engineering team discussed processing natural language and modeling the patient's diagnoses and recuperative potential. Little is known about solving problems using these approaches. From the very first, the expert reviewer explained how decisions were made in 'if-then' terms, a clue that the problem involved surface knowledge. By deciding to stay within the limitations of the available technology, an approach that found relevant indicators in the medical records, a common pattern to their use, and a constrained representation schema was discovered." P. 31. |
| 12. | Snyeder, C., *From research to reality: the leading edge of expert systems,* Insurance Software Review, Vol. 12, No. 3, Autumn 1987, 22-4, 26-7, 30 | States the benefits of automation: "ExClaim increases productivity in a number of areas. One of these is volume. . . Another benefit is a reduction in errors and an increase in consistency among examiners, due to the fact that the system makes the same decisions the same way every time. Further . . . 'the need for high-level examiners should be reduced and an examiner with less experience should be able to do a higher volume and quality of work than before.' Finally, |

49

| | | |
|---|---|---|
| | | productivity gains are achieved through the product's PC orientation." P. 26-27.

Describes impact of workstation environment on future of insurance data processing: "The workstation environment [of PALLM, Inc.] . . . will instead address the administration that currently takes place at the desks of clerks and managers. It will serve to gather intelligence, guide the user through company procedures, and make routine decisions automatically. . . When PALLM's workstation environment evolves from research to reality, its impact on insurance data processing is expected to be dramatic." P. 30. |
| 20. | Egdahl, M.D. and Hertenstein, M.D., *An Access-oriented Negotiated Fee Schedule: The Caterpillar Experience*, Ann Surg., 206(3), pp. 349-57 (Sept. 1987). | "[The CAT process] can also be used (after eligibility is certified and benefits are coordinated) by claims processing systems." P. 353.

A series of questions is asked by several doctors, and Dr. Egdahl addresses each one in turn. Parts of these discussions suggest a need for an automated matching system.

Dr. Austen asks: "The Caterpillar Corporation has approximately 50,000 employees in 15 domestic plants . . . How would you expand your proposal from one company to a national program?" Dr. Egdahl answers: "The problem is that major national programs such as Medicare necessarily involve a large bureaucracy, whereas a private self-administered company such as Caterpillar does not require the same degree of routinization of operations and an easily replicated methodology." PP. 355, 357.

Dr. Beahrs asks: "I would be interested in the author's suggestions how the CPT-4 codes might be collapsed or bundled and what policy could be established to |

| | | | prevent these abuses." Dr. Egdahl answers: "I believe we can use CPT-4 as long as we understand the basis for matching up the procedures that actually were carried out with the codes, and have some way to ratchet downward those charges that seem inappropriate . . . We can stick with CPT-4, but must match the operative note with the CPT-4 code, using physician judgment to determine if the code is appropriate." PP. 355, 357. |
| | | | Dr. Drucker asks: "This is a very complex system. It seems very costly if one reads carefully. What is the cost? Is there any estimate of what the cost would be of setting up and maintaining this system that requires close scrutiny of all bills that come in; a very complex system of monitoring these bills?" P. 356. |

| 39. | U.S. Pat. No. 4,667,292 (Mohlenbrock patent) | "One technique for increasing the likelihood of accuracy and cost-effectiveness in working with the new Medicare DRGs is to incorporate it into a computer system." Col. 3, lines 42–45. |
| --- | --- | --- |
| | | Suggests automated comparison of two DRG numbers from different sources: "In fact, this comparison can be automated, as shown in FIG. 5 wherein a comparator 91 receives as one input 93 the DRG number determined by the physician in accordance with the procedure of FIG. 4 using the computer system of this invention. The second input 95 is a DRG number determined by running a prior art Grouper program 97 which operates from a plurality of ICD-9 code numbers identified by the medical records clerk. A system can even be used that would respond directly to each ICD-9 code inputted to it by the medical records clerk and indicate at the output of the comparator 91 when enough ICD-9 codes have been entered so that the DRG that is calculated by the Grouper program is the same as that determined by the attending physician." Col. 12, lines 48–62. |
| 67. | Gibbons PS, Pishotta FT, Stepto RC, *A system for reporting gynecologic procedures. A linguistic-logical approach,* Journal of Reproductive Medicine, March 1983, Vol. 28 (3), pp. 201-5 | Suggests potential for accuracy in automated system in encoding and reporting: "The automated system for encoding gynecologic procedures developed at Chicago Lying-In Hospital represents a step in the direction of 'softening' and yet controlling entry of technical medical information by standard input personnel. The use of a logical-linguistic network, allowing each procedure to be characterized in a number of ways, offers great flexibility to local managers as well as the potential for accuracy in procedure encoding and reporting." P. 205. |

