# Exhibit 1:

# Redacted in its Entirety

# Exhibit 2:

# Redacted in its Entirety

# Exhibit 3:

# Redacted in its Entirety

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| MCKESSON INFORMATION SOLUTIONS, LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>THE TRIZETTO GROUP, INC.,<br><br>　　　　　Defendant. | Civil Action No. 04-1258 SLR |

## THE TRIZETTO GROUP, INC.'S RESPONSES
## TO PLAINTIFF'S SECOND SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, defendant The TriZetto Group, Inc. ("TriZetto") hereby provides the following responses and objections to plaintiff McKesson Information Solutions, LLC's ("McKesson") Second Set of Interrogatories (the "Interrogatories").

### GENERAL OBJECTIONS

1.　　TriZetto has not concluded its investigation of the facts relating to this case, formal discovery, or preparation for trial. For that reason, TriZetto's responses to the Interrogatories may be incomplete. Moreover, there is a possibility that upon further investigation, certain details set forth in the responses may be altered or amended. These responses represent TriZetto's reasonable efforts to provide the information requested based upon documents or information in its possession, custody, or control, and based upon its current knowledge. TriZetto reserves its right to produce evidence of any subsequently discovered facts and documents, and to alter or amend its factual and legal

contentions as additional facts are ascertained, analyses are made, and legal research is completed.

2.    TriZetto objects to McKesson's definition of the term "TriZetto" on the grounds that such definition is overbroad, unduly burdensome, vague, ambiguous, and causes the Interrogatories to seek information that is not relevant to the claims, defenses or subject matter of this litigation. As such, TriZetto will interpret "TriZetto" to include The TriZetto Group, Inc. and its present or former officers, directors and employees.

3.    TriZetto further objects to McKesson's "Definitions" to the extent that they attempt to place burdens upon TriZetto beyond those required by Rule 33 of the Federal Rules of Civil Procedure. TriZetto will not comply with any "Definitions" that attempt to impose obligations upon TriZetto not required by Rule 33.

4.    TriZetto objects to the Interrogatories to the extent that they request information protected from disclosure by any privilege, including the attorney-client privilege or the work product doctrine. TriZetto and its counsel hereby assert such privileges.

5.    TriZetto objects to each Interrogatory to the extent it seeks information not in TriZetto's possession, custody, or control on the grounds that it is unduly burdensome and oppressive.

6.    To the extent that any Interrogatory calls for information already in the possession of McKesson or its counsel, TriZetto objects on the grounds that the Interrogatory is unnecessary, unduly burdensome and oppressive, and constitutes annoyance, harassment, and oppression of TriZetto.

7.    TriZetto objects to these Interrogatories to the extent that they seek information concerning any party or third party which is subject to the right of privacy of that party as guaranteed by the United States Constitution, any applicable state constitution, or any combination of the foregoing.

2

8.      TriZetto will make reasonable efforts to respond to each Interrogatory, to the extent that no objection is made, as TriZetto understands and interprets the Interrogatory. If McKesson subsequently asserts an interpretation of any Interrogatory that differs from that of TriZetto, TriZetto reserves the right to supplement its objections and responses.

9.      Without waiving any of the foregoing general objections, TriZetto responds to the Interrogatories, subject to the following additional express reservation of rights:

a.      The right to object on any ground whatsoever to the admission into evidence or other use of any Interrogatory Responses in any subsequent step or proceeding in this action or any other action;

b.      The right to object on any and all grounds, at any time, to any other discovery requests or other discovery procedures involving or relating to the subject matter of these Interrogatories; and

c.      The right at any time to revise, correct, add to or clarify any of the responses propounded herein.

The foregoing general objections and qualifications shall be deemed incorporated in full in the Responses to each specific Interrogatory set forth below.

## RESPONSES

### INTERROGATORY NO. 18:

State in complete detail the basis for TriZetto's assertion in its May 5, 2005, supplemental interrogatory response that the '164 patent is invalid for "failure to disclose best mode in accordance with 35 U.S.C. § 112, ¶ 1," and identify all persons with knowledge of, and all communications related to, this assertion.

### RESPONSE TO INTERROGATORY NO. 18:

TriZetto objects to this interrogatory on the grounds that it calls for the disclosure of communications protected by the attorney-client privilege and/or the attorney work

3

product doctrine. To the extent that TriZetto claims privilege and withholds any communications responsive to this interrogatory, TriZetto will provide a privilege log in accordance with the Federal Rules of Civil Procedure at a future date.

TriZetto further objects that claim construction in this action has not yet occurred, and depositions have not yet been taken. The information contained in this response is based on information that is reasonably available to TriZetto at the present time. TriZetto's identification of the facts, basis and evidence supporting its claim of invalidity are as complete as possible at this time. Accordingly, TriZetto reserves the right to supplement, amend and augment its response to this interrogatory as new, additional and different information is learned and discovered and when the claims at issue are construed by the Court. Subject to and without waiving these objections and the General Objections stated at the outset, TriZetto responds to this interrogatory as follows:

The '164 patent is invalid for failure to disclose the best mode contemplated by the inventors for carrying out the invention, as required by 35 U.S.C. § 112, ¶ 1. The invention of the '164 patent is based on a product called "CodeReview." '164 patent, Col. 3:17-21. CodeReview is a computer system that uses a "knowledge base of expert-derived decisions or rules" to help determine whether physician claims for medical service contain the appropriate medical service codes. '164 patent, Col. 3:17-68. At the heart of CodeReview are the specific "expert-derived decisions or rules" that define the relationships between particular medical service codes and allow CodeReview to determine whether particular combinations of medical service codes are appropriate. '164 patent, Col. 3:38-68. These "expert-derived decisions or rules" were originally developed by physician reviewers as a manual code-checking system and were later incorporated into the CodeReview computer system: "The prompts and recommendations provided by CodeReview are based on the decision rules that physician reviewers have already used on a manual basis to solve identical problems and are consistent with informed surgical opinion." '164 patent, Col. 3:38-68.

