IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MCKESSON INFORMATION SOLUTIONS LLC, )
                                     )
                Plaintiff,           )
                                       )
                v.                     )   Civil Action No. 04-1258-SLR
                                        )
THE TRIZETTO GROUP, INC.,           )   **REDACTED PUBLIC VERSION**
                                        )
                Defendant.       )
_____ )

### PLAINTIFF MCKESSON INFORMATION SOLUTION LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT RE: ANTICIPATION AND OBVIOUSNESS

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff
McKesson Information Solutions LLC

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500

DATED: June 1, 2006
REDACTED PUBLIC VERSION FILED: June 8, 2006

## TABLE OF CONTENTS

**Page**

I.    Nature and Stage of Proceedings ............................................................. 1

II.   Summary of Argument.............................................................................. 1

III.  Summary of Relevant Facts...................................................................... 3

IV.   Standard for Granting Summary Judgment ............................................... 5

V.    Summary Judgment of No Anticipation Is Proper Because TriZetto
      Has Insufficient Evidence To Prove that Claims 1 and 2 Are
      Anticipated ............................................................................................... 6

VI.   TriZetto Has Not Established A Prima Facie Case Of Obviousness......... 8

      A.    TriZetto's Experts, Drs. Davis And Hawley, Did Not Analyze
            Whether Every Element Of Claims 1 Or 2 Was Present In The
            Prior Art Or Identify What Prior Art They Contend Is Invalidating ........ 9

            1.    Dr. Davis did not conduct an element-by-element
                  comparison of claims 1 or 2 to *any* combination of prior art........ 9

            2.    Dr. Hawley's opinions are not based on prior art or directed
                  to the '164 claims and cannot support a finding of
                  obviousness ............................................................................... 11

      B.    TriZetto's Experts Did Not Perform Any Means-Plus-Function
            Analysis.............................................................................................. 13

      C.    TriZetto's Evidence Is Insufficient To Prove That The
            "Determining" Step Of Claim 2 Is Found In The Prior Art.................... 14

      D.    TriZetto Cannot Establish A Prima Facie Case Of Obviousness
            Because It Lacks Sufficient Evidence Of A Motivation To
            Combine The Prior Art In The Manner Claimed.................................... 17

            1.    None of TriZetto's experts provided a basis for combining
                  the prior art they cite in the manner described in the '164
                  claims ........................................................................................ 18

            2.    None of TriZetto's experts have established that one skilled
                  in the art would have perceived a reasonable likelihood of
                  success in combining the references they cite ........................... 21

E.     TriZetto Cannot Overcome The Undisputed Objective Evidence Of Non-Obviousness That Its Experts Did Not Address ............................ 22

VII.  TRIZETTO CANNOT ESTABLISH A PRIMA FACIE CASE OF OBVIOUSNESS BASED ON PRIOR ART NEVER ADDRESSED IN ITS EXPERTS' REPORTS .............. 23

VIII. TRIZETTO CANNOT PROVE INVALIDITY BASED ON ALLEGED PRIOR USES THAT WERE NOT DISCLOSED DURING DISCOVERY AND THAT LACK NECESSARY CORROBORATION ............................................................................ 24

A.     TriZetto Cannot Assert Invalidity Based On AMS Because TriZetto Never Disclosed Its Reliance On AMS As Prior Art During Discovery ................................................................................. 24

B.     None Of TriZetto's Alleged Prior Uses Are Sufficiently Corroborated To Establish A Prima Facie Case Of Obviousness ........... 27

IX.   CONCLUSION ............................................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Al-Site Corp. v. VSI Int'l, Inc.,*
174 F.3d 1308 (Fed. Cir. 1999) ........................................................................... 23

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ........................................................................................... 5

*Ashland Oil v. Delta Resins & Refractories,*
776 F.2d 281 (Fed. Cir. 1985) ............................................................................. 8

*Boston Scientific Scimed, Inc. v. Cordis Corp.,*
392 F. Supp. 2d 676 (D. Del. 2005) ..................................................................... 6

*Ecolochem, Inc. v. Southern Cal. Edison Co.,*
227 F.3d 1361 (Fed. Cir. 2000) ......................................................................... 18

*Eli Lilly and Co. v. Barr Labs., Inc.,*
251 F.3d 955 (Fed. Cir. 2001) ............................................................................. 6

*Elmer v. ICC Fabricating, Inc.,*
67 F.3d 1571 (Fed. Cir. 1995) ........................................................................... 13

*Finch v. Hercules, Inc.,*
1995 WL 785100 (D. Del. 1995) ....................................................................... 26

*Finnigan Corp. v. U.S. Int'l Trade Comm'n,*
180 F.3d 1354 (Fed. Cir. 1999) ................................................................... 27, 29

*Gambro Lundia AB v. Baxter Healthcare Corp.,*
110 F.3d 1573 (Fed. Cir. 1997) ................................................................... 18, 22

*Genzyme Corp. v. Atrium Med. Corp.,*
315 F. Supp. 2d 552 (D. Del. 2004) ................................................................... 22

*IMX, Inc. v. LendingTree, LLC,*
405 F. Supp. 2d 479 (D. Del. 2005) ............................................................... 8, 21

*In re Dembiczak,*
175 F.3d 994 (Fed. Cir. 1999) ......................................................... 17, 18, 20, 21

*In re Donaldson Co.,*
16 F.3d 1189 (Fed. Cir. 1994) ........................................................................... 13

*In re Kotzab,*
217 F.3d 1365 (Fed. Cir. 2000) ......................................................................... 18

*In re Rouffet,*
  149 F.3d 1350 (Fed. Cir. 1998)............................................................................ 18, 22

*Intel Corp. v. Broadcom Corp.,*
  2003 U.S. Dist. LEXIS 2372 (D. Del. February 13, 2003)............................................ 27

*Juicy Whip v. Orange Bang,*
  292 F.3d 728 (Fed. Cir. 2002).................................................................................... 27

*Kahn v. General Motors Corp.,*
  135 F.3d 1472 (Fed. Cir. 1998).............................................................................. 8, 13

*Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc.,*
  322 F.3d 1335 (Fed. Cir. 2003).................................................................................... 29

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
  475 U.S. 574 (1986)........................................................................................................ 5

*Moore N. Am., Inc. v. Poser Bus. Forms, Inc.,*
  2001 U.S. Dist. LEXIS 9054, No. Civ.A. 97-712-SLR,
  2001 WL 253117 (D. Del. Mar. 8, 2001 ......................................................................... 9

*Neutrino Dev. Corp. v. Sonosite, Inc.,*
  410 F. Supp. 2d 529 (D. Tex. 2006) ............................................................................. 23

*Oxford Gene Tech. Ltd. v. Mergen Ltd.,*
  345 F. Supp. 2d 431 (D. Del. 2004)................................................................... 9, 11, 12

*PPG Indus., Inc. v. Guardian Indus. Corp.,*
  75 F.3d 1558 (Fed. Cir. 1996)........................................................................................ 6

*Praxair, Inc. v. ATMI, Inc.,*
  231 F.R.D. 457 (D. Del. 2005) ............................................................................. 25, 26

*Praxair, Inc. v. ATMI, Inc.,*
  Case No. 03-1158-SLR, 2005 WL 3159054 (D. Del. November 28, 2005) ............... 26

*Princeton Biochemical's, Inc. v. Beckman Coulter, Inc.,*
  411 F.3d 1332 (Fed. Cir. 2005)................................................................................... 24

*Schumer v. Laboratory Computer Systems, Inc.,*
  308 F.3d 1304 (Fed. Cir. 2002)................................................................................. 6, 8

*Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.,*
  183 F.3d 1347 (Fed. Cir. 1999)............................................................. 8, 12, 17, 21

*Stambler v. RSA Security, Inc.,*
  243 F. Supp. 2d 70 (D. Del. 2003).............................................................................. 12

*Stratoflex, Inc. v. Aeroquip Corp.,*
713 F.2d 1530 (Fed. Cir. 1983)................................................................. 23

*Teleflex v. KSR Intern. Co.,*
119 Fed. Appx. 282 (Fed. Cir. 2005)........................................................ 18

*Texas Digital Sys. v. Telegenix, Inc.,*
308 F.3d 1193 (Fed. Cir. 2002)................................................................. 27

*The Barbed Wire Patent,*
143 U.S. 275 (1891)................................................................................... 27

*Typeright Keyboard Corp. v. Microsoft Corp.,*
374 F.3d 1151 (Fed. Cir. 2004)................................................................. 27

*Union Carbide Chems. and Plastics Tech. Corp. v. Shell Oil Co.,*
308 F.3d 1167 (Fed. Cir. 2002)................................................................. 28

*Union Carbide Corp. v. American Can Co.,*
724 F.2d 1567 (Fed. Cir. 1984)................................................................. 24

*Upjohn Co. v. Mova Pharm. Corp.,*
225 F.3d 1306 (Fed. Cir. 2000)................................................................. 12

*Verve, L.L.C. v. Crane Cams, Inc.,*
395 F. Supp. 2d 558 (E.D. Mich. 2005)........................................ 17, 19, 20

## STATUTES

35 U.S.C. § 282................................................................................................ 6

FED. R. CIV. P. 56(c) ......................................................................................... 5

FED. R. CIV. P. 56(e) ......................................................................................... 5

## REGULATIONS

MPEP § 2182................................................................................................. 13

Plaintiff McKesson Information Solutions LLC ("McKesson") respectfully submits its opening brief in support of its motion for summary judgment on defendant The TriZetto Group, Inc.'s ("TriZetto") defense and counterclaim of invalidity based on anticipation and/or obviousness.

