IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 04-1258-SLR |
| | ) | |
| v. | ) | |
| | ) | |
| THE TRIZETTO GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**PLAINTIFF MCKESSON INFORMATION SOLUTION LLC'S
OPPOSITION TO THE TRIZETTO GROUP, INC.'S MOTION FOR
SUMMARY JUDGMENT OF INVALIDITY FOR INDEFINITENESS AND
FAILURE TO ADEQUATELY DESCRIBE THE CLAIMED INVENTION**

<div style="margin-left:40%">

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899
(302) 651-3000

Attorneys for Plaintiff
McKesson Information Solutions LLC

</div>

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California  94301
(650) 470-4500

DATED:  June 15, 2006

# TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF PROCEEDINGS .................................................... 1

II.   SUMMARY OF ARGUMENT........................................................................ 2

    A.    Indefiniteness ................................................................................ 2

    B.    Written Description...................................................................... 2

III.  SUMMARY OF RELEVANT FACTS ............................................................. 3

    A.    Indefiniteness ................................................................................ 3

    B.    Written Description...................................................................... 4

IV.  STANDARD FOR GRANTING SUMMARY JUDGMENT ................................. 4

V.   TRIZETTO'S CHALLENGE TO THE DEFINITENESS "NON-MEDICAL CRITERIA"
FAILS AS A MATTER OF LAW. ................................................................. 5

    A.    TriZetto Disregards The Legal Effect Of The Court's Prior Claim
Construction And Submission Of The Term To The Jury. .......................... 5

    B.    TriZetto's "Substantive" Arguments Are Off Point And
Contradicted By The Record........................................................ 9

        1.    TriZetto misstates the relevance of the specification...................... 9

        2.    TriZetto's arguments are premised upon its refusal to
acknowledge the definition of "non-medical criteria"
provided to the Court during claim construction ......................... 10

        3.    TriZetto's reliance on inventor testimony is misplaced;
its own expert could determine the "metes and bounds"
of claim 2........................................................................ 13

VI.  TRIZETTO'S CHALLENGE TO THE ADEQUACY OF THE '164 PATENT'S
WRITTEN DESCRIPTION FAILS AS A MATTER OF LAW .......................... 15

    A.    Section 112 Does Not Require A Verbatim Recitation of Every
Claim Term In The Specification............................................... 15

    B.    The Uncontradicted Testimony Of McKesson's Expert Defeats
TriZetto's Motion.................................................................... 16

VII. CONCLUSION......................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Acacia Media Tech. Corp. v. New Destiny Internet Group,*
    405 F. Supp. 2d 1127 (N.D. Cal. 2005) ...........................................................................10

*All Dental Prodx, L.L.C. v. Advantage Dental Prods., Inc.,*
    309 F.3d 774 (Fed. Cir. 2002).................................................................................6, 10

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)...............................................................................................5

*Arthocare Corp. v. Smith & Nephew, Inc.,*
    No. 01-504-SLR, 2003 WL 1856436 (D. Del. Apr. 9, 2003) ...........................................6

*Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.,*
    359 F.3d 1367 (Fed. Cir. 2004).............................................................................1, 6

*Boston Scientific Scimed, Inc. v. Cordis Corp.,*
    392 F. Supp. 2d 676 (D. Del. 2005).........................................................................5

*Cordis Corp. v. Medtronic AVE, Inc.,*
    339 F.3d 1352 (Fed. Cir. 2003)...............................................................................15

*Eli Lilly and Co. v. Barr Labs., Inc.,*
    251 F.3d 955 (Fed. Cir. 2001).................................................................................5

*Hesston Corp. v. Sloop,*
    1988 U.S.Dist. LEXIS 1573 (D. Kansas) ...............................................................18

*Hoechst Celanese Corp. v. BP Chems. Ltd.,*
    78 F.3d 1575 (Fed. Cir. 1996)................................................................................13

*ICU Med., Inc. v. B. Braun Med., Inc.,*
    344 F. Supp. 2d 663 (N.D. Cal. 2004) .....................................................................8

*Kao Corp. v. Unilever U.S., Inc.,*
    441 F.3d 963 (Fed. Cir. 2006)................................................................................15

*LizardTech, Inc. v. Earth Res. Mapping, Inc.,*
    424 F.3d 1336 (Fed. Cir. 2005)...............................................................................17

*LizardTech, Inc. v. Earth Res. Mapping, Inc.,*
    433 F.3d 1373 (Fed. Cir. 2006)...............................................................................17

*LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.*,
   275 F.3d 1347 (Fed. Cir. 2001) ..................................................................................13

*Lucent Techs., Inc. v. Extreme Networks, Inc.*,
   367 F. Supp. 2d 649 (D. Del. 2005) .............................................................................8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ......................................................................................................4

*N. Am. Vaccine, Inc. v. Am. Cyanamid Co.*,
   7 F.3d 1571 (Fed. Cir. 1993)........................................................................................9

