IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC, | ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 04-1258-SLR |
| v. | ) ) ) | |
| THE TRIZETTO GROUP, INC., | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF MCKESSON INFORMATION SOLUTION LLC'S
OPENING BRIEF IN SUPPORT OF ITS MOTION TO STRIKE ALLEGED
PRIOR USES FIRST ASSERTED AFTER THE CLOSE OF DISCOVERY**

    Thomas J. Allingham II (#0476)
    Michael A. Barlow (#3928)
    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
    One Rodney Square
    P.O. Box 636
    Wilmington, Delaware 19899
    (302) 651-3000

    Attorneys for Plaintiff
    McKesson Information Solutions LLC

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500

DATED: June 15, 2006

## TABLE OF CONTENTS

**Page**

I. NATURE AND STAGE OF PROCEEDINGS ................................................................. 1

II. SUMMARY OF ARGUMENT ........................................................................................ 1

III. STATEMENT OF RELEVANT FACTS ........................................................................ 3

    A. The Court Limited TriZetto to the Prior Art References and Prior Uses that TriZetto Asserted During Fact Discovery. ................................. 3

    B. Contrary to the Court's Orders, TriZetto Has Asserted Four New Prior Uses Since the Close of Fact Discovery. ........................................... 4

    C. TriZetto's Belated Assertion of New Prior Art Could Not Have Been in Response to any Change in Position by McKesson Because McKesson Did Not Change Its Position. ................................................... 6

IV. THE FEDERAL RULES OF CIVIL PROCEDURE, THE COURT'S OWN PRECEDENT AND ITS RULINGS IN THIS CASE REQUIRE THAT ALL PRIOR ART FIRST ASSERTED BY TRIZETTO AFTER CLOSE OF FACT DISCOVERY BE STRICKEN ........... 9

    A. TriZetto is Limited to the Prior Art that It Asserted During Fact Discovery. ............................................................................................. 9

    B. TriZetto Has Violated Its Discovery Obligations and the Court's Orders by Continuing to Assert New Prior Art Long After the Close of Fact Discovery. ................................................................................ 11

V. CONCLUSION ............................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Finch v. Hercules, Inc.,*
  1995 WL 785100 (D. Del. 1995) .................................................................................... 13

*Praxair, Inc. v. ATMI, Inc.,*
  231 F.R.D. 457 (D. Del. 2005) .............................................................................. 9, 10, 13

*Praxair, Inc. v. ATMI, Inc.,*
  Case No. 03-1158-SLR, 2005 WL 3159054 (D. Del. November 28, 2005) ................... 10

**Statutes**

Fed. R. Civ. P. 37(c)(1) .......................................................................................................... 9

Plaintiff McKesson Information Solutions LLC ("McKesson") submits its opening brief in support of its motion to strike alleged prior uses that were untimely asserted by defendant The TriZetto Group, Inc. ("TriZetto") after the close of fact discovery.

I. **NATURE AND STAGE OF PROCEEDINGS.**

On September 13, 2004, McKesson filed this lawsuit against TriZetto for willfully infringing McKesson's U.S. Patent No. 5,253,164 ("the '164 patent"). (D.I. 1.) McKesson filed a First Amended Complaint on October 1, 2004. (D.I. 7.) On November 1, 2004, TriZetto filed an Answer and Counterclaim asserting, inter alia, that the claims of the '164 patent were invalid under 35 U.S.C. §§ 102 and/or 103. (D.I. 10.) Fact discovery on all issues closed on September 16, 2005, and expert discovery on all issues was completed by November 30, 2005. (D.I. 28 and 58.)

Trial on McKesson's infringement claim commenced on April 17, 2006. On April 26, 2006, TriZetto was found to be directly infringing and inducing the infringement of claims 1 and 2 of the '164 patent. (D.I. 358.) Trial on all remaining issues is scheduled to commence on October 3, 2006. (D.I. 362.)

On June 1, 2006, TriZetto filed a Motion for Summary Judgment of Invalidity on Grounds of Anticipation and Obviousness, in which it asserted that infringed claims 1 and/or 2 were invalid in view of, *inter alia*, ClaimFacts, AutoCoder, Advanced Medlogic System ("AMS") and Health Care Processing System ("HCPS"). (D.I. 380.)

