IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 04-1258-SLR |
| | ) | |
| v. | ) | |
| | ) | **REDACTED PUBLIC VERSION** |
| THE TRIZETTO GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF MCKESSON INFORMATION SOLUTIONS LLC'S OPPOSITION TO
TRIZETTO'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY BASED
ON THE ON-SALE BAR (35 U.S.C. § 102(b))
AND IN SUPPORT OF MCKESSON'S
CROSS MOTION FOR SUMMARY JUDGMENT OF NO ON-SALE BAR**

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff
McKesson Information Solutions LLC

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500

DATED: June 15, 2006
Redacted Public Version Filed: June 21, 2006

**TABLE OF CONTENTS**

**Page**

I.     NATURE AND STAGE OF PROCEEDINGS. ................................................................. 1

II.    SUMMARY OF ARGUMENT. .................................................................................. 1

III.   STATEMENT OF RELEVANT FACTS. ....................................................................... 2

      A.     Health Bills Was An Early Concept For A Service Company That Would Have Manually Reviewed Customers' Medical Claims. ................ 3

      B.     Before The Critical Date, The Inventors Did Not Have Any Software To Sell And The Aetna Project Only Involved Manual Review Of Samples Of Aetna's Already Processed Claims. ..................... 6

      C.     Concurrent With The Claims Audit Project, HPI Was Engaged In Another Unrelated Project For Aetna Concerning Quality of Care. ......... 10

IV.   SUMMARY JUDGMENT STANDARD. ...................................................................... 11

V.    THE '164 PATENT IS NOT INVALID BASED ON THE ON-SALE BAR. ...................... 12

      A.     The Claimed Inventions Were Not Offered For Sale Before The Critical Date. ........................................................................................ 12

           1.     The July 1987 proposal is not a commercial offer for sale. ........... 13

           2.     HPI's conduct surrounding the July 1987 proposal does not establish a commercial offer for sale. .......................................... 15

           3.     The inventors first proposed to develop software for Aetna only after the critical date. ........................................................... 19

      B.     The Claimed Inventions Were Not Ready For Patenting Before The Critical Date. ........................................................................................ 20

           1.     The claimed inventions were not reduced to practice before the critical date. ......................................................................... 20

           2.     The claimed inventions were not the subject of enabling descriptions prior to the critical date. .......................................... 23

VI.   CONCLUSION. .................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Eli Lilly and Co. v. Barr Labs., Inc.,*
    251 F.3d 955 (Fed. Cir. 2001) ................................................................. 12

*General Elec. Co. v. United States,*
    1979 U.S. Ct. Cl. LEXIS 1008 (Ct. Cl. 1979) ............................................ 16

*Group One, Ltd. v. Hallmark Cards, Inc.,*
    254 F.3d 1041 (Fed. Cir. 2001)............................................12, 13, 15, 16

*Izumi Prods. Co. v. Koninklijke Phillips Elecs. N.V.,*
    315 F. Supp. 2d 589 (D. Del. 2004) ......................................12, 13, 15, 20

*Linear Tech. Corp. v. Micrel, Inc.,*
    275 F.3d 1040,(Fed. Cir. 2001).................................................... 15, 16, 18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) ................................................................................. 12

*Pfaff v. Wells Elecs., Inc.,*
    525 U.S. 55 (1998) ............................................................................. 12, 20

*RCA Corp. v. Data General Corp.,*
    887 F.2d 1056 (Fed. Cir. 1989)................................................................ 16

*The B.F. Goodrich Co. v. Aircraft Braking Systems Corp.,*
    1994 WL 16019986 (D. Del. 1994) ......................................................... 16

**Statutes**

Fed. R. Civ. P. 56(c) .................................................................................... 11

Plaintiff McKesson Information Solutions LLC ("McKesson") respectfully submits this memorandum in opposition to defendant The TriZetto Group, Inc.'s ("TriZetto") Motion for Summary Judgment of Invalidity Based on the On-Sale Bar (35 U.S.C. § 102(b)) and in support of McKesson's Cross Motion for Summary Judgment of No On-Sale Bar.[1]

## I.    NATURE AND STAGE OF PROCEEDINGS.

On September 13, 2004, McKesson filed this lawsuit against TriZetto for willfully infringing and inducing infringement of McKesson's U.S. Patent No. 5,253,164 ("the '164 patent"). (D.I. 1.) McKesson filed a First Amended Complaint on October 1, 2004. (D.I. 7.) TriZetto filed an Answer and Counterclaim on November 1, 2004. (D.I. 10.) Fact discovery on all issues closed on September 16, 2005, and expert discovery on all issues was completed by November 30, 2005. On April 5, 2006, this Court issued its claim construction. (D.I. 307.)

