IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 04-1258-SLR |
| | ) | |
| v. | ) | |
| | ) | **REDACTED PUBLIC VERSION** |
| THE TRIZETTO GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## PLAINTIFF MCKESSON INFORMATION SOLUTIONS LLC'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF BEST MODE

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff
McKesson Information Solutions LLC

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500

DATED: June 15, 2006
Redacted Version Filed June 21, 2006

# TABLE OF CONTENTS

Page

I.    NATURE AND STAGE OF PROCEEDINGS ................................................................ 1

II.   SUMMARY OF ARGUMENT .................................................................................. 2

III.  STATEMENT OF FACTS ....................................................................................... 3

IV.   THE COURT SHOULD DENY TRIZETTO'S MOTION BECAUSE TRIZETTO
      CANNOT PROVE A BEST MODE VIOLATION AS A MATTER OF LAW .................... 4

      A.    Standard of Review on Summary Judgment. ......................................... 4

      B.    TriZetto Must Prove by Clear and Convincing Evidence that the
            Inventors Subjectively Believed that a Particular Predetermined
            Database Was the Best and Intentionally Concealed that Database ......... 4

      C.    TriZetto Has Failed to Show that the Inventors Believed that There
            Was a "Best" Set of Code-Specific Relationships for Practicing
            Infringed Claims 1 and 2. ..................................................................... 6

      D.    The Inventors Did Not Believe that There Was a Best Set of Code-
            Specific Relationships for Use in the Predetermined Database ............... 8

      E.    Federal Circuit Precedent Supports the Conclusion that the
            Inventors Did Not Have a Best Mode with Regard to the Contents
            of the Predetermined Database. ........................................................... 14

      F.    TriZetto Has Not Shown that the Inventors Intentionally Concealed
            a Best Mode. ....................................................................................... 17

      G.    TriZetto Fails to Prove Concealment of a Best Mode. .......................... 18

V.    CONCLUSION .................................................................................................... 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Brooktree Corp. v. Advanced Micro Devices, Inc.,
　977 F.2d 1555 (Fed. Cir. 1992) ............................................................... 5, 17

Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.,
　381 F.3d 1371 (Fed. Cir. 2004) ................................................................... 5

Chemcast Corp. v. Arco Indus. Corp.,
　913 F.2d 923 (Fed. Cir. 1990) ..................................................................... 6

Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.,
　145 F.3d 1303 (Fed. Cir. 1998) ................................................................... 4

Eli Lilly v. Barr Labs, Inc.,
　251 F.3d 955 (Fed. Cir. 2001) .................................................................. 4, 5

Engel Indus. v. Lockformer Co.,
　946 F.2d 1528 (Fed. Cir. 1991) ............................................................... 5, 6

Fonar Corp. v. G.E. Co.,
　107 F.3d 1543 (Fed. Cir. 1997) ............................................................. 14, 15

High Concrete Structures, Inc. v. New Enter. Stone & Lime Co.,
　377 F.3d 1379 (Fed. Cir. 2004) ...................................................... 4, 5, 6, 17

Liquid Dynamics Corp. v. Vaughan Co.,
　2006 U.S. App. LEXIS 13484 (Fed. Cir. 2006) .......................................... 15

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
　475 U.S. 574 (1986) .................................................................................... 4

Nobelpharma Ab v. Implant Innovations,
　141 F.3d 1059 (Fed. Cir. 1998) ................................................................... 6

Northern Telecom Ltd. v. Samsung Elecs. Co., Ltd.,
　215 F.3d 1281 (Fed. Cir. 2000) ................................................................... 5

Northern Telecom, Inc. v. Datapoint Corp.,
　908 F.2d 931 (Fed. Cir. 1990) ................................................................... 16

Pannu v. Iolab Corp.,
　144 F.3d 1344 (Fed. Cir. 1998) ................................................................... 5

**Statutes**

FED. R. CIV. P. 56(c) ........................................................................................ 4

Plaintiff McKesson Information Solutions LLC ("McKesson") respectfully submits its answering brief to defendant The TriZetto Group, Inc.'s ("TriZetto") Motion For Summary Judgment Of Invalidity For Failure To Disclose The Best Mode Of Practicing The Claimed Invention.

