EXHIBIT U

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1258 (SLR) |
| | ) | |
| THE TRIZETTO GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT THE TRIZETTO GROUP, INC.'S
## FIRST SET OF INTERROGATORIES (1-20)

Pursuant to Fed. R. Civ. P. 33, TriZetto Group, Inc., ("TRIZETTO") hereby requests that plaintiff McKesson Information Solutions, LLC ("McKESSON") respond in writing to the following interrogatories within thirty (30) days of their service.

### INSTRUCTIONS

1.      These Interrogatories are continuing in character, so as to require that supplemental answers be filed seasonably if further or different information is obtained with respect to any interrogatory.

2.      The terms "and" and "or" shall be construed either conjunctively or disjunctively, as necessary, to bring within the scope of a discovery request any information which might otherwise be construed to be outside of its scope.

3.      No part of an interrogatory should be left unanswered merely because an objection is interposed to another part of the interrogatory.  If a partial or incomplete answer is provided, the responding party shall state that the answer is partial or incomplete.

1

S 12/14/04

4.    In accordance with Fed. R. Civ. P. 26(b)(5), where a claim of privilege is asserted in objecting to any interrogatory or part thereof, and information is not provided on the basis of such assertion:

A.    In asserting the privilege, the responding party shall, in the objection to the interrogatory, or part thereof, identify with specificity the nature of the privilege (including work product) that is being claimed;

B.    The following information should be provided in the objection, if known or reasonably available, unless divulging such information would cause disclosure of the allegedly privileged information,

(1)    For oral communications:

a.    the name of the PERSON making the communication and the names of the PERSONS present while the communication was made, and, where not apparent, the relationship of the PERSONS present to the PERSON making the communication;

b.    the date and place of the communication; and

c:    the general subject matter of the communication.

(2)    For documents:

a.    the type of document,

b.    the general subject matter of the document,

c.    the date of the document, and

d.    such other information as is sufficient to identify the document, including, where appropriate, the author, addressee, custodian, and any other recipient of the document, and where not apparent, the relationship of the author, addressee, custodian, and any other recipient to each other.

2

5.    If the responding party elects to specify and produce business records in answer to any interrogatory, the specification shall be in sufficient detail to permit the interrogating party to locate and identify, as readily as the responding party can, the business records from which the answer may be ascertained.

6.    If, in answering these interrogatories, the responding party encounters any ambiguities when construing a question, instruction, or definition, the responding party's answer shall set forth the matter deemed ambiguous and the construction used in answering.

7.    All terms capitalized in these Interrogatories are defined in the definition section.

## DEFINITIONS

1.    "YOU" or "YOUR" means McKesson Information Solutions, LLC., and any subsidiaries, divisions, branches, predecessors or successors in business, and any entities acting or purporting to act for or on behalf of the foregoing or who are subject to the direction or control of the foregoing, including any present or former agents, employees, officers, directors, insurance companies, attorneys, accountants, investigators, and consultants of the foregoing.

2.    "The '164 PATENT" means U.S. Patent No. 5,253,164.

3.    The term "DOCUMENTS" includes the plural as well as the singular, and is synonymous with the terms "writing" and "recording" as defined in Rule 1001 of the Federal Rules of Evidence, and is intended to include without limitation any handwritings, typewritings, printings, photostats, photocopies, drawings, drafts, charts, photographs, e-mail, tape recordings, filming and every other form of recording upon any tangible thing, any form of communication or representation including letters, words, numbers, symbols, pictures, sounds, or combinations thereof, any stored information or databases, whether maintained on paper, magnetic or electronic media, floppy disks, CD-ROMs, hard drives, zip drives, tapes or on other computer

3

storage, or any other manner including the originals, or if the originals are unavailable, the duplicates of said DOCUMENTS, from which information can be obtained or translated.

4.     The term "PERSON" shall include both natural PERSONS and corporate or other business entities, whether or not in the employ of a party, and the acts and knowledge of a PERSON are defined to include the acts and knowledge of that PERSON'S directors, officers, members, employees, representatives, agents, and attorneys.

5.     The term "IDENTIFY" means, with regards to documents, to:

    (a)    describe the nature of the document (e.g., letter or memorandum);

    (b)    state the date of the document and its bates or control numbers, if any;

    (c)    identify the PERSON who sent and received the original and any copy of the document;

    (d)    state in as much detail as possible the contents of the document; and

    (e)    state the manner and date of the disposition of the document.

6.     The term "IDENTIFY," with respect  to PERSONS, shall mean to state the PERSON'S:

    (a)    Individual, company, or corporate name;

    (b)    last known address; and

    (c)    last known phone number.

