EXHIBIT AA

Case 1:04-cv-01258-SLR     Document 426-8     Filed 06/22/2006     Page 1 of 10

# REDACTED

EXHIBIT BB

1    IN THE UNITED STATES DISTRICT COURT
2        FOR THE DISTRICT OF DELAWARE
3
4  MCKESSON INFORMATION        )
   SOLUTIONS, LLC,            )
5                             )
          PLAINTIFF,    )
6  vs.                  ) Case No. 04-1258-SLR
                        )
7  THE TRIZETTO GROUP, INC.,    )
                        )
8        DEFENDANT.    )
   _____)
9
10
11
12
13
14    VIDEO DEPOSITION OF MARK MUSEN, M.D., PH.D.
15    Held at Skadden, Arps, Slate, Meagher & Flom
16        525 University Avenue, 11th Floor
17            Palo Alto, California
18      Tuesday, November 22, 2005, 9:11 a.m.
19
20
21
22
23
24  REPORTED BY:  CHRIS DE GEORGE, CSR. NO. 7069
25

Page 1

1              I N D E X
2
3  EXAMINATION                    PAGE
4    BY: MR. SITZMAN            5, 292
5    BY: MR. HENDERSHOT          277
6
7
          INDEX OF EXHIBITS
9  NUMBER          DESCRIPTION      PAGE
10  MM-1    Multi-page Expert Report of Mark    5
          A. Musen, M.D., Ph.D.
11
    MM-2    Rebuttal Expert Report of Mark    5
12        A. Musen, M.D., Ph.D.; 37 pages
13  MM-3    United States Patent Number    15
          5,253,164
14
    MM-4    Paper entitled "An Access-oriented    72
15        Negotiated Fee Schedule, The
          Caterpillar Experience," pages
16        349-357
17  MM-5    Memorandum Order; 4 pages      109
18  MM-6    PEW Conference Presentation    173
          Managing Physician Fees; 4 pages
19
    MM-7    Vendor Comparison dated 1-18-88;    180
20        1 page
21  MM-8    Exhibit C, Materials Examined;    193
          9 pages
22
    MM-9    Expert Report of Dr. Margaret    298
23        L. Johnson, Ph.D; 30 pages
24
25

Page 3

1              A P P E A R A N C E S
2
3  For the Plaintiff:
4      Skadden, Arps, Slate, Meagher & Flom, LLP
5      BY:  MICHAEL HENDERSHOT and JON SWENSON,
6      Attorneys at Law
7      525 University Avenue, 11th Floor
8      Palo Alto, California 94301
9      (650) 470-4500
10
11  For the Defendant:
12      GIBSON, DUNN & CRUTCHER LLP
13      BY:  MICHAEL A. SITZMAN and DANIEL MUINO,
14      Attorneys at Law
15      One Montgomery Street
16      San Francisco, California 94104-4505
17      (415) 393-8221
18      msitzman@gibsondunn.com
19
20
21      Also present:  Michael Barber,
22      Videographer
23
24
25

Page 2

1          BE IT REMEMBERED that, pursuant to Notice, and
2  on Tuesday, November 22, 2005, commencing at the hour of
3  9:11 a.m. thereof, at the Law Offices of Skadden, Arps,
4  Slate, Meagher & Flom, LLP, 525 University Avenue, 11th
5  Floor, Palo Alto, California, before me, Chris De
6  George, CSR #7069, State of California, there personally
7  appeared
8          MARK MUSEN, M.D., PH.D.,
9  called as a witness herein by Defendant, who, being
10  first duly sworn, was examined as is
11  hereinafter set forth.
02:27  12              --oOo--
08:39  13
09:10  14          THE VIDEOGRAPHER:  Good morning.  My name is
09:10  15  Michael Barber.  I am a videographer associated with
09:10  16  Barkley Court Reporters located at 222 Front Street,
09:11  17  Suite 600, San Francisco, California 94111.  The date is
09:11  18  November 22nd, 2005.  The time is 9:11 a.m.
09:11  19          This deposition is taking place at Skadden,
09:11  20  Arps, Slate, Meagher & Flom, LLP, 525 University Avenue,
09:11  21  Palo Alto, California 94301 in the matter of McKesson
09:11  22  Information Solutions, LLC, versus the TriZetto Group,
09:11  23  Inc., Case Number 04-1258-SLR.
09:11  24          This is the videotape deposition of Mark
09:11  25  Musen, M.D., Ph.D. being taken on behalf of the defense.

Page 4

1 (Pages 1 to 4)

MARK MUSEN, M.D., PH.D.

10:08  1    just those two codes that you identified?  Are there
10:08  2    other codes on the claim?  And you mentioned a system as
10:08  3    well.  That's the first time I've sort of heard that in
10:08  4    hypothetical.
10:08  5    BY MR. SITZMAN:
10:08  6        Q.  Well, is it possible for you to answer my
10:08  7    question?
10:08  8        A.  It's -- it's hard because it depends on the
10:08  9    policies that are in place by a particular payer dealing
10:08  10   with that particular situation, and so I -- I can't tell
10:08  11   you in a generic sense how that would be handled.
10:08  12       In many situations, the code or the claim for
10:08  13   the tray would be summarily rejected and then there
10:08  14   would have to be an appeal on the part of the healthcare
10:08  15   organization; in other cases there might be a way of
10:08  16   providing documentation up front, but it's very
10:08  17   situation-specific.
10:08  18       Q.  And I -- and I apologize for getting too far
10:08  19   upfield here.  I guess I wanted to really focus in on --
10:09  20   on where you were going with or your interpretation of
10:09  21   mutually exclusive due to non-medical criteria, and I
10:09  22   think your non-medical criteria has to do, in the
10:09  23   hypotheticals we've been talking about, is really things
10:09  24   like procedural trays, and that's what would make it
10:09  25   mutually exclusive, the lumbar tray example that you

