**EXHIBIT 4**

LEXSEE 1988 U.S. DIST. LEXIS 1573

Hesston Corporation, Plaintiff, v. Don L. Sloop, Defendant; Hesston Corporation, Plaintiff, v. Massey-Ferguson, Inc., Defendant

Civil Action Nos. 86-2370-S, 86-2371-S

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

*1988 U.S. Dist. LEXIS 1573*

February 4, 1988, Decided and Filed

COUNSEL: [*1]

John J. Jurcyk, Jr., McAnany, Van Cleave & Phillips, P.A., Warren N. Williams, Stephen D. Timmons, Schmidt, Johnson, Hovey & Williams; for Plaintiff.

J. Nick Badgerow, Spencer, Fane, Britt & Browne, Rudolph L. Lowell, C. Carleton Frederici, Davis, Hockenberg, Wine, Brown, Koehn & Shors, Carter H. Kokjer, P.C., Kokjer, Kircher, Bradley, Wharton, Bowman & Johnson; for Defendant.

OPINIONBY:

SAFFELS

OPINION:

MEMORANDUM AND ORDER

Dale E. Saffels, United States District Judge

This matter is before the court on defendants' motion for summary judgment.

Plaintiff brought separate actions against defendants Don L. Sloop and Massey-Ferguson, Inc. for patent infringement under Title 35 of the United States code. The complaints allege that defendants have and continue to infringe United States Patent Nos. 4,224,867 and 4,386,493 by selling, using and inducing others to sell and use hay balers for preparing large round bales which are commercialized under the trade designations Vermeer Models 604J and 605J and perhaps other models. Defendants deny infringement, asserting as affirmative defenses that the patents are invalid, void and unenforceable. Defendants have also filed two counterclaims. In the first counterclaim, [*2] defendants request the court to declare United States Patent Nos. 4,224,867 and 4,386,493 invalid, void and unenforceable. The second counterclaim involves antitrust issues. By earlier order of this court, the antitrust issues will be considered in a separate trial.

In their motion for summary judgment, defendants argue that Claims 1 and 2 of Patent No. 4,386,493 are invalid, unenforceable and not infringed. Defendants' motion does not address Patent No. 4,224,867. Therefore, this is a motion for partial summary judgment.

Defendants have requested oral argument on their motion. After reviewing the motion, memoranda and attachments, the court finds oral argument would not materially assist it in deciding the motion. Defendants' request for oral hearing is denied.

1. FACTS

Plaintiff is the owner of the entire right, title and interest in and to each of United States Patent Nos. 4,321,787 (hereinafter '787), 4,386,493 (hereinafter '493), and 4,182,101 (hereinafter '101). Patent '787 titled "Method and Apparatus for Making Large Round Crop Bales," was issued on March 30, 1982. The application for this patent was filed on June 9, 1975.

On March 26, 1982, prior to the issuance of the '787 [*3] patent, plaintiff filed a continuation application. The continuation patent of parent patent '787 was issued on June 7, 1983. This is the '493 patent-in-suit. The '787 and '493 patents contain the same specification and drawings.

The abstract of the '787 and '493 patents describe the invention as follows:

The bale-forming machine has rolling mechanism that initially tumbles loose crop material forwardly between the mechanism and the ground as the machine advances along a windrow. Thereafter, the rolling material becomes confined off the ground in an elevated forming chamber as additional material is fed into the chamber and as the mechanism rolls the material into a bale. Upon reaching a

predetermined size, the bale can be tied and then ejected from the chamber through the raised rear section of the machine.

Claims 1 and 2 of suit patent '493 are stated below:

1. In a mobile baler of the type having a housing provided with an off-the-ground baling chamber and means associated therewith for making a round bale within the chamber from crop materials presented thereto, the improvement comprising a crop entrance to the chamber located adjacent to a lower portion thereof;

a crop [*4] pickup having a crop engaging portion thereof located generally below said chamber and behind the front of the housing with respect to the normal direction of travel of the baler for lifting crop materials from the ground and feeding the same up toward said chamber; and

an open, non-compressive crop receiving and inflow region extending from said crop-engaging portion of the pickup to the forward extremity of said entrance whereby to substantially prevent compaction of picked up crop materials prior to the same reaching said baling chamber.

2. A method of baling crop materials into a round bale that includes the steps of:

picking up crop materials from the field at a point generally underneath a baling chamber while traveling across the field; feeding the picked up materials up into the baling chamber without first compacting the same between a pair of opposed rollers or the like; and rolling the materials into a bale within said chamber.

Plaintiff's patent '101 was issued on January 8, 1980, pursuant to a patent application filed on December 1, 1977. This patent is titled "Machine for Coiling Fibrous Crop Materials in Large Round Bales." For a general description of this patent, [*5] a portion of its abstract is stated below:

The machine employs a vertically-oriented, bale-starting chamber and a crop pickup located immediately below such chamber so that materials lifted from the ground by the pickup as the machine advances are fed directly up into the starting chamber to be acted upon by front and rear sets of oppositely-moving, vertically-disposed belts. A throat area at the bottom of the starting chamber and above the pickup is devoid of compression rollers and other like structure that would squeeze and compress the upwardly-fed materials into a mat so that unencumbered, free flow of materials up into the starting chamber is assured . . . .

Plaintiff admits Claim 1 of continuation patent '493 is readable on a baler disclosed in the '101 patent and Claim 2 of patent '493 is readable on a method of baling disclosed in the 101 patent. Plaintiff also admits the '101 patent was not cited by applicants to the examiner handling the prosecution of the patent application which issued as the '493 continuation patent.

2. THE LAW

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. *Fed. R. Civ.* [*6] *P. 56(c)*; *Maughan v. SW Servicing, Inc., 758 F.2d 1381, 1387 (10th Cir. 1985)*. An issue of fact is "material" only when the dispute is over facts that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2509-10 (1986)*. The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Id. The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block, 788 F.2d 1433, 1435 (10th Cir. 1986)*. The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves, 744 F.2d 1387, 1396 (10th Cir. 1984)*, cert. denied, *105 S. Ct. 1187 (1985)*. The language of Rule 56(a) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's [*7] case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552-54 (1986)*. Courts have exercised great caution before granting summary judgment in patent infringement cases because they generally involve complex issues and may require expert testimony to aid the court in understanding the relevant technology. See *Landau v. J. D. Barter Construction Co., 657 F.2d 158, 161-62 (7th Cir. 1981)*.

