IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MCKESSON INFORMATION SOLUTIONS LLC,   )
   )
         Plaintiff,   )
   )
        v.   )   Civil Action No. 04-1258-SLR
   )
THE TRIZETTO GROUP, INC.,   )   **REDACTED PUBLIC VERSION**
   )
         Defendant.   )
   )

## PLAINTIFF MCKESSON INFORMATION SOLUTION LLC'S MEMORANDUM IN OPPOSITION TO DEFENDANT THE TRIZETTO GROUP INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY ON GROUNDS OF ANTICIPATION AND OBVIOUSNESS

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899
(302) 651-3000

Attorneys for Plaintiff
McKesson Information Solutions LLC

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California  94301
(650) 470-4500

DATED:  June 15, 2006
PUBLIC VERSION DATED:  June 22, 2006

# TABLE OF CONTENTS

Page

I.    NATURE AND STAGE OF PROCEEDINGS. ................................................................1

II.   SUMMARY OF ARGUMENT. ..................................................................................1

III.  SUMMARY OF RELEVANT FACTS. .........................................................................3

    A.   Development Of The Invention Of The '164 Patent................................4

    B.   Claims 1 And 2 Of The '164 Patent........................................................6

    C.   TriZetto's Prior Art Investigation And Disclosures................................7

    D.   TriZetto's Experts Admitted None Of The Previously Disclosed
        References Anticipate The '164 Patent And That They Failed To
        Address Essential Elements Of An Obviousness Defense........................8

    E.   TriZetto Raises New Prior Uses In Its Summary Judgment Motion
        Rather Than Assert The Art That Was The Subject Of Its Experts'
        Deficient Analysis. ..................................................................................8

    F.   TriZetto Misrepresents Relevant Evidence In Support Of Its
        Obviousness Argument. ..........................................................................9

IV.   STANDARD FOR GRANTING SUMMARY JUDGMENT ON PATENT VALIDITY. ..........9

V.    FACING A FAILURE OF PROOF ON ITS ARGUMENTS REGARDING THE 150-PLUS
    PIECES OF PRIOR ART IT ASSERTED DURING DISCOVERY, TRIZETTO NOW
    MOVES ON PRIOR ART NEVER DISCLOSED BEFORE ITS MOTION. .......................10

VI.   TRIZETTO CANNOT JUSTIFY ITS POST-DISCOVERY CHANGE OF POSITION BY
    EXPRESSING SURPRISE THAT ELEMENTS OF CLAIMS 1 AND 2 MEAN WHAT
    THEY SAY AND COVER THE '164 PATENT'S PREFERRED EMBODIMENT. ..............13

    A.   The Meaning Of The Claim Terms Has Not Changed Since TriZetto
        Began Reviewing The Patent In 1995....................................................14

    B.   It Cannot Be Disputed That Claims 1 And 2 Require A
        Predetermined Database And McKesson Has Never Suggested
        Otherwise. ..............................................................................................14

    C.   McKesson's Position Regarding The Determining Step Of Claim 1
        Has Never Changed And TriZetto Cannot Be Surprised That It
        Covers The Patent's Preferred Embodiment.........................................16

D.  McKesson's Position Regarding The Determining Step of Claim 2 Has Never Changed And TriZetto Cannot Be Surprised That It Covers The Patent's Preferred Embodiment. ........................................... 18

VII.  AS THE COURT HELD IN PRAXAIR, THE FEDERAL RULES DO NOT PERMIT AN INFRINGER TO RELY UPON PRIOR ART NEVER ASSERTED DURING DISCOVERY. ........................................................................................ 19

VIII.  TRIZETTO'S PRIOR ART AND USES ARE INSUFFICIENT TO PROVE INVALIDITY. ........................................................................................ 21

A.  Each of TriZetto's Defenses Suffers From Numerous Defects That Preclude Summary Judgment. ........................................................... 22

1.  Erisco's ClaimFacts ................................................................... 24

2.  The Doyle Patent. ...................................................................... 24

3.  GMIS's AutoCoder ..................................................................... 25

4.  HDI's Advanced MedLogic System ("AMS") ........................... 26

5.  BCBS New Jersey IBM 7070 ..................................................... 28

6.  Cortron's Health Care Processing System ("HCPS") ................. 28

7.  Health Systems International's Clinical Data Editor ................. 29

B.  The Expert Testimony, And Lack Thereof, Precludes Summary Judgment. ................................................................................... 29

IX.  TRIZETTO HAS NOT ESTABLISHED A PRIMA FACIE CASE OF OBVIOUSNESS. ...... 30

A.  TriZetto Has Not Preformed An Element-By-Element Analysis Or Shown The Required Motivation To Combine Particular References In The Manner Claimed. ....................................................... 31

B.  The Invention Was Not An Automated Form Of A Known Manual Process And TriZetto Has Failed To Establish The Requisite Motivation To Build Such A System Even If It Were. .......................... 33

1.  TriZetto Offers No Evidence That Unbundling Was Well-Known During The 1980's. .......................................................... 34

2.  The '164 Patent Is Not Simply An "Automation" Of Some Manual System. ....................................................................... 34

     3. Even Assuming That The Unbundling Was Well-Understood,
       Creating An Expert System Such As The '164 Patent Was
       An Inventive Process And Hardly Obvious. ...............................35

   C. The Secondary Considerations Of Non-Obviousness Preclude Entry
     Of Summary Judgment In Favor Of TriZetto. ........................................37

X. CONCLUSION. .......................................................................................................38

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al-Site Corp. v. VSI Int'l, Inc.,*
174 F.3d 1308 (Fed. Cir. 1999)...................................................................................30

*Ashland Oil v. Delta Resins & Refractories,*
776 F.2d 281 (Fed. Cir. 1985)......................................................................................9

*Baer v. Chase,*
392 F.3d 609 (3d Cir. 2004).......................................................................................13

*Carella v. Starlight Archery and Pro Line Co.,*
804 F.2d 135 (Fed. Cir. 1986).....................................................................................23

*Chem-Nuclear Sys., LLC v. Braun,*
Civ. A. Nos. 03-03-441-CMC and 03-03-442-CMC, 2006 U.S. Dist. LEXIS 10192
(D.S.C. Feb. 23, 2006) .................................................................................................36

*Daubert v. Merrell Dow Pharm., Inc.,*
509 U.S. 579 (1993)......................................................................................................37

*Ecolochem, Inc. v. S. Cal. Edison Co.,*
227 F.3d 1361 (Fed. Cir. 2000)...................................................................................32

*Eli Lilly and Co. v. Barr Labs., Inc.,*
251 F.3d 955 (Fed. Cir. 2001)......................................................................................10

*Finnigan Corp. v. Int'l Trade Comm.,*
180 F.3d 1354 (Fed. Cir. 1999)........................................................................23, 27, 28

*Genzyme Corp. v. Atrium Med. Corp.,*
315 F. Supp. 2d 552 (D. Del. 2004)............................................................................37

*IMX, Inc. v. LendingTree, LLC,*
405 F. Supp. 2d 479 (D. Del. 2005)...............................................................10, 31, 37

*In re Dembiczak,*
175 F.3d 994 (Fed. Cir. 1999).................................................................................31, 32

*In re Kotzab,*
217 F.3d 1365 (Fed. Cir. 2000)...................................................................................32

*In re Rouffet,*
149 F.3d 1350 (Fed. Cir. 1998).............................................................................32, 37

*In re Venner,*
    46 C.C.P.A. 754 (C.C.P.A. 1958) .................................................................................36

*Intel Corp. v. Broadcom Corp.,*
    Civ. A. No. 00-796-SLR, 2003 U.S. Dist. LEXIS 2372 (D. Del. Feb. 13, 2003)............22

*Kahn v. General Motors Corp.,*
    135 F.3d 1472 (Fed. Cir. 1998).................................................................................9, 10

*Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc.,*
    322 F.3d 1335 (Fed. Cir. 2003).................................................................................23, 26

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986).......................................................................................................10

*Neutrino Dev. Corp. v. Sonosite, Inc.,*
    410 F. Supp. 2d 529 (S.D. Tex. 2006) .........................................................................37

*Oxford Gene Tech. Ltd. v. Mergen Ltd.,*
    345 F. Supp. 2d 431 (D. Del. 2004)..............................................................22, 30, 31

*PPG Indus., Inc. v. Guardian Indus. Corp.,*
    75 F.3d 1558 (Fed. Cir. 1996).........................................................................................9

*Praxair, Inc. v. ATMI, Inc.,*
    231 F.R.D. 457 (D. Del. 2005)..................................................................................19, 20

*Praxair, Inc. v. ATMI, Inc.,*
    Case No. 03-1158-SLR, 2005 WL 3159054 (D. Del. November 28, 2005)....................21

*Schumer v. Laboratory Computer Systems, Inc.,*
    308 F.3d 1304 (Fed. Cir. 2002)................................................................................9, 30

*Seitz v. Detweiler, Hershey & Assocs., P.C. (In re CitX Corp.),*
    No. 05-2760, 2006 U.S. App. LEXIS 13141 (3d Cir. May 26, 2006) .............................13

*Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.,*
    183 F.3d 1347 (Fed. Cir. 1999).........................................................................10, 31, 35

*Stratoflex, Inc. v. Aeroquip Corp.,*
    713 F.2d 1530 (Fed. Cir. 1983).....................................................................................38

*Teleflex v. KSR Int'l Co.,*
    119 Fed. Appx. 282, 286 (Fed. Cir. 2005) ....................................................................32

*Union Carbide Chems. and Plastics Tech. Corp. v. Shell Oil Co.,*
    308 F.3d 1167 (Fed. Cir. 2002)....................................................................................24

*Verve, L.L.C. v. Crane Cams, Inc.*,
   395 F. Supp. 2d 558 (E.D. Mich. 2005)...........................................................................31

## **Statutes**

35 U.S.C. § 282 ......................................................................................................................9

FED. R. CIV. P. 37(c)(1) .........................................................................................................19

FED. R. CIV. P. 56(c) ............................................................................................................10

FED. R. CIV. P. 56(e)..............................................................................................................10

Plaintiff, McKesson Information Solutions LLC ("McKesson"), respectfully submits its opposition brief to Defendant, The TriZetto Group Inc.'s ("TriZetto"), Motion For Summary Judgment Of Invalidity On Grounds Of Anticipation And Obviousness.

