IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MCKESSON INFORMATION SOLUTIONS LLC,   )
          )
          Plaintiff,   )    CIVIL ACTION NO. 04-1258-SLR
          )
      v.       )
          )    **REDACTED PUBLIC VERSION**
THE TRIZETTO GROUP, INC.,   )
          )
          Defendant.   )
          )

**PLAINTIFF MCKESSON INFORMATION SOLUTION LLC'S**
**REPLY BRIEF IN SUPPORT OF ITS MOTION FOR**
**SUMMARY JUDGMENT RE: ANTICIPATION AND OBVIOUSNESS**

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899
(302) 651-3000

Attorneys for Plaintiff
McKesson Information Solutions LLC

OF COUNSEL:

Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California  94301
(650) 470-4500

DATED:  June 22, 2006
PUBLIC VERSION DATED:  June 28, 2006

**TABLE OF CONTENTS**

Page

I. SUMMARY OF ARGUMENT .................................................................................. 1

II. TRIZETTO CANNOT ESTABLISH INVALIDITY OF CLAIMS 1 AND 2 AS A
MATTER OF LAW USING THE PRIOR ART REFERENCES DISCLOSED DURING
DISCOVERY ....................................................................................................... 2

    A.    TriZetto Abandons 31 Of The 34 Pieces Of Prior Art Asserted In
Discovery. ..................................................................................................... 2

    B.    The Remaining Asserted Prior Art Is Deficient As A Matter of Law. ..... 3

III. TRIZETTO SHOULD BE PRECLUDED FROM RELYING ON PRIOR ART
DISCLOSED AFTER THE CLOSE OF FACT DISCOVERY ........................................... 4

    A.    TriZetto Should Be Precluded From Relying On References First
Asserted After The Close Of Fact Discovery. ......................................... 4

    B.    McKesson Did Not Make New Arguments At Trial That Justify
TriZetto's Failure To Disclose These References During Discovery. ...... 5

    C.    TriZetto Cannot Blame McKesson For Its Failure To Assert AMS
Before The Close Of Fact Discovery. ....................................................... 7

IV. TRIZETTO FAILS TO ADDRESS THE CORROBORATION STANDARD AND THE
LACK OF EVIDENCE SUPPORTING ITS DEFENSES .................................................. 10

V. TRIZETTO'S ENTIRE OPPOSITION IS BASED UPON THE INCORRECT PREMISE
THAT THE '164 PATENT CLAIMS CAN BE INVALIDATED WITHOUT
CONSIDERATION OF ALL CLAIM ELEMENTS AND WITHOUT EXPERT
ANALYSIS ....................................................................................................... 11

    A.    The "Predetermined Database" Was Construed By The Court,
Proven To Be Infringed At Trial, And Cannot Be Disregarded In
Connection With TriZetto's Invalidity Defense. ..................................... 11

    B.    TriZetto Cannot Prove Invalidity Without Expert Analysis. .................. 12

VI. CLAIMS 1 AND 2 ARE NOT ANTICIPATED AS A MATTER OF LAW ...................... 14

VII. TRIZETTO HAS NOT ESTABLISHED A PRIMA FACIE CASE OF OBVIOUSNESS ....... 16

    A.    TriZetto Asserts It Has Not And Will Not Demonstrate The
Showing of Motivation Necessary To Prove Obviousness. .................... 16

    B.    Drs. Davis And Hawley Did Not Conduct An Element-By-Element
Comparison Of Claims 1 Or 2 To Any Combination Of Prior Art ......... 17

    C.    TriZetto Cannot Excuse Its Experts' Failure to Address Entire Claim
Elements. ................................................................................................... 19

D.    TriZetto Cannot Overcome The Undisputed Objective Evidence Of
Non-Obviousness By Disregarding It. ....................................................20

VIII.    CONCLUSION. .........................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aspex Eyewear, Inc. v. Concepts in Optics, Inc.,*
　111 Fed. Appx. 582 (Fed. Cir. 2004) ........................................................................13, 18

*Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.,*
　835 F.2d 1557 (Fed. Cir. 1988) ........................................................................................14

*Carrion v. City of Wilmington,*
　Civ. A. No. 03-613-KAJ, 2005 U.S. Dist. LEXIS 787  (D. Del. Jan. 7, 2005) .................2

*Centricut, LLC v. The Esab Group, Inc.,*
　390 F.3d 1361 (Fed. Cir. 2004)........................................................................................12

*Chore-Time Equip., Inc. v. Cumberland Corp.,*
　713 F.2d 774 (Fed. Cir. 1983)...................................................................................13, 14

*Finnigan Corp. v. ITC,*
　180 F.3d 1354 (Fed Cir. 1999)....................................................................................4, 10

*Hackett v. Cmty. Behavioral Health,*
　Civ. A. No. 03-6254, 2005 U.S. Dist. LEXIS 8410 (E.D. Pa. May 6, 2005) ....................3

*IMX, Inc. v. LendingTree LLC,*
　405 F. Supp. 2d 479 (D. Del. 2005)................................................................................16

*In re Dembiczak,*
　175 F.3d 994 (Fed. Cir. 1999).........................................................................................17

*In re Rouffet,*
　149 F.3d 1350 (Fed. Cir. 1998)........................................................................................20

*Invitrogen Corp. v. Clontech Labs., Inc.,*
　429 F.3d 1052 (Fed. Cir. 2005)........................................................................................18

*Koito Mfg. Co. v. Turn-Key-Tech, LLC,*
　381 F.3d 1142, 1149 (Fed. Cir. 2004)....................................................................12, 14, 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
　475 U.S. 574 (1986)...........................................................................................................2

*Medichem, S.A. v. Rolabo, S.L.,*
　437 F.3d 1157 (Fed. Cir. 2006)........................................................................................17

*Merck & Co. v. Teva Pharms. USA, Inc.,*
　395 F.3d 1364 (Fed. Cir. 2005)........................................................................................12

*N. Am. Vaccine v. Am. Cyanamid Co.,*
　7 F.3d 1571 (Fed. Cir. 1993)............................................................................................16

*Oxford Gene Tech. Ltd. v. Mergen Ltd.,*
    345 F. Supp. 2d 431 (D. Del. 2004) .................................................................................18

*Petersen Mfg. Co. v. Cent. Purchasing, Inc.,*
    740 F.2d 1541 (Fed. Cir. 1984) ......................................................................................14

*Praxair, Inc. v. ATMI ("Praxair II"),*
    2005 WL 3159054 (D. Del. Nov. 28, 2005) .......................................................................8

*Praxair, Inc. v. ATMI, Inc.,*
    231 F.R.D. 457 (D. Del. 2005).....................................................................................5, 8

*Primos, Inc. v. Hunter's Specialties, Inc.,*
    2006 U.S. App. LEXIS 14525 (Fed. Cir. June 14, 2006) .............................................5, 8

*Schumer v. Lab. Computer Systems, Inc.,*
    308 F.3d 1304 (Fed. Cir. 2002)........................................................................................2

*Teleflex v. KSR Int'l Co.,*
    119 Fed. Appx. 282 (Fed. Cir. 2005) .............................................................................17

*Union Carbide Corp. v. Am. Can Corp.,*
    724 F.2d 1567 (Fed. Cir.1984)......................................................................................14

*Upjohn Co. v. MOVA Pharm. Corp.,*
    225 F.3d 1306 (Fed. Cir. 2000) .....................................................................................19

*Verve, L.L.C. v. Crane Cams, Inc.,*
    395 F. Supp. 2d 558 (E.D. Mich. 2005).........................................................................17

# I.    SUMMARY OF ARGUMENT.

1.    TriZetto has failed to raise a triable issue of fact regarding its anticipation and obviousness defenses based on the 34 pieces of prior art it asserted prior to the close of fact discovery. TriZetto does not mention or attempt to defend 31 of these references and the 3 it does discuss are deficient as a matter of law. The alleged "IBM 7070" system is not corroborated by a single document and was not analyzed by any expert, and TriZetto concedes neither the Doyle patent nor the Clinical Data Editor included the predetermined database element of claims 1 and 2.

