IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 04-1258-SLR |
| | ) | |
| v. | ) | |
| | ) | **REDACTED PUBLIC VERSION** |
| THE TRIZETTO GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF MCKESSON INFORMATION SOLUTION LLC'S
REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT RE: DEFENDANT'S DEFENSES UNDER 35 U.S.C. § 112**

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff
McKesson Information Solutions LLC

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500

DATED: June 22, 2006
Redacted Version Filed June 28, 2006

# TABLE OF CONTENTS

Page

I.   SUMMARY OF ARGUMENT ..................................................................................1

II.  MCKESSON IS ENTITLED TO SUMMARY JUDGMENT ON TRIZETTO'S
     BEST MODE DEFENSE BECAUSE TRIZETTO FAILS TO RAISE A TRIABLE
     ISSUE OF FACT ...............................................................................................2

     A.   The Inventors Did Not Have A Best Set Of Code-Specific
          Relationships As Of September 30, 1988................................................2

     B.   Trizetto Has Offered No Evidence That A Best Mode Existed For
          Practicing Claims 1 And 2.....................................................................9

III. TRIZETTO'S ARGUMENTS CANNOT SAVE IT FROM SUMMARY JUDGMENT ON
     THE DEFINITENESS OF "NON-MEDICAL CRITERIA" ...........................................11

     A.   Faced With This Clear Precedent, TriZetto Continues To Deny That
          The Court's Claim Construction Took Place...........................................12

     B.   TriZetto's Challenge To Federal Circuit Law Is Unavailing. ................13

     C.   TriZetto's Faulty "Evidence" Of Indefiniteness Is Addressed In
          McKesson's Answering Brief To TriZetto's Own Summary
          Judgment Motion. ...............................................................................16

IV.  CONCLUSION....................................................................................................17

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arthocare Corp. v. Smith & Nephew, Inc.,*
   No. 01-504-SLR, 2003 WL 1856436 (D. Del. Apr. 9, 2003)......................................... 15

*Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.,*
   359 F.3d 1367 (Fed. Cir. 2004).....................................................................11, 12, 13

*Chiron Corp. v. Genentech,*
   2002 U.S. Dist. LEXIS 19150 (E.D. Cal. June 24, 2002) ............................................ 15

*Christianson v. Colt Indus. Operating Corp.,*
   822 F.2d 1544 (Fed. Cir. 1987), *vacated on other grounds*, 8486 U.S. 800 (1988)......... 9

*Eli Lilly and Co. v. Barr Labs., Inc.,*
   251 F.3d 955 (Fed. Cir. 2001).............................................................................. 3

*Energizer Holdings, Inc. v. Int'l Trade Comm'n,*
   435 F.3d 1366 (Fed. Cir. 2006)........................................................................ 12, 13

*Engel Indus., Inc. v. Lockformer Co.,*
   946 F.2d 1528 (Fed. Cir. 1991)............................................................................. 9

*Exxon Research & Eng'g. Co. v. United States,*
   265 F.3d 1371 (Fed. Cir. 2001)........................................................................... 14

*Exxon Research & Eng'g. Co. v. United States,*
   46 Fed. Cl. 278 (Fed. Cl. 2000) .......................................................................... 14

*Fonar Corp. v. G.E. Co.,*
   107 F.3d 1543 (Fed. Cir. 1997)............................................................................. 8

*High Concrete Structures, Inc. v. New Enter. Stone & Lime Co.,*
   377 F.3d 1379 (Fed. Cir. 2004)............................................................................. 3

*Intuitive Surgical, Inc. v. Computer Motion, Inc.,*
   214 F. Supp. 2d 433 (D. Del. 2002) ....................................................................... 9

*Liquid Dynamics Corp. v. Vaughan Co.,*
   2006 U.S. App. LEXIS 13484 (Fed. Cir. 2006)........................................................... 8

*Pharmastem Therapeutics, Inc. v. Viacell, Inc.,*
   2003 U.S. Dist. LEXIS 877 (D. Del. Jan. 13, 2003) .................................................... 15

