# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MCKESSON INFORMATION SOLUTIONS
LLC,

               Plaintiff,

        v.

THE TRIZETTO GROUP, INC.,

               Defendant.

Civil Action No. 04-1258-SLR

**REDACTED VERSION**

---

## THE TRIZETTO GROUP, INC.'S REPLY BRIEF IN SUPPORT OF
## ITS MOTION FOR SUMMARY JUDGMENT OF INVALIDITY FOR FAILURE
## TO DISCLOSE THE BEST MODE OF PRACTICING THE CLAIMED INVENTION

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
Wilmington, DE 19899
(302) 658-9200

Attorneys for Defendant The TriZetto Group, Inc.

OF COUNSEL:

GIBSON, DUNN & CRUTCHER LLP
Jeffrey T. Thomas
David A. Segal
Michael A. Sitzman
Jamboree Center, 4 Park Plaza
Irvine, CA 92614

Original Filing Date: June 22, 2006

Redacted Filing Date: June 29, 2006

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................1

ARGUMENT....................................................................................................................4

    A.    McKesson Has Not Rebutted TriZetto's Clear And Convincing
           Showing That, At The Time The Inventors Filed The '164 Patent
           Application, They Knew Of A Best Mode Of Practicing The Claimed
           Invention ........................................................................................................4

          1.    The Existence Of Multiple Ways Of Practicing The Claimed
               Invention Does Not Excuse The Inventors From Disclosing
               The Best Mode.......................................................................................4

          2.    Compliance With The Best Mode Requirement Is Judged At
               The Time Of Filing The Patent Application.................................................7

          3.    The Cases Cited By McKesson Are Inapplicable Here...............................9

    B.    Because Specific Intent Is Not Required To Prove Concealment,
           McKesson Has Not Rebutted TriZetto's Evidence That The Inventors
           Concealed The Best Mode Of Practicing Their Claimed Invention......................10

    C.    McKesson Has Argued Throughout The Litigation That The
           Predetermined Database Is Part Of The Claimed Subject Matter Of
           Claims 1 And 2 ................................................................................................14

    D.    The Appendix B Metarules Do Not Disclose The Inventors' Best
           Mode ..............................................................................................................15

CONCLUSION.................................................................................................................17

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bayer AG v. Schein Pharmaceuticals, Inc.,*
301 F.3d 1306 (Fed. Cir. 2002)........................................................................... 5

*Brooktree Corp. v. Advanced Micro Devices, Inc.,*
977 F.2d 1555 (Fed. Cir. 1992)........................................... 2, 11, 13, 14

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.,*
381 F.3d 1371 (Fed. Cir. 2004)........................................................... 11, 13

*Chemcast Corp. v. Arco, Indus.,*
913 F.2d 923 (Fed. Cir. 1990).................................................. 2, 5, 7, 10

*Eaton Corp. v. Rockwell Int'l Corp.,*
323 F.3d 1332 (Fed. Cir. 2003)................................................................. 16

*Englehard Industries, Inc. v. Sel-Rex Corp.,*
253 F. Supp. 832 (D.N.J. 1966)............................................................ 4, 5

*Fonar Corp. v. G.E. Co.,*
107 F.3d 1543 (Fed. Cir. 1997).................................................................. 9

*Graco, Inc. v. Binks Mfg. Co.,*
60 F.3d 785 (Fed. Cir. 1995)........................................................... 2, 11

*High Concrete Structures, Inc. v. New Enter. Stone & Lime Co.,*
377 F.3d 1379 (Fed. Cir. 2004)..................................... 11, 12, 13

*Hybritech, Inc. v. Monoclonal Antibodies, Inc.,*
802 F.2d 1367 (Fed. Cir. 1986)................................................................. 1

*Liquid Dynamics Corp. v. Vaughan Co.,*
2006 U.S. App. LEXIS 13484 (Fed. Cir. 2006) ...................................... 9, 10

*Old Town Canoe Co. v. Confluence Holdings Corp.,*
Nos. 05-1123, -1148, 2006 WL 1228887 (Fed. Cir. May 9, 2006) ...................... 11

*Pannu v. Iolab Corp.,*
155 F.3d 1344 (Fed. Cir. 1998)................................................................. 7

*SDS Inc. v. Ken Specialities,*
122 F. Supp. 2d 533 (D.N.J. 2000) .......................................................... 5

*Spectra-Physics v. Coherent Inc.,*
827 F.2d 1524 (Fed. Cir. 1987) ....................................... 2, 11, 17

*Teleflex, Inc. v. Ficosa North America Corp.,*
299 F.3d 1313 (Fed. Cir. 2002)................................................................. 4

