## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MCKESSON INFORMATION SOLUTIONS
LLC,

                Plaintiff,

      v.

THE TRIZETTO GROUP, INC.,

                Defendant.

C.A. No. 04-1258 (SLR)

**REDACTED VERSION**

---

### THE TRIZETTO GROUP, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF INVALIDITY FOR INDEFINITENESS AND FAILURE TO ADEQUATELY DESCRIBE THE CLAIMED INVENTION

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (# 1014)
Rodger D. Smith II (# 3778)
1201 N. Market Street
Wilmington, Delaware 19899
(302) 658-9200

Attorneys for Defendant The TriZetto Group, Inc.

OF COUNSEL:

GIBSON, DUNN & CRUTCHER LLP
Jeffrey T. Thomas
David A. Segal
Michael A. Sitzman
Jamboree Center, 4 Park Plaza
Irvine, CA 92614

Original Filing Date: June 22, 2006

Redacted Filing Date: June 29, 2006

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ...........................................................................................................1

ARGUMENT....................................................................................................................4

    A.    The Court Has Not Previously Considered TriZetto's Indefiniteness
        Defense ...............................................................................................................4

        1.    The Court Did Not Construe The Phrase "Non-Medical
                Criteria"..................................................................................................4

        2.    The Cases Relied On By McKesson Are Inapplicable ...............................5

        3.    The Court's Scheduling Orders Stayed All Validity Motions
                Pending Further Order Of The Court..........................................................7

        4.    Even If The Court Had Construed The Phrase "Non-Medical
                Criteria," This Court's Practice And McKesson's Trial
                Conduct Would Warrant Hearing TriZetto's Indefiniteness
                Motion At This Time ................................................................................7

    B.    McKesson Has Not Refuted TriZetto's Clear And Convincing
        Showing That The Term "Non-Medical Criteria" Is Indefinite..............................8

        1.    McKesson Misstates TriZetto's Position Regarding The Patent
                Specification ...........................................................................................8

        2.    McKesson's Conflicting Examples Of "Non-Medical Criteria"
                Evidence The Term's Indefiniteness ...........................................................9

        3.    McKesson Offers No Basis For The Court To Ignore The
                Inventors' Testimony...............................................................................12

        4.    TriZetto's Expert Could Not Determine The Meaning Of
                "Non-Medical Criteria"............................................................................13

        5.    McKesson Has Not Rebutted TriZetto's Evidence Clearly And
                Convincingly Establishing That Claim 2 Is Indefinite ..............................14

    C.    The Specification Does Not Adequately Describe The Invention.........................15

CONCLUSION................................................................................................................19

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amgen, Inc. v. Hoechst Marion Roussel, Inc.*,
  314 F.3d 1313 (Fed. Cir. 2003)...................................................................... 5

*Arthrocare Corp. v. Smith & Nephew, Inc.*,
  2003 WL 1856436 (D. Del. Apr. 9, 2003).......................................................... 6

*Bancorp Servs. L.L.C. v. Hartford Life Ins. Co.*,
  359 F.3d 1367 (Fed. Cir 2004)..................................................................... 6, 8

*Bancorp Servs. v. Hartford Life Ins. Co.*,
  2002 U.S. Dist. LEXIS 27200 (E.D. Mo. Feb. 13, 2002).................................... 8

*Chiron Corp. v. Genentech*,
  2002 U.S. Dist. LEXIS 19150 (E.D. Cal. June 24, 2002)................................... 7

*Datamize, LLC v. Plumtree Software, Inc.*,
  417 F.3d 1342 (Fed. Cir. 2005).................................................................. 9, 14

*Exxon Research & Eng'g. Co. v. United States*,
  265 F.3d 1371 (Fed. Cir. 2001)...................................................................... 8

*Hoechst Celanese Corp. v. BP Chems., Ltd.*,
  78 F.3d 1575 (Fed. Cir. 1996)....................................................................... 13

*Pharmastem Therapeutics, Inc. v. Viacell, Inc.*,
  2003 U.S. Dist. LEXIS 877 (D. Del. Jan. 13, 2003).......................................... 2, 7

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed Cir. 2005)..................................................................... 4, 5

*Praxair, Inc. v. ATMI, Inc.*,
  2005 WL 3159054 (D. Del. Nov. 28, 2005) ........................................................ 6

*Purdue Pharma L.P. v. Faulding Inc.*,
  230 F.3d 1320 (Fed. Cir. 2000)............................................................. 15, 17, 18

