# EXHIBIT 31

# (PART 2)

MCK 115935

CONFIDENTIAL

### III. Training and Support of Product

A. Licensor will provide five one-day training sessions on the Product at Licensee's corporate headquarters. Reasonable coach class travel expenses will be paid by Licensee. The timing of these training sessions is at the discretion of Licensee.

Additional training is available and can be provided at a daily rate of $350 per day plus reasonable coach class travel expenses.

G013279

Confidential Information Subject to D. Del. LP 26.2 - CONFIDENTIAL    04-CV-1258-SLR (D.Del.)

CONFIDENTIAL

Attachment C

Fee Schedule

The basic annual lease fee for the product is $70,000.00. The annual maintenance fee is $50,000.00. These fees will be paid according to the following schedule:

I. Basic Annual Lease Fee

- paid annually in advance on the anniversary date of the contract as follows:

| | |
|---|---|
| March 31, 1986 | $70,000.00* |
| March 31, 1987 | 70,000.00 |
| March 31, 1988 | 70,000.00 |
| March 31, 1989 | 70,000.00 |
| March 31, 1990 | 70,000.00 |

*The lease fee due March 31, 1986 will be reduced by $15,500 representing credits given on lease fees previously paid for PC versions. This credit allows usage of these PC versions through May 31, 1986. Licensee will either return these PC units by May 31, 1986, or, may continue to lease that PC hardware, on an annual basis, for a lease fee of $2,500 per year, paid in advance on each anniversary date.

II. Volume-Dependent Coding Fees

- paid annually at the end of the contract year for all coded terms in excess of 13 million. For each 1 million codes (or fraction thereof) returned during the year:

    - In excess of 13 million, but less than 18 million — $4,000
    - 18 million or more — $2,000

III. Annual Maintenance Fee

- paid quarterly in advance during each year of the contract as follows:

| | |
|---|---|
| March 31, 198x | $12,500.00 |
| June 30, 198x | 12,500.00 |
| September 30, 198X | 12,500.00 |
| December 31, 198x | 12,500.00 |

G013280

CONFIDENTIAL

Attachment D

AUTOCODER Performance Specifications

1. UPDATES:  Licensor will provide Licensee with updates to ICD-9-CM and CPT-4 databases and the AUTOCODER software by the 15th calendar day of each month, starting with April 15, 1986.

2. ACCURACY:  Licensee's pilot experience demonstrated AUTOCODER's ability to code to Licensee's specifications. To maintain an acceptable level of accuracy: 1) if Licensee notifies Licensor of inaccuracies in AUTOCODER, Licensor will remedy said inaccuracies within 45 days, and 2) Licensee will also have the ability to override most ICD-9-CM and CPT-4 codes returned through AUTOCODER's Term-to-Code and Code-to-Code Override features.

3. PRODUCT RESPONSE:  AUTOCODER, on Licensee's hardware, will return an ICD-9-CM or CPT-4 code, as appropriate, for a proper diagnostic or procedural term. The mainframe AUTOCODER function will have a response time similar to that experienced during the PC-based pilot when running on an IBM 3084 mainframe using IBM 3380's for disk storage. This response time will be maintained while supporting a throughput of sixty (60) transactions per minute for each copy of the database with independent access to an I/O channel, depending on Prudential's capacity utilization.

4. SERVICE RESPONSE:  Licensee will report problems to Licensor by telephone, with written confirmation to follow. Licensor will respond to critical problems within 24 hours; other difficulties will be responded to within 48 hours, except for reports of individual terms not coding or coding inaccurately. Problems with individual terms will be handled as outlined in Sections 1 and 2 above.

G013281

MCK 115937

Confidential Information Subject to D. Del. LP 26.2 - CONFIDENTIAL

04-CV-1258-SLR (D.Del.)

CONFIDENTIAL

Attachment E

Terms of Maintenance Agreement

1. Licensor will provide Licensee with monthly updates to the ICD-9-CM and CPT-4 databases to improve AUTOCODER's accuracy and its ability to code diagnosis and procedure terms.

