IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC, Plaintiff, v. THE TRIZETTO GROUP, INC., Defendant. | ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION NO. 04-1258-SLR **REDACTED PUBLIC VERSION** |

**PLAINTIFF MCKESSON INFORMATION SOLUTIONS LLC'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO STRIKE ALLEGED PRIOR USES FIRST ASSERTED AFTER THE CLOSE OF DISCOVERY**

Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff
McKesson Information Solutions LLC

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
(650) 470-4500

DATED: July 10, 2006
Redacted Version Filed July 14, 2006

# TABLE OF CONTENTS

Page

I. SUMMARY OF ARGUMENT ..... 1

II. TRIZETTO'S FAILURE TO DISCLOSE DURING DISCOVERY ITS INTENT TO RELY ON CLAIMFACTS, HCPS, AMS AND AUTOCODER WARRANTS EXCLUSION OF THAT PRIOR ART ..... 1

A. TriZetto's Contention That McKesson Is Avoiding The "Merits" Of Previously Unasserted Prior Art Is Unfounded ..... 1

B. The Court Has Repeatedly Held That An Infringer Cannot Rely On Prior Art If The Party Did Not Disclose During Fact Discovery Its Intent To Rely Thereon ..... 2

C. Contrary To TriZetto's Assertions, ClaimFacts Without ClinicaLogic And HCPS Were Not Asserted As Prior Art During Discovery ..... 3

D. TriZetto Was Well Aware Of Both AMS And AutoCoder During Fact Discovery But Did Not Timely Assert Either As Prior Art ..... 5

1. AMS. ..... 5

2. AutoCoder. ..... 8

E. TriZetto's Untimely Assertion Of Prior Art Has Substantially Harmed The Court And McKesson ..... 9

F. McKesson Has Applied The Same Interpretations Of Claims 1 And 2 Throughout This Case ..... 12

III. CONCLUSION. ..... 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Praxair, Inc. v. ATMI, Inc. ("Praxair II")*,
Case No. 03-1158-SLR, 2005 WL 3159054 (D. Del. November 28, 2005) ......... 2, 3, 10

*Praxair, Inc. v. ATMI, Inc.*,
231 F.R.D. 457 (D. Del. 2005)........................................................................ 3, 9, 10

McKesson respectfully submits its reply brief in support of its Motion to Strike Alleged Prior Uses First Asserted After the Close of Discovery.

## I. SUMMARY OF ARGUMENT.

The Court should strike TriZetto's belatedly disclosed prior art systems—ClaimFacts without ClinicaLogic, HCPS, AMS, and AutoCoder—because it is undisputed that TriZetto did not assert them as prior art during fact discovery. TriZetto cannot justify its failure to assert ClaimFacts and HCPS by pointing to its identification of *other* prior art. The record is clear that the prior art actually asserted during discovery provides absolutely no indication that TriZetto intended to rely on ClaimFacts without ClinicaLogic or HCPS. TriZetto's assertion that AMS and AutoCoder were hidden from TriZetto also fails because TriZetto was well aware of both products during discovery, having admittedly received numerous documents from McKesson on both products and having sought and obtained deposition testimony about them. TriZetto's decision to wait until weeks and months after close of discovery to assert new prior art is inexcusable and must be excluded under the Court's precedent and rulings in this case.

## II. TRIZETTO'S FAILURE TO DISCLOSE DURING DISCOVERY ITS INTENT TO RELY ON CLAIMFACTS, HCPS, AMS AND AUTOCODER WARRANTS EXCLUSION OF THAT PRIOR ART.

### A. TriZetto's Contention That McKesson Is Avoiding The "Merits" Of Previously Unasserted Prior Art Is Unfounded.

TriZetto attempts to deflect its failure to timely assert ClaimFacts, HCPS, AMS and AutoCoder during discovery by casting McKesson's reliance on the Court's orders and the Federal Rules of Civil Procedure as avoiding the "merits" of this alleged prior art. (D.I.

