IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MCKESSON INFORMATION SOLUTIONS LLC, | ) ) ) | CIVIL ACTION NO. 04-1258-SLR |
| Plaintiff, | ) ) | |
| v. | ) ) | REDACTED PUBLIC VERSION |
| THE TRIZETTO GROUP, INC., | ) ) | |
| Defendant. | ) ) | |

**DECLARATION OF MICHAEL A. BARLOW IN SUPPORT OF PLAINTIFF MCKESSON INFORMATION SOLUTIONS LLC'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO STRIKE ALLEGED PRIOR USES FIRST ASSERTED AFTER THE CLOSE OF DISCOVERY**

I, Michael A. Barlow, pursuant to 28 U.S.C. § 1746, declare as follows:

1.     I am an attorney of the Bar of the State of Delaware and of the firm of Skadden, Arps, Slate, Meagher & Flom LLP, attorneys for plaintiff McKesson Information Solutions LLC in the above-captioned action. I submit this declaration in support of the Plaintiff's Reply Brief in Support of Its Motion to Strike Alleged Prior Uses First Asserted After the Close of Discovery, and to transmit to the Court true and correct copies of the following documents attached as exhibits hereto:

| **Description** | **Exhibit No.** |
| --- | --- |
| Praxiar v. ATMI: ATMI's Brief in Opposition to Praxair's Motion to Strike Defenses and Expert Analyses (Redacted) | 1 |
| Praxiar v. ATMI: Excerpts from the Pretrial Conference before Honorable Sue L. Robinson on November 9, 2005 | 2 |
| Excerpts of Trial Transcripts from April 24, 2006 | 3 |
| Correspondence from K. Nguyen to T.K. Roosevelt enclosing documents bearing Bates Nos. MCK033868-MCK053031 | 4 |
| Correspondence from K. Nguyen to T.K. Roosevelt enclosing documents bearing Bates Nos. MCK113278-MCK127770 | 5 |
| Excerpts from the deposition of Karen Lampe taken on September 14, 2005 | 6 |
| *System validates medical fee schedules,* Bests Review: Life/Health, June 1987, 92 | 7 |
| *Expert System identifies miscoded health claims,* Bests Review: Life/Health, November 1990, 60 | 8 |

I declare under penalty of perjury that the foregoing is true and correct.

Executed:  July 10, 2006

Michael A. Barlow (I.D. # 3928)

# Exhibit 1

REDACTED DOCUMENT - PUBLIC VERSION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PRAXAIR, INC and PRAXAIR TECHNOLOGY, INC,     :     **FILED UNDER SEAL**

                Plaintiffs and     :
                Counterclaim-Defendants,     :     Civil Action No 03-1158-SLR

                v     :

ATMI, INC and ADVANCED TECHNOLOGY     :
MATERIALS, INC,     :
                     :
                Defendants and     :
                Counterclaim-Plaintiffs     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## ATMI'S BRIEF IN OPPOSITION TO PRAXAIR'S MOTION
## TO STRIKE DEFENSES AND EXPERT ANALYSES

Robert H Richards, III (#706)
RICHARDS, LAYTON & FINGER, P A
One Rodney Square
P O Box 551
Wilmington, DE 19899-0551
302-651-7700

Nicholas L Coch
John B Daniel
Theodore J Mlynar
Keith A Walter
KRAMER LEVIN NAFTALIS
& FRANKEL, L L P
1177 Avenue of Americas
New York, NY 10036
212-715-9100

*Attorneys for Defendants*
ATMI, Inc and Advanced Technology
Materials, Inc

June 15, 2005

RL3:2421955 4

**TABLE OF CONTENTS**

Page

NATURE AND STAGE OF THE PROCEEDING ... 1

SUMMARY OF THE ARGUMENT ... 1

STATEMENT OF FACTS ... 2

    1    PRAXAIR CHANGED ITS CLAIM CONSTRUCTION THREE DAYS BEFORE THE SCHEDULED MARCH 21 CLOSE OF DISCOVERY (LATER EXTENDED TO APRIL 15) ... 2

    2    ATMI IDENTIFIED PRIOR ART AND INVALIDITY DEFENSES ON OR BEFORE FEBRUARY 22 AND THEN AFTER PRAXAIR CHANGED ITS CLAIM CONSTRUCTION ON MARCH 18 ... 3

    3    AMPLE NOTICE OF ATMI'S §112 DEFENSES ... 5

ARGUMENT ... 5

I    THE PRIOR ART AND ATMI'S INVALIDITY DEFENSES WERE TIMELY IDENTIFIED ... 5

    A    ATMI Complied With The Amended Scheduling Order and Fed R Civ P Rule 26(e)(2) ... 7

    B    ATMI Identified Its Prior Art and Invalidity Defenses During Fact Discovery Which Closed On April 15 ... 9

II    ATMI HAD SUBSTANTIAL JUSTIFICATION FOR ITS INVALIDITY SUPPLEMENTATION AND PRAXAIR SUFFERED NO HARM FROM ATMI'S PROPER SUPPLEMENTATION ... 10

    A    Exclusion is Inappropriate Because ATMI Had Substantial Justification For Its Supplementation ... 11

    B    Praxair Was Not Harmed by ATMI's Production Between February 22 and April 15 ... 12

    C    Public Interest ... 13

III    PRAXAIR FAILS TO ARTICULATE OR APPLY THE PENNYPACK TEST ... 14

    A    No Prejudice or Surprise ... 15

    B    Ability to Cure Prejudice ... 15

KL3:3421955.4

C        The Extent To Which Waiver Of This Rule Would Disrupt Orderly And Efficient
         Trial                                                                          16

D        Bad Faith or Willfulness                                                       16

CONCLUSION                                                                              16

KL3:2421935.4

## TABLE OF AUTHORITIES

Page

### CASES

*ATD Corp. v. Lydall, Inc*, 159 F 3d 534 (Fed Cir 1998) ............ 14

*Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U S 83 (1993) ............ 13

*Finch v. Hercules, Inc.*, 92-251, 1995 WL 785100 *1 (D Del 1995) ............ 14 n 13

*Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F 2d 894 (3d Cir 1973),
    overruled on other grounds, 777 F 2d 113 (3d Cir 1985) ............ 2, 11, 13, 14

*Nicholas v Pennsylvania State Univ*, 227 F 3d 133 (3d Cir 2000) ............ 14

*Quinn v. Consol. Freightways Corp of Del.*, 283 F 3d 572 (3d Cir 2002) ............ 11, 14

*Smithkline Beecham Corp v Apotex Corp.*, 403 F 3d 1331 (Fed Cir 2005) ............ 13

*United States v Dentsply Int'l, Inc*, No 99-5, 2000 WL 654378 (D Del May 10, 2000) ............ 12

### STATUTES

35 U S C § 101 ............ 4

35 U S C § 102 ............ 15

35 U S C § 103 ............ 15

35 U S C §112 ............ 2, 4, 5

Fed R Civ P 26(e)(2) ............ *passim*

Fed R Civ P Rule 16(f) ............ 10, 13

Fed R Civ P Rule 37(c)(1) ............ 10, 11, 13

RLS 242193554

## NATURE AND STAGE OF THE PROCEEDING

In this patent action, Praxair has variously asserted ATMI's products infringe as few as 12 and as many as 18 claims among three related U.S. patents, Nos 5,937,895 (the "'895 patent"), 6,007,609 (the "'609 patent"), and 6,045,115 (the "'115 patent) (collectively, the "patents-in-suit") ATMI asserts, *inter alia*, that the patents-in-suit are invalid, not infringed, and unenforceable

Fact discovery closed on April 15, 2005 (D I 80, 83 ) Burden expert reports were exchanged on May 2 and rebuttal expert reports were exchanged on June 3 Although expert discovery is scheduled to be completed by June 29, Praxair has yet to agree to deposition dates [1] Summary Judgment and Claim Construction briefing is due July 29