52

| 73. | Miller KM, Wisnicki HJ, Buchman JP. Riley MJ, Repka MX, Taylor HR, Guyton DL, *The Wilmer Information System. A classification and retrieval system for information on diagnosis and therapy in ophthalmology,* Ophthalmology, March 1988, Vol. 95 (3), pp. 403-9 | Suggests future development of interactive error checking software: "Maryland Medicare and Blue Cross/Blue Shield implemented policy changes in July 1986 to automate and expedite the processing of claims. The most noteworthy requirement was that all submitted claims would have to include an ICD-9 code before being processed . . . Interactive error checking software, similar to that used for direct entry, also will be developed. Until then, a data entry operator receives one copy of the customized coding sheet and enters the data manually." P. 408.<br><br>Discusses importance of coding scheme: "[T]he trend in future years is likely to be in the direction of consolidation. This trend will permit a greater pooling of resources at the hardware/software level, and provide better access to information for all those involved in patient care. The key to the success or failure of any medical information system is its coding scheme." P. 409 |

| 82. | U.S. Pat. No. 4,730,259 (Gallant patent) | Suggests the need for human experts in prior art: "In the prior art, rules are generally constructed for an expert system by either having a human expert provide the rules in a form suitable for the rule base or by having another person generally known as a knowledge engineer convert the information from an expert into appropriate rules. It is often the case that a human expert in a particular area has difficulty formatting his or her knowledge as a set of rules. The process of generating and perfecting a set of rules has been universally recognized as the most time consuming, difficult, and expensive process involved in building an expert system. It is frequently difficult to reduce expertise to a set of rules." Col. 1, line 63 – Col. 2, line 6. |
|-----|------------------------------------------|------------------------------------------------------------------------------------|
| 88. | Hao Kuo, *MEDCLAIM: An Expert Support System for Medical Claims Review*, Thesis Submitted in Department of Computer Science, University of South Carolina (1986). | Suggesting full automation of medical claims review process: "Using the heuristic knowledge and expectation table coded in the prototype and the extended database, MEDCLAIM can be reimplemented in a procedural language on the mainframe, and the entire medical claims review process can be fully automated." P. 54. |

Additionally, TriZetto discloses the following references that may partly or completely describe the apparatus and methods of the asserted claims of the '164 patent, rendering the patent invalid as either anticipated or obvious under 35 U.S.C. §§ 102 & 103. At the time of this response, TriZetto is still in the process of examining these references to determine their applicability. The applicability of these references may depend on the construction of the asserted claims, which has not yet occurred and the opinions of experts, whose disclosures are not required at this time. Accordingly, TriZetto reserves the right to assert these references if

and when it determines that one or more of the references is applicable. At such time, TriZetto
will update its response to this interrogatory.

| | |
|---|---|
| 1. | Marva J. Crouff, *Automating Claims Processing, Insurance Software Review*, Autumn 1988, pp. 52, 54. |
| 3. | Healthstar, Health Benefits Management System, Product Description, v. 1.024 (Insurance Software Packages, Inc.). |
| 4. | *System validates medical fee schedules*, Best Review: Life/Health, June 1987, 92 [Insurance Software Packages, Inc. Medical C Schedule and Audit System]. |
| 5. | *Expert System identifies miscoded health claims*, Bests Review: Life/Health, November 1990, 60. |
| 6. | *Claims editing software runs coding rule checks*, Bests Review: Life/Health, November 1990, 62. |
| 7. | Woolsey, C., *Employer spots inflated medical bills*, Business Insurance, June 25, 1990, 3. |
| 9. | Leary, E., *SSA applies expertise to develop expert systems (Spotlight on AI-expert systems, Social Security Administration)*, Government Computer News, Vol. 6, No. 17, August 28, 1987, 49(3). |
| 10. | Beard, P., *Blue Cross develops insurance claim ES*, AIWeek, Vol. 6, No. 7, April 1, 1989, 3. |
| 11. | Sullivan-Trainor, M., *Catching new clients*, Computerworld, Vol. 21, No. 50, December 14, 1987, 95, 99. |
| 13. | Christensen, J., *Insuring*, High Technology Business, Vol. 8, No. 10, October 1988, 47-8. |
| 14. | *Expert Systems In the Insurance Industry: 1987 Survey Report Update*, Coopers and Lybrand, 1987. |
| 15. | Pallatto, J., *Expert system cures the blues (Blue Cross develops insurance claims analysis system NERSys)*, PC Week, Vol. 5, No. 50, December 12, 1988, 35, 44. |
| 16. | Gladwell, Malcolm, *Computer Firm Finds the Link for Health Care*, Washington Business, December 5, 1988, 5-6. |
| 17. | Kerschberg, L. "A Proposal for the Development of an Expert System for Medical Claims Processing: MEDCLAIM," Institute of Information Management, Technology and Policy, College of Business Administration, University of South Carolina, Columbia, SC, (July 1985). |
| 19. | Ronald Hurst, *Cost Containment - The Caterpillar Experience*, The Psychiatric Hospital, Vol. 13, No. 3 (1982). |