4

The '164 patent does not disclose the set of "expert-derived decisions or rules" on which the CodeReview system is based. At most, the '164 patent lists a few examples that might be "expert-derived decisions or rules" from the CodeReview system. '164 patent, App. A, Cols. 11-48. But nowhere in the patent is the complete set of "expert-derived decisions or rules" used by the CodeReview system disclosed. Given that the "expert-derived decisions or rules" are a critical component of the patented invention, it was incumbent upon the inventors to disclose those rules in the patent specification. Their failure to do so is a failure to set forth the best mode contemplated by the inventors of carrying out the invention.

The inventors of the '164 patent, Donald C. Holloway, Robert D. Hertenstein, George A. Goldberg, and Kelli A. Dugan, may have knowledge pertinent to this subject. Additionally, TriZetto may submit expert testimony at the appropriate time during discovery and at trial supporting its assertion herein described.

**INTERROGATORY NO. 19:**

State in complete detail the basis for TriZetto's assertion in its May 5, 2005, supplemental interrogatory response that the '164 patent is invalid based on "improper subject matter under 35 U.S.C. § 101," and identify all persons with knowledge of, and all communications relating to, this assertion.

**RESPONSE TO INTERROGATORY NO. 19:**

TriZetto objects to this interrogatory on the grounds that it calls for the disclosure of communications protected by the attorney-client privilege and/or the attorney work product doctrine. To the extent that TriZetto claims privilege and withholds any communications responsive to this interrogatory, TriZetto will provide a privilege log in accordance with the Federal Rules of Civil Procedure at a future date.

TriZetto further objects that claim construction in this action has not yet occurred, and depositions have not yet been taken. The information contained in this response is based on information that is reasonably available to TriZetto at the present time.

TriZetto's identification of the facts, basis and evidence supporting its claim of invalidity are as complete as possible at this time. Accordingly, TriZetto reserves the right to supplement, amend and augment its response to this interrogatory as new, additional and different information is learned and discovered and when the claims at issue are construed by the Court. Subject to and without waiving these objections and the General Objections stated at the outset, TriZetto responds to this interrogatory as follows:

The claims of the '164 patent are invalid because they do not meet the statutory requirements for patentable subject matter set forth in 35 U.S.C. § 101. "It has been well-established that the obvious automation of a known manual process is not patentable. *See In re Venner*, 262 F.2d 91 (CCPA 1958); *In re Rundell*, 48 F.2d 958 (CCPA 1931)." *Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 2004 U.S. Dist. LEXIS 11918 (D.N.J., 2004). The patented invention is merely a computerized version of the manual code-checking system developed by Robert Hertenstein, M.D., one of the inventors of the '164 patent. Dr. Hertenstein's manual system was disclosed in an article entitled, "An Access-oriented Negotiated Fee Schedule: The Caterpillar Experience," American Surgical Association (April 1987). Implementing Dr. Hertenstein's manual code-checking technique as a computer system was an obvious automation of a known manual process and was, therefore, not patentable.

It is expected that the testimony of the inventors together with applicable law will establish these grounds for invalidity. TriZetto is unaware of any "communications" that relate to the foregoing assertions.

**INTERROGATORY NO. 20:**

State in complete detail the basis for TriZetto's assertion in its May 5, 2005, supplemental interrogatory response in this case that the '164 patent is invalid "under common law doctrines, including but not limited to, the mental steps and the mathematical algorithms doctrines," and identify all persons with knowledge of, and all communications relating to, this assertion.

6

## RESPONSE TO INTERROGATORY NO. 20:

TriZetto objects to this interrogatory on the grounds that it calls for the disclosure of communications protected by the attorney-client privilege and/or the attorney work product doctrine. To the extent that TriZetto claims privilege and withholds any communications responsive to this interrogatory, TriZetto will provide a privilege log in accordance with the Federal Rules of Civil Procedure at a future date.

TriZetto further objects that claim construction in this action has not yet occurred, and depositions have not yet been taken. The information contained in this response is based on information that is reasonably available to TriZetto at the present time. TriZetto's identification of the facts, basis and evidence supporting its claim of invalidity are as complete as possible at this time. Accordingly, TriZetto reserves the right to supplement, amend and augment its response to this interrogatory as new, additional and different information is learned and discovered and when the claims at issue are construed by the Court. Subject to and without waiving these objections and the General Objections stated at the outset, TriZetto responds to this interrogatory as follows:

No patent can be obtained for a method an essential component of which consists of human mental participation or even the mechanical equivalent of human mental participation. *See generally, Gottschalk v. Benson*, 409 U.S. 63 (1972). From the depositions taken and reviewed in the case of *GMIS, Inc. v. Health Payment Review, Inc.* (E.D. Pa. 1994), it is clear from the testimony of inventors Robert Hertenstein, M.D. and Don Holloway, Ph.D., that the '164 patent discloses and claims nothing more than a computerized equivalent of the procedures, rules and algorithms created by Dr. Hertenstein. Together with Richard H. Egdahl, M.D., Dr. Hertenstein publicly disclosed the manual form of his rule-based system in an article entitled, "An Access-oriented Negotiated Fee Schedule: The Caterpillar Experience," American Surgical Association (April 1987).

A further but inter-related ground for invalidity also exists because the invention described and claimed in the '164 patent involves human judgment and choice, causing the patent to be indefinite. The outcome of the processes claimed in the '164 patent are dependent entirely upon the decisions and rules derived "expert's knowledge" used to program the system. In the case of CodeReview, the outcome of the claims handling process is entirely dependent on the unique decisions and rules used by Dr. Hertenstein and programmed into the computerized system. The invention therefore depends upon the peculiar knowledge base and decision process designed and derived by the programmer, and different results are obtained if different individuals/experts are used or relied upon in programming the computerized system.

It is expected that the testimony of the inventors together with applicable law will establish these grounds for invalidity. TriZetto is unaware of any "communications," other than the publications mentioned above, that relate to the foregoing assertions.

**INTERROGATORY NO. 21:**

To the extent not otherwise detailed in response to other McKesson interrogatories in this case, state in complete detail all bases for TriZetto's assertion that the '164 patent is invalid or unenforceable, and identify all persons with knowledge of, and all communications relating to, this assertion.