## I.    NATURE AND STAGE OF PROCEEDINGS.

On September 13, 2004, McKesson filed this lawsuit against TriZetto for willfully infringing McKesson's U.S. Patent No. 5,253,164 ("the '164 patent"). (D.I. 1.) McKesson filed a First Amended Complaint on October 1, 2004. (D.I. 7.) On November 1, 2004, TriZetto filed an Answer and Counterclaim asserting, *inter alia*, that the claims of the '164 patent were invalid under 35 U.S.C. §§ 102 and/or 103. (D.I. 10.) Fact discovery on all issues closed on September 16, 2005, and expert discovery on all issues was completed by November 30, 2005. (D.I. 28 and 58.)

Trial on McKesson's infringement claim commenced on April 17, 2006. On April 26, 2006, TriZetto was found to be directly infringing and inducing the infringement of claims 1 and 2 of the '164 patent. (D.I. 358.) Trial on all remaining issues is scheduled to commence on October 3, 2006. (D.I. 362.)

## II.    SUMMARY OF ARGUMENT.

███████████████████████████████████████████ TriZetto has no evidence, much less the necessary clear and convincing proof, regarding a host of essential elements of its prior art defenses. As a result, the Court should enter summary judgment on McKesson's behalf that claims 1 and 2 are neither anticipated nor obvious.

1.    TriZetto cannot prove that any claim of the '164 patent is anticipated under 35 U.S.C. § 102. None of TriZetto's experts have opined that a single prior art reference anticipates any claim of the '164 patent. As a result, TriZetto can offer no evidence at trial that one skilled in the art would have understood every element of claim 1 or 2 to be disclosed in a single piece of prior art and been enabled by that disclosure to

practice the claimed methods.  Such evidence is fundamental to an anticipation defense and is absent here.

2.    TriZetto also cannot prove a number of elements necessary to support its obviousness defense:

(a)    TriZetto's experts, Drs. Davis and Hawley, admittedly failed to undertake the most fundamental steps of a competent obviousness analysis.  Neither Dr. Davis nor Dr. Hawley engaged in the required element-by-element comparison of the claims to the prior art or even identified what prior art they were relying upon to support their opinions.

(b)    TriZetto's experts did not conduct any means-plus-function analysis of the "means for operating on a predetermined database" element of claims 1 and 2 in their reports.  Indeed, none of the reports even mention the term "means-plus-function," let alone set forth the functional and structural analysis necessary to establish the presence of such an element in the prior art.

(c)    TriZetto also cannot show that the "determining" element of claim 2 was present in the prior art.  In fact, TriZetto and its experts contended they could not interpret the "mutually exclusive due to non-medical criteria" portion of this element. The Court rejected this indefiniteness argument and confirmed that this claim language carries its ordinary meaning.  Because none of TriZetto's experts construed this claim element or engaged in a proper analysis of whether it was present in the prior art, TriZetto cannot demonstrate that every element of claim 2 would have been obvious.

(d)    In addition to omitting entire claim elements from their analysis, TriZetto's experts failed to address the factors necessary to establish a motivation to combine the prior art they cite.  None of TriZetto's expert reports analyzed whether one skilled in the art would have been motivated to combine elements from the prior art they cite in the manner claimed in the '164 patent.  Instead, they either ignored the motivation requirement altogether or offered conclusory statements divorced from any particular

2

prior art combination or claim element. Moreover, none of TriZetto's experts addressed whether one skilled in the art would have perceived a reasonable likelihood of success in combining the elements of the references they cite – a showing the Federal Circuit and this Court have held is necessary to establish obviousness. As a result, TriZetto cannot prove essential elements of a prima facie obviousness case.

(e)    Although secondary considerations of non-obviousness must be considered in assessing whether a patent claim is obvious, TriZetto's experts admittedly did not address these considerations in their reports. Thus, TriZetto cannot rebut McKesson's experts' opinions regarding secondary considerations, which demonstrate that the '164 claims are non-obvious.

5.    Finally, McKesson is entitled to summary judgment with respect to a number of the bases for TriZetto's prior art defenses on additional grounds. TriZetto cannot prove the infringed claims are invalid based on: prior art that was not analyzed or addressed by its experts (the majority of TriZetto's prior art); an alleged prior use identified for the first time after the close of fact discovery (the AMS system); or alleged prior uses for which insufficient evidence or corroboration was provided during discovery (all of TriZetto's alleged prior uses).

## III.    SUMMARY OF RELEVANT FACTS.

In support of its defense and counterclaim of invalidity, TriZetto asserted that the '164 patent is invalid as anticipated and/or obvious under 35 U.S.C. § 102 and § 103. (D.I. 10.)    Just prior to the close of fact discovery, TriZetto supplemented its interrogatory response and asserted that numerous articles and uses anticipate and/or render the '164 patent obvious. (Ex. 1 at 39-65.)[1] None of the prior uses disclosed for the first time in this interrogatory response had ever been asserted by TriZetto. During

---

[1]    Citations to "Ex. __" are citations to the "Declaration of Michael A. Barlow in Support of Plaintiff McKesson Information Solutions LLC's Memorandum in Support of its Motion for Summary Judgment Re: Anticipation and Obviousness," filed concurrently with this brief.

expert discovery TriZetto retained three experts to opine on the validity of the '164 patent based on some of these references: Dr. Davis, Dr. Kerschberg, and Dr. Hawley. Each of these experts served expert reports on October 24, 2005. (D.I. 133.)

Dr. Davis's opinions on invalidity for claims 1 and 2 are based on the following prior art references listed in his report: Bennett patent, Egdahl, AMS Brochure, AMS rules, Doyle patent, Stachura84, Nathanson85, Dornfest84, Egdahl87, McDermott82, Bernier86, Anon85, and Huerta88. (Ex. 2 at 34.) Notably, Dr. Davis's opinions rely on the Advanced MedLogic System ("AMS")—an alleged prior use that TriZetto never asserted during fact discovery—and related documentation which was never produced by TriZetto during fact discovery.

Dr. Kerschberg's opinions relating to invalidity are based on a combination of the Egdhal/Hertenstein paper and the MedClaim system that he opines renders the '164 patent obvious. (Ex. 3 at 5.) Dr. Kerschberg is also relying on his own knowledge of the MedClaim system which is not corroborated by any contemporaneous documentation as discussed below.

Dr. Hawley did not rely on a combination of any prior art for his analysis. Rather, he relied upon what he personally recalled as the "general state of knowledge" at the time of the invention.

None of TriZetto's experts provided any opinions regarding five references contained in TriZetto's interrogatory response including: #96 (Lewis, J et al, *Development of a case mix information system*, Computers in Healthcare, February 1983, Vol. 4 (2), pp. 36-41); #127 (Wheeler, JT, *Hospital's six-point program clears up financial picture*, Health Progress, July-August 1988, Vol. 69 (6), pp. 78-81); #132 (Carter, K., *End of PIP will prompt hospitals to try software to speed billing*, Modern healthcare, February 13, 1987, Vol. 17 (4), pp. 62, 64, 68); #153 (David Leinweber, *Knowledge-Based systems for Financial Applications*, IEEE Expert, Fall 1988, pp. 18-31);

4

and #154 (Fagan, Lawrence Marvin, *VM: Representing Time-Dependent Relations in a Medical Setting,* Ph.D. Thesis Submitted at Stanford University (1980)).