*New Hampshire v. Maine*,
   532 U.S. 742 (2001) ....................................................................................................12

*Orion IP, LLC v. Staples, Inc.*,
   No. 2:04-CV-297, 2005 WL 3447887 (E.D. Tex. Dec. 15, 2005)...................................8

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ................................................................................8, 9

*Praxair, Inc. v. ATMI, Inc.*,
   No. 03-1158-SLR, 2005 WL 3159054 (D. Del. Nov. 28, 2005) .......................................6

*Semmler v. American Honda Motor Co.*,
   990 F. Supp. 967 (S.D. Ohio 1997) ...........................................................................10

*Space Systems/Loral, Inc. v. Lockheed Martin Corp.*,
   405 F.3d 985 (Fed. Cir. 2005) ...................................................................................17

*Stambler v. RSA Security, Inc.*,
   2003 WL 252149 (D. Del. Jan. 29, 2003) ..................................................................18

*Vas-Cath, Inc. v. Mahurkar*,
   935 F.2d 1555 (Fed. Cir. 1991).............................................................................15, 18

*Verve v. Crane Cams, Inc.*,
   311 F.3d 1116 (Fed. Cir. 2002)..............................................................................9, 11

*Warrior Lacrosse, Inc. v. STX, LLC*,
   No. 04-70363, 2005 WL 1378752 (E.D. Mich. June 2, 2005) .........................................8

## Statutes

FED. R. CIV. P. 56(c) ...............................................................................................4, 10

FED. R. CIV. P. 56(e)....................................................................................................4

Plaintiff McKesson Information Solutions LLC ("McKesson") respectfully submits this memorandum in opposition to The Trizetto Group, Inc.'s ("TriZetto") Motion For Summary Judgment Of Invalidity For Indefiniteness And Failure To Adequately Describe The Claimed Invention and in support of McKesson's Cross Motion for Summary Judgment in its favor in connection with TriZetto's Adequate Description defense.[1]

I.    NATURE AND STAGE OF PROCEEDINGS.

On September 13, 2004, McKesson filed this lawsuit against TriZetto for willfully infringing McKesson's U.S. Patent No. 5,253,164 ("the '164 patent"). D.I. 1. McKesson filed a First Amended Complaint on October 1, 2004. D.I. 7. On November 1, 2004, TriZetto filed an Answer and Counterclaim asserting, *inter alia*, that the claims of the '164 patent were invalid under 35 U.S.C. §§ 102 and/or 103. D.I. 10. Fact discovery on all issues closed on September 16, 2005, and expert discovery on all issues was completed by November 30, 2005. D.I. 28 and 58.

Trial on McKesson's infringement claim commenced on April 17, 2006. On April 26, 2006, TriZetto was found to be directly infringing and actively inducing the infringement of claims 1 and 2 of the '164 patent. (D.I. 358.) Motions concerning indefiniteness and TriZetto's other invalidity defenses are scheduled to be heard on August 2, 2006. (D.I. 362.) Trial on all remaining issues is scheduled to commence on October 3, 2006. *Id.*

---

[1]    McKesson has filed with this brief a motion for leave to file its cross-motion for summary judgment.

## II.    SUMMARY OF ARGUMENT.

### A.    Indefiniteness

1.    As set forth in McKesson's motion for summary judgment regarding TriZetto's indefiniteness defense (D.I. 371), the law is clear and disposes of TriZetto's indefiniteness defense when applied to the undisputed record here. "[I]f a claim is subject to construction, *i.e.*, it is not insolubly ambiguous, it is not invalid for indefiniteness." *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1372 (Fed. Cir. 2004). The claim language at issue, "non-medical criteria," is not only subject to construction, it has been construed. This fact alone is dispositive, and TriZetto's only response is to ignore it ever happened. TriZetto's argument is without merit.

2.    TriZetto's attempt to create the appearance of some complexity or inconsistency falls flat. As a threshold matter, TriZetto's argument is expressly founded upon the erroneous premise that, despite the plain language of its Order, the Court elected not to consider the appropriate meaning of this disputed claim term. Moreover, TriZetto ignores the testimony of McKesson's expert that the ordinary meaning of non-medical criteria is clear. This testimony was quoted to the Court during claim construction and conclusively establishes that "non-medical criteria" is amenable to construction. Finally, any conceivable question about this point was dispelled by the Court's instructing the jury that the term should be afforded its ordinary meaning and the jury's application of that definition.

### B.    Written Description

1.    TriZetto's argument that the '164 patent does not adequately describe determining whether medical service codes are mutually exclusive due to non-medical criteria ignores the relevant law and facts. Both defeat its motion. It is settled that

a patent specification need not include an explicit, *verbatim* recitation of every claim element. A patent need only disclose what is claimed so that one skilled in the art would have understood the inventors possessed that subject matter at the time of filing. That is precisely what is disclosed in the '164 patent as evidenced by Dr. Musen's testimony that the '164 patent describes the determination based on non-medical criteria recited in claim 2. This testimony stands unrebutted and preclude summary judgment in TriZetto's favor. In fact, summary judgment should be granted in McKesson's favor on this issue.