II. **SUMMARY OF ARGUMENT.**

The Court should grant McKesson's motion to strike and preclude TriZetto from relying on prior uses asserted for the first time, weeks and months after the close of fact discovery. The Federal Rules of Civil Procedure, the Court's own precedent, and the Court's rulings in this case are all in accord that an accused infringer is limited to prior art

1

asserted during fact discovery. TriZetto has repeatedly flouted its discovery obligations and the Court's authority by continually asserting new prior art after the close of discovery. Specifically, TriZetto now asserts four prior uses—ClaimFacts, AutoCoder, AMS and HCPS—that were not identified or asserted by TriZetto at any time during fact discovery.

TriZetto cannot dispute that it waited until more than a month after close of fact discovery to assert AMS and more than eight months after close of fact discovery to assert ClaimFacts, AutoCoder and HCPS. Nor can TriZetto offer any compelling justification for its failure to timely disclose these alleged prior uses. During discovery, TriZetto was well aware of all four of these alleged prior uses and sought and obtained documents, testimony and other information regarding each of them. Nothing prevented TriZetto from asserting these four alleged prior uses during discovery, and indeed, TriZetto had no problem identifying more than 165 other pieces of prior art during discovery.

TriZetto's continued assertion of previously undisclosed prior art has caused substantial harm to the Court and McKesson. TriZetto's actions represent a clear disregard for the Court's authority and cannot be condoned. In addition, McKesson has substantially and justifiably relied on TriZetto's prior art disclosures during discovery and the Court's rulings limiting TriZetto to that prior art in preparing to defend against TriZetto's invalidity assertions. Allowing TriZetto to rely on these previously unasserted prior uses will unfairly prejudice McKesson and unjustly reward TriZetto for violating its discovery obligations and the Courts' orders.

Accordingly, McKesson respectfully requests that the Court grant its motion to strike and preclude TriZetto from relying or otherwise presenting any evidence on ClaimFacts, AutoCoder, AMS and HCPS in connection with its invalidity defenses.

III.  STATEMENT OF RELEVANT FACTS.

### A. The Court Limited TriZetto to the Prior Art References and Prior Uses that TriZetto Asserted During Fact Discovery.

In December 2004, shortly after discovery commenced in this action, McKesson served an interrogatory requesting that TriZetto "[s]tate in complete detail each and every basis for your assertion that the claims of the '164 patent are invalid under 35 U.S.C. §§ 102 or 103." (D.I. 378, Ex. 1 at 3.) TriZetto's original response consisted entirely of objections. (*Id.* at 4.) Between May and July 2005, TriZetto supplemented its interrogatory response three times, each time alleging scores of additional prior art. (*Id.* at 4-38.) By its Third Supplemental Response, which was served on July 27, 2005, TriZetto had identified more than 150 alleged prior art references. (Id. at 22-38.) At a discovery conference held on August 2, 2005, TriZetto represented to the Court and McKesson that it would only rely on nineteen of the references. (D.I. 80 at 13 ("COURT: ... Basically, what I believe you're saying is that for purposes of trial, TriZetto would only be prepared to present evidence to the jury of no more than 19 prior-art references in connection with any anticipation or obviousness defenses. That's where you stand right now? [TRIZETTO]: Correct.").)

On September 13, 2005, three days before the close of fact discovery, TriZetto served a Fourth Supplemental Response in which it asserted for the first time fifteen prior art systems. (D.I. 378, Ex. 1 at 62-64.)[1] At a hearing held on September 22, 2005, the

---

[1]  The asserted prior art systems were (1) AccuCode, (2) Blue Cross Blue Shield New Jersey, (3) Clinical Data Editor, (4) ClinicaLogic for ClaimFacts, (5) Clinical Review System a/k/a Chart'N'Coder, (6) CODEFINDER/DRGFINDER or Clinical Claims Editor, (7) CodeMaster PLUS, (8) Discorp Software, (9) ExClaim, (10) Interactive DRG Grouper, (11) MedChec, (12) MedClaim, (13) Medical Policy, (14) QGROUPER, and (15) Wilmer Information Systems. (*Id.*)

3

Court admonished TriZetto for its last-minute disclosure of new prior art: "There is just no excuse for waiting until September 13 to identify all of this new prior art." (D.I. 116 at 60.) On October 21, 2005, the Court issued an order again reproving TriZetto for its actions: "Three days before the close of discovery, defendant identified multiple new prior art references and prior uses, thus preventing full and fair opportunity for discovery." (D.I. 132 at 2.) Although the Court allowed TriZetto to proceed with the prior art it had disclosed by the end of fact discovery, the Court emphasized that its order did not open the door for TriZetto to assert more prior art and that TriZetto was limited to the prior art that it had asserted in fact discovery:

> I did not mean for the discovery to go on forever and ever. I was giving you the opportunity to try the late-filed prior art and *your prior art is limited to that disclosed by the close of discovery*...