A jury trial to determine infringement commenced on April 17, 2006. After hearing the infringement evidence, the jury found that TriZetto directly infringes and induces the infringement of claims 1 and 2 of the '164 patent through the use of its Facets, ClaimFacts, and QicLink products. (D.I. 358.) Trial on all remaining issues is scheduled to commence on October 3, 2006. (D.I. 362.)

## II.    SUMMARY OF ARGUMENT.

1.    To prevail on the on-sale bar issue, TriZetto must prove by clear and convincing evidence that, prior to the critical date, that (a) the inventions claimed in the '164 patent were the subject of a commercial offer for sale, and (b) the inventions were

---

[1]    McKesson has filed with this brief a motion for leave to file its cross-motion for summary judgment of no on-sale bar.

ready for patenting. Contrary to TriZetto's arguments, there is no evidence that the claimed inventions were the subject of a commercial offer to sale. There also is no evidence that the claimed inventions were ready for patenting prior to the critical date.

2.    Accordingly, McKesson respectfully requests that the Court deny TriZetto's summary judgment motion of invalidity based on the § 102(b) on-sale bar, and instead grant summary judgment in favor of McKesson on this issue.

## III.    STATEMENT OF RELEVANT FACTS.

TriZetto's summary judgment motion is premised on gross misstatements regarding the activities of the named inventors of the '164 patent prior to the critical date of September 30, 1987. These mischaracterizations include:

1.    That the inventors disclosed the patented invention as early as 1986 in connection with a project called "Health Bills";

2.    That the inventors offered to sell Aetna clinical editing software prior to the critical date;

3.    That the inventors had clinical editing software to sell Aetna prior to the critical date; and

4.    That the inventors engaged in a project for Aetna prior to the critical date to identify the code relationships that would be used in the patented invention;

These assertions are not supported by the evidence and simply represent the fictionalized account of events needed to provide TriZetto with even colorable grounds for its motion. The actual facts are much different and support summary judgment in McKesson's favor of no on-sale bar.[2]

---

[2]    Although not relevant to its on-sale bar motion, as with its other motions TriZetto misrepresents the scope of claims 1 and 2 of the '164 patent by among other things attempting to read out the "predetermined database" claim element. McKesson has addressed this issue in its oppositions to TriZetto's other summary judgment motions.

A.    **Health Bills Was An Early Concept For A Service Company That Would Have Manually Reviewed Customers' Medical Claims.**

During the mid 1980s, '164 patent inventor Dr. Robert Hertenstein oversaw the processing of medical claims submitted for payment to Caterpillar, Inc. ("CAT"), a self-insured company.   As part of this process, Dr. Hertenstein and his team of surgical technicians manually reviewed the medical service codes submitted on medical claims for errors that could result in the overpayment of the claims.  In 1986, members of the Health Policy Institute ("HPI") learned from Dr. Hertenstein about his manual review of claims and the savings generated from conducting such reviews.  HPI's primary focus was to work with companies in the health-care industry to identify important health-care problems and develop new approaches to solving them.

REDACTED

REDACTED

3

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

**B.**     **Before The Critical Date, The Inventors Did Not Have Any Software To Sell And The Aetna Project Only Involved Manual Review Of Samples Of Aetna's Already Processed Claims.**

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

3

REDACTED

REDACTED

REDACTED

REDACTED

_____

3    REDACTED

REDACTED

**C.**     **Concurrent With The Claims Audit Project, HPI Was Engaged In Another Unrelated Project For Aetna Concerning Quality of Care.**

REDACTED

[4]

REDACTED

---

[4]     REDACTED

REDACTED

REDACTED

REDACTED

IV.    SUMMARY JUDGMENT STANDARD.

Summary judgment is proper if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). The court must take into account the clear and convincing evidentiary standard of proof required for invalidity when evaluating a motion for summary judgment. *See Eli Lilly and Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001).

## V.     THE '164 PATENT IS NOT INVALID BASED ON THE ON-SALE BAR.

To prove that the infringed claims 1 and 2 of the '164 patent are invalid under the on-sale bar of 35 U.S.C. § 102(b), TriZetto must prove by clear and convincing evidence that prior to the critical date, (1) "the product [was] the subject of a commercial offer for sale," and (2) "the invention [was] ready for patenting." *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67 (1998). The evidence does not support TriZetto's summary judgment motion on either prong of the on-sale bar analysis. Indeed, the evidence clearly establishes that *no* commercial offer to sell the claimed inventions was made and that the claimed invention was not ready for patenting before the critical date. Summary judgment for McKesson of no on-sale bar is therefore appropriate. *See, e.g., Izumi Prods. Co. v. Koninklijke Phillips Elecs. N.V.*, 315 F. Supp. 2d 589, 606 (D. Del. 2004) (granting summary judgment of no on-sale bar where evidence could not establish that any sales or offers to sell allegedly invalidating razors were made before the critical date).