## I.    NATURE AND STAGE OF PROCEEDINGS.

On September 13, 2004, McKesson filed this lawsuit against TriZetto for willfully infringing and inducing infringement of McKesson's U.S. Patent No. 5,253,164 ("the '164 patent"). (D.I. 1.) McKesson filed a First Amended Complaint on October 1, 2004. (D.I. 7.) TriZetto filed an Answer and Counterclaim on November 1, 2004. (D.I. 10.) Fact discovery on all issues closed on September 16, 2005, and expert discovery on all issues was completed by November 30, 2005. On April 5, 2006, this Court issued its claim construction. (D.I. 307.)

A jury trial to determine infringement commenced on April 17, 2006. After hearing the infringement evidence, the jury found that TriZetto directly infringes and actively induces the infringement of claims 1 and 2 of the '164 patent through the use of its Facets, ClaimFacts, and QicLink products. (D.I. 358.) Trial on all remaining issues is scheduled to commence on October 3, 2006. (D.I. 362.)

On June 1, 2006, McKesson moved for summary judgment on TriZetto's best mode defense under 35 U.S.C. § 112. (D.I. 370.) TriZetto also moved for summary judgment as to the best mode component of 35 U.S.C. § 112. (D.I. 364.) Motions concerning best mode and TriZetto's other invalidity defenses are scheduled to be heard on August 2, 2006. (D.I. 362.)

## II.    SUMMARY OF ARGUMENT.

TriZetto is not entitled to summary judgment on its best mode defense for the following reasons:

1.    TriZetto's best mode defense fails as a matter of law because TriZetto cannot establish that at the time of filing the application for the '164 patent, any of the inventors contemplated an undisclosed best mode of carrying out claims 1 and 2 of the '164 patent. In particular, TriZetto cannot present clear and convincing evidence that the inventors subjectively believed that there was a preferred embodiment with regard to the contents of the "predetermined database." To the contrary, the inventors' testimony and the documentary evidence unambiguously indicate that the inventors always viewed the contents of predetermined database as variable according to the customers' needs and requests. Federal Circuit precedent does not require that any particular contents of the predetermined database be disclosed under these circumstances.

2.    TriZetto's assertion that intent to conceal is not required conflicts with Federal Circuit case law. In addition, TriZetto has offered insufficient evidence from which a trier of fact could find intent.

3.    All aspects of the '164 patent for which the inventors possibly envisioned a best mode were disclosed in their entirety. For example, the metarules and the computer code that applied the metarules to a particular predetermined database chosen by the customer were disclosed in their entirety. Consequently, a person skilled in the art could have built any system that the inventors could possibly have considered the preferred embodiment of the '164 patent with the patent's disclosure.

Accordingly, the Court should deny TriZetto's motion for summary judgment.

2

**III.    STATEMENT OF FACTS.**

McKesson is the current assignee of the '164 patent, entitled "System and Method for Detecting Fraudulent Medical Claims Via Examination of Service Codes." (D.I. 7, Ex. A.)  The named inventors of the patent are Don Holloway, Robert Hertenstein, George Goldberg, and Kelli Dugan.  *Id.*  The patent issued on October 13, 1993, and claims priority from an application filed on September 30, 1988.  *Id.*

As disclosed in the '164 patent, the commercial embodiment of the patented invention was the CodeReview product.  (*Id.* at col. 3, ll. 15-29.)  The CodeReview product was sold to customers with a database containing medical service codes and a set of code-specific relationships between the codes.[1]  (*Id.* at col. 3, ll. 17-45.)    Redacted

## REDACTED

Redacted    Such variations were possible because the predetermined database was designed to be flexible and modifiable to accommodate different types of data, such as multiple medical coding systems, and to facilitate the frequent changes and updates to the

---

[1]    These code-specific relationships are sometimes referred to as "rules." These "rules," however, are different from the decision-making rules (or "meta-rules") that are used to apply the code-specific relationships contained in the knowledge base. (*Id.* at col. 3, ll. 30-35 & col. 6, ll. 19-26.) The metarules are disclosed in their entirety in Appendix B of the '164 patent and more fully discussed in Section IV.G. of this brief.

code-specific relationships that needed to be made. (D.I. 7, Ex. A at col. 3, ll. 38-42; col.