### INTERROGATORIES

#### INTERROGATORY NO. 1:

State in detail YOUR construction of each term of each asserted claim of the '164 PATENT, by means of a claim chart (including whether YOUR construction is based on the ordinary meaning, any intrinsic and extrinsic support for YOUR definition, whether YOU

4

contend that any claim term has any meaning other than its ordinary meaning, and any evidence YOU contend supports a construction other than the ordinary meaning).

**INTERROGATORY NO. 2:**

Describe in detail how each asserted claim of the '164 PATENT has been infringed by TRIZETTO (including, for each system or product accused of being infringed, stating in detail, by means of a claim chart, YOUR contention as to where each limitation of the asserted claim is found in the accused infringing TRIZETTO system or product and whether YOU are asserting literal infringement or infringement under the doctrine of equivalents).

**INTERROGATORY NO. 3**

For each asserted claim of the '164 PATENT, describe in detail the alleged conception of each claimed invention (including, but not limited to, the date each claimed invention was first conceived, the names of all PERSONS who participated in the conception of the claimed invention, the contribution made by each PERSON, and any documents related to that conception).

**INTERROGATORY NO. 4:**

For each asserted claim of the '164 PATENT, describe in detail the first reduction to practice (either actual or constructive) of each claimed invention (including but not limited to the circumstances of the reduction to practice, the date(s) of the reduction to practice, identification of all PERSONS who participated in the reduction to practice, the contribution made by each PERSON, and any documents that relate to that reduction to practice).

**INTERROGATORY NO. 5:**

For each TRIZETTO system or product that YOU contend infringes the '164 PATENT, describe the circumstances under which YOU or YOUR predecessor-in-interest first became

aware of that system or product and its alleged infringement (including, but not limited to, the date(s) upon which YOU or YOUR predecessor-in-interest first became aware of such product, the date upon which YOU or YOUR predecessor-in-interest first became aware that such product allegedly infringed the '164 patent, and identification of all PERSONS involved and all documents relating thereto).

**INTERROGATORY NO. 6:**

For each asserted claim of the '164 PATENT, describe any disclosures of the subject matter thereof prior to the date on which the application for the '164 PATENT was filed (including but not limited to, all prior written publications, all sales, all offers to sell, and/or public uses of any product or system embodying or practicing any claimed invention of the '164 PATENT, the dates of any such disclosures, sales, offers for sale and/or public uses, an identification of the products or systems sold, offered for sale and/or publicly used, and an identification of the PERSONS involved in the disclosure, sale, offer, and/or public use and all documents relating thereto).

**INTERROGATORY NO. 7:**

IDENTIFY each product or system ever made, sold, or licensed by YOU, by YOUR predecessor-in-interest, by the named inventors of the '164 PATENT, or by any owner, assignee, or licensee of the '164 PATENT that embodies, practices, or uses any of the alleged inventions claimed in the '164 PATENT including the specific claim(s) of the '164 PATENT that are embodied, practiced, or used in or by each such product or system and the product name, model number, trade name, trademark or other indicia and the dates each product or system was made, sold, or licensed.

**INTERROGATORY NO. 8:**

For each product or system, the identification of which is sought by Interrogatory Number 7, IDENTIFY the PERSONS most knowledgeable about that product or system and state when it was first described in a printed publication, publicly disclosed, or offered for sale and sold anywhere in the world.

**INTERROGATORY NO. 9:**

IDENTIFY all prior art to the '164 PATENT (including publications, patents, patent applications, inventions by others, uses, sales or offers for sale, and disclosures) which YOU, the named inventors of the '164 PATENT, any owner, assignee or licensee of the '164 PATENT, or any patent agent or attorney acting on behalf of the named inventors of the '164 PATENT, were aware prior to filing the '164 PATENT.

**INTERROGATORY NO. 10:**

For every item of prior art the identification of which is sought by Interrogatory No. 9, describe how the prior art was located and the PERSON most knowledgeable about the location of that prior art, and identify all documents relating thereto.

**INTERROGATORY NO. 11:**

Describe in detail any investigation, analysis, testing, studying, or reverse engineering of every TRIZETTO product that YOU have ever considered to infringe or possibly infringe any claim(s) of the '164 PATENT (including, but not limited to, the identification of all PERSONS involved, the nature of each such PERSON'S involvement, the time period of the PERSON'S involvement, any conclusions reached, and any documents relating thereto).

7

**INTERROGATORY NO. 12:**

IDENTIFY and describe any secondary considerations or objective evidence of nonobviousness (e.g. commercial success, long-felt need, expressions of skepticism or disbelief, copying, etc.) that YOU contend support or evidence the purported nonobviousness of the subject matter claimed in the '164 PATENT, and identify all documents supporting such contention.

**INTERROGATORY NO. 13:**

State the amount of damages to which YOU claim to be entitled from TRIZETTO in this action, and the method used to calculate those damages, and identify all documents relating thereto.