Page 49

10:09  1    gave us.
10:09  2        MR. HENDERSHOT:  I'm going to object that
10:09  3    misstates his testimony.  I think that was an example
10:09  4    that he gave but --
10:09  5        THE WITNESS:  We can explore other examples,
10:09  6    if you think that would be better.
10:09  7    BY MR. SITZMAN:
10:09  8        Q.  No.  I think we'll come back -- we'll come
10:09  9    back to it.
10:09  10       A.  Okay.
10:09  11       Q.  Yeah.  Where -- let's look real quickly at the
10:09  12   patent, the '164 patent.
10:09  13       A.  Sure.
10:09  14       Q.  Where in the patent have, returning back to
10:09  15   the non-medical criteria, is non-medical criteria
10:09  16   defined as you have defined it?
10:10  17       A.  Well, the narrative of the patent doesn't
10:10  18   actually use those terms.  It does not make a
10:10  19   distinction here.  The claims make a distinction between
10:10  20   medical and non-medical, and I believe in my
10:10  21   interpretation the claims are doing that so that they
10:10  22   can claim the universe of criteria.
10:10  23       Q.  And I under -- I understand where you are
10:10  24   with -- with the claim, you know, the mutual
10:10  25   exclusivity, but in terms of trying to figure out what

Page 50

10:10  1    criterion is used between medical and non-medical, is
10:10  2    there anything in the patent that gives any guidance as
10:10  3    to that?
10:10  4        A.  The patent specification provides the basis by
10:10  5    which one can implement the predetermined database that
10:10  6    contains the codes that are mutually exclusive.  The
10:10  7    method provided by the patent is sufficiently broad and
10:10  8    general that it doesn't need to make a distinction
10:11  9    between medical or non-medical.  That presumably is left
10:11  10   as a distinction that the implementer of the database
10:11  11   would make.
10:11  12       Q.  But someone reading a -- for instance, the
10:11  13   claim -- what claim are we on?  I think it may be
10:11  14   Claim 2 in the patent.
10:11  15       A.  Let me see if I have the claims marked here.
10:11  16       MR. HENDERSHOT:  The last couple pages.
10:11  17       THE WITNESS:  Yeah.
10:11  18       MR. HENDERSHOT:  It would be all the way in
10:11  19   the back.
10:11  20       THE WITNESS:  Here we go.
10:11  21   BY MR. SITZMAN:
10:11  22       Q.  Yeah, it's Column 117.
10:11  23       A.  Yep.
10:11  24       Q.  Claim 2, in the step that says, "determining,"
10:11  25   "determining whether one of the medical service codes in

Page 51

10:11  1    the at least one claim is mutually exclusive due to
10:11  2    non-medical criteria with any other medical service code
10:12  3    in the at least one claim."
10:12  4        A.  Okay.
10:12  5        Q.  So someone reading that, how do they know, I
10:12  6    think what you're telling me is that it's up to the
10:12  7    database programmer, but somebody reading this claim
10:12  8    needs to understand the scope of the patent claim.  What
10:12  9    is it that tells me what the non-medical criteria is?
10:12  10       MR. HENDERSHOT:  You mean outside of the
10:12  11   ordinary meaning he identified earlier?
10:12  12       MR. SITZMAN:  Well, and -- and if that's what
10:12  13   he wants to tell me, that non-medical criteria has
10:12  14   ordinary meaning and that was the ordinary meaning that
10:12  15   he gave it, that's fine.
10:12  16       Q.  But I need to either know whether or not
10:12  17   that's your interpretation of ordinary meaning or if
10:12  18   it's in the patent somewhere.
10:12  19       A.  Well, my -- my testimony was that it's not
10:12  20   essential for the database implementer to make that
10:12  21   distinction between medical and non-medical because the
10:12  22   framework provided by the patent is sufficiently general
10:12  23   that it will apply to criteria of both kinds.
10:13  24       Q.  "Both kinds" being?
10:13  25       A.  Medical and non-medical.  That the data --

Page 52

13 (Pages 49 to 52)

MARK MUSEN, M.D., PH.D.

1    State of CALIFORNIA              )

2    County of _Santa Clara__ )

3

4

5

6

7              I, the undersigned, declare under penalty of

8    that I have read the foregoing transcript, and I have

9    made any corrections, additions or deletions that I was

10   desirous of making; that the foregoing is a true and

11   correct transcript of my testimony therein.

12             EXECUTED this __17__ day of _December_,

13   2005, at __Stanford__, __CA__ .
                  (City)              (State)

14

15

16

17

18   _____, M, Ph.D
             MARK MUSEN, M.D., PH.D.

19

20

21

22

23

24

25
                           326

          MARK MUSEN, M.D., PH.D.                    BARKLEY
                                                     Court Reporters

# EXHIBIT CC

REDACTED

EXHIBIT DD

# REDACTED