Defendants' motion for summary judgment is based upon three grounds. First, defendants argue that the suit patent '493 is invalid because it does not meet the qualifications of a continuation patent pursuant to *35 U.S.C. §§ 112* and *120*. Therefore, plaintiff cannot rely on the filing date of patent '787 for priority purposes. Defendants contend there is nothing in the patent disclosure that describes or supports the language in Claim 1 or Claim 2. However, defendants contend the language in Claims 1 and 2 finds complete response in plaintiff's '101 patent. Defendants argue Claims 1 and 2 are invalid for claiming new matter not disclosed specifically, inferentially or intrinsically in either the '493 continuation patent or its parent patent, [*8] '787.

Specifically, defendants argue that an important attribute of the '101 patent is that it incorporates a vertical chamber and a crop pickup assembly immediately below the open lower end of the vertical chamber. Defendants claim that this "open throat" attribute is the claimed invention of Claims 1 and 2 of suit patent '493. Defendants contend that the '787 and '493 patent specification describes a "pop-up" baler which receives material directly from the feeding mechanism only after a ground rolled core has been "popped up" into the baling chamber.

Under *35 U.S.C. § 282*, "[a] patent shall be presumed to be valid . . . . The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." This statutory presumption also applies to a presumption that the requirements of *35 U.S.C. § 112* have been complied with. *Ralston Purina Co. v. Far-Mar-Co., Inc., 772 F.2d 1570, 1574 (Fed. Cir. 1985); Ellipse Corp. v. Ford Motor Co., 452 F.2d 163, 170 (7th Cir. 1971)*, cert. denied, *406 U.S. 948 (1972)*.

Under *35 U.S.C. § 120*, a continuation application must be disclosed in the manner set forth in *35 U.S.C. § 112*. Section 112 provides:
[*9]
The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

A continuation application must contain the same specification and drawings as in the parent application. Manual of Patent Examining Procedure § 201.07. If it is disclosed in compliance with section 112, it is entitled to the effective filing date of the prior invention. *35 U.S.C. § 120*.

The description requirement in section 112 functions to ensure that as of the filing date of the application relied upon, the inventor had possession of the specific subject matter later claimed. *Application of Edwards, 568 F.2d 1349, 1351 (C.C.P.A. 1978); Application of Wertheim, 541 F.2d 257, 262 (C.C.P.A. 1976); Application* [*10] *of Smith, 481 F.2d 910, 914 (C.C.P.A. 1973)*. It is not material how the specification accomplishes this feat. See *Application of Wertheim, 541 F.2d at 262; Application of Smith, 481 F.2d at 914*.

Furthermore, it is not necessary that the earlier application identically describe the claim limitations. *In re Wilder, 736 F.2d 1516, 1520 (Fed. Cir. 1984)*, cert. denied, *469 U.S. 1209 (1985)*. To provide descriptive support, the application must describe the claim limitations only so clearly that persons of ordinary skill in the art will recognize from the disclosure that the applicant's invented processes included those limitations. *Martin v. Mayer, 823 F.2d 500, 505 (Fed. Cir. 1987); In re Peters, 723 F.2d 891, 894 (Fed. Cir. 1983); Application of Herschler, 591 F.2d 693, 701 (C.C.P.A. 1979)*. To prove lack of descriptive support, it is not sufficient to merely demonstrate an absence of literal support in an earlier application. See *In re Kaslow, 707 F.2d 1366, 1375 (Fed. Cir. 1983); Application of Voss, 557 F.2d 812, 817 (C.C.P.A. 1977)*.

Throughout their memoranda in support of summary judgment, defendants compare language in the description of the [*11] '787 and '493 patents with that of the '493 claims and language in the description of the '101 patent. As stated above, an absence of literal support for the '493 claims in the '787 and '493 written descriptions alone is not sufficient to prove lack of descriptive support under *35 U.S.C. § 112*.

Plaintiff argues there is support in the '787 parent patent description and drawings for the language in Claims 1 and 2 of the '493 patent. Plaintiff has submitted with its memoranda the affidavits of Rex O. Weigand, former engineer for the Hesston Corporation, and Cecil L. Case, an engineer and engineering manager for Hesston Corporation. They attest to the fact that the description and drawings found in the '787 patent conveyed to them that the inventor had developed a round baler having an open, non-compressive crop receiving region.

Defendants contend that the question of sufficiency of a patent disclosure is a question of law appropriate for summary judgment. In support of this contention, they cite to *Paperless Accounting, Inc. v. Bay Area Rapid Transit System, 804 F.2d 659 (Fed. Cir. 1986)*, cert. denied, *107 S. Ct. 1573 (1987)*. The court in Paperless Accounting stated:

The [*12] issue of support for claims in the specification as required by § 112 is a question of law, *Atlas Powder Co. v. E.I. du Pont de Nemours & Co., 750 F.2d 1569, 1573, 224 USPQ 409, 411 (Fed. Cir. 1984); Lindemann Maschinenfabrik GMBH v. American Hoist & Derrick Co., 730 F.2d 1452, 1463, 221 USPQ 481, 489 (Fed. Cir. 1984)*, but it is dependent on underlying factual and legal findings . . . .

*804 F.2d at 664*.

The court notes that the Atlas Powder Co. and Lindemann cases concerned a discussion of the enablement requirement of *35 U.S.C. § 112*. "Enablement is a legal issue." *Lindemann, 730 F.2d at 1463*. Section 112 contains separate description and enablement requirements. In their motion for summary judgment and corresponding

memoranda, defendants have limited their discussion to the issue of the sufficiency of the description found in the '787 and '493 patents.

In this case, the primary consideration with regard to the section 112 description requirement is factual. See *In re Wilder*, 736 F.2d 1516, 1520 footnote (Fed. Cir. 1984), cert. denied, 469 U.S. 1209 (1985); *Application of Wertheim*, 541 F.2d 257, 262 (C.C.P.A. 1976). At issue is whether or not the [*13] original '787 patent disclosure reasonably conveyed to those skilled in the art that the inventor had possession of the later claimed subject matter. Resolution of this issue may require direct and cross-examination of experts, demonstrations, and exhibits. *Eagle Comptronics, Inc. v. Tanner Electronic Systems Technology, Inc.*, 222 U.S.P.Q. 170, 173 (N.D.N.Y. 1983). Therefore, considering the record in the light most favorable to plaintiff, summary judgment is not appropriate.