## I.    NATURE AND STAGE OF PROCEEDINGS.

On September 13, 2004, McKesson filed this lawsuit against TriZetto for willfully infringing McKesson's U.S. Patent No. 5,253,164 ("the '164 patent"). (D.I. 1.) McKesson filed a First Amended Complaint on October 1, 2004. (D.I. 7.) On November 1, 2004, TriZetto filed an Answer and Counterclaim asserting, *inter alia*, that the claims of the '164 patent were invalid under 35 U.S.C. §§ 102 and/or 103. (D.I. 10.) Fact discovery on all issues closed on September 16, 2005, and expert discovery on all issues was completed by November 30, 2005. (D.I. 28 and 58.)

Trial on McKesson's infringement claim commenced on April 17, 2006. On April 26, 2006, TriZetto was found to be directly infringing and inducing the infringement of claims 1 and 2 of the '164 patent. (D.I. 358.) Trial on all remaining issues is scheduled to commence on October 3, 2006. (D.I. 362.)

## II.    SUMMARY OF ARGUMENT.

1.                          **Redacted**                          and asserted over 150 prior art references and uses during fact discovery, TriZetto's invalidity case was dead in the water after the completion of discovery. TriZetto's own experts testified that none of its asserted prior art anticipated any of the claims of the '164 patent. Moreover, TriZetto had gaping holes in its obviousness analysis because it failed to address basic considerations necessary to establish a prima facie case of obviousness. TriZetto's expert Dr. Davis even attempted to interject a new prior use and prior art references in his expert report – an action the Court admonished by stating "your prior art is limited to that disclosed by the close of discovery...."

2.    Faced with a failure of proof on its invalidity case, TriZetto has attempted to revive its case by abandoning almost all of its prior art asserted during fact discovery.

Now, over eight months after the close of fact discovery, in violation of the Court's orders and precedent, and TriZetto's obligations under the Federal Rules, TriZetto has moved for summary judgment based on many new prior art references and uses that it had never before disclosed.

3.    TriZetto has blamed McKesson, not its own failure of proof, for the need to re-do its entire validity case.    Not surprisingly, TriZetto's arguments border on the frivolous.    TriZetto now argues that it is surprised that McKesson argued at trial that a system practicing the preferred embodiment of the '164 patent infringes.    Further, it claims that infringement positions McKesson has advanced throughout this case and that are referenced in the '164 patent specification were somehow unforeseeable and necessitate late disclosure of new prior art.    TriZetto's positions are not supported by the facts including McKesson's claim construction arguments, expert opinions, and fact testimony in this case.

4.    Allowing TriZetto to proceed with these new references would harm this Court and McKesson and reward TriZetto for its improper behavior.    These references should not be considered for this reason alone.    Additionally, each piece of prior art and supposed prior use suffers from many or all of the following defects, each of which would be fatal to a finding of invalidity:

- The prior use was not disclosed during fact discovery (ClaimFacts, AutoCoder, AMS, HCPS)
- Corroborating evidence is absent or insufficient (All prior uses)
- No expert analysis regarding prior use (ClaimFacts, AutoCoder, HCPS, 7070 System)
- TriZetto's expert previously admitted that prior art does not anticipate (AMS, Doyle, Clinical Data Editor)
- TriZetto concedes the prior art lacks a predetermined database (ClaimFacts, AutoCoder, Doyle, Clinical Data Editor)
- No motivation to combine with other references (All)
- No element by element analysis (All)

2

5.    In addition to the deficiencies discussed above, TriZetto has also failed to establish a prima facie case of obviousness for several other reasons, including the following:

a.    *First*, the facts of this case do not support TriZetto's argument that the '164 patent simply was the automation of a well-known "manual expert system." The evidence shows that the problem of unbundling was not "well-known" and, even if it was known, the '164 patent simply is not an automation of Dr. Hertenstein's manual process because, unlike Dr. Hertenstein, the '164 patent processed medical codes using a defined set of rules.

b.    *Second*, given the widely recognized high level of uncertainty of success with developing expert systems, TriZetto does not and cannot provide evidence that one skilled in the art would have perceived a "reasonable likelihood of success" in combining the prior art in the manner claimed.

c.    *Third*, TriZetto does not rebut McKesson's objective evidence of non-obviousness, which are "essential components" of a finding of obviousness. Instead of rebutting this evidence, TriZetto attempts to belittle the contribution of the infringed claims to the considerable commercial success of the '164 patent.

9.    Finally, there are numerous additional factual issues that TriZetto has failed to address regarding the details of its asserted prior art and uses, including those raised by McKesson's experts, which defeat TriZetto's summary judgment motion.

## III.    SUMMARY OF RELEVANT FACTS.

McKesson is the current assignee of U.S. Patent No. 5,253,164 ("the '164 patent"). (D.I. 381, Ex. 1.) The named inventors of the patent are Dr. Don Holloway, Dr. Robert Hertenstein, Dr. George Goldberg, and Ms. Kelli Dugan. The patent issued on October 13, 1993, and claims priority from an application filed on September 30, 1988.

### A.    Development Of The Invention Of The '164 Patent.

During the mid-1980s, Dr. Hertenstein oversaw the processing of medical claims submitted for payment to Caterpillar, Inc. ("CAT"), a self-insured company. (D.I. 381, Ex. 2 at MCK 050516.)  As part of this process, Dr. Hertenstein and his team of surgical technicians manually reviewed the medical service codes submitted on medical claims for errors that could result in the overpayment of the claims.  (*Id.*)

## Redacted

As noted by both parties' experts, it was "universally recognized" in the field at the time that building an expert system was not as simple as "automating a manual process" or transferring knowledge from a human to a computer, but required creating a model of decision-making rules that could be implemented by a computer.  (*See* D.I. 381, Ex. 20 at 6-7 ("The model of expertise is not simply transferred from one locus to another.  It is *created.*") (quoting Musen, *An Overview of Knowledge Acquisition* (1992)); *id.*, Ex. 19 at 15 ("The process of generating and perfecting a set of rules has been universally recognized as the most time consuming, difficult, and expensive processes involved in building an expert system.") (quoting U.S. Patent No. 4,730,259).)  Much of the challenge and inventiveness lies in developing a rule-based model that a computer can use because "[i]t is often the case that a human expert in a particular area has difficulty formulating his or her knowledge as a set of rules."  (*Id.* (quoting U.S. Patent No. 4,730,259).)  As TriZetto's expert, Dr. Kerschberg explained in a contemporaneous publication:

> Knowledge engineers must ferret out solutions and represent them in computer programs.  This is difficult because experts usually have trouble explaining their solutions, and knowledge representation technology is usually unfamiliar.  ***This contributes to a very high level of uncertainty about project success.***

4

(D.I. 378, Ex. 7 at 75:2-75:8 (emphasis added).) Dr. Davis similarly wrote: "Even for the best-understood problems, experienced researchers using the best-understood technologies still require at least five man years to develop a system that begins to be robust." (*Id.*, Ex. 8 at 10.)    Based on such facts, a 1988 publication by Dr. Musen observed: "[k]nowledge acquisition clearly involves more than knowledge transfer. It is a dynamic and inventive activity. Like all processes that require creativity and ingenuity, knowledge acquisition is difficult." (*See* D.I. 381, Ex. 20 at 7 (quoting Musen, *Generation of Model-Based Knowledge Acquisition Tools for Clinical Trial Advice Systems* (1988)).)

The inventors faced these same challenges.

## Redacted

The development of the resulting expert system, described and claimed in the '164 patent, was not merely a rote automation of Dr. Hertenstein's manual analysis but, as recognized in the contemporaneous literature, "a dynamic and inventive activity . . . that require[d] creativity and ingenuity." (*See* D.I. 381, Ex. 20 at 7 (quoting Musen, *Generation of Model-Based Knowledge Acquisition Tools for Clinical Trial Advice Systems* (1988)).)  Based on these efforts, the inventors filed the original application that led to the '164 patent on September 30, 1988. ('164 patent at MCK 000001.)  After vetting the '164 patent application for over five years, the PTO issued the '164 patent on October 12, 1993. (*Id.*)

## Redacted

### B.    Claims 1 And 2 Of The '164 Patent.

Claims 1 and 2 of the '164 patent are directed to methods for processing medical claims in a computer system having a predetermined database.  The Court construed a "predetermined database" to mean "a set of decision-making rules that incorporate a medical code classification system and expert medical clinical judgment." (D.I. 320 at 4.). Claim 1 includes the element: "determining whether any medical service code contained in the at least one claim is not present in the predetermined database." (*Id.* at col. 117, ll. 2-15.)  The preferred embodiment described in the '164 patent specification discloses that this determination may be performed by checking if a code is not present in an "ALLCODE" database that includes all possible codes that could be in the predetermined database rather than by looking directly to the predetermined database. (*See* '164 patent at col. 4, ll. 7-8; col. 5, ll. 8-15.) McKesson explained this point and TriZetto acknowledged the patent's disclosure in their claim construction briefs. (D.I. 255 at 20; D.I. 158 at 20.)

Claim 2 includes the element: "determining whether one of the medical service codes in the at least one claim is mutually exclusive due to non-medical criteria with any other medical service code in the at least one claim." ('164 patent at col. 117, ll. 16-40.) With respect to this step, and consistent with its language, the preferred embodiment of the '164 patent discloses that this determination may be made by reference to relationships in the predetermined database (*see* Barlow Decl., Ex. 4 at 84:13-88:22; 97:16-98:22; 279:23-281:10) or without reference to the predetermined database, such as the detection of duplicate codes using a separate "DUPS" database (*see* D.I. 381, Ex. 1 col. 5 ll. 36-38; Fig. 3).  McKesson disclosed its position that checking for duplicate codes is covered by the determining step of claim 2 in Dr. Musen's expert report on October 21, 2005. (*See* D.I. 375, Ex. 9, Ex. 2 at 14.) McKesson also questioned TriZetto's witnesses and customers in depositions regarding whether the accused products performed duplicated code edits. (*See, e.g.*, Barlow Decl., Ex. 5 at 91:13-92:1; Ex. 6 at 68:9-69:16, 75:11-78:3; Ex. 7 at 109:8-19; Ex. 8 at 218:4-219:10, 223:21-226:6; Ex. 9 at 116:17-120:4.)