2.    The Court's precedent precludes TriZetto from relying on four other pieces of prior art that it admittedly did not assert during discovery. TriZetto cannot blame McKesson for its dilatory conduct. McKesson produced all the information it had on AMS nearly *five months before discovery closed.* TriZetto's decision to wait until over a month after close of discovery to assert AMS is not McKesson's fault. Nor can TriZetto blame its decision to wait until 3 weeks ago to assert new art on any purported change in position regarding claims 1 and 2 because McKesson's position regarding those claims has remained the same and was expressly disclosed in the '164 patent.

3.    TriZetto cannot corroborate the 15 prior uses asserted during discovery. Tellingly, TriZetto only argues that 2 of them are sufficiently corroborated. TriZetto's arguments, however, misstate the law and make no effort to show where the documents it offers corroborate the assertions of its witnesses regarding their relevant features.

4.    TriZetto cannot invalidate claim 1 or 2 without showing the prior art taught the "predetermined database" element and without expert analysis of the prior art from the perspective of a skilled artisan. Because its experts made clear that they are not asserting claim 1 or 2 was anticipated, TriZetto's anticipation defense fails. TriZetto cannot overcome this by asserting new prior art that lacks a predetermined database and that has not been analyzed by any expert.

5.    TriZetto's obviousness defense fails for these and numerous other reasons. TriZetto does not dispute that its experts did not address essential components regarding motivation to combine and states that it has no need or apparent intention of offering such proof. Without it, TriZetto cannot prove its case and trial is unnecessary. Also fatal to TriZetto's defense are its experts' failure to conduct a threshold element-by-element analysis of the claims, identify what

combinations of prior art they are relying upon, address entire claim elements, or consider any objective indicia of nonobviousness.

## II. TRIZETTO CANNOT ESTABLISH INVALIDITY OF CLAIMS 1 AND 2 AS A MATTER OF LAW USING THE PRIOR ART REFERENCES DISCLOSED DURING DISCOVERY.

After contending that McKesson did not address the "merits" of its invalidity case, TriZetto abandons nearly its entire case and does not present *any* argument in opposition to McKesson's entitlement to summary judgment with respect to nearly all of the prior art TriZetto asserted during discovery. While McKesson's brief conclusively demonstrates the validity of claims 1 and 2 of the '164 patent over the "merits" of TriZetto's invalidity case, McKesson is not required to "defend the ... novelty of the methods of Claims 1 and 2" as TriZetto argues. (D.I. 406 at 2.) Rather, the claims of the '164 patent are presumed valid as a matter of law and remain so until TriZetto "prove[s] facts supporting a determination of invalidity by clear and convincing evidence." *Schumer v. Lab. Computer Systems, Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002). The undisputed record evidence establishes that TriZetto cannot prove such facts as a matter of law and summary judgment in McKesson's favor is therefore appropriate.

### A. TriZetto Abandons 31 Of The 34 Pieces Of Prior Art Asserted In Discovery.

During fact discovery, TriZetto identified 34 pieces of prior art as the basis of its anticipation and obviousness defense. (D.I. 80 at 13; D.I. 378, Ex. 1 at 62-64.) Due to failures of proof on essential elements of TriZetto's case, McKesson moved for summary judgment as to each of these 34 references. TriZetto's opposition does not present any argument against summary judgment as to 31 of these references. (See Ex. 1.)[1] Thus, TriZetto has not "come forward with 'specific facts showing that there is a genuine issue for trial'" regarding these 31 references and McKesson is entitled to summary judgment as to these references. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("When the moving party has carried its burden under Rule 56(c) . . . the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'") (emphasis in original); *See also* Ex. 2 *Carrion v. City of*

---

[1]    Citations to "Ex. __" are citations to the "Declaration of Michael A. Barlow in Support of Plaintiff McKesson Information Solutions LLC's Reply Brief In Support Of Its Motion For Summary Judgment Re: Anticipation And Obviousness," filed concurrently with this brief.

*Wilmington*, Civ. A. No. 03-613-KAJ, 2005 U.S. Dist. LEXIS 787, at *6-8 (D. Del. Jan. 7, 2005) (summary judgment warranted because non-movant failed to "set forth specific facts showing that there is a genuine issue for trial" by not responding to movant's arguments and evidence); Ex. 3 *Hackett v. Cmty. Behavioral Health*, Civ. A. No. 03-6254, 2005 U.S. Dist. LEXIS 8410, at *23 (E.D. Pa. May 6, 2005) (granting summary judgment on claims deemed abandoned because of non-movant's failure to defend the viability of those claims in her answering brief).

**B.    The Remaining Asserted Prior Art Is Deficient As A Matter of Law.**

The three references asserted in discovery that TriZetto addresses in its opposition—the Doyle patent, Clinical Data Editor, and the IBM 7070 System—cannot invalidate claims 1 and 2.

*First*, concerning the Doyle patent and Clinical Data Editor, which are only asserted against claim 1, TriZetto admits that these references do not include the claimed "predetermined database." (D.I. 380 at 3 (Doyle and Clinical Data Editor are not included in the "[t]hree systems" TriZetto argues "included a 'predetermined database'.").) Thus, as a matter of law, neither of these references anticipates claim 1. TriZetto also has not offered any evidence that one skilled in the art would have been motivated to develop and add a predetermined database, as that term was construed by the Court, to either of these references. Accordingly, as a matter of law, neither of these references render claim 1 obvious. TriZetto's arguments concerning these references are premised on the incorrect assumption that the "predetermined database" claim element is irrelevant. (*See id.* at 3 ("'predetermined database' ... is not required to perform the method of claim 1"); D.I. 385 at ¶ 13). However, the predetermined database is an element of both claims 1 and 2 and is central to the resolution of TriZetto's invalidity defense. Contrary to TriZetto's assertion, Dr. Musen did not state otherwise. Indeed, Dr. Musen distinguished claim 1 over Doyle because, *inter alia*, Doyle lacks the claimed predetermined database necessary to address unbundling. (*See* D.I. 406 at 9 ("Claim 1 is an advance over what is claimed in Doyle. ... It's a functional equivalent *in the context of a system that also does unbundling.*") (emphasis added); *cf.* D.I. 375, Ex. 9 at ¶ 26 ("To address unbundling ... the '164 patent describes the use of ... a database of medical service codes and relationships among those codes ....").) TriZetto's failure to address the "predetermined database" element of claim 1 renders its invalidity defense based on Doyle or Clinical Data Editor inadequate as a matter of law.