*Praxair, Inc. v. ATMI, Inc.*,
   No. 03-1158-SLR, 2005 WL 3159054 (D. Del. Nov. 28, 2005) ................................... 13

*Soitec, S.A. v. Silicon Genesis Corp.*,
   2002 U.S. Dist. LEXIS 16841 (D. Mass. Aug. 23, 2002) ............................................ 15

*Teleflex, Inc. v. Ficosa North America Corp.*,
   299 F.3d 1313 (Fed. Cir. 2002) .................................................................................... 9

*U.S. Gypsum Co. v. Nat'l Gypsum Co.*,
   74 F.3d 1209 (Fed. Cir. 1996) ..................................................................................... 11

*Union Pacific Resources v. Chesapeake Energy Corp.*,
   236 F.3d 684 (Fed. Cir. 2001) .............................................................................. 14, 15

Plaintiff McKesson Information Solutions LLC ("McKesson") respectfully submits its reply brief in support of its Motion for Summary Judgment Re: Defendant's Defenses Under 35 U.S.C. § 112.

## I.    SUMMARY OF ARGUMENT.

In addition to the reasons set forth in its opening brief, McKesson is entitled to summary judgment as to TriZetto's best mode and indefiniteness defenses for the following reasons:

1.    As to its best mode defense, TriZetto has failed to produce any evidence that the inventors ever, much less on the date the patent application was filed, believed that a particular set of code-specific relationships was superior to all others for practicing the inventions of claims 1 and 2.  Indeed, the evidence relied on by TriZetto is entirely consistent with the substantial evidence presented by McKesson that the inventors contemplated and desired having a flexible database where the set of code-specific relationships were tailored to meet each customer's particular needs and policies.  In addition, TriZetto improperly relies on generalized assertions that the inventors had a best mode without performing a claim-by-claim analysis as required by the Federal Circuit.

2.    TriZetto has also failed to raise a triable issue with regard to its indefiniteness defense.  Federal Circuit law is clear:  a claim that is subject to construction is not insolubly ambiguous, nor invalid for indefiniteness.  Because the Court found all of the terms of claim 2, including "non-medical criteria," to be subject to construction, claim 2 is not indefinite.  Neither TriZetto's revisionist history nor its reliance on inapposite cases alters this conclusion.

1

II.    McKesson Is Entitled To Summary Judgment On TriZetto's Best Mode
       Defense Because TriZetto Fails To Raise A Triable Issue Of Fact.

       A.    The Inventors Did Not Have A Best Set Of Code-Specific Relationships
             As Of September 30, 1988.

Infringed claims 1 and 2 of the '164 patent include a limitation reciting "a predetermined database containing medical service codes and a set of relationships among the medical service codes defining whether selected ones of the medical service codes are valid when input with other selected ones of the medical service codes." TriZetto's best mode defense is based on the assertion that the inventors possessed and concealed a best set of code-specific relationships for practicing the claimed inventions. (D.I. 365 at 6.)

To be clear, TriZetto's defense focuses on the data contained in the predetermined database, not the database itself. There is no question that the predetermined database— i.e., "[a] set of decision-making rules that incorporate a medical code classification system and expert medical clinical judgment" (D.I. 320 at 4)—is properly and fully disclosed in the '164 patent. All of the 21 decision-making rules that the inventors had developed as of the filing date are set forth in Appendix B and discussed in the specification. (D.I. 7, Ex. A at col. 3, 11. 30-32 ("The present invention uses a set of decision-making rules coupled to a knowledge base of facts and observations to assist the medical claims processor."), id. at col. 5, ll. 67–col. 6, ll. 26 ("[A] set of rules developed for use of this program is now invoked. ... [T]he codes ... are examined first by looking up from INTERACT database 24 any references to those specific multiple codes presented in step 22 to which will be applied one or more of the rules shown in summary form in FIG. 6 and more fully detailed in Appendix B.") & id. at App. B (describing rules to be applied to multiple codes and to each code individually);                    REDACTED

2

REDACTED                    [1]   TriZetto concedes that these rules are disclosed in

Appendix B of the patent.  (D.I. 257 at 5, 8-10.)