*U.S. Gypsum Co. v. National Gypsum Co.,*
74 F.3d 1209 (Fed. Cir. 1996)..................................... 2, 11, 12, 14

**Statutes**

35 U.S.C. § 112, ¶ 1 ....................................................................... 1, 3

**Other Authorities**

2 DONALD S. CHISUM, CHISUM ON PATENTS 7.05[2] ...................................... 8

ii

## INTRODUCTION

McKesson's strategy in its Answering Brief is plain:  By deluging the Court with page after page of irrelevant facts and incorrect statements of the law, McKesson seeks to cloud the issues presented by TriZetto's motion and create the impression of a triable issue of fact.  In reality, the issues are not nearly as complicated as McKesson makes them out to be.  TriZetto's motion is based on the following two principles:

    (1)    At the time the inventors of the '164 patent filed their patent application, they knew of a mode of practicing their claimed invention that they considered to be better than any other; and

    (2)    The inventors concealed that better mode from the PTO and the public at large.

TriZetto demonstrated in its Opening Brief that applying these simple principles to the undisputed facts of this case leads to the irrefutable conclusion that Claims 1 and 2 of the '164 patent are invalid as a matter of law under 35 U.S.C. § 112, ¶ 1, because the inventors did not disclose the details of their self-described "vastly superior" predetermined database.  McKesson's Answering Brief offers no response.

In particular, based on the undisputed evidence of the *inventors' subjective state of mind at the time they filed the '164 patent application,* TriZetto demonstrated that the inventors' preferred embodiment of the claimed invention included their predetermined database – including the medical service codes and detailed relationships among the codes contained therein – that was designed to replicate the manual system for editing medical claims that Dr. Robert Hertenstein had developed while working at Caterpillar Corporation in the 1980s.  In its Answering Brief, McKesson argues that the inventors' unique database was not the best because the rules in that database could be changed *based on the needs and policies of their customers.* *See generally* D.I. 412 (McKesson's Opp.), at 8-14.  McKesson's argument misses the mark.  A patent is invalid if the inventor had a mode that was *better than what was disclosed.*  *See Hybritech, Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1384-85 (Fed. Cir. 1986) ("in order to find that the best mode requirement is not satisfied, it must be shown that the applicant

1

knew of and concealed a better mode than he disclosed"). The inventors here believed that they had a database that was better than anything disclosed in the '164 patent, and the fact that some customers requested modifications to the database is immaterial.

Moreover, the first prong of the best mode test is "wholly subjective," focusing on *the inventor's* state of mind *at the time the patent application is filed. Chemcast Corp. v. Arco, Indus.*, 913 F.2d 923, 928 (Fed. Cir. 1990). Thus, McKesson's focus on HPR's *customers'* beliefs (*see* D.I. 412, at 8-14) – as opposed to the *inventors'* beliefs – is misdirected. Add to that the fact that McKesson's argument is based entirely on customer beliefs and impressions *after the filing of the original '164 patent application* and it becomes clear that McKesson falls far short of raising a triable issue of fact as to TriZetto's best mode defense.

McKesson also misconstrues the law on the second prong of the best mode analysis – whether the inventors concealed the best mode of practicing their claimed invention. McKesson asserts that TriZetto is required to show that the inventors had a specific intent to conceal their best mode. D.I. 412 (McKesson's Opp.), at 17-18. The Federal Circuit has expressly held, however, that "specific intent to deceive is not a required element of a best mode defense." *Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 789-90 (Fed. Cir. 1995) (citing *Spectra-Physics v. Coherent Inc.*, 827 F.2d 1524, 1535 (Fed. Cir. 1987) (holding that evidence of concealment, "whether accidental or intentional," is considered)). The cases cited by McKesson on this point are not persuasive. For example, the Federal Circuit has held that the statement from *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555 (Fed. Cir. 1992), on which McKesson relies, "was dictum since the [*Brooktree*] court concluded that there was substantial evidence that the best mode was disclosed." *U.S. Gypsum Co. v. National Gypsum Co.*, 74 F.3d 1209, 1215 n.7 (Fed. Cir. 1996). As a result, McKesson's contentions regarding whether the inventors *intentionally* concealed their predetermined database are simply irrelevant.

In a final effort to avoid the best mode violation, McKesson advances two arguments that are directly contrary to the positions it is taking on other validity issues in this case. McKesson first argues that TriZetto cannot prove its best mode defense because there is no evidence that

2

"the inventors believed that there was some particular set of code-specific relationships that was part of the best mode for practicing the specific methods recited in claims 1 and 2." D.I. 412 (McKesson's Opp.), at 6. In making this argument, McKesson ignores its own assertion that the inventors' predetermined database is part of the claimed subject matter of *all* the patent claims. Indeed, in its opposition to TriZetto's motion for summary judgment on anticipation and obviousness, the predetermined database is the only element of Claims 1 and 2 upon which McKesson relies to distinguish those claims from the prior art. D.I. 406 (McKesson's Opp. to Anticipation and Obvious Motion), at 24-29.