*Ruiz v. A.B. Chance Co.*,
  357 F.3d 1270 (Fed. Cir. 2004)...................................................................... 14

*Soitec, S.A. v. Silicon Genesis Corp.*,
  2002 U.S. Dist. LEXIS 16841 (D. Mass. Aug. 23, 2002).................................... 8

*Union Pac. Res. Co. v. Chesapeake Energy Corp.*,
  236 F.3d 684 (Fed. Cir. 2001)....................................................................... 8

*Vitronics, Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996)........................................................................ 2

*Voice Techs. Group, Inc. v. VMC Systems, Inc.*,
  164 F.3d 605 (Fed. Cir. 1999)....................................................................... 13

**Statutes**

35 U.S.C. § 112, ¶ 1 ......................................................................... 4, 15, 17, 18, 19

35 U.S.C. § 112, ¶ 2 ..................................................................................... 14

**INTRODUCTION**

In its Opening Brief, TriZetto established the evidentiary and legal bases for its argument that Claim 2 of the '164 patent is invalid as a matter of law because the phrase "non-medical criteria" is fatally indefinite. McKesson's Answering Brief does not adequately address any of those bases. Instead, McKesson attempts to avoid the issues presented by TriZetto's motion based on procedural arguments. Indeed, McKesson devotes almost half of its Answering Brief to its argument that, because the Court bifurcated invalidity issues until after claim construction and infringement, TriZetto is effectively precluded from having its indefiniteness defense heard. McKesson's procedural game playing cannot avoid the irrefutable conclusion that the term "non-medical criteria" as used in Claim 2 lacks any clear, discernible meaning. Indeed, if the Court were to order TriZetto to remove the code relationships purportedly based on "non-medical criteria" from its products, neither TriZetto nor the Court would have any objective basis on which to determine TriZetto's compliance.

McKesson's Answering Brief fails to refute the clear evidence establishing that Claim 2 should be found indefinite as a matter of law:

- First, TriZetto demonstrated that Claim 2 fails to perform the most basic function that patent claims are required to perform -- it fails to place the public, and potential competitors such as TriZetto, on notice of the scope of the patentee's rights -- because the phrase "non-medical criteria" used in the Claim has no clear or discernible meaning. McKesson's principal response is that the Court already construed the term. That is not true. The Court's Claim Construction Order *did not* provide *any* construction for the determining step of Claim 2, much less a specific construction for the term "non-medical criteria." *See generally* D.I. 307 (Mem. Order, April 5, 2006). Even if it had, such a construction would not preclude TriZetto's indefiniteness argument in accordance with this Court's practice: "The Court's position at [claim construction] does not ... represent an actual adjudication on the defendant's indefiniteness defense ... the court is merely holding that the claim is sufficiently

1

definite to survive claim construction." *Pharmastem Therapeutics, Inc. v. Viacell, Inc.*, 2003 U.S. Dist. LEXIS 877, at *2 n.1 (D. Del. Jan. 13, 2003).

- Second, McKesson does not deny that the term "non-medical criteria" is not defined in the '164 patent specification. McKesson attempts to sidestep this issue by claiming that "the question is not whether the phrase 'non-medical criteria' was expressly identified in the specification, but whether the general application of the canons of construction renders a sufficiently definite meaning." D.I. 407 (McKesson's Opp.), at 10. In advocating this position, McKesson, in essence, ignores the "canons of construction" that require a court to first examine a patent's "intrinsic evidence," which includes the claims themselves, *the patent specification*, and the prosecution history, to determine the meaning of the words in a claim. *Vitronics, Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The '164 patent specification provides absolutely no guidance in distinguishing between a determination of mutually exclusive codes based on "non-medical criteria" and "medical criteria."

- Third, TriZetto demonstrated that McKesson and the previous owner of the '164 patent have relied on the lack of any clear, discernible meaning of the term "non-medical criteria" to alter the scope of Claim 2 almost at whim.


REDACTED


What exactly does that mean? In light of the fact that the entire '164 patent is directed towards a system and method for medical billing (*see generally* D.I. 375, Ex. 1 ('164 patent), Abstract,

2

cols. 2:17-64, 3:17-68), this "definition" is of no more help than the myriad of other so-called "non-medical criteria" examples that McKesson has offered throughout this case.