2. Licensor will provide Licensee with periodic updates of the AUTOCODER software which improve response time and/or increase the ease of installation, updating or use of the product as defined in Attachment A. Licensee is encouraged to inform Licensor of desired software modifications, although some changes might require an additional development or license fee.

3. In recognition of the annual modifications made to CPT-4 (Current Procedural Terminology, Fourth Edition) and the periodic corrections made to ICD-9-CM (International Classification of Diseases, 9th Revision, Clinical Modification), Licensor will make available to Licensee the modifications and corrections to CPT-4 and ICD-9-CM. The modifications and corrections will be made available no later than 3 months after Licensor's receipt of Licensee's written request or 3 months after the release of said modifications or corrections, whichever is later.

G013282

MCK 115938

Confidential Information Subject to D. Del. LP 26.2 - CONFIDENTIAL    04-CV-1258-SLR (D.Del.)

**CONFIDENTIAL**



Robert F. Lewis, II, ChFC, CPCU
Vice President
Group Insurance Department

The Prudential Insurance Company of America
Group and Financial Services Office
56 North Livingston Avenue  Roseland, NJ 07068
201 994-8105

December 11, 1985

Mr. Scott Laidlaw
Vice President
GMIS
250 W. Lancaster Avenue
Suite 340
Paoli, PA  19301

Dear Scott:

This letter documents our intent to negotiate a license agreement with GMIS for AUTOCODER, a software product. Further, it authorizes you to begin to modify AUTOCODER to operate on our IBM mainframe computers, per the attached specifications (Attachment A). The fee for this modification is $75,000, which we will pay as follows:

- $25,000 to initiate the project (date of this letter)
- $25,000 after 30 days (approx. 1/20/86)
- $25,000 at project completion (approx. 2/20/86)

The Prudential Insurance Company of America may cancel this project at any time upon written notification to GMIS. If The Prudential cancels the project or elects not to license AUTOCODER, GMIS will refund any payments made, less GMIS's actual expenses. We will reimburse GMIS for expenses exceeding payments made. Under no circumstances will total payments exceed $75,000.

Sincerely,

R. F. Lewis II
Vice President

RFL:keb

G013288

Confidential Information Subject to D. Del. LR 26.2 - CONFIDENTIAL

MCK 115944

04-CV-1258-SLR (D.Del.)

CONFIDENTIAL

ATTACHMENT A

SPECIFICATIONS

for

MAINFRAME AUTOCODER

November 19, 1985

I. GMIS will modify AUTOCODER to operate in the following mainframe environment:

    Operating System:  MVS/XA
    Screen Handler:   CICS, Command Level
    Compiler:        OS/VS COBOL II
    File Access:     VSAM

II. GMIS will allow The Prudential to run acceptance tests in this environment.

III. Acceptance will be contingent upon the system's ability to return ICD-9-CM diagnosis or CPT-4 procedure codes, as appropriate, for valid diagnostic or procedure terms. This will be accomplished within the performance standards experienced during the microcomputer pilot of AUTOCODER (with consideration for the limitations of the host mainframe).

G013289

MCK 115945

Confidential Information Subject to D. Del. LP 26.2 - CONFIDENTIAL    04-CV-1258-SLR (D.Del.)

Memorandum For R. F. Lewis

**CONFIDENTIAL**

Subject: Encoders

From: A. M. Wood

Date: October 8, 1985

This memorandum proposes a primary and one alternative approach to purchasing an on-line, mainframe encoding system to serve the department's current and proposed health coding needs.

Viewpoints.

A meeting was held Friday, September 6, at which the following areas were represented: Group Claim, PACRS, PruTrac II, Group Systems, and Marketing. PHCS was represented by Dr. Dragalin. (Meeting minutes by Joanne Bates are attached.)

It was clear at this meeting that the earlier, opposite positions of PACRS and Claim remained firm but reflected different needs.

1. PACRS must secure enough detail to identify as accurate an ICD9 diagnosis code as it can. This precision is needed because the tables used by PACRS for the number of allowable days require a refined code.