455 at 1.)[1] However, if these uses so "clearly invalidate[] Claims 1 and 2" as TriZetto now contends, there is no legitimate excuse for TriZetto's failure to include them with the ***165*** other alleged prior art references it concluded were *more relevant* and asserted during discovery. Instead, TriZetto's summary judgment motion abandons nearly all of the prior art asserted during discovery and resorts to entirely new prior art that was not subjected to the discovery process that exposed the defects in its asserted defenses. (*See* D.I. 414.) TriZetto unilaterally precluded full and fair discovery into what, if anything, these alleged systems actually did. TriZetto's election not to assert these uses during discovery necessitates their exclusion.

**B. The Court Has Repeatedly Held That An Infringer Cannot Rely On Prior Art If The Party Did Not Disclose During Fact Discovery Its Intent To Rely Thereon.**

TriZetto does not dispute that the Court's precedent and its rulings in this case require that TriZetto must have disclosed during fact discovery its intent to rely on prior art or be excluded from relying on such art. *See Praxair, Inc. v. ATMI, Inc. ("Praxair II")*, Case No. 03-1158-SLR, 2005 WL 3159054, *4 (D. Del. November 28, 2005) ("Prior art references must be disclosed during fact discovery and the parties must disclose their intent to rely thereon, regardless of whether or not the opposing party is aware of the reference."); D.I. 116 at 74:20-24 ("Well, it does not matter whether the prior art is known to them [McKesson]. What matters is if you [TriZetto] have said we're going to rely on this prior art and therefore you're on notice that you need to take discovery on this prior art. If you cannot demonstrate that, then you will be precluded ..."). (*See also* D.I. 417 at 9-11.)

---

[1] Contrary to TriZetto's argument, McKesson addressed the substance of the limited evidence TriZetto offered regarding its untimely prior uses in its summary judgment briefing. (*See* D.I. 441; D.I. 414.)

Such exclusion applies regardless of how familiar the patentee is with the belatedly asserted prior art. *See Praxair, Inc. v. ATMI, Inc.*, 231 F.R.D. 457, 464 n.9 (D. Del. 2005); *Praxair II*, 2005 WL 3159054 at *4. Indeed, in *Praxair*, the belatedly disclosed prior art included one of the asserted patents (against another patent-in-suit), an article discussed in that patent, and a reference that was admitted to be prior art during prosecution of another patent-in-suit. (Barlow Decl., Ex. 1 at 4.)[2] Nevertheless, the Court excluded all of the references, finding that the fact "that the plaintiffs were aware of the prior art references is not sufficient to put the plaintiffs on notice that defendants are relying on the references in their invalidity defenses." *Praxair*, 231 F.R.D. at 464 n.9. Notably, on reargument as to one of the excluded references, the Court affirmed its ruling (*Praxair II*, 2005 WL 3159054 at *4), despite the fact that the original patentee had made admissions about the content of that art during prosecution of one of the patents-in-suit. (Barlow Decl., Ex. 2 at 77.)

TriZetto tries to avoid exclusion of its four newly asserted prior art systems by arguing that two systems—ClaimFacts without ClinicaLogic and HCPS—were adequately disclosed during discovery through TriZetto's assertion of other art, and the other two systems—AMS and AutoCoder—were somehow hidden from TriZetto during discovery. As shown below, these arguments all fail.

### C. Contrary To TriZetto's Assertions, ClaimFacts Without ClinicaLogic And HCPS Were Not Asserted As Prior Art During Discovery.

There is no question that TriZetto failed to expressly assert during discovery its reliance on ClaimFacts without ClinicaLogic and HCPS as prior art. TriZetto's assertion

---

[2] Declaration of Michael A. Barlow in Support of Plaintiff McKesson Information Solutions LLC's Reply Brief in Support of Its Motion to Strike Alleged Prior Uses First Asserted After the Close of Discovery, filed concurrently herewith.

of "ClinicaLogic for ClaimFacts" and "Discorp Software" does not constitute adequate disclosure of those systems or otherwise avoid their exclusion.