## SUMMARY OF THE ARGUMENT

In all complex litigation, case theories evolve and are refined during the discovery process, as has occurred in this case Experienced counsel are aware of this and do their best to accommodate this reality As indicated in the footnote below, however, Praxair has committed what appears to be a number of substantial discovery violations [2] Rather than further burden these proceedings with applications for relief, counsel for ATMI had attempted to move forward with the resolution of this case in spite of these issues Under these circumstances, it is

---

[1] Two days ago Praxair cancelled a deposition scheduled for today and has not substantively responded to ATMI's June 9 request to schedule additional depositions  (Ex A )

[2] Without any justification and with significant prejudice to ATMI, Praxair has itself failed to supplement at least three severely deficient responses to ATMI's First Set of Interrogatories (1 – 10) by the February 22, 2005 Scheduling Order deadline  These interrogatories seek the bases for Praxair's contentions regarding secondary considerations of non-obviousness (No 8), the facts supporting Praxair's claims of damages (No 10), and conception dates for each of the asserted claims of the patents-in-suit, along with corroboration of those dates (No 3)

K1332421935 4

particularly inappropriate for Praxair now to seek sanctions for conduct precipitated by its own actions and for which there is a reasonable explanation as set forth herein

ATMI has timely identified the prior art and its invalidity defenses in this action, as well as timely supplemented its discovery responses in accordance with the Scheduling Order and the Federal Rules of Civil Procedure  Indeed, ATMI was quite surprised and perplexed to learn of Praxair's motion since the prior art and invalidity defenses it concerns were promptly identified by ATMI during the fact discovery period after Praxair changed its theories of claim construction

It would be inappropriate to impose any sanction against ATMI for its discovery supplementations during the discovery period since it did so with substantial justification and without causing Praxair harm  In particular, the exclusion of evidence is an extreme sanction which is by no means automatic  The four factor *Pennypack* test is applied before any decision to exclude evidence is made and the factors weigh in ATMI's favor  Accordingly, Praxair's motion should be denied in all respects

## STATEMENT OF FACTS

1.    PRAXAIR CHANGED ITS CLAIM CONSTRUCTION THREE DAYS BEFORE THE SCHEDULED MARCH 21 CLOSE OF DISCOVERY (LATER EXTENDED TO APRIL 15)

Pursuant to the September 2004 Amended Scheduling Order (D I  50) (hereinafter "A S O "), Praxair's proposed claim construction statement was due on December 6, 2004 (Ex  B) and ATMI's proposed claim construction statement was due on January 3, 2005 (Ex  C) As the latter states, ATMI proposed its claim construction, "without waiving its defense that the claims are vague, ambiguous and indefinite within the meaning of 35 U S C  § 112, ¶ 2 " (Ex  C

- 2 -

at pp. 1, 5 and 7) [3] On March 18, three days before the then-scheduled close of discovery, and three-and-a-half months after its initial submission, Praxair suddenly amended its proposed construction of all 18 claims it was asserting (Ex D)

However, a month earlier, on February 18, ATMI had filed a motion to extend the deadlines set forth in the Amended Scheduling Order, including the scheduled March 21 close of discovery, to obtain additional time for new lead counsel to assess and complete discovery and fulfill upcoming deadlines (D I 64) Praxair opposed the motion (D I 69), but at the subsequent March 15 discovery conference Praxair seemed to agree to extend the schedule by four weeks as ATMI had proposed. (Ex E) When Praxair subsequently disputed any agreement to extend the close of fact discovery, on March 18, ATMI filed an emergency motion to extend the close of fact discovery to April 15 (D I 76) On March 22, the Court granted ATMI's motion to extend the close of fact discovery so that open discovery issues could be pursued and resolved (D I 80) A Stipulation and Order to Modify the Amended Scheduling Order was entered by the parties (March 28) and the Court (March 29) confirming the April 15 date (D I 83)

### 2  ATMI IDENTIFIED PRIOR ART AND INVALIDITY DEFENSES ON OR BEFORE FEBRUARY 22 AND THEN AFTER PRAXAIR CHANGED ITS CLAIM CONSTRUCTION ON MARCH 18

According to the Amended Scheduling Order in effect through February, 2005, discovery "[s]upplementations under Rule 26(e) shall be due at least thirty (30) days prior to the close of fact discovery" (D I 50 at p 3, ¶2(d)) Both parties supplemented their discovery responses on February 22, 2005, 30 days prior to the then-scheduled March 21 discovery close

---

[3] The exhibits cited herein are appended to the Declaration of Robert Richards, III, Esq in Support of ATMI's Brief In Opposition to Praxair's Motion to Strike Defenses and Expert Analyses

(Exs. F and G.) In what was then ATMI's third supplemental response concerning invalidity of the patents-in-suit, ATMI again "reserve[d] the right to supplement this interrogatory response and identify additional prior art as well as other invalidity defenses, including defenses arising under 35 U.S.C. §§101 and 112, based on Praxair's claim construction contentions   and additional information that comes to [ATMI's] attention." (Ex. F.) On February 22, ATMI produced copies of Skousgaard '297 and several references. (Ex. H.)

Praxair already had notice of the Semerdjian '609 patent (one of the patents-in-suit), Dutka Article, and Skousgaard '297 patent. The Dutka Article is referenced in the '609 patent, and it was admitted that Skousgaard '297 is prior art during prosecution of the '115 patent. (Ex. I.) Additionally, in ATMI's March 28, 2005 Response to Plaintiffs' Third Set of Interrogatories (Nos. 9-14) a discussion of the relevance of Skousgaard '297 patent for invalidity and unenforceability of the patents in suit was provided.[4] (Ex. J.)

Praxair amended its claim construction for all 18 asserted claims on March 18, 2005. Three days later ATMI produced copies of the SEMI S5-93 Safety Guideline, Griffin '998 patent, Winland '611 patent, Tompkins '598 patent, 49 CFR, Ono '131 patent, and Corley '548 patent which were relevant to Praxair's new March 18 claim construction position. At the close of discovery on April 15, ATMI produced three additional references, the Miller '583, Allen '968 and Collier '752 patents also relevant to Praxair's new March 18 claim construction (Ex. K.)

On April 21, after the April 15 close of discovery, Praxair produced an additional prior art reference during the 30(b)(6) deposition of Praxair | REDACTED |

---

[4] The parties had agreed to a one (1) week extension of the due date for the response from March 21 to March 28.

RL3:2421955.4

| REDACTED |
|---|

The very next day, Praxair amended its infringement contentions to drop six of the asserted claims of the '115 and '895 patents  (Ex  M )

### 3    AMPLE NOTICE OF ATMI'S §112 DEFENSES

By stipulation on January 13, 2005, ATMI filed an Amended Answer and Counterclaims, again presenting its affirmative defense and counterclaims for invalidity based, *inter alia*, upon the failure to comply with 35 U S C  §112  (D I  61) at ¶¶16-18 and 30 )  This pleading reiterated ATMI's prior responses to Praxair's invalidity contention interrogatory No  2 in May, July, and October of 2004  In its January 3, 2005 proposed claim construction statement, ATMI made clear that, "the claims are vague, ambiguous and indefinite within the meaning of 35 U S C  §112, ¶2 "  (Ex  C )  In October 2004, ATMI identified specific claim terms as being invalid for indefiniteness under 35 U S C  §112  On April 15, after reviewing Praxair's new March 18 claim construction, ATMI identified more claim terms that are indefinite and indicated that asserted claim 20 of the '115 patent is invalid for lack of enablement and written description under 35 U S C  §112  (Ex  K)

## ARGUMENT

### I.    THE PRIOR ART AND ATMI'S INVALIDITY DEFENSES WERE TIMELY IDENTIFIED

All of the prior art references and invalidity defenses that ATMI relies upon were timely identified in compliance with the Amended Scheduling Order (D I  50) (the "A S O ") and Fed  R  Civ  P  Rule 26(e)(2) ("Rule 26(e)(2)") during the discovery period, as extended  (D I  80, 83 )  Although neither the Court's order nor the Federal Rules specifically requires the