| | |
|---|---|
| 21. | Bauer JW, Cassidy TG, DeBord JR, Hart RD, Lee RH, Maher JE, Montgomery CE, Neufeld GK, Rivan RJ, Soderstrom CW, et al., Related Articles, *An access-oriented negotiated fee schedule: the Caterpillar experience*, Ann Surg., 208(5), pp. 667-8 (Nov. 1988). |
| 22. | Waterman, Donald A. (The Rand Corporation), *A Guide to Expert Systems*, Addison Wesley Publishing, Inc. (1985). |
| 23. | McDermott, John, *Artificial Intelligence Applications for Business: Building Expert Systems*, Proceedings of the NYU Symposium (May 1983). |
| 24. | Gerson, Elihu and Star, Susan Leigh, *Analyzing Due Process in the Workplace*, ACM Transactions on Office Information systems, Vol. 4, No. 3 (July 1986). |
| 25. | Hayes-Roth, Frederick, *et. al.*, *Building Expert Systems: An Overview of Expert Systems*, Addison-Wesley Publishing, Inc. (1985). |
| 26. | Taylor, Edward, *Developing A Knowledge Engineering Capability in the TRW Defense Systems Group*, The AI Magazine (Summer 1985). |
| 27. | Bobrow, Daniel, *et. al.*, *Expert Systems: Perils and Promise*, Computing Practices, Communications of the ACM, Vol. 29, No. 9 (Sept. 1986). |
| 28. | Bhide, Amar and Mohan, Brian, *Marcia Radosevich and Health Payment Review: 1989(A)*, Harvard Business School, 9-394-204 (Feb. 1999). |
| 29. | Genesereth, Michael, Ginsberg, Matthew, *Logic Programming*, Communications of the ACM, Vol. 28, No. 9 (Sept. 1985). |
| 30. | Yasdi, Ramin, *Modeling Database Based Expert Systems at the Conceptual Level*, Proceedings of the 1985 ACM Computer Science Conference (March 1985). |
| 31. | Freudenheim, Milt, *Insurers vs. Doctors: A Software Battleground*, New York Times (Nov. 15, 1989). |
| 32. | Riordan, Teresa, Patents: *A software-technology infringement case against Microsoft goes to trial in Federal Court*, New York Times (Jan. 24, 1994). |
| 33. | Colmerauer, Alain, *Prolog in 10 Figures*, Communications of the ACM, Vol. 28, No. 12 (Dec. 1985). |
| 34. | Hayes-Roth, Frederick, *Rule-Based Systems*, Communications of the ACM, Vol. 28, No. 9 (Sept. 1985). |
| 35. | Weitzel, J.R. and Kerschberg, L. *A System Development Methodology for Knowledge Based Systems*, IEEE Transactions on Systems, Man and Cybernetics, Vol. 19, No. 3 (May/June 1989). |
| 36. | Winston,, Patrick H., Prendergast, Karen A., *The AI Business: The Commercial Uses of Artificial Intelligence*, The MIT Press (1984). |

| 37. | Mack, Barbara, *A Prescription for Cutting Corporate Health Expenses*, Wall Street Journal (Jul. 18, 1983). |
|---|---|
| 42. | U.S. Pat. No. 4,858,121 (Barber patent) |
| 43. | U.S. Pat. No. 4,658,370 (Erman patent) |
| 45. | Jap. Appl. No. 55-107352, entitled "Medical business system" (Yoshikuni App.) |
| 46. | U.S. Trademark No. 1,583,416 (ClaimCheck Mark) |
| 47. | U.S. Trademark No. 1,624,579 (CodeReview Mark) |
| 48. | U.S. Trademark No. 2,165,159 (Code Advisor Mark) |
| 49. | Stachura CT, *Software reference guide: case-mix management*, Journal of the American Medical Record Association [J Am Med Rec Assoc] February 1987, Vol. 58 (2), pp. 42-6. |
| 51. | Stachura CT, *Software reference guide: encoding*, J Am Med Rec Assoc, November 1986, Vol. 57 (11), pp. 25-8. |
| 52. | Wilkinson R, *Does your grouper 'over-maximize' reimbursement?*, Hospitals, October 20, 1986, Vol. 60 (20), p. 88. |
| 55. | Caterinicchio RP, *Implementing a DRG-driven acuity system for nurse staffing under prospective hospital payment*, Hospital Topics, May-June 1985, Vol. 63 (3), pp. 6-7, 13. |
| 56. | Jackson B, Jensen J, *Hospitals turn to new software, hardware to cope with DRG's*, Modern Healthcare, September 1984, Vol. 14 (12), pp. 109-12. |
| 57. | Nathanson M, *New software helps hospitals watch costs, profit under DRG*, Modern Healthcare, September 1984, Vol. 14 (12), pp. 132, 136-8. |
| 58. | *DRG helper makes it easy for doctors to maximize reimbursement*, Hospital Forum, July-August 1984, Vol. 27 (4), pp. 62-3. |
| 59. | Burda D, *Health care market experiences grouper software explosion*, J Am Med Rec Assoc, May 1984, Vol. 55 (5), pp. 35-7. |
| 60. | *Health care executive's guidebook to automation in the 1980s: health care information systems and DRG's*, Hospital Forum, Jan-Feb 1984, Vol. 27 (1), pp. 23-30. |
| 62. | Ray WJ, Johnstone J, *Using medical records to ensure fair DRG reimbursement*, Computer in Healthcare, December 1983, Vol. 4 (12), pp. 32-6, 40. |
| 63. | Heck S, Esmond T, *Financial modeling/case-mix analysis*, Computers in Healthcare, June 1983, Vol. 4 (6), pp. 50-1, 54. |
| 64. | Moliver M, *Computers and reimbursement*, Contemporary longterm care, April 1986, Vol. 9 (4), pp. 46-7. |
| 65. | Turner JM, *DRG compliance measurement in the future*, Software in Healthcare, August-September 1985, Vol. 3 (4), p. 48. |