**RESPONSE TO INTERROGATORY NO. 21:**

TriZetto objects to this interrogatory on the grounds that it calls for the disclosure of communications protected by the attorney-client privilege and/or the attorney work product doctrine. To the extent that TriZetto claims privilege and withholds any communications responsive to this interrogatory, TriZetto will provide a privilege log in accordance with the Federal Rules of Civil Procedure at a future date.

TriZetto further objects that claim construction in this action has not yet occurred, and depositions have not yet been taken. The information contained in this response is based on information that is reasonably available to TriZetto at the present time.

8

TriZetto's identification of the facts, basis and evidence supporting its claim of invalidity are as complete as possible at this time. Accordingly, TriZetto reserves the right to supplement, amend and augment its response to this interrogatory as new, additional and different information is learned and discovered and when the claims at issue are construed by the Court. Subject to and without waiving these objections and the General Objections stated at the outset, TriZetto responds to this interrogatory as follows:

The '164 patent is invalid or unenforceable for the reasons stated in TriZetto's responses (including all supplemental responses) to McKesson's Interrogatories Nos. 6-9 and 18-20.

**INTERROGATORY NO. 22:**

Assuming that TriZetto is found liable for infringing the '164 patent, state whether TriZetto contends that McKesson is not entitled to lost profit damages, and, if so, the complete details regarding such contention, including, without limitation, the identity of all persons with knowledge of, and all communications relating to, this contention.

**RESPONSE TO INTERROGATORY NO. 22:**

TriZetto objects to this interrogatory on the grounds it is premature as it asks TriZetto to take a position on an issue on which McKesson will have the burden of proof and which will be the subject of expert testimony. TriZetto's position on this issue will be expressed in detail in the report of its rebuttal damages expert, which cannot be prepared until McKesson provides TriZetto with the report from its damages expert. It is TriZetto's position at this time that McKesson is not entitled to recover lost profit damages due to significant differences in the McKesson and TriZetto products and customer bases and the availability of relevant products from third parties.

**INTERROGATORY NO. 23:**

Assuming that TriZetto is found liable for infringing the '164 patent, state whether TriZetto contends that McKesson is not entitled to reasonable royalty damages based on the overall value of TriZetto's sales of the Accused Products (versus the value of any

claim auditing/editing component of such products), and, if so, the complete details regarding such contention, including, without limitation, the identity of all persons with knowledge of, and all communications relating to, this contention.

## RESPONSE TO INTERROGATORY NO. 23:

TriZetto objects to this interrogatory on the grounds it is premature as it asks TriZetto to take a position on an issue on which McKesson will have the burden of proof and which will be the subject of expert testimony. TriZetto's position on this issue will be expressed in detail in the report of its rebuttal damages expert, which cannot be prepared until McKesson provides TriZetto with the report from its damages expert. It is TriZetto's position at this time that any calculation of reasonable royalty damages should be based solely on sales of products found to infringe the patent in suit, in part because the sales of TriZetto's products that are not accused of infringement are not dependent on the accused products.

## INTERROGATORY NO. 24:

Assuming that TriZetto is found liable for infringing the '164 patent, state in complete detail the damages that TriZetto contends that McKesson is entitled to, including, without limitation, the identity of all persons with knowledge of, and all communications relating to, this contention.

## RESPONSE TO INTERROGATORY NO. 24:

See responses to Interrogatories 22 and 23 above.

## INTERROGATORY NO. 25:

Identify each product that you contend is an acceptable, noninfringing alternative to each Accused Product, or any component thereof, for performing clinical editing or auditing of medical payment claims, and state in complete detail the basis for this contention.

**RESPONSE TO INTERROGATORY NO. 25:**

TriZetto objects to this interrogatory on the grounds it calls for information not in TriZetto's possession, which must be gathered from third-party sources, and that investigation is ongoing and will culminate in the preparation of TriZetto's experts' reports. As of the date of these responses, TriZetto is informed and believes that the following companies are offering or have offered potential noninfringing alternatives:

> GMIS
>
> HBOC
>
> Ingenix Health Intelligence
>
> iHealth Technologies
>
> IntelliClaim, Inc.
>
> Bloodhound, Inc.
>
> Discorp
>
> Value Health Services
>
> HealthChex, Inc.
>
> Solucient, LLC

**INTERROGATORY NO. 26:**

Describe in detail each circumstance in which you sold or licensed an Accused Product without including functionality for performing clinical editing or auditing of medical payment claims or with such functionality deactivated or otherwise rendered unusable by the customer. For purposes of this interrogatory, the phrase "describe in detail" includes, without limitation, providing for each circumstance, the identity of the customer, the identity of the Accused Product sold/licensed, the date of the sale/license, the price or fee terms, and the reason(s) for not including functionality for performing clinical editing or auditing of medical payment claims in the Accused Product or having said functionality deactivated or otherwise rendered unusable.

11

**RESPONSE TO INTERROGATORY NO. 26:**

Attached hereto as Exhibit A is a list of the Facets customers that did not receive clinical editing functionality.

Attached hereto as Exhibit B is a list of the ClaimFacts customers that did not receive clinical editing functionality.

Attached hereto as Exhibit C is a list of the QicLink customers that did not receive clinical editing functionality.

**INTERROGATORY NO. 27:**

Identify every non-TriZetto product for performing clinical editing or auditing of medical payment claims that has been integrated into, added on to, or otherwise used with an Accused Product.

**RESPONSE TO INTERROGATORY NO. 27:**

TriZetto is unaware of third-party clinical editing products that have been integrated into, added to or used with any of the accused clinical editing products. As McKesson is aware, one or more of its clinical editing products has been interfaced and/or used with other TriZetto products, and a software program known as Auto-Audit has been interfaced and/or used with products offered by RIMS.

**INTERROGATORY NO. 28:**

Describe in detail every oral or written communication between TriZetto and Erisco Managed Care Technologies, Inc. regarding the '164 patent or McKesson's enforcement of the '164 patent prior to November 2000.