In addition, none of TriZetto's experts provided any opinions regarding any of the prior public uses identified in discovery with the exception of Dr. Kerschberg's opinions regarding the MedClaim system. Further, with the exception of the MedClaim system, there is no contemporaneous documentary evidence describing the details of any prior public use asserted in TriZetto's interrogatory response, which includes the following uses: AccuCode (HCIA/Solucient); BCBS of NJ System developed in 1969; Clinical Data Editor (Health Systems International); Clinical Review System a/k/a Chart'N Coder (Ernst & Young); CODEFINDER/DRGFINDER or Clinical Claims Editor (Code 3 Health Information Systems/3M); Codemaster PLUS (Care Communications); Discorp Software (Novalis); ExCaim (Policy Management Systems Corporation); Interactive DRG Grouper (Radle Computer Systems); MedCheck (Lockheed Martin); Medical Policy (Advanced Systems Application and BCBS of NC); QGROUPER (Quality Data Systems); and Wilmer Information Systems.

## IV.    STANDARD FOR GRANTING SUMMARY JUDGMENT.

Summary judgment is proper if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n.10 (1986). If the moving party has shown an absence of material dispute, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting FED. R. CIV. P. 56(e)). The mere existence of some evidence supporting the nonmoving party will not defeat a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). Rather, there must exist "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* As this Court has held, "[i]f the nonmoving party fails to make a

sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law." *Boston Scientific Scimed, Inc. v. Cordis Corp.*, 392 F. Supp. 2d 676, 680 (D. Del. 2005). Further, the court must take into account the clear and convincing evidentiary standard of proof required for invalidity when evaluating a motion for summary judgment. *Eli Lilly and Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001).

## V.    SUMMARY JUDGMENT OF NO ANTICIPATION IS PROPER BECAUSE TRIZETTO HAS INSUFFICIENT EVIDENCE TO PROVE THAT CLAIMS 1 AND 2 ARE ANTICIPATED.

"A patent is presumed valid." 35 U.S.C. § 282. "To overcome this presumption of validity, the party challenging a patent must prove facts supporting a determination of invalidity by clear and convincing evidence." *Schumer v. Laboratory Computer Systems, Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002). "To anticipate a claim, a reference must disclose every element of the challenged claim and enable one skilled in the art to make the anticipating subject matter." *PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1566 (Fed. Cir. 1996). With regard to the sufficiency of evidence supporting anticipation, the Federal Circuit has explained:

> Evidence of invalidity must be clear as well as convincing. Typically, testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference. The testimony is insufficient if it is merely conclusory.

*Schumer*, 308 F.3d. at 1315-16.

In this case, TriZetto has asserted that ten prior art references anticipate the infringed claims 1 and 2 of the '164 patent.[2] TriZetto, however, lacks sufficient evidence

---

[2]    The asserted references are the 1988 Weitzel paper, the Egdahl/Hertenstein paper, the '983 patent, the '292 patent, the '067 patent, the '452 patent, the '641 patent, the Kuo paper, the McDermott paper, and the Leinweber paper. (Ex. 1 at 39-43.)

to prove that any of these references anticipates claim 1 or 2 because TriZetto's three experts regarding invalidity concede that the references do not anticipate.

In preparing his report, TriZetto's expert Dr. Davis considered all of the ten allegedly anticipating references identified by TriZetto. (Ex. 2 at C-1 – C-9.) At his deposition though, Dr. Davis made clear that he did not believe that any prior art reference or prior system anticipated any claim of the '164 patent:

> Q. ... Is it your opinion that any one reference or system anticipates all asserted claims of the '164 patent?
> A. As I understand the term "anticipates," the answer is no.
> Q. Is it your opinion that any one reference or system anticipates any claim of the '164 patent? (Witness reviews document.)
> A. Okay. So the question is, again, is there any one reference that anticipates any claim of the '164 patent? Do I have it right?
> Q. Reference or system, yes.
> A. No.

(Ex. 5 at 200:6-19; *See also id.* at 201:11-202:2 ("Q. So, sir, you do not intend to express an opinion and testify about today that any one system or one reference anticipates any claim in the '164 patent, correct? A. That's correct.").)

TriZetto's other expert, Dr. Kerschberg, addressed three of the allegedly anticipating references in his report—the 1988 Weitzel paper, the Egdahl/Hertenstein paper, and the Kuo paper. Dr. Kerschberg, however, rendered an opinion only as to obviousness, not anticipation. (Ex. 3 at 5 ("It is my opinion that the Egdahl/Hertenstein paper together with the MEDCLAIM system prototype render obvious the system and method of the '164 patent").)

TriZetto's third expert, Dr. Hawley, similarly testified that it was not his opinion that any prior art reference or prior system met every element of any claim of the '164 patent:

> Q ... If the law requires every element recited in an individual patent claim to be disclosed in a single piece of prior art for that claim to lack novelty, under Section 102, do you offer any opinion in your report under that standard that a claim of the '164 patent is not novel? ...
> THE WITNESS: No. I don't offer an opinion on that specific question.

7

(Ex. 6 at 146:9-147:11. *See also id.* at 121:17-122:2 ("I have not in my report affirmatively offered the opinion that every element of the '164 claims are contained in a prior piece of art. ... I'm not offering the opinion that the '164 claims were contained in a prior piece of art."); 86:19-87:2 & 133:4-7.)

Given that all of TriZetto's invalidity experts have conceded that the '164 patent's claims are not anticipated by any prior art reference or prior system, TriZetto cannot present sufficient evidence to prove that claims 1 and 2 are anticipated. *See Schumer*, 308 F.3d at 1315-16. Accordingly, summary judgment of no anticipation is warranted.

## VI.    TRIZETTO HAS NOT ESTABLISHED A PRIMA FACIE CASE OF OBVIOUSNESS.

As with anticipation, proof of obviousness requires clear and convincing evidence because "[a]n issued patent is presumed to be valid and, hence, nonobvious." *Kahn v. General Motors Corp.*, 135 F.3d 1472, 1480 (Fed. Cir. 1998). "The presumption of validity is a procedural device that mandates that the party asserting invalidity bears the initial burden of establishing a prima facie case of obviousness under 35 U.S.C. § 103." *Ashland Oil v. Delta Resins & Refractories*, 776 F.2d 281, 292 (Fed. Cir. 1985). "The determination under § 103 is whether the claimed invention as a whole would have been obvious to a person of ordinary skill in the art at the time the invention was made." *Kahn*, 135 F.3d at 1479. This determination "turns on four factual inquiries: (1) the scope and content of the prior art;  (2) the level of ordinary skill in the art;  (3) the differences between the claimed invention and the prior art;  and (4) any objective indicators of non-obviousness, more commonly termed secondary considerations." *IMX, Inc. v. LendingTree, LLC*, 405 F. Supp. 2d 479, 493 (D. Del. 2005). In addition, "there must be a 'reason, suggestion, or motivation in the prior art that would lead one of ordinary skill in the art to combine the references, and that would also suggest a reasonable likelihood of success.'" *Id.*, quoting *Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1356 (Fed. Cir. 1999).

In this case, TriZetto has not – and cannot – establish a prima facie case, by clear and convincing evidence, that the infringed claims 1 and 2 of the '164 patent are obvious because TriZetto's experts failed to perform the analyses and comparisons necessary to establish the essential elements of its defense:

(1)     TriZetto's experts, Drs. Davis and Hawley, admittedly did not undertake the most fundamental step of an obviousness analysis, as neither compared every element of claims 1 or 2 to the prior art or even identified what prior art they are relying upon for their opinions that those claims are obvious.

(2)     TriZetto's experts did not analyze whether any of the asserted prior art references or prior uses met the functional and structural limitations of the "means for operating" element of the infringed claims;

(3)     TriZetto's experts did not analyze whether the asserted prior art references or prior uses disclosed or practiced the "determining" limitation of claim 2;

(4)     TriZetto's experts did not analyze whether the prior art would have motivated one skilled in the art to combine or modify the references or uses in the manner claimed and would have suggested a reasonable likelihood of success; and

(5)     TriZetto's experts did not analyze whether there is objective evidence demonstrating the non-obviousness of the infringed claims.