III.    SUMMARY OF RELEVANT FACTS.

    A.    **Indefiniteness**

        As a part of the claim construction proceedings, the parties submitted a Joint Statement of Disputed Claim Terms and Proposed Construction, which had several terms that McKesson proposed were entitled to their ordinary meaning, and TriZetto agreed that they did not need construction. (*See* D.I. 148.) As to the term "non-medical criteria," McKesson asserted that it should carry its ordinary meaning and that no further construction of this language was necessary. (*Id.* at 9) TriZetto argued that the claim term could not be construed because it was indefinite. (*Id.*) The parties completed their briefing on claim construction to the Court.

        After a hearing on the issue, the Court issued its claim construction order:

        [H]aving heard oral argument and having reviewed the papers submitted in connection with the parties' proposed claim construction; and concluding that the invention of a patent referenced below is directed to a database and the means for interacting with said database;

        It is ORDERED that the disputed claim language in United States Patent No. 5,253,164 ("the '164 patent"), as identified by the above referenced parties, shall be construed consistent with the tenets of claim construction set forth by the United States Court of Appeals for the Federal Circuit in Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005), as follows:

3

(D.I. 307 at 1.)

The Court proceeded to construe the term "non-medical criteria" after this statement by leaving it unchanged, consistent with McKesson's proposed construction that the term have its ordinary meaning. (*Id.* at 18.) The Court also instructed the jury that the term should be afforded its ordinary meaning. (D.I. 354 at 21 ("First, determine the scope of the asserted claim by reading the claim language, limitation by limitation, as those limitations have been construed by the court or, if they have not been specifically construed, according to their ordinary meaning.").) Based on this construction the jury returned an infringement verdict.

### B.    Written Description

Dr. Musen testified at length at his deposition regarding how the "EP" rule, illustrated in Example 17 of the '164 patent, described the claimed determination based on non medical criteria. (*See* Barlow Decl., Ex. 1 at 84:13-88:22; 97:16-98:22; 279:23-281:10.) TriZetto did not contradict the extensive testimony by Dr. Musen that establishes that the inventors were in possession of the invention of claim 2.

### IV.    STANDARD FOR GRANTING SUMMARY JUDGMENT.

Summary judgment is proper if "there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). If the moving party has shown an absence of material dispute, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting FED. R. CIV. P. 56(e)). The mere existence of some evidence supporting the nonmoving party will not defeat a motion for summary judgment.

*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, there must exist "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* As this Court has held, "[i]f the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law." *Boston Scientific Scimed, Inc. v. Cordis Corp.*, 392 F. Supp. 2d 676, 680 (D. Del. 2005). Further, the court must take into account the clear and convincing evidentiary standard of proof required to demonstrate invalidity when evaluating a motion for summary judgment. *Eli Lilly and Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001).

## V.    TRIZETTO'S CHALLENGE TO THE DEFINITENESS "NON-MEDICAL CRITERIA" FAILS AS A MATTER OF LAW.

### A.    TriZetto Disregards The Legal Effect Of The Court's Prior Claim Construction And Submission Of The Term To The Jury.

Although TriZetto concedes that "[w]hen indefiniteness is asserted, ordinary principles of claim construction apply," (D.I. 374 at 8), it fails to acknowledge the previous application of these principles by the Court during claim construction and the Court's conclusion that "non-medical criteria" should be accorded its ordinary meaning. (*See* D.I. 307 (Memorandum Order, addressing all disputed claim language and providing specialized constructions where determined to be necessary).)   In its brief, TriZetto acknowledges that it is restating the same argument it raised in its claim construction briefs. (D.I. 374 at 5 (citing D.I. 158 (TriZetto's Opening Claim Construction Brief) at 27-29).) However, TriZetto ignores that since it first argued that "non-medical criteria" could not be construed, the Court provided its construction of every disputed element of claim 2 — including "non-medical criteria."

As McKesson details more fully in its own motion for summary judgment regarding TriZetto's alleged § 112 defenses (*see* D.I. 371 at 11-14), the fact that the Court was already able to construe the term is now dispositive. *Bancorp*, 359 F.3d at 1372 ("***[I]f a claim is subject to construction, i.e., it is not insolubly ambiguous, it is not invalid for indefiniteness.***") (citations and internal quotations omitted) (emphasis added); *Praxair, Inc. v. ATMI, Inc.*, No. 03-1158-SLR, 2005 WL 3159054, at *2 (D. Del. Nov. 28, 2005) (D.I. 378, Ex. 12) ("Because the court was able to construe the limitation . . ., the claims are definite, as a matter of law."). This rule applies equally to constructions which adopt a term's ordinary meaning. *Arthocare Corp. v. Smith & Nephew, Inc.*, No. 01-504-SLR, 2003 WL 1856436, at *5 (D. Del. Apr. 9, 2003) (Barlow Decl., Ex. 6) ("The court disagrees [with defendant's indefiniteness argument]. The court has found that the claim limitations at issue are to be given their ordinary meaning."). This clear precedent compels the denial of TriZetto's summary judgment motion.[2]