(D.I. 138 at 13 (emphasis added).)

### B. Contrary to the Court's Orders, TriZetto Has Asserted Four New Prior Uses Since the Close of Fact Discovery.

Despite the fact that the Court expressly limited TriZetto to the prior art asserted during fact discovery and that fact discovery closed more than eight months ago, TriZetto continues to assert new prior art. In particular, TriZetto has asserted four new prior art systems since the close of fact discovery: (1) TriZetto's own ClaimFacts system (pre-ClinicaLogic), (2) Advanced Medlogic System ("AMS"), (3) AutoCoder, and (4) Health Care Processing System ("HCPS").[2]

TriZetto asserted AMS for the first time more than a month after close of fact discovery. Specifically, on October 24, 2005, TriZetto first identified AMS as allegedly

---

[2] Unless otherwise noted, the term "ClaimFacts" as used in this motion refers to the pre-ClinicaLogic version of ClaimFacts that TriZetto is now asserting as a prior use, not the version of ClaimFacts with ClinicaLogic that was found to infringe claims 1 and 2 of the '164 patent.

invalidating prior art in the report of its invalidity expert, Randall Davis. (D.I. 378, Ex. 2 at 20-24.) TriZetto concedes that during fact discovery, TriZetto knew about AMS and, in fact, sought and obtained documents and testimony about the alleged prior use. (D.I. 380 at 25-26.) Nevertheless, TriZetto did not assert AMS in any of its five interrogatory responses regarding the bases for TriZetto's § 102 and § 103 defenses. (D.I. 378, Ex. 1.) Notably, it was TriZetto's assertion of AMS after the close of discovery that prompted the Court to emphasize that "[TriZetto's] prior art is limited to that disclosed by the close of discovery." (D.I. 138 at 10-13.)[3]

After the Court held an infringement trial and TriZetto was found to infringe claims 1 and 2 of the '164 patent, TriZetto decided to assert three more previously undisclosed prior uses—ClaimFacts, AutoCoder and HCPS. These new prior uses were asserted for the first time in TriZetto's Motion for Summary Judgment of Invalidity on Grounds of Anticipation and Obviousness, which was filed on June 1, 2006, more than eight months after close of fact discovery. (D.I. 380 at 13-14.) As with AMS, these three prior art systems were known to TriZetto during fact discovery. TriZetto obviously has been well aware of ClaimFacts for many years since ClaimFacts is TriZetto's own product. TriZetto also does not dispute that it knew about and investigated AutoCoder and HCPS during fact discovery. (*Id.* at 24-25 & 29 n.6.) Nevertheless, TriZetto did not assert ClaimFacts, AMS or HCPS in its original or four supplemental interrogatory responses regarding the bases for its § 102 and § 103 defenses. (D.I. 378, Ex. 1.)

---

[3] At the November 7, 2005 hearing, McKesson verbally moved to strike AMS. (*Id.* at 42-43.) The Court, however, instructed McKesson to bring that motion during the invalidity phase. (*Id.*)

### C. TriZetto's Belated Assertion of New Prior Art Could Not Have Been in Response to any Change in Position by McKesson Because McKesson Did Not Change Its Position.

Apparently anticipating that McKesson would object to its assertion of new prior art in violation of the Court's rulings, TriZetto tries to concoct an explanation by arguing that McKesson changed positions at trial regarding the scope and construction of the determining steps of claims 1 and 2. Contrary to TriZetto's assertions, McKesson's position has not changed. The Court concluded that the determining steps of claims 1 and 2 were entitled to their ordinary meaning, which is the position McKesson has advanced since last July. Moreover, the types of determinations that McKesson argued and that the jury found were covered by the determining steps of claims 1 and 2 are the same types of determinations performed by the '164 patent's preferred embodiment and that have been disclosed in the patent since it issued in 1993. Indeed, it is clear that the only changed circumstance at trial that influenced TriZetto's decision to assert new prior art was the jury's verdict of infringement.