### A.     The Claimed Inventions Were Not Offered For Sale Before The Critical Date.

To prove an on-sale bar under § 102(b), "[a]n accused infringer . . . must demonstrate that 'there was a definite sale or offer to sell more than one year before the application for the subject patent . . . .'" *Izumi*, 315 F. Supp. 2d at 604, quoting *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1047 (Fed. Cir. 2001). The Federal

Circuit and this Court have held that "[o]nly an offer which rises to the level of a commercial offer for sale, one which the other party could make into a binding contract by simple acceptance (assuming consideration), constitutes an offer for sale under § 102(b)." *Group One*, 254 F.3d at 1048; *Izumi*, 315 F. Supp. 2d at 605 (quoting same). Moreover, § 102(b) is only triggered if "the subject matter of the sale or offer to sell fully anticipated the claimed invention." *See Izumi*, 315 F. Supp. 2d at 604-05.

The evidence unambiguously establishes that the inventors did not offer to sell the claimed inventions to Aetna before the critical date of September 30, 1987.

    **1.**    **The July 1987 proposal is not a commercial offer for sale.**

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

**2.    HPI's conduct surrounding the July 1987 proposal does not establish a commercial offer for sale.**

TriZetto argues that HPI's communications with Aetna about the May 1987 audit and the completely separate "Quality-of-Care Screening Project" establish an offer to sell the claimed inventions.  (D.I. 368 at 23.)  TriZetto's arguments are wrong for a number of reasons.

*First*, the *B.F. Goodrich* and *General Electric* decisions TriZetto relies upon to support this argument were based on the incorrect legal standard that an offer for sale "'may be [shown] by a patentee's commercial activity which does not rise to the level of a formal "offer" under contract law principles.'" *The B.F. Goodrich Co. v. Aircraft Braking Systems Corp.*, 1994 WL 16019986, *31 (D. Del. 1994) (Barlow Decl., Ex. 8), quoting *RCA Corp. v. Data General Corp.*, 887 F.2d 1056, 1062 (Fed. Cir. 1989); *see also General Elec. Co. v. United States*, 1979 U.S. Ct. Cl. LEXIS 1008, **44-48 (Ct. Cl. 1979) (finding on-sale bar where, even if no formal offer to sell was made, meetings with technical personnel were intended to "sell" them on the product). The Federal Circuit expressly rejected this standard in *Group One* because "the offer must meet the level of an offer for sale in the contract sense." 254 F.3d at 1046; *see also id.* ("[T]o the extent it was believed that something less than an offer to sell as understood in general commercial transactions was sufficient to trigger the on-sale bar, it is likely that such belief can no longer be the law."); *Linear Tech.*, 275 F.3d at 1048 ("[W]e expressly held that our previous enunciation of the law in *RCA Corp.* is incorrect in light of *Pfaff*.").


REDACTED



REDACTED

REDACTED

REDACTED

REDACTED

5

REDACTED

REDACTED

---

5    REDACTED

REDACTED




REDACTED




                              In any event, even if Aetna had in fact

made an offer in connection with MedReview, this would merely amount to an "offer to

buy," not an "offer to sell" as required by § 102(b).  The Federal Circuit has made clear

that "such offers to buy standing by themselves are not proof of a previous offer to sell."

*Linear Tech.*, 275 F.3d at 1050.  Pre-critical date "offers to buy" also cannot trigger

§ 102(b) absent pre-critical date acceptance by the patentee.  *See id.* at 1052-53 (finding

no on-sale bar where patentee did not communicate acceptance of pre-critical date

purchase orders).  There is no evidence, and TriZetto does not argue, that the inventors

accepted any offer to buy MedReview from Aetna before the critical date.  In fact, HPI's

18

October 14, 1987 proposal to Aetna belies any such suggestion. (*See, e.g.*, Barlow Decl.,

Ex. 5 at MCK028657.)                                    REDACTED

                                    REDACTED

         REDACTED                         Thus, nothing about HPI's actions before or after the

July 1987 proposal demonstrates that there was a pre-critical date commercial offer for

sale of the claimed inventions.

      **3.**      **The inventors first proposed to develop software for Aetna
only after the critical date.**

REDACTED

REDACTED

REDACTED

REDACTED

Notably, TriZetto does not mention this October 1987 proposal to develop MedReview anywhere in its summary judgment motion, choosing instead to focus on misstating the evidence of pre-critical date activity. However, when all of the relevant evidence is viewed objectively and cleansed of TriZetto's mischaracterizations, it is readily apparent that the claimed invention was not offered for sale before September 30, 1987. TriZetto's summary judgment motion should therefore be denied and judgment on this issue should be entered as a matter of law in favor of McKesson.