10, ll. 3-7 & 55-60; D.I. 371, Ex. 3 at MCK 051652, MCK 051644 & MCK 051649.)

## IV. THE COURT SHOULD DENY TRIZETTO'S MOTION BECAUSE TRIZETTO CANNOT PROVE A BEST MODE VIOLATION AS A MATTER OF LAW.

### A. Standard of Review on Summary Judgment.

Summary judgment is proper only if "there is no genuine issue as to any material

fact and … the moving party is entitled to judgment as a matter of law." FED. R. CIV. P.

56(c). The moving party bears the initial burden of proving that no genuine issue of

material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586 (1986). "In determining whether there is a genuine issue of material fact, the

evidence must be viewed in the light most favorable to the party opposing the motion,

with doubts resolved in favor of the opponent." *Chiuminatta Concrete Concepts, Inc. v.*

*Cardinal Indus., Inc.*, 145 F.3d 1303, 1307 (Fed. Cir. 1998).

In this case, TriZetto is not entitled to summary judgment because it cannot

establish any of the requisite elements of its best mode defense as a matter of law.

### B. TriZetto Must Prove by Clear and Convincing Evidence that the Inventors Subjectively Believed that a Particular Predetermined Database Was the Best and Intentionally Concealed that Database.

TriZetto has asserted that the infringed claims 1 and 2 of the '164 patent are

invalid for failure to comply with the best mode requirement of 35 U.S.C. § 112, ¶ 1.

"Invalidation based on a best mode violation requires that the inventor [1] knew of and [2]

intentionally concealed a better mode than was disclosed." *High Concrete Structures, Inc.*

*v. New Enter. Stone & Lime Co.*, 377 F.3d 1379, 1383 (Fed. Cir. 2004). Because the '164

patent is presumed to be valid, TriZetto must prove a best mode violation by clear and

convincing evidence. *See Eli Lilly v. Barr Labs, Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001).

In addition, "[e]ach claim must be considered individually for compliance with the best mode requirement." *Engel Indus. v. Lockformer Co.*, 946 F.2d 1528, 1531 (Fed. Cir. 1991).

The first prong of the best mode analysis is purely subjective, focusing on the inventor's state of mind at the time the patent application was filed. *See Eli Lilly*, 251 F.3d at 963. To satisfy this element, the alleged infringer must prove by clear and convincing evidence that "the inventor considered a particular mode of practicing his invention superior to all other modes." *Northern Telecom Ltd. v. Samsung Elecs. Co., Ltd.*, 215 F.3d 1281, 1286 (Fed. Cir. 2000).[2]

Only if the inventor actually possessed a subjective best mode does the analysis proceed to the next prong. *See Eli Lilly*, 251 F.3d at 963. In that case, the infringer then must prove that the inventor "intentionally concealed" that mode. *High Concrete*, 377 F.3d at 1383. *See also Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 381 F.3d 1371, 1378 (Fed. Cir. 2004) ("[I]nvalidity for omission of a better mode than was revealed requires knowledge of and concealment of that better mode."); *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1575 (Fed. Cir. 1992) ("Invalidity for violation of the best mode requires intentional concealment of a better mode than was disclosed.").

If the patent's specification adequately disclosed what the inventor contemplated as the best mode such that a person of ordinary skill in the art could practice it without

---

[2]      Although TriZetto asserts that "[i]n the case of joint inventorship, 'a best mode disclosure is necessary, even if only one of the inventors contemplates a best mode" (D.I. 315 at 13), the case upon which TriZetto relies—*Pannu v. Iolab Corp.*, 144 F.3d 1344, 1351 n. 5 (Fed. Cir. 1998)—does not stand for this proposition. Moreover, the statement that TriZetto purportedly quotes from *Pannu* is not found anywhere in that case.

undue experimentation, no best mode violation has occurred. *See Nobelpharma Ab v. Implant Innovations*, 141 F.3d 1059, 1064 (Fed. Cir. 1998); *Chemcast Corp. v. Arco Indus. Corp.*, 913 F.2d 923, 928 (Fed. Cir. 1990). Nor is the best mode requirement breached "by unintentional omission of information that would be readily known to persons in the field of the invention." *High Concrete*, 377 F.3d at 1383.