**INTERROGATORY NO. 14:**

State the royalty rate or rates YOU contend are a "reasonable royalty" under 35 U.S.C. § 284 for the alleged infringement of the '164 PATENT, and how that royalty rate(s) was determined (including all facts and contentions that support the use of the royalty rate, and all DOCUMENTS that YOU contend support YOUR asserted royalty rate).

**INTERROGATORY NO. 15:**

IDENTIFY all reference materials, including without limitation books, publications, and computer software, that were used or relied upon by any of the inventors of the '164 patent during its conception, development or reduction to practice.

**INTERROGATORY NO. 16:**

IDENTIFY all PERSONS, in addition to the inventors, who may have contributed to the conception, development or reduction to practice of the invention claimed in the '164 PATENT.

**INTERROGATORY NO. 17:**

IDENTIFY all PERSONS involved with the conception, development or commercialization of Health Payment Review, Inc.'s CodeReview product.

**INTERROGATORY NO. 18:**

Identify all materials used which were the basis of the CodeReview product, including all prior software, medical device codes and sets of relationships among the medical device codes.

**INTERROGATORY NO. 19:**

IDENTIFY the programming language or languages used, and any commercial software products used to define the programming environment and/or to assist in the coding of the knowledge base and knowledge base interpreter portions of the system discussed in '164 PATENT as included in the patent's specification and appendices.

**INTERROGATORY NO. 20:**

Describe in detail the basis for YOUR allegation that TRIZETTO's alleged infringement of the '164 Patent has been willful and wanton.

MORRIS, NICHOLS, ARSHT & TUNNELL

Jack B. Blumenfeld (#1014)
Rodger D. Smith, II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
   Attorneys for Defendant
   The TriZetto Group, Inc.

9

OF COUNSEL:

John M. Benassi
Jessica R. Wolff
Matthew C. Lapple
Paul, Hastings, Janofsky & Walker LLP
3579 Valley Centre Drive
San Diego, CA  92130
(858) 720-2500

December 14, 2004

## CERTIFICATE OF SERVICE

I, Jack B. Blumenfeld, hereby certify that copies of the foregoing were caused to be served on December 14, 2004 upon the following in the manner indicated:

### BY HAND

Thomas J. Allingham, II
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, DE  19899

### BY FEDERAL EXPRESS

Jeffrey G. Randall
Skadden, Arps, Slate, Meagher & Flom LLP
525 University Avenue
Suite 1100
Palo Alto, CA  94301]

Jack B. Blumenfeld

EXHIBIT V

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MCKESSON INFORMATION SOLUTIONS )
LLC,                                )
                                    )        CIVIL ACTION NO. 04-1258-SLR
                    Plaintiff,      )
          v.                        )
                                    )
THE TRIZETTO GROUP, INC.,           )
                                    )
                    Defendant.      )
                                    )

## PLAINTIFF MCKESSON'S RESPONSE TO DEFENDANT TRIZETTO'S FIRST SET OF INTERROGATORIES (1-20)

Pursuant to Federal Rule of Civil Procedure 33, plaintiff, McKesson Information

Solutions LLC ("McKesson"), objects and responds as follows to the First Set of

Interrogatories by defendant, The TriZetto Group, Inc. ("TriZetto").

### GENERAL OBJECTIONS

McKesson makes the following General Objections, whether or not separately set

forth in response to each interrogatory, to each and every instruction, definition, and

question posed in the interrogatories:

1.    McKesson objects generally to interrogatories 1 through 20, inclusive,

insofar as they seek production of documents or information protected by the attorney-

client privilege, the work product immunity doctrine, or other privileges. Such

documents or information shall not be produced in response to any interrogatory, and any

inadvertent production thereof shall not be deemed a waiver of any privilege with respect

to such documents or information, or of any work product immunity doctrine or other

D 1/13/05

## INTERROGATORY NO. 6:

For each asserted claim of the '164 PATENT, describe any disclosures of the subject matter thereof prior to the date on which the application for the '164 PATENT was filed (including but not limited to, all prior written publications, all sales, all offers to sell, and/or public uses of any product or system embodying or practicing any claimed invention of the '164 PATENT, the dates of any such disclosures, sales, offers for sale and/or public uses, an identification of the products or systems sold, offered for sale and/or publicly used, and an identification of the PERSONS involved in the disclosure, sale, offer, and/or public use and all documents relating thereto).