Defendants' second argument is that Claims 1 and 2 of suit patent '493 are invalid and unenforceable because of plaintiff's inequitable conduct in failing to direct patent '101 to the attention of the patent office during the prosecution of the continuation application which resulted in the issuance of the '493 patent.

The duty of candor requires that all material information to which the inventor is aware must be disclosed to the Patent Office. If this duty is violated, the Patent and Trademark Office rejects the patent application. See 37 C.F.R. § 1.56.

Information is not material, however, if it is not prior art. See *Environmental Designs Ltd. v. Union Oil Company of California*, 713 F.2d 693, 698 [*14] (Fed. Cir. 1983), cert. denied, 464 U.S. 1043 (1984). The court finds that the issue of whether or not plaintiff violated its duty of candor by not submitting its '101 patent as prior art when applying for the continuation application is dependent on the determination of whether or not Claims 1 and 2 of the '493 patent are supported in the '787 and '493 specification. If it is ultimately determined that these claims are supported by the '787 and '493 specification, the '493 patent would be entitled to the 1975 filing date of its parent application. 35 U.S.C. § 120. The application which led to the issuance of the '101 patent was filed in 1977. Therefore, it would be impossible to consider it as prior art. See *Remmington Arms Company, Inc. v. Funasaw Company, Ltd.*, 201 U.S.P.Q. 217 (N.D. Ill. 1978). Thus, summary judgment is also not appropriate at this time as to defendants' claim that patent '493 is invalid and unenforceable because of plaintiff's inequitable conduct.

The final contention of defendants is that Claims 1 and 2 of the '493 patent are limited in scope and are therefore not infringed by any Vermeer baler sold by defendants. Defendants state that no Vermeer baler [*15] sold by defendants has a baling chamber such as the one described in Claim 2 of the '493 patent. To support this argument, defendants refer to United States Patent 4,172,354 (hereinafter '354) attached to their motion.

Plaintiff argues defendants have not shown the alleged infringing balers are made in strict accordance with the drawings and description of the '354 patent. Plaintiff attached to its motion the affidavit of Victor E. Lowe, Jr., the chief draftsman for the law firm of Schmidt, Johnson, Hovey & Williams. Mr. Lowe states that he personally inspected a Vermeer 605J round baler and found differences between the 605J baler and the '354 patent.

A patent infringement is determined by comparing the accused device with the claims in suit. *Martin v. Barber*, 755 F.2d 1564, 1567 (Fed. Cir. 1985). This is a fact issue. See *Palumbo v. Don-Joy Co.*, 762 F.2d 969, 974 (Fed. Cir. 1985). Defendants have not offered evidence to show that the 605J baler does not infringe plaintiff's patent. Therefore, summary judgment is not appropriate at this time regarding defendants' contention of non-infringement.

IT IS BY THE COURT THEREFORE ORDERED that defendants' motion for summary judgment [*16] be denied.

DATED: This 4th day of February, 1988, at Kansas City, Kansas.

# EXHIBIT 5



Not Reported in F.Supp.2d                                                                 Page 1

Not Reported in F.Supp.2d, 2003 WL 252149 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

▷
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Leon STAMBLER, Plaintiff,
v.
RSA SECURITY, INC., Verisign, Inc., First Data Corporation, Omnisky Corporation, Defendants.
No. Civ.A. 01-065-SLR.

Jan. 29, 2003.

Douglas E. Whitney, Maryellen Noreika, J.D. Pirnot, and Philip Bangle, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, for Plaintiff, David S. Shrager, of Shrager Spivey & Sachs, Philadelphia, Pennsylvania, of counsel.
Fredrick L. Cottrell, III, of Richards Layton & Finger, P.A., Wilmington, Delaware, William F. Lee, David B. Bassett, Donald R. Steinberg, and Mark D. Selwyn, of Hale and Dorr, L.L.P., Boston, Massachusetts. John D. Lanza, and Kia L. Freeman, of Testa, Hurwitz & Thibeault, L.L.P. of Boston, Massachusetts, for Defendant RSA Security, Inc., of counsel.
Steven J. Balick, and John G. Day, of Ashby & Geddes, Wilmington, Delaware, Thomas W. Winland, Vincent P. Kovalick, and Matthew DelGiorno, of Finnegan, Henderson, Farabow, Garrett & Dunner L.L.P., Washington, D.C., for Defendant VeriSign, Inc., of counsel.

MEMORANDUM OPINION
ROBINSON, Chief J.

I. INTRODUCTION

*1 On February 2, 2001, plaintiff Leon Stambler ("Stambler") filed this action against defendants RSA Security, Inc. ("RSA Security"), Verisign, Inc. ("Verisign"), and Omnisky Corporation ("Omnisky") alleging infringement of certain claims of United States Patent Nos. 5,793,302 (the " '302 patent"), 5,936,541 (the " '541 patent") and 5,974,148 (the " '148 patent) (collectively, the "Stambler patents"). (D.I.1)

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1338(a) and 2201(a). Currently before the court is defendant Verisign's motion for summary judgment of non-infringement and invalidity of claim 12 of the '302 patent. (D.I.274) For the following reasons, the court shall grant in part and deny in part defendant's motion.

II. BACKGROUND

The Stambler patents, each entitled "Method for Securing Information Relevant to a Transaction," generally relate to a method of authenticating a transaction, document or party to a transaction using known encryption techniques. (D.I.293, 294, 295) The patented methods enable parties to a transaction to assure the identity of an absent party and the accuracy of information involved in the transaction. (*Id.*) The patented methods thus provide for secure transactions and prevent fraud. (*Id.*)

III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 10 (1986). "Facts that could alter the outcome are 'material,' and disputes are ' genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 2

Not Reported in F.Supp.2d, 2003 WL 252149 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.,* 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with ' specific facts showing that there is a genuine issue for trial." ' *Matsushita,* 475 U.S. at 587 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

### IV. DISCUSSION

#### A. Infringement

*2 A determination of infringement requires a two-step analysis. First, the court must construe the asserted claims so as to ascertain their meaning and scope. Second, the claims as construed are compared to the accused product. *See KCJ Corp. v. Kinetic Concepts, Inc.,* 223 F.3d 1351, 1355 (Fed.Cir.2000). Claim construction is a question of law while infringement is a question of fact. *See id.* To establish literal infringement, "every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Tech., Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1575 (Fed.Cir.1995). An accused product that does not literally infringe a claim may still infringe under the doctrine of equivalents if each limitation of the claim is met in the accused product either literally or equivalently. *See Sextant Avionique, S.A. v. Analog Devices, Inc.,* 172 F.3d 817, 826 (Fed.Cir.1999).