On April 5, 2006, the Court issued its Claim Construction Order, in which it held that the determining steps of claims 1 and 2 did not require further construction beyond the express claim language.  (D.I. 307.)

      **C.**    **TriZetto's Prior Art Investigation And Disclosures.**

## Redacted

In response to McKesson's interrogatory regarding TriZetto's prior art defenses, TriZetto identified 45 pieces of prior art it contended were invalidating on May 5, 2005.  (D.I. 378, Ex. 1 at 4-9.)  On June 20, 2005, TriZetto supplemented its response with a new list of 86 pieces of prior art.  (*Id.* at 9-22.)  On July 27, 2005, TriZetto further supplemented its response with a list of 19 references it contended were invalidating and another 130 that it might assert.  (*Id.* at 22-38.)  In a discovery conference on August 2, 2005, after forcing McKesson to repeatedly raise the issue to the Court, TriZetto confirmed that the 19 references from its July 27 response were the basis for any prior art defenses it intended to raise at trial.  (D.I. 80 at 12-13.)  However, on September 13, 2005, three days before the close of fact discovery, TriZetto again supplemented its response and listed 15 new prior uses it intended to assert.  (D.I. 377, Ex. 1.)  After initially excluding the late disclosed uses, noting "[t]here is just no excuse for waiting until September 13 to identify all of this new prior art" (D.I. 116 at 60), the Court allowed TriZetto to assert them but explained: "I did not mean for the discovery to go on forever and ever.  I was giving you

the opportunity to try the late-filed prior art and *your prior art is limited to that disclosed by the close of discovery . . . .*" (D.I. 138 at 12-13 (emphasis added).)

**D.    TriZetto's Experts Admitted None Of The Previously Disclosed References Anticipate The '164 Patent And That They Failed To Address Essential Elements Of An Obviousness Defense.**

On October 24, 2005, TriZetto submitted its opening invalidity reports from Drs. Davis, Hawley, and Kerschberg, covering the prior art it had asserted in discovery. (D.I. 133.) In addition, Dr. Davis addressed AMS, a system never asserted by TriZetto in discovery. (D.I. 381, Ex. 21 at 89:8-92:13.) At their depositions, TriZetto's experts confirmed that none of the prior art anticipates any claim of the '164 patent. (D.I. 377 at 6-8.) TriZetto's experts further testified that their analyses and reports omitted essential elements of TriZetto's obviousness defense, such as: an element-by-element analysis of the claims; any consideration of the determining step of claim 2; an identification of the combination of prior art they contended was invalidating; the requisite motivation to combine the prior art; and any analysis of secondary considerations of non-obviousness. (*Id.* at 8-23.)

**E.    TriZetto Raises New Prior Uses In Its Summary Judgment Motion Rather Than Assert The Art That Was The Subject Of Its Experts' Deficient Analysis.**

Despite having identified over 150 pieces of prior art in four supplemental lists during discovery, TriZetto's motion relies upon four prior uses that were never asserted during discovery—ClaimFacts, Autocoder, AMS, and, HCPS. Of the remaining three references, the IBM 7070 System, was disclosed three days before the close of discovery and is not corroborated by a single document. As to the Doyle patent and the Clinical Data Editor, Dr. Davis concluded they did not anticipate any '164 claim and TriZetto does not dispute that they lack the predetermined database element of claims 1 and 2.

8

**F.    TriZetto Misrepresents Relevant Evidence In Support Of Its Obviousness Argument.**

Although irrelevant to nearly all of TriZetto's arguments, much of the background of TriZetto's brief is devoted to a series of misstatements regarding the activities of the named inventors prior to the '164 patent's critical date, including presentations, alleged offers and proposals, and publications. These inaccuracies are corrected in detail in McKesson's concurrently filed opposition to TriZetto's On-Sale Bar Motion, which McKesson hereby incorporates by reference.

**IV.    STANDARD FOR GRANTING SUMMARY JUDGMENT ON PATENT VALIDITY.**

"A patent is presumed valid." 35 U.S.C. § 282. "To overcome this presumption of validity, the party challenging a patent must prove facts supporting a determination of invalidity by clear and convincing evidence." *Schumer v. Laboratory Computer Systems, Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002). "To anticipate a claim, a reference must disclose every element of the challenged claim and enable one skilled in the art to make the anticipating subject matter." *PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1566 (Fed. Cir. 1996). With regard to the sufficiency of evidence supporting anticipation, the Federal Circuit has explained:

> Evidence of invalidity must be clear as well as convincing. Typically, testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference. The testimony is insufficient if it is merely conclusory.

*Schumer*, 308 F.3d. at 1315-16.

As with anticipation, proof of obviousness requires clear and convincing evidence because "[a]n issued patent is presumed to be valid and, hence, nonobvious." *Kahn v. General Motors Corp.*, 135 F.3d 1472, 1480 (Fed. Cir. 1998). "The presumption of validity is a procedural device that mandates that the party asserting invalidity bears the initial burden of establishing a prima facie case of obviousness under 35 U.S.C. § 103." *Ashland Oil v. Delta Resins & Refractories*, 776 F.2d 281, 292 (Fed. Cir. 1985). "The

determination under § 103 is whether the claimed invention as a whole would have been obvious to a person of ordinary skill in the art at the time the invention was made." *Kahn*, 135 F.3d at 1479. This determination "turns on four factual inquiries: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) any objective indicators of non-obviousness, more commonly termed secondary considerations." *IMX, Inc. v. LendingTree, LLC*, 405 F. Supp. 2d 479, 493 (D. Del. 2005). In addition, "there must be a 'reason, suggestion, or motivation in the prior art that would lead one of ordinary skill in the art to combine the references, and that would also suggest a reasonable likelihood of success.'" *Id.*, quoting *Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1356 (Fed. Cir. 1999). The court must take into account the clear and convincing evidentiary standard of proof required for invalidity when evaluating a motion for summary judgment. *Eli Lilly and Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001).

Summary judgment is proper if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). If the moving party has shown an absence of material dispute, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting FED. R. CIV. P. 56(e)). Since finding a patent invalid based on anticipation or obviousness grounds turns on several factual issues, the moving party must prove that no genuine issue of material fact exists for any of those factual inquiries.

## V.    FACING A FAILURE OF PROOF ON ITS ARGUMENTS REGARDING THE 150-PLUS PIECES OF PRIOR ART IT ASSERTED DURING DISCOVERY, TRIZETTO NOW MOVES ON PRIOR ART NEVER DISCLOSED BEFORE ITS MOTION.

## Redacted

## Redacted

By the close of fact discovery in this case, TriZetto had identified more than 150 pieces of prior art. TriZetto then submitted expert reports from its three invalidity experts addressing numerous references it had disclosed in discovery.

TriZetto's motion for summary judgment, however, abandons virtually all of the prior art it identified during discovery and that its experts analyzed. It seems that the over 150 pieces of prior art and millions of pages of documents TriZetto put forth during discovery should have included the prior art that TriZetto actually intended to rely upon in support of its invalidity defense. This was not the case. TriZetto now seeks a do-over on its prior art defense, moving on prior art theories and documents never asserted before this motion—eight months after the close of discovery.

The reason TriZetto has walked away from its top 150 choices of prior art – and apparently two of its three experts – is simple and has nothing to do with the fictional account in its motion. The discovery process exposed that TriZetto could not prove its case. TriZetto's experts analyzed the prior art around which TriZetto built its defense and none of the three believed any of that art anticipated the '164 claims:

> **Dr. Davis:**  Q.   ... Is it your opinion that any one reference or system anticipates all asserted claims of the '164 patent?
>
> A. As I understand the term "anticipates," the answer is no. ...
>
> A.   Okay.  So the question is, again, is there any one reference that anticipates any claim of the '164 patent? Do I have it right?
>
> Q.  Reference or system, yes.
>
> A.  No.

(Barlow Decl., Ex. 11 at 200:6-19;  *see also id.* at 201:11-202:2.)

> **Dr. Hawley:**  Q   ... If the law requires every element recited in an individual patent claim to be disclosed in a single piece of prior art for that claim to lack novelty, under Section 102, do you offer any opinion in your report under that standard that a claim of the '164 patent is not novel? ...
>
> THE WITNESS: No.  I don't offer an opinion on that specific question.

(Barlow Decl., Ex. 12  at 146:9-147:11.)

11

> **Dr. Kerschberg:**   "It is my opinion that the Egdahl/Hertenstein paper together with the MEDCLAIM system prototype *render obvious* the system and method of the '164 patent."

(D.I. 378 Ex. 3 at 5 (emphasis added).)

TriZetto's experts further testified that they failed to address essential elements of TriZetto's obviousness defense – its only remaining prior art defense. For example, Drs. Davis and Hawley admittedly did not conduct a threshold element-by-element analysis of the claims or even identify what combination of prior art supported their opinions. (D.I. 377 at 10-13.) TriZetto's experts also failed to: (1) conduct the requisite analysis of motivation to combine the prior art; (2) address the determining step of claim 2; and (3) analyze any secondary considerations of non-obviousness. (*Id.* at 15-25.) Thus, discovery exposed that TriZetto had no anticipation defense and gaping holes in its obviousness case. TriZetto's chosen solution to its failure of proof is to end-run the discovery process that refuted its first round of defenses and seek summary judgment based on entirely new prior art and theories. The undisputed record speaks for itself.