3

*Second*, concerning the "IBM 7070 System," TriZetto relies solely on Mr. Siemens's uncorroborated and untested recollection of a claim system developed in 1963. In addition, there is no evidence that unbundling and other billing issues solved by the patented invention were even recognized as issues until the 1980s. The entirely uncorroborated testimony TriZetto offers in connection with this system is insufficient to invalidate a patent claim as a matter of law. *See, e.g., Finnigan Corp. v. ITC*, 180 F.3d 1354, 1369 (Fed Cir. 1999) ("Corroboration is required of any witness whose testimony alone is asserted to invalidate a patent, regardless of his or her level of interest."). Moreover, TriZetto cannot meet its burden to demonstrate one skilled in the art would understand this system to invalidate claim 1 or 2 because it has not been addressed by any of TriZetto's experts. Accordingly, as with the 31 references abandoned by TriZetto, McKesson is entitled to summary judgment that the Doyle patent, Clinical Data Editor, and the IBM 7070 System do not anticipate or render obvious claims 1 or 2 of the '164 patent.

## III.    TRIZETTO SHOULD BE PRECLUDED FROM RELYING ON PRIOR ART DISCLOSED AFTER THE CLOSE OF FACT DISCOVERY.[2]

Rather than argue its invalidity defense based on the 34 prior art references it selected from the 165 references it advanced at various times during discovery, TriZetto now advances four alleged prior uses never asserted during fact discovery – AMS, ClaimFacts, AutoCoder, and HCPS. Based on the Court's rulings in this and other cases, however, TriZetto should be precluded from relying on any of these alleged prior uses to revive its invalidity defense.[3]

### A.    TriZetto Should Be Precluded From Relying On References First Asserted After The Close Of Fact Discovery.

There is no dispute that TriZetto did not state its intent to rely on AMS until over a month after the September 2005 close of fact discovery and only first suggested ClaimFacts, AutoCoder, and HCPS as potentially invalidating references months later on June 1, 2006 in its own summary judgment motion. TriZetto admits that it was aware of these references during fact discovery, (*see*

---

[2]    Pursuant to the Court's instructions (D.I. 138 at 42:2-3), McKesson filed a motion to strike these alleged prior uses that were disclosed after the close of discovery. (D.I. 417.) The arguments presented in that brief are incorporated in this motion.

[3]    As discussed in McKesson's opposition to TriZetto's summary judgment motion, none of these references invalidate the claims of the '164 patent. (*See* D.I. 414 at 21-29.)

D.I. 380 at 24-26, 29, 31 (admitting it knew of AMS, AutoCoder and HCPS during fact discovery, and of ClaimFacts since at least 1980)), and there is no legitimate reason why TriZetto did not identify them in any of its many invalidity interrogatory responses before fact discovery closed.

As detailed more fully in McKesson's opening brief and its motion to strike these new defenses, in *Praxair, Inc. v. ATMI, Inc.*, 231 F.R.D. 457, 464 (D. Del. 2005), the Court struck prior art references first disclosed shortly before fact discovery closed (as opposed to months after here) and seven months before trial. The Court rejected the defendants' arguments that (1) their late disclosure was caused by the plaintiffs' altered claim construction, and (2) earlier disclosure was not necessary because the plaintiffs were already aware of the references. *Id.* at 464 n.9. In fact, the Court instructed TriZetto in this case that "your prior art is limited to that disclosed by the close of discovery." (D.I. 138 at 12-13.)

Consistent with *Praxair*, the Federal Circuit recently affirmed the appropriateness of excluding prior art disclosed after the close of discovery because it would "be unfair to permit its introduction into evidence." *See* Ex. 4 *Primos, Inc. v. Hunter's Specialties, Inc.*, 2006 U.S. App. LEXIS 14525, at *25-26 (Fed. Cir. June 14, 2006). The Federal Circuit similarly emphasized that "although [the prior art] may have been mentioned during discovery, it was never identified to the court as an invalidating prior art device." *Id.* at *24. The Federal Circuit also rejected the defendant's argument that the "the public interest requires consideration of any invalidating prior art devices." *Id.* at *15, 17. The Federal Circuit explained:

> the purpose of discovery is to enable parties to obtain the factual information needed to prepare their cases for trial. . . . The district court determined that [defendant] had ample opportunity to introduce the [prior art] during the . . . discovery phase. Because it did not do so, the district court was entitled to decide that [defendant] may not then introduce disputed evidence beyond the time allotted for discovery.

*Id.* at *25-26 (internal citations omitted). TriZetto's efforts to excuse its untimely assertion of this new art fail. Thus, TriZetto should not be allowed to rely on or introduce evidence regarding ClaimFacts, AutoCoder, AMS, or HCPS in connection with its invalidity defense.

### B.    McKesson Did Not Make New Arguments At Trial That Justify TriZetto's Failure To Disclose These References During Discovery.

TriZetto attempts to justify its admittedly untimely assertion of these references by accusing McKesson of advancing "new interpretations" of the "determining" steps of claims 1 and

2 at trial. However, McKesson and the jury applied the Court's construction of claims 1 and 2, and McKesson's position at trial was consistent with its position during discovery, its claim construction, Dr. Musen's expert report, and *the preferred embodiment of the '164 patent*. Thus, TriZetto's purported surprise at McKesson's evidence and arguments at trial is untenable.

With respect to claim 1, McKesson has always asserted that: (1) the "predetermined database" is an essential element; and (2) the "determining" step is not limited to checking the predetermined database directly. TriZetto concedes as much in its opposition to McKesson's section 112 motion. (D.I. 404 at 16.) As McKesson detailed in its claim construction briefing, contending otherwise is legal error because it would exclude the patent's preferred embodiment, which discloses checking an "ALLCODE" database, not the predetermined database, as a way of performing claim 1's determining step. TriZetto's purported "surprise" at this position directly conflicts with its express acknowledgement *in its own claim construction brief* that this construction is consistent with the patent's preferred embodiment. (D.I. 158 at 20.)

In addition, the testimony from Dr. Musen that TriZetto cites does not state that the predetermined database *must* be used to perform data validation, just that it *can* be: "my interpretation of the claims is that the motivation for Claim 1 is to clarify that the task performed for claim validity checking *can* be handled using the same structures that are ultimately used for other components of the patent." (D.I. 406 at 7 (emphasis added).) This testimony is entirely consistent with the preferred embodiment and McKesson's and Dr. Musen's position throughout this case that validation can also be performed *without* accessing the predetermined database.