   With regard to the set of code-specific relationships contained in the predetermined

database, TriZetto has failed to present a triable issue as to whether the inventors had a best

set of code-specific relationships for practicing the inventions of claims 1 and 2.[2]  The

critical questions presented by TriZetto's best mode defense are whether on September 30,

1988, the inventors had a best set of code-specific relationships for practicing the claimed

inventions, and, if so, whether they intentionally concealed that best set of relationships.

In futilely attempting to show that the inventors possessed a subjective best set of code-

specific relationships, TriZetto first argues that "HPR Customers' Beliefs are Irrelevant."

(D.I. 404 at 11-12.)  This argument, however, misses the point.  McKesson agrees that the

mindset of the inventors, not the customers, is to be examined in the first prong of the best

mode test as articulated by the Federal Circuit.[3]  McKesson has never argued otherwise.

The inventors simply did not have a best set of code-specific relationships for use in the

'164 patent or the CodeReview product because they envisioned and provided sets of code-

specific relationships that were tailored to meet the particular needs of their customers.

---

[1]      Citations to "Ex. __" are citations to the "Declaration of Michael A. Barlow in Support of
Plaintiff McKesson Information Solutions LLC's Reply Brief In Support Of Its Motion For
Summary Judgment Re: Defendant's Defenses Under 35 U.S.C. § 112," filed concurrently with
this brief.

[2]      TriZetto falsely states that McKesson does not dispute that the inventors concealed their
best mode.  To the contrary, McKesson does dispute TriZetto's assertion not only because the
inventors did not have an undisclosed best mode, but also because TriZetto will not be able to
present clear and convincing evidence of intentional concealment.  (D.I. 412 at 18-19.)  McKesson
did not base its summary judgment motion on the second prong of the best mode inquiry because
TriZetto's clear failure to prove the first prong is dispositive.

[3]      "Invalidation based on a best mode violation requires that the inventor [1] knew of and [2]
intentionally concealed a better mode than was disclosed."  *High Concrete Structures, Inc. v. New
Enter. Stone & Lime Co.*, 377 F.3d 1379, 1383 (Fed. Cir. 2004).  The first prong of the best mode
analysis is purely subjective, focusing on the inventor's state of mind at the time the patent
application was filed.  *See Eli Lilly and Co. v. Barr Labs., Inc.*, 251 F.3d 955, 963 (Fed. Cir. 2001).

As the documentary and testimonial evidence presented in McKesson's opening brief demonstrates, the inventors' preference was to provide each of their customers with a set of code-specific relationships that met the individual customer's requirements and was consistent with its policies and benefit plans. (D.I. 371 at 8-10.) Contrary to TriZetto's assertion, the inventors did not want to foist a single set of code-specific relationships on all of their customers because they recognized that code-specific relationships acceptable to some customers were objectionable to other customers. *Id.* Indeed, even Dr. Hertenstein, whose code-specific relationships TriZetto claims were considered the best,                              REDACTED

REDACTED

TriZetto complains that McKesson's evidence is irrelevant because it does not reflect the inventors' state of mind when the application for the '164 patent was filed. TriZetto's complaint has no merit.  First, TriZetto fails to show that any of the documentary or testimonial evidence offered by McKesson does not reflect the inventors' beliefs as of the time of filing.  Moreover, the evidence does establish that the inventors' views regarding the importance of customizing the database's content to meet the customers' particular needs reflected the inventors beliefs at the time of filing.  Before, at the time of, and after filing, the inventors envisioned customizable code-specific relationships that would be constantly developed and changed.       REDACTED

REDACTED

REDACTED                              '164 pat. (D.I. 7,

Ex. A) at col. 3, ll. 35-37 ("The process is an ongoing process which can be updated as new methods of inappropriate coding are discovered.");       REDACTED

4

REDACTED

REDACTED        The patent specification, which certainly evidences the inventors' state of mind at the time of filing, expressly contemplates the patented invention accommodating different types of data, such as multiple medical coding systems, and facilitating changes to such data. ('164 pat. (D.I. 7, Ex. A) at col. 3, ll. 38-42; col. 10, ll. 3-7 & 55-60.)