Second, contradicting its position that they did not have a best mode, McKesson argues that the inventors did disclose the best mode when they set forth the twenty-one so-called metarules in Appendix B of the patent specification. D.I. 412 (McKesson's Opp.), at 18-20. McKesson even asserts that those twenty-one metarules and the sequence of their application were "the novel aspects of the invention." *Id.* at 19. This about-face by McKesson is nothing short of remarkable. As the Court is aware, for purposes of claim construction and infringement, McKesson argued that nothing from the specification – let alone the twenty-one Appendix B rules and the order in which they were "fired" – is relevant. *See, e.g.,* D.I. 170 (McKesson's Opening Claim Construction Brief). In fact, McKesson did not even mention Appendix B or any of the metarules during the infringement trial. McKesson recognized that if the Appendix B metarules were relevant, TriZetto would have prevailed because there is no evidence that the accused systems incorporate the metarules or their equivalents. Having prevailed on infringement with one theory, McKesson should not be permitted to save its patent from an invalidity judgment by belatedly invoking the rules in Appendix B.

Despite McKesson's attempt to divert the Court's attention and manufacture disputed issues of fact, the evidence is clear and convincing: At the time the inventors filed the '164 patent application, they knew of, but concealed, a best mode of practicing their claimed invention. Accordingly, Claims 1 and 2 are invalid under 35 U.S.C. § 112, ¶ 1.

3

## ARGUMENT

A. **McKesson Has Not Rebutted TriZetto's Clear And Convincing Showing That, At The Time The Inventors Filed The '164 Patent Application, They Knew Of A Best Mode Of Practicing The Claimed Invention**

1. **The Existence Of Multiple Ways Of Practicing The Claimed Invention Does Not Excuse The Inventors From Disclosing The Best Mode**

In response to TriZetto's showing that the inventors believed their specific database – including the detailed codes and relationships among the codes contained therein – was the best mode of practicing their claimed invention, McKesson states that the database could be modified based on the needs and policies of their customers. D.I. 412 (McKesson's Opp.), at 8-14. In advancing this position, McKesson relies on testimony from the inventors that some of HPR's *customers* at times requested that certain of the rules in the standard CodeReview database be turned off.

REDACTED

Even if accepted at face value, McKesson's statements about the adaptability of the inventors' database does not impact TriZetto's evidence of the inventors' best mode violation.

First, the fact that the inventors' database was modified at customers' request in no way addresses the crucial inquiry of whether the inventors had a database that they believed was better than what they disclosed in the patent specification. An inventor may not avoid his or her best mode obligations by creating multiple versions of the mode, or various ways of practicing the invention, and not disclosing *any* of them – or disclosing only the inferior ones. Instead, disclosure is required if an inventor "both knew of and concealed a better mode of carrying out the claimed invention than that set forth in the specification." *Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1330 (Fed. Cir. 2002). In *Englehard Industries, Inc. v. Sel-Rex Corp.*, 253 F. Supp. 832 (D.N.J. 1966), the inventors obtained a patent for a method of producing ductile electro-chemical pure gold plate. The patent claims covered a method that included a

4

broad range of temperature and current density.  The specification disclosed three examples of ranges that produced operable results, but that were of relatively poor quality.  *Id.* at 835.  Prior to filing the patent application, the inventors had obtained a much better product using a higher-temperature and lower current density than was disclosed in the patent.  *Id.*  The court did not excuse the inventors from complying with Section 112 merely because there were multiple ways of practicing the claimed invention.  Instead, the court invalidated the patent for failure to disclose the better temperature and current density.  *Id.* at 837 ("Since [the patent owner] knew of a better method than was disclosed in the Examples to practice the invention, at the time the application was filed, it follows that the patent is invalid for failure to set forth the best method known.").  Here, the inventors admittedly had a database containing specific code relationships and edits that they believed was far better and considerably more extensive than what was disclosed in the '164 patent; in fact, the patent does not disclose *any* complete database made up of code-specific rules.  *See* D.I. 365 (TriZetto's Opening), at 18-19, 22-25.  That some rules may have been turned off for certain customers did not relieve the inventors of their obligation to disclose their preferred database.

Second, the law is clear that the first prong of the best mode test – whether the inventors knew of a better mode of practicing their invention than was disclosed – is "wholly subjective," focusing on *the inventors'* state of mind at the time the patent application is filed.  *Chemcast Corp. v. Arco, Indus.*, 913 F.2d 923, 928 (Fed. Cir. 1990).