REDACTED

- Fourth, TriZetto demonstrated that the inventors could not define the term "non-medical criteria." McKesson responds that the inventors' testimony should be disregarded. D.I. 407 (McKesson's Opp.), at 13. But McKesson's own authorities recognize that testimony by the inventors is relevant under the circumstances here.

Even if the Court were to find that Claim 2 is not indefinite, McKesson has not rebutted TriZetto's showing that the '164 patent specification fails to adequately describe the claimed invention. McKesson's only response to TriZetto's showing is to argue, *for the first time*, that the "EP rule" set forth in the specification describes the determining step of Claim 2. Ultimately, McKesson's arguments regarding written description fail for the same reasons that its arguments regarding indefiniteness fail: Because the term "non-medical criteria" claims an undefined category of rules and no one of skill in the art has been able to define the clear, objective boundaries of those rules, there is no basis upon which the Court can conclude that the inventors

---

[1] Based on McKesson's arguments, which rest almost exclusively on its position that Dr. Musen had opinions about what was medical or non-medical, McKesson apparently would appoint its paid expert be the sole arbiter of what edits fall within the scope of Claim 2.

REDACTED

were in possession of a method that made determinations based on non-medical criteria at the time they filed the original '164 patent application.  Thus, TriZetto requests that the Court enter summary judgment finding that Claim 2 of the '164 patent is indefinite and fails to comply with the written description requirement of 35 U.S.C. § 112, ¶ 1.

## ARGUMENT

**A.    The Court Has Not Previously Considered TriZetto's Indefiniteness Defense**

In its Opening Brief, TriZetto showed that Claim 2 of the '164 patent is invalid because the phrase "non-medical criteria" is indefinite in violation of Section 112, paragraph 2. McKesson's principal response to TriZetto's showing is to argue that "the Court was already able to construe the term" and that construction "is now dispositive."  D.I. 407 (McKesson's Opp.), at 6.  McKesson's argument misstates the record and misconstrues the applicable law.

### 1.    The Court Did Not Construe The Phrase "Non-Medical Criteria"

The Court's April 5, 2006 Claim Construction Order did not construe the phrase "non-medical criteria," which appears in Claims 2 and 14, or address TriZetto's contention that the term was indefinite.  In fact, the Court's Claim Construction Order does not reference "non-medical criteria" as a stand-alone phrase, nor does it state that any term that is not construed is to be given its ordinary meaning.  *See generally* D.I. 307 (Mem. Order April 5, 2006).  Ignoring these facts, McKesson relies on the Court's statement that it was "construing the terms [of the '164 patent] 'consistent with the tenets of claim construction set forth by the United States Court of Appeals for the Federal Circuit in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed Cir. 2005),'" D.I. 407 (McKesson Opp.), at 8-9 (quoting D.I. 307, (Mem. Order April 5, 2006), which McKesson maintains "holds that the ordinary meaning is the 'baseline' upon which all construction begins."  D.I. 407 (McKesson's Opp.), at 9.  Contrary to McKesson's assertion, *Phillips* does not stand for the proposition that "ordinary meaning" is a talisman that may be

invoked without evidentiary support, as McKesson has attempted here, to defeat a claim of indefiniteness.[2]

First, the full quote from *Phillips* upon which McKesson relies is "[t]he inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation." 415 F.3d at 1313. The "ordinary meaning" is not determined in a vacuum, but in reference to the meaning of a term to one of ordinary skill in the art. As explained in TriZetto's Opening Brief, this is exactly where McKesson runs into trouble. No one of ordinary skill in the art has been able to provide an objective meaning of the scope of Claim 2 because the phrase "non-medical criteria" as used in the Claim has no apparent meaning in the art. D.I. 374 (TriZetto's Opening), at 12-22. Second, the *Phillips* court explained that courts must weigh intrinsic and extrinsic evidence in arriving at the meaning of disputed claim terms. *See Philips*, 415 F.3d at 1322-24. As TriZetto demonstrated in its Opening Brief, neither the intrinsic nor the extrinsic evidence in this case permit "a potential competitor [such as TriZetto] to determine whether or not [it] is infringing," and "it does not apprise those skilled in the art of the scope of the invention." *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1342 (Fed. Cir. 2003) (citation omitted); D.I. 374 (TriZetto's Opening), at 23-24. Third, the issues in *Phillips* did not involve ambiguous terms, as the specification there provided ample guidance as to a reasonable construction. *Phillips*, 415 F.3d at 1326-27.