2. Claim expects to do a high volume of coding and will accept the codes shown by physicians and hospitals or the descriptions provided by those same sources in order to keep coding costs reasonable. At this point in claim handling, no liabilities are determined by diagnosis coding, and we have not yet started CPT4 coding except for surgery, anesthesia and assistant surgery. For statistics-only usage, pinpoint accuracy is not demanded. Moreover, the codes will be only as accurate as the descriptions given by the provider. Fast and reasonably accurate results must be obtained.

   During the meeting, these needs were re-emphasized. Representatives from the Data Needs Task Force (Knapp and Maguire) reinforced the difference in cost between the positions.

Contending Systems.

We asked for proposals from two vendors: 1) Gabrielli Medical Systems and their encoder Autocoder. 2) Code 3 Health Information Systems/3M with their system, Codefinder. Other vendors were ruled-out earlier.

While each of the systems serves the interests of either Group Claim or PACRS unit, neither system fits the requirements of both organizations. Group Claim prefers Autocoder since, with the entry of limited information shown on the claim form, it will usually return a sufficiently accurate code. Codefinder is the favorite of PACRS because it allows a trained medical coder or nurse to select various decision branches until the best possible (most detailed) code is developed.

G013290

Confidential Information Subject to D. Del. LP 26.2 - CONFIDENTIAL

MCK 115946

04-CV-1258-SLR (D.Del.)

**CONFIDENTIAL**
-2-

### Speed and Staffing

3M declares that Codefinder is "as fast as" manual coding. Autocoder produces a code in roughly half the time of Codefinder. Autocoder does not require the same level of technical medical knowhow as Codefinder.

Encoding sections in the Claim divisions across the country would normally be staffed by lower level (03/04) people while the PACRS unit would use an LPN (Level 07 or above) to do its coding.

### Data Needs.

The Data Task Force has not yet released its formal report, but at a minimum we expect them to suggest diagnostic coding on all in-hospital claims. The projected cost of doing this nationally with Autocoder is approximately $1,000,000 less than doing it manually (or with Codefinder).

### Costs.

The following are the prices provided by GMIS and 3M. As you can see, both are quite comparable.

Vendor Costs

|   | 3M | Gabrielli (GMIS) |
|---|---|---|
| Development | $ 0 | $ 75,000 (Addl. Charge of $30,000 for Med-Coder) |
| Annual License | $150,000 (Addl fee of $30,000 for CPT-4) | $ 70,000 |
| Maintenance |  | 50,000 |
| 3 Year Total | $465,000* *(3M discounts to $125,000 if in one sum) | $435,000 |

Cost for Both Systems (<u>Primary Recommendation</u>) $900,000

Cost of GMIS and 3M P.C.'s (<u>Alternate Recommendation</u>)

| GMIS - 3 years | $435,000 |
|---|---|
| 3M PC - (10) For 3 Years |  |
| License Fees | $ 33,300 |
| P.C. Hardware Purchased at $7,400 (Presumes no residual value and no maintenance) | 74,000 |
| Total | $542,300 |

G013291

MCK 115947

Confidential Information Subject to D. Del. LP 26.2 - CONFIDENTIAL    04-CV-1258-SLR (D.Del.)

CONFIDENTIAL

-3-

Support

Both vendors need specification support from Prudential. We estimate this to be the equivalent of 1 F.T. level 20 for approximately 4 months.

Each vendor offers training assistance to the Prudential:

- 3M - $500 per day per location.
  (Estimate $2,500 for GFSO)

- GMIS - No charge for the first 5 sessions for GFSO.

Payback

Using cost data prepared by the Data Task Force and assuming that "manual" coding is equivalent to CODEFINDER the "savings" generated by Autocoder produce payback for both vendors systems according to the volume produced under the following rules:

1. Five digit coding for all claims except drug.

    3M - (Manual)  $7.1 million
    GMIS -          4.7
    "Savings"      $2.4 million - Payback 1st year

2. Five digit for hospital, surgery, and medical services.

    3M - (Manual)  $5.2 million
    GMIS -          3.5
    "Savings"      $1.7 million - Payback 1st year

3. Five digit for inpatient hospital and surgery only.

    3M - (Manual)  $1.2 million
    GMIS -           .8
    "Savings"      $ .4 million - Payback 3rd year

Accuracy.