*First*, TriZetto cannot rely on its disclosure of "ClinicaLogic for ClaimFacts" because that disclosure related to the ClinicaLogic functionality of ClaimFacts, not the ***pre-***ClinicaLogic version of ClaimFacts that TriZetto is now relying on as prior art. In describing "ClinicaLogic for ClaimFacts" in its interrogatory response, TriZetto made clear that it was focusing on ClinicaLogic, not ClaimFacts: "Beginning as early as late 1987 and finishing in 1988, Erisco developed the ClinicaLogic clinical editing module for its ClaimFacts product. ClinicaLogic used medical criteria created by physicians at Pace Healthcare Management, under the direction of Dr. Philip Hawley." (D.I. 378, Ex. 1 at 62.) In addition, TriZetto does not appear to have produced, and did not cite in its answering brief or its summary judgment motion regarding ClaimFacts, any documents relating to the pre-ClinicaLogic ClaimFacts. Rather, all of the documents regarding ClaimFacts produced by TriZetto in this case concern ClaimFacts with ClinicaLogic.[3]

*Second*, TriZetto's disclosure of "Discorp Software" does not adequately disclose HCPS. Although TriZetto now claims that Discorp Software is the same thing as HCPS, TriZetto did not disclose this information until it filed its summary judgment motion on June 1, 2006, more than eight months after the close of fact discovery. Moreover, TriZetto did not provide any information during discovery from which one could have discerned this purported correspondence.

---

3 As a matter of law, TriZetto cannot assert ClaimFacts with ClinicaLogic as prior art because, as TriZetto's Executive Vice President Anthony Bellomo testified at trial, ClinicaLogic was developed in 1989, which is after the '164 patent's priority date of September 30, 1988. (Barlow Decl., Ex. 3 at 1098:23-24 ("Q. And when was it [ClinicaLogic] developed? A. In 1989.").)

In its interrogatory response, TriZetto identified "Discorp Software" as the asserted prior art product and Novalis as the company that had offered the product. (D.I. 378, Ex. 1 at 63.) TriZetto did not mention anything about HCPS or the company that offered it, Cortron. That TriZetto happened to mention "Health Claims Processing System" in its last-minute disclosure of Donald Demers as a third party witness does not cure TriZetto's failure to assert "Cortron's Health Care Processing System" as prior art. In identifying Mr. Demers, TriZetto provided the following description:

> Mr. DeMers was the Founder and President of Discorp Software and is likely to have discoverable information regarding the development of a software system called Discorp from Novalis that performed code checking and verified accuracy of code, and further developed a system called a Health Claims Processing System.

(D.I. 381, Ex. 23 at 4.) TriZetto did not claim that HCPS is prior art or provide any information about HCPS (and even misidentifies it as "Health Claims Processing System"). In addition, the foregoing description refers to Discorp and HCPS as separate products. Based on this information, no one would have understood that Discorp Software and HCPS were the same or that TriZetto was asserting HCPS as prior art.

Because TriZetto did not disclose its intent to rely on ClaimFacts without ClinicaLogic or HCPS as prior art during discovery, both references must be stricken.

**D. TriZetto Was Well Aware Of Both AMS And AutoCoder During Fact Discovery But Did Not Timely Assert Either As Prior Art.**

**1. AMS.**

TriZetto's assertion that McKesson hid AMS from TriZetto is wrong because McKesson was clearly forthcoming during discovery and gave TriZetto all the information McKesson possessed regarding AMS. TriZetto concedes that McKesson produced numerous documents regarding AMS more than four months before close of discovery,

including "the AMS documents upon which TriZetto relies in this case." (D.I. 455 at 10.) On April 28, 2005, McKesson produced the AMS materials upon which TriZetto bases its defense (D.I. 408, Exs. O and P)—documents TriZetto asserts "***clearly and completely*** explain the relevant features of AMS." (D.I. 406 at 35 n.12. (emphasis added).) On May 3, 2005, McKesson produced the Pre-Trial Memorandum referenced in TriZetto's summary judgment motion (D.I. 408, Ex. R), which TriZetto argues shows that GMIS "actually asserted [AMS] as prior art during the litigation" between GMIS and HPR. (D.I. 406 at 32.) Thus, McKesson provided TriZetto all the documents TriZetto contends it needed regarding AMS months before the close of discovery.