---

| [5] U S  Patent No  1,883,690 | REDACTED | |
|---|---|---|
| REDACTED | | |
| REDACTED | (Ex  L ) | |

KL3:2431955 4

identification of prior art or invalidity defenses, Praxair argues that ATMI's responses to

Praxair's invalidity contention interrogatory (No 2) were improperly delayed in violation of

both  In reality, ATMI's responses were very prompt after Praxair changed its claim

construction on March 18, 2005, the eve of the then-scheduled close of discovery on March 21.[6]

        Praxair misinterprets both the A S O  and Rule 26(e)(2) to unilaterally declare

February 22 as the final deadline for all supplementations under Rule 26(e)(2), ever  Praxair is

clearly incorrect  Rule 26(e)(2) imposes a *continuing* duty to supplement discovery responses

(*See* Fed R Civ P Rule 26(e)(2) )  On February 22, March 21 and April 15, ATMI

supplemented its identification of prior art and invalidity defenses to include information

ATMI's counsel had become aware was relevant to Praxair's claim construction allegations

ATMI thus satisfied its obligations under the A S O  and Rule 26(e)(2) by seasonably

supplementing its invalidity contentions with newly acquired information located in response to

Praxair's shifting claim construction

        Indeed, all of ATMI's supplementations occurred within the then-applicable

deadlines for fact discovery  ATMI properly relied upon the Court's March 22 Order granting

ATMI's Motion to Extend Date for Closure of Fact Discovery (D I 76) to extend fact discovery

until April 15 so that "open discovery issues may be pursued and resolved" but "[n]o new

discovery requests may be submitted " (D I 80 ) ATMI was substantially justified in relying

upon that Order and the subsequent Stipulation and Order as permission to locate and identify

---

[6] Moreover, this Court has already denied Praxair's request for additional detail in response to its invalidity contention interrogatory, "Under the circumstances, I don't, frankly, believe the contention interrogatories are going to serve any purpose, [that is] what expert reports do   You're going to get the information through the expert reports  [a]nd that goes for both the plaintiff's contention responses and the defendant's contention responses " (3/15/05 Discovery Conference Tr  at pp  18-19)  (Ex  E )

123:2421935 4

any remaining prior art references needed  (D I  80, 83 )  Ultimately,  only three additional references were cited by ATMI during that extended discovery period

More than two weeks after providing the last three references to Praxair, ATMI submitted its invalidity expert's report on May 2  Praxair subsequently submitted its voluminous 194 page validity expert's report (not including exhibits) on June 3  Notably, Praxair did not request any additional discovery concerning any of the prior art references cited on or after February 22  Praxair has certainly not been prejudiced and ATMI's supplementations were timely

A.    ATMI Complied With The Amended Scheduling Order and
      Fed. R. Civ. P. Rule 26(e)(2)

Incredibly, Praxair seeks a sanction for ATMI's reliance on the '609 patent – one of the three patents-in-suit – as prior art against the other two patents-in-suit  Since the '609 patent was already well-known to Praxair, no sanction is available under Rule 26(e)(2)  Fed R Civ P  Rule 26(e)(2) ("A party is under a duty seasonably to amend  if the additional or corrective information has not otherwise been made known to the other parties  ")  The same holds true for the Dutka Article which is referenced in the '609 patent, Col  9, lines 17-18, and for Skousgaard '297 which was explicitly admitted to be prior art during prosecution of the '115 patent  (Ex  I )

With respect to the other ten references Praxair improperly complains of, ATMI complied with the A S O  and Rule 26(e)(2) by providing prompt supplementation of its responses to Praxair's contention interrogatory (No  2) regarding invalidity  Neither the A S O nor Rule 26(e)(2) made February 22 the last day for any supplementation of discovery responses  According to the A S O , "[s]upplementations under Rule 26(e) shall be due at least 30 days prior to the close of fact discovery "  (D I  50 at p  3, ¶2(d) )  However, that language does not prohibit

- 7 -

further supplementation as additional information becomes known  Rather, Rule 26(e)(2)

establishes an ongoing duty to supplement discovery responses with "information thereafter

acquired" if the prior "response is in some material respect incomplete or incorrect and if the

additional or corrective information has not otherwise been made known to the other parties

during the discovery process or in writing "  Fed  R  Civ  P  Rule 26(e)(2)

       Taken together, ATMI reasonably understood the A S O  to require all Rule

26(e)(2) supplementation available as of February 22 to be made by February 22 [7]  ATMI

supplemented its responses with the information that it was aware of as of that date – including

Skousgaard '297  ATMI did not violate Rule 26(e)(2) since it did amend its responses with the

information it had by the February 22 date and "seasonably" thereafter as required in response to

Praxair's new claim construction position  Prompted by Praxair's new claim construction on

March 18, ATMI's counsel identified seven references on March 21[8] and three more references

on April 15[9] responsive to Praxair's interrogatory No  2 that had not been identified in

February [10]  (Exs  Q, K and H )

       Pursuant to ¶5(d) of the A S O , Praxair's proposed claim construction was due

December 6, 2004  Without explanation, three days before the scheduled close of fact discovery

on March 21, and more than three-and-a-half months after its claim construction was due,

---

[7] Since the close of fact discovery was extended, the A S O  ¶2(d) date was retroactively
extended

[8] SBMI S5-93 Safety Guideline, Griffin '998, Winland '611, Tompkins '598, 49 CFR, Ono '131,
and Corley '548

[9] Miller '583, Allen '968 and Collier '752

[10] If necessary, ATMI will consider presenting affidavits of counsel for *in camera* inspection by
the Court to explain counsel's first awareness of such references and their relevance

Praxair amended its construction of all 18 of the claims of the patents-in-suit asserted against

ATMI (Ex D )

It seems that Praxair sought to change its claim construction to avoid the prior art

and other defenses that ATMI had previously identified to invalidate those claims However,

Praxair's violation of the A S O was to no avail since ATMI quickly identified additional

references that helped invalidate Praxair's claims even under Praxair's new March 18 claim

construction Praxair makes the present motion to attempt to preclude ATMI from using the

prior art it identified after Praxair's March 18 violation Against this background, Praxair now

seeks the Court's intervention Praxair should not be allowed to selectively disregard an A S O

due date that protects ATMI, and upon which ATMI should be able to rely, and then assert that

ATMI should be precluded from reacting to Praxair's improper actions

**B.    ATMI Identified Its Prior Art and Invalidity Defenses
During Fact Discovery Which Closed On April 15**

Besides misreading ¶2(d) of the A S O , Praxair also misreads the Court's March

22 Order extending the close of fact discovery (D I 80 ) The Court granted ATMI's motion to

extend discovery by four weeks from March 21 to April 15 The parties and the Court entered a

Stipulation and Order to Modify the Amended Scheduling Order confirming that "[f]act

discovery shall be completed by April 15, 2005 as provided by the March 22, 2005 Order (D I

80) "[11] (D I 83 ) As explained above, ATMI produced copies, or otherwise specifically

identified, to Praxair all 13 of the references complained of by Praxair on, if not well before, the

April 15 close of discovery

Praxair, nevertheless, continues to argue that fact discovery closed on March 21,

"except to the extent that loose ends needed to be resolved " Praxair's Opening Brief at p 1

_____

[11] Praxair's papers fail to acknowledge this stipulation and Order at all

KL3:3421935.4

However, the Court's Orders make no mention of "loose ends" (D I 80, 83) The March 22 Order states that ATMI's "motion (D I 76) is granted to the extent that open discovery issues may be pursued and resolved" (D I 80) In addition, the Court limited the mode of discovery so that "[n]o new discovery requests may be submitted" *Id*