| 66. | Mohlenbrock WC, *Getting the most out of DRG's*, Group Practice Journal, September October 1985, Vol. 34 (5), pp. 27-32. |
| 68. | Studney DR, Hakstian AR, *Effect of a computerized ambulatory medical record system on the validity of claims data*, Medical Care, April 1983, Vol. 21 (4), pp. 463-7. |
| 69. | Poulson GP, *Detailed costing system nets efficiency*, savings, Hospitals, October 1, 1984, Vol. 58 (19), pp. 106-8, 111. |
| 70. | *Medical coding*, Medical Record and Health Care Information Journal, February 1988, Vol. 29 (1), pp. 20-2. |
| 71. | Johnson KF, *Integrated system brings hospital data together*, Health Progress, October 1987, Vol. 68 (8), pp. 46-9, 82. |
| 72. | Tauber J, Lahav M, *Simplified diagnostic coding sheet for computerized data storage and analysis in ophthalmology*, Ophthalmic Surgery, November 1987, Vol. 18 (11), pp. 846-9 |
| 74. | Carter K, *PCs can tap databanks for costs*, Modern Healthcare, June 20 1986, Vol. 16 (13), p. 52. |
| 75. | Ohnsson J, *GMIS (Gabrieli Medication Information Systems) software flags inappropriate billings, medical procedures*, Contract Healthcare, May 1988, pp. 28-9. |
| 76. | Cimino JJ, *Review paper: coding systems in health care*, Methods of Information in Medicine, December 1996, Vol. 35 (4-5), pp. 273-84. |
| 77. | Gabrieli ER, Speth DJ, Casiraghi E, *Knowledge bases*, Journal of Clinical Computing, 1985, Vol. 13 (5), pp. 150-4. |
| 78. | Gabrieli ER, Saumby JA, *Computer-based coding of medical data*, Topics in Health Record Management, March 1982, Vol. 2 (3), pp. 51-9. |
| 79. | Ely RM, *Savings through claims audits*, Topics in Health Care Financing, Summer 1986, Vol. 12 (4), pp. 61-7. |
| 80. | U.S. Pat. No. 4,347,568 (Giguere patent) |
| 81. | U.S. Pat. No. 4,491,725 (Pritchard patent) |
| 84. | U.S. Pat. No. 4,937,743 (Rassman patent) |
| 85. | U.S. Pat. No. 4,975,840 (De Tore patent) |
| 86. | U.S. Pat. No. 4,991,091 (Allen patent) |
| 87. | Buchanan Bruce G., *Expert Systems*, Journal of Automated Reasoning, Vol. 1, No. 1, 1985, pp. 28-35. |
| 88. | Hao Kuo, *MEDCLAIM: An Expert Support System for Medical Claims Review*, Thesis Submitted in Department of Computer Science, University of South Carolina (1986). |

| 89. | Horn SD,. Horn RA., *The computerized severity index: a new tool for case-mix management*, J Med Syst, February 1986, Vol. 10 (10), pp. 73-78. |
|-----|--------------------------------------------------------------------------------------------|
| 90. | Cebrian, Gil et al, *APACHE II*, Intensive Care med., 1987, Vol. 13 (2), p. 143. |
| 91. | Robinson, ML, *Hospitals look to "severity of illness" indexes*, Healthspan, June 1986, Vol. 3 (6), pp. 19-22. |
| 92. | Nestler, WB et al, *Case-mix reimbursement and clinical management....*, Ind Health Care (Cambridge Ma), 1985, Vol. 2, pp. 117-130. |
| 93. | Bates, SW et al, *Case mix management systems*, Mich. Hosp., August 1984, Vol. 20 (8), pp. 24-29. |
| 94. | Zak, BJ et al; *Financial modeling: an administrative tool of the highest. ..*, Computers in Healthcare, June 1984, Vol. 5(6), pp. 24-26. |
| 95. | Huhn, C et al, *Evaluating the new case-mix systems: a systematic approach*, Hospitals, January 1984, Vo. 58 (2), pp. 92, 94, 96. |
| 97. | Shaffer, VM, *Case mix analysis*, Osteopathic hospital leadership, September-October 1985, pp. 8-9. |
| 98. | Braithwaite, WR, *The effect of Medicare legislation on medical records system*, Software in Healthcare, August-September 1985, Vol. 3 (4), pp. 26-27. |
| 99. | Myers, TF et al, *A modification of the international classification of diseases for uniform...*, AM J Perinatol, July 1985, Vol. 2 (3), pp. 240-241. |
| 100. | Barnard, C., *How to select and implement case-mix (product-line analysis). :.*, Hosp. Forum, January – February, 1985 Vol. 28 (1), pp. 25-30. |
| 101. | Jones, R, *Case-mix and computers: there's a micro-mainframe connection. ..*, Computers in Healthcare, October 1984, Vol. 5 (10), pp. 36-39. |
| 102. | Jones, R., *Case-mix and computers: there's a micro-mainframe connection... ,* Computers in Healthcare, August 1984, Vol. 5 (8), pp. 44-45. |
| 103. | Schumacher, DN, *A practical guide to reviewing case mix financial date*, The Hospital Medical Staff, August 1984, Vol. 13 (8), p. 170. |
| 104. | Jones, R., *Case-mix and computers. Part one: a look at computer delivery. ..*, Computers in Healthcare, June 1984, Vol. 5 (5), pp. 42-45. |
| 105. | Jaggar, FM et al, *A PPS essential: case-mix management systems*, Hospitals, May 1, 1984, Vol. 58 (9), pp. 71-76. |
| 107. | Fedorowicz, J., *Will your computer meet your case-mix informational. ..*, Nurs Health Care, November 1983, Vol. 4 (9), pp. 493-497. |
| 108. | Fedorowicz, J., *Hospital information systems: are we ready for case mix applications*, Health Care Manage Rev., Fall 1983, Vol. 8 (4), pp. 33-41. |