**RESPONSE TO INTERROGATORY NO. 28:**

TriZetto is not aware of the content of any such communications. While the existence of the '164 patent may have been referenced during oral communications during the time frame specified, no TriZetto employee has a recollection of any substantive discussion of the patent. To the extent any relevant documents exist, they have been produced herein.

**INTERROGATORY NO. 29:**

Describe in detail every oral or written communication between TriZetto and

Resource Information Management Systems, Inc. regarding the '164 patent or

McKesson's enforcement of the '164 patent prior to January 2001.

**RESPONSE TO INTERROGATORY NO. 29:**

TriZetto is not aware of the content of any such communications. While the

existence of the '164 patent may have been referenced during oral communications during

the time frame specified, no TriZetto employee has a recollection of any substantive

discussion of the patent. To the extent any relevant documents exist, they have been

produced herein.

DATED: August 16, 2005

GIBSON, DUNN & CRUTCHER LLP

Jeffrey T. Thomas
David A. Segal
Michael A. Sitzman
Jamboree Center, 4 Park Plaza
Irvine, California 92614-8557
(949) 451-3800

MORRIS, NICHOLS, ARSHT &
TUNNELL
Jack B. Blumenfeld (#1014)
Rodger D. Smith, II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200

Attorneys for Defendant
THE TRIZETTO GROUP, INC.

30375045_1.DOC

13

# EXHIBIT A

## FACETS CUSTOMERS THAT DID NOT RECEIVE
## CLINICAL EDITING FUNCTIONALITY

Government Employees Hospital Association

Harrington Benefit Services

John P. Pearl

Exhibit A

## EXHIBIT B

## CLAIM FACTS CUSTOMERS THAT DID NOT

## RECEIVE CLINICAL EDITING FUNCTIONALITY

ADN Dental
International Paper
CalFarm Life Ins. Co.
Acordia of Lexington Inc.
Grand Union
Anthem Inc.
Desjardins
Kohler Company
Lamb-Weston
Mayo Foundation
Paul Revere Insurance Group
Stora Enso North America
Philadelphia Teamsters
Standard Insurance
Royal & Sun Alliance
Duke Energy Corporation
Verizon/First Health
Illinois Employee Benefit
Michigan Teamsters
Mass Insur. Consult. & Admin.
MSI Insurance
Western States Administrators
Sun Life of Canada
Blue Cross/Blue Shield
Brown Group
Bankers Life Nebraska
Comprehensive Care Systems
Ciba-Geigy Corporation
Capitol Holdings
Champion International
Crawford and Co.
Crown Life (General) Limited
Computer Sciences Corporation
FHP Inc.
Preferred Works Inc.
Forest T. Jones
Gab Business Services
Illinois Power
Mediplan
Fortis Benefits Insurance Co.
First Health (Midwest Benefits)
Montgomery Ward
Blue Cross Blue Shield of NH
Newport News Shipbuilding
NYLCARE

Blue Cross of Oregon
Pacific Heritage Association
Consolidated Papers Inc.
Ryder System Inc.
ING LIFE OF GEORGIA
Baroid Corporation
North America Life Insurance
Olin
John P. Pearl & Assoc. Ltd.
Parker Hannifin
Rural Security Life Insurance
NAPTHEON
CSEA Employee Benefit Fund
Excellus
Horizon BC/BS of NJ
Seafarers
United Services Automobile
Protective Corporation
Kaiser Permanente
Assurant Employee Benefits

## EXHIBIT C

### QICLINK CUSTOMERS THAT DID NOT RECEIVE

### CLINICAL EDITING FUNCTIONALITY

21st Century Health & Benefits
A&G Healthcare
Administrative Concepts, Inc.
Administrative Risk Mgt.
Aegon Direct Marketing Services
America
Alternative Technology Resources, Inc.
American Administrative Services, LLC
American All Risk Loss Admin.
American Benefit Admn. Svc. Inc.
American Capitol Insurance Co.
American Commercial Lines, Inc.
American Investors Life Ins. Co.
American LIFECARE Networks, L.L.C.
American Trust Administrators, Inc.
America's Choice Healthplans, LLC
Amerisight
Anthem BCBS of VA
APCOM, INC.
Associated Plan Administrators
Association Services of Washington
ASTA
Automated Group Administration
BCBS of Arizona
BCBS of Oklahoma
Beech Street Corp.
BeneFirst, LLC
Benefit Administrative Systems
Benefit Management Systems Inc.
Benefit Systems Inc.
Bene-Flex, Inc.
BenePlan Strategies
Benesys, Inc.
Best Doctors
BFN Corporation
Bluebonnet Administrators
BMS Admin. Services, Inc.
Board of Pensions of The ELCA
Boyd Brothers Transportation Inc.
Brokerage Concepts of Delaware
California Advantage, Inc.
CAM Administrative Serv., Inc.
Carolina Benefits Administration
Centinela Hospital Med. Center
Central Reserve Life
Welfare Trus

Health Plan
City of Amarillo
City of Wichita Falls
Cleveland Clinic
CM Administrators Inc.
Coalition America, Inc.
Community Care Network, Inc.
Community General Hospital
Community Health Electronic
CompBenefits Corporation
Complete Benefit Solutions, Inc.
Computer Applications & Resource
Concentra Managed Care Services
Consolidated Health Plans
Consolidated Health Plans Inc.
Contra Costa County
Corporate Systems Administrators Inc.
Covenant Administrators, Inc.
Croy-Hall Management, Inc.
Data Service Bureau
DCA, Inc.
Delta Dental Plan of Mass.
Dental Care Plus

Exhibit C

## DECLARATION OF SERVICE

I, the undersigned, declare that I am employed in the County of Orange, State of California; I am over the age of eighteen years and am not a party to this action; my business address is Jamboree Center, 4 Park Plaza, Irvine, California, and on the date indicated below, I served the within:

## THE TRIZETTO GROUP, INC.'S RESPONSES TO PLAINTIFF'S SECOND SET OF INTERROGATORIES

by placing a true copy thereof in an envelope addressed to each of the persons named below at the address shown:

☑ **BY MAIL:** I placed a true copy in a sealed envelope addressed as indicated above, on the above-mentioned date. I am familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **BY PERSONAL SERVICE:** I placed a true copy in a sealed envelope addressed to each person[s] named at the address[es] shown and giving same to a messenger for personal delivery before 5:00 p.m. on the above-mentioned date.