Because each of these deficiencies renders TriZetto's experts' opinions inadmissible, TriZetto's obviousness evidence is insufficient as a matter of law.

**A.     TriZetto's Experts, Drs. Davis And Hawley, Did Not Analyze Whether Every Element Of Claims 1 Or 2 Was Present In The Prior Art Or Identify What Prior Art They Contend Is Invalidating.**

**1.     Dr. Davis did not conduct an element-by-element comparison of claims 1 or 2 to *any* combination of prior art.**

By Dr. Davis's own admission, his report omits the most fundamental step in any obviousness analysis—a comparison of the prior art to each element of the relevant claims. *See Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 436 (D. Del. 2004) ("The second step in evaluating the validity of a patent is to perform an element-by-element comparison of each claim to each prior reference.") (citing *Moore N. Am., Inc.*

9

*v. Poser Bus. Forms, Inc.*, 2001 U.S. Dist. LEXIS 9054, No. Civ.A. 97-712-SLR, 2001 WL 253117, at *3 (D. Del. Mar. 8, 2001 (attached as Ex. 11))). Dr. Davis does not identify in his report where each element of any claim is present in the prior art. At his deposition, Dr. Davis confirmed that his obviousness opinion is not based upon an element-by-element comparison of the asserted claims to the prior art he identified:

> Q.   ... Did you, sir, in rendering your opinions in this case attempt to analyze the collective combination of references that you have listed on Page 34, plus the additional five that you have mentioned for each asserted claim, to determine specifically that that collection of references disclosed each and every element of the corresponding asserted claim, yes or no?
> A.   No.

(Ex. 5 at 235:20-236:5; *See also id. at* 219:11-220:2 ("Q. You also did not in your report anywhere identify for each claim limitation in a particular claim where the corresponding quote from each reference you're relying on is found, correct?  A. Correct. ... I provided the claim chart shown on Page 34 which does not go down to the level of elements of claims."); *Id.* at 231:6-232:7 ("I did not analyze -- I did not report them down to the level of individual elements. . . . What I haven't done is make sure that they have an impact on either all of the elements or if they didn't, to specify at that next level of detail. I agreed with that earlier. I haven't reported that here.").

In addition to failing to compare the prior art to each element of the asserted claims, Dr. Davis did not even identify what combination of prior art references supposedly invalidate the asserted claims. Rather, Dr. Davis provided a laundry list of references he thinks relate to some element of that claim:

> Q.   ... Do you at any place in your report identify a particular combination of references or systems that render each claim obvious?
> A.   No, I don't think I isolated it out as a way of saying this alone or, you know, just these two in combination is enough to make this obvious or just that one alone is enough to make it obvious. ... I don't think I assembled such a list. I put this chart in simply as a totally inclusive summary that in effect indexes from claim to relevant prior art, but it doesn't try and do the kind of minimal or best selection that you're asking for.

10

(Ex. 5 at 218:19-219:10; *see also* Ex. 2 at 34; *see also* Ex. 5 at 232:25-233:7 ("Q. But you have not expressed in your report nor are you prepared today to testify regarding which combination less than the, for instance, 13 references on ... Claim 1 support your obviousness opinion, correct? A. I'm not prepared to do that as we sit here, yes."); *id.* at 225:2-20 ("I have not attempted to find a smaller subset to date. ... I'm not sure what a best combination would be, but I haven't -- even without knowing it, I know I haven't tried to do it"). Because Dr. Davis admittedly did not compare the prior art to each element of the '164 patent claims or identify what combination of prior art he contends is invalidating, his obviousness opinions are fundamentally unreliable and inadmissible.

Indeed, this Court recently excluded an expert's obviousness opinions under the same circumstances:

> With regard to obviousness, Dr. Purdue's expert report consists of his discussion of five alleged prior art references and his conclusion that a combination of some or all of them render the '270 patent obvious. Dr. Purdue does not undertake the required element-by-element comparison to show that each and every limitation in the asserted claims of the '270 patent is present in a combination of prior art references.

*See Oxford Gene*, 345 F. Supp. 2d at 437 (excluding obviousness testimony).[3] Dr. Davis's report and opinion should be similarly excluded.

### 2.   Dr. Hawley's opinions are not based on prior art or directed to the '164 claims and cannot support a finding of obviousness.

Dr. Hawley points to no piece of prior art in support of his bald conclusion that the asserted claims are obvious. Rather, Dr. Hawley's report asserts that the collective procedures at some unidentified companies were "common practice" in the industry. (Ex.

---

[3]      In *Oxford Gene*, the Court accepted "other submissions by Mergen ... sufficient to serve as a supplementation ... to save a portion of Dr. Purdue's proposed testimony." 345 F. Supp. 2d at 437. Based upon these submissions, the Court elected to "examine each alleged prior art reference to see if Dr. Purdue has undertaken the required analysis to determine if each and every claim limitation is present in the prior art." *Id.* at 438. Such an inquiry is unnecessary here, as Dr. Davis has testified that he did not undertake this "required element-by-element comparison."

7 at 5, 7.) At his deposition, Dr. Hawley confirmed that he had not identified a particular

piece or combination of prior art to support his opinions:

> Q  What prior art are you relying upon for your opinions in this report?
> A  The prior art of claim auditing as it existed at that time.
> Q  Okay.  So the generalized state of the art of claims auditing is what you're relying on -- ... as the prior art? Not a single system or any article about something or a source; is that correct?
> A  That's correct, no single system or article.
> ***
> Q ... With respect to your opinions regarding the claims of the '164 patent, the prior art that you're relying upon is the general state of the claims processing or auditing art prior to 1987?
> A  Correct.

(Ex. 6 at 145:23-146:8, 152:5-10.) Thus, Dr. Hawley omitted an essential, threshold step

in his analysis.  "An obviousness inquiry requires a determination of '... the scope and

content of the prior art.'"  *Oxford Gene,* 345 F. Supp. 2d at 436 quoting *Smiths Indus.*

*Med. Sys., Inc. v. Vital Signs, Inc.,* 183 F.3d 1347, 1354 (Fed. Cir. 1999).  As a result,

Dr. Hawley's opinions are unreliable and inadmissible.  Indeed, despite basing his

opinion solely on his personal recollection of the field, (Ex. 6 at 149:7-10), Dr. Hawley

could not recall which of these purportedly common practices any company performed

prior to the '164 patent.  (*Id.* at 114:21-116:17.)  Such uncorroborated testimony is

inadmissible and cannot constitute clear and convincing evidence.  *See Upjohn Co. v.*

*Mova Pharm. Corp.,* 225 F.3d 1306, 1311 (Fed. Cir. 2000) (assertions that concepts were

"widely known" "by an expert witness ... require support by documentary evidence in

order to receive probative weight"); *Stambler v. RSA Security, Inc.,* 243 F. Supp. 2d 70,

73 (D. Del. 2003) (where "none of the evidence offered by defendants corroborates [their

expert's] testimony, his testimony is inadmissible for the purpose of establishing

invalidity").

Furthermore, like Dr. Davis, Dr. Hawley's report omits the necessary element-by-

element comparison of the claims to the prior art.  At his deposition, Dr. Hawley

confirmed that his "opinion is not expressed relative to a specific claim" but rather that

"all claims, within the '164 patent, taken as a whole ... describe a claim auditing process that someone of ordinary skill would deem -- at that time would have deemed to be obvious." (Ex. 6 at 143:11-145:22.)    As a result of the deficiencies in his analysis, Dr. Hawley's opinion is inadmissible and cannot invalidate infringed claims 1 and 2.

## B.    TriZetto's Experts Did Not Perform Any Means-Plus-Function Analysis.

The infringed claims 1 and 2 both recite a "means for operating on a predetermined database."  The Court construed this claim element as a means-plus-function limitation having the function of "operating on a predetermined database" and a corresponding structure as "data processing capabilities, memory and software capable of managing a database." (D.I. 307 at 2; *see also* D.I. 278 at 24:14-17 (TriZetto: "So we have ... at least one means-plus-function element in the method claims as well. So that puts to bed the notion that the method claims are not subject to 112(6).").)  Thus, TriZetto must prove that the functional and structural aspects of this limitation are found in the prior art. *See Kahn*, 135 F.3d at 1480 (reversing obviousness finding because defendant failed to prove that asserted prior art disclosed the structure corresponding to a means-plus-function limitation); *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1575 (Fed. Cir. 1995) (no invalidity where asserted prior use lacked structure corresponding to means-plus-function claim limitation).  In assessing the validity of claims with means-plus-function limitations, the Manual of Patent Examining Procedure ("MPEP") instructs patent examiners that:

> if a prior art reference teaches identity of function to that specified in a claim, then under *Donaldson* an examiner carries the initial burden of proof for showing that the prior art structure or step is the same as or equivalent to the structure, material, or acts described in the specification which has been identified as corresponding to the claimed means or step plus function.