TriZetto has no answer to this. Instead, its only response is to deny that the Court's construction of the term ever took place. (*See* D.I. 374 at 1 ("The Court . . . did not construe the term 'non-medical criteria,' which appears in Claims 2 and 14, or address TriZetto's contention that the term was indefinite.")); (*id.* at 5 ("In its Order, the Court did not specifically construe the phrase 'non-medical criteria' or address TriZetto's indefiniteness contention, presumably leaving the issue of indefiniteness for this invalidity phase of the case.")); (*id.* at 10 n.1 ("During claim construction, at McKesson's urging, the

---

[2]    As further set forth in McKesson's summary judgment papers, this precedent also compels granting McKesson summary judgment on the same issue. Indeed, it is well established that the determination of whether "a patent claim is invalid for failure to meet the definiteness requirement of 35 U.S.C. § 112, ¶ 2 is 'a *legal conclusion* that is drawn from the court's performance of its duty as the construer of patent claims[, and] therefore, like claim construction, is *a question of law*[.]'" *All Dental Prodx, L.L.C. v. Advantage Dental Prods., Inc.*, 309 F.3d 774, 778 (Fed. Cir. 2002) (citation omitted) (emphasis added); *see also Bancorp*, 359 F.3d at 1371 (same).

Court did not construe the term 'non-medical criteria,' instead leaving the issue of indefiniteness to be decided in connection with invalidity.").) The apparent basis for TriZetto's startling claim is that the Court did not *expressly* reject TriZetto's indefiniteness arguments in its Memorandum Order or *expressly* state in the Order that "non-medical criteria" is to have its ordinary meaning. This argument is frivolous.

*First*, the argument is contradicted by the parties' Joint Statement Of Disputed Claim Terms And Proposed Construction (D.I. 148), in which TriZetto agreed with McKesson that claim terms for which the Court would apply an "ordinary meaning" do not need express construction by the Court. (*See, e.g.*, D.I. 148, Exh. A at 1 ("a computer system: TriZetto agrees with McKesson that this term does not need construction").) The Court's Order construed numerous elements pursuant to their express language in the '164 patent claims, as it did with term "non-medical criteria." (*See, e.g.*, D.I. 307 at 2 ("operating on a predetermined database"); *id.* at 4 ("receiving at least one claim").) Nevertheless, TriZetto argues that the Court affirmatively declined to consider the proper construction of these elements because it did not routinely recite that their language did not require further construction and carried its ordinary meaning. TriZetto cannot and does not attempt to square this argument with the parties' acknowledgement that this was the appropriate treatment of a host of terms.[3]

*Second*, TriZetto's position is contradicted by settled claim construction practice. As per the Federal Circuit, "words of a claim 'are generally given their ordinary and customary meaning'" and, unless a court determines that the term requires special

---

[3]     This also explains why there are *no* express determinations by the Court concerning whether a term is to be construed using its ordinary meaning. Under TriZetto's logic, the absence of any express determinations means that the Court did not decide that any disputed words should be construed using their ordinary meaning.

examination, the "ordinary and customary meaning . . . involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-14 (Fed. Cir. 2005) (citations omitted). Ordinary meaning is the "baseline" upon which all further construction is based. *Id.* at 1313. Thus, contrary to TriZetto's assertion, words are not meaningless until a court affirmatively asserts that they are to have "ordinary meaning"; rather, claim terms begin with their ordinary meaning and, if necessary, can be further specially defined.[4]

*Third*, the argument is contradicted by the Court's Claim Construction Order, which applied the term "non-medical criteria" no less than *seven* times in defining other claim terms. (D.I. 307 at 18, 19 & n.88, 20 & n.92.) TriZetto's incredible suggestion that the Court deliberately used a term in its claim construction that it was declining to construe is inconsistent with the Court's explanation that it "reviewed the papers submitted in connection with the parties' proposed claim construction" (*i.e.*, including TriZetto's indefiniteness arguments) and construed "the disputed claim language." (D.I. 307 at 1.) It is also inconsistent with the Court's statement that it is construing the terms "consistent with the tenets of claim construction set forth by the United States Court of Appeals for the