Unlike TriZetto, McKesson has not changed its claim construction arguments since the parties first exchanged proposed claim constructions on July 15, 2005 pursuant to the Court's Scheduling Order. McKesson has always stated the determining elements of claims 1 and 2 carry their ordinary meaning and do not require further construction. (D.I. 148 at 2.) The Court agreed and did not alter the express claim language in its construction of these terms. (D.I. 307.) Thus, the determining elements have been construed to mean exactly what they say, which is exactly what they said when TriZetto became aware of the patent years before this litigation. (Trial Tr. at 1152:15-18.)

McKesson also has not changed its position as to what the determining elements of claims 1 and 2 cover when given their ordinary meaning. Consistent with its plain

6

language, McKesson has argued throughout the case that claim 1, while unambiguously requiring the presence of a predetermined database, does not require the utilization of the predetermined database to perform the determining step. (D.I. 255 at 20 ("Because the ALLCODE database includes every code that could possibly be present in the predetermined database (the INTERACT database), determining that a code is not in the ALLCODE database necessarily determines that it is not present in the predetermined database.").)

TriZetto cannot possibly claim surprise about the fact that claim 1's determining step may be performed by reference to a separate database containing all codes that may possibly be included in the predetermined database because the '164 patent discloses this exact technique in its preferred embodiment: "If the entity which is requesting payment has provided a code entry or entries for the treatment given, then in step 9 it is determined whether the code entry is valid or invalid by reference to the ALLCODE database 11." (D.I. 7, Ex. A at 5:11-15.) Indeed, TriZetto expressly acknowledged in its own *Markman* brief that the preferred embodiment described checking an ALLCODE database, not the predetermined database, to make the determination recited in claim 1. (D.I. 158 at 20 ("...the only portion of the specification that appears to discuss the function of the 'determining' element is the detailed description of the 'ALLCODE database'...").)

As with claim 1, McKesson has consistently argued and the Court has found that the determining step of claim 2 is clear and means what it says. While the predetermined database is unquestionably a necessary element of claim 2, nothing in the claim language requires that the predetermined database be utilized in all cases to perform the determining step. Contrary to TriZetto's assertion, McKesson has never argued otherwise. In fact,

7

during claim construction, McKesson tried to prevent TriZetto from importing this non-existent restriction into the claims. (D.I. 170 at 27; D.I. 255 at 25-26.) The Court agreed that claim 2's determining step required no elaboration. (D.I. 307.)[4]

Moreover, TriZetto's purported surprise that claim 2 covers the detection of duplicate codes or double billing is belied by McKesson's disclosures during discovery and by the preferred embodiment. McKesson repeatedly questioned TriZetto's witnesses and customers regarding the accused products' detection of duplicate codes. (*See* Declaration of Michael A. Barlow in Support of McKesson's Memorandum in Opposition to TriZetto's Motion for Summary Judgment of Invalidity on Grounds of Anticipation and Obviousness, filed concurrently, Exs. 5-9.) Additionally, Dr. Musen's opening report cited TriZetto's duplicate code edit in his infringement charts for claim 2. (D.I. 375, Ex. 9 at Ex. 2, p. 14.)

Furthermore, as with claim 1, the preferred embodiment of the '164 patent discloses the detection and elimination of duplicate codes using a database other than the predetermined database. (D.I. 7, Ex. A at 5:36-41 ("In step 15, any duplicate codes, if more than one code entry, are eliminated ") & Fig. 3.) Thus, there was nothing raised at trial related to the determining step of claim 2 that was not disclosed by McKesson last year and by the patent itself years ago when TriZetto began studying it.

---

[4]      To be sure, the predetermined database may be utilized in performing the determining step. Indeed, TriZetto's infringing products often use a predetermined database to practice claim 2. (*See* Trial Tr. 339:14-340:24 (discussing evidence demonstrating non-medical relationships in the Facets predetermined database), 354:10-355:25 (discussing evidence demonstrating non-medical relationships in the ClaimFacts predetermined database) & 362:8-363:3 (discussing evidence demonstrating non-medical relationships in the ClaimFacts predetermined database).)