**B.     The Claimed Inventions Were Not Ready For Patenting Before The Critical Date.**

The evidence also shows that the claimed inventions were not ready for patenting before the critical date. The "ready for patenting" prong of the on-sale bar analysis requires "'proof of reduction to practice before the critical date'" or "'proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention.'" *Izumi*, 315 F. Supp. 2d at 604 n.8, quoting *Pfaff*, 525 U.S. at 59. There is no proof of either in this case.

**1.     The claimed inventions were not reduced to practice before the critical date.**

The evidence shows that the claimed inventions were not reduced to practice before September 30, 1987.                    REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

6

REDACTED

Moreover, TriZetto offers no evidence that any information from this project was used to conceive of or reduce to practice the patented inventions or that the inventors or Aetna considered this project relevant to the separate May 1987 audit or the July 1987 proposal. There is also no evidence that Dr. Hertenstein was involved in or even knew of the "Quality-of-Care Screening Project."

The evidence therefore establishes that the claimed inventions were not reduced to practice before the critical date.

---

6          REDACTED

**2.    The claimed inventions were not the subject of enabling descriptions prior to the critical date.**

The pre-critical date documents relied on by TriZetto do not describe the claimed inventions with sufficient specificity to enable one skilled in the art to practice the claimed inventions.

REDACTED

[7]

REDACTED

The Egdahl/Hertenstein article cited by TriZetto also does not constitute an enabling disclosure of the claimed inventions. Although the article generally discusses Dr. Hertenstein's manual review of medical claims, it does not provide specific information as to how he reviewed claims. (D.I. 369, Ex. 23 at MCK 035621-22.) At his deposition, McKesson expert Dr. Mark Musen testified that "[t]he article actually is pretty vague about the processes involved" and "gives examples without really going into the details of how those particular details were handled." (Barlow Decl., Ex. 10 at 141:9-

---

[7]    REDACTED

12.) In addition, contrary to TriZetto's assertion, Dr. Musen did not testify that it would

have been obvious to write software to address "the coding problem in the article."[8]

Rather, Dr. Musen testified that "it would be hard for me to imagine anyone wanting to

build a system that would only be good for one example. No one – it would have no

practical use. There would be no motivation to build it." (Barlow Decl., Ex. 10 at

222:10-14.) Moreover, Dr. Musen testified that it would not have been obvious from the

article or Dr. Hertenstein's manual review of claims how to construct a system with the

decision-making rules of the type found in Appendix B of the patent and which the Court

construed to be part of the infringed claims. (*Id.* at 247:16-249:16.)

Publications by TriZetto's own invalidity experts from around the time of the

invention are in accord with Dr. Musen's testimony and confirm the significant obstacles

and "very high level of uncertainty about project success" that arise when attempting to

develop an expert system:

> Knowledge engineers must ferret out solutions and represent them in
> computer programs. This is difficult because experts usually have trouble
> explaining their solutions, and knowledge representation technology is
> usually unfamiliar. ***This contributes to a very high level of uncertainty
> about project success.***

(D.I. 378, Ex. 7 at 75:2-75:8 (emphasis added); *see also id.* at 76:3-13; 31:6-9 (no

guarantee development efforts will be successful)); Ex. 8 [Davis, *Expert Systems: Where*

*are we? And where do we go from here?*, The AI Magazine (Spring 1982)] at 3 ("Even for

the best-understood problems, experienced researchers using the best-understood

---

[8]    Although TriZetto uses the vague phrase "the coding problem in the article" without
elaboration, the cited portions of Dr. Musen's testimony make clear that "the coding problem"
refers to a single example identified in the Egdahl/Hertenstein article. (D.I. 369, Ex. 22 at
245:19-23.)

technologies still require at least five man years to develop a system that begins to be robust.")).

HPI's work on the "Quality-of-Care Screening Project" also does not support a finding that the claimed inventions were ready for patenting. As discussed above with respect to reduction to practice, the "Quality-of-Care Screening Project" and the resulting work product had nothing to do with Dr. Hertenstein's manual review of medical claims or with the appropriateness or inappropriateness for payment of one medical service code vis-à-vis another medical service code.

VI.    **CONCLUSION.**

For the foregoing reasons, McKesson respectfully requests that the Court deny TriZetto's summary judgment motion of invalidity based on the § 102(b) on-sale bar and grant judgment on this issue in McKesson's favor as a matter of law.

Respectfully submitted,

By: _____
Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899
(302) 651-3000

Attorneys for Plaintiff
McKesson Information Solutions LLC

OF COUNSEL:
Jeffery G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California  94301
(650) 470-4500

DATED:  June 15, 2006