### C.    TriZetto Has Failed to Show that the Inventors Believed that There Was a "Best" Set of Code-Specific Relationships for Practicing Infringed Claims 1 and 2.

The Federal Circuit requires that "[e]ach claim must be considered individually for compliance with the best mode requirement." *Engel*, 946 F.2d at 1531. Here, TriZetto asserts that claims 1 and 2 violate the best mode requirement because the patent fails to disclose the "best" set of code-specific relationships allegedly contemplated by the inventors. Thus, TriZetto must prove, *inter alia*, that the inventors believed that there was some particular set of code-specific relationships that was part of the best mode for practicing the specific methods recited in claims 1 and 2. TriZetto cannot do so—a fact that is readily apparent given that TriZetto's argument regarding the contents of the predetermined database is entirely divorced from the actual claims. Whether or not the inventors believed that there was generally a "best" set of code-specific relationships is not the issue and does not prove a best mode violation with respect to claims 1 and 2. Rather, TriZetto must prove that an undisclosed best mode existed specifically with regard to claims 1 and 2. TriZetto has failed to make this showing.

As an initial matter, TriZetto's shotgun approach to invalidity dooms its best mode defense, because TriZetto's own invalidity arguments preclude a finding of a best mode violation. In its summary judgment motions regarding anticipation, obviousness, and the on-sale bar, TriZetto repeatedly argues that the "predetermined database" is

6

irrelevant to practicing the methods recited in claims 1 and 2. (*See, e.g.*, D.I. 380 at 2-4, 10-13, 18; *see also* D.I. 367 at 4-5 where TriZetto states that "[a]lthough a 'predetermined database' is mentioned in the preamble to Claim 2, it is not actually invoked in the steps of the method.") Indeed, TriZetto asserts that alleged prior uses such as its own (pre-ClinicaLogic) ClaimFacts system anticipate claims 1 and 2 even though TriZetto admits that they did not have a "predetermined database." (*See, e.g.*, D.I. 380 at 21-22.) While TriZetto's attempt to read the predetermined database out of the claims invites clear error, the fact that TriZetto advances this argument precludes TriZetto from simultaneously asserting that the inventors possessed a best mode for practicing the claims as it relates to the contents of the predetermined database.

Moreover, TriZetto has offered no evidence to prove that the inventors subjectively believed that there was a "best" set of code-specific relationships for practicing the specific methods recited in claims 1 and 2. In fact, the record is devoid of such evidence. The four named inventors were deposed for a total of seven days, and TriZetto did not seek any evidence as to whether the inventors believed that any particular set of relationships was preferred for practicing claims 1 and 2 or whether they believed there was a best mode for practicing the claimed methods.

For example, TriZetto has no evidence that the inventors believed there was a "best" set of relationships contained in the predetermined database for use in "determining whether one of the medical service codes in the at least one claim is mutually exclusive due to non-medical criteria with any other medical service code in the at least one claim," as is recited in claim 2. As to claim 1, the '164 patent makes clear that while the predetermined database is a necessary element of the claim, the preferred embodiment for practicing that claim did not depend on the presence of a specific set of relationships within that predetermined database because the preferred embodiment

7

"determine[ed] whether any medical service code contained in the at least one claim is not present in the predetermined database" by directly checking a separate database. (D.I. 7, Ex. A at col. 5, ll. 11-15 ("If the entity which is requesting payment has provided a code entry or entries for the treatment given, then in step 9 it is determined whether the code entry is valid or invalid by reference to the ALLCODE database 11.").)

Because TriZetto has not made any showing that the inventors possessed an undisclosed best mode for practicing claims 1 and 2, TriZetto's motion for summary judgment must be denied.

### D. The Inventors Did Not Believe that There Was a Best Set of Code-Specific Relationships for Use in the Predetermined Database.