## RESPONSE TO INTERROGATORY NO. 6:

Subject to and without waiving its previously stated General Objections, McKesson states the following Specific Objections to this interrogatory:

McKesson objects to this interrogatory as vague and ambiguous, particularly with respect to the phrases "relating thereto" and "subject matter thereof." McKesson further objects to this interrogatory as overbroad and unduly burdensome to the extent it seeks information regarding the disclosure of any portion of the '164 patent or its claims. Such information could encompass, *inter alia*, every prior disclosure of a "computer system" or a "database." McKesson further objects to this interrogatory as overbroad and unduly burdensome to the extent it seeks information not within McKesson's possession, custody, or control. With respect to other parties' activities, the Federal Rules of Civil Procedure do not require McKesson to perform TriZetto's pre-trial investigation. McKesson further objects to this interrogatory as overbroad and unduly burdensome to the extent it seeks documents and/or information regarding any disclosure by the named inventors or HPR, Inc. after September 30, 1987, as such information does not constitute prior art to the claims of the '164 patent. McKesson further objects to this interrogatory as compound and having multiple subparts. McKesson further objects to this

11

interrogatory to the extent that it seeks information protected by the attorney-client privilege, the work product immunity doctrine, or other privileges.

Subject to and without waiving the foregoing objections, McKesson responds to this interrogatory as follows: Neither TriZetto nor any third-party have identified a disclosure, publication, sale, offer for sale, or public use that invalidates any claim of the '164 patent and McKesson is not aware of any such disclosure, publication, sale, offer for sale, or public use. To McKesson's knowledge, consistent with their obligation under 37 C.F.R. § 1.56, the inventors and prosecuting attorneys disclosed all material prior art of which they were aware to the United States Patent and Trademark Office during the prosecution of the '164 patent. Those prior art references are identified in the prosecution history of the '164 patent, a copy of which McKesson has produced to TriZetto. McKesson's investigation into information responsive to this interrogatory is ongoing and McKesson reserves the right to supplement this response as discovery continues or as circumstances otherwise warrant.

**INTERROGATORY NO. 7:**

IDENTIFY each product or system ever made, sold, or licensed by YOU, by YOUR predecessor-in-interest, by the named inventors of the '164 PATENT, or by any owner, assignee, or licensee of the '164 PATENT that embodies, practices, or uses any of the alleged inventions claimed in the '164 PATENT including the specific claim(s) of the '164 PATENT that are embodied, practiced, or used in or by each such product or system and the product name, model number, trade name, trademark or other indicia and the dates each product or system was made, sold, or licensed.

**RESPONSE TO INTERROGATORY NO. 7:**

Subject to and without waiving its previously stated General Objections, McKesson states the following Specific Objections to this interrogatory:

12

McKesson objects to this interrogatory as premature. Whether a product or system "embodie[s], practice[s], or use[s]" inventions claimed in the '164 patent requires a construction of the patent's claims, the proper determination of which will be made by the Court as a matter of law, and an application of that construction to a product or system that may require expert analysis. Furthermore, McKesson's damages investigation is ongoing and may require expert analysis which has not been completed. Moreover, as stated in McKesson's response to Interrogatory Number 1, TriZetto's request for McKesson's claim construction contentions is premature at this time. McKesson further objects to this interrogatory's use of "YOU" and "YOUR," as those terms are defined by TriZetto, as well as its request for information regarding any licensees' products or systems, as unduly burdensome, overbroad, and seeking information that is not within McKesson's possession, custody, or control and/or seeking information that is neither relevant to the claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence. Under TriZetto's definitions, this interrogatory calls for the contentions, if any, of innumerable third-party individuals and entities with no connection to this action.

McKesson further objects to this interrogatory as vague and ambiguous, particularly with respect to the phrase "alleged inventions." The United States Patent and Trademark Office issued the '164 patent after due consideration of the prior art and all requirements for patentability. Accordingly, each claim of the '164 patent is presumed, as a matter of law, to describe a patentable invention. McKesson further objects to this interrogatory as compound and having multiple subparts. McKesson further objects to

13

this interrogatory to the extent that it seeks information protected by the attorney-client privilege, the work product immunity doctrine, or other privileges.

Subject to and without waiving the foregoing objections, McKesson responds to this interrogatory as follows: Neither TriZetto nor any third-party have identified a sale or offer for sale that invalidates any claim of the '164 patent and McKesson is not aware of any such sale or offer for sale. To McKesson's knowledge, consistent with their obligation under 37 C.F.R. § 1.56, the inventors and prosecuting attorneys disclosed all material prior art of which they were aware to the United States Patent and Trademark Office during the prosecution of the '164 patent. Those prior art references are identified in the prosecution history of the '164 patent, a copy of which McKesson has produced to TriZetto. McKesson's investigation into information responsive to this interrogatory is ongoing and McKesson reserves the right to supplement this response as discovery continues or as circumstances otherwise warrant.