Claim 12 of the '302 patent recites:
12. A method for enrolling and issuing a credential to a first party by a second party, and subsequently granting the first party access to a first storage means, wherein the first party has a first personal identification number (PIN1), and the second party is previously granted authority to issue a credential to the first party, the first storage means, being accessible only to a party with knowledge of the first PIN1, the method of enrollment and issuing a credential comprising:
receiving information associated with the first party;
receiving information associated with the second party;
storing in escrow and in trust the information associated with the first party and the information associated with the second party in a second storage means, wherein at least a portion of the information retrieved from the second storage means is used in enrolling the first party and issuing the credential; and
subsequently granting the first party access to the first storage means by using the PIN1 or the credential.

('302 patent, col. 26, 11. 10-29)

Having heard oral argument and reviewed extensive briefing by the parties, the court has construed the relevant claim limitations as follows:
"The First Party Has a First Personal Identification Number (PIN1)" The term "the first party has a first personal identification number (PIN1)" shall be construed to mean "at the time the method steps are executed, the first party has a number for identification that is secret, is selected by the first party at the time of enrollment, cannot exist in uncoded form, and cannot be recovered from other information anywhere in the system." ('148 patent, col. 2, 11..31-36; D.I. 293 at 383)
"First Storage Means" The term "first storage means " shall be construed to mean "a first place for storing information, which can include a computer file."
"Subsequently Granting the First Party Access to the First Storage Means by Using the PIN1 or the Credential" [T]he term "subsequently granting the first party access to the first storage means by using the PIN1 or the credential" shall be construed to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 252149 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

mean "the step of subsequently granting the first party access to the first storage means by using the PIN1 or the credential must occur after the previous steps of the method have been performed, including the step of issuing the credential to the first party."

*3 Defendant has also asserted the following facts, which are uncontested by plaintiff:
(1) Verisign issues digital certificates to Internet merchants and other users to authenticate their websites and their e-mail addresses.
(2) Users enroll for a digital certificate by contacting Verisign through an Internet website. The user completes an information template about themselves and submits the information to Verisign. The template information is loaded into a computer file in Verisign's database. A unique order number correlates that template information to that user. The identity of the user is then verified by Verisign.
(3) After the user is enrolled and his identity is verified, Verisign sends an e-mail to the user indicating that verification is complete and that his or her digital certificate can be obtained. The e-mail message from Verisign contains a personal identification number (PIN) generated by Verisign for the user. This Verisign-selected PIN correlates to, and can be recovered from, the order number.
(4) The user then goes to Versign's website and enters the Verisign-selected PIN. This triggers the issuance of the user's digital certificate from Verisign to the user's computer.
(5) Three categories of accused Verisign processes do not use any PIN: (a) Verisign's OFX Financial Server ID's, (b) On-Site "Server" Certificates, and (c) all "automatically" authenticated On-Site "Client " Certificates.
(6) Every storage database file in Verisign's certificate issuance system is accessible to and by Verisign.

(D.I. 275 at 3-5)

Based on the above facts and claim construction, defendant Verisign asserts that no reasonable jury could find literal infringement of claim 12. Defendant argues that it does not meet three of the claim limitations: (1) the user does not have a PIN1; (2) there is no first storage means accessible only to the user; and (3) access to a first storage means is not granted using the PIN after the certificate is issued. Plaintiff asserts that, even under defendant's claim construction, "genuine issues of material fact remain as to whether Verisign's accused processes infringe claim 12 under the doctrine of equivalents." (D.I. 321 at 3)

1. PIN1

Plaintiff has failed to make an argument for literal infringement under the court's claim construction of the term PIN1. This is not surprising. PIN1, as defined by the '302 patent specification and prosecution history, must be selected by the user and must not be recoverable from other information in the system. Defendant's process involves PIN selection by Verisign and the PIN can be recovered from the order number. Thus, the court finds that no reasonable jury could find literal infringement of claim 12.

Plaintiff argues that defendant's PIN performs substantially the same function, in substantially the same way, to achieve substantially the same result as the PIN of claim 12 and, thus, infringes under the doctrine of equivalents. "Infringement under the doctrine of equivalents requires an intensely factual inquiry." *Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1357 (Fed.Cir.2002) (quoting *Vehicular Tech. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1381 (Fed.Cir.2000)). Defendant has not met its burden to show that no reasonable jury could find infringement under the doctrine of equivalents. Thus, the court finds that a genuine issue of fact remains regarding infringement under the doctrine of equivalents.[FN1]

FN1. Defendant also contends that certain processes do not use a PIN of any form. Plaintiff has failed to respond to this argument. As a matter of law, any processes that do not use a PIN cannot infringe claim 12 either literally or under the doctrine of equivalents. Thus, the court finds that the three categories of processes identified by defendant (Verisign's OFX

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 4

Not Reported in F.Supp.2d, 2003 WL 252149 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Financial Server ID's, On-Site "Server" Certificates, and all "automatically" authenticated On-Site "Client" Certificates) do not infringe claim 12 literally or under the doctrine of equivalents.

### 2. First Storage Means

*4 Defendant also argues that no reasonable jury could find literal infringement based on the "first storage means" limitation. The court disagrees. The claim language states that the first storage means must "[be] accessible only to a party with knowledge of the first PIN1[.]" Defendant argues that access is only permitted by the user. The claim language, however, does not limit access only to the user. Access is limited to parties with knowledge of PIN1, which may include additional parties as well as the user. During prosecution, Stambler amended the claim to eliminate access using a second PIN2, but did not amend the claim to eliminate access by additional parties. Thus, a reasonable jury may find the accused process has a "first storage means."