Unable to overcome the defects in the arguments it asserted during discovery, TriZetto abandoned them and filed the present motion seeking summary judgment that claims 1 and 2 are anticipated by:

- Four alleged prior uses that TriZetto never asserted as prior art during discovery;
- An entirely uncorroborated, alleged prior use for which no documents have ever been offered; and
- Two references that TriZetto's expert, Dr. Davis, reviewed and concluded did *not* anticipate any claim of the '164 patent and that TriZetto does not dispute lack a predetermined database.

Thus, **Redacted** repeatedly supplementing its interrogatory response with new art, and representing that it had identified everything it was asserting "in connection with *any* anticipation or obviousness defenses," TriZetto has dropped nearly all of its first 150 choices of prior art. Moreover,

the two references that made TriZetto's cut are asserted only against claim 1 and were previously determined by Dr. Davis, the only expert from which TriZetto offers a declaration, not to anticipate *any* '164 patent claim.[1]

The Court recently held that a defendant is not entitled to revamp its invalidity defense after the close of discovery under far less egregious facts in *Praxair*. TriZetto should not be permitted to do so here. As explained further below, there is no justification for TriZetto's wholesale change of position. Contrary to TriZetto's argument that McKesson has somehow made the determining steps of claims 1 and 2 change meaning, the Court found the plain language of these elements does not require further construction—the interpretation McKesson has proposed since last July. Thus, these claim elements have been construed to mean exactly what they said **Redacted**

**Redacted** TriZetto's purported surprise that these words should cover the preferred embodiment of the patent does not warrant TriZetto's unveiling its Plan-B prior art case on summary judgment, months after the close of discovery.

**VI. TRIZETTO CANNOT JUSTIFY ITS POST-DISCOVERY CHANGE OF POSITION BY EXPRESSING SURPRISE THAT ELEMENTS OF CLAIMS 1 AND 2 MEAN WHAT THEY SAY AND COVER THE '164 PATENT'S PREFERRED EMBODIMENT.**

TriZetto attempts to justify its new art and its argument that it need not address the predetermined database element by fabricating changed circumstances regarding the determining steps of claims 1 and 2. Contrary to TriZetto's assertions, nothing has changed. The Court concluded the determining steps of claims 1 and 2 did not require

---

[1]     Because unambiguous deposition testimony cannot be supplanted by a contrary declaration where, as here, there is no justification for the change of position, Dr. Davis's declaration in support of this motion is entitled to no weight and should be stricken. *See Seitz v. Detweiler, Hershey & Assocs., P.C. (In re CitX Corp.)*, No. 05-2760, 2006 U.S. App. LEXIS 13141, at *16 (3d Cir. May 26, 2006) ("The District Court properly disregarded it under the principles of the 'sham affidavit' doctrine. That doctrine generally 'refers to the trial courts' practice of disregarding an offsetting affidavit that is submitted in opposition to a motion for summary judgment when the affidavit contradicts the affiant's prior deposition testimony.'" (quoting *Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004))) (Barlow Decl., Ex. 13). Should the Court entertain Dr. Davis's latest position, Dr. Davis's conflicting opinions alone appear to create a triable issue of fact.

13

further construction, the position McKesson has advanced since last July. Moreover, there was nothing new about McKesson's position regarding these elements at trial. Not only did McKesson disclose that the claims cover the sort of determinations made by TriZetto's products throughout this case, the '164 patent's preferred embodiment has demonstrated those very determinations infringe since the patent issued in 1993.

### A. The Meaning Of The Claim Terms Has Not Changed Since TriZetto Began Reviewing The Patent In 1995.

Unlike TriZetto, McKesson has not changed its claim construction arguments since the parties first exchanged proposed claim constructions on July 15, 2005 pursuant to the Court's scheduling order. McKesson has always stated the determining elements of claims 1 and 2, carry their ordinary meaning and do not require further construction. (D.I. 28.) The Court agreed and did not alter the express claim language in its construction of these terms. (D.I. 307.) Thus, they have been construed to mean exactly what they say, which is exactly what they said when TriZetto started studying them years before this litigation. Given this, TriZetto cannot now credibly claim they were surprised by the meaning of these terms.

### B. It Cannot Be Disputed That Claims 1 And 2 Require A Predetermined Database And McKesson Has Never Suggested Otherwise.

To justify its reliance on prior art that it admits does not disclose a predetermined database, TriZetto tries to read that element out of the claims entirely. However, that claims 1 and 2 do not expressly require that the predetermined database be used in performing their determining steps (neither McKesson nor the Court's construction have ever suggested they do) does nothing to change the fact that the predetermined database is an essential element of the claims.

McKesson has always maintained that the predetermined database is a necessary element of claims 1 and 2 that must be shown to prove infringement or invalidity—it is legal error to contend otherwise. McKesson did not alter this position at trial or "jettison" the predetermined database as TriZetto contends. McKesson's expert, Dr. Musen, stated

that he understood the "predetermined database" to be a necessary element of the claims
and that "to prove infringement of one of [the claims at issue], McKesson needs to prove
that each and every element of that claim is present in [each of the accused products]."[2]
(Barlow Decl., Ex. 14 at 329:2-15; *see also id.* at 317:25-318:3 ("Q. And you understand
that to prove infringement of this claim, McKesson has to demonstrate that each of these
elements are present in the accused products? A. That's correct.").) Thus, Dr. Musen
testified that the predetermined database was present in each of the accused products as the
claims require:

> Q. The next phrase in the element is a predetermined database. Do you
> have an understanding of what that means in terms of Claim 16?[3]
> A. Yes, I do.
> Q. What's that?
> A. That means a database containing medical service codes and
> relationships among those codes. That includes decision rules based on
> expert clinical medical expertise.
> Q. And in your opinion, does Facets include such a database?
> A. Yes, it does.
> Q. Does ClaimFacts?
> A. It has the same database.
> Q. Does QicLink?
> A. Yes.

(*Id.* at 370:14-371:4; *see also id.* at 1208:18-22.) TriZetto's expert, Dr. Davis, similarly
confirmed that each accused systems has the requisite predetermined database. (*Id.* at
908:22 – 909:5 ("Q. And each of the accused systems have the means for operating on a
predetermined database ... correct? A. Understanding that the Court has given us a
construction of the term predetermined database, yes.").) Indeed, the Court's instructions
to the jury dispel any argument that the predetermined database is not a necessary element

---

[2]    This testimony confirms the infringement standard Dr. Musen set forth and applied in his
expert report. (D.I. 375 Ex. 9 at 5. ("determining infringement requires assessing whether the
accused product meets every element of the claims.").)

[3]    Although this testimony relates to claim 16, Dr. Musen testified that his opinion related to
this element was the same for claims 1 and 2. (Barlow Decl., Ex. 14 at 408:5-13 (claim 1); *id.* at
395: 20-396:3 (claim 2).)

of claims 1 and 2. (*See* D.I. 354 at 20-29.) Contrary to TriZetto's attempt to create a justification for its motion, McKesson's position at trial and throughout this case has been that the predetermined database is an essential element of claims 1 and 2.

Furthermore, TriZetto's argument that the predetermined database is somehow meaningless or divorced from the "heart of the invention" is refuted by the Court's construction. Contrary to TriZetto's assertion, the claims are not devoid of meaning or any connection to the decision-making rules of Appendix B. Every '164 claim includes the predetermined database element, which the Court has construed to require a set of "decision-making rules" such as those described in Appendix B for the preferred embodiment. (*See* D.I. 307 at 3.) TriZetto cannot change this construction simply because it was found to infringe and its prior art fails to teach this necessary element.

**C. McKesson's Position Regarding The Determining Step Of Claim 1 Has Never Changed And TriZetto Cannot Be Surprised That It Covers The Patent's Preferred Embodiment.**

In an attempt to justify its reliance on untimely prior art that admittedly lacks the claimed predetermined database, TriZetto argues that McKesson applied a new meaning to the determining step of claim 1 at trial. TriZetto's assertion finds no support in the record.

The determining step of claim 1 is clear and the Court construed it to mean what it says. (*Id.*) Claim 1 recites the step of determining whether a code is not in the predetermined database—a determination that may be made by checking the predetermined database directly or checking a separate database of all codes that could possibly be in the predetermined database. Consistent with its plain language, McKesson has argued throughout the case that claim 1, while unambiguously requiring the presence of a predetermined database, does not require the utilization of the predetermined database to perform the determining step. Moreover, the '164 patent describes performing the determining step by checking an "ALLCODE" database, not the predetermined database, in the preferred embodiment. *See* '164 patent at col. 5, ll. 11-15 ("it is determined whether the code entry is valid or invalid by reference to the ALLCODE database.").

16

There was nothing new or surprising about the fact that determining whether a code is not in the predetermined database may be performed by reference to a separate database of all possible codes. Indeed, contrary to its present assertion that this meaning was new at trial, TriZetto expressly acknowledged in its own *Markman* brief that the preferred embodiment described checking an ALLCODES database, not the predetermined database, to make this determination. (*See* D.I. 158 at 20 ("the only portion of the specification that appears to discuss the function of the 'determining element' element is the detailed description of the 'ALLCODE database'...").) McKesson provided a similar explanation in its *Markman* briefing last fall—illustrating the point with the same diagram used at trial:



*Second*, the '164 patent discloses software that performs a lookup for a code in the "ALLCODE" database, a listing of all of the codes for a given classification system. *See id.* col. 4, ll. 7-8; col. 5, ll. 8-15. Because the ALLCODE database includes every code that could possibly be present in the predetermined database, (the INTERACT database) determining that a code is not in the ALLCODE database necessarily determines that it is not present in the predetermined database. *See* Figure 1. Properly construed, this is all the claimed function requires.

**X** (Code not present in ALLCODE database necessarily not present in INTERACT database.)

**Figure 1.**

(D.I. 255 at 20.)   Neither the preferred embodiment's disclosure of the use of an ALLCODES database to perform the determining step of claim 1 nor McKesson's position that the claim covers that preferred embodiment have changed. That TriZetto elected not to address this in its invalidity case does not warrant its attempt to introduce new art now.