With respect to claim 2, the fact that TriZetto's detection and correction of "double billing" infringes was hardly a revelation at trial. ███████████████████████████████████████ ███████████████████████████████████████████████████████ In a disingenuous attempt to avoid this aspect of Dr. Musen's report, TriZetto ignores Dr. Musen's report and carefully argues "[n]or did Dr. Musen use the 'double billing' interpretation *at his deposition*." (D.I. 406 at 9 (emphasis added).) TriZetto knew McKesson's double billing position prior to Dr. Musen's deposition and cannot complain about its failure to question him about it.

Unlike TriZetto, McKesson questioned numerous witnesses about duplicate code edits during fact discovery. (D.I. 414 at 18-19.) For example, in a discussion of Claim 2 at Karen

Lampe's deposition on September 14, 2005, she was asked questions that were virtually identical to those asked at trial: "Q. And then it would determine that they are mutually exclusive because there's *two exact duplicates of the same code, correct?* A. Yes. Q. So with this clarification in mind . . . ClaimFacts does edit medical service codes for non-medical reasons, correct? A. Correct." (Ex. 375, Ex. 16 at 66:2-10 (emphasis added).) TriZetto cannot claim surprise that the same examination was repeated at trial, particularly given that Dr. Musen also cited this testimony in his opening report. (D.I. 375, Ex. 9, Ex. 4 at 14.)

Further, McKesson did not "ignore" the fact that Claim 2 covers exclusivity between different codes at trial. (*See* D.I. 406 at 9-10.) Dr. Musen expressly used an example of rejecting different codes based on non-medical criteria, which was the exact example that he explained at his deposition. (*See* Ex. 5 at 379:1-393:21; D.I. 375, Ex. 11 at 59:14-60:1.) This is the same example that TriZetto carefully omitted from its quotation of McKesson's closing argument: "That's a simple non-medical issue, and there are others, like Dr. Musen testified to as well. *For instance, the idea that you should add up small cuts and bill it as a 10-inch cut instead of ten small cuts. Is that medically related? Absolutely not. It means that it is billing-related.*" (*Id.* Ex. 10 at 1202:23-1203:4 (emphasis added).) Because McKesson's trial positions were consistent with its claim construction and expert opinions, as well as the patent's preferred embodiment, TriZetto's "new interpretations" justification for its untimely disclosure is wrong and should be rejected.

### C.    TriZetto Cannot Blame McKesson For Its Failure To Assert AMS Before The Close Of Fact Discovery.

TriZetto argues that the Court should not exclude the AMS system since it "was known to McKesson throughout this litigation and well before." (D.I. 406 at 32.) However, the Court has repeatedly and correctly rejected this argument. (D.I. 116 at 74:20-24 ("Well, it does not matter whether the prior art is known to them [McKesson]. What matters is if you [TriZetto] have said we're going to rely on this prior art and therefore you're on notice that you need to take discovery on this prior art. If you cannot demonstrate that, then you will be precluded ..."); *see also* D.I. 132 (order permitting TriZetto to use only prior art and uses disclosed during fact discovery).) Notably, it was TriZetto's assertion of AMS after fact discovery that prompted the Court to emphasize that "I did not mean for the discovery to go on forever and ever. I was giving you the opportunity to try

7

the late-filed prior art and *your prior art is limited to that disclosed by the close of discovery....*"
(D.I. 138 at 10-13 (emphasis added).)

As discussed above and in McKesson's Motion to Strike (D.I. 417 at 9-10), the Court's decision in *Praxair* and the Federal Circuit's recent *Primos* decision held less egregious circumstances warranted exclusion and rejected the arguments TriZetto advances here. *See Praxair*, 231 F.R.D. at 464 n.9 (D. Del. 2005); *Praxair, Inc. v. ATMI* ("*Praxair II*"), 2005 WL 3159054, at *4 (D. Del. Nov. 28, 2005) (D.I. 378, Ex. 12); *Primos*, 2006 U.S. App. LEXIS 14525, at *25-26. TriZetto admits that it did not disclose its intent to rely on AMS until after fact discovery closed and should thus be precluded from relying on AMS in its validity defense.

None of TriZetto's excuses hold water or come close to a substantial justification for its delay. TriZetto contends it "did not appreciate the significance of AMS until Dr. Goldberg's deposition" (D.I. 406 at 32-33), but acknowledges that McKesson produced documents that "clearly and completely explain the relevant features of AMS" *four months earlier*. (*Id.* at 35 n.12.) Although it is unclear how Dr. Goldberg's testimony that AMS was very different from the '164 claims triggered TriZetto's new understanding, his deposition was taken *before the close of discovery*. (D.I. 408 Ex. Q at 1.) TriZetto could have supplemented its interrogatory response or even sought leave to assert AMS during the September 22, 2005 discovery conference when the parties and the Court were discussing TriZetto's late addition of 15 other prior uses. TriZetto did neither and never mentioned AMS to McKesson or the Court. (D.I. 116.) TriZetto had ample opportunity to assert AMS in the five months after McKesson produced every document TriZetto contends it needs and even after Dr. Goldberg's deposition. That TriZetto did not consider AMS as relevant as the *165* other references it asserted during discovery does not warrant its addition now.

Similarly, that TriZetto "began working with its expert, Dr. Davis, in October 2005"—*after* fact discovery—does not justify its delay. (D.I. 406 at 33.) If TriZetto intended to use its expert to aid its search for prior art, it should have begun working with him before the close of fact discovery.

Incredibly, TriZetto attempts to excuse its neglect by arguing that "McKesson failed to disclose AMS to TriZetto in this litigation" and somehow "kept [TriZetto] in the dark." (D.I. 406 at 33-34.)  This allegation is demonstrably false.  McKesson was clearly forthcoming during discovery and gave TriZetto all the information McKesson possessed regarding AMS. McKesson

8

produced the AMS materials upon which TriZetto bases its defense (D.I. 408, Exs. O and P) on April 28, 2005—documents TriZetto asserts *"clearly and completely explain the relevant features of AMS."* (D.I. 406 at 35 n.12. (emphasis added).) A few days later (May 3, 2005), McKesson produced the Pre-Trial Memorandum referenced in TriZetto's brief (D.I. 408, Ex. R) which TriZetto argues shows that GMIS "actually asserted [AMS] as prior art during the litigation" between GMIS and HPR. (D.I. 406 at 32 (the AMS materials were 2 of only 51 exhibits proposed by GMIS.).) Thus, as of May 3, 2005 – nearly 5 months before the close of fact discovery – McKesson produced *all* the documents upon which TriZetto now relies as well as documents indicating GMIS planned to assert (albeit incorrectly) AMS as prior art. These materials alone were sufficient to put TriZetto on notice that it should at least investigate AMS. Its failure to do so was its own doing and cannot excuse TriZetto's untimely assertion of AMS.[4]

TriZetto's argument that McKesson did not identify AMS in its interrogatory responses is a complete red herring. (*See* D.I. 406 at 33.)[5] TriZetto cites to Interrogatories 6, 7, and 9 but never explains how the identification of AMS would have given it any better understanding than the documents McKesson produced or how AMS is responsive. Interrogatory 9 was directed to TriZetto's inequitable conduct defense and asked McKesson to identify "prior art" that the inventors or their agents were aware of prior to "filing the '164 PATENT." (D.I. 408, Ex. V at 9.) McKesson, subject to its stated objections to this flawed request, truthfully responded that "the inventors and prosecuting attorneys disclosed all material prior art of which they were aware" to the PTO. (*Id.*) These were the "prior art systems" TriZetto states McKesson listed. (*See* D.I. 406 at 33). Notably, two of TriZetto's law firms reviewed McKesson's response to this interrogatory and concluded that it was sufficient and never challenged McKesson's objections or response. (*See*

---

[4]     TriZetto also cannot remedy its failure to disclose Dr. Bargar during fact discovery by including his name on a witness list for the April 2006 infringement trial, (*see* D.I. 406 at 34-35), and McKesson was not required to interrupt its trial preparation to depose him about an alleged prior art system that TriZetto should not be allowed to rely on at the invalidity trial.