This flexible design of the knowledge base of specific codes and their relationships made business sense because a flexible knowledge base would appeal to more customers. With a flexible knowledge base, the customers could implement their specific payment policies within the CodeReview product. That HPR offered and the customers took advantage of this flexibility is evidence that the inventors never had a best set of code-specific relationships. If there were a best set, the patent application would not have stressed the flexible nature of the knowledge base, and HPR simply would have sold the same set of code-specific relationships to all customers.

TriZetto's assertion that "HPR's CodeReview product had a standard predetermined database that the inventors preferred" (D.I. 404 at 12) is not supported by the evidence on which TriZetto relies. First, HPR's decision not to customize the CodeReview database for prospective customers does not show that there was a standard set of code-specific relationships that the inventors believed to be the best. Rather, the decision merely reflects the logical business decision not to spend the time and resources customizing the content of the database for a company that may decide not to purchase CodeReview.                REDACTED

5

REDACTED

The "Customization of CodeReview" manual cited by TriZetto also fails to support TriZetto's best mode allegations. Instead, it confirms that CodeReview's knowledge base was designed to be customizable in order to meet each customer's particular needs.

REDACTED

REDACTED

REDACTED                        Thus, TriZetto's own evidence demonstrates that the inventors did not prefer that their actual customers use a "standard" set of code-specific relationships, but expressly contemplated and intended that the code-specific relationships be tailored to the specific policies and needs of each customer. Indeed, the importance placed on the customization of the relationships evidences that the inventors considered the "standard" set of relationships to be inferior to the customized set of relationships provided to the customers.

TriZetto's assertion that the inventors believed the code-specific relationships obtained from discussions with Dr. Hertenstein were the best at the time of filing is also inconsistent with the evidence.                        REDACTED

REDACTED

6

REDACTED


REDACTED


TriZetto's reliance on the January 12, 1988 letter from Dr. Goldberg to Dr. Bailit also does not establish the existence of an undisclosed best mode.[4]  As shown in McKesson's answering brief to TriZetto's summary judgment motion on best mode, this letter is consistent with the substantial evidence presented by McKesson that the inventors did not have a set of code-specific relationships that they believed was the best.  (D.I. 412 at 9-13.)  In particular, although TriZetto quoted several snippets from this letter, TriZetto did not mention the aspect of the letter Dr. Goldberg considered most important:  REDACTED


REDACTED


REDACTED


---

[4]    Applying TriZetto's logic in its answering brief, this letter is "irrelevant" because it was not dated September 30, 1988 and is therefore "obviously recounting events that took place at an irrelevant time," in this case, before the patent application was filed.  (D.I. 404 at 14-15.)

# REDACTED

REDACTED                          [5]

That the inventors did not have a best set of code-specific relationships because the set of relationships varied based on their customers' policies and needs is consistent with Federal Circuit precedent. As discussed more fully in McKesson's Answering Brief in Opposition to Defendant's Motion for Summary Judgment of Best Mode (D.I. 412 at 15-18), the Federal Circuit has found no best mode violation where, as here, preferred embodiments varied depending on the nature of the customers' policies and other business needs. *See Liquid Dynamics Corp. v. Vaughan Co.*, 2006 U.S. App. LEXIS 13484, 31-33 (Fed. Cir. 2006) (D.I. 413 at Ex. 4) ("[T]he '414 patent does not disclose a particular size of reducer, but Vaughan failed to demonstrate by clear and convincing evidence that it must. Ideal flow rates and flow velocities depend on the nature of the tank to be mixed."); *Fonar Corp. v. G.E. Co.*, 107 F.3d 1543, 1550 (Fed. Cir. 1997) (finding no best mode violation for failure to disclose a gradient multiplier board ("GMB") where one of the inventors had testified "that each MRI machine has its own set of requirements for the functionality of the GMB, which is why the '966 patent described in general terms how to build the invention").