REDACTED

*See SDS Inc. v. Ken Specialities*, 122 F. Supp. 2d 533, 548-49 (D.N.J. 2000) ("Best mode has nothing to do with sales to customers having particular requirements, or commercial  embodiments.").

REDACTED

*Bayer AG v. Schein Pharmaceuticals, Inc.*, 301 F.3d 1306, 1327 (Fed. Cir. 2002) (quotations and citations omitted).

That is, the crucial inquiry is whether the *inventors* believed *they* had a database that was better than what is disclosed in the '164 patent. The evidence is undisputed that the inventors here did have a better mode of practicing their invention (*i.e.*, using all of "Bob's rules") than was disclosed in the '164 patent, and any evidence regarding customer preferences is irrelevant to that conclusion. D.I. 365 (TriZetto's Opening), at 13-16.

Third, McKesson implicitly admits that the predetermined database the inventors created using Dr. Hertenstein's manual system for reviewing medical claims was the inventors' best mode. McKesson suggests that "[i]f the inventors believed that there was a best set of code-specific relationships for the predetermined database, the inventors would have sold that same database to all customers." D.I. 412 (McKesson's Opp.), at 10. That is precisely what HPR did. The evidence clearly demonstrates that HPR's CodeReview product contained a standard default predetermined database.

REDACTED

Thus, although HPR had the ability to tailor or "turn [a] rule off" for certain customers, the fact remains that the inventors had a standard preferred predetermined database that they offered to

---

1 As discussed in more detail below, the evidence cited in McKesson's Answering Brief is irrelevant to a best mode analysis because the evidence reflects beliefs that existed *after* the inventors filed their patent application on September 30, 1988. TriZetto merely references the evidence from the same time period to demonstrate that, even during the period on which McKesson relies for its evidence and argument, the inventors had a default, preferred database.

all customers. As such, under McKesson's own proffered theory, the existence of CodeReview's standard database establishes that the inventors did have a database that they considered the best.

In sum, the best mode inquiry requires the Court to examine the *inventors'* subjective beliefs at the time they filed their patent application.[2] Here, the fact that the inventors could later modify their database to suit a customer's request does not rebut TriZetto's showing that the inventors had a preferred database that was not disclosed. As detailed in TriZetto's Motion, the inventors believed that the code-specific relationships included in Dr. Hertenstein's database were the superior and preferred mode of practicing the claimed invention. *See generally* D.I. 374 (TriZetto's Motion for Summary Judgment re Indefiniteness Opening Brief), at 13-17.

### 2.    Compliance With The Best Mode Requirement Is Judged At The Time Of Filing The Patent Application

The evidence on customer preferences cited in McKesson's Answering Brief is additionally irrelevant because it concerns events that took place *after* the filing of the '164 patent application. The law is clear that the inventors' knowledge of a best mode for practicing their claimed invention is judged *as of the filing date of the patent application. Chemcast Corp,*

---

[2]  McKesson apparently disputes TriZetto's assertion that, when dealing with joint inventors, even if only one inventor contemplates a best mode, a violation occurs if that mode is not disclosed. D.I. 412 (McKesson's Opp.), at 5 n.2. Although TriZetto mistakenly included the Court's holding in quotations, the Federal Circuit in *Pannu v. Iolab Corp.,* 155 F.3d 1344 (Fed. Cir. 1998), unambiguously stated that

If the patent is corrected under section 256 [to add additional inventors], [the defendant] may of course reassert its defense based on the theory that the proper inventive entity failed to disclose its best mode. This is because the jury's finding on the best mode issue was predicated on Pannu being the sole inventor. *Best mode issues can arise if **any** inventor fails to disclose the best mode known to him or her.* (155 F.3d at 1351 n.5 (emphasis added).)

REDACTED

7

913 F.2d at 926 ("The best mode inquiry focuses on the inventor's state of mind as of the time he filed his application – a subjective, factual question."); *see also* 2 DONALD S. CHISUM, CHISUM ON PATENTS 7.05[2] ("It is well established that the 'critical date with regard to disclosing the best mode contemplated is the date of the filing of the application.'").

The '164 patent application was filed on September 30, 1988. Thus, McKesson's reliance on documentary evidence showing "CodeReview product information from 1989" is misplaced. D.I. 412 (McKesson's Opp.), at 11. Similarly, the testimony relied on by McKesson discusses customer opinions from after September 30, 1988. In all the cited testimony, the inventors are discussing the preferences of customers who purchased CodeReview. The first customer to have CodeReview installed was Caterpillar, and that installation occurred on June 8, 1988. D.I. 405, Ex. T (McKesson 2nd Supp. Resp. to Interrog. No. 6).