## 2.    The Cases Relied On By McKesson Are Inapplicable

The cases relied on by McKesson in its Answering Brief do not bear the weight that McKesson places on them because the Court's Claim Construction Order in this case did not construe the phrase "non-medical criteria" or address TriZetto's argument that the term is

---

[2] Much of the discussion in *Phillips* simply reaffirms long held tenets of claim construction. The decision's real significance was its clarification of the proper role for dictionaries in claim construction. *Phillips*, 415 F.3d at 1312 (stating "the basic principles of claim construction . . . are still applicable, and we reaffirm them today. We have also previously considered the use of dictionaries in claim construction. What we have said in that regard requires clarification.")

indefinite. D.I. 407 (McKesson's Opp.), at 5-9 (*citing Bancorp Servs. L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367 (Fed. Cir 2004); *Praxair, Inc. v. ATMI, Inc.*, 2005 WL 3159054 (D. Del. Nov. 28, 2005); *Arthrocare Corp. v. Smith & Nephew, Inc.*, 2003 WL 1856436 (D. Del. Apr. 9, 2003)). In *Bancorp Services*, for example, the court examined the claims of the patent and the specification and held that "the intrinsic evidence . . . points to the correct construction of the claim language in dispute . . . ." 359 F.3d at 1374. Here, nothing in the '164 patent "points to the correct construction" of the term "non-medical criteria." Indeed, the entire invention is directed to an "*expert* computer system for processing *medical* claims." D.I. 375, Ex. 1 ('164 patent), Abstract. The specification states that "each of the rules was developed as a result of reviewing *medical* procedures by *expert medical personnel* and is consistent with the CPT-4 classification system. However, *expert medical personnel* also applied *clinical* judgment to situations where the CPT-4 classification system is not explicit or non-existent." *Id.*, col. 6:7-13 (emphasis added). Thus, the holding in *Bancorp Services* that "if a claim is subject to construction . . . it is not invalid for indefiniteness" is simply not applicable in this case – the phrase "non-medical criteria" is not subject to construction.

In *Praxair*, unlike here, the Court's claim construction order had given the challenged term a specific meaning – "The tube of claim 1 has an inlet located near the center of the container, when looking at the container from its top or bottom." 2005 WL 2989767, at *4. Similarly, in *Arthrocare*, the Court refused to consider indefiniteness only because it specifically found that the ordinary meaning of the phrases at issue was clear. 2003 WL 1856436, at *5 (holding that the phrases "not in contact," "spacing . . . away," and "minimize direct contact" were not indefinite because the patent in suit "requires that the return electrode not contact the body structure during the performance of each of the three steps of the claimed methods"). As explained below, no one in this case – including McKesson or any of its experts – has been able to articulate the supposed clear, objective meaning (ordinary or otherwise) for the phrase "non-medical criteria."

### 3.    The Court's Scheduling Orders Stayed All Validity Motions Pending Further Order Of The Court

The Court's previous orders in this case further illustrate that now is the proper time for dispositive motions regarding invalidity to be heard – including TriZetto's indefiniteness defense. On November 22, 2005, the Court ordered that "[m]otion practice and trial on the issue of invalidity shall be stayed until further order of this Court." D.I. 145 (Mem. Order, Nov. 22, 2005), at ¶ 4. After the jury trial on infringement, the Court ordered "[a]ll summary judgment motions involving invalidity shall be filed on or before June 1, 2006." D.I. 362 (Mem. Order, May 4, 2006), at ¶ 2. Thus, TriZetto's motion for summary judgment based on the indefiniteness of the phrase "non-medical criteria" is properly being raised at this juncture. Indeed, it could not have been raised earlier.

### 4.    Even If The Court Had Construed The Phrase "Non-Medical Criteria," This Court's Practice And McKesson's Trial Conduct Would Warrant Hearing TriZetto's Indefiniteness Motion At This Time

Even if the Court had construed the phrase "non-medical criteria" in its Claim Construction Order, which it has not, that should not preclude TriZetto from arguing at this stage of the case that the term is indefinite. First, as detailed in TriZetto's Opening Brief, McKesson's changing "examples" of alleged "non-medical criteria," which were only proffered after the close of discovery and which changed even during the infringement trial, would warrant the Court's reconsideration of any pretrial construction of Claim 2. D.I. 374 (TriZetto's Opening), at 16-23.