We have tested both systems and find that both systems are accurate. Codefinder (3M) gives more precision since it uses more data and because it gives a number of choices to the trained coder. PACRS obtains more information than is traditionally shown on the claim form. Considering that a "retrospective" claim has only a limited amount of diagnosis or procedure information (unless we make a telephone call to search out additional details) the accuracy of GMIS is acceptable.

Current Position.

Both GMIS and 3M have PC versions which are currently in use at Pru. CGO uses 2 Autocoders to handle Marriott and its other coding business. PACRS, GFSO is currently using Codefinder and has an Autocoder at call. Ten Codefinder units have been ordered for the PACRS units to take care of immediate coding needs.

G013292

CONFIDENTIAL

-4-

### Delivery Time.

GMIS feels it can deliver the first mainframe version for testing within 60 days of contract signing and the balance of the versions within 90 days.

3M has given us a quote of 120 days to develop and deliver their system.

The development efforts for both systems will require significant Prudential participation.

### Miscellaneous.

1) GMIS is a small firm located in Paoli, Pennsylvania which seems to have some credentials. The Prudential, through its venture capital subsidiary, has some investment in the company. GMIS appears most anxious to have our business and has been more responsive than 3M to our requests. 2) 3M is a large company which purchased the Codefinder system from its original developer. They are using it to market to the hospital industry. GMIS markets its hospital version through McDonnell Douglas. 3) 3M is unable to do the mainframe version with its own people. They have chosen a software firm - Computer Tasks - located in Pittsburgh, to develop the system under their guidance. GMIS also does not have the programming support to do the whole job and has reached out to employ other systems analysts and programmers to do much of the programming work for them. It, similarly, will be done under the guidance of GMIS personnel.

### Recommendation

We reached a point several months ago at which it became clear that the operative question was whether the needs of all our users could be addressed by either of the systems under consideration. The primary focus of that question was the issue of PACRS' need versus Claim's. In analyzing the question, we discussed potential systems modifications with both vendors. In addition, we reevaluated our stated needs to see how they might be adjusted to fit the available software. The conclusions we've drawn as a result of that process are 1) the unique needs of PACRS and Claim cannot and should not be revised to force a fit with one of the vendor products and 2) revising either of the available systems to fit the combined needs of PACRS and Claim isn't practical, as it would involve a virtual rewrite of the entire product.

   1. Our first recommendation, therefore, is that the Department contract with both vendors for the development of mainframe encoding systems. The obvious advantage to this approach is that the end products will more adequately fill our needs than either product would individually. In addition, the dual purchase allows us to study both approaches to coding in detail. The lessons learned there will be invaluable in the design of PRUTRAC II's coding logic.

G013293

MCK 115949

Confidential Information Subject to D. Del. LP 26.2 - CONFIDENTIAL    04-CV-1258-SLR (D.Del.)

CONFIDENTIAL
-5-

Of course, the disadvantage to a dual purchase is the additional $400,000 expense up front. We feel the flexibility both systems would provide and the payback Claim will realize from the introduction of a computerized encoder more than offsets that expense.

2. An alternative is to have the mainframe application produced by GMIS since Claim needs are for high volume, easy and prompt coding and lowest cost. PACRS' needs can be satisfied by using the current PC version. Their annual license fee is $6,000 for the first copy and $1,700 for each subsequent copy. In addition, it's necessary that Prudential purchase IBM XTs with a "Bernoulli" box. The total cost of each hardware configuration is $7,400.

Note that one of Dr. Dragalin's concerns is that if we have only Autocoder in the mainframe version, PHCS may be locked out from using the 3M version for the future. This issue is best addressed by Rec. #1, however, there are other alternatives as well.

Unknowns and Negotiable.

1. We have asked each of the vendors if they would sell us the system for use in PRUTRAC II. a)3M replied that it is not their usual approach but might consider b)GMIS indicated this sounds like a negotiable point.

2. There are some additional provisions we would like in a contract with the vendor. There may be some leeway on price as well as special contractual arrangements for the future. Once we have executive direction, we will pin down the vendors to rock bottom terms.