TriZetto's argument that McKesson did not identify AMS in its interrogatory responses is a red herring. TriZetto cites to Interrogatory Nos. 6, 7, and 9, but never explains how the identification of AMS would have given it any better understanding than the documents McKesson produced early in discovery. Interrogatory 9, the only interrogatory TriZetto substantively addresses, was directed to TriZetto's inequitable conduct defense and asked McKesson to identify "prior art" that the inventors or their agents were aware of prior to "filing the '164 PATENT." (D.I. 456, Ex. 13 at 7.) McKesson, subject to its stated objections to this flawed request, truthfully responded that "the inventors and prosecuting attorneys disclosed all material prior art of which they were aware" to the PTO. (D.I. 408, Ex. V at 15-16.) Notably, two of TriZetto's law firms reviewed McKesson's response to this interrogatory and concluded that it was sufficient and never challenged McKesson's objections or response. (*See* D.I. 442, Exs. 6-8.) In addition, Interrogatory Nos. 6 and 7 are facially inapposite since Interrogatory No. 7 asked for products marketed by McKesson and Interrogatory No. 6 asked about any prior

"disclosures" of "any claimed invention of the '164 patent." McKesson has never marketed AMS and even TriZetto's expert, Dr. Davis, testified that AMS was not a disclosure of any claimed invention, as it did not anticipate any of the '164 claims. (D.I. 408, Ex. G at 200:6-19.)

TriZetto argues that it did not assert AMS in discovery because it did not appreciate its purported significance. Whether TriZetto failed to appreciate the purported significance of prior art in time to assert it in discovery does not justify TriZetto's nondisclosure. More than four months before the close of discovery, McKesson produced to TriZetto the information that TriZetto claims "clearly and completely explain the relevant features of AMS" (D.I. 406 at 35 n.12) and should not be held responsible for TriZetto's alleged failure to appreciate that information. To permit otherwise would create an exception that would effectively swallow the rule requiring an infringer's timely assertion of prior art.

In its opposition to McKesson's summary judgment motion regarding anticipation and obviousness, TriZetto stated that it did not appreciate the significance of AMS until completing Dr. Goldberg's first day of deposition on September 13, 2005. (D.I. 406 at 32-33.) As TriZetto admits, this occurred "three days before fact discovery closed." (*Id.* at 33.) Thus, TriZetto had time to assert AMS before the close of discovery, but chose not to.

In its answering brief to McKesson's motion to strike, TriZetto changes its story to assert that it did not appreciate the significance of AMS until after completing the second day of Dr. Goldberg's deposition on September 28, 2005. (D.I. 455 at 11.) First, TriZetto's revised story does not change the fact that TriZetto was well aware of AMS during discovery and did not timely assert it as prior art. Moreover, this new version of the story does not explain why TriZetto waited another month to assert AMS in its expert's

invalidity report, particularly since the Court was already considering excluding the 15 prior uses that TriZetto asserted at the end of fact discovery. Under the circumstances, the only proper course of action for TriZetto would have been to immediately inform the Court that it had another prior use it wanted to assert and to have the Court consider AMS with the 15 prior uses discloses at the end of discovery. TriZetto did not, deciding instead to wait another month before disclosing AMS.

Both versions of TriZetto's "failure to appreciate" story also fail because nothing about Dr. Goldberg's first or second day of deposition testimony could have triggered TriZetto's new understanding about AMS REDACTED

REDACTED

REDACTED In fact, TriZetto did not even rely on any of Dr. Goldberg's deposition testimony to support its summary judgment motion regarding AMS. (D.I. 380 at 25-27 & 31-32.)

TriZetto's failure to assert AMS until more than a month after close of discovery is unjustified and warrants AMS's exclusion.

**2. AutoCoder.**

There is no question that TriZetto also knew of AutoCoder during fact discovery. TriZetto admits that "[d]ocuments describing AutoCoder were produced by McKesson in this litigation." (D.I. 455 at 13 (emphasis omitted).) In fact, as with the AMS documents, the AutoCoder documents identified in TriZetto's answering brief were produced on April 28, 2005 and May 3, 2005—more than four months before fact discovery closed. (Barlow Decl., Exs. 4 & 5.) In addition, much of the evidence regarding AutoCoder on which TriZetto relies for its summary judgment motion consists of deposition testimony of

Dr. Don Holloway, which was obtained on September 7 and 8, 2005—more than a week before fact discovery closed. (D.I. 380 at 24-25.)