Without any support for its position, Praxair now claims that ATMI was not permitted to identify additional prior art references and invalidity defenses during the extended discovery period Praxair also argues that invalidity was not an "open discovery issue" However, ATMI's original motion specifically mentions that "[m]uch of the discovery has been overlapping, involving many of the same witnesses, documents and prior art" and that new counsel was reviewing such materials (D I 67 at p 2) Moreover, Praxair's own actions in changing its claim construction on March 18, after making no mention of any intention to do so before the Court, certainly made the prior art an "open discovery issue" for ATMI as of March 18

## II.    ATMI HAD SUBSTANTIAL JUSTIFICATION FOR ITS INVALIDITY SUPPLEMENTATION AND PRAXAIR SUFFERED NO HARM FROM ATMI'S PROPER SUPPLEMENTATION

Praxair asserts violations of both Fed R Civ P Rule 16 ("Rule 16") and Rule 26(e)(2) as grounds for exclusion of ATMI's invalidity evidence and defenses identified after February 22 Under Rule 16(f), if "a party or party's attorney fails to obey a scheduling or pretrial order " the judge "may make such orders with regard thereto as are just " Rule 16(f) For a violation of Rule 26(e)(2), if it is without substantial justification and is not harmless, Fed R Civ P Rule 37(c)(1) allows the Court to impose an appropriate sanction

However, Praxair seeks only one sanction: exclusion of evidence, and under Third Circuit law, "the exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the

proponent of the evidence" *Meyers v. Pennypack Woods Home Ownership Ass'n.*, 559 F 2d

894, 905 (3d Cir 1973), overruled on other grounds, 777 F 2d 113 (3d Cir 1985); *Quinn v.*

*Consol. Freightways Corp. of Del*, 283 F 3d 572, 576-7 (3d Cir 2002)  If ATMI did not act

with substantial justification and its actions were not harmless, it is nevertheless clear that ATMI

has not engaged in willful deception or flagrant disregard of any Court Order and, therefore, no

exclusion sanction is warranted

### A.    Exclusion is Inappropriate Because ATMI Had Substantial Justification For Its Supplementation

ATMI supplemented its discovery responses pursuant to the Amended Scheduling

Order on February 22   At the March 15 discovery conference ATMI understood that Praxair

would agree to a four week extension of the near-term deadlines in the A S O , including the date

for the close of fact discovery   At that same conference, the Court indicated that contention

interrogatories were not appropriate discovery vehicles and that the parties would need to wait

for the exchange of expert reports   After seeking the Court's assistance again on March 18,

following Praxair's refusal to agree to extend discovery, the close of fact discovery was extended

to April 15   At the close of business on that same Friday, March 18, Praxair served by facsimile

its new claim construction positions for all 18 of the asserted claims   (Ex D )  Since claim

construction is key to an invalidity analysis, Praxair's 11th hour change in claim construction

unfairly prejudiced ATMI's ability to defend against the asserted claims

In view of the foregoing circumstances, it was objectively reasonable for ATMI to

conclude that it could (and indeed should) supplement its production of prior art references and

invalidity defenses requested by Praxair in accordance with Rule 26(e)(2) on or before April 15,

the close of fact discovery   "Substantial justification" for Rule 37(c)(1) purposes has been

regarded as "justification to a degree that could satisfy a reasonable person that parties could

differ as to whether the party was required to comply with the disclosure request." *United States v Dentsply Int'l, Inc*, No 99-5, 2000 WL 654378, at *7 (D Del May 10, 2000) (Ex N)

Based upon (a) a reasonable reading of the Amended Scheduling Order ("A.S O ") and Rule 26(e)(2), (b) extension of the discovery period until April 15, and (c) Praxair's own March 18 change in claim construction, ATMI had substantial justification for its supplemental identification of additional prior art references and invalidity defenses It would be unjust to exclude evidence based on ATMI's reasonable interpretation of the Court's Orders Accordingly, ATMI's conduct was substantially justified.

By contrast, Praxair unreasonably seeks to exclude from evidence three prior art references that it has known about since the patents-in-suit issued: the '609 patent, the Dutka Article and Skousgaard '297 [12] Praxair has no basis to argue that ATMI failed to identify any of these references by February 22  Again, ATMI has acted with substantial justification in identifying and using these references in its invalidity contentions.

> **B.    Praxair Was Not Harmed by ATMI's Production Between February 22 and April 15**

Praxair incorrectly cites March 21 as the close of discovery to argue that (a) it could not have conducted discovery between March 21 and April 15, or (b) additional discovery could not have been conducted thereafter by agreement of the parties  The truth is that Praxair never even tried to conduct such discovery  Praxair's own inaction proves that it has suffered no prejudice

Further proof of the harmlessness of ATMI's production is evident in that Praxair had (a) not only six full weeks to prepare its expert report concerning patent validity with respect

---

[12] U S Patent No 2,666,297 (Skousgaard) was produced as early as February 22 and identified during the February 8 Deposition of John Tolomei [REDACTED] (Ex O)

- 12 -

to the three references identified by ATMI on April 15 but also (b) more than nine full weeks to address the references that ATMI identified on March 21  The result of all this time was that Praxair's expert was able to create a report concerning patent validity that is 194 pages long (not including exhibits)  It should be noted that Praxair neither argues that its expert report is inadequate in any respect nor approached the Court for any degree of follow-up discovery  Praxair argues that it hired a new expert to address patent invalidity in this case because its other expert is busy in the New York Action  However, Praxair's expert's own scheduling issues between the cases, and inherent capacity limitations, are not evidence of any prejudice caused by ATMI  Clearly, then, Praxair has suffered no harm

### C.    Public Interest

Patents affect the public at large and the Supreme Court has "emphasized the importance to the public  of resolving questions of patent validity  "  *Cardinal Chemical Co  v  Morton Int'l, Inc* , 508 U S  83, 100 (1993) (reversing the Federal Circuit's policy of vacating invalidity decisions when patents are found not to be infringed)  The validity of Praxair's patents should be analyzed based on the full record and all available prior art references  The Supreme Court noted that it will "'be the better practice by inquiring fully into the validity of this patent '"  *Id*  (quoting *Sinclair & Carro Co  v. Interchemical Corp* , 325 U S  327 (1945))

Similarly, the Federal Circuit has emphasized the public policy in "removing invalid patents from the public "  *Smithkline Beecham Corp  v  Apotex Corp* , 403 F 3d 1331, 1354 (Fed  Cir  2005) (Gajarsa concurring)  A patentee does have an interest in having his patent fully adjudicated on the merits  The Federal Circuit stated that "'[i]t is as important to the public that competition should not be repressed by worthless patents, as that the patentee of a really valuable invention should be protected in his monopoly  '"  *Id*  (quoting *Pope Mfg. Co  v  Gormully*, 144 U S  224, 234, 12 S Ct  632, 36 L Ed  414 (1892))  Both the parties and the

- 13 -

public will benefit from determining the validity of the patents-in-suit in view of all of the

available prior art references and invalidity defenses

---

**III.    PRAXAIR FAILS TO ARTICULATE OR
APPLY THE PENNYPACK TEST**

Praxair incorrectly states the legal standard for striking evidence pursuant to Fed

R Civ P Rules 16(f), 26(e) and 37(c)(1)  In patent cases, evidentiary issues, such as the

exclusion of evidence, are governed by the law of the regional circuit unless the issue is unique

to patent law or litigation  *ATD Corp. v. Lydall, Inc.*, 159 F 3d 534, 548 (Fed Cir 1998)  Thus,

this Court looks to Third Circuit law on the issues presented  In particular, Praxair entirely fails

to discuss the four factor *Pennypack* test, *Meyers v. Pennypack Woods Home Ownership Ass'n*,