| 109. | Gillette, PE., *Hospital information systems: computer must rack patient costs*, Modern Healthcare, September 1983, Vol. 13 (9), pp. 154, 156, 158. |
|------|------|
| 110. | Nathanson, M., *Hospital information systems: computers crank out DRG...* , Modern Healthcare, September 19833, Vol. 13, (9), pp. 160, 162, 164. |
| 111. | McLaughlin, DB et al., *Personal computers provide advantages and frustrations...* , Hospitals, July 1983, Vol. 57 (14), p. 94. |
| 112. | Barnard, C., *System strategies for case mix*, Computers in Healthcare, June 1983, Vol., 4 (6), pp. 28-32. |
| 113. | Mitchell WA., *An automated APACHE II scoring system*, Intensive care nursing, 1987, Vol. 3 (1), pp. 14-18. |
| 114. | Packer, CL., *Automation in the medical records department*, Hospitals, March 1, 1985, Vol. 59 (5), pp. 100, 102, 104. |
| 115. | Kramer, DJ., *Medicare billing goes electronic,* Software in Healthcare, February March 1986, Vol. 5 (1), pp. 31-32. |
| 116. | Gardner, E., *Coding changes delay reimbursement*, Modern Healthcare, December 4, 1987, Vol. 17 (25), p. 11. |
| 117. | King, M., *How can case mix work for long-term care providers*, Contemporary Longterm Care, November 1988, Vol. 11 (11), pp. 48, 50. |
| 118. | Couch, JB., *Assessing medical care on the basis of its value*, Physician executive, July August 1987, Vol. 13 (4), pp. 7-10. |
| 119. | Peterson, RN et al., *Congress to decide Medicare matters; final PPS rules. ..* , Health Law Vigil, September 20, 1985, Vol. 8 (19), pp. 6-8. |
| 120. | Terenzio J., *Preparing for the future today -product line management...* , Healthcare, Computing & communications, September 1985, Vol. 2 (9), pp. 56-58. |
| 121. | Sovie, MD et al., *Amalgam of nursing acuity*, DRGs and costs... , Nursing Management, March 1985, Vol. 16 (3), pp. 22-42. |
| 122. | Sleight, S. et al., *Addressing case mix management in the smaller hospital...*, Computers in Healthcare, February 1985, Vol. 6 (2), pp. 22-24. |
| 123. | Nathanson, M., *Hospitals struggling to develop standards*, Modern Healthcare, September 1984, Vol. 14 (12), p. 140. |
| 124. | Llaurado, JG, *Computing disease severity: staging*, Int J Biomed Comput, July-August 1984, Vol. 15 (4), pp. 243-248. |
| 125. | Christensen, B., *"Staging" software measures severity of patient's illness*, Hospitals, May 1, 1984, Vol. 58 (9), pp. 45-46. |
| 126. | Dambro, MR et al., *An unsuccessful experience with computerized medical. ..* , Journal of Medical Education, August 1988, Vol. 63 (8), pp. 617-623. |