☐ **BY FACSIMILE:** From facsimile machine telephone number (415) 986-5309, on the above-mentioned date, I served a full and complete copy of the above-referenced document[s] by facsimile transmission to the person[s] at the number[s] indicated.

☐ **BY FEDERAL EXPRESS:** I placed a true copy in a sealed envelope addressed as indicated above, on the above-mentioned date. I am familiar with the firm's practice of collection and processing correspondence for delivery by Federal Express. Pursuant to that practice, envelopes placed for collection at designated locations during designated hours are delivered to Federal Express with a fully completed airbill, under which all delivery charges are paid by Gibson, Dunn & Crutcher, that same day in the ordinary course of business.

☑ **BY ELECTRONIC MAIL:** From an IBM computer, email address athompson@gibsondunn.com in PDF format, to the email addresses listed in the following Service List on the date indicated.

☐ **(STATE)**   I declare under penalty of perjury under the laws of the State of California that the above is true and correct and that the foregoing document(s) were printed on recycled paper.

☑ **(FEDERAL)**   I declare that I am employed in the office of a member of the bar of this court or who has been admitted *pro hac vice* at whose direction the service was made.

Executed on August 16, 2005, at Irvine, California.

_____

Arlene R. Thompson

## SERVICE LIST

By U.S. Mail:
Jeffrey G. Randall
David W. Hansen
Michael C. Hendershot
Donna Hill
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, CA 94301

Telephone: (650) 470-4500
Facsimile: (650) 470-4570

By U.S. Mail:
Thomas J. Allingham II
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899

Telephone: (302) 651-3000
Facsimile: (302) 651-3001

By Email:
jrandall@skadden.com
dhansen@skadden.com
mhenders@skadden.com
dhill@skadden.com

By Email:
talling@skadden.com

2

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

MCKESSON INFORMATION SOLUTIONS )
LLC,                                              )
                                                      )
               Plaintiff,                        )
                                                      )
     v.                                             )          C.A. No. 04-1258 (SLR)
                                                      )
THE TRIZETTO GROUP, INC.,          )
                                                      )
               Defendant.                      )

## NOTICE OF SERVICE

The undersigned hereby certifies that copies of The TriZetto Group, Inc.'s Responses to Plaintiff's Second Set of Interrogatories were caused to be served on August 16, 2005 upon the following in the manner indicated:

### BY EMAIL AND U.S. MAIL

Thomas J. Allingham, II
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899

Jeffrey G. Randall
Skadden, Arps, Slate, Meagher & Flom LLP
525 University Avenue
Suite 1100
Palo Alto, CA 94301]

MORRIS, NICHOLS, ARSHT & TUNNELL

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)
Rodger D. Smith, II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
  Attorneys for Defendant
  The TriZetto Group, Inc.

OF COUNSEL:

Jeffrey T. Thomas
David A. Segal
Michael A. Sitzman
GIBSON, DUNN & CRUTCHER LLP
Jamboree Center
4 Park Plaza
Irvine, CA  92614-8557
(949) 451-3800

August 17, 2005

# EXHIBIT 5

Page 1

```
1              IN THE UNITED STATES DISTRICT COURT
2              IN AND FOR THE DISTRICT OF DELAWARE
3                       - - -
4  McKESSON INFORMATION SOLUTIONS  :  CIVIL ACTION
   LLC,
5              Plaintiff           :
6        vs.                       :
7  THE TRIZETTO GROUP, INC.,       :
8              Defendant           :  NO. 04-01258 (SLR)
9                       - - -
10                      Wilmington, Delaware
                        Thursday, February 16, 2006
11                      3:30 o'clock, p.m.
12                      - - -
13 BEFORE:  HONORABLE SUE L. ROBINSON, Chief Judge
14                      - - -
15 APPEARANCES:
16    SKADDEN, ARPS, SLATE, MEAGHER & FLOM
      BY:  MICHAEL A. BARLOW, ESQ.
17              -and-
18
      SKADDEN, ARPS, SLATE, MEAGHER & FLOM
19    BY:  JEFF RANDALL, ESQ. and
           MICHAEL HENDERSHOT, ESQ.
20         (Palo Alto, California)
21         Counsel for Plaintiff
22
23
24                      Valerie J. Gunning
                        Official Court Reporter
25
```

Page 2

```
1  APPEARANCES (continued):
2     MORRIS, NICHOLS, ARSHT & TUNNELL
      BY:  JACK B. BLUMENFELD, ESQ.
3              -and-
4     GIBSON, DUNN & CRUTCHER LLP
      BY:  JEFFREY THOMAS, ESQ. and
5          DAVID SEGAL, ESQ.
6          (Irvine, California)
7              -and-
      GIBSON, DUNN & CRUTCHER LLP
8     BY:  MICHAEL SITZMAN, ESQ.
9          (San Francisco, California)
10         Counsel for Defendant
11              - - -
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
1                   PROCEEDINGS
2
3         (Proceedings commenced in the courtroom,
4  beginning at 3:30 p.m.)
5
6         THE COURT: I know I gave you all three hours,
7  but, quite frankly, in the scheme of patents, I can't imagine
8  you need three hours to present your argument. So I hope
9  you're a little more economical in your spoken word than you
10 have been otherwise. But let's get started. I guess
11 plaintiff should go first.
12        MR. RANDALL: Thank you, your Honor. Jeff
13 Randall for plaintiff, McKesson.
14        I'm going to address two main issues and then
15 leave the remaining issues for my colleague, Mr. Hendershot,
16 to address.
17        The two issues I will address are our motion for
18 summary judgment of infringement and a number of the claim
19 construction issues, and I will do my best to consolidate
20 those claim construction issues into certain categories so we
21 can move through this quickly. I will also do my best not to
22 repeat what we've stated in our briefs because I think we've
23 adequately addressed it in our briefs.
24        THE COURT: I think so. It was a little shocking
25 to me when I've got one patent with a limited, very limited
```