MPEP § 2182, citing *In re Donaldson Co.*, 16 F.3d 1189 (Fed. Cir. 1994).

TriZetto cannot meet its high burden of proof on this issue because none of TriZetto's experts engaged in any means-plus-function analysis with respect to any of the

'164 patent's claims. Dr. Davis's 43-page report never once mentioned the "means for operating" limitation of claims 1 and 2, let alone discussed his understanding of the functional or structural components of the claim element or whether any prior art disclosed an identical function and an identical or equivalent structure. Dr. Hawley's report is also devoid of any discussion of the "means for operating" limitation. In fact, Dr. Hawley had not even heard the term "means-plus-function" prior to his deposition. (Ex. 6 at 174:17-22.) At his deposition, Dr. Kerschberg conceded that in preparing his report, he did not identify which structures in the patent corresponded to the means-plus-function limitations of the claims and was not provided such information by TriZetto. (Ex. 7 at 180:17-182:12.)

All three of TriZetto's experts failed in their reports to perform the means-plus-function analysis required to prove invalidity of claims 1 and 2. They did not identify any structure disclosed in the '164 patent for performing the function of "operating on a predetermined database." Because their reports failed to identify this corresponding structure, TriZetto's experts also did not compare and could not have compared such structure to the asserted prior art. Absent clear and convincing evidence that the asserted prior art meets both the functional and structural components of the "means for operating" limitation, TriZetto cannot prove that the infringed claims 1 and 2 are invalid. Accordingly, summary judgment should be granted in McKesson's.

## C.    TriZetto's Evidence Is Insufficient To Prove That The "Determining" Step Of Claim 2 Is Found In The Prior Art.

TriZetto's obviousness defense as to claim 2 also fails as a matter of law because none of TriZetto's experts can testify as to whether any of the asserted prior art meets the "determining" step of that claim. The method of claim 2 includes the step of "determining whether one of the medical service codes in the at least one claim is mutually exclusive due to non-medical criteria with any other medical service code in the at least one claim." During expert discovery and claim construction, TriZetto and its

14

experts argued that the phrase "non-medical criteria" is indefinite and not susceptible to construction.   TriZetto's experts chose not to properly analyze whether any of the asserted prior art met the "determining" step of claim 2.  The Court, however, disagreed that the phrase "non-medical criteria" is indefinite and adopted McKesson's proposed construction that the term is to be given its ordinary meaning.[4]  (D.I. 307 at 18-20; D.I. 354 at 21 & 30.)  As a result, TriZetto cannot offer sufficient evidence to prove that every element of claim 2 is met by the prior art, singly or in combination.

First, Dr. Hawley explained in his report that, because "'mutually exclusive' and 'non-medical' are not defined in the '164 patent[,]" he lacked "sufficient information … to determine the meaning of these terms in this patent claim."  (Ex. 4 at 9.)  Thus, Dr. Hawley declined to analyze whether the determining step of claim 2 was present in, or would have been obvious in light of, the prior art.  Indeed, Dr. Hawley made no attempt to compare *any* specific limitation of claim 2 to any asserted prior art.  Having decided not to address in his report the question of obviousness with respect to claim 2, Dr. Hawley cannot offer any opinion on the subject now or at trial.

*Second*, Dr. Davis similarly explained in his report that, "[a]s the term 'non-medical criteria' is not a term of art, and as the claim specifies exclusion between non-medical service codes, claim 2 cannot in my opinion, be sensibly interpreted."  (Ex. 2 at 6.)  Dr. Davis proceeded with an analysis that applied a construction of "non-medical criteria" that even he admitted was inconsistent with the language of claim 2.  He noted that one possible interpretation is checking a medical service code against other patient information, such as age or gender but dismissed this possibility as "not covered by claim 2" since the claim "specifies mutual exclusion between medical service codes, not exclusion of a medical service code based on information about the patient."  (*Id.*)

---

[4]     McKesson has concurrently filed a motion for summary judgment on TriZetto's indefiniteness defense.

Nevertheless, Dr. Davis relied on this admittedly incorrect interpretation in his analysis of the "determining" step of claim 2. (*Id.* at 23 ("To the extent the [*sic*] claim 2 of '164 is regarded as dealing with patient age (as a 'non-medical' criterion), this shows a prior system using that concept."); *id.* at 28-29 ("To the extent that '164 claim 2 is interpreted to mean taking into account such things as age, gender, etc. (which I have argued against) ..."); *id.* at 31 ("*cf.* '164 claims 2 and 14, assuming 'non-medical' refers to issues such as patient gender, age, etc.")).

Dr. Davis's only other statements regarding this element of claim 2 are conclusory assertions that generalized references to rebundling and "any form of inconsistency among the medical service codes" in two documents "read on" claim 2. (*Id.* at 18-19, 27.) However, Dr. Davis provides no analysis supporting this conclusion in his report. Indeed, he makes no effort to square his opinion that he could not "sensibly interpret" the determination recited in claim 2 with his assertion that general references to "inconsistency" would disclose that specific element to one skilled in the art.

*Third*, Dr. Kerschberg's report asserted that "mutually exclusive codes due to non-medical criteria" is "open to various interpretations" and "needs clarification." (Ex. 3 at 8, 17.) While Dr. Kerschberg never explained which of these "various interpretations" was the one he applied, his analysis, like Dr. Davis's, is at odds with the express language and ordinary meaning of claim 2. Dr. Kerschberg stated that "[n]on-medically related mutual exclusion arises in MEDCLAIM" where a "company policy might indicate that if the patient were over 85 years of age, the claim should be paid immediately." (*Id.* at 17-18.)[5] However, a comparison of age to an entire medical claim has nothing to do with mutual exclusion between the medical service codes within that

---

[5]    As is discussed later in the brief, Dr Kerschberg's description of key aspects of MedClaim is not found anywhere in the documents relied upon by Dr. Kerschberg and is based solely on his own testimony. Such uncorroborated evidence is insufficient as a matter of law to support a finding of obviousness.

claim.  Regarding the Egdahl/Hertenstein paper, Dr. Kerschberg pointed only to the reduction of the fee for a *single* code in Table 6 (reproduced below) as "non-medical."

(*Id.* at 18 ("excessive fee reduction, non-medical (region where service performed) (Table 6)").)  Again, the reduction of

| TABLE 6. *Recoding of Unnecessary Procedure, Excessive Fee Reduced* | | |
|---|---|---|
| **Provider Description** | **CPT Code** | **Charge** |
| Excision, benign lesion, foot and use of $CO_2$ laser | 11421 | $450 |
| Total charge | | $450 |
| Amount paid | | $ 60 |

the fee for a single code has nothing to do with mutual exclusion between medical service codes due to non-medical criteria as required by claim 2.

Because TriZetto's experts either chose not to analyze whether the "determining" step of claim 2 is met by any of the asserted prior art or improperly analyzed the issue using a construction that they knew to be incorrect, they cannot offer any testimony at trial on this issue.  Accordingly, TriZetto cannot present sufficient evidence to clearly and convincingly establish that claim 2 is rendered obvious by any prior art.

### D.  TriZetto Cannot Establish A Prima Facie Case Of Obviousness Because It Lacks Sufficient Evidence Of A Motivation To Combine The Prior Art In The Manner Claimed.

The existence of each limitation of a claim in the prior art does not, by itself, establish a prima facie case of obviousness; a defendant bears the burden of providing clear and convincing evidence of a "reason, suggestion, or motivation in the prior art that would lead one of ordinary skill in the art to combine the references, and that would also suggest a reasonable likelihood of success."  *Smiths Indus.*, 183 F.3d at 1356.  Broad conclusory statements about the teaching of multiple references, standing alone, are not "evidence."  *In re Dembiczak*, 175 F.3d 994, 1000 (Fed. Cir. 1999).

Instead, the "Federal Circuit '[has] consistently held that a person of ordinary skill in the art *must not only have had some motivation to combine the prior art teachings, but some motivation to combine the prior art teachings in the particular manner claimed.*'"  *Verve, L.L.C. v. Crane Cams, Inc.*, 395 F. Supp. 2d 558, 577 (E.D. Mich.