---

[4]     Where, as here for the majority of the terms at issue, the ordinary meaning of terms is clear, the terms may be read to the jury without further construction by the Court. *See, e.g., Lucent Techs., Inc. v. Extreme Networks, Inc.*, 367 F. Supp. 2d 649, 671 (D. Del. 2005) ("the Court construes the disputed terms as follows: 'arrangement' is construed consistently with its plain meaning as 'arrangement' [and]… declines to further interpret the term 'arrangement.'"); *Warrior Lacrosse, Inc. v. STX, LLC*, No. 04-70363, 2005 WL 1378752, at *8 (E.D. Mich. June 2, 2005) (holding claim terms were unambiguous and did not require construction where there was no "language in the specification which represents a clear disavowal of the ordinary and plain meaning of these terms") (Barlow Decl, Ex. 3); *Orion IP, LLC v. Staples, Inc.*, No. 2:04-CV-297, 2005 WL 3447887, at *4 (E.D. Tex. Dec. 15, 2005) ("'Customer' is not used in the claims in any manner different from that of its ordinary meaning in the art, which is no different than its ordinary lay meaning. 'Customer' does not require construction."); *ICU Med., Inc. v. B. Braun Med., Inc.*, 344 F. Supp. 2d 663, 673 (N.D. Cal. 2004) ("The Court finds that the terms 'substantially flat' and 'substantially flush' are unambiguous and therefore require no construction.").

Federal Circuit in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005)," *id.*, which, as shown above, holds that ordinary meaning is the "baseline" upon which all construction begins. Finally, the Court's jury instruction confirms its thinking: "First, determine the scope of the asserted claim by reading the claim language, limitation by limitation, as those limitations have been construed by the court or, if they have not been specifically construed, according to their ordinary meaning." (D.I. 354 at 21.)

TriZetto's one attempt at avoiding the Court's prior construction, by denying it occurred, falls completely flat. Under *Bancorp*, the Court should deny TriZetto's motion.

## B.    TriZetto's "Substantive" Arguments Are Off Point And Contradicted By The Record.

In an apparent attempt to manufacture the appearance of complexity, TriZetto puts forth an assortment of arguments, most of them previously used, as to why the meaning of "non-medical criteria" is supposedly impenetrable. Under *Bancorp*, those arguments should not be considered. However, even on their merits, they do not come close to meeting TriZetto's burden of proving indefiniteness by clear and convincing evidence. *See N. Am. Vaccine, Inc. v. Am. Cyanamid Co.*, 7 F.3d 1571, 1579 (Fed. Cir. 1993).

### 1.    TriZetto misstates the relevance of the specification.

According to TriZetto, "non-medical criteria" is indefinite because "the term is not defined in the patent specification." (D.I. 374 at 1-2; *see also id.* at 12 ("Because the specification itself fails to define 'non-medical,' or provide the slightest guidance as to what 'non-medical criteria' might be, Claim 2's use of the term renders it indefinite.").) TriZetto's position is directly at odds with Federal Circuit precedent. In *Verve v. Crane Cams, Inc.*, 311 F.3d 1116, 1119-20 (Fed. Cir. 2002), the Court held that the lower court erred "in law" in concluding that a term was indefinite simply because it was not defined in

9

the specification. Under this and other Federal Circuit precedent, the question is *not* whether the phrase "non-medical criteria" was expressly identified in the specification, but whether the general application of the canons of construction renders a sufficiently definite meaning. *Id.* at 1119-20 (both intrinsic and extrinsic evidence may be used by a court in determining a term's definiteness); *see also All Dental*, 309 F.3d at 780 ("Only after a thorough attempt to understand the meaning of a claim has failed to resolve material ambiguities can one conclude that the claim is invalid for indefiniteness.").[5] It is this very function that the Court already performed during claim construction, and it concluded that "non-medical criteria" should be given its ordinary meaning.

> **2.  TriZetto's arguments are premised upon its refusal to acknowledge the definition of "non-medical criteria" provided to the Court during claim construction.**

To manufacture its argument that "non-medical criteria" lacks an ordinary meaning, TriZetto tellingly ignores the ordinary meaning of the term provided to the Court when it concluded the claim element did not require further construction. At his deposition, Dr. Musen explained the ordinary meaning of "non-medical criteria" from the perspective of one skilled in the art. This testimony alone establishes that the term "non-medical criteria" is unquestionably amenable to construction, and therefore definite:

> I provided a definition which I think is reasonable and I think is -- would be assumed by . . . most people that a . . . criterion which is medical deals with the procedure applied to the patient as a -- and is a consequence of the

---

[5]       The two district court cases relied upon by TriZetto (*see* D.I. 374 at 12) do not support the proposition for which they are being cited. *Acacia Media Tech. Corp. v. New Destiny Internet Group*, 405 F. Supp. 2d 1127, 1138-39 (N.D. Cal. 2005), concerned the need for *system claims* – not method claims like those at issue here – to recite the structural relationships of essential elements. *Semmler v. American Honda Motor Co.*, 990 F. Supp. 967, 975 (S.D. Ohio 1997), involved a proposed formulation of a term by one of the parties and the Court indicated that if it adopted that formulation, the claim might be rendered indefinite; but the Court did not adopt that definition, nor did it hold that the term was indefinite because of the absence of a fixed standard in the specification. *See id.* at 974-75.

medical condition of the patient as opposed to a non-medical criterion which is a function of the mechanics of setting up the procedure of billing.