IV. THE FEDERAL RULES OF CIVIL PROCEDURE, THE COURT'S OWN PRECEDENT AND ITS RULINGS IN THIS CASE REQUIRE THAT ALL PRIOR ART FIRST ASSERTED BY TRIZETTO AFTER CLOSE OF FACT DISCOVERY BE STRICKEN.

### A. TriZetto is Limited to the Prior Art that It Asserted During Fact Discovery.

The Federal Rules of Civil Procedure, the Court's own precedent, and the Court's orders in this case all make clear that TriZetto cannot rely on any prior art for its invalidity defenses if TriZetto did not disclose its intent to rely on such art during fact discovery. *See* Fed. R. Civ. P. 37(c)(1); *Praxair, Inc. v. ATMI, Inc.*, 231 F.R.D. 457, 464 (D. Del. 2005); D.I. 138 at 12-13. Federal Rule of Civil Procedure 37(c)(1) states that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed."). Fed. R. Civ. P. 37(c)(1). This Court's precedent is in accord. *See Praxair*, 231 F.R.D. at 463 ("As a sanction for failure to comply with the scheduling order in this case, the court is authorized to exclude evidence proffered by the disobedient party.")

Recently, under far less egregious circumstances than TriZetto's dilatory conduct presents, the Court excluded several prior art references that the accused infringer did not disclose until the end of fact discovery. *See id.* at 464. In *Praxair*, the defendants disclosed several new prior art references shortly before fact discovery closed on April 15, 2005. *Id.* The defendants' expert on invalidity also relied on these new references in his expert report. *Id.* at 463. Trial in the case was set for late November 2005. Finding no good cause for the defendants' delay, the Court struck all of the new references, any invalidity defenses based on them, and the portions of the defendants' expert report that addressed them. *Id.* at

464. In reaching its conclusion, the Court emphasized the importance of abiding by discovery deadlines:

> [F]idelity to the constraints of Scheduling Orders and deadlines is critical to the Court's case management responsibilities. *Finch v. Hercules, Inc.*, 1995 WL 785100 at *9 (D. Del. 1995). The "flouting of discovery deadlines causes substantial harm to the judicial system." *Id.* (internal citations omitted). As a sanction for failure to comply with the scheduling order in this case, the court is authorized to exclude evidence proffered by the disobedient party. *United States v. 68.94 Acres of Land*, 918 F.2d 389, 396 (3d Cir. 1990).

*Praxair*, 231 F.R.D. at 463.

Notably, the Court also rejected the defendants' arguments that (1) the plaintiffs' altered claim construction caused the defendants' belated disclosure, and (2) earlier disclosure was not necessary because the plaintiffs were already aware of the prior art references. The Court rejected the first argument because the plaintiff's claim construction amendment "did not substantially or materially change the plaintiffs' theory on claim construction." *Id.* at 464 n.10. The Court rejected the second argument because "[a]rguing that the plaintiffs were aware of the prior art references is not sufficient to put the plaintiffs on notice that defendants are relying on the references in their invalidity defenses." *Id.* at 464 n.9. On the defendants' request for reconsideration, the Court affirmed its ruling and reiterated that:

> Prior art references must be disclosed during fact discovery and the parties must disclose their intent to rely thereon, regardless of whether or not the opposing party is aware of the reference.

*Praxair, Inc. v. ATMI, Inc. ("Praxair II")*, Case No. 03-1158-SLR, 2005 WL 3159054, *4 (D. Del. November 28, 2005).

In this case, the Court has made clear that it intends to follow the same legal principles enunciated in *Praxair* by limiting TriZetto to prior art disclosed in fact discovery:

10

> Well, it does not matter whether the prior art is known to them [McKesson]. *What matters is if you [TriZetto] have said we're going to rely on this prior art and therefore you're on notice that you need to take discovery on this prior art.* If you cannot demonstrate that, then you will be precluded ...

(D.I. 116 at 74 (emphasis added). *See also* D.I. 132 (order permitting TriZetto to try only those prior art references and prior uses disclosed during fact discovery); D.I. 138 at 13 ("I did not mean for the discovery to go on forever and ever. I was giving you the opportunity to try the late-filed prior art and *your prior art is limited to that disclosed by the close of discovery...*") (emphasis added).)

Applying the foregoing principles, ClaimFacts, AutoCoder, AMS and HCPS must be excluded because there is no question that during fact discovery, TriZetto did not disclose them or TriZetto's intent to rely on them in its invalidity defenses.