TriZetto's summary judgment motion also fails because it depends on a demonstrably false premise—that the inventors actually believed that there was a particular set of code-specific relationships for use in the predetermine database that was superior to all others. To the contrary, the evidence plainly shows that the inventors never envisioned a best mode with regard to the particular contents of the predetermined database.

The inventors viewed the contents of the database as fluid and constantly changing, depending upon the requirements of the customers. (D.I. 371, Ex. 6 at 85:4-12; D.I. 371, Ex. 7 at MCK 119824.)               Redacted


## REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

9

REDACTED

REDACTED

REDACTED

Redacted              If, as TriZetto argues, the inventors believed that

there was a best set of code-specific relationships for the predetermined database, the

inventors would have sold that same database to all customers.  As the inventors'

testimony demonstrates, that clearly was not the case.

The documentary evidence also shows that the inventors designed a fluid and

dynamic database because they understood that the contents were not static and would

necessarily vary not only over time to reflect changes in codes, but also across customers

to reflect customers' individual policies and practices.  As disclosed in the '164 patent,

10

one of the purposes of the patented invention was to accommodate different types of data, such as multiple medical coding systems, and to facilitate changes to such data. (D.I. 7, Ex. A at col. 3, ll. 38-42; col. 10, ll. 3-7 & 55-60.)                    Redacted


REDACTED


Indeed, the '164 patent repeatedly emphasized the dynamic nature of the database. (D.I. 7, Ex. A at col. 3, ll. 35-37 ("The process is an ongoing process which can be updated as new methods of inappropriate coding are discovered."); col. 4, ll. 64-col. 5, ll. 3 ("update and refine . . . the knowledge base"); col. 10, ll. 3-7 ("refine, update and change the rules"); col. 10, ll. 55-60 ("development of new rules").)   In view of the foregoing testimonial and documentary evidence, TriZetto cannot show that the inventors generally believed there was a "best" set of code-specific relationships.

TriZetto's reliance on Dr. Goldberg's January 1988 letter to Aetna is misplaced, because TriZetto ignores evidence in the letter and Dr. Goldberg's testimony demonstrating that the inventors did not believe that there was a "best" set of code-specific relationships.                    Redacted


REDACTED


11

REDACTED


REDACTED


(Barlow Decl., Ex. 2 at 244:13-245:3 (emphasis added).)  Thus, Dr. Goldberg did not possess a best mode with regard to the contents of the predetermined database.[3]

TriZetto also incorrectly argues that the patented invention was "designed to match precisely" Dr. Hertenstein's manual review of medical claims.  (D.I. 365 at 2.) The '164 patent and CodeReview were not intended to mimic Dr. Hertenstein's manual review of claims.  Nor did the inventors view the code-specific relationships developed with Dr. Hertenstein as the sole or best source of content for the predetermined database.

REDACTED

---

[3]    Redacted

REDACTED

REDACTED

REDACTED

REDACTED

13

REDACTED

The above evidence clearly indicates that neither the patent nor CodeReview was "designed to match precisely" Dr. Hertenstein's manual review of claims. As common business sense dictated, the '164 patent and the CodeReview product were designed to be used by many different medical payers, not just Caterpillar. The inventors accomplished this flexibility by designing the predetermined database to be modifiable based upon the user's needs. Further, in accordance with the original plans for CodeReview, other physicians were continually consulted in building and tailoring the contents of predetermined database for HPR's customers, thereby excluding the possibility of a best set of relationships for the predetermined database that was "designed to match precisely" Dr. Hertenstein's manual review of medical claims.

### E. Federal Circuit Precedent Supports the Conclusion that the Inventors Did Not Have a Best Mode with Regard to the Contents of the Predetermined Database.