## INTERROGATORY NO. 8:

For each product or system, the identification of which is sought by Interrogatory No. 7, IDENTIFY the PERSONS most knowledgeable about that product or system and state when it was first described in a printed publication, publicly disclosed, or offered for sale and sold anywhere in the world:

## RESPONSE TO INTERROGATORY NO. 8:

Subject to and without waiving its previously stated General Objections, McKesson states the following Specific Objections to this interrogatory.

McKesson objects to this interrogatory for the same reasons stated in response to Interrogatory Number 7 and incorporates its response and objections to that interrogatory herein in their entirety.

14

McKesson's investigation into information responsive to this interrogatory is

ongoing and McKesson reserves the right to supplement this response as discovery

continues or as circumstances otherwise warrant.

**INTERROGATORY NO. 9:**

IDENTIFY all prior art to the '164 PATENT (including publications, patents,
patent applications, inventions by others, uses, sales or offers for sale, and disclosures)
which YOU, the named inventors or the '164 PATENT, any owner, assignee or licensee
of the '164 PATENT, or any patent agent or attorney acting on behalf of the named
inventors of the '164 PATENT, were aware prior to filing the '164 PATENT.

**RESPONSE TO INTERROGATORY NO. 9:**

Subject to and without waiving its previously stated General Objections,

McKesson states the following Specific Objections to this interrogatory:

McKesson objects to this interrogatory as vague and ambiguous, particularly with

respect to the phrases "filing the '164 PATENT" and "prior art to the '164 PATENT."

Without further definition or limitation to a particular field, this interrogatory is

overbroad and unduly burdensome and/or improperly calls for a legal determination of

what constitutes "prior art to the '164 PATENT." McKesson further objects to this

interrogatory as overbroad and unduly burdensome to the extent it seeks information

regarding the awareness of any individuals other than the named inventors and

prosecuting attorneys, as such information is neither relevant to the claim or defense of

any party nor reasonably calculated to lead to the discovery of admissible evidence.

McKesson further objects to this interrogatory's use of the term "YOU," as that term is

defined by TriZetto, as unduly burdensome, overbroad, and seeking information that is

not within McKesson's possession, custody, or control and/or seeking information that is

neither relevant to the claim or defense of any party nor reasonably calculated to lead to

15

the discovery of admissible evidence. TriZetto's definition calls for information

regarding the awareness, if any, of innumerable third-party individuals and entities with

no connection to this action. McKesson further objects to this interrogatory as compound

and having multiple subparts. McKesson further objects to this interrogatory to the

extent that it seeks information protected by the attorney-client privilege, the work

product immunity doctrine, or other privileges.

Subject to and without waiving the foregoing objections, McKesson responds to

this interrogatory as follows: To McKesson's knowledge, consistent with their obligation

under 37 C.F.R. § 1.56, the inventors and prosecuting attorneys disclosed all material

prior art of which they were aware to the United States Patent and Trademark Office

during the prosecution of the '164 patent. Those prior art references are identified in the

prosecution history of the '164 patent, a copy of which McKesson has produced to

TriZetto. McKesson's investigation into information responsive to this interrogatory is

ongoing and McKesson reserves the right to supplement this response as discovery

continues or as circumstances otherwise warrant.

### INTERROGATORY NO. 10:

For every item of prior art the identification of which is sought by Interrogatory
No. 9, describe how the prior art was located and the PERSON most knowledgeable
about the location of that prior art, and identify all documents relating thereto.

### RESPONSE TO INTERROGATORY NO. 10:

Subject to and without waiving its previously stated General Objections,

McKesson states the following Specific Objections to this interrogatory:

McKesson objects to this interrogatory for the same reasons stated in response to

Interrogatory Number 9 and incorporates its response and objections to that interrogatory

herein in their entirety. McKesson further objects to this request as vague and ambiguous, particularly with respect to the phrases "how the prior art was located," "location," and "relating thereto." McKesson further objects to this request as overbroad and unduly burdensome to the extent it seeks information regarding "how the prior art was located," as such information is neither relevant to the claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence. McKesson further objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege, the work product immunity doctrine, or other privileges.

Subject to and without waiving the foregoing objections, McKesson responds to this interrogatory as follows: To McKesson's knowledge, consistent with their obligation under 37 C.F.R. § 1.56, the inventors and prosecuting attorneys of the '164 patent disclosed all material prior art of which they were aware to the United States Patent and Trademark Office during the '164 patent's prosecution. Those prior art references are identified in the prosecution history of the '164 patent, a copy of which McKesson has produced to TriZetto. McKesson's investigation into information responsive to this interrogatory is ongoing and McKesson reserves the right to supplement this response as discovery continues or as circumstances otherwise warrant.