### 3. Subsequently Granting Access

Based on the court's claim construction, no reasonable jury could find defendant's processes literally infringe claim 12. Defendant grants access to the storage means using a PIN. After access is granted, the credential is issued. The claim requires the ability to gain access to the storage means using the credential alone, thus, the court construed the claim to require the granting of access subsequent to the issuance of the credential. As the steps are reversed in the accused process from that of claim 12, no reasonable jury could find literal infringement.

### B. Invalidity

Defendant asserts that claim 12 is invalid because the patent fails to meet the written description requirement of 35 U.S.C. § 112. Specifically, defendant asserts that the patent does not disclose how to access the first storage means using the PIN1 or the credential. According to defendant, " every embodiment in the specification uses the PIN together with a credential, or a PIN alone (without using a credential), to access the claimed first storage means." (D.I. 275 at 13) Plaintiff responds by asserting that one of ordinary skill in the art would understand that Stambler contemplated an invention having a storage means accessible using a PIN or credential.

The written description requirement of section 112 states in relevant part:
The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same."

35 U.S.C. § 112, ¶ 1. The Federal Circuit has noted that[i]n written description cases, [t]he primary consideration is *factual* and depends on the nature of the invention and the amount of knowledge imparted to those skilled in the art by the disclosure ... The written description requirement does not require the applicant to describe exactly the subject matter claimed, [instead] the description must clearly allow persons of ordinary skill in the art to recognize that [he or she] invented what is claimed. Thus, § 112, ¶ 1 ensures that, as of the filing date, the inventor conveyed with reasonable clarity to those of skill in the art that he was in possession of the subject matter of the claims.

*5 *Union Oil Co. of California v. Atlantic Richfield Co.,* 208 F.3d 989, 996-97 (Fed.Cir.2000) (emphasis in original) (internal citations and quotations omitted).

In the case at bar, plaintiff's expert has opined that " [t]he patent does describe granting access to a storage means using information on a credential without using a PIN." (D.I. 317 at ¶ 74) Defendant argues that this is insufficient because the embodiments cited by plaintiff's expert do not disclose accessing the first storage means with only the credential. However, "[t]he written description requirement does not require the applicant to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                            Page 5

Not Reported in F.Supp.2d, 2003 WL 252149 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

describe exactly the subject matter claimed." *Union Oil Co.*, 208 F.3d at 996-97. The relevant question is, does the description clearly allow persons of ordinary skill in the art to recognize that Stambler invented what is claimed? The answer to that question calls for factual resolutions by the jury.

### V. CONCLUSION

For the reasons stated, the court shall grant in part and deny in part defendant's motion for summary judgment of non-infringement and invalidity of claim 12 of the '302 patent. An appropriate order shall issue.

### ORDER

At Wilmington, this 29th day of January, 2003, consistent with the opinion issued this same day;

IT IS ORDERED that:

1. Defendant Verisign's motion for summary judgment of literal non-infringement of claim 12 of the '302 patent (D.I.274) is granted.

2. Defendant Verisign's motion for summary judgment of non-infringement of claim 12 of the '302 patent under the doctrine of equivalents (D.I.274) is denied.

3. Defendant Verisign's motion for summary judgment of invalidity of claim 12 of the '302 patent (D.I.274) is denied.

D.Del.,2003.
Stambler v. RSA Sec., Inc.
Not Reported in F.Supp.2d, 2003 WL 252149 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:01cv00065 (Docket) (Feb. 02, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 6

Westlaw.

Not Reported in F.Supp.2d                                                                      Page 1
Not Reported in F.Supp.2d, 2003 WL 1856436 (D.Del.)
(Cite as: 2003 WL 1856436 (D.Del.))

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
ARTHROCARE CORPORATION, Plaintiff,
v.
SMITH & NEPHEW, INC., Defendant.
No. Civ.A. 01-504-SLR.

April 9, 2003.

Jack B. Blumenfeld, Karen Jacobs Louden, and James W. Parrett, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, for Plaintiff, Matthew D. Powers, Jared Bobrow, and Perry Clark, of Weil, Gotshal & Manges LLP, Redwood Shores, California, of counsel.

William J. Marsden, Jr., and Keith A. Walter, Jr., of Fish & Richardson P.C., Wilmington, Delaware, for Defendant, Mark J. Hebert, and Kurtis D. MacFerrin, of Fish & Richardson P.C., Boston, Massachusetts, of counsel.

MEMORANDUM OPINION

ROBINSON, Chief J.

I. INTRODUCTION

*1 On July 25, 2001, plaintiff Arthrocare Corporation ("Arthrocare") filed this action against defendant Smith & Nephew, Inc. ("Smith & Nephew") alleging infringement of certain claims of United States Patent Nos. 5,697,536 (the "'536 patent"), 5,697,882 (the "'882 patent") and 6,224,592 (the "'592 patent) (collectively, the "Arthrocare patents"). (D.I.1)

The court has jurisdiction over this matter pursuant to 28 U.S.C. § § 1331, 1338(a) and 2201(a). Currently before the court are the parties' numerous motions for summary judgment regarding infringement and invalidity. (D.I.247, 249, 251, 255, 257, 259, 261)

II. BACKGROUND

The Arthrocare patents generally relate to electrosurgery. The '536 patent is an apparatus patent that claims the structure of certain electrosurgical probes. The probes apply electrical energy to tissue to produce ablation (i.e., removal of tissue) or coagulation (i.e., clotting of blood) with minimal tissue necrosis. The '592 and '882 patents claim methods of using the probes disclosed in the '536 patent.

III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n. 10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial." ' Matsushita, 475 U.S. at 587 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

IV. DISCUSSION

A. Defendant's Motion for Summary Judgment to

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1856436 (D.Del.)
(Cite as: 2003 WL 1856436 (D.Del.))

Page 2

Enforce the Settlement Agreement Removing the Control RF Product from the Case

*2 The court finds that a genuine issue of material fact exists with respect to the authority of Arthrocare's in house counsel to agree to be bound by the settlement agreement. Defendant's motion for summary judgment to enforce the settlement agreement removing the control RF product from the case (D.I.259) is denied.