**D.    McKesson's Position Regarding The Determining Step of Claim 2 Has Never Changed And TriZetto Cannot Be Surprised That It Covers The Patent's Preferred Embodiment.**

As with claim 1, TriZetto attempts to justify its belated prior art by arguing that McKesson applied a new meaning to the determining step of claim 2 at trial.    Again, TriZetto's assertion finds no support in the record.

Like claim 1, the determining step of claim 2 is clear and the Court construed it to mean what it says.    Claim 2 recites a determination of whether codes are mutually exclusive due to non-medical criteria.    McKesson has never attempted to read the predetermined database out of this claim; rather, McKesson has tried to prevent TriZetto from importing limitations that are not present in the claims.    While the predetermined database is unquestionably a necessary element of claim 2, nothing in the claim language requires that the predetermined database be utilized to perform the determining step in all cases.    McKesson has never advocated such a restriction and the Court rejected TriZetto's attempt to read such a limitation into the construction of the claim.    (D.I. 158 at 24-27.)    To be sure, the predetermined database may be utilized in performing the determining step.    Indeed, TriZetto's infringing products often use a predetermined database to practice claim 2.    (*See* Barlow Decl., Ex. 14 at 339:14-340:24 (discussing non-medical criteria in the Facets predetermined database); *id.* at 354:10-355 (ClaimFacts); *id.* at 362:8-363:3 (QicLink).)    However, McKesson never asserted that infringement of claim 2 is limited to determinations based on the predetermined database.

Moreover, there is nothing new about the fact that claim 2 covers the detection of duplicate codes or double billing.    McKesson repeatedly questioned TriZetto's witnesses and customers regarding the accused products' detection of duplicate codes.    (*See* Barlow Decl., Ex. 5 at 91:13-92:1 ("Does QicLink have the ability to correct duplicate medical service codes on a claim...."); Ex. 6 at 68:9-69:16, 75:11-78:3 (discussion of whether QicLink detects and corrects duplicate codes);

## Redacted

18

**Redacted**    Ex. 8 at 218:4-219:10, 223:21-226:6 (discussion of whether ClaimFacts detects and corrects duplicate codes);    **Redacted**    **Redacted**    Additionally, Dr. Musen's opening report cited TriZetto's duplicate code edit in his infringement charts for claim 2. (*See* D.I. 375, Ex. 9, Ex. 2 at 14 ("'Facets will perform a duplicate check for each claim line. If an exact duplicate is found, Facets will disallow the claim line and go to the next.'").)

Furthermore, as with claim 1, the preferred embodiment of the '164 patent discloses the detection and elimination of duplicate codes using a database other than the predetermined database. '164 patent at col. 5, ll. 36-41 ("In step 15, any duplicate codes, if more than one code entry, are eliminated") and Figure 3. Thus, there was nothing raised at trial related to the determining step of claim 2 that was not disclosed by McKesson last year and by the patent itself years ago when TriZetto began studying it.

McKesson has not raised any new arguments or constructions that entitle TriZetto to introduce new art after the close of discovery or warrant disregarding the predetermined database element of the claims. The only change that has occurred is that TriZetto's experts admitted that none of the disclosed art anticipated and that there were gaping holes in their obviousness analyses. These deficiencies are TriZetto's to bear and nothing in the record justifies restating its case with new theories and constructions now.

## VII. AS THE COURT HELD IN *PRAXAIR*, THE FEDERAL RULES DO NOT PERMIT AN INFRINGER TO RELY UPON PRIOR ART NEVER ASSERTED DURING DISCOVERY.

The Federal Rules of Civil Procedure, the Court's own precedent, and the Court's orders in this case all make clear that TriZetto cannot rely on any prior art for its invalidity defenses if TriZetto did not disclose its intent to rely on such art during fact discovery. *See* FED. R. CIV. P. 37(c)(1); *Praxair, Inc. v. ATMI, Inc.*, 231 F.R.D. 457, 464 (D. Del. 2005); D.I. 138 at 12-13. TriZetto, however, has defied the Federal Rules and the Court's authority by relying on four alleged prior uses—ClaimFacts, AutoCoder, AMS and HCPS—that TriZetto neither alleged were prior uses nor asserted reliance on for its

invalidity defenses during fact discovery. These four alleged prior uses, three of which were only first disclosed in TriZetto's summary judgment motion, cannot form the basis of an invalidity defense and must be stricken.[4]

Recently, under far less egregious circumstances than TriZetto's dilatory conduct presents, the Court excluded several prior art references that the accused infringer did not disclose until the end of fact discovery. *See Praxair*, 231 F.R.D. at 464. In *Praxair*, the defendants disclosed several new prior art references shortly before fact discovery closed and seven months before trial. *Id.* The defendants' expert on invalidity also relied on these new references in his expert report. *Id.* at 463. Finding no good cause for the defendants' delay, the Court struck all of the new references, any invalidity defenses based on them, and the portions of the defendants' expert report that addressed them. *Id.* at 464. In reaching its conclusion, the Court emphasized the importance of abiding by discovery deadlines:

> "[F]idelity to the constraints of Scheduling Orders and deadlines is critical to the Court's case management responsibilities." *Finch v. Hercules, Inc.*, 1995 WL 785100 at *9 (D. Del. 1995). The "flouting of discovery deadlines causes substantial harm to the judicial system." *Id.* (internal citations omitted). As a sanction for failure to comply with the scheduling order in this case, the court is authorized to exclude evidence proffered by the disobedient party. *United States v. 68.94 Acres of Land*, 918 F.2d 389, 396 (3d Cir. 1990).

*Praxair*, 231 F.R.D. at 463.

The Court also rejected the defendants' arguments that (1) the plaintiffs' altered claim construction caused the defendants' belated disclosure, and (2) earlier disclosure was not necessary because the plaintiffs were already aware of the prior art references. The Court explained that "[a]rguing that the plaintiffs were aware of the prior art references is not sufficient to put the plaintiffs on notice that defendants are relying on the references in their invalidity defenses." *Id.* at 464 n.9. On the defendants' request for reconsideration, the Court affirmed its ruling and reiterated that: "[p]rior art references must be disclosed

---

[4]    McKesson has filed a motion to strike and exclude TriZetto's reliance upon ClaimFacts, AutoCoder, AMS, and HCPS concurrently with this opposition.

during fact discovery and the parties must disclose their intent to rely thereon, regardless of whether or not the opposing party is aware of the reference." *Praxair, Inc. v. ATMI, Inc. ("Praxair II")*, No. 03-1158-SLR, 2005 WL 3159054, at *4 (D. Del. Nov. 28, 2005) (D.I. 378, Ex. 12).

The facts of this case present a far more compelling case than *Praxair* and clearly support exclusion of ClaimFacts, AutoCoder, AMS and HCPS. As an initial matter, the Court has made clear in this case that it intends to follow the same legal principles enunciated in *Praxair* by limiting TriZetto to the prior art disclosed during fact discovery:

> Well, it does not matter whether the prior art is known to them [McKesson]. *What matters is if you [TriZetto] have said we're going to rely on this prior art and therefore you're on notice that you need to take discovery on this prior art.* If you cannot demonstrate that, then you will be precluded . . . .

(D.I. 116 at 74:20-24 (emphasis added); *see also* D.I. 132 (order permitting TriZetto to try only those prior art references and prior uses disclosed during fact discovery); D.I. 138 at 13:5-9 ("I did not mean for the discovery to go on forever and ever. I was giving you the opportunity to try the late-filed prior art and *your prior art is limited to that disclosed by the close of discovery . . . .*") (emphasis added).)

It is undisputed that TriZetto was aware of ClaimFacts, AutoCoder, AMS, and HCPS during discovery—indeed, ClaimFacts is TriZetto's own product. However, TriZetto never disclosed any of the four as prior art it intended to rely upon in the 150 prior art references and fifteen prior uses TriZetto identified in the four supplemental responses during discovery. As a result and as detailed in McKesson's motion to strike filed concurrently with this opposition, the Court should strike the alleged ClaimFacts, AutoCoder, AMS and HCPS prior uses and preclude TriZetto from relying on any of them for its invalidity defenses.

## VIII. TRIZETTO'S PRIOR ART AND USES ARE INSUFFICIENT TO PROVE INVALIDITY.

As is to be expected from TriZetto's failure to locate and properly assert any invalidating prior art during discovery                    **Redacted**                    the

21

defenses TriZetto unveiled in its motion are also insufficient to prove invalidity. As a threshold matter, TriZetto premises its arguments on reading the predetermined database element out of claims 1 and 2 despite having characterized it as the "heart of the invention." In fact, TriZetto does not dispute that four of its seven asserted references and uses lack this essential element. (D.I. 380 at n.2 (Erisco's ClaimFacts); D.I. 385 at ¶¶ 12, 13 (The Doyle Patent); D.I. 380 at 24-25 (GMIS's AutoCoder); and *id.* at 30 (Health Systems International's Clinical Data Editor).) Thus, TriZetto cannot establish it is entitled to judgment as a matter of law that the following prior art discloses every element of claims 1 or 2. *See Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 436 (D. Del. 2004) ("[A]n element-by-element comparison of each claim to each prior reference" is necessary to evaluate validity.).

Moreover, of the remaining three prior uses that TriZetto asserts contain a predetermined database, two were never disclosed during discovery (AMS and HCPS) and the one that was disclosed (BCBS NJ), albeit three days before fact discovery closed, has been offered without a single corroborating document. These defects are compounded by the fact that TriZetto offers expert analysis on only three of its seven pieces of prior art, each of which its expert previously testified did not anticipate, and fails to address the opinions of McKesson's experts as to those three references.

### A.    Each of TriZetto's Defenses Suffers From Numerous Defects That Preclude Summary Judgment.

Although each piece of prior art TriZetto asserts suffers from numerous, fatal defects, a common deficiency among the six alleged prior uses is the absence of evidence corroborating the assertions TriZetto and its declarants make about their operations. As this Court has recognized "[c]orroboration has been required by the courts 'because of doubt that testimonial evidence alone in the special context of proving patent invalidity can meet the clear and convincing evidence standard to invalidate a patent.'" *Intel Corp. v. Broadcom Corp.*, Civ. A. No. 00-796-SLR, 2003 U.S. Dist. LEXIS 2372, at *51 (D. Del.