[5]     TriZetto's statement that it "dutifully responded" on January 20, 2005 to McKesson's invalidity interrogatories "with all relevant information that TriZetto knew at the time" is frankly incredible and speaks further to TriZetto's willingness to misrepresent the record. (*See* D.I. 406 at 33.) Despite having been aware of the '164 patent for ten years at that time, hired at least three patent law firms to analyze the patent, and filed a counterclaim alleging invalidity under §§ 102 and 103, TriZetto's interrogatory response did not identify *any* prior art references. (D.I. 408, Ex. S.)

Ex. 6 (1/28/05 Letter from Paul Hastings); Ex. 7 (4/11/05 Letter from Gibson Dunn); Ex. 8 (6/2/05 Letter from Gibson Dunn).)  Interrogatory 7 asked for products marketed by *McKesson* and is clearly inapposite.  Interrogatory 6 asked about any prior "disclosures" of "any claimed invention of the '164 patent."  Even TriZetto's expert, Dr. Davis, testified that AMS was not such a disclosure, as it did not anticipate any of the '164 claims.  (D.I. 408, Ex. G at 200:6-19.)

Finally, contrary to TriZetto's argument, the prejudice to McKesson from TriZetto's late assertion of AMS is manifest.  As discussed in detail in McKesson's motion to strike, TriZetto's untimely disclosure has denied McKesson any real opportunity to conduct proper discovery concerning AMS, and reopening discovery now will only add to the prejudice.  (*See* D.I. 417 at 13-15.)



### IV.    TriZetto Fails To Address The Corroboration Standard And The Lack Of Evidence Supporting Its Defenses.

TriZetto's conclusory assertion that "AMS and MedClaim ... are evidenced by hefty documents and credible witness testimony," misses the point and ignores five of the seven references it now asserts.  (D.I. 406 at 35.)  As noted, testimony is, *per se*, insufficiently "credible" to invalidate a claim without corroboration.  *See, e.g., Finnigan*, 180 F.3d at 1369.  This corroboration requirement extends beyond merely evidencing that an asserted product existed; independent evidence must corroborate a witness's assertions regarding the relevant features and operations of such a system.  *See id.* ("The Jefferts' article simply does not corroborate his testimony because, as we have noted, that article is ambiguous at best concerning the claimed use of nonresonance ejection.").  As explained in McKesson's opposition to TriZetto's summary judgment motion, TriZetto's corroborating evidence is either non-existent or "ambiguous at best concerning the claimed" elements it contends are invalid.  (*See* D.I. 414 at 23.)  Tellingly, TriZetto

only addressing corroboration as to AMS and MedClaim, ignoring its other asserted prior uses which also lack corroboration: ClaimFacts (TriZetto withheld all documents regarding its early operations from production); AutoCoder (no corroborating documents offered); BCBS New Jersey's IBM 7070 System (no corroborating documents offered); HCPS (single, incomplete document does not support much of Mr. Demer's declaration and was not previously produced); and Clinical Data Editor (no testimony offered and the single sentence TriZetto cites from an article omits numerous claim elements). Because TriZetto has not demonstrated the corroboration required by law, it cannot invalidate the '164 claims based on its six alleged prior uses.

## V.   TRIZETTO'S ENTIRE OPPOSITION IS BASED UPON THE INCORRECT PREMISE THAT THE '164 PATENT CLAIMS CAN BE INVALIDATED WITHOUT CONSIDERATION OF ALL CLAIM ELEMENTS AND WITHOUT EXPERT ANALYSIS.

### A.   The "Predetermined Database" Was Construed By The Court, Proven To Be Infringed At Trial, And Cannot Be Disregarded In Connection With TriZetto's Invalidity Defense.

All of TriZetto's prior art arguments are founded upon the incorrect premise that the predetermined database element recited in every '164 patent claim can be ignored. TriZetto reads the predetermined database element out of claims 1 and 2 (D.I. 406 at 6, 8), and then concludes that "the only question about [the alleged prior] systems is whether they are software and whether they perform the general functions McKesson has ascribed to Claims 1 and 2." (*Id.* at 14.)

TriZetto's argument is contrary to law, the Court's claim construction and McKesson's position throughout this case. Neither the jury's determination of TriZetto's infringement nor the Court's claim construction "stripped even the concept of a 'predetermined database' out of the methods of Claims 1 and 2" or "completely jettisoned the rules and metarules created by the inventors." (*Id.* at 2, 18.) To the contrary, the Court construed the "predetermined database" of claims 1 and 2 to require "a set of decision-making rules that incorporate a medical code classification system and expert medical clinical judgment. . . ." (D.I. 307 at 3.) McKesson has always asserted that the predetermined database is an essential element of the claims, even if it is not required to perform the determining steps of claims 1 and 2 in all cases. (*See* D.I. 414 at 14-15.) TriZetto succinctly acknowledges this fact in its opposition to McKesson's section 112 motion:

> *5.   The Predetermined Database Is Part Of The Claimed Subject Matter …*
> McKesson … has contended that the predetermined database is an element of the
> claimed subject matter of both Claims 1 and 2. … Indeed, both Claim 1 and Claim

> 2 include the predetermined database as an element in the preamble ... although
> not used in the steps of Claims 1 or 2[.]

(D.I. 404 at 16-17 (citing interrogatory response and trial testimony).)  Thus, there can be no dispute

that the predetermined database, as construed by the Court, is an essential element of the claims.

### B.    TriZetto Cannot Prove Invalidity Without Expert Analysis.

TriZetto responds to its experts' failure to analyze essential issues and entire references by

arguing that expert testimony is not needed.  (*See* D.I. 406 at 12, 17 ("McKesson cannot overcome

TriZetto's anticipation and obviousness defenses ... by asserting an absence of expert opinion").)

TriZetto does not address, however, the Federal Circuit's commonsense requirement that expert

testimony is typically required to invalidate a patent claim.