TriZetto attempts to minimize the fact that there were multiple sets of code-specific relationships by asserting that "[a]n inventor cannot avoid the best mode requirement by creating multiple versions of the invention and not disclosing any of them." (D.I. 404 at

---

[5]      REDACTED

12.)  This argument, however, assumes that the inventor actually possessed a best mode. Where, as here, an inventor does not regard any of a number of embodiments as the best, the inventor has no subjective best mode that need be disclosed.  As the Court noted in *Intuitive Surgical, Inc. v. Computer Motion, Inc.*, 214 F. Supp. 2d 433, 442-43 (D. Del. 2002), the inquiry for the first prong "is wholly subjective and addresses whether the inventor must disclose any facts in addition to those sufficient for enablement."

Because TriZetto has failed to offer sufficient evidence that the inventors believed there was a best set of code-specific relationships, McKesson is entitled to summary judgment on TriZetto's best mode defense.

**B.    Trizetto Has Offered No Evidence That A Best Mode Existed For Practicing Claims 1 And 2.**

TriZetto also fails to avoid summary judgment because it offers no evidence that the inventors possessed, let alone concealed, a best mode specifically directed at practicing the inventions of claims 1 and 2.  "Each claim *must be considered individually* for compliance with the best mode requirement." *Engel Indus., Inc. v. Lockformer Co.*, 946 F.2d 1528, 1531 (Fed. Cir. 1991) (emphasis added).  Considering each claim individually is essential because "the 'best mode' is that of practicing the *claimed* invention." *Christianson v. Colt Indus. Operating Corp.*, 822 F.2d 1544, 1563 (Fed. Cir. 1987), *vacated on other grounds*, 8486 U.S. 800 (1988) (emphasis in original); *see also Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1331 (Fed. Cir. 2002) (quoting same); *Engel*, 946 F.2d at 1531 ("The best mode inquiry is directed to what the applicant regards as the invention, which in turn is measured by the claims.").

Instead of trying to show that there was an undisclosed best mode for practicing the specific inventions of claims 1 and 2, TriZetto considers a single claim element—the set of

9

relationships among medical service codes—in isolation and without regard for how that element bears on the practice of each claimed invention as a whole. TriZetto's approach is fatally flawed. Even if TriZetto could prove that the inventors had some general preference for a particular set of code-specific relationships, TriZetto cannot demonstrate that the inventors believed that set of relationships to be part of the best mode for practicing the inventions recited in claims 1 and 2.

For example, TriZetto does not and cannot reconcile its assertion that the inventors believed that there was a best set of code-specific relationships for practicing claim 1 with the '164 patent's disclosure that the preferred embodiment for practicing claim 1 does not directly check the predetermined database. The '164 patent makes clear that the preferred embodiment for practicing claim 1 is to check an "ALLCODE database"—*i.e.*, a separate database containing every medical service code—to determine whether a medical service code is not present in the predetermined database. (D.I. 7, Ex. A at 5:11-15 ("If the entity which is requesting payment has provided a code entry or entries for the treatment given, then in step 9 it is determined whether the code entry is valid or invalid by reference to the ALLCODE database 11.") & *id.* at App. C ("Allcode is the file which contains every code …").) Because the preferred embodiment for practicing claim 1 does not depend on the set of code-specific relationships, the inventors could not possibly have believed that one set of relationships was better than any other set of relationships for practicing that claim.

TriZetto has made no attempt to show that the inventors believed that any particular set of code-specific relationships was the best for practicing any of the steps recited in claims 1 and 2. In fact, despite deposing the four inventors for a total of seven days,

10

TriZetto did not examine any of them on this issue. Moreover, TriZetto actually argues against a finding that the inventors considered any particular set of relationships to be part of the best mode for practicing claims 1 and 2 because TriZetto asserts that such relationships are "not used in the steps of Claims 1 or 2." (D.I. 404 at 17.)