REDACTED

Accordingly, the testimony by the inventors cited in McKesson's Answering Brief regarding the customers' preferences necessarily refers to events that took place after the '164 patent application was filed on September 30, 1988. There is

---

3    McKesson misstates the record when it claims that "[t]he '164 patent and CodeReview were not intended to mimic Dr. Hertenstein's manual review of claims." D.I. 412 (McKesson's Opp.), at 12. The inventors unambiguously testified that the '164 patent was intended to replicate precisely Hertenstein's manual process for reviewing medical claims that he developed at Caterpillar. D.I. 366, Ex. 4 (Hertenstein Dep.), at 188:1-191:23 (manual process provided same results as examples in patent); *id*, at 209:20-210:1 ("Q: Is it your understanding that the claims in this patent generally describe using a computer and a database to do what you did manually at Caterpillar? [Dr. Hertenstein:] Yes."); D.I. 366, Ex. 5 (Holloway Dep.), at 55:3-56:14 (rules for CodeReview resulted from work with Dr. Hertenstein).

simply no evidence that the inventors had more than one database as of September 30, 1988. Thus, because McKesson has offered *no pre-filing* evidence refuting TriZetto's best mode defense, TriZetto respectfully submits that Claims 1 and 2 are invalid for failure to comply with the best mode requirement.

### 3.    The Cases Cited By McKesson Are Inapplicable Here

In an attempt to justify the inventors' failure to disclose its best mode of practicing the claimed invention, McKesson relies on *Fonar Corp. v. G.E. Co.*, 107 F.3d 1543 (Fed. Cir. 1997) and *Liquid Dynamics Corp. v. Vaughan Co.*, 2006 U.S. App. LEXIS 13484 (Fed. Cir. 2006). This reliance is misplaced. The *Fonar* decision does not support McKesson's argument that "the inventors did not believe there was a 'best' set of code-specific relationships." D.I. 412 (McKesson's Opp.), at 14. Rather, the entire premise of the holding in *Fonar* was simply that "what is within the skill of the art need not be disclosed to satisfy the best mode requirement as long as that mode is described." 107 F.3d at 1549. Unlike in *Fonar*, McKesson has not disputed TriZetto's showing that replicating the specific relationships in the inventors' predetermined database (as opposed to merely the software code to access the database) *was not* within the skill of the art. *See* D.I. 365 (TriZetto's Opening), at 11-22. Accordingly, because the mere disclosure of the functions of the software that is used to access the predetermined database – as opposed to the predetermined database itself – would not allow one skilled in the art to practice the preferred embodiment of the claimed invention, *Fonar* is inapposite.

*Liquid Dynamics* is similarly inapplicable. In *Liquid Dynamics*, the appellant argued that the '414 patent was invalid because "use of reducers on the tank nozzles was the best mode of practicing the invention, . . . it was known to the inventors, and . . . they failed to disclose it in their patent application." 2006 U.S. App. LEXIS 13484, at *30. The court found that "in light of all the evidence presented on the issue" there was no best mode violation. *Id.* at *31-32. The Court relied on evidence that "adding reducers is a routine detail and did not need to be disclosed to a person of ordinary skill in the art," as well as the fact that the "'414 patent' states that '[t]he jet nozzle units 20 are preferably of a type disclosed in U.S. Pat. No. 4,332,484 (herein

incorporated by reference) [("the '484 patent")] and commercially available from A.O. Smith, as part of its Slurrystore . . . systems." *Id.* at *32. Here, unlike in *Liquid Dynamics*, the evidence is undisputed that the inventors' specific predetermined database was *not* a "routine detail," and there is no disclosure of the complete details of the inventors' predetermined database in the patent specification or elsewhere. Moreover, contrary to McKesson's argument, the *Liquid Dynamics* court did not hold that the use of reducers did not need to be disclosed because the "nature of customer's policies and other business needs" rendered such a disclosure unnecessary. D.I. 412 (McKesson's Opp.), at 15. Rather, it found no concealment because there was sufficient disclosure and the use of reducers was known to those of ordinary skill in the art.

**B.    Because Specific Intent Is Not Required To Prove Concealment, McKesson Has Not Rebutted TriZetto's Evidence That The Inventors Concealed The Best Mode Of Practicing Their Claimed Invention**

The second inquiry under a best mode analysis – concealment – is an objective inquiry, comparing what the inventors knew at the time of filing with what was actually disclosed in the patent. *Chemcast Corp.*, 913 F.2d at 926. McKesson has not and cannot contend that the '164 patent or any other publication known to those of skill in the art disclosed the specific code-to-code relationships included in the inventors' preferred database, or that the inventors' complete database was something that could be readily created by one of ordinary skill in the art. *See generally* D.I. 365 (TriZetto's Opening), at 17-18. As a result, McKesson is left to assert that TriZetto is required to prove that the inventors had a specific "intent to conceal" in order to establish a best mode violation.[4]  McKesson, however, misstates the law when it asserts that specific intent is required to prove a best mode violation. It is not.