Moreover, as this Court explained its practice:  "The Court's position at [claim construction] does not . . . represent an actual adjudication on the defendant's indefiniteness defense . . . the court is merely holding that the claim is sufficiently definite to survive claim construction." *Pharmastem*, 2003 U.S. Dist. LEXIS 877, at *2 n.1. In fact, "it is not uncommon for courts to find a claim term invalid for indefiniteness after construing the term." *Chiron Corp. v. Genentech*, 2002 U.S. Dist. LEXIS 19150, at *6 (E.D. Cal. June 24, 2002). "The mere fact that this Court was capable of construing the claims at issue for *Markman* purposes does not necessarily preclude a finding of indefiniteness." *Soitec, S.A. v. Silicon Genesis Corp.*, 2002

U.S. Dist. LEXIS 16841, at *22-*23 (D. Mass. Aug. 23, 2002) (*citing Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1377-79 (Fed. Cir. 2001) (undertaking separate analysis of claim as construed by trial court to determine indefiniteness)); *see also Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 692 (Fed. Cir. 2001) (accepting a construction of term "comparing" but holding it to be indefinite).[3]

### B.   McKesson Has Not Refuted TriZetto's Clear And Convincing Showing That The Term "Non-Medical Criteria" Is Indefinite

The undisputed evidence shows that the phrase "non-medical criteria" is indefinite based on the totality of evidence, because: (1) the term is not defined in the patent specification; (2) the term does not have any unified, objective meaning to persons of ordinary skill in the art; and (3) McKesson's expert witness, its attorneys, and its predecessors have continuously offered different alleged examples of "non-medical criteria" to alter the scope of Claim 2 to fit their needs. McKesson's Answering Brief fails to refute these points.

#### 1.   McKesson Misstates TriZetto's Position Regarding The Patent Specification

McKesson asserts that TriZetto contended in its Opening Brief that the phrase non-medical criteria is indefinite "because 'the term is not defined in the patent specification.'" D.I. 407 (McKesson's Opp.), at 9-10.  TriZetto did not argue that the term "non-medical criteria" is indefinite because it is not included in the '164 patent specification.  Instead, in accordance with applicable law and as *part* of the analysis in determining whether Claim 2 is indefinite, TriZetto demonstrated that the specification provides no guidance in distinguishing "medical criteria" from "non-medical criteria."  *See Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d

---

[3]  Even in *Bancorp Services*, upon which McKesson so heavily relies, the district court recognized the inappropriateness of deciding invalidity questions based solely on *Markman* briefing.  Instead, the district court stayed claim construction and ordered separate motions on indefiniteness.  *Bancorp Servs. v. Hartford Life Ins. Co.*, 2002 U.S. Dist. LEXIS 27200, *4 (E.D. Mo. Feb. 13, 2002).  Although reversing the district court's holding regarding indefiniteness, the Federal Circuit did not comment on the district court's case management order. *See generally Bancorp Services*, 359 F.3d at 1376.

1342, 1347 (Fed. Cir. 2005) ("In the face of an allegation of indefiniteness, general principles of claim construction apply . . . Intrinsic evidence in the form of the patent specification and file history should guide a court toward an acceptable claim construction."). Implicitly admitting that the intrinsic evidence is unhelpful in determining the meaning of "non-medical criteria," McKesson has not identified anything in the patent or the file history that provides any guidance in determining the meaning of the term "non-medical criteria."

> **2.    McKesson's Conflicting Examples Of "Non-Medical Criteria"**
> **Evidence The Term's Indefiniteness**

McKesson's expert witness, its attorneys, and its predecessors have continuously changed the meaning of the phrase "non-medical criteria" to alter the scope of Claim 2 to fit their needs from the date the patent issued through the infringement trial. D.I. 407 (McKesson's Opp.), at 20-23. McKesson attempts to sweep this away by saying its expert, Dr. Musen, has provided a definition.

REDACTED

This only illustrates the indefinite nature of the term "non-medical criteria."

REDACTED

Indeed, pinning down Dr. Musen on a discernible distinction between "medical" versus "non-medical" criteria has been a moving target throughout this litigation.

REDACTED

9

REDACTED

By the time of trial, Dr. Musen had abandoned his single code editing examples of "non-medical criteria," and testified that "unbundling" rules were non-medical. D.I. 375, Ex. 10 (Trial Tr.), at 298:14-23. In support of this position, Dr. Musen relied on Example 1 from the patent and multiple wound repair "unbundling." D.I. 375, Ex. 10 (Trial Tr.), at 298:14-23, 385:2-16. As set forth in TriZetto's Opening Brief, however, in 1994, both the original patent owner and Dr. Hertenstein took the position that unbundling was based on *medical* criteria. D.I. 374 (TriZetto's Opening), at 12-15.[5]

McKesson attempts to explain away this contradiction by stating that both HPR and Dr. Musen have suggested that "bundling questions can arise in *both* medical and non-medical contexts." D.I. 407 (McKesson's Opp.), at 12. As an initial matter, McKesson has misstated HPR's position.