Please let me know when you will be available to discuss this issue. The availability of an encoding system will affect the timing of implementing the Data Task Force's recommendations.

A. M. Wood
V.P., Group Claims
Group Department, GFSO

AMW:kb

cc: Dragalin
    Gardner
    Brause
    Miller
    Walker
    Awishus
    Bernard
    Vornehm
    Bauman
    Knapp
    Koziol
    Maguire
    Ziesmer
    Bates

G013294

Confidential Information Subject to D. Del. LP 26.2 - CONFIDENTIAL

MCK 115950
04-CV-1258-SLR (D.Del.)

CONFIDENTIAL

<u>MEMORANDUM FOR FILE</u>

Subject: Encoder Systems Meeting - September 6, 1985

Attendees: C. Gardner, K. Brause, D. Dragalin, R. Miller, A. Wood,
E. Bernard, D. Engle, A. Knapp, M. Koziol, G. Maguire,
D. Perkins, A. Ziesmer, J. Bates, M. Bowman, J. Kiernan

From: Jo Ann Bates, CLU

Date: September 10, 1985


Art Wood opened the meeting by distributing a chart he prepared which compared the 3M and GMIS systems on each of the points outlined in the specifications for the mainframe version of the encoder system. As the chart was reviewed, the following points were raised:

1. Doug pointed out that 3M is already working on a version of Codefinder which will run on IBM 4300 series equipment. This may put them in a better position to deliver a mainframe version quickly.

2. The specifications stated that the programs should be written in either Cobol or Assembler. Alicia mentioned that there may be a problem if either company opts for Cobol II since its use in Pru systems has not yet been approved by ISOF.

3. An on-line DRG grouper was part of the original specifications. Neither mainframe bid addressed this need. PC Codefinder includes a grouper at extra cost. Since our DRG grouper activities will probably be retrospective, the need for an on-line grouper is questionable.

4. HCPCS will be added to PC Codefinder in 1986.

5. The GMIS proposal includes a $75,000 price for development of the mainframe system. Substantial input from Pru will be required during the development phase.

6. GMIS requested access to PRU hardware during mainframe development. Alicia's investigation indicated that this was not practical.

7. According to Dan Dragalin, GMIS was pressured by Pru Venture Capital to lower their prices and their proposal reflects this. Dan questioned whether this was done with 3M. Art indicated that we had not discussed pricing with 3M. We may not have as much leverage with them (due to the size of their Company and the relative importance of a coding contract with Pru).

   Further discussions regarding price reductions from both vendors will take place at the time of contract negotiations. In addition

G013295

Confidential Information Subject to D. Del. LP 26.2 - CONFIDENTIAL

MCK 115951

04-CV-1258-SLR (D.Del.)

CONFIDENTIAL

-2-

we should pursue a) an outright purchase of the code and database and b) limitations on the vendor's marketing rights to any system developed using Prudential expertise. We must also evaluate the capability of either vendor to support Prudential's encoding volume.

8. Based on the information gathered by the Medical Data Task Force, the payback period for the purchase of either mainframe system would be of short duration if we assume that we will be coding all claims except drug bills.

9. The 3M product is designed in such a way that when a key word is entered, the system reads only the number of letters necessary to select a menu of terms from the data base. The next screen is brought up without hitting the "enter" key. Alicia noted that in the CICS environment, data entered at the keyboard cannot be read by the application program until the 'enter' key is depressed. Since this is a radical departure from the way the PC version of the system is designed, we must verify with 3M that there is a way to adapt this feature to the mainframe environment.

10. At present, we are uncertain as to the number of claims per hour that can be processed through either system. However, it is clear that Autocoder is 'faster' than Codefinder (a quick review of the Codefinder 'earlier bailout' update indicates it will not significantly improve productivity). For purposes of the Medical Data Task Force costs projections, hourly production figures of 80 (Autocoder) and 70 (Codefinder) were used.

11. Codefinder users will require a more extensive background in Medical terminology than Autocoder users. The concensus seems to be that Codefinder requires LPNs (or individuals with similar training).