TriZetto incorrectly argues that "the relevance of AutoCoder only became clear when McKesson revealed its positions at trial" regarding being able to practice claim 1's determining step by checking a database other than the predetermined database. (D.I. 455 at 13.) As explained below, this interpretation of claim 1 is the same one that McKesson has advanced throughout this case and the same one that TriZetto applied during discovery. (*See* § II.F. at 12-16.) Because TriZetto failed to timely assert AutoCoder as prior art, TriZetto must be precluded from relying thereon.

**E. TriZetto's Untimely Assertion Of Prior Art Has Substantially Harmed The Court And McKesson.**

TriZetto's decision to wait until long after close of fact discovery to assert ClaimFacts, HCPS, AMS and AutoCoder has harmed the Court and McKesson. As demonstrated in McKesson's opening brief, TriZetto's flouting of discovery deadlines, the Court's Scheduling Order, and the Court's order limiting TriZetto to the prior art identified during discovery is a direct attack on the Court's authority. (D.I. 417 at 13, citing *Praxair*, 231 F.R.D. at 463 ("The flouting of discovery deadlines causes substantial harm to the judicial system.") (internal quotations omitted).) TriZetto does not even address this issue in its answering brief. Indeed, TriZetto admits that it could have, but declined to, raise its desire to assert AMS when the admissibility of TriZetto's late-identified prior uses was squarely before the Court last fall. Rather than raise AMS then, TriZetto sat on it, represented to the Court that it was done identifying prior art, let the Court resolve the issue, and then slipped AMS into Dr. Davis's opening report.

McKesson has also shown that it will be prejudiced if TriZetto is permitted to rely on the four belatedly asserted prior art systems. (D.I. 417 at 13-15.) TriZetto does not dispute that McKesson will suffer prejudice from TriZetto's reliance on HCPS. (D.I. 455 at 8.) In addition, TriZetto's arguments with regard to the other three systems fail.

As to ClaimFacts, TriZetto argues that McKesson has obtained full discovery. (*Id.* at 7-8.) However, all of the evidence obtained in discovery and presented at trial regarding ClaimFacts related to ClaimFacts with ClinicaLogic, not the pre-ClinicaLogic version that TriZetto now asserts as prior art. Moreover, it appears that every document produced by TriZetto on ClaimFacts relates to ClaimFacts with ClinicaLogic. Although TriZetto states that McKesson deposed three TriZetto witnesses with knowledge of ClaimFacts, McKesson's examination of these witnesses focused on the accused ClaimFacts with ClinicaLogic since TriZetto had not asserted the pre-ClinicaLogic version of ClaimFacts as prior art. Indeed, Karen Lampe, the person TriZetto designated as most knowledgeable about ClaimFacts, would not even have been able to testify about the pre-ClinicaLogic version since she joined TriZetto in 1998. (D.I. 456, Ex. 7 at 1027 at 19-21.)

As to AMS, TriZetto argues that McKesson has known about AMS, TriZetto is relying on documents produced by McKesson, and McKesson's experts already analyzed AMS. (D.I. 455 at 12.) As discussed above, McKesson's knowledge of prior art is irrelevant. *See Praxair*, 231 F.R.D. at 464 n.9; *Praxair II*, 2005 WL 3159054 at *4; D.I. 116 at 74:21-23. Because TriZetto did not assert AMS during fact discovery, McKesson did not have notice that it needed to take discovery on AMS and justifiably did not take any such discovery. That McKesson happened to possess and produce some documents

regarding AMS does not permit TriZetto to deny McKesson the opportunity to take full and fair discovery about AMS during the period scheduled for completion of discovery.[4]

TriZetto's assertion that McKesson's experts fully addressed AMS is also wrong.

REDACTED

Notably, the defendants in *Praxair* unsuccessfully made the same argument TriZetto makes here. (Barlow Decl., Ex. 1 at 16 (arguing no prejudice because patentee's expert prepared a 194-page report addressing defendants' prior art and invalidity contentions).)