559 F 2d 894, 905 (3d Cir 1973), overruled on other grounds, 777 F 2d 113 (3d Cir 1985), that

a district court must apply before excluding critical evidence [13]  *Quinn*, 283 F 3d at 576-7;

*Nicholas v. Pennsylvania State Univ*, 227 F 3d 133, 148 (3d Cir 2000) ("whether the exclusion

of evidence is an appropriate sanction for failure to comply with discovery duties, we must

consider four factors  ")

The four *Pennypack* factors include:

> (1) the prejudice or surprise of the party against whom the evidence would
> be admitted;
> (2) the ability of the party to cure that prejudice;
> (3) the extent to which allowing the evidence would disrupt the orderly
> and efficient trial of the case or other cases in the court; and
> (4) bad faith or willfulness in failing to comply with a court order or
> discovery obligations

*Meyers v Pennypack Woods Home Ownership Ass'n*, 559 F 2d 894, 905 (3d Cir 1973),

*overruled on other grounds*, 777 F 2d 113 (3d Cir 1985)  Applying this correct legal standard to

---

[13]  The *Pennypack* test is articulated in the very first case that Praxair relies upon  *See Finch v
Hercules, Inc*, 92-251, 1995 WL 785100 *1 1995 WL 785100 *9 (D Del 1995) ("Based on
these considerations, the court must weigh [the four *Pennypack* factors]  ")  (Ex P )

the current situation, it is clear that exclusion of ATMI's prior art references and invalidity defenses, or the testimony of its expert witness critical to those defenses, would not be appropriate since all four factors preclude sanctions

### A.    No Prejudice or Surprise

Praxair has known of sixteen of the nineteen references relied upon by ATMI in its defenses and in Dr Glew's Expert Report since at least March 21, well before the April 15 close of fact discovery  The other three references address simple issues for which Praxair has not sought any further discovery – demonstrating a lack of prejudice or surprise  Moreover, Praxair has not been prejudiced since ATMI had identified the nature of its 35 U S C  102, 103 and 112 defenses as early as November 29, 2004 and provided additional updates after that time  (D I  63 )  Praxair was well aware that this Court viewed that interrogatory contentions were not particularly useful discovery vehicles  The Court refused to require either party to provide supplemental analysis that would also be set forth in the party's experts' reports (Ex  E, pp  18 – 19 )  Also, Praxair has not suffered any prejudice since its new expert had time to prepare a 194 page report  Praxair's report on patent validity was not due until six weeks after April 15

### B.    Ability to Cure Prejudice

Any prejudice to Praxair was cured when the Court granted both parties an extension of fact discovery until April 15  ATMI identified a majority of the prior art references on March 21, and Praxair had more than enough time to follow up on any open discovery issues that it needed to resolve  As to the three references identified on April 15, Praxair had the ability to cure any resulting prejudice simply by requesting additional discovery  Praxair, however, chose not to do so, evidencing a lack of any interest in the issue

KL3:2421955 4

**C.     The Extent To Which Waiver Of This Rule
        Would Disrupt Orderly And Efficient Trial**

~~Praxair has already had its expert prepare a 194 page report addressing the prior~~

art and invalidity contentions of ATMI  There has been no disruption to the upcoming deadlines

and expert depositions  In fact, Praxair has made no suggestion that it will have any problem

with upcoming deadlines due to activities in this case

**D.     Bad Faith or Willfulness**

ATMI has not engaged in any bad faith conduct  To the contrary, ATMI's

supplementation of discovery responses demonstrates good faith and compliance with the

Court's Order

Thus, all four factors weigh in favor of ATMI and do not support a finding that

exclusion of critical evidence is warranted

## CONCLUSION

For the reasons set forth above, the Court should deny Praxair's Motion to Strike

in all respects

Dated:  June 15, 2005

Nicholas L  Coch                          RICHARDS, LAYTON & FINGER, P A
John B Daniel                             Robert H  Richards, III (#706)
Theodore J  Mlynar                        Steven J  Fineman (#4025)
Keith A  Walter                           One Rodney Square
KRAMER LEVIN NAFTALIS & FRANKEL,          P O  Box 551
L L P                                     Wilmington, DE 19899-0551
1177 Avenue of Americas                   302-651-7700
New York, NY 10036
212-715-9100                              *Attorneys for Defendants ATMI, Inc  and
                                          Advanced Technology Materials, Inc*

RLF1-2431955-4

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2005 true and correct copies of the foregoing were

caused to be served on counsel of record at the following addresses as indicated:

### BY HAND

Jack B Blumenfeld (#1014)
Morris, Nichols, Arsht & Tunnell
1201 N Market Street
Wilmington, DE 19801
jblumenfeld@mnat com

### BY E-MAIL

Christopher J Harnett
Ropes & Gray
1251 Avenue of the Americas
New York, NY 10020
Christopher Harnett@ropesgray com

R H Richards, III (#706)

## CERTIFICATE OF SERVICE

I, R. H. Richards, III, hereby certify that on June 22, 2005, I hand delivered and

electronically filed the ATMI'S BRIEF IN OPPOSITION TO PRAXAIR'S MOTION TO

STRIKE DEFENSES AND EXPERT ANALYSIS [REDACTED – PUBLIC VERSION] with

the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the

following:

> Jack B. Blumenfeld (#1014)
> Morris, Nichols, Arsht & Tunnell
> 1201 N. Market Street
> Wilmington, DE 19801
> jblumenfeld@mnat.com

I also certify that a copy was caused to be served upon the following in the manner

indicated:

> BY E-MAIL
> Christopher J. Harnett
> Ropes & Gray
> 1251 Avenue of the Americas
> New York, NY 10020
> Christopher.Harnett@RopesGray.com

> /s/ R. H. Richards, III
> R. H. Richards, III. (#706)
> Richards, Layton & Finger, P.A.
> 920 King Street
> One Rodney Square
> Wilmington, DE 19801
> (302) 651-7700
> rrichards@rlf.com

# Exhibit 2

239

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

- - -

PRAXAIR, INC. and PRAXAIR           :     CIVIL ACTION
TECHNOLOGY, INC.,                   :
                                    :
           Plaintiffs               :
                                    :
       vs.                          :
                                    :
ATMI, INC. and ADVANCED             :
TECHNOLOGY MATERIALS, INC.,         :
                                    :
           Defendants               :     NO. 03-1158 (SLR)

- - -

Wilmington, Delaware
Wednesday, November 9, 2005
4:32 o'clock, p.m.
***Pretrial Conference

- - -

BEFORE:  HONORABLE SUE L. ROBINSON, Chief Judge

- - -

APPEARANCES:

        MORRIS, NICHOLS, ARSHT & TUNNELL
        BY:  JACK B. BLUMENFELD, ESQ.

                  -and-

                              Valerie J. Gunning
                              Official Court Reporter



76

1    pictures of the filter, the filter that's in the infringing

2    report, showing uptake of fluid.

3              He has a sentence in the expert report that says,

4    This is unambiguous demonstrative proof that the sintered

5    metal filters contain capillary passages, and based on the

6    filter location, all flow must pass through the capillary

7    passages in order to be discharged.

8              That's an opinion that the filters in question

9    include capillary passages.  It says nothing about capillary

10   action.  Whether he should be permitted to do this

11   demonstrative test, he's an expert.  People of skill

12   in the art would recognize that the physical structure,

13   when it has narrow, hairlike passages, has a tendency to

14   draw up fluid.

15             It's proof that the infringing device meets your

16   claim construction and as long as he does not say your claim

17   construction requires capillary action, and I will have him

18   say it doesn't, he should be able to give this empirical data

19   that was timely disclosed, and it's not inconsistent with

20   your Honor's claim construction.

21             THE COURT:  All right.  The difference between

22   capillary passages and capillary action?

23             MR. MYLNAR:  Your Honor, we would just like to

24   point out, this test is then going to be used against ATMI's

25   invalidating prior art in an effort to show, well, no similar

1  test was done, and thus somehow the prior art does not have

2  this type of action that the plaintiffs' expert relies upon.