| | |
|---|---|
| 128. | DiMauro, ME, *Information systems for cost-effective management*, Topics in Health Care Financing, Winter 1987, Vol. 14 (2), pp. 28-34. |
| 129. | Dombi, WA, *Home care denials: computerization and Medicare home care appeals*, Caring: National Association for Home Care Magazine, June 1987, Vol. 6 (6), pp. 16, 19. |
| 130. | Crownover, KR, *Shrinking the demand of home care documentation*, Caring: National Association for Home Care Magazine, June 1987, Vol. 6 (6), pp. 20-22. |
| 131. | Sabin, P., *Hospital cost accounting and the new imperative*, Health Progress, May 1987, Vol. 68 (4), pp. 52-57. |
| 133. | Woodward, RS, *Teaching DRG reimbursement with VisiCalc.*, The Journal of Health Administration Education, Winter 1985, Vol. 3 (1), pp. 91-97. |
| 134. | Landais P. et al., ARCANE. *A new medical patient information system*, Medical Information=Medecine et informatique, April-June 1988, Vol. 13 (2), pp. 105-116. |
| 135. | Carter K., *New reimbursement for outpatient services will mean more...* , Modern Healthcare, August 28, 1987, Vol. 17 (18), p. 78. |
| 136. | None Listed, *Computerization in the medical record department at Pioneer Valley...* , J Am Med Rec Assoc, February 1985, Vol. 56 (2), pp. 42-43. |
| 137. | Gabrieli, ER, *Automated medical office records*, Journal of Medical Systems, February 1987, Vol. 11 (1), pp. 59-68. |
| 138. | Gabrieli, ER, et al., *Computerized discharge summaries: a new window...* , Journal of Clinical Computing, 1987, Vol. 16 (1-2), pp. 47-62. |
| 139. | Gabrieli, ER, et al., *Automated analysis of the discharge summary*, Journal of Clinical Computing, 1986, Vol. 15 (1), p. 128. |
| 140. | Gabrieli, ER, et al., *Standardization of medical informatics*, Journal of Clinical Computing, 1986, Vol. 14 (6), pp. 179-198. |
| 141. | Gabrieli, ER, et al., *A center for medical informatics; modern methods of information...*, Topics in Health Record Management, September 1985, Vol. 6 (1), pp. 12-15. |
| 142. | Gabrieli, ER, et al., *Cognitive processing for computerized new knowledge*, Journal of Clinical Computing, 1985, Vol. 13 (4), pp. 113-116. |
| 143. | Gabrieli, ER, et al., *Computer-based knowledge banks for clinical medicine*, Journal of Clinical Computing, 1983, Vol. 11 (5-6), pp. 195-200. |
| 144. | Gabrieli, ER, et al., *Computer-oriented coding of medical data*, Journal of Clinical Computing, 1981, Vol. 10 (1), pp. 1-18. |
| 145. | Gabrieli, ER, et al., *A proposal for a computer-based national medical information ....*, Journal of Clinical Computing, Vol. 10 (1), pp. 19-52. |

| 146. | Gabrieli, ER, et al., *Computer-oriented nomenclature, automated classification ....*, Journal of Clinical Computing, 1980, Vol. 9 (2), pp. 54-66. |
| 147. | Gabrieli, ER, *Medical information system, health records, and knowledge...* , Medical Instrumentation, July-August 1978, Vol. 12 (4), pp. 245-247. |
| 148. | Gabrieli, ER, *Computer-assisted assessment of patient care in the hospital*, Journal of Medical Systems. June 1988, Vol. 12 (3), pp. 135-146. |
| 150. | Robinson, Michele L., *AHA voices concerns about HCFA's severity index*, Hospitals, October 5, 1988, p. 26. |
| 151. | Barnard, C., *Preparing for case-mix: the role of data processing*, Healthcare financial management: journal of the Healthcare Financial Management Association, June 1983, Vol. 37 (6), pp. 57-70. |

Furthermore, the '164 patent is invalid under 35 U.S.C. §§ 102(a), 102(b), 102(f) & 102(g), insofar as the invention disclosed and claimed therein was made by others, known by others, invented by others and/or in use by others prior to the date of invention or filing for the '164 patent. The following is a list of prior art systems which may have been developed and used by others before the date of invention of the '164 patent:

| | |
|---|---|
| **AccuCode (HCIA/Solucient)** | In the mid-80's, Solucient developed a product called AccuCode that edited DRG codes and outpatient surgical procedures for coding accuracy. |
| **Blue Cross Blue Shield New Jersey** | Developed in 1969, the Blue Shield system denied and/or edited payments for same day surgeries. The system also edited claims for place of service and denied services that were inappropriate. |
| **Clinical Data Editor developed (Health Systems International)** | As early as February 15, 1984, the Clinical Data Editor evaluated the consistency of coded data via more than 25 code edits and assigned DRGs based on edited data. The Clinical Data Editor also identified erroneous or missing diagnosis and procedure codes. |
| **ClinicaLogic for ClaimFacts (Erisco)** | Beginning as early as late 1987 and finishing in 1988, Erisco developed the ClinicaLogic clinical editing module for its ClaimFacts product. ClinicaLogic used medical criteria created by physicians at Pace Healthcare Management, under the direction of Dr. Philip Hawley. |