Page 4

```
1  number of claims, to a have 51-page claim construction chart,
2  most of which is just repetitive and none of, very little of
3  it refers me to the patent or anything else. It's just the
4  language.
5         So, in any event, your consideration would be
6  appreciated.
7         MR. RANDALL: All right. With respect to the
8  infringement issue, your Honor, let me give you just some
9  background to put this in perspective.
10        HPR is a company that was the predecessor to
11 McKesson and it attained the rights to this patent, so HPR
12 filed its patent application January of '91. It was a
13 pioneer patent covering expert computer systems for
14 processing medical claims. Never before had there been such
15 an expert computer system that processed medical claims and,
16 in fact, when they commercialized their invention, HPR, it
17 was received with great success in the marketplace. And so
18 as they moved forward and commercialized their invention, the
19 sales simply took off on their product and another competing
20 company, called GMIS, also came out with a very, very similar
21 product.
22        The patent ultimately issued in October of '93.
23 When the patent, shortly after the patent issued, the press
24 got ahold of this fact and issued a story about the breadth
25 and coverage of this expert computer system. Immediately,
```

Hearing                    CondenseIt™                    Thursday, February 16, 2006

**Page 33**

1  corresponding structure for the function. Under this second
2  step, structure disclosed in the specification is
3  corresponding structure only if the specification or
4  prosecution history clearly links or associates that
5  structure to the function recited in the claim, each
6  individual function.
7       Next, please.
8       If the specification is not clear as to the
9  structure that the patentee intends to correspond to the
10  claimed function, then the patentee has not paid that price,
11  but is rather attempting to claim in functional terms
12  unbounded by any reference to structure in the
13  specification. Such is impermissible under the statute.
14      That's exactly what's going on here. Mr. Randall
15  is right, there's no dispute that this is software.
16  Everybody knows we're talking about software. So how does
17  saying any software create any boundaries at all? It is
18  unbounded structure in this context.
19      And next, please.
20      MIDCO said the public should not be required to
21  guess as to the structure for which the patentee enjoys the
22  right to exclude. The public instead is entitled to know
23  precisely what kind of structure the patentee has selected
24  for the claimed functions, when claims are written according
25  to Section 112, Paragraph 6.

**Page 34**

1       Where is the language upon which they are relying
2  that they have used for their infringement analysis and their
3  claim construction that actually points to specific software
4  in the specification that actually performs these very
5  particular specialized functions relating to medical service
6  codes?
7       As I said, it may be there. We have the kitchen
8  sink thrown by McKesson into their claim construction charts,
9  says look at all this very specific information, including
10  source code and flow charts that actually do talk about the
11  algorithm they claim to have discovered or invented, but then
12  they ignore it entirely for any purpose whatsoever.
13      Say it's in there, see it? Now it's gone, it's
14  not part of claim construction and we don't have to compare
15  any of that specific structure to the accused products.
16      And in the Metrologic case, which
17  I mentioned a few minutes ago, again, it was not a
18  software case. The software was not the point of novelty
19  and the Court made a point of saying it was a District Court
20  case. The Court made a point of saying that the wms gaming
21  holding we saw a few minutes ago didn't apply because
22  the software was not the point of novelty. But where
23  the software is the point of novelty, software that
24  performs the functions described in the claims is the
25  point of novelty, then we must have some structure other

**Page 35**

1  than simply any software.
2       There is a very big picture concept here that
3  McKesson's approach is violated.
4       Can I have Graphic 9?
5       This is the Pennwalt case, your Honor. And the
6  Court said, Section 112, Paragraph 6 rules out the
7  possibility that any and every means which performs the
8  functions specified in the claim literally satisfies the
9  limitation. Rules it out.
10      Now, here we're talking about software.
11  Undisputed, it's got to be software. But they are saying any
12  and every software that performs the functions in these
13  claims is covered and any software that performs those
14  functions infringes. That approach is ruled out by
15  Pennwalt.
16      No. 10, please.
17      Pennwalt went on to say the following. Let me
18  just draw your attention to the second sentence. And what
19  the Court says, in essence, Pennwalt, the party in that
20  case, erroneously argues that if an accused structure
21  performs the function required by the claim, is per se
22  structurally equivalent. That view entirely eliminates the
23  Section 112, Paragraph 6 restriction and has been rejected in
24  the above-cited precedent in this Court.
25      That is exactly what McKesson is saying.

**Page 36**

1  McKesson is saying any software that performs the functions
2  stated in the claims infringes and therefore we should not
3  put any structure into the claim construction and they don't
4  have to compare the structure that is in the specification to
5  the structure of the TriZetto programs.
6       There is a quid pro quo involved in 112(6). It's
7  the basic law of 112(6). The Court has said, if you choose
8  to write your claims in means-plus-function language, you
9  cannot capture every structure, every device that performs
10  those functions. Instead, you must be limited to the
11  structure that is actually described in the specification and
12  where you're talking about software, that obviously can't be
13  any software.
14      Now, let me give you one example of a piece of
15  structure that should be important but is being ignored.
16      You heard Mr. Randall say a few minutes ago that
17  the rules that are laid out in the specification are the
18  invention. And, in fact, they said at Page 30 of their claim
19  construction brief that Appendix B to the patent, which
20  contains these rules, are quote "The heart of the
21  invention." And during the prosecution of this patent, they
22  said the same thing.
23      Graphic 22, please.
24      This is from the prosecution in response to a
25  rejection by the examiner. The present invention uses and

McKesson v. TriZetto

## Page 37

1  claims a set of rules that describe the relationship between
2  medical service codes, which correspond to particular medical
3  services or procedures, to determine whether or not there are
4  improper medical service codes in a particular claim.
5      So McKesson has said in its briefs that these
6  rules are the heart of the invention. They took that
7  position during the prosecution.
8      Graphic 69, please.
9      This is the testimony from the inventor: Do each
10 of the 16 claims -- these are actually the claims in the
11 patent here -- include one or more of the meta rules found in
12 Appendix B?
13     Yes.
14     You believe that it was those meta rules and the
15 sequence of those meta rules that was the novel invention?
16     Yes.
17     So at the very least, Appendix B is structure
18 that corresponds to the functions. I very much doubt
19 McKesson is going to say there was commercially available or
20 well-known software at the time they applied for the patents
21 that included these rules. Obviously, we have an invalid
22 patent if that was the case, yet Appendix B becomes
23 irrelevant for either claim construction or infringement.
24     They are taking the position that they need not
25 show that the rules in Appendix B are equivalent to the