2005) (emphasis added), quoting *Teleflex v. KSR Intern. Co.*, 119 Fed. Appx. 282, 286 (Fed. Cir. 2005) (unpublished). "In other words, [Defendants] must show reasons that the skilled artisan, confronted with the same problems as the inventor and with no knowledge of the claimed invention, *would select the elements from the cited prior art references for combination in the manner claimed.*" *Id.* (emphasis added); *see also Ecolochem, Inc. v. Southern Cal. Edison Co.*, 227 F.3d 1361, 1375 (Fed. Cir. 2000); *In re Rouffet*, 149 F.3d 1350, 1357 (Fed. Cir. 1998); *In re Kotzab*, 217 F.3d 1365, 1371 (Fed. Cir. 2000) ("particular findings must be made as to the reason the skilled artisan, with no knowledge of the claimed invention, would have selected these components for combination in the manner claimed"). As the Federal Circuit has explained, "the best defense against the subtle but powerful attraction of a hindsight-based obviousness analysis is rigorous application of the requirement for a showing of the teaching or motivation to combine prior art references." *In re Dembiczak*, 175 F.3d at 999.

       **1.**    **None of TriZetto's experts provided a basis for combining the prior art they cite in the manner described in the '164 claims.**

All three of TriZetto's experts failed to address whether there was the requisite motivation in the prior art that would lead one of ordinary skill in the art to combine or modify the elements from the prior art in the manner claimed in the '164 patent. As a result, TriZetto has not met its burden of making a prima facie case of an obviousness defense. *See Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1578-79 (Fed. Cir. 1997) ("The absence of such a suggestion to combine is dispositive in an obviousness determination.").

*First*, Dr. Hawley's invalidity opinions are admittedly based solely on the generalized notion of *manual* claim auditing and not any prior computer-implemented methods. (Ex. 6 at 86:6-87:10; 83:11-21; 133:11-16; 134:15-21; 145:23-146:8.) However, Dr. Hawley never addresses any motivation for one skilled in the art to combine this manual activity with other prior art to arrive at the automated methods in

18

the manner claimed in the '164 patent. Dr. Hawley's report never even defines who a person of ordinary skill in the art would be. (*Id.* at 140:23-:141:1.) As a result, Dr. Hawley's obviousness opinions are inadmissible and provide no evidence regarding this essential element of TriZetto's defense.

*Second*, Dr. Davis did not analyze whether there was a motivation to combine the particular prior art references he relied upon in his report:

> Q. And in forming your opinions, you also did not analyze each individual reference or system to determine if there was an express suggestion to combine that reference with one of the other references that you are relying on in combination for your opinion, correct? . . .
> A. I believe that's substantially correct, yes.

(Ex. 5 at 238:25-239:8.)

> Q. In analyzing, for instance, all of the references that you are relying on for your obviousness opinion regarding, for instance, Claim 1, did you attempt to determine what claim element or claim elements were missing from a particular reference and then determine whether or not that reference suggested combining it with another reference that would satisfy the missing elements from the first reference?
> A. I understand. No, I don't believe I did that kind of analysis on these.
> . . .
> A. No. I think I can say in general I did not try to look at these to see if they suggested combining among themselves.

(*Id.* at 228:4-230:18.) Indeed, Dr. Davis did not even determine whether the prior art he cited included every element of claims 1 or 2. (*Id.* at 235:20-236:5; *id.* at 219:11-16 ("Q. You also did not in your report anywhere identify for each claim limitation in a particular claim where the corresponding quote from each reference you're relying on is found, correct? A. Correct.") As a result, Dr. Davis did not, and could not, offer any opinion as to whether one skilled in the art would have been motivated to combine the prior art "in the particular manner claimed." *See Verve*, 395 F. Supp. 2d at 577.

Instead, Dr. Davis's discussion of motivation is limited to five documents which he generally concludes "suggest combining the clinical editing process with computing in general." (Ex. 2 at 37-39.) Dr. Davis offered no opinion on how such a "general" motivation would lead a skilled artisan to "select the elements from the cited prior art

19

references for combination in the manner claimed." *Verve*, 395 F. Supp. 2d at 577.
Indeed, Dr. Davis never analyzed whether a particular combination of references
rendered claims 1 or 2 obvious. Rather, he only provided a laundry list of prior art
references that he believed were "relevant" to a particular claim:

> Q. . . . Do you at any place in your report identify a particular
> combination of references or systems that render each claim obvious?
> A. No, I don't think I isolated it out as a way of saying this alone or, you
> know, just these two in combination is enough to make this obvious or just
> that one alone is enough to make it obvious. . . . I don't think I assembled
> such a list. I put this chart in simply as a totally inclusive summary that in
> effect indexes from claim to relevant prior art, but it doesn't try and do the
> kind of minimal or best selection that you're asking for.
> Q. You also did not in your report anywhere identify for each claim
> limitation in a particular claim where the corresponding quote from each
> reference you're relying on is found, correct?
> A. Correct.

(Ex. 5 at 218:19-219:16. *See also id.* at 232:25-233:7; *id.* at 225:2-18.) Accordingly,
Dr. Davis's opinions are inadmissible and provide no evidence of a motivation to
combine the prior art in the manner claimed.

　　*Third*, Dr. Kerschberg's report relies on the combination of "the
Egdahl/Hertenstein paper together with the MEDCLAIM system prototype." (Ex. 3 at 5.)
However, with respect to motivation to combine these references, Dr. Kershberg offers
the conclusory assertion that "the paper by Egdahl and Hertenstein provides the
motivation, context, and the outline of a method that could be used to build an automated
system to process medical claims. The motivation for such a system was to contain rising
medical costs for surgical procedures." (*Id.* at 3-4). However, such generalized and
unsupported conclusions fail to meet the "clear and particular" showing required for a
motivation to combine the prior art. *See In re Dembiczak*, 175 F.3d at 999. [6]

---

[6]　　This is particularly true given Dr. Kerschberg's acknowledgement that he was aware of
no facts supporting his assumption that the Egdahl/Hertenstein article described an automated
system, (Ex. 7 at 62:20-63:7), and that MEDCLAIM included different "rules" and "database
entries" than those involved with the claimed invention. (Ex. 3 at 11.)

Dr. Kerschberg offered no opinion as to how the general aspiration of controlling health care costs would have motivated one skilled in the art to select components from the references and combine them in the manner described in claims 1 and 2.

Indeed, Dr. Kerschberg felt compelled to supplement this conclusory opinion by referencing confidential work of the inventors themselves. (Ex. 3 at 15.) However, one of ordinary skill in the art would not have had access to such confidential information and could not have been "motivated" by such confidential information. Dr. Kerschberg's reliance on such material is little more than "tak[ing] the inventor's disclosure as a blueprint for piecing together the prior art to defeat patentability – the essence of hindsight." *In re Dembiczak*, 175 F.3d at 999.

> **2.     None of TriZetto's experts have established that one skilled in the art would have perceived a reasonable likelihood of success in combining the references they cite.**

To establish a prima facie case of obviousness, TriZetto must also demonstrate a "reason, suggestion, or motivation in the prior art that ... would also suggest a reasonable likelihood of success" in combining the prior art in the manner claimed. *Smiths Indus.*, 183 F.3d at 1356. None of TriZetto's experts addressed this requisite showing. (*See, e.g.*, Ex. 6 at 172:9-11 ("Q.  So you didn't consider what other people would have thought about whether or not it could be built?  A.  I did not."). Their failure to do so is fatal to TriZetto's obviousness defense. *See IMX, Inc.*, 405 F. Supp. 2d at 494 (rejecting obviousness defense where defendant failed to identify evidence suggesting a reasonable likelihood of success in combining the prior art).