(D.I. 255 at 27-28 (quoting Musen Dep. at 54).)

Rather than confront this, TriZetto argues that because non-identical examples of such criteria exist, the term must have multiple meanings and cannot be construed or McKesson must be taking inconsistent positions. TriZetto's argument is legally insufficient and factually erroneous.

Legally, the fact that different people may reach different conclusions as to the meaning of a claim term does not establish that the term is indefinite:

It may of course occur that persons experienced in a technologic field will have divergent opinions as to the meaning of a term, particularly as narrow distinctions are drawn by the parties or warranted by the technology. Patent disputes often raise close questions requiring refinement of technical definitions in light of particular facts. The judge will then be obliged to decide between contending positions; a role familiar to judges. But the fact that the parties disagree about claim scope does not of itself render the claim invalid.

*Verve*, 311 F.3d at 1120.

Factually, the examples TriZetto has selected in its attempt to conjure some inconsistency are actually *consistent* with the ordinary meaning the Court was presented during claim construction. TriZetto argues that McKesson's predecessor, HPR, asserted that the rebundling of multiple medical service codes into a code for a single procedure must be based on medical criteria. (*See* D.I. 374 at 6.) TriZetto then attempts to contrast that assertion against Dr. Musen's explanation that rebundling may be based upon non-medical criteria. (*See id.* at 7.) However, contrary to TriZetto's attempt to portray HPR and McKesson as taking "precisely the opposite" positions, neither HPR nor Dr. Musen suggested that all code-bundling questions are either exclusively "medical" or exclusively

"non-medical." Instead, both articulated that bundling questions can arise in *both* medical and non-medical contexts. HPR stated that "it might be determined that selected combinations of codes are *medically inappropriate* when the procedures involved are in fact subsumed within larger, inclusive procedures" but that other rebundling examples may be based on "non-medical" criteria because "various cost factors *unrelated to clinical criteria* may effect selected combinations of code." (D.I. 374 at 14-15 (emphasis added, quoting in Boyle Decl. ¶ 15, TriZetto Exh. 12).) Similarly, Dr. Musen testified that rebundling questions may be based on "medical" or "non-medical criteria":

> See, in my mind it -- it's pretty straightforward, that if I'm dealing with combinations of codes that relate to the medical procedure. The example, of course, here is cholecystectomy ... with sphincterotomy versus cholecystectomy as one code and sphincterotomy as the second code. What I -- I think anyone would assume the ordinary meanings there, that those are medical procedures that are typically combined and should not be billed separately. *I think that, unambiguously, is a medical relationship.* If I look at whether I'm going to bill for both the lumbar puncture and the lumbar puncture tray, *unambiguously, in my mind, that is a non-medical distinction* because the two codes relate to the mechanics of how you get billed and reimbursed.

(D.I. 255, Ex. 5 at 58-59 (emphasis added).)

The fact that those skilled in the art are able to construe the term disposes of TriZetto's indefiniteness argument. In addition, the fact that HPR's and McKesson's positions are consistent with each other dooms TriZetto's footnoted estoppel argument. *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (for judicial estoppel, requiring that "a part's later position must be 'clearly inconsistent' with its earlier position") (citations omitted).

3.   **TriZetto's reliance on inventor testimony is misplaced; its own expert could determine the "metes and bounds" of claim 2.**

TriZetto also argues that "non-medical criteria" is indefinite because "the inventors were unable to advance a consistent definition" for the term. (D.I. 374 at 5; *see also id.* at 12-14.) Again, TriZetto ignores the testimony from Dr. Musen that was before the Court when it concluded "non-medical criteria" required no further construction and makes no effort to explain how the examples given are inconsistent with the term's ordinary meaning. Moreover, TriZetto's characterization of the inventors' testimony includes inexplicable inaccuracies.

For example, TriZetto repeatedly cites to the deposition of Dr. Hertenstien, one of the '164 patent's inventors, from the HPR-GMIS case for the assertion that "Dr. Hertenstein testified in 1994 that all of the rules that disallowed 'unbundling' based on a code's relationship to another code were *medical*." (*See* D.I. 374 at 5, 13, 18, 22 (citing Ex. 7 at 53:15-54:4 and 64:13-23).) However, Dr. Hertenstein never makes any statement about "all of the rules that disallowed 'unbundling,'" let alone attribute them to or distinguish them from "medical" or "non-medical" criteria -- terms never referenced in the cited testimony.