### B. TriZetto Has Violated Its Discovery Obligations and the Court's Orders by Continuing to Assert New Prior Art Long After the Close of Fact Discovery.

Despite having been expressly limited to the prior art it disclosed in fact discovery, TriZetto has brazenly defied the Federal Rules and the Court's authority by asserting four prior uses—ClaimFacts, AutoCoder, AMS and HCPS—that TriZetto never asserted during discovery. These alleged prior uses, three of which were only first disclosed two weeks ago, must be stricken.

During discovery, TriZetto supplemented its interrogatory response regarding alleged prior art references and prior uses four times to identify more than 150 prior art references and fifteen prior uses. (D.I. 378, Ex. 1.) It is beyond dispute, however, that ClaimFacts, AutoCoder, AMS and HCPS are not identified or asserted anywhere in either TriZetto's original response or any of its four supplemental responses. (*Id.*) In fact, at no point during fact discovery did TriZetto ever inform McKesson that it intended to rely on

any of these four alleged prior uses in its invalidity defenses. Instead, TriZetto waited until *more than a month after the close of fact discovery* to disclose for the first time its reliance on AMS. (D.I. 378, Ex. 2 at 20-24.) TriZetto then waited until two weeks ago, *more than eight months after close of fact discovery*, to disclose its intent to rely on ClaimFacts, AutoCoder and HCPS. (D.I. 380 at 13-14.)

TriZetto's failure to identify or disclose its reliance on these four alleged prior uses is unjustified. During discovery, TriZetto was well aware of these products and possessed much of the evidence that it now relies on for its motion for summary judgment of invalidity based on those prior uses. ClaimFacts is TriZetto's own product and the evidence upon which TriZetto relies—the uncorroborated statements of its Executive Vice President Mr. Bellomo—has been in TriZetto's possession for many years. In addition, TriZetto concedes that it knew of both AutoCoder and AMS during discovery, and even sought and obtained documents and deposition testimony regarding those products. (*Id.* at 24-27.) TriZetto also does not dispute that during discovery, it knew of and investigated HCPS and found a witness whom TriZetto is relying on as the sole source of evidence regarding HCPS. (*Id.* at 29 & n.6.) Nevertheless, TriZetto elected not to disclose its intent to rely on any of these products for its invalidity defenses until long after fact discovery had closed. Having chosen not to assert these prior uses in discovery, TriZetto cannot spring them on McKesson for the first time weeks and months later.

Similarly, TriZetto cannot assert any documents relating to these prior art systems as prior art references because TriZetto never identified or asserted those documents as prior art during discovery. Indeed, most of the documents that TriZetto has regarding these systems were never produced to McKesson during discovery. As to alleged prior art

12

publications, TriZetto limited itself to the nineteen references that it had identified and charged by the August 2, 2005 conference. (D.I. 80 at 13.) The Court held TriZetto to that representation and refused to allow TriZetto to assert any additional references. (D.I. 116 at 75 ("I don't want to hear anything about the prior art publication. You have blown that as far as I'm concerned.").) Accordingly, any documents relating to the four belatedly asserted prior uses should also be stricken.

TriZetto's failure to disclose these four alleged prior uses during fact discovery has caused substantial harm to this Court and McKesson. As the Court explained in *Praxair*, "[t]he 'flouting of discovery deadlines causes substantial harm to the judicial system.'" 231 F.R.D. at 463, quoting *Finch v. Hercules, Inc.*, 1995 WL 785100 at *9 (D. Del. 1995). Here, TriZetto has not just flouted discovery deadlines and the Court's Scheduling Order, but has blatantly disregarded the Court's order expressly limiting TriZetto to the prior art identified during discovery. (D.I. 138 at 13 ("your [TriZetto's] prior art is limited to that disclosed by the close of discovery.").) To toss the Court's order aside as TriZetto has done by asserting four previously undisclosed prior uses is a direct attack on the Court's authority and cannot be condoned.