The substantial evidence that the inventors did not believe there was a "best" set of code-specific relationships generally and for practicing the specific methods of claims 1 and 2 is consistent with and well supported by Federal Circuit precedent. In *Fonar Corp. v. G.E. Co.*, 107 F.3d 1543, 1548-49 (Fed. Cir. 1997), the defendant argued that a critical aspect of the invention, a gradient multiplier board ("GMB"), was not disclosed in sufficient detail to satisfy the best mode requirement. The Court rejected the defendant's best mode assertion:

> David Hertz, one of the inventors, testified in particular that the patent provides a description of the functions required for one skilled in the art to build a GMB that will work with a general MRI system and that the GMB disclosed in the patent is the one built by Fonar. ***More importantly, he***

14

> *testified that the GMB used in the Fonar machine was not the only*
> *means to accomplish MAO imaging and that it was not necessarily the*
> *best way to do it for every machine.* GE argues nonetheless that the '966
> patent failed to disclose the use of comparators as part of the GMB, which
> it alleged were an essential element of the best mode. However, Hertz
> testified that if an MRI machine performing MAO imaging according to
> the '966 patent were to require a comparator as part of the GMB, a skilled
> engineer would know that a comparator should be used. *He further*
> *testified that each MRI machine has its own set of requirements for the*
> *functionality of the GMB, which is why the '966 patent described in*
> *general terms how to build the invention. Hertz's testimony provides*
> *substantial evidence to support a finding that there was no best mode*
> *violation with respect to the GMB.*

*Id.* at 1550 (emphasis added).

More recent Federal Circuit authority has reached the same conclusion. In *Liquid*

*Dynamics Corp. v. Vaughan Co.*, 2006 U.S. App. LEXIS 13484 (Fed. Cir. 2006) (Barlow

Decl., Ex. 4), the defendant argued that the plaintiff did not disclose the best mode of

practicing the invention, in this case a system of pumps that stir mixtures of solids and

liquids in large tanks. The Court affirmed a jury determination of no best mode violation,

finding that the undisclosed part varied depending on the particular circumstances.

> In light of all the evidence presented on this issue, a reasonable jury could
> conclude that Vaughan failed to demonstrate by clear and convincing
> evidence that [the plaintiff] did not disclose the best mode. . . . Admittedly,
> the '414 patent does not disclose a particular size of reducer, but Vaughan
> failed to demonstrate by clear and convincing evidence that it must. *Ideal*
> *flow rates and flow velocities depend on the nature of the tank to be*
> *mixed.*

*Id.* at 31-33 (emphasis added).

As *Fonar Corp.* and *Liquid Dynamics Corp.* demonstrate, the inventors did not

need to disclose a full set of code-specific relationships because the sets of relationships

varied depending on the nature of the customer's policies and other business needs, and

each customer had its own set of requirements for it. Certainly, there was never a single

set of relationships that was the only or uniformly best means for performing the methods claimed in the '164 patent.

TriZetto cites *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 940 (Fed. Cir. 1990) as support for its contention that the inventors needed to disclose some particular set of relationships for the predetermined database in order to avoid a best mode violation. (D.I. 365 at 11.) *Northern Telecom*, however, is inapplicable. As TriZetto points out, in *Northern Telecom*, the inventor's preferred embodiment required the use of cassette tapes that had specific yield strength and magnetic characteristics, which at the time the application was filed were met by only one brand of commercially-available tapes. *Northern Telecom*, 908 F.2d at 940. The inventors in Northern Telecom concealed the fact that they used such unique tapes. *Id.* These facts indicate that *Northern Telecom* is just about as far from the present case as precedent can get. In this case, an infinite number of sets of code-specific relationships can be used in practicing the '164 patent, and the inventors provided numerous different databases to its customers based on their particular policies and preferences.    Redacted

REDACTED

REDACTED

16

REDACTED

REDACTED

Because the facts and law support a finding that TriZetto has failed to prove by clear and convincing evidence that the inventors actually believed there was a best set of code-specific relationships for use in practicing the methods recited in claims 1 and 2, TriZetto's motion for summary judgment must be denied.

### F.    TriZetto Has Not Shown that the Inventors Intentionally Concealed a Best Mode.

TriZetto contends that it is not required to prove that the inventors intentionally concealed a best mode, assuming they had one.  TriZetto's assertion is at odds with Federal Circuit precedent expressly holding that intent to conceal is required.  *See High Concrete Structures*, 377 F.3d at 1383 ("Invalidation based on a best mode violation requires that the inventor knew of and intentionally concealed a better mode than was disclosed."); *Brooktree*, 977 F.2d at 1575 ("Invalidity for violation of the best mode requires intentional concealment of a better mode than was disclosed.").  Perhaps recognizing that its argument is inconsistent with Federal Circuit authority, TriZetto attempts in a footnote to argue intentional concealment.  The evidence, however, does not support TriZetto's assertion.