**INTERROGATORY NO. 11:**

Describe in detail any investigation, analysis, testing, studying, or reverse engineering of every TRIZETTO product that YOU have ever considered to infringe or possibly infringe any claim(s) of the '164 PATENT (including, but not limited to, the identification of all PERSONS involved, the nature of each such PERSON'S involvement, the time period of the PERSON'S involvement, any conclusions reached, and any documents relating thereto).

17

DATED:  January 13, 2005

By:    _____
Jeffery G. Randall
SKADDEN, ARPS, SLATE MEAGHER
   & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, CA  94301

Attorneys for Plaintiff,
McKesson Information Solutions LLC

EXHIBIT W

REDACTED

EXHIBIT X

REDACTED

EXHIBIT Y

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

MCKESSON INFORMATION SOLUTIONS LLC,

Plaintiff,

v.

THE TRIZETTO GROUP, INC.

Defendant.

Civil Action No. 04-1258-SLR

## DEFENDANT'S DESIGNATION OF TRIAL WITNESSES

Pursuant to paragraph 2(f) of the February 18, 2005, Scheduling Order herein, defendant The TriZetto Group, Inc. hereby identifies the following fact witnesses that it may call at one or both of the trials herein, either in person or by way of deposition testimony:

| | | | |
|---|---|---|---|
| 1. | Bargar, Robert | 13. | Dugan, Kelli |
| 2. | Bell, Karen | 14. | Egdahl, Richard |
| 3. | Bellomo, Anthony | 15. | Goldberg, George |
| 4. | Blake, John | 16. | Graham, Steve |
| 5. | Blakely, Roger | 17. | Hawley, Philip |
| 6. | Bowker, Michael | 18. | Hemp, Kristen |
| 7. | Cesarz, Michael | 19. | Hertenstein, Robert |
| 8. | Cutcliff, Janet | 20. | Holloway, Donald |
| 9. | Danza, John | 21. | Hurst, Ronald |
| 10. | Davis, Randall | 22. | Jones, Clifton |
| 11. | Demers, Don | 23. | Kao, John |
| 12. | Doubleday, Chris | 24. | Kerschberg, Larry |

| | | | | |
|---|---|---|---|---|
| 25. | King, Eric | | 32. | Owen, Mark |
| 26. | Kiplinger, Patricia | | 33. | Radosevich, Marcia |
| 27. | Lampe, Karen | | 34. | Richardson, Duffey |
| 28. | Luftig, Craig | | 35. | Siemens, Gunter |
| 29. | Margolis, Jeffrey | | 36. | Smith, Tara |
| 30. | Moore, Charlie | | 37. | Smith, Tommy |
| 31. | Nunnelly, John | | 38. | Wukitch, Carolyn |

TriZetto reserves the right to supplement and amend the foregoing list with additional witnesses based on further investigation and review, and based on additional discovery recently ordered by Judge Bechtle. TriZetto also reserves the right to call any witnesses designed by McKesson in this matter, and to designate the same or additional witnesses for purposes of impeachment and/or rebuttal.

MORRIS, NICHOLS, ARSHT & TUNNELL

Jack B. Blumenfeld (#1014)
Rodger D. Smith, II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200

Attorneys for Defendant
THE TRIZETTO GROUP, INC.

OF COUNSEL:

Jeffrey T. Thomas
David A. Segal
Michael A. Sitzman
GIBSON, DUNN & CRUTCHER LLP
Jamboree Center, 4 Park Plaza
Irvine, California 92614-8557
(949) 451-3800

December 30, 2005

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that copies of the foregoing were caused to be served this 30th day of December, 2005, upon the following counsel in the manner indicated:

<u>BY HAND</u>

Thomas J. Allingham, II
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, DE  19899

<u>BY FEDERAL EXPRESS</u>

Jeffrey G. Randall
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, CA  94301

Jack B. Blumenfeld

EXHIBIT Z

LAW OFFICES

# COBRIN GITTES & SAMUEL

PATENTS, TRADEMARKS AND COPYRIGHTS

PETER T. COBRIN
MARVIN S. GITTES
RICHARD I. SAMUEL
—
DAVID A. JACOBS
KERRY P.L. MILLER
EILEEN M. EBEL
RICHARD M. LEHRER
JAMES E. BRANDT
JILL C. GREENWALD
DAVID J. GARROD, Ph.D.*

750 LEXINGTON AVENUE
NEW YORK, N.Y. 10022
—
TELEPHONE (212) 446-4000
TELECOPIER (212) 446-4007

NEW JERSEY OFFICE
1271 COOPER ROAD
SCOTCH PLAINS, NJ 07076
TELEPHONE (908) 756-7406
TELECOPIER (908) 754-5930

January 18, 1995

*REGISTERED U.S. PATENT AGENT ONLY

**Via Federal Express**

Honorable Clarence C. Newcomer
United States District Court
  for the Eastern District of Pennsylvania
U.S. Courthouse - Room 13614
601 Market Street
Philadelphia, PA 19106

> Re:    GMIS, Inc. v. Health Payment Review, Inc.
>        No. 94-CV-056
>        <u>AMENDED WITNESS LIST</u>

Dear Judge Newcomer:

Plaintiff GMIS hereby respectfully files the following amended list of witnesses which it intends to call at the Trial of this Action:

1.    Dr. Shimon Schocken is a fact and expert witness skilled in the computer science arts. Dr. Schocken will testify as to facts concerning the state of the art as of the date of invention of the '164 Patent, the skill in the art as of that date, and with respect to the matters raised in his expert report.