B. Defendant's Motion for Summary Judgment of Non-infringement of the Asserted Claims of the '882 Patent and Plaintiff's Motion for Partial Summary Judgment of Infringement of the Asserted Claims of the '882 Patent

Defendant's motion for summary judgment of non-infringement of the asserted claims has absolutely no merit. Defendant assumes that the certificates of correction are invalid and asserts its non-infringement position based on the non-corrected claims. This is improper. The court cannot presume the certificates of correction are invalid. On the contrary, the court believes it is appropriate to presume the certificates of correction are valid as the "patent, together with the certificate, shall have the same effect and operation in law on the trial of actions for causes thereafter arising as if the same had been originally issued in such corrected form." 35 U.S.C. § 255. Defendant's motion for summary judgment of non-infringement of the '882 patent (D.I.255) is denied.

Defendant's response to plaintiff's motion for partial summary judgment of infringement of the asserted claims of the '882 patent is that the certificates of correction are invalid. According to defendant, if the certificates of correction are invalid, the accused products do not infringe. Defendant has shown a genuine issue of material fact as to the validity of the certificates of correction. Plaintiff's motion for partial summary judgment of infringement of the asserted claims of the '882 patent (D.I.249) is denied.

C. Plaintiff's Motion for Partial Summary Judgment of Infringement of Claim 1 of the '592 Patent and Defendant's Motion for Summary Judgment of Non-infringement of the Asserted Claims of the '592 Patent

With respect to infringement of claim 1 of the '592 patent, the parties base their arguments on the claim limitation "the return electrode is not in contact with the body structure." Claim 1 of the '592 patent recites:
1. A method for applying electrical energy to a target site on a body structure on or within a patient's body, the method comprising:
positioning an electrode terminal into at least close proximity with the target site in the presence of an electrically conductive fluid;
positioning a return electrode within the electrically conductive fluid such that the return electrode is not in contact with the body structure to generate a current flow path between the electrode terminal and the return electrode; and
applying a high frequency voltage difference between the electrode terminal and the return electrode such that an electrical current flows from the electrode terminal, through the region of the target site, and to the return electrode through the current flow path.
*3 ('592 patent, col. 24, ll. 6-21) (emphasis added)

Both parties have proposed a claim construction that improperly imports a temporal limitation in the claim. The claim limitation in dispute has no relation to the time required to perform the method. The claim limitation "the return electrode is not in contact with the body structure" is clear--the return electrode is not to contact the body at all during the performance of the claimed method. The court has determined that this phrase should be given its ordinary meaning. In doing so, the court rejects both parties' attempt to add a limitation not present in the claim.

As discussed, the parties' arguments actually relate to the time required to perform the claimed method. The claimed method does not contain any time limitations. Thus, the claimed method is performed when each of the three steps of claim 1 has been completed. *See Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 622-23 (Fed.Cir.1995) ("[A]n accused product that sometimes, but not always, embodies a claimed method nonetheless infringes."). Defendant does not dispute that, at times during the surgery, the return electrode of the accused product is not in contact with the body structure and each of the three steps of the claimed method are performed. The court, therefore, finds that the use of the Saphyre product literally infringes claim 1 of the '592 patent.

Although the court finds that the use of the accused product literally infringes claim 1 of the '592 patent, plaintiff has failed to prove that defendant uses the accused product. The claim at issue is a method claim. A finding of infringement requires proof that the accused method has been performed. Plaintiff has not even alleged, much less proven, that defendant performs the claimed method.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1856436 (D.Del.)
(Cite as: 2003 WL 1856436 (D.Del.))

Page 3

Plaintiff asserts that it is not necessary to identify specific individuals who use the product. The cases cited by plaintiff support this proposition when plaintiff is attempting to prove the direct infringement necessary to find inducement or contributory infringement. In the motion before the court, "Arthrocare did not move for summary judgment of inducement or contributory infringement[.]" [FN1] (D.I. 297 at 2)

> FN1. Literally, Arthrocare moved "for partial summary judgment that [the] accused Saphyre product ... infringes claim 1 of [the '592] patent." (D.I.251) Of course, a product cannot infringe a method claim.

For these reasons, plaintiff's motion for partial summary judgment of infringement of claim 1 of the '592 patent (D.I.251) is denied. Defendant's motion for summary judgment of non-infringement of the asserted claims of the '592 patent (D.I.255) is also denied.

D. Defendant's Motion for Summary Judgment of Non-infringement of the Asserted Claims of the '536 Patent

Defendant asserts numerous arguments as its basis for summary judgement of non-infringement of the '536 patent. The court finds that each of the asserted arguments is either based on a claim construction not adopted by the court or involves a genuine issue of material fact. As such, the motion does not warrant further consideration. Defendant's motion for summary judgment of non-infringement of the '536 patent (D.I.255) is denied.

E. Defendant's Motion for Summary Judgment of Invalidity Based on Prior Art

1. Anticipation--The Investor Video

*4 The court finds that a genuine issue of material fact exists with respect to whether the video was publically disclosed before the filing of the patent and whether the video discloses every limitation of the claims at issue.

2. Anticipation--Patents and Published Articles

Defendant has taken a "shotgun" approach and argued that the following eight references anticipate one or more claims of the patents in suit: (1) the Roos '198 patent; (2) the Elsässer/Roos Article; (3) the Pao '499 patent; (4) the Rydell '908 patent; (5) the Kamerling '459 patent; (6) the Manwaring '138 patent; (7) the Slager article; and (8) the Doss '007 patent.

The court has considered each of these references and the arguments presented. The court finds that a genuine issue of material fact exists with respect to whether the prior art references disclose every limitation of the claims at issue.

3. Obviousness

Defendant has also asserted that numerous combinations of the above listed references render one or more claims of the patents in suit obvious. "Obviousness is a legal conclusion based on underlying facts of four general types, all of which must be considered by the trier of fact: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) any objective indicia of nonobviousness." *Crown Operations Intern., Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1375 (Fed.Cir.2002). Defendant has failed to address the presence of any objective indicia of nonobviousness (i.e., secondary considerations). Furthermore, plaintiff has raised a genuine issue of material fact with respect to the motivation to combine the cited references. Defendant's motion for summary judgment of invalidity (D.I.261) is denied.