22

Feb. 13, 2003) (quoting *Finnigan Corp. v. Int'l Trade Comm.*, 180 F.3d 1354, 1368 (Fed. Cir. 1999)) (D.I. 378, Ex. 16.) In the instances where TriZetto attempts to corroborate an asserted use, the documents are silent or ambiguous as to whether the asserted use included the elements of claims 1 or 2, such as the predetermined database. Such documents do not provide the corroboration necessary to invalidate a patent claim by clear and convincing evidence. *See Finnigan*, 180 F.3d at 1369 ("The Jefferts' article simply does not corroborate his testimony because, as we have noted, that article is ambiguous at best concerning the claimed use of nonresonance ejection."). Moreover, a number of the documents upon which TriZetto relies are incomplete or contradictory. Such evidence is also insufficient to corroborate a prior use. *See Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc.*, 322 F.3d 1335, 1351 (Fed. Cir. 2003).

TriZetto also has offered no evidence corroborating its assertion that any of the alleged uses were accessible to the public to qualify as prior art under 35 U.S.C. § 102(a). In order to qualify under the "known or used by others" requirement of 35 U.S.C. § 102(a), the knowledge or use must be "accessible to the public." *Carella v. Starlight Archery and Pro Line Co.*, 804 F.2d 135, 139 (Fed. Cir. 1986). To meet this requirement, TriZetto must provide *corroborated evidence* of the prior knowledge or use. *See id.* at 138-139. Indeed, the documents TriZetto provides, and more particularly the absence of documents describing the systems such as a trade article, strongly suggest that these products were not accessible to the public. TriZetto's failure to establish that its asserted prior art and prior uses qualify under the patent statute renders its motion for summary judgment defective.

Thus, because of the absence of sufficient corroborating evidence, TriZetto cannot prove that any of its six alleged prior use anticipates or renders obvious claim 1 or 2 of the '164 patent. Moreover, each asserted prior art suffers additional problems which doom TriZetto's invalidity defenses.

23

### 1.    Erisco's ClaimFacts

TriZetto cannot establish that ClaimFacts invalidates claim 1 or 2. TriZetto concedes that ClaimFacts did not have a predetermined database until 1989, after the '164 patent's priority date. (D.I. 380 at n.2.) Without this essential element, ClaimFacts cannot invalidate claim 1 or 2 as a matter of law. TriZetto also never asserted ClaimFacts as prior art during discovery and cannot rely upon it now. Moreover, TriZetto has not produced *any* documentation corroborating that ClaimFacts did what TriZetto now asserts. TriZetto's lack of documentation on ClaimFacts is particularly telling considering that ClaimFacts is TriZetto's own product and was subject to extensive discovery requests in this case. TriZetto's only evidence of the operation of ClaimFacts comes from the declaration of its own executive vice president, Anthony Bellomo, who has actively participated in this lawsuit in an attempt to avoid liability for TriZetto's infringement of the '164 patent. As the Federal Circuit has made clear: "Uncorroborated oral testimony by interested parties 'is insufficient as a matter of law to establish invalidity of [a] patent.'" *Union Carbide Chems. and Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1189 (Fed. Cir. 2002). In addition, and as a natural result of TriZetto asserting ClaimFacts for the first time months after the close of expert discovery, TriZetto offers no expert analysis of whether one skilled in the art would understand ClaimFacts to include every element of claims 1 or 2.

### 2.    The Doyle Patent

TriZetto cannot establish that the Doyle patent invalidates claim 1. Again, TriZetto concedes that the Doyle patent does not disclose the predetermined database required by claim 1. (D.I. 385 at ¶¶ 12, 13.) Without this essential element, the Doyle patent cannot invalidate claim 1 as a matter of law.[5] Indeed, Dr. Davis now recants his testimony that

---

[5]    As the language of claim 1 makes clear, the step of determining whether a code is not "in the predetermined database," may only be performed in a system that, in fact, has a predetermined database.

24

the Doyle patent did not anticipate any claim of the '164 patent based on his assumption that he may ignore the predetermined database element. (*Id.*) TriZetto applies this same logic in arguing that Dr. Musen testified that the Doyle patent "covered" claim 1, reading the need for a predetermined database out of his testimony. (*See* D.I. 380 at 23-24.) Contrary to TriZetto's characterization and incomplete quotation, Dr. Musen testified that "claim 1 is an advance over what's claimed in Doyle" because claim 1 describes performing a method in a computer system that "does unbundling"—*i.e.*, a system with the predetermined database expressly required in claim 1. (*See* Barlow Decl., Ex. 4 at 269:5-16.) This explanation is notably dropped from the very response quoted at page 24 of TriZetto's brief. However, even ignoring the issues of fact raised by Dr. Davis's conflicting opinions and Dr. Musen's complete testimony, TriZetto never addresses the opinions of McKesson's expert, Dr. Wilson, that the Doyle patent does not invalidate any claim of the '164 patent. (*See* D.I. 381, Ex. 12 at 50-51.) Thus, TriZetto cannot establish that it is entitled to judgment as a matter of law or the absence of disputed material facts as to the Doyle patent's application to claim 1.

### 3.    GMIS's AutoCoder

TriZetto cannot establish that AutoCoder invalidates claim 1. Again, TriZetto has not asserted that the AutoCoder product contained a database, much less the predetermined database as interpreted by the Court. (*See* D.I. 380 at 24-25.) TriZetto also never asserted AutoCoder as prior art during discovery despite indisputably being aware of it. Notwithstanding its knowledge of AutoCoder, TriZetto has also not pointed to any documentation regarding the functionality of the AutoCoder system. Rather, TriZetto argues that two of the inventors, Kelli Dugan and Don Holloway, admitted that AutoCoder validated codes according to claim 1. (*See id.*)

TriZetto's reliance on Ms. Dugan's testimony is curious, as she testified that she would be speculating as to how it operated or if it even had a database (D.I. 381, Ex. 15 at 45:15-25 ("it's only speculation, because I didn't -- I don't know how they worked it. But

I would assume they had a database") and did not consider it an expert system (*id.* at 48:16-18). Further, she did not know if AutoCoder had a predetermined database. (*See, e.g., id.* at 24-25; *see also* Barlow Decl., Ex. 15 at 180:8-10 ("Q. Do you know whether or not AutoCoder had such a predetermined database? A. I do not.").). Indeed, contrary to TriZetto's assertion that "Ms. Dugan agreed that AutoCoder performed the method of Claim 1," the question TriZetto cites vaguely asks "Isn't that the function of Autocoder?" and never addresses any element of claim 1. (*See id.* at 90:16-91:6.) As with Ms. Dugan's testimony, the testimony TriZetto cites from Dr. Holloway also makes no reference to any element of claim 1. Dr. Holloway accurately described the function of AutoCoder as a "key word lookup" that simply would match up the code with its description – different from the determining whether a code is not in a predetermined database as required by claim 1. (D.I. 380, Ex. 4 at 128:9-11 ("You put in the code and it would come up with the words or you put in the words and it would come up with a code . . . .").) TriZetto also offers no expert analysis as to whether one skilled in the art would understand the evidence it cites to inherently disclose each of the numerous missing elements of claim 1. Without such evidence, TriZetto cannot establish that AutoCoder invalidates claim 1.

> ### 4.    HDI's Advanced MedLogic System ("AMS")

TriZetto cannot establish that AMS invalidates claim 1 or 2. AMS was not asserted during discovery by TriZetto. While TriZetto attempts to offer corroborating documentation for the AMS system, the documentation is so vague and incomplete that it cannot meet the corroboration requirement. *See Lacks Indus.*, 322 F.3d at 1351 (A party cannot "persuasively corroborate" a prior use where "the documents themselves are . . . too incomplete or contradictory."). As explained in McKesson's summary judgment brief, the asserted operations of the AMS system are not supported by the documentation. (*See* D.I. 377 at 28-29.) Moreover, rather than point to the particular parts of the documentation that invalidate claims 1 or 2, TriZetto has confirmed these ambiguities through the submission of a declaration from Robert J. Bargar, which attempts to fill in the missing information

about the operation of the system. (*See* D.I. 383.) The proffer of such uncorroborated testimony in an attempt to bolster the vague documentation describing AMS is insufficient to prove invalidity. *See Finnigan*, 180 F.3d at 1361 (finding insufficient corroboration despite proffer of documents describing the prior use). Notably, TriZetto did not disclose Mr. Bargar during discovery, a fact that precludes TriZetto from calling him to testify at trial. *See* Guidelines for Civil Trials Before Judge Robinson at 1 ("Individuals may be called as trial witnesses if their names are disclosed by any party during discovery.").

The analysis of Dr. Davis that TriZetto now offers is contrary to his prior testimony that AMS did not anticipate any claim of the '164 patent. It is unclear why Dr. Davis's anticipation opinion with respect to claim 1 has changed as he previously believed and continues to assert that AMS has a predetermined database as defined by the Court. In addition to failing to square Dr. Davis's declaration with his prior testimony, TriZetto does not address McKesson's experts' discussion of AMS. Dr. Wilson explained that the information provided regarding AMS did not establish anticipation or obviousness of any claims of the '164 patent, noting the absence of many claim elements and inconsistencies and vagueness in the documentation describing the system.[6] (D.I. 381, Ex. 12 at 39-46.) Dr. Musen also explained that the information regarding AMS lacked a number of claim elements, such as predetermined database, determining steps, and taking actions based on those steps. (*Id.*, Ex. 20 at 24-25.) Dr. Musen further noted that it is not clear from the documentation when an AMS system was built or what it did and that it appears that AMS was "used only for statistical analysis *after* claims had been processed and paid."[7] (*Id.* at

---

[6]    Despite TriZetto's failure to assert AMS as invalidating prior art/use before discovery was closed and the limitations inherent in analyzing the vague and incomplete documentation, both Drs. Musen and Wilson included an analysis of this system in their reports based on the Court's instructions that the decision whether to exclude AMS would be reserved for future consideration and McKesson's experts should "respond in full to the expert report." (*See* D.I. 138 at 41:10-42:7.)