It is a fundamental tenet of patent law that anticipation and obviousness require resolution

of underlying factual questions from the perspective of one skilled in the art.  *See Merck & Co. v.*

*Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) (Obviousness is looked at from the

viewpoint of "a person having ordinary skill in the art" and "turns on four factual determinations");

*Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1149, 1152 (Fed. Cir. 2004) ("Anticipation

is a factual determination" and "testimony concerning anticipation must be testimony from one

skilled in the art" (internal quotation omitted)).  Because courts and jurors are rarely individuals of

ordinary skill in a patent's relevant art, Federal Circuit precedent typically requires an accused

infringer to provide expert analysis of what the prior art would teach one skilled in the art rather

than simply lobbing technical references into the jury box without explanation:

> We have consistently explained what is necessary to show anticipation by a given
> reference:  Typically, testimony concerning anticipation must be testimony from
> one skilled in the art and must identify each claim element, state the witnesses'
> interpretation of the claim element, and explain in detail how each claim element
> is disclosed in the prior art reference.  The testimony is insufficient if it is merely
> conclusory. ... This is so even when the reference has been submitted into evidence
> before the jury.

*Koito*, 381 F.3d at 1152 (internal citation omitted); *see also Centricut, LLC v. The Esab Group, Inc.*,

390 F.3d 1361, 1370 (Fed. Cir. 2004) ("'typically' expert testimony will be necessary in cases

involving complex technology.").

The Federal Circuit has recognized a "rare" exception to this requirement in cases where

"the subject matter of the patent and the prior art were ... so easily understandable, a factual

determination of the level of skill in the art was unnecessary." *Chore-Time Equip., Inc. v. Cumberland Corp.*, 713 F.2d 774, 779 (Fed. Cir. 1983); *see also Aspex Eyewear, Inc. v. Concepts in Optics, Inc.*, 111 Fed. Appx. 582, 588 (Fed. Cir. 2004) (unpublished) ("This is not one of those rare cases where the invention is so simple that expert testimony is not required."). This "rare" exception is inapplicable here. The parties and their experts have asserted that the prior art and the '164 patent must be analyzed from the perspective of a computer engineer or medical doctor with experience in medical claims processing and the development of expert systems. (*See* D.I. 375, Ex. 21 at 3, n.1; D.I. 378, Ex. 3 at 3, n.1; D.I. 381, Ex. 20 at 6.) Thus, it is undisputed that the '164 patent requires a determination of the level of skill in the art, and that requisite perspective cannot be gleaned by a lay juror from the references themselves.

TriZetto acknowledges that "[t]he '164 patent *claims* an expert computer system." (D.I. 406 at 4 (emphasis added).) Thus every claim of the '164 patent opens with a "predetermined database" element. Based on the Court's construction of this element, invalidating claims 1 and 2 requires clear and convincing evidence that a prior art system included "*a set of decision-making rules that incorporate a medical code classification system and expert medical clinical judgment*" or that a computer engineer having experience in medical claims processing in 1987 would have been specifically motivated to develop such rules and add them to the prior art. Such a showing cannot be made by simply handing the jury alleged prior art without any evidence of the understanding or motivation of a skilled artisan regarding the claim elements, including the predetermined database element. (*Id.* at 14.) TriZetto's invalidity defense completely ignores this central claim element. TriZetto's argument is also counter to the experts in this case—TriZetto deemed the technology sufficiently complex to hire three experts—who have acknowledged the technical complexity and "very high level of uncertainty" inherent in developing a set of decision-making rules incorporating human expertise.[6]

---

[6] *See* D.I. 414 at 4-5 (Davis: "generating and perfecting a set of rules has been universally recognized as the most time consuming, difficult, and expensive processes involved in building an expert system.") (Kerschberg: "engineers must ferret out solutions and represent them in computer programs. ... This contributes to a very high level of uncertainty about project success.") (Musen: "knowledge acquisition clearly involves more than knowledge transfer. It is a dynamic and inventive activity. Like all processes that require creativity and ingenuity, knowledge acquisition is difficult.").

Moreover, the cases TriZetto cites in support of its "no need for expert testimony" position are inapposite and involve "rare" technologies that may not require expert explanation.

- *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557 (Fed. Cir. 1988), involved a *design* patent, the validity of which required reviewing the appearance of athletic shoes;

- *Petersen Mfg. Co. v. Cent. Purchasing, Inc.*, 740 F.2d 1541 (Fed. Cir. 1984), involved a *design* patent, the validity of which required reviewing the appearance of a pair of pliers;

- *Union Carbide Corp. v. Am. Can Corp.*, 724 F.2d 1567 (Fed. Cir. 1984), involved a utility patent covering "a stack of bags held together by ... a plastic tube ... while allowing the bags to be easily removed, one at a time," *id.* at 1568, which the court held was "easily understandable without the need for expert explanatory testimony," *id.* at 1573;

- *Chore-Time Equip., Inc. v. Cumberland Corp.*, 713 F.2d 774 (Fed. Cir. 1983), involved a utility patent where the technology—a poultry feeder where the asserted novelty was a "Shell ... sloped 'to prevent birds from resting thereon'" *id.* at 776, and a "limited space between shell and pan" to "'prevent feeding poultry from climbing bodily into the feeder,'" *id.*, —was found to be "so easily understandable, a factual determination of the level of skill in the art was unnecessary." *Id.* at 779.

The technology at issue here is far more complex than the appearance of shoes and pliers, holding plastic bags with a tube, or a bird feeder sloped to "prevent birds from resting thereon" and "climbing bodily into the feeder."

Indeed, the Federal Circuit has recognized the error in TriZetto's argument. In *Koito*, the Federal Circuit reversed a jury verdict of invalidity and denial of JMOL where the district court had relied upon *Union Carbide*, as TriZetto now urges:

> The district court erred in concluding that explanatory testimony relating the JP '082 reference to the '268 patent was unnecessary because of this Court's decision[] in *Union Carbide Corp.* .... In *Union Carbide*, this Court affirmed a district court's grant of summary judgment of invalidity of a patent covering a very simple means and method of dispensing plastic bags ... because the references and the patent were "easily understandable" and the patentee, rather than the alleged infringer, provided explanatory analysis regarding the prior art references. The JP '082 patent is not an "easily understandable" patent.

*See Koito*, 381 F.3d at 1152 n.4. Contrary to TriZetto's invitation to clear error, assessing the validity of the expert systems claimed in the '164 patent is not "exceedingly simple" and requires expert testimony as a matter of law.

## VI. CLAIMS 1 AND 2 ARE NOT ANTICIPATED AS A MATTER OF LAW.

TriZetto's experts made clear that they were not offering any opinion that the prior art anticipated claims 1 or 2, and their reports included no anticipation opinions. (*See* D.I. 377 at 7-8.) Indeed, Dr. Davis considered all of TriZetto's allegedly anticipating references and testified that

14

none were anticipatory. (*Id.* at 7.) The law is clear that absent such expert testimony, TriZetto cannot prove a reference anticipates claim 1 or 2. *See Koito*, 381 F.3d at 1152.[7]

TriZetto does not dispute this record, but seeks to rewrite it. (D.I. 406 at 15.) TriZetto now contends that it can survive summary judgment by submitting a declaration from Dr. Davis in which he admittedly reverses his earlier opinions that AMS, the Clinical Data Editor, and the Doyle patent do *not* anticipate claim 1 or 2. (D.I. 377 at 7.) TriZetto's only attempt to justify Dr. Davis's about face is its "new interpretation" argument. As explained above, McKesson's trial positions were consistent with its positions throughout this case. Thus Dr. Davis's complete change of position during summary judgment is inexcusable, improper and should be rejected by the Court.