In asserting that it may rely on a generalized showing of a best mode violation without actually analyzing the claims, TriZetto relies on *U.S. Gypsum Co. v. Nat'l Gypsum Co.*, 74 F.3d 1209 (Fed. Cir. 1996). That case, however, is inapposite because the claims at issue here are directed to different inventions. In *U.S. Gypsum*, the Federal Circuit noted, in *dicta*, that the lower court did not err in invalidating all the claims of the asserted patent for the same best mode violation because all the claims were directed to the same lightweight joint compound. *Id.* at 1216 n.9. In contrast, claims 1 and 2 of the '164 patent are clearly directed to different inventions. Indeed, TriZetto does not dispute the claims relate to separate inventions. (D.I. 380 at 10-12.) That certain limitations recited in both claims are the same does not mean that the claims cover a single invention. Nor does it permit TriZetto to avoid the claim-specific showing that must be made to establish its best mode defense.

Because TriZetto has failed to offer evidence sufficient to raise a triable issue as to whether the inventors possessed and concealed a best mode for practicing the inventions of claims 1 and 2, McKesson is entitled to summary judgment.

### III.    TRIZETTO'S ARGUMENTS CANNOT SAVE IT FROM SUMMARY JUDGMENT ON THE DEFINITENESS OF "NON-MEDICAL CRITERIA."

The law in the Federal Circuit is clear: "*if a claim is subject to construction, i.e., it is not insolubly ambiguous, it is not invalid for indefiniteness.*" *Bancorp Servs., L.L.C. v.*

*Hartford Life Ins. Co.*, 359 F.3d 1367, 1371 (Fed. Cir. 2004) (citations and internal quotations omitted) (emphasis added). In other words:

> [I]f the meaning of the claim is discernible, "even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds."

*Id.* One need only look to the most recent pronouncement from the Federal Circuit on this point to see the rule again stated in the most unambiguous of terms: *"A claim that is amenable to construction is not invalid on the grounds of indefiniteness."* *Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1371 (Fed. Cir. 2006) (emphasis added).

### A. Faced With This Clear Precedent, TriZetto Continues To Deny That The Court's Claim Construction Took Place.

As it does on its own summary judgment motion, TriZetto tries to avoid Federal Circuit law by denying claim construction took place here. (D.I. 404 at 4 & 18.) As set forth in McKesson's answering brief to TriZetto's motion, TriZetto's attempt to deny what has already occurred in this action is contrary to (i) both parties' claim construction positions, (ii) this Court's own claim construction order, and (iii) Federal Circuit authority. (D.I. 407 at 5-14.) TriZetto concedes that it already raised the definiteness of "non-medical criteria" during claim construction. (D.I. 374 at 5.) The Court considered TriZetto's argument and McKesson's position that the term be given its ordinary meaning and concluded that "non-medical criteria" should be accorded its ordinary meaning. (D.I. 307 at 18, 19 & n.88, 20 & n.92; *see also* D.I. 407 at 7-9.) The Court's jury instruction, to which TriZetto did not object, confirmed this conclusion: "First, determine the scope of the asserted claim by reading the claim language, limitation by limitation, as those

limitations have been construed by the court *or, if they have not been specifically construed, according to their ordinary meaning*." (D.I. 354 at 21 (emphasis added).)[6]

### B.    TriZetto's Challenge To Federal Circuit Law Is Unavailing.

Unable to reasonably deny this Court's prior construction, TriZetto turns to challenging the law itself. The Federal Circuit and this Court have made clear that if a claim's limitations are subject to construction, including constructions which adopt the terms' ordinary meaning, the claim is not indefinite as a matter of law. *See Energizer Holdings*, 435 F.3d at 1371; *Bancorp*, 359 F.3d at 1372; *Praxair, Inc. v. ATMI, Inc.*, No. 03-1158-SLR, 2005 WL 3159054, at *2 (D. Del. Nov. 28, 2005) (D.I. 378, Ex. 12) ("Because the court was able to construe the limitation ..., the claims are definite, as a matter of law."); *Arthocare Corp. v. Smith & Nephew, Inc.*, No. 01-504-SLR, 2003 WL 1856436, at *5 (D. Del. Apr. 9, 2003) (D.I. 407, Ex. 6) ("The court disagrees [with defendant's indefiniteness argument]. The court has found that the claim limitations at issue are to be given their ordinary meaning."). Although TriZetto invites the Court to ignore this clear Federal Circuit precedent and the Court's own prior rulings, none of the cases it cites supports such a departure.