---

[4]    In fact, the evidence does establish that the inventers intentionally concealed the details of their predetermined database.  D.I. 365, (TriZetto's Opening) at 19 n.5.

REDACTED

[Footnote continued on next page]

The Federal Circuit has held that "specific intent deceive is not a required element of a best mode defense." *Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 789-90 (Fed. Cir. 1995) (citing *Spectra-Physics*, 827 F.2d at 1535 (holding that evidence of concealment, "whether accidental or intentional," is considered)). The Circuit further explained that "[i]nquiry into an intent to conceal, being subjective, is inconsistent with the objective nature of the second aspect of best mode compliance. It is not part of that analysis." *U.S. Gypsum*, 74 F.3d at 1216. "Although it has been said that 'invalidity for violation of the best mode requires intentional concealment of a better mode than was disclosed,' *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1575 (Fed. Cir. 1992), **the rule is not so limited.**" *Id.* at 1215 (emphasis added).[5]

In fact, even the cases cited by McKesson do not support its position. D.I. 412, at 5-6. (citing *High Concrete Structures, Inc. v. New Enter. Stone & Lime Co.*, 377 F.3d 1379 (Fed. Cir. 2004); *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 381 F.3d 1371 (Fed. Cir. 2004); *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555 (Fed. Cir. 1992)). Initially, all three cases include the same generic language: "Invalidity for violation of the best mode requires intentional concealment of a better mode than was disclosed." But in rejecting the argument that McKesson makes here – that a best mode violation requires a specific intent to conceal – the Federal Circuit held that this language (*e.g.*, from *Brooktree Corp.*) "was dictum since the court concluded that there was substantial evidence that the best mode was disclosed,"

---

[Footnote continued from previous page]

REDACTED                    Of course, even if Dr. Holloway disclosed the database to the patent attorney, the failure to include the preferred database in the patent would nonetheless constitute a best mode violation. *See Old Town Canoe Co. v. Confluence Holdings Corp.*, Nos. 05-1123, -1148, 2006 WL 1228887, *10 (Fed. Cir. May 9, 2006) (evidence that described precise parameters for molding process prepared before the filing of application and given to patent lawyer, but not disclosed in the specification, sufficient for finding of best mode violation).

[5]   In fact, the Federal Circuit has found a best mode violation where *the inventor's attorney* failed to disclose the preferred embodiment of the claimed invention. *See Old Town Canoe,* 2006 WL 1228887 at *10 (evidence that described precise parameters for molding process prepared before the filing of application and given to patent lawyer, but not disclosed in the specification, sufficient for finding of best mode violation).

and that "the rule is not so limited." *U.S. Gypsum*, 74 F.3d at 1215 n.7. The court in *Gypsum* went on to hold that the inventor had concealed the best mode of practicing his claimed invention under facts that are strikingly similar to the instant case. *Id.* at 1216 ("[T]he district court did not need to determine that Williams intentionally concealed his best mode of practicing the claimed invention. Rather, it was sufficient that the court held that there was no genuine dispute that the '267 specification did not adequately disclose Williams' best mode in a way that would allow those of ordinary skill in the art to practice it.").

Furthermore, McKesson's cases are factually inapposite. Unlike the facts here, all of the cases involved evidence that although the best mode may not have been set forth in the patent specification, the information was readily known or disclosed to persons of ordinary skill in the art – that is, the mode was not concealed. In *High Concrete*, for example, the inventors had a patent for a device for "adjusting the orientation for transport, on a truck or other means of conveyance, of heavy and bulky cargo." 377 F.3d at 1380. The district court granted summary judgment on the grounds that the patent was invalid because the inventors did not disclose that the rotation of heavy cargo required the aid of a crane. *Id.* at 1382. The Federal Circuit reversed, holding that "[t]he best mode requirement of 112 is not violated by unintentional omission of **information that would be readily known to persons in the field of the invention**." *Id.* at 1383 (emphasis added). Here, there is no doubt that the inventors' complete set of code relationships *was not* within the knowledge of persons of ordinary skill in the art. *See* D.I. 365 (TriZetto's Opening), at 19-22. Indeed, McKesson has not contended otherwise.