REDACTED

---

4    REDACTED

5    As demonstrated below, McKesson is now walking away from Dr. Musen's reliance at trial on Example 1 as a non-medical edit. In asserting that a method that determines mutual exclusivity among codes based on non-medical criteria is disclosed in the specification, McKesson now relies on only the "EP rule" of Example 17 – not Example 1 – as evidence that the inventors possessed the invention covered by Claim 2 at the time they filed their patent application. D.I. 407 (McKesson's Opp.), at 16-17.

REDACTED

Moreover, HPR's definition of "medical criteria" is directly contradictory to Dr. Musen's explanation of "billing rules," which he alleges are non-medical. McKesson's futile attempt to explain its changing position from that advanced by its predecessor establishes TriZetto's point – there is no objective way to determine which edits are purportedly based on non-medical criteria and therefore infringe Claim 2, and those which fall outside of the scope of Claim 2. McKesson's contention that some unbundling rules are "medical" and some are not further illustrates the problem here; there is no identifiable category of "non-medical" rules and no way for TriZetto or anyone else to identify the line between infringement and noninfringement.

REDACTED

REDACTED

    [6] In other words, according to Dr. Musen, what is "non-medical" depends on who is creating the database; much like beauty, it is apparently in the eye of the beholder. This testimony makes clear that there is no objective way the Court or TriZetto could identify the specific rules in TriZetto's database that would have to be removed to avoid infringement of Claim 2.

### 3.     McKesson Offers No Basis For The Court To Ignore The Inventors' Testimony

    In its Opening Brief, TriZetto submitted testimony from the inventors of the '164 patent – persons of ordinary skill who presumably know what they invented – that they have no idea what the term "non-medical criteria" means. D.I. 374 (TriZetto's Opening), at 12-14. McKesson provides no explanation for this testimony; instead, McKesson argues that their testimony is irrelevant. D.I. 407 (McKesson's Opp.), at 13-14. McKesson's argument is based upon a misreading of the applicable law.

    In fact, McKesson's own authorities recognize that inventors may testify as to the usage of disputed terms:

---

[6]  REDACTED

12

> [T]he inventor's testimony reads as that of an expert in the field ... *Markman* requires us to give no deference to the testimony of the inventor about the meaning of the claims. However, we have treated [the inventor's] testimony as cumulative of the other evidence, and as enlarging our understanding of the technology and the usage of the disputed terms.

*Hoechst Celanese Corp. v. BP Chems., Ltd.*, 78 F.3d 1575, 1580 (Fed. Cir. 1996). Thus, *Markman* does not "disqualify the inventor as a witness, or overrule the large body of precedent that recognizes the value of the inventor's testimony." *Voice Techs. Group, Inc. v. VMC Systems, Inc.*, 164 F.3d 605, 615 (Fed. Cir. 1999), *citing Hoechst Celanese Corp.*, 78 F.3d at 1580.

Although *Markman* and other cases caution "against creative reconstruction of an invention by interested persons ... the Supreme Court ... instructed trial judges to exclude scientifically unqualified witnesses, not those with superior qualifications." *Voice Techs. Group, Inc.*, 164 F.3d at 615-16 (internal citations omitted). In *Voice Technologies,* the Federal Circuit admonished the district court for improperly excluding inventor testimony where it was consistent with the specification and "expose[d] ambiguities in the [retained experts'] analysis, and their distortion of the '124 invention." *Id.* at 615.

REDACTED

4.      **TriZetto's Expert Could Not Determine The Meaning Of "Non-Medical Criteria"**

McKesson posits that Claim 2 cannot be indefinite because TriZetto's expert, Dr. Philip Hawley, supposedly understood the meaning of "non-medical criteria." McKesson's position is disingenuous at best.