12. The comparative accuracy of both systems was discussed in some detail. The concensus of the group seemed to be that the determinant factor is the level of information available to the encoder. PACRS LPNs have chart-level information at their disposal. Codefinder makes much better use of this detailed information than Autocoder. However, in the claim environment where only limited diagnostic detail is available, the accuracy of the two systems would appear to be equivalent.

13. PACRS has ordered 10 Codefinder PCs which should fill their encoding needs for the present. The Claim area must have a mainframe encoder as quickly as possible (if we intend to implement the Medical Data Task Force recommendations). PruCare-Plus' needs are an unknown at this point.

The need for a single mainframe encoder for all users probably won't become an issue until the installation of PRUTRAC II. Charlie Gardner suggested that we table any discussion of the format of a PRUTRAC II encoder for the time being as our encoding needs and the available products to address those needs will continue to evolve over the next 18 months.

G013296

Confidential Information Subject to D. Del. LP 26.2 - CONFIDENTIAL

MCK 115952
04-CV-1258-SLR (D.Del.)

The meeting ended with the following recommendations being agreed upon by the attendees:

- PruCare Plus should be contacted to determine what their coding needs will be.

- A memo should be sent to the RGOs instructing them that there should be no further investigation nor development of encoder systems on their part.

- A proposal should be written recommending the purchase of a mainframe version of both 3M Codefinder and GMIS Autocoder. The savings derived from the use of a mainframe encoder in Claim (as opposed to manual code lookups) will more than pay for both systems. In addition, simultaneous development of 2 encoders will allow us to find the most efficient and cost-effective alternative for use in the PRUTRAC II environment.

Jo Ann

Claim Consultant
Health Systems Section
Group Claim Division
Group Department, GFSO

cc: Attendees

G013297

LAW OFFICES

# COBRIN GITTES & SAMUEL

PATENTS, TRADEMARKS AND COPYRIGHTS

PETER T. COBRIN
MARVIN S. GITTES
RICHARD I. SAMUEL

DAVID A. JACOBS
KERRY P.L. MILLER
EILEEN M. EBEL
RICHARD M. LEHRER
JAMES E. BRANDT
JILL C. GREENWALD
DAVID J. GARROD, Ph.D.*

*REGISTERED U.S. PATENT AGENT ONLY

750 LEXINGTON AVENUE
NEW YORK, N.Y. 10022

TELEPHONE (212) 466-4000
TELECOPIER (212) 466-4007

NEW JERSEY OFFICE
1271 COOPER ROAD
SCOTCH PLAINS, NJ 07076
TELEPHONE (908) 756-7406
TELECOPIER (908) 754-5930

January 18, 1995

**Via Federal Express**

Honorable Clarence C. Newcomer
United States District Court
 for the Eastern District of Pennsylvania
U.S. Courthouse - Room 13614
601 Market Street
Philadelphia, PA 19106

  Re: GMIS, Inc. v. Health Payment Review, Inc.
     No. 94-CV-056
     <u>AMENDED WITNESS LIST</u>

Dear Judge Newcomer:

  Plaintiff GMIS hereby respectfully files the following amended list of witnesses which it intends to call at the Trial of this Action:

  1. Dr. Shimon Schocken is a fact and expert witness skilled in the computer science arts. Dr. Schocken will testify as to facts concerning the state of the art as of the date of invention of the '164 Patent, the skill in the art as of that date, and with respect to the matters raised in his expert report.

  2. James Reisman is a fact and expert witness who will testify as to facts relating to the United States Patent and Trademark Office, who will explain the file history of the patent in suit and will also testify with respect to matters raised in his expert report.

  3. Mr. Thomas Owens is Chief Executive Officer of Plaintiff GMIS, Inc., who will testify as to the business and products of GMIS, as to statements made by Defendant's agents to others after the patent issued and as to overall knowledge of the claims processing industry prior to the date of invention of the '164 patent. In particular, Mr. Owens will also testify with regard to the initial development of the GMIS ClaimCheck



EXHIBIT
H-118

Confidential Information Subject to D. Del. LR 26.2

MCK 046088

04-CV-1258-SLR (D.Del.)