With respect to AutoCoder, TriZetto argues that McKesson produced documents regarding AutoCoder. (D.I. 455 at 13.) As discussed above, this fact does not justify denying McKesson an opportunity to take full and fair discovery during the scheduled discovery period by, for example, deposing potential third party witnesses about the operation of AutoCoder before the '164 patent's priority date or having McKesson's experts analyze the relevant information regarding AutoCoder. TriZetto also asserts a lack of prejudice because two inventors, all of which are third parties, testified about AutoCoder. (*Id.*) TriZetto, however, does not explain how this fact shows a lack of

---

4 In this regard, TriZetto's reliance on Robert Bargar is also improper because, as TriZetto concedes, TriZetto did not disclose him as a potential witness in this case until it designated trial witnesses on December 30, 2005—more than three months after close of fact discovery. (D.I. 455 at 12 n.2; D.I. 456, Ex. 20.)

prejudice from TriZetto's failure to assert AutoCoder and its resulting impact on McKesson's ability to take full discovery.

Because TriZetto has failed to show a lack of prejudice from its belated assertion of prior art, ClaimFacts, HCPS, AMS or AutoCoder must be stricken.

**F. McKesson Has Applied The Same Interpretations Of Claims 1 And 2 Throughout This Case.**

TriZetto's argument that its failure to identify its prior art defenses during discovery is justified by McKesson's trial positions regarding claims 1 and 2 is wrong. McKesson's positions regarding claims 1 and 2 have never changed and there was nothing new or surprising at the infringement trial.

*First*, as shown in McKesson's opening brief, McKesson's position regarding claim 1—specifically, that its determining step could be performed by checking a database other than the predetermined database—has been consistent throughout this case. (D.I. 417 at 6-8.) Contrary to TriZetto's argument (D.I. 455 at 14), Dr. Musen's trial testimony that the determining step of claim 1 can be, but does not have to be, performed by checking the predetermined database directly is entirely consistent with his deposition. (*Compare* D.I. 456, Ex. 7 at 487:5-489:7 ("One could exhaustively go through the database codes to see if the code was there . . . . One could have an index that would be a list of all the possible codes in the database that would be maintained separately") *with* D.I. 381, Ex. 13 at 267:21-25 ("my interpretation of the claims is that the motivation for Claim 1 is to clarify that the task performed for claim validity checking ***can*** be handled using the same structures that are ultimately used for other components of the patent") (emphasis added).)

There was nothing surprising about McKesson's position regarding claim 1 because the patent's preferred embodiment discloses checking a separate "ALLCODES" to

check the validity of an input code. TriZetto's argument that "[t]he patent specification does not state that checking the 'ALLCODES' database is the same as determining whether a code is not in the predetermined database and does not describe any 'informing' of the user that a code is not in the database" is wrong and inconsistent with TriZetto's own claim construction arguments. (D.I. 455 at 15.) TriZetto admits that the '164 patent discloses that "if a code is not found in the ALLCODES database, the patent actually runs a lookup program to find the right code" (*Id.*) but ignores that the "lookup program" is interactive and informs the user that the input code is invalid and prompts the user for further information and selections. (D.I. 7, Ex. A at Fig. 7, 10:8-50 ("***the user*** 3 inputs a description of the treatment noted on the claims form"). Moreover, TriZetto's present argument that the patent's discussion about checking the ALLCODE database does not relate to claim 1's determining step is contrary to its own *Markman* brief:

> McKesson's reliance on the ALLCODE database supports and actually strengthens TriZetto's interpretation that the only structure capable of performing this function, if any, is the ALLCODE database and related software that checks to see if an entered medical service code is in that database ...

(D.I. 158 at 21; *id.* at 20 ("...the only portion of the specification that appears to discuss the function of the 'determining' element is the detailed description of the 'ALLCODE database'...").)