3  In fact, it was Steve Sackett who was going to testify as to

4  that -- the nature of sintered metal with media in that prior

5  art reference and be able to refute that particular

6  evidence.

7          So we ask if this evidence is going to come in,

8  that there be an opportunity for ATMI to put in rebutting

9  evidence relating to that issue since capillary action is not

10 in this case any longer.

11         As to the -- my further issue, then, we know, of

12 course, that reargument on certain issues is not particularly

13 favored at this point in the trial procedure, but we'd like

14 an opportunity to address the order to the extent that it

15 excludes two references in particular.  One was the Skoosgard

16 (phonetic) reference that was raised in the prosecution,

17 during the prosecution of the '115 patent.

18         It's particularly relevant, UOP made admissions

19 about the content of that piece of prior art.  It's -- that

20 prior art is not an issue of fact for ATMI as an entity to

21 produce.  It's an issue -- that evidence comes in through

22 Praxair, through the file history.  It's already part of the

23 intrinsic evidence, so we'd like an opportunity to raise that

24 issue with you regarding the Skoosgard reference, which was

25 excluded by virtue of your order yesterday.

# Exhibit 3

Page 977

```
 1              - VOLUME E -
 2        IN THE UNITED STATES DISTRICT COURT
 3        IN AND FOR THE DISTRICT OF DELAWARE
 4              - - -
 5  McKESSON INFORMATION SOLUTIONS  :  CIVIL ACTION
    LLC,
 6            Plaintiff          :
 7       vs.                     :
 8  THE TRIZETTO GROUP, INC.,     :
 9            Defendant          :  NO. 04-01258 (SLR)
10              - - -
11         Wilmington, Delaware
           Monday, April 24, 2006
12         8:30 o'clock, a.m.
13              - - -
14  BEFORE:  HONORABLE SUE L. ROBINSON, Chief Judge, and a jury
15              - - -
16  APPEARANCES:
17     SKADDEN, ARPS, SLATE, MEAGHER & FLOM
       BY:  MICHAEL BARLOW, ESQ.
18
19        -and-
20     SKADDEN, ARPS, SLATE, MEAGHER & FLOM
       BY:  JEFF RANDALL, ESQ.,
            BERNARD SHEK, ESQ. and
            MICHAEL HENDERSHOT, ESQ.
21         (Palo Alto, California)
22         Counsel for Plaintiff
23                    Valerie J. Gunning and
24                    Leonard A. Dibbs,
                      Official Court Reporters
25
```

Page 978

```
 1  APPEARANCES (Continued):
 2
 3     MORRIS, NICHOLS, ARSHT & TUNNELL
       BY:  JACK B. BLUMENFELD, ESQ.
 4
 5        -and-
 6     GIBSON, DUNN & CRUTCHER LLP
       BY:  JEFFREY THOMAS, ESQ. and
 7          DAVID SEGAL, ESQ. and
            T. KEVIN ROOSEVELT, ESQ.
 8          (Irvine, California)
 9
10        -and-
11     GIBSON, DUNN & CRUTCHER LLP
       BY:  MICHAEL SITZMAN, ESQ.
12         (San Francisco, California)
13         Counsel for Defendant
14              - - -
```

RCV'D SASMF LLP

2006 APR 24 PM 4: 10

Page 979

## PROCEEDINGS

(Proceedings convened at 8:30 a.m., and the following occurred without the presence of the jury.)

THE COURT: Not surprisingly, I've got all sorts of papers in my folder, which I really have not had a chance to look at.

Our purpose this morning is to go through the jury instructions, so that is what we'll do first. I also have not had a chance to look at the proposals you have for changing them, but I guess we will get to those as we get to the instructions you want to change.

So as is normal for what I do in a charge conference, we'll go you through the instructions page by page and find out where you have your objections or suggestions for changes.

The first set of instructions are my standard instructions.

Does anyone have any problems through Page 12? You don't have to come to the podium, Mr. Thomas.

MR. THOMAS: Okay. Thank you.

MR. THOMAS: Not really, your Honor. Page

Page 980

12, it's a nit and probably not important, but the name ClinicaLogic.

THE COURT: Maybe you don't have the same Page 12 I do.

MR. THOMAS: It's entitled Plaintiff's Contentions.

THE COURT: Oh, no. My page 12 is deposition testimony.

MR. RANDALL: As is mine.

MR. THOMAS: Okay. That would be Page 11 in my set, your Honor.

Page 13, I suppose, plaintiff's contentions.

THE COURT: Well, Page 13 is the parties. Maybe we should go by the title. Any changes with the parties?

MR. THOMAS: Plaintiff's contentions?

THE COURT: All right. Which is Page 14. All right.

MR. THOMAS: It's simply that the name ClinicaLogic is not used with the Facets system. It's used with ClaimFacts and QicLink.

THE COURT: All right.

MR. THOMAS: But I don't think it really makes a big difference.

THE COURT: Well, it should be -- if that's

Page 1097

1  A.  It's a similar weigh that Facets is used.  It does
2  many of the same functions.  It's not quite as large.
3  It does not have as many modules, but it processes, you
4  know, medical claims, dental claims, short-term and long-
5  term disability claims.  Does similar functions.
6  Q.  Used for similar purposes as Facets?
7  A.  Yes, it is.
8  Q.  Like Facets, does it also have a claims processing
9  module?
10  A.  Yes.
11  Q.  And like Facets, does it also have other modules
12  for things other than claims processing?
13  A.  Yes, it does.
14  Q.  Now, again, for claims facts, the ClinicalLogic would
15  be part of the claims processing module?
16  A.  Yes, it would.
17  Q.  Like Facets, do you have ClaimFacts customers who
18  use ClaimFacts for claims processing but don't use your
19  ClinicalLogic software at all?
20  A.  Yes, we do.
21  Q.  For similar reasons?
22  A.  Similar reasons, and also because we sold ClaimFacts
23  as a separate module.  There was a separate licensing
24  fee, in addition to which ClinicalLogic came out many
25  years after ClaimFacts, so not all of the customers of

Page 1098

1  ClaimFacts have, you know, licensed the ClinicalLogic
2  application.
3  Q.  Okay.  And let's tic off the last of three
4  products.  QicLink.  Are you familiar with QicLink?
5  A.  Yes, I am.
6  Q.  What is that?
7  A.  QicLink is another similar system.  It's a little
8  larger than ClaimFacts, but not quite as large as
9  Facets.  It's primarily intended for the benefits
10  administration and TPA market.
11       You know, it's a little bit different, but it
12  essentially does most of the same things that Facets and
13  ClaimFacts do.
14  Q.  And like the other two systems, are there QicLink
15  customers who use QicLink for claims processing but don't
16  use the ClinicalLogic software?
17  A.  That's correct.
18  Q.  Sir, I'd like to focus you now on the ClinicalLogic
19  software itself, that piece.
20       Were you working at Erisco when ClinicalLogic
21  was developed?
22  A.  Yes, I was.
23  Q.  And when was it developed?
24  A.  In 1989.
25  Q.  Could you tell us generally what was involved in

Page 1099

1  the building of ClinicalLogic?
2  A.  Sure.  We first had to understand the high-level
3  business requirements.  You know, what the market was
4  looking for, what the customers were looking for.  And
5  then we essentially had to do two other things.  We
6  had to create the programs, write the programs, if you
7  will, design them, and then we had to design the
8  database and have the contents of the database, all of
9  the hundreds of thousands of rules that are in the
10  database, that had to be constructed as well.
11  Q.  Were those two separate projects, the database and
12  the software?
13  A.  They were interlinked.  We designed the database
14  and wrote the software at the same time, but a different
15  group of people wrote the software than the ones that
16  actually wrote the criteria, the medical criteria,
17  that's contained in the database.
18  Q.  How did you go about creating that medical
19  criteria database?
20  A.  We contracted with an outside company, Dr. Phil
21  Hawley.  He had a company called PACE Health Care
22  Management and they were a company that was made up
23  of physicians and other medical professionals, and we
24  contracted with them to construct the database for us.
25  Q.  Why did you hire PACE and its group of doctors to