| | |
|---|---|
| **Clinical Review System a/k/a Chart 'N Coder (Ernst & Young)** | By at least February 5, 1988, CRS/Chart 'N Coder monitored costs, charges, and lengths of stay. The Chart 'N Coder system was primarily a look-up system that collected demographic information and flashed a warning that a code was incorrect. The code editing portion of the system used ICD codes. Clinical Review System identifies when a non-specific code must be replaced by an ICD-9-CM code of greater specificity, and when the presence of a complication or co-morbidity code affects the DRG. |
| **CODEFINDER/ DRGFINDER or Clinical Claims Editor (Code 3 Health Information Systems/3M)** | As early as February 15, 1984, Code 3 developed a system called the CODEFINDER/DRGFINDER or the Clinical Claims Editor which was a COBOL based product that evaluates claims to assign DRG codes, evaluate the accuracy of the data, and identify coding errors. |
| **Codemaster PLUS (Care Communications)** | By at least January 1987, Care Communications provided an automated ICD-9-CM encoder, a code editor, a DRG grouper, and a DRG optimizer. The system assigns DRGs and alerts users to various appropriate options (pathways) for increasing the amount of reimbursement. |
| **Discorp Software (Novalis)** | Founded in 1985, Discorp Software provided medical code checking and verified the accuracy of codes. |
| **ExClaim (Policy Management Systems Corporation)** | In use in 1987, the ExClaim software works by allowing a claims examiner to enter basic claim information such as the name, address, and dates of service, procedures performed, and category of service. Based on that data, ExClaim determines the resultant payment or reconciliation of the claim. |
| **Interactive DRG Grouper (Radle Computer Systems, Inc.)** | By at least 1987, Radle Computer Systems, Inc. had developed the Interactive DRG Grouper. The Interactive DRG Grouper determines DRG assignment based on patient data. Up to five diagnostic codes and five procedural codes may be entered for each patient. DRG assignment may be computed on the basis of the principal diagnosis or several DRG assignments may be calculated using each entered diagnosis as the principal diagnosis. |

63

| | |
|---|---|
| **MedChec (Lockheed Martin)** | Designed to detect overcharging and fraud in medical insurance programs administered by Lockheed by at least Fall 1988, MedChec used rules to return a report identifying two categories of suspicious-looking records – over billings that will result in refunds, and suspect billings that must be paid but that result in warnings to providers that they avoid a recurrence. |
| **MedClaim** | MedClaim is a product of a joint venture formed in 1985 between the University of South Carolina and BCBS South Carolina to develop a knowledge-based system to perform medical review of health insurance claims. The system would review the claims, assemble justification for its recommendation, and send a result indicator and the justification to the main claims system. |
| **Medical Policy (Advanced Systems Application joint venture with Blue Cross Blue Shield North Carolina ("BCBS-NCA")** | Initially designed in late 1986, medical staff from BCBS-NCA developed the Medical Policy product rules while Advanced Systems Application developers worked on the design, coding, and testing. The rules included age, sex, and place of service editing, rebundling and repricing for the rebundled services. This was an add-on to ASA's claims processing software. |
| **QGROUPER (Quality Data Systems)** | In use by at least January 1987, QGROUPER determined MDCs and DRGs on an interactive or batch-mode basis. When used in an interactive mode, diagnosis parameters affecting DRG assignment can be changed and a new DRG can be calculated immediately. |
| **Wilmer Information Systems** | By March 1988, Wilmer Information Systems ("WIS") had for sale a computerized medical information system used for the storage and retrieval of patient demographics, diagnosis and therapy. WIS used a master code list containing all of the diagnosis and treatment codes recognized by the system. |

In addition to the prior art systems developed by third parties listed above, TriZetto identifies the following described activities of McKesson more than one year prior to the date of application for the '164 patent sufficient to render the '164 patent invalid and unenforceable under 35 U.S.C. § 102(b) and/or § 103. Specifically, prior to the critical date of September 30, 1987, Caterpillar Tractor, Inc. ("Caterpillar") and McKesson's predecessor-in-interest, Health Payment Review ("HPR") have, among other items, disclosed and offered for sale the claims review process in both a manual and software embodiment for sale to third parties. As early as

64

1985, employees of Caterpillar developed the patented process. Sometime prior to February 1986, representatives of Caterpillar approached individuals at the Health Policy Institute of Boston University with the idea of developing software that would automatically perform this process. In these discussions, individuals at Caterpillar disclosed the patented process to individuals at Boston University in their effort to obtain funding and establish HPR. Also in 1986, individuals from Caterpillar and the Health Policy Institute collaborated on a lecture entitled "Managing Physician Fees" presented at a publicly attended conference. This presentation described the patented process, including unbundling and rebundling claims to manage the cost of physician fees. Additionally at this conference, the presenters described the automation of the patented process using computerized software and requested advice from the audience regarding marketing the resulting software package.

From 1986 to 1987, individuals from the Health Policy Institute and/or HPR sent correspondence and detailed proposals offering to sell, promote and disclose the patented system to various companies such as Aetna Insurance Company, Chrysler Corporation, Sun Oil Company, Armco, Inc., and the Weyerhauser Company. These proposals and correspondence contained disclosures of the steps of the manual process, offers for sale of the manual version of the patented process, or offers to develop a software-based version of the patented process for a fee. On information and belief, sometime in 1987, Marcia Radosevich of HPR met with personnel of Erisco to offer HPR's clinical editing product to Erisco.

### INTERROGATORY NO. 21:

To the extent not otherwise detailed in response to other McKesson interrogatories in this case, state in complete detail all bases for TriZetto's assertion that the '164 patent is invalid or unenforceable, and identify all persons with knowledge of, and all communications relating to, this assertion.