## Page 38

1  structure of the TriZetto programs. Knowing about this
2  testimony, knowing about the position that they took during
3  the prosecution, one would think that if they could show
4  that, that those rules in Appendix B were equivalent, they
5  would have come forward with that analysis and that evidence,
6  but they have not.
7      Now, there are some passing references in their
8  brief to us claiming that this argument is based on source
9  code, that, you know, the patent is limited to source code
10 and the source code must be the structure. That's not our
11 position at all. We are not saying that this patent is
12 limited to the specific source code that's attached as
13 Appendix D. What we're saying is that something that
14 performs these functions, some flow charts, Appendix B,
15 something that -- some structure that actually does perform
16 these functions is claim limiting and should be used for
17 purposes of infringement.
18     They say use nothing. Any software counts.
19     There is an interesting piece of evidence on
20 Appendix D, though.
21     Could I have Graphic 71?
22     Mr. Randall made reference to the GMIS litigation
23 that occurred a number of years ago. They didn't win. They
24 settled before trial. Anyway, in that case, an interrogatory
25 was asked by the defendant, Set forth all structure, material

## Page 39

1  and acts described in the specification of the '164 patent
2  which corresponds, the magic language under 112(6),
3  corresponds to the means for operating on a predetermined
4  database.
5      This is the means-plus-function element in the
6  method claims, which, as we saw earlier, they admitted in
7  their own briefing is subject to 112(6).
8      The HPR back then didn't play the game that's now
9  being played by McKesson. They came forward and identified
10 the structure. They said the means for operating on a
11 predetermined database refers to a computer system and those
12 portions of the code review program which are not the
13 database. See Column 3, lines 17 through 35, and Appendix
14 D. Appendix D is the source code. It's structure. There's
15 no doubt about it. It describes how to perform the functions
16 in the claims.
17     Now, again, perhaps we don't need to get down to
18 that level of granularity to find structure. Maybe something
19 else in the specification would suffice, but it does not
20 matter because McKesson has not come forward with anything.
21     The -- McKesson has said -- could I grave have
22 Graphic 29?
23     On this point of what else might suffice, this is
24 from McKesson's opposition brief on noninfringement here in
25 this case, and we all know that it's the algorithm that has

## Page 40

1  to be found in the specification. And they say, An algorithm
2  is a logical representation of a process that may be
3  implemented in various software embodiments.
4      Hard to imagine that's the same as any
5  commercially available database access software, which is
6  McKesson's position here.
7      But then they cite this case, and the case says,
8  The algorithm of a computer program may involve the use of a
9  flow chart wherein the logic of the program is depicted
10 graphically to show the various processing steps and flow of
11 data.
12     It's true. Flow chart is one way that
13 specification -- that a specification can disclose the
14 structure for an algorithm, and there are flow charts in
15 this specification. But, again, McKesson won't use them.
16 McKesson won't have their experts compare the structure of
17 those flow charts with the TriZetto programs and they will
18 not acknowledge that those flow charts should be used for
19 claim construction purposes as 112(6) requires. Obviously,
20 on 112(6), once you identify the structure, it's limiting on
21 the claims.
22     So the law in the software context is
23 overwhelming, that the structure is an algorithm that
24 actually performs the claimed functions. And your Honor's
25 order that Mr. Randall cited is in no way inconsistent with

# Exhibit 6:

# Redacted in its Entirety

# Exhibit 7:

# Redacted in its Entirety

# EXHIBIT 8

Page 769

```
 1           - VOLUME J -
 2        IN THE UNITED STATES DISTRICT COURT
 3        IN AND FOR THE DISTRICT OF DELAWARE
 4
 5   McKESSON INFORMATION SOLUTIONS  :    CIVIL ACTION
     LLC,
 6             Plaintiff           :
 7        vs.                      :
 8   THE TRIZETTO GROUP, INC.,     :
 9             Defendant           :    NO. 04-01258 (SLR)
10                              - - -
11                    Wilmington, Delaware
12                    Thursday, April 20, 2006
                      10:27 o'clock, a.m.
13                              - - -
14   BEFORE:  HONORABLE SUE L. ROBINSON, Chief Judge, and a jury
15
16   APPEARANCES:
17        SKADDEN, ARPS, SLATE, MEAGHER & FLOM
          BY:  MICHAEL BARLOW, ESQ.
18
                       -and-
19        SKADDEN, ARPS, SLATE, MEAGHER & FLOM
          BY:  JEFF RANDALL, ESQ.,
20             BERNARD SHEK, ESQ. and
               MICHAEL HENDERSHOT, ESQ.
21             (Palo Alto, California)
22             Counsel for Plaintiff
23                       Valerie J. Gunning and
24                       Leonard A. Dibbs,
                         Official Court Reporters
25
```

Page 770

```
 1   APPEARANCES (Continued):
 2
 3        MORRIS, NICHOLS, ARSHT & TUNNELL
          BY:  JACK B. BLUMENFELD, ESQ.
 4
 5                       -and-
 6        GIBSON, DUNN & CRUTCHER LLP
          BY:  JEFFREY THOMAS, ESQ. and
 7             DAVID SEGAL, ESQ. and
               T. KEVIN ROOSEVELT, ESQ.
 8             (Irvine, California)
 9
10                       -and-
11        GIBSON, DUNN & CRUTCHER LLP
          BY:  MICHAEL SITZMAN, ESQ.
12             (San Francisco, California)
13             Counsel for Defendant
14                       - - -
15
16
17
18
19
20
21
22
23
24
25
```