In fact, TriZetto's experts' views on the subject suggest significant disincentives and uncertainty as to the success of undertaking such a project. Dr. Hawley's report explains: "I can attest to the tedious and painstaking effort involved in reducing coding conventions to a database and a set of logical rules." (Ex. 4 at 26.) Similarly, publications by Drs. Kerschberg and Davis around the time of the invention emphasize

that those skilled in the art faced significant obstacles and a "very high level of uncertainty about project success" in attempting to develop an expert system:

> Knowledge engineers must ferret out solutions and represent them in computer programs. This is difficult because experts usually have trouble explaining their solutions, and knowledge representation technology is usually unfamiliar. ***This contributes to a very high level of uncertainty about project success.***

(Ex. 7 at 75:2-75:8 (emphasis added); *see also id.* at 76:3-13; 31:6-9 (no guarantee development efforts will be successful)); also Ex. 8: Davis, *Expert Systems: Where are we? And where do we go from here?*, The AI Magazine, page 3 (Spring 1982) ("Even for the best-understood problems, experienced researchers using the best-understood technologies still require at least five man years to develop a system that begins to be robust.")).

Because TriZetto's experts' analyses regarding the motivation of one skilled in the art are inadequate, their obviousness opinions are irrelevant and inadmissible. As a result, TriZetto cannot prove an essential element of its obviousness defense and summary judgment for McKesson is appropriate. *See Gambro Lundia*, 110 F.3d at 1578-79.

### E.    TriZetto Cannot Overcome The Undisputed Objective Evidence Of Non-Obviousness That Its Experts Did Not Address.

Secondary considerations of nonobviousness include: "copying, long felt but unsolved need, failure of others, commercial success, unexpected results created by the claimed invention, unexpected properties of the claimed invention, licenses showing industry respect for the invention, and skepticism of skilled artisans before the invention." *In re Rouffet*, 149 F.3d 1350, 1355 (Fed. Cir. 1998) (citations omitted). Although termed secondary, these considerations are "essential components of the obviousness determination." *Id.* "In determining whether the clear and convincing evidence standard is met, the court *must* consider secondary factors of nonobviousness." *Genzyme Corp. v. Atrium Med. Corp.*, 315 F. Supp. 2d 552, 564 (D. Del. 2004)

22

(emphasis added); *see also Neutrino Dev. Corp. v. Sonosite, Inc.*, 410 F. Supp. 2d 529, 551 (D. Tex. 2006) ("the circumstances that surround the historical origins of the claimed invention and its effect on the industry must be considered"). Indeed, such considerations "may often be the most probative and cogent evidence in the record." *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538-39 (Fed. Cir. 1983).

Despite the importance of such considerations, TriZetto has failed to address any evidence regarding these factors. None of TriZetto's experts addressed secondary considerations in their reports. When questioned about secondary considerations at their depositions, all three admitted that they did not analyze these factors in their reports. (*See* Ex. 6 at 170:9-174:16; 229:2-230:6 (did not consider: commercial success; licensing of the '164 patent; skepticism in the field; long felt need in the industry; industry praise of the invention; or copying of the invention); Ex. 5 at 246:18-248:25 (did not consider commercial success or long felt need); Ex. 7 at 157:9-158:24 (did not consider: commercial success; licensing of the '164 patent; long felt need in the industry; industry praise of the invention; or copying of the invention).)

 Because none of TriZetto's experts can contest this evidence of nonobviousness, summary judgment on this defense should be granted.

## VII.   TRIZETTO CANNOT ESTABLISH A PRIMA FACIE CASE OF OBVIOUSNESS BASED ON PRIOR ART NEVER ADDRESSED IN ITS EXPERTS' REPORTS.

TriZetto cannot establish a prima facie case of obviousness by simply offering prior art to the jury without any expert analysis from the perspective of one of ordinary skill in the art. It is settled that an obviousness inquiry must be based upon analysis performed through the "prism or lens" of one of ordinary skill in the art. *Al-Site Corp. v.*

*VSI Int'l, Inc.*, 174 F.3d 1308, 1324 (Fed. Cir. 1999). Accordingly, TriZetto hired a team of three experts to analyze numerous prior art references and prior uses in an attempt to meet its burden. However, TriZetto's experts' reports did not address a number of references and supposed prior uses TriZetto has cited. In addition to confirming their marginal relevance and the absence of sufficient evidence of the alleged prior uses, this failure precludes TriZetto's experts from offering any opinion regarding these references at trial.

While courts may dispense with the need for expert testimony if an invention is easily understood, *see Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567, 1573 (Fed. Cir. 1984), the Court has already determined that the nature of the '164 patent is sufficiently complicated to require expert testimony to analyze the claims for purposes of infringement. (D.I. 340 at 1-2 (permitting testimony only from "a person of ordinary skill in the art" unless the "language at issue has not been construed").) Thus, TriZetto cannot establish that infringed claims 1 and 2 are rendered obvious by any of the references that its experts did not address. Indeed, permitting TriZetto to present this information to a lay jury without any perspective of one of ordinary skill in the art invites the jury to use the teachings of the '164 patent to supply the missing perspective of one of ordinary skill. Using the '164 patent as a roadmap to determine that the invention was obvious is clear error and is the essence of impermissible hindsight. *See Princeton Biochemical's, Inc. v. Beckman Coulter, Inc.*, 411 F.3d 1332, 1337 (Fed. Cir. 2005).

## VIII.  TRIZETTO CANNOT PROVE INVALIDITY BASED ON ALLEGED PRIOR USES THAT WERE NOT DISCLOSED DURING DISCOVERY AND THAT LACK NECESSARY CORROBORATION.

### A.  TriZetto Cannot Assert Invalidity Based On AMS Because TriZetto Never Disclosed Its Reliance On AMS As Prior Art During Discovery.

TriZetto and its expert Dr. Davis have asserted that claims 1 and 2 are obvious in view of the alleged AMS system. TriZetto, however, is not entitled to rely upon AMS for its invalidity defense because TriZetto violated its discovery obligations and the Court's

24

Scheduling Order by waiting until the exchange of expert reports, more than a month after close of fact discovery, to disclose its reliance on AMS as prior art. The Court reaffirmed this position in the November 7 discovery hearing in this case when it stated: "I did not mean for the discovery to go on forever and ever. I was giving you the opportunity to try the late-filed prior art and *your prior art is limited to that disclosed by the close of discovery* . . . ." (D.I. 138 at 12-13 (emphasis added).)

Further, the Court's recent decision in *Praxair* is directly on point. In that case, fact discovery closed on March 21, 2005, with a limited extension until April 15, 2005, "to bring closure to open discovery issues." *Praxair, Inc. v. ATMI, Inc.*, 231 F.R.D. 457, 464 (D. Del. 2005). During the extension, the defendants disclosed several new prior art references. *Id.* The defendants' expert on invalidity also relied on these new references in his expert report, which was served on May 2, 2005. *Id.* at 463. Trial in the case was set for late November 2005. *See id.* The Court granted the plaintiff's motion to strike the references, any invalidity defenses based on them, and the portions of the defendants' expert report that addressed the references, finding no good cause for the defendants' delay. *Id.* at 464.

In reaching its conclusion, the Court focused on the importance of abiding by discovery deadlines and scheduling orders:

> "[F]idelity to the constraints of Scheduling Orders and deadlines is critical to the Court's case management responsibilities." *Finch v. Hercules, Inc.*, 1995 WL 785100 at *9 (D. Del. 1995). The "flouting of discovery deadlines causes substantial harm to the judicial system." *Id.* (internal citations omitted). As a sanction for failure to comply with the scheduling order in this case, the court is authorized to exclude evidence proffered by the disobedient party. *United States v. 68.94 Acres of Land*, 918 F.2d 389, 396 (3d Cir. 1990).

*Praxair*, 231 F.R.D. at 463. The Court also held that "[a]rguing that the plaintiffs were aware of the prior art references is not sufficient to put the plaintiffs on notice that defendants are relying on the references in their invalidity defenses." *Id.* at 464 n.9. The Court affirmed this ruling on reconsideration, reiterating that: "Prior art references must

be disclosed during fact discovery and the parties must disclose their intent to rely thereon, regardless of whether or not the opposing party is aware of the reference." *Praxair, Inc. v. ATMI, Inc. ("Praxair II")*, Case No. 03-1158-SLR, 2005 WL 3159054, *4 (D. Del. November 28, 2005) (attached at Ex. 12).