Regardless of its departure from the record it cites, TriZetto has no support in the case law for its reliance on the inventors' testimony. To the contrary, the Federal Circuit has held that "*Markman* requires us to give no deference to the testimony of the inventor about the meaning of the claims." *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1580 (Fed. Cir. 1996). The Court also found that terms are subject to construction even where an inventor did not understand a term at issue. *See LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.*, 275 F.3d 1347, 1359-60 (Fed. Cir. 2001) (affirming district court

finding that patent was not indefinite, despite testimony from a co-inventor that he did not understand what the claim limitation "substantially completely wetted" meant).

Indeed, in its focus on the inventors' testimony, TriZetto reduces the testimony of its only expert with experience in medical claims processing, Dr. Hawley, to a footnote. (*See* D.I. 374 at 19, n.7.) TriZetto's argument is directly contrary to Dr. Hawley's deposition testimony:

| TriZetto's Argument | Dr. Hawley's Testimony |
|---|---|
| "[T]here is nothing supporting a conclusion that the term reasonably delineates the *metes and bounds* of claim 2." (D.I. 374 at 19) | Q So you were able to determine for yourself the metes and bounds of each claim so you could decide whether what falls within those metes and bounds would be obvious?<br>A Correct.<br>Q Okay. And that's true for every claim in the '164 patent that you reviewed?<br>A Yes. Yes.<br>(Barlow Decl, Ex. 2 at 224:20-225:2) |

TriZetto's attempt to discount this testimony by excerpting an incomplete portion of one of Dr. Hawley's other answers during his deposition is disingenuous and unavailing. (*See* D.I. 354 at 19 n.7 (quoting Hawley Dep. at 213:19-214:19).) Indeed, a review of the *entire passage* makes clear that the testimony TriZetto cites led to Dr. Hawley's testimony above that he could, in fact, determine the metes and bounds of each claim:

> Q    Okay. So -- so maybe we'll short-circuit all of this. There -- there was no term anywhere in any of the '164 claims you looked at that prevented you from ascertaining sort of the scope of that claim in a sufficient manner to enable you to prepare your invalidity opinion?
>
> A    Correct.

(Barlow Decl, Ex. 2 at 224:13-19)

The Court's previous construction of "non-medical criteria" establishes the term's definiteness as a matter of law. TriZetto's refusal to acknowledge that construction, or the most relevant portions of the record, confirms this.

## VI. TriZetto's Challenge To The Adequacy Of The '164 Patent's Written Description Fails As A Matter Of Law.

TriZetto's cursory request for summary judgment of inadequate written description neglects the most relevant law and evidence. The uncontradicted testimony of McKesson's expert establishes that the '164 specification describes determining whether medical service codes on a claim are "mutually exclusive due to non-medical criteria" and therefore satisfies the written description requirement. TriZetto does not cite or challenge this testimony in its brief and cannot overcome it.

### A. Section 112 Does Not Require A Verbatim Recitation of Every Claim Term In The Specification.

The written description requirement of 35 U.S.C. § 112 requires that a patent's disclosure "convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession *of the invention*." *Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991) (emphasis original). Although not addressed in TriZetto's brief, the Federal Circuit has made clear that "compliance with the written description requirement is a question of fact" and that a patent "'does not . . . have to provide *in haec verba* support for the claimed subject matter at issue.'" *Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963, 967-68 (Fed. Cir. 2006) quoting *Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1364 (Fed. Cir. 2003). Thus, the relevant factual inquiry is not whether the '164 patent explicitly labels criteria as "non-medical" but whether determinations based on such criteria are described in the patent such that one skilled in the art would have understood that the inventors disclosed what is claimed.

Dr. Musen's testimony on this point stands unchallenged and precludes summary judgment in TriZetto's favor.

### B.    The Uncontradicted Testimony Of McKesson's Expert Defeats TriZetto's Motion.

TriZetto examined Dr. Musen at length at his deposition regarding how the "EP" rule, illustrated in Example 17 of the '164 patent, described the claimed determination based on non-medical criteria:

> Q. Can you find -- can you find the EP rule in any of the claims that we've got here, in any of the 16 claims?
> A. Yes. ... I think in Claim 2, in a particular situation where a particular service code was mutually incompatible with another service code based on the place of service, that represents that kind of a relationship. ... That presumably would be non-medical.
> Q. Okay. Place of service would be non-medical?
> A. Well, again, it -- it's a function of the artifact of billing rather than a procedure as applied directly to the patient. The -- the constraint is one that deals with the -- with the setting of care and what is reimbursable in one setting versus another, as – as I read the rule at least --

(Barlow Decl., Ex.1 at 97:16-98:22.)