McKesson has also been substantially harmed by TriZetto's misconduct because McKesson has justifiably relied on TriZetto's disclosures during discovery and the Court's rulings in preparing to defend against TriZetto's invalidity claims. Throughout discovery, McKesson repeatedly sought to have TriZetto fully identify the bases for its invalidity defenses, including all of the prior art references and prior uses it intended to assert. By the end of fact discovery, TriZetto had identified more than 150 alleged prior art references and fifteen alleged prior uses, of which TriZetto asserted reliance on nineteen prior art

references and all fifteen prior uses. (D.I. 378, Ex. 1 at 39-64.) Although McKesson did not believe TriZetto should be allowed to rely on the fifteen prior uses because they were first disclosed at the end of discovery (which was reason enough to warrant exclusion in *Praxair*), McKesson concluded that TriZetto could not assert any more prior art and prepared its case accordingly. The Court agreed with McKesson's conclusion. (D.I. 116 at 74 ("What matters is if you [TriZetto] have said we're going to rely on this prior art and therefore you're on notice that you need to take discovery on this prior art. If you cannot demonstrate that, then you will be precluded ..."); D.I. 138 at 13 ("I was giving you the opportunity to try the late-filed prior art and your prior art is limited to that disclosed by the close of discovery...").)

Under the circumstances, to permit TriZetto to assert four new alleged prior uses disclosed for the first time after the close of discovery would unfairly prejudice McKesson. Because TriZetto did not assert any intent to rely on these alleged prior uses during discovery, McKesson did not seek and had no reason to seek any discovery regarding them. Thus, TriZetto's untimely disclosure has denied McKesson a full and fair opportunity—indeed, any opportunity—to take discovery on TriZetto's new alleged prior uses. Moreover, reopening discovery now will not cure the prejudice to McKesson and will only add to the harm. Trial on all remaining issues is set to begin in four months. By the time this motion is decided, trial will likely be only a few weeks away. Reopening discovery at this stage of the litigation will significantly disrupt the trial schedule and McKesson's trial preparation, further delay resolution of McKesson's claims, and effectively reward TriZetto for its failure to comply with the Federal Rules and the Court's orders in this case. There is simply no reason to turn this case upside down so that, at the last minute, TriZetto

can add four alleged prior uses that it chose not to assert with the more than 165 pieces of prior art that it identified in discovery.

TriZetto offers only two arguments to try to justify its disregard for its discovery obligations, both of which are without merit. TriZetto first contends that it is now asserting these new alleged prior uses because McKesson purportedly changed its position at the infringement trial regarding the determining steps of claims 1 and 2. TriZetto cannot blame its discovery violations on McKesson because, as discussed above, McKesson did not change its position. (*See* § III.C, *supra*, at 6-8.) To the contrary, McKesson has consistently argued and the Court has agreed that the determining steps of claims 1 and 2 should be given their ordinary meaning. (*Id.*) TriZetto cannot claim surprise as to the positions McKesson took at trial because they were positions that McKesson has taken throughout the case, that are plainly disclosed in the '164 patent's specification, and that TriZetto even acknowledged in its *Markman* briefing. (*Id.*)

TriZetto also appears to argue that its late disclosure was justified because McKesson was aware of some of the newly asserted prior uses. The Court, however, flatly rejected this exact argument in *Praxair*, holding that "[a]rguing that the plaintiffs were aware of the prior art references is ***not*** sufficient to put the plaintiffs on notice that defendants are relying on the references in their invalidity defenses." 231 F.R.D. at 464 n.9 (emphasis added). The Court reemphasized this point in *Praxair II*: "Prior art references must be disclosed during fact discovery and the parties must disclose their intent to rely thereon, ***regardless of whether or not the opposing party is aware of the reference.***" 2005 WL 3159054 at *4 (emphasis added). Thus, regardless of whether or not McKesson was aware of the alleged prior uses, TriZetto was required to disclose

during fact discovery its intent to rely on ClaimFacts, AutoCoder, AMS and HCPS. Its failure to do so warrants exclusion of these alleged prior uses.

Because TriZetto did not disclose ClaimFacts, AutoCoder, AMS or HCPS or its intent to rely on any of those products during fact discovery, TriZetto is not entitled to rely on them for its invalidity defenses.

## V. CONCLUSION.

For the reasons set forth above, McKesson respectfully requests that the Court grant its motion to strike and preclude TriZetto from relying or otherwise presenting any evidence on ClaimFacts, AutoCoder, AMS and HCPS in connection with TriZetto's invalidity defenses.

By: /s/ 
Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff
McKesson Information Solutions LLC

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, CA 94301
(650) 470-4500

Dated: June 15, 2006