The evidence TriZetto offers regarding Dr. Radosevich and HPR's attorneys is not relevant because they are not the inventors.  The issue of best mode concerns the knowledge and actions of the inventors, which cannot be shown through the independent

17

actions of other persons.  Moreover, TriZetto mischaracterizes this evidence as it has
done with much of the other evidence it relies on.                    Redacted

REDACTED

TriZetto's assertion that intent to conceal can be inferred from evidence that HPR
viewed the database as proprietary is also without merit.                    Redacted

REDACTED

Redacted                    In addition, the assertion that the inventors concealed
the contents of the database because they viewed them as proprietary is inconsistent with
the fact that CodeReview's source code is disclosed at Appendix D of the '164 patent,
even though the inventors considered the source code to be proprietary.  (D.I. 366, Ex. 5
at 141:6-9.)

Because TriZetto has failed to offer sufficient evidence of intent to conceal, the
Court must deny TriZetto's summary judgment motion.

**G.    TriZetto Fails to Prove Concealment of a Best Mode.**

TriZetto goes to great lengths in attempting to demonstrate the inventors'
supposed failure to meet prong 2 of the best mode requirement, in other words, the
inventors' alleged "concealment of their database."  Because the evidence demonstrates
that the inventors never, much less at the time of the patent application, had a best set of

code-specific relationships, they were under no obligation to disclose a particular and random set of such relationships. The inventors did, however, disclose all the aspects of the '164 patent for which they could have envisioned a best mode.

As McKesson's expert, Dr. Musen, made clear in his rebuttal report on invalidity, the development of the 21 metarules that were entirely disclosed in the patent is what was "'universally recognized as the most time consuming, difficult and expensive process involved in building an expert system.'" (D.I. 366, Ex. 2 at 34, quoting Expert Report of Randall Davis, TriZetto's expert, at 15.) Sticking thousands of code relationships into the predetermined database was not. (*See, e.g.*, Barlow Decl., Ex. 2 at 97:22-98:20, 100:21-101:16, and 231:5-25.)

The inventors agreed that the development and application of the 21 metarules, which were disclosed in the patent, were the novel aspects of the invention.[4]

REDACTED

REDACTED

---

[4]    TriZetto accepts the importance and novelty of the metarules in its summary judgment motion regarding anticipation and obviousness. (*See, e.g.*, D.I. 380 at 2-3.)

REDACTED


REDACTED


The '164 patent clearly discloses the metarules developed by the inventors and the application of those metarules. Figures 1 – 5 and 7 of the '164 patent describe how the metarules, computer program, and flexible knowledge base interact with each other. Appendix B lists each of the metarules, and Appendix A gives 18 examples of how the metarules can be applied to medical service codes. In addition, contrary to TriZetto's assertion, Appendix C of the patent discloses a database structure. Appendix D discloses a computer program for performing the described operations, including the application of the metarules. The foregoing disclosures by the inventors demonstrate they did not conceal any type of best mode, nor did they have any intention to do so.

## V.    CONCLUSION.

For the reasons set forth herein, McKesson respectfully requests that the Court deny TriZetto's motion for summary judgment on its defense of best mode and grant McKesson's motion for summary judgment on TriZetto's best mode defense.

By: /s/ Michael A. Barlow
    Thomas J. Allingham II (#0476)
    Michael A. Barlow (#3928)
    SKADDEN, ARPS, SLATE,
      MEAGHER & FLOM LLP
    One Rodney Square
    P.O. Box 636
    Wilmington, Delaware  19899
    (302) 651-3000

    Attorneys for Plaintiff McKesson
    Information Solutions LLC

OF COUNSEL:
Jeffery G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California  94301
(650) 470-4500

DATED:  June 15, 2006