2.    James Reisman is a fact and expert witness who will testify as to facts relating to the United States Patent and Trademark Office, who will explain the file history of the patent in suit and will also testify with respect to matters raised in his expert report.

3.    Mr. Thomas Owens is Chief Executive Officer of Plaintiff GMIS, Inc., who will testify as to the business and products of GMIS, as to statements made by Defendant's agents to others after the patent issued and as to overall knowledge of the claims processing industry prior to the date of invention of the '164 patent. In particular, Mr. Owens will also testify with regard to the initial development of the GMIS ClaimCheck



EXHIBIT

H-118

MCK 046088

COBRIN GITTES & SAMUEL

Honorable Clarence C. Newcomer
January 18, 1995
Page 2

product, GMIS' AUTOCODER product which was sold by GMIS prior to the date of invention of the '164 patent, and his prior employment at HSI (Health Systems International) where he was involved with the sale of *inter alia*, the MCMS (Medical Claims Monitoring System) computer system which detected fraudulent medical claims via examination of service codes prior to the date of invention of the '164 patent. Mr. Owens will identify and discuss the User's Guide for the MCMS system, and the December 23, 1994 letter from Ms. Linda Ayr to Mr. Garrard Kramer and the MCMS brochure attached thereto.

4.      Dr. Robert Hertenstein, a named inventor of the '164 patent - Dr. Hertenstein will testify by way of deposition as already submitted to the Court, as to the background of the '164 patent, what the patent discloses and what it fails to disclose.

5.      Dr. Don Holloway, a named inventor of the '164 patent - Dr. Holloway will testify by way of deposition as already submitted to the Court, as to the background of the '164 patent, what the patent discloses and what it fails to disclose.

6.      Virginia Klenske - Ms. Klenske is a technical person employed by GMIS and will testify with respect to the GMIS products accused of infringement, demonstrating facts which form the basis of a conclusion of non-infringement. Ms. Klenske will also testify as to information relating to GMIS' AUTOCODER product.

7.      Michael Stare - Mr. Stare is employed by defendant and will testify by way of deposition as already submitted to the Court, concerning communications made on behalf of defendant to GMIS customers with respect to the '164 patent.

8.      George Goldberg, a named inventor of the '164 patent - Dr. Goldberg will testify by way of deposition concerning his work on the subject matter of the '164 patent with respect to what the patent does and does not disclose, and he will testify with regard to prior art.

9.      Marcia Radosevich - Ms. Radosevich is the chief executive of defendant and will testify either personally or by deposition as already submitted to the Court, concerning communications made by and on behalf of defendant with respect to the patent in suit and other matters contained in her deposition. Ms. Radosevich will also testify with regard to prior art. In particular, Ms. radosevich will refer to an article in PR Newswire, (June 24, 1986 relating to the computer program Unified Claims which incorporated

MCK 046089

COBRIN GITTES & SAMUEL

Honorable Clarence C. Newcomer
January 18, 1995
Page 3

"Patterns of Treatment").

10.    Gary Frazier -- Mr. Frazier is a stock analyst and will testify by way of deposition concerning communications he received from representatives of defendant concerning the '164 patent and its effect on plaintiff.

11.    Michael Thurmond is the Chief Financial Officer of plaintiff GMIS and will testify as to financial information relevant to GMIS, its products and business.

12.    John Blaney is the founder of a company, ASA, which developed computer systems which detected fraudulent medical claims via examination of service codes prior to the date of invention of the '164 patent. *Inter alia*, ASA worked with Health Data Institute (HDI) in developing one such system. He will testify that Marcia Radosevich was HDI Project Manager for that system. Mr. Blaney will also testify as to these claims processing systems and other products which constitute prior art relevant to the patent in suit. In particular, Mr. Blaney will testify about information based on and concerning AMS December 1986, Claim Level Edits (103 page manual), and Advanced MedLogic Systems Product Overview (May 1987).