F. Plaintiff's Motion for Partial Summary Judgment that the Arthrocare Patents Are Not Invalid Due to Obviousness or Based on an On-Sale Bar or Public Use

1. Motivation to Combine

Plaintiff argues that defendant has failed to demonstrate a suggestion or motivation to combine the prior art references cited for obviousness. "There are three possible sources for a motivation to combine references: the nature of the problem to be solved, the teachings of the prior art, and the knowledge of persons of ordinary skill in the art." *In re Rouffet*, 149 F.3d 1350, 1357 (Fed.Cir.1998); *see also* M.P.E.P. 2143.01. In the case at bar, defendant asserts that the motivation to combine is based on the nature of the problem to be solved and the knowledge of persons of ordinary skill in the art. The parties disagree as to the definition of the nature of the problem to be solved. While the court has doubts that the nature of the problem to be solved can be defined by the claim preamble, this disagreement creates a genuine issue of material fact. Furthermore, neither party has presented

Not Reported in F.Supp.2d                                                                                                  Page 4
Not Reported in F.Supp.2d, 2003 WL 1856436 (D.Del.)
(Cite as: 2003 WL 1856436 (D.Del.))

any evidence with respect to the knowledge of persons of ordinary skill in the art.

2. On-Sale Bar and Public Use

*5 Plaintiff contends that the Malis devices are not prior art. Plaintiff argues that Dr. Manwaring, defendant's witness in this regard, was not identified as a fact witness and that his fact testimony is not corroborated. Defendant has agreed that Dr. Manwaring will not be testifying as a fact witness, but rather as an expert witness. As such, Dr. Manwaring's testimony does not need corroboration. According to defendant, plaintiff's own documents and deposition testimony will establish the Malis devices as prior art. As neither party has presented any record concerning the sale and public use dates of the Malis devices, the court declines to decide the issue on the record presented.

Plaintiff's motion for partial summary judgment that the Arthrocare patents are not invalid due to obviousness or based on an on-sale bar or public use (D.I.247) is denied.

G. Defendant's Motion for Partial Summary Judgment of Nonenablement, Indefiniteness and Lack of Written Description

Defendant argues that: (1) the asserted claims of the '882 patent are invalid because the patent does not enable plasma energy discharge; (2) the asserted claims of the '592 patent and claim 47 of the '536 patent are invalid because the terms "not in contact," "spacing ... away," and "minimize direct contact" are indefinite; (3) the asserted claims of the '536 patent are invalid for lack of written description of a single active electrode; and (4) claim 17 of the '882 patent and claims 21 and 42 of the '592 patent are invalid for lack of written description of the claimed voltage ranges.

1. Enablement--Plasma Energy Discharge Claim Limitation

The standard for enablement is well established. "[I]n order to be enabling, a specification must teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation." PPG Industries, Inc. v. Guardian Industries Corp., 75 F.3d 1558, 1564 (Fed.Cir.1996) (internal citations and quotations omitted). Defendant has the burden of proof at trial to establish invalidity. While defendant acknowledges the enablement standard, defendant fails to provide any evidence that the experimentation necessary is undue. [FN2] Defendant's motion with respect to the plasma energy discharge claim limitation is denied.

> FN2. As the party with the burden of proof at trial, it is incumbent upon defendant to come forward with evidence in order to obtain summary judgment. The court notes that, for purposes of summary judgment, evidence is deposition testimony, declarations, admissions, answers to interrogatories, etc. Defendant's motions are often deficient for providing only attorney argument.

2. Indefiniteness--Not in Contact Claim Limitation

Defendant argues that the claim limitations "not in contact," "spacing ... away," and "minimize direct contact" are indefinite. The court disagrees. The court has found that the claim limitations at issue are to be given their ordinary meaning. The ordinary meaning is clear. As discussed above, the '592 patent requires that the return electrode not contact the body structure during the performance of each of the three steps of the claimed methods. Defendant's motion with respect to the not in contact claim limitation is denied.

3. Written Description--Single Active Electrode and the Claimed Voltage Ranges

*6 Defendant argues the '536 patent does not provide an adequate written description of a single active electrode. The court disagrees. The specification states that "[t]he apparatus according to the present invention comprises an electrosurgical probe having a shaft with a proximal end, a distal end, and at least one active electrode at or near the distal end." ('536 patent, col. 3, 11. 55-58) (emphasis added) Defendant's motion with respect to the written description of the single active electrode is denied.

Similarly, defendant argues that the claimed voltage ranges are not adequately described. The court disagrees. The specification of the '882 patent and the '592 patent state that "[t]ypically, the peak-to-peak voltage will be in the range of 200 to 2000 volts." ('882 patent, col. 13, 11. 21-22; '592 patent, col. 13, 11. 21-22) Defendant's motion with respect to the written description of the claimed voltage ranges is denied.

Defendant's motion for partial summary judgment of nonenablement, indefiniteness and lack of written description (D.I.257) is denied.

V. CONCLUSION

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2003 WL 1856436 (D.Del.)  
(Cite as: 2003 WL 1856436 (D.Del.))

Page 5

For the reasons stated, the court shall deny defendant's motion for summary judgment to enforce the settlement agreement removing the control RF product from the case, deny plaintiff's motion for partial summary judgment of infringement of the asserted claims of the '882 patent, deny defendant's motion for summary judgment of non-infringement of the asserted claims of the '882 patent, deny plaintiff's motion for partial summary judgment of infringement of claims 1 of the '592 patent, deny defendant's motion for summary judgment of non-infringement of asserted claims of the '592 patent, deny defendant's motion for summary judgment of non-infringement of the asserted claims of the '536 patent, deny plaintiff's motion for partial summary judgment that the Arthrocare patents are not invalid due to obviousness or based on an on-sale bar or public use, deny defendant's motion for summary judgment of invalidity based on prior art, and deny defendant's motion for partial summary judgment of nonenablement, indefiniteness and lack of written description. An appropriate order shall issue.

ORDER

At Wilmington, this 9th day of April, 2003, consistent with the opinion issued this same day;

IT IS ORDERED that:

1) Defendant's motion for summary judgment to enforce the settlement agreement removing the control RF product from the case (D.I.259) is denied.

2) Plaintiff's motion for partial summary judgment of infringement of the asserted claims of the '882 patent (D.I.249) is denied.

3) Defendant's motion for summary judgment of non-infringement of the asserted claims of the '536, '592 and '882 patents (D.I.255) is denied.

4) Plaintiff's motion for partial summary judgment of infringement of claims 1 of the '592 patent (D.I.251) is denied.