[7]    TriZetto, in its motion for summary judgment, references the deposition testimony of Dr. Goldberg and Dr. Davis's report citing that testimony regarding AMS being used to process *and* pay claims. (*See* D.I. 380 at 26.) In fact, Dr. Goldberg testified, as indicated in his errata *(cont'd)*

25.) Given these numerous deficiencies, TriZetto cannot establish that AMS invalidates claim 1 or 2 and certainly cannot demonstrate the absence of material questions of fact.

### 5.    BCBS New Jersey IBM 7070

TriZetto cannot establish that the BCBS New Jersey system invalidates claim 1 or 2. Although TriZetto identified this alleged prior use three days before the close of fact discovery, *no documents* have ever been produced or relied upon by TriZetto regarding its existence or operations. TriZetto's only evidence regarding this system is the conclusory declaration of Gunter Siemsen. (*See* D.I. 384.) Given the complete lack of corroboration, this declaration is insufficient to establish invalidity as a matter of law. *See Finnigan*, 180 F.3d at 1369 ("[C]orroboration is required of any witness whose testimony alone is asserted to invalidate a patent, regardless of his or her level of interest."). In addition, none of TriZetto's experts have analyzed or opined on whether the BCBS New Jersey system included every element of any claim of the '164 patent.

### 6.    Cortron's Health Care Processing System ("HCPS")

TriZetto cannot establish that HCPS invalidates claim 1 of the '164 patent. The HCPS system was not asserted during discovery and TriZetto again relies on a conclusory declaration which is not corroborated by the lone document that describes the system. The single document was not produced during discovery and is admittedly incomplete. (*See* D.I. 388 at ¶ 12 (attaching only the "pertinent pages" from a single chapter even though the declarant apparently has the entire manual).) There is no support in the documentation for several statements in the declaration TriZetto relies on to assert invalidity. For example: there is no mention that HCPS "included a database that contained all the CPT codes that had been issued by the American Medical Association" (*id.* at ¶ 4.); no mention that "the system would inform the user that the code was invalid" (*id.* at ¶ 5.); no indication that the

---

*(cont'd from previous page)*
attached as Ex. 17, that AMS was only used to analyze claims that had already been "processed-and-paid."

HCPS system contained a predetermined database as defined by the Court (*id.* at ¶ 7.); and no mention that the system could "check[] for duplicate procedure service codes on a claim" (*id.* at ¶ 8.). In addition, TriZetto has never offered any expert analysis of whether the limited evidence regarding the HCPS system describes every element of claim 1. Given the insufficiency of the evidence regarding HCPS, TriZetto cannot establish that it invalidates claim 1.

### 7.    Health Systems International's Clinical Data Editor

TriZetto cannot establish that the Clinical Data Editor system invalidates claim 1. TriZetto does not assert that the Clinical Data Editor included a predetermined database, or any database for that matter. (*See* D.I. 380 at 30.) Indeed, TriZetto's four sentence discussion of the system is devoid of a number of elements of claim 1. For example, there is no indication in the two sentences of evidence upon which TriZetto relies that the Clinical Data Editor was used to process medical claims or even received them. Moreover, TriZetto does not address the opinions of McKesson's experts. Dr. Wilson explained that the article TriZetto cites did not invalidate any of the '164 patent claims. (D.I. 381, Ex. 12 at 57.) Given these deficiencies and TriZetto's cursory treatment of the system, the Clinical Data Editor cannot invalidate claim 1.

Based on the discussion above, it is clear that each one of TriZetto's asserted prior art references and uses are manifestly deficient. McKesson identified these very same deficiencies in support of its motion for summary judgment of no anticipation and no obviousness. (*See* D.I. 377.) Accordingly, McKesson is entitled to summary judgment of no invalidity as to all of TriZetto's asserted prior art, including the reference and uses asserted in TriZetto's summary judgment motion.

### B.    The Expert Testimony, And Lack Thereof, Precludes Summary Judgment.

TriZetto has not offered any expert opinions regarding most of the prior art and prior uses asserted in its motion for summary judgment. Without such analysis, TriZetto

29

has not presented any analysis from the perspective of one of ordinary skill in the art and cannot meet its burden to establish anticipation or obviousness. *See Schumer*, 308 F.3d at 1315-16 ("testimony concerning anticipation must be testimony *from one skilled in the art.*") (emphasis added); *see also Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1324 (Fed. Cir. 1999) (An obviousness inquiry must be based upon analysis performed through the "prism or lens" of one of ordinary skill in the art); (*see also* D.I. 377 at 23-24.). Here, TriZetto has offered no expert opinions or analysis for the following prior art/uses: Erisco's ClaimFacts, GMIS's AutoCoder, Blue Cross/Blue Shield of New Jersey's IBM 7070 System, and Cortron's Health Care Processing System.

Moreover, McKesson's experts addressed the three pieces of prior art for which TriZetto does offer expert analysis – AMS, the Doyle patent, and Clinical Data Editor. (*See* D.I. 381, Ex. 12 at 50-51 (Dr. Wilson's discussion of Doyle); *id.* at 57 (Dr. Wilson's discussion of Clinical Data Editor); *id.* at 39-46 (Dr. Wilson's discussion of AMS); *id.* at 19-20 (Dr. Musen's discussion of Doyle); *id.* at 24-25 (Dr. Musen's discussion of AMS).) At a minimum, these expert analyses and opinions raise a triable issue of fact as to AMS, Doyle, and Clinical Data Editor. Indeed, the declaration that TriZetto provides from Dr. Davis regarding these systems directly contradicts his deposition testimony that they did *not anticipate* any of the claims of the '164 patent. (*See* D.I. 378, Ex. 5 at 200:6-19; *see also id.* at 201:11-202:2.) Even accepting TriZetto's excuse for Dr. Davis's change of position regarding individual elements, Dr. Davis testified that he had not conducted an element-by-element comparison of the '164 claims to the prior art in preparing his report. (D.I. 377 at 9-11.) Given this failing, his testimony is insufficient to invalidate claim 1 or 2. *See Oxford Gene*, 345 F. Supp. 2d at 436 ("The second step in evaluating the validity of a patent is to perform an element-by-element comparison of each claim to each prior reference.").

## IX. TRIZETTO HAS NOT ESTABLISHED A PRIMA FACIE CASE OF OBVIOUSNESS.

The question of obviousness, while ultimately legal, turns on four essential factual inquiries: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art;

(3) the differences between the claimed invention and the prior art; and (4) any objective indicators of non-obviousness, more commonly termed secondary considerations." *IMX, Inc.*, 405 F. Supp. 2d at 493. A material dispute as to any of these questions precludes summary judgment.

### A. TriZetto Has Not Preformed An Element-By-Element Analysis Or Shown The Required Motivation To Combine Particular References In The Manner Claimed.

TriZetto cannot establish its obviousness defense because it has not shown where each of the elements of claims 1 and 2 are located in the prior art or use. *See Oxford Gene*, 345 F. Supp. 2d at 436 ("The second step in evaluating the validity of a patent is to perform an element-by-element comparison of each claim to each prior reference."). TriZetto's failure to point to particular claim elements is telling – the documents are too vague to support its invalidity contentions. TriZetto does not even set forth the particular references that it claims must be combined to render claims 1 and 2 obvious. (*See* D.I. 380 at 39 ("[V]arious features from the different prior art systems . . . create the methods of Claims 1 and 2.").) Without establishing this threshold showing, TriZetto's cannot establish obviousness.

Moreover, the existence of each limitation of a claim in the prior art does not, by itself, establish a prima facie case of obviousness; a defendant bears the burden of providing clear and convincing evidence of a "reason, suggestion, or motivation in the prior art that would lead one of ordinary skill in the art to combine the references, and that would also suggest a reasonable likelihood of success." *Smiths Indus.*, 183 F.3d at 1356. Broad conclusory statements about the teaching of multiple references, standing alone, are not "evidence." *In re Dembiczak*, 175 F.3d 994, 1000 (Fed. Cir. 1999).

Instead, the "Federal Circuit '[has] consistently held that a person of ordinary skill in the art *must not only have had some motivation to combine the prior art teachings, but some motivation to combine the prior art teachings in the particular manner claimed.*'" *Verve, L.L.C. v. Crane Cams, Inc.*, 395 F. Supp. 2d 558, 577 (E.D. Mich. 2005) (emphasis

31

added) (quoting *Teleflex v. KSR Int'l Co.*, 119 Fed. Appx. 282, 286 (Fed. Cir. 2005)) (unpublished). "In other words, [defendants] must show reasons that the skilled artisan, confronted with the same problems as the inventor and with no knowledge of the claimed invention, *would select the elements from the cited prior art references for combination in the manner claimed.*" *Id.* (emphasis added); *see also Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1375 (Fed. Cir. 2000); *In re Rouffet*, 149 F.3d 1350, 1357 (Fed. Cir. 1998).

Here, TriZetto has not explained which references should be combined and where the motivation is for combining those references in the manner claimed, much less where all of the claim limitations are found in those references. *(See* D.I. 380 at 39-40.) Instead, TriZetto relies on blanket statements such as:

- "Throughout the 1980s, there would have been substantial motivation to combine various features from the different prior art systems to create the methods of Claims 1 and 2, given the significant development and experimentation work on computerized medical claims processing systems at the time (as evidenced by the prior art systems themselves)."

- "[A] person of ordinary skill would have had the motivation and knowledge to implement the methods of Claims 1 and 2, relying on the prior art individually or in combination."

*(Id.)* Such generalized statements regarding motivation do not meet the particularity requirement that TriZetto must show. *See In re Kotzab*, 217 F.3d 1365, 1371 (Fed. Cir. 2000) ("particular findings must be made as to the reason the skilled artisan, with no knowledge of the claimed invention, would have selected these components for combination in the manner claimed."). As the Federal Circuit has explained, "the best defense against the subtle but powerful attraction of a hindsight-based obviousness analysis is rigorous application of the requirement for a showing of the teaching or motivation to combine prior art references." *In re Dembiczak*, 175 F.3d at 999.