Moreover, because Dr. Davis's declaration is premised upon TriZetto's erroneous assumption that the predetermined database element need not be present in the prior art, it fails as a matter of law to establish anticipation of claims 1 or 2. For example, as discussed previously, neither TriZetto nor Dr. Davis asserts that Doyle or the Clinical Data Editor included a predetermined database. (D.I. 406 at 15-16; D.I. 380 at 23-24, 30.) Similarly, Dr. Davis's declaration cites only to his report in support of the assertion that AMS contained a predetermined database. However, Dr. Davis's report does not state that AMS included a "predetermined database" (or even a "database") and concedes AMS would have to be "modified to have two procedure codes and a lookup table that would indicate some unbundling"—the central purpose of the predetermined database. (D.I. 375, Ex. 21 at 21.)

TriZetto's cursory argument that a comment at Dr. Hawley's deposition entitles him to offer an anticipation opinion is specious. TriZetto carefully omits Dr. Hawley's clarification at his deposition that his report did not include an anticipation opinion. (D.I. 377 at 7-8.) Moreover, given that TriZetto acknowledges Dr. Hawley's opinions were not based on any prior art, directed to any claim, or supported by any documents, he clearly has no relevant testimony to offer.

---

7    TriZetto's experts have not analyzed or offered any invalidity opinions regarding: (1) the alleged IBM 7070 system; (2) Claim Facts; (3) AutoCoder; and (4) HCPS.

## VII. TriZetto Has Not Established A Prima Facie Case Of Obviousness.

As with its anticipation defense, TriZetto tries to cover up the defects in its experts' obviousness analysis by dismissing the need for experts. As explained above, TriZetto cannot prove its case without expert analysis and its attempts to defend their reports only confirms their defects.

### A. TriZetto Asserts It Has Not And Will Not Demonstrate The Showing of Motivation Necessary To Prove Obviousness.

TriZetto's arguments regarding motivation (D.I. 406 at 26-29) never address the controlling law set forth in McKesson's brief—TriZetto does not cite a single case in support of its novel positions—and again are premised on TriZetto's disregarding the predetermined database element of claims 1 and 2. TriZetto's position that it need not show a perceived reasonable likelihood of success or address every claim element entitles McKesson to summary judgment.

An infringer cannot establish the obviousness of a claim without clear and convincing evidence that a skilled artisan would have perceived a reasonable likelihood of success in combining or modifying the prior art in the manner asserted. *See IMX, Inc. v. LendingTree LLC*, 405 F. Supp. 2d 479, 494 (D. Del. 2005). As set forth in McKesson's opening brief (D.I. 377 at 21-22), none of TriZetto's experts addressed this essential element of TriZetto's defense. In response, TriZetto has now taken the position that there is "no need to speculate about the likelihood of success." (D.I. 406 at 28.) This position is contrary to law. Because TriZetto's experts admittedly have not addressed this critical issue and TriZetto has stated it has no intention of doing so, McKesson is entitled to summary judgment against TriZetto's obviousness defense.

The excuses TriZetto offers for this failure of proof are insufficient as a matter of law. First, whether products existed with some of a claims' elements does not answer the question at hand, namely whether one skilled in the art would have had a motivation to combine and perceived a reasonable likelihood of success. Second, the notion that *the inventors* believed they could build the system *they invented* is neither surprising nor relevant. Inventors are presumed to be persons of *extraordinary* skill in the art, not the relevant hypothetical person of ordinary skill. *See, e.g., N. Am. Vaccine v. Am. Cyanamid Co.*, 7 F.3d 1571, 1580 (Fed. Cir. 1993) ("Because inventors generally have extraordinary skill, their scientific writings outside the patent are rarely even a source of knowledge about ordinary skill in the art."). TriZetto's argument is no better than using the inventors' disclosure as a blueprint for a hindsight-based obviousness case, which is legally

16

improper. *See In re Dembiczak*, 175 F.3d 994, 999 (Fed. Cir. 1999). Finally, TriZetto's assertion that the significant disincentive and uncertainty faced by skilled artisans may be ignored because "building an expert system ... is not the same as developing ... Claims 1 and 2" (D.I. 406 at 29) is refuted by TriZetto's own admission that "[t]he '164 patent *claims* an expert computer system," (D.I. 380 at 4 (emphasis added)), and the Court's construction of "predetermined database."

In addition to failing to address the required reasonable likelihood of success, TriZetto's opposition does little more than restate its experts' generalized motivational arguments that McKesson demonstrated to be deficient in its opening brief. (*See* D.I. 377 at 17-21.) TriZetto's argument that a handful of sources collectively suggest "Dr. Hertenstein's technique could be integrated into computerized claims processing systems" or "combining the clinical editing process with computing in general and expert systems in particular" cannot demonstrate obviousness. (D.I. 406 at 27.) Such a generalized suggestion to combine without consideration of a claim's elements is insufficient. *Verve, L.L.C. v. Crane Cams, Inc.*, 395 F. Supp. 2d 558, 577 (E.D. Mich. 2005) (the "Federal Circuit '[has] consistently held that a person of ordinary skill in the art must not only have had some motivation to combine the prior art teachings, but some motivation to combine the prior art teachings in the particular manner claimed'") (quoting *Teleflex v. KSR Int'l Co.*, 119 Fed. Appx. 282, 286 (Fed. Cir. 2005) (unpublished)).

Dr. Davis testified that he did not analyze whether or how such a supposed general suggestion would have motivated one of ordinary skill to combine the particular prior art references he cites or to arrive at every element of the claims—particularly the predetermined database's set of decision-making rules. (D.I. 378 at 19-20.) The Federal Circuit has made clear that a showing of motivation requires more than suggesting a "general approach that seemed to be a promising field of experimentation, where the prior art gave only general guidance as to the particular form of the claimed invention or how to achieve it." *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1165 (Fed. Cir. 2006) (citation omitted).

**B.    Drs. Davis And Hawley Did Not Conduct An Element-By-Element Comparison Of Claims 1 Or 2 To Any Combination Of Prior Art.**

TriZetto's dismissal of the need for a "formulaic claim chart" of each element is fatal to its obviousness defense. (*See* D.I. 406 at 18.) Element-by-element claim charts are "formulaic" in patent litigation because it is settled that a defendant cannot establish invalidity without

17

"performing an element-by-element comparison of each claim to each prior reference." *Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 436 (D. Del. 2004). Indeed, consistent with settled precedent, the Court ordered TriZetto to supplement its interrogatory responses with just such a chart. (D.I. 58 (TriZetto shall "specifically identify, by way of a claim chart, how each listed prior art reference anticipates or makes obvious the claims at issue.").) Despite this requirement, Drs. Davis and Hawley failed to include any element-by-element comparison of the claims to any prior art, either alone or in combination, in their reports and testified that they did not engage in such an analysis. (D.I. 377 at 9-13.)