As an initial matter, TriZetto's attempt to distinguish the Court's decisions in *Praxair* and *Arthocare* is revealing because TriZetto does not seem to dispute that if the claim construction did take place, it would be binding. (D.I. 404 at 19-20.) However, despite TriZetto's efforts to rewrite history, the only conclusion consistent with the record

---

[6]    TriZetto contends that McKesson's reliance on TriZetto's conduct regarding the jury instructions is inapplicable because the jury trial concerned infringement and not validity. *See* D.I. 404 at 21. TriZetto misses the point. McKesson is *not* saying that TriZetto, by failing to object to the instruction, has abandoned its indefiniteness defense. What McKesson is saying is that TriZetto, by failing to object to the instruction, *is conceding that the Court rendered a construction of the term*. That is dispositive under Federal Circuit law, regardless of the litigation positions of McKesson or TriZetto. *See Energizer Holdings*, 435 F.3d at 1371; *Bancorp* 359 F.3d at 1372.

is that the Court did apply the ordinary meaning to the term "non-medical criteria." (*See*

D.I. 371 at 12-15; D.I. 407 at 5-9.)

The two Federal Circuit decisions cited by TriZetto[7] do not support reconsideration

of the Court's conclusion that claim 2's terms are amenable to construction. Indeed, *Exxon*

*Research* fully supports a finding that claim 2 is not indefinite based on the Court's prior

claim construction:

> We have not insisted that claims be plain on their face in order to avoid
> condemnation for indefiniteness; rather, ***what we have asked is that the***
> ***claims be amenable to construction, however difficult that task may be***. If
> a claim is insolubly ambiguous, and no narrowing construction can properly
> be adopted, we have held the claim indefinite. ***If the meaning of the claim***
> ***is discernible, even though the task may be formidable and the conclusion***
> ***may be one over which reasonable persons will disagree, we have held the***
> ***claim sufficiently clear to avoid invalidity on indefiniteness grounds***. *See,*
> *e.g., Modine Mfg. Co. v. U.S. Int'l Trade Comm'n*, 75 F.3d 1545, 1557, 37
> USPQ2d 1609, 1617 (Fed.Cir.1996) (rejecting indefiniteness argument after
> construing claims; stating that "when claims are amenable to more than one
> construction, they should when reasonably possible be interpreted to
> preserve their validity"); *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73
> F.3d 1573, 1581, 37 USPQ2d 1365, 1372 (Fed.Cir.1996) (court chose the
> narrower of two equally plausible claim constructions in order to avoid
> invalidating the claim). By finding claims indefinite ***only if reasonable***
> ***efforts at claim construction prove futile***, we accord respect to the statutory
> presumption of patent validity, *see N. Am. Vaccine, Inc. v. Am. Cyanamid*
> *Co.*, 7 F.3d 1571, 1579, 28 USPQ2d 1333, 1339 (Fed.Cir.1993), and we
> protect the inventive contribution of patentees, even when the drafting of
> their patents has been less than ideal.

*Exxon Research*, 265 F.3d at 1375 (emphasis added).[8]  *Union Pacific* is inapposite because

the Federal Circuit did not address, and was not even asked to consider, the relevance of a

court's claim construction to the issue of indefiniteness. *See Union Pacific*, 236 F.3d at

---

[7]      *Exxon Research & Eng'g. Co. v. United States*, 265 F.3d 1371 (Fed. Cir. 2001); *Union Pacific Resources v. Chesapeake Energy Corp.*, 236 F.3d 684 (Fed. Cir. 2001).

[8]      Contrary to TriZetto's assertion, the construction of the challenged claim terms in *Exxon Research* was considered at the same time as the defendant's indefiniteness defense. *Id.* at 1377-84; *see also Exxon Research & Eng'g. Co. v. United States*, 46 Fed. Cl. 278, 287 (Fed. Cl. 2000).