REDACTED

Thus, *High Concrete* is inapplicable because the

detailed information omitted from the '164 patent was not "readily known to persons in the field of invention."[6]

In *Cardiac Pacemakers*, the defendant argued that the patent was invalid because its specification did not include the "best battery known to them at the time the patent application was filed." 381 F.3d at 1379. The Court rejected that argument, holding that "[t]here was evidence before the jury that persons knowledgeable in the field of the invention would know the sources of batteries for pacemakers and related devices." *Id.* Thus, like *High Concrete* and unlike the case here, *Cardiac Pacemakers* is inapplicable because there is no evidence that persons knowledgeable in the field would be able to determine the best set of code-specific relationships needed to practice the best mode of the claimed invention of the '164 patent. In addition, the Court in *Cardiac Pacemakers* relied heavily on the fact that "the Honeywell battery was published in a publication for battery specialists." *Id.*

REDACTED

Finally, similar to the other cases relied upon by McKesson, the *Brooktree* court simply noted that there could be no best mode violation where the omitted information was disclosed in a published patent. 977 F.2d at 1575 ("That which is included in an issued patent is, *ipso facto*, not concealed.").

REDACTED

---

6    The fact that re-creation of the inventors' undisclosed best or preferred embodiment was not known to one of ordinary skill in the art does not mean that the claims – which have been construed not to include any specific structure, software or code relationships – are not anticipated or non-obvious.  *See generally* D.I. 380 (TriZetto's Motion for Summary Judgment re Anticipation Opening Brief).

REDACTED

In short, McKesson's argument that TriZetto did not provide sufficient evidence of "intent to conceal" is a red hearing. The proper analysis – comparing what the inventors knew at the time of filing the '164 patent application with what was actually disclosed – reveals that the inventors concealed the details of the predetermined database that they had at the time.

**C.    McKesson Has Argued Throughout The Litigation That The Predetermined Database Is Part Of The Claimed Subject Matter Of Claims 1 And 2**

McKesson argues that TriZetto cannot prove its best mode defense because there is no evidence that "an undisclosed best mode existed specifically with regard to claims 1 and 2." D.I. 412 (McKesson's Opp.), at 6. McKesson ignores, however, that the preambles of Claims 1 and 2 both include "a computer system with means for operating on" "a predetermined database containing medical service codes and a set of relationships among the medical service codes" to check and edit the medical service codes on a claim. D.I. 366, Ex. 1 ('164 patent), Claims 1, 2. The identical "predetermined database" is used in *all* of the claims – there is not a separate or different database that is used only with Claims 1 and/or 2. *See id.* Cols. 117-120. Indeed, in the Court's April 5, 2006 Claim Construction Order, the Court noted that the term "predetermined database" as construed therein applied to "patent claims 1, 2, 3, 10, 12, 13, 14, 15 and 16." D.I. 307, at 3 n.7. McKesson's argument is particularly curious given that McKesson has repeatedly relied upon the predetermined database as the sole basis for distinguishing the prior art that anticipates Claims 1 and 2 and/or renders those claims obvious. D.I. 377 (McKesson's Motion for Summary Judgment re Anticipation Opening Brief), at 13-14; D.I. 406 (TriZetto's Opp. re Anticipation), at 24-29. In the end, McKesson's argument that TriZetto cannot demonstrate that the inventors had a best mode specific to Claim 1 or 2 simply makes no sense. *See, e.g., U.S. Gypsum Co.*, 74 F.3d at 1216, n.9 ("Although 'each claim must be considered individually for compliance with the best mode requirement,' [citation], and it is unclear whether the district court conducted a claim-by-claim validity analysis, we find no error. Silicone-treated

14

expanded perlite was an essential limitation of all the claims, which covered a single invention.").

McKesson also states that TriZetto cannot prove a best mode violation because "TriZetto's argument regarding the contents of the predetermined database is entirely divorced from the actual claims." D.I. 412 (McKesson's Opp.), at 6. This statement is in direct conflict with McKesson's assertion in its Opposition to TriZetto's Motion for Summary Judgment Regarding Anticipation and Obviousness that the predetermined database is not "meaningless or divorced from the 'heart of the invention.'" D.I. 406 (TriZetto's Opp. re Anticipation), at 16. In fact, McKesson stated that it "has always maintained that the predetermined database is a necessary element of claims 1 and 2 that must be shown to prove infringement or invalidity – it is legal error to contend otherwise." D.I. 406 (TriZetto's Opp. re Anticipation), at 14 ("that claims 1 and 2 do not expressly require that the predetermined database be used in performing their determining steps . . . does nothing to change the fact that the predetermined database is an essential element of the claims").