REDACTED

13

REDACTED

McKesson relies on testimony by Dr. Hawley that he was able to understand the '164 patent in its entirety well enough to give the opinions that he actually gave.  (D.I. 407 (McKesson's Opp.) at 14 (quoting Dr. Hawley)).  This obviously cannot rescue Claim 2 from a finding of indefiniteness.  *See Ruiz v. A.B. Chance Co.*, 357 F.3d 1270, 1275 (Fed. Cir. 2004) (explaining "[i]n making the assessment of differences [between prior art and the challenged claims], section 103 specifically requires consideration of the claimed invention 'as a whole'").  If McKesson's position was correct, indefiniteness could never apply where an expert believed he or she understood the patent well enough to carry out his or her assignment.

### 5.    McKesson Has Not Rebutted TriZetto's Evidence Clearly And Convincingly Establishing That Claim 2 Is Indefinite

The law requires a patentee to "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention."  35 U.S.C. § 112, ¶ 2.  The purpose of this definiteness requirement "is to ensure that the claims delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude."  *Datamize,* 417 F.3d at 1348.  Nothing in McKesson's Answering Brief explains which of the rules in TriZetto's accused systems are based on "non-medical criteria" and how TriZetto could possibly determine those rules that should be removed to avoid infringement.  The undisputed evidence shows that neither the specification, the inventors, nor any person skilled in the art (including both parties' experts) can articulate the distinction between medical and non-medical criteria in a manner that would objectively delineate and provide notice of McKesson's right to exclude.  The Court is not faced with choosing between conflicting, plausible meanings advanced by different retained

14

experts. Rather, the Court is faced with undisputed intrinsic and extrinsic evidence that the phrase "non-medical criteria" is indefinite.

**C.    The Specification Does Not Adequately Describe The Invention**

Neither the '164 patent specification nor the file history describes which determinations, if any, are supposedly made based on "non-medical criteria." Thus, the specification fails to show that the inventors were "in possession of the [claimed] invention" at the time they filed their original patent application. *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1323 (Fed. Cir. 2000); *see also* 35 U.S.C. § 112, ¶ 1.

In fact, the only description of the claimed invention contained in the specification states that the disclosed system makes determinations based on medical, not non-medical, criteria. For example, the specification repeatedly refers to the decisions contained in the knowledge base as being determinations of "*medical*[] appropriate[ness], or . . . *medical*[] inappropriate[ness]" based on the careful and extensive application of expert medical analysis and medical clinical judgment. D.I. 375, Ex. 1 ('164 patent), cols. 5:60-17 (emphasis added); *see also id.*, col. 2:42-64 (describing the background of the invention replacing the need for claims payors to have enough trained medical physicians available to apply medical judgment to every claim received).

In response to this clear problem with Claim 2, McKesson has now apparently decided to retreat from the positions it took during trial and the positions it has taken post-trial regarding which portions of the specification allegedly exemplify Claim 2. *See* D.I. 375, Ex. 10 (Trial Tr.), at 385:2-16; 1202:3-1203:4 (Example 1 from the patent), D.I. 375, Ex 10 (Trial Tr.), at 1038:10-11; 1038:19-1039:25 ("double billing"); D.I. 414 (McKesson's Anticipation Opp.), at 6 (relying on the specification's disclosure of duplicate code detection). McKesson now claims that Dr. Musen, as one of ordinary skill, understood that the EP rule set forth in Example 17 was the one example from the patent of a mutual exclusive determination based on non-medical criteria. D.I. 407 (McKesson's Opp.), at 16-17. The fact that McKesson would now rely on yet another

new alleged "example" of non-medical criteria after claim construction and securing an infringement verdict is telling.[7]

In any event, Dr. Musen's testimony on which McKesson relies is taken out of context and does not support McKesson's argument.  The full testimony shows that Dr. Musen could not decide whether the EP rule is or is not an example of Claim 2.

REDACTED

The reason for McKesson's retreat from its earlier positions and its reliance on misleading portions of its expert's testimony is obvious -- Section 112(1) requires that a patent specification contain "a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art . . .

_____

[7]    At the very least, McKesson's reliance on Dr. Musen's testimony for the proposition that the EP rule is the only example of Claim 2 in the '164 patent specification raises serious questions about the legitimacy of McKesson's claim construction positions, its infringement verdict, and the merits of its arguments in opposition to TriZetto's anticipation and obviousness motion.

to make and use the same." 35 U.S.C. § 112, ¶ 1. With respect to Claim 2, the '164 patent does not satisfy this requirement.