# COBRIN GITTES & SAMUEL

Honorable Clarence C. Newcomer
January 18, 1995
Page 2

product, GMIS' AUTOCODER product which was sold by GMIS prior to the date of invention of the '164 patent, and his prior employment at HSI (Health Systems International) where he was involved with the sale of *inter alia*, the MCMS (Medical Claims Monitoring System) computer system which detected fraudulent medical claims via examination of service codes prior to the date of invention of the '164 patent. Mr. Owens will identify and discuss the User's Guide for the MCMS system, and the December 23, 1994 letter from Ms. Linda Ayr to Mr. Garrard Kramer and the MCMS brochure attached thereto.

4. Dr. Robert Hertenstein, a named inventor of the '164 patent - Dr. Hertenstein will testify by way of deposition as already submitted to the Court, as to the background of the '164 patent, what the patent discloses and what it fails to disclose.

5. Dr. Don Holloway, a named inventor of the '164 patent - Dr. Holloway will testify by way of deposition as already submitted to the Court, as to the background of the '164 patent, what the patent discloses and what it fails to disclose.

6. Virginia Klenske - Ms. Klenske is a technical person employed by GMIS and will testify with respect to the GMIS products accused of infringement, demonstrating facts which form the basis of a conclusion of non-infringement. Ms. Klenske will also testify as to information relating to GMIS' AUTOCODER product.

7. Michael Stare - Mr. Stare is employed by defendant and will testify by way of deposition as already submitted to the Court, concerning communications made on behalf of defendant to GMIS customers with respect to the '164 patent.

8. George Goldberg, a named inventor of the '164 patent - Dr. Goldberg will testify by way of deposition concerning his work on the subject matter of the '164 patent with respect to what the patent does and does not disclose, and he will testify with regard to prior art.

9. Marcia Radosevich - Ms. Radosevich is the chief executive of defendant and will testify either personally or by deposition as already submitted to the Court, concerning communications made by and on behalf of defendant with respect to the patent in suit and other matters contained in her deposition. Ms. Radosevich will also testify with regard to prior art. In particular, Ms. radosevich will refer to an article in PR Newswire, (June 24, 1986 relating to the computer program Unified Claims which incorporated

MCK 046089

Confidential Information Subject to D. Del. LR 26.2          04-CV-1258-SLR (D.Del.)

## COBRIN GITTES & SAMUEL

Honorable Clarence C. Newcomer
January 18, 1995
Page 3

"Patterns of Treatment").

10. Gary Frazier -- Mr. Frazier is a stock analyst and will testify by way of deposition concerning communications he received from representatives of defendant concerning the '164 patent and its effect on plaintiff.

11. Michael Thurmond is the Chief Financial Officer of plaintiff GMIS and will testify as to financial information relevant to GMIS, its products and business.

12. John Blaney is the founder of a company, ASA, which developed computer systems which detected fraudulent medical claims via examination of service codes prior to the date of invention of the '164 patent. *Inter alia*, ASA worked with Health Data Institute (HDI) in developing one such system. He will testify that Marcia Radosevich was HDI Project Manager for that system. Mr. Blaney will also testify as to these claims processing systems and other products which constitute prior art relevant to the patent in suit. In particular, Mr. Blaney will testify about information based on and concerning AMS December 1986, Claim Level Edits (103 page manual), and Advanced MedLogic Systems Product Overview (May 1987).

13. Joanne Hilferty is President of Medical Intelligence, Inc., a subsidiary of GMIS, and Vice President of GMIS. She will testify concerning prior art relevant to the patent in suit, including work done at HDI in connection with computer systems which detected fraudulent medical claims via examination of service codes prior to the date of invention of the '164 patent. She will also testify with regard to facts indicating that Ms. Radosevich was aware of such activities prior to the date of invention. In particular, Ms. Hilferty will testify about information based on and concerning AMS December 1986, Claim Level Edits (103 page manual), and Advanced MedLogic Systems Product Overview (May 1987).