*Second*, as shown in McKesson's opening brief, McKesson's position regarding claim 2—specifically, claim 2 covered duplicate code edits—has been consistent throughout this case. (D.I. 417 at 6-8.)[5] TriZetto admits that McKesson disclosed this

---

[5] As McKesson explained in its summary judgment briefs on anticipation and obviousness, that claim 1's determining step may be performed by checking another database or that claim 2's determining step covers duplicate code edits does not eliminate the predetermined database, which *(cont'd)*

position during fact discovery and in Dr. Musen's opening expert report and its attempts to discount these disclosures are unsupported.

TriZetto concedes that McKesson questioned TriZetto's witnesses and customers regarding the infringing products' detection of duplicate codes but incorrectly argues "none of the questions asked by McKesson at deposition clearly linked duplicate code checking with Claim 2." (D.I. 455 at 15 n.3.) REDACTED

REDACTED

REDACTED

TriZetto also admits that Dr. Musen cited TriZetto's duplicate code edit in his opening report's infringement charts for claim 2. REDACTED

REDACTED

REDACTED quoting Facets

*(cont'd from previous page)*
is an explicit and necessary element of both claims that must be shown to be present in the prior art to prove invalidity. (D.I. 414 at 14-16; D.I. 441 at 11-12.) McKesson has never argued otherwise.

Extended Enterprise Claims Processing User Guide and Supplement at p. 6-5.) TriZetto's argument that the duplicate edit was cited in connection with the "rejecting" step of claim 2 rather than the "determining" step ignores that the rejecting step is expressly performed "in response to the determining step." (D.I. 7, Ex. A at 117:37-40.) REDACTED

REDACTED

TriZetto also wrongly contends that the patent's discussion of duplicate code edits cannot relate to claim 2 because the specification does not explicitly identify duplicate codes as "mutually exclusive" codes and describes eliminating duplicate codes without ascertaining whether there is a plurality of codes. (D.I. 455 at 16-17.) TriZetto cannot deny that the term "mutually exclusive" encompasses the elimination of duplicate codes given that TriZetto broadly construed "mutually exclusive" to mean "inappropriate for payment." (D.I. 148, Ex. A at 9.) In addition, contrary to TriZetto's assertion, the patent expressly discloses that the duplicate code edit occurs after ascertaining whether there is a plurality of codes: "In step 15, any duplicate codes, ***if more than one code entry***, are eliminated." (D.I. 7, Ex. A at 5:36-38 (emphasis added).)

*Finally*, TriZetto's argument that McKesson's positions at trial justified its untimely assertion of prior art systems that lack a predetermined database and/or detect duplicate codes is disingenuous because TriZetto asserted those types of prior art during discovery. During fact discovery, TriZetto asserted that at least nine pieces of prior art met claim 1's determining step despite admittedly not having—and therefore not checking—a predetermined database. (D.I. 378, Ex. 1 at 25 & 62; D.I. 380 at 3 (admitting the Doyle patent and Clinical Data Editor are not among the "[t]hree systems" TriZetto argues

"included a 'predetermined database'.").) Similarly, TriZetto asserted at least three references against claim 2 during fact discovery that referenced duplicate billing or purportedly performed duplicate code checks. (D.I. 378, Ex. 1 at 17-18, 55 & 62; Barlow Decl., Ex. 7 at 92 ("checks duplicate billings"); Barlow Decl., Ex. 8 at 60 ("identifies … double billing").) Thus, TriZetto was not only aware of McKesson's positions regarding claims 1 and 2 long before the infringement trial, it appears to have applied those same positions in identifying and asserting prior art during discovery. There is no legitimate excuse for TriZetto's failure to assert its new prior uses during discovery and indeed that failure belies the significance TriZetto now attempts to attribute to them.

## III. CONCLUSION.

For the foregoing reasons, McKesson respectfully requests the Court grant its motion to strike and preclude TriZetto from relying or otherwise presenting evidence on ClaimFacts, HCPS, AMS and AutoCoder in connection with TriZetto's invalidity defenses.

By: /s/ Michael A. Barlow
Thomas J. Allingham II (#0476)
Michael A. Barlow (#3928)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000

Attorneys for Plaintiff
McKesson Information Solutions LLC

OF COUNSEL:
Jeffrey G. Randall
David W. Hansen
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, CA 94301
(650) 470-4500

Dated: July 10, 2006