Page 1100

1  build a database instead of doing it yourself?
2  A.  Because that was not the expertise that we had.
3  We were a software development company.  We were very
4  good at developing software, but since the clinical
5  rules, if you will, are medically based, that certainly
6  was not our expertise and we had to go outside for that
7  to a company that specialized in it.
8  Q.  When the database was first created by PACE, did
9  all of the rules in the database come from PACE?
10  A.  Yes, they did.
11  Q.  Did anyone from Erisco come up with any of the
12  rules that went into the medical criteria database?
13  A.  No, we did not.
14  Q.  What -- what's that database called?  What's your
15  term for it?
16  A.  We can call it the clinical criteria database.
17  Q.  Now, since that clinical criteria database was
18  first created, has it been updated?
19  A.  Yes, it has.
20  Q.  Can you describe that process?
21  A.  Yes.  Each year, the A.M.A. introduces new codes,
22  new CPT codes and, as a result, we have to have the --
23  you know, our medical consultants review the database
24  and update it for whatever is appropriate relative to
25  the new codes that may have been introduced or deleted

# Exhibit 4

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

### 525 UNIVERSITY AVENUE
### PALO ALTO, CALIFORNIA 94301-1908

TEL: (650) 470-4500
FAX: (650) 470-4570
www.skadden.com

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEWARK
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

DIRECT DIAL
‐470-4582
DIRECT FAX
8-329-4185
EMAIL ADDRESS
3UYEN@SKADDEN.COM

April 28, 2005

**Via Federal Express**

T.K. Roosevelt, Esq.
Gibson, Dunn & Crutcher LLP
Jamboree Center
4 Park Plaza, Suite 1400
Irvine, California 92614-8557

RE:     *McKesson Information Solutions, LLC v. The TriZetto Group, Inc.*
        *Case No. 04-1258-SLR (D. Del.)*

Dear Kevin:

Enclosed are documents which are being produced by McKesson Information
Solutions bearing Bates Nos. MCK033868 – MCK053031.

Sincerely,

Khoi D. Nguyen

Enclosures

cc:     Jack B. Blumenfeld, Esq. *(w/o encls.)*
        Michael A. Sitzman, Esq. *(w/o encls.)*

# Exhibit 5

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

## 525 UNIVERSITY AVENUE
### PALO ALTO, CALIFORNIA 94301-1908
TEL: (650) 470-4500
FAX: (650) 470-4570
www.skadden.com

DIRECT DIAL
50-470-4582
DIRECT FAX
38-329-4185
EMAIL ADDRESS
IGUYEN@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEWARK
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
—
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

May 3, 2005

**Via Federal Express**

T.K. Roosevelt, Esq.
Gibson, Dunn & Crutcher LLP
Jamboree Center
4 Park Plaza, Suite 1400
Irvine, California 92614-8557

RE:    _McKesson Information Solutions, LLC v. The TriZetto Group, Inc._
       _Case No. 04-1258-SLR (D. Del.)_

Dear Kevin:

Enclosed are documents which are being produced by McKesson Information Solutions bearing Bates Nos. MCK113278 – MCK127770.

Sincerely,

Khoi D. Nguyen

Enclosures

cc:    Jack B. Blumenfeld, Esq. _(w/o encls.)_
       Michael A. Sitzman, Esq. _(w/o encls.)_

# Exhibit 6

REDACTED

# Exhibit 7



JUNE 1987
LIFE/HEALTH
INSURANCE EDITION

# best's review

## Features

**INVESTMENTS IN THE LIMELIGHT**
As investments assume more importance, life insurers can learn
much from the banking and investment management industries
By Andrew C. Power and Joel Bleeke

12

**AGENT/COMPANY ROUNDTABLE**
Producers and company representatives take a candid look at how the
traditional distribution system is faring in a changing environment
A workshop conducted by Doris Fenske and Pamela Loos

20

THE WORLD OF FINANCIAL PLANNING

**INCREASING THE FINANCIAL HARVEST**
By Jeff J. Saccacio

36

MARKETING FACTS AND IDEAS

**JAPAN: LAND OF RISING OPPORTUNITY**
By Michael J. Murphy

46

**NEW PLANS, NEW POLICIES**

54

**SINGLE-PREMIUM WHOLE LIFE POLICY COMPARISON**
A Best's Review study

68

TECHNOLOGY TODAY AND TOMORROW

**HIGH-TECH MARKETING TO EMPLOYEES**
By John H. Adee

86

INSURANCE TAXATION

**THE BIG BITE: BUSINESS MEAL EXPENSE DEDUCTIONS**
By Gerald I. Lenrow, Michael J. Cuddy and Craig B. Larsen

94

MANAGEMENT INSIGHTS

**HAPPINESS IS MODIFIED GAAP**
By John Fibiger

98

ORGANIZATION NOTES—HIAA ANNUAL MEETING

**NO EASY SOLUTIONS FOR HEALTH INSURERS**
By Pamela Loos

126

## Columns

102  CURRENT TAX DEVELOPMENTS
104  LIFE INSURANCE TAXATION

## Departments

2    LETTERS & COMMENTARY
5    MONTH IN BRIEF
8    INSURANCE STOCKS
10   ON-LINE REPORTS
92   AUTOMATION REVIEW
114  MARKET DEVELOPMENTS
126  ORGANIZATION NOTES
136  NEW PUBLICATIONS
138  REPORTS ON COMPANIES
139  EXECUTIVE CHANGES
142  NEW DIRECTORS
142  RETIREMENTS
142  CONVENTION CALENDAR
143  COMPANY REPORTS INDEX

**ABOUT THE COVER:** Are companies and producers losing touch with each other's
needs in an insurance market characterized by constant change? The candid discussion
that begins on page 20 explores some of the tensions in the agent/company relationship.

**COVER BY KEVIN J. McDONALD**



agents generally are producers who are active in business insurance and advanced underwriting sales. They may be involved with payroll-deduction individual life sales but see GUL as a more saleable fit for larger accounts. When such producers measure the cost/benefit economies of the products within their business operations, they find the net-commission aspect of GUL attractive since enrollment and employee services are provided elsewhere.

### A LEGITIMATE CONCERN

The other body of agents are those who perceive middle-America as their bread-and-butter market. This group will probably see their carrier's offering GUL products as the beginning of a move to an alternative distribution system. This is an understandable concern, but agents can take comfort from the following marketplace facts:

(1) Based on industry statistics, life carriers in the aggregate are not delivering products to the middle market very effectively.

(2) Carriers currently offering GUL seem to view the product as supplemental, not alternative, distribution which reaches the middle- and lower-middle income group, where many agents choose not to prospect. The product also reaches more consumers than the size of the carriers' agent body permits.

(3) The true GUL product in today's market offers substantial guaranteed standard issue limits and little or no back-end loading. It is competitive with individual UL plans, but because of its user-friendly features, it is not markedly superior in terms of cash-value buildup after the surrender charges on individual plans have been worked off.

(4) The agent still will use individual policy payroll-deduction plans for small businesses. Minimum eligibility criteria for GUL, combined with group underwriting standards, will make GUL unavailable to many small companies.

(5) The agent can earn attractive commissions from GUL master sales.

(6) It is difficult to imagine that an insurer would benefit by shifting its individual sales plan away from agents to GUL. No one has yet perfected an enrollment or employee communication process that approaches the predictable results of agent-prospect-

ing activities. Again, supplemental, not alternative distribution, is the key to incremental business and profitability.

(7) Many consumers will prefer dealing with an agent and receiving the personal service that a group approach cannot provide.