### RESPONSE TO INTERROGATORY NO. 21:  (August 16, 2005)

TriZetto objects to this interrogatory on the grounds that it calls for the disclosure of communications protected by the attorney-client privilege and/or the attorney work product

65

doctrine. To the extent that TriZetto claims privilege and withholds any communications responsive to this interrogatory, TriZetto will provide a privilege log in accordance with the Federal Rules of Civil Procedure at a future date.

TriZetto further objects that claim construction in this action has not yet occurred, and depositions have not yet been taken. The information contained in this response is based on information that is reasonably available to TriZetto at the present time. TriZetto's identification of the facts, basis and evidence supporting its claim of invalidity are as complete as possible at this time. Accordingly, TriZetto reserves the right to supplement, amend and augment its response to this interrogatory as new, additional and different information is learned and discovered and when the claims at issue are construed by the Court. Subject to and without waiving these objections and the General Objections stated at the outset, TriZetto responds to this interrogatory as follows:

The '164 patent is invalid or unenforceable for the reasons stated in TriZetto's responses (including all supplemental responses) to McKesson's Interrogatories Nos. 6-9 and 18-20.

## FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 21:
(September 13, 2005)

TriZetto reasserts and reincorporates by reference herein its previous response to Interrogatory No. 21, and the general objections set forth above. Additionally, claim construction in this action has not occurred, and discovery is continuing. The information contained in this response is based on information that is reasonably available to TriZetto at the present time. TriZetto's identification of prior art is as specific as is possible at this time. Accordingly, TriZetto reserves the right to supplement, amend and augment its response to this interrogatory as new, additional and different information is learned and discovered and when the claims at issue are construed by the Court. Subject to and without waiving those objections, TriZetto supplements its previous response as follows:

The '164 patent is invalid or unenforceable for the reasons stated in TriZetto's responses (including all supplemental responses) to McKesson's Interrogatories Nos. 6-9 and 18-20,

including TriZetto's Fourth Supplemental Response to McKesson's Interrogatory No. 6, as set forth above.

Dated: September 13, 2005                GIBSON, DUNN & CRUTCHER LLP


                                         *Michael A. Sitzman /amo*

                                         Michael A. Sitzman
                                         One Montgomery Street
                                         31st Floor
                                         San Francisco, California 94104
                                         (415) 393-8200

                                         – and –

                                         MORRIS, NICHOLS, ARSHT & TUNNELL
                                         Jack B. Blumenfeld (No. 1014)
                                         Rodger D. Smith, II (No. 3778)
                                         1201 N. Market Street
                                         Wilmington, Delaware 19899
                                         (302) 658-9200

                                         Attorneys for Defendant
                                         The TriZetto Group, Inc.

## DECLARATION OF SERVICE

I, the undersigned, declare that I am employed in the County of San Francisco, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 1 Montgomery St, San Francisco, California 94104, in said County. and State, and on the date indicated below, I served the within:

### THE TRIZETTO GROUP, INC.'S FOURTH SUPPLEMENTAL RESPONSE TO PLAINTIFF'S INTERROGATORY NO. 6 AND FIRST SUPPLEMENTAL RESPONSE TO PLAINTIFF'S INTERROGATORY NO. 21

by placing a true copy thereof in an envelope addressed to each of the persons named below at the address shown:

☑ **BY MAIL:** I placed a true copy in a sealed envelope addressed as indicated above, on the above-mentioned date. I am familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **BY PERSONAL SERVICE:** I placed a true copy in a sealed envelope addressed to each person[s] named at the address[es] shown and giving same to a messenger for personal delivery before 5:00 p.m. on the above-mentioned date.

☑ **BY FACSIMILE:** From facsimile machine telephone number (415) 986-5309, on the abovementioned date, I served a full and complete copy of the above-referenced document[s] by facsimile transmission to the person[s] at the number[s] indicated.

☐ **BY FEDERAL EXPRESS:** I placed a true copy in a sealed envelope addressed as indicated above, on the above-mentioned date. I am familiar with the firm's practice of collection and processing correspondence for delivery by Federal Express. Pursuant to that practice, envelopes placed for collection at designated locations .during designated hours are delivered to Federal Express with a fully completed airbill, under which all delivery charges are paid by Gibson, Dunn & Crutcher, that same day in the ordinary course of business.

☐ **(STATE)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct and that the foregoing document(s) were printed on recycled paper.

☑ **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this court or who has been admitted *pro hac vice* at whose direction the service was made.

Executed on September 13, 2005, at San Francisco, California

_____
Michael V. Bresso

68

## SERVICE LIST

By U.S. Mail:
Jeffrey G. Randall
David W. Hansen
Michael C. Hendershot
Donna Hill
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, CA 94301

Telephone: (650) 470-4500
Facsimile: (650) 470-4570

By Email:
jrandall@dden.com
dhansen@skadden.com
mhenders@skadden.com
dhill@skadden.com


By U.S. Mail:
Thomas J. Allingham II
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
One Rodney Square
P.O. Box 636
Willimington, DE 19899

Telephone: (302) 651-3000
Facsimile: (302) 651-3001

By Email:
tallina@skadden.com


40216250_1.DOC