Page 771

```
 1                    P R O C E E D I N G S
 2
 3
 4        (Proceedings convened at 10:27 a.m., and the
 5   following occurred without the presence of the jury.)
 6
 7        THE COURT:  All right.  Do we have issues
 8   with the first presentation of evidence?  Not with the
 9   entire case, just with what's happening first thing.
10        MR. RANDALL:  We do, your Honor.
11        With respect to the demonstratives that Mr.
12   Davis intends to testify about, we have objections as to
13   most of the demonstratives.  I have a copy set of them
14   right here, if I could hand them up?
15        THE COURT:  All right.
16        (Mr. Randall handed documents to the Court.)
17        MR. RANDALL:  The first, not necessarily in
18   order, but I just want to cover one right away.  At 4-8,
19   they're numbered at the bottom right-hand corner,
20   there's a demonstrative with up in the upper left-hand
21   corner, it references Dr. Johnson's expert report.  I
22   don't think that's appropriate.  She didn't testify.
23        THE COURT:  I agree, and reports aren't
24   part of the case, ever, so that should not be shown.
25        MR. RANDALL:  With respect to the second
```

Page 772

```
 1   slide, 4-2, and on forward through 4-6, what Mr.
 2   Davis is attempting to testify about is that the step
 3   of ascertaining whether at least one claim contains a
 4   plurality of medical service codes is limited to the
 5   structure in the Figure 2.  That's what all of those
 6   slides are about.  They are going to present to the
 7   jury their theory that the reasonable interpretation
 8   of that term is that it's limited to the structure and
 9   that's simply contrary to what your Honor ruled at
10   Markman.  That's what they advanced with respect to
11   the Markman hearing and they didn't receive that
12   construction properly.  And they are going to advance
13   it in front of the jury.
14        It's simply error to permit them to present
15   an argument that is directly contrary to your Honor's
16   ruling, and there's no other purpose for that for all
17   of those figures.
18        With respect to 4-10 -- I'm sorry, 4-9,
19   no objections.
20        4-10, Dr. Davis did not opine on anything
21   regarding predetermined database that is relevant to
22   your Honor's construction.  His construction of
23   predetermined database was that it required user -- it
24   precluded user modification, and so there are a series
25   of slides that he's going to testify about regarding
```

Page 893

1  Q. Well, how does it work?
2  A. At least one of the important differences here is
3  that within, as we've heard before, within the clinical
4  editing capabilities, the system authorizes and rejects
5  medical service codes. It does not authorize and
6  reject claims.
7  Q. And that's true, you even consider the possibility
8  that Dr. Musen is just adding steps to Claim 16?
9  A. You can add as many steps as you want to Claim 16.
10 Claim 16 is not carried out. The steps actually
11 specified in Claim 16 are not carried out by the
12 TriZetto clinical editing software.
13 Q. And so do you have an opinion as to whether
14 TriZetto or its customers directly infringe the steps
15 of Claim 16?
16 A. Yes.
17 Q. And what is that opinion?
18 A. They do not infringe.
19 Q. And that's for all three products?
20 A. For all three products.
21      MR. SEGAL: Thank you. I have nothing further.
22      THE COURT: All right. Cross-examination.
23      MR. RANDALL: Your Honor, could we take a
24 short break, just for ten minutes?
25      THE COURT: All right.

Page 894

1      MR. RANDALL: Thank you.
2      THE COURT: We'll take a short break.
3      (At this point the jury was excused for a
4  short recess.)
5      (Short recess taken.)
6          - - -
7      (Court resumed after the recess, and the
8  following occurred without the presence of the jury.)
9
10      THE COURT: All right. Let's bring the jury
11 in.
12      (Pause.)
13      THE COURT: The jury is in the middle of
14 writing a question, so they asked for a minute, which I
15 think we ought to give them, in all fairness.
16      MR. RANDALL: Give them two.
17      (Pause.)
18      THE COURT: I'm just trying to make sure I
19 can read this.
20      All right. Some of these questions anticipate
21 claim construction, although, to some extent, they've had
22 this information, but let me read it to you for purposes
23 of the record.
24      It says, Please define mutually exclusive.
25 It is not defined within the specification of the patent,

Page 895

1  nor the claims. That's a question. It is not defined
2  within the specification of the patent or the claims?
3      Is a database -- this is a second question.
4  Is a database containing a list of CPT codes considered
5  the predetermined database?
6      They are going to be disappointed when they
7  have to figure this out for themselves. Is a program
8  performing a function before a patent file date and
9  issue date considered to be infringing even though they
10 perform the same function?
11      Please define the predetermined database.
12      MR. THOMAS: We already have an instruction
13 on predetermined database.
14      THE COURT: Right. So as I said, in the
15 times that I've allowed jury questions, it's up to the
16 lawyers to see if they can answer the jury's question
17 through their examination of their witnesses. Many
18 times, that's not really possible because it's the
19 question they ultimately have to decide for themselves
20 or it has already been asked and answered through the
21 course and there's nothing more you can really do.
22      What I can do, if you are interested, is
23 have this copied and give it to you for your
24 consideration, but not before we bring the jury in at
25 this point.

Page 896

1      MR. RANDALL: That's fine, your Honor. I
2  would ask, however, though, on number three, at a
3  minimum, that we get an instruction on that. I've
4  objected throughout this case to the introduction of the
5  evidence that they presented and I also asked to put on
6  opposing evidence that would have demonstrated
7  conclusively that the patent was filed before they
8  started their development and, in fact, didn't do it
9  from scratch. So I would like an instruction on that
10 issue.
11      THE COURT: Well, I think if the question --
12 the question again, is the program performing a function
13 before a patent file date and issue date considered to
14 be infringing even though they perform the same function.
15 I think the answer is yes, you can infringe, because
16 that's -- you can infringe. I think the answer is yes.
17      MR. THOMAS: Your Honor, this actually, I
18 don't know whether this is the right time to do it, but
19 I don't disagree with what you just said, but there's a
20 very important issue here, maybe relates to this
21 question, but it also relates to a relevance objection
22 that was sustained when Professor Davis was testifying
23 about how the ClaimFacts system checked to see if a
24 code was a real code before it had ClinicalLogic. And
25 your Honor basically sustained the objection and I