Here, as in *Praxair*, there is no excuse for TriZetto's first disclosing AMS and its intent to rely on AMS as prior art in an expert report served *more than a month after the close of fact discovery*. (Ex. 2 at 20-24.) Early in the case, McKesson served an interrogatory specifically requesting that TriZetto identify every prior art or prior use that TriZetto intended to rely on for invalidity. (Ex. 13 at 5-6.) TriZetto never identified its intent to rely upon AMS despite having been well aware of AMS throughout fact discovery and even prior to this lawsuit. In April 2005, McKesson produced a 13-page document and a 103-page document describing AMS as well as pleadings from original patentee HPR's litigation against GMIS showing that GMIS had asserted AMS as potential prior art. (D.I. 246, Exs. 29-32.)[7] In addition, at the deposition of George Goldberg, an inventor of the '164 patent, TriZetto extensively examined Dr. Goldberg about his knowledge of AMS. (Ex. 14 at 51-55, 63-65, 67-69.) Nevertheless, TriZetto chose not to disclose AMS or its intent to rely on AMS for its invalidity defense until more than a month after close of fact discovery.

TriZetto's failure to disclose AMS during fact discovery has caused substantial harm to this Court. *See Praxair*, 231 F.R.D. at 463 ("The 'flouting of discovery deadlines causes substantial harm to the judicial system.'"), quoting *Finch v. Hercules, Inc.*, 1995 WL 785100 at *9 (D. Del. 1995). McKesson has also been prejudiced since it was unable to take discovery regarding AMS after learning of TriZetto's intent to rely on

---

[7]     TriZetto acquired the filings from the HPR-GMIS litigation in which AMS was identified in 1995 and discussed them with its patent opinion counsel in 2003. (Ex 15 at 71:9-72:8 ("[t]hey had actually supplied me documents from the GMIS/HPR litigation, so I know they had closely watched it").)

26

AMS. Moreover, attempting to cure the prejudice by reopening discovery now will only add to the harm by further delaying resolution of McKesson's claims, disrupting McKesson's trial preparation, and effectively rewarding TriZetto for its failure to comply with its discovery obligations and the Court's Scheduling Order.

Because TriZetto did not disclose during fact discovery AMS or its intent to rely on AMS, TriZetto is not entitled to assert invalidity based on AMS. Therefore, as a matter of law, TriZetto cannot prove that the infringed claims of the '164 patent are invalid in view of AMS, alone or in combination with any other prior art.

### B.  None Of TriZetto's Alleged Prior Uses Are Sufficiently Corroborated To Establish A Prima Facie Case Of Obviousness.

TriZetto cannot establish invalidity through the alleged prior uses it cites because TriZetto lacks sufficient evidence to corroborate any of the alleged uses at trial. It is a long-standing requirement that the presumption of patent validity cannot be overcome by simply presenting uncorroborated testimony of prior invalidating uses. *The Barbed Wire Patent*, 143 U.S. 275, 284 (1891); *Finnigan Corp. v. U.S. Int'l Trade Comm'n*, 180 F.3d 1354, 1366 (Fed. Cir. 1999). "Corroboration has been required by the courts 'because of doubt that testimonial evidence alone in the special context of proving patent invalidity can meet the clear and convincing evidence standard to invalidate a patent.'" *Intel Corp. v. Broadcom Corp.*, 2003 U.S. Dist. LEXIS 2372, *51 (D. Del. February 13, 2003), quoting *Finnigan*, 180 F.3d at 1368 (attached at Ex. 16). Such "corroboration is required of any witness whose testimony alone is asserted to invalidate a patent, *regardless of his or her level of interest*." *Finnigan*, 180 F. 3d at 1369 (emphasis added); *see also Typeright Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1159 (Fed. Cir. 2004); *see also Texas Digital Sys. v. Telegenix, Inc.*, 308 F.3d 1193, 1217 (Fed. Cir. 2002).

"Reliable evidence of corroboration preferably comes in the form of physical records that were made contemporaneously with the alleged prior invention." *Juicy Whip v. Orange Bang*, 292 F.3d 728, 743 (Fed. Cir. 2002). The need for such corroborating

evidence is particularly acute here, where the witnesses TriZetto intends to call at trial have been retained by TriZetto as paid consultants. *See Union Carbide Chems. and Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1189 (Fed. Cir. 2002) ("Uncorroborated oral testimony by interested parties 'is insufficient as a matter of law to establish invalidity of [a] patent.'").[8]

TriZetto has identified 15 alleged prior uses. However, for 13 of these, TriZetto obtained no corroborating discovery and has no evidence corroborating what any of these systems allegedly did.[9] As a result, McKesson is entitled to summary judgment that none of these alleged prior uses render any claim of the '164 patent invalid either alone or in combination with other art.

Furthermore, the limited evidence TriZetto has regarding the alleged operations of the other two systems, AMS and MedClaim, is insufficient to corroborate whether they actually did what TriZetto contends. With respect to AMS, the few documents TriZetto has offered – albeit through their expert only after the close of discovery – are incomplete and contradictory. These materials were obtained by TriZetto's expert from a third party. TriZetto's expert independently contacted this third party without notifying McKesson and handpicked through his documents relating to AMS to find the ones that he wanted to use to support his opinions. (Ex. 5 at 89:5-90:7). Because neither TriZetto nor its expert ever attempted to secure all of the documents relating to AMS and never notified McKesson of their source until after discovery closed, the evidence regarding AMS is manifestly incomplete. Moreover, the documents that TriZetto's expert did select to support his opinion are missing multiple appendices and tables that presumably describe

---

[8]    Drs. Davis, Hawley, and Kerschberg have each been retained to testify on behalf of TriZetto. Indeed, Dr. Hawley testified during the infringement trial that he expected to be compensated by TriZetto at the rate of $325 an hour for his testimony as a fact witness. (Ex. 18 at 824:22-825:4).

[9]    The prior uses without corroborating evidence are listed in the Summary of Relevant Facts section of this brief.

28

the system's functionality and are self-contradictory. *(See Ex. 17 at RD000325-419.)*

████████████████████████████████████████████████████

████ Thus, it is unclear from the documents what AMS actually did and when. As the Federal Circuit has explained, a party cannot "persuasively corroborate" a prior use where "the documents themselves are ... too incomplete or contradictory." *Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc.*, 322 F.3d 1335, 1351 (Fed. Cir. 2003). *See also Finnigan*, 180 F.3d at 1361 (insufficient corroboration despite proffer of documents describing the prior use).

Similarly, the documentation on MedClaim is insufficient to corroborate the testimony TriZetto intends to offer. For example, Dr. Kerschberg's report cites to the MedClaim system as teaching the "predetermined database containing ... a set of *relationships among the medical service codes defining whether selected ones of the medical service codes are valid when input with other selected ones of the medical service codes*" element of infringed claims 1 and 2. (Ex. 3 at 16-17.) However, none of the documents indicate that MedClaim included such a database. Similarly, in connection with the "determining" element of claim 2, Dr. Kerschberg's report asserts that "[n]on-medically related mutual exclusion arises in MEDCLAIM when . . . [f]or example, company policy might indicate that if the patient were over 85 years of age, the claim should be paid immediately." *(Id.* at 17-18.) Again, no evidence corroborates Dr. Kershberg's assertion that MedClaim actually included such functionality. As a result, TriZetto lacks evidence sufficient to corroborate Dr. Kerschberg's proposed testimony as to at least these elements of claims 1 and 2 and therefore cannot establish a prima facie case of obviousness based on MedClaim. *See Finnigan*, 180 F.3d at 1369 ("The Jefferts' article simply does not corroborate his testimony because, as we have

noted, that article is ambiguous at best concerning the claimed use of nonresonance ejection.").

## IX.    CONCLUSION.

For the foregoing reasons, McKesson respectfully requests that the Court grant summary judgment in McKesson's favor on TriZetto's anticipation and obviousness defenses.

By: _____

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff
    McKesson Information Solutions LLC

OF COUNSEL:
Jeffery G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500

DATED: June 1, 2006

30

## CERTIFICATE OF SERVICE

I, Michael A. Barlow, hereby certify that on June 1, 2006, I electronically filed

Plaintiff McKesson Information Solutions LLC's Motion for Summary Judgment Re:

Anticipation and Obviousness, Plaintiff McKesson Information Solutions LLC's

Memorandum In Support of Its Motion for Summary Judgment Re: Anticipation and

Obviousness, Transmittal Declaration of Michael A. Barlow and proposed Order by

CM/ECF, which will send notification of such filing to those designated below, and that I

served the following persons in the manner listed:

**VIA CM/ECF and HAND DELIVERY**
Jack B. Blumenfeld, Esq.
Rodger D. Smith, II, Esq.
MORRIS NICHOLS ARSHT
 & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899

_/s/ Michael A. Barlow_
Michael A. Barlow (ID No. 3928)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000
mbarlow@skadden.com