> Q. Where in the claims, starting at Column 117, where would that [EP] rule -- which claim or where in the claims would that rule be carried out, or where is that rule embodied? ...
> A.    Claim 2, for example, is essential for that particular rule that we just discussed. It deals with rejecting medical service codes, which are mutually exclusive due to non-medical criteria. And I don't know if you agree with me, but I would say that in this situation, billing for the two types of CT scans is not related to patient care. It's an artifact of the billing process. Therefore, I view that as a non-medical criterion. ...
> Q. Okay. Let me break down a couple things that you said. First of all, the -- the non-medical criteria, what is the actual criterion that you were just applying that makes, as we've said, CT scan with contrast, CT scan without contrast, what makes those either mutually exclusive, or what is the non-medical criterion that's applied?
> A. To state it informally, it would be that the patient is undergoing a single procedure in one sitting that happens to have two components where the, in this case, the payer has determined that those components need to be considered as a unit and, therefore, not paid separately. It's non-medical because it's -- it's a function of how the payer has decided to manage reimbursement. It has nothing to do with the state of the patient. The

16

patient is not even informed, necessarily, of what -- of how the procedure is
billed.

(*Id.* at 84:13-88:22.)

> Q.   ... could you describe for me what you understand the EP rule listed on
> -- in Columns 49 and 50 to describe?
> A.   It states that if there's a code that appears with another code in some
> range and there is a particular place of service defined by yet another code,
> then the initial code is excluded and the subsequent codes are kept.  It's an
> example of a non-medical constraint. ...
> Q.   So you would -- just so I understand, the rule described in EP of
> Appendix B of the '164 patent defines a situation where two codes would
> be mutually exclusive to one another in a claim based on a non-medical
> criteria where the non-medical criteria is the place of service?
> A.   Precisely.

(*Id.* at 279:23-281:10.)

TriZetto did not address this testimony in its brief or offer any contrary testimony

from any of its experts.  As a result, Dr. Musen's opinion stands uncontradicted and

establishes that the inventors were in possession of the invention of claim 2.  *See Space*

*Systems/Loral, Inc. v. Lockheed Martin Corp.*, 405 F.3d 985, 989-90 (Fed. Cir. 2005)

(summary judgment of inadequate written description reversed where uncontroverted

expert testimony established that patent described a single example of claimed

calculation).[6]  Because the adequacy of a patent's written description is a factual question

centered on the understanding of one skilled in the art, expert testimony is particularly

relevant, and often necessary, to its resolution.  Indeed, the *Vas-Cath* decision TriZetto

---

[6]     TriZetto's citation to *LizardTech* is unavailing, as that decision was based, in part, on lack
of an enabling disclosure—a separate requirement under section 112 that TriZetto has never
contended is not satisfied.  *See LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1345
(Fed. Cir. 2005) ("Whether the flaw in the specification is regarded as a failure to demonstrate that
the patentee possessed the full scope of the invention recited in claim 21 or a failure to enable the
full breadth of that claim, the specification provides inadequate support").  *See also LizardTech,
Inc. v. Earth Res. Mapping, Inc.*, 433 F.3d 1373, 1380 (Fed. Cir. 2006) (Rader, J. dissenting from
denial of rehearing *en banc*: "Far from explaining a neutral standard for applying written
description, *LizardTech* seems to fall back on enablement, using the latter as a proxy for the
former.").

cites reversed a grant of summary judgment of inadequate written description based upon the defendant's failure to address the testimony of the patentee's expert. 935 F.2d at 1567 ("Vas-Cath submitted no technical evidence to refute [the patentee's expert's] conclusions. … We hold that the Ash declaration and Vas-Cath's non-refutation thereof, without more, gave rise to a genuine issue of material fact inappropriate for summary disposition.") (citing *Hesston Corp. v. Sloop*, 1988 U.S.Dist. LEXIS 1573, *13 (D. Kansas) (summary judgment on § 112 "written description" issue inappropriate where resolution of what parent disclosure conveyed to those skilled in the art may require examination of experts, demonstrations and exhibits). (Barlow Decl., Ex 4). This Court's decision in *Stambler* similarly held that an expert's opinion that "the patent does describe [the disputed claim element]" raised "question[s] … for factual resolutions by the jury." *Stambler v. RSA Security, Inc.*, 2003 WL 252149, *5 (D. Del. Jan. 29, 2003). (Barlow Decl., Ex. 5).

Based on the Patent Office's determination that the '164 patent claims satisfy all the requirements for patentability, it is TriZetto's burden to establish inadequate written description by clear and convincing evidence. It has not approached that burden or even addressed the most relevant evidence demonstrating that the '164 patent describes determining whether codes are mutually exclusive due to non-medical criteria. The law is clear and TriZetto's motion must be denied and summary judgment on this issue should be granted in McKesson's favor.

## VII.    CONCLUSION.

For the reasons stated above, McKesson respectfully requests that the Court deny TriZetto's Motion for Summary Judgment of Invalidity for Indefiniteness and Failure to Adequately Describe the Claimed Invention in its entirety and grant summary judgment in McKesson's favor in connection with TriZetto's Adequate Description defense.

By: _____

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899
(302) 651-3000

Attorneys for Plaintiff
McKesson Information Solutions LLC

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, CA  94301
(650) 470-4500

Dated:  June 15, 2006