13.    Joanne Hilferty is President of Medical Intelligence, Inc., a subsidiary of GMIS, and Vice President of GMIS. She will testify concerning prior art relevant to the patent in suit, including work done at HDI in connection with computer systems which detected fraudulent medical claims via examination of service codes prior to the date of invention of the '164 patent. She will also testify with regard to facts indicating that Ms. Radosevich was aware of such activities prior to the date of invention. In particular, Ms. Hilferty will testify about information based on and concerning AMS December 1986, Claim Level Edits (103 page manual), and Advanced MedLogic Systems Product Overview (May 1987).

14.    Susan Fitzpatrick is Associate Director, Medical Management Programs, Metropolitan Life Insurance Company, Westport, Connecticut. Ms. Fitzpatrick will testify by way of video deposition as to computer systems of Metropolitan Life Insurance Company which detected fraudulent medical claims via examination of service codes prior to the date of invention. In particular, Ms. fitzpatrick will testify as to the prior art computer system that Metropolitan Life Insurance Company was using on a commercial basis called Unified Claims. Unified Claims incorporated "Patterns of Treatment" on an electronic basis prior to the date of invention of the '164 patent.

MCK  046090

Confidential Information Subject to D. Del. LR 26.2

# COBRIN GITTES & SAMUEL

Honorable Clarence C. Newcomer
January 18, 1995
Page 4

15.    Robert Goldscheider is an attorney and Chairman of The International Licensing Network, Ltd. Mr. Goldscheider is an expert on the subject of patent damages and will testify as to the issue of damages and other issues raised in his expert report which will be filed under separate cover.

16.    Robert Leif D.D.S. is a dentist and President of American Dental Examiners. Dr. Leif will testify with regard to prior art. In particular, Dr. Leif will testify as to the development of a computer system which embodied a database of dental service codes and a set of relationships among the codes which system was commercially available prior to the date of invention of the '164 patent and which system was developed in conjunction with ASA.

17.    Carin Carlson - Ms. Carlson is Vice President of GMIS, Inc. and will testify as to development of GMIS' ClaimCheck and as to claims processing systems and other products which constitute prior art relevant to the patent in suit.

18.    Bob Barger M.D. - Dr. Barger will testify as to the prior art. Particularly Dr. Barger will testify as to claims processing systems which were publicly known or commercially used prior to the date of invention of the '164 patent.

19.    Aetna Representatives -  Representatives from Aetna will testify as to communications that took place Aetna and Health Payment Review Inc prior to the date of invention and communications that took place between Aetna and GMIS.

20.    U.S. Healthcare Representatives - Representatives from U.S. Healthcare will testify as to claims processing systems and other products which constitute prior art relevant to the patent in suit.

21.    Brian Cahill -- Mr. Cahill is the Chief Financial Officer of Health Payment Review, Inc. and will testify with respect to the patent application process as well as with respect to the business of Health Payment Review, Inc., its competition with GMIS and its damages.

22.    Systems Architects and members of the clinical affairs staff of Health Payment Review, Inc., Thomas J. Boyle, David J. Rullo, M.D. and Lawrence G.Miller, M.D. will testify with respect to Health Payment Review, Inc's CodeReview Product, with respect to how the product is manufactured, maintained and operated and the program disclosed

MCK 046091

Confidential Information Subject to D. Del. LR 26.2

04-CV-1258-SLR (D.Del.)

COBRIN GITTES & SAMUEL

Honorable Clarence C. Newcomer
January 18, 1995
Page 5

in the '164 patent.

23.    Sam Fager, M.D. - Dr. Fager will testify as to communications between Don Holloway and Aetna Life and Casualty Insurance Company.  In particular, Dr. Fager will identify and discuss documents which Health Payment Review, Inc. produced to GMIS after the close of discovery.

24.    Howard Bailit, M.D. - Dr. Bailit was Vice President of Aetna Life Insurance Company and will testify as to communications between the Health Policy Institute and Aetna Insurance Company.  In particular, Dr. Fager will identify and discuss documents which Health Payment Review, Inc. produced to GMIS after the close of discovery.

25.    Christine Stavarino - Ms. Stavarino will testify as to communications between Don Holloway and Aetna Insurance Company.  In particular, Ms. Stavarino will identify and discuss documents which Health Payment Review, Inc. produced to GMIS after the close of discovery.

26.    Richard Egdahl, M.D. - Dr. Egdahl will testify as to the prior art.  In particular, Dr. Egdahl will testify as to claims processing systems and other products which constitute prior art relevant to the patent in suit.

Very truly yours,

*Richard M. Lehrer*

Richard M. Lehrer, Esq.
Counsel for Plaintiff GMIS, Inc.

RIS/IS/DAJ/RL
cc:    William T. Hangley, Esq.
        Joel S. Goldhammer, Esq.

MCK 046092

Confidential Information Subject to D. Del. LR 26.2

04-CV-1258-SLR (D.Del.)