5) Plaintiff's motion for partial summary judgment that the Arthrocare patents are not invalid due to obviousness or based on an on-sale bar or public use (D.I.247) is denied.

*7 6) Defendant's motion for summary judgment of invalidity based on prior art (D.I.261) is denied.

7) Defendant's motion for partial summary judgment of nonenablement, indefiniteness and lack of written description (D.I.257) is denied.

MEMORANDUM ORDER

At Wilmington this 9th day of April, 2003, having heard oral argument and having reviewed papers submitted in connection therewith;

IT IS ORDERED that the disputed claim language in United States Patent Nos. 5,697,536; 5,697,882; and 6,224,592, as identified by the above referenced parties, shall be construed as follows, consistent with the tenets of claim construction set forth by the United States Court of Appeals for the Federal Circuit: [FN1]

> FN1. The court notes that claim construction is not final until judgment is entered. The parties apparently developed their claim construction with a focus on obtaining summary judgment of infringement or invalidity. If, on a more developed record, the court finds the current claim construction to be in error, the claims will be re-construed accordingly.

1. "Connector."

The court shall apply the ordinary definition of the word "connector." The word connect means "to bind or fasten together; join or unite; link [.]" [FN2] The word "connector," in terms of the '536 patent, shall be construed to mean "a structure that electrically links the electrode terminal to the high frequency power supply."

> FN2. The Random House College Dictionary, 285 (revised ed.1980).

2. "Electrically Conducting Fluid Supply."

Consistent with the prosecution history, the phrase "electrically conducting fluid supply" shall be construed to mean "a medical container that stores electrically conducting fluid." (D.I. 267, Ex. 10 at 4-5) An example of a medical container is an IV bag. An example of electrically conducting fluid is isotonic saline. (Id.)

4. "Spacing a Return Electrode Away From the Body Structure" and "the Return Electrode is Not in Contact with the Body Structure."

The claim limitation "the return electrode is not in contact with the body structure" is clear--the return electrode is not to contact the body at all during the performance of the claimed method.

2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2003 WL 1856436 (D.Del.)  
(Cite as: 2003 WL 1856436 (D.Del.))

Page 6

5. "Electrically Conducting Fluid" and "Electrically Conductive Fluid."

Consistent with the ordinary definition, "electrically conducting fluid" and "electrically conductive fluid" shall be construed to mean "any fluid that facilitates the passage of electrical current." Examples of electrically conducting fluids are blood and saline.

6. "Directing or Delivering the Electrically Conductive Fluid to the Target Site."

This phrase shall be construed consistent with its ordinary meaning; no further construction is necessary.

7. "Electrode Terminal."

Consistent with the intrinsic evidence of the patents in suit, "electrode terminal" means "one or more active electrodes."

8. "Active Electrode."

The court shall apply the ordinary definition of the term "active electrode" in the relevant art. The term "active electrode" means "a stimulating electrode ... applied to tissue for stimulation and distinguished from [a return electrode] by having a smaller area of contact, thus affording a higher current density." [FN3]

> FN3. *The New IEEE Standard Dictionary of Electrical and Electronics Terms*, 13 (5th ed.1993).

9. "Return Electrode."

As contrasted with an active electrode, the term "return electrode" means "an electrode having a larger area of contact than an active electrode, thus affording a lower current density." [FN4]

> FN4. The court notes that the area of contact in the present invention contacts the electrically conductive fluid. In the prior art, the area of contact contacted the body.

10. "Insulating Member."

*8 The court shall apply the ordinary definition of the phrase "insulating member." Thus, the phrase "insulating member" shall be construed to mean "a member which provides a high degree of resistance to the passage of charge."

11. "500 to 1400 Volts Peak to Peak."

This phrase shall be construed consistent with its ordinary meaning; no further construction is necessary.

12. "Through the Region of the Target Site."

This phrase shall be construed consistent with its ordinary meaning; no further construction is necessary.

13. "Immersing."

The court shall apply the ordinary definition of the term "immersing." The term "immersing" shall be construed to mean "to plunge into or place under a fluid[.]" [FN5]

> FN5. *The Random House College Dictionary*, 664 (revised ed.1980).

14. "Electrosurgical System."

The court shall apply the ordinary definition of the term "system." The term "system" shall be construed to mean "an assemblage or combination of things or parts forming a unitary whole[.]" [FN6]

> FN6. *The Random House College Dictionary*, 1335 (revised ed.1980).

15. "Distal End" and "Proximal End."

The court shall apply the ordinary definition of the terms "distal" and "proximal." The term "distal end" shall be construed to mean "the end situated away from the point of origin or attachment." [FN7] The term "proximal end" shall be construed to mean "the end situated toward the point of origin or attachment." [FN8]

> FN7. See *The Random House College Dictionary*, 385 (revised ed.1980).
>
> FN8. See *The Random House College Dictionary*, 1066 (revised ed.1980).

Not Reported in F.Supp.2d, 2003 WL 1856436 (D.Del.)

Motions, Pleadings and Filings (Back to top)

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1856436 (D.Del.)
(Cite as: 2003 WL 1856436 (D.Del.))

Page 7

• 2003 WL 22331340 (Trial Pleading) Preliminary Jury Instructions (May. 13, 2003)

• 2003 WL 22331339 (Trial Pleading) Charge to the Jury (May. 12, 2003)

• 2003 WL 22331341 (Trial Pleading) Joint Proposed Jury Instructions (May. 06, 2003)

• 2003 WL 24282961 (Expert Report and Affidavit) (Report or Affidavit) (May 4, 2003)

• 2003 WL 24290854 (Partial Expert Testimony) Deposition of Ronald L Panitch (Mar. 28, 2003)

• 2003 WL 24290853 (Partial Expert Testimony) (Partial Testimony) (Mar. 20, 2003)

• 2003 WL 24282962 (Expert Report and Affidavit) Rule 26(a)(2)(B) Expert Report (Feb. 17, 2003)

• 2001 WL 34889109 (Expert Report and Affidavit) Supplemental Expert Report of Ronald L. Panitch, Esq. Pursuant to Fed. R. CIV. Pro. 26(c) (Jul. 25, 2001)

• 1:01CV00504 (Docket) (Jul. 25, 2001)

END OF DOCUMENT

2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.