At most, TriZetto's discussion of the state of the art in the 1980's asserts that skilled artisan would be generally motivated to "develop" the methods of claims 1 and 2.

(*See* D.I. 380 at 39 ("There Was Substantial Motivation To Develop The Methods Of Claims 1 And 2 In the 1980's.").)  However, whether there was a general motivation to develop the claimed system does nothing to satisfy TriZetto's burden to show the specific motivation to combine *particular references* and show where *all of the claim limitations* are found in those references.  In fact, the validity of claims 1 and 2 is bolstered by the fact that despite the purported existence of a "substantial motivation" to develop their subject matter, there was no system ever developed prior to that of the '164 patent that practiced all elements of claims 1 and 2.

**B.    The Invention Was Not An Automated Form Of A Known Manual Process And TriZetto Has Failed To Establish The Requisite Motivation To Build Such A System Even If It Were.**

TriZetto's argument that the '164 patent is not a patentable invention because it is simply the automation of a well-known "manual expert system" – whatever that may be – is not supported by the facts of this case and does not entitle it to summary judgment. (*Id.* at 38.)  The argument is faulty at every level: (1) TriZetto has not established that the "manual system" was well-known and cannot point to anybody that was performing this type of code editing other than Dr. Hertenstein; (2) the '164 patent is not simply an "automation" of some manual system, rather it is a process *different* from any manual processing that was occurring at the time; and (3) even assuming that the problem was well-known and well-defined, creating an expert system such as the '164 patent was an inventive process and hardly obvious.  As detailed in McKesson's motion for summary judgment regarding TriZetto's anticipation and obviousness defenses, McKesson is entitled to summary judgment of no obviousness based on TriZetto's failure of proof on motivation to combine the prior art.  However, the evidence discussed below contradicting TriZetto's lone theory on this point, at a minimum, establishes a triable issue of fact.

33

**1.     TriZetto Offers No Evidence That Unbundling Was Well-
Known During The 1980's.**

TriZetto has identified no individual, group, or company other than Dr. Hertenstein
that was addressing the problem of unbundling of medical service codes prior to the
invention.

### Redacted

Thus, the evidence indicates that the problem was not "well-known" in
general as TriZetto asserts.

**2.     The '164 Patent Is Not Simply An "Automation" Of Some
Manual System.**

Even if unbundling were widely known, the '164 patent and its preferred
embodiment, CodeReview, are not simply an automation of Dr. Hertenstein's manual
process. While they were intended to achieve the same results as Dr. Hertenstein's manual
claim evaluation, the '164 patent describes an expert system that uses a set of defined rules
to process medical claims.   This is fundamentally different from Dr. Hertenstein's
evaluation of claims that did not involve rigorous application of a set of rules.

### Redacted

**Redacted**

These decision-making rules were never applied by Dr. Hertenstein. Indeed, it was widely recognized in the art that this was a fundamental characteristic of expert systems: "'... The model of expertise is not simply transferred from one locus to another. It is *created*." (*See* D.I. 378, D.I. 9 at 6-7.)

> 3. **Even Assuming That The Unbundling Was Well-Understood, Creating An Expert System Such As The '164 Patent Was An Inventive Process And Hardly Obvious.**

Even assuming that the problem addressed by the '164 patent was well-known and well-defined, it is widely recognized that distilling an expert's often *ad hoc* logic down to a computer-implementable model of decision-making rules is an inventive process with a high level of uncertainty of success. TriZetto glosses over this fact and never addresses the requisite showing that one skilled in the art would have perceived "a reasonable likelihood of success" in combining the prior art in the manner claimed. *See Smiths Indus.*, 183 F.3d at 1356 (a showing of "a reasonable likelihood of success" is necessary to establish a prima facie case of obviousness). Contrary to TriZetto's generalized and inapposite assertion that

"[s]imply automating a pre-existing manual technique is not a patentable 'invention,'" the

Patent Office has issued hundreds of patents directed to expert systems. (D.I. 380 at 38.)[8]

Indeed, prior to their involvement in this litigation, the parties' experts were in

virtual consensus on the challenges and uncertainty of developing an expert system to

"simply automate" a manual task in the 1980s:

- *Dr. Kerschberg*: "Knowledge engineers must ferret out solutions and represent them in computer programs. This is difficult because experts usually have trouble explaining their solutions, and knowledge representation technology is usually unfamiliar. *This contributes to a very high level of uncertainty about project success.*" (D.I. 378 Ex. 7 at 75:2-75:8 (emphasis added).)

- *Dr. Davis*: "Even for the best-understood problems, experienced researchers using the best-understood technologies still require *at least five-man years to develop a system that begins to be robust.*" (*Id.* Ex. 8 at 10(emphasis added).)

- *Dr. Musen*: "Authors may tend to ignore the model-creation step not because it is unimportant (indeed, it is cruicial), but rather because *development of models is so dependent on human ingenuity and inventiveness* that it is often difficult to understand how such models are formed." (D.I. 375, Ex. 9 at 31 (quoting Musen, *An Overview of Knowledge Acquisition* (1992)).)

*Cf.* (D.I. 378, Ex. 4 at 26 ( "I can attest to the tedious and painstaking effort involved in

reducing coding conventions to a database and a set of logical rules."); *id.*, Ex. 10 at 27-28

("[c]reativity and invention were required for this step" of "determin[ing] the logic for the

knowledge base interpreter design.").) The courts have long recognized the value of such

publications, which are immune from litigation strategy and subject to the pressures of

---

[8]     TriZetto's proffered support for its proposition is a citation to two cases that are distinguishable and that have never been cited by the Federal Circuit. *In re Venner*, 46 C.C.P.A. 754, 758 (C.C.P.A. 1958), is limited to a situation where the automatic means is used to "accomplish[] the same result." As explained above, that is not the case with the '164 patent. TriZetto's characterization of *Chem-Nuclear Sys., LLC v. Braun*, Civ. A. Nos. 03-03-441-CMC and 03-03-442-CMC, 2006 U.S. Dist. LEXIS 10192 (D.S.C. Feb. 23, 2006) (Barlow Decl., Ex. 18), as standing for the proposition that the patent was invalid because it was a "broad automation of what had been done manually" is contrary to the holding and facts of that case . (D.I. 380 at 38.) In *Chem-Nuclear* the court found that the patent was obvious over a combination of prior art that contained all of the elements of the claimed invention. *Chem-Nuclear*, 2006 U.S. Dist. LEXIS 10192, at *25. The court's reference to automation was related to a prior art system that disclosed the key claim element and allowed a user to insert that element at "various locations as desired" but was being used in non-nuclear wastewater treatment. *See id.* at *16, 22-23. The court found that there was no evidence that the device could not be used in nuclear wastewater treatment. *Id.*

peer review, in assessing the reliability of an expert's opinions. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593 (1993) ("Another pertinent consideration is whether the theory or technique has been subjected to peer review and publication . . . submission to the scrutiny of the scientific community is a component of 'good science,' in part because it increases the likelihood that substantive flaws in methodology will be detected.").

TriZetto's failure to address the challenges recognized in the art in developing an automated expert system, such as the invention in the '164 patent, requires that its obviousness motion be denied. To establish obviousness, a defendant must present clear and convincing evidence that one skilled in the art would have perceived a reasonable likelihood of success in combining elements from the prior in the manner claimed. *See IMX, Inc.*, 405 F. Supp. 2d at 494 (rejecting obviousness defense where defendant failed to identify evidence suggesting a reasonable likelihood of success in combining the prior art). TriZetto has not done so here.

### C.    The Secondary Considerations Of Non-Obviousness Preclude Entry Of Summary Judgment In Favor Of TriZetto.

TriZetto has not rebutted the overwhelming objective evidence of non-obviousness which has been presented by McKesson and its experts. While TriZetto attempts to discount the importance of secondary considerations when performing an obviousness inquiry, they are "essential components of the obviousness determination." *In re Rouffet*, 149 F.3d at 1355. "In determining whether the clear and convincing evidence standard is met, the court ***must*** consider secondary factors of nonobviousness." *Genzyme Corp. v. Atrium Med. Corp.*, 315 F. Supp. 2d 552, 564 (D. Del. 2004) (emphasis added); *see also Neutrino Dev. Corp. v. Sonosite, Inc.*, 410 F. Supp. 2d 529, 551 (S.D. Tex. 2006) ("the circumstances that surround the historical origins of the claimed invention and its effect on the industry must be considered.").

Because TriZetto has failed through its expert reports or summary judgment motion to address any of the secondary considerations, it attempts to marginalize the importance of the infringed claims. However, claim 1 is a foundational method for code editing as described in the '164 patent. Likewise, claim 2 is not limited to the detection of duplicate codes as TriZetto asserts. Rather, it covers the entire set of edits that are based on non-medical criteria that the jury found to be present in TriZetto's products.

Further, the opinions of McKesson's experts that the secondary considerations demonstrate the '164 claims' nonobviousness preclude entry of summary judgment in favor of TriZetto. (*See* D.I. 378, Ex. 9 at ¶¶ 46-48 (addressing long felt need and commercial success); *id.,* Ex. 10 at §§ 8.2.3, 8.2.5, 8.2.8, and 8.4 (addressing long felt need, commercial success, and industry skepticism).) TriZetto's attempt to ignore the huge commercial success of the '164 patent is disturbing as such considerations "may often be the most probative and cogent evidence in the record." *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1538-39 (Fed. Cir. 1983). Because TriZetto cannot contest the evidence of nonobviousness, its motion for summary judgment should be denied.

## X.    CONCLUSION.

For the foregoing reasons, McKesson respectfully requests that the Court deny TriZetto's motion for summary judgment of invalidity based on anticipation and obviousness.

Respectfully submitted,

By: _____

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff
    McKesson Information Solutions LLC

38

OF COUNSEL:
Jeffery G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500

DATED: June 15, 2006