Rather than address these fatal flaws, TriZetto tries to piece together this threshold analysis from assorted excerpts from Dr. Davis's report. TriZetto first points to the "claim chart" in his report, but this chart does not include any claim elements and does nothing but match entire claims to every reference Dr. Davis thought might be relevant to part of a given claim. (*Id.* at 10-11; *see* D.I. 406 at 18 ("Dr. Davis's claim chart alone does not examine the claims on a element-by-element basis.").) TriZetto then tries to explain how excerpts from Dr. Davis's discussion of the prior art might be matched to particular claim elements. (*Id.* at 18-19.) In addition to alternately omitting and misstating entire claim elements, the fact that TriZetto needs to engage in the exercise at all shows that Dr. Davis did not "perform[] an element-by-element *comparison* of each claim to each prior reference." *Oxford Gene*, 345 F. Supp. 2d 431 at 436; *see also Aspex*, 111 Fed. Appx. at 588 (unpublished) ("Concepts submitted . . . a chart prepared by its lawyers that compared the Madison drawings with the language of the asserted claims. This lawyer-prepared chart cannot, of course, substitute for testimony of one of skill in the art."); *cf. Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1068 (Fed. Cir. 2005) ("Unsubstantiated attorney argument regarding the meaning of technical evidence is no substitute for competent, substantiated expert testimony.").

Indeed, even TriZetto's belated "attorney argument" is deficient. With respect to AMS, TriZetto attempts to link the predetermined database element to a discussion of another element that the Court construed separately, the relationships between individual codes. (*Compare* D.I. 406 at 18 *with* D.I. 307 at 3, 4 (construing "predetermined database" and "a set of relationships ..." as distinct elements).) Similarly, TriZetto's discussion of Doyle and the Clinical Data Editor is limited to a single element of claim 1 and does not address the required predetermined database—

an element TriZetto concedes both references lack. Furthermore, TriZetto makes no effort to square its argument that Dr. Davis might have engaged in this element-by-element analysis with his testimony that he, in fact, did not assess whether any individual reference or combination disclosed every element of any '164 claim. (D.I. 377 at 10-11.)[8]

TriZetto does not even attempt to read an element-by-element analysis into Dr. Hawley's report and admits his opinions are not directed to either the claims or the prior art. (D.I. 406 at 25 ("Dr. Hawley did not opine that the patent claims were obvious based on prior art systems").) Rather, TriZetto asserts that Dr. Hawley was attempting to opine that the Appendix B Metarules were obvious because they were "'consistent with the CPT-4 classification system', meaning that in effect, many of the rules were drawn directly from CPT coding conventions." (*Id.* at 25.) This statement is directly contradicted by Dr. Hawley's opinion regarding "the tedious and painstaking effort involved in reducing coding conventions to a database and a set of logical rules." (D.I. 408, Ex. I at 26.) Moreover, TriZetto never addresses the fact that the entire basis for Dr. Hawley's opinions is his uncorroborated personal recollection of the "state of the art" in 1987. (*See* D.I. 377 at 12); *Upjohn Co. v. MOVA Pharm. Corp.*, 225 F.3d 1306, 1311 (Fed. Cir. 2000) (assertions that concepts were "widely known" "by an expert witness ... require support by documentary evidence in order to receive probative weight."). Such testimony is insufficient to demonstrate obviousness.

### C.    TriZetto Cannot Excuse Its Experts' Failure to Address Entire Claim Elements.

TriZetto tries to blame McKesson for its experts' failure to address the "means for operating on a predetermined database" in claims 1 and 2 and the "non-medical criteria" recited in claim 2. In truth, TriZetto has only itself to blame. McKesson's position concerning the "means for operating on a predetermined database" element has always been consistent with the Court's construction – namely, corresponding structure for this element comprises "data processing capabilities, memory and software capable of managing a database." (*See* D.I. 307 at 2.) Regardless of how "trivial" TriZetto contends this element is, it remains a means-plus-function element of both claims 1 and 2. As explained in McKesson's opening brief, because TriZetto's

---

[8]    This testimony is also fatal to TriZetto's attempt to divine single-reference obviousness opinions from Dr. Davis's report. (D.I. 406 at 19-20.)

experts did not engage in *any* means-plus-function analysis or even acknowledge the existence of the doctrine in their invalidity reports, they cannot opine on any structural comparison to the prior art. (D.I. 377 at 13-14.) Indeed, contrary to TriZetto's efforts to dismiss the need for such an analysis, TriZetto has conceded that Doyle and the Clinical Data Editor do not include a predetermined database to be "operat[ed] on"; Dr. Davis's report never asserts that AMS even had a database; and the new opinions in Dr. Davis's declaration still fail to mention the "means for operating on a predetermined database." (D.I. 385.)

TriZetto's experts also cannot establish the invalidity of claim 2 because their reports admittedly did not identify the "non-medical criteria" element in the prior art. As discussed in Section III.B. above, TriZetto was well aware of McKesson's position regarding double billing during fact and expert discovery, and cannot attempt to retroactively address this claim element now simply because it has been found to infringe.

### D. TriZetto Cannot Overcome The Undisputed Objective Evidence Of Non-Obviousness By Disregarding It.

TriZetto cannot legitimately dispute that secondary considerations addressed by McKesson's experts are "essential components of the obviousness determination," *see In re Rouffet*, 149 F.3d 1350, 1355 (Fed. Cir. 1998), or that its experts did not address these factors. TriZetto also does not dispute the enormous commercial success of the commercial embodiment of the '164 patent. TriZetto's argument that these facts may be disregarded is again based on the faulty premise that claims 1 and 2 do not include the predetermined database element. Moreover, TriZetto's attempt to limit claim 2 to double billing ignores the non-medical rebundling edits the jury found infringe claim 2. (*See* D.I. 415, Ex. 14 at 339:14-340:24, 354:10-355:25, 362:8-363:3, Ex. 5 at 379:1-380:1.)

### VIII. CONCLUSION.

For the foregoing reasons, McKesson respectfully requests that the Court grant summary judgment in McKesson's favor on TriZetto's anticipation and obviousness defenses.

By: _____
        Thomas J. Allingham II (#0476)
        Michael A. Barlow (#3928)
        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
        One Rodney Square
        P.O. Box 636
        Wilmington, Delaware 19899
        (302) 651-3000

        Attorneys for Plaintiff
        McKesson Information Solutions LLC

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, CA 94301
(650) 470-4500

Dated: June 22, 2006

21

## CERTIFICATE OF SERVICE

I, Michael A. Barlow, hereby certify that on June 22, 2006, I electronically filed Plaintiff McKesson Information Solutions LLC's Reply Brief in Support of Its Motion for Summary Judgment Re: Anticipation and Obviousness and Declaration of Michael A. Barlow using CM/ECF, which will send notification of such filing to those designated below, and that I served the following persons in the manner listed:

### VIA CM/ECF / HAND DELIVERY / E-MAIL

Rodger D. Smith, II, Esq.
MORRIS NICHOLS ARSHT
 & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899

Jack B. Blumenfeld, Esq.
MORRIS NICHOLS ARSHT
 & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899

/s/Michael A. Barlow
Michael A. Barlow (ID No. 3928)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000
mbarlow@skadden.com

460485-Wilmington S1A