692. In addition, the Federal Circuit did not "accept[]" the trial court's construction of the challenged claim term as TriZetto contends. *See id.* at 689 & 692.

The three district court cases cited by TriZetto[9] also are inapposite and do not overcome the overwhelming authority from the Federal Circuit and this Court that a claim that has been found to be subject to construction is not invalid for indefiniteness. *Pharmastem* is not relevant because the court in that case simply declined to rule on the defendants' indefiniteness defense during claim construction, noting that the proper procedure for seeking such a ruling is to file a dispositive motion in accordance with the court's scheduling order. *See Pharmastem*, 2003 U.S. Dist. LEXIS 877, at *2 n.1. *Soitec* and *Chiron* are distinguishable because the defendants there did not pursue their indefiniteness arguments during claim construction, instead proposing constructions that the district courts rejected. *See Soitec*, 2002 U.S. Dist. LEXIS 16841, at *23; *Chiron*, 2002 U.S. Dist. LEXIS 19150, at *5. In this case, TriZetto's *only* argument with respect to "non-medical criteria" has been that the term is indefinite. It was fully briefed by TriZetto (D.I. 158 at 27-29) and argued during the *Markman* hearing (D.I. 278 at 44-45). Indeed, TriZetto concedes that it is just restating the indefiniteness argument it raised during claim construction. (D.I. 374 at 5 ("TriZetto contended [during claim construction] what it again asserts by way of this motion: the phrase 'non-medical criteria' is so indefinite that it cannot be given any reasonable construction.").) Despite TriZetto's indefiniteness argument, the Court concluded during claim construction and confirmed at the infringement trial that "non-medical criteria" is to be given its ordinary meaning. Under

---

[9]      *Pharmastem Therapeutics, Inc. v. Viacell, Inc.*, 2003 U.S. Dist. LEXIS 877 (D. Del. Jan. 13, 2003); *Soitec, S.A. v. Silicon Genesis Corp.*, 2002 U.S. Dist. LEXIS 16841 (D. Mass. Aug. 23, 2002); *Chiron Corp. v. Genentech*, 2002 U.S. Dist. LEXIS 19150 (E.D. Cal. June 24, 2002).

the circumstances, it is clear that the term is subject to construction, and therefore not indefinite.

### C.    TriZetto's Faulty "Evidence" Of Indefiniteness Is Addressed In McKesson's Answering Brief To TriZetto's Own Summary Judgment Motion.

Just as it ignores that the Court has already construed claim 2, TriZetto also disregards the record that was before the Court in arguing that a definition of "non-medical criteria" has never been articulated. In its answering brief to TriZetto's summary judgment motion on indefiniteness, McKesson makes clear that this is simply not the case. (D.I. 407 at 9-12 & 16-18.)    During claim construction, McKesson provided the Court with testimony from Dr. Musen making clear that "non-medical criteria" carries an ordinary meaning and is therefore amenable to construction:

> I provided a definition which I think is reasonable and I think is -- would be assumed by . . . most people that a . . . criterion which is medical deals with the procedure applied to the patient as a -- and is a consequence of the medical condition of the patient as opposed to a non-medical criterion which is a function of the mechanics of setting up the procedure of billing.

(D.I. 255 at 27-28 (quoting Musen Dep. at 54).) This testimony articulated to the Court is entirely consistent with the patent's specification, the positions that McKesson and its expert have taken in this case, and the positions that McKesson's predecessor HPR took in its prior litigation with GMIS. (D.I. 407 at 9-12 & 16-18.)    Because TriZetto cannot present clear and convincing evidence that the claim term "non-medical criteria" is insolubly ambiguous and not subject to construction, its indefiniteness defense fails as a matter of law.

IV.    CONCLUSION.

For the foregoing reasons, McKesson respectfully requests that the Court grant its

motion for summary judgment as to TriZetto's best mode and indefiniteness defenses.

By: _____

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899
(302) 651-3000

Attorneys for Plaintiff
McKesson Information Solutions LLC

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, CA  94301
(650) 470-4500

Dated:  June 22, 2006