McKesson cannot have it both ways. The predetermined database is either an essential and novel component of the patented invention, in which case the best mode for the database should have been disclosed, or it is irrelevant to the remaining claims. If it is the latter, then McKesson's own validity experts have admitted that Claims 1 and 2 are invalid as anticipated by numerous prior art references. D.I. 406 (TriZetto's Opp. re Anticipation), at 24-29.[7]

**D.     The Appendix B Metarules Do Not Disclose The Inventors' Best Mode**

At the end of its Answering Brief, McKesson offers yet another theory as to how the inventors did not violate their best mode obligations. Contradicting its position that there was no best mode, McKesson posits that the inventors *did* have a best mode of practicing their claimed

---

[7]   As set forth in TriZetto's Opening Brief in support of its motion on anticipation and obviousness, even if the predetermined database is an essential limitation of claims 1 and 2, the claims are nonetheless anticipated and obvious in light of the prior art. *See generally* D.I. 380 (TriZetto's Motion for Summary Judgment re Anticipation Opening Brief).

invention, but that they adequately disclosed it by way of the twenty-one Appendix B metarules in the '164 patent specification. D.I. 412 (McKesson's Opp.), at 19. McKesson goes so far as to say that these metarules and the sequence of their application were "the novel aspects of the invention." *Id.* McKesson's argument represents a stunning about-face from the position it has taken throughout this litigation. For purposes of infringement, McKesson argued, and the Court agreed, that nothing from the specification, including the Appendix B metarules, were included in the patent claims. See D.I. 170 (McKesson's Opening Claim Construction Brief). In fact, McKesson did not even mention or reference the 21 metarules or Appendix B once during the trial on infringement. Of course, if the Appendix B rules were part of the claimed invention, McKesson would have not been able to prevail on infringement as it offered no evidence on summary judgment or at trial that TriZetto's systems include the Appendix B metarules or their equivalents.

Although it is true that the best mode found in a specification is not necessarily claim limiting, here McKesson sustained its infringement claim by arguing the structure of the software and database of Claims 1 and 2 were well known and commercially available, *i.e.*, that structure was not a novel feature of the claims. Now McKesson says that the Appendix B metarules are the "novel aspect of the invention" and so satisfy the best mode requirement. The Court should not condone McKesson's transparent effort to rely on one broad claim interpretation for infringement and a completely different, narrower one for purposes of validity. *Eaton Corp.* v. *Rockwell Int'l Corp.*, 323 F.3d 1332, 1343 (Fed. Cir. 2003) ("It is axiomatic that claims are construed the same way for both invalidity and infringement." (internal quotation and citation omitted)).

Regardless, McKesson's argument regarding Appendix B improperly confuses the distinction between the best mode requirement and the enablement requirement. Although the patent's metarules may be sufficient to enable or assist one of ordinary skill to make and use *a* system or *a* method *similar* to that described in the patent, the disclosure of the metarules alone would not enable one to make and use *the inventor's best mode*, including what the inventors

16

believed was the best system using their unique predetermined database. As the Federal Circuit explained, a patent specification that complies with the enablement requirement does not necessarily satisfy the best mode requirement. *Spectra-Physics*, 827 F.2d at 1532 ("compliance with the best mode requirement focuses on a different matter than does compliance with the enablement requirement"). Accordingly, to comply fully with the best mode requirement the inventors were required to disclose their code-specific database or, at a minimum, the "large storehouse" of relationships among the codes that differentiated it from the prior art or the CPT manual itself. The disclosure of the metarules in Appendix B does not satisfy the best mode requirement.

### CONCLUSION

For the reasons set forth herein and in its Opening Brief, TriZetto respectfully requests that the Court grant summary judgment of invalidity based on the failure of the inventors to disclose the best mode in violation of 35 U.S.C. § 112, ¶ 1.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II (#3778)*

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
Wilmington, Delaware 19899
(302) 658-9200

Attorneys for Defendant The TriZetto Group, Inc.

OF COUNSEL:

GIBSON, DUNN & CRUTCHER LLP
Jeffrey T. Thomas
David A. Segal
Michael A. Sitzman
Jamboree Center, 4 Park Plaza
Irvine, CA 92614

June 22, 2006

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 29, 2006, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Michael A. Barlow
> Skadden, Arps, Slate, Meagher & Flom LLP

I also certify that copies were caused to be served on June 29, 2006, upon the following in the manner indicated:

### BY EMAIL AND HAND

Michael A. Barlow
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
Wilmington, DE  19801

### BY EMAIL AND FEDERAL EXPRESS

Jeffrey G. Randall
Skadden, Arps, Slate, Meagher & Flom LLP
525 University Avenue
Suite 1100
Palo Alto, CA  94301

*/s/    Rodger D. Smith II (#3778)*
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com

1