As the Federal Circuit explained, the written description requirement requires that "one skilled in the art, reading the original disclosure, must *immediately* discern the limitation at issue in the claims." *Purdue Pharma L.P.,* 230 F.3d at 1323 (internal quotations and citations omitted, emphasis added). The invention in *Purdue Pharma* was a method for controlling pain by administering an opioid once a day. *Id.* at 1322. The claim limitation at issue referred to a plasma concentration that was "more than twice the plasma level of said opioid at about 24 hours after the administration of the drug." *Id.* at 1323. The patent owner asserted that this limitation was described by a portion of the specification explaining that "quicker and greater analgesic efficiency is achieved by 24 hour oral opioid formulations which do not exhibit a substantially flat serum Concentration curve." *Id.* at 1324. The district court found that those skilled in the art would not identify the claim limitation as "not having a 'generally flat' or 'substantially flat' morphine plasma concentration curve" as described in specification language relied upon by the patent owner. *Id.* at 1325. The district court then viewed the specification more generally and concluded that none of the examples set forth in the specification directed one skilled in the art to the disputed limitation. *Id.* at 1326.

The Federal Circuit affirmed, explaining that the "patentees have ... picked a characteristic possessed by two of their formulations, a characteristic that is not discussed even in passing in the disclosure, and then make it the basis of claims that cover not just those two formulations, but any formulation that has that characteristic. This is exactly the kind of overreaching the written description requirement was designed to guard against." *Id.* at 1327.

The same is true here. During the infringement trial, McKesson asserted that Example 1 from the patent specification, an example of the "E1/E2 Rule," illustrated the determining step of Claim 2. D.I. 375, Ex. 10 (Trial Tr.), at 385:2-16; D.I. 375, Ex. 10 (Trial Tr.), at 1202:3-1203:4. At the end of trial and in its current briefing on validity, McKesson alleges that duplicate codes is another "non-medical" example from the patent. *See* D.I. 375, Ex. 10 (Trial Tr.), at 1086:6-

17

1087:8; D.I. 414 (McKesson Anticipation/Obviousness Opp.), at 18-19.  Now, for the first time, McKesson asserts that Claim 2 is exemplified only by the "EP Rule," a rule which McKesson did not attempt to prove is included in the accused systems.  As with the "substantially flat" description in *Purdue Pharma*, McKesson simply picks those portions of the specification to describe Claim 2 as it thinks suits the need at hand.  That is not enough to satisfy the written description requirement of 35 U.S.C. § 112, ¶ 1.

Ultimately, McKesson's arguments regarding written description fail for the same reason that its indefiniteness arguments fail:  The phrase "non-medical criteria" in Claim 2 covers an indefinable category of rules.  No one of skill in the art has been able to define the metes and bounds of those rules and the specification provides no guidance.  By the same token, because the specification discusses code edits based on expert medical and clinical judgment, one is left with the unmistakable conclusion that the inventors did not have a method as set forth in Claim 2 – whatever its alleged scope – at the time that they filed the original '164 patent application.  As such, Claim 2 is invalid for failure to satisfy the written description requirement of 35 U.S.C. § 112, ¶ 1.

18

## **CONCLUSION**

TriZetto respectfully requests that the Court enter summary judgment that Claim 2 is invalid as indefinite and for failure to satisfy the written description requirement of 35 U.S.C. § 112, ¶ 1.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II (#3778)*

Jack B. Blumenfeld (# 1014)
Rodger D. Smith II (# 3778)
1201 N. Market Street
Wilmington, Delaware 19899
(302) 658-9200

Attorneys for Defendant The TriZetto Group, Inc.

OF COUNSEL:

GIBSON, DUNN & CRUTCHER LLP
Jeffrey T. Thomas
David A. Segal
Michael A. Sitzman
Jamboree Center, 4 Park Plaza
Irvine, CA 92614

June 22, 2006

526079

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 29, 2006, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Michael A. Barlow
> Skadden, Arps, Slate, Meagher & Flom LLP

I also certify that copies were caused to be served on June 29, 2006, upon the following in the manner indicated:

### BY EMAIL AND HAND

> Michael A. Barlow
> Skadden, Arps, Slate, Meagher & Flom LLP
> One Rodney Square
> Wilmington, DE  19801

### BY EMAIL AND FEDERAL EXPRESS

> Jeffrey G. Randall
> Skadden, Arps, Slate, Meagher & Flom LLP
> 525 University Avenue
> Suite 1100
> Palo Alto, CA  94301

> */s/    Rodger D. Smith II (#3778)*
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE  19899
> (302) 658-9200
> rsmith@mnat.com