14. Susan Fitzpatrick is Associate Director, Medical Management Programs, Metropolitan Life Insurance Company, Westport, Connecticut. Ms. Fitzpatrick will testify by way of video deposition as to computer systems of Metropolitan Life Insurance Company which detected fraudulent medical claims via examination of service codes prior to the date of invention. In particular, Ms. fitzpatrick will testify as to the prior art computer system that Metropolitan Life Insurance Company was using on a commercial basis called Unified Claims. Unified Claims incorporated "Patterns of Treatment" on an electronic basis prior to the date of invention of the '164 patent.

Confidential Information Subject to D. Del. LR 26.2

MCK 046090

04-CV-1258-SLR (D.Del.)

COBRIN GITTES & SAMUEL

Honorable Clarence C. Newcomer
January 18, 1995
Page 4

15. Robert Goldscheider is an attorney and Chairman of The International Licensing Network, Ltd. Mr. Goldscheider is an expert on the subject of patent damages and will testify as to the issue of damages and other issues raised in his expert report which will be filed under separate cover.

16. Robert Leif D.D.S. is a dentist and President of American Dental Examiners. Dr. Leif will testify with regard to prior art. In particular, Dr. Leif will testify as to the development of a computer system which embodied a database of dental service codes and a set of relationships among the codes which system was commercially available prior to the date of invention of the '164 patent and which system was developed in conjunction with ASA.

17. Carin Carlson - Ms. Carlson is Vice President of GMIS, Inc. and will testify as to development of GMIS' ClaimCheck and as to claims processing systems and other products which constitute prior art relevant to the patent in suit.

18. Bob Barger M.D. - Dr. Barger will testify as to the prior art. Particularly Dr. Barger will testify as to claims processing systems which were publicly known or commercially used prior to the date of invention of the '164 patent.

19. Aetna Representatives - Representatives from Aetna will testify as to communications that took place Aetna and Health Payment Review Inc prior to the date of invention and communications that took place between Aetna and GMIS.

20. U.S. Healthcare Representatives - Representatives from U.S. Healthcare will testify as to claims processing systems and other products which constitute prior art relevant to the patent in suit.

21. Brian Cahill -- Mr. Cahill is the Chief Financial Officer of Health Payment Review, Inc. and will testify with respect to the patent application process as well as with respect to the business of Health Payment Review, Inc., its competition with GMIS and its damages.

22. Systems Architects and members of the clinical affairs staff of Health Payment Review, Inc., Thomas J. Boyle, David J. Rullo, M.D. and Lawrence G. Miller, M.D. will testify with respect to Health Payment Review, Inc's CodeReview Product, with respect to how the product is manufactured, maintained and operated and the program disclosed

Confidential Information Subject to D. Del. LR 26.2

MCK 046091

04-CV-1258-SLR (D.Del.)

# COBRIN GITTES & SAMUEL

Honorable Clarence C. Newcomer
January 18, 1995
Page 5

in the '164 patent.

  23. Sam Fager, M.D. - Dr. Fager will testify as to communications between Don Holloway and Aetna Life and Casualty Insurance Company. In particular, Dr. Fager will identify and discuss documents which Health Payment Review, Inc. produced to GMIS after the close of discovery.

  24. Howard Bailit, M.D. - Dr. Bailit was Vice President of Aetna Life Insurance Company and will testify as to communications between the Health Policy Institute and Aetna Insurance Company. In particular, Dr. Fager will identify and discuss documents which Health Payment Review, Inc. produced to GMIS after the close of discovery.

  25. Christine Stavarino - Ms. Stavarino will testify as to communications between Don Holloway and Aetna Insurance Company. In particular, Ms. Stavarino will identify and discuss documents which Health Payment Review, Inc. produced to GMIS after the close of discovery.

  26. Richard Egdahl, M.D. - Dr. Egdahl will testify as to the prior art. In particular, Dr. Egdahl will testify as to claims processing systems and other products which constitute prior art relevant to the patent in suit.

<div style="text-align:right">
Very truly yours,

*Richard M. Lehrer*
Richard M. Lehrer, Esq.
Counsel for Plaintiff GMIS, Inc.
</div>

RIS/IS/DAJ/RL
cc: William T. Hangley, Esq.
   Joel S. Goldhammer, Esq.

Confidential Information Subject to D. Del. LR 26.2

MCK 046092

04-CV-1258-SLR (D.Del.)