This employee-marketing approach responds both to the employer's need for a comprehensive benefits package with carefully contained costs and to the employee's need for product value and the flexibility to customize benefits to fit widely varying individual circumstances. Today all parties can be winners when insurers make the effort to apply technology to the right tasks.  □

# AUTOMATION REVIEW

### SYSTEM VALIDATES MEDICAL FEE SCHEDULES

A stand-alone system that validates medical fee schedules was introduced by Insurance Software Packages, Tampa, Fla. Called the Medical C Schedule and Audit System, the system allows claims examiners to validate medical procedure codes and ICD-9 Diagnosis Codes for questions of medical appropriateness and causal relationship.

The Level I version offers screen displays of procedures, charges, allowable amounts and reasons for any reductions in charges, and the system can print each screen display. Level II is a medical billing management system that compiles medical claims history, checks duplicate billings, monitors surgery follow-up days and prepares reports that explain reduced and disallowed charges.

The system can be used to create UCR schedules in states without fee schedules and for employee health benefits programs. For more information call (800) 237-8133.

### TOOL EVALUATES CLAIMS, PINPOINTS HIGH COSTS

Health Data Analysis is a diagnostic tool designed to help insurers evaluate medical claims and pinpoint high-cost areas. Introduced by ConServCo, Tampa, Fla., the program is available as a stand-alone product or as part of a health care management program that includes hospital review, bill audit, chiropractic management, psychiatric review, vocational

rehabilitation, in-patient medical care review, medical case management and computerized medical bill reivew.

For more information, call (813) 969-0701.

### SOFTWARE SUPPORTS SALES PRESENTATIONS

The Beneficial EDGE is a software package designed to support agents' sales presentations to prospective clients. Introduced by Beneficial Standard Life, Los Angeles, the software allows agents to compare instantly the insurer's life insurance products to a competitor's product or other investment vehicles. The prospect then is given a computer read-out of the side-by-side comparisons for his own reference. The software can be run on a mainframe system, a personal computer or a laptop computer.

### NEW SYSTEM TRACKS PROSPECTS AND CLIENTS

The Broker's Choice, introduced by Pacesetter Software, Foster City, Calif., is a prospect and client tracking system designed for financial professionals. The system provides client and prospect profiles, financial histories, telephone follow-up reports, a seminar organizer, appointments schedule, word processing, mass updates, and automatic hard-disk backup. For more information call (415) 571-5566.

### PREMIUMS COMBINED INTO ONE MONTHLY BILL

The "Aetna Service Account Plus" (ASA Plus) is a billing system that combines a client's property/casualty and life premiums into one monthly statement. Introduced by Aetna Life & Casualty, Hartford, Conn., the system features laser-printed bills that display the agent's name and telephone number, the total combined balance and the minimum amount due.

Messages regarding support and further development of the multi-policy account also appear on the statement. For example, the statement informs the insured about how much of a discount he or she is receiving for having multiple policies with the insurer. The statement offers a toll-free customer service number. Service representatives handling these calls are supported by terminals that

CONTINUED ON PAGE 121

# Exhibit 8



The material on this page was copied from the collection of the National Library of Medicine by a third party and may be protected by U.S. Copyright law.

Notice: This material may be protected by copyright law (Title 17 U.S. Code).

The material on this page was copied from the collection of the National Library of Medicine by a third party and may be protected by U.S. Copyright law.

# A V E N U E S   T O   A U T O M A T I O N

cedures and processes, instant access to contract information is vital. When a question comes up about a particular provider, an examiner can immediately display the contract and provide responsive service.

## LOOKING AHEAD

We like the fact that the image system is flexible and multi-faceted. Aside from managed care applications, it will prove useful in other areas. In the past our claims forms did not capture all the appropriate information for auditing claims for a trend analysis. Just finding the right documents to create the analysis required an enormous effort. Now, the image system allows us to retrieve documents easily and extract trend data.

Based on our experience so far, we plan to extend processing to other divisions. By the end of 1991, we expect to have 1,500 image workstations in all areas of our business, including reinsurance, life, annuity and pension investment operations.

Eliminating the paper bottleneck has been just one component of our overall strategy to combine technologies. Our ultimate goal is to leverage technology to gain a competitive edge. Image processing puts us that much closer to achieving our goal. □

# AUTOMATION REVIEW

## Market Analysis Software Runs on Microcomputers

A marketing information analysis system for use on personal computers was developed by Harte-Hanks Data Technologies, Billerica, Mass. NAVIGATOR combines client marketing data with management-oriented desktop inquiry and reporting tools.

The database in the system is specified by the client and updated, analyzed and summarized by Harte-Hanks on a regular basis. The program provides summary-level information and facilitates trend analysis through its customized marketing analysis reports on such subjects as cross-sell, market penetration, balance distribution and product activity. The information can be presented as tabular summary reports, pie charts, horizon-

tal or vertical bar graphs and connected point graphs. Spreadsheet capability and interface with Lotus 1-2-3 are built in. Reports can be produced for screen display or printing.

The program runs on IBM and compatible personal computers. Training and customer support are provided. For more information, call (617) 337-3633.

## Expert System Identifies Miscoded Health Claims

An automated medical knowledge system for insurance claim operations and managed care is the subject of a marketing agreement between Coopers & Lybrand, N.Y., and Artificial Intelligence for Medicine, Farmington, Conn. DR.CLAIM is an expert knowledge base system designed to identify miscoded surgical, medical, radiological and laboratory claims, which may result in overpayments.

The areas in which the system identifies problems include (1) fee unbundling, the practice of breaking down medical procedures into components and billing for each separately; (2) same operative field, wherein two or more independent surgical procedures are performed during one operative session in the same operative field or incision; (3) cosmetic surgery, where procedures may be done solely for cosmetic purposes but may be billed as correcting a functional impairment; and (4) upgrading, the practice of billing for a service that is similar to but more complicated than what was actually done.

The program also identifies obsolete codes, mutually exclusive procedures and double billing. The system's rule base reflects six years of development by experts in clinical medicine.

For more information, call (212) 536-3256.

## Updates Enhance Database For GIC Rate Information

The New York GIC Exchange, Cincinnati, announced the introduction of an enhanced LINQS GIC Quotation System. The enhancements allow the user to access a continuously updated rate database consisting of GIC rates from nearly 60 insurance carriers.

A new feature of the system gives access to rate information for the top nine rates of maturities one to 10 years for both simple and compound interest. By choosing the dollar value and purchase state, the user can pinpoint the maturity with the highest rate.

Financial information, including assets, capital and surplus, year incorporated, A.M. Best Financial Rank, A.M. Best Financial Category and credit ratings from A.M. Best Company, Moody's, Standard & Poor's, Duff & Phelps and Standard Analytical are available. Credit ratings may be used as criteria when requesting quotes. The user may access one through five of the rating services to determine which insurance carriers to include on the quote display. In addition, the user may view the difference between the GIC rates offered by an insurance carrier and the current treasury rate for that maturity.

For more information, call (800) 543-0868.

## Survey Targets Turnaround Time As Carriers' Highest Priority

A survey of underwriting managers, new business managers and senior administrators responsible for both areas shows that for most life insurance companies, faster turnaround time is of highest priority for improved productivity. The study reveals that the average new policy is processed in 12-and-a-half days.

Commissioned by CAPSCO PALLM Systems, Indianapolis, and conducted by Chilton Research, Radnor, Pa., the study was designed to assess attitudes toward the life underwriting and new business processes in preparation for the marketing of CPSource, a life underwriting workstation, and CPS/NBS, a new business software product. The expert system embedded in the underwriting workstation contains a knowledge base and a capacity to set company-specific decision parameters and runs in the OS/2 operating environment. The new business system automates underwriting decisions and forms generation and runs in the MVS mainframe environment.

A total of 905 managers were interviewed for